# EXHIBIT 4

# SECOND SUPPLEMENT TO INDENTURE

# SECOND SUPPLEMENTAL INDENTURE

**THIS SECOND SUPPLEMENTAL INDENTURE**, dated as of September 12, 2019 (this "Supplemental Indenture"), is by and among Goodman Networks Incorporated, a Texas corporation (the "Issuer"), UMB Bank, National Association, a national banking association, as trustee (the "Trustee") and U.S. Bank National Association, a national banking association, as collateral agent (the "Collateral Agent").

## RECITALS

**WHEREAS**, the Issuer has previously issued its 8.0% Senior Secured Notes due 2022 currently outstanding in the aggregate principal amount of $112,500,000 (the "Notes") under the Indenture, dated as of May 31, 2017 (as amended, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Indenture"), by and among the Issuer, the Trustee and the Collateral Agent; and

**WHEREAS**, the Issuer intends to enter into an asset purchase agreement with Genesis Networks Telecom Services, LLC ("Genesis"), an Affiliate of the Issuer, in connection with the contemplated acquisition by the Issuer of substantially all the assets of Genesis; and

**WHEREAS**, the Holders of at least a majority in aggregate principal amount of the Notes outstanding have duly consented to the amendments to the Indenture set forth in this Supplemental Indenture, in accordance with the Indenture, including Section 9.02 thereof; and

**WHEREAS**, Section 9.02 of the Indenture provides that the Issuer and the Trustee may amend the Indenture and the Notes with the written consent of the Holders of at least a majority in principal amount of the Notes then outstanding;

**WHEREAS,** the Issuer has delivered requests for consents to the proposed amendments contained herein to all DTC Participants for forwarding on to the Beneficial Owners of the Notes;

**WHEREAS,** the Issuer has delivered a DTC Consent representing at least a majority in aggregate principal amount of the Notes outstanding who have consented to the amendments contained herein;

**WHEREAS**, the Issuer has furnished the Trustee and Collateral Agent with an Officers' Certificate and an Opinion of Counsel complying with the requirements of Sections 9.06 and 14.05 of the Indenture; and

**WHEREAS**, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed.

**NOW, THEREFORE**, for and in consideration of the foregoing premises, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Notes, as follows:

**Section 1.01   Capitalized Terms.** Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

**Section 2.01   New Definitions.** The following definitions shall be added to the Indenture:

"Genesis" shall mean Genesis Networks Telecom Services, LLC, a Texas limited liability company.

"Goodman Family Investments" shall mean GDMN Family Investments 2 LLC, a Texas limited liability company.

"JJC & People" shall mean JJC & People LLC, a Texas limited liability company.

"People NQ" shall mean People NQ GNE, LLC., a Texas limited liability company.

**Section 2.02   Amendments.**

(a)   Section 4.03(a) of the Indenture is hereby deleted and replaced with the following language:

"Whether or not required by the rules and regulations of the SEC, so long as any Notes are outstanding, the Company will:

(1)   within 45 days after the end of the Company's first three fiscal quarters during each fiscal year, furnish to the Holders of Notes and the Trustee quarterly unaudited financial statements and notes thereto of the Company; and

(2)   within 120 days after the end of the Company's fiscal year, furnish to the Holders of Notes and the Trustee audited annual financial statements and notes thereto of the Company.

The Company will post such information on a password-protected company website no later than the date the Company is required to furnish such information to the Trustee and the Holders of the Notes and maintain such posting for so long as any Notes remain outstanding. The Persons that may be entitled to access such information on such company website may be limited to the Trustee, Holders of the Notes, Beneficial Owners of the Notes, bona fide prospective investors (which investors may not be Competitors or Competitor Affiliates), securities analysts and market makers.

Delivery of such information to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Company's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

The Company will, for so long as any Notes remain outstanding, use its commercially reasonable efforts to hold and participate in quarterly conference calls with the Holders of the Notes, Beneficial Owners of the Notes, bona fide prospective investors (which investors may not be Competitors or Competitor Affiliates), securities analysts and market makers to discuss such financial information and material developments with respect to the Company and its business no later than ten (10) Business Days after distribution of such financial

2

information."

(b)     Section 4.09(b)(1) is hereby deleted and replaced with the following language:

"the incurrence by the Company and any Guarantor of Indebtedness and letters of credit under Credit Facilities in an aggregate principal amount at any one time outstanding under this clause (1) (with letters of credit being deemed to have a principal amount equal to the maximum potential liability of the Company and its Restricted Subsidiaries thereunder) not to exceed $40.0 million;"

(c)     The following language is hereby added to the end of the last sentence of Section 4.11(a):

"; *provided, however,* that this Section 4.11(a) shall not apply to the following Persons and their respective Subsidiaries in connection with the acquisition of substantially all of the assets of Genesis by the Company pursuant to the asset purchase agreement to be entered into by and among the Company and Genesis (the "Asset Purchase Agreement") substantially in the form as Exhibit A to that certain officers' certificate of the Company, dated August 20, 2019 delivered to the Holders of at least a majority in aggregate principal amount of the Notes outstanding on such date: (i) Genesis, (ii) James Goodman, (iii) John Goodman, (iv) Goodman Family Investments, (v) People NQ and (vi) JJC & People; *provided further* that promptly following the closing of the transaction contemplated by the Asset Purchase Agreement, the assets acquired thereunder will be owned by an existing or newly created Domestic Subsidiary of the Company that provides a Note Guarantee and the Company and such Domestic Subsidiary cause the assets so acquired to become Collateral and otherwise comply with the requirements of Section 4.17 of the Indenture."

(d)     Section 4.16 is hereby deleted in its entirety.

(e)     The following language is hereby added as clause (f) to the end of Section 4.20:

"Notwithstanding the foregoing requirements set forth in clauses (b) through (d) of this Section 4.20, the vacancies left by the initial Noteholder Directors, Sherman K. Emiston III and Rocco Romanella, shall be filled by David Hanig and Igor Volshteyn pursuant to a letter of instruction from the Holders of a majority in aggregate principal amount of the then outstanding Notes to the Trustee."

(f)     The Indenture is hereby amended by deleting any definitions from the Indenture with respect to which references would be eliminated as a result of the amendments to the Indenture pursuant to clauses (a), (b), (c), (d), and (e) above.

**Section 3.01    Ratification of Indenture; Supplemental Indenture Part of Indenture.** Except as expressly amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Every reference in the Indenture to the Indenture shall be deemed to mean the Indenture, as supplemented by this Supplemental Indenture. This Supplemental Indenture shall form a part of the Indenture for all

3

purposes, and every Holder of the Notes heretofore or hereafter authenticated and delivered shall be bound hereby.

**Section 4.01** **Governing Law.** This Supplemental Indenture shall be governed by, and construed in accordance with, the laws of the State of New York.

**Section 5.01** **Counterparts.** The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together shall represent the same agreement. Delivery of an executed counterpart of a signature page to this Supplemental Indenture by facsimile, email or other electronic means shall be effective as delivery of a manually executed counterpart of this Supplemental Indenture.

**Section 6.01** **Effect of Headings.** The section headings herein are for convenience only and shall not affect the construction hereof.

**Section 7.01** **The Trustee and the Collateral Agent.** Neither the Trustee nor the Collateral Agent shall be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Issuer in its sole capacity. For the avoidance of doubt, the Trustee, by executing this Second Supplemental Indenture in accordance with the terms of the Indenture, does not agree to undertake additional actions nor does it consent to any transaction beyond what is expressly set forth in this Second Supplemental Indenture, and the Trustee reserves all rights and remedies under the Indenture.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

**ISSUER:**

GOODMAN NETWORKS INCORPORATED

By: _____
Name: John Goodman
Title: Executive Chairman and Chief Executive Officer

**GUARANTORS**

MULTIBAND FIELD SERVICES, INCORPORATED

By: _____
Name: John Goodman
Title: Chief Executive Officer

GOODMAN NETWORKS SERVICES, LLC

By: _____
Name: John Goodman
Title: Chief Executive Officer

**TRUSTEE:**

UMB BANK, NATIONAL ASSOCIATION

By: _____
Name: Julius Zamora
Title: Vice President

SIGNATURE PAGE TO SECOND SUPPLEMENTAL INDENTURE

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

**ISSUER:**

GOODMAN NETWORKS INCORPORATED

By: _____
Name:  John Goodman
Title:   Executive Chairman and Chief Executive Officer

**GUARANTORS**

MULTIBAND FIELD SERVICES, INCORPORATED

By: _____
Name:  John Goodman
Title:   Chief Executive Officer

GOODMAN NETWORKS SERVICES, LLC

By: _____
Name:  John Goodman
Title:   Chief Executive Officer

**TRUSTEE:**

UMB BANK, NATIONAL ASSOCIATION

By: _/s/ Julius Zamora_____
Name:  Julius Zamora
Title:   Vice President

SIGNATURE PAGE TO SECOND SUPPLEMENTAL INDENTURE

**COLLATERAL AGENT:**

U.S. BANK NATIONAL ASSOCIATION

By: _____
Name: Michael K. Herberger
Title: Vice President

Case 22-31641-mvl7    Doc 21-4    Filed 10/03/22    Entered 10/03/22 20:25:23    Desc
Exhibit 4    Page 8 of 8

SIGNATURE PAGE TO SECOND SUPPLEMENTAL INDENTURE