David W. Parham, SBN: 15459500
Laura M. Taveras, SBA: 24127243
**AKERMAN LLP**
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone:    (214) 720-4300
Facsimile:  (214) 981-9339
david.parham@akerman.com
laura.taveras@akerman.com

*PROPOSED COUNSEL FOR ALLEGED DEBTOR,*
*GOODMAN NETWORKS, INC. D/B/A GOODMAN SOLUTIONS*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 22-31641-mvl7 |
| | § | |
| GOODMAN NETWORKS, INC., | § | Involuntary Chapter 7 |
| | § | |
| *Alleged Debtor.* | § | |

**GOODMAN NETWORKS, INC.'S**
**OBJECTION TO FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC.'S**
**JOINDER TO THE INVOLUNTARY PETITION**

TO THE HONORABLE MICHELLE LARSON, U. S. BANKRUPTCY JUDGE:

COMES NOW, alleged Debtor Goodman Networks, Inc. d/b/a Goodman Solutions ("Goodman" and/or "Debtor"), and files this Objection (the "Objection") to FedEx Supply Chain Logistics & Electronics, Inc.'s ("FSCLE"), Joinder to the Involuntary Petition Against Goodman Network, Inc. [Docket No. 29] (the "Joinder") and respectfully shows as follows:

**I.    Procedural History and Background**

**Procedural History**

1.    On September 6, 2022, JLP Credit Opportunity Master Fund Ltd., JLP Credit Opportunity IDF Series Interests of the SALI Multi-Series Fund, L.P., JLP Institutional Credit

Master Fund L.P, and Alimco Re Ltd. (collectively, the "Original Petitioning Creditors," and, collectively with the Original Petitioning Creditors, the "Petitioning Creditors"), commenced this involuntary case by filing an Involuntary Petition against a Non-Individual [Docket No. 1] (the "Petition") and the Statement in Support of Involuntary Petition [Docket No. 2] (the "Statement," and. collectively with the Petition, the "Involuntary Petition").

2. In the Statement, the Original Petitioning Creditors allege the following:

> Under section 303(b) of the Bankruptcy Code, an involuntary case may be commenced by three or more creditors who hold unsecured claims that are not contingent and are not subject to bona fide dispute if such claims aggregate at least $18,600. Here all four Petitioning Creditors hold claims against the Debtor on account of the Notes.

> Statement at ¶ 16.

and

> Entry of an order of relief against the Debtor is appropriate under section 303(h) of the Bankruptcy Code because the Petitioning Creditors are qualified to commence this case. . .

> Statement at ¶ 15.

3. On October 10, 2022, the Original Petitioning Creditors and Goodman filed a Joint Pre-Conference Statement [Docket No. 21] (the "Joint Statement").  In the Joint Statement, Goodman stated that the Original Petitioning Creditors were "beneficial holders, or investment managers to such holders, of the Notes," and contested whether the Original "Petitioning Creditors "are qualified to commence an involuntary petition against the Debtor." Joint Statement ¶ 3.

4. On October 17, 2022, FSCLE filed the Joinder Motion. [Docket No. 29].  In the Joinder, FSCLE noted that, in filing the Joinder, FSCLE "relied in good faith on the representations of the Original Petition Creditors in the involuntary petition, their statements in support of the involuntary petition, and their waivers . . . ." Joinder at ¶ 17.

5. On October 20, 2022 FSCLE filed its Motion to Compel the Debtor to File a List of Creditors and to Establish Procedures for Other Creditors to Join in the Petition. [Docket No. 32]

6. Having objected to FSCLE's Motion to Compel the Debtor to File a List of Creditors and to Establish Procedures for Other Creditors to Join in the Petition, Goodman now objects to FSCLE's Joinder.

## Background

7. Goodman Networks Incorporated, a Texas corporation ("Goodman Solutions") and its subsidiaries are in the satellite communications and e-commerce industries.

8. Goodman served the satellite television industry by providing onsite installation, upgrade and maintenance of satellite television systems to both the residential and commercial market customers. Goodman was an original equipment manufacturer-to-consumer links providing critical forward logistics, post-manufacturing support, reverse logistics, field installation and engineering services and equipment sales.

## Goodman Notes

9. On May 31, 2017 ("the Indenture"), Goodman Networks as Issuer, UMB Bank, National Association as Trustee (the "Trustee"), and U.S. Bank National Association, as Collateral Agent (the "Collateral Agent") in the original principal amount of $112,500,000, (collectively, "the Parties"). In connection with the Indenture, the Parties executed that certain Pledge and Security Agreement dated May 31, 2017 (the "Pledge and Security").

10. Subsequently, the Parties supplemented the Indenture four times ("the Indenture Supplements").

11. On September 14, 2019, Goodman, as buyer, and Genesis-ATC, as seller, entered into an Asset Purchase Agreement (the "APA"). Attached hereto as **Exhibit 1** to the Howard Konicov Declaration (the "Konicov Decl.") is a copy of the APA.

12. In relevant part, the APA states that:

> "*Acquired Assets*" means all right, title and interest in and to all of Company's assets, other than the Excluded Assets, including its (a) Owned Real Property and Leased Real Property, (b) tangible personal property, (c) Intellectual Property, goodwill associated therewith, licenses, sublicenses, agreements, covenants not to sue, permissions granted and obtained with respect thereto, and rights thereunder, remedies against any infringements thereof, and rights to protection all interests therein under the laws of all jurisdictions, (d) leases, subleases and rights thereunder, (e) agreements, contracts, indentures, mortgages, instruments, Liens, guaranties, other similar arrangements, and rights thereunder, (f) accounts, notes and other receivables, (g) securities (excluding the capital stock in its Subsidiaries), (h) claims, deposits, prepayments, refunds, causes of action, choses in action, rights of recovery, rights of set-off and rights of recoupment (including any such item relating to the payment of Taxes), (i) franchises, approvals, permits, licenses, orders, registrations, certificates, variances and similar rights obtained from governments and governmental agencies, (j) books, records, ledgers, files, documents, correspondence, lists, plats, architectural plans, drawings, and specifications, creative materials, advertising and promotional materials, studies, reports, and other printed or written materials, and (k) all rights to insurance policies and any proceeds thereof.

APA Article 1.

13. Thereafter, on the same day, Goodman, as assignor, and GNET ATC LLC, as assignee, entered into certain Assignment and Assumption Agreement (the "Assumption"). Attached hereto as **Exhibit 2** to the Konicov Decl. is copy of the Assumption.

14. In relevant part, the Assumption states that:

> Assignor hereby assigns, transfers and conveys to Assignee, and Assignee hereby accepts all of Assignor's right, title and interest in and under the Purchase Agreement, and Assignee hereby assumes all of Assignor's liabilities, duties and obligations with respect to the Purchase Agreement (the "Assignment").

Assumption para. 1.

15. At issue here are services in relation to certain that Master Service Agreement between FSCLE, as customer, and Genesis-ATC, as service provider, dated January 20, 2014 (the "Service Agreement").

16. The APA and the Assumption encompassed the Service Agreement.

17. Therefore, FSCLE is not a creditor—in any form— of Goodman. Thus, under these circumstances, joinder is inappropriate.

**II.    Argument**

18. An involuntary case may only

19. Section 303(b) provides that an involuntary bankruptcy maybe commenced "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount…" Section 303(c), in turn, provides that "after the filing of a petition . . . but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent …may join in the petition with the same effect as if such joining creditor were a petitioning creditor."

20. As a threshold matter, however, a would-be joining creditor must possess a claim against the Debtor. *See In re Utilimax.com Inc.,* 265 B.R. 63, 68 (Bankr. E.D. 2001); *In re Edwards*, 501 B.R. 666 (Bankr. N.D. Tex. 2013)

21. A claim is defined in the Bankruptcy Code as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5)(A).

22. The present joinder fails on this most fundamental of basis.

23. In this instance, the alleged claims of the would be petitioning creditors are all derive from the Master Service Agreement. The Master Service Agreement was assigned to GNET

on the date it was acquired from Genesis-ATC. Therefore, FSCLE must seek its right to payment from GNET and not Goodman. *See* **Exhibits 2 and 3** to Konicov Decl.

24. Accordingly, FSCLE is not a creditor—in any form— of Goodman.

25. As set forth in greater detail in Goodman's Response in Opposition to Motion to Compel, incorporated herein by reference, Rule 1003(b) is equally unapplicable.

26. Rule 1003(b) exists to give non-petitioning creditors a "reasonable opportunity" to join an involuntary as a petitioning creditor "when the alleged debtor's answer to the petition *filed by fewer than petitioners* asserts that the petition failed the § 303(b)(1) three-petitioner requirement." *Liberty Tool v. Vortex Fishing Sys. (In re Vortex Fishing Sys.)*, 277 F.3d 1057, 1061 (9th Cir. 2002) (emphasis added). Simply put and contrary to FSCLE's arguments, "[i]f there are three or more petitioners, then the rules do not require a "reasonable opportunity" to join . . ." *Id.* at 1062.

27. The Petition was filed by four creditors who themselves allege the existence of more than 12 creditors. This allegation was not denied. In fact, that allegation that Goodman has more than 12 creditors has never been disputed. *See* Konicov Decl. para. 15.

### III.    PRAYER

28. WHEREFORE PREMISES CONSIDERED, this Court should (i) strike the Joinder; and (ii) grant the alleged Debtor any such other and further relief to which it may be entitled.

Dated: October 31, 2022

Respectfully submitted,

**AKERMAN LLP**

 */s/ David W. Parham*
David W. Parham, SBN: 15459500
Laura M. Taveras, SBN: 24127243
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
laura.taveras@akerman.com

*PROPOSED ATTORNEYS FOR ALLEGED DEBTOR GOODMAN NETWORKS INC., D/B/A GOODMAN SOLUTIONS*

## CERTIFICATE OF SERVICE

I certify that on October 31, 2022, a true and correct copy of the foregoing document was served electronically via the Court's ECF system upon all parties entitled to receive service in this case.

 */s/ David W. Parham*
David W. Parham