Philip M. Guffy
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:     713-220-4200
Fax:     713-220-4285
Email:  pguffy@huntonak.com

 -and-

Paul N. Silverstein
Brian Clarke
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, NY 10166
Tel:     (212) 309-1000
Email: psilverstein@huntonak.com
           brianclarke@huntonak.com

*Counsel for the Petitioning Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § § | Case No. 22-31641 (MVL) |
| Debtor. | § § § | |

## PETITIONING CREDITORS' OMNIBUS OBJECTION TO MOTIONS TO QUASH
**[Relates to Docket Nos. 38 and 39]**

JLP Credit Opportunity Master Fund Ltd., JLP Credit Opportunity IDF Series Interests of the SALI Multi-Series Fund, L.P., JLP Institutional Credit Master Fund LP, and Alimco Re Ltd (collectively, the "**Petitioning Creditors**") file this omnibus objection (the "**Objection**") to the *Motion to Quash Subpoena for Deposition Testimony of Non-Party Witness James Frinzi* (the  **Frinzi Motion**") [Docket No. 38] filed by James Frinzi and the *Motion to Quash and/or Limit Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises* (the

"**AMRR Motion**" and together with the Frinzi Motion, the "**Motions to Quash**") [Docket No. 39] filed by American Metals Recovery and Recycling, Inc. ("**AMRR**"), and respectfully state as follows:

1. James Frinzi was the CEO of Goodman Networks, Inc. (the "**Debtor**") from sometime in October 2021 through at least the beginning of August 2022,[1] including on May 31, 2022, when the Notes matured and the Debtor failed to pay them.[2] He was also a board member of the Debtor. Mr. Frinzi was CEO of the Debtor in January 2022, when the Obligors loaned $44 million to AMRR.[3] When that loan was made, Mr. Frinzi was at the same time the CEO of AMRR. Mr. Frinzi continued to exercise control of the Debtor at and after the Maturity Date of the Notes. Indeed, throughout June and July, the Petitioning Creditors and their representatives had many communications with Mr. Frinzi regarding the failure of the Debtor to pay the Notes on the Maturity Date and how the Debtor intended to pay the outstanding balance due on the Notes.

2. Mr. Frinzi was CEO of the Debtor when the Obligors entered into the "settlement" with an unidentified preferred stockholder under which the Obligors repurchased the preferred stock for over $13 million in cash and conveyed other assets to such preferred holder. Mr. Frinzi also oversaw the repurchase of certain of the Debtor's outstanding Notes for $17 million in cash, which, on information and belief, accrued to the benefit of insiders of the Debtor.

3. In short, Mr. Frinzi controlled the Debtor during the period prior to the Maturity Date when the Debtor and the other Obligors transferred away significant amounts of collateral

---

[1] On or about August 10, 2022, the Petitioning Creditors were informed Mr. Frinzi had resigned as CEO and was no longer a member of the board of the Debtor.

[2] Capitalized terms used but defined herein have the meanings given to them in the *Statement of Petitioning Creditors in Support of Involuntary Chapter 7 Petition* [Docket No. 2].

[3] It is unclear whether this transaction was authorized by the board of directors.

DMS 300049874

securing the Notes.[4] He has detailed knowledge of the Debtor's assets and liabilities and the disposition of those assets. This knowledge may be highly relevant to the claims at issue in this proceeding, specifically, determining whether the value of the assets of the Debtor is less than the total claims of the Petitioning Creditors. As a result, requiring Mr. Frinzi to attend a deposition (remotely) will not impose an undue burden on him given the needs of the case.

4. AMRR is a company majority owned and controlled by Mr. Frinzi. AMRR is also intimately involved in the business of the Debtor and the other Obligors. In addition to the AMRR Note, mentioned above, AMRR also disclosed in an 8-K filing with the Securities and Exchange Commission dated September 6, 2022 (the same day the Petitioning Creditors filed the involuntary petition), that it entered into a "Trademark Agreement" with the Debtor under which certain trademarks were assigned from the Debtor to AMRR.[5] As a result, AMRR likely has discoverable information directly related to the claims and defenses raised in this proceeding, specifically, information regarding the value of the assets of the Debtor.

5. Accordingly, the Petitioning Creditors sent a subpoena containing six targeted requests for production to AMRR seeking discovery of information directly related to AMRR's transactions with the Debtor, the other Obligors, and insiders of the Debtor. This included the AMRR Note and the Trademark Agreement. Prior to filing the AMRR Motion, AMRR's counsel did not raise any concerns with the scope to the discovery requests nor the deadline for production, including during the telephonic conference with the undersigned noted in the AMRR Motion.[6]

---

[4] The relevant question in this proceeding is whether the undisputed claims of the Petitioning Creditors aggregate at least $18,500 more than the value of their liens only on property of the Debtor, Goodman Networks, Inc., securing their claims. *See* 11 U.S.C. § 303(b)(1).

[5] AMRR filed an amended 8-K on October 6, 2022, stating that the under the terms of the Trademark Agreement between it and the Debtor, the trademarks at issue were transferred from an assignee of the Debtor called 18920 NW 11th LLC. Copies of these two 8-Ks are attached here as **Exhibit A** and **Exhibit B**, respectively.

[6] AMRR Motion at 6.

3

DMS 300049874

Counsel for the Petitioning Creditors are, of course, happy to work with AMRR to resolve consensually any logistical or related objections to the discovery requests AMRR may have.

6. Mr. Frinzi and AMRR's technical arguments to quash the subpoenas are also meritless. First, the subpoena to Mr. Frinzi specifically notes that the deposition will "be conducted remotely as agreed to by the parties," so he is not being required to comply beyond the geographical limits specified in Federal Rule of Civil Procedure 45(c)(1)(A). Mr. Frinzi may attend the deposition from the comfort of his own home or wherever else he wishes. Likewise, the Petitioning Creditors are not asking AMRR to deliver physical copies of the documents requested to their counsel's office in Houston. Indeed, the Petitioning Creditors requested in the instructions attached to the requests for production that any such production be done electronically.

7. Second, the Petitioning Creditors of course understand that Mr. Frinzi and AMRR are under no obligation to disclose privileged information and are certain that their able counsel can properly instruct them to avoid such disclosures. With respect to confidential or protected information, the Petitioning Creditor are happy to enter into a agreed protective order to accommodate any such issues, as is routine in discovery matters like this.

8. Third, with respect to Mr. Frinzi's availability, the subpoena, which is attached to the Frinzi Motion, clearly states that the date and time for the deposition is "November 16, 2022 at 9:30 a.m. *or such other date as may be agreed by the parties*." Mr. Frinzi's counsel did not raise any issues with the date and time prior to filing the Frinzi Motion, including during the telephonic conference with the undersigned noted in the Frinzi Motion. The Petitioning Creditors will of course work with Mr. Frinzi and his counsel to find a mutually agreeable date and time to conduct his deposition.

DMS 300049874

9. Finally, with respect to AMRR's argument that the Petitioning Creditors should bear the expense of AMRR's compliance with the subpoena should be rejected. AMRR has not presented any evidence that complying with the 6 narrow discovery requests in the subpoena will subject it to "significant" expenses.

10. The party moving to quash a subpoena has the burden of proof "and must meet the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (internal quotations omitted). Neither Mr. Frinzi nor AMRR have met that burden. Both are intimately involved with the business of the Debtor at all relevant times and have discoverable information that is relevant to the claims and defenses raised in this proceeding. Accordingly, the Motions to Quash should be denied.

Dated: November 1, 2022　　　　Respectfully Submitted,
　　　　Houston, Texas

　　　　　　　　　　　　　　　　*/s/ Philip M. Guffy*
　　　　　　　　　　　　　　　　Philip M. Guffy
　　　　　　　　　　　　　　　　**HUNTON ANDREWS KURTH LLP**
　　　　　　　　　　　　　　　　600 Travis Street, Suite 4200
　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　Tel:　713-220-4200
　　　　　　　　　　　　　　　　Fax:　713-220-4285
　　　　　　　　　　　　　　　　Email: pguffy@huntonak.com

　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　Paul N. Silverstein
　　　　　　　　　　　　　　　　Brian Clarke
　　　　　　　　　　　　　　　　**HUNTON ANDREWS KURTH LLP**
　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　New York, NY 10166
　　　　　　　　　　　　　　　　Tel:　(212) 309-1000
　　　　　　　　　　　　　　　　Email: psilverstein@huntonak.com
　　　　　　　　　　　　　　　　　　　　brianclarke@huntonak.com

　　　　　　　　　　　　　　　*Counsel for the Petitioning Creditors*

**CERTIFICATE OF SERVICE**

    I certify that on November 1, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

                                                      */s/ Philip M. Guffy*
                                                      Philip M. Guffy

DMS 300049874