# EXHIBIT A

MOTOROLA CONFIDENTIAL RESTRICTED Revision: 12/12/08



## NON-EXCLUSIVE DISTRIBUTOR AGREEMENT

**by and between**

**GENERAL INSTRUMENT CORPORATION, doing business as
the Home & Networks Mobility Business of Motorola, Inc.**

**and**

**Genesis Networks, Inc.**

**Territory:  United States of America**

**Effective as of** _December 12_ , **2008**

## **EXHIBITS**

| | |
|---|---|
| A | Products and Price Sheet |
| B | [Reserved] |
| C | [Reserved] |
| D | Minimum Purchase Requirements |
| E | Procedures for Opening a Letter of Credit |
| F | Warranty Periods |
| G | Microsoft Client Loads |
| H | Motorola Deliveries to Distributor |
| I | [Reserved] |
| J | Labeling Requirements |
| K | EDI Transactions |
| L | TPI Schedule |
| M | Vendor Managed Inventory Process |
| N | Payment Escrow Agreement |

Attachment 1: Motorola's Code of Business Conduct Provisions

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

## NON-EXCLUSIVE DISTRIBUTOR AGREEMENT

This Non-Exclusive Distributor Agreement (the "<u>Agreement</u>") is made as of this _12th_ day of _December_____, 2008 (the "<u>Effective Date</u>") by and between **GENERAL INSTRUMENT CORPORATION**, doing business as the Home & Networks Mobility Business of Motorola, Inc., a Delaware corporation with its principal place of business at 101 Tournament Drive, Horsham, Pennsylvania 19044 U.S.A. ("<u>Motorola</u>") and **GENESIS NETWORKS**, Inc. a Texas corporation with its principal place of business at 600 N. Loop 1604 E, San Antonio, Texas 78232, ("<u>Distributor</u>" or "<u>Genesis</u>").  Motorola and the Distributor are referred to herein collectively as "<u>Parties</u>" and individually as "<u>Party</u>."

### RECITALS

WHEREAS, Motorola is a leading worldwide provider of integrated and interactive broadband access solutions, and sells the Products described herein, and Distributor desires/wishes to engage in the business of selling and distributing the Products for Motorola in the Territory.

WHEREAS, Motorola and the Distributor desire to confirm their relationship by entering into this agreement.

NOW THEREFORE, in consideration of the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the Parties agree as follows:

## 1. DEFINITIONS

### 1.1    Definitions

Unless the context requires a different meaning, for purposes of this Agreement the following terms shall have the meanings indicated below (applicable to both the singular and plural forms of the terms defined):

1.1.1 "<u>Affiliate</u>" means, with respect to any Person, any other Person which directly or indirectly controls, is controlled by, or is under common control with, that Person.

1.1.2 "<u>Change of Control</u>" shall be deemed to have occurred if Distributor sells substantially all of its assets or a change occurs in the current ownership of capital stock or other securities of the Distributor which results in a change of twenty percent (20%) or more of the ownership of Distributor (current ownership determined as of the date hereof), whether pursuant to internal transfers of capital stock or securities of the Distributor among the beneficial owners of such capital stock or other securities, or a third party stock or other securities purchase, merger, consolidation or other similar transaction.

1.1.3 "<u>Confidential Information</u>" means information that is confidential and proprietary in nature which may include, without limitation: this Agreement, inventions, discoveries, writings, works of authorship, programs, software, documentation, software object or source codes, trade secrets, algorithms, schematics and related or similar data, designs, diagrams, circuits, methods, architectures, processes, systems, know-how, techniques,

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

specifications, technical data, items of a technical nature, devices, articles of manufacture, apparatus or machines, however embodied or expressed, whether or not patentable and whether or not reduced to practice.  Confidential Information may also include without limitation customer lists, financial information or sales and marketing plans.  Confidential Information shall not include information that: (a) is or becomes part of the public domain through no fault or breach on the part of the receiving Party or any of its subsidiaries, Affiliates or persons to whom Confidential Information is disclosed; (b) was known to the receiving Party or any of its subsidiaries, Affiliates or persons to whom Confidential Information is disclosed free of any obligation of confidentiality at the time of discloser's communication thereof to recipient and such knowledge can be proven by appropriate evidence; (c) is subsequently rightfully obtained by the receiving Party or any of its subsidiaries or Affiliates from a third party without an obligation to keep such information confidential; or (d) is independently developed by employees of the receiving Party or any of its subsidiaries or Affiliates without the use of or access to any Confidential Information or any breach of this Agreement.

(a)     "Customer" shall mean AT&T, or AT&T Affiliates, to which Distributor sells the Products.

1.1.4 "Dollars" or "$" means United States dollars ("USD") and any reference to dollars and/or prices shall refer thereto.

1.1.5 "Microsoft Client" or 'Microsoft Software" shall mean Microsoft TV IPTV Editon Client software, Microsoft WinCE client operating system software, Microsoft application layer interface drivers and adaptation layer drivers for the foregoing, and any other software provided by Microsoft for use in the STBs (as defined herein), including documentation.

1.1.6  "Person" means a natural person or a corporation, partnership, limited liability company, trust, business trust, association, joint stock company, joint venture, pool, syndicate, sole proprietorship, unincorporated organization, governmental authority or any other form of entity not specifically listed herein.

1.1.7  "Products" means the products identified in Exhibit A, as the same may be modified from time to time as set forth herein.

1.1.8 "Set-Top Box" or "STB" shall mean a device consisting of hardware (including chassis, chipsets, memory, central processing unit, system on chip, front panel, power supply, hard drive, home networking interface, and standard and high definition video/audio/data outputs) and associated accessories (e.g. cables, remote controls, advanced function modules), built to offer and display advanced codec (e.g., MPEG-4, Windows Media9) video, audio, and other services such as pay-per-view, electronic program guide, video on demand, network digital video recorder, gaming, video conferencing, e-commerce, and other interactive applications over a secure internet protocol network as further described in Exhibit B attached hereto.  The STB and accessories are components of the MPEG-4 Digital Television System.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

1.1.9   "<u>Taxes</u>" means any sales or use tax, duty or tariff (now or hereafter enacted), excise, ad valorem, stamp, documentary and other taxes, fees or similar charges relating to the Products.

1.1.10  "<u>Territory</u>" means the country or territories set forth on the cover page.

## 2.  DISTRIBUTOR APPOINTMENT

### 2.1     Appointment as Non-Exclusive Distributor

Subject to the terms and conditions set forth herein, Motorola hereby appoints the Distributor as a non-exclusive distributor of Products during the Term and solely in the Territory. Distributor is aware of the existence of products, product groups and services of Motorola other than those set forth in <u>Exhibit A</u>, and consents to limit this appointment solely to the Products. The Products listed on <u>Exhibit A</u> may be modified from time to time by Motorola by notice in writing to the Distributor.  Notwithstanding Distributor's appointment hereunder, this Agreement shall in no way restrict, limit or preclude Motorola from having the right to establish its own sales office and/or appoint other distributors of the Products in the Territory, and Motorola shall have the right to market, sell and service the Products directly or through agents or otherwise in the Territory without incurring any obligations to Distributor.

### 2.2     Appointment Contingency

Distributor's appointment as a non-exclusive distributor of Products in the Territory is contingent upon Distributor's continued performance of each of its obligations set forth in this Agreement.  In the event that Distributor fails to meet any such obligations, Motorola shall have the right to terminate this Agreement pursuant to Article 16.

### 2.3     No Reimbursement of Expenses/Disclosure of Commissions, Fees or Other Compensation

Distributor acknowledges and agrees that notwithstanding anything to the contrary contained in this Agreement, Distributor shall not be entitled to the reimbursement of any expenses incurred by Distributor pursuant to this Agreement and/or otherwise.  In addition, Distributor hereby certifies that (i) no compensation (other than price discounts regarding the Products) shall be made to Distributor pursuant to this Agreement, and (ii) Distributor will comply and has complied with any and all applicable tax, foreign exchange and economic controls relating to sales of the Products and provision of services where the Products are purchased by, and services provided to, customers.

7.11

## 3. OBLIGATIONS OF DISTRIBUTOR AND MOTOROLA

### 3.1 General Obligations of Distributor

Distributor shall:

(a) use its best efforts at all times to develop business for Products and to promote the sale of and sell the Products within the Territory.

(b) purchase the Products exclusively from Motorola.

(c) use only such sales literature and promotional materials for the Products as supplied by Motorola or which have been previously approved in writing by Motorola.

(d) not solicit orders from customers outside the Territory, or establish a branch or maintain a warehouse for distribution of the Products outside the Territory. Distributor may maintain a warehouse and/or sell and fill orders for Products outside the Territory only with the prior written consent of Motorola, such consent not to be unreasonably withheld.

(e) resell and deliver the Products on a first-in first-out method of withdrawing stock for shipment to Customer containing MS Client load. An electronic transaction of log of withdrawals and other activities will be made available using mutually agreed electronic interfaces as provided in the Electronic Data Interface (EDI) Exhibit K of this Agreement. Distributor shall ensure that only whole pallets are withdrawn. For so long as: 1) Motorola's contractual arrangement with AT&T (which shall remain confidential between Motorola and AT&T), for sale of Motorola equipment by Distributor to AT&T is in effect and 2) for so long as such contract includes a provision which in essence requires AT&T to purchase Product that was stocked based on AT&T forecasts and remains in the possession of Motorola or Distributor for more than a ninety day period, then the following clauses (i) and (ii) shall apply:

(i) If VMI in Exhibit M is implemented, shipments received by Genesis remaining in Motorola VMI for more than ninety (90) days without being withdrawn by Genesis for the purposes and manner listed in (e) above shall be deemed to have been consumed in the manner setup in (e) above, and Genesis shall take title and pass trigger EDI 867 per Exhibit K on the first day following such ninety (90) day period subject to subsection (e) above. Nothing in this paragraph shall be deemed to affect the Warranty Period as set forth in Section 8, Warranty and Warranty Repairs.

(ii) If VMI in Exhibit M is not implemented, shipments received by Genesis remaining at Genesis for more than ninety (90) days without being withdrawn by Genesis for the purposes and manner listed in (e) above shall be deemed to have been consumed in the manner setup in (e) above, and Genesis shall take title and pass trigger EDI 867 per Exhibit K on the first day following such ninety (90) day period subject to subsection (e) above. Nothing in this paragraph shall be deemed to affect the Warranty Period as set forth in Section 8, Warranty and Warranty Repairs.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

(f)   submit all customer technical proposals and system designs to Motorola for review to determine their feasibility.

(g)   advise its customers and potential customers and provide, as appropriate, copies of the form of the Software License Agreement and End User Software License Agreements, to be accepted by such customers and their end user customers as a prerequisite to using the Products.

(h)   not engage in a course of conduct which, in the judgment of Motorola, adversely affects or is likely to adversely affect Motorola's reputation or interests in the promotion, marketing or distribution of the Products.

(i)   be responsible at its sole cost for obtaining all relevant government licenses, permits and other approvals in connection with this Agreement and re-selling the Products in the Territory.

(j)   not use any tradenames, trademarks or logos owned by Motorola, including but not limited to the names "General Instrument", "General Instrument Corporation", or "Motorola," or any similar name or the name of any of Motorola's models of Products, as part of its firm, trading, or corporate names. Distributor's use of said tradenames, trademarks or logos or any similar name or the name of any of Motorola's models of Products, shall be solely limited to its activities in support of the sale of Products as contemplated by this Agreement.

(k)   In the event of Change in Control or any other material change in Distributor's ownership or its principals, promptly provide written notice to Motorola, but in no case more than fifteen (15) calendar days following such event.

(l)   fully cooperate with Motorola in the conduct of Motorola's due diligence review of Distributor as required by the then current version of Motorola's G-9 and G-13 policies. Distributor acknowledges and agrees that such due diligence review shall include, without limitation, (i) the completion and submission of Motorola's G-9 Form A (to be approved by Motorola in its sole discretion in accordance with Motorola's G-9 policy) prior to engagement as a Distributor, such G-9 Form A to be updated and resubmitted as requested by Motorola, (ii) on an annual basis, certification of no material change in the information contained in Distributor's then-current approved G-9 Form A in the format requested by Motorola, (iii) in the event this Agreement is renewed or materially modified, or there is a material change in the information supplied by the Distributor in G-9 Form A (including without limitation a Change in Control or a change in the Distributor's relationship to any governmental entity), a new due diligence review by Motorola will be conducted, (iv) the completion and submission of Motorola's G-13 form and re-certification every two years, and (v) at Motorola's sole discretion, Motorola may require that a third party conduct an additional due diligence review of Distributor.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

- (m) Meet Labeling Requirements as defined in Exhibit J.

- (n) Meet the TPI Schedule requirements as defined in Exhibit L.

- (o) In the event Distributor re-palletizes Motorola's palletized shipments to Distributor, Distributor shall be responsible for programming and installing the new RFID tags.

## 3.2 Support Obligations of Distributor

Distributor shall:

- (a) employ suitably trained personnel for sales, sales support, and post-sales activities;

- (b) have suitable storage facilities for the Products in stock;

- (c) be primarily responsible for customer support and shall only request on-site support from Motorola (at Distributor's cost) upon adequate advanced notice.

## 3.3 Obligations of Motorola

Motorola shall:

- (a) Supply its standard Product Documentation to Distributor in reasonable quantities and at no charge.

- (b) Pay for inbound and outbound freight and insurance charges. Warranty and Repair freight charges are described in Section 8.

- (c) Train Distributor personnel on products as mutually agreed upon.

- (d) Assist Distributor in coordinating production, purchase orders and stocking levels to help Distributor prevent shortages, obsolete and excess inventory conditions.

- (e) Notify Distributor of issues that may delay deliveries to Customer such as manufacturing materials on allocation.

- (f) Notify Distributor of planned products changes and work with Distributor and Customer to prevent obsolescence of product in Distributor's inventory.

- (g) Provide spare RFID tags to replace factory tags when necessary.

- (h) Make on time deliveries to Distributor as indicated on Purchase Order.

- (i) Provide accurate Advanced Shipping Notices that contain all Customer required data and in the proper format.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

(j)     In the event of Motorola supply chain issues, expedite costs including air freight charges.

(k)     Pay costs associated with Class A or Class AC Product Change Notices

(l)     Collaborate with Distributor on the development of an inventory replenishment plan.

(m)     Meet all Customer product and packaging specifications.

## 4.  PRICING, DISCOUNTS AND PAYMENT TERMS

### 4.1   Prices

4.1.1       Motorola shall sell the Products to the Distributor at the prices listed on Exhibit A, as amended (the "Prices").

4.1.2   Prices are quoted FOB Destination according to INCOTERMS 2000. Consistent with the foregoing, Prices include insurance, transportation, shipping, and Taxes (except on Motorola's income) relating to the Products provided hereunder, all of which shall be Distributor's sole responsibility and shall be paid by Distributor.  All Prices are in US Dollars

### 4.2   Payment Terms

Unless the Parties are operating under a VMI arrangement as contemplated in Exhibit M or other payment arrangements are mutually agreed upon between the parties, prior to any Product sales under this Agreement, Distributor shall pay for all products within 30 days after delivery to Distributor.   After the due date for any payment, the lesser of one and one-half (1.5%) percent of the unpaid balance (annual rate of 18%) or the maximum late payment penalty charge permitted by law may be added for each month or part thereof that payment is delayed.  Distributor shall also reimburse Motorola for all costs associated with Motorola's attempt to collect amounts due under an order, including all costs associated with employing a collection agency or initiating legal action to collect amounts due.

### 4.3   Resale Prices

Distributor shall determine its own resale prices.  Motorola may, however, from time to time, provide Distributor with suggested retail price lists and/or offer promotional materials, but shall not be obligated to provide either.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

### 4.4    Credit

Unless other payment arrangements are mutually agreed upon between the parties, prior to any Product sales under this Agreement, Distributor must secure an acceptable letter of credit or guaranty acceptable to Motorola in accordance with the procedures set forth in Exhibit E.

4.5    The VMI payment structure defined in Exhibit M requires Motorola to own inventory until it is withdrawn by Genesis to load the Microsoft Client, and such VMI process shall apply at the commencement of this Agreement.  Motorola may require Distributor to switch to an alternative payment structure through coordination with Distributor.  After July 1, 2009, within 60 days after written request from Motorola, Distributor shall use best effort to obtain additional financing that enables Distributor to pay Motorola within 30 days after delivery of Products to the Distributor's warehouse.  If Distributor is unable to secure financing within 30 days after Motorola's request, and a new mutual agreement is not reached, then Motorola shall have the right to terminate this Agreement.

4.6    Payments in Escrow

Notwithstanding any provision in this agreement to the contrary, Distributor agrees that it shall require all payments from its customers for Motorola Products to be made payable to an escrow account.  The terms governing release of monies from such escrow account shall be substantially similar to those attached in Exhibit N, and in any event must require written instructions signed by both Motorola and Distributor prior to any payment of monies from such escrow account to Distributor, and shall grant Motorola a priority secured creditor security interest in both the Motorola Products and any proceeds from the sale of such Products.  For the avoidance of doubt, Distributor hereby grants Motorola a Purchase Money Security Interest in all Products provided by Motorola pursuant to this Agreement and the proceeds from the sale of such Products, and Distributor agrees to execute such UCC financing statements, security agreements and other documents as may be reasonably required to perfect such security interest.  **Failure of Distributor to require payment from any customer as set forth in this section, or failure to otherwise abide by the requirements of this section, will constitute a material breach of this Agreement that will allow Motorola to immediately terminate this agreement and recover all unpaid-for Products from Distributor without legal process, in addition to any other remedies that may be available to Motorola in this Agreement, at law or in equity.**

## 5.  FORECASTS AND REPORTS

### 5.1    Forecasts

Motorola and the Distributor shall convene weekly to review forecast information from Customer, Customer consumption information, and any factors affecting Customer future consumption. On a weekly basis as this information is reviewed, a Distributor Purchase Quantity shall be determined and Planning Orders placed to accommodate Motorola's 90 day lead times.

- Genesis to provide Motorola with planning orders 90 days prior to the date of delivery to Genesis warehouse.Reports

5.2    Distributor shall furnish Motorola with the following on an ongoing basis:

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

(a)     Daily transaction reports through Electronic Data Interface (EDI) from distributor inventory system to Motorola indicating the units that have been pulled from inventory for software loading indicating consumption by Customer

(b)     mid-year and year-end financial statements; Quarterly encumbrance certification

(c)     monthly inventory and sales report detailing Product models and quantities with such other information as Motorola may reasonably require;

(d)     such other reports or information as Motorola may reasonably request from time to time concerning the financial position of the Distributor and the sale of Products in the Territory; and

(e)     immediate notification upon any proposed or actual change in the management, control or ownership of Distributor, including without limitation a Change in Control.

5.3   Failure of Distributor to provide the reports required herein may result in Motorola's withholding any fee, commission, discount, or other compensation that may be due to Distributor, if any.

5.4   Motorola shall furnish Distributor with the following on an ongoing basis:

(a) Advanced Shipping Notice (ASN)

(b) Transportation issue report as needed

## 6.  ORDERING PROCEDURES AND CANCELLATIONS

6.1     Orders

Distributor planning orders shall become firm purchase orders ("Firm Orders") thirty days prior to the delivery date. Distributor shall place planning orders ("Planning Orders") for all Products with Motorola by using Motorola's then current purchase form.  Motorola will respond to such Planning Orders by either completing Motorola's then current order acknowledgement form accepting the Planning Order or by providing notice to Distributor of Motorola's inability to fulfill or Motorola's rejection of the relevant Planning Order.  No additional or different terms included on any orders (whether printed, stamped, typed or written), except those specifying the quantity and type of the Products ordered, and/or invoicing instructions and shipping instructions, shall be binding on either Motorola or Distributor.  Motorola shall not be obligated to accept any order from Distributor in amounts that materially exceed Distributor's monthly forecast as referenced in Section 5.1.  Standard delivery lead times for Products are 90 days after Planning Order acceptance by Motorola.

Order Cancellations

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

A Firm Order shall not be terminated by Distributor without Motorola's prior written consent, which may be withheld in Motorola's sole discretion.  A Planning Order shall not be terminated by Distributor without Motorola's prior written consent, which will not be unreasonably withheld for Planning Orders.  If Motorola so consents to such termination, Distributor shall be liable for termination charges including, without limitations, a price adjustment based on the quantity of Products actually delivered and all costs incurred and committed by Motorola for such Firm Order together with reasonable allowance for prorated expenses and anticipated profits. Motorola has the right to terminate an order if:

(a)     in Motorola's sole and good faith judgment, Distributor's financial condition does not justify the terms of payment applicable from time to time and Distributor does not immediately comply with any modification of such payment terms, or

(b)     Distributor fails to pay for the Products when payment is due or make arrangements to so do which are acceptable to Motorola; or

(c)     Distributor defaults in any agreement with Motorola or with any third party providing financing to Distributor, or

(d)     Distributor engages in a course of conduct which, in the sole and good faith judgment of Motorola, substantially and adversely affects Motorola's reputation or its interests in the promotion, marketing or distribution of its products, or is otherwise deemed to be just cause for termination pursuant to prevailing laws, or

(e)     Any government entity in any legal proceeding alleges that Distributor (including without limitation, any of its officers, directors, employees or agents) has violated any local anti-corruption laws or the United States Foreign Corrupt Practices Act.

Upon termination of an order, all sums, including interest, owing by Distributor to Motorola related to the termination of the order shall immediately become due and payable without notice and Motorola shall thereupon have all of the rights and remedies of a seller under applicable law, as well as all rights specified in this Agreement.

## 7.  DELIVERY AND ACCEPTANCE

### 7.1     Shipping; Risk of Loss; Title

Unless the parties are operating under the VMI process in Exhibit M, the process in this Section 7.1 shall apply:

7.1.1   All shipments of Products and any documentation and marketing materials shall be shipped FOB Destination in the United States of America according to INCOTERMS 2000. Title to the Products shall pass at the FOB Destination point. In the event that any government entity in any legal proceeding alleges that Distributor (including without limitation, any of its officers, directors, employees or agents) has violated any local anti-corruption laws or the United States Foreign Corrupt Practices Act, Motorola may, without any liability whatsoever to Motorola,

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

suspend any shipments of accepted Orders of Products until Distributor is officially cleared of such allegations in accordance with applicable law.

7.1.2   Risk of loss from any cause whatsoever shall be borne by the Distributor from the time of Motorola's delivery of the Products to a carrier at the FOB Destination point.

7.1.3  If Distributor fails to pay such sums as are due to Motorola, Motorola shall have the right to take possession of any Products delivered hereunder as may be in Distributor's possession or control, and to resell, retain or otherwise dispose of the same, offsetting against such unpaid sums any moneys received (net of costs and expenses) as a result of any resale of such Products.  As further security for any and all indebtedness to Motorola, Distributor hereby grants to Motorola, until such time as full payment has been received therefor, a purchase money security interest, with priority over all other security interests, in all (a) Products to which Distributor has or will acquire title hereunder, (b) present and future accounts receivable and contract rights arising from Distributor's sale, lease or transfer of such Products, and (c) proceeds and accessions of and to any and all of the foregoing.  Distributor authorizes Motorola to execute and file, at any time or times, on Distributor's behalf, one or more financing statements, documents or certificates as may be applicable in the Territory with respect to such Products, signed only by Motorola on Distributor's behalf and to otherwise perfect such security interest, and Distributor will cooperate fully in accomplishing the same.

7.2   Installment Deliveries

Motorola has the right to deliver Products in installments within the PO delivery due date. Motorola shall not be liable for any loss or expense (consequential or otherwise) incurred by Distributor if Motorola fails to meet an installment delivery date for any reason, including, but not limited to, a Force Majeure Event or any other unavoidable production delays, delays in prompt approval of samples by Distributor, modification of specifications previously agreed upon, delays in submission of specifications acceptable to Motorola or delays due to the fact that Motorola has placed Distributor on credit hold.  Delays in performance, delivery, nonconformity or nondelivery of an installment shall not relieve Distributor of its obligations hereunder with respect to any other installments, each installment being deemed to be a separate contract.

7.3   Product Inspection and Acceptance; Notice of Claims

All Products delivered hereunder shall be inspected by Distributor within five (5) days after receipt thereof, and such Products shall be conclusively deemed accepted by Distributor unless Distributor provides written notice to Motorola within such five (5) day period of any claim that Products were received "short", do not conform to Motorola's warranties in Article 8 hereof, or are physically damaged (other than damage in transit which is Distributor's responsibility hereunder).  Rejected Products shall be placed by Distributor in safe storage for inspection by Motorola or returned by Distributor as instructed by Motorola in accordance with Article 8. Rejected Products remain at Distributor's risk until returned to Motorola. Distributor may not return any product that has been ordered and delivered to them under any circumstances other than those requiring repair or replacement under warranty.

7.4   Reservation of Rights to Change Design of Products

Motorola reserves the right to make changes and modifications in specification, construction, or design of the Products at any time and from time to time and any Products so modified shall be accepted by Distributor as standard construction in fulfillment of existing

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

orders; provided, however, that Distributor shall not be required to accept any Product as modified in order to fulfill existing orders if, in the reasonable judgment of Motorola, the Product as modified does not meet or exceed the original specifications.  Motorola shall not be required to retrofit the Products previously delivered to Distributor with any modifications.

### 7.5    Product Discontinuance

In addition to the provisions of Section 2.1 permitting modification to the Products listed on Exhibit A and Section 7.4 above, Motorola may from time to time cease the supply of then existing versions of a Product (the "Discontinued Product").  If Motorola does so, it will notify Distributor promptly in writing and Distributor shall have a period of ninety (90) days after the date of the notice to place a final lifetime Order for Discontinued Product.  Motorola shall allow Distributor to place a final lifetime Order for spare parts for the maintenance and repair of Discontinued Products at such time as Motorola notifies Distributor in writing that it will no longer provide support for such Product.  A shipping schedule for quantities ordered in any final lifetime Order shall be agreed to between Distributor and Motorola.  The price payable for any final lifetime Order shall be mutually agreed upon by Distributor and Motorola before Distributor places such Order.

## 8.  WARRANTIES AND WARRANTY REPAIR

### 8.1    Warranties

Motorola warrants to the Distributor's Customer, and, except as provided below, not to the Distributor, that the Products, when shipped, will be free of defects in workmanship and material and conform substantially in accordance with their published specifications under normal use and service for the periods set forth in Exhibit F (the "Warranty Period"). The warranty to the Customer includes the hardware, packaging and packing materials.  If the parties are not operating under VMI Motorola warrants the Product to the Distributor for one hundred and twenty (120) days after delivery to Distributor; provided, however, that if the Parties are operating under VMI the warranty will only be provided to Distributor's customer and the warranty period shall begin and run as provided in Exhibit M.

#### 8.1.1 REPAIR and RETURN – In Warranty

During the Distributors Warranty Period (Exhibit F), Defective STBs will be returned to Motorola for repair or replacement.  Motorola will (i) complete repairs or replace the STB; (ii) apply applicable Motorola Product Change Notices; (iii) delete access to all previously recorded Content (but not Microsoft Software or any other software necessary for the operation of the STB) from any hard drive (i.e. execution of the tool will ensure that the next customer who receives the STB will not have access to previously stored content); (iv) ship the repaired or replaced STB back to Distributor; and (v) apply or refresh RFID tag with Product information and (vi) if Distributor notifies Motorola that repair time has exceeded thirty (30) days, Motorola will have fifteen (15) days to develop a mutually acceptable plan to correct the issue, or if that is not possible Motorola will credit Distributor the price of the unrepaired Product .  Repair will

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

be provided at no charge for units under Warranty.  Distributor will pay in bound shipping and Motorola will pay outbound shipping.

Distributor will accumulate not less than a standard pallet size number of units at a consolidation point prior to return.  Each unit will be tracked via a Return Material Authorization ("RMA").   The Distributor Warranty Period for which a Repaired, Refurbished, and Returned STB will continue to be covered is the lesser of the time period referenced in Exhibit F or until the unit is shipped out by Distributor to the Customer.  If a unit is replaced rather than repaired, Motorola will notify Distributor of the new serial number of the replacement unit at the time of shipment and the replacement unit shall be warranted for the remainder of the warranty of the replaced STB.

STB's returned for repair that have been subjected to shipping damage, improper installation, maintenance or repair, abnormal conditions of operation, attempted modifications or repair, or Act of God will be repaired, if economically repairable, and charges consistent with Out of Warranty Repair will apply regardless of the Warranty status of the STB.  For such Set-Top Boxes that Motorola determines are beyond economic repair, Motorola will notify Distributor, charge Distributor an eighteen dollar ($18.00) diagnostic/disposal fee, and dispose of the Set-Top Box unless Distributor requests that it be returned at Distributor's expense.

If an aggregate of greater than five percent (5%) of each RMA shipment of returned Set-Top Boxes are No Problem Found ("NPF"), Distributor shall pay twenty dollars ($20.00) to Motorola for each NPF Set-Top Box above the five percent (5%) threshold. In the event that returns exceed the 5% NPF threshold, Motorola will work with Distributor (including sending personnel to Distributor facility) to assist with diagnosing the cause in order to reduce the NPF returns below the 5% threshold.


Motorola shall provide at no charge to Distributor test station software for STB hardware testing designed to assist the Distributor in reducing the NPF issues test station hardware and other required equipment such as routers.  Motorola shall provide assistance in setting up and training of the test station.  The "VIP 12nn Screening Procedure" document (MOT275-3) provides the screening guidelines for the VIP12xx set-top boxes as well as the test station setup.  This document will be provided to Distributor upon request.

For the purposes of this Section, the Parties agree that Motorola shall have no obligation regarding Microsoft Software in the STB.

Notwithstanding anything contained in this paragraph, Motorola shall not be obligated to repair or replace any Defective STB that is still under Warranty due to the conditions stated below.  In such case of STB requiring repair (with the exception of any Defective STB due to the conditions stated below), Motorola will provide an estimate of the cost to repair damaged STB for Distributor. Distributor at it's option may either 1) have the STB repaired or replaced at the estimated cost provided by the Motorola, or 2) have Motorola dispose of the STB at a cost to Distributor of eighteen dollars ($18.00) for material handling and disposal fee.


Motorola shall at no time be liable for failure or damage caused by:  Genesis workmanship as part of the Microsoft client loading process or repackaging, any abuse,

7.11

13

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

accident or damage to Equipment caused by end users; misuse, accident or neglect; ventilation, storage, environmental or site conditions not conforming to agreed Specifications; unauthorized alteration or repair; use of unapproved or incompatible parts, devices, accessories or software in conjunction with the Equipment; an event of Force Majeure; installation, optimization, operation or movement of the Equipment agreed Specifications; failure to maintain the Equipment substantially in accordance with the Specifications; shipment of the Equipment from Distributor to Motorola; failure of telephone lines or other interconnections; failure to follow reasonably clear operating instructions; incorrect line voltage; sloppy reinstallation of Equipment by Distributor; spilled liquids; use of incorrect fuses; vandalism; or use for any reason other than the designed purpose or a reasonable or foreseeable deviation from such purpose stated in the Specifications.

For both In-Warranty and Out-of-Warranty repairs, material will not be returned without a Return Service Authorization ("RSA") a.k.a Return Material Authorization ("RMA") issued by Motorola.  All Material being returned to Motorola shall be packaged to ensure that each unit is protected from any shipping damage.  Distributor shall only return the STB; Motorola shall not return any accessories back to Distributor along with repaired unit.

Distributor shall furnish the following information with Material that Distributor returns to Motorola for repair:
- Distributor 's name and complete address;
- Names and telephone numbers of the Distributor 's employees to contact with questions about the Material to be repaired;
- The address to which Motorola should return repaired Material, if different from above;
- Billing address for repaired Material, if different from above;
- A complete list of Material returned;
- The nature of the defect or failure, or general reason for return

### 8.1.2 REPAIR and RETURN – Out Of Warranty

After the Warranty Period, Defective STBs may be returned to Motorola for repair or replacement.  Motorola shall determine whether it is economically feasible to repair any out of Warranty Material.  Distributor will pay in bound and out bound shipping.

If Motorola determines it is economically feasible to repair such defective STBs, Motorola will Repair and Return such at a price of fifty seven dollars ($57.00) for each Set-Top Box if the HDD (if any) does not require repair, or hundred twenty dollars ($120.00) if the HDD does require repair.

Additionally, Motorola will delete access to all previously recorded Content (but not Microsoft Software or any other software necessary for the operation of the STB) from any hard drive (i.e. execution of the tool will ensure that the next customer who receives the STB will not have access to previously stored content).

7.11

If Motorola determines it is not economically feasible to repair the Set-Top Box, Motorola will notify Distributor, charge Distributor an eighteen dollar ($18.00) diagnostic fee and dispose of the Set-Top Box unless Distributor requests that it be returned at Distributors expense.

The Warranty Period for Services provided by Motorola under this Section shall be the lesser of one hundred and twenty (120) days, or when the Distributor sends the STB to the Customer.

If an aggregate of greater than five percent (5%) of each RMA shipment of returned Set-Top Boxes are No Problem Found ("NPF"), Distributor shall pay twenty dollars ($20.00) to Motorola for each NPF Set-Top Box above the five percent (5%) threshold.

For the purposes of this Section, the Parties agree that Motorola shall have no obligation regarding Microsoft Software in the STB. **MOTOROLA MAKES NO WARRANTIES WHATSOEVER REGARDING ANY SOFTWARE AND/OR COMPONENTS OF THE SOFTWARE CREATED OR OWNED BY ANY THIRD PARTY.  THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES EXPRESSED, IMPLIED OR STATUTORY RELATING TO THE SOFTWARE AND THE STORAGE MEDIA, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND WARRANTIES OF MERCHANTABILITY.**

8.2    Warranty Limitations

The warranties set forth in this Article 8 shall not extend to (a) any items subjected to accident, misuse, neglect, alteration, electrical surges caused by lightning, improper handling, improper transport, improper storage, improper use or application, improper installation (including, but not limited to, connection to improper voltage supply), improper testing or unauthorized repair; or (b) cosmetic problems or defects which result from normal wear and tear under ordinary use of the Products or any parts thereof; or (c) Genesis workmanship as part of the Microsoft client loading process or repackaging. No technical advice or services provided by Motorola in connection with the Products shall have any effect whatsoever on Motorola's warranties.    MOTOROLA MAKES NO WARRANTY AS TO ITEMS THAT MOTOROLA INDICATES ARE EXPERIMENTAL OR DEVELOPMENTAL PRODUCTS, OR ANY OTHER PRODUCTS THAT ARE CREATED OR OWNED BY ANY THIRD PARTY AND ARE NOT MANUFACTURED BY MOTOROLA.    AS TO PRODUCTS NOT MANUFACTURED BY MOTOROLA, AT THE DISTRIBUTOR'S REQUEST, MOTOROLA SHALL ASSIGN TO THE DISTRIBUTOR ANY RIGHTS MOTOROLA MAY HAVE UNDER ANY WARRANTY OF THE SUPPLIER, TO THE EXTENT PERMITTED BY MOTOROLA'S CONTRACT WITH ITS SUPPLIER. THE WARRANTIES SET FORTH IN THIS ARTICLE 8 ARE IN LIEU OF ALL REPRESENTATIONS, CONDITIONS OR WARRANTIES, EXPRESSED, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, MERCHANTABILITY OR CONDITIONS OF SATISFACTORY QUALITY.

8.3    Nonconforming Products; Warranty Returns

Motorola must be notified of any warranty claims with respect to the Products no later than the expiration of the Warranty Period. In the event Distributor timely and rightfully rejects or revokes acceptance of Products under the procedures set forth herein and/or notifies Motorola of

7.11

a breach of warranty relating to a Product, Motorola's sole and exclusive liability shall be (at Motorola's option) to repair, replace or credit Distributor's account with respect to any such Product returned to Motorola during the applicable acceptance or Warranty Period, as the case may be, upon the following conditions:

(a)   Motorola issues a Class A or AC Product Change Notice

(b)   Repairs to be completed by Motorola within 30 days (dock to dock). Distributor will pay for the freight charges to return Products to their repair center. Motorola will pay for the freight charges to return Product to Distributor.

(c)   Products may not be returned without a return service authorization ("RSA") and will be refused and returned freight collect to the sender;

(d)   Products shall be packed securely and shall be shipped freight prepaid (with Taxes and brokerage fees (if applicable), risk of loss and all other charges associated with the return of such Products being the responsibility of the Distributor), together with a statement setting forth the claimed defect;

(e)   all returns under this Section shall be shipped in accordance with all other instructions (if any) contained in the RSA; and

(f)   all return shipments will clearly indicate the RSA number on the mailing label.

All Products returned pursuant to this Section shall be subject to examination by Motorola. Following notice by Motorola and a 30 day cure period, the failure of Distributor to comply with the procedures and conditions set forth above shall void Distributor's rights and remedies with respect to any such Products, and such Products may be returned by Motorola to Distributor for full payment in accordance with the provisions of this Agreement.  In such an event all freight, insurance, Taxes, brokerage fees and all other charges associated with the transportation of such Products (collectively "Transportation Charges") back to Distributor, including risk of loss, shall be Distributor's responsibility. Following written notification and a 30 day cure period, Motorola reserves the right to withhold Distributor's remedy hereunder with respect to nonconforming Products until the Distributor has fully paid any past due amounts owed to Motorola.

8.4   Warranty Policy Changes

Motorola may, in its sole discretion, change its warranty policy at any time upon reasonable notice, and in such event Motorola's obligations and the Distributor's rights shall be governed by the warranty policy in effect at the time of the purchase of Products by the Distributor.  Such changes will apply only to purchases of Products in the future, and any change will not affect previously purchased Products.

8.5   Distributor Relationship with Customer

To the extent that the Distributor makes any express or implied warranty or indemnity to its customers or any other third party in respect of the Products and/or Software or any representation with regard to the Products and/or Software, or Motorola's obligations under this Agreement, it is expressly understood and acknowledged by the Distributor that any such warranty, indemnity and/or representation shall be made solely for the Distributor's account and

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

shall not bind Motorola.  In addition, Distributor shall indemnify Motorola for any and all claims, losses and/or damages which Motorola suffers related to any such warranty, indemnity and/or representation.

### 8.6    Distributor Warranty

Distributor's warranty responsibility to Customer shall be limited to any Distributor workmanship issues including but not limited to loading the Microsoft Client, opening and repackaging the STB, and other Distributor workmanship issues.


### 9.0    THIS SECTION INTENTIONALLY LEFT BLANK.


## 10. REPRESENTATIONS AND WARRANTIES

### 10.1    Mutual Representations and Warranties

Each Party represents and warrants to the other that:

(a)    it has full legal power and authority to carry on its business and to enter into this Agreement and perform all of its obligations hereunder; and

(b)    subject to any required governmental approvals, neither the execution nor delivery of this Agreement, nor the fulfillment nor compliance with the terms and provisions hereof, will conflict with, or result in a breach of terms, conditions or provisions of, or constitute a default under, or result in any violation of its charter or by-laws, if any, or any agreement, restrictions, instrument, order, judgment, decree, statute, law, rule or regulation to which it is subject, or require any consent, approval or other action by any court or administrative or governmental body.

### 10.2    Distributor Representations and Warranties, Covenants and Certifications

Distributor represents, warrants, covenants and certifies to Motorola that:

(a)    it shall sell the Products only to telecommunications customers in the Territory.

(b)    the Products that it purchases from Motorola will be used in such licensed systems;

(c)    to the best of Distributor's knowledge, the Products will not directly or indirectly be used to further the illegal theft of services or any other unauthorized receipt, interception, publication, distribution of, or interference with any privately owned transmissions of information;

(d)    Distributor shall not sell Products purchased hereunder to any buyer where the Distributor knows or should know that such purchases are being made for resale of the Product for unlawful or unauthorized use.  The Distributor

7.11

shall also be prohibited from arranging for Products to be serviced by an individual or entity that Distributor knows or has reason to know is engaged in the sale or service of products for illegal or unauthorized use;

(e)     the information supplied by Distributor to Motorola and/or any of its representatives during Motorola's due diligence review of Distributor (including without limitation information supplied during Motorola's due diligence review of Distributor as part of Motorola's G-9 compliance policy) is true, correct, complete and accurate in all respects, and Distributor has not misstated any fact contained within such information nor made any omission of fact relevant to such due diligence review. In addition, in the event of any material changes to the original information supplied by Distributor during the due diligence review, Distributor hereby certifies that it shall promptly inform Motorola in writing of such material changes, and hereby acknowledges that following receipt of such notice, Motorola shall have the right to review, and in Motorola's sole discretion terminate, Motorola's appointment of the Distributor;

(f)     Distributor has received a copy of certain provisions of Motorola's Code of Business Conduct attached hereto as Attachment 1 and made a part hereof, and Distributor shall comply with all the provisions thereof; and

(g)     Distributor shall fully cooperate in any investigation of Distributor activities by Motorola or any legal or regulatory body.

## 11. ELECTRONIC DATA INTERCHANGE (EDI)

At the request of either Distributor or Motorola and the mutual agreement of both Parties, the Parties shall exchange orders, payments, acknowledgements, invoices, remittance notices, and other records ("Data") electronically, in place of tangible documents.  EDI requirements and transactions are outlined in Exhibit K.

## 12.0  THIS SECTION INTENTIONALLY LEFT BLANK.

## 13. CONFIDENTIAL INFORMATION & PUBLICITY RESTRICTIONS

### 13.1     Confidential Information

In connection with this Agreement, Motorola has disclosed and furnished and in the future may disclose or furnish to Distributor Confidential Information.  Confidential Information provided orally will be considered proprietary if Motorola says it is proprietary at the time of oral disclosure and summarizes it in a proprietary writing provided to Distributor within thirty (30) days of the oral disclosure.  All of the protection and restrictions contained in this Agreement as to the use and disclosure of Confidential Information shall apply during said thirty (30) day period.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

13.2    Obligations of Distributor

Distributor shall:

(a)    hold Confidential Information in confidence and not disclose to third parties without Motorola's express written consent;

(b)    restrict disclosure and use of the Confidential Information to employees (including any contractors or consultants) with a need-to-know for purposes of this Agreement;

(c)    require those employees, contractors and consultants to sign a Non Disclosure Agreement indicating their agreement to be bound by confidential obligations with respect to the Confidential Information substantially similar to those contained herein;

(d)    not copy, duplicate, reverse engineer or decompile Confidential Information; and

(e)    use the Confidential Information only in furtherance of performance under this Agreement and shall not use Confidential Information for its own benefit.

13.3    No License

Neither the disclosure nor furnishing of Confidential Information shall be construed as granting to the Distributor either expressly or by implication, estoppel or otherwise, any license or right to make use of such Confidential Information, except as otherwise expressly provided in this Agreement, and Distributor agrees that neither it nor any of its subsidiaries, Affiliates, officers, directors, employees, agents or representatives will make use thereof without the specific and express written consent of Motorola prior to such use.  Furthermore, Distributor agrees that the Confidential Information is the sole property of Motorola and that Distributor has no proprietary interest in such information whatsoever.

13.4    Return of Confidential Information

Within ten (10) business days after receipt of Motorola's written request, Distributor shall return to Motorola all Confidential Information and all materials containing Confidential Information, including but not limited to documents, drawings, programs, lists, models, records, compilations, notes, extracts and summaries, whether prepared by Motorola or Distributor, or any of their respective subsidiaries, Affiliates, officers, directors, employees, agents or representatives, or with the consent of Motorola, shall destroy such Confidential Information and materials and provide Motorola with a written statement attesting to such destruction.

13.5    Confidentiality Term

Obligations imposed by this Article 13 shall survive for a period of three (3) years after termination or expiration of this Agreement for any reason.

13.6    Publicity

Distributor will not, and will ensure that its employees, agents, advisers and sub-contractors will not, make any announcement, or originate any publicity or press release, or otherwise provide any information to any third party for publication concerning this Agreement

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

(including, without limitation, the terms of this Agreement, the products or territories covered by this Agreement, and/or any dispute or disagreement relating to the Agreement) without the prior written consent of Motorola.  The provisions of this Section 13.6 will not prevent the Parties from subsequently referring to any matters which have been disclosed in a press release or other public announcement previously agreed and issued pursuant to this Section.

13.7    Injunctive Relief

Distributor acknowledges and agrees that unauthorized use or disclosure of Confidential Information or a violation of the restrictions on publicity may cause serious, irreparable and significant harm, damage or loss to Motorola which will be difficult or impossible to ascertain. Accordingly, Distributor agrees that Motorola shall have, in addition to all other remedies at law or in equity, the right to seek immediate injunctive relief to enforce Distributor's obligations under this Agreement.

## 14. SECURITY PROCEDURES

14.1    Procedures.

Distributor shall take all measures necessary to strictly control access to each of its facilities where the Products and/or Confidential Information is stored.  Such measures shall include, but shall not be limited to, all Products, Software and Confidential Information shall be stored in secured facilities, accessible only by Distributor's employees, Customers and other business partners who are under NDA  Motorola shall have the right at any time on reasonable notice to Distributor to inspect the facilities and to audit Distributor's books and records in order to verify compliance with Distributor's obligations under this Article 14 and Section 10.2 hereof.  Such inspections and/or audits shall be at Motorola's cost unless a breach of these obligations is found, in which case, Distributor shall be solely responsible for all costs of Motorola inspections and/or audits.

## 15. SOFTWARE AND FIRMWARE LICENSES

15.1    Software License

Any software program or documentation which is shipped with the Products (collectively, "Software"), ordered by Distributor for distribution to Distributor's customers are third party licenses and will be governed by the terms of the Licenses supplied by the third parties.  Distributor shall not modify, adapt, translate, or create derivative works based upon the Software or firmware described herein. For the purposes of this Section, the Parties agree that Motorola shall have no obligation regarding Microsoft Software in the STB.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008

## 16. TERM OF AGREEMENT AND TERMINATION

### 16.1    Term

This Agreement shall commence as of the Effective Date and shall continue for a term expiring on December 31, 2011, years (the "Term"), unless otherwise terminated pursuant to this Article 0.

### 16.2    Termination by Either Party

Either Party may terminate this Agreement by written notice in the event of:

(a)    a material breach of any provision of this Agreement where the breaching Party fails to cure such breach within thirty (30) days following receipt of notice of such breach from the non-breaching Party; or

(b)    any Party making an assignment for the benefit of creditors, or a filing of a petition of reorganization or bankruptcy, or other similar activities.

### 16.3    Termination by Motorola

Distributor acknowledges and agrees that any of the following events shall constitute just cause for the immediate termination of this Agreement without any liability whatsoever to Motorola (including without limitation any obligations that arose prior to the effective date of termination, and that accordingly Motorola may terminate this Agreement effective immediately by written notice in the event of:

(a)    Distributor's engaging in a course of conduct which, in Motorola's sole and good faith judgment, substantially and adversely affects Motorola's reputation or its interests in the promotion, marketing or distribution of its products;

(b)    Distributor's inability to direct its affairs whether by virtue of the ownership of shares or otherwise;

(c)    Distributor experiencing a Change of Control;

(d)    Distributor's violation of any law, rule or regulation of the United States, the Territory or otherwise which is applicable to Distributor and/or its obligations hereunder;

(e)    Distributor's violation of any applicable provision of Motorola's Code of Business Conduct attached hereto as Attachment 1 and made a part hereof;

(f)    Distributor's material omission or misrepresentation of the due diligence review information referenced in Section 10.2(e), failure to timely notify Motorola of any material changes to such information, or to provide Motorola with complete and accurate information in any other documentation or communications provided by Distributor hereunder;

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

(g)    Distributor's failure or the failure of any of its employees or representatives to comply with the provisions set forth in Section 19.2.2.

16.4    <u>Rights following Termination</u>

Upon termination or expiration of this Agreement for any reason:

(a)    Distributor shall remain liable for and make all payments, due, including interest, owing to Motorola for Products shipped prior to the Termination Date;

(b)    Distributor shall turn over to Motorola on or prior to the Termination Date, any and all of Motorola's sales promotion materials such as catalogues, price lists, technical manuals, signs, displays, sales promotional and other material and literature;

(c)    Motorola shall have the option, for a period of thirty (30) days after the Termination Date, to repurchase in whole or in part any Products in the possession of the Distributor and unsold on such date, at the price which the Distributor paid, less the cost of repairing or reconditioning such repurchased equipment found by Motorola to be incomplete, modified or in a damaged condition.  Except in the event of a termination by Motorola pursuant to Sections 16.2(a) or 16.3, any Products which remain in the possession of the Distributor following Motorola's exercise of or failure to exercise the aforementioned option may be sold by Distributor for its own account without any liability whatsoever to Motorola hereunder or otherwise.  In the event of a termination of this Agreement by Motorola pursuant to Sections 16.2(a) or 16.3, Distributor may not sell, transfer or otherwise distribute any Products which remain in its possession as of the Termination Date ; and

(d)    Distributor shall discontinue any and all use of Motorola' names, and shall forthwith cease in any manner to represent itself to be a distributor of the Products.

## 17. INDEMNIFICATION, INFRINGEMENT AND INSURANCE

17.1    <u>General Indemnification/Distributor's Indemnification for Warranties.</u>

Each Party shall defend, indemnify and hold harmless the other Party, its respective officers, directors, agents, subsidiaries, Affiliates, subcontractors, assignees and employees, or any of them, from and against all losses, damages (actual, increased, or statutory), liabilities, expenses, costs (including court costs and attorney's fees), claims, suits, demands, actions, causes of actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "<u>Damages</u>") caused by, relating to or arising from: (i) a material default in the performance by such Party of its obligations hereunder (including without limitation Distributor's refusal or failure to comply with any of the requirements, provision, terms or conditions of this Agreement; (ii) a

7.11

MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008

material breach of its warranties or representations as made herein or other written or oral statements made to Motorola in connection with this Agreement or the Motorola G-9 policy application and due diligence process; (iii) its negligent acts or omissions; (iv) its intentional misconduct; (v) damage or injury (including death) to persons, property, reputation, or business opportunity cause by or sustained in connection with the performance of this Agreement or conditions created hereby; and (vi) any material misrepresentation or omission made in connection with the Motorola G-9 policy due diligence process (including G-9 Form A – Third Party Sales Representative Application. The Distributor shall indemnify and hold harmless Motorola and its officers, directors, agents, subsidiaries, Affiliates, subcontractors, assignees and employees, or any of them, from and against all Damages asserted against, or incurred by, Motorola resulting from the Distributor's making any express or implied warranty, indemnity or representation to its customers for its own account as described in Article 8 hereof.

## 17.2   Intellectual Property Indemnification

Motorola will defend any suit or proceeding brought against Distributor to the extent that such suit or proceeding is based on a claim that Products and/or Software manufactured and sold by Motorola to Distributor hereunder constitute direct infringement of any valid United States patent or copyright, and Motorola shall pay all Damages awarded by final judgment (from which no appeal may be taken) against Distributor holding that such goods do so infringe, on condition that Motorola (i) is promptly informed and furnished a copy of each communication, notice or other action relating to the alleged infringement, (ii) is given authority, information and assistance necessary to defend or settle such suit or proceeding in such a manner as Motorola shall determine and (iii) is given sole control of the defense (including the right to select counsel), and the sole right to compromise and settle such suit or proceeding. If any Products and/or Software manufactured by Motorola and supplied to Distributor hereunder are held to directly infringe any valid United States patent as set forth above, and Distributor is enjoined from using the same, or if Motorola believes such infringement is likely, Motorola will exert commercially reasonable efforts, at its option and its expense, (a) to procure for Distributor or Distributor's MSO customers the right to use such Products and/or Software free of any such liability for patent infringement or copyright or (b) to replace or modify such Products and/or Software with a non-infringing substitute otherwise complying substantially with the specifications for such Products and/or Software, or (c) upon return of the Products and/or Software, refund the transportation costs and the purchase price, less any applicable depreciation or credit for use, of such Products and/or Software. If the infringement is alleged prior to completion of delivery of the Products and/or Software, Motorola has the right to decline to make further shipments without being in breach of contract.

Notwithstanding the foregoing, in no event shall Motorola be liable for any: (i) infringement by Products or associated Software manufactured and/or supplied by third parties, including but not limited to the Microsoft software; (ii) infringement arising from a combination with, addition to, or modification of the Products or associated Software after delivery by Motorola; (iii) infringement arising out of compliance with Distributor's specifications, (iv) royalties payable based on a per use basis, or subscriber revenues derived by Distributor therefrom, or any royalty basis, other than a reasonable royalty based upon revenue derived by Motorola from Distributor from sales or license of the infringing Products or associated Software.

THE TERMS AND CONDITIONS OF THIS SECTION 17.2 CONTAIN THE SOLE AND EXCLUSIVE LIABILITY OF MOTOROLA FOR INFRINGEMENT OR THE LIKE OF PATENTS, TRADEMARKS, COPYRIGHTS, TRADE SECRETS AND OTHER INTELLECTUAL PROPERTY RIGHTS IN CONNECTION WITH THIS AGREEMENT, WHETHER DIRECT OR

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

CONTRIBUTORY, AND IS IN LIEU OF ALL WARRANTIES, EXPRESS, IMPLIED OR STATUTORY IN REGARD THERETO, INCLUDING, WITHOUT LIMITATION, THE WARRANTY AGAINST INFRINGEMENT SPECIFIED IN THE UNIFORM COMMERCIAL CODE.

### 17.3 Notification of Infringement

Distributor agrees that as soon as possible after Distributor becomes aware of same, it shall promptly notify Motorola of any products or conduct in the Territory or elsewhere, that infringe the Confidential Information, designs, inventions, or other intellectual property rights of Motorola or any third party with respect to the Products.  At Motorola's request and expense, Distributor shall assist Motorola to take all action necessary to stop any infringement of the Confidential Information in the Territory.  Nothing contained herein shall limit Motorola from taking any steps it deems necessary to protect the Confidential Information and/or the Products.

### 17.4 Minimum Insurance Levels

Distributor shall, at all times during the Term, at its sole cost and expense, and thereafter for so long as is reasonable and customary in the industry, or for such period as Motorola in good faith requests, in consideration of the particular circumstances, carry and maintain the insurance coverage listed below with insurers having a "Best's" rating of A X or better:

    (a)    workers' compensation insurance as required under applicable law;

    (b)    employer liability insurance with limits of not less than two million Dollars ($2,000,000) bodily injury each accident and two million Dollars ($2,000,000) bodily injury each person;

    (c)    commercial general liability insurance covering claims for bodily injury, death, personal injury or property damage occurring or arising out of the performance of this Agreement, including coverage for independent contractor's protection (required if any work will be subcontracted), premises-operations, products/completed operations and contractual liability with respect to the liability assumed by Distributor hereunder.  The limits of insurance shall not be less than:

General Liability:

| | | |
|---|---|---|
| (i) | each occurrence | $ 1,000,000 |
| (ii) | general aggregate limit | $ 2,000,000 |
| (iii) | products-completed broad form property damage | $ 2,000,000 |
| (iv) | personal and advertising injury limit | $ 1,000,000 |
| (v) | fire damage (any one fire) | $ 1,000,000 |
| (vi) | combined single limit | $ 1,000,000 |

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

(d)     should performance of this Agreement involve any use of automobiles, business automobile liability insurance covering the ownership, operation and maintenance of all owned, non-owned and hired motor vehicles with limits of not less than one million Dollars ($1,000,000) per occurrence for bodily injury and property damage; and

(e)     environmental Impairment liability coverage with limits of not less than five million Dollars ($5,000,000) per occurrence.

(f)     Notwithstanding any provision in this Agreement to contrary, Distributor shall insure the Products provided by Motorola at all times against all losses while kept on Distributor's premises, with a policy or policies with at least $40,000,000.00 in coverage specifically allocated to Motorola. Motorola shall be named a loss payee on such policies, such coverage shall be primary, and the insurer for such policies shall provide at least 30 days prior notice to Motorola before such policies may be cancelled. Distributor shall provide certificates of insurance to Motorola evidencing such coverage and the notice requirement. Failure to maintain such insurance shall be a material breach by Distributor, and be grounds for immediate termination by Motorola.

## 17.5    No Right of Action Against Motorola

Distributor agrees that Distributor, Distributor's insurer(s) and anyone claiming by, through, under or in Distributor behalf shall have no claim, right of action or right of subrogation against Motorola and Motorola's Affiliates, directors, officers employees and customers based on any loss or liability insured against under the insurance required by this Agreement.

## 17.6    Additional Conditions

The insurance limits required in this Article 17 may be obtained through any combination of primary and excess or umbrella liability insurance. Distributor shall forward to Motorola certificates of such insurance upon execution of this Agreement and upon any renewal of such insurance during the term of this Agreement. The certificates shall provide that: (a) Motorola be named as an additional insured as its interests may appear with respect to this Agreement; (b) thirty (30) days prior written notice of cancellation of, material change or exclusions in the policy to which certificates relate shall be given to Motorola; and (c) coverage is primary and not excess of, or contributory with, any other valid and collectible insurance purchased or maintained by Motorola. The fulfillment of such obligations or failure to fulfill, however, shall not otherwise relieve Distributor of any liability assumed hereunder, limit such liability, or in any way modify Distributor's obligations to indemnify Motorola under this Agreement.

## 17.7    Subcontractors

Distributor shall require its subcontractors who may enter upon its premises to maintain insurance as set forth in this Article 17.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

#### 17.8  Maintenance of Existing Coverage

Distributor shall not at any time after the expiration or termination of this Agreement take any action to alter, impair or cancel any insurance coverage that may apply with respect to the period during which this Agreement was in effect.

## 18. LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF USE, LOSS OF BUSINESS OPPORTUNITY, LOSS OF GOODWILL OR LOSS OF PROFITS ARISING UNDER THIS AGREEMENT. IN NO EVENT SHALL MOTOROLA'S LIABILITY HEREUNDER EXCEED THE PRICE ACTUALLY RECEIVED OR RECEIVABLE BY MOTOROLA WITH RESPECT TO THE SPECIFIC PRODUCTS. FOR THE AVOIDANCE OF DOUBT, NOTHING IN THIS AGREEMENT SHALL OPERATE TO EXCLUDE OR RESTRICT MOTOROLA'S LIABILITY FOR DEATH OR PERSONAL INJURY RESULTING FROM NEGLIGENCE OR LIABILITY, WHICH MAY NOT BE EXCLUDED OR LIMITED BY LAW.

## 19. GENERAL PROVISIONS

#### 19.1  Notices

Any consent, notice or report required or permitted to be given or made under this Agreement by one of the Parties to the other shall be in writing, in the English language, delivered by any lawful means, and addressed to such other Party at its address indicated below, or to such other address as the addressee shall have last furnished in writing to the addressor, and (except as otherwise provided in this Agreement) shall be effective upon receipt by the addressee.

| | |
|---|---|
| If to Distributor: | Genesis Network, Inc.<br>Attention: David Meznarich<br>600 N. Loop 1604 E., Suite 114<br>San Antonio, TX 78232<br>Telephone: 210/489-6636<br>Fax: 210/4896612<br>Email: david.meznarich@genesisnet.com |
| If to Motorola: | Motorola Home & Networks Mobility<br>Attention: Vice President for IP Set-Top Boxes<br>101 Tournament Drive<br>Horsham, PA 19044<br>Telephone: 215/323-1000<br>Facsimile: 215/323-1300 |
| with a copy to: | Motorola Home & Networks Mobility<br>101 Tournament Drive |

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

Horsham, PA  19044
Attention: Senior Counsel for IPVS
Telephone: 215/323-1234
Facsimile: 215/323-1300

19.2    Compliance with Laws.

19.2.1 The Distributor understands that certain Products furnished hereunder may be subject to export control laws or regulation.  The Distributor hereby agrees that it will comply with all applicable international, national, federal, state and local laws, ordinances, orders, rules, regulations and requirements, including those referred to specifically herein, those of the United States, and those of the Territory, relating to the export, export licenses or the control or regulation of exportation or re-exportation of Products or technical data sold, distributed or supplied to Distributor.  In addition, Distributor agrees that, without obtaining the necessary license or approval from the United States government, Distributor will not knowingly (i) export, directly or indirectly, any United States origin technical data or software acquired from Motorola, or any direct product of that technical data, to any country for which the United States government or any agency thereof at the time of export requires an export license or other governmental approval, or (ii) disclose any United States origin technical data or software acquired from Motorola to any national of any country for which the United States government or any agency thereof requires an export license or other governmental approval.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

19.2.2 Distributor, including its officers, directors, employees and agents, shall use only legitimate and ethical business practices in the activities contemplated by this Agreement. Distributor shall fully comply with all laws applying to the sale and distribution of the Products purchased under this Agreement, including the U.S. Foreign Corrupt Practices Act, local anti-corruption laws and laws prohibiting the payment of commercial or private bribes. In connection with this Agreement, neither the Distributor nor any of its officers, directors, employees or agents shall pay, offer, promise or authorize the payment , either directly or indirectly, of any monies or anything of value to any person, including but not limited to any government official or employee, any political party or candidate for political office, or any employee or official of a public international organization, for the purpose of inducing or rewarding any favorable action or obtaining any improper advantage in any commercial transaction or in any government matter. Distributor further agrees to comply with all U.S. laws and regulations regarding export licenses or the control or regulation of exportation or re-exportation of products or technical data sole or supplied to Distributor. Both Motorola and Distributor further agree to take the required steps necessary to satisfy any laws or requirements to declare, file, record or otherwise render this Agreement valid. Distributor commits that neither its owners, officers nor employees are agents, employees, officers, or representatives of any government or any agency or other instrumentality of any government. Distributor further agrees to inform Motorola of any change in such status or representation.

### 19.3   Sales to Government Entities

In the event that Distributor elects to sell Products to a governmental entity, Distributor does so solely at its own option and risk. Except as Motorola expressly accepts specific terms in writing, Motorola makes no representations or warranties with respect to the ability of the Products or Prices to satisfy any statutes, regulations, or provisions relating to such governmental sales.

### 19.4   Force Majeure

Neither Party shall be liable or responsible to the other Party nor be deemed to have defaulted under or breached this Agreement for failure or delay in performing any term of this Agreement to the extent, and for so long as, such failure or delay is caused by or results from causes beyond the reasonable control of the affected Party including fire, floods, embargoes, war, acts of war (whether declared or not), insurrections, riots, civil commotion, strikes, including strikes in which AT&T is a party, lockouts or other labor disturbances, acts of God or acts, omissions or delays in acting by any governmental authority or the other Party (a "Force Majeure Event"), provided that it notifies the other Party as soon as possible that a Force Majeure Event has occurred and that it takes all reasonable action to try to mitigate the effects of such Force Majeure Event and otherwise remain in full compliance with its obligations under this Agreement.

### 19.5   Relationship Between Parties

The relationship by and between the Distributor and Motorola under this Agreement shall at all times remain as independent entities. This Agreement shall not be construed as creating any partnership, agency relationship or other form of legal association that would impose liability upon one Party for the other Party's actions or failure to act. No Party, its agents, nor its employees shall be considered to be agents or representatives of any other Party, and no Party shall have the authority, express or implied, to assume or create any obligation, responsibility, or liability on behalf of, or to bind any other Party whatsoever. Each Party shall be responsible for the management, direction and control of its employees and other agents and such employees and other agents will not be employees of the other Party.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

19.6    Non-Solicitation

During the term of the Agreement and for twelve (12) months after termination, the Distributor shall not solicit, directly or indirectly, for employment for itself or for any other person or entity, any personnel of Motorola or its Affiliates with whom the Distributor has had direct contact in connection with this Agreement.

19.7    Set-Off

Distributor may not set-off any amount owing from Motorola to Distributor against any amount payable by Distributor to Motorola.

19.8    Assignment

This Agreement may not be assigned by the Distributor, in whole or in part, to any third party, including any subsidiary or Affiliate of the Distributor or any sub-distributor without the prior written consent of Motorola.  A Change of Control shall be deemed an assignment for purposes of this Section.  Motorola may assign its right and obligations hereunder to any of its respective subsidiaries or Affiliates.  In the event of a proposed appointment by Distributor to any sub-distributor, Distributor shall obtain and provide to Motorola such background and due diligence information with respect to such sub-distributor required by Motorola.  Any approved appointment of a sub-distributor may only be made by Motorola in writing and in its sole discretion, and shall not release Distributor from its obligations hereunder.

19.9    Severability

Any provisions hereof which are prohibited or unenforceable in the Commonwealth of Pennsylvania shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

19.10   Failure to Enforce Agreement Not a Waiver

Except as otherwise expressly stated herein the failure of any Party to enforce at any time or for any period of time any of the provisions of this Agreement shall not constitute a waiver of such provisions or of the right of Motorola to enforce each and every provision.

19.11   Dispute Resolution

The Parties agree that they shall use all reasonable efforts to resolve between themselves any dispute, controversy or claim arising out of or relating to this Agreement.  In particular the Parties agree that discussions will be carried out between senior level officers of the Parties within a maximum period of thirty (30) days from the date that written notice of the details of the issue in dispute, controversy or claim shall have been given by one Party to the other. Nothing in this Section will prevent either Party from immediately resorting to judicial proceedings if (a) good faith efforts to resolve the dispute under these procedures have been unsuccessful as reasonably determined by such Party, or (b) interim relief from a court is necessary to prevent serious and irreparable injury to that Party or to others. In addition, nothing in this Section shall be construed as applying to disputes regarding rights to intellectual property (including but not limited to proprietary and/or confidential information), the enforcement of the Parties' respective intellectual property rights, or the enforcement of the Parties' respective

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

obligations under the Agreement with respect to the other Party's intellectual property (including but not limited to Confidential Information).

### 19.12  Governing Law

This Agreement shall be interpreted by and governed in accordance with the laws of the State of New York, U.S.A., without regard to its choice of laws provisions. The Parties hereby agree to submit to the non-exclusive jurisdiction of the courts located in the State of New York, U.S.A.  For the avoidance of doubt, the United Nations Convention on Contracts for the International Sales of Products shall not apply to the supply of Products or other transactions contemplated under this Agreement.

### 19.13  Entirety of Agreement

The terms and conditions set forth herein and any Exhibits, Schedules, or supplements incorporated by reference herein constitute the entire understanding among the Parties relating to the subject matter hereof and there are no other terms, conditions, representations or understandings governing the rights or obligations of the Parties, including without limitation any side or letter agreements.  Except as herein otherwise provided, the provisions of this Agreement shall not be extended, varied, changed, modified or supplemented unless in writing and executed by a duly authorized representative of each Party.

### 19.14  Headings

The headings used in this Agreement are for the convenience of the Parties only, and shall not be considered in interpreting or applying the provisions of this Agreement.

### 19.15  Controlling Language

The Parties acknowledge and agree that the English version shall control in the event of any discrepancy between this Agreement and any other language translation of this Agreement.

### 19.16  Order of Precedence

Except as otherwise expressly set forth in the body of this Agreement, in the event of any conflict, the terms and conditions set forth in the body of this Agreement shall control over the terms and conditions set forth in the Exhibits hereto.

### 19.17  Counterparts

This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original, but all counterparts together constitute the same document.  This Agreement may be duly executed and delivered by a party by execution and facsimile or email (PDF) delivery of the signature page of a counterpart to the other party, provided that, if delivery is made by facsimile or email, the executing party shall promptly thereafter deliver a complete original counterpart that it has executed to the other party.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives.

**GENERAL INSTRUMENT CORPORATION**

By:_____

Name:_____

Title:_____

Date:_____

**Distributor:_____**

By: _____

Name: James Goodman

Title: CEO

Date: 12-12-08

**SIGNATURE PAGE TO NON-EXCLUSIVE DISTRIBUTOR AGREEMENT**

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives.

**GENERAL INSTRUMENT CORPORATION**

By: _JM lfu_

Name: _JOHN E. BURKE_

Title: _SVP/GM_

Date: _12/12/08_

**Distributor:**_____

By:_____

Name:_____

Title:_____

Date:_____

**SIGNATURE PAGE TO NON-EXCLUSIVE DISTRIBUTOR AGREEMENT**

7.11

## ATTACHMENT 1

## MOTOROLA'S CODE OF BUSINESS CONDUCT PROVISIONS

### *Sales and Marketing*
Honesty and integrity must be demonstrated at all times. All marketing and advertising will be accurate and truthful. Deliberately misleading messages, omissions of important facts or false claims about Motorola's competitors' offerings are unacceptable.

Business shall be obtained legally and ethically. Bribes or kickbacks are unacceptable.

### *Customer Information*
Customer information that is sensitive, private or confidential must be protected as carefully as you protect your own. Only those who have a need to know should have access to confidential information.

### *Government Customers*
Special care must be taken to comply with all legal and contractual obligations in dealing with governments. National and local governments around the world have specific and varied procurement laws and regulations that have been established to protect the public interest. These laws generally prohibit or put strict limits on gifts, entertainment and travel offered to government officials. They also often apply to the hiring of current or recently retired officials and their families and to any conduct that may be viewed as improperly influencing objective decision making. Many other laws strictly govern accounting and billing practices for fulfilling government contracts and subcontracts.

### *Doing Business with Others*
You agree not to do business with others who are likely to harm Motorola's reputation. For example, avoid doing business with others who intentionally and continually violate the law. These laws include, for example, local environmental, employment, safety and anti-corruption statutes.

All arrangements with third parties must comply with Motorola policy, your company policy, and the law. Motorola will not use a third party to perform any act prohibited by law or by the Motorola *Code of Business Conduct*.

### *Protecting Motorola Assets*
You have a responsibility to protect the Motorola assets entrusted to you from loss, damage, misuse or theft. Motorola assets, such as funds, products or computers, may only be used for business purposes and other purposes approved by management. Motorola assets may never be used for purposes that violate law or company policy.

### *Proprietary Information*
You will safeguard all proprietary information by marking information accordingly, keeping it secure and limiting access to those who have a need to know to do their jobs. Proprietary information includes any information that is not generally known to the public and is helpful to Motorola or would be helpful to competitors. It also includes proprietary information that suppliers, customers and others have entrusted to us. The obligation to preserve proprietary information continues even after employment ends.

7.11

### *Inside Information and Securities Trading*

Motorolans  and Motorola's representatives are not allowed to trade in securities or any other kind of property based on material information that comes from their jobs, if that information has not been reported publicly. It is against the laws of many countries, including the U.S., to trade or to "tip" others who might make an investment decision based on inside job information. For example, using non-public information to buy or sell Motorola stock, options in Motorola stock or the stock of a Motorola supplier or customer is prohibited.

### *Accuracy of Company Records*

To make responsible business decisions, we require honest and accurate recording and reporting of information. This includes such data as quality, safety and personnel records, as well as all financial records.

All financial books, records and accounts must accurately reflect transactions and events and must conform  to required accounting principles and your company's system of internal controls which controls must conform to applicable law. No false or artificial entries may be made. When a payment is made, it can be used only for the purpose spelled out on the supporting document.

### *Recording and Retaining Business Communications*

All business records and communications should be clear, truthful and accurate. Business records and communications often become public through litigation, government investigations and the media. You will avoid exaggeration, colorful language, guesswork, legal conclusions and derogatory remarks or characterizations of people and companies. This applies to communications of all kinds, including e-mail and informal notes or memos. Records must be retained and destroyed according to  your company's record-retention policies.

### *Audits and Investigations*

You are required to fully cooperate with all audits and investigations as requested. You will also cooperate with reasonable requests for information from government agencies and regulators and consult with your law department or attorney before responding to any non-routine requests. All information provided must be truthful and accurate. You will not conceal, alter or destroy documents or records in response to an investigation or other lawful request.

### *Competitive Information*

You must never use any illegal or unethical methods to gather competitive information. Stealing proprietary information, possessing trade secret information that was obtained without the owner's consent or inducing such disclosures by past or present employees of other companies is prohibited.

### *Fair Competition and Antitrust*

You and your employees are required to comply with the antitrust and unfair competition laws of the many countries in which you do business. These laws are complex and vary considerably from country to country. They generally concern:

- Agreements with competitors that harm customers, including price fixing, bid rigging and agreements not to compete for customers or contracts.
- Agreements that unreasonably limit the freedom of a customer or supplier to sell a product, including establishing the resale price of a product or service or improperly conditioning the sale of products, technologies or services on an agreement to buy other Motorola products and services.
- Attempts to monopolize, for example, by abusing a dominant position in the market unfairly to prevent others from competing.

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

### *Compliance with the Law*

You must comply with all applicable laws and regulations wherever you do business. Perceived pressure from supervisors or demands due to business conditions are no excuse for violating the law.

### *Anti-Corruption Laws*

You must comply with the anti-corruption treaties and laws of the countries in which you do business, including the U.S. Foreign Corrupt Practices Act (FCPA), which applies to its global business. You will not directly or indirectly offer or make a corrupt payment to government officials, including employees of state-owned enterprises. These requirements apply both to Motorola employees and agents, such as third-party sales representatives (TPSRs), no matter where they are doing business. If you are authorized to engage agents, make sure that they are reputable and require them to agree in writing to Motorola's standards in this area.

### *Crossing National Borders*

When importing or exporting products, services, information or technology, you must comply with applicable U.S. and other national laws, regulations and restrictions. When traveling internationally on company business, you are subject to laws governing what you import and export. You are responsible for knowing the laws that pertain to you and for checking with your import/export compliance manager when in doubt.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

## EXHIBIT A

### PRODUCTS AND PRICE SHEET

**Genesis Prices**

| Original Equipment Manufacturer | OEM Model Number | Motorola  Part Number | Genesis Price Per Set Top Box | | |
|---|---|---|---|---|---|
| | | | | | |
| Motorola | VIP1200 | 526684-004-00 | $3.57 | | |
| Motorola | VIP1216 | 528240-004-00 | $3.57 | | |
| Motorola | VIP1225 | 555062-001-00 | $3.57 | | |
| Motorola | VIP2200 | 555947-001-00 | $3.57 | | |
| Motorola | VIP2232 | 555949-001-00 | $3.57 | | |

| Description Model # | 9/1/2008 | 1/1/2009 | Rev. 2 STB Introduction | Broadcom Introduction | 5.5M STBs Purchased | 6.5M STBs Purchased |
|---|---|---|---|---|---|---|
| VIP1200 | $117.19 | $114.19 | $107.94 | | $99.08 | |
| VIP1216 | $191.67 | $177.67 | | | | |
| VIP1225 | $177.67 | $174.67 | $168.42 | | $162.38 | |
| VIP2200 | | | | $99.08 | $99.08 | $90.24 |
| VIP2232 | | | | $162.38 | $162.38 | $151.38 |

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

## EXHIBIT D

## MINIMUM PURCHASE REQUIREMENTS

Minimum purchase requirements are per shipping container.  Currently, shipping containers include 44 pallets of either VIP1200 or VIP1216/VIP1225 set-top boxes.  Motorola reserves the rights to change requirements.

7.11

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

## EXHIBIT E

## PROCEDURES FOR OPENING A LETTER OF CREDIT

Procedures:

1. Please establish an irrevocable, documentary Letter of Credit in favor of:

    General Instrument Corporation
    101 Tournament Drive, Bldg. 1
    Horsham, PA  19044 U.S.A.
    Attn:  Credit Department

2. Instruct your bank to establish your letter of Credit by tested telex or SWIFT CODE with the stipulation that the Letter of Credit is to be advised and confirmed through, negotiated, and payable at the counters of a first class United States bank.

3. The letter of Credit should specify that payment will be made, against presentation of beneficiary's documents at the counters of the USA confirming bank.  The draft must be drawn on the USA confirming bank.

4. The Letter of Credit shall be payable in US Currency.

5. The amount should read "About/Approximately" US $_____

6. Partial shipments are permitted.

7. Trans-shipments are permitted.

8. Letter of Credit to be transferable.

9. All bank charges outside applicant's country should be for account of Motorola (Beneficiary).

10. The terms of sale should read "EXW" * * according to INCOTERMS 2000

11. Loading on Board/Dispatch/Taking in Charge From/At "any Port or Airport" for Transportation to _____.

12. The expiration date should be 90 days from date of issuance

13. The letter of Credit should request the following documents:

14. Ocean Bills of Lading or Air Waybill consigned to (name of issuing bank), also notify (name of buyer).

15. Commercial Invoices in original and (6) copies.

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

16. Draft drawn on USA confirming bank, payable 30 days from Bill of Lading or Air Waybill.

17. The Bill of Lading should be marked "Freight Collect".

18. Documents to be presented 21 days after the date of issuance of the shipping documents, but within the validity of the credit.

19. The letter of Credit should be subject to the uniform customs and practices

20. Wire transfer information:

>Bank to Bank wire transfer as follows:

>Bank of America, N.A.
>231 South LaSalle Street
>Chicago, IL 60697
>For Credit to: General Instrument Corporation
>Account Number: 79-05130
>ABA Number: 071 000 039

7.11

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

## EXHIBIT F – WARRANTY PERIODS

| PRODUCT | HARDWARE WARRANTY |
|---|---|
| VIP1200, VIP1216, VIP1225, VIP2200, VIP2232 | 120 days (From Delivery Date) if VMI in Exhibit M is not implemented; if VMI is implemented, then the warranty shall be to Distributor's customer and shall run as specified in Exhibit M. |

MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008

## EXHIBIT G – MICROSOFT CLIENT LOADS

**I.   Overview**

I.   Distributor will load one hundred percent (100%) of the STB's to the latest Microsoft Client.

II.   Distributor's loading of the Microsoft Client will have no affect on the Motorola Warranty to the Customer except as outlined in Sections 8.1 and 8.2.

III.   Distributor will be responsible for obtaining the latest Microsoft Client.

IV.   Distributor will be responsible for any required certification of the Microsoft Client for the Customer..

V.   Distributor will be responsible for obtaining the appropriate Microsoft Client Server equipment.

VI.   Neither Distributor nor Motorola will be responsible for the quality of the Microsoft Client or the interoperability of the STB with the Microsoft Client.

VII.   Failed STB's will be segregated from the pallet, stored in a secure area, and returned using RMA process for repair under warranty by Motorola.

VIII.   All STB's will be placed back into original carton as received.

IX.   Successfully loaded STB's will be placed on a full pallet for shipment to Customer.

X.   Distributor will create and send to Customer a new ASN for the full pallet of known good STB's.

XI.   Distributor will maintain a failure log and statistical failure reporting shall be provided to Motorola on a monthly basis.

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

## EXHIBIT H – MOTOROLA DELIVERIES TO DISTRIBUTOR

### I.  Motorola shipments to Distributor

1. Motorola will deliver product within 90 days after receipt of order.
2. Motorola ships direct to Distributor in full containers
3. Shipments will arrive with a standard Bill of Lading
4. Shipping Terms will be FOB Destination.
5. The Distributor will take ownership when received in Memphis or en route to Customer distribution center if a drop ship method is employed.
6. Motorola will pay for the transportation cost from the port of entry to the Distributor warehouse.
7. Motorola will pay or reimburse transportation cost from Distributor warehouse to Customer DC's including the cost of product insurance.
8. It is in both party's interest to maintain low transit cost.  Distributor will work with Motorola to meet that goal.
9. Distributor will maintain a 30 day supply of inventory based on the Customer portal forecast or appropriate inventory supply level as specified and required by Customer.
10. Motorola will provide a standard ASN identical to what is provided to Customer.
11. Once the MS Client loads  are performed and container quantities are redistributed for different Customer distribution centers, the Distributor will generate a completely new ASN.

**EXHIBIT I – [RESERVED]**

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

## Exhibit J: Labeling Requirements

 **MOTOROLA**
Home & Networks Mobility

erizemot.doc | 473452-001 Rev U

This document is the property of Motorola, Inc., Home & Networks Mobility. This document may only be distributed to: (i) a Motorola employee ("Motorolan") having a legitimate business need for the information contained herein, or (ii) a non-Motorolan having a legitimate business need for the information contained herein. No license, expressed or implied, under any patent, copyright or trade secret right is granted or implied by the conveyance of this document. No part of this document may be reproduced, transmitted, transcribed, stored in a retrieval system, translated into any language or computer language, in any form or by any means, electronic, mechanical, magnetic, optical, chemical, manual, or otherwise without the prior written permission of Motorola, Inc. Home & Networks Mobility. (See Document Security Standard, 320190-000 for details.)

MOTOROLA, the Stylized M Logo and all other trademarks indicated as such herein are trademarks of Motorola, Inc. ® Reg. U.S. Pat. & Tm. Off. All other product or service names are the property of their respective owners.

Copyright © 2000-2008 Motorola, Inc. All rights reserved.

| Document Title | ASSY,LABEL,PALLET,VIP12NN,VIP1830,VIP1616,LEAD-FREE/ROHS COMPLIANT |
|---|---|
| Number | 536514-001 |
| Revision Date | D |
| Date | 07/07/08 |
| Author(s) | Nasila Edalatdju / Carol Mathews |

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

## EXHIBIT K – EDI Transactions

| Business Transaction and Purpose | Sender | Receiver | Data Content | Where used | Triggers |
|---|---|---|---|---|---|
| Advanced shipping notice for the replenishment shipment (856) | Foxconn | Motorola CHS | Serial numbers<br><br>MAC id and all provisioning data<br><br>Shipped date<br><br># of units<br><br>Item number<br><br>Should include pick and pack hierarchy<br><br>Does not require the truck/carrier to be reported? Subject to confirmation from Donna against the contract | **WTPI**<br><br>**GENESIS** 856 echoing process | Load into WTPI |
| Advanced shipping notice for the replenishment shipment (856) | Motorola | **GENESIS** | Same as above & **GENESIS** PO number from **GENESIS** **Purchase** Order | n/a | n/a |
| Receiving Advice (861) | **GENESIS** | Motorola | Serial numbers<br><br>Item numbers | Map to inbound ASNI to create a receipt in Oracle | Creates a receipt in Oracle and receives the goods into MOT Consigned/VMI Inventory. |
| **INVOICING (810)** | **Motorola** | **GENESIS** | **Serial numbers**<br><br>**Item numbers**<br><br>**Motorola** | **Motorola Invoice to GENESIS** | **Creates Motorola Invoice and sends this electronically** |

*MOTOROLA CONFIDENTIAL RESTRICTED  12/12/2008*

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  | Invoice number<br><br>**GENESIS PO Number**<br><br>**ASP**<br><br>Invoice Date<br><br>Quantity<br><br>Pallets<br><br>**Pallet ID**<br><br>Invoice Amount |  | to GENESIS and effects the following accounting transaction on Motorola Oracle:<br><br>Dr. GENESIS AR and Cr. Revenue<br><br>Dr. COGS and Cr. MOT Consigned/VMI Inventory |
| Purchase order (850) confirming forecasted quantities | **GENESIS** | Motorola | Consigned PO number that needs to be returned on 856 | Order Management | Becomes an externally sourced sales order that immediately goes to Enter, Book Close. For information purposes only. No scheduling, shipping, finance operations will drive from this sales order. Must come in at zero value. |
| Consumption Advice (867) | **GENESIS** | Motorola | Serial number<br><br>Date<br><br>Item number | Order Management | Triggers WTPI<br><br>Triggers inventory decrement and interface to Receivables. EDI 810 is triggered at this point |

10

*MOTOROLA CONFIDENTIAL RESTRICTED 12/12/2008*

## Exhibit L: **TPI SCHEDULE**

### 1.0 LICENSE GRANT

Genesis desires to act as a Microsoft Third Party Installer (TPI) on Motorola's behalf. In order to become an authorized third party Installer (TPI), Genesis agrees to the following terms and conditions:

This TPI SCHEDULE sets forth the terms under which GENESIS may engage as an approved third party installer to install (1) one copy of the Licensed Product Binaries as part of the Image (i) on the hard disk drive or in non-volatile solid-state memory of the Embedded System(s), (ii) place the Image, as installed on non-volatile solid-state memory, into the Embedded System(s). and/or (iii) to install (but not reproduce on separate media) MS Binaries as part of the Image on a separate partition of the Embedded System hard disk drive or on a separate hard disk drive in the Embedded System reserved for backup utility programs and recovery purposes only if the Image installed on the main drive fails.

The installation may only be done on GENESIS premises by GENESIS employees, or by individuals under GENESIS's direct supervision and control who are engaged to perform such services pursuant to a contract that includes appropriate non-disclosure and other covenants sufficient to satisfy GENESIS obligations under this License Agreement.

All of the foregoing are subject to GENESIS satisfying the terms and conditions listed below.

(i) GENESIS shall:

(1) ensure that it's behavior, does not cause Motorola to be in material breach of any of the terms and conditions of this DISTRIBUTION AGREEMENT or TPI SCHEDULE;

(2) maintain complete records (including the number of images installed and distributed) on premises of activities under the DISTRIBUTION AGREEMENT and TPI SCHEDULE, and allow access to GENESIS premises to audit or inspect Third Party Installer's Records and/or premises or procedures to determine compliance with the terms of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE with or without notice;

(3) subject to section (iii) below, cease use of the Image or other Licensed Product Binaries, cease all reference to the Licensed Product Binaries, and return to Motorola all full or partial copies of the Licensed Product Binaries and Image upon receipt of written notice from Motorola. Motorola shall give notice to GENESIS to cease use of the Image and Licensed Product Binaries only in cases where Motorola has information indicating that GENESIS is not in full compliance with the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE, or if Motorola determines, in good faith, that there is a meaningful rish to Motorola or Microsoft's intellectual property rights related to the Licensed Product.

(ii) GENESIS shall report to Motorola within seven (7) days of the end of each calendar month, the number of units of each Embedded System(s) which GENESIS delivered to Customer on behalf of Motorola during the month.

(iii)     Upon the receipt of written notice from Motorola that a material breach has occurred of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE, GENESIS shall confirm whether such a breach within seven business days (if GENESIS does not respond in seven business days, then, for the purposes hereof, a material breach is deemed to have occurred). If breach has occurred, GENESIS shall use reasonable efforts to cure within sixty (60) days any breach of a material provision of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE. GENESIS may resume acting as a TPI provided that: (i) GENESIS is able to completely cure such breach within sixty (60) days of GENESIS's receipt of notice; and (ii) Motorola has confirmed in writing that the breach has been cured to its satisfaction.

(iv) GENESIS shall immediately return to Motorola at no expense within 7 days all copies of the Licensed Product in the GENESIS's possession upon cancellation or expiration of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE .

*MOTOROLA CONFIDENTIAL RESTRICTED   12/12/2008*

(v)     Subject to Section (iii) of this TPI SCHEDULE, GENESIS shall defend, indemnify and hold harmless Motorola for all damages (including attorneys' fees) of any kind in connection with GENESIS's use of the Licensed Product, including, without limitation, damages resulting from: (1) a breach of the terms of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE, or (2) any and all unauthorized reproduction and/or distribution of any portion of the Licensed Product Binaries by GENESIS. Additionally, GENESIS shall pay Motorola's reasonable attorneys fees if Motorola employs attorneys to enforce any rights arising from the TPI SCHEDULE.

(vi)    This TPI SCHEDULE shall terminate upon the cancellation or expiration of the DISTRIBUTION AGREEMENT.

(vii) Microsoft is an intended third party beneficiary with rights to enforce this TPI SCHEDULE.

(viii) GENESIS may install only the Images provided by the providing party. The Installer may configure settings as documented that are required for proper operation for the Embedded System's configuration. The Installer must not alter the Image in any other manner.

(ix) GENESIS may only distribute the Embedded System installed with the Image only on behalf of Motorola and only to Motorola or the Customer.

(x) GENESIS shall allow Motorola to provide a copy of the executed TPI SCHEDULE to Microsoft, or any subsequent modifications.

(xi) Motorola and GENESIS shall keep confidential the Licensed Product, the terms of the DISTRIBUTION AGREEMENT and/or TPI SCHEDULE, and any other non-public information disclosed by the other party under the DISTRIBUTION and/or TPI SCHEDULE. Non-public information includes, for example, pricing information; MS and MS Affiliate licensing negotiations or terms and conditions; and MS and MS Affiliate business policies, practices, and know-how.

(xii) Sections (iv), (v), and (vi), (vii), (xi) of this TPI SCHEDULE shall survive any cancellation or expiration of the DISTRIBUTOR AGREEMENT and/or this TPI SCHEDULE.

## 2.0 LICENSE GRANT LIMITATIONS

All license grants are subject to the following limitations.

(a) Excluded License.

GENESIS license to any of the Licensed Products (or any intellectual property of MS or Motorola associated therewith) does not include any license, right, power or authority to subject the Licensed Product software or derivative works thereof (collectively "Code") in whole or in part to any terms of an Excluded License. By way of example, GENESIS does not have any license, right, power or authority to do either of the following.

(i) Create derivative works of the Licensed Product software in any manner that would cause the Code in whole or in part to become subject to any of the terms of an Excluded License.

(ii) Distribute the Licensed Product software or derivative works thereof in any manner that would cause the Code in whole or in part to become subject to any of the terms of an Excluded License.

Nothing in this Section 2(a) prohibits GENESIS from distributing with the Licensed Products any software that is not subject to an Excluded License as described above, nor from distributing with the Licensed Products software subject to an Excluded License in a manner that does not subject, or purport to subject, the Code (or any MS or Motorola intellectual property associated therewith) to the terms of an Excluded License.

(b) No Reverse Engineering.

(i) GENESIS shall not reverse engineer, decompile, or disassemble the Licensed Product or Deliverables, except and only to the extent applicable law expressly permits such activity. If GENESIS or any Subsidiary is located in the European Union, and it elects to exercise its rights under applicable laws that implement Article 6 of the European Community's Directive for the Legal Protection of Computer Programs, OJL 122/42 (17 May 1991) (the "Directive") then Section 2(b)(ii) applies.

(ii) Before exercising any possible rights under the Directive, GENESIS shall do both of the following things.

(A) Notify MS and Motorola of GENESIS's good faith belief that:

(1) Information required to achieve the interoperability of an independently created computer program is not otherwise available; and

(2) Decompilation is indispensable within the meaning of the Directive.

(B) Provide MS with a commercially reasonable amount of time to respond to Motorola regarding such assertions.

## EXHIBIT M

### VENDOR MANAGED INVENTORY PROCESS

**During any time when the parties have agreed to work under a Vendor Managed Inventory ("VMI") process, the following is the process that will apply:**

1.      Distributor will be responsible for providing sufficient space at Distributor warehouse to store the forecasted quantities of Set-Top Boxes and personnel required for the efficient operation of the warehouse, including, but not limited to, receiving, stocking and picking and packing for shipment to Distributor's customer sites, and general onsite management of the Motorola-supplied VMI inventory ("Consignment Stock").

2.      Motorola shall have the right to access and inspect Distributor warehouse. Motorola may conduct warehouse and process audits of the Distributor warehouse upon a mutually agreed upon schedule and notification process. Motorola will offer Distributor, at no charge, the results of these audits and process recommendations for improvement. Additionally, Motorola may conduct a periodic inventory of Consignment Stock at Distributor warehouse with reasonable assistance from Distributor. Distributor will demonstrate to Motorola Distributor's inventory control processes and cycle counting program for Distributor warehouses.   If Distributor becomes aware of any variances in the Consignment Stock balances, Distributor will promptly notify Motorola. Distributor will be solely responsible for any such variance that constitutes a shortfall in the Consignment Stock balances and Motorola will be entitled to payment for any shortfalls in Consignment Stock balances. Distributor and Motorola will agree, prior to implementation of any Consignment Stock Program, the process for billing for inventory shrink and cycle count adjustments.   Motorola agrees that if Motorola's periodic inventory of Consignment Stock appears to identify variances in the Consignment Stock balances, Distributor will be granted reasonable time (i.e. fifteen calendar days) to locate any apparent shortfalls (e.g. (i) on a fork lift truck at the time of inventory or (ii) STBs physically transferred to Distributor but paperwork not yet processed through both Parties systems) prior to being billed for any inventory shrinkage or cycle count adjustments.

3.      Distributor will use best efforts to use a first in, first out method of withdrawing Consignment Stock, as needed, from the Distributor warehouse. All withdrawals will be by whole pallets.  An electronic transaction log of withdrawals and other activities will be made available using mutually agreed EDI transactions as contained in Exhibit K.

4.      Motorola's use of Distributor warehouse(s) for the Consignment Stock is without charge. Distributor agrees to identify the Consignment Stock as property of and under the control of Motorola and Consignment Stock will not be commingled, either in Distributor's systems or physically, with Distributor's inventory.  Consignment Stock will be kept in separate bins or storage locations within Distributor warehouse(s).  Distributor shall provide adequate security, shelving, and environmental conditions for storage of the Consignment Stock.

5.      Distributor shall be responsible for damages to Motorola's Material that occur while stored at Distributor warehouse(s).  Title to the Set-Top Boxes in the Consignment Stock will transfer from Motorola to Distributor at the time that such items are removed from Consignment Stock to load the Microsoft Client.  Distributor shall provide Motorola with the dates the Consignment Stock is removed using mutually agreed-upon EDI transactions as contained in Exhibit K.  The warranty period to Distributor's customer with respect to the Set-Top Boxes shall commence at the time Distributor removes the Set-Top Boxes from Consignment Stock to load the Microsoft Client.

6.      Distributor shall pay for all products sold under the VMI process within 45 days after Distributor takes title.

7.      Nothing in this Exhibit M shall be construed to limit Motorola's rights under Section 4.5 of the Agreement.

*MOTOROLA CONFIDENTIAL RESTRICTED  12/29/2008*

## EXHIBIT N
## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Agreement), effective on the date when signed by the last party ("Effective Date"), by and among Western National Bank, Odessa, Texas (the "Escrow Agent"), General Instrument Corporation d/b/a the Home & Networks Mobility Business of Motorola, Inc. ("Motorola"), a Delaware corporation and Genesis Networks, Inc. (the "Distributor"), a corporation formed under the laws of Texas.

RECITALS

WHEREAS, Motorola and Distributor have entered into a Distributor Agreement together with all cancellations, modifications, amendments, renewals, extensions or rewards thereof (the "Distributor Agreement") pursuant to which Distributor has agreed to resell certain Motorola goods or services to AT&T Services, Inc. (the "Customer");

WHEREAS, Distributor has entered into a separate contract (the "Set Top Box Distributor Agreement") with the Customer to supply Motorola goods or services to Customer in connection with the Distributor Agreement;

WHEREAS, Motorola has agreed to be paid for the goods or services sold to Distributor under the Distributor Agreement by receiving disbursements from Escrow Agent when Escrow Agent receives payments for those goods or services from the Customer in accordance with the terms, conditions and procedures set forth below;

WHEREAS, the Customer, in response to invoices submitted by Distributor, will submit payments for goods or services received pursuant to the Distributor Agreement directly to the Escrow Agent in accordance with the terms contained herein;

WHEREAS, at the request of the parties, Escrow Agent has established a non-interest bearing escrow account for the purpose of receiving from the Customer funds for the payment of goods or services and disbursing such funds to Motorola and Distributor;

WHEREAS, the parties' desire that all funds for the goods or services paid by the Customer pursuant to the Distributor Agreement be paid to Escrow Agent, and all funds received by Escrow Agent from the Customer be disbursed by Escrow Agent according to the terms, conditions and procedures set forth below.

NOW THEREFORE, in consideration of the premises, mutual covenants, terms, conditions and procedures contained herein and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.    The Account.    The Escrow Agent has established a non-interest bearing account (the "Escrow Account") from which Escrow Agent alone has the power of withdrawal.    Pursuant to the Distributor Agreement, the Customer will deliver to Escrow Agent all monies due or to become due under the Distributor Agreement and Escrow Agent will deposit those funds in the Escrow Account and disburse them to Motorola and Distributor as provided herein.

2.    Submission of Invoices.    Commencing with the date of this Agreement, Customer shall issue an order for products to Distributor under the Set Top Box Distributor Agreement.    Distributor shall issue an order to Motorola for products under the Distributor Agreement. Motorola shall ship the products to Distributor and invoice Distributor.    Distributor shall ship the products to Customer.    Upon its shipment of products to Customer, Distributor shall submit to Customer its invoice for the total price of the products ordered by Customer.    Subject to the terms and conditions of the Set Top Box Distributor Agreement, Distributor's invoice shall become due and payable by Customer; accordingly, Customer will pay the Escrow Agent the total price of the products set forth on the Distributor invoice by no later than thirty days after the date of said invoice. Upon receipt of payment from the Customer, Escrow Agent shall deposit the funds in the Escrow Account.

3.    Disbursement from Escrow Account.    Escrow Agent shall release the amounts due to Motorola and Distributor on the first business day of each week during the term of this Agreement, but only after receipt of instructions specifying the amounts to be released to each Party and signed on behalf of both parties to this Escrow Agreement.

4.    The Escrow Agent will have no lien rights to any of the funds due to Motorola or Distributor arising from any indebtedness of Customer or Distributor to Escrow Agent now existing or hereafter arising.  None of the monies payable to Motorola may be used by the Escrow Agent to resolve any outstanding debts incurred by Customer or Distributor.  Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Escrow Account or any part of the Escrow Account or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Escrow Account or any part of the Escrow Account.  The monies in the Escrow Account will not be invested by the Escrow Agent.

5.    Suspension of Performance; Disbursement Into Court.    If, at any time, (i) Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of all or any portion of the Escrow Account or Escrow Agent's proper actions with respect to its obligations hereunder, or (ii) the Motorola and Distributor have not within thirty (30) days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 14 hereof, appointed a successor Escrow Agent to act hereunder, if applicable, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

*MOTOROLA CONFIDENTIAL RESTRICTED  12/29/2008*

a.     suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such uncertainty shall be resolved to the sole satisfaction of Escrow Agent, until a Joint Written Direction shall have been received or until a successor Escrow Agent shall have been appointed (as the case may be).

b.     petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in any venue convenient to Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all funds in the Escrow Account, after deduction and payment to Escrow Agent of all reasonable fees and expenses incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.  Notwithstanding any provision in this Agreement to the contrary, if Escrow Agent receives any garnishment or other legal process asserting a right to the Escrow Account or monies therein, then Escrow Agent shall immediately notify Motorola and Distributor, and shall follow the process described in this Section 5 b., except paying only such monies into such court as are claimed in such garnishment or other legal process; provided, however, if the amount claimed is uncertain Escrow Agent may pay all funds in the Escrow Account into such court.

Escrow Agent shall have no liability to Distributor or Motorola, their respective shareholders or members or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of the Escrow Account or any delay in or with respect to any other action required or requested of Escrow Agent.

6.     Method of Payment.  The method of payment to Motorola and Distributor shall be through wire based upon the wire instructions provided in Exhibit 1 attached hereto and incorporated herein by reference.   Distributor may furnish Escrow Agent with additional instructions regarding any authorizations required to disburse monies that have been identified for release to Distributor under Section 3 above ("Distributor's Additional Instructions"), provided that: (a) Distributor's Additional Instructions shall not delay or otherwise impact the release or disbursement of monies to Motorola, (b) Distributor's Additional Instructions shall not become a part of this Escrow Agreement, and (c) no individual or  company identified in Distributor's Additional Instructions shall have any direct or third-party beneficiary interest, or any other legal or equitable interest, in this Escrow Agreement, the Set Top Box Distributor Agreement, the Escrow Account, or any monies in the Escrow Account.

7. <u>Monthly Statements</u>. Escrow Agent will furnish monthly statements to Distributor and Motorola showing a summary of the deposits made into and disbursements made from the Escrow Account.

8. <u>Duties of the Escrow Agent; Limitation of Liability</u>. Escrow Agent undertakes to perform only such duties, as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement. Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that Escrow Agent's gross negligence or willful misconduct was the cause of any loss to Distributor or Motorola. Escrow Agent's sole responsibility shall be for the safekeeping and disbursement of the Escrow Account in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any notice, instruction, request or other instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same.

Distributor and Motorola agree that Escrow Agent shall not be liable to the parties hereto, their successors or assigns, in connection with its good faith performance under this Agreement, and the parties hereto release and waive any claims that they may have against the Escrow Agent that may result from the performance in good faith of its functions under this Agreement, including but not limited to a delay in the electronic wire transfer of funds. In no event shall any party to this Agreement be liable for incidental, indirect, special, and consequential or punitive damages (including, but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

Escrow Agent shall not be or become liable in any way for its failure or refusal to comply with any conflicting instructions or adverse claims or demands, and it shall be entitled to continue to refrain from acting until such conflicting or adverse claims or demands (i) shall have been adjusted by agreement of Distributor and Motorola and Escrow Agent shall have been notified in writing thereof by the parties hereto, or (ii) shall have been determined by a final non-appealable judgment of a court of competent jurisdiction. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds are deposited, this Escrow Agreement or the Contract, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it and at its cost in the event of any dispute or question between Customer, Distributor and Motorola as to the construction of any of the provisions hereof or of any other agreement, or

relating to any dispute involving any party hereto. Escrow Agent shall never be required to post a bond in any legal proceeding related to this Agreement.

Escrow Agent is authorized, in its sole reasonable discretion, to comply with orders issued or process entered by any court with respect to the funds in the Escrow Account, without determination by Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Account is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, Escrow Agent is authorized, in its sole reasonable discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

9.     Indemnification of Escrow Agent.  From and at all times after the date of this Escrow Agreement, Distributor shall, to the fullest extent permitted by law, defend, indemnify and hold harmless Escrow Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including without limitation reasonable costs and expenses) incurred by or asserted against any of the Indemnified Parties from and after the date hereof, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation Distributor, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, directly or indirectly related to, arising out of, or in any way in connection with Escrow Agent's capacity as such under this Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; *provided, however,* that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted from the gross negligence or willful misconduct of such Indemnified Party.     The obligations of Distributor under this Section 9 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

From and at all times after the date of this Escrow Agreement, Motorola shall, to the fullest extent permitted by law, defend, indemnify and hold harmless Escrow

Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including without limitation reasonable costs and expenses) incurred by or asserted against any of the Indemnified Parties from and after the date hereof, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation Motorola, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, directly or indirectly related to, arising out of, or in any way in connection with Escrow Agent's capacity as such under this Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; *provided, however*, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted from the gross negligence or willful misconduct of such Indemnified Party. The obligations of Motorola under this Section 9 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

The parties agree that neither the payment by Distributor or Motorola of any claim by Escrow Agent for indemnification hereunder nor the disbursement of any amounts to Escrow Agent from the funds in the Escrow Account in respect of a claim by Escrow Agent for indemnification shall impair, limit, modify, or affect, as between Distributor and Motorola, the respective rights and obligations of Distributor, on the one hand, and Motorola, on the other hand, under the Contract. In order to obtain indemnification under this Agreement, the Indemnified Parties must (a) promptly notify the indemnifying party in writing of the claim or proceedings, (b) permit the indemnifying party the right to defend or control the defense of any claim or suit and any related settlement negotiations, and (c) cooperate with and assist the indemnifying party (at indemnifying party's expense) in such defense and/or settlement negotiations.

10. Term and Termination. This Agreement shall remain in effect until all invoices submitted by Motorola to Distributor for payment of goods or services delivered in connection with the Contract have been paid in full, unless Distributor and Motorola agree otherwise in a written agreement. This Escrow Agreement may be terminated or its instructions modified at any time by Motorola upon thirty (30) days' written notice to the Escrow Agent. Upon termination, the Escrow Agent shall immediately cease regular disbursement of monies and shall as soon as practicable and within fourteen (14) days make an accounting to Motorola and Distributor of the funds as provided herein. Otherwise, this Escrow Agreement shall remain in effect until Motorola discontinues it. No such modification shall be deemed to be or shall constitute a modification with respect to any other terms or provisions of this Escrow

20

Agreement, whether or not similar.  Each such modification shall be effective only in the specific instance and for the purpose for which it was given, and shall not, unless agreed upon by the parties, constitute a continuing modification.

11.   Notices.  All notices and communications shall be signed on behalf of the party giving such notice by an authorized officer thereof, and shall be sent by first class mail, postage prepaid, or delivered by hand or courier service to the parties as follows:

To Distributor

> Genesis Networks, Inc.
> 600 N. Loop 1604 E
> San Antonio, Texas 78232


> With copy to:
> Jennifer Windscheffel, attorney
> Tuggey Rosenthal Pauerstein Sandoloski Agather LLP
> 755 E. Mulberry, Ste. 200
> San Antonio, Texas 78212
> Phone: 210-244-8869
> Fax: 210-354-4034
> E-Mail: jwindscheffel@trpsalaw.com


To Motorola:

> General Instrument Corporation
> ATTN: Vice President for IP Set-Top Boxes
> 101 Tournament Drive
> Horsham, PA 19044

With copy to :

> Motorola Legal Department
> ATTN: Senior Counsel for IP Set-Top Boxes
> 101 Tournament Drive
> Horsham, PA 19044

To Escrow Agent
Western National Bank
Attn:  Mark Haynie
> P. O. Box 61250
> Midland, Texas  79711
> Phone:
> Email: Name@Westernnb.com

*MOTOROLA CONFIDENTIAL RESTRICTED 12/29/2008*

12.    Modifications.  No provision of this Agreement may be waived, amended, discharged or terminated except by written instrument executed by Distributor, Motorola and Escrow Agent.

13.    Fees and Expenses of Escrow Agent.  Motorola shall compensate Escrow Agent for its services hereunder by paying $120.00 to the Escrow Agent on the first day of each month during the term of this Agreement.  In addition, Motorola shall  (i) pay such service charges related to the Escrow Account (ie., wire transfer fees-incoming wire fee, $10.00 -outgoing wire fee $20.00, charge back fees $5.00 per item, ect.) at the standard rates stated in the Escrow Agent's fee schedule (which fee schedule is subject to change from time to time in the sole discretion of the Escrow Agent), and (ii) reimburse Escrow Agent for all of its reasonable out-of-pocket expenses, including travel expenses, telephone and facsimile transmission costs, postage (including express mail and overnight delivery charges), copying charges and the like, and such service charge payment and/or reimbursement shall be payable by Motorola within thirty (30) days of Motorola's receipt of an invoice from the Escrow Agent.  The obligations of Motorola under this Section 13 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.  The parties agree that Escrow Agent has the right to set off against any funds in the Escrow Account for the payment of any amount owed to Escrow Agent under this Agreement.

14.    Resignation of Escrow Agent.  Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving thirty (30) days prior written notice to the Distributor and Motorola specifying a date when such resignation shall take effect.  Upon any such notice of resignation, the Distributor and Motorola jointly shall appoint a successor Escrow Agent hereunder prior to the effective date of such resignation.  The retiring Escrow Agent shall transmit all records pertaining to the Escrow Account and shall pay all funds in the Escrow Account to the successor Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction and payment to the retiring Escrow Agent of all reasonable fees and expenses payable to, incurred by the retiring Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.  After any retiring Escrow Agent's resignation, the provisions of this Escrow Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Escrow Agent under this Escrow Agreement.  Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all of the escrow business of the Escrow Agent's corporate trust line of business may be transferred, shall be the Escrow Agent under this Escrow Agreement without further act.

15.    Audit.  The records of the Escrow Agent pertaining to the Escrow Account shall be open to the inspection of Motorola and Distributor at all reasonable times

22

*MOTOROLA CONFIDENTIAL RESTRICTED 12/29/2008*

upon reasonable notice to the Escrow Agent and may be audited from time to time by any person or persons as Motorola and Distributor may specify in writing.

16. Other. The persons executing this Agreement represent that they are authorized to sign on behalf of the companies set forth below. This Agreement shall be binding upon each of the parties hereto and their respective legal representatives, successors or assigns. Motorola shall have the right to assign this Agreement, in whole or in part an affiliated company. This Agreement shall be construed, enforced and interpreted in accordance with the laws of the State of Texas, and exclusive jurisdiction and venue for disputes arising under this Agreement shall be the federal and state courts for Texas. The invalidity or unenforceability of any particular provision of the Agreement shall not affect the validity or enforceability of any other provision hereof, and this Agreement shall be construed in all respects as if said invalid or unenforceable provisions were omitted.

17. Entire Agreement. This Agreement constitutes the entire agreement between the parties relating to the holding, investment and disbursement of the Escrow Account and sets forth in their entirety the obligations and duties of Escrow Agent with respect to the Escrow Account and the funds payable thereto and held therein.

18. Execution in Counterparts. This Agreement and any joint written agreement or direction from Distributor and Motorola to Escrow Agent may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.

19. Dealings. Escrow Agent and any stockholder, director, officer or employee of Escrow Agent may buy, sell, and deal in any of the securities of Distributor or Motorola and become peculiarly interested in any transaction in which Distributor or Motorola may be interested, and contract and lend money to Distributor or Motorola and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein shall preclude Escrow Agent from acting in any other capacity for Distributor or Motorola or for any other entity.

20. Identifying Information. To help the government fight the funding of terrorism and money laundering activities, Federal Law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a Trust, or other legal entity, we ask for documentation to verity its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification, and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. To this extent, please provide all contact information for parties to the agreement including Tax ID/identification numbers.

----------The remainder of this page left intentionally blank----------

*MOTOROLA CONFIDENTIAL RESTRICTED  12/29/2008*

IN WITNESS WHEREOF, the parties have executed this Escrow Agreement as of the day and year first written above.


WESTERN NATIONAL BANK


By:      _____
Name:  _____
   Title:    _____ _


GENESIS NETWORKS, INC.


By:      _____
Name:  _____.
   Title:    _____


GENERAL INSTRUMENT CORPORATION


By:      _____
Name:  _____
   Title:    _____.

*MOTOROLA CONFIDENTIAL RESTRICTED 12/29/2008*

## EXHIBIT I
## FORM OF JOINT AUTHORIZATION FOR RELEASE OF PAYMENTS

Date: _____

Western National Bank
Attn: Sylvia Nussbaum
508 W Wall Suite 1000
Midland Texas 79711
Fax:   432-617-1356
Email: Sylvian@westernnb.com

Re:   _____-- Escrow a/c# _____

Dear Ms. Nussbaum

Pursuant to Sectioin 3 of the above-referenced Escrow Agreement, please release
the funds received under Contract/PO #_____ on January ____,
2009 as follows:

$_____ to be released to Motorola

$_____ to be released to Genesis

**AUTHORIZED AND AGREED TO,** as of the date first written above:

GENESIS NETWORKS, INC.

By:   _____
    Title:   _____

GENERAL INSTRUMENT CORPORATION

By:   _____
    Title:   _____

25