Philip M. Guffy
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: 713-220-4200
Fax: 713-220-4285
Email: pguffy@huntonak.com

-and-

Paul N. Silverstein
Brian Clarke
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 309-1000
Email: psilverstein@huntonak.com
       brianclarke@huntonak.com

*Counsel for the Petitioning Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § § | Case No. 22-31641 (MVL) |
| Debtor. | § § § | |

## PETITIONING CREDITORS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JLP Credit Opportunity Master Fund Ltd., JLP Credit Opportunity IDF Series Interests of the SALI Multi-Series Fund, L.P., JLP Institutional Credit Master Fund LP, and Alimco Re Ltd (collectively, the "**Petitioning Creditors**") for their motion (the "**Motion**") for partial summary judgment in connection with the involuntary petition (the "**Petition**") [Docket No. 1] filed by the Petitioning Creditors respectfully represent:

**PRELIMINARY STATEMENT**

1. This Motion seeks partial summary judgment on the discrete legal issue as to whether the Court may look to property held by an entity other than the Debtor when determining whether the Petitioning Creditors' claims are oversecured or undersecured. A ruling on this issue will significantly narrow the issues to be decided at trial and, indeed, should obviate the need for further discovery and for a trial -- as the Debtor has previously admitted that the value of its assets is less than the amount of the outstanding Notes (defined below).

2. As set forth on the record at the hearing held on October 4, 2022, and in the Answer (defined below), the only disputed issue of material fact in this proceeding is whether the Petitioning Creditors are oversecured or undersecured. As set forth in the *Statement of Petitioning Creditors in Support of Involuntary Chapter 7 Petition* (the "**Statement in Support**") [Docket No. 2], the value of the Petitioning Creditors' claims exceed the value of the Debtor's assets securing those claims.[1] In its *Answer to Involuntary Petition and Motion to Dismiss* (the "**Answer**") [Docket No. 18], the Debtor asserts that the Petitioning Creditors are oversecured and are therefore ineligible to be petitioning creditors under section 303 of the Bankruptcy Code.[2]

3. The Debtor has not set forth its purported reasons for alleging that the value of its assets securing the Petitioning Creditors' claims are greater than the those claims in any pleading filed with Court. The Debtor has made nothing more than a bare and baseless allegation The Petitioning Creditors have since learned from the Debtor that it intends to argue the Court should take into account the value of assets belonging to non-debtor subsidiaries that also secure the

---

[1] Statement in Support ¶ 17. Capitalized terms used but not defined herein have the meanings given to them in the Statement in Support.

[2] Answer ¶ 8.

DMS 300350709

Petitioning Creditors' claims when determining whether the Petitioning Creditors meet the requirements of section 303(b) of the Bankruptcy Code.

4. This nonsensical argument is directly contradicted by the plain language of the statute, which provides that three or more creditors are eligible to file an involuntary petition if their "noncontingent, undisputed claims aggregate at least $18,600 more than the value of any lien on *property of the debtor* securing such claims held by the holders of such claims."[3] The Petitioning Creditors have, on numerous occasions, including in discovery, requested that the Debtor provide support for its argument that the Court should disregard the plain and unambiguous language of the statute and look to the alleged value of property held by non-Debtor entities. The Debtor has failed to provide any. The Petitioning Creditors thus file this Motion seeking entry of an order directing entry of partial summary judgment that only the property of the Debtor is relevant to the determination as to whether the Petitioning Creditors are eligible to file the Petition.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are section 303(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 7007-1 and 7056-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas.

---

[3] 11 U.S.C. § 303(b)(1) (emphasis added).

3

**BACKGROUND**

7. Goodman Networks, Inc. d/b/a Goodman Solutions ("**Goodman Networks**" or the "**Debtor**") is part of a defunct group of businesses with no employees and no business operations. As part of its prior bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas under Case No. 17-31575, Goodman Networks issued 8% Senior Secured Notes due 2022 (the "**Notes**") to provide financing to the reorganized business. The other entities that guaranteed the Notes are GNET ATC, LLC ("**GNET**"); Multiband Field Services, Inc. ("**MFS**"); and Goodman Network Services, LLC ("**GNS**" and together with Goodman Networks, GNET, and MFS, the "**Obligors**").

8. The Notes were issued by Goodman Networks pursuant to the Indenture in the original principal amount of $112,500,000. The other Obligors each, jointly and severally, unconditionally guaranteed all obligations under the Indenture. In addition to the Indenture, the Obligors, the Trustee, and the Collateral Agent also executed the Pledge and Security Agreement. Under the Pledge and Security Agreement, the Obligors granted a lien on all or substantially all their assets to the Collateral Agent to secure repayment of the Notes.

9. Under the terms of the Indenture, the Notes matured on May 31, 2022 (the "**Maturity Date**"), and all amounts, including principal and interest, then became due and payable. The Obligors failed to make any payments on the Notes on the Maturity Date.

10. After the Maturity Date, the Petitioning Creditors sought payment on the Notes from the Obligors. Representatives of the Debtor, including then-CEO James Frinzi and John Goodman, responded to the Petitioning Creditors and their counsel. These discussions included purported promises of payment as well as an offer to enter into a forbearance agreement for a delayed payment.

11. In connection with these discussions, the Debtor provided the Petitioning Creditors with a financial presentation, which valued all of the Debtor's assets at $12.9 million, significantly less than the approximately $18 million outstanding on the Notes.[4] The information in this presentation constitutes an admission of the Debtor with respect to the value of the Debtor's assets.

12. This presentation also revealed a number of related party transactions among the Obligors, insiders, and companies controlled by insiders. First, on or about January 21, 2022, the Obligors loaned $44 million to American Metals Recovery and Recycling, Inc. ("**AMRR**"). AMRR is majority-owned and controlled by James Frinzi (or companies owned and controlled by him). At the time the loan was made, James Frinzi was *also* the CEO of the Obligors. AMRR has since defaulted on the AMRR Note, failing to make any payments that have come due. Second, in February 2022, the Obligors spent approximately $17 million to repurchase certain of the Notes. These Notes were purchased from an entity related to a then-board member of AMRR. Third, in March 2022, the Obligors entered into a "settlement" with 18920 NW 11th LLC, an entity that was allegedly a preferred shareholder of the Debtor. Under the terms of this alleged settlement, the Obligors paid over $14 million in cash and allegedly conveyed $22 million of the AMRR Note and other assets to 18920 NW 11th LLC.

13. After two months of negotiations on a forbearance agreement so as to avoid the cost and expense of a bankruptcy proceeding, the Obligors admitted that they had neither sold any assets nor raised any funds to pay the Notes. On or about August 15, 2022, after the Trustee and Collateral Agent began to pursue remedies against the Obligors for non-payment, approximately $4.4 million was transferred out of a bank account owned by the Debtor that had been pledged as collateral for the Notes. This transfer was directed by James Goodman, a shareholder of the

---

[4] *See* **Exhibit A**.

Debtor, for the purpose of paying down obligations owed by another one of James Goodman's companies, and not owed by the Debtor. The Petitioning Creditors understand that the transfer has since been reversed at the direction of the Petitioning Creditors, the Trustee, and the Collateral Agent. On August 26, 2022, the Obligors offered to purchase all the outstanding bonds for 42 cents on the dollar.[5]

14. On September 6, 2022, the Petitioning Creditors filed the Petition under chapter 7 of the Bankruptcy Code against the Debtor because it was clear the Debtor could not pay the outstanding amounts due on the Notes. On September 30, 2022, the Debtor filed the Answer. At the hearing held on October 4, 2022, the Court scheduled an evidentiary hearing on the Petition for December 19, 2022, at 9:30 a.m. (the "**Trial**"). Discovery is currently ongoing in preparation for the Trial, including several upcoming depositions scheduled for the week of November 28.

15. Since filing the Petition, the Petitioning Creditors have been attempting to understand the arguments and evidence the Debtor intends to assert and put on at the Trial. As described above, the Debtor has asserted that it believes the Court should consider not just the assets of the Debtor securing the Petitioning Creditors' claims, but the assets of other obligors under the Notes. Despite repeated requests, the Debtor has not shared any authority for this argument, which contradicts the plain language of section 303(b)(1) of the Bankruptcy Code. (The Debtor has also not shown or provided any evidence that the non-Debtor collateral is sufficient to pay the Notes in full. Although not relevant to the involuntary petition or entry of a order for relief against the Debtor, the Petitioning Creditors truly hope there is sufficient collateral to pay the Notes in full, but have doubts.) The Obligors' largest reported asset, the AMRR Note (discussed

---

[5] *See* **Exhibit B**.

in paragraph 12 above), is in default. AMRR has not made a single payment, and it is not clear if AMRR can make those payments.

16. Resolution of this discrete legal issue presented in this Motion will potentially obviate the need for the Trial and the remaining discovery. At minimum, resolution of this issue will certainly narrow the issues to be presented at the Trial.

### ARGUMENT

17. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[6] There are no disputes of material fact in connection with the issues presented in this Motion. The Petitioning Creditors seek partial summary judgment on a discrete legal issue regarding the interpretation or construction of the plain language of the Bankruptcy Code.

18. Section 303(b)(1) of the Bankruptcy Code provides that an involuntary case may be commenced "by three or more entities" that hold claims aggregating "at least $18,600 more than the value of any lien on *property of the debtor* securing such claims held by the holders of such claims."[7] The plain language of this section provides that only property belonging to the debtor is taken into account when determining whether the petitioning creditors have qualified, unsecured claims against that debtor. In other words, in determining whether a secured petitioning creditor is oversecured or undersecured (and thus eligible to commence an involuntary petition), the court only looks to the value of the property belonging to the debtor and not to value of any other collateral that may secure the claim of the petitioning creditor.

---

[6] Fed. R. Civ. P. 56(a), made applicable to this proceeding by Bankruptcy Rules 7056 and 9014.
[7] 11 U.S.C. § 303(b)(1) (emphasis added).

DMS 300350709

19.     Due to the clear, plain, and unambiguous language of the statute, no court appears to have directly addressed this question in the context of section 303 of the Bankruptcy Code. The Petitioning Creditors are not aware of any debtor subject to an involuntary petition ever having advanced such an argument before. Courts have, however, uniformly held that only property of the debtor is relevant when determining the amount of a secured claim under section 506 of the Bankruptcy Code. Section 506(a) provides that a claim" is a secured to the extent of the value of such creditor's interest in the estate's interest in such property . . . ."[8] That is, the secured portion of the claim is equal to value of the debtor's estate's interest in the property securing the claim.

20.     While property of the estate is a "very inclusive" concept, it plainly does not include property that a debtor does not own or in which it only has a nominal interest.[9] Even if a creditor's claim is secured by property of other co-obligors, "only the debtor's property is relevant to the court's determination of the secured status" of the creditor.[10] This means that the determination of the amount of a secured claim is limited to "property in which the debtors have an interest."[11]

21.     Ultimately, sections 303(b)(1) and 506(a) ask the same question when it comes to determining whether a creditor is oversecured or undersecured: Does the value of the property of the debtor securing that claim exceed the creditor's claim or not? There is one debtor in this case: Goodman Networks, Inc. Accordingly, the only property that is relevant for determining the secured status of the Petitioning Creditors' claims is the property owned by Goodman Networks,

---

[8]   11 U.S.C. §506(a)(1).

[9]   *See In re Solis*, 356 B.R. 398, 412-413 (Bankr. S.D. Tex. 2006) (holding that section 506(a) did not apply to car owned by debtor's son).

[10]  *In re Toy King Distributors, Inc.*, 256 B.R. 1, 187 (Bankr. M.D. Fla. 2000).

[11]  *In re Fiberglass Indus., Inc.*, 74 B.R. 738, 740 (Bankr. N.D.N.Y. 1987); *see also In re Beach*, 169 B.R. 201, 203-04 (D. Kan. 1994) (holding that determination of secured claim was limited to debtor's interest in collateral and did include "the interests of nondebtors"); 4 Collier on Bankruptcy ¶ 506.03[5] (2022) (noting that a threshold inquiry for the value of a secured claim is the debtor's estate's interest in the collateral).

DMS 300350709

Inc. Other property owned by other entities that secures the Petitioning Creditors' claims is not relevant to this determination.

**WHEREFORE**, the Petitioning Creditors respectfully request that the court enter an order (i) directing entry of partial summary judgment as set forth in the Motion and (ii) granting such other and further relief as may be just and proper.

Dated:  November 22, 2022  
        Houston, Texas

Respectfully Submitted,

*/s/ Philip M. Guffy*  
Philip M. Guffy (TX Bar No. 24113705)  
**HUNTON ANDREWS KURTH LLP**  
600 Travis Street, Suite 4200  
Houston, Texas  77002  
Tel:     713-220-4200  
Fax:    713-220-4285  
Email:  pguffy@huntonak.com

-and-

Paul N. Silverstein  
Brian Clarke  
**HUNTON ANDREWS KURTH LLP**  
200 Park Avenue  
New York, NY 10166  
Tel:    (212) 309-1000  
Email: psilverstein@huntonak.com  
          brianclarke@huntonak.com

*Counsel for the Petitioning Creditors*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Philip M. Guffy*  
Philip M. Guffy

DMS 300350709