IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

```
IN RE:                          .  Case No. 22-31641-MVL-7
                                .
                                .
GOODMAN NETWORKS, INC.,         .  U.S. Bankruptcy Court
                                .  1100 Commerce Street
                                .  Dallas, Texas 75242
                                .
                 Debtor.        .  Wednesday, November 2, 2022
. . . . . . . . . . . . . . . .    9:34 A.M.
```

TRANSCRIPT OF HEARING ON EXPEDITED MOTION TO COMPEL THE DEBTOR
TO FILE A LIST OF CREDITORS AND TO ESTABLISH PROCEDURES FOR
OTHER CREDITORS TO JOIN IN THE PETITION FILED BY CREDITOR FEDEX
SUPPLY CHAIN LOGISTICS AND ELECTRONICS, Inc. (32)

**BEFORE THE HONORABLE MICHELLE V. LARSON**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES ON NEXT PAGE.

Audio Operator:    Hawaii S. Jeng

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

2

APPEARANCES:

For the Alleged          Akerman LLP
Debtor:                  BY: DAVID WILLIAM PARHAM, ESQUIRE
                             LAURA TAVERAS, ESQUIRE
                         2001 Ross Avenue, Suite 3600
                         Dallas, Texas 75201


For FedEx Supply         Butler Snow LLP
Chain Logistics and      BY: CANDACE CARSON, ESQUIRE
Electronics, Inc.        2911 Turtle Creek Boulevard, Suite 1400
                         Dallas, TX 75219

APPEARANCES VIA WEBEX:

For FedEx Supply         Butler Snow LLP
Chain Logistics and      BY: ADAM M. LANGLEY, ESQUIRE
Electronics, Inc.        2911 Turtle Creek Boulevard, Suite 1400
                         Dallas, TX 75219


For Tiger Athletic       Nathan Sommers Jacobs
Foundation:              BY: IAIN L. KENNEDY, ESQUIRE
                         2800 Post Oak Boulevard, 61st Floor
                         Houston, Texas 77056


For the Petitioning      Hunton Andrews Kurth LLP
Creditors:               BY: PHILIP MICHAEL GUFFY, ESQUIRE
                         600 Travis Street, Suite 4200
                         Houston, Texas 77002

# I N D E X

Page

Motion to strike (related document(s): 44 List
(witness/exhibit/generic) filed by Alleged Debtor
Goodman Networks, Inc.) Filed by Creditor FedEx
Supply Chain Logistics & Electronics, Inc. (48)


**Court's Ruling - Denied In Part/Granted In Part**        **10**

Expedited Motion to compel the Debtor to File a List
of Creditors and to Establish Procedures for Other
Creditors to Join in the Petition. Filed by Creditor
FedEx Supply Chain Logistics & Electronics, Inc. (32)


**Court's Ruling - Granted**                                **31**

WITNESSES:

FOR THE DEBTOR:

 (None)

FOR THE CREDITOR:

 (None)

| EXHIBITS: | ID | EVD |
|---|---|---|
| FOR THE DEBTOR: | | |
| Number 1 - Texas Secretary of State filings for GNET ATC, LLC | 16 | 17 |
| Number 2 - Declaration of Howard Konicov | 16 | 17 |
| Number 3 - Asset purchase agreement | 16 | 17 |
| Number 4 - Assignment and assumption agreement | 16 | 17 |
| Number 5 - Master service agreement | 16 | 17 |
| FOR THE CREDITOR: | | |
| (None) | | |

4

1      (Proceedings commenced at 9:34 a.m.)

2             THE COURT:  All right.  Good morning everyone.

3             We are here on our 9:30 docket.  We have just the one

4   matter on our docket this morning, Case Number 22-31641,

5   Goodman Networks, Inc.

6             I'll take appearances for the record.

7             I'll start with those in the courtroom.

8             MR. PARHAM:  Good morning, Your Honor.  David Parham

9   and Laura Taveras for the alleged debtor, Goodman Networks.

10            MS. TAVERAS:  Good morning, Your Honor.

11            THE COURT:  Good morning.

12            MS. CARSON:  Good morning, Your Honor.  Candace

13  Carson for FedEx Supply Chain Logistics and Electronics, Inc.,

14  along with my colleague Adam Langley on the hybrid hearing.

15            THE COURT:  Thank you so much.

16            Just give me one moment.

17     (Pause)

18            THE COURT:  All right.  And I'll take appearances on

19  WebEx.

20            MR. LANGLEY:  Your Honor, Adam Langley with Butler

21  Snow on behalf of FedEx, as well as Ms. Carson.

22            THE COURT:  Thank you very much.  Good morning.

23            MR. LANGLEY:  Good morning.

24            MR. KENNEDY:  Good morning, Your Honor.  Iain Kennedy

25  from Nathan Sommers Jacobs on behalf of Tiger Athletic

1  Foundation and creditor and interested party.

2            THE COURT:  Did you say Tiger Athletic Foundation?

3            MR. KENNEDY:  Yes, Your Honor.

4            THE COURT:  Thank you very much.  I appreciate it.

5            MR. GUFFY:  Good morning, Your Honor.  This is Philip

6  Guffy from Hunton Andrews Kurth on behalf of the petitioning

7  creditors.

8            THE COURT:  Good morning.

9            Is there anyone else who wishes to make an appearance

10 this morning?

11    (No audible response)

12            THE COURT:  All righty.  Hearing no other takers,

13 okay, so we're here on the motion to compel the debtor to file

14 a list of creditors and to establish procedures for other

15 creditors to join in the petition that was filed by FedEx

16 Supply Chain and Logistics and Electronics, Inc., which will

17 definitely be just called FedEx today because that is a

18 mouthful.

19            Ms. Carson, will it be you or Mr. Langley taking the

20 lead today?

21            MR. CARSON:  Mr. Langley will take the lead.

22            THE COURT:  Okay.  Thank you so much.

23            Mr. Langley?

24            MR. LANGLEY:  Good morning, Your Honor.

25            We are here on FedEx's motion to compel a Rule

1    1003(b) list of creditors and also to establish procedures to

2    make sure that other creditors that are interested parties are

3    given the opportunity to join in this involuntary petition.

4          And quite frankly, when we filed the motion, we

5    anticipated that it was just an oversight on behalf of the

6    parties to this case already, and we didn't intend to put a

7    last-minute flurry of papers and evidentiary hearing before the

8    Court this morning.  We apologize.

9          But we have -- given the last-minute flurry of papers

10   and the evidentiary hearing that's being sought by the

11   petitioning -- excuse me, by the debtor, we have as a

12   preliminary matter moved to strike the exhibit list and the

13   witness list that were filed last minute without a conferral to

14   us and without any notice to us.

15         We think Rule 9014-1 Local Rule and then 9014(e)

16   require there to be a conferral and a good-faith effort to try

17   to exchange information before there is a hearing.  And we also

18   don't think that this hearing was meant to be an evidentiary

19   hearing in the first place.  We set it for 30 minutes.  It's a

20   procedural motion on Bankruptcy Rule 1003(b).

21         So we have as last minute moved to strike the witness

22   list and exhibit list and to make sure this goes forward as a

23   procedural hearing and doesn't turn into a merits determination

24   blown out that should be reserved for the hearing on the

25   petition itself in December.

1          So we have moved to strike that exhibit list and to

2   limit this hearing to be simply a procedural matter.

3          THE COURT:  Okay.

4          MR. LANGLEY:  And so I'm happy to go into the merits

5   of the 1003(b) motion, but I would request that you address

6   that motion to strike preliminarily if Your Honor would.

7          THE COURT:  Okay.  Let me hear from Mr. Parham.

8          MR. PARHAM:  Your Honor, this was set on an emergency

9   basis.  And there was certainly nothing about the setting that

10  implied that it would not be evidentiary.  I guess FedEx would

11  like to just take their allegations as true and not give us a

12  chance to introduce evidence to the contrary.

13         The evidence that we would introduce, you know,

14  basically falls into I think two or three categories.  One

15  would be the fact that their claim in fact is disputed.  And

16  their claim is based on a contract that was sold in an APA from

17  Genesis, a company called Genesis and it's a mouthful, too --

18  Genesis Networks Telecom to Goodman Networks, Inc. and

19  simultaneously Goodman Networks, Inc., the alleged debtor

20  assigned that contract to GNET which is a non-debtor subsidiary

21  of Goodman Networks.

22         So we think their claim is actually at GNET.  But so

23  that's one item.  The other issues that we would go into

24  through the testimony from Mr. Konicov would be that, you know,

25  we have public debt in this company.  And there certainly are

1  more than 12 creditors, and that's never really been an issue

2  or a dispute.

3        But it would be extremely burdensome considering

4  that, you know, much of that debt is held, for example, in

5  street names for us to actually track down and provide notice

6  as they're asking for.

7        I'm not going to go into the merits of the arguments

8  just now, but that's the evidence we would have.  And, frankly,

9  it would take about three minutes to put that evidence on,

10  particularly if FedEx was willing to let us admit the

11  declaration of Mr. Konicov, which they have and it's short, and

12  then take it as a proffer of his testimony as opposed to going,

13  you know, question and answer, which we certainly can do but

14  it's pretty straightforward and it's pretty simple.

15        And, frankly, we would suggest that it just be by --

16  take it as a proffer.  And he's on the line, I believe.  I

17  don't see who the plus seven are, but I believe Mr. Konicov is

18  on the line.  And so he's here and we could proffer that

19  evidence.  And the others are either -- I think the only other

20  evidence we have, frankly, is just the GNET certificate of --

21  Secretary certificate of State records to show that it is in

22  fact a separate corporation.  They assert that it's a DBA of

23  Goodman.

24        THE COURT:  Okay.  So I'll summarize what I believe

25  that your points are and, Mr. Parham, you tell me if I'm wrong.

1  Is obviously, number one, you've got evidence with respect to

2  the 12 creditors and you'd like to be heard -- if I were to

3  rule that a creditors list had to be filed, you'd like me to

4  hear from your client as to how burdensome it might be --

5          MR. PARHAM:  Correct.

6          THE COURT:  -- to list certain sorts of creditors.

7          And then the second question -- the second issue as I

8  understand the factual dispute about I guess essentially

9  whether FedEx can bring this motion?

10         MR. PARHAM:  It does go to standing --

11         THE COURT:  Okay.

12         MR. PARHAM:  -- in a sense, but for today's purposes,

13 I think it's just -- the question is are they a disputed

14 creditor because they have made the allegations that their

15 claim is not disputed.  And we would just put on brief evidence

16 to show -- support our argument that it is disputed because we

17 think it lies at a subsidiary and not at the parent.

18         THE COURT:  Well, in terms of whether or not FedEx is

19 -- can join, I don't think that that's on for today.

20         MR. PARHAM:  That's correct.

21         THE COURT:  Whether or not -- if you want to make the

22 argument of whether or not FedEx can bring the motion, that

23 might be a little different and maybe in your eyes, it's the

24 same thing.  But I'm happy to hear you on that.  But, again,

25 I'm not taking up the joinder today.

1          I mean I think that at this juncture, we're already

2  heading for our motion -- a hearing on the motion to dismiss in

3  December as to the original petitioning creditors.  I don't

4  think I'm going to take up today essentially whether FedEx

5  would qualify as a creditor for the involuntary petition and

6  the joinder.  But I will hear your evidence with respect to the

7  factual dispute as it goes to standing.

8          MR. PARHAM:  Okay.

9          THE COURT:  All righty.

10         MR. PARHAM:  Thank you.

11         THE COURT:  Thank you.

12         So from that perspective, the motion to -- excuse me,

13 the motion to strike is going to be denied.  We'll take it up

14 -- but, again, we'll take it up in a measure of either, A,

15 standing -- so I guess the motion is denied in part and granted

16 in part.

17         I'll take it up, and I'll consider it for the limited

18 basis of standing to bring the motion and then, number two, any

19 testimony about the breadth of a customer list, should I order

20 one.  All righty.

21         All right.  Mr. Langley?

22         MR. LANGLEY:  Yes, Your Honor.

23         So to address the standing question regarding FedEx,

24 I think it's important to realize what we're here on is a

25 procedural motion.  So at best, we can have a facial attack to

1  standing basically saying that FedEx in its joinder hasn't pled

2  a claim.  And that's really the only issue that can be brought

3  up in this procedural posture.  They can't put on factual

4  evidence that demonstrate the actual bona fide dispute which is

5  the issue of the joinder as you just ruled couldn't be brought

6  here.

7          So to the extent that they want to argue standing, we

8  have pled a claim.  The joinder very plainly alleges $81

9  million is owed under a master services agreement.  There is no

10 dispute as to those two facts, that there is a master services

11 agreement and that there's $81 million owed on that.

12         What is disputed is -- apparently disputed is that

13 Goodman Networks even though it received all the monies and

14 paid out all monies under the services agreement and provided

15 all services under the service agreement has now unilaterally

16 assigned this agreement to a third-party related wholly-owned

17 entity that doesn't even have bank accounts.  And so that's a

18 real concern to us that they're essentially doing this behind

19 FedEx's back when our agreement, the master services agreement

20 in Section 36 specifically provides that there can't be an

21 assignment of the agreement without the written consent of

22 FedEx.

23         So to the extent that they purportedly assigned this

24 agreement without notice, without FedEx being present, we think

25 that is a factual dispute that needs to be heard at the

petition hearing and not something that can be facially

addressed on our pleadings which do allege a claim against

Goodman Networks for $81 million.

Again, the amount is not disputed.  The agreement

that it's subject to is not disputed.  It's merely whether the

debtor could shift this to a third-party wholly-owned

subsidiary without FedEx's knowledge and, therefore, avoid

FedEx being a petitioning creditor.  We don't think that's a

facial issue that can deny us the opportunity to go forward on

1003(b) today.

And then moving to Section 1003(b), we think this is

a pretty easy ruling for Your Honor.  We would turn Your Honor

to the QDOS case at 607 B.R. 338.  It's a 2019 decision from

the Bankruptcy Appellate Panel in the Ninth Circuit which had

the exact square issue before it on appeal where the bankruptcy

court had gone forward with a final hearing on the petition and

didn't allow other creditors to join and didn't require the

debtor to put forward a list of creditors.

And the rulings started at the Section B of that and

go on through a series of errors where the court -- or, excuse

me, the Appellate Panel argued that the court should have

required a list of creditors whenever the numerosity issue is

in dispute, which it is here in dispute, because the debtor has

disputed that the petitioning creditors that originally filed

this petition are valid qualified petitioning creditors.

1        And FedEx, if those original petitioning creditors

2   are not valid petitioning creditors, FedEx would be the lone

3   creditor in that situation.  And we do not have knowledge of

4   whether there's 12 or more creditors other than the bald

5   assertion that was made in the declaration from Mr. Konicov.

6        And that has been held in both this QDOS case and in

7   the case of Coralin International, LLC, which is a Southern

8   District of Texas bankruptcy case by Judge Bohm, 516 B.R. 106.

9   The debtor cannot respond and just simply say that they have 12

10  creditors.  Even a declaration or evidence from a CEO, which I

11  believe is what was at issue in QDOS, is not sufficient.  They

12  actually have to go through the procedural burden of meeting

13  the list of creditors under 1003(b).

14        And there's a reason for that.  There is two reasons

15  for that.  First of all, Section 303(c) of the Bankruptcy Code

16  allows for joinder as a matter of right.  So any time that the

17  numerosity issue for this is at stake, other creditors are

18  allowed to join and cure that defect.  Here we don't know if

19  there's a defect.  There's alleged defect by the debtor against

20  the original petitioning creditors, and we've now learned today

21  that FedEx is going to be challenged even though we believe

22  it's pretty clear that we have an $81 million claim against the

23  debtor.

24        But those issues could lead to a question of

25  numerosity.  Yes, there are four petitioning creditors now.  We

1    think that it probably is a valid petition.  But if it's not,

2    which it's being challenged, there should be an opportunity to

3    join and cure that, and that's where the QDOS case is very

4    clear is that that's what Rule 1000(b)(3) [sic] is meant to do.

5         It's meant to ensure that this collective bankruptcy

6    proceeding is indeed collective and that it's not dismissed

7    without rightful opportunity for other creditors that are being

8    injured right now because the debtor has admitted it's not

9    paying its debts as they come due, it's economic distress, it

10   intends to liquidate.  Those creditors should be given the

11   opportunity to join this petition.  They have not been given

12   that opportunity.

13        In fact, FedEx only learned about this because we

14   were about to commence suit.  In our agreement, the master

15   services agreement, we had to give notice and go through a

16   mediation process.  And it was in that mediation process that

17   Mr. Parham showed up and said that the involuntary bankruptcy

18   had been filed.

19        So we'd learned this secondhand.  This is not

20   something that you can just look at a bankruptcy record and

21   know it's out there unless you go searching for it.  And even

22   then, it may be confusing because here the debtor is apparently

23   alleging that he operates under different names.  And we know

24   that the assumed names for Goodman Networks as the Secretary of

25   State's website provides are both Goodman Solutions and GNET.

1  Those are assumed names on record with the Texas Secretary of

2  State.

3          So this is something that is a concern that this is

4  being pushed very quickly without other creditors be given an

5  opportunity.  We think it's a matter of due process that they

6  be given a reasonable opportunity to join before the hearing in

7  December.  That's what the rule requires.  If you look at the

8  second sentence of Rule 1003(b), it says the court shall

9  provide a reasonable opportunity.

10          That reasonable opportunity is pretty meaningless if

11  there isn't a list of creditors that FedEx can solicit or that

12  those creditors get notice, that would essentially render

13  103(b) [sic] fairly meaningless.

14          So our position's pretty clear that any time the

15  numerosity issue is at stake, that 1003 has to be complied

16  with.  The debtor cannot have it both ways.  It can't say, oh,

17  there are four creditors here.  I don't have to comply with

18  1003(b), but I'm going to challenge every single one of those

19  creditors' qualifications to file this bankruptcy petition.

20  It's an absurdity.  It creates a meaningless rule.  It creates

21  a situation where due process is not given to other parties of

22  interest.

23          And it essentially removes this collective proceeding

24  of bankruptcy and turns it into a two-party dispute, and we

25  just don't think that's appropriate here.  And we would ask

1 that the debtor be compelled to file the 1003(b) list, that

2 they provide notice to those parties on that list, and that

3 this all be done in an advance time so that a reasonable

4 opportunity to join is had before the December 19th hearing.

5          THE COURT:  Thank you very much, Mr. Langley.

6          Mr. Parham?

7          MR. PARHAM:  Your Honor, I would start by offering

8 the exhibits that we have listed in our witness and exhibit

9 list.

10          Number 1 is the Texas Secretary of State filings for

11 GNET ATC, LLC.  2 is the declaration of Howard Konicov.  3 is

12 the asset purchase agreement which is an exhibit to Mr.

13 Konicov's declaration.  4 is the assignment and assumption

14 agreement.  And 5 is the master service agreement that Mr.

15 Langley referred to just a moment ago.

16          MR. LANGLEY:  Your Honor, I would object to the entry

17 of everything except the master service agreement.  We haven't

18 had an opportunity to see and examine those and go through

19 discovery related to any of those.

20          FedEx was not a party to any of those documents other

21 than the master service agreement.  And it's simply, I'm going

22 to call it what it is, it's an ambush on evidence that FedEx is

23 not a party to.  And we just think it's inappropriate at this

24 time to put that in the record on a procedural motion.

25          THE COURT:  Response, Mr. Parham?

1          MR. PARHAM:  You know, I think in their own pleadings

2     they allude to the fact that the contract was assigned.  And so

3     --

4          THE COURT:  And where is that?

5          MR. PARHAM:  That there was an assignment.

6          I'll need to look and see.  Well, they may have said

7     maybe there was an assignment.

8          But, you know, frankly, I mean if you're going to go

9     forward on an emergency basis, you know, I don't think it's --

10    and I'll need to look forward it.  Give me just a second.

11         In Paragraph 10, they talk about creditors should be

12    notified the debtor's conducted business under assumed names

13    and may be a successor in interest in certain assets and

14    assignee of certain agreements of Genesis Networks Telecom,

15    under the assumed name Genesis ATC, which Genesis ATC is a

16    separate company, as the Texas Secretary of State filings show.

17         So I don't think this should come as a huge surprise

18    to them.  And, you know, certainly it was in our -- when we

19    filed our response, our objection laid it out that -- you know,

20    that the asset purchase agreement existed and was assigned on

21    the same day back in 2019.  So it was a long time ago that it

22    was assigned to GNET ATC.

23         THE COURT:  All right.  I'll admit the exhibits for

24    sake of the record but, again, only to the issue of standing

25    and again not for joinder.  Again, I don't believe that joinder

1 is up for today.  If anything, it would be subject, I guess, to

2 a further motion to dismiss or perhaps further briefing with

3 respect to the motion to dismiss, depending upon how you look

4 at it.

5          But for sake of today, I'll admit the exhibits and

6 then you can walk me through them, Mr. Parham.

7      (Debtor's Exhibits 1 through 5 admitted into evidence)

8          MR. PARHAM:  That's fine.

9          And, Your Honor, we have filed an objection to the

10 joinder.  So that --

11          THE COURT:  Right.

12          MR. PARHAM:  -- was on file two days ago.

13          THE COURT:  Right.

14          MR. PARHAM:  So with respect to -- and I'll get to

15 the exhibits in a minute, but I think what I would like to do

16 is really turn to, you know, what I think is a legal issue here

17 first and foremost, which is whether in fact Rule 1003(b)

18 applies at all to this case.

19          And when you look at the clear text of the rule, it

20 starts, "If the answer to an involuntary petition filed by

21 fewer than three creditors," and so they're talking about the

22 answer to an involuntary that's filed by fewer than three.  And

23 this involuntary was filed by four.  On its face it doesn't

24 apply.

25          If there's the existence of 12 or more creditors, so

1  in other words, if the answer is if fewer than three file and

2  the answer is we have more than 12 creditors, then you'd have

3  to file a list and this rule applies.  And it's basically to,

4  as the court in Liberty Tool v. Vortex Fishing cited in our

5  papers states, the rule functions to provide an opportunity to

6  moot a defense of insufficiency in the number of petitioners.

7  It goes to numerosity.

8           And that's not what is at issue here.  In fact, you

9  know, the original petition, the petitioners assert there was

10 more than 12.  We agree with that.  We haven't contested it.

11 In fact, we have public debt, so we actually have hundreds of

12 creditors --

13          THE COURT:  Sure.

14          MR. PARHAM:  -- as we'll go to in a minute.

15          But so our view is just on its face, the rule doesn't

16 apply.  It's intended to provide in certain cases where the

17 defense is we have more than 12.  It requires if the alleged

18 debtor wants to carry its burden, it has to provide a list.

19 But here it's not even in dispute.  It's never been in dispute

20 until this motion was filed.  And I'm not even sure it's really

21 in dispute because they say they don't know.  But they should

22 know.

23          THE COURT:  But, again, they're not -- the movant

24 doesn't live in the first sentence of 1003(b).  They live in

25 the second sentence.  Don't they?

1          MR. PARHAM:  Well, I would argue the rule doesn't

2    apply.  But if you go just with the second sentence in terms of

3    providing a reasonable opportunity for other creditors to join,

4    you know, I think that's been satisfied simply by the passage

5    of time.  This case was filed I believe on something like I

6    want to say August 31st.  And the hearing on the trial is

7    December 19.

8          Simply put, there's no requirement for -- in an

9    involuntary case for a debtor to go and provide notice.  I mean

10   I think the Court has the discretion to do that.  But there's

11   no requirement for it.  And here it would be, as we point out,

12   extremely burdensome to impose that kind of a requirement.

13         And that really brings us -- so while I agree you

14   have the discretion to do it, there's no requirement that it be

15   done, certainly no requirement that we provide a notice.

16         Mr. Konicov in his declaration -- if you'll give me

17   just one second to flip to it -- in Paragraphs 13 through 15,

18   describes that we have 301 bondholder creditors that have

19   consensually disclosed their identity and approximately 60

20   financial institutions serving as custodians of all the notes.

21         As a practical matter, we also have other creditors.

22   But just the public debt alone to try and give notice, we don't

23   even know who they are, I mean, because these are held in

24   street names.  This Court's familiar with that.  So the cost

25   and I think their request is that we give notice in three days,

1  that's -- it's not even possible.

2        So we would ask -- I mean here you have four and if

3  FedEx is allowed in, five creditors.  There's no reason to give

4  notice to all the world.  If an order for relief is entered at

5  some point, then they'll all get notice of the bankruptcy case.

6  And that's really how the system pretty much is supposed to

7  work.  I mean involuntary trials if -- particularly in a case

8  such as this, you know, if all of a sudden the alleged debtors

9  were required to give notice to the world, well, you'd turn

10 them into a circus.  And, frankly, it would take forever to get

11 that issue resolved.

12        So we would ask the Court to not require notice and

13 find that the passage of time here is sufficient to provide

14 parties such as FedEx to come in and want to join if that's

15 what they want to do.

16        THE COURT:  Well, how does this passage of time

17 equate to notice?  So I understand how it happened in this

18 case.  It sounds like litigation was ensuing between your

19 client and FedEx, and I think I read in the papers that there

20 was maybe a mediation or an arbitration of something that was

21 scheduled.  And then that's when they found out about the

22 involuntary.

23        How is everyone else going to find out by the passage

24 of time?

25        MR. PARHAM:  Well, I'm not arguing that the passage

1  of time equates to notice.  I'm arguing it equates to a

2  reasonable opportunity if the Court so determines that -- well,

3  the Court shall afford a reasonable opportunity.

4        You know, again, I come back to I think a reasonable

5  opportunity is satisfied I mean when you put a trial off for

6  three months or four months, you know, as opposed to requiring

7  a debtor to -- an alleged debtor to essentially prepare what

8  amounts to schedules and statements of affairs and give, you

9  know, bankruptcy-type notice.  That's, you know, highly

10 unusual, quite frankly, in an involuntary setting.

11       THE COURT:  You know, I follow you, Mr. Parham, from

12 the extent I mean delay is fine.  Delay only gives those people

13 who have received notice more time.  Otherwise, it's just more

14 time if creditors don't know.

15       And I think that what I'm struggling with, Mr.

16 Parham, you know, I've read the cases that you cited in your

17 papers, I read Vortex very carefully, I read the Caucus

18 Distributors case very carefully.  And in neither -- well, one

19 case, there was an issue about numerosity, right, about the

20 number of creditors.

21       But in that case, in Caucus, the Government had all

22 the creditor info.  The Government was the creditor in that

23 case and had all the creditor info.  And so this was a case of

24 a creditor that filed an involuntary petition with only one

25 creditor knowing there were more than 12.

23

1          In <u>Vortex</u>, the issue was completely different.  The

2   issue was about failing to pay debts as they come due or a bona

3   fide dispute.  It was not about numerosity.  So in <u>Vortex</u>, they

4   said now there's no need to file the creditor list because we

5   already have the requisite number of creditors.

6          In this case, you kind of want your cake and eat it

7   too, in that you say none of these four creditors are bona fide

8   creditors for purposes of an involuntary petition but we

9   because you don't have four creditors, then -- or excuse me,

10  but because those four creditors actually filed, then you don't

11  trigger 1003.  So we're kind of in a trick box here.

12         MR. PARHAM:  Well, I think one way to look at it is

13  if you take that to its logical extreme, what you're saying is

14  someone who could come in and basically be clearly unqualified,

15  knowing they're unqualified even, file an involuntary petition,

16  and then use that basically to go and obtain the creditor list

17  and try and mount an involuntary case because that's in essence

18  what is happening here.

19         If these creditors aren't qualified, then what

20  they're trying to do is come in basically as unqualified

21  creditors and say, Judge, give us the list -- make them give us

22  the list of all the creditors in their case so we can go and

23  solicit them and try and get other creditors in here.

24         But it really kind of stands the whole process on the

25  head.  They're either qualified or they're not.  If they're

1  qualified, then it's done.  And if they're not qualified, they

2  ought not be allowed to come in here and use the involuntary

3  process to essentially do discovery and try and drum up an

4  involuntary case.

5          THE COURT:  Other than your bondholder creditors,

6  approximately how many creditors does the alleged debtor

7  possess?

8          MR. PARHAM:  You know, I don't know the number.  I'm

9  told it's several million dollars' worth of unsecured

10  creditors.

11          THE COURT:  Because my question is a little

12  different.  If it's burdensome to notify all of the bondholders

13  because of the peculiarity of the custodians and DTC and things

14  of that nature, how many FedEx-like creditors are there?

15          MR. PARHAM:  You know, I do not know the answer to

16  that question.

17          THE COURT:  Okay.

18          MR. PARHAM:  Mr. Konicov may who's on the line, but I

19  don't.

20          THE COURT:  Okay.

21          All righty.

22          MR. PARHAM:  I'm just told it's in the millions.

23          THE COURT:  Okay.  Of dollars, I gotcha.

24          All righty.  Anything further before I seek responses

25  from Mr. Kennedy or Mr. Guffy?

1          MR. PARHAM:  No, Your Honor.  I would just point --

2  well, other than I would point to again Mr. Konicov's

3  declaration where he walks through the transactions related to

4  the master service agreement, the fact that the company entered

5  into an -- that Genesis Telecom entered into an APA with

6  Goodman Networks back in 2019, and it was assigned the same day

7  to GNET and that GNET has been -- and, in fact, that the

8  revenues and expenses associated with the FedEx contract have

9  always been accounted for by Goodman at the GNET level.

10          THE COURT:  Before I let you go, just one moment.

11  Give me one moment.

12      (Pause)

13          THE COURT:  How does the alleged debtor respond to

14  FedEx's argument that the contract could not be assigned?

15          I've just located it.  It looks like in Section 10.4

16  of the agreement says that no party may assign either this

17  agreement or any of the rights hereunder without prior written

18  approval of the parties.

19          Is there an exhibit in here where FedEx gave that

20  approval?

21          MR. PARHAM:  I have not seen that, Your Honor, but if

22  that's the case, then the claim would be at Genesis Telecom if

23  you follow that because Genesis Telecom was the original party

24  to the master services agreement.

25          You know, the fact is these parties operated after

1  the sale, after the APA and the assignment for close to three

2  years.  So to come in now and say that, you know, there was no

3  valid assignment, I guess you would go back to the original

4  contract party which doesn't really help them.

5       THE COURT:  So you're alleging that FedEx improperly

6  took an assignment of this agreement?

7       MR. PARHAM:  No.  No.  No, no, no, no.  No, no.

8       FedEx -- I'm not alleging that any of that was

9  improper.  I don't know whether or not -- I don't know for sure

10  what FedEx knew or didn't know other than they were dealing

11  with Goodman as opposed to Genesis Telecom after the APA.  They

12  were dealing with GNET, rather, for a period of about three

13  years.

14       What I am saying is that if Genesis couldn't assign

15  the contract, if it couldn't be assigned or transferred under

16  the master services agreement which I think a 2013 agreement,

17  then what we're really saying is the assignment to Goodman or

18  the sale to Goodman and the assignment to Genesis, you would be

19  saying that's not effective, which leaves everything at Genesis

20  which is kind of -- I don't think that can possibly the result

21  because, like I say, for three years they operated -- GNET ATC

22  was in fact the other party.

23       So I don't have the document that shows that they

24  knew about the assignment or that they approved the assignment

25  in writing.  But I think in practice, they certainly did

1  because they continued to operate that way.

2        THE COURT:  All right.  Thank you very much, Mr.

3  Parham.

4        MR. PARHAM:  Thank you.

5        THE COURT:  Before I go back to you for any response,

6  Mr. Langley, Mr. Guffy, Mr. Kennedy, would either of you like

7  to be heard today?

8        MR. KENNEDY:  No, Your Honor.  This is Mr. Kennedy.

9  My client is just observing today.  Thank you, though.

10        THE COURT:  Thank you.

11        Mr. Guffy?

12        MR. GUFFY:  Thank you, Your Honor.  Philip Guffy for

13  the petitioning creditors.

14        Like Mr. Kennedy, we're more or less observing today,

15  you know, other than asserting that, you know, we do believe we

16  are qualified to file the involuntary.  We're not taking a

17  position on the relief that FedEx is seeking.

18        THE COURT:  Okay.  Thank you very much, Mr. Guffy.

19        Mr. Langley?

20        MR. LANGLEY:  Thank you, Your Honor.

21        I think something Mr. Parham said is really

22  appropriate to address again, and that is he doesn't think

23  FedEx is a qualified creditor.  And that really gets to the

24  issue of a bona fide dispute.  Is there a bona fide dispute

25  whether FedEx is a qualified creditor is something that has to

1  be tried.  That's a hearing.  That's an evidentiary hearing

2  that has to be had on the petition.

3          That is exactly what can't occur before the Rule

4  1003(b) second sentence reasonable opportunity has to occur.

5  So all we are here today is to get that reasonable opportunity

6  before the hearing that occurs.  So we don't think that the

7  numerosity issue that Mr. Parham has raised which is the public

8  debt is really relevant here because we think Mr. Guffy's

9  client sufficiently represent that group of creditors.

10         And as Your Honor identified, who are the other

11  parties like FedEx that are trade creditors?  They're the

12  parties that have dealt under agreements that are not being

13  paid right now.  They're admittedly not being paid right now.

14  That is what we think Rule 1003(b) is meant to do, to put them

15  on notice, to give them due process, to make 303(c) of the

16  Bankruptcy Code the opportunity to join meaningful so that they

17  can know whether they want to join or not.

18         If they give notice and choose not to join, we have a

19  different situation in December.  But if they get notice and

20  say, oh my goodness, we didn't know that they weren't being

21  paid, we want to join.  We want this to go in.  We want to

22  examine fraudulent transfers.  We want to examine preferential

23  transfers.  We want to do all the things that a bankruptcy case

24  and trustee can do.  That's what we want to advocate for and

25  solicit for, and we can't do that without knowledge of who

1  other trade creditors are.

2          We're aware of one other trade creditor that's filed

3  lawsuit, but other than that one other trade creditor, we don't

4  have knowledge about the details of the innerworkings of this

5  debtor.

6          And regarding the idea of these assignments and

7  agreements that FedEx was not a party to, I just don't think

8  that's a merit determination that could be made here.  We would

9  seek discovery to figure out what did these assignments, what

10  were these assignments, why was FedEx not noticed on those,

11  what communications were made.  All the things that go into an

12  evidentiary dispute, we would want to go get into that.

13         And Mr. Parham also mentioned a Genesis assignment

14  going back to 2019 before Goodman Networks comes into this.

15  But the statement, the declaration that they put in at

16  Paragraph 23 admits that Goodman Networks received over $80

17  million worth of monies from FedEx and was the same accounts

18  that was paying FedEx.  So there clearly is a course of dealing

19  between Goodman Networks and FedEx.  That's admitted.  That's

20  not in dispute.

21         And that is facially alleged in our joinder which is

22  all the Court can look at right now.  It's like a motion to

23  dismiss.  The Court has to facially take the allegations we

24  make at this procedural motion on its face and reserve any

25  issues regarding disputes before the actual evidentiary hearing

1  that comes in December.

2          So that's all we're asking for today is that we be

3  given the opportunity to solicit other creditors to make sure

4  that this estate is not piecemealed out in the interim and

5  allow us to get a trustee in place.  We think other creditors

6  are going to jump at the opportunity to join this bankruptcy

7  case given the allegations in the original petitioning

8  creditor's schedule and what FedEx knows.

9          And to the extent we need to put that on the record

10 in December, we will have evidence and discovery and be able to

11 put all that before the Court.  So with that, Your Honor, I

12 have nothing further unless you have questions.

13         THE COURT:  I don't think I have any questions, Mr.

14 Langley.

15         The Court is prepared to rule.  Just give me one

16 moment.

17     (Pause)

18         THE COURT:  All righty.  I apologize.  I'm probably

19 going to be a little bit more disjoined than normal, but I do

20 have a 10:30 conference so I'm going to try to give you guys a

21 ruling and perhaps make it in time for my conference, as well.

22         And I'll reserve the right to potentially issue a

23 memorandum opinion on the issue given it is a fairly novel

24 issue.  But, again, I'm just going to reserve that right at

25 this time.

1          The Court is going to grant the motion to compel as

2   filed by FedEx.  As I see it, there seems to be a bit of

3   disjointedness between let's just say 1003(b).  There are two

4   sentences in there and, as I mentioned before, FedEx is really

5   relying upon the second sentence that says that if it appears

6   that there are 12 or more creditors as provided in 303(b) of

7   the Code, the court shall afford a reasonably opportunity for

8   other creditors to join in the petition before a hearing is

9   held thereon.

10         I am certainly in tune with Mr. Parham's argument

11  that essentially you read the second sentence in conjunction

12  with the first sentence and so the 1003 should only be

13  applicable if there were fewer than three creditors that filed

14  the involuntary petition.  However, as I said, that puts the

15  creditors here in a bit of a trick box.

16         The alleged debtor has alleged that none of the four

17  creditors are appropriate creditors for filing an involuntary

18  petition, but essentially is asking the Court to kind of kick

19  the can down the road to the motion to dismiss to have that

20  heard without ever determining if there are other proper

21  creditors.

22         Having reviewed the case law that was cited by the

23  alleged debtor, specifically the Caucus Distributors and Vortex

24  Fishing System cases coming out of the Eastern District of

25  Virginia and the Ninth Circuit, the Court finds that in each of

32

those instances, they were factually dissimilar to the facts and circumstances of this case.

In <u>Vortex</u>, there was no question of the three creditors for numerosity. And in <u>Vortex</u>, more importantly, the 1003 list was filed, filed under seal but still filed.

And in the <u>Caucus</u> case, again, the court noted specifically -- let's see if I can give you a reference -- at Page 908 of that decision that this was a case where the Government had all the creditors' info and knew specifically that the debtor had 12-plus creditors but, again, for purposes of the involuntary petition was flying solo.

None of those are the case that we have here today where we've got an assertion by the alleged debtor that there are more than 12 creditors. And we've got a challenge to the existing four creditors that have filed.

So I don't disagree with you, Mr. Parham, that we are somewhere between 303 and 1003. So whether the Court is ruling strictly in 1003(b) the second sentence or whether the Court is using its 105 powers, I believe in line with the decisions in <u>QDOS</u> that was cited by the movant or the <u>Zanga</u> opinion coming out of the BAP from the Sixth Circuit, 562 B.R. 341, which collects cases each standing for the proposition that when there are perhaps fewer than the necessary qualifying creditors for the petition, the court has the discretion to allow petitioners more time to seek joinder and specifically do so in

1  connection with the provisions of 1003(b), again, second

2  sentence.

3         And, finally, the Court finds that the Court will

4  exercise its discretion because since there is some

5  disagreement over the import of Rule 1003(b) that the Advisory

6  Committee notes that, and I'll read.

7         It says,

8         "Section 303 of the Code permits a creditor to join

9         in the petition at any time before the case is

10        dismissed or the order for relief is entered while

11        Rule 1003(b) does not require the court to give all

12        creditor notice of the petition, the list of

13        creditors filed by the debtor affords a petition the

14        information needed to enable him to give notice for

15        the purposes of obtaining the co-petitioners required

16        to make the petition sufficient.

17        "After a reasonable opportunity has been afforded for

18        other creditors to join in the involuntary petition,

19        the hearing on the petition should be held without

20        further delay."

21        So, again, I believe that the import of 1003(b) would

22  require the filing of a list of creditors, and I think it's

23  necessary in this particular circumstance given that numerosity

24  has been challenged based upon the qualification of the four

25  existing creditors.

1          So that brings us to what should be filed and when.

2    Again, I think at a minimum, the debtor can file -- as it

3    pertains to the bondholders, the debtor can certainly notify

4    the indenture trustee, is that UMB?

5          MR. PARHAM:  Yes.

6          THE COURT:  Okay.  You could notify the indenture

7    trustee and could essentially send out -- file the list --

8    excuse me, when I say notice, I mean file the list is what I

9    mean -- is could file the list notifying UMB and then all of

10   the, let's just say the other claimants, the vendor claimants.

11         I think that that list could be filed.  And, again,

12   I'm not asking you to provide notice of that.  I'm just asking

13   that that be filed.

14      (Pause)

15         THE COURT:  Any questions, Mr. Parham, on behalf of

16   the debtor?

17         MR. PARHAM:  What is the timing on that, Your Honor?

18         THE COURT:  Oh, the timing.  Our hearing's December

19   19th?

20         MR. PARHAM:  Uh-huh.  Yes.

21         THE COURT:  Can you get it on file in seven days?

22         MR. PARHAM:  If all we have to do is the bondholders

23   and trade creditors and just the name of the creditor, right,

24   and their address?

25         THE COURT:  Yeah, the claim and the address.

1          MR. PARHAM:  I think we could do --

2          MR. LANGLEY:  Your Honor, I could not hear Mr. Parham

3  from the seat.

4          THE COURT:  Okay.  If you could pull the mic closer,

5  Mr. Parham.

6          MR. PARHAM:  Yes.

7          THE COURT:  Mr. Parham is soft-spoken.

8          MR. PARHAM:  So we're saying seven days.

9          MR. LANGLEY:  Thank you.

10         MR. PARHAM:  And with respect to bondholders, we just

11 have to add the UMB which is the trustee which they're fully

12 aware of this proceeding --

13         THE COURT:  Of course.

14         MR. PARHAM:  -- already.

15         And then the names of trade creditors, I guess, and

16 their addresses.  Is that what I'm hearing?

17         THE COURT:  Right.  That's what I'm looking for.

18         MR. PARHAM:  Okay.  I think we can do that in seven

19 days.

20         THE COURT:  Okay.  And let me look at the -- while

21 we're here, let me look at the proposed form of order.

22         MR. PARHAM:  I think it goes beyond it, is my

23 recollection of it.

24         THE COURT:  Okay.  So let me look.

25         Is that an exhibit to the original motion?

36

1          MS. CARSON:  Yes, Your Honor.

2          THE COURT:  Okay.  Let me pull it up.

3          MR. CARSON:  And Mr. Parham is correct the proposed

4    form of order --

5          MR. LANGLEY:  Your Honor?

6          MR. CARSON:  -- required notice.

7          THE COURT:  Okay.

8          MR. CARSON:  The debtor provide notice.

9          MR. LANGLEY:  Your Honor, I was going to --

10          THE COURT:  Mr. Langley?

11          MR. LANGLEY:  Your Honor, I was going to ask for

12   clarification on your order just then as to what the debtor is

13   to provide.  It's the full 1003(b) list that includes amounts

14   and description and address and name.  Correct?

15          THE COURT:  Oh, okay.  I think I may --

16          MR. PARHAM:  We would ask that that be pared down to

17   name and address.

18          THE COURT:  Okay.  Thank you both.

19          Let me look at the form of order.  Just one moment.

20      (Pause)

21          THE COURT:  Okay.  And that's actually my mistake,

22   Mr. Parham.  I didn't focus on the rest of 1003.

23          Yes, I do believe that the debtor should file the

24   answer with the list of the creditors, again, excluding

25   bondholders other than listing UMB which, again, as you said,

1 is probably aware, with a brief statement as to nature of the

2 claim and the amounts thereof.  Okay.

3          MR. PARHAM:  Okay.

4          Your Honor, could we have a -- as part of this, could

5 we have a deadline for joinder?

6          THE COURT:  Yes.  Exactly.

7          MR. PARHAM:  Because the idea of --

8          THE COURT:  That was the next thing.  I was pulling

9 up the proposed order.  So a few changes to the proposed form

10 of order is number two it says they'll file a list of creditors

11 in three days.  I'm going to give them seven days to do that.

12 And obviously, seven -- so the debtors will serve the form,

13 well, let's just say within -- obviously, we're just talking

14 about a mailout here.  Yeah, within three days of the filing is

15 fine.

16          So in terms of -- so, obviously, joining all the way

17 up until December 19th doesn't really work.  So 14 days puts us

18 somewhere in the nature of the 16th, you'll be mailing that out

19 by the end of the week.

20          What about December 9th, Mr. Parham?

21          MR. PARHAM:  December 9th?

22          THE COURT:  Uh-huh.

23          MR. PARHAM:  Let me think about that.

24          THE COURT:  Unless you can get your list on file

25 quicker.  Because here's what we're doing.  We're looking at

1   seven days to file it, then service, then they have to get it

2   and just make a decision.  So --

3           MR. PARHAM:  Right.  And so my question would be -- I

4   have a couple of question, if I might.

5           THE COURT:  Sure.

6           MR. PARHAM:  One question is we get --

7           MR. LANGLEY:  Your Honor?

8           THE COURT:  Come to the podium, please, Mr. Parham.

9           MR. PARHAM:  One -- I'm sorry.

10          So one question is we file the list --

11          THE COURT:  Right.

12          MR. PARHAM:  -- and the rule seems to talk in terms

13  of giving the petitioners the ability to go find people.  So

14  are we noticing it or is it up to the petitioners to go out and

15  try and locate additional people?

16          Because as I understood it, the idea of filing a list

17  was to give the petitioners a chance if they wanted to to go

18  and --

19          THE COURT:  Oh, so you're saying you shouldn't have

20  to mail it out.

21          MR. PARHAM:  Correct.

22          THE COURT:  Okay.  I think that's fair.

23          MR. PARHAM:  Okay.  And so why don't we -- I would

24  also ask that and so that we have, and recognizing the holidays

25  and all, that maybe say they have to join within two weeks,

1  file a joinder within two weeks of whenever we file the list,

2  give them two weeks to join?  Fourteen days?

3           MR. LANGLEY:  Your Honor, may I speak on to the date

4  for joinder?

5           THE COURT:  Yes.

6           MR. LANGLEY:  Because I have some knowledge based on

7  FedEx's dealings on this.

8           So given that the list will be provided by the

9  debtor, it would be -- those debts would be uncontroverted

10 seemingly.  And so there wouldn't really need to be a hearing

11 if more than three creditors come forward and join because that

12 would essentially, as the QDOS case says, moot out the issue of

13 numerosity and the debtor's already admitted that it's

14 qualified for purposes of economic distress.

15          So all we would be doing at this point at the 19th

16 would be to say, oh yes, three creditors did show up, there's

17 no reason to go forward with the bondholder dispute, there's no

18 reason to go forward with the dispute with FedEx.  We've got a

19 qualified petition.

20          And with FedEx, I can tell you it took a while to be

21 able to get FedEx moving to get involved in an involuntary

22 bankruptcy and understand what was going on.  These are big

23 corporations that have been dealing with Goodman.  They're

24 going to have to have some time to consider what is going on

25 and get up to speed and go through the court processes to get

1  engaged in this.

2          I know we've talked with the other creditor that's

3  got litigation in Texas, and they're I think going to join but

4  it's been several weeks where they're going through that

5  corporate process.  And I don't think there's any reason this

6  shouldn't be done just very shortly before the December 19th

7  hearing because there's not going to be any contested matters

8  related to those joinders.  Those are going to be

9  uncontroverted creditors on the creditors' list.

10          THE COURT:  Okay.  Well, I think you're -- I think

11  you might be going a little step too far, Mr. Langley, is

12  you're basically declaring that the list that they filed

13  pursuant to 3003 [sic] is the equivalent of a clean claim on --

14  I'm sorry, did I not say Mr. Langley?  I did not.

15          I apologize.

16          But is the equivalent of a clean claim on a

17  creditor's list.  I think we need to give some sufficient time

18  here.  So, Mr. Parham, let's just start putting some dates to

19  this, all right?  Your client shall file the 1003 list by the

20  9th, okay.

21          Mr. Langley, how long do you think that you need to

22  have it out there before joinder should be made?

23          MR. LANGLEY:  Your Honor, I'm sorry, did you ask me

24  that?  This is Mr. Langley.

25          THE COURT:  Yes.

1          Yes, because Mr. Parham's --

2          MR. LANGLEY:  Yes.  So I --

3          THE COURT:  -- asking for a date certain for joinder,

4    okay.  So we have a hearing on December 19th.  When do you

5    think the joinder should be in hand?

6          MR. LANGLEY:  So we will move expeditiously to get

7    notice out to those parties that are identified on the creditor

8    list.  Given the mailing issue and the ability to follow up by

9    phone call, that's going to have to do some research on our

10   part because we're not going to have phone numbers.

11         So I anticipate them getting counsel engaged, going

12   through the corporate processes would take at least a month.

13   So I would suggest no earlier than December 9th, but I would

14   suggest as late as possible.

15         THE COURT:  Well, yeah, as late as possible but just

16   -- I mean there's a lot of discovery that is taking place.

17   There's folks preparing for a hearing.  I mean I don't want the

18   joinder to be the 16th and everyone has prepared for a hearing

19   for the 19th, right?

20         So I think let's say --

21         MR. LANGLEY:  Your Honor, would December 12th work?

22         THE COURT:  Yes, that's exactly where I was going.

23         MR. LANGLEY:  It's a week in advance.

24         THE COURT:  December 12th is fine.  That's a week

25   prior, and that way if there are three petitioning creditors at

1    that point and the parties could alert the Court.

2              MR. LANGLEY:  Thank you.

3              THE COURT:  Assuming there are three qualified.

4    Because, again, I'm not ruling today on whether or not FedEx is

5    a qualified creditor for purposes of the involuntary petition,

6    and the issue's already been pushed for the three bondholder

7    creditors or four bondholder creditors.

8              So I'll look to you two gentlemen to revise the

9    proposed form of order together.

10             Mr. Langley, if you could take the lead on that and

11   then provide a copy to Mr. Parham for review before uploading.

12             MR. LANGLEY:  Yes, Your Honor.

13             THE COURT:  Any other questions?

14             MR. PARHAM:  No questions, Your Honor.

15             THE COURT:  Thank you very much.

16             MR. SHAFFER:  Your Honor, this is Eric Shaffer for

17   UMB.  Just to be clear, Mr. Parham will give me a notice, we

18   will send it out as quickly as we can through DTC so that it

19   can get to the beneficial holders.  We don't know them, but

20   we're on board with getting this out expeditiously.

21             THE COURT:  No, I do understand.  And I apologize

22   that I didn't catch your name.  But I do understand that UMB

23   will just do its best to get it out.

24             Again, in terms of notice going out to the various

25   bondholders, I assume they would all be in the same

43

1   circumstance as the existing petitioning creditors where there

2   would be an allegation by the alleged debtor that these are

3   secured -- the holders of secured claims and, therefore, would

4   not qualify as petitioning creditors for an involuntary.

5           Am I correct on that?

6           MR. SHAFFER:  I suspect that that's correct.  But,

7   again, we just want to make sure that our mechanics are

8   consistent with whatever the Court is looking for us to be

9   doing.  And we'll ensure that whatever notice Mr. Parham gives

10  us gets out as quickly as possible.

11          THE COURT:  Okay.  Thank you very much, Mr. Shaffer.

12  That's all we're requesting is that you get it out as soon as

13  you can to the list that you have.  And perhaps if you could

14  start gathering the list now since you know that the request

15  will be coming for seven days or so, I'd appreciate it.

16          MR. SHAFFER:  We'll do it.

17          THE COURT:  All righty.  Thank you.

18          Does anyone else wish to be heard?

19     (No audible response)

20          THE COURT:  All right.  I'll look for an agreed for

21  of order -- or, excuse me, agreed as to form, obviously, Mr.

22  Parham, from you and Mr. Langley.  All righty.

23          MR. PARHAM:  Thank you.

24          THE COURT:  You're welcome.

25          The Court will --

44

1          MR. LANGLEY:  Thank you, Your Honor.

2          THE COURT:  -- stand adjourned.  Thank you.

3          THE CLERK:  All rise.

4      (Proceedings adjourned at 10:36 a.m.)

5                      * * * * *

6

7

8

9

10

11             **C E R T I F I C A T I O N**

12          I, DIPTI PATEL, court approved transcriber, certify

13   that the foregoing is a correct transcript from the official

14   electronic sound recording of the proceedings in the above-

15   entitled matter, and to the best of my ability.

16

17   /s/ Dipti Patel

18   DIPTI PATEL, CET-997

19   LIBERTY TRANSCRIPTS          DATE: November 4, 2022

20

21

22

23

24

25