# EXHIBIT 1
## TO
## FSCLE OBJECTION TO THE MOTION TO CONVERT
## CHAPTER 7 CASE TO CHAPTER 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE:                          . Case No. 22-31641-MVL-7
                                .
                                .
GOODMAN NETWORKS, INC.,         . U.S. Bankruptcy Court
                                . 1100 Commerce Street
                                . Dallas, Texas 75242
                                .
                Debtor.         . Monday, November 28, 2022
. . . . . . . . . . . . . . . . . 1:35 P.M.


TRANSCRIPT OF EXPEDITED HEARING ON
MOTION TO QUASH OR, ALTERNATIVELY, TO MODIFY THIRD-PARTY
DEPOSITION SUBPOENA FILED BY INTERESTED PARTY JAMES GOODMAN
(83); AND MOTION TO QUASH ARRIS DISCOVERY FILED BY ALLEGED
DEBTOR GOODMAN NETWORKS, INC. (85)

**BEFORE THE HONORABLE MICHELLE V. LARSON**
**UNITED STATES BANKRUPTCY COURT JUDGE**


APPEARANCES ON NEXT PAGE.


Audio Operator:    Dawn E. Harden


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

APPEARANCES:

For the Alleged        Akerman LLP
Debtor:                BY: DAVID WILLIAM PARHAM, ESQUIRE
                       2001 Ross Avenue, Suite 3600
                       Dallas, Texas 75201

For James Goodman:     Winstead PC
                       BY: MATTHIAS KLEINSASSER, ESQUIRE
                       300 Throckmorton Street
                       Suite 1700
                       Fort Worth, Texas 76102

APPEARANCES VIA WEBEX:

For FedEx Supply       Butler Snow LLP
Chain Logistics and    BY: CANDACE CARSON, ESQUIRE
Electronics, Inc.      2911 Turtle Creek Boulevard, Suite 1400
                       Dallas, Texas 75219

                       Butler Snow LLP
                       BY: ROBERT CAMPBELL HILLYER, ESQUIRE
                           GADSON WILLIAM PERRY, ESQUIRE
                           ADAM M. LANGLEY, ESQUIRE
                       6075 Poplar Avenue, Suite 500
                       Memphis, Tennessee 38119

For ARRIS              DLA Piper LLP (US)
Solutions, Inc.        BY: LAURA ELIZABETH SIXKILLER, ESQUIRE
                       2525 East Camelback Road, Suite 1000
                       Phoenix, Arizona 85016

                       DLA Piper LLP (US)
                       BY: RYAN SULLIVAN, ESQUIRE
                       303 Colorado Street, Suite 3000
                       Austin, Texas 78701

For the Petitioning    Hunton Andrews Kurth LLP
Creditors:             BY: PHILIP MICHAEL GUFFY, ESQUIRE
                       600 Travis Street, Suite 4200
                       Houston, Texas 77002

3

# I N D E X

Page

Motion To Quash as to James Goodman

**Court's Ruling**                                                **95**

Motion To Quash as to John Goodman

**Court's Ruling**                                                **97**

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28    2022 Hearing Transcript    Page 5 of 109

4

1        (Proceedings commenced at 1:35 p.m.)

2               THE CLERK:  All rise.

3               The United States Bankruptcy Court for the Northern

4   District of Texas Dallas Division is now in session; the

5   Honorable Michelle Larson presiding.

6               THE COURT:  Please be seated.

7               Good afternoon, everyone.

8               We are here on our 1:30 docket.  We have one case on

9   the docket this afternoon, and that's Case Number 22-31641,

10  Goodman Networks, Inc.

11              I will take appearances for the record, and I'll

12  start with those in the courtroom.

13              MR. KLEINSASSER:  Good afternoon, Your Honor.

14  Matthias Kleinsasser with Winstead on behalf of non-party,

15  James Goodman.  Just as an initial point, thanks for

16  accommodating the expedited setting.

17              THE COURT:  Thank you very much.  You're welcome.

18              MR. PARHAM:  Yeah.  Good morning, Your Honor.  Dave

19  Parham for the alleged debtor of Akerman.  And, again, thank

20  you also for having us this afternoon.

21              THE COURT:  I appreciate that.

22              All righty.  I'll now take appearances on WebEx.

23              MS. SIXKILLER:  Your Honor, Laura Sixkiller of DLA

24  Piper and Ryan Sullivan of DLA Piper for ARRIS Solutions, Inc.

25              THE COURT:  Good afternoon to both of you.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 6 of 109

5

1          MS. SIXKILLER:  Thank you.  Good afternoon.

2          MR. HILLYER:  Good afternoon, Your Honor.

3          Cam Hillyer and Adam Langley from Butler Snow on

4   behalf of FedEx Supply Chain Logistics.  And Candace Carson is

5   also on the phone and Will Perry, as well.

6          THE COURT:  Okay.  Good afternoon.

7          MR. GUFFY:  Good afternoon, Your Honor.  Philip Guffy

8   from Hunton Andrews Kurth on behalf of the original petitioning

9   creditors.

10          THE COURT:  Good afternoon, Mr. Guffy.

11          All right.  Is there anyone who wishes to make an

12   appearance in the Goodman matter?

13      (No audible response)

14          THE COURT:  All right.  Hearing no takers, all

15   righty.  So we are here primarily with respect to the motions

16   to quash certain deposition subpoenas that have been filed by a

17   variety of parties including ARRIS.  And I also understand that

18   we're going to have a status conference today on discovery in

19   general.

20          So how would we like to begin?

21          MR. PARHAM:  It doesn't really matter.  Either one of

22   the motions to quash I think are probably the first order of

23   business and then we can talk.  And we'll be talking some about

24   the discovery at the same time probably as we go along, so I

25   think -- I'm happy to go first.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 7 of 109

6

1        THE COURT:  Okay.

2        MR. PARHAM:  It probably makes more sense.

3        THE COURT:  All righty.  I'm not sure if the folks on

4   WebEx could hear the exchange between Mr. Kleinsasser and Mr.

5   Parham.

6        Mr. Parham has said on behalf of the debtors that

7   he'd be happy to go first with respect to the motion to quash.

8   Is there anything in the alternative that any party would wish

9   to propose from WebEx?

10     (No audible response)

11        THE COURT:  All righty.  Mr. Parham.

12        MR. PARHAM:  Okay.  Your Honor, we're here on a

13  motion to quash certain discovery that has been served on us

14  after hours on Monday last week by ARRIS.

15        And to give you an overview of kind of what's going

16  on in the case, this week starting tomorrow there are

17  depositions tomorrow, Wednesday, Thursday, and two on Friday.

18  And two of those depositions actually also have a 30(b)(6)

19  component for the petitioning creditors and for FedEx.

20        So apart from ARRIS, we have in essence six

21  depositions scheduled over the next four days.

22        THE COURT:  Just for the Court's understanding, Mr.

23  Parham, are those all of the debtors and certain individuals or

24  how does it break down?

25        MR. PARHAM:  It is both.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 8 of 109

7

1        THE COURT:  Okay.

2        MR. PARHAM:  Well, there's only one debtor.

3        THE COURT:  Right.

4        MR. PARHAM:  Yeah.  So --

5        THE COURT:  That's what I'm trying to understand six

6   depositions.

7        MR. PARHAM:  Yeah.  So it is James Goodman goes

8   tomorrow.  On Wednesday, CFGI which is our financial advisor

9   will go, and they will also have a 30(b)(6) component for both

10  GNET and the debtor, the alleged debtor.  And I think there

11  also is a 30(b)(6) CFGI.

12       And then on Thursday is John Goodman.  And there will

13  be some leftover 30(b)(6).  In other words, we've got 30(b)(6)

14  notices from FedEx and from the petitioning creditors, and some

15  of those topics will be handled, most of them I suspect are

16  going to be handled by CFGI.  John Goodman may handle

17  whatever's left over.

18       And then on Friday, we have James Frinzi who is the

19  former CEO of the debtor, and also FedEx.  So that's the lineup

20  for this week.

21       THE COURT:  So FedEx is being deposed itself?

22       MR. PARHAM:  Right.

23       THE COURT:  Okay.

24       MR. PARHAM:  Right.  And we're not here trying to

25  quash any of the FedEx discovery.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 9 of 109

8

1            The issue with ARRIS is really, it's pretty plain and
2  simple.  They were advised of this case in mid-September, and
3  that email I think is attached to the motion to quash and also
4  maybe to there, also.  But Mr. Sullivan was advised in mid-
5  September.  And the question at that time from our state court
6  counsel was we think this stays the case.  And his response was
7  we don't think the state court case is stayed.

8            In October, we also reached out once again to Mr.
9  Sullivan and our state court counsel did and offered to modify
10 the stay to let the state court case proceed.  And he indicated
11 that they were opposed to the modification of the stay.  On
12 November 1st, they filed a notice of appearance in this case.
13 On November 15, they filed their joinder.  Then on Monday after
14 hours, they served discovery.

15           We didn't object to the joinder until November 22nd,
16 and so the discovery wasn't in response to our objection to a
17 joinder.  Their discovery was before our objection.

18           On the 23rd, as evidenced from their filings this
19 morning in violation of the stay, they filed an amended
20 complaint in the state court case asserting all kinds of new
21 allegations probably because we pointed out that the petition
22 that they had been litigating on for a year was pretty clearly
23 solely against GNET in terms of contract claims and just had
24 some kind of fraud and fiduciary duty-type claims.  They were
25 all denied on behalf -- against the alleged debtor.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 10 of 109

9

1        So our objection to the joinder was, wait a second,

2   your claims are -- you're not a qualified creditor because your

3   claims are disputed.  And I think that is an important thing to

4   kind of bear in mind as we go along here because we are in the

5   involuntary stage.  And the issue here is a claim disputed.

6        And Judge Jernigan certainly addressed that in <u>In re</u>

7   <u>eBackpack</u>, a case this Court may be familiar with, where she

8   had the same kind of issue in terms of the ongoing state court

9   litigation.  And she found that the question here is whether a

10  bona fide dispute exists as to the petitioner's claims under

11  the objective standard, in which case the petitioners as a

12  whole would like standing to bring the involuntary bankruptcy

13  case against the debtor.

14       The Court could not possibly ascertain whether fraud

15  occurred in the alleged debtor's transaction without conducting

16  a thorough trial.  And we are really in the same boat with both

17  -- frankly, with respect to both FedEx and ARRIS but certainly

18  with respect to ARRIS.

19       You've got a live state court litigation that's been

20  going on for a year; 7,000 documents have been or several

21  thousand documents, rather, have been produced in the case.

22  There's been deposition testimony in the case.  It is an

23  ongoing live litigation or it was until it was stayed, and I

24  guess in violation of the stay, they sought to renew it.

25       So it's clearly -- and this discovery is clearly

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 11 of 109

10

1  sought to advance their case or discover their case in the

2  state court.  The discovery, that is, that they're seeking

3  here.  So we think it's for an improper purpose.

4         And let me also explain the burdensome of it is, I

5  mean, we have strained to get all the discovery and we're still

6  in fact kicking out documents to FedEx and discovery to FedEx.

7  We haven't finished with that, although we should finish with

8  that hopefully today.

9         But for ARRIS to come in, I mean, their issues are

10 wholly separate.  Their issues are about the relationship

11 between ARRIS and GNET or the alleged debtor, whereas, FedEx

12 has a wholly separate set of issues and the petitioning

13 creditors have a whole set of separate issues.

14        MR. PARHAM:  So it's not as though there's overlap

15 here.  If we were to have to go, for example, and prepare for a

16 30(b)(6), I think they noticed two or three, GNET.  That's,

17 like, another deposition.  I mean, it's not a question of do

18 they sit in and kind of join together on the same issues.

19 Their issues are wholly separate and for really for all three

20 of them.

21        So it is burdensome, and it's a problem that they

22 created by waiting.  And they -- DLA is a sophisticated law

23 firm.  They knew about this case in September.  And they

24 certainly had every opportunity to come in and try and join.

25 That's what they wanted to do.  And still they wait, frankly,

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 12 of 109

11

 1  for thanksgiving and then drop a bomb on us frankly when, again
 2  as we think solely to gain an advantage in the state court.
 3       So we're asking the Court to quash it all.  And we
 4  shouldn't have to prepare for a 30(b)(6).  We shouldn't have to
 5  respond to written discovery or to request for admissions or
 6  answer interrogatories or produce documents given the late
 7  nature of when they've come in.
 8       And given, as the Court knows, we have a December 19
 9  trial setting.  Our brief, frankly, is due today on the
10  petitioning creditors and FedEx.  And it's just -- it's just
11  too late and, frankly again, for an improper purpose.  That's
12  it.
13       THE COURT:  Thank you very much, Mr. Parham.
14       MR. PARHAM:  Yeah.
15       THE COURT:  Has -- maybe I missed it.  Has ARRIS
16  filed a joinder to the involuntary?
17       MR. PARHAM:  ARRIS?
18       THE COURT:  ARRIS, yes.
19       MR. PARHAM:  Yes.  They filed it on November the
20  15th.
21       THE COURT:  Okay.
22       MR. PARHAM:  And then waited six days to file the --
23       THE COURT:  Right.  Thank you.  All right.  Would the
24  parties prefer to respond to the motion to quash with respect
25  to the debtors before we turn to Mr. Goodman, or would the

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 13 of 109

12

1 parties like to argue them at the same time?

2          MR. KLEINSASSER:  I kind of think it makes sense to

3 argue at the same time, Your Honor.

4          THE COURT:  Okay.

5          MR. KLEINSASSER:  But I'm happy to do whatever

6 everyone else wants.

7          THE COURT:  That's fine, Mr. Kleinsasser.  Please.

8          MR. KLEINSASSER:  Yeah.  So, Your Honor, I'm going to

9 try to short circuit a lot of this argument that Mr. Parham

10 already addressed.  But so my client, James Goodman, he's a

11 non-party.  He's a former director for the debtor.  And as

12 Mr. Parham stated, ARRIS has been involved in hotly contested

13 state court litigation with the debtor, James Goodman, and

14 certain other entities for about a year at this point.

15          Mr. Goodman has been sued for fraud personally, and

16 the petition contains really very little evidence or

17 allegations regarding this, which is I think a concern

18 regarding the discovery here.  But at any rate, ARRIS just

19 filed, as Mr. Parham stated, an amended petition on Wednesday

20 which is a clear state violation.  It's got additional claims

21 against the debtor.

22          It's got fraudulent transfer causes of action and

23 alter ego which under the Fifth Circuit precedent clearly

24 belong to the debtor at this point.  Ultimately, Your Honor,

25 that's not really my fight.  I represent a non-party.  I'm just

1  pointing it out, that's how they're litigating this case.

2          So again, they waited a long time to even appear in

3  the case.  And then until Monday evening of Thanksgiving week

4  to serve a deposition subpoena and also document requests

5  covering three years.  My motion, I'm actually just asking that

6  you quash the deposition for them.

7          The document requests, I'm just going to deal with

8  the objections process because I think that's more efficient

9  for me to deal with it that way.  But my client's been very

10 cooperative here.  As a former director, I suppose he's

11 interesting for whatever reason to the bond holders who asked

12 to take his deposition.  And we said okay.

13         I said I would like some topics.  I don't know why

14 you need all this, why you need to examine him.  But they

15 proposed some topics and we agreed to those.  And also then

16 FedEx wanted to join and I said, well, that's fine too,

17 provided that you all -- this is one deposition of seven hours.

18 We're not doing two days of depositions.  And they were okay

19 with that.

20         The thing with ARRIS though is that FedEx and the

21 bond holders have not been suing my client personally for a

22 year.  It seems to me that ARRIS' claims are plainly a bona

23 fide dispute.  And I just have real concerns about this

24 deposition being used by ARRIS as an opportunity to get some

25 free discovery for fraud claims in the state court action.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 15 of 109

14

1          And so my motion, Your Honor, I styled it as a motion

2    to quash.  But also, alternatively, if the Court is disinclined

3    to prohibit ARRIS from asking questions at this deposition, and

4    I have no problem with them attending by the way, Your Honor.

5    But at any rate, I said at least let's modify the subpoena to

6    narrow it to some very limited topics that allegedly relate to

7    what their claim -- what the issues would be before Your Honor

8    on December 19th.  Right?

9          And in included those very narrow topics in my motion

10   to modify.  And when you set this hearing, you asked us to

11   confer.  I emailed ARRIS about that and said why don't you look

12   at my topics and see if they're agreeable or propose your own.

13   Never heard back.  So that's just what we're dealing with here

14   is I can't get them to agree to anything.

15         I think that the idea that they could somehow go into

16   a deposition and just ask whatever they want is highly improper

17   given the fact that there's pending state court litigation

18   against my client personally.  And I think what their response

19   is going to be, Your Honor, is that if they go out of bounds

20   for this narrow contested matter, which at this point is really

21   do these creditors have standing or not under the standard of

22   Section 303, that's it.

23         If they go out of bounds, they're going to say you

24   can just object.  But that's not what Rule 30 says.  What Rule

25   30 says is I can object on the basis of relevance, but my

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 16 of 109

15

1  client still has to answer that question unless Your Honor

2  narrows the scope.

3          So that's what I'm here today basically to ask for is

4  either quash their subpoena with respect to my client's

5  deposition testimony, or if nothing else narrow it to a very

6  limited set of topics which I've included in my motion, Your

7  Honor.  Thank you.

8          THE COURT:  Thank you.

9          MS. SIXKILLER:  Your Honor, are you ready to hear

10 from ARRIS?

11         THE COURT:  In just one moment.  Thank you.

12         MS. SIXKILLER:  You're welcome.

13         THE COURT:  All right.  Ms. Sixkiller?

14         MS. SIXKILLER:  Thank you, Your Honor.  The timing of

15 this is not a matter of when someone may have known about a

16 bankruptcy proceeding being filed or initiated.  We are

17 matching and mirroring the timing of other parties in this

18 case.  For example, FedEx noticed the depositions I think on

19 November 11th, but they weren't finalized as to date or time

20 until I think it was, it's in our Exhibit 1 to our opposition

21 to one of the briefs which was Tuesday, November 22nd following

22 a call of counsel.

23         We joined the case on -- filed our official joinder

24 on November 15th and quickly acted within six days to serve

25 targeted discovery that was careful not to overlap what might

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 17 of 109

16

1 have already been served by FedEx and others.  So it would take
2 time to review those materials.

3           And in fact, your scheduling order acknowledges, and
4 by your scheduling order that was filed as a stipulation of
5 parties was not entered until the 21st, the same date that we
6 served our discovery, or signed that date and filed on the
7 22nd.

8           But in there it notes that FedEx served their
9 discovery on November 10th.  So we took a short period of time
10 after that to get our joinder on file, and then to get copies
11 of that discovery and then narrowly tailor ours to avoid
12 duplication.

13           The parties agreed there to a very short period of
14 time for discovery responses, and I think 13 days for debtor
15 and others to respond to discovery.  We provided nine to the
16 debtor and offered more time.  They just simply didn't show any
17 interest in taking us up on that offer for more time.

18           The key here in listening to the argument that was
19 just presented by both groups of the parties opposing, or the
20 non-parties opposing to the discovery is that for example the
21 debtor wants to quash all discovery and provides no evidence,
22 no sufficient argument to justify that extraordinary step.
23 Same with Mr. Goodman.

24           Again, the debtor is trying to not only strike all
25 interrogatories, all RFAs and all RFPs even though they

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 18 of 109

17

1  acknowledge that they have some of these documents at their

2  fingertips because they may have been produced in the state

3  court action in which I am not involved.

4          THE COURT:  You are not involved --

5          MS. SIXKILLER:  They somehow claim --

6          THE COURT:  -- as in you personally or you, your

7  client?

8          MS. SIXKILLER:  Me personally.  I am not an active

9  attorney in that state court litigation.  And the mere fact

10 that there is ongoing litigation does not in and of itself make

11 our claim -- place it into bona fide dispute.

12         Well, that's not present before the Court at this

13 time.  This is precisely why we need to conduct discovery in

14 this case.  In particular in the state court case, I understand

15 there's a protective order, and some of the discovery that

16 maybe the debtor has already provided would be subject to a

17 protective order, that it cannot be used in this case.

18         So the fact that there might be duplication in

19 requests simply means it's not a burden on them to go ahead and

20 go into, again, the documents at their fingertips and reproduce

21 them in this matter with the Bates label that allows it to be

22 subject to any protective order in this case so we can use it

23 in this matter in our briefing that's due before the Court I

24 think on December 9th and for the hearing on December 19th.

25         Again, the debtor complains that the discovery is

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28    2022 Hearing Transcript    Page 19 of 109

18

1  unduly burdensome and a fishing expedition, but fails to

2  demonstrate how it's burdensome.  ARRIS, it also contends ARRIS

3  is not a proper party to the proceeding.  But that's an

4  argument again for the December 19th hearing.

5           Distilled down, what debtor at least and James

6  Goodman by its own motion are trying to do is to tie ARRIS'

7  hands so it cannot conduct discovery to support its claim.  But

8  that's precisely what the Court's scheduling order is set to do

9  here.  It's allowed time for other creditors like ARRIS to

10 join.  That deadline still hasn't passed.  And it's also

11 allowed discovery by those creditors and others to take place

12 before the December 19th hearing.

13          We are working within the parameters of that.  I

14 believe the deadline for other creditors to join is December

15 12th.  So we're already in this.  We're not joining late.

16 We're joining timely.  And we quickly served targeted and

17 narrow discovery that you have not heard a single RFP-1, RFP-2

18 is problematic.

19          They're simply bucketing up everything and trying to

20 preempt our right to discovery, and essentially asking the

21 Court to prematurely rule on the ultimate issue by blocking

22 discovery.  And we ask the Court not rule on the ultimate

23 question without providing an opportunity for ARRIS to

24 discovery facts relevant to that ultimate question.

25          Now, again, the petitioner still has standing even if

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 20 of 109

19

1  a state court claims they're not subject to final judgment.

2  And that's <u>In re Smith</u>, 437 B.R. 817 at Page 823.  And that's

3  out of the Northern District of Texas.  That's this court.

4          So, again, neither as to the John Goodman, because

5  there's James Goodman and John Goodman.  So as to the John

6  Goodman and GNET related depositions that debtor is

7  challenging, it's significant that neither of them are

8  objecting.  They did not bring their own motion to quash or

9  indicate any intent not to sit for questions on their own by

10  ARRIS.

11          It is unclear why debtor has standing to object,

12  particularly given that debtor says GNET is an entirely

13  separate entity.  Debtor's objection to ARRIS' joinder sis

14  where you can find this.  It's Document 77 at Paragraph 4.  It

15  says all rights and interest from the acquisition were

16  transferred to GNET ATC, LLC, an entity different than the

17  alleged debtor.  But GNET again has not objected.  And John

18  Goodman is a former executive of both GNET and the debtor.  And

19  he has not objected.  Therefore, there's no basis to quash

20  their depos.

21          The burden here is for debtor and for James Goodman

22  to make a detailed showing of undue burden.  The party

23  resisting discovery must, quote, make a specific detailed

24  showing of how a request is burdensome.  A mere statement by a

25  party that a request is overly broad and unduly burdensome is

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28    2022 Hearing Transcript    Page 21 of 109

20

1  not adequate to voice a successful objection.  That's In re

2  Adkins Supply Inc., a Northern District of Texas decision at

3  555 B.R. 579 at Page 590.

4         The motion to quash provides no detail, again, of

5  alleged burden, nor was any detail provided today at this

6  hearing.  Not a single interrogatory is identified, a single

7  RFA or single RFP.  And again, we have offered more time.  The

8  debtor found 13 days to be agreeable with the FedEx discovery.

9  We provided nine and offered more.

10        The 13 days, if we were to calculate it out, would

11  move this to December 5th which would still give us time.  It's

12  not ideal.  We would like a rolling production at least so we

13  can have some documents for the deposition or be able to use

14  some documents that we have that might be Bates labeled for use

15  only in the state court case at the depositions.

16        But December 5th will still give us days and time to

17  get our brief prepared and on file with the Court in advance of

18  the December 19th hearing.  And that's the same 13 days that

19  debtor already said was sufficient to FedEx.  And again, we're

20  willing to offer and t work with them on that.

21        There's no burden on the deponents as to the

22  depositions because they've already agreed to sit for

23  deposition as you heard from them directly.  They're being

24  deposed by both the petitioning creditors and FedEx, or FSCLE.

25  November 30th for the debtor and GNET, December 1st for the

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 22 of 109

21

1 debtor, GNET, and John Goodman.  And there's no -- and then

2 tomorrow for James Goodman.

3      There's no burden to allow ARRIS to conduct

4 examination where these other parties are already deposing

5 them.  They're already going to be there.  And they can object

6 at the time of the deposition to any questions that they take

7 issue with.

8      At this point, it's premature to challenge questions

9 as being outside the balance of the topic of this matter when

10 we haven't even posed a question.  We've assured the debtor and

11 Mr. Goodman that we intend to stay within the bounds of this

12 matter.

13      And it's telling by James Goodman's lack of objection

14 to our RFPs.  As we indicated to him, and I'll indicate to the

15 Court, I think our paper said this too, is that the RFPs

16 generally will track, right, what we're going to go into on the

17 deposition.  And the fact that they didn't take issue with that

18 will tell you that there's agreement that that's within the

19 scope of this proceeding.

20      On that note, we just simply can't be tied as to

21 that's all we have to conduct questions on as to the

22 individuals.  As this Court is well aware, there's no

23 obligation to provide categories of questions or specific

24 questions to an individual that's not a 30(b)(6) witness.  And

25 I can cite some cases for that in a moment.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 23 of 109

22

1          The other argument they've said is it's a fishing

2    expedition.  And I've addressed that a little bit, but I'll go

3    into it some more.  Like undue burden, this type of objection

4    requires, quote, affidavits or offering evidence revealing the

5    nature of the burden.  And that's the <u>Safety Consultants</u> case

6    we cite in our papers, another Northern District of Texas case.

7          The motion to quash, both by debtor and by

8    Mr. Goodman, provides no details of any alleged burden.  While

9    again, topics may overlap from one litigation to another, it

10   does not mean discovery is not allowed in that other matter.

11   The discovery we're seeking here is relevant to the issues, is

12   within the parameters and bounds of what this Court has allowed

13   creditors to conduct discovery on before the December 19th

14   hearing.

15          And specifically, GNET's role in the assignment is

16   relevant here.  The distribute agreement is relevant here, as

17   we've discussed in our papers.  The debtor for example argues

18   that its obligation under the distribute agreement to ARRIS was

19   assigned to GNET, and therefore only GNET is liable.  So that

20   comes into question, as they've said, as to whether there's a

21   bona fide dispute.

22          And we contend there is not, and we'll show that.

23   But the form of assignment here is relevant.  So they're

24   claiming there was an assignment.  Was there an assignment.

25   What's the form of the assignment?  What's the language?

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 24 of 109

23

1  That's all relevant to get into.  The timing of the assignment.

2           Again, John Goodman was CEO of the debtor and GNET

3  during the relevant time.  So as to discovery targeted to him,

4  he may well have knowledge relevant to the heart of those

5  issues.

6           Again, whether ARRIS ultimately is a proper party to

7  this proceeding is not currently before the Court.  That cannot

8  be decided before we get to conduct discovery on that issue.

9  Again, as to whether we or the petitioning creditors or FedEx

10 are entitled to relief as creditors in this proceeding is to be

11 decided December 19th or after that hearing concludes, not

12 before.

13          Again, ARRIS claims we're not inconsistent with the

14 state court lawsuit.  It's not -- even though it's not relevant

15 to the current dispute, the live petition, as you've heard

16 about, clearly alleges debtor is liable for amounts owed on the

17 distributor agreement.

18          Significantly, the Southern District of New York

19 applying New York law, which is the same law as governed the

20 distributor agreement, recently considered assignment language

21 identical to ARRIS' distributor agreement and held assignment

22 did not let the other off the hook from liability.  So that

23 would mean that again, debtor would be on the hook here and

24 liable for this claim.

25          THE COURT:  Is that the Wistron case?

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 25 of 109

24

1          MS. SIXKILLER:  Yes, that's the <u>Wistron</u> case.

2          Now here, debtor claims the distributor agreement was

3 assigned again.  And even if it was assigned to GNET, then

4 debtor's still jointly liable at minimum.  But we have to have

5 the right to conduct discovery as to both approaches, right?

6 So whether we have to rely on <u>Wistron</u> or not, do we get to say

7 there was no assignment so it's debtor?

8          There was an assignment, but <u>Wistron</u>, right, makes

9 them jointly liable.  Or was there something else in between,

10 and that's what discovery is meant to uncover here.  But we

11 believe we will ultimately show ARRIS has standing.

12          As to James Goodman, I'll briefly -- I'm going to

13 look through my notes to make sure I haven't missed anything

14 there.  They didn't -- they only are objecting to the

15 deposition.  We've assured them we'll stay within the bounds of

16 the deposition.  They're already sitting for a deposition.  So

17 we're going at the end.

18          We're not going to repeat questions.  We have limited

19 time and a date, as you've noticed.  Depositions have to be

20 concluded by December 2nd.  So therefore, we have the date that

21 he's sitting and to conclude our questions.

22          Again, as I mentioned, we're not required to give

23 deposition topics in advance because it's not a 30(b)(6)

24 deposition.  The undue burden, again, as I mentioned, this very

25 Court said they have to make specific detailed showing and they

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 26 of 109

25

1  have not done that.

2         As to the topics a little further, a party -- here's

3  the case law that I mentioned I was going to get to with some

4  citations.  A party noticing a deposition is not required to

5  state the subject matter concerning which the examination will

6  be made.  That's actually the Charles Alan Wright and Arthur R.

7  Miller Federal Practice and Procedure Section 2106.

8         But Ruth v. City of Creedmoor held that opposing

9  party, quote, need not provide the deponent with a list of

10 questions or topics for examination prior to the deposition.

11 And that's an Eastern District of North Carolina decision I can

12 give you the cite for if you'd like.

13        Deposing party may inquire into any non-privileged

14 topic where there is any possibility that the information

15 sought may be relevant to the claim or defense of any party.

16 That's that same decision.  And it is a 2015 WL 1815475.  And

17 it's at Page 5 for both quotes.

18        Again, ARRIS will stay within the bounds of

19 information relevant to this proceeding.  But if Goodman

20 believes ARRIS strays, or if similarly the debtor does, the

21 appropriate remedy is at that time to object for the parties to

22 be able to meet and confer to the extent necessary on the

23 topics and see if they can work out the issue on their own.

24        Thank you, Your Honor.  Is there anything else you

25 would like for me to address at this time?

1          THE COURT:  I don't think so.  I may come back to the

2    parties.  But I'll allow for rebuttal.  But before I do that,

3    does anyone else wish to be heard before I turn back to Counsel

4    for Mr. Goodman and the debtor?  Okay.

5          Mr. Parham, Mr. Kleinsasser?  Whoever wishes to go

6    first.

7          MR. PARHAM:  Just one second.  So let me address a

8    few things.  One, DLA has been in the state court case all

9    along.  Maybe Ms. Sixkiller wasn't, but Mr. Sullivan certainly

10   was who's on the phone here in this deal.  So for them to argue

11   they didn't know or whatever, I mean, Mr. Sullivan I think

12   signed the amended complaint that they filed Wednesday night in

13   violation of the stay.

14         So they certainly have known, number one.  Number

15   two, there is evidence of the burden.  And the evidence of the

16   burden is -- the burdensomeness is throughout all the timing,

17   number one, which is a matter of this Court's record, when the

18   joinder was filed, when the discovery was filed, when the -- so

19   that's all on this Court's docket.

20         And certainly it's something you can take judicial

21   notice of.  You can take judicial notice of the state court

22   litigation which remains ongoing.  And those petitions, those

23   pleadings were attached to our joinder which we referenced in

24   the objection, or in the motion to quash.  And also, of course,

25   they introduced state court pleadings in their reply.

1           So there certainly is evidence on burdensome.  What

2   they want to kind of gloss over is the fact that their issues

3   are wholly different from FedEx or from the petitioning

4   creditors.  So in essence, this is a whole new deposition.

5           And this whole notion that well, you agreed to 13

6   days with FedEx, we agreed to trial for 13 days with FedEx, and

7   maybe hopefully we'll finish today.  But at the time, we didn't

8   know that there was ARRIS coming.  They piled on top with a

9   whole different set of deals.  And frankly, the rules are 30

10  days, not 9 days like they graciously offered, or 13.

11          And so there -- and there was no -- if you want to

12  play that game, there was no motion to shorten time.  They just

13  piled on and said here, nine days.  So the burdensome, I think,

14  is evident on its face.  And certainly even from the discovery

15  that we've put in on the topics are there in terms of --

16          THE COURT:  Well, burden is typically an evidentiary

17  issue.  I mean, I'll recognize that.  But at the same time I'm

18  recognizing that we've got a motion to quash that's been filed

19  on three and a half minutes' notice.  So --

20          MR. PARHAM:  Right.

21          THE COURT:  And I'm not being literal, of course.  So

22  I'm going to give everybody a little bit of grace here.

23  Obviously the discovery could have been propounded sooner.

24  Obviously, there could be some agreements here on discovery

25  that has already been served, and probably a peek under the

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 29 of 109

28

1  tent under a separate protective order.

2          And obviously, parties could have conferred and been

3  more agreeable.  But that's not where we are.  Okay?  We're

4  here on a fight.

5          And so I guess the question for me, Mr. Parham, is

6  first with respect to the alleged debtor's objections to any

7  discovery with respect to John Goodman and GNET, they're not

8  here, are they?

9          MR. PARHAM:  Well, let me address that.

10         THE COURT:  Okay.

11         MR. PARHAM:  In essence, they are.  Mr. Goodman --

12  well, GNET is an affiliate.  The records are basically kept by

13  the same people.  The same people are going to have to respond

14  to the GNET discovery as -- which all the discovery so far has

15  been 30(b)(6)s to Goodnet and -- or to Goodman and to GNET.

16         And we have essentially one consultant plus the

17  consulting firm that are handling all the documents.  And so

18  it's in essence it's the same people.  We probably should have

19  objected on behalf of everybody.

20         John Goodman frankly is the consultant running the

21  debtor.  So we're -- basically it's the same people who are

22  responding --

23         THE COURT:  Am I wrong in my assumption that John

24  Goodman and James Goodman are related individuals?

25         MR. PARHAM:  No, you are not wrong.  They are

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 30 of 109

29

1  related.  They're brothers.

2              THE COURT:  All right.

3              MR. PARHAM:  That said, they're separate individuals.

4  And --

5              THE COURT:  Understood.

6              MR. PARHAM:  -- John Goodman hasn't been associated

7  with this business for, like, two and a half years up until

8  very recently.  So there is that.

9              But so in terms of the burdensomeness, to respond,

10  the requests are basically the same to all of them.  And the

11  people answering are the same as to all of them.  So if we do

12  for one, in essence the burden is, I mean, it's the same deal

13  for --

14             THE COURT:  Well, I mean, does that not cut against

15  your argument, a little bit, Mr. Parham, is that if it's the

16  same folks keeping the same books and records, obviously it's

17  the debtor's -- the alleged debtor's assertion that these are

18  affiliates in different companies.

19             I've heard at a prior hearing there's some allegation

20  that they may not be different companies.  And I seem to recall

21  with respect to FedEx there's this same GNET versus Goodman

22  Networks argument, right?  Is it different in the ARRIS case

23  than it is in the FedEx case?

24             MR. PARHAM:  Well, they're different facts.

25             THE COURT:  Okay.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 31 of 109

30

1          MR. PARHAM:  For sure.

2          THE COURT:  Okay.

3          MR. PARHAM:  Because you had people corresponding

4  with FedEx and you had people corresponding with ARRIS.  And

5  they're different.

6          THE COURT:  Okay.  Okay.  Fair enough.  That --

7          MR. PARHAM:  And so it's --

8          THE COURT:  That was my question factually --

9          MR. PARHAM:  So you have --

10         THE COURT:  -- is if there was one overarching

11  assignment or transfer agreement that was going to hit multiple

12  contract.  Maybe not.

13         MR. PARHAM:  No.  No.

14         THE COURT:  Okay.

15         MR. PARHAM:  So you have two separate transactions,

16  two separate contracts.  This is all different.  So you have

17  that.  It would be a whole new topic.

18         In terms of, and I'm trying to recall now your

19  question in terms of the issue.  In general, it is the same in

20  the sense that you had Genesis Telecom who's not here who the

21  sale to Goodman Networks, the alleged debtor.  And

22  corresponding at the same instant basically there was an

23  assignment to GNET.

24         And in essence, the Genesis employees became GNET

25  employees.  That's how this essentially worked.  And so -- and

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 32 of 109

31

1  that's where the operations were.  The other difference you

2  have, you have one difference is frankly in terms of just the

3  maturity of the claims.  I think FedEx eluded to theirs being

4  in litigation but -- or starting litigation.

5           But ARRIS was ahead of the curve.  And ARRIS has been

6  in litigation.  And they have made fraud claims against the

7  alleged debtor and breach of fiduciary duties with almost it

8  would never stand up under a federal fraud-type analysis in

9  state court.  You can just say fraud and you're okay.  We'll

10  let that go.

11          But you don't see those kinds of allegations in their

12  state court case.  But they make very detailed allegations

13  against GNET and they say there was an assignment, and GNET is

14  liable on the contract and on and on and on.  And that has been

15  the case.  And that's the case that's been litigated in the

16  state court for, like, a year.

17          THE COURT:  And that is -- and not to cut you off,

18  Mr. Parham, but isn't that your argument for the 19th?

19          MR. PARHAM:  It is.

20          THE COURT:  That ARRIS is not eligible to be a

21  petitioning creditor because either A, their claims are at a

22  different entity, or B, is subject to a bona fide dispute.

23          MR. PARHAM:  Right.  It is an argument for the 19th.

24  But it's also, it goes into and informs the argument here that

25  this discovery isn't -- I mean first of all, the issue is, is

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 33 of 109

32

1  there a bona fide dispute.  You're not going to hear and

2  determine, at least not in the context of an involuntary, who's

3  liable and who's not.  Right?  I mean, because that's a trial.

4  It's a separate trial, whether it's in the state court, whether

5  it's here as part of a claim objection.

6         That's not what we're doing right now.  And so you

7  look at in terms of what's reasonable in terms of the discovery

8  and what is the intent of the discovery.  303 excludes a lot of

9  litigation, contested claims because the idea is not to come in

10 and adjudicate them.  The question is is there a bona fide

11 dispute.

12        And so discovery that's aimed at the merits so to

13 speak, to the degree that they are, and given the fact that

14 they're continuing to press forward in the state court where

15 discovery is basically over, we would argue --

16        THE COURT:  Is that the Backpack decision that you

17 quoted --

18        MR. PARHAM:  What?

19        THE COURT:  -- that you cited from Judge Jernigan?

20        MR. PARHAM:  The what?

21        THE COURT:  Is that the backpack decision?

22        MR. PARHAM:  Uh-huh.

23        THE COURT:  And is the backpack decision, which I'm

24 not necessarily familiar with.  If it's in your papers, I'll

25 look it up.  Is that -- does that go to discovery, or does that

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 34 of 109

33

1  go to ultimate eligibility?

2           MR. PARHAM:  It goes, Your Honor, to eligibility.

3           THE COURT:  Okay.

4           MR. PARHAM:  I'm happy to hand it up and --

5           THE COURT:  Oh, I appreciate that.  Thank you so

6  much.  And for the record, In re eBackpack is 605 B.R. 126.

7  Thank you very much, Mr. Parham.

8           MR. PARHAM:  Sure.  And I'll address the Wistron

9  NeWeb Corporation case which I wasn't even aware of until this

10 morning when I saw their response, that decision which was from

11 November 17th.  So I guess it was last week.

12          Briefly reading it and I don't know where it's going

13 to go in terms of whether there will be appeals, whether it's

14 final.  We haven't had a chance to really study it.  But it is

15 interesting because it's the similar, very similar setup to

16 what happened here.  Genesis sold the business to Goodman, and

17 it was simultaneously assigned to GNET.

18          And it appears what the Court in New York has done,

19 and the defense there was wait a second, we never agreed to an

20 assignment.  And so what the Court seems to have said is that

21 okay, so Genesis is still liable, and GNET is liable, but did

22 not say Goodman is liable.

23          Now Goodman was not a party to that case.  But just

24 on its face, it appears to me that it cuts against them, both

25 FedEx and ARRIS because both are arguing now, now ARRIS, FedEx

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 35 of 109

34

1  has always argued no assignment.  ARRIS has recently flipped.

2         And but it seems to me that they don't -- they

3  basically are pleading themselves out, I mean, because they're

4  basically -- to the extent if this case is what I think it is,

5  or what we think it is, then Genesis and GNET which are the two

6  parties that were sued there, Goodman was not sued there, are

7  the two parties that the Court there said might be liable.

8         And again, I'm not sitting here and saying this is

9  bonding authority or anything because I've just seen a case.

10 And obviously I don't know what the -- I believe it's not a

11 case that Akerman handles so I don't know where all it goes in

12 terms of appeals or the like, or if this is final.

13        But it does appear on its face that this kind of, the

14 whole argument that we didn't agree to the assignment means

15 that Genesis, which was the original party, remains liable.

16 And then GNET which was the operating party there as it was

17 here in both cases of ARRIS and FedEx is also liable.

18        But that's, unless the Court has other questions,

19 that's my response to --

20        THE COURT:  So, let me take a step back on that

21 particular argument.  The argument was that Genesis, was there

22 a sale from Genesis to Goodman?

23        MR. PARHAM:  There's an APA between Genesis --

24        THE COURT:  Okay.  So there's an APA between Genesis

25 and Goodman.  So I don't think I understand your argument that

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 36 of 109

35

1  there could not have been consent to GNET.

2        MR. PARHAM:  Well, there was a simultaneous

3  assignment of essentially the business of GNET, or Genesis to

4  GNET, and all the contracts.  Everything was simultaneously

5  assigned.  And --

6        THE COURT:  So it was sold to Goodman and then, but

7  simultaneously --

8        MR. PARHAM:  In the same instant, basically.  I

9  mean --

10        THE COURT:  Okay.

11        MR. PARHAM:  They signed an APA.  Goodman, for

12  whatever reason, was the buyer.  And it was immediately signed

13  to --

14        THE COURT:  To GNET.

15        MR. PARHAM:  -- to GNET.  And when --

16        THE COURT:  Okay.

17        MR. PARHAM:  -- the Genesis people came in, they were

18  -- the next day they were GNET employees.

19        THE COURT:  Okay.

20        MR. PARHAM:  That's kind of how that worked.  And

21  what FedEx and ARRIS now are saying is that well there was

22  never an assignment, we never approved the assignment.  We

23  think the evidence will be that both were fully aware of who

24  they were dealing with.  But -- and that was GNET.  But we'll

25  see where the evidence goes on that.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 37 of 109

36

1              THE COURT:  And were Genesis and Goodman affiliated

2   prior to the APA?

3              MR. PARHAM:  Well, I believe -- let me back up.  You

4   said Goodman and GNET, correct?

5              THE COURT:  No, Genesis and Goodman.  Or was that a

6   third-party transaction?

7              MR. PARHAM:  No.

8              THE COURT:  No.  So Genesis was also affiliated.

9              MR. PARHAM:  Genesis would be an affiliate.

10             THE COURT:  Okay.

11             MR. PARHAM:  Genesis would have been an affiliate.

12  And GNET was created basically to take the -- they were a new

13  co.

14             THE COURT:  Okay.

15             MR. PARHAM:  That the Genesis business was --

16  effectively the way to think about this is the Genesis business

17  was dropped into a new co.

18             THE COURT:  Okay.  Via Goodman?

19             MR. PARHAM:  What?

20             THE COURT:  Via Goodman?

21             MR. PARHAM:  Yeah.

22             THE COURT:  I need to talk to the corporate lawyers.

23  No, I'm kidding.

24             MR. PARHAM:  So, yeah.  So, yeah.  It's --

25             THE COURT:  Something tells me there's a tax lawyer

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28   2022 Hearing Transcript    Page 38 of 109

37

1  somewhere in here.

2         MR. PARHAM:  Yeah.  Somewhere I'm sure there's a tax

3  angle in this.  There must be.  It's beyond the comprehension

4  of a mere bankruptcy lawyer like myself.  But that's -- anyway,

5  so that's why they did that, or that is what happened.

6         THE COURT:  All right.

7         MR. PARHAM:  All right.

8         THE COURT:  Okay.  So I think you've answered my

9  questions.  So I had some questions about John Goodman and

10 GNET.  You've answered those questions.  And with respect -- so

11 has the alleged debtor also responded to discovery in the state

12 court litigation?

13        MR. PARHAM:  When it wasn't the alleged debtor.  I

14 mean, it hasn't --

15        THE COURT:  Weren't they a party before?

16        MR. PARHAM:  Oh, no, no, no.  They have been a party.

17 And GNET and Goodman have -- and I assume Goodman, now the

18 focus of that case was GNET.  And so I don't know how much --

19        THE COURT:  Well, I recognize the difference between

20 the first amended petition and the second amended --

21        MR. PARHAM:  Right.

22        THE COURT:  -- petition.  We'll get to that.

23        MR. PARHAM:  Yeah.

24        THE COURT:  My question was whether or not the

25 alleged debtor was served and responded to discovery in the

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 39 of 109

38

1  state court case.

2          MR. PARHAM:  Let me answer it this way because I

3  don't want to mislead the Court.  They certainly were served

4  with the complaint.  They filed an answer.  I know that they

5  are being represented by the same law firm, Goodman and GNET.

6  And I know that that law firm has produced thousands of pages

7  of documents.

8          And what I don't know is whether the request for

9  production in that case, I assume they were to both Goodman and

10 to GNET.  But I don't know that as I stand here today.

11         THE COURT:  Understood.

12         MR. PARHAM:  I would also say --

13         THE COURT:  I appreciate the candor.  But --

14         MR. PARHAM:  Yeah.  I'll --

15         THE COURT:  But you said that GNET and Goodman

16 networks the alleged debtor are both represented by the same

17 counsel in the state court litigation?

18         MR. PARHAM:  Correct.

19         THE COURT:  Okay.

20         MR. PARHAM:  And so we don't necessarily have --

21 necessarily made that distinction.  I just know that there's

22 been discovery.  I think it's been Goodman also has produced.

23 It also raises though another question I'm sorry that I forgot

24 to address earlier which is yeah, some of the documents have

25 been designated as confidential in that deal.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 40 of 109

39

1          What we've not been asked is if we would agree that

2     they could use them in this deal because there's been no such

3     request.  I think frankly the argument that well, some of these

4     documents are confidential so we may have gotten them, I don't

5     think they've looked at them.

6          THE COURT:  Right.

7          And I'm obviously not privy to the protective order

8     in place in the state court litigation.  But something tells me

9     it's probably limited to a certain employee, I mean, excuse me,

10    attorneys that are working on the state court matter.  So I

11    can't imagine how bankruptcy counsel might not have those.  But

12    we'll get there.

13         Mr. Kleinsasser?

14         MR. KLEINSASSER:  Just one minor clarifying point,

15    Your Honor.

16         THE COURT:  Please.

17         MR. KLEINSASSER:  It's not so much material.  But I

18    am involved and have been from the beginning of the state court

19    litigation.  It's actually separate firms representing -- it's

20    Ferguson Braswell represents GNET.  And Connor Lee Shumaker I

21    think is the name of the firm represents the debtor.  So

22    separate counsel, they are not the same.

23         Both parties I believe have produced a substantial

24    amount of documents, I think thousands of pages.  But at any

25    rate, that's not particularly material.  I just want to make

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 41 of 109

40

1  sure we're clear and accurate with you on that.

2        So I'm just going to be very brie, just to clarify

3  one minor point to address something Ms. Sixkiller said.  It's

4  not that I don't object to their request for production to my

5  client.  They're extremely objectionable requests.  They were

6  served Monday evening.  And they cover three years of documents

7  and ask for production in a week.  It's just that I'm dealing

8  with them out of court for the objections process.  So --

9        THE COURT:  No, no, no, and I certainly -- I

10 understand.  Well, let's take a look at the RFPs.  So I'm

11 looking at Exhibit A to your emergency motion to quash at

12 Docket 78.  So I'm looking at what appears to be, yeah, 78-1.

13 And you have five requests there.  So let's talk about them

14 because certainly five requests can be extremely broad.  But

15 let's talk about why they're overly broad.

16        So request number one, draft documents assigning the

17 distributor agreement.

18        MR. KLEINSASSER:  So the problem here, Your Honor, is

19 that -- so my client's a non-party.

20        THE COURT:  Right.

21        MR. KLEINSASSER:  And they have a requirement that's

22 different than if he's a party under Rule 45.  Don't impose an

23 undue burden.  So I could call James and say, hey, James, do

24 you think you have any drafts of these documents?  I don't

25 know.

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28   2022 Hearing Transcript    Page 42 of 109

41

1            What they're going to say what did you do to search

2    for those.  And they're going to say did you run email

3    searches, how many documents did you review, which of course

4    were he to go through that as a non-party for this, then

5    basically he's going to incur thousands of dollars in attorneys

6    fees as a non-party.

7            I mean, that's my beef with that request, and frankly

8    the first three.  Four and five are a lot more broad because

9    they're produce all communications in any way concerning the

10   distributor agreement.  I mean, the idea that some of that

11   could be done to a non-party on a week's notice is, I mean,

12   that's just crazy.  So --

13           THE COURT:  Has Mr. Goodman been -- has discovery

14   been propounded upon him in the state court litigation?

15           MR. KLEINSASSER:  It has, Your Honor.

16           THE COURT:  Okay.  Has he complied with discovery in

17   that litigation already?

18           MR. KLEINSASSER:  He has.  There are outstanding

19   objections between both ARRIS and Mr. Goodman there that

20   frankly need to be resolved.  And I think both parties have

21   agreed initially to do certain things that like look for this

22   or look for that or whatever.

23           Then the bankruptcy got filed and things kind of came

24   to a standstill at least until Wednesday when the amended

25   petition was filed.

42

1          THE COURT:  Okay.  And when was the distributor

2   agreement entered into?

3          MR. KLEINSASSER:  Well --

4          THE COURT:  Give or take.

5          MR. KLEINSASSER:  So --

6          THE COURT:  Was it in 2019 or 2020?

7          MR. KLEINSASSER:  Yeah.  I think if you look at their

8   petition, initially it was entered into allegedly in 2008.

9          THE COURT:  Oh, okay.  So it does go back.

10         MR. KLEINSASSER:  Yeah.  And I think it went through

11  a couple entities.  There was Motorola, there was I think

12  CommScope and I don't want to misrepresent that or anything

13  like that.  But there's --

14         THE COURT:  Okay.  So --

15         MR. KLEINSASSER:  -- ARRIS ultimately --

16         THE COURT:  -- it goes back quite a ways.  I

17  understand the issue.  I'll be candid, it's not going to be a

18  surprise to anyone that I loathe discovery disputes.  I think

19  that puts me in with the vast majority of bankruptcy judges.

20         MR. KLEINSASSER:  Yeah.

21         THE COURT:  Okay.  All right.

22         MR. KLEINSASSER:  I mean, I think what I'm mostly

23  concerned about today is at the end of the day, Your Honor, I

24  don't think ARRIS should be allowed to question my client given

25  the fraud claims they've asserted against him.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 44 of 109

43

1          But I mean the bottom line is what, when I was

2    thinking about this hearing I thought what is Judge Larson

3    likely to do.  I mean, realistically, she's probably going to

4    let them question him on some topics.  But is it not reasonable

5    just to modify the scope.

6          And what's shocking to me, when we've had conferences

7    on this which we did on Tuesday before I was forced to file an

8    emergency motion to quash, and on Wednesday when I reached out

9    and I said please propose any revisions to my topics is they

10   won't agree to narrow the topics to things that are very

11   reasonable in light of the very narrow contested matter here.

12         And that's what concerns me because what they're

13   going to do is they're going to ask an out of bounds question.

14   And I can object to it, but I can't --

15         THE COURT:  No.  And --

16         MR. KLEINSASSER:  -- shut the depo down.

17         THE COURT:  And I do --

18         MR. KLEINSASSER:  And that's -- I don't --

19         THE COURT:  I understand.  I understand the issue.  I

20   frankly don't understand, I'll be candid, I mean it's not going

21   to be a surprise to anyone that I loathe discovery disputes.  I

22   think that puts me in the vast majority of bankruptcy judges.

23         What I can say is I'm frankly surprised that the

24   parties haven't been able to narrow this on their own.  This

25   seems pretty cut and dry to me from the standpoint of you have

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 45 of 109

44

1  an involuntary petition.  We have a single issue that we are

2  going to litigate on the 19th, and that's the eligibility.

3         And so I do recognize that in the factual

4  circumstance of this case where there is some issue of A,

5  liability by Goodman, and B, some issue of okay, well you sued

6  GNET, you didn't sue Goodman because again we'll talk about the

7  second amended complaint later, that this can't have been

8  narrowed by now.

9         Obviously, any fraud by Mr. Goodman shouldn't be on

10  the table for this.  But it seems to me if discovery has gone

11  back and forth already, I mean, it seems like the answer is out

12  there.  Is there any discovery in these five that has not

13  already been propounded upon Mr. Goodman?  I mean --

14         MS. SIXKILLER:  Your Honor, if I may be heard?

15         THE COURT:  -- there's 5 RFPs.

16         MR. KLEINSASSER:  Well, I mean, these requests were

17  extremely broad.  I'd have to look -- the discovery that went

18  to Mr. Goodman probably occurred in June of this year.

19         THE COURT:  Okay.

20         MR. KLEINSASSER:  I'd have to look, Your Honor.  I

21  mean, there's been longstanding objections by both parties.

22  And, frankly I just would have to look at that.  I mean, I

23  think --

24         THE COURT:  So in other words, he produced thus far

25  very little in terms of documentary evidence?  It's been more

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 46 of 109

45

1  dealing with the objection process?

2          MR. KLEINSASSER:  Yeah, we --

3          THE COURT:  Is that what you're telling me?

4          MR. KLEINSASSER:  My recollection is we provided

5  interrogatories, as did they.  They had concerns with ours, we

6  had concerns with theirs.  And that's kind of -- and then

7  ultimately, that came to a standstill in terms of resolving it

8  when the bankruptcy was filed.

9          THE COURT:  Okay.

10          MR. KLEINSASSER:  I mean, in terms of I understand

11  you don't like discovery disputes.  I wouldn't either in your

12  shoes.  All I can say is, Your Honor, it takes two to tango.

13  I've tried to resolve this.

14          THE COURT:  No, no, no.  It does, it does.  And I see

15  that, I see that a line has been drawn by both parties.  And

16  look, everyone advocates for their client.  I get that.  I get

17  that.  I've suffered through a discovery fight or two or two

18  hundred in my time.

19          But I just seems to me that this is something that we

20  can narrow.  So let me ask you, Ms. Sixkiller, and I may come

21  back to you, Mr. Kleinsasser.

22          Ms. Sixkiller, I've put it off probably for long

23  enough.  Explain to me how you guys filed the second amended

24  complaint.  The issues, I mean --

25          MS. SIXKILLER:  Your Honor --

46

1          THE COURT:  The issue's not before us in terms of a

2  motion to enforce or a motion for contempt.  But obviously it's

3  the white elephant in the room.

4          MS. SIXKILLER:  Your Honor, I'm, again, not active in

5  that case.  I can say, though, that the intent was simply to

6  preserve claims.  And there will be a notice or something going

7  out to the extent necessary to just recognize that no answer is

8  expected.

9          I think the concern was, given that the plan had been

10  long to amend  after the issues started to come to light to

11  amend that complaint, or petition.  And then after things came

12  up, to simply make sure it was clear on the record that there

13  are claims and issues relating to that.

14          And there's obviously no intent.  It's more of just a

15  case the clock is ticking on claims or anything else just in

16  case.  But there will be a notice.  Again, I'm not diving into

17  whether there was or was not.  I think the issue of the timing

18  of it.  It's more of just simply preserving it and making sure

19  the record is clear that especially in light of the November

20  17th ruling in that case, right, that there is a basis, a good

21  faith basis to pursue Goodman on that front, and since they're

22  using that as a basis to say that we don't have standing here.

23          As to the other issues too, I do want to make clear

24  James Goodman has not produced a single document in the state

25  court case, not a single document.  As to debtor, there is real

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 48 of 109

47

1   discovery disputes as to whether or not they produced all

2   that's required or relevant.  And in fact, an issue that's why

3   it's warranted here to get a production is because in the state

4   court case they served separate discovery on Goodman vs. GNET.

5   But the documents they got back were company defendants

6   documents.

7        So it's not clear if they're debtor documents, right?

8   And in this case, that narrows the issue.  If the document was

9   produced by the debtor, it narrows what you have to ask

10  questions on because it's a debtor-owned document.  Right?

11       But if they're going to say it's a GNET-owned

12  document, we have trouble there and it's going to cause a

13  myriad of issues trying to go forward on December 19th.  It

14  could extend out to depositions or if we don't have them for

15  the depositions.

16       This is why we need to have the debtor say these are

17  our documents.  We claim ownership of them and we're producing

18  them.  As for the meet and confers, we were actually the ones,

19  not to get into it too much, I absolutely believe in meeting

20  and confers.  In fact, if we didn't attach the email chain,

21  maybe it's there, I was the one who insisted in not doing the

22  little pocket email where it says you consent to us filing

23  this.  It's the no, we really need to get on the phone and talk

24  this out.

25       I think a complication as to the topics for James

48

 1  Goodman, for example, has been that it was the holiday, right?

 2  So we got these late Wednesday and it was the Thanksgiving

 3  holiday and we didn't have a chance to connect yet.

 4       The other issue is I think we're generally agreeable

 5  to topics.  The problem we have is we cannot tie our hands yet

 6  in advance because the rules don't require you to, to say hey,

 7  we keep --

 8       THE COURT:  Let me stop you right there. What the

 9  rules require you to do and what you can agree to are two

10  completely and utterly different things, okay? That is what a

11  meet and confer is about. Everybody knows what the rules say.

12  The question is: what can you agree to?

13       And so if you can't agree, then I will rule.  And no

14  one will like the result, and maybe that will make each party

15  happy.  But again, the answer "we don't have to" does not mean

16  "we cannot do so."  Those are two totally different questions.

17       MS. SIXKILLER:  Your Honor, I apologize for that.  I

18  did not mean that to come across as my tone.  My main thing was

19  in negotiating with them is we'll generally agree to the topics

20  for James Goodman.  And in fact, we flagged for them that the

21  topics were going to build off of our RFPs, and that the key is

22  we also though want to preserve the right to follow up on

23  questions asked by FedEx and the original petitioning

24  creditors, right, in case there's something triggered that they

25  didn't chase down.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 50 of 109

49

1          And I'm happy to continue to meet and confer with

2    James Goodman's counsel on this today to see what we can draw

3    up.  The deposition's tomorrow.  I generally believe that there

4    is -- we try to avoid bringing discovery disputes to court,

5    pardon me for that, as much as possible.

6          I think that this issue as to the documents again, we

7    have not heard James Goodman say -- he doesn't have ownership

8    of his company email accounts is my expectation.  My

9    expectation is likely for an individual for these five RFPs, he

10   probably has a Gmail account or something else that's

11   relatively easy.

12         And we offered search terms, by the way.  We did say

13   this, which is why again Mr. Goodman hasn't challenged the RFPs

14   all the way.  Yet we're working with -- they're not saying

15   they're completely irrelevant, right?  We're working with them

16   on scope and lowering the burden for him.

17         But if he just has to search for a document within

18   his Hotmail or Gmail or Yahoo! account, right, he's likely not

19   to have too much individually in his individual capacity to

20   produce.  And then also you'll notice on the time as to the

21   communications, it is date ltd.  It's October 1, 2019 to

22   present.

23         I think there was some statements today about how

24   long he's been involved with the company in his current role.

25   So it does cover approximately three-year period.  But again,

1  we're talking about a personal email account where it's not

2  expected to get much in the way of volume.  And you haven't

3  heard that yet, right?  So that's why we'd like to continue to

4  work with them, provide search terms that can be run through

5  the whatever version of personal email account Mr. Goodman has.

6          As to the debtor, the documents there and the topics

7  generally follow very narrow issues where they can easily

8  locate whether, and they should know, right, whether they have

9  drafts or signed versions of the assignment for example.

10         And then the same with the topics for the deposition,

11 Your Honor.  A lot of them are talking about the nature of the

12 relationship, right, between certain entities which they should

13 know.  That's not something that needs to be studied up.

14 You've heard about it today.

15         We just need it under oath, right?  We need to hear

16 these statements being discussed.  Some are about policies and

17 practices.  Again, easily able to find documents, and they can

18 bring that to the deposition or provide it in advance.  So

19 they're not getting into, for example we didn't do a 30(b)(6)

20 on all communications, right, something over broad.  These are

21 very narrowed and something that should already be known by one

22 or more of the representatives that they've designated to

23 testify on these topics.

24         THE COURT:  So one question.  I mean again, I don't

25 know that the topics are necessarily overly broad in terms of

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 52 of 109

51

1    the RFPs.  The production in one week is just, I mean, that's

2    just troublesome.  Right?  I mean, how can he be expected to

3    produce these by tomorrow?

4            MS. SIXKILLER:  And we offered more time, Your Honor.

5    We simply put that date as a starting point and then offered

6    even a rolling production.  And we're fine with moving the date

7    out.  That has never been a contention with us, Your Honor.

8            We have said we picked a date.  It's tough to pick a

9    date, but we have depositions.  To the extent they have --

10           THE COURT:  So you're willing to --

11           MS. SIXKILLER:  -- these documents at their

12   fingertips --

13           THE COURT:  Are you willing to accept the documents

14   after the deposition is what you're saying?  Or you're willing

15   to --

16           MS. SIXKILLER:  We are if we have to --

17           THE COURT:  -- move the deposition.

18           MS. SIXKILLER:  We'd like -- I don't think we can

19   move the deposition given that the order, scheduling order says

20   December 2nd for depositions --

21           THE COURT:  Okay.

22           MS. SIXKILLER:  -- to conclude.  And then the hearing

23   on the 19th.  But we're willing to work within the parameters

24   of whatever the date to get stuff done by the 19th.  And we are

25   willing to get documents after the deposition.  Our main thing

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 53 of 109

52

1   is just sort of like you were talking about cooperation of

2   counsel.  We could say one, two, three we can prioritize

3   because those are easy to find or not find.

4         But yeah, things by tomorrow, again, we're willing to

5   be flexible.  We already hence by James Goodman who's being

6   deposed tomorrow, we know we're not going to have his documents

7   by tomorrow, right?  So we already told him we'd give more

8   time.  We've offered it to debtor as well, and we're willing to

9   work within the bounds of what the Court allows.

10        And again, this is what happens when you have a quick

11  evidentiary hearing, right?  You can't always get your docs

12  before your deposition.  And I understand that.  So we are

13  simply trying to get them out as quickly as we can and then

14  work with the parties on the scope and nature to avoid bringing

15  the dispute to you.

16        But we were told that they insisted on having it teed

17  up.  And we understand that too, so the parties could have some

18  clarity.

19        THE COURT:  All right.  Is there anything else on

20  that, on the issues of the motions to quash, Mr. Kleinsasser,

21  Mr. Parham?

22        MR. PARHAM:  Nothing from me, Your Honor.

23        MR. KLEINSASSER:  No, Your Honor.

24        THE COURT:  All right.  The Court's going to take a

25  recess, and I'll come back and I'll rule on that.  But why

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 54 of 109

53

 1  don't we roll into the status conference with respect to

 2  discovery issues, thus if there's anything that I need to

 3  consider at that time, I'll do so in the same recess for

 4  efficiency purposes.

 5           Mr. Parham?

 6           MR. PARHAM:  Yeah.  Your Honor, counsel for FedEx

 7  asked for a status conference this morning.  And we're in the

 8  process of working through -- they had some questions about

 9  certain kinds of documents.  We've been working with them to

10  try and finish that up.  Like I said, I hope that it's finished

11  up today.

12           They said their answers -- they haven't given us

13  discovery responses either.  And I think there's a

14  misunderstanding on the dates because they told me this morning

15  it was due on the 30th.  I went back and looked, and no, it was

16  due on the 23rd which is what the stipulation agreed to.

17           So we're both running a little bit late here.  But

18  under the circumstances, I think everyone's doing the best they

19  can, and I think everyone worked hard over the Thanksgiving

20  holidays trying to get that part of it done.

21           We have I think -- I think that we've concluded with

22  the petitioning creditors, the bond holders in terms of the

23  documents that they wanted.  So I think that one is finally --

24  has finally concluded.

25           There are, as the Court has heard, a number of

54

1  depositions scheduled for this week.  I think our brief, as I

2  understand it, is due today.  Well, not as I understand it.  It

3  is due today.  And that will be filed tonight.  And so we'll

4  have that done.  And then the other parties' briefs I think are

5  due in a week or so and we have the hearing on the 19th.

6          So as far as I know, I mean, that's the status of the

7  case.  I don't think that there -- to my knowledge, there are

8  no issues, no additional issues that we would need the Court to

9  rule on today or that are ripe.  There have been no motions to

10  compel or anything of that nature.

11          THE COURT:  Let me take a moment with you,

12  Mr. Parham.

13          MR. PARHAM:  Uh-huh.

14          THE COURT:  I'm looking at the scheduling order,

15  unless I'm looking at a different version.  It says the debtor

16  shall file any brief in support of its objection no later than

17  December 5th.

18          MR. PARHAM:  Yeah.  So --

19          THE COURT:  Was there --

20          MR. PARHAM:  Let me explain.  There are two

21  scheduling orders.

22          THE COURT:  Okay.  Oh, okay.

23          MR. PARHAM:  We did a scheduling order with the

24  petitioning creditors back when that was done.

25          THE COURT:  This is FedEx only.  I see that now.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 56 of 109

55

1          MR. PARHAM:  When FedEx filed theirs, and I think --

2     and so when FedEx filed their discovery, they wanted, because

3     time was shortened, they wanted us to have a scheduling order

4     in place so there would be some court authorized cutoff dates.

5          THE COURT:  Fair enough.

6          MR. PARHAM:  And so we agreed to one with FedEx.  And

7     so that is why there's confusion.  Technically yes, we have

8     another week I think to brief with respect to FedEx.  And we

9     might or might not take that.  But anyway, so that's why

10    there's two orders.

11         THE COURT:  I appreciate the distinction.  All right.

12    And so with respect to the discovery issues, is there any open

13    issues that you guys need the Court to address?

14         MR. PARHAM:  Not that I'm aware of.  I mean --

15         THE COURT:  Oh, okay.

16         MR. PARHAM:  Like I said, we've been talking with

17    FedEx.  And there are open issues, but it's all stuff that

18    we're trying to get responses to them on.  Like I said, I got

19    some of those questions at, like, ten o'clock this morning

20    where they had some and we need to respond, and there are some

21    answers to some of the questions they raised.  But I just --

22         THE COURT:  Mr. Hillyer?

23         UNIDENTIFIED SPEAKER:  Your Honor, if I may?

24         MR. HILLYER:  Yes.  Thank you, Your Honor.  Good

25    afternoon.  I'll say as an initial matter I did not speak up

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 57 of 109

56

1   earlier when to the extent that I heard the name FedEx a whole

2   lot in that motion to quash argument but chose to abstain.

3          To the extent that Mr. Parham or anyone else made

4   factual or legal representations or misrepresentations about

5   FedEx's joinder and claim and assignments, we are not a party

6   to that.  And, Your Honor, I'm just asking you to just

7   disregard that to the extent that it's a merit-based argument.

8          As to the issue, I believe I'll start with Mr. Parham

9   just said that the 23rd, that's not correct.  We served

10  discovery on November 10th to the debtor.  They served

11  discovery to us a week later after I asked for this original

12  scheduling order on the 10th.

13         They had to respond in fully on the 23rd.  We have to

14  the 30th.  We gave each other the exact same time period.  And

15  we gave the briefing deadline.  But to the extent that we just

16  entered this order last week, and it's already shot because the

17  debtor on November 23rd provided their request for admission

18  responses, no interrogatories and we still don't have any

19  interrogatories as of right now at the hearing.

20         And we received approximately 839 pages of documents

21  which I spent the most of the Thanksgiving weekend going

22  through, and 201 pages of it is repetitive contracts three

23  times.  But the real issue as it relates to the debtor, and we

24  have issues also I can tell you about the rest of this week is

25  very tenuous.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 58 of 109

57

1           The problem that we have with the debtor is

2   Mr. Parham is representing the alleged debtor.  Mr. Parham is

3   representing a third-party subpoena GNET ATC which for the

4   purposes of discovery they're not making a distinction between

5   the two parties, but they are in every other pleading

6   representing the largest non-audited financial consulting firm

7   in the nation for the website CFGI.  And Mr. Parham is counsel

8   for them.

9           And Mr. Parham is counsel for John Goodman

10  individually who owns the parent -- who owns the alleged debtor

11  which is the 100 percent parent of GNET.  So to the extent that

12  I appreciate everything that Mr. Parham is doing, and we have

13  been very cordial, and Ms. Taveras as well.

14          The problem why they are stretched thin is they're

15  replying to three subpoenas and a debtor.  And to the extent I

16  heard it in the discovery earlier, if we get 800 pages which is

17  really 600, it is wholly deficient in the relevant time period

18  and will be a motion to compel coming.

19          But to the extent that there is -- that is all the

20  documents you're going to get from four different -- three

21  subpoenas and a request for production is not tolerable.

22  There's no way FedEx can look at those documents and do that.

23  And if Your Honor will indulge me, Mr. Parham said the burden

24  is time.

25          And I'm one, I do not like surprising the Court.  I

58

1  think Your Honor said that you loathe discovery disputes.  I

2  think I've heard that a million times.  But --

3          THE COURT:  That might have been a strong word.

4          MR. HILLYER:  -- right now we've got -- well, Your

5  Honor, it's important to note what this week entails so that we

6  know the context of whether it's compelling production from the

7  debtor if it is forthcoming or it's not forthcoming from the

8  GNET from that.  We may have up to eight different motions to

9  compel coming, including requests for admission to the extent

10 that I will not get off in the weeds and merit-based.

11         But Your Honor asked Mr. Parham at the November 2nd

12 hearing on the 1003(b) motion is there a written assignment.

13 Our first request for admission is does Goodman Networks have a

14 written consent to assignment.  And the answer is as of

15 Thanksgiving, without waiving the subject to general

16 objections, a review of Goodman's documents is ongoing and

17 Goodman is not currently able to admit or deny this request,

18 and therefore denies this request.

19         This is my problem.  We're no further along than we

20 were on November 2nd.  And we have six subpoenas set this week

21 with Mr. Goodman.  And I like giving compliments when I can.

22 Mr. Kleinsasser has been very nice to deal with on behalf of

23 Mr. James Goodman who is the first that.  And he has been also

24 a conduit.

25         But Mr. Goodman is the owner of the parent company,

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 60 of 109

59

1  is the manager of Genesis Networks Enterprises.  And that

2  company wholly owns the Genesis which is the party that is the

3  assigner, what Your Honor is asking about all the issues of the

4  APA.  We served -- Mr. Kleinsasser was not allowed to accept

5  service on behalf of Mr. Goodman who is the registered agent

6  for Genesis.

7         We served them anyway.  We do not have a single law

8  firm despite Genesis having counsel in the <u>Wistron</u> case that

9  Your Honor looked at the order, we have no counsel.  We've been

10 informed of a name but not confirmed for a 30(b)(6).  And we

11 have absolutely no documents from Genesis for a deposition

12 we're supposed to do tomorrow morning.

13        So it's not happening.  That's going to be a motion

14 to compel, a motion for contempt under 47 -- I mean 45(g), and

15 to reset that.  But then we also don't have documents from CGFI

16 on Wednesday.  We have no documents from John Goodman on 12/1.

17 We have no documents from GNET on 12/1.  And I don't know if

18 we're getting documents from Mr. Frinzi for his 12/2

19 deposition.

20        So with all of that, while I am now out of breath, we

21 could have eight motions because this week can we do

22 depositions without documents?  We've discussed that.  But the

23 sheer fact that this is all based on an assignment from 2019,

24 and we do not have a single document or communication other

25 than the assignments themselves from 2019 from any party, from

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 61 of 109

60

1   either James Goodman who signed on behalf of Genesis to his

2   brother, John Goodman, and then John Goodman who signs both

3   counter parties from Goodman to GNET.

4           Your Honor, I am not about to say it's concerted, but

5   we're not getting any movement at all.  So this week may end up

6   being folly.  And for the purposes of a status conference

7   versus a motion which is not pending, I think we need to talk

8   about the scheduling order because our scheduling order held

9   for all of two days.

10          And we have these briefings come, and a lot of these

11  depositions are going to be called.  The deponent's going to be

12  asked if they did a search and produce documents, and they

13  didn't.  Then we may ask them questions and we'll continue the

14  deposition until we get their documents because we have an $83

15  million claim, Your Honor, FedEx does.  And we're entitled to

16  discovery in a contested matter of that magnitude if they're

17  going to object to it.

18          And it's just not really being addressed in a timely

19  manner, not for fault of the burden of time.  I'm not saying

20  they are intentionally disregarding it, but it's not getting

21  done.  And FedEx is being prejudiced right now.

22          THE COURT:  All right.  Thank you very much,

23  Mr. Hillyer.

24          I just want to note for the record I never said it

25  couldn't get worse because apparently it can.  Oh, goodness.

61

1 All right.

2      Mr. Guffy, come on in.  What does the petitioning

3 creditor have to say?

4      MR. GUFFY:  Fortunately, Your Honor, I don't have a

5 lot to add today.  What Mr. Parham said with regard to the

6 discovery produced to the note holder petitioning creditors is

7 generally accurate.  There are a few minor outstanding issues

8 that we've been working through.  I think I'm still owed a few

9 follow up documents.

10      But we are largely complete with respect to the

11 document discovery that we have.  I think the main thing that I

12 don't have that I would really like to have in relatively short

13 order is a list from Mr. Parham as to which witnesses will be

14 addressing which 30(b)(6) topics at the deposition.

15      As I think you can imagine, it's a little hard to

16 prepare for depositions if you don't know who you're going to

17 be asking which questions to.  And so fortunately, that's about

18 it for us.

19      THE COURT:  Right, because as I understand it,

20 Mr. Guffy, there's obviously a separate eligibility issue with

21 respect to your clients.  But your clients don't have any

22 factual touch to the assignment issues and the consent issues

23 that ARRIS and/or FedEx do?

24      MR. PARHAM:  That is correct.

25      THE COURT:  Okay.  Thank you, Mr. Parham.  And is

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 63 of 109

62

1  that -- do you agree with that?

2            MR. GUFFY:  That's correct, yes.

3            THE COURT:  Okay, thank you.  Well --

4            MR. PARHAM:  Well, Your Honor, with respect to

5  Mr. Hillyer's comments, first of all, the documents production

6  that they're getting, and it's been a rolling production and I

7  don't understand.  Like I said, they're going to get documents

8  that clear up most of this today.  But the CFGI, they're our

9  financial advisor.  And so yeah, we're going to defend our

10 financial advisor in a lawsuit involving the company.  I mean,

11 so that's because it's those issues.

12           And their documents, they basically did the

13 production along with our consultant.  And basically it's GNET,

14 it's Goodman, it's CFGI, all those records.  They've gotten

15 what those parties have, or they will have what those parties

16 have.  So that is taken care of I think today, hopefully.

17           And I think the other issues that he raised, it's not

18 consistent.  I didn't do the discovery, I didn't come here to

19 do a discovery conference.  And we have nothing in writing to

20 respond to.  So I'm a little bit at a loss.  I apologize for

21 that.

22           But all I can say is we've -- I know we're working

23 very hard.  And we've got a new discovery group that has taken

24 downloads.  So, look, there's one consultant left for all these

25 companies.  And they have to go back in, find somebody who can

1  get into the emails.

2          They drop all the emails and whatnot, all the

3  documents into our discovery.  They have to do their sort.  I

4  understand that with respect to FedEx's for example, we had a

5  universe of something like 100,000 documents that then got cut

6  down to 3,000 documents.  And now the question is trying to

7  push those out and get them reviewed.  And I think we're just

8  going to in essence make sure there's nothing privileged and

9  it's going to all go out.

10         So it's not an easy chore.  The issue is narrow.  And

11  I think that we've -- but the requests are pretty broad.  All

12  communication surrounding it requires a pretty broad search.

13  And for a company that hasn't been in operations for a while,

14  it's not easy.

15         THE COURT:  Actually, I mean I guess my question to

16  you there, Mr. Parham, is given that it hasn't been in

17  operations for a while, if the records were maintained, or are

18  you telling me they weren't maintained?

19         MR. PARHAM:  I believe they were.

20         THE COURT:  Because if the records were maintained,

21  it actually seems like it could be a little easier if there's

22  not been a whole lot of communications within the last few

23  years.

24         MR. PARHAM:  Well no, no.  They shut down, like, this

25  year.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 65 of 109

64

1            THE COURT:  Okay.  Oh, okay.

2            MR. PARHAM:  So we're dealing with a two or three

3  year period.

4            THE COURT:  Oh, okay.

5            MR. PARHAM:  I'm sorry.  This year or in 2021.  But

6  it's not like it's been dormant for --

7            THE COURT:  Okay.  Just within --

8            MR. PARHAM:  -- three years and we're looking --

9            THE COURT:  Okay.  Within the last year.

10           MR. PARHAM:  -- at a period where --

11           THE COURT:  Understood.

12           MR. PARHAM:  Yeah.  That's not true.

13           THE COURT:  Well, I guess the question is how

14  realistic are the dates that we've all been discussing.  How

15  realistic are these deposition dates, how realistic are the

16  briefing dates, how realistic is the December 19th hearing

17  date?

18           MR. PARHAM:  Well, from the debtor's perspective, we

19  would be okay, certainly, with extending that date.  And we did

20  raise that, frankly, with the petitioning creditors.  And I

21  think we've raised it with FedEx.  It would certainly make

22  things easier with ARRIS if we weren't cooperating on trying to

23  produce documents on 9 days as opposed to 30.

24           So as to the depositions, all of them are their

25  request, not ours.  So would we work to get -- if they wanted

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 66 of 109

65

 1  more time to review documents or to get documents or to do that
 2  first, I mean, and to change up the deposition schedule, we
 3  would be agreeable to that.  Like I say, we've broached it and
 4  haven't gotten much in the way of takers.

 5          THE COURT:  So, Mr. Guffy, tell me if this is where
 6  you separate from the herd.  How realistic is the 12/19 hearing
 7  date at this juncture, given where we are?

 8          MR. GUFFY:  From the point of view --

 9          THE COURT:  If we were to push that particular
10  hearing date, it would also give the Court more time with your
11  summary judgment motion, as well. On which I appreciate your
12  wanting to expedite to two days' notice.

13          MR. GUFFY:  Thank you, Your Honor.  Right now, I
14  mean, from the view of the petitioning creditors, we would
15  still view the 12/19 date as realistic.  Whether under what
16  circumstances we would extend that, I'd have to discuss with my
17  client.

18          THE COURT:  Fair enough.  Fair enough.

19          All right. I recognize that you need to discuss it
20  with your client, but as you sit here today, are you aware of
21  any magic to having this heard by the 19th?

22          MR. GUFFY:  Your Honor, honestly, it's just a matter
23  of wanting to get this done.  We filed this petition on
24  September 6th.  And we'd like to get that order for relief
25  entered.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 67 of 109

66

1          THE COURT:  Okay.  Fair enough.

2          MR. HILLYER:  Your Honor, if I may?

3          THE COURT:  Please.

4          MR. HILLYER:  I think where I see this heading is I

5  can't speak high level about ARRIS' claim.  I have not had an

6  opportunity to review all of that.  I think they are similarly

7  situated, which I think you asked.  So as my grandfather did a

8  fruit analogy, I think FedEx and ARRIS are apples, and I think

9  the petitioning creditor may be an orange in the terms of being

10 able to go forward.

11         But I don't know anything magic about the December

12 19th date.  But I've spoken with our client.  They echo Mr.

13 Guffy's comments about finality, but also bringing in Rule

14 1013(a) on contested petitions and what is, if you look at

15 there's not a ton of involuntary case law out there as Your

16 Honor's aware.  But as early as practical time, trying to get

17 it.

18         But I think, and again, this is not a comment towards

19 any particular, certainly not the attorneys.  I have grave

20 concerns about what I've heard about the Goodman Networks in

21 conversations with Mr. Parham and in that about this is shut

22 down.  There's no one left.  I don't know where these documents

23 are.

24         And I feel like I would be remiss if I didn't tell

25 the Court I have no confidence in Goodman Networks document

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 68 of 109

67

1  production on date, relevance, or whoever's doing that

2  batching.  I'll point the Court to an example and I actually, I

3  had to ask Mr. Guffy the summary judgment you raised filed by

4  the petitioning creditors.  That was a CFGI financial

5  presentation from this year for Goodman Networks and all of its

6  affiliated, I've never seen that before.  FedEx has never seen

7  that before.

8         And again, the question is when I'm told everybody

9  knew that was out there, I have no idea what the debtor has

10 given to Mr. Guffy and his clients.  Frankly, it's too hard to

11 go through our own documents.  But that financial presentation

12 is in a deposition, is a key piece of evidence that would be

13 introduced, and to discuss these financial transactions and

14 bank accounts between Goodman Networks and GNET.

15        And that's what I'm worried about.  This happened to

16 get filed -- if Mr. Guffy didn't file that, we would do a

17 deposition.  I'd never know that this is out there, and that's

18 my grave concern pressing with the time.  And we've never --

19 but even more than that, even though it came attached to the

20 petitioning creditors' summary judgment, why wasn't this in the

21 800 or almost 900 documents that the debtor sent us as their

22 initial batch?

23        It should be right on top.  We in fact, we don't have

24 a single document or email with CGFI.  So that's where I go to

25 you're asking can we go forward with the depositions this week.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 69 of 109

68

1   If the Court instructs that, and we hold with the current

2   scheduling order, FedEx and its counsel will do everything

3   possible to comply with the Court's briefing schedule and

4   deadline.

5           But I feel that it's not going to be thorough.  It's

6   not going to be equitable.  And it's certainly going to be

7   prejudicial to the extent that documents are simply just not

8   being turned over.  And frankly, I have grave concerns about

9   producing a FedEx 30(b)(6) to be questioned on Friday when I

10  don't know what documents they're going to use at that or even

11  question about.

12          So all of these issues and the relationships of the

13  company, I think it warrants really addressing the scheduling

14  order.  I just don't want to be the one that proposes I'm going

15  to throw the monkey wrench in there and crush everything.

16          But Mr. Guffy's summary judgment seems to think that

17  if that summary judgment is granted, I believe it renders

18  FedEx's joinder and ARRIS' joinder moot.  I believe if the

19  petitioning creditors go forward and they prevail either by

20  summary judgment or at an order for relief hearing on the 19th,

21  it also renders it moot.

22          So there's a lot of things that are in play, and I'm

23  trying to be sensitive of everybody's time and expenses because

24  this is a tremendous amount of money, but no one wants to throw

25  good money after bad at this point.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 70 of 109

69

1            MR. PARHAM:  Yeah, so I have a lot of issues with

2    what he just said, particularly with the discovery.  But once

3    he gets the documents and once he asks people what efforts were

4    made to go find it, then if there's an issue, then maybe we

5    could have it.

6            But for him to sit here before he has any hard

7    concerns, evidence that there's any problem with the way we

8    went about trying to obtain the documents, I think is wrong.

9    But let me address one other thing.

10            THE COURT:  But, Mr. Parham, I want to stop you there

11    because I have a question for you. Do you agree that if the

12    summary judgment motion of the petitioning creditors is

13    granted, and that they are eligible creditors pursuant to 303,

14    then everything with FedEx and everything with Arris is moot as

15    it pertains to the order for relief?

16            MR. PARHAM:  Well, let me answer that this way.

17            THE COURT:  Okay.

18            MR. PARHAM:  The last thing you said is true.  If

19    their claims are determined to be qualified --

20            THE COURT:  If, yes.

21            MR. PARHAM:  -- there's more than three.

22            THE COURT:  Right.

23            MR. PARHAM:  That's that.  We're done.

24            THE COURT:  Okay.

25            MR. PARHAM:  The motion for summary judgment though

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 71 of 109

70

1  is in truth a motion for partial summary judgment.

2            THE COURT:  Okay.

3            MR. PARHAM:  Because what that motion says is that in

4  looking at whether or not the petitioning creditors are over

5  secured or under secured, the question is whether you look just

6  to their collateral at the debtor, or whether you look to their

7  collateral in total, which would include GNET and Global

8  Multiman or Multiman Global.

9            And there's, like, $60 million of value at GNET and

10 Multiman Global.  There is $21 million, maybe 27 depending on

11 how you treated certain account receivable, at Goodman.  And so

12 -- and the bonds are owed 18.6.

13           So even if the motion for summary judgment is granted

14 which says you don't look at the affiliates, there still is an

15 issue because they may very well contest the value of what the

16 assets are because they're at least -- well, they're -- the

17 problem that we've had is that we've been trying to liquidate

18 them but they're not that liquid.

19           THE COURT:  Okay.  Okay.

20           MR. PARHAM:  And so that's the --

21           THE COURT:  I appreciate the distinction.  And I

22 candidly have not read the motion for summary judgment at

23 length.  So I appreciate that distinction.

24           MR. PARHAM:  But I will tell you what could impact

25 this case, and that is you recall you made us send out a list

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 72 of 109

71

1  of --

2            THE COURT:  Yes.

3            MR. PARHAM:  -- notices to creditors.  Frankly, if

4  three of them show up on the 12th, and their claims are of a

5  sufficient amount and they're not disputed, then that would --

6            THE COURT:  That's the --

7            MR. PARHAM:  That would render it all moot.  I mean,

8  it would.

9            THE COURT:  Right.  Okay.  And so you were talking to

10 me when I interrupted you about the discovery.  And --

11           MR. PARHAM:  Yeah.  I was actually just going to move

12 into the summary judgment thing because I wanted the Court

13 to --

14           THE COURT:  Oh, okay.

15           MR. PARHAM:  -- understand that it wouldn't --

16           THE COURT:  Appreciate it.

17           MR. PARHAM:  -- necessarily because he had made the

18 comment that that would moot it.  That's not something, but

19 there may be something else.  Frankly, it makes great sense to

20 me to push this off into January and let us work towards

21 getting a more sane schedule here for December and getting this

22 all done, and seeing if -- and too, I mean, the 12th is

23 significant, quite frankly.

24           THE COURT:  Well, does anyone else be wish to be

25 heard before the Court takes a break?

72

1              MS. SIXKILLER:  Your Honor, briefly for ARRIS, if I

2  may?

3              THE COURT:  Please.

4              MS. SIXKILLER:  For our position, if FedEx and them

5  do continue the depositions as been said today, as they've

6  said, apples to apples, we would be continuing our deposition

7  to go with them.  So if that impacts the Court's ruling on the

8  discovery at all as well.  And then to the extent, again, FedEx

9  is asking for things to get moved, we would be following them

10 on that.

11             We obviously would hope this gets resolved by

12 sometime in January.  And we would just simply ask that there

13 be, so we can avoid more of these issues I guess going forward,

14 if the hearing date is moved that we set, like, a discovery

15 cutoff date that even if we don't have the depositions

16 scheduled yet, the list of deponents has to be exchanged, the

17 discovery requests have to be out.  And that might help the

18 parties going forward use that time.

19             THE COURT:  All right.  Thank you, Ms. Sixkiller.

20             Mr. Guffy?

21             MR. HILLYER:  Your Honor, I --

22             THE COURT:  Oh, please, Mr. Hillyer?

23             MR. HILLYER:  Oh, I was going to say if I said that,

24 I didn't mean to -- I never know sometimes what I say.  I

25 didn't mean to request it be continued.  I merely meant to

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 74 of 109

73

1  state that under the current circumstances we're living in that

2  these depositions are not going to be completed this week.

3  They're just, that's just using a professional judgment on

4  that.

5         And, like, that's why I brought up the Genesis.  I

6  have no idea how counsel is going to call us this afternoon and

7  get a 30(b)(6) prep before tomorrow morning.  That's not

8  happening.  And then it dominoes the rest.

9         If it gets moved, FedEx is going to comply.  But

10  we're not -- we don't want to be the ones requesting an amended

11  scheduling.  We'll abide by what the Court says.  If I walk

12  that as tightly as I could, Your Honor.

13         THE COURT:  Absolutely.

14         MS. SIXKILLER:  And ARRIS would follow suit.

15         THE COURT:  I completely understand your position.

16         Mr. Guffy, just for sake of my knowledge, do the

17  petitioning creditors have any part in the depos this week?  Or

18  any of these --

19         MR. GUFFY:  Yes, Your Honor.  We're taking --

20         THE COURT:  Okay.

21         MR. GUFFY:  Yeah, we're taking depositions every day

22  this week --

23         THE COURT:  Okay.

24         MR. GUFFY: -- starting tomorrow.  They're kind of --

25  we're kind of taking the lead on most of those, my

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28   2022 Hearing Transcript    Page 75 of 109

74

1  understanding.  We're actively preparing.  And we are ready for

2  these depositions to go forward.  We are comfortable with the

3  current schedule that we have right now under the circumstances

4  that we have right now.

5          That could change.  Anything could happen in the

6  future.  But as of right now, we are comfortable going forward

7  with the depositions.  We are comfortable keeping the schedule

8  that we have right now.

9          THE COURT:  Okay.  Thank you, Mr. Guffy.

10          All right.  Here's what we're going to do.  The

11  Court's going to take a break.  I am going to take a break

12  first because obviously I need to go and consider the arguments

13  that were raised with respect to the two motions to quash.

14          Second, I'm going to take a break long enough for

15  parties to be able to contact their clients.  For the folks

16  that are here, if you all need separate conference rooms, I

17  think we should hopefully have those available if you need

18  privacy.  Hopefully your phones will work in there.

19          And the second thing is I'm going to allow the folks

20  that are on WebEx to contact their clients, as well.  Or you

21  can talk with each other because I recognize that at this at

22  this juncture, we have -- the petitioning creditors certainly

23  seem to be further along in terms of discovery.

24          That doesn't surprise me just given, number two, both

25  the legal nature and the narrow nature of the dispute as to

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28  2022 Hearing Transcript   Page 76 of 109

75

1  eligibility with respect to these creditors.  So that doesn't

2  surprise me that they're a little further along and ready to go

3  so to speak.

4          However, given the breadth of and the very nature of

5  the disputes between FedEx and the alleged debtor, and ARRIS

6  and the alleged debtor, when coupled with the December 12th

7  deadline, I'm just -- I'm wondering out loud whether or not the

8  19th makes a lot of sense right now, and whether or not jamming

9  these depos through in accordance with the order makes a lot of

10 sense.

11         I'm not sure that it is not an inefficient use of

12 everyone's time and energy.  And I'm not sure whether or not --

13 again, I mean, the 12th is certainly still a few weeks away,

14 but it's only a few weeks away.  And if -- I understand that

15 folks need discovery if they need to go forward.  But I'm not

16 sure that the same rules apply if we give it a little bit more

17 time.

18         So on the break, which I'm going to break until 3:45.

19 And on the break I'm going to ask the parties to contact their

20 clients and co-counsel and/or each -- and speak amongst

21 yourselves with respect to just how realistic the 19th is,

22 and/or whether -- I don't want to have two hearings, obviously.

23         I don't want to have a hearing with respect to the

24 petitioning creditors' claims and then, well, if that doesn't

25 work we'll consider all these, the FedExs and the ARRISes of

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 77 of 109

76

1  the world.  I don't think that makes sense that that can lead

2  to disparate results.

3          But I do believe that we need to do something that

4  makes a little bit more sense in terms of efficiency.  And so

5  I'm going to ask the parties to have a little bit more time to

6  talk.  Obviously you can email each other and figure out how to

7  make that work.

8          I'm going to propose until 3:45.  If the parties need

9  more time, if you could email Ms. Harden.  Or if she's not here

10 -- or you could just let her know that you need more time than

11 that.  But otherwise, I'll be prepared to come back out at

12 3:45.  All right?

13         Does that make sense?  Anybody have any questions

14 with respect to the Court's instructions?  All right.  Thank

15 you very much.

16         THE CLERK:  All rise.

17         THE COURT:  The Court will stand in recess until

18 3:45.

19     (Recess from 3:16 p.m./Reconvene at 3:50 p.m.)

20         THE CLERK:  All rise.

21         THE COURT:  Please be seated.

22         Thank you all for your patience.  We're going to go

23 back on the record in Case Number 22-31641.

24         Now that we've had an opportunity to take a break and

25 visit with clients or counsel, are there any announcements?

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 78 of 109

77

1           MR. PARHAM:  Your Honor, I was not able to reach --

2           MR. GUFFY:  Your Honor, this is Philip Guffy for the

3  petitioning creditors.  The petitioning creditors want this

4  matter to go forward on the schedule that we have.  We want the

5  depositions to go forward.  We want the hearing date.  This has

6  been going on long enough.  We're looking for a resolution

7  here.

8           Our proposal would be to go forward with the

9  depositions as scheduled and then if there are any issues that

10 we need to revisit, we'll revisit those on Monday.  We

11 understand the dilemma that FedEx faces as far as getting their

12 documents.  We'd be fine proceeding on our own at this point.

13 We are ready to go, and we want this to happen.

14          The documents that we've gotten so far show that

15 there have been shenanigans at this debtor, at this entity.  We

16 know that the principals of this entity have siphoned off

17 millions of dollars of our collateral.  We're worried about

18 that continuing, and we want that to come to an end.

19          So we think the deposition should go forward.  We

20 think that we should have this trial on December 19th so that

21 we can put an end to whatever shenanigans may be still going on

22 at this point.

23          The MO of this debtor throughout the entire time that

24 we've been dealing with them has been delay, delay, delay.

25 They said they were going to pay the notes when they matured.

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28   2022 Hearing Transcript    Page 79 of 109

78

1  They didn't.  They asked for more time.  That came to nothing.

2          We have been trying to be accommodating, been trying

3  to be reasonable.  But at some point, enough is enough.  And we

4  need this to come to a resolution.  And we would like to stick

5  with the schedule that we have.  We have lined up these

6  depositions.  We have lined up these witnesses.  We've prepared

7  for these depositions.  We want them to go forward now so that

8  we can get an order for relief entered as soon as possible and

9  preserve what is left of our collateral at this debtor.

10          THE COURT:  Thank you very much, Mr. Guffy.  I

11  appreciate your client taking a position.

12          Mr. Parham?

13          MR. PARHAM:  Look, we'll go forward and do the best

14  we can, as we have been.  Do I think, frankly, that it makes

15  more sense to briefly continue this and put it past the 12th?

16  I do.  I think it would make it a more efficient process and

17  would make the discovery more meaningful.

18          But, look, I mean if people want to go forward, we're

19  lined up and ready to go forward.  But we're struggling with

20  trying to keep up with all these requests.  And, frankly, when

21  we set the 19th, we had the petitioning creditors.  And we

22  worked it out and with them the discovery's fine and it's

23  essentially done and we're there.

24          But not -- then we had FedEx and ARRIS join, and so

25  we kind of got slammed towards the end.  But this was not

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 80 of 109

79

1  something that we had envisioned when we started back in

2  September that we would have essentially two more wholly --

3  really wholly unrelated litigations going on at the same time.

4        So we've kind of gotten slammed that way.  But, look,

5  I mean we agreed to this date with them, and if that's what the

6  Court wants to do and thinks is right, then we'll do it.

7  Personally, I think it's more efficient to continue it, and I

8  would prefer to see it continued if you did, say, mid-January

9  something like that.  I think it makes a whole lot more sense.

10  But that's my personal view.

11        THE COURT:  Thank you very much, Mr. Parham.

12        MR. KLEINSASSER:  May I be heard real quick, Your

13  Honor?

14        THE COURT:  Of course, Mr. Kleinsasser.

15        MR. KLEINSASSER:  The concern I've got, Your Honor,

16  with my client who's a non-party is that if Your Honor orders

17  it to go forward tomorrow, of course, I'll produce him.  But

18  initially, when the bondholders had asked for his deposition,

19  we agreed to a five-hour limitation.  And then when FedEx asked

20  to join, I said, yeah, and I offered up the seven hours.  I

21  said y'all split it up.

22        Now it sounds like ARRIS will be joining.  Okay.  The

23  concern I've got, though, is what I think is going to happen

24  here, not from the bondholders but potentially from FedEx or

25  ARRIS is there's going to be some -- and I don't mean this

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 81 of 109

80

1   critically of anyone, I'm not saying that.  But what I think is

2   going to happen is they're going to say, well, we just got this

3   document, we need to recess this deposition or retake it later.

4          And, honestly, that's just -- that's unreasonable for

5   my client.  It's not reasonable to ask him to sit for multiple

6   depositions in this case.  I mean this is an involuntary

7   proceeding.  He's a non-party.  I think at the end of the day,

8   it would really make more sense just for probably for a short

9   continuance to allow parties to get the documents that they

10  need, to work together in that respect, and then ultimately to

11  go forward with one deposition of each witness.  Otherwise, I

12  just think it's too burdensome.

13         And at the end of the day, with all respect to Mr.

14  Guffy, the statements about whatever the principals did or

15  didn't, that's not evidence.  I mean that's not really even

16  appropriate to consider here, I don't think.  So fundamentally,

17  my main concern is of course tomorrow I'll produce my client if

18  that's what is ordered.

19         I just -- you know, the agreement that -- between the

20  parties was one day of seven hours, just like Rule 30 requires.

21  And I just -- I'm afraid we're going to be back in here with

22  essentially a motion for more time based on the fact that

23  documents allegedly have not been produced at this point or

24  something like that.  And I just think that's -- it's

25  inefficient and burdensome, especially for my client who has to

81

 1  incur significant attorneys' fees every single time we have to

 2  prep him or deal with a document issue or whatever.

 3          So that's just my two cents.  Thank you.

 4          THE COURT:  Thank you, Mr. Kleinsasser.

 5          MR. HILLYER:  Good afternoon, Your Honor.  Cam

 6  Hillyer on behalf of FedEx.

 7          We did as Your Honor instructed and spoke with our

 8  client.  I think this may be one of the instance that everyone

 9  that is presenting their view to Your Honor this afternoon has

10  some semblance of correctness through the glasses that they're

11  looking through.

12          FedEx is not trying to obstruct Mr. Guffy or his

13  bondholders.  Their issues are completely separate than FedEx's

14  and perhaps ARRIS's.  We have major concerns about the pending

15  week that I've already expressed to you.

16          And I do not have a perfect answer of how to

17  reconcile depositions except that I appreciate Mr. Guffy's

18  acknowledgment that it is a lot easier to say they are prepared

19  to go forward because they've gotten all their documents which

20  I would be saying the same thing than FedEx or ARRIS that has

21  no documents.

22          And I also think Mr. Kleinsasser made very reasonable

23  statements which is that multiple sittings, but I can't

24  reconcile them.  To the extent that ARRIS needs more time for

25  its documents, FedEx is not prepared to go forward without its

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 83 of 109

82

1  documents, then I think we are in a dilemma and I know Your

2  Honor kind of touched on the issue of bifurcation and hesitancy

3  to that.  And I understand that, as well.

4          But I do also feel like I need to tell the Court is

5  once the 1003(b) notices went out and FedEx has been contacted,

6  I've actually spoken with counsel, they know the December 12th

7  date.  I wish I could take credit for, but when counsel that

8  called me informed me that they did not think that there was

9  authority to set a December 12th joinder deadline pursuant to

10  1003 -- I'm sorry, to 303(c), which says any party may join in

11  the petition before the case is dismissed or the order for

12  relief is entered and that they had all the time that they

13  potentially wanted up until the order was entered but they

14  would try to timely come in.

15          I bring that up only because that December 12th date

16  is going to be important.  I don't know again how to look at --

17          THE COURT:  It's set for --

18          MR. HILLYER:  -- the moving of the date.  My client

19  is very concerned, Your Honor, not going forward without the

20  documents and doing this thoroughly and properly but they are

21  also have acknowledged what Mr. Guffy said.

22          And I appreciate what Mr. Kleinsasser said, but if

23  you look at Document 80-1, the Exhibit A, Page 10 of 12, as far

24  as evidence goes, that is the debtor's own financial report

25  from this year, right, the month before the unvoluntary.  And

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28    2022 Hearing Transcript    Page 84 of 109

83

1  it clearly shows $83 million of transfers to insiders.

2          And so that is a major concern that FedEx has given

3  the amount of these debts about -- with the lack of

4  restrictions under 303(f) -- I believe it's 303(f) during the

5  gap period and an extended gap period under 1013(a).  Whether

6  or not FedEx is contemplating if we need more time to

7  potentially file a 303(g) motion to at least have the status

8  quo maintained because these are all grave concerns.

9          If you move it, there's concerns.  If you don't move

10 it, I don't think we're doing it right.  And that's all I can

11 basically add.  And to the extent I have not gotten a chance to

12 talk with Ms. Sixkiller or Mr. Sullivan, but FedEx would be

13 amenable to unhitching their car from the petitioning creditors

14 and going with ARRIS and moving forward in that discovery since

15 they're similarly situated and we get up to speed and let the

16 petitioning creditors go their way.  But again, that will

17 involve multiple depositions.

18          That's all I have to say, Your Honor.  Thank you for

19 your time.

20          THE COURT:  Thank you, Mr. Hillyer.

21          Ms. Sixkiller, would you like to be heard with

22 respect to the schedule?

23          I think you may be on mute.  I'm sorry, I can't see

24 her with my -- thank you, I appreciate that.

25          MS. SIXKILLER:  Sorry about that.  I had myself on

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 85 of 109

84

1  double mute.  A safety net.

2          So with respect to James Goodman briefly, I did reach

3  out to counsel.  We spoke briefly.  He's still considering it,

4  a resolution on the topics.  Going with his topics, the topics

5  raised by our RFPS just generally because they might overlap,

6  but ours might be a bit broader, and then follow-up to any

7  questions asked by other creditors at the deposition.

8          So he's still considering that, but hopefully finders

9  crossed, we'll work something out on that front.

10          As to the scheduling, the one issue is we don't -- we

11  reached out to our client and haven't heard from them yet.  But

12  we at this point can't agree to uncoupling the two hearings,

13  but we're fine with moving out our deadlines to the extent

14  necessary out to sort of still meet the December 19th hearing

15  meaning instead of filing our brief December 9th, letting us --

16  and having discovery have to conclude on the 2nd, maybe we can

17  go a little bit further and closer and file our brief just a

18  couple of days before the hearing.

19          What we would like to do, though, we would still

20  likely have to attend the depositions of the other witnesses

21  being taken by the original petitioning creditors just because

22  that's the only way to avoid, right, repeating questions.  And

23  so our client will have to attend more and it will be a greater

24  expense for them either way.

25          So we at this point understand we'll likely have to

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 86 of 109

85

1  move forward without all of the documents we seek.  We

2  understand that the one thing we would ask is that the parties

3  and the non-parties prioritize getting us any drafts of the

4  assignment and an executed assignment themselves.  That seems

5  to us to be pretty straightforward, something they either know

6  they have or not have relatively quickly based on the

7  representations here on files and such today.

8         I would say those are the critical pieces for us for

9  the depositions.  I understand FedEx might be in a different

10 position than us, and I'm not trying to be contrary to them

11 because we do want to sort of follow on to FedEx at the

12 depositions.  So what we might end up having to do if we do

13 have to separate them out is we would attend both but probably

14 reserve our questions until after FedEx goes which is the

15 current plan to be within the seven hours, right, to the extent

16 possible total.

17        And then we would just ask that those depositions and

18 the like be completed so that the hearing could still take

19 place as one joint hearing.

20        THE COURT:  Okay.  Thank you.

21        MR. GUFFY:  Your Honor, if I may add one more thing?

22        THE COURT:  Thank you, Mr. Guffy.  Please go forward.

23        MR. GUFFY:  I'm sorry.  I didn't hear you, Your

24 Honor.

25        THE COURT:  No.  Please go forward.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 87 of 109

86

1          MR. GUFFY:  Thank you.

2          Our kind of push to get these depositions done as we

3 have them scheduled is also tied in to our briefing deadline

4 which you had set as two weeks prior to the haring date.  And I

5 mean I think that's kind of been our hard stop and our reason

6 for pushing to get this stuff done when we did because we need

7 these depositions before we submit our briefing.  And then our

8 briefing deadline is set there on December 5th.

9          If we move that deadline, that may give us some more

10 flexibility to push things out a little further and still keep

11 the December 19th hearing date if that is something that Your

12 Honor would consider.

13          THE COURT:  Okay.  So what --

14          MR. GUFFY:  Because ultimately our concern is not so

15 much that --

16          THE COURT:  Let me stop you, Mr. Guffy.  Tell me

17 again when is your briefing deadline?

18          MR. GUFFY:  Right now our briefing deadline is

19 December 5th which is two weeks prior to the hearing.  And that

20 has kind of been what's controlled our schedule is that we need

21 those depositions done so we can meet the briefing deadline so

22 we can keep our December 19th hearing date which is ultimately

23 the thing that my clients are most concerned about is getting

24 this resolved as soon as we can get it heard.

25          THE COURT:  What --

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 88 of 109

87

1        MR. GUFFY:  And that December 5th briefing deadline
2 --
3        THE COURT:  Is there --
4        MR. GUFFY:  Sorry.
5        THE COURT:  I'm sorry.  Is there a briefing deadline
6 that follows the 5th or are there simultaneous?  I'll be honest
7 I don't recall.
8        MR. PARHAM:  Your Honor, I believe what we have is --
9        MR. GUFFY:  The scheduling order that we agreed with
10 Mr. Parham was that the debtors would file their brief today
11 and then we would have a week with their brief before we file
12 our brief and then we meet Your Honor's request that all
13 briefing be completed two weeks before the hearing.
14        THE COURT:  All righty.
15        MR. GUFFY:  And so that's been what's been pushing
16 our scheduling is meeting that deadline that you asked us to
17 meet.  If the briefing could be completed closer to the 19th
18 and we have -- then that would give us more time to complete
19 depositions and potentially give us -- FedEx and the debtor and
20 ARRIS more time to work out their discovery issues so that they
21 feel comfortable going forward with the depositions.
22        And then we can still have the hearing setting that
23 we have for December 19th and get -- you know, whether we're
24 going to get an order of relief entered or not, that determined
25 as quickly as possible here.

1          MR. PARHAM:    Your Honor, there's a second scheduling

2    order I think with FedEx that has our brief due on the 5th and

3    then their brief due on the 12th.

4          THE COURT:  Okay.

5          MR. PARHAM:  So we kind of have -- whether we would

6    file two briefs or not, I don't know.  But if we're going to

7    move the dates, we would prefer to have one date.

8          THE COURT:  No.  I think that that actually makes

9    perfect sense, Mr. Parham, is that we start working off of one

10   complete scheduling order in terms of these dates.

11         With respect to the dates themselves, I'm actually

12   pleased to hear that there's some flexibility in this that,

13   again, if we were finishing up at the two-week point, then

14   we've got some room to move some briefing deadlines.  What I am

15   going to do is I'm going to move the briefing deadline, so the

16   final brief, if that was the -- that was the petitioning

17   creditors had the final brief, right?

18         MR. PARHAM:  Correct.

19         THE COURT:  Okay.

20         MR. GUFFY:  That's correct.

21         THE COURT:  We're going to move that deadline, and

22   we'll make it for the petitioning creditors, for FedEx, and for

23   ARRIS.  Whoever's got that final deadline, that's going to be

24   the 14th, okay?  And the magic to that day is, number one, that

25   gives the Court a little bit of time with the briefs and,

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 90 of 109

89

1  number two, it also is two days after the deadline for other

2  creditors to join, okay.

3          And, again, that might be -- as you mentioned, Mr.

4  Parham, that might be a red-letter day, right.  If there are

5  other creditors that join.  And, with all due respect, Mr.

6  Hillyer, I do believe that the Court may so otherwise determine

7  in conjunction with the 1003.  I don't mean to kill the

8  messenger there, but I think that what the Rule states is --

9  let me quote, just because I know everyone doesn't make

10  appearances.

11          It basically says, "The Court shall afford a

12  reasonable opportunity for other creditors to join in the

13  petition," and the Court believes that December 12th is that

14  reasonable opportunity because essentially that's what, maybe

15  five months?  Four to five months.  I think that's reasonable.

16          In any event, I think I can give the parties that

17  much more flexibility in terms of the briefing schedule.

18  Again, I need some time with the pleadings, I mean, because

19  we're talking about a Monday hearing.  So I'm going to need

20  some time with the pleadings.  I'm going to keep the summary

21  judgment deadlines the same because those are going to be

22  primarily legal issues, as I understand.

23          Do you need the depositions for the summary judgment,

24  Mr. Guffy?

25          MR. GUFFY:  No, Your Honor.  That's purely legal

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 91 of 109

90

 1  issue, and we've submitted our brief.  And as far as we're

 2  concerned, we're done with that.

 3          THE COURT:  Okay.  So that's good news.

 4          So I'm going to leave those the same.  I'm going to

 5  give you guys more flexibility and space in terms of the

 6  hearing two dates after the December 12th day to join, and

 7  that's two business days before the hearing.  So I think what

 8  that will do, I mean it's not a tremendous amount of time, but

 9  it is more time.  And I honestly believe that the folks should

10  really work it out.

11          I hear what Mr. Hillyer's saying with respect to

12  FedEx and not wishing to go forward without documents.  I hear

13  what Mr. Kleinsasser is saying about his clients or any of

14  these parties, to be honest, having to either sit twice or

15  basically run the risk of, well, I'll take your deposition

16  today but I might wind up with more questions.  I don't find it

17  efficient.  I don't find it cost-effective.  And under the

18  circumstances, I think that we can build in that time.

19          So what I'm going to ask the parties to do is to

20  update a single scheduling order.  And, again, this is not

21  necessarily for my benefit, it is for yours, that essentially

22  gives that final date to the creditors for December 14th to

23  respond.

24          MR. PARHAM:  Can we also have the 14th?  I mean, it's

25  not like there's a -- we file a brief and they respond.  I

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 92 of 109

91

1  mean, I think in this instance, we all know what we're going to

2  say.  And I think that the issues are fairly well drawn.  So I

3  mean, to my mind, it would be helpful for us to have the same

4  date and get past the 12th.

5          MR. GUFFY:  Your Honor, we can't hear Mr. Parham at

6  this point.

7          THE COURT:  Yeah, Mr. Parham, could you --

8          MR. PARHAM:  Oh, I'm sorry.

9          THE COURT:  -- could you approach the podium?

10         MR. GUFFY:  If he could get closer to a microphone.

11         MR. PARHAM:  I'm sorry.

12         THE COURT:  Thank you, Mr. Guffy.

13         MR. PARHAM:  I thought that was the live mic.  I'm

14  sorry.

15         THE COURT:  They are live, but they just don't have

16  the same oompf.

17         MR. PARHAM:  Okay.  Yeah, I'm sorry, Philip.  I

18  thought I was speaking in front of the mic.

19         Yeah, we'd prefer the same date.  I don't know that

20  this is -- particularly, since we don't get a reply.  I mean

21  it's not like there's a -- we make a point and they dispute it

22  and then we get to reply because we don't get to reply.

23         So I would suggest that everybody's briefs be due on

24  the 14th.  I don't think there's any great mystery here about

25  what the issues are going to be.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 93 of 109

92

1           THE COURT:  Mr. Guffy?

2           MR. GUFFY:  Your Honor, yes.

3           I would respectfully disagree with Mr. Parham on that

4  point.  At this point, we don't know what the debtor is going

5  to argue because their position has shifted several times since

6  we filed the petition as to why they think that we're not

7  qualified creditors here.  And so we would ask that they file

8  their brief first so we can see what their objection is,

9  actually is, get them on the record saying what it is before we

10 are required to respond to that.

11          Otherwise, we're kind of shooting in the dark as to

12 what the actual basis they contend we're not qualified to file

13 the (indiscernible).

14          THE COURT:  All righty.

15          MR. HILLYER:  Your Honor, Cam Hillyer for FedEx.  I

16 agree with Mr. Guffy about that.  It basically said a reply

17 brief, and so I would respectfully -- the dates don't have to

18 be that longer,  but we need to look at that first if it's

19 going to be called a reply brief or both sides may be briefing

20 completely different issues and arguing two different things

21 and then they have to be reconciled at a hearing or

22 supplemental brief which Your Honor doesn't want.

23          And may I ask, Your Honor?  You said the motion for

24 summary deadline stays the same.  We don't have a motion for

25 summary deadline in our scheduling order.  What is that date?

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 94 of 109

93

1          THE COURT:  Okay.  So the motion for summary judgment

2  -- there was a motion for partial summary judgment filed by the

3  petitioning creditors I want to say last Wednesday.  And --

4          MR. HILLYER:  Yes, Your Honor.  I'm aware of that.  I

5  just meant do we have a deadline for summary judgment if we --

6          THE COURT:  No.  There's --

7          MR. HILLYER:  Does FedEx if we're --

8          THE COURT:  Well, there's no deadline, but there's

9  also no -- I mean we're running preciously short on time before

10  -- between now and the 19th.  I mean I'll be honest, I was

11  surprised to see a motion for summary judgment filed prior to

12  the 19th.  I now understand it's a different legal issue than

13  that which I -- than I thought.  So we would still have the

14  hearing on the 19th.

15          So summary judgments are usually done with very

16  extensive notice and timing.  So, no, there is no timing in

17  your scheduling order because I don't really anticipate one

18  between -- we're already less than 30 days out.  I think folks

19  should really be prepared to try this case on the 19th.

20          MR. HILLYER:  Understood, Your Honor.

21          MR. GUFFY:  I believe the deadline Your Honor was

22  referring to was the December 7th deadline for the debtor to

23  file their response to our motion for partial summary judgment.

24          THE COURT:  Yes.  So here's what I'm going to do.

25  The deadline for the creditors to file their briefs in support

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 95 of 109

94

1  of eligibility towards an involuntary petition is going to be

2  the 14th.  I'm going to make the debtor's deadline to file

3  their papers, it will be the 9th with respect to the

4  involuntary petition.  And it will be the 7th with respect to

5  summary judgment.  I'd like a little bit of time with that one.

6         MR. PARHAM:  That's fine.

7         THE COURT:  All righty.  So let me write that down as

8  I'm just giving out dates because Ms. Harden's going to ask me

9  these dates later.

10     (Pause)

11        THE COURT:  All righty.  So I think with that, the

12 parties could probably agree on some more reasonable deposition

13 dates.  I think that as much as I do understand folks have

14 prepped for these depos and what so, I think just giving that

15 extra week of time probably makes a lot more sense because I

16 would like these various parties, BFA, the alleged debtor, as

17 well as the two individual third parties, Mr. James and Mr.

18 John Goodman, to only have to sit once.  And I'd like to reduce

19 the amount of disputes that can occur based upon discovery

20 rather than to perpetuate them.

21        Again, if there's going to be a document production

22 today that you hope will allay some of the concerns of at least

23 FedEx so far, I think that's good news.  If there's not and

24 there's still a substantial fight, then let's get a motion to

25 compel on file as soon as possible because that way we can get

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 96 of 109

95

 1  these issues done and expedited and heard before these

 2  deposition dates because, you know, I don't want to have the

 3  disputes grow and take up all the time.

 4        With respect to the ARRIS subpoenas and discovery and

 5  the two motions to quash, I'm going to give the parties my

 6  ruling which is going to essentially give the parties primarily

 7  direction, okay.  I don't intend at this juncture to start

 8  drafting folks' discovery.  And I don't want to stand in the

 9  way of parties being productive and conferring.  But I do want

10  to give you guys some guardrails to limit the dispute going

11  forward.

12        Generally, what I would say is that I don't disagree

13  with ARRIS that there's no general limiting of a Rule 30 depo.

14  However, there is a limitation in Rule 26(b)(1), and that is

15  the questions must be relevant to any parties' claim or defense

16  and proportional to the needs of the case and whether the

17  burden or the expense of the proposed discovery outweighs its

18  likely benefit.

19        I will not quash the deposition of James Goodman and

20  I likewise do not find that the topics in the RFPs are overly

21  broad.  But I am mindful of Mr. Kleinsasser's argument and his

22  concern that these topics which ARRIS's counsel admits are not

23  limiting could certainly meander into questioning more properly

24  saved for state court litigation.

25        To be clear, this is not the state court litigation.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 97 of 109

96

1  ARRIS has already seemingly put its toe on the line if not

2  crossed it as it pertains to the automatic stay and the filing

3  of a second amended complaint.  That's not before me today.

4  But there will be no further missteps tolerated.

5          ARRIS's questioning of James Goodman should be

6  narrowly limited to its eligibility as a petitioning creditor.

7  I'm not going to write out the questions for ARRIS, but I'm

8  going to say stay in your lane.  This is not the time to

9  litigate the allegations of fraud or the allegations of

10  conspiracy that are found in the complaints.  Those claims

11  would certainly be subject to a bona fide dispute.  So from

12  that perspective, there's no need to engage in discovery on

13  those topics here.

14          Now, whether the distribution agreement was assigned

15  to GNET, whether ARRIS had notice, whether ARRIS consented or

16  was entitled to consent, whether Goodman relied -- excuse me,

17  whether Goodman remained liable after any purported assignment,

18  how those claims or assets were accounted for by Genesis,

19  Goodman, and GNET pre- and post-transfer, all of that's fair

20  game.  All of that goes directly to the eligibility of these

21  creditors, okay.

22          But, again, don't take the Court's ruling as -- I

23  mean this isn't a 2004 and this isn't a -- I mean this isn't

24  the state court litigation.  We have very narrow issues coming

25  before us on the 19th and that is what this discovery and these

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 98 of 109

97

1  depositions are meant to get to.

2          If the parties have questions, you can ask me now.

3  Otherwise, in terms of further meet and confers or, god forbid,

4  we're at the deposition, you have questions, you can contact

5  the Court and request a further status conference whether we do

6  one on WebEx or whether we do a telephonic one.

7          But that's the Court's feelings with respect to Mr.

8  James Goodman.  Again, I'm going to leave the timing to the

9  parties.  I believe, again, we need to give ourselves at least

10  minimum another week with these depositions.  And I'm going to

11  give Mr. Goodman an additional ten days to respond in good

12  faith with respect to the discovery that's been propounded.

13  All righty?

14          With respect to the motion to quash the depositions

15  of John Goodman and GNET, that motion to quash is going to be

16  denied.  If those persons or entities wish to oppose the

17  discovery, the Court would have expected them to retain counsel

18  and appear.  However, again, to ARRIS, that's not a blank

19  check, okay.  The same rules apply like the guardrails that I

20  talked about with respect to the deposition of Mr. Goodman.

21          So long as we're talking about eligibility, so long

22  as we're talking about whether or not a claim exists at the

23  Goodman Networks level and whether or not that claim is

24  contingent, unliquidated, disputed, or subject to bona fide

25  dispute, those issues are fair game.  But I don't want the

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 99 of 109

98

1    discovery to outsize the actual factual and legal issues, if

2    that makes sense.

3            And I think -- I gather that Mr. Goodman and GNET,

4    they're not as part of the same production as Mr. James

5    Goodman.  Is that correct, Mr. Parham?

6            MR. PARHAM:  That is correct.

7            THE COURT:  Okay.  And so how much time do you think

8    they need for their production?  Or am I correct that they're

9    already producing?

10           MR. PARHAM:  Well, they've been producing.

11           THE CLERK:  (Indiscernible).

12           MR. PARHAM:  I'm sorry.  I keep thinking this --

13           THE COURT:  That's okay.

14           MR. PARHAM:  They've been producing.

15           THE COURT:  Okay.

16           MR. PARHAM:  But now we got to go back and we got to

17   look at ARRIS's stuff.

18           THE COURT:  Okay.

19           MR. PARHAM:  And we got to look -- we got to finish

20   with FedEx.  And so if we're going to push the deposition, I'm

21   just trying to think what the calendar's like.  I mean I guess

22   you're pushing all the depositions into next week, and so --

23   that are currently scheduled, which is all of them.

24           And then so we would be trying to -- what we would be

25   trying to do is get documents to them by the end of this week

1   is what we would --

2           THE COURT:  Sure.

3           MR. PARHAM:  -- be the effort we would try to make, I

4   mean.  And we'll need to -- we'll probably need to talk at

5   least -- I just need to go back and look at what ARRIS has done

6   and we'll see if we can --

7           THE COURT:  Okay.

8           MR. PARHAM:  But I appreciate the direction because

9   what I get is all the fraud, all that kind of stuff is out.

10          THE COURT:  Yes.

11          MR. PARHAM:  Because that's all going to be

12  contested.

13          THE COURT:  Yes.

14          MR. PARHAM:  You would view that as contested.  And

15  so what we're really talking about are the contract issues, in

16  essence.

17          THE COURT:  Right.

18          MR. PARHAM:  Was there an assignment and that sort of

19  thing.

20          THE COURT:  I am assuming that Goodman never had

21  liability on its books that said for fraud to ARRIS.

22          MR. PARHAM:  I think that's fair.

23          THE COURT:  You think that's probably fair?

24          MR. PARHAM:  I think that's fair.

25          THE COURT:  Okay.

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 101 of 109

100

1          All right.  I mean, again, I hope the Court's

2    comments give the parties some direction.  Again, in the

3    interest of time, I don't want to stop and write a lengthy

4    ruling on this.  If the parties need more direction, I'm happy

5    to give it.  But I do believe -- I do hope that with these

6    comments, the parties can confer, number one, and maybe narrow

7    topics which I think would make for a better more productive

8    deposition.

9          And if not, again, I think you at least have the

10   benefits of some early on thoughts if things were to go awry at

11   the depositions themself.

12         Do the parties have any questions?

13         MR. HILLYER:  Your Honor, I do.  Cam Hillyer.

14         So am I hearing correctly that will help in my confer

15   and I'm only asking that because we organized along with Mr.

16   Guffy a lot of the court reporters that we're not having

17   depositions this week because, like, tomorrow morning is

18   Genesis and James Goodman.

19         And if that's not happening and Genesis hasn't

20   contacted us, then -- and if Mr. Parham represents he does need

21   more time and understand and they'll have it by the end of the

22   week, I'm just trying to contemplate whether it's best to say

23   it now or forever hold your peace if we enter into a situation

24   with like CGFI on Wednesday and Mr. Guffy says I'm ready to go

25   forward and I say I'm not ready to go forward.  And it's kind

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 102 of 109

101

1  of like a multi-member LLC, unanimous consent before the depo

2  is set, that's what I'm kind of hearing the counsel.

3          But I need to let all of those people and staff for

4  all of the video conferences, let them know that they're not

5  happening this week.  And that's what I'm hearing.

6          THE COURT:  Okay.  Mr. Parham's approaching the

7  podium.

8          MR. PARHAM:  Yeah.  I would say I don't know anything

9  about Genesis.  So with the exception of Genesis, I think we

10  should just agree that all the depositions are off for this

11  week and that counsel, it's -- you know, I guess you're still

12  in Central Time, it's 4:30.

13          But maybe counsel should meet and confer tomorrow

14  morning and get -- if people are available and get a schedule

15  for next week so that we don't get into the very situation that

16  counsel discussed where somebody's ready to go forward and

17  someone else isn't and people putting up the deponent don't

18  know what day it's going to be or is it going to go forward or

19  is it not.

20          And so I would say that we should just have a blanket

21  everything is off this week in terms of depositions.  We'll

22  work on getting documents to people, getting all that squared

23  away.  And hopefully, counsel can confer if not in the morning,

24  tomorrow certainly, and get dates for everybody for -- to go

25  forward next week.

Case 22-31641-mvl7    Doc 147-1    Filed 12/16/22    Entered 12/16/22 16:50:13    Desc
Exhibit November 28    2022 Hearing Transcript    Page 103 of 109

102

1          THE COURT:  Okay.  So I --

2          MR. GUFFY:  Your Honor, if I may?

3          THE COURT:  Please.

4          MR. GUFFY:  So understanding that, you know, probably

5   depositions tomorrow not happening, to the extent that we have

6   agreement among all the parties that certain depositions could

7   go forward this week, I don't necessarily want anything to

8   prevent us from doing that.

9          Like, say, for example, if at least for some

10  deponents, both FedEx and ARRIS feel comfortable moving forward

11  on, say, Thursday or Friday with certain deponents, that we

12  could do that if there was agreement on the parties to do so.

13         THE COURT:  I am not going to stand at all in the way

14  of parties unanimous agreement, but I agree with Mr. Hillyer

15  that you have now entered into an LLC deposition agreement

16  where if folks want to depose the same party, I'd like them to

17  only have to be put up once.  And so if that requires them

18  being pushed to either the end of the week or to next week, so

19  be it.  I'm hoping that all these folks have the flexibility to

20  do that.

21         But the only thing that I'll caveat is specifically

22  to the Genesis deposition.  We haven't talked about today that

23  I'm aware of a deposition of Genesis.  Now whether or not that

24  goes forward, I didn't hear that FedEx or -- who issued the

25  deposition notice to Genesis?

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 104 of 109

103

1          MR. HILLYER:  I did, Your Honor.

2          It was a 30(b)(6) issued to Genesis Telecom.  And

3   that is a company that's controlled by James Goodman or is

4   actually the managing member of that is the parent company, and

5   he is the manager of the parent company.  And that entity is

6   the assignor of the APA agreement that's the core dispute.  And

7   Genesis has no counsel and has not responded to us.

8          And that was the first thing that I brought up which

9   is that in my opinion, tomorrow was off.  James Goodman is

10  going to show up for his deposition, but he is not causing his

11  entity to show up for its 30(b)(6) and be held accountable for

12  the answers that he's otherwise going to answer or he has no

13  knowledge.  That's a problem, and if we need to address it,

14  we'll -- since a lot of these depositions aren't happening,

15  then we'll file an emergency motion to compel James Goodman to

16  have his entities comply with the subpoena notice.

17         And, like I said, Mr. Kleinsasser has been incredibly

18  helpful in communicating as a conduit, but he doesn't represent

19  Genesis, and so he can't make his client make Genesis appear.

20  And it's an issue.  I mean, they are a core party to this.

21         THE COURT:  Okay.  So --

22         MS. SIXKILLER:  And, Your Honor, ARRIS also served a

23  deposition notice on Genesis.

24         THE COURT:  All right.  So --

25         MS. SIXKILLER:  Or noticed it, I guess.

1           THE COURT:  -- with respect -- okay.  So obviously,

2  no one's here on behalf of Genesis.

3           So with respect to that deposition, I won't -- I'm

4  going to leave it to ARRIS and to FedEx what they want to do

5  with that particular deposition.  If you want to push it, push

6  it.  If you don't and you want to essentially give the old

7  deposition not held, that's up to counsel.  I won't put my

8  thumb kind of in the pie with respect to that one because

9  that's a different issue where there's been no objection, no

10 one's raised issues with respect to that.

11          With respect to the depositions of Mr. John Goodman,

12 with respect to the alleged debtor, with respect to Mr. James

13 Goodman -- let me see if I'm missing anyone.

14          MR. PARHAM:  CFGI, Your Honor.

15          THE COURT:  Pardon?

16          MR. PARHAM:  CFGI.

17          THE COURT:  And GNET.

18          MR. PARHAM:  CFGI, our financial advisor.

19          THE COURT:  Oh, oh, oh, and yes.  And with respect to

20 the financial advisor, each of those should be pushed to next

21 week unless the parties agree that they're all prepared to go

22 forward this week.  And if everyone's prepared to go forward

23 this week, then godspeed.

24          MR. PARHAM:  Your Honor, I would just ask that they

25 let us know so we can let the deponents know.

1          THE COURT:  Sure.

2          MR. PARHAM:  I mean, because they're either ready or

3   they're -- I assume that was for them.

4          THE COURT:  Okay.  So Mr. Parham?

5          MR. PARHAM:  Yes.  I'm sorry.

6          THE COURT:  The mic.

7          MR. PARHAM:  I'm sorry, once again.  I would just

8   like since we're presenting all those people, I would like to

9   know.

10          THE COURT:  Right.

11          MR. PARHAM:  And so sooner than later so we can let

12   them know.

13          THE COURT:  No, no, no.  And, again, I mean part of

14   the agreeing to kind of the scheduling order going forward,

15   part of the meet and confer in advance of these depositions and

16   the productions should be just that.  But I agree, given that

17   depositions were to be scheduled starting tomorrow, I think

18   that everyone needs to get on the phone right after this ends.

19          MS. SIXKILLER:  And, Your Honor, briefly, real quick

20   and to that point, yeah, I think since we all have 9:00 Central

21   open tomorrow on our calendars now, I think we could easily do

22   that.

23          But outside of that, I just want to note for the

24   record that my understanding is too that the motion to quash

25   brought by debtor is also denied but we've been given

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 107 of 109

106

1  guardrails, ARRIS has, and we're going to stay within those

2  guardrails.

3          THE COURT:  Yes.  That's exactly right.

4          MR. GUFFY:  And one more thing, Your Honor.  Were you

5  asking us to upload a new scheduling order embodying the dates

6  that we discussed for the briefing schedule?

7          THE COURT:  Again, if the parties -- I think that it

8  appears to me that the parties like to operate within the

9  bounds of stipulated scheduling orders.  I am going to put the

10 dates that we discussed today in there.  Again, discovery

11 cutoffs and things like that, that's all subject to the

12 parties.

13         So I'm going to put in my minute entry the deadlines,

14 again, with respect to the briefing on the involuntary

15 petitions and I think if it's not already done so, I'll put in

16 the deadline for the briefing on the MSJ.  But that may have

17 been in a notice of hearing.  But in any event, it's like I

18 said, given that you're combining a number of different

19 scheduling orders into one, it probably makes sense to get one

20 on file.

21         But, again, with the exception -- my rule of thumb is

22 if you're going to move court dates, if you're going to move

23 when I'm supposed to get documents, the final document deadline

24 before a hearing, I want in on that.  Otherwise, the scheduling

25 order can say unless the parties otherwise agree in writing and

Case 22-31641-mvl7   Doc 147-1   Filed 12/16/22   Entered 12/16/22 16:50:13   Desc
Exhibit November 28   2022 Hearing Transcript   Page 108 of 109

107

1  you can move all those interior dates and especially anything

2  as it pertains to discovery.  What I care about is the briefing

3  deadlines which we've already moved, so.

4            All righty?

5            MR. GUFFY:  Understood, Your Honor.  Thank you.

6            THE COURT:  You're very welcome.

7            Anything else?

8            MR. HILLYER:  Thank you for all your time this

9  afternoon, Your Honor.

10            THE COURT:  You're very welcome.

11            MR. KLEINSASSER:  Thank you, Your Honor.

12            MR. PARHAM:  Thank you, Your Honor.

13            MR. KLEINSASSER:  May we be excused?

14            THE COURT: Yes, you may.  You guys have a great day.

15       (Proceedings adjourned at 4:36 p.m.)

16                     *  *  *  *  *

17

18

19

20

21

22

23

24

25

108

1                          **C E R T I F I C A T I O N**

2              I, DIPTI PATEL, court approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    electronic sound recording of the proceedings in the above-

5    entitled matter, and to the best of my ability.

6

7    /s/ Dipti Patel

8    DIPTI PATEL, CET-997

9    LIBERTY TRANSCRIPTS              DATE: November 30, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25