# EXHIBIT 8
## TO
## FSCLE OBJECTION TO THE MOTION TO CONVERT
## CHAPTER 7 CASE TO CHAPTER 11

**CONSULTING AGREEMENT**

This CONSULTING AGREEMENT (this "**Agreement**") is entered into on the last date executed below, to be effective as of the date fully executed below (the "**Effective Date**"), by and between Goodman Networks, Incorporated (the "**Company**"), and GOODMAN MBE GROUP LP, a Texas limited partnership ("**Consultant**"), an independent contractor. Consultant and Company are sometimes referred to herein collectively as the "**Parties**" and each individually as a "**Party**."

NOW, THEREFORE, in consideration of the premises and covenants contained herein, the sufficiency of which is hereby acknowledged by the Parties, the Parties hereto agree as follows:

1. <u>Services</u>.

    a) In exchange for the Consultant Fee (defined below), Consultant agrees to use its Commercially Reasonable Efforts to perform advisory and consulting services from time to time that are customarily associated with executive management, financial counsel and review, capital structure and potential capital raises, and overall business strategy, and shall include, but not necessarily be limited to the following (collectively the "**Services**"):

    (i) Consultant shall provide advisory services related to all legal, financial, personnel and operational decisions for Company and its affiliates and subsidiaries.

    (ii) Consultant shall provide other services as may reasonably be requested by the Company during the Term of this Agreement.

    b) The Company will not control, direct, or otherwise supervise Consultant's performance of the Services and there are no requirements that Consultant provide a certain number of hours or days per week; provided, however, that Consultant shall use its Commercially Reasonable Efforts to perform the Services.

    c) "**Commercially Reasonable Efforts**" means with respect to a given commercial objective, the efforts that a reasonable person in the position of the promising Party would use so as to achieve that goal as expeditiously as is reasonably possible.

2. <u>Compensation</u>.

    a) As compensation for the Services to be rendered by Consultant to the Company pursuant to this Agreement, the Company agrees to cause delivery to Consultant the following pursuant to reasonable and customary documentation (the "**Consultant Fee**"):

    (i) Consultant shall be paid a non-refundable fee of $450,000. in lump sum prior to commencement of the Services, as compensation for all Services for the entirety of the Term. John Goodman will serve as the representative for the MBE Group and will be the sole recipient of the consulting fee and will be responsible for all taxes associated with the consulting fee.

    (ii) Consultant shall be reimbursed for reasonable and necessary expenses in connection with providing the Services, including legal expenses.

    b)    Consultant shall submit invoices for reimbursement of expenses pursuant to Section 2(a)(ii), and Company shall make payment within upon receipt of each invoice.

3.    <u>Outside Activities</u>.  Notwithstanding anything to the contrary herein, the Company hereby agrees and acknowledges that Consultant and its affiliates may, directly or indirectly, engage in and possess interests in other business ventures and investment opportunities of every kind and description, independently or with others, including serving as directors, managers and general partners of other companies or partnerships with purposes similar to those of the Company.

4.    <u>Taxes</u>.  Company shall pay the Consultant Fee hereunder without any deductions made whatsoever for state or federal taxes of any kind.  Each Party agrees to pay its own applicable federal and/or state taxes and all local excise, sales, use, or other taxes which arise as a result of the Services performed under this Agreement.

5.    <u>Independent Contractors</u>.  The Parties' relationship shall be that of independent contractors, and neither Party shall have any authority to create an obligation, express or implied, on behalf of the other, except as expressly set forth herein.  This Agreement shall not create any franchise, fiduciary, agency, partnership, joint venture, employment, or special relationship between the Parties.  Neither Party, nor the Party's employees, agents or representatives will be, or be deemed to be, employees, agents, or representatives of the other Party for any purpose, including, without limitation, federal or state tax purposes.

6.    <u>Each Party Responsible for its Own Personnel</u>.  Notwithstanding anything in this Agreement to the contrary, each Party shall be solely responsible for such Party's employees, contractors, or other agents ("**Personnel**"), which shall include, but not necessarily be limited, to:

    a)    Controlling, directing, or otherwise supervising such Party's Personnel;

    b)    Hiring, retaining, and/or terminating such Party's Personnel;

    c)    Paying the wages and benefits of such Party's Personnel;

    d)    Paying, withholding, and transmitting payroll taxes for such Party's Personnel;

    e)    Paying employee benefits of such Party's Personnel;

    f)    Providing unemployment insurance and/or workers' compensation benefits to such Party's Personnel, to the extent required by law;

    g)    Handling unemployment and workers' compensation claims involving such Party's Personnel, if any;

    h)    Performing background checks on such Party's Personnel, if necessary.

7.    <u>Term and Termination</u>.

    a) This Agreement shall commence on the Effective Date and continue in full force and effect for a period of one (1) year (the "**Term**"). Consultant may terminate the Agreement upon at least 5 (5) days' written notice.

    b) All payment obligations and any other provisions which, by their nature, should survive termination, shall survive termination of this Agreement.

8. <u>Indemnification</u>.

The Company assumes all risk and liabilities for, and agrees to protect, defend, indemnify and hold Consultant, and its members, officers, directors, employees, contractors (and contractor's owners), agents, affiliates, divisions, successors, predecessors, representatives and assigns harmless from and against any and all any third-party fines, claims, costs, expenses (including attorney's fees and court costs), demands, damages, actions, causes of action and other liabilities of every kind and nature, whether in contract, tort, equity or otherwise, whether statutory or common law (hereinafter "**Claims**") arising or resulting directly from: (i) the actions, omissions or negligence of the Company or its employees, or agents; (ii) Company's performance or breach of this Agreement and/or any of Company's duties or obligations hereunder; (iii) any violation of any third party contract, or any law, regulation, or ordinance, committed by Company in the performance of its obligations under this Agreement or in the performance the Services; and (iv) the operation of the Company's business. Company shall notify Consultant, in writing, of any such matter as soon as Company becomes aware thereof.

9. <u>Insurance</u>.

    (a) At all times during the Term of this Agreement and for a period of three years after the Term, Company shall procure and maintain, at its sole cost and expense, at least the following types and amounts of insurance coverage for the Services provided by Consultant and its representatives.[1]

        a) *Errors and Omissions/Professional Liability* with limits no less than $ least $5 million per occurrence and $$ 10 million in the aggregate.
        b) *Commercial General Liability Insurance* providing coverage for this Agreement as an insured contract, with limits no less than $TBD per occurrence and $TBD in the aggregate.
        c) *D&O Insurance* retain all coverage and the amounts as listed in Exhibit A.

    (b) All insurance policies required pursuant to this Section shall:

    i. be issued by insurance companies with a Best's Rating of no less than AAA.
    ii. provide that such insurance carriers give Consultant at least 30 days' prior written notice of cancellation or non-renewal of policy coverage; provided that, prior to such cancellation, the Company shall have new insurance policies in place that meet the requirements of this Section;
    iii. waive any right of subrogation of the insurers against the Consultant and any of its Affiliates;
    iv. provide that such insurance be primary insurance and any similar insurance in the name of and/or for the benefit of Consultant shall be excess and non-contributory; and

---

[1] Goodman MBE Group LP to get with insurance company broker on coverage policies and limits to be listed.

      v.    name Consultant and its Affiliates, including, in each case, all successors and permitted assigns, as additional insureds.

(c)    Upon the written request of Company, Service Provider shall provide Company with copies of the certificates of insurance and policy endorsements for all insurance coverage required by this Section and shall not do anything to invalidate such insurance. This Section shall not be construed in any manner as waiving, restricting or limiting the liability of either party for any obligations imposed under this Agreement (including but not limited to, any provisions requiring a party hereto to indemnify, defend and hold the other harmless under this Agreement).

10.    <u>Disclaimer of Warranties</u>. UNLESS SPECIFICALLY STATED HEREIN, ALL EXPRESS AND IMPLIED WARRANTIES RELATING TO THE SERVICES, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF PROPRIETARY RIGHTS ARE EXPRESSLY DISCLAIMED TO THE FULLEST EXTENT PERMITTED BY LAW.

11.    <u>Limitation of Liability</u>. CONSULTANT WILL NOT BE LIABLE TO THE COMPANY OR RESPONSIBLE FOR ANY DAMAGES TO THE COMPANY UNDER THIS AGREEMENT OR UNDER ANY CLAIM FOR EXTRA-CONTRACTUAL DAMAGES STEMMING FROM THE RELATIONSHIP DESCRIBED UNDER THIS AGREEMENT BETWEEN THE COMPANY AND CONSULTANT, INCLUDING BUT NOT LIMITED TO LOST PROFITS, SPECIAL DAMAGES OR OTHER CONSEQUENTIAL DAMAGES, IN EXCESS OF THE TOTAL CONSULTANT FEES PAID TO CONSULTANT UNDER THIS AGREEMENT. THIS LIMITATION IS INTENDED TO APPLY TO THE AGGREGATE OF ANY AND ALL CLAIMS BY THE COMPANY AGAINST CONSULTANT, REGARDLESS OF THE NUMBER OF CLAIMS OR ALLEGED INSTANCES, BREACHES, ACTS OR OMISSIONS WHICH FORM THE BASIS OF THE CLAIMS. THIS LIMITATION OF CONSULTANT'S LIABILITY IS INTENDED TO BE ABSOLUTE AND APPLIES REGARDLESS OF THE LEGAL THEORIES RELIED UPON OR ALLEGATIONS MADE BY THE COMPANY, OR THE EXTENT OF ANY ALLEGED DAMAGES TO THE COMPANY ALLEGEDLY RESULTING IN ANY CLAIM OR DEMAND AGAINST CONSULTANT, AND REGARDLESS OF WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES HAS BEEN DISCLOSED TO CONSULTANT IN ADVANCE, OR COULD HAVE BEEN REASONABLY FORESEEN BY CONSULTANT. FOR THE AVOIDANCE OF DOUBT, AND NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THIS LIMITATION OF LIABILITY SHALL NOT APPLY IN THE CASE OF FRAUD OR WILLFUL MISCONDUCT BY CONSULTANT.

12.    <u>Miscellaneous</u>.

a)    *Notices*. Any notice required or permitted by this Agreement shall be given by overnight delivery service, hand delivery, or by certified mail return receipt requested to the Party at the addresses set forth for the Parties on the signature page to this Agreement.

b)    *Waiver*. Failure by either Party to exercise promptly any option or right granted by this Agreement to such Party, or to require strict performance of any obligation imposed by this Agreement on the other, shall not be deemed to be a waiver of such rights unless such waiver is expressly set forth in writing and signed by the Party making such waiver.

c)    *Governing Law and Venue*. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Texas, without regard to its conflicts of laws principles. Mandatory venue and exclusive jurisdiction for any litigation or other legal proceeding between the Parties arising out of or related to this Agreement shall be in the state or federal courts located in Dallas, Texas and the Parties hereby waive any objection to jurisdiction

or venue of such courts.

d) *Scope of Agreement*. This Agreement constitutes the entire Agreement as between Consultant and Company with respect to the Services provided by Consultant and supersedes all prior agreements and understandings regarding same. This Agreement is entered into by the Parties without reliance upon any oral or written representation, promise, or warranty, except as specifically provided for herein. This Agreement may be modified only by an instrument in writing signed by both Parties.

e) *Successors and Assigns; No Third-Party Rights*. This Agreement shall apply to, be binding in all respects upon, and inure to the benefit of the heirs, executors, personal representatives, successors, and assigns of the Parties. Nothing expressed or referred to in this Agreement shall be construed to give any person other than the Parties any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision hereof.

f) *Assignment*. Neither Party may assign this Agreement without the written consent of the other Party. Any attempted assignment or assumption without such written consent shall be null and void and without legal effect.

g) *Construction*. The Parties agree that this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any Party because of the authorship of any provision of this Agreement. Captions and section headings contained in this Agreement are for convenience only, do not form a part of this Agreement, and do not define, restrict, or expand the text to which they refer.

h) *Counterparts*. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original copy and all of which, when taken together, shall be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or electronic mail shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or electronic mail shall be deemed to be their original signatures for all purposes.

i) *Severability*. If any term, covenant, condition, or provision of this Agreement is determined to be illegal, invalid, or unenforceable, for any reason whatsoever, such illegality, invalidity or unenforceability shall not affect the legality, validity, or enforceability of the remaining parts of this Agreement.

j) *Further Assurances*. The Parties agree (i) to execute and deliver to each other such additional documents and information as may be necessary for the proper performance or to accomplish the stated goals of this Agreement; and (ii) to do such other acts and things, all as the other Party may at any time reasonably request, for the purpose of carrying out the intent of this Agreement.

[*Signature Page to Follow*]

IN WITNESS WHEREOF, the undersigned Parties have executed this Agreement on the dates set forth below, to be effective as of the Effective Date.

**THE COMPANY:**

**GOODMAN NETWORKS INCORPORATED**

_____
Signature

Samantha Sondrup
Printed Name

Chief of Staff
Position

10/4/2022
Date

**CONSULTANT:**

BY: GOODMAN MBE GROUP LP

GOODMAN MBE GROUP, LLC, its sole general partner

_____
Signature: Josh Goodman

Joseph Goodman
Printed Name

Manager
Position

9/23/22
Date

CONSULTING AGREEMENT PAGE 6

# EXHIBIT A

Goodman Networks, Inc. and Subsidiaries
D&O Insurance Coverage
Prepared: September 21, 2022

**Current Coverage In Force**

| Policy # | Broker | Insurer | Coverage Name | Comments | Coverage | Effective Date | End Date | Premium |
|---|---|---|---|---|---|---|---|---|
| 82624874 | ARC | ARC Excess & Surplus LLC | D&O Package | Covers Wrongful acts committed during the period from 10/30/2021 through 10/31/22 | $5M | 10/30/2021 | 10/30/2022 | $ 50,071 |
| G27087103004 | | ARC Excess & Surplus LLC | Tail Coverage D&O | 6 Year Tail: Covers wrongful acts committed prior to the May 2017 Chapter 11 Bankruptcy | $25M | 5/31/2017 | 5/31/2023 | $303,589 |
| 8259-6686 | ARC | FEDERAL INSURANCE CO. | Run-off D&O Package | History: The original expiration date was 6/30/21, and the Company extended 3 times - 8/31/21, 9/30/21, and 10/30/21. Current: One year tail purchased from 10/30/21-22 covering wrongful acts committed during the period from 5/31/2017 through 10/31/21 | $25M | 10/30/2021 | 10/30/2022 | $115,034 |
| 100039151 | ARC | QBE | Run-off Excess D&O - 1st Layer | | | 10/30/2021 | 10/30/2022 | 51,750 |
| 652241819 | ARC | C.N.A. Continental Casualty Company | Run-off Excess D&O - 2nd Layer | | | 10/30/2021 | 10/30/2022 | 35,000 |
| LHY H300594 00 | ARC | The Hanover Insurance | Run-off Excess D&O - 3rd Layer | | | 10/30/2021 | 10/30/2022 | 31,550 |
| G46647233 004 | ARC | Chubb (Westchester) | Run-off Excess Side A D&O | | | 10/30/2021 | 10/30/2022 | 24,962 |
| | | | | | | | | $258,296 |