IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-31641-MVL-7 |
| | . | |
| | . | |
| GOODMAN NETWORKS, INC., | . | U.S. Bankruptcy Court |
| | . | 1100 Commerce Street |
| | . | Dallas, Texas 75242 |
| | . | |
| Debtor. | . | Tuesday, December 13, 2022 |
| . . . . . . . . . . . . . . . | . | 2:32 P.M. |

TRANSCRIPT OF HEARING ON
MOTION TO COMPEL IMMEDIATE ENTRY OF THE ORDER FOR RELIEF
(EMERGENCY MOTION FOR IMMEDIATE ENTRY OF THE ORDER FOR RELIEF)
FILED BY CREDITOR FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS,
INC. (112); AND

MOTION TO QUASH OR MODIFY DEPOSITION SUBPOENA FILED BY
INTERESTED PARTY JAMES GOODMAN (116); AND

MOTION FOR CONTEMPT AGAINST JAMES GOODMAN REGARDING FAILURE TO
APPEAR AT DEPOSITION/ORIGINAL PETITIONERS' EMERGENCY MOTION FOR
CONTEMPT AND RESPONSE TO MOTION TO QUASH SUBPOENAS FILED BY
PETITIONING CREDITORS ALIMCO RE LTD, JLP CREDIT OPPORTUNITY IDF
SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, L.P., JLP
CREDIT OPPORTUNITY MASTER FUND LTD, JLP
INSTITUTIONAL CREDIT MATER FUND LP (117)

**BEFORE THE HONORABLE MICHELLE V. LARSON**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES ON NEXT PAGE.

Audio Operator:    Dawn E. Harden

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

APPEARANCES:

For the Debtor:          Akerman LLP
                         BY: DAVID WILLIAM PARHAM, ESQUIRE
                         2001 Ross Avenue, Suite 3600
                         Dallas, Texas 75201


APPEARANCES VIA WEBEX:

For the Debtor:          Akerman LLP
                         BY: ANDREA HARTLEY, ESQUIRE
                         Three Brickell City Centre
                         98 Southeast Seventh Street, Suite 1100
                         Miami, Florida 33131

For FedEx Supply         Butler Snow LLP
Chain Logistics and      BY: ADAM M. LANGLEY, ESQUIRE
Electronics, Inc.            R. CAMPBELL HILLYER, ESQUIRE
                         6075 Poplar Avenue, Suite 500
                         Memphis, Tennessee  38119

For the Petitioning      Hunton Andrews Kurth LLP
Creditors:               BY: PHILIP MICHAEL GUFFY, ESQUIRE
                         600 Travis Street, Suite 4200
                         Houston, Texas 77002

                         Hunton Andrews Kurth LLP
                         BY: PAUL N. SILVERSTEIN, ESQUIRE
                         200 Park Avenue
                         New York, New York 10166

For ARRIS                DLA Piper LLP
Solutions, Inc.:         BY: LAURA SIXKILLER, ESQUIRE
                         2525 East Camelback Road, Suite 1000
                         Phoenix, Arizona 85016

                         DLA PIPER, LLP
                         BY: RYAN J. SULLIVAN, ESQUIRE
                         303 Colorado Street, Suite 3000
                         Austin, Texas 78701

For James Goodman:       Winstead PC
                         BY: MATTHIAS KLEINSASSER, ESQUIRE
                         300 Throckmorton Street, Suite 1700
                         Fort Worth, Texas 76102

3

# <u>I N D E X</u>

<u>Page</u>

Motion to compel Immediate Entry of the Order for
Relief. (Emergency Motion for Immediate Entry of the
Order for Relief) Filed by Creditor Fedex Supply Chain
Logistics & Electronics Inc. (112)

**Court's Ruling**                                              **45**

4

1    (Proceedings commenced at 2:32 p.m.)

2         THE CLERK:  All rise.

3         THE COURT:  Good afternoon.  Please be seated.

4         All righty.  We are here on our 2:30 docket which I

5    have misplaced once again, but we have one matter on the docket

6    and that is Case Number 22-31641.

7         So I'm going to take appearances for the record --

8    Goodman Networks, by the way.  And I will take appearances for

9    the record and start with those in the courtroom.

10        MR. PARHAM:  Good afternoon, Your Honor.  David

11   Parham on behalf of the now debtor.  And also Russ Nelms who is

12   our sole director.

13        THE COURT:  Looks familiar.  You might just have one

14   of those faces, Mr. Nelms.

15        (Laughter)

16        THE COURT:  All righty.  I'll take appearances on

17   WebEx.

18        MS. HARTLEY:  Good afternoon, Your Honor.  Andrea

19   Hartley from Akerman also on behalf of Goodman Networks, Inc.

20        THE COURT:  Good afternoon.

21        MR. GUFFY:  Good afternoon, Your Honor.  Philip

22   Guffy, Hunton Andrews Kurth, on behalf of the original

23   petitioning creditors.  My colleague Paul Silverstein is trying

24   to join us as well.  I think he's having a little bit of

25   trouble working the dial-in, though.

1          THE COURT:  Oh, okay.  Thank you.  Good afternoon to

2     you both.

3          MR. LANGLEY:  Good afternoon, Your Honor.  Adam

4     Langley and Cam Hillyer on behalf of FedEx Supply Chain

5     Logistics and Electronics, Inc.  And we're also -- that's who

6     we're principally here on.  We are also representing FedEx

7     Freight, Frase Protection, HCL America, and Glympse, Inc.

8     related to their joinders in this case, as well.

9          THE COURT:  Okay.  Thank you very much.

10          MS. SIXKILLER:  Your Honor, Laura Sixkiller -- oh,

11     sorry, Your Honor.

12          Laura Sixkiller and Ryan Sullivan of DLA Piper for

13     ARRIS.

14          THE COURT:  Thank you.

15          Is there anyone else who wishes to make an appearance

16     in the Goodman Networks matter?

17          MR. SILVERSTEIN:  I'm from Hunton Andrews Kurth for

18     the original petitioning creditors.  I'm having a hard time

19     getting in on video, so if you'd bear with me, I'll get there

20     eventually.

21          THE COURT:  I appreciate that, Mr. Silverstein.

22     Thank you very much.  Take your time.

23          MR. SILVERSTEIN:  Thank you.

24          MR. KLEINSASSER:  Your Honor, Matthias Kleinsasser

25     with Winstead for non-party James Goodman.  I don't plan to

1 speak, but since I'm on video, I figured I should probably

2 announce myself.

3         THE COURT:  All right.  Thank you, Mr. Kleinsasser.

4     (Pause)

5         THE COURT:  All right, ladies and gentlemen, we

6 obviously were originally here on status conferences I believe

7 on a motion for immediate entry of the order for relief,

8 motions to quash, motions to compel, you name it, you filed it

9 in terms of discovery motions.

10         I think that the motions to quash, the motion to

11 compel have been withdrawn.  The motion for immediate entry of

12 the order for relief is now moot.  And I'll want to talk a

13 little bit later about the pending motions for summary judgment

14 and see if that's also moot given the order for relief.

15         But I did want to maintain the status conference.  It

16 looks like there's obviously still a great deal going on with

17 respect to the case and I have had an opportunity to at least

18 skim the debtor's motion to convert from Chapter 7 to a Chapter

19 11.

20         So, Mr. Parham, I'll start with you today.

21         MR. PARHAM:  Okay.  I think the -- in terms of this

22 is the status conference, in terms of the Court's read of where

23 we are on the docket, I think that is correct that I think that

24 the motion for immediate entry is moot in light of the Court's

25 order yesterday.  And as I understand it, the motions to quash

7

1  and compel, they weren't our motions, they were other parties.

2  I believe those have all been withdrawn.

3        The motion for summary judgment dealt with an issue

4  related to the qualifications of one of the bondholders as

5  petitioning creditors.  So that I think is moot.  I think all

6  the issues regarding who is a proper petitioning creditor, I

7  think those issues are all moot.

8        THE COURT:  Okay.

9        MR. PARHAM:  And so what I think we're left with is

10  the motion to convert which we view is a motion that we're

11  entitled to as a matter of right to an order converting the

12  case to Chapter 11.  That would -- and I think there are a

13  couple of ways the Court could proceed.

14        I mean one way is that if you find, if you agree with

15  us that it's a matter of right and you enter the -- convert it

16  to Chapter 11, then I think it would behoove those parties if

17  they wanted to come in and file a motion to convert back, that

18  they would do that and we would set it up on a normal motion

19  and time and, you know, process.

20        I think you can do that and we would ask you to do

21  that because I think it makes more sense than appointing a

22  trustee while we're battling this all out.  If you were going

23  to do that, you could go a couple of ways.  I think you could

24  withdraw the order from yesterday and use the conversion motion

25  as -- because it did seek entry of an order for relief in

1  Chapter 11.

2          So you could do that, or you could leave it in place

3  and then we would have I guess our motion to convert would be

4  hanging out there.  But to us, it makes more sense to have --

5  rather than have our motion to convert, have a hearing on that

6  and then if we win, they have to file their motions, it makes

7  more sense to do all that in one fell swoop so that we would

8  essentially be in Chapter 11 for the next, you know, however

9  many days before we had a hearing, and then have a hearing if

10  in fact the parties, that's what the parties want.

11          You know, we're hopeful we can talk with them and

12  maybe not have that.  But I think you can hear from them that

13  at least at this point, they're probably determined to contest

14  that.  But that's how we think the case should proceed at this

15  point.  And like I say, to us it makes more sense to go ahead

16  and essentially put us into Chapter 11 and then deal with, you

17  know, any motion to convert or to appoint a Chapter 11 trustee.

18          There are some reasons this case should be in -- or a

19  lot of reasons this case should be in Chapter 11, one of which

20  is we have subsidiaries who are also on the bonds.  And the

21  ability to do a jointly-administered case, they have separate

22  assets to us makes, you know, makes a lot of sense.  And so --

23  and that's what we had in fact were in the process of preparing

24  to do when the order was entered yesterday.  Obviously, we've

25  stopped.

1          I guess it's not clear at this point, in fact,

2  whether or not we have any ability to do anything with the

3  subsidiaries given that Goodman Networks, the debtor, is the

4  sole member of those subsidiaries and now there's a trustee

5  that is -- or there will be a trustee if we go down this route

6  -- that is in -- that has control of Goodman Networks.

7          So it really hamstrings -- I think it makes the case

8  more difficult if we go that route as opposed to putting us

9  into Chapter 11 and then having a hearing whenever if the

10  parties file motions, and then also I think deals with --

11  solves the issues around due process because then you're --

12  then we're actually ruling on pleadings and people have time to

13  respond and do as they think.

14          So that's our view of how this case should proceed.

15  I think that -- like I say, we think that makes by far the most

16  sense in terms of getting this -- you know, because at the end

17  of the day, I mean the idea here is to obviously liquidate

18  these debtors -- we would file a liquidating plan as debtors in

19  possession -- and to maximize the recoveries for the assets.

20          And consistent with that, one of the things that we

21  had done to address issues that were raised over management and

22  as the Court's probably aware, there were some pre-petition

23  transactions that were best and prudent.  But those were done

24  by a CEO who's no longer with the company.  And so the people

25  --

1          THE COURT:  Is that James or John Goodman?

2          MR. PARHAM:  James.

3          THE COURT:  James Goodman.

4          MR. PARHAM:  James.

5          THE COURT:  Okay, thank you.

6          MR. PARHAM:  No, no, no, no, no.  James Frenzi.

7          THE COURT:  Oh, James Frenzi.

8          MR. PARHAM:  James Frenzi.

9          THE COURT:  I apologize.  Yes, yes.

10         MR. PARHAM:  Yeah, it was not a Goodman.

11         THE COURT:  Yeah, it was not a Goodman.

12         MR. PARHAM:  And so what's -- yeah.  And so what's --

13         THE COURT:  So many Goodmans, but that's not --

14         UNIDENTIFIED SPEAKER:  And there's no pun intended

15   there.

16         THE COURT:  --  not the one at issue.  Thank you.

17         MR. PARHAM:  Yeah.  And so what's happened really is

18   that the equityholders have kind of reasserted themselves into

19   the process.  And part of that was hiring Mr. Nelms to be the

20   director and someone that we think the parties should have

21   confidence in.  And so that was the genesis for that and to

22   hopefully get people confidence that what happened in the past

23   was a different team, different -- you know, a different person

24   and they're  gone.  And those transactions would now be

25   scrutinized by the new team, so to speak.

1          THE COURT:  Okay.  Well, thank you very much, Mr.

2    Parham.  And I will go to the other parties.  I can tell you

3    from the Court's perspective, obviously there was a tremendous

4    amount of correspondence with our courtroom deputy as things

5    percolated with the discovery issues and the eventual addition

6    of petitioning creditors that there was no question as to their

7    eligibility as there were to the first five creditors.

8          From the Court's perspective, I understood that the

9    debtor wasn't questioning their eligibility.  I saw the

10   debtor's motion to convert.  I didn't see any reference to

11   other entities and affiliates coming in under Chapter 11.  And

12   I saw a motion to convert and that's why the order for relief

13   was entered because it was my understanding, well, you seek to

14   convert from 7 so the Court put the debtor into a 7.  And,

15   obviously, that's the way it was filed, as well.

16         So a little explanation on how we got here.  But let

17   me hear from the other parties because it looks like there has

18   been obviously some factual changes and some attempts to

19   essentially meet the creditors in terms of a changing of the

20   guard at the director position.

21         So let's see what the other parties think.  I'll

22   start with Mr. Guffy or Mr. Silverstein.

23         MR. SILVERSTEIN:  Yeah, it's Mr. Silverstein.  Can

24   you hear me, Your Honor?

25         THE COURT:  I can.  And I can see you, as well.

1          MR. SILVERSTEIN:  Thank goodness.  Again, I apologize

2    for my technical lack of skill.

3          First off, this case -- the order for relief was

4    properly entered as it should have been.  I think for

5    background, the whole concept of the debtor moving to convert

6    the case to a Chapter 11 was a stall tactic, essentially,

7    because the debtor wanted desperately to avoid the depositions

8    of James Goodman, John Goodman, and Mr. Frenzi and others.

9          You know, frankly, it was really abusive from our

10   perspective and I say that most respectfully.  I'm not trying

11   to get personal here.  We don't see any basis for a Chapter 11.

12   I suppose if Mr. Parham wants to file that motion on behalf of

13   his client, that's his prerogative, I suspect, and we will

14   address it and it will be the appropriate discovery with that.

15         You know, frankly from our perspective, we don't

16   think there's -- I mean we understand that Mr. Frenzi who

17   essentially made himself or his company a $42-million loan or

18   $44-million loan when he was CEO of the debtor and CEO of the

19   borrower that he's no longer in control.  I also understand

20   from the documents that were produced in discovery that some

21   Goodman family entity transferred to themselves approximately a

22   half a million dollars post-petition for whatever reason that's

23   not clear to us.

24         So there's really no changing of a guard here.  And

25   from my perspective, this case to date from the debtor's side

has been, and you'll excuse the expression, really lies in
thievery.  And I'm breaking a rule here that I think your late
mentor taught me that you have to be very nice to people, but
it's really hard to be very nice to people when things are so
outrageous.  And I think things have been so outrageous, and I
think the petitioning creditors, the original petitioning
creditors as well as the joined-in creditors would attest to
that.

You know, again, it's been a -- to give a little more
color, initially, Mr. Parham's defense or the debtor's defense
here was that the original petitioning creditors were not
eligible petitioning creditors because they were oversecured
because you look to the collateral of non-debtors, allegedly,
is what he argued.  We filed that motion of a partial summary
judgment which is now moot.

Then when that came out, he changed the story to
create this so-called -- to create a piece of collateral that
was transferred away from the debtor in what looks like an
outrageous transfer that needs to be recovered.  So without
belaboring the point, we see absolutely no merit in Mr.
Parham's position that an interim trustee should not be
appointed.  We think an interim trustee needs to be appointed
immediately so that adult supervision is imposed here.

And Mr. Guffy may have something addition to add.
I'm still a little flustered by my inability to get on this

1  call.  So, Mr. Guffy, please feel free to supplement me.

2          MR. GUFFY:  Yes, Your Honor.  This is Philip Guffy.

3          And what Mr. Silverstein said regarding the -- if we

4  just look at the one transfer of $44 million to Mr. Frenzi's

5  company, that was counterside by James Goodman who is a member

6  of the board at the time that that transaction was made, as

7  well as a number of other questionable transactions the debtors

8  have disclosed to us.

9          The equityholders that Mr. Parham refers to, you

10  know, our understanding is that those are all Goodman family

11  members.  And, quite frankly, any individual who is selected by

12  or connected to the Goodman family is absolutely inappropriate

13  to oversee any kind of bankruptcy proceeding for this debtor.

14          This case desperately needs an independent fiduciary

15  who will properly investigate the debtor's finances and the

16  transactions that it engaged in order to give a proper recovery

17  to the creditors who are out millions and millions of dollars

18  as a result of this debtor's actions.

19          And in particular with the motion to convert, I

20  noticed that it had some boilerplate language on the beginning

21  that indicated a 14-day response deadline that would fall on

22  December 26th, the Monday after Christmas.  We don't think that

23  that kind of schedule is appropriate here, nor do we think that

24  the debtor has a right of conversion under the Bankruptcy Code.

25  It has the ability to move to convert the case, but it is not

1  an absolute right.  And that's something that we can brief if

2  Your Honor would like to see the case law on it.

3         We plan to contest the motion to convert.  In

4  particular, we think that it should be set for a proper

5  schedule so that we can conduct discovery.  First of all, we

6  have no idea who this director is that's supposedly appointed.

7  We'll probably want to question him and how he became to be the

8  director of the debtors, as well as investigating more of these

9  transactions that we were prevented from investigating because

10  the debtor decided at the last minute to try this gambit of

11  converting the case to a Chapter 11 instead of allowing the

12  scheduled depositions to go forward.

13         So we want a discovery schedule for the motion to

14  convert.  We want an appropriate time to respond, and we would

15  ask that Your Honor not withdraw the order for relief that was

16  entered and have an interim trustee get appointed here

17  immediately.

18         With respect to the other entities, the interim

19  trustee will control those entities.  If he or she feels that

20  it would be beneficial to have those entities in bankruptcy, as

21  well, then that person will have the ability to file petitions

22  for those entities, as well, and can administer all of them.

23         MR. SILVERSTEIN:  Your Honor, it's Paul Silverstein.

24  May I add one more thing?

25         THE COURT:  Please.

 1          MR. SILVERSTEIN:  At the risk of being over the top.

 2          When I read the motion to convert or as soon as I

 3  completed the motion to convert, I pulled out my book and I

 4  pulled out Rule 11(b) of the Federal Rules of Civil Procedure.

 5  I actually read it three or four times.  I think it applies

 6  here.  I think Mr. Parham needs to hear me on the record say

 7  that I think it applies here.  I think Akerman management needs

 8  to hear that we think it applies here because I think it

 9  applies here.

10          THE COURT:  Okay.  Thank you again, Mr. Silverstein.

11          What I would say is, first, so that no one speaks out

12  of turn, in terms of who the sole director is, I just -- again,

13  we're having a hybrid hearing.  Some folks are in the

14  courtroom; some folks are on the WebEx.  The sole director is

15  former United States Bankruptcy Judge Russell Nelms, the former

16  bankruptcy judge that sat for his term in Fort Worth, Texas.

17          So I just want to say that because maybe it wasn't

18  clear during the appearances.  And that's not to give any

19  deference necessarily to the Chapter 7 debtor's position and to

20  the new sole director.  I just want everyone to know that

21  obviously the Court is very familiar and I think all the rest

22  of the folks are probably now pretty familiar with Former Judge

23  Nelms' service to the Court.

24          So I just want to say that.

25          MR. SILVERSTEIN:  Your Honor, can I interrupt?  I

1 should have realized that when I heard the name.  Obviously, we

2 have a high regard for Judge Nelms.  We have had debtor cases

3 before Judge Nelms.  There's something about a chicken suit

4 that I remember about Judge Nelms, and that should not even be

5 relevant because that was all in humor.

6          Judge Nelms would be a fantastic Chapter 7 Trustee

7 here.  But, you know, I'm sure that the debtor had its way it

8 would have found Abraham Lincoln to be the sole director or

9 someone as equally pristine.  But, again, it's a rouse.

10          THE COURT:  No, I recognize --

11          MR. SILVERSTEIN:  It's a rouse.

12          THE COURT:  I certainly recognize where the parties

13 are, Mr. Silverstein.  And I'm not trying to change the

14 narrative.  I'm just trying to just put that out there for

15 everyone's benefit.

16          I'll hear from the other folks before I give any

17 further comments and go back to Mr. Parham for any form of

18 rebuttal.  And, obviously, this is more in the line of a status

19 conference, and so I'll give everyone their due time.

20          One thing that my able clerk, Mr. Embry, reminded me

21 and I think we also had on today some motions for contempt and

22 those were also withdrawn, I believe.  So I'll just say that

23 for the record so anyone can correct me if I'm wrong there

24 because I know it's a motion to compel but not necessarily a

25 motion for contempt.

1            All righty.  I'll go now to FedEx.  Mr. Hillyer, Mr.

2  Langley?

3            MR. LANGLEY:  Yes, Your Honor.  Adam Langley on

4  behalf of FedEx and the other joining creditors that we

5  identified earlier.

6            I think it's important to start out kind of where we

7  were when this happened.  At the time the order for relief was

8  entered, we were in a 30(b)(6) deposition of Goodman Networks

9  and GNET and CFGI, the financial advisor for Goodman Networks

10 and GNET.  And that designee had been appointed to speak on who

11 was the officers and directors of these entities.  And the only

12 person that was identified as an officer or director of any of

13 these entities in that 30(b)(6) when the order of relief was

14 entered and the deposition was then cancelled was an individual

15 named John Goodman.

16           And so we aren't sure how after an order for relief

17 when a Chapter 7 Trustee is to come into possession of this

18 estate and is to be the sole representative under 323 of the

19 Bankruptcy Code and to exercise control over the assets under

20 363 of the Bankruptcy Code and to exercise the duties of a

21 trustee under 704(a) and to be the representative of the causes

22 of action in the other proceedings and papers of the trustee

23 under Federal Rule 6009 that Akerman comes into this Court

24 representing the debtor with an (indiscernible) director that

25 wasn't disclosed in the 30(b)(6) deposition yesterday when the

1  order of relief was entered.

2          We're not sure how that was done.  We're not sure how

3  they have authority to be here.  We're not sure how anybody but

4  a Chapter 7 Trustee can file a motion to convert.  And I don't

5  say this lightly because I actually handled this exact issue

6  within the last month in a case here in the Western District of

7  Tennessee where I did represent the Chapter 7 Trustee as

8  counsel and the U.S. Trustee appeared in that and objected to

9  the debtor's former counsel appearing in that case on behalf of

10 the debtor.  And, ultimately, it was the debtor's purported

11 attorney, which here Akerman says they are the proposed

12 attorneys, they withdrew their motion to convert because they

13 realized they had no authority to act on behalf of the debtor

14 after the order of relief was entered.

15         So I think this Court needs to take very serious the

16 concerns and the representations that are being made by Akerman

17 here.  And I recognize that Mr. Nelms is a former bankruptcy

18 judge so he should be familiar with the idea of authority and

19 who has authority here.  And if there was no board action, if

20 there was no action by the trustee, I have grave concerns of

21 how this case is proceeding with a motion to convert.  And I do

22 not think Akerman has standing to present that on behalf of

23 John Goodman at this point in time.

24         I don't know that Mr. Nelms was involved in that

25 decision on the motion to convert because, again, this order

for relief was entered in the middle of a 30(b)(6) deposition

where a specific topic was who are the officers and directors

and Mr. Nelms was not disclosed as being an officer or

director.

So I don't understand how after an order for relief

in a Chapter 7 case that can be done.  So that is the first

thing we would address.

The second issue we would address is we don't think

that there's an absolute right to convert, and I don't want to

get too far in the weeds and argue that.  But Marrama is very

clear that when there are bad faith actions, there isn't a

right to convert.  And that's been applied in Chapter 11 cases.

Marrama was a Chapter 13 case.  That's been applied in Chapter

11 cases.

There's an abundant authority out there that an

involuntary 7 where the debtor can't reorganize, which the

debtor here has admitted he can't reorganize, there's no

assets, there's no ability to prosecute that, there's no

ability to reorganize.

And here where there's at least -- and I'm trying to

think off the top of my head, I believe we now have 12

different creditors that are petitioners at this point in time

that represent claims of close to $150 million -- that's a

pretty astounding amount of creditors in numerosity and in

dollar amount -- that want a Chapter 7 Trustee here to

1  prosecute actions.

2       I'd like to run through what the deposition yesterday

3  presented.  And, obviously, this is presented as a proffer.

4  It's not actually putting the evidence before the Court.  But

5  this is what would come before the Court if we were to try the

6  motion to convert.

7       We would show that there were $84 million of insider

8  transfers out of these companies in 2022, and you can refer to

9  Document 80-1 which was an attachment, the financial

10 consolidated statements of the debtor that were attached to the

11 motion for summary judgment filed by the original petitioning

12 creditors.  Those show that over $84 million which we think was

13 FedEx's money because we're owed approximately $82 million.

14 And there may be other creditors' monies that was involved in

15 that, as well.

16       But that was transferred, the entities controlled by

17 James Frenzi -- and the 30(b)(6) witness yesterday represented

18 that there wasn't books and records to substantiate a

19 significant portion of those transfers and that he called them

20 -- let me see if I can pull out his reference, but it was

21 something -- he called them a derogatory term, I'll put it that

22 way, as to what was done related to the assets here.

23       And I understand that Mr. Parham is trying to isolate

24 Mr. Frenzi as the bad actor here, but we think it goes much

25 further because prior to 2022, we have reason to believe based

1  on the deposition and the documents that were produced in

2  discovery that John Goodman received a transfer of a

3  significant portion of assets to an entity that was formed in

4  2020 called Global Telecom Holdings and Global Telecom Services

5  and that an $8-million promissory note or some type of

6  preferred shares were given to the debtor.

7       The debtor represented through his 30(b)(6) designee

8  yesterday that that $8 million is not collectible or at least a

9  significant portion of it's not collectible which raises the

10 question of was that transfer to John Goodman of those

11 substantial business assets even valid.

12      We have reason to believe that additional assets were

13 transferred from the debtor to a company called Unified Field

14 Services that was formed in the last three years and is

15 principally owned by James Goodman.  There was a $6.6-million

16 obligation to the debtor that was represented in the 30(b)(6)

17 testimony yesterday.  That has been reserved in full meaning

18 that James Goodman's company, Unified Field Services, is not

19 expected to pay any money for that transfer.

20      Again, that is a fraudulent transfer to an insider

21 that has been represented as uncollectible as recently as

22 yesterday in the 30(b)(6) deposition.  And so we have really

23 grave concerns with these transactions. We know that there is

24 no cash left in the debtor at this point in time.  We know

25 there's no significant business assets left in the debtor

1   because of these fraudulent transfers.

2          And we think that if we're forced to try this motion

3   to convert, it's going to be overwhelmingly and astounding to

4   the point of criminal sanctions may have to be brought against

5   certain parties and portions that have participated in these

6   activities.

7          So, Your Honor, we think none of that should go

8   forward.  We've spent a ton of money on discovery already.  We

9   don't think Mr. Parham and Akerman have any standing to bring

10  the motion to convert.  We ask you to exercise your authority,

11  both inherent and under 105(a), to end this now and not allow

12  the debtor to be represented by a law firm that has no

13  authority from a trustee.

14          If the motion to convert is immediately denied, the

15  Chapter 7 Trustee can be appointed and all this can be

16  investigated and the duties under 704, the actions under 363,

17  and all the other activities that we know good and diligent

18  Chapter 7 trustees pursue will be done and the creditors can

19  participate as they need be.  But we could stop incurring these

20  broad and expansive discovery expenses that serve no purpose

21  other than to further prove the fraud and the substantial

22  mismanagement of the debtor by the debtor's principals and

23  related parties and the fraudulent transfers that are

24  astounding.  Quite frankly, astounding.

25          And with that, I think you've heard a lot for a

24

1  status conference and we'll save it for another time.

2           THE COURT:  Oh, status conferences are the best.

3           So I do have a question for you.  There's been a lot

4  said with respect to Akerman not having standing to file a

5  motion to convert.  And, obviously, the Court is not going to,

6  you know, rule upon any standing issues today.  But is it my

7  understanding that the creditors are arguing that the debtor

8  doesn't have the right to counsel?

9           I mean there may be a right to act on behalf of a

10 debtor in possession.  There may be the right -- there may be a

11 question of whether or not you can get paid for it, but are you

12 saying that the entity being in Chapter 7 doesn't have the

13 right to counsel and to seek to convert at all?

14          MR. LANGLEY:  Your Honor, it's very clear through the

15 case law, and let me cite just one for you.  It's a Tenth

16 Circuit case called C.W. Mining Co v. Aquila.  It's 636 F.3d

17 1257.  And this wasn't on a motion to convert, but it was on

18 whether an order for relief can be appealed.

19          And the Tenth Circuit very clearly held there's a

20 difference between individual debtors and corporate debtors.

21 And when we are dealing with an individual debtor, that

22 individual continues to exist.  But with a corporate debtor,

23 the corporation can only act through its authorized agents.

24 And so there has to be an authorized agent that authorizes the

25 corporation to act.

25

1       And before the order of relief was entered, Mr.

2  Parham was acting under properly delegated, we assume properly

3  delegated authority to act on behalf of the debtor.  After the

4  entry of the order of relief, the board of directors of the

5  corporation is no longer the authorized agent for the estate.

6  That is the Chapter 7 Trustee.

7       So we think the debtor can have counsel, but that

8  counsel's only through the Chapter 7 Trustee and the

9  appointment -- or, excuse me, and the professional process

10 under 327 and 300 that would be the trustee employing counsel

11 to do that.

12      That's how I was in this other case.  I was employed

13 by the trustee to fight the motion to convert.  And so it was

14 kind of this funny position where you had the trustee acting on

15 behalf of the debtor opposing the counsel, pre-petition counsel

16 who was purportedly acting on behalf of the debtor.  And it's

17 like who's acting, Akerman or the Chapter 7 Trustee to

18 represent the debtor at this point?

19      And it's clearly under case law the Chapter 7 Trustee

20 is the party that's correctly authorized to operate this

21 company and to make business decisions and to make filing

22 decisions related to the debtor.

23      THE COURT:  Okay.  Again, the Court won't rule on any

24 standing issues today, but what the Court will note that in the

25 C.W. Mining case, a trustee had been appointed.  And a trustee

1  has not yet been appointed to my knowledge given that the order

2  for relief is so new.  But looking at Page 1263,

3          "After C.W. entered into the Chapter 7 bankruptcy and

4          a trustee was appointed, the former management's only

5          role was to turn over the corporation's property to

6          the trustee and to provide certain information to the

7          trustee and to the creditors.  C.W.'s directors were

8          otherwise completely ousted."

9          It says,

10         "The Bankruptcy Code makes no provision for former

11         management to appear in a Chapter 7 proceeding to

12         assert a separate interest on behalf of the debtor.

13         Authority to make legal decisions like all other

14         business decisions passes to the trustee alone."

15         So I do believe that we're in a narrowly different

16 circumstance there.  I appreciate your argument, and I'm not

17 ruling appoint it, but just looking at the one case that you've

18 given me and without -- obviously, I know the parties are

19 interested in briefing this.

20         But I'll just say this before I go on to ARRIS and

21 the others.  Although the Court did intend by entry of the

22 order for relief noting that the debtor, the alleged debtor, no

23 longer opposed the relief, the Court did obviously

24 intentionally enter the order for relief.  It wasn't

25 accidental.

1          But given that the motion to convert was on file, I

2     don't know that the Court necessarily intended to change the

3     debtor's rights in that regard because, again, the motion was

4     on file prior to the entry of the order for relief.  So I do

5     believe you've got a couple of interesting nuances here.

6          MR. LANGLEY:  Your Honor, if I may?

7          THE COURT:  Please.

8          MR. LANGLEY:  If I may, just a correction.  So to

9     procedurally address the filing, FedEx's motion for immediate

10    order of relief came first.  Then the Court did enter the order

11    for relief.  And only after the entry of the order for relief

12    did the debtor file this motion to convert.

13         Now the debtor did make representations in an email

14    to the Court, but that pleading came only after FedEx's motion

15    and the Court's own order for relief.

16         THE COURT:  Let me take a look.

17         MR. SILVERSTEIN:  Your Honor, can you hear me?

18         THE COURT:  I can, Mr. Silverstein.

19         MR. SILVERSTEIN:  If I may, I don't mean to speak too

20    much here.  I'm not sure that I would necessarily agree with

21    all the comments on that subject.  I don't think it's before

22    the Court today.

23         THE COURT:  That's fine.

24         MR. SILVERSTEIN:  I think as Your Honor pointed out,

25    this is a status conference.  So I don't think we have to

1  address that today and I don't think we have to -- yeah, I

2  don't think anyone's looking for advisory opinions either way

3  on that today.

4         THE COURT:  Okay.  I appreciate that, Mr.

5  Silverstein.  And, no, it's not on for today.  And let's look.

6  And just for the sake of the record, Mr. Langley is correct the

7  order for relief did proceed the motion to convert by a few

8  hours.

9         And I think that I may have been -- may have missed

10 -- we had received a great deal of communication about the

11 potential for a motion to convert prior to the motion being

12 filed in connection with the scheduling of hearings on the

13 motion for immediate entry, motions to quash, and the motions

14 for contempt.

15        All righty.  Well, thank you all.  So I'll go to

16 ARRIS next.

17        MS. SIXKILLER:  Thank you, Your Honor.

18        There are things that have been happening without

19 disclosure until today that we're just learning about, so we

20 need more time to consult with our client on the exact position

21 we're going to take on everything.  But for purposes of this

22 status conference, we do join in the argument that there is not

23 an absolute right to conversion and that the parties, in

24 particular, the creditors need an opportunity to vet that

25 motion and to consult with their clients and take the position.

1          And so we also don't oppose as part of that process,

2   you know, the discovery being requested by the petitioning --

3   original petitioning creditors and certainly join in the

4   request to extend the deadline to respond to the motion to

5   convert.  And we also would not oppose a temporary trustee in

6   place at the company.

7          THE COURT:  All righty.  Thank you very much, Ms.

8   Sixkiller.

9          Is there anyone else on behalf of the creditors that

10  wishes to be heard before I go back to Mr. Parham?

11         MR. KLEINSASSER:  Your Honor, Mathias Kleinsasser for

12  James Goodman.  I'm not -- my client's -- obviously I'm not

13  aligned with the petitioning creditors.  I'm a non-party here.

14         But, you know, I just want to say for the record that

15  the allegations about my client that Mr. Langley just, you

16  know, walked through a significant amount of deposition

17  testimony that allegedly happened yesterday, I wouldn't know

18  what was testified to yesterday because I was improperly

19  excluded from the deposition.  I was actually forced to leave

20  which is completely contrary to Fifth Circuit precedent.

21         I cited authority for that in my response to their

22  motion to compel and for sanctions.  The only basis fr

23  excluding a witness in the Fifth Circuit is actually to get a

24  protective order restated and due.  So I wasn't allowed to

25  attend that deposition.

1          But at any rate, you know, I just think it's improper

2   for someone to take a deposition, it's through that person's

3   lawyer who they are talking about or at least one of the people

4   from that deposition, and then basically walk into court and

5   testify.

6          And, you know, this is -- I think that's an

7   inappropriate use of a status conference.  I understand they

8   want to state their position as to how they feel about issues

9   like motions to convert and that kind of thing which I think

10  should be appropriately briefed.  But the bottom line is I just

11  want to state for the record that my client denies any

12  wrongdoing and I just would urge the Court to keep an open mind

13  as to the allegations and the alleged testimony that Mr.

14  Langley just put on the record because I just don't think

15  that's an appropriate use of the status conference.

16          THE COURT:  Okay.  I think I must not be

17  understanding.  Was your client the deponent or was it the

18  other Mr. Goodman?

19          MR. KLEINSASSER:  No, no, no.  My client was not the

20  deponent.

21          THE COURT:  Okay.

22          MR. KLEINSASSER:  You know, my -- yeah, it's just

23  that apparently there was allegedly testimony.  I wouldn't

24  know.  I wasn't allowed to be there.  But there was allegedly

25  testimony involving some stuff, you know, that involved my

1  client, allegedly.  And I just think to go in here and to sort

2  of recount the alleged record at a status conference when there

3  are rules of evidence that govern how you can put evidence on

4  the record.  There are rules for a reason.  I just think that's

5  an improper use of the status conference.

6        So I'm really just pointing it out for the record

7  that whatever was said regarding what was testified to

8  yesterday, I just would urge since there were allegations that

9  are negative about my client that the Court keep an open mind

10  because not only, you know, is that evidence not properly

11  before the Court at this point, you know, I just don't think

12  it's an appropriate use of the status conference by Mr.

13  Langley.

14        THE COURT:  Okay.  Thank you, Mr. Kleinsasser.

15        Please rest assured that the Court well knows the

16  difference between evidence and argument.  And there's a reason

17  there are no witnesses and no documents.  There's been no

18  evidence today, all argument.  But I appreciate you bringing it

19  to my attention.

20        MR. KLEINSASSER:  Thank you, Your Honor.

21        THE COURT:  You're welcome.

22        All right.  Mr. Parham, there was a lot there to

23  unpack.

24        MR. PARHAM:  There was a lot there.  And so I'm going

25  to try and walk through some of this.

1          First of all, under Rule 706, and I assume we'll

2    brief it if we need to, but the Rule provides that a debtor may

3    file a motion to convert and, obviously -- from 7 to 11.  And,

4    obviously, for that to happen, there would be a 7 and a

5    trustee, but it says debtor.  And 706 I think it's (b) also

6    goes in and says any party in interest can file a motion to

7    convert to 11.  So we think we were well within our rights to

8    file it.

9          They are correct that it was filed afterwards.  We

10   were in the process of preparing it when the order came across

11   the ballot, so to speak.  And we probably would have filed it

12   earlier but kind of that took us back a bit and we had to kind

13   of recalculate based on that order that said we thought we had

14   more time to file it, the motion to convert to Chapter 11

15   because the hearing wasn't until the 19th.  And our intention

16   was obviously to get it on file yesterday in advance of this

17   hearing.  So while it was filed afterwards, I mean obviously

18   that motion was about ready to go when the order came out.

19         And, obviously, I disagree with a lot of what Mr.

20   Langley said.  For one thing, Mr. Nelms was hired before the

21   order for relief came in.  We're not purporting to be here

22   acting for the trustee or for the estate.  We are here for the

23   debtor.  We understand that there is a difference.  And there

24   is no trustee yet, but we're not here trying to represent the

25   estate today and, obviously, there's -- given that that order

33

1  was entered.

2        The motion to file -- to convert to Chapter 11, I do

3  disagree with Mr. Silverstein.  It's not a stall tactic.  As

4  the Court's well aware, late last week a number of joinders

5  were filed.  And until that point in time, our intent was to,

6  as we had been, to contest the qualifications of the various

7  petitioning creditors.  Given the number of joinders that

8  stated getting filed late last week, the decision was made not

9  to go forward and contest that.  But it wasn't a stall tactic.

10 It was circumstances changed, and that's why we did -- that's

11 why the motion to convert was filed when it was filed and not

12 weeks ago at the outset of the case.  But certainly, it was not

13 a stall tactic.

14       I'm not going to get into the -- I agree with Mr.

15 Kleinsasser that basically testifying about what happened in

16 the deposition yesterday is improper.  That said, it was no

17 Goodman was testifying.  It was basically the CFIGI

18 representative.  And that deposition was cut short because of

19 the order for relief.

20       It was terminated at that point in time, which you

21 would expect, without other parties being able to cross-examine

22 or to come in and clean up any misstatements that may have been

23 made.  And perhaps we'll see that or maybe we won't see the

24 transcript at some point in time in the future.  But I did want

25 to make that point with respect to the deposition.

1       Looking at the other stuff, and, again, I really
2  would hope and I know the Court will keep an open mind
3  basically but pointing to every transaction with an insider and
4  saying it's a huge fraudulent conveyance I think is -- going
5  back several years, no less.  You know, I think the evidence
6  will be what the evidence is.  On the Global Telecom, for
7  example, it was to acquire stock and we'll see what the value
8  of the stock is.  But that was -- and that transaction was,
9  again, some time in the past.

10      So I mean all those -- you know, kind of the old
11 story, there's two sides to every story.  And I think that on a
12 lot of this, there will be and some of it -- you know, some of
13 it was, like I said, at best it was imprudent, some of Mr.
14 Frenzi's transactions.  But the $44-million loan that was
15 referred to that was made by Mr. Frenzi to Mr. Frenzi's
16 company, I think Mr. Goodman would dispute that it was his
17 signature or approving that.  That's going to be I think very
18 much a -- well, he'll dispute it and I'm not sure that Mr.
19 Frenzi will dispute that he didn't sign, that Mr. Goodman did
20 not sign it.

21      But that was a transaction that was in GNET, one of
22 the subsidiaries we're talked about.  And so that's the $44-
23 million note which is an AMRR as a publicly-traded company on
24 the OTC.  It has value in excess of its debt.  I mean it's got
25 a market cap that said the note is in default and that's an

1  issue that's got to be dealt with in the coming insolvency as

2  to what to do with that note and how to collect on it.

3         But that is -- and that's part of the reason that

4  we're talking about some of the complexities and the issues

5  with the subsidiaries is that is a substantial asset that

6  because of the default and all the circumstances around it, you

7  know, there's a lot there that's going to need to be sorted

8  out.

9         And that's really -- I'm just trying to think.  I was

10 taking notes as we went down here.  That's our point.  We think

11 from a procedural standpoint, you know, I understand the

12 frustration from the creditors.  I really do.  But our goal is

13 to try and do this as efficiently as possible.  And certainly

14 by bringing in Mr. Nelms to head this ship, we hope that's --

15 you know, once they get a chance to reflect and, frankly,

16 that's very very recent.  It was before the order for relief

17 was entered, but it was shortly before the order for relief was

18 entered.

19        But that was, again, part of the process that we were

20 going through as we got ready to try and convert to Chapter 11.

21 But I hope as the creditors get a chance to reflect, that will

22 have an impact.

23        But that's our goal.  It's not to obstruct.  It's not

24 to delay.  I mean basically the Goodmans want to get this done

25 and want people paid as much as they can be paid given where we

1 are which is not where anyone wanted to be.

2        THE COURT: And you said there is an affiliate that

3 was seeking to -- was planning to go into 11, as well, but --

4        MR. PARHAM: Yeah, GNET ATC, LLC.

5        THE COURT: And you said the sole member of that

6 entity?

7        MR. PARHAM: Is Goodman Networks.

8        THE COURT: Is Goodman Networks, okay.

9        MR. PARHAM: Uh-huh.

10        THE COURT: And when would you seek to have your

11 motion to convert heard, Mr. Parham?

12        MR. PARHAM: We're happy to have it heard as soon as

13 practical, as soon as the Court can hear. It's -- I don't see

14 a reason for a lot of delay. I think to the extent that people

15 are objecting, we would like to have those objections on file

16 so that we don't get in here and get into a free-for-all. We

17 would like to know what the allegations are going to be.

18        When I said that you could convert as a matter of

19 right, I think that's kind of how bankruptcy lawyers tend to

20 view it. There is, as we point out in our pleadings, there is

21 -- the Court has the ability under certain limited

22 circumstances not to grant the motion to convert. And that's

23 briefed out in our motion. We don't think those factors are

24 present here.

25        But certainly, we can hear this soon. There's no

1  reason to drag it out, but we would like to know --

2          THE COURT:  Sure.

3          MR. PARHAM:  -- what the opposition is before we --

4          THE COURT:  All righty.  Is there anyone else who

5  wishes to be heard?

6          MR. GUFFY:  Your Honor, Philip Guffy for the original

7  petitioning creditors.

8          Just with respect to the motion to convert --

9          THE COURT:  Sure.

10         MR. GUFFY:  From the research I've done so far, the

11 standard for whether that motion to convert should be granted

12 is essentially the same standard as to whether the case should

13 be converted from an 11 to the 7.  I mean the basic legal

14 standard is if granting the motion to convert would be futile

15 because the case -- there are grounds to convert the case back

16 to a 7 anyway, then that is grounds to deny a motion to

17 convert.

18         So any kind of proceeding in connection with a motion

19 to convert will essentially be the same as a motion to convert

20 the case from an 11 to a 7 which would necessarily involve

21 factual discovery regarding whether the debtor has an ability

22 to reorganize, which of course the debtor's already admitted

23 that they don't, as well as investigation into the behavior of

24 prior management and what sort of factors would bear on the

25 conversion in that scenario.

1              So we think that with respect to the motion to

2    convert, it would essentially be the same argument as a motion

3    to convert from an 11 to a 7.  It would be the same motion,

4    essentially.

5              THE COURT:  Okay.

6              MR. LANGLEY:  Your Honor, this is Adam Langley again.

7              THE COURT:  Mr. Langley, let --

8              MR. LANGLEY:  To present a couple of problems --

9              THE COURT:  Mr. Langley, let me finish up with Mr.

10   Guffy.

11             MR. LANGLEY:  Yes, I'm sorry.

12             THE COURT:  And so if the standard is the same, Mr.

13   Guffy, I think I want to better understand your point there.

14   Are you saying to allow them to convert?

15             MR. GUFFY:  No, Your Honor, not be allowed to --

16   because Mr. Parham had mentioned earlier in his presentation

17   that it would procedurally would not make sense to convert the

18   case to allow and then creditors are going to file a motion to

19   convert it back to a 7.

20             That scenario wouldn't happen because we'd be raising

21   the same legal and factual issues opposing Mr. Parham's motion

22   to convert to an 11 that we would raise attempting to convert

23   the case from an 11 to a 7.

24             THE COURT:  Okay.

25             MR. GUFFY:  That was the point I was attempting to

39

1  make, Your Honor.

2         THE COURT:  Thank you very much, Mr. Guffy.

3         Mr. Langley?

4         MR. LANGLEY:  Yes, Your Honor.

5         So I understand where the Court's going on a hearing

6  on the motion to convert.  And we can address the standards at

7  that time.  But I will say that FedEx will oppose it.  We will

8  assert bad faith conduct related to that and mismanagement of

9  the assets.  So there will be a need to conduct the discovery

10 that Mr. Guffy's talking about.

11        And that raises a practical consideration because

12 there's abundant case law out there that after an order for

13 relief is entered in a Chapter 7, all the documents, all the

14 estates, all the privileges, all the types of things that you

15 would fight over in discovery disputes become the Chapter 7

16 Trustee's.

17        But until we have a Chapter 7 Trustee to represent

18 the estate, I don't know how we are going to have those type of

19 discovery issues in the context of this because there's just

20 such an unusual thing to allow a non-debtor to pursue the

21 debtor's conversion and essentially are they going to turn over

22 documents to us and a Chapter 7 Trustee?

23        I think we -- what I'm getting at is I think we do

24 need a Chapter 7 Trustee to be able to marshal this evidence,

25 to be able to marshal the assets, and to administer this during

1  whatever gap period is going to be between the order of relief

2  and the motion to convert.  And that will -- the Chapter 7

3  Trustee needs to have the right to appear and be heard on these

4  issues because the estate -- Mr. Parham said he is not

5  representing the estate.  Who is at this point?  That's a big

6  concern if there's not a Chapter 7 Trustee.

7         THE COURT:  All right.  Well --

8         MR. LANGLEY:  So I would ask the Court go ahead and

9  move on that.

10        THE COURT:  -- there will be a Chapter 7 Trustee.  I

11 mean one will be appointed by the United States Trustee's

12 Office this week most likely.  I mean my recognition was there

13 was not one yet.  There will likely be one this week, I would

14 imagine.  Again, it comes from obviously, as you know, from the

15 United States Trustee's Office.

16        So I don't quite understand the discovery issue.

17 Certainly, the debtor would have to turn over documents to the

18 Chapter 7 Trustee.  Are you saying that the debtor couldn't

19 turn them over to you because they don't have the authority to

20 turn them over to you anymore?

21        MR. LANGLEY:  Your Honor, I know -- I can tell you

22 from a standpoint of discovery, FedEx was prepared to bring a

23 number of discovery disputes, as you know, related to these

24 actions based on what was going on.  We had substantial

25 difficulty even finding who was acting on behalf of these

1   entities and who had the authority to do things.

2         So it poses the question are we about to be thrust

3   right back into where we came from after the order for relief.

4   I think if the Chapter 7 Trustee's going to be appointed, that

5   was not clear to me because Mr. Parham had said withdraw the

6   order for relief, file a motion to convert.

7         I'm not even sure what's being proposed there.  But

8   that was my concern is that we wouldn't have a Chapter 7

9   Trustee to essentially be able to marshal all this going

10  forward.  And I think a Chapter 7 Trustee will be greatly

11  advantageous to this estate.

12        THE COURT:  Okay.  Thank you, Mr. Langley.

13        Anyone else on WebEx wish to be heard, any of the

14  creditors?

15    (No audible response)

16        THE COURT:  Mr. Parham, anything in final word?

17        MR. PARHAM:  The only thing -- I learned the last

18  time.

19        The only thing I would say is, you know, we avoid a

20  lot of the issues Mr. Langley's talking about if you withdraw

21  the order for relief and we just go on and we have a hearing.

22  I do agree with Mr. Guffy that the test that you look at is

23  going to be the same whether it's to convert to -- whether

24  you're opposing a conversion to 11 or whether you are moving

25  back into a 7 or a Trustee.  That's going to be -- that will be

1 the issue.  It will be the same test, I think.

2          But I think that if we were to go the route we

3 suggest, you avoid a lot of issues and a lot of complications

4 by interjecting a trustee into this scenario at the current

5 time as we go through this --

6          THE COURT:  But how do I -- if I send you right back

7 into that involuntary purgatory, all righty, then how do I

8 protect the estate?

9          MR. PARHAM:  No.  I wouldn't say that.  I would not

10 suggest that you send us back into an involuntary purgatory.  I

11 would say you send us into Chapter 11 and at that point in

12 time, we have the duties of the trustee.

13          I mean, you know, and frankly we were under the

14 auspices of the Court and obviously we can't do anything

15 without -- outside the ordinary course of business.  And,

16 frankly, there's really not much of an ordinary course of

17 business, so almost anything would have to be with your

18 approval, obviously, to the extent that we wanted to retain

19 professionals and the like that is subject to you and to the

20 courts.

21          So you have all the protections you would have with a

22 regular Chapter 11 debtor, more so than I think what you

23 probably have during the gap period in an involuntary 7.  So

24 we're not suggesting that you send us back to an involuntary.

25 What we would be saying is enter an order for relief, put us

43

1  into Chapter 11 and then we'll have a trial to see if this goes

2  back to 7.  And that does avoid the very issues that Mr.

3  Guffy's talking about and the confusion that you would have

4  with a trustee turning over records to them, turning over --

5  who's turning over records to who and the like.

6            THE COURT:  Thank you, Mr. Parham.

7            MR. SILVERSTEIN:  Your Honor, may I be heard, or is

8  it not -- Paul Silverstein, for the record.  There's no basis

9  whatsoever for that type of relief.  I think Your Honor knows

10 that.  I think we all know that.

11           THE COURT:  All right.  Thank you, Mr. Silverstein.

12           All righty.  It is 3:30.  The Court is going to take

13 a recess until 3:50.  And then I'll come back out and at a

14 minimum, we can talk about a briefing schedule on the motion to

15 convert.  All righty?  The Court stands in recess until 3:50.

16           THE CLERK:  All rise.

17      (Recess at 3:30 p.m./Reconvened at 4:11 p.m.)

18           THE CLERK:  All rise.

19           THE COURT:  Please be seated.

20           We're going to go back on the record in Case

21 Number 22-31641.  I apologize for the delay.

22           Frankly, the folks have brought some really

23 interesting legal arguments to me, and unless there's been any

24 other discussions and parties want to discuss any other issues

25 or propositions, the Court is prepared to move forward from a

44

1  scheduling perspective.

2          Has there been any other developments?

3          MR. PARHAM:  No.

4          THE COURT:  Okay.  Thank you very much.

5          All right.  For the sake of the parties, I did want

6  to take a little bit of time with the issues.  I did want to

7  review the C.W. Mining case that had been cited to me.  But

8  also, frankly, to look back at what I recall having done in a

9  number of different involuntaries because there is certainly

10  some argument on behalf of the debtor and 706(a) that the

11  conversion is a matter of right.

12          I am not prepared to convert the case to a Chapter 11

13  today, given that I know that the motion to convert on behalf

14  of the debtor is contested.  Nor am I inclined to set up a

15  lengthy briefing schedule on the motion to convert because I do

16  believe that if a Chapter 7 trustee were to come in and we give

17  a certain amount of space to that, that you could start

18  essentially to change the status quo such that you've got the

19  issues that were raised in C.W. Mining I think come to fore.

20          So here's what I am prepared to do.  I am prepared to

21  have a fairly quick hearing on the debtor's motion to convert.

22  And when I say a quick hearing, I mean we have the 19th

23  available, that entire day was already available to the

24  parties.  I think that what we should do is we should have a

25  quick hearing on that motion to convert, and whatever the

1  outcome of that hearing is, including whether or not if the

2  debtor's case were to convert to an 11, it would be without

3  prejudice to a motion to reconvert by the creditors.

4        And that is essentially, and again, I'm not pre-

5  ruling by any means, but what I'm basically saying is, I'm

6  trying not to over complicate this case, and I'm also trying to

7  give a little bit of space in this case for parties to be able

8  to talk.  Obviously, if there is a new director and that

9  director is an independent third party, I think there might be

10 ways for folks to talk about if there were consent to a

11 Chapter 11, what that might look like, things of that nature.

12       Or, if the case were to stay in Chapter 7, what that

13 might look like.  Whatever the case is, I'd like to give the

14 parties a little bit of breathing room.  And so what I'm going

15 to do is I'm going to schedule the hearing on the motion to

16 convert.  We could either do the morning or we could do the

17 afternoon.  Obviously, we have the entire day.

18       Mr. Parham, how long would the debtors propose for

19 the hearing?

20       MR. PARHAM:  I think we'll be quick.

21       THE COURT:  So I'm hearing three hours in my head.

22       MR. PARHAM:  Yeah.  I would like to start in the

23 morning.

24       THE COURT:  Okay.

25       MR. PARHAM:  Just the nature of this case is, it

1  doesn't go as quick as --

2              THE COURT:  To the podium, Mr. Parham.

3              MR. PARHAM:  The nature of this case is things don't

4  go as quick as we might think they would.  So I would like, I

5  would think that we could get our case on and off in a couple

6  of hours really.  I mean, I haven't thought through exactly

7  what we would do, but I think it would go pretty quick.  But I

8  would like to have the day reserved and start in the morning

9  and see if we can finish it up.

10             THE COURT:  All right.

11             MR. SILVERSTEIN:  Your Honor, may I be heard?

12             MR. PARHAM:  Your Honor, if I may make one --

13             THE COURT:  Just one moment, Mr. Silverstein,

14  Mr. Parham is finishing up, and then I'll turn to you.

15             MR. PARHAM:  Yeah.

16             MR. SILVERSTEIN:  Thank you.

17             MR. PARHAM:  Mr. Nelms has asked me to make an offer

18  to the other parties that, if they want to interview him, that

19  he's certainly open to that.  And if they want to record it,

20  they can.  There's no reason to depose him.  But between now

21  and the 19th, he certainly would be willing to sit for a

22  telephonic interview if the other parties cared to do that.

23             THE COURT:  Okay.  Thank you very much, Mr. Parham.

24             Mr. Silverstein.

25             MR. SILVERSTEIN:  Thanks, Your Honor.  On behalf of

1   the original petitioning creditors, Paul Silverstein.

2          Your Honor, I'm hearing that you're proposing an

3   evidentiary hearing on a motion to convert to Chapter 11 on six

4   days' notice, and you're contemplating an evidentiary hearing

5   on that.  It seems a little tight time-wise.

6          THE COURT:  It is tight time-wise, Mr. Silverstein.

7   You are absolutely correct.  But here's the situation.  On the

8   recess, I was able to not only review some other dockets, but

9   also to speak to some of my colleagues.  And it has come to my

10  intention that in this district, on multiple occasions, the

11  debtor has been a allowed at an involuntary to consent to an

12  order for relief under a different chapter.  Okay.

13         And so in this instance, I obviously have a very

14  contested conversion, as I said before, and that the Court by

15  entry of the order for relief did not intend to change the

16  status quo.  Okay.  And so my intention is, by having an

17  initial quick hearing on the motion to convert when the parties

18  were already otherwise available, that will get the issues out

19  and it's going to be without prejudice to the creditors' rights

20  to seek to reconvert to Chapter 11, which would again give you

21  guys more time to have the more fulsome discovery that you may

22  want.

23         So yes, it is extremely quick.

24         MR. SILVERSTEIN:  You mean to reconvert to Chapter 7.

25  You misspoke.  But I understood that.  But -- I think.

48

1          So is there any confusion here between a debtor's

2    absolute right to convert to Chapter 7?  Because the debtor has

3    an absolute right under the statute to convert a case to

4    Chapter 7.

5          THE COURT:  Okay.  So let's look at 706.  706(a)

6    says, "The debtor may convert a case under this chapter to a

7    case under Chapter 11 of this Title at any time if the case has

8    not been converted under Section 1112, 1208, or 1307 of this

9    Title."  And I read --

10          MR. SILVERSTEIN:  it says, "may seek," I think.

11          THE COURT:  Pardon?

12          MR. SILVERSTEIN:  Doesn't it say, "may seek"?

13          THE COURT:  "A debtor may convert" --

14          MR. SILVERSTEIN:  The debtor?

15          THE COURT:  "A debtor may convert a case under this

16    chapter to a case under Chapter 11, 12, or 13 of this Title at

17    any time if the case has not been converted under 1112, 1208,

18    or 1307 of this Title."

19          MR. SILVERSTEIN:  I want to defer to Mr. Guffy who I

20    think did some of that research on that subject, if I may.

21          THE COURT:  Okay.  Please.

22          MR. LANGLEY:  Your Honor, this is Adam -- this is

23    Adam Langley, too.  I can add some color, but I'll wait for

24    Mr. Guffy.  Sorry.

25          THE COURT:  Okay.

49

1          MR. GUFFY:  Your Honor, the case law that I had

2    found, admittedly not from this district, but from the Middle

3    District of Florida in a case called In re Eugene Alexander

4    Incorporated, 191 B.R. 920, stood for the proposition that the

5    court should not permit conversion if cause exists to convert a

6    Chapter 11 to a Chapter 7 or to dismiss the Chapter 11 case

7    because to permit conversion under those circumstances would be

8    a futile act.

9          So our position would be that we should be given an

10   opportunity to show at an evidentiary hearing that cause exists

11   to convert the case from Chapter 11 to Chapter 7 before the

12   debtor is permitted to convert this case to Chapter 11.

13         THE COURT:  Okay.

14         MR. SILVERSTEIN:  And we can provide that case law if

15   you want briefing on that.  I mean, the problem is that we're

16   sort of putting a cart before the horse, if that's the right

17   expression here.

18         THE COURT:  So that's 191 B.R. 920?

19         MR. GUFFY:  Correct, Your Honor.

20         THE COURT:  Okay.  Thank you.

21         Mr. Langley.

22         MR. LANGLEY:  Yes, Your Honor.  And I actually had a

23   long discussion with my partner, Marty Sosland, on this very

24   issue because he said it was a long-standing practice in the

25   Northern District to do this.  But he wasn't aware of the

1  Marrama case and its implications on this, which was a 2007

2  case that that did change the practice.

3          And so Marrama is very clear that if the Court has

4  any inkling that there is good cause to deny the motion to

5  convert because of some type of bad faith conduct or other

6  issue related to mismanagement, that the Court needs to take

7  evidence and to have a hearing on that bad faith conduct.  And

8  so that was what Marrama says.

9          And then also, Jacobson, which is a Fifth Circuit

10  case, which is 609 F.3d 647, which is again another Chapter 13,

11  but courts have routinely held that that holding applies in the

12  Chapter 11, as well.  It is a proposition that rejects the

13  construction of these conversion statutes that would allow an

14  abusive debtor to escape through an escape hatch is what it

15  says.

16          And so Jacobson and Marrama are very clear that this

17  Court has to be very cautious when there are allegations of

18  fraud or bad faith conduct or mismanagement, not to allow an

19  abusive debtor to essentially move through an escape hatch to

20  another chapter where they would remain in possession.  And so

21  we would put very strongly before the Court that we do need

22  discovery that was cut off by the order of relief in order to

23  make the bad faith allegations, which were not the subject of

24  the pre-order for relief discovery.

25          We were going through discovery on completely

1 different issues.  And I would suggest that if the Court wants

2 to take up the standing issue on the 19th, that's something we

3 can brief and do on a legal basis.  But if the Court

4 anticipates an evidentiary hearing on bad faith under the

5 Marrama and Jacobson standards, we actually do need some

6 discovery and we need significant time to put on the evidence

7 related to these fraudulent transfers that we're going to

8 allege.

9        THE COURT:  Well, okay, Mr. Langley, and this will

10 just apply to the creditors in general.  I think you're trying

11 to have your cake and eat it too.  Okay.  You want the debtor

12 to be in Chapter 7, I understand that.  I think the debtor has

13 a right to seek to convert to Chapter 11.  Okay.  And if your

14 argument is that with the imposition of a Chapter 7 trustee,

15 its rights are going to be cut off and everything's going to

16 get really, really complicated.  And we don't know who's

17 sitting for the depositions and whether or not documents can

18 get to be given over and whether or not Mr. Parham has a

19 client.

20        If all of these things are going to get even more

21 complicated with the passage of time, okay, then the answer is,

22 let's hear it quickly and preserve your rights to have your

23 more fulsome evidentiary hearing on a motion to reconvert back

24 to 7 later.  I don't know how I can serve all the masters here

25 of your legal theories without doing something more quickly.  I

1   mean, the only other issues that I can think of are much more

2   problematic, which is, I'm just going to say there are more

3   problematic things.  I'm not going to say everything that's in

4   my head for once.

5          But so I think that the issue is, if you are going to

6   argue that the passage of time takes away their standing, if

7   you're going to argue that the passage of time complicates

8   matters even further, then why not have a quicker hearing on

9   conversion without prejudice to the right to reconvert?

10         MR. LANGLEY:  Your Honor, I would suggest that that

11  time has already passed.  There are uncontested joining

12  petitioners that have entitled us into an order of relief.  And

13  so there is a Chapter 7 case right now, and 701 requires prompt

14  appointment of a Chapter 7 trustee, which under the C.W.

15  Mining, it eliminates this issue.  And I would go a step

16  further and say, I don't think the appointment of a Chapter 7

17  trustee, which C.W. Mining said was immediate, is the actual

18  effect.  I think it's the order for relief which triggers the

19  appointment of the trustee to be done promptly under 701.

20         So I would suggest this is all over with.  So the

21  suggestion that this will be complicated with time, I disagree

22  with because we have a Chapter 7 trustee that simplifies this

23  process.  We don't have to deal with a debtor who has acted in

24  bad faith and that we will put on substantial evidence of bad

25  faith under the Marrama standard.

53

1          And I just don't see where we're going with this when

2     we have a Chapter 7 trustee that's fully capable of

3     administering this estate and quite frankly has a matter of

4     right to administer the estate that the debtor acting through

5     Akerman does not have.  So I don't know that I disagree with

6     you in the sense of getting this scheduled in a way, but I

7     would suggest that we do it in a way that allows for us to put

8     on significant evidence under the <u>Marrama</u> standard and the

9     <u>Jacobson</u> standard and I don't think six days is appropriate.

10          THE COURT:  Well, and again, I don't want to divest

11     you of that opportunity.  And I want to give you your day to

12     put on your evidence.  But what I hear you telling me is that

13     the passage of time is -- I mean, you would like, I assume,

14     this debtor to stay in this limbo of trying to convert its case

15     under 706 and you'd like them to do that for how long?  For a

16     month?

17          MR. LANGLEY:  Your Honor, our position would be that

18     the Chapter 7 trustee is fully capable of administering this

19     during any time period that this motion to convert is

20     outstanding.  I think we would probably need at least 30 to 60

21     days to do discovery.  I think we could take up on like a

22     summary judgment standard, the legal issue on standing much

23     quicker.  And quite frankly, I have a brief that I've been

24     working off of today that we are prepared to get filed pretty

25     quickly on the standing issue.

1          So I think if the Court wanted to bifurcate the

2    evidence you're hearing from a legal hearing on the 19th, I

3    think we could be prepared to move forward on that standing

4    issue very quickly.  I think, quite frankly, we'll put pretty

5    overwhelming evidence before the Court on that.

6          And then, as to the matter of right, I think we could

7    also brief that issue as to a matter of right, because again,

8    that's a legal issue.  And then, if there are subsequent issues

9    of bad faith that arise under <u>Marrama</u> and <u>Jacobson</u> that are

10   going to require discovery and an evidentiary hearing, we could

11   schedule that at another time.

12         What I don't want is a Chapter 7 trustee to be

13   appointed and then divested of their rights to pursue these

14   causes of action and administer this estate while we interject

15   a Chapter 11 debtor-in-possession that we know has acted in bad

16   faith.  And I know the Court doesn't know that because you

17   haven't seen the evidence.  But I can tell you --

18         THE COURT:  No, I don't know that at all.  You're

19   right.

20         MR. LANGLEY:  -- all the creditors here on the -- all

21   the creditors here on the phone are prepared to put on

22   significant evidence when that time comes.  Frankly, I think

23   you already have some before you on the motion for summary

24   judgment at 80-1.  Docket 80-1 shows a number of fraudulent

25   transfers.

1          MR. SILVERSTEIN:  Your Honor, may I be heard?  It's

2    Paul Silverstein.

3          There's no limbo here.  There's no limbo here at all.

4    I mean, if Judge Nelms (indiscernible) as a Chapter 11 trustee,

5    or a Chapter 7 trustee, I mean that's a whole different

6    situation.  He's coming in as an independent director and it's

7    not even clear who appointed him and whether there was

8    authority to appoint him as an independent director in the

9    first instance.

10          And for us to even look at that on six days' notice,

11   how can I do that?  I don't think it's possible.  I'd love to

12   have a conversation with Judge Nelms because it's, you know, I

13   mean, Judge (indiscernible) is again, certainly --

14          THE COURT:  And I think they offered up --

15          MR. SILVERSTEIN:  -- probably --

16          THE COURT:  -- they offered up -- I mean, obviously,

17   I can't -- inserting him as a motion -- excuse me, as a

18   Chapter 11 trustee, I think you realize the step that would

19   have to occur before I could do that, but.

20          MR. SILVERSTEIN:  Yes.

21          THE COURT:  And I would -- I would certainly --

22          MR. SILVERSTEIN:  And I agree.  I agree --

23          THE COURT:  -- and I would certainly like to give the

24   parties the space and the time to have a conversation about the

25   various possibilities that there are between here and

1  Chapter 7, or here and regular Chapter 11.  And I think there

2  are lots of possibilities there.

3            MR. SILVERSTEIN:  I agree.

4            THE COURT:  But the only way that I can do that is to

5  set this motion.  And if it weren't for the standing argument,

6  which is novel and interesting, okay.  If it weren't for that,

7  then I probably would be persuaded to give this more time and

8  fulsome discovery.  But as I'm hearing, the parties are going

9  to argue that the Chapter 7 trustee coming in, in and of

10 itself, and I understand that Mr. Langley has now said, "No,

11 no, no.  It's the order for relief.  It is what it is."

12           But I mean, we all know what happened.  We all know

13 that the order for relief was entered, but at that time, the

14 debtor was seeking to convert right away.  Now, we could argue

15 procedurally the different things the debtor could have done,

16 but we are where we are.

17           MR. SILVERSTEIN:  Right.  I think the evidence would

18 show that the debtor, the notion of the motion to convert was

19 purely to stall discovery that the debtor didn't want.  Okay.

20 That the principles and the other related parties who were

21 going to be subject to discovery didn't want.  They desperately

22 didn't want that.  I could understand Your Honor scheduling a

23 status conference for the 19th directing that the parties have

24 a meet and confer.  And I understand meeting and conferring

25 (indiscernible) sometimes works wonderful (indiscernible)and

1  there's some background that's not for me here --

2          THE COURT:  Yeah.  We're trying to address that.

3          MR. SILVERSTEIN:  -- but that meeting and conferring

4  would -- might be helpful.  And, again, Judge Nelms might be

5  helpful but there's a big difference converting a case to

6  Chapter 11 and meeting and conferring among the parties to try

7  to find a solution to maximize values for the secured and

8  unsecured creditors here.  That's my only point.

9          I hear you.  I understand what Your Honor is saying,

10  but six days, respectfully, seems like a ludicrous time frame

11  for this type of motion because I don't know -- when would

12  responses be due and when, and the like?  And discovery?  Would

13  there not be discovery?  What issues would be on the table

14  before Your Honor?  Is the only issue is their absolute right

15  to convert to Chapter 11?  I mean, I'm not sure what the rules

16  are here anymore.

17          I'm sorry if I'm ignorant, but I just don't get it.

18          THE COURT:  Again, if the creditors are going to

19  argue that the debtor does not have a right to convert because

20  once you're in Chapter 7, that's it, and that you have no right

21  to --

22          MR. SILVERSTEIN:  I'm not -- we're not arguing that.

23          THE COURT:  Okay.

24          MR. SILVERSTEIN:  We're not arguing that.

25          THE COURT:  Okay.  So when is that going to be heard?

58

1          MR. SILVERSTEIN:  If you want that to be heard on the

2     19th, have that hearing on the 19th.  I'm not arguing that.

3     The original --

4          THE COURT:  Okay.  So the petitioning creditors are

5     not arguing that the debtor doesn't have standing to attempt to

6     convert?

7          MR. SILVERSTEIN:  The original petitioning creditors

8     are not --

9          THE COURT:  Right.

10          MR. SILVERSTEIN:  -- represented by me and Mr. Guffy,

11     are not arguing that because if you look at the case law,

12     obviously, there were motions to convert after -- I believe

13     after an order (indiscernible).  Am I correct Mr. Guffy?  I may

14     be confusing the case laws, but I think that was our --

15          MR. GUFFY:  Yeah, we did find some cases where that

16     had happened, including the case that I cited to Your Honor.

17          MR. SILVERSTEIN:  So that's not our argument here.

18     We're not saying that the debtor doesn't have standing.

19          THE COURT:  Okay.

20          MR. SILVERSTEIN:  That's not our position.

21          MR. LANGLEY:  Your Honor, it is the position of the

22     other petitioning creditors.

23          MR. SILVERSTEIN:  It is not --

24          THE COURT:  Mr. Langley.

25          MR. LANGLEY:  Yeah, it is the position of other

1  petitioning creditors, including FedEx, that there is no

2  standing.  And I would cite to you, it's a Northern District of

3  Texas district court decision after Marrama that's citing

4  Marrama.  And that is 2010 WL 3385025, the Thomason and

5  Associates LLC case.

6          And to quote it, it says, "In short, a debtor does

7  not have an unqualified right to convert a Chapter 7 proceeding

8  into a Chapter 11 reorganization."  And then it continues later

9  on, "Consequently, the bankruptcy court concluded the debtor

10  cannot be a Chapter 11 debtor because there is no hope of

11  reorganizing."

12          And, Your Honor, we're happy to present these legal

13  issues to you on a quick basis, but there is ample case law

14  that we can cite for these propositions, and we would happily

15  do that on a pretty quick time frame.  But we can't do an

16  evidentiary hearing on a quick time frame.

17          THE COURT:  Just give me one moment.

18          All right.  I am going to stick with my initial

19  thoughts.  I'm going to have a hearing on the motion to convert

20  on the 19th, and it is going to be without prejudice to the

21  petitioning creditors' rights after that time to reurge a

22  motion to reconvert.

23          And the reasoning is because I don't disagree with

24  the parties that, I mean, first of all, I think a debtor

25  whether that is an absolute right to convert or whether that is

1  a right to seek to convert, I believe a debtor has that right

2  period, end of story.  If not, you're reading 706 out of the

3  Code.  Okay.

4       And so if the creditors want to attempt to try to

5  convince me on the 19th that a debtor doesn't have standing,

6  this debtor doesn't have standing to seek to convert, let's

7  bring the case law that day, because I will have to be

8  convinced.  I will have to be convinced that everything that we

9  have done in this district post <u>Marrama</u>, which as I recall is,

10 wasn't it 2008?  I believe so.  It's under <u>Jacobson</u>.  <u>Jacobson</u>

11 is 2010.

12      That everything that we have been doing, up and

13 including decisions and actions that were taken two weeks ago

14 in this district were wrong.  Okay.  So <u>Marrama</u> was 2005.

15 Thank you, Mr. Embry.

16      And so, again, whether or not I can consider issues

17 of bad faith for conversion, things of that nature, but if we

18 are going to have this issue on standing and there is an

19 argument that documents are going to get turned over, that

20 privileges are going to move, all of these things, I'm going to

21 have, again, that motion to convert will be heard on Monday the

22 19th without prejudice to the creditors to seek to reconvert

23 thereafter, if I were to convert it to a to a Chapter 11.  And

24 of course, you still have to bear your burden on that,

25 Mr. Parham.

1          And as Mr. Parham has offered up, Mr. Nelms is

2    available between now and the 19th to have an interview with

3    you guys.  I encourage the parties to confer.  And, again,

4    there is more than one way to skin the cat in these cases, and

5    so just put your creative thinking caps on.

6          But that's where we'll go for now.  Depending on what

7    happens at the hearing on the 19th, if the parties want to seek

8    a briefing schedule and/or a discovery schedule to set a

9    hearing with respect to a motion to reconvert, we can discuss

10   it at that time.  I don't think that we're going to prejudge

11   that because we'll allow folks to have some opportunity to talk

12   and proceed on the 19th.

13         But that's what we're going to do for now.  If the

14   parties otherwise agree to put this off and do it differently,

15   please contact the Court.  But that's where we'll go for now.

16         All right.

17         MR. PARHAM:  Thank you, Your Honor.

18         THE COURT:  All right.

19         MR. SILVERSTEIN:  Your Honor?

20         THE COURT:  Anything else?

21         MR. GUFFY:  Yes, Your Honor.

22         Are you setting a deadline for any kind of response

23   that the creditors would file to the motion to convert?

24         THE COURT:  The 16th, Mr. Guffy.  All right.

25         MR. GUFFY:  Thank you, Your Honor.

62

 1            THE COURT:  Actually, what I'll do -- here's what

 2   I'll do.  I'll give you until the 17th, the full day on the

 3   17th.  I know that's not a whole lot being that's Saturday, but

 4   it is what it is.

 5            MR. SILVERSTEIN:  And, Your Honor, it's Paul

 6   Silverstein.

 7            Can you also direct the debtor to provide the parties

 8   with the documentation under which Judge Nelms was designated

 9   or appointed as an independent director?  We'd like to see that

10   documentation immediately.

11            THE COURT:  Mr. Parham?

12            MR. PARHAM:  Yes?

13            THE COURT:  Do you have any problem turning over the

14   documentation by which Mr. Nelms was appointed to the

15   creditors?

16            MR. PARHAM:  No.  No, we have no problem..

17            THE COURT:  Okay.  Yes.  If you could do that after

18   the hearing, I'd appreciate it.

19            MR. PARHAM:  Sure.

20            THE COURT:  Okay.

21            MR. SILVERSTEIN:  Thank you very much.

22            THE COURT:  You're welcome.

23            Anything else?

24            MR. PARHAM:  Not here.

25            THE COURT:  All righty.  The Court will stand

63

1  adjourned for the day.

2          You guys have a great day.

3          MR. PARHAM:  Thank you.

4          MR. SILVERSTEIN:  Thank you, Your Honor.

5          THE CLERK:  All rise.

6          THE COURT:  You're welcome.

7      (Proceedings adjourned at 4:43 p.m.)

8                      *  *  *  *  *

9

10

11

12              **C E R T I F I C A T I O N**

13          We, DIPTI PATEL and KAREN K. WATSON, court approved

14  transcribers, certify that the foregoing is a correct

15  transcript from the official electronic sound recording of the

16  proceedings in the above-entitled matter, and to the best of

17  our ability.

18

19  /s/ Dipti Patel

20  DIPTI PATEL, CET-997

21  /s/ Karen K. Watson

22  KAREN K. WATSON, CET-1039

23  LIBERTY TRANSCRIPTS                    DATE:  February 2, 2023

24

25