Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: § | |
| § | Chapter 7 |
| GOODMAN NETWORKS, INC., § | |
| § | Case No. 22-31641-mvl-7 |
| Debtor. § | |

**TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019**
**FOR APPROVAL OF SETTLEMENT AND COMPROMISE**
**WITH PROSPERITY BANK AND UMB BANK, NATIONAL ASSOCIATION**

**NO HEARING WILL BE CONDUCTED HEREON, AND THE HEARING SCHEDULED ON THIS MOTION MAY BE CANCELLED WITHOUT FURTHER NOTICE, UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496, BEFORE CLOSE OF BUSINESS ON <u>APRIL 12, 2023</u>, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and files this his *Motion Under Bankruptcy Rule 9019 for Approval of Settlement and Compromise with Prosperity Bank and UMB Bank, National Association* (the "Motion"), respectfully stating as follows:

## I.     RELIEF REQUESTED

1. By this Motion, and pursuant to Bankruptcy Rule 9019, the Trustee requests that the Court approve that certain compromise and settlement (the "Proposed Settlement"), as embodied in and effectuated by the *Stipulation and Agreed Order Granting Trustee's Motion for Approval of Settlement and Compromise with Prosperity Bank and UMB Bank, National Association* submitted herewith (the "Proposed Order"), between the Trustee, Prosperity Bank, for itself and as successor to LegacyTexas Bank ("Prosperity"), U.S. Bank National Association, as Collateral Agent (the "Collateral Agent"), UMB Bank, National Association, as Indenture Trustee (the "Indenture Trustee"), and the Majority Noteholder Group (as defined in the Proposed Order), pursuant to which Prosperity will release $4,463,804.68 to the Trustee, and from which the Trustee will retain $100,000.00 as an agreed surcharge, with the balance of said funds to be immediately paid to the Collateral Agent towards the Debtor's obligations on its 8% Senior Secured Notes as is otherwise appropriate.

## II.     PROCEDURAL BACKGROUND

2. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the Estate.

3. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

4. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

### III.    FACTUAL BACKGROUND

5. On or about May 31, 2017, the Debtor issued its 8% Senior Secured Notes due 2022 (the "Notes") pursuant to that certain indenture dated as of May 31, 2017 (as amended, restated, or otherwise modified from time to time, the "Indenture"), by and among Goodman Networks as Issuer, the Indenture Trustee, and the Collateral Agent, in the original principal amount of $112,500,000.

6. The Notes matured on May 31, 2022, at which time all amounts due under the Indenture, including principal, interest, fees, costs, and other expenses, became due and payable. The Debtor failed to pay the Notes on and after such date, and was in default under the Indenture at least as of said date. The Indenture Trustee and the Collateral Agent assert that, as of the Petition Date, the principal amount outstanding on the Notes was $18,018,573.00 plus accrued and unpaid interest of $720,160.10 and additional fees, costs, and expenses payable under the Indenture and related documents.

7. In addition to the Indenture, the Debtor, the Indenture Trustee, and the Collateral Agent also executed that certain Pledge and Security Agreement dated as of May 31, 2017, by and among the Debtor, each of the Grantors (as defined therein) from time-to-time party thereto, and the Collateral Agent, and other security documents, pursuant to which the Indenture Trustee and Collateral Agent assert perfected, first priority liens and security interests in substantially all property of the Estate (as well as assets of the Debtor's subsidiaries).

8. Among those other security documents, the Collateral Agent entered into a series of Deposit Account Control Agreements (the "DACAs") with the Debtor and the predecessor-in-interest to Prosperity pursuant to which the Debtor granted the Collateral Agent valid, perfected, unavoidable, and enforceable security interests in the Debtor's accounts at Prosperity, at which the Debtor held several bank accounts.

9. Separately, on or about July 3, 2020, Prosperity loaned $3 million to Genesis Networks Telecom Services, LLC ("Genesis Telecom"), and Genesis Networks Global Services, LLC ("Genesis Global," with Genesis Telecom, the "Genesis Borrowers"). On or about August 31, 2020, Property loaned $1,948,427.94 to the Genesis Borrowers under a term loan. Both of these loans were guaranteed by James Goodman, an insider and principal of the Debtor.

10. Prior to and after October 25, 2021, the Debtor had on deposit with Prosperity, in account number ending in 3992, the sum of $4,660,000.00 (the "Account"). At such time, the Account, and the funds in the Account, were subject to the valid and perfected first-priority security interests of the Collateral Agent pursuant to the DACAs.

11. On or about October 25, 2021, the Debtor executed in favor of Prosperity that certain *Assignment of Deposit Account* (the "Assignment"), pursuant to which the Debtor granted Prosperity a security interest in the "Collateral," which was the Account, in order to secure the obligations of the Genesis Borrowers to Prosperity. James Goodman executed the Assignment on behalf of the Debtor.

12. The Trustee asserts that the Debtor received no return consideration for the Assignment, and no reasonably equivalent value for the Assignment, since the Debtor was not obligated to Prosperity, did not guarantee the obligations of the Genesis Borrowers to Prosperity, and did not own the Genesis Borrowers. Rather, the Trustee asserts that the Debtor, in granting the Assignment, executed an agreement that was void for lack of consideration or was an avoidable

constructively fraudulent transfer done for the purpose of benefiting James Goodman. As such, the Trustee asserts that the Assignment can be avoided by him for the benefit of the Estate. Prosperity disputes these allegations.

13. Separately, between January 22, 2021, and August 1, 2022, the Debtor, from its funds and its accounts, paid $513,742.92 of the Genesis Borrowers' monthly principal and interest obligations to Prosperity under on account of Prosperity's loans to the Genesis Borrowers (the "Prosperity Payments"). The Trustee asserts that he may avoid the Prosperity Payments as constructively fraudulent transfers because the Debtor was not obligated to Prosperity, received no reasonably equivalent value for the Prosperity Payments, and because James Goodman caused the Debtor to make the Prosperity Payments in order to benefit the Genesis Borrowers and himself. Prosperity disputes these allegations.

14. Prosperity asserts that in reliance on James Goodman's apparent authority to act on behalf of the Debtor, Prosperity applied $4,463,804.68 of Account funds toward the Genesis Borrowers' loans on August 15, 2022.[1]

15. On August 16, 2022, the Collateral Agent delivered a notice to Prosperity exercising control over the Account and directing Prosperity to transfer funds in the Account to an account with the Indenture Trustee in the name of the Collateral Agent. Prosperity, after transferring the remaining funds in the Account to the Collateral Agent, segregated the $4,463,804.68 into an escrow account pending further proceedings (the "Subject Funds"). The Collateral Agent asserts that, in so doing, Prosperity violated its obligations under the DACAs and applicable law, which assertion Prosperity disputes.

---

[1] The Indenture Trustee, the Collateral Agent and the Majority Noteholder Group have no information relating to statements set forth in this paragraph and neither adopt nor contest such statements at this time.

16. As of the Petition Date, the Subject Funds remained in the escrow account, subject to the claims of the Trustee, Prosperity, and the Collateral Agent, and further subject to the automatic stay. The Trustee has reviewed the loan and security documents regarding the interests of the Indenture Trustee and the Collateral Agent with respect to the Subject Funds, and has concluded that, while the Subject Funds are property of the Estate, the Collateral Agent holds valid, perfected, unavoidable first priority security interests in the Subject Funds, and that the claims of the holders of the Notes secured by the Subject Funds exceed the amount of the Subject Funds. The Trustee also informed Prosperity of his intention to file a complaint to avoid the Assignment and the Prosperity Payments.

17. Thereafter, the Trustee, the Collateral Agent, Majority Noteholders, and Prosperity entered into extensive negotiations regarding the ownership of the Subject Funds and the resolution of all issues related to the Subject Funds. The negotiations included the Trustee's asserted surcharge rights under 11 U.S.C. § 506(c) against the Subject Funds. The Proposed Settlement and the Proposed Order are the results of those negotiations.

## IV.   PROPOSED SETTLEMENT

18. The Proposed Settlement is evidenced and effectuated by and through the Proposed Order, and parties are cautioned that the Proposed Order controls over any inconsistency with this Motion. Nevertheless, and subject to the foregoing caution, the following is a summary of the key provisions of the Proposed Settlement and the Proposed Order:

- all parties agree, and the Court finds, that the Subject Funds are property of the Estate;

- the Trustee, for the Estate, is allowed an agreed surcharge in the amount of $100,000 (the "Agreed Surcharge") against the Subject Funds, in full and final satisfaction of any surcharge claim of the Estate against the Subject Funds, but without prejudice to any other potential surcharge claim the Estate may have against other collateral of the Collateral Agent;

- Prosperity transfers to the Trustee the Subject Funds (together with any accrued interest), subject to the perfected, valid, unavoidable first-priority security interests of the Collateral Agent and, no later than one business day thereafter, the Trustee transfers to the Collateral Agent the Subject Funds (together with any accrued interest), less the Agreed Surcharge, for application by the Collateral Agent and Indenture Trustee as is otherwise appropriate;

- the Trustee releases Prosperity from any and all claims and causes of action, including on account of the Prosperity Payments, but the Trustee reserves and retains the ability to bring any and all claims and causes of action on account of the Prosperity Payments against the Genesis Borrowers or any other parties, and Prosperity releases the Trustee and the Estate;

- Prosperity, on the one hand, and the Indenture Trustee, Collateral Agent, and Majority Noteholders, on the other hand, release each other;

- the Trustee, on the one hand, and the Indenture Trustee, Collateral Agent, and Majority Noteholders, on the other hand, release each other from all claims and causes of action related to the Subject Funds but not from any other claims and causes of action that may exist; and

- the Agreement is subject to approval by the Bankruptcy Court.

## V.     ARGUMENTS AND AUTHORITIES

19.   Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Under that Rule, the Court should approve a settlement only if it is "fair and equitable and in the best interests of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The factors to consider include "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*. Such other factors include the reasonable views of creditors, although such views are not binding, and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*. at 918. *See also Official Comm. Of Unsecured*

*Creditors v. Cajun Elec. Power Coop. Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 559, 602 (5th Cir. 1960).

20. The Court need not conduct a mini-trial on the underlying claims; rather, the Court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (internal quotation omitted). The settlement need not result in the best possible outcome for the Estate, but must not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Finally, the Trustee is entitled to employ his reasonable business judgment in proposing a settlement, and that judgment is entitled to reasonable deference from the Court where, as here, the proposed settlement is not between insiders:

> The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the 'business judgment rule.' Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. The business judgment rule creates a presumption in favor of the fiduciary.

*In re Woodberry*, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021) (internal quotations omitted).

21. Here, the Trustee believes that the Proposed Settlement is fair, equitable, and in the Estate's best interests, for at least the following reasons:

- While the Trustee asserts that the Subject Funds are property of the Estate subject to being turned over to him by Prosperity under section 542 of the Bankruptcy Code, he recognizes that Prosperity may have a competing claim to the Subject Funds which would require litigation by the Trustee to adjudicate, in the form of an adversary proceeding to avoid the Assignment. However, the Trustee knows of no claim as to why the Collateral Agent's security interests in the Subject Funds would be subject to dispute or avoidance, and no creditor or other party has informed him of any such claim. Thus, were the Trustee to litigate the issues, the Estate would expend its resources to obtain the Subject Funds only to then pay them over to the Collateral Agent. The Proposed Settlement accomplishes this quickly and at a

    minimum of expense and burden, and allows the Trustee to pay down secured debt by more than $4.35 million.

- The Collateral Agent and Majority Noteholders have asserted that the claims under the Notes are oversecured and, on a preliminary basis, it appears to the Trustee that this may be correct. If so, the Indenture Trustee and Collateral Agent would be able to claim postpetition interest, default interest, and attorney's fees, thus making it all the more in the Estate's interests to pay down that debt fast, in order to avoid at least some interest and default interest, and to minimize the costs of litigation which the Estate may ultimately have to bear. Conversely, the Trustee is not aware of any basis to recover his litigation against Prosperity, even if he succeeds on his claims against Prosperity under sections 542 and 548 of the Bankruptcy Code.

- While the Trustee and the Estate release Prosperity, including from any liability for the Prosperity Payments, the Trustee retains his claims and causes of action against the Genesis Borrowers to avoid and recover said payments, which the Trustee intends to fully assert and to prosecuted. Releasing Prosperity from the Prosperity Payments is reasonable in order to obtain the immediate benefit of the Subject Funds without the need for litigation, together with its cost, burden, and risk. The Trustee is not aware of any other claims or causes of action that the Estate may hold against Prosperity.

- The amount of the Agreed Surcharge is fair and reasonable and compensates the Estate for its expenses and burdens in assisting with the Proposed Settlement and all issues related to Prosperity and the Subject Funds, while providing needed unencumbered cash to the Estate for the Estate to use as it investigates and prosecutes claims and causes of action it has against third parties.

- The Proposed Settlement is the result of extensive, arm's length, negotiations. There are no undisclosed agreements. This is not an "insider" settlement.

22. In the end, the Estate benefits from the immediate paydown of secured debt of more than $4.35 million and earns $100,000 with the Agreed Surcharge, all without the need for costly, burdensome, and uncertain litigation. As such, the Proposed Settlement is fair and reasonable and in the best interests of the Estate.

## VI.    **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court: (i) grant this Motion by entering the Proposed Order; (ii) approve the Proposed Settlement;

(iii) authorize and direct the Trustee to perform all actions required by the Proposed Order; and

(iv) grant the Trustee such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 22d day of March, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of March, 2023, true and correct copies of this document, with the Proposed Order hereon, were served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same date he caused true and correct copies of this document, with the Proposed Order thereon, to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.