**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| GOODMAN NETWORKS, INC., | § | Case No. 22-31641 (MVL) |
| | § | |
| Debtor. | § | |
| | § | |

**STIPULATION AND AGREED ORDER GRANTING**
**TRUSTEE'S MOTION UNDER BANKRUPTCY RULE**
**9019 FOR APPROVAL OF SETTLEMENT AND COMPROMISE**
**WITH PROSPERITY BANK AND UMB BANK, NATIONAL ASSOCIATION**

This stipulation and agreed order (the "**Stipulation and Agreed Order**"), considered by the Court pursuant to the *Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Settlement and Compromise with Prosperity Bank and UMB Bank, National Association* (the "**Motion**"), is entered into by and among UMB Bank, National Association, as indenture trustee (the "**Indenture Trustee**"); U.S. Bank National Association, as Collateral Agent (the "**Collateral Agent**"); the Majority Noteholder Group;[1] Scott M. Seidel (the "**Chapter 7 Trustee**"), the duly appointed

---

[1] The Majority Noteholder Group consists of beneficial holders of a majority of the 8% Senior Secured Notes due 2022 issued by Goodman Networks, Inc., including petitioning creditors JLP Credit Opportunity Master Fund

chapter 7 trustee of the bankruptcy estate (the "**Estate**") of Goodman Networks, Inc. (the "**Debtor**"); the Debtor; and Prosperity Bank, for itself and as successor to LegacyTexas Bank, ("**Prosperity**") to resolve certain matters regarding certain funds presently held by Prosperity. The parties hereto are individually referred to in this Stipulation and Agreed Order as a "**Party**" and together referred to herein as the "**Parties**."

## RECITALS

**WHEREAS**, on or about May 31, 2017, the Debtor issued its 8% Senior Secured Notes due 2022 (the "**Notes**") pursuant to that certain indenture dated as of May 31, 2017 (as amended, restated, or otherwise modified from time to time, the "**Indenture**"), by and among Goodman Networks as Issuer, the Indenture Trustee as trustee, and the Collateral Agent in the original principal amount of $112,500,000. In addition to the Indenture, the Debtor, the Indenture Trustee, and the Collateral Agent also executed that certain Pledge and Security Agreement dated as of May 31, 2017 (the "**Pledge and Security Agreement**"), by and among the Debtor, each of the Grantors (as defined in the Pledge and Security Agreement) from time-to-time party thereto, and the Collateral Agent, and other security documents;

**WHEREAS**, the Indenture Trustee and the Collateral Agent assert that pursuant to the Pledge and Security Agreement, the Debtor granted liens on, and security interests in, substantially all of its personal property, including, whether now or hereafter existing: (a) Accounts; (b) Chattel Paper; (c) Documents; (d) Payment Intangibles; (e) General Intangibles; (f) Goods (including, Inventory and Equipment); (g) Instruments; (h) Insurance; (i) Intellectual Property; (j) Investment Related Property (including Deposit Accounts); (k) Letters of Credit and Letter-of-Credit Rights;

---

Ltd., JLP Credit Opportunity IDF Series Interests of the SALI Multi-Series Fund, L.P., JLP Institutional Credit Master Fund LP, and Alimco Re Ltd.

2

(l) Money, cash, and cash equivalents; (m) Receivables and Receivable Records; (n) Commercial Tort Claims; (o) accessions to, substitutions for, and replacements, proceeds of the Collateral, and products of the foregoing, and any General Intangibles related to any of the foregoing; (p) all other personal property of any kind and all Collateral Records, Collateral Support and Supporting Obligations relating to any of the foregoing; and (q) all Proceeds, products, accessions, rents, and profits of or in respect of any of the foregoing (collectively, and as defined in the Pledge and Security Agreement, the "**Collateral**"). For purposes of this Stipulation and Agreed Order only, the Chapter 7 Trustee does not contest the validity, perfection, unavoidability, or enforceability of the foregoing, reserving his right to contest the same only with respect to any transaction unrelated to the security interests and liens of the Indenture Trustee and the Collateral Agent and the holders of the Notes in the Deposit Accounts (defined below). The Chapter 7 Trustee hereby confirms the validity, perfection, unavoidability, and enforceability of the foregoing as to the Deposit Accounts for all purposes.;[2]

**WHEREAS**, also on May 31, 2017, the Collateral Agent entered into a series of Deposit Account Control Agreements ("the **DACAs**") with the Debtor and the predecessor-in-interest to Prosperity pursuant to which the Debtor granted the Collateral Agent valid, perfected, unavoidable, and enforceable security interests in the Debtor's accounts at Prosperity (the "**Deposit Accounts**"). The DACAs provide, in relevant part, as follows:

    a.    The Indenture Trustee and the Collateral Agent hold first priority liens on and security interests, on behalf of themselves and the holders of the Notes in substantially all of the Debtor's property, including the Deposit Accounts.

    b.    The parties entered into the DACAs to acknowledge the Collateral Agent's security interests in the Deposit Accounts and to provide for the control of the Deposit Account by the Collateral Agent.

---

[2] Certain subsidiaries of the Debtor also guaranteed payment of the Notes and granted liens on substantially all their assets as security under the terms Pledge and Security Agreement.

3

    c.    Pursuant to the DACAs, the Debtor granted the Collateral Agent security interests in the Deposit Accounts "and in all credits or proceeds thereto and all monies, checks and other instruments held or deposited therein." The Debtor represented and warranted that there were no other liens or encumbrances with respect to the Deposit Accounts and covenanted that it would not give any other person or entity other than the Collateral Agent any security interest, lien, or title in the Deposit Accounts.

    d.    In order to provide Secured parties with control over the Deposit Account, Prosperity shall comply with any and all orders, notices requests, and other instructions originated by the Collateral Agent directing disposition of the funds in the Deposit Accounts without any further consent from the Debtor, even if such instructions are contrary to any of the Debtor's instructions or demands or result in Prosperity dishonoring items which may be presented for payment.

    e.    Upon receipt of written notice from the Collateral Agent, Prosperity shall transfer funds in the Deposit Accounts as instructed by the Collateral Agent. The Debtor and Prosperity acknowledged the Collateral Agent's continuing security interest in the Deposit Accounts, and Prosperity subordinated any statutory or contractual right or claim of offset or lien other than with regard to returned items.

    f.    The Debtor agreed to indemnify Prosperity against any and all claims, losses, liabilities, costs, actual damages, and expenses arising out of or in any way related to the DACAs.

    g.    Unless and until Prosperity received the Controlling Agent's Notice of Exclusive Control, pursuant to which the Debtor's access to the funds in any Deposit Account would be terminated, Prosperity shall honor the Debtor's instructions, notices and directions with respect to the transfer or withdrawal of funds from the Deposit Account, including paying or transferring funds to the Debtor or any other person or entity.

    h.    Prosperity was protected in relying upon any form of instruction or notice from the Collateral Agent.

**WHEREAS**, under the terms of the Indenture, the Notes matured on May 31, 2022 (the "**Maturity Date**"), at which time all amounts due under the Indenture, including principal, interest, fees, costs, and other expenses, became due and payable;

**WHEREAS**, the Debtor failed to make any payments on the Notes on the Maturity Date and is in default under the terms of the Indenture;

4

WHEREAS, on August 16, 2022, the Collateral Agent delivered a notice (the "**Notice of Exclusive Control**") to Prosperity exercising control over the Deposit Accounts and directing Prosperity to transfer funds to an account with the Indenture Trustee in the name of the Collateral Agent;

WHEREAS, concerned that others might assert an interest in such funds, Prosperity segregated certain funds in the amount of $4,463,804.68 (the "**Deposit Account Funds**") into an escrow account, subject to the rights and claims of the Collateral Agent and the Indenture Trustee, and confirmed the continuing control of the Collateral Agent;

WHEREAS, on September 6, 2022 (the "**Petition Date**"), certain members of the Majority Noteholder Group filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against the Debtor. [Docket No. 1]. Additional creditors thereafter joined in the petition;

WHEREAS, the Indenture Trustee and the Collateral Agent assert that as of the Petition Date, the principal amount outstanding on the Notes was $18,018,573.00 plus accrued and unpaid interest of $720,160.10 and additional fees, costs, and expenses payable under the Indenture and related documents. Additional asserted interest, default interest, fees, costs, and expenses have continued to accrue since the Petition Date. For purposes of this Stipulation and Agreed Order only, the Chapter 7 Trustee does not contest the foregoing, reserving his right to otherwise contest the same;

WHEREAS, on December 12, 2022, the Court entered an Order for Relief. [Docket No. 132]. On December 14, 2022, the United States Trustee appointed the Chapter 7 Trustee as interim chapter 7 trustee for the Debtor. [Docket No. 141];

WHEREAS, on December 17, 2022, the Indenture Trustee and the Collateral Agent filed a demand for adequate protection and objection to use of cash collateral pursuant to sections 361,

5

362(d)(1), and 363(3) of the Bankruptcy Code (the "**Objection**"). [Docket 151]. As more fully set forth in the Objection:

    a.    The Indenture Trustee and the Collateral Agent hold valid, perfected, unavoidable, and enforceable first priority liens on and security interests, on behalf of themselves and the holders of the Notes in substantially all of the Debtor's property, including the Deposit Accounts.

    b.    The Indenture Trustee and the Collateral Agent object to any use of cash collateral and demand adequate protection of all their rights and interests in the Collateral, including cash collateral and including, but not limited to, the right to payment of fees and expenses and indemnification against any claims or liability.[3]

    c.    Section 363(c)(2) forbids use, sale, or lease of cash collateral by the debtor or trustee unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

    d.    The Indenture Trustee and Collateral Agent do not consent to use of cash collateral and no order has been obtained from this Court authorizing the Debtor's use of cash collateral. Accordingly, the Debtor and the Chapter 7 Trustee may not use, sell, or lease cash collateral.

**WHEREAS**, as a result of the foregoing, the Deposit Account Funds and any interest earned thereon are property of the Estate subject to the valid, perfected, unavoidable, and enforceable liens in the Deposit Account Funds held by the Collateral Agent;

**WHEREAS**, the Parties have agreed that the Deposit Account Funds, together with all interest earned thereon, should be transmitted to the Chapter 7 Trustee subject to the valid, perfected, unavoidable, and enforceable liens on, and security interests in, the Deposit Accounts held by the Collateral Agent, and that the Parties shall mutually release and be released from all claims that might be held or asserted by the Parties with regard to the Deposit Accounts;

---

[3] As defined in Section 363(a) of the Bankruptcy Code, cash collateral includes: cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property whether existing before or after the commencement of a case under this title.

**WHEREAS**, this Stipulation and Agreed Order was negotiated, and entered into (as applicable) by each of the Parties without collusion, in good faith, and from arms' length bargaining positions;

**WHEREAS**, the terms of the Stipulation and Agreed Order are prudent, reasonable, fair, and equitable, in the best interests of each Party, and reflect the sound and reasonable exercise of judgment by each Party; and

**WHEREAS**, proper, timely, and adequate notice of the Motion and the hearing thereon was provided to all necessary persons and entities, including but not limited to the holders of the Notes. Notice given by the Indenture Trustee to holders of the Notes was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion or the hearing is required. The notice informed holders of the Notes that, *inter alia*, any holder of the Notes who does not make a timely objection to the Motion shall be deemed to have waived such objection and consented to the entry of this Stipulation and Agreed Order and shall forever be foreclosed from making any objection relating to the Motion or this Stipulation and Agreed Order.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND ORDERED**:

1. The settlement embodied in this Stipulation and Agreed Order is approved pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

2. The above recitals are incorporated herein by reference and constitute the Court's findings.

3. The settlement embodied in this Stipulation and Agreed Order is fair and equitable, plainly above the lowest point in the range of reasonableness, a sound exercise of the Chapter 7 Trustee's business judgment, and in the best interests of the Estate and its creditors.

4. The Deposit Account Funds, together with all interest earned thereon, are property of the Estate subject to the valid, perfected, unavoidable, and enforceable liens in the Deposit Accounts held by the Collateral Agent. Full and proper consideration is being provided for each transaction the subject of this Stipulation and Agreed Order.

5. The Chapter 7 Trustee, for the Estate, is hereby allowed an agreed surcharge under 11 U.S.C. § 506(c), against the Deposit Account Funds, in the amount of $100,000.00 (the "**Agreed Surcharge**"), which Agreed Surcharge shall constitute unencumbered property of the Estate, in full and final satisfaction of any surcharge claim assertable by the Chapter 7 Trustee with respect to the Deposit Account Funds, without prejudice to any other surcharge claims that the Chapter 7 Trustee may hold, including against the Collateral Agent and Indenture Trustee, as against any other collateral, and without prejudice to all defenses and issues regarding the same, and in no event shall the Parties' agreement as to the Agreed Surcharge be used as any admission as to the validity of any other surcharge claim or be used to prejudice any defense or other issue with respect to any such other surcharge claim.

6. The Parties have acted in good faith, in reasonable reliance on representations of the Debtor and those acting on its behalf, and in accordance with the applicable governing documents.

7. Within three (3) business days of the entry of this Stipulation and Agreed Order by the Court, Prosperity shall transfer the Deposit Account Funds, together with all interest earned thereon, to the Chapter 7 Trustee. No later than one (1) business day thereafter, the Chapter 7 Trustee shall, and is ordered and directed to, transfer the Deposit Account Funds, less the Agreed Surcharge, to the Collateral Agent pursuant to the payment instructions contained in the Notice of Exclusive Control, to be further applied in accordance with the Indenture. For the avoidance of

doubt, the Agreed Surcharge shall not be credited as a payment of any obligations due under the Indenture or the Notes.

8.  Upon the transfer of the Deposit Account Funds, together with all interest earned thereon, to the Estate, the Parties shall grant the following releases (the "**Releases**"):

> **Release by Chapter 7 Trustee of Prosperity**: The Chapter 7 Trustee, solely in his capacity as Chapter 7 Trustee, on behalf of the Debtor and the Estate, releases and discharges Prosperity, and each of its officers, directors, shareholders, members, partners, employees, professionals, and advisors, from any and all claims, causes of action, avoidance actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims asserted or assertable, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity contract, tort, or otherwise), including for the avoidance of doubt any causes of action or remedies under chapter 5 of the Bankruptcy Code, based on or relating to, or in any manner arising from, in whole or in part, the Deposit Accounts and any agreements between Prosperity and the Debtor or any of the Debtor's insiders or affiliates. For the avoidance of doubt, the Chapter 7 Trustee does not release any third party (*i.e.*, a person or entity other than Prosperity or any of its officers, directors, shareholders, members, partners, employees, professionals, and advisors) from potential avoidance actions related to payments made by the Debtor to Prosperity that benefited such party. Nothing in this Release shall be deemed to release any claims or causes of action to enforce the terms of this Stipulation and Agreed Order.
>
> **Release by Chapter 7 Trustee of the Indenture Trustee, the Collateral Agent, the Majority Noteholder Group**: The Chapter 7 Trustee, solely in his capacity as Chapter 7 Trustee, on behalf of the Debtor and the Estate, releases and discharges the Indenture Trustee, the Collateral Agent, and the Majority Noteholder Group, and each of their respective officers, directors, shareholders, members, partners, employees, professionals, and advisors, from any and all claims, causes of action, avoidance actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims asserted or assertable, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity contract, tort, or otherwise), including for the avoidance of doubt any causes of action or remedies under chapter 5 of the Bankruptcy Code, based on or relating to, or in any manner arising from, in whole or in part, the Deposit Accounts. Nothing in this Release shall be deemed to release any claims or causes of action to enforce the terms of this Stipulation and Agreed Order.
>
> **Release by the Indenture Trustee, the Collateral Agent, and the Majority Noteholder Group**: The Indenture Trustee, the Collateral Agent, and the Majority Noteholder Group release and discharge the Chapter 7 Trustee and Prosperity, and each of their respective officers, directors, shareholders, members, partners, employees, professionals, and

9

advisors, from any and all claims, causes of action, avoidance actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims asserted or assertable whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity contract, tort, or otherwise), including for the avoidance of doubt any causes of action or remedies under chapter 5 of the Bankruptcy Code, based on or relating to, or in any manner arising from, in whole or in part, the Deposit Accounts and any agreements between Prosperity and the Debtor or any of the Debtor's insiders or affiliates.  Nothing in this Release shall be deemed to release any claims or causes of action to enforce the terms of this Stipulation and Agreed Order.

**Release by Prosperity**:  Prosperity hereby releases the Chapter 7 Trustee, the Indenture Trustee, the Collateral Agent, and the Majority Noteholder Group, and each of their respective officers, directors, shareholders, members, partners, employees, professionals, and advisors, from any and all claims, causes of action, avoidance actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims asserted or assertable whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity contract, tort, or otherwise) based on or relating to, or in any manner arising from, in whole or in part, the Deposit Accounts.  Nothing in this Release shall be deemed to release any claims or causes of action to enforce the terms of this Stipulation and Agreed Order.  For the avoidance of doubt Prosperity does not so release the Debtor or any of its insiders or affiliates from any claim or cause of action whatsoever, and Prosperity's claims and causes of action against the Debtor and any of its insiders or affiliates are expressly preserved.

9. Based upon evidence that proper, timely, and adequate notice of the Motion and the hearing thereon was provided to the holders of the Notes and that no objections were filed, holders of the Notes shall be foreclosed forever from making any objection relating to the Motion or this Stipulation and Agreed Order, which objections shall be deemed to have been waived, and this Stipulation and Agreed Order shall be binding upon holders of the Notes in all respects.

10. The Indenture, the Pledge and Security Agreement, and related documents and the rights, claims, and obligations arising thereunder (including, without limitation, all obligations and indebtedness of Debtor and the Grantors to the Collateral Agent, the Indenture Trustee, and holders of the Notes) shall remain outstanding and be in full force and effect in accordance with their original terms, and nothing in this Stipulation and Agreed Order shall constitute a waiver, termination, release, discharge, forgiveness, abandonment, or novation of any term or provision of

the Indenture, the Pledge and Security Agreement, and related documents, or any rights, remedies, or privileges arising therefrom.

11. Considering the relative probabilities of success, the complex nature and inherent and uncertain risks of litigation, and the cost, expense, inconvenience, and delay associated with the same, the agreement approved hereby is prudent, reasonable, fair and equitable, and reflects the sound and reasonable exercise of business judgment by the Chapter 7 Trustee, the Collateral Agent, the Indenture Trustee, and Prosperity.

12. In connection with the negotiation and proposal of this Stipulation and Agreed Order, the Indenture Trustee, the Collateral Agent, and Prosperity diligently and in good faith discharged their duties and obligations pursuant to the Indenture, the Pledge and Security Agreement, the DACAs, and related documents, and otherwise conducted themselves with respect to all matters in any way related to the Notes and holders of the Notes, the Collateral, and the Deposit Accounts with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

13. The relief granted pursuant to this Stipulation and Agreed Order shall be effective immediately, and the requirements of Bankruptcy Rule 6004(h), to the extent applicable, are hereby waived.

14. This Court shall retain jurisdiction with respect to all matters arising under or related to this Stipulation and Agreed Order, including any disputes that may arise, and to interpret, implement, and enforce provisions of this Stipulation and Agreed Order.

# # # End of Order # # #

4864-2948-9752v.1 013229.00016

Dated: March __, 2023

**STIPULATED AND AGREED TO BY:**

**HUNTON ANDREWS KURTH LLP**

*/s/ DARFT*
Philip M. Guffy (TX Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, Texas  77002
Tel:     713-220-4200
Email:   pguffy@huntonak.com

Paul N. Silverstein
Brian Clarke
200 Park Avenue
New York, NY 10166
Tel:    (212) 309-1000
Email: psilverstein@huntonak.com
          brianclarke@huntonak.com

*Special counsel to UMB Bank, National Association as*
*Indenture Trustee, and counsel to the Majority Noteholder Group*

**SHIPMAN & GOODWIN LLP**

*/s/ DRAFT*
Kathleen M. LaManna
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Tel:     (860) 251-5000
Email:   klamanna@goodwin.com

*Counsel to U.S. Bank National Association*
*as Collateral Agent*

**MUNSCH HARDT KOPF & HARR, P.C.**

*/s/ DRAFT*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201

12

Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com
　　　　tberghman@munsch.com

*Proposed attorneys for Scott M. Seidel, Trustee*

/s/ DRAFT
**JACKSON WALKER LLP**
Victoria Argeroplos
Texas Bar No. 24105799
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone:　　713-752-4334
Facsimile:　　713-308-4314
Email: vargeroplos@jw.com

**Counsel for Prosperity Bank**

4864-2948-9752v.1 013229.00016