# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement") is made by **Goodman Networks Inc.** a Texas Corporation ("Assignor") in favor of **18920 NW 11th LLC** a Florida limited liability company ("Assignee"), as of the date set forth below.

## WITNESSETH:

**WHEREAS**, the Assignor is the holder of that certain secured promissory note, issued by American Metal Recovery and Recycling Inc. ("AMRR"), in the principal amount of **$44,000,000.00** (the "AMRR Note");

**WHEREAS**, the Assignor is the holder of that certain licensing agreement, issued by Tiger Athletic Foundation. ("Licensing Agreement")

**WHEREAS**, the Assignor is the holder of a promissory note issued by Assignor in the amount of $50,000,000; (the "18920 Note")

**WHEREAS**, the Assignor owns certain trademarks for Goodman Networks Inc. and affiliated entiites; (the "Trademarks")

**WHEREAS**, the Assignor seeks to settle the balance of 18920 Note in exchange for a release of the balance of the Note;

**NOW THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby takes the following actions:

1. <u>Settlement Terms</u>. The Parties hereby agree as follows:

    i. Assignee shall release Assignor of all obligations arising from the 18920 Note.
    ii. Assignor shall deliver to Assignee $14,500,000. ("Settlement Payment")
    iii. Assignor shall divide 50% of its interest in the AMRR Note and deliver a promissory note to Assignee in the amount of $22,000,000 payable from AMRR to Assignee.
    iv. Assignor shall transfer and Assign all rights and interests in the Trademarks.
    v. Assignor shall transfer and Assign all rights and interests in the Licensing Agreement.

    b. Upon delivery of the Settlement Payment and assignments, the Assignee shall assume all of the Assignor's rights and benefits in respect of the AMRR Note, Trademarks, and Licensing Agreement. Further, Assignee shall release Assignor all obligations arising from the 18920 Note.

2. **REPRESENTATIONS AND WARRANTIES.**



Exhibit
JAMG 0010
James Goodman

a. Assignor hereby represents and warrants that:

   i. The Assignor holds its right in the Assigned Amount free and clear of all mortgages, pledges, restrictions, liens, charges, encumbrances, security interests, obligations or other claims.

   ii. The Assignor has all requisite power and authority to enter into and perform this Agreement and to consummate the Assignment contemplated pursuant to the terms of this Agreement. Upon execution and delivery hereof, this Agreement shall be a legal, valid, and binding agreement of the Assignor, enforceable against the Assignor in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency or other laws affecting creditors' rights and by general principles of equity.

   iii. There are no claims, actions, suits, or proceedings pending or threatened against the Assignor, which, if determined adversely to the Assignor, would materially and adversely affect the Assignor's ability to perform its obligations under this Agreement.

   iv. No consent, approval, or agreement of any individual or entity is required to be obtained by the Assignor in connection with the execution and performance by the Assignor of this Agreement or the execution and performance by the Assignor of any agreements, instruments, or other obligations entered into in connection with this Agreement.

   v. The Assignor has taken no action, and has no knowledge of any action that would give rise to any claim by any person for brokerage commissions, finder's fees, or similar payments relating to this Agreement or the transactions contemplated hereby.

b. Assignee hereby represents and warrants that:

   i. The Assignee has all requisite power and authority to enter into and perform this Agreement and to consummate the Assignment contemplated pursuant to the terms of this Agreement. Upon execution and delivery hereof, this Agreement shall be a legal, valid, and binding agreement of the Assignor, enforceable against the Assignee in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency or other laws affecting creditors' rights and by general principles of equity.

   ii. There are no claims, actions, suits, or proceedings pending or threatened against the Assignee, which, if determined adversely to the Assignee, would materially and adversely affect the Assignee's ability to perform its obligations under this Agreement.

   iii. No consent, approval, or agreement of any individual or entity is required to be obtained by the Assignee in connection with the execution and performance by

> the Assignee of this Agreement or the execution and performance by the Assignee of any agreements, instruments, or other obligations entered into in connection with this Agreement.
>
> iv. The Assignee has taken no action, and has no knowledge of any action taken by any other person and/or entity that would give rise to any claim by any person/entity for brokerage commissions, finder's fees or similar payments relating to this Agreement or the transactions contemplated hereby.

3. Hold Harmless. Assignor hereby agrees to fully defend, indemnify and hold Assignee harmless from any and all claims related to this Agreement.

4. Parties Bound. Each of the Assignor and the Assignee hereby accepts the foregoing assignment and transfer and party promises to be bound by and upon all the covenants, agreements, terms, and conditions set forth therein.

5. Benefit and Assignments. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns; provided that no party, except the Assignee, shall assign or transfer all or any portion of this Agreement without the prior written consent of the other party, and any such attempted assignment shall be null and void and of no force or effect.

6. Headings. The paragraph headings of this Agreement are for convenience of reference only and do not form a part of the terms and conditions of this Agreement or give full notice thereof.

7. Severability. Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability, without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8. Entire Agreement. This Agreement contains the entire understanding between the parties, no other representations, warranties or covenants having induced either party to execute this Agreement and supersedes all prior or contemporaneous agreements with respect to the subject matter hereof. This Agreement may not be amended or modified in any manner except by a written agreement duly executed by the party to be charged, and any attempted amendment or modification to the contrary shall be null and void and of no force or effect.

9. Counterparts. This Agreement may be executed in any number of counterparts by original, facsimile or email signature. All executed counterparts shall constitute one Agreement not withstanding that all signatories are not signatories to the original or the same counterpart. Facsimile and scanned signatures are considered original signatures.

10. Modification. This Agreement may only be modified in a writing signed by all Parties.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, Assignor has executed this Assignment as of March 10, 2022.

**Assignor: Goodman Networks Inc.**

*James Frinzi*
—DocuSigned by: James Frinzi—
James Frinzi
*Title:* CEO

**Assignee: 18920 NW 11th, LLC**

—DocuSigned by:
*Evelina Pinkhasova*—
Name: Evelina Pinkhasova
Title: Member