# Rukavina, Davor

| | |
|---|---|
| **From:** | James W. Bartlett, Jr. <jbartlett@okinadams.com> |
| **Sent:** | Wednesday, March 8, 2023 1:32 PM |
| **To:** | Rukavina, Davor; Berghman, Thomas |
| **Subject:** | Revised NDA |
| **Attachments:** | AMRR-Goodman Trustee NDA.docx |

**External Email: Use caution with links and attachments.**

Davor/Thomas, attached are additional revisions following my call with Jim F. today.

Thanks.

Jim



**James W. Bartlett, Jr.**
**Okin Adams Bartlett Curry LLP**
1113 Vine St. Suite 240
Houston, Texas 77002
Direct: (713) 255-8851
Main: (713) 228-4100
Fax: (346) 247-7158
jbartlett@okinadams.com
www.okinadams.com
Vcard

**Confidentiality Notice:**
This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT**

This Confidentiality and Nondisclosure Agreement (the "Agreement") is made and entered into as of ~~February~~ March 8~~16~~, 2023 (the "Effective Date"), by and between Scott M. Seidel, the duly appointed chapter 7 trustee (the "Recipient") for Goodman Networks, Inc. (the "Debtor"), and MBG Holdings Inc., f/k/a American Metals Recovery and Recycling, Inc. (together with all of its wholly owned subsidiaries and affiliates, "~~AMRR~~MBG" or the "Discloser").

WHEREAS, certain petitioning creditors initiated an involuntary chapter 7 bankruptcy case for the Debtor on September 6, 2022 in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") under Case No. 22-31641 (the "Bankruptcy Case");

WHEREAS, the Bankruptcy Court entered an Order for Relief in an Involu**nta**~~o~~ry Case on December 12, 2022 in the Bankruptcy Case;

WHEREAS, the Recipient was appointed the chapter 7 trustee of the Debtor in the Bankruptcy Case;

WHEREAS, GNET ATC, ~~Inc.~~ LLC ("GNET") is the wholly-owned subsidiary of the Debtor;

WHEREAS, ~~AMRR~~MBG, as borrower, entered into a Secured Promissory Note dated January 21, 2022 with GNET, as the lender, for $44,000,000 ("Note") and a Security Agreement dated January 21, 2022 (together with the Note, the "Loan"). GNET holds at least a one-half interest in the Note;[1]

WHEREAS, Recipient is considering a potential transaction with the Discloser involving the Note (the "Proposed Transaction");

WHEREAS, in connection with the Proposed Transaction, Recipient may obtain Confidential Loan Information (defined hereafter) from the Discloser; and

WHEREAS, in consideration of receiving the Confidential Loan Information, Recipient agrees to the provisions of this Agreement;

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Defined Terms. For purposes of this Agreement, the following terms will have the meanings as set forth below.

---

[1] In the Note and in the Security Agreement, GNET is erroneously referred to as GNET ATC Inc.

(a) "Agreed Protective Order" means the Agreed Protective Order entered in the Bankruptcy Case by the Bankruptcy Court on or about November 21, 2022.

(b) "Confidential Loan Information" means, subject to the final sentence of this paragraph, all information furnished directly or indirectly by the Discloser or its Representatives to Recipient in Recipient's role as a holder of the Note, regarding the Loan, ~~AMRR~~MBG, or MBG~~AMRR's~~'s assets or businesses, regardless of whether specifically identified as "confidential" and regardless of whatever form or medium such information may take during or after its communication and will include, but not be limited to, information regarding ~~AMRR's~~ MBG's financial data, operations, projections, financial models, parties with whom ~~AMRR~~ MBG is endeavoring to do business, potential financing transactions, or potential acquisitions, and all materials containing or reflecting such information. Notwithstanding the foregoing, information produced by Discloser to Recipient that Discloser has also produced in the Bankruptcy Case pursuant to the Agreed Protective Order shall not constitute "Confidential Loan Information" under this Agreement, but rather shall continue to be governed in all respects by the Agreed Protective Order, including the limitations on use and disclosure contained therein.

(c) "Improper Means" carries the definition set forth in the TUTSA, Texas Civil Practice & Remedies Code § 134A.002.

(d) "Representatives" means with respect to any person, such person's members, partners, directors, officers, employees, agents, financing sources, and advisors (including trustees, attorneys, accountants, consultants, bankers, and financial advisors).

(e) "TUTSA" means the Texas Uniform Trade Secrets Act, Texas Civil Practice & Remedies Code §§ 134A.001-008.

2. Nondisclosure Obligations. Recipient agrees that Recipient and his Representatives will not disseminate or in any way disclose any Confidential Loan Information to any person, firm, or business, except to Recipient's Representatives who have a legitimate need to know the Confidential Loan Information in order to evaluate the Proposed Transaction. Recipient agrees that Recipient will cause his Representatives to observe all terms of this Agreement, and that Recipient ~~w~~will be responsible for any breach of this Agreement by any of Recipient's Representatives, in addition to any liability to Discloser such Representative(s) may have. Notwithstanding anything to the contrary in this Agreement, and subject to Section 3 below, no Confidential Loan Information shall be provided or made available by the Recipient or any of this Representatives to John Goodman, James Goodman, or Jason Goodman (each, a "**Goodman Party**"), or any agent of any Goodman Party.

3. Exclusions from Nondisclosure Obligations. Recipient's and his Representatives' obligations under ~~Paragraph~~ Section 2 above, with respect to any portion of Confidential Loan Information, will not apply to any such portion that is generally known or available on an unrestricted basis to the public prior to disclosure hereunder or thereafter becomes so known or available on an unrestricted basis other than as a result of: (a) a breach of this Agreement by the Recipient; (b) disclosure by any of the Recipient's Representatives; or (c) any other Improper Means. In the event that Recipient or any of his Representatives are required by any state or federal law, court order, any state or federal rules of procedure, any regulation, interrogatories, requests

for information or admissions or documents, subpoenas, civil investigative demand or similar process to disclose any Confidential Loan Information, such party will provide the Discloser with written notice of such request or requirement prior to Recipient or his Representatives producing the Confidential Loan Information so that the Discloser may, at its own expense, seek an appropriate protective order or take other appropriate action (and if the Discloser seeks such an order or takes such action, the Recipient will provide such cooperation as the Discloser will reasonably request). If Recipient or any of his Representatives are nonetheless required to disclose Confidential Loan Information, Recipient may disclose only that portion of the Confidential Loan Information that is legally required to be disclosed.

4. <u>No Representations or Warranties Regarding Accuracy or Completeness</u>. Neither the Discloser nor any of its Representatives make any representation or warranty, expressed or implied, as to the accuracy or completeness of the Confidential Loan Information disclosed to the Recipient hereunder. Neither the Discloser nor any of its Representatives will be liable to the Recipient or any of his Representatives relating to or resulting from the Recipient's or any of his Representatives' use of any of the Confidential Loan Information or any errors therein or omissions therefrom.

5. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, but such counterparts will constitute one and the same instrument. A signed copy of this Agreement, bearing either wet signatures or electronic signatures, delivered by facsimile, email, or other means of electronic transmission will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

6. <u>Governing Law; Consent to Jurisdiction, and Authority of Bankruptcy Court</u>. This Agreement will be governed by and construed in all respects in accordance with the laws of the State of Texas without regard to conflicts of law principles. The Discloser and the Recipient each agree that the Bankruptcy Court has subject matter jurisdiction to resolve disputes arising from this Agreement and that the venue for any such disputes will be in the Bankruptcy Court. The Discloser and the Recipient each consent to the Bankruptcy Court's authority to enter final orders resolving any disputes arising from the Agreement.

7. <u>Severability</u>. If any provision of this Agreement is held by a court of law to be illegal, invalid, or unenforceable: (a) that provision will be deemed amended to achieve as near as possible the same economic effect as the original provision; and (b) the legality, validity and enforceability of the remaining provisions of this Agreement will not be affected or impaired thereby.

8. <u>Assignment</u>. No party may assign or delegate any of its/his rights or duties under this Agreement without the other party's written and signed consent, which shall not be unreasonably withheld, delayed, or conditioned.

9. <u>Binding Agreement</u>. This Agreement will be binding upon, inure to the benefit of and be enforceable by the parties' respective successors and permitted assigns.

4854-7210-5041, v. 3

10. <u>Notices</u>: Any notice required or permitted by this Agreement will be in writing and will be delivered as follows, with notice deemed given as indicated: (a) by email; (b) by personal delivery, when personally delivered; (c) by overnight courier, upon written verification of receipt; or (d) by certified or registered mail, return receipt requested, upon verification of receipt.

Notice to the Discloser will be sent to:

American Metals Recovery and Recycling, Inc.
Attn: James Frinzi
4301 Westbank Drive, Suite B-110
Austin, TX 78746
Email: james.frinzi@multibandglobal.com

with a copy to

Joseph O'Bell
4301 Westbank Drive, Suite B-110
Austin, TX 78746
Email: joey.obell@multibandglobal.com

<u>and</u>

James W. Bartlett, Jr.
Okin Adams Bartlett Curry LLP
1113 Vine Street, Suite 240
Houston, TX 77002
Email: jbartlett@okinadams.com

Notice to the Recipient will be sent to:

Scott M. Seidel
Seidel Law Firm
6505 W. Park Blvd., Suite 306
Plano, TX 75093
Email: scott@scottseidel.com

with a copy to

Munsch Hardt Kopf & Harr P.C.
Attn: Davor Rukavina and Thomas Berghman
500 N Akard Street, Suite 3800
Dallas, TX 75201
Email: drukavina@munsch.com; tberghman@munsch.com

-4-

4854-7210-5041, v. 3

Exhibit G    Page 6 of 6

11. <u>Headings</u>. Headings of the ~~paragraphs~~ <u>sections</u> of this Agreement are for convenience of reference only and should not be used to interpret any provisions of this Agreement.

12. <u>Entire Agreement</u>. Except for the Agreed Protective Order referenced herein, this Agreement constitutes the entire agreement with respect to the matters covered hereby and supersedes all prior or contemporaneous oral or written agreements concerning such matters.

13. <u>Interpretation of Agreement</u>. This Agreement shall be construed without regard to the party or parties responsible for its preparation, and shall be deemed to have been prepared collectively by the parties. Any ambiguity or uncertainty arising herein shall not be interpreted or construed against any party hereto on the basis that such party prepared or drafted a particular provision of this Agreement. For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, the words "hereunder," "herein," and other words of like import shall refer to the whole of this Agreement and not to any particular Section or clause of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**DISCLOSER:**

**MBG Holdings Inc., f/k/a American Metals Recovery and Recycling, Inc.**

_____

By: James Frinzi
Chief Executive Officer

**RECIPIENT:**

**Scott M. Seidel, Chapter 7 Trustee for Goodman Networks, Inc.**

_____

-5-