# Rukavina, Davor

| | |
|---|---|
| **From:** | Funk, Brenda |
| **Sent:** | Friday, March 24, 2023 9:46 PM |
| **To:** | James W. Bartlett, Jr. |
| **Cc:** | Rukavina, Davor; Berghman, Thomas |
| **Subject:** | Goodman: MBG Forbearance Agreement |
| **Attachments:** | AMRR Forbearance V1.docx |

Jim,

Attached is a draft MBG Forbearance Agreement. As requested, the Agreement includes the proposed overall settlement terms subject to further due diligence by the Trustee and Bankruptcy Court approval.

Understanding that MBG is a public company and this might be considered a material event requiring reporting on Form 8-K, we look forward to hearing your thoughts on what should be included in the publicly filed Forbearance Agreement vs a confidential side letter. Let us know what MBG's securities counsel would prefer, if something different than filing the attached in its entirety.

Let us know when you have had an opportunity to review.

Regards,
Brenda

## LIMITED FORBEARANCE AGREEMENT

This LIMITED FORBEARANCE AGREEMENT (this "**Agreement**") is entered into as of March _____, 2023, between MBG Holdings, Inc. (f/k/a American Metals Recovery and Recycling Inc.), a Nevada corporation (the "**Maker**") and GNET ATC LLC (a/k/a GNET ATC INC, and the "**Lender**").

RECITALS:

A. Maker and Lender are parties to that certain Secured Promissory Note dated as of January 21, 2022 (the "**AMRR Note**"), pursuant to which Lender loaned Maker the principal sum of $44,000,000 (the "**Total Secured Obligation**").

B. On or around March 9, 2022, Goodman Networks, Inc. ("**Goodman**"), sole member of Lender, transferred to 18920 NW 11th LLC $22,000,000 ("**18920**") of the Total Secured Obligation (the "**18920 Secured Obligation**") leaving Lender with $22,000,000 of its original Total Secured Obligation (the "**GNET Secured Obligation**"), which transfer Scott M. Seidel (the "**Trustee**"), the Chapter 7 trustee of Maker in Bankruptcy Case No. 22-31641 (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"), asserts is avoidable as a fraudulent transfer. Without waiving Lender's rights to avoid the transfer of the 18920 Secured Obligation, Maker is indebted and obligated to Lender for, without limitation, the GNET Secured Obligation plus accrued and unpaid interest thereon.

C. Maker acknowledges that a default has occurred and is continuing under the AMRR Note as a result of the Maker's failure to timely pay principal (the "**Specified Default**"). As of the date of this Agreement, Maker has failed to pay over $4.7 million in principal due Lender as payment on the GNET Secured Obligation.

D. Maker has requested that Lender, upon certain terms and conditions set forth in this Agreement, forbear from exercising its rights and remedies for a limited period expiring on the Forbearance Termination Date (as defined below) arising as a result of the occurrence and continuation of the Specified Default as provided herein.

E. Maker has also requested that Lender, upon certain terms and conditions set forth in this Agreement, forbear from exercising its rights and remedies during the Forbearance Period (defined below) as to defaults occurring or continuing during the Forbearance Period that may arise as a result of Maker's anticipated non-payment of principal during the Forbearance Period (the "**Potential Defaults**").

F. Lender is willing to grant such forbearance subject to the terms and conditions of this Agreement.

G. Separately, the Lender, the Maker, and 18920 have reached a compromise in principle of all matters between them, which they set forth herein as a non-binding letter of intent.

H. The Trustee, as the trustee of Goodman, as the sole member of Lender, has the sole authority to cause Lender to enter into this Agreement.

NOW, THEREFORE, in consideration of, and in reliance upon, the representations, warranties, covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Definitions**. The following terms shall have the following meanings:

"**First Payment**" means the first payment to the Trustee by Maker of $500,000.00 which is due on or before April 3, 2023. .

"**Forbearance Effective Date**" means the date on which the First Payment is made.

"**Forbearance Period**" means the period commencing on the Forbearance Effective Date and continuing until the Forbearance Termination Date. For the avoidance of doubt, if the First Payment is not made on or before April 3, 2023, the Forbearance Period will not commence.

"**Forbearance Termination Date**" means the earlier of: (i) July 14, 2023, (ii) the date on which a Forbearance Termination Event occurs; or (iii) the date on which 18920 exercises any rights as a secured creditor against Maker, including by initiating any foreclosure, receivership, or other legal proceeding.

"**Forbearance Termination Event**" means the occurrence of any of the following: (i) any representation or warranty made by the Maker in this Agreement shall be false in any material respect when made, (ii) the Maker shall fail to perform, observe or comply timely with each and every covenant, agreement or term contained in this Agreement, (iii) the Maker shall (A) commence a voluntary proceeding seeking liquidation, reorganization, compromise, arrangement, wind-up or dissolution, or other relief with respect to itself or its debts under any bankruptcy, insolvency, corporate, partnership or other similar law now or hereafter in effect or seeking the appointment of a trustee, interim receiver, receiver, liquidator, custodian, monitor or other similar official of it or a substantial part of its property, (B) consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it, or (C) make a general assignment for the benefit of its creditors, (iv) an involuntary proceeding shall be commenced against the Maker seeking liquidation, reorganization, compromise, arrangement, wind-up or dissolution, or other relief with respect to it or its debts under any bankruptcy, insolvency, corporate, partnership, or other similar law now or hereafter in effect or seeking the appointment of a trustee, interim receiver, receiver, liquidator, custodian, monitor or other similar official for it or a substantial part of its property, (v) the Maker asserting any claim or cause of action to repudiate or assert a defense to this Agreement, the AMRR Note or initiating any judicial, administrative or arbitration proceeding against Lender related to the foregoing, (vi) any Event of Default shall occur or shall have occurred under this Agreement or the AMRR Note other than (A) the Potential Defaults, or (B) the Specified Default, or (vii) Maker shall fail to make the Second Payment on or before May 1, 2023.

"**Lender-Related Parties**" has the meaning given to such term in Section 9 hereof.

"**Second Payment**" means a second payment to the Trustee by Maker of $500,000.00 which is due and payable on or before May 1, 2023.

2.      **Forbearance**. Maker specifically acknowledges the existence and continuation of the Specified Default. In reliance on the representations, warranties, covenants and agreements contained in this Agreement, and subject to the satisfaction of each condition precedent set forth in Section 3 hereof but only so long as the Forbearance Termination Date shall not have occurred and except as permitted by this Agreement, the Lender hereby agrees to forbear during the Forbearance Period, conditioned on the Maker making the First Payment and/or the Second Payment, from exercising its rights and remedies under the AMRR Note and applicable law arising as a result of the occurrence or continuance of the Specified Default and the Potential Defaults. Notwithstanding the foregoing, the forbearance granted by the Lender shall not constitute, and shall not be deemed to constitute a waiver of the Specified Default, the Potential Defaults, or of any other default or event of default under the AMRR Note. On and after the Forbearance Termination

4859-8806-6905v.1

Date, the Lender's agreement hereunder to forbear shall terminate automatically without further act or action by the Lender, and the Lender shall be entitled to exercise any and all rights and remedies available to it under this Agreement or the AMRR Note, at law, in equity or otherwise without any further lapse of time, expiration of applicable grace periods or requirements of notice, all of which are hereby expressly waived by Maker. For the avoidance of doubt, the foregoing forbearance shall not prohibit the Lender from delivering notices of any other defaults, events of default or a Forbearance Termination Event.

3. **Forbearance Payments**. Both the First Payment and the Second Payment, to the extent that each is actually made, shall be applied against the obligations of Maker to the GNET Secured Obligation. Furthermore, conditioned on the making of the First Payment, the prior payment of $700,000.00 on or around _____, 2022, shall be applied to the GNET Secured Obligation. The First Payment and Second Payment shall be made by wire transfer to the Trustee pursuant to the Wire Transfer Instructions attached hereto.

4. **Representations and Warranties**. To induce the Lender to enter into this Agreement, Maker hereby represents and warrants as of the Forbearance Effective Date as follows:

4.1. **Organization; Powers**. Maker is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, has all requisite power and authority, and has all material governmental licenses, authorizations, consents and approvals necessary, to own its assets and to carry on its business as now conducted, and is qualified to do business in, and is in good standing in, every jurisdiction where such qualification is required, except where failure to have such power, authority, licenses, authorizations, consents, approvals and qualifications would not reasonably be expected to have a material adverse effect.

4.2. **Authority; Enforceability**. The execution, delivery and performance by Maker of this Agreement is within Maker's corporate powers and has been duly authorized by all necessary corporate, action (including any action required to be taken by any directors, partners, members, or managers, as applicable, of Maker, whether interested or disinterested, in order to ensure the due authorization of this Agreement). This Agreement has been duly executed and delivered by Maker and constitutes a legal, valid and binding obligation of Maker, enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.3. **Approvals; No Conflicts** The execution, delivery and performance by Maker of this Agreement (a) do not require any consent or approval of, registration or filing with, or any other action by, any Governmental Authority or any other third person (including shareholders or any class of directors, whether interested or disinterested, of the Maker or any other person), nor is any such consent, approval, registration, filing or other action necessary for the validity or enforceability of the AMRR Note and the Total Secured Obligation, except such as have been obtained or made and are in full force and effect, (b) will not violate any applicable law or regulation or the charter, bylaws or other organizational documents of Maker or any order of any Governmental Authority, (c) will not violate or result in a default under any, material agreement or other material instrument binding upon the Maker or any of its property, or give rise to a right thereunder to require any payment to be made by the Maker, and (d) will not result in the creation or imposition of any lien on any property of the Maker (other than the liens created by the AMRR Note).

4.4. **No Defenses**. Maker has no defenses to payment, counterclaims, or rights of setoff or recoupment with respect to Total Secured Obligations as of the Forbearance Effective Date. Without taking into effect the terms, conditions, and agreements set forth in this Agreement, as a result of the Specified Default, the Lender has the right to, in its sole and absolute discretion, to declare the unpaid principal amount of the GNET Secured Obligation under the AMRR Note, all interest accrued and unpaid

thereon, and all other amounts owing or payable to Lender under the AMRR Note to be immediately due and payable.

    4.5.    **No Other Defaults**. Except for the Specified Default, no other default or event of default has occurred and is continuing.

    4.6.    **Principal Balance; 18920 Secured Obligation**. As of the close of business on March 17, 2023, (a) the outstanding principal amount of the AMRR Note is $[44,000,000] and (b) the outstanding amount of the 18920 Secured Obligation is $[_____].

    4.7.    **Complete Disclosure**. None of the factual information furnished by or on behalf of Maker to the Lender for purposes of or in connection with this Agreement contains any material misstatement of fact or omits to state any material fact necessary to make the statements, in the light of the circumstances under which they were made, not misleading.

5.    **Covenants**. Maker shall comply timely with the covenants set forth in this Section 6 .

    5.1.    **[deleted]**.

    5.2.    **Status Calls.** On March 31, 2023 and on each second Friday thereafter, Maker will be available for conference calls during normal business hours ("**Status Calls**") for the purpose of providing the Lender with an update on the status and progress of any refinancing, restructuring and/or sale diligence, negotiations and documentation. In addition to the foregoing, Maker agrees that Status Calls shall be conducted promptly following a request by the Lender.

    5.3.    **18920 Secured Obligation**. Unless and until the 18920 Secured Obligation is returned to Lender (a) Maker will not make any payment of principal or interest in respect of the 18920 Secured Obligation, and (b) absent Lender's express consent, Maker will not convert to equity, amend or otherwise modify the 18920 Secured Obligation.

    5.4.    **Access; Cooperation**. Upon reasonable prior notice and reasonable coordination with, the Lender and related representatives and consultants shall have reasonable access during normal business hours to Maker's business premises and to the collateral to review, audit, appraise and evaluate the collateral and to inspect the financial records and other records of Maker concerning the operation of their businesses, their financial condition, the transfers and expenditures of funds generated therefrom, the accrual of expenses relating thereto, and any and all other records relating to the collateral or the operations of any of Maker. Maker will fully cooperate with the Lender and related representatives and consultants regarding such reviews, audits, evaluations and inspections, and Maker shall make its employees, consultants and professionals reasonably available to the Lender and related representatives and consultants in conducting such reviews, evaluations and inspections, in each case, during normal business hours (it being understood that a representative of the Maker is allowed to be present in any discussions with such employees, consultants and professionals). No such reviews, audits, appraisals, evaluations or inspections or visits shall unduly interfere with the business or operations of the Maker, nor result in any damage to Maker's property or other collateral.

    5.5.    **Further Information**. Marker will provide the Lender with (a) written notice within one (1) Business Day of the occurrence of any Forbearance Termination Event and/or any breach or violation of this Agreement by Maker, (b) such other information as may be reasonably requested by the Lender from time to time, promptly upon such request, including, without limitation (i) copies of any bank or other financial institution statements, (ii) accounts receivable and accounts payable agings and (iii) transactional documentation, including, without limitation, letters of intent or offers to purchase, lease

or license of any portion, all, or substantially all of the assets or ownership interests of any of the Maker or any of its subsidiaries, and letters of intent or commitments for any capital investment, loan or other financing in or to Maker.

        5.6.    **No Control**. No act committed or action taken by the Lender under this Agreement or the AMRR Note will be used, construed, or deemed to hold the Lender to be in control of the Maker, or the governance, management or operations of the Maker for any purpose, without limitation, or to be participating in the management of the Maker or acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Maker or its respective businesses (as such terms, or any similar terms, are used in the Code, Title 11 of the United States Code entitled "Bankruptcy", or the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Lender under this Agreement or the AMRR Note.

        5.7    **Expert Access**.  Maker shall give the access described in Section 5.7, above, to an expert selected and paid for by the Trustee in order to enable the Trustee to test the reasonableness of the proposed settlement included in Section 25 (Letter of Intent) of this Agreement.  To the extent requested by Maker, Trustee, Lender, and any expert chosen by Trustee shall promptly execute a reasonable confidentiality and nondisclosure agreement for this purpose.

It is acknowledged and agreed that the failure by Maker to comply with any covenant set forth in this Section 5 in any respect shall be deemed an immediate Event of Default and, for the avoidance of doubt, Maker shall not be entitled to any grace or cure period for such non-compliance that may be provided for in the AMRR Note.

        6.    **Preservation of Collateral**. Maker shall maintain the liens and security interests in the collateral created by the AMRR Note as first priority, perfected liens and security interests and shall defend such liens and security interests against the claims and demands of all Persons. At any time and from time to time, upon the request of the Lender, and at the sole expense of Maker, Maker will promptly and duly give, execute, deliver, indorse, file or record any and all amendments, notices (including, without limitation, notifications to financial institutions and any other Person), contracts, agreements, assignments, certificates, stock powers or other instruments, obtain any and all governmental approvals and consents and take or cause to be taken any and all steps or acts that may be necessary or advisable or as the Lender may reasonably request to create, perfect, establish the priority of, or to preserve the validity, perfection or priority of, the liens granted by the AMRR Note or to enable the Lender to enforce its rights, remedies, powers and privileges under the AMRR Note with respect to such liens or to otherwise obtain or preserve the full benefits of the AMRR Note and the rights, powers and privileges therein granted.

        7.    **Ratification of AMRR Note and Collateral**. Except as modified by this Agreement, Maker hereby acknowledges, ratifies, reaffirms and agrees that each of the AMRR Note to which it is a party and the first priority, perfected liens and security interests created thereby in favor of the Lender, in the collateral, are and will remain in full force and effect and binding on such Person, and are enforceable in accordance with their respective terms and applicable law. By its execution hereof, Maker acknowledges, ratifies and reaffirms all of the terms and provisions of the AMRR Note and the enforceability thereof against it, which terms and provisions, except as modified herein, are incorporated by reference as of the Forbearance Effective Date as if set forth herein including, without limitation, all promises, agreements, warranties, representations, covenants, releases, and indemnifications contained therein. Without limitation of the foregoing, Maker hereby acknowledges, ratifies and confirms the AMRR Note and all of its debts and obligations to the Lender thereunder.

8. **NO CLAIMS; RELEASE; COVENANT NOT TO SUE**. MAKER (IN ITS OWN RIGHT AND ON BEHALF OF ITS PREDECESSORS, LEGAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS) HEREBY EXPRESSLY AND UNCONDITIONALLY ACKNOWLEDGES AND AGREES THAT, AS OF THE DATE HEREOF, IT HAS NO SETOFFS, COUNTERCLAIMS, ADJUSTMENTS, RECOUPMENTS, DEFENSES, CLAIMS, CAUSES OF ACTION, ACTIONS OR DAMAGES OF ANY CHARACTER OR NATURE, WHETHER CONTINGENT, NONCONTINGENT, LIQUIDATED, UNLIQUIDATED, FIXED, MATURED, UNMATURED, DISPUTED, UNDISPUTED, LEGAL, EQUITABLE, SECURED OR UNSECURED, KNOWN OR UNKNOWN, ACTUAL OR PUNITIVE, FORESEEN OR UNFORESEEN, DIRECT, OR INDIRECT, AGAINST LENDER OR ANY OF ITS RESPECTIVE AFFILIATES OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, ATTORNEYS, CONSULTANTS OR REPRESENTATIVES OR ANY OF THEIR RESPECTIVE PREDECESSORS, SUCCESSORS OR ASSIGNS (COLLECTIVELY, THE "**LENDER-RELATED PARTIES**") OR ANY GROUNDS OR CAUSE FOR REDUCTION, MODIFICATION, SET ASIDE OR SUBORDINATION OF THE TOTAL SECURED OBLIGATION OR ANY LIENS OR SECURITY INTERESTS GRANTED OR CREATED UNDER OR IN CONNECTION WITH THE AMRR NOTE IN FAVOR OF THE LENDER. IN PARTIAL CONSIDERATION FOR THE AGREEMENT OF THE LENDER TO ENTER INTO THIS AGREEMENT, MAKER HEREBY KNOWINGLY AND UNCONDITIONALLY WAIVES AND FULLY AND FINALLY RELEASES AND FOREVER DISCHARGES THE LENDER-RELATED PARTIES FROM, AND COVENANTS NOT TO SUE THE LENDER-RELATED PARTIES FOR, ANY AND ALL SETOFFS, COUNTERCLAIMS, ADJUSTMENTS, RECOUPMENTS, CLAIMS, DEMANDS, CAUSES OF ACTION, ACTIONS, GROUNDS, CAUSES, DAMAGES, REMEDIES, COSTS AND EXPENSES OF EVERY NATURE AND CHARACTER, WHETHER CONTINGENT, NONCONTINGENT, LIQUIDATED, UNLIQUIDATED, FIXED, MATURED, UNMATURED, DISPUTED, UNDISPUTED, LEGAL, EQUITABLE, SECURED OR UNSECURED, KNOWN OR UNKNOWN, ACTUAL OR PUNITIVE, FORESEEN OR UNFORESEEN, DIRECT OR INDIRECT, ARISING OUT OF OR FROM OR RELATED TO ANY LAW, STATUTE, RULE, REGULATION, OR THE AMRR NOTE, WHETHER AT LAW, IN EQUITY, OR OTHERWISE, WHICH MAKER OWNS AND HOLDS AS OF THE DATE HEREOF, OR HAS AT ANY TIME PRIOR TO THE DATE HEREOF OWNED OR HELD, SUCH WAIVER, RELEASE AND DISCHARGE BEING MADE WITH FULL KNOWLEDGE AND UNDERSTANDING OF THE CIRCUMSTANCES AND EFFECTS OF SUCH WAIVER, RELEASE AND DISCHARGE AND AFTER HAVING CONSULTED LEGAL COUNSEL OF ITS OWN CHOOSING WITH RESPECT THERETO. THIS SECTION IS IN ADDITION TO ANY OTHER RELEASE OF ANY OF THE LENDER-RELATED PARTIES BY MAKER AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY MAKER IN FAVOR OF ANY OF THE LENDER-RELATED PARTIES, IT BEING THE INTENT OF MAKER THAT THIS RELEASE AND COVENANT NOT TO SUE BE AS BROAD AND INCLUSIVE AS PERMITTED BY APPLICABLE LAW.

9. **No Obligation**. Maker hereby acknowledges and understands that upon the expiration or earlier termination of the Forbearance Period, if the Specified Default has not been waived by written agreement, or if there shall at any time exist any other event of default, then the Lender shall have the right to proceed to exercise any or all available rights and remedies, which may include, without limitation, foreclosure on the collateral and/or institution of legal or equitable proceedings. The Lender shall have no obligation whatsoever to extend the maturity of the AMRR Note or the Total Secured Obligations, waive any default or event of default, defer any payments, or further forbear from exercising their rights and remedies.

10. **No Implied Waivers**. No failure or delay on the part of the Lender in exercising, and no course of dealing with respect to, any right, power or privilege under this Agreement or the AMRR Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement or the AMRR Note preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

11. **Survival**. All promises, representations, warranties, covenants, and agreements made by Maker in this Agreement or the AMRR Note will survive the execution and delivery of this Agreement and any Forbearance Termination Date in connection with the Agreement, and no investigation by the Lender or any closing will affect any right of the Lender to rely upon such promises, representations, warranties, covenants, and agreements.

12. **Review and Construction of Documents**. Maker hereby acknowledges, and represents and warrants to the Lender that Maker has (a) had the opportunity to consult with legal counsel of its own choice and has been afforded an opportunity to review this Agreement with its legal counsel, (b) reviewed this Agreement and fully understands the effects thereof and all terms and provisions contained herein, and (c) executed this Agreement of its own free will and volition. The recitals contained in this Agreement shall be construed to be part of the operative terms and provisions of this Agreement.

13. **ENTIRE AGREEMENT; AMENDMENT**. THIS AGREEMENT AND THE AMRR NOTE AS INCORPORATED HEREIN EMBODY THE FINAL, ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO REGARDING THE MATTERS CONTAINED HEREIN, INCLUDING THE LENDER'S FORBEARANCE WITH RESPECT TO ITS RIGHTS AND REMEDIES ARISING AS A RESULT OF THE SPECIFIED DEFAULT, AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF THE PARTIES HERETO. THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO. The provisions of this Agreement may be amended or waived only by an instrument in writing signed by Maker and Lender.

14. **Notices**. All notices, requests, demands and other communications under this Agreement will be given as follows:

> If to Lender:
> GNET ATC LLC
> Goodman Networks, Inc., its Sole Member
> Munsch Hardt Kopf & Harr, PC
> 500 N. Akard St., Suite 3800
> Dallas, Texas 75201-6659
> Attn: Davor Rukavina and Thomas Berghman
> Telecopy: 214.855.7584
> E-mail: drukavina@munsch.com
>     tberghman@munsch.com
>
> If to Maker:
> [ ]

15. **Successors and Assigns**. This Agreement will be binding upon, and will inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors and assigns,

4859-8806-6905v.1

provided that no Maker may not assign any rights or obligations under this Agreement without the prior written consent of the Lender.

16. **Tolling of Statutes of Limitation**. The parties hereto agree that all applicable statutes of limitations with respect to the AMRR Note shall be tolled and not begin running until the Forbearance Termination Date.

17. **Arms-Length/Good Faith**. This Agreement has been negotiated at arms-length and in good faith by the parties hereto.

18. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas and applicable laws of the United States of America.

19. **Interpretation**. Wherever the context hereof will so require, the singular shall include the plural, the masculine gender shall include the feminine gender and the neuter and vice versa. The headings, captions and arrangements used in this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

20. **Severability**. In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

21. **Counterparts**. This Agreement may be executed and delivered in any number of counterparts, and by different parties hereto on separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute one and the same instrument; provided, that no party shall be bound by this Agreement until Maker and Lender have executed a counterpart hereof. Execution of this Agreement via facsimile or other electronic transmission (e.g., ".pdf") shall be effective, and signatures received via facsimile or other electronic transmission shall be binding upon the parties hereto and shall be effective as originals.

22. **Further Assurances**. Maker agrees to execute, acknowledge, deliver, file and record such further certificates, instruments and documents, and to do all other acts and things, as may be reasonably requested by the Lender as necessary or advisable to carry out the intents and purposes of this Agreement.

23. **WAIVER OF JURY TRIAL**. MAKER HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT OR THE AMRR NOTE, ANY RIGHTS OR OBLIGATIONS HEREUNDER OR THEREUNDER OR THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS. MAKER (A) CERTIFIES THAT NO REPRESENTATIVE OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE WAIVER AND CERTIFICATIONS CONTAINED HEREIN.

24. **Reservation of Rights**. Nothing in this Agreement waives or prejudices any claim or cause of action that the Trustee, Goodman, or the Lender may have against Maker, 18920, James Frinzi, or any other person or entity. To the extent of any payment under this Agreement or pursuant to definitive documentation implementing the proposed settlement described below, the characterization of such payment shall not be changed as a result of this Agreement and the Bankruptcy Court shall determine such

characterization if and when challenged or appropriate. Among other things, to the extent that any creditor of Goodman or the Lender has a security or other interest in, or lien against, any such payment, or any such creditor claims rights in the nature of a constructive trust or resulting trust against any such payment, all such claims, rights, and arguments are expressly preserved and are not intended to be modified by this Agreement from what they otherwise would be without this Agreement.

25. **Letter of Intent; Proposed Settlement**. Subject to: (i) the approval of the Bankruptcy Court through an order entered in the Bankruptcy Case; (ii) the Trustee's satisfaction that the consideration proposed below is within the range of reasonableness upon the report of his expert pursuant to section 5.7 above; and (iii) the negotiation and execution of definitive documentation, the Trustee, for Goodman and for the Lender, agrees to the following on a non-binding basis:

redacted

4859-8806-6905v.1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written:

| MAKER: | LENDER: |
|---|---|
| **MBG HOLDINGS, INC.** | **GNET ATC LLC** |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

For purposes of the Letter of Intent for Proposed Settlement included herein:

**GOODMAN NETWORKS, INC.**

By: _____

Name: _____

Title: _____