Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |

**TRUSTEE'S REPLY IN SUPPORT OF EXPEDITED MOTION FOR ORDER
DIRECTING RULE 2004 EXAMINATION OF MBG HOLDINGS, INC. F/K/A
AMERICAN METALS RECOVERY AND RECYCLING INC.**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the

bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the

above styled and numbered bankruptcy case (the "Bankruptcy Case"), and files this his *Reply* in

support of his *Expedited Motion for Order Directing Rule 2004 Examination of MBG Holdings

Inc. f/k/a American Metals Recovery and Recycling Inc.* (the "Motion"), respectfully stating as

follows:

**I.      SUMMARY**

1.      At the time that he was the CEO of the Debtor, James Frinzi had the Debtor loan

$44 million to MBG, of which we was also the CEO.  And, he became the majority owner of MBG

through another $4.5 million "loan" he had the Debtor make to another entity of his, which he then

TRUSTEE'S REPLY IN SUPPORT OF EXPEDITED MOTION FOR ORDER DIRECTING RULE 2004
EXAMINATION OF MBG HOLDINGS, INC. F/K/A AMERICAN METALS RECOVERY AND RECYCLING
INC.—Page 1

used to purchase the equity in BMG.  Thus, the Debtor used almost $49 million so that Frinzi could purchase MBG and have MBG purchase valuable assets from a third party, all for his benefit. Neither borrower has made any payment on its obligations.  Indeed, MBG has *never once* made a scheduled payment on its note, whether to the Debtor or the Debtor's subsidiary, even when Frinzi was the CEO of both, about which he conveniently did nothing.  That the Estate owns large claims and causes of action resulting from this is obvious; indeed, these may be the largest assets of the Estate.  And, that these assets need to be investigated is equally as obvious, especially in light of very serious recent developments strongly suggesting that the value of these assets is being dissipated.

2.      MBG has consistently prevented any investigation, however, all the while pretending that it would be transparent: stall, delay, hinder, while it runs out of money because Frinzi uses it as his personal piggybank as he leads a lavish lifestyle.  Now its auditor has resigned, its CFO has resigned, two board members have resigned, and it failed to file its SEC reports.  Yet it engages in the same: stall, delay, and hinder.  Why does it want a subpoena?  Because it is a stranger to these proceedings and wants to be sure that it knows what is going on and can properly respond?  Of course not: it filed a Notice of Appearance and pleadings in this Bankruptcy Case, including a prior attempt to quash discovery (which was denied).  It wants a subpoena just so that it could later object, and relitigate the same issues that it is now litigating: stall, delay, hinder.  That is not how an honest borrower, down on its luck, treats its senior secured creditor, much less this Court of equity.

3.      The Court should see through MBG's tactics.  In fact, those tactics should alert the Court all the more to an immediate need for a thorough investigation before whatever value remains is squandered away.

---

TRUSTEE'S REPLY IN SUPPORT OF EXPEDITED MOTION FOR ORDER DIRECTING RULE 2004 EXAMINATION OF MBG HOLDINGS, INC. F/K/A AMERICAN METALS RECOVERY AND RECYCLING INC.—Page 2

## II. PERSONAL JURISDICTION

4. The concept of personal jurisdiction rarely arises in bankruptcy because this Court:
(i) has nationwide personal jurisdiction, *see, e.g., In re NE 40 Partners Ltd.*, 411 B.R. 352, 359
(Bankr. S.D. Tex. 2009); and (ii) has exclusive *in rem* jurisdiction, *see* 28 U.S.C. § 1334(e). Where
issues of personal jurisdiction arise, it is usually in one of two instances. The first concerns foreign
entities, where a subpoena to enforce Rule 2004 (usually under the Hauge Convention) is
frequently required. The second concerns due process, where a person truly a stranger to a case
who does not know what is going on needs to be formally informed by the Court of his
responsibilities and duties to respond to a court directive. Reading the notion of personal
jurisdiction as broadly as MBG would is absurd: does a debtor have to serve a summons with a
cash collateral motion on a creditor who has not yet appeared, or does a summons have to be served
with a Chapter 11 plan in order to bind non-parties to the case? Of course not. Being served with
a pleading through actual or constructive notice, at least when in the United States, is sufficient.
That is why the subpoena provision of Rule 2004 is optional, as opposed to mandatory, except
when extraterritorial or due process issues necessitate its use.

5. In short, there are multiple ways in which the Court exercises or acquires personal
jurisdiction because, in bankruptcy, personal jurisdiction, subject matter jurisdiction, and *in rem*
jurisdiction are all blurred and usually all lead to the same result of full jurisdiction. Even under
MBG's analysis, a subpoena is not needed for someone already a party to a case. Personal
jurisdiction may likewise be waived by making filings and appearing in the case. Filing a proof
of claim confers personal jurisdiction. Here, all of these prongs are met.

6. Most obviously, MBG has filed an unrestricted, general Notice of Appearance in
the Bankruptcy Case. *See* Docket No. 225. It has also filed a motion to quash subpoena, making

an unrestricted appearance (and again seeking to prevent the discovery of information).  *See* Docket No. 39.  Counsel for MBG appeared at the hearing on that motion, which was denied.  *See* Docket No. 57.  Counsel for MBG appeared at a different hearing on a motion that was resolved. *See* Docket No. 56.  While the Trustee cannot be certain, he believes that counsel for MBG appeared at other hearings related to the motion to convert.  And, most obviously, MBG filed an objection to the Motion, making substantive arguments.  While it did contest personal jurisdiction in that pleading, it could have stayed out of the fray and reserved its objections after a subpoena was issued, but it instead raised its objections as to scope now, thus voluntarily joining the issue.

7.      Filing an unrestricted Notice of Appearance and filing pleadings and appearing at hearings waives whatever personal jurisdiction issue there may have been, as personal jurisdiction (unlike subject matter jurisdiction) is personal and capable of waiver or consent.  As the seminal opinion on the issue, where personal jurisdiction was found based in large part on the filing of a notice of appearance, held:

> By filing his notice of appearance, DAMA has indicated and, in essence, declared himself to be not only interested in these proceedings but to have acknowledged that his interests are affected. He has requested that this court give express recognition to his status and has purposefully availed himself of the privileges and benefits of conducting judicial activities within the United States. In this context, DAMA has voluntarily interjected himself into these proceedings and by his presence has indicated his consent to jurisdiction over matters involving him.

*In re Deak & Co. Inc.*, 63 B.R. 422, 432 (Bankr. S.D.N.Y. 1986).  In that opinion, the court analyzed what it means to be a party-in-interest and what the purpose of a notice of appearance is, explaining that the two are linked and that "[a] party in interest classification provides a party with standing to assert an affirmative bundle of rights and privileges under the Code which are acknowledged and respected by the court. . . Section 1109(b) has been construed to continue the pattern of permitting interested parties in bankruptcy cases the absolute right to be heard and to

insure fair representation. *Id*. at 431-32 (internal citations and quotations omitted). Thus, the purpose of an unrestricted notice of appearance is precisely to interject one's self into a case as a party-in-interest.

8.      While caselaw on this issue appears scant, those opinions that have considered the issue agree with the foregoing logic and conclusion. *See In re LandAmerica Fin. Gr. Inc.*, 2013 WL 1819984 at *1 n. 4 (Bankr. E.D. Va. 2013) ("[b]y filing a proof of claim and a notice of appearance, Experian consented to personal jurisdiction in this Court"); *In re Bozel N.A.*, 434 B.R. 86, 98 n. 21 (Bankr. S.D.N.Y. 2010) ("some courts have gone a step further and found that a defendant's voluntary participation in a bankruptcy case by filing a notice of appearance and attending court hearings constitutes a waiver of any objection to personal jurisdiction"); *In re Paques Inc.*, 277 B.R. 615, 636-37 (Bankr. E.D. Pa. 2000) ("by virtue of this filing [notice of appearance], Paques, B.V. has been notified of motions, applications and other filings in this case which it has monitored through its local counsel").

9.      Thus, MBG is already a party to this Bankruptcy Case and, as even its own authorities provide, that alone provides for personal jurisdiction and obviates any need to serve a subpoena to take a Rule 2004 examination. But MBG is a party for far more than just that. It, and the claims against it, are a major asset of the Estate; it is located in the United States, in fact its offices are in the State of Texas. Here the concepts of personal jurisdiction and *in rem* jurisdiction merge: the Court has jurisdiction over MBG. Period. While a summons may be required by rule for an adversary proceeding, it is not required for the Court to have all the jurisdiction it needs to enter a coercive order against MBG, unless MBG claims some sue process issue, which the Trustee cannot imagine it could. For a domestic publicly traded company to argue that a federal court has no personal jurisdiction over it without a piece of paper being delivered to it, after it has actual

notice and knowledge of a proceeding affecting its rights, is unprecedented, and flies in the face

of its own duties and obligations.

10.      The Trustee will add one more point: Frinzi filed a proof of claim.  *See* Claim No.

39.  It goes without saying that a person who files a proof of claim consents to the jurisdiction of

the Court and that the Court has personal jurisdiction over that person.  While Frinzi is not MBG,

any subpoena, coercive order, or subsequent proceeding would be enforced on MBG through

Frinzi, since MBG can only act through its agents and vice-principals.  The Court can direct any

order issued on the Motion to Frinzi personally, which presumably would cure any personal

jurisdiction argument that MBG may have.

11.      Thus, no subpoena is necessary.  If, however, the Court believes that a subpoena is

necessary, then the real question is whether MBG would subsequently be permitted to raise

defenses to the subpoena.[1]  The Motion, the objection, and the hearing should and will dispose of

any such issues, and the Court should make it clear that the purpose of the subpoena would be only

to satisfy any personal jurisdiction issue, and not to litigate or relitigate the scope of the requested

examination.

12.      And, in the event of any issue or need for a hearing on any subpoena, the Court

should order that all officers of MBG appear at any hearing and be prepared to give evidence at

such hearing and sit for an examination in open court if appropriate and requested by the Trustee.

None of this is overly burdensome or unjustified: as the evidence will demonstrate, MBG has

consistently, for months, failed to provide *any* information concerning its corporate governance,

finances, assets, operations, and the like, while all the while pretending like it would—even as it

---

[1] And, additionally, who the subpoena would be served on, as Frinzi is frequently out of the country and the Trustee can see there being intentionally issues with the personal service of a subpoena on other agents of MBG.

now would have the Court believe that it would (but then why insist on a subpoena and reserve objections to the subpoena?).

13.     The Trustee relied on MBG's representations for months, as did the Debtor before the Trustee, only to have nothing in the end.  It is time for this Court to use its coercive powers and to compel an entity that has received directly or indirectly almost $50 million from the Debtor, through what is undeniably an insider transaction, to submit itself to a thorough, while still reasonable, examination.

### III.     OWNERSHIP OF RIGHTS

14.     Finally, MBG seeks to sidestep the issue and divert attention from what is really at stake by arguing that the Trustee seeks to use Rule 2004 to investigate assets owned by a non-debtor.  This is not correct.

15.     First, and aside from the note, the Debtor—not the subsidiary—transferred the $44 million to MBG and the $4.5 million to the Frinzi entity.  There are obvious potential claims and causes of action, including breach of fiduciary duty.  The Trustee is preparing a demand to the Debtor's D&Os and a demand on the D&O insurance carriers.  Certain creditors have also suggested that the Estate may have claims for other torts, and at least one has suggested that it has direct claims to the funds used by way of constructive trust (which claims the Trustee denies but nevertheless has a need to investigate).  All of this merits a comprehensive investigation even without the insider nature of the transactions and the allegation by James Goodman, the Debtor's director, that he did not know of or approve the transaction (on which point the Trustee takes no position at present).

16.     Second, the Trustee does not agree that the note and liens are owned by the subsidiary, GNET ATC, LLC, although this issue need not be decided at this time to consider the

Motion. Instead, it appears that the transaction was always intended to have the Debtor as the

counterparty and not the subsidiary, which itself merits investigation. Among other things:

(i)     The payee on the note is GNET ATC, Inc, which does not exist, thus suggesting a mistake and the need for reformation.

(ii)    The funds flowed directly from the Debtor to MBG, and not through a subsidiary, thus suggesting that it was always intended that the Debtor would be the payee.

(iii)   The Debtor did not enter into any note or other agreement with any subsidiary regarding the funds or the transaction.

(iv)    Frinzi, while still the CEO of the Debtor, signed an agreement representing that it was the Debtor, as opposed to any subsidiary, that owned the note and security agreement, and he purported to transfer a one-half interest in those rights from the Debtor, as opposed to a subsidiary, to a third party (itself leading to serious causes of action). Frinzi, who controls MBG and whose knowledge and actions are imputed to MBG, can hardly now claim that it is not the Debtor who owns these rights.

17.     Third, and most practically and urgently, and regardless of whether the Debtor or a

subsidiary, or both, own the rights and claims, the Trustee needs to understand his Estate's assets

and what options he may have. The subsidiary is an asset of the Estate as well, and if it has assets

worth $44 million or more, then that is obviously crucial to the Trustee's administration of the

Estate. That is precisely the purpose of Rule 2004 and, if MBG did not want to subject itself to

this Court's scrutiny, then it should not be transacting business in the United States, much less

borrowing $44 million from an insolvent entity through an insider transaction.

RESPECTFULLY SUBMITTED this 25th day of April, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 25th day of April, 2023, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including James W. Bartless, Esq., counsel for MBG.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.