# SECURED PROMISSORY NOTE

$4,350,000                                                                                       [August 31, 2023]

      FOR VALUE RECEIVED, and subject to the terms and conditions set forth herein, Alliance Global Solutions, LLC, a Delaware limited liability company (the "**Borrower**"), hereby promises to pay to the order of Scott M. Seidel, as Chapter 7 Trustee of Goodman Networks, Inc., a Texas Corporation (the "**Noteholder**," and together with the Borrower, the "**Parties**"), $4,350,000 (the "**Loan**"), together with all accrued interest thereon as provided in this Promissory Note (the "**Note**"), and Noteholder promises to provide the consideration described herein to Borrower in exchange therefor.

## Background

    1.    Noteholder, for itself and its bankruptcy estate, and, in the capacity of Chapter 7 trustee, as the sole member of GNET ATC, LLC, a Texas limited liability company, and as the sole shareholder of Multiband Field Services, Inc., a Texas corporation, holds secured claims and causes of action of at least $44,000,000 (the "**Prior Debt**") against American Metals Recovery and Recycling Inc, now known as MBG Holdings, Inc. ("**Multiband**")

    2.    Contemporaneously with the execution of this Note, Borrower is entering into an "**Asset Purchase Agreement**" dated as of the date hereof between it and Multiband under which Borrower will contemporaneously purchase the Purchased Assets (as defined therein) and assume the obligation to pay this Note to Noteholder and pay the remainder of the Purchase Price (as defined therein) in exchange therefor, and as a part of which transaction Noteholder shall release $4,516,500 of the Prior Debt as against Multiband.

**NOW, THEREFORE**, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

    1.    <u>Definitions; Interpretation</u>.

        1.1    Capitalized terms used herein shall have the meanings set forth in this **Error! Bookmark not defined.**1.1.

        "**Affiliate**" as to any Person, means any other Person that, directly or indirectly through one or more intermediaries, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) a majority of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

        "**Borrower**" has the meaning set forth in the introductory paragraph.

EXHIBIT "F"

"**Default**" means any of the events specified in **Error! Bookmark not defined.**10 which constitute an Event of Default or which, upon the giving of notice, the lapse of time, or both, pursuant to **Error! Bookmark not defined.**10, would, unless cured or waived, become an Event of Default.

"**Event of Default**" has the meaning set forth in **Error! Bookmark not defined.**10.

"**GAAP**" means generally accepted accounting principles in the United States of America as in effect from time to time.

"**Governmental Authority**" means the government of the United States of America or any nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Law**" as to any Person, means the certificate of incorporation and by-laws or other organizational or governing documents of such Person, and any law (including common law), statute, ordinance, treaty, rule, regulation, order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Lien**" means any mortgage, pledge, hypothecation, encumbrance, lien (statutory or other), charge, or other security interest.

"**Loan**" has the meaning set forth in the introductory paragraph.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, assets, properties, liabilities, operations or condition (financial or otherwise) of the Borrower; (b) the validity or enforceability of the Note; (c) the perfection or priority of any Lien purported to be created hereunder; (d) the rights or remedies of the Noteholder hereunder; or (e) the Borrower's ability to perform any of its material payment]obligations hereunder or under the Security Agreement.

"**Maturity Date**" means the earlier of (a) September 1, 2027, and (b) the date on which all amounts under this Note shall become due and payable pursuant to **Error! Bookmark not defined.**11.

"**Net Revenue**" means, for any period, the Borrower's gross revenues during such period, less (i) trade, quantity and cash discounts allowed by Borrower, (ii) discounts, refunds, rebates, charge backs, retroactive price adjustments and any other allowances which effectively reduce net selling price, (iii) product returns and allowances, (iv) allowances for shipping or other distribution expenses, (v) set-offs and counterclaims, and (vi) any other similar and customary deductions used by Borrower in determining net revenues in respect

of the above, as determined in accordance with GAAP and in the ordinary course of business.

"**Note**" has the meaning set forth in the introductory paragraph.

"**Noteholder**" has the meaning set forth in the introductory paragraph.

"**Parties**" has the meaning set forth in the introductory paragraph.

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority, or other entity.

1.2     Interpretation. For purposes of this Note (a) the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Note as a whole. The definitions given for any defined terms in this Note shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms. Unless the context otherwise requires, references herein to: (x) Schedules, Exhibits, and Sections mean the Schedules, Exhibits, and Sections of this Note; (y) an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and (z) a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Note shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

2.     Consideration for the Loan.

2.1     Consideration. No money shall be disbursed in order to make the Loan, rather in lieu of Borrower's promises hereunder, Noteholder is contemporaneously: (i) releasing a $4,516,500 portion of the Prior Debt in order to enable Borrower to acquire the Purchased Assets; and (ii) releasing its claims and Liens against the Purchased Assets in order to enable their transfer to the Borrower free and clear of the same, but subject to such new Liens as created hereunder.

3.     Payment Dates; Optional Prepayments.

3.1     Payment Dates. Beginning on March 1, 2024 (the **"Initial Payment Date"**) and every month thereafter, Borrower shall make 42 equal consecutive monthly installments of $18,000 towards the principal amount, *provided* that if 2% of the Net Revenue of Borrower for any given quarter thereafter should exceed the payments made or owing for that quarter, Borrower shall pay an amount equal to such excess to Noteholder within 30 days of the close of the quarter and the balance of the Loan shall be further reduced thereby.

  3.2 <u>Final Payment</u>. All remaining amounts outstanding under this Note, including all accrued and unpaid interest and other amounts payable under the Note, shall be due and payable on the Maturity Date, unless otherwise provided in **Error! Bookmark not defined.**11.

  3.3 <u>Optional Prepayments</u>. The Borrower may prepay the Loan in whole or in part at any time or from time to time without penalty or premium by paying the principal amount to be prepaid together with accrued interest thereon to the date of prepayment. No prepaid amount may be reborrowed.

4. <u>Security Agreement</u>.

  4.1 <u>Grant</u>. To secure all of its obligations under this Note, including as to principal, interest, default interest, attorney's fees, and costs of court and of collection, whether arising prior to or at the Maturity Date, or accruing or being incurred after the Maturity Date, the Borrower hereby grants to the Noteholder first priority Liens and security interests in and to all of the following property of the Borrower, whether existing or owned now or arising or being acquired hereafter, and including as to all products and proceeds of all such property:

> all inventory, equipment, accounts (including all heath are receivables), chatter paper, goods, instruments (including all promissory notes), letter-of-credit rights, letters of credit, rents, moneys, documents, deposit accounts, investment property, money, contracts and contract rights, other rights to payment and performance, patents, trademarks, copyrights, and all intellectual property, general intangibles (including software and payment intangibles), fixtures, insurance policies, insurance proceeds and payments, insurance refunds, books, records, tax refunds, attachments, tools, parts, repairs, supplies, comingled goods as to any of the foregoing, additions replacements substitutions for all or part of the foregoing, supporting obligations relating to the foregoing, claims, and causes of action.

  4.2 <u>Perfection</u>. The Noteholder may take such action, at any time, to perfect or otherwise evidence its Liens and security interests as granted hereunder with any Governmental Authority, including by filing one or more U.C.C. financing statement or fixture filing in any and all jurisdictions and venues.

  4.3 <u>Foreclosure</u>. Upon an Event or Default or the Maturity Date, and in addition to all other rights and remedies under all applicable law, the Noteholder shall have all rights of a secured party under the Uniform Commercial Code, including to foreclose against all of its Liens (including by way of credit bid), as to all amounts remaining owing and unpaid hereunder.

5. <u>Interest</u>.

  5.1 <u>Interest Rate</u>. Except as otherwise provided herein, the outstanding principal amount of the Loan made hereunder shall bear simple, non-compounding interest at 5.00% annually from the date hereof until the Loan is paid in full, whether at maturity, upon acceleration, by prepayment, or otherwise.

      5.2      Interest Payment Dates. All outstanding Interest shall be payable in full on the Maturity Date.

      5.3      Default Interest. If any amount payable hereunder is not payable when due, then all amounts due and payable hereunder shall bear simple, non-compounding interest at 8.00% annually from the date of such non-payment until such amount is paid in full.

      5.4      Computation of Interest. All computations of interest shall be made on the basis of 365 or 366 days, as the case may be, and the actual number of days elapsed. Interest shall accrue on the Loan on the day on which the Loan is made, and shall not accrue on the Loan for the day on which it is paid.

      5.5      Interest Rate Limitation. If at any time and for any reason whatsoever, the interest rate payable on the Loan shall exceed the maximum rate of interest permitted to be charged by the Noteholder to the Borrower under applicable Law, that portion of each sum paid attributable to that portion of such interest rate that exceeds the maximum rate of interest permitted by applicable Law shall be deemed a voluntary prepayment of principal.

6.      Payment Mechanics.

      6.1      Manner of Payments. All payments of interest and principal shall be made in lawful money of the United States of America no later than 5:00 PM on the date on which such payment is due by cashier's check, certified check, or by wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

      6.2      Application of Payments. All payments made under this Note prior to the Maturity Date shall be applied first to the payment of the principal amount outstanding under the Note and thereafter to accrued interest. Any payment or application of proceeds after the Maturity Date may be applied by the Noteholder towards any obligation under this Note as it, in its reasonable discretion in accordance with customary practice, determines.

      6.3      Business Day Convention. Whenever any payment to be made hereunder shall be due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day and such extension will be taken into account in calculating the amount of interest payable under this Note.

      7.      Representations and Warranties of Borrower. The Borrower hereby represents and warrants to the Noteholder on the date hereof as follows:

      7.1      Existence; Power and Authority; Compliance with Laws. The Borrower (a) is a limited liability company duly organized, validly existing, and in good standing under the laws of the state of its jurisdiction of organization, (b) has the requisite power and authority, and the legal right, to own, lease, and operate its properties and assets and to conduct its business as it is now being conducted, to execute and deliver this Note, and to perform its obligations hereunder and thereunder, and (c) is in compliance with all Laws except to the extent that the failure to comply therewith would not, reasonably be expected to have a Material Adverse Effect.

      7.2      <u>Authorization; Execution and Delivery</u>. The execution and delivery of this Note by the Borrower and the performance of its obligations hereunder and thereunder have been duly authorized by all necessary limited liability company action in accordance with all applicable Laws.

      7.3      <u>No Approvals</u>. No consent or authorization of, filing with, notice to, or other act by, or in respect of, any Governmental Authority or any other Person is required in order for the Borrower to execute, deliver, or perform any of its obligations under this Note.

      7.4      <u>No Violations</u>. The execution and delivery of this Note and the consummation by the Borrower of the transactions contemplated hereby and thereby do not and will not (a) violate any Law applicable to the Borrower or by which any of its properties or assets may be bound; or (b) constitute a default under any material agreement or contract by which the Borrower may be bound.

      7.5      <u>Enforceability</u>. The Note is a valid, legal, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

      7.6      <u>No Litigation</u>. No action, suit, litigation, investigation, or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the knowledge of the Borrower, threatened by or against the Borrower or any of its property or assets (a) with respect to the Note or any of the transactions contemplated hereby or (b) that would be expected to materially adversely affect the Borrower's financial condition or the ability of the Borrower to perform its obligations under the Note.

      7.7      <u>First Priority Liens</u>.  Upon the execution and delivery of this Note, the Liens granted to the Noteholder hereunder shall be valid, enforceable, and first in priority.

8.      <u>Affirmative Covenants</u>. Until all amounts outstanding under this Note have been paid in full, the Borrower shall:

      8.1      <u>Maintenance of Existence</u>. (a) Preserve, renew, and maintain in full force and effect its corporate or organizational existence and (b) take all reasonable action to maintain all rights, privileges, and franchises necessary or desirable in the normal conduct of its business, except, in each case, where the failure to do so would not reasonably be expected to have a Material Adverse Effect.

      8.2      <u>Compliance</u>. Comply with all Laws applicable to it and its business and its obligations under its material contracts and agreements, except where the failure to do so would not reasonably be expected to have a Material Adverse Effect.

      8.3      <u>Payment Obligations</u>. Pay, discharge, or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations of whatever nature, including tax liabilities, except where the amount or validity thereof is

currently being contested in good faith by appropriate proceedings, and except to the extent that the failure to do so could not reasonably be expected to have a Material Adverse Effect.

    8.4    <u>Notice of Events of Default</u>. Within 10 Business Days after it becomes aware that an Event of Default has occurred, notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

    8.5    <u>Financial Statements and Reporting</u>. Borrower shall provide Noteholder:

    (a)    on a quarterly basis, beginning with the quarter ending before the Initial Payment Date and within 45 days of the end of the quarter, with a consolidated balance sheet of Borrower and the related consolidated statements of income or operations and cash flows for such quarter, all in reasonable detail and certified by an authorized officer of the Borrower as fairly presenting, in all material respects, the financial position of the Borrower as of the end of such quarter and the results of operations and cash flows of the Borrower for such quarter, in accordance with GAAP applied in a manner consistent with Borrower's past practice, subject to normal year-end adjustments;

    (b)    within 90 days after the end of each fiscal year, a consolidated balance sheet of Borrower as at the end of such fiscal year and the related consolidated statements of income or operations and cash flows for such fiscal year, all in reasonable detail and certified by an authorized officer of the Borrower as fairly presenting, in all material respects, the financial position of the Borrower as of the end of such fiscal year and the results of operations and cash flows of the Borrower for such fiscal year, in accordance with GAAP applied in a manner consistent with Borrower's past practice; and

    (c)    promptly following any request therefor, such other information regarding the operations, business, properties, liabilities, condition or prospects of the Borrower, or compliance with the terms of this Note, as Noteholder may from time to time reasonably request.

9.    <u>Negative Covenants</u>. Until all amounts outstanding under this Note have been paid in full, the Borrower shall not:

    9.1    <u>Liens</u>. Incur, create, assume, or suffer to exist any Lien on any of the Purchased Assets, except for (a) Liens for taxes not yet due or which are being contested in good faith by appropriate proceedings; (b) non-consensual Liens arising by operation of law, arising in the ordinary course of business, or that are being contested in good faith by appropriate proceedings; and (c) Liens created hereunder.

    9.2    <u>Fundamental Changes</u>.  Merge, dissolve, liquidate, consolidate with or into, or be acquired in whole or in majority part by, one or more other Persons, or dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets to or in favor of any Person.

      9.3      <u>Dispositions</u>. Sell, transfer, or otherwise dispose of any material asset without paying all proceeds thereof to the Noteholder for application against all amounts then owing under this Note, except in the ordinary course of business which, for the avoidance of doubt, shall include dispositions of obsolete or worn out property, of inventory, of equipment or real property to the extent that (i) such property is exchanged for credit against the purchase price of similar replacement property or (ii) the proceeds are reasonably promptly applied to the purchase price of such replacement property, leases, licenses, subleases or sublicenses granted in the ordinary course of business and on ordinary commercial terms, dispositions of intellectual property rights that are no longer used or useful in the business of Borrower, the discount, write-off or disposition of accounts receivable or the sale of any such accounts receivable for the purpose of collection to any collection agency, or any other disposition in the ordinary course of business.

      9.4      <u>Transfer of Receivables</u>. Sell, transfer, pledge, or factor any account receivable.

10.      <u>Events of Default</u>. The occurrence and continuance of any of the following shall constitute an Event of Default hereunder:

      10.1      <u>Failure to Pay</u>. The Borrower fails to pay (a) any principal amount of the Loan when due or (b) interest or any other amount when due and such failure continues for 5 days after written notice to the Borrower; *provider, however,* that, after two such prior written notices and cures by the Borrower, the Borrower shall not be entitled to any further notice of non-payment and, upon the third non-payment, the Noteholder may exercise its rights as provided for in Section 11 and otherwise with no further notice or opportunity to cure.

      10.2      <u>Breach of Representations and Warranties</u>. Any representation or warranty made by the Borrower to the Noteholder herein is incorrect in any material respect on the date as of which such representation or warranty was made.

      10.3      <u>Breach of Covenants</u>. The Borrower fails to observe or perform (a) any covenant, condition, or agreement contained in Section 8.49 or (b) any other material covenant, condition, or agreement contained in this Note, including, without limitation, as to reporting and Liens, and such failure continues for 10 days after written notice to the Borrower.

      10.4      <u>Bankruptcy</u>.

      (a)      The Borrower commences any case, proceeding, or other action (i) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition, or other relief with respect to it or its debts or (ii) seeking appointment of a receiver, trustee, custodian, conservator, or other similar official for it or for all or any substantial part of its assets, or the Borrower makes a general assignment for the benefit of its creditors;

(b)     There is commenced against the Borrower any case, proceeding, or other action of a nature referred to in **Error! Bookmark not defined.**10.4(a) which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged, or unbonded for a period of 60 days;

(c)     There is commenced against the Borrower any case, proceeding, or other action seeking issuance of a warrant of attachment, execution, or similar process against all or any substantial part of its assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within 60 days from the entry thereof;

(d)     The Borrower takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in **Error! Bookmark not defined.**10.4(a), **Error! Bookmark not defined.**10.4(b), or **Error! Bookmark not defined.**10.4(c) above; or

(e)     The Borrower is generally not, or shall be unable to, or admits in writing its inability to, pay its debts as they become due.

10.5   Judgments. One or more judgments or decrees shall be entered against the Borrower and all of such judgments or decrees shall not have been vacated, discharged, or stayed or bonded pending appeal within 60 days from the entry thereof.

11.   Remedies. Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the entire principal amount of the Loan, together with all accrued interest thereon and all other amounts payable under this Note, immediately due and payable; and/or  exercise any or all of its rights, powers or remedies hereunder or applicable Law, including to exercise and foreclose on its Liens; *provided, however*, that if an Event of Default described in **Error! Bookmark not defined.**10.4 shall occur, the principal of and accrued interest on the Loan shall become immediately due and payable without any notice, declaration, or other act on the part of the Noteholder.  In addition to all other rights and remedies, upon such occurrence, the Noteholder shall be entitled to recover its reasonable attorney's fees, costs of court, and costs of collection and disposition incurred thereafter in exercising any and all rights under this Note or applicable law.

12.   Miscellaneous.

12.1   Notices.

(a)     All notices, requests, or other communications required or permitted to be delivered hereunder shall be delivered in writing, in each case to the address specified below or to such other address as such Party may from time to time specify in writing in compliance with this provision:

(i)     If to the Borrower:

15 Margaret Ave.

9

Lawrence, NY 11559
Attn: Shalom Auerbach
Email: shalom@milrosecap.com

With a copy (which shall not constitute notice) to:
Lieberman & Klestzick LLP
Attention: Joe Lieberman
Email: joe@landklegal.com
CC: jgerstel@landklegal.com

If to the Noteholder:


Scott M. Seidel
Seidel Law Firm
6505 W. Park Blvd., Ste 306
Plano, Texas 75093
Telephone: (214) 234-2503
Email: scott@scottseidel.com

With a copy (which shall not constitute notice) to:
Munsch Hardt Kopf & Harr, P.C.
Attn: Davor Rukavina
Telephone: (214) 855-7587
Email: drukavina@munsch.com

(b) Notices if (i) mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received; (ii) sent by facsimile during the recipient's normal business hours shall be deemed to have been given when sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's business on the next business day); and (iii) sent by email shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return email, or other written acknowledgment).

12.2 Further Assurances. Each Party shall, upon the request of the other Party, execute and deliver such further instruments and do or cause to be done such further acts as may be necessary or advisable to carry out the intent and purposes of this Note.

12.3 Governing Law. This Note any claim, controversy, dispute, or cause of action (whether in contract or tort or otherwise) based upon, arising out of, or relating to this Note shall be governed by the laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any jurisdiction).

12.4 Submission to Jurisdiction. The Parties hereby irrevocably and unconditionally (i) agree that any legal action, suit, or proceeding arising out of or relating to this Note or the Security Agreement may be brought in the courts of the State of New York or of the United

States of America for the Southern District of New York (in addition to any other court of proper jurisdiction and venue) and (ii) submits to the jurisdiction of any such court in any such action, suit, or proceeding. Final judgment against the Borrower in any action, suit, or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

  12.5 <u>Waiver of Jury Trial</u>. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE, THE SECURITY AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

  12.6 <u>Integration.</u> This Note constitutes the entire contract between the Parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto.

  12.7 <u>Successors and Assigns</u>. This Note is freely assignable by the Noteholder, except that Borrower shall have a right of first refusal in the event Noteholder elects to sell the Note to a third-party. In such event, Noteholder shall provide Borrower with written notice of the same and Borrower shall have 10 days to elect to exercise such right of first refusal in which case the parties shall enter into good faith negotiations in respect of the same. This Note shall inure to the benefit of, and be binding upon, the Parties and their permitted assigns.

  12.8 <u>Amendments and Waivers</u>. No term of this Note may be waived, modified, or amended except by an instrument in writing signed by both of the Parties. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

  12.9 <u>Headings</u>. The headings of the various Sections and subsections herein are for reference only and shall not define, modify, expand, or limit any of the terms or provisions hereof.

  12.10 <u>Waiver of Presentment</u>.  Except as expressly provided otherwise herein, Borrower waives any presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and any other waivable notice under all applicable law, including common law.

  12.11 <u>No Waiver; Cumulative Remedies</u>. No failure to exercise, and no delay in exercising, of any right, remedy, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. The rights, remedies, powers, and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers, and privileges provided by law.

      12.12   <u>Electronic Execution</u>. The words "execution," "signed," "signature," and words of similar import in the Note shall be deemed to include electronic or digital signatures or electronic records, each of which shall be of the same effect, validity, and enforceability as manually executed signatures or a paper-based record-keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. §§ 7001 to 7031), the Uniform Electronic Transactions Act (UETA), or any state law based on the UETA, including the New York Electronic Signatures and Records Act (N.Y. State Tech. §§ 301 to 309).

      12.13   <u>Severability</u>. If any term or provision of this Note or the Security Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or the Security Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the Parties shall negotiate in good faith to modify this Note so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

                                 [SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties have executed this Note as of [August 31, 2023].

                                              Alliance Global Solutions, LLC

                                              By_____
                                              Name: Shalom Auerbach
                                              Title: Managing Member

                                              Scott M. Seidel, Trustee


                                              By_____
                                              Name: Scott M. Seidel
                                              Title: Chapter 7 Trustee of Goodman
                                              Networks, Inc.