# LIMITED LIABILITY COMPANY AGREEMENT

This Limited Liability Company Agreement (this "**Agreement**") of Alliance Global Solutions, LLC, a Delaware limited liability company (the "**Company**"), is entered into as of [August 31, 2023] by and among the Company, Megan Auerbach, Shalom Auerbach (the "**Managing Member**"), and Scott M. Seidel, solely in his capacity as the Chapter 7 Trustee of Goodman Networks, Inc., a Texas Corporation (the "**Trustee**" and "**Goodman**" respectively), and any other Person who, after the date hereof, becomes a Member in accordance with the terms of this Agreement (collectively, the "**Members**"). Unless otherwise noted or defined elsewhere in this Agreement, capitalized terms used in this Agreement have the meanings ascribed herein, as more fully set forth in **Error! Bookmark not defined.**ARTICLE XI.

This Agreement is being entered into in connection with a series of transactions described in an "**Asset Purchase Agreement**" dated as of the date hereof and entered into by the Company, and one MBG Holdings, Inc., a Texas Corporation and one AMR Resources, LLC, a Delaware Limited Liability Company and in the Transaction Documents (as defined therein). This Agreement shall only be effective upon the execution of the Transaction Documents and the consummation of the transactions therein. Capitalized terms not defined herein have the meaning assigned to them in the Asset Purchase Agreement.

## ARTICLE I
### Organizational Matters

**Section 1.01  Name.** The name of the Company is Alliance Global Solutions, LLC.

**Section 1.02  Principal Office.** The principal office of the Company is located at [ADDRESS], or such other location as may from time to time be determined by the Managing Member. The Managing Member shall give prompt notice of any such change to each of the Members.

**Section 1.03  Registered Office; Registered Agent.** The registered office of the Company and the registered agent for service of process on the Company in the State of Delaware shall be that office and Person named in the Certificate of Formation or such other office (which need not be a place of business of the Company) or such other Person or Persons as the Managing Member may designate from time to time in the manner provided by the Delaware Act and Applicable Law.

**Section 1.04  Purpose; Powers.**

(a)     The purposes of the Company are to engage in any lawful act or activity for which limited liability companies may be formed under the Delaware Act and to engage in any and all activities necessary or incidental thereto.

(b)     The Company shall have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the Delaware Act.

**Section 1.05   Term.** The term of the Company commenced on the date and time the Certificate of Formation was filed with the Secretary of State of the State of Delaware and shall continue in existence perpetually or until any earlier date when the Company is terminated in accordance with the provisions of this Agreement or as provided by law.

## ARTICLE II
## Members

**Section 2.01   Members.** The names, mailing addresses, and Membership Interests of the Members are set out in Schedule I attached hereto (the "**Members Schedule**"). The Managing Member shall maintain and update the Members Schedule upon the issuance or Transfer of any Membership Interests to any new or existing Member in accordance with this Agreement.

**Section 2.02   Admission of Additional Members.**

(a)   Additional Members may be admitted from time to time in connection with (i) the issuance of Membership Interests by the Company subject to compliance with the provisions of Section 4.02(b), or (ii) a Transfer of Membership Interests, subject to compliance with the provisions of **Error! Bookmark not defined.**ARTICLE VII, and in either case, following compliance with the provisions of (b)~~Section 2.02(b)~~.

(b)   In order for any Person not already a Member of the Company to be admitted as a Member, whether pursuant to an issuance or a Transfer of Membership Interests, such Person shall have executed and delivered to the Company a written joinder agreement agreeing to comply with and be subject to this Agreement. Upon the amendment of the Members Schedule by the Managing Member and the satisfaction of any other applicable conditions, including, if a condition, the receipt by the Company of payment for the issuance of the applicable Membership Interests, such Person shall be admitted as a Member, shall be a party hereto, shall be deemed listed as such on the books and records of the Company, and thereupon shall be issued his, her, or its Membership Interests. The Managing Member shall also adjust the Accounts of the Members as necessary in accordance with Section 3.02~~Section 3.03~~.

**Section 2.03   No Withdrawal; Death of Member.**

(a)   So long as a Member continues to hold any Membership Interest, such Member shall not have the ability to withdraw as a Member prior to the dissolution and winding up of the Company and any such withdrawal or attempted withdrawal by a Member prior to the dissolution and winding up of the Company shall be null and void. As soon as any Member ceases to hold any Membership Interests, such Person shall no longer be a Member. A Member shall cease to be a Member as a result of the bankruptcy of such Member or as a result of any other events specified in Section 18-304 of the Delaware Act.

(b)   The death or dissolution of any Member shall not cause the dissolution of the Company. In such event, the Company and its business shall be continued by the remaining Members and the Membership Interests owned by the deceased or dissolved

Member shall be automatically Transferred to such Member's successors, executors, administrators, testamentary trustees, legatees, distributees or beneficiaries ("**Successors**"), as applicable, *provided*, that any such Transferee shall be admitted as a Member only upon compliance with the provisions of Section 2.02(b)~~Section 2.02(b)~~.

**Section 2.04   Certification of Membership Interests.**

(a)   The Company may, but shall not be required to, issue certificates evidencing Membership Interests in the Company.

(b)   If the Managing Member shall issue certificates representing Membership Interests in accordance with Section 2.05(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests shall bear a legend substantially in the following form:

THE MEMBERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY. NO TRANSFER, SALE, ASSIGNMENT, GIFT, PLEDGE, ENCUMBRANCE, HYPOTHECATION, OR OTHER DISPOSITION OF THE MEMBERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH LIMITED LIABILITY COMPANY AGREEMENT.

THE MEMBERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, PLEDGED, HYPOTHECATED, OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

**Section 2.05   Meetings.**

(a)   Meetings of the Members may be called by the Managing Member, by 66% of the Members, or by the Members holding 66% of the Membership Interests.

(b)   Written notice stating the place, date, and time of the meeting and, in the case of a meeting of the Members not regularly scheduled, describing the purposes for which the meeting is called, shall be delivered not fewer than one week before the date of the meeting to each Member, by the Member(s) calling the meeting. Meetings will be held at such place as the Managing Member selects.

(c)   Any Member may participate in a meeting of the Members by means of conference telephone or other communications equipment by means of which all Persons participating in the meeting hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(d) On any matter that is to be voted on by the Members, a Member may vote in person or by proxy, and such vote or proxy may be made or granted in writing, by means of email or other electronic messaging ("**Electronic Transmission**"), or as otherwise permitted by Applicable Law. Every proxy shall be revocable in the discretion of the Member executing it unless otherwise provided in such proxy; *provided*, that such right to revocation shall not invalidate or otherwise affect actions taken under such proxy prior to such revocation.

(e) The business to be conducted at such meeting need not be limited to the purpose described in the notice and can include other business to be conducted by the Members; *provided*, that the Members shall have been notified of the meeting in accordance with Section 2.06(b). Attendance of a Member at any meeting shall constitute a waiver of notice of such meeting, except where a Member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(f) A quorum of any meeting of the Members shall require the presence of whether in person or by proxy, of the Members holding 66% of the Membership Interests. Subject to Section 2.07, no action may be taken by the Members unless the appropriate quorum is present at a meeting.

(g) Subject to Section 2.07, Section 4.02, Section 12.09, and any other provision of this Agreement or the Delaware Act requiring the vote, consent, or approval of a different percentage of the Membership Interests, no action may be taken by the Members at any meeting at which a quorum is present without the affirmative vote of the Members holding 66% of the Membership Interests.

**Section 2.06 Action Without Meeting.** Notwithstanding the provisions of Section 2.06, any matter that is to be voted on, consented to, or approved by Members may be taken without a meeting, without prior notice, and without a vote if consented to, in writing or by Electronic Transmission, by the Members holding 66% of the Membership Interests. A record shall be maintained by the Managing Member of each such action taken.

## ARTICLE III

## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 3.01 Initial Capital Commitments.** Megan Auerbach has contributed $85,000, Shalom Auerbach $65,000, and Goodman $16,500 to the Company (such contributions, and any other contributions by Members to the Company, "**Capital Contributions**"), *provided, however,* that Goodman's contribution is not in cash but is in indirect consideration valued by all parties hereto at $16,500. No Member shall be required to make additional Capital Contributions or make loans to the Company.

**Section 3.02 Maintenance of Capital Accounts.** The Company shall establish and maintain for each Member a separate capital account (each, a "**Capital Account**") on its books and records in accordance with the provisions of Section 704(b) of the Code and Treasury

4

Regulations Section 1.704-1(b)(2)(iv). Each Capital Account shall be: (i) credited by such Member's Capital Contributions to the Company and any profits allocated to such Member in accordance with Section 5.01 and (ii) debited by any distributions to such Member pursuant to Section 6.01 and any losses allocated to such Member in accordance with Section 5.01. For purposes of maintaining the Members' Capital Accounts, profits and losses shall be determined in accordance with Treasury Regulations Section 1.704-1(b). The Capital Accounts shall be adjusted by the Members upon the occurrence of an event described in Treasury Regulations Section 1.704-1(b)(2)(iv)(f)(5) in the manner described in Treasury Regulations Section 1.704-1(b)(2)(iv)(f) and (g) if the Members determine that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members. In the event of a Transfer of any Membership Interest in accordance with the terms of this Agreement, the Transferee shall succeed to the Capital Account of the Transferor to the extent it relates to the transferred interest.

**Section 3.03   Negative Capital Accounts.** In the event that any Member shall have a deficit balance in its Capital Account, such Member shall have no obligation, during the term of the Company or upon dissolution or liquidation of the Company, to restore such negative balance or make any Capital Contributions to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or dissolution in contravention of this Agreement.

**Section 3.04   No Withdrawals from Capital Accounts.** No Member shall be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement. No Member, including the Managing Member, shall receive any interest, salary, management or service fees or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement. The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss and deduction among the Members and shall have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

## ARTICLE IV
## Management

**Section 4.01   Management of the Company.** Subject to the provisions of Section 4.02 and except as otherwise provided by the Delaware Act, the business, property and affairs of the Company shall be managed by the Managing Member. The actions of the Managing Member taken in accordance with the provisions of this Agreement shall bind the Company. No other Member of the Company shall have any authority or right to act on behalf of or bind the Company, unless otherwise provided herein or unless specifically authorized by the Managing Member.

**Section 4.02   Actions Requiring Approval of Members.** Without (i) a vote or the written approval of Members holding 66% of the Membership Interests, and (ii) with respect to all but paragraph (b)(b) (relating to the issuance of Membership Interests), for so long as Goodman is a Member, without the consent of the Trustee (such consent not to be unreasonably withheld), the Company shall not, and shall not enter into any commitment to:

5

(a) Amend, modify, or waive any provisions of the Certificate of Formation or this Agreement.

(b) Issue additional Membership Interests or other financial interests of any kind in the Company, except in connection with a Transfer of Membership Interests that complies with the applicable provisions of **Error! Bookmark not defined.**ARTICLE VII and Section 2.03(b), or admit additional Members to the Company.

(c) Enter into or effect any transaction or series of related transactions involving the purchase, lease, license, exchange, or other acquisition (including by merger, consolidation, sale of stock, or acquisition of assets) by the Company of any significant assets and/or equity interests, other than in the ordinary course of business.

(d) Enter into or effect any transaction or series of related transactions involving the sale, lease, license, exchange, or other disposition (including by merger, consolidation, sale of stock, or sale of assets) by the Company of any significant assets and/or equity interests, other than in the ordinary course of business.

(e) Enter into or settle any lawsuit, action, dispute, or other proceeding, or otherwise assume any liability or agree to the provision of any equitable relief by the Company, outside of the ordinary course of the business.

(f) Dissolve, wind up, or liquidate the Company or initiate a bankruptcy proceeding involving the Company.

**Section 4.03** **Executive Officers and Managing Member.** Shalom Auerbach is hereby appointed as the Managing Member. The Managing Member may appoint one or more individuals as officers of the Company (the **"Officers"**) as the Managing Member deems necessary or desirable to carry on the business of the Company and may delegate to such Officers such power and authority as the Managing Member deems advisable. An Officer is not required to be a Member of the Company. Any individual may hold two or more offices of the Company. Each Officer shall hold office until their successor is designated by the Managing Member or until their earlier death, resignation, or removal. Any Officer may resign at any time upon written notice to the Managing Member. Any Officer may be removed by the Managing Member at any time, with or without cause. A vacancy in any office occurring because of death, resignation, removal, or otherwise may, but need not, be filled by the Managing Member.

~~Section 4.03~~**Section 4.04** **Limitations on Members' Salaries.** Shalom Auerbach (and Megan Auerbach, as appropriate) may take a salary from the Company of up to $150,000, but shall not take a salary in excess thereof, for so long as Goodman is a Member, without the prior consent of the Trustee, such consent not to be unreasonably withheld. Any disputes regarding reasonability shall be decided by an independent third-party agreed upon by the Managing Member and the Trustee.

~~Section 4.04~~**Section 4.05** **Replacement and Resignation of Managing Member.** The Managing Member may be removed at any time, with or without cause, by the Members holding 66% of the Membership Interests. The Managing Member may resign at any time by delivering a written resignation to the Company, which resignation shall be effective upon

6

receipt thereof unless it is specified to be effective at some other time or upon the occurrence of a particular event. Following the Managing Member's removal or resignation, a successor Managing Member shall be selected by the Members holding 66% of the Membership Interests. The removal of the Managing Member shall not affect the Managing Member's rights as a Member and shall not constitute a withdrawal of such Member from the Company.

## ARTICLE V
## Allocations

**Section 5.01    Allocation of Profits and Losses.**

(a)    The Company's profits and losses for each Fiscal Year will be allocated among the Members pro rata in accordance with their Membership Interests.

(b)    Notwithstanding any other provision of this Agreement, (i) "partner nonrecourse deductions" (as defined in Treasury Regulations Section 1.704-2(i)), if any, of the Company shall be allocated for each fiscal year to the Member that bears the economic risk of loss within the meaning of Treasury Regulations Section 1.704-2(i) and "nonrecourse deductions" (as defined in Treasury Regulations Section 1.704-2(b)) and "excess nonrecourse liabilities" (as defined in Treasury Regulations Section 1.752-3(a)), if any, shall be allocated to and among the Members in accordance with their Membership Interests.

(c)    This Agreement shall be deemed to include "qualified income offset," "minimum gain chargeback," and "partner nonrecourse debt minimum gain chargeback" provisions within the meaning of Treasury Regulations under Section 704(b) of the Code.

(d)    All items of income, gain, loss, deduction, and credit of the Company shall be allocated among the Members for federal, state, and local income tax purposes consistent with the manner that the corresponding items are allocated among the Members pursuant to this section, except as may otherwise be provided herein or under the Code.

## ARTICLE VI
## Distributions

**Section 6.01    Distributions.**

(a)    Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Managing Member. Such distributions shall be paid to the Members pro rata in accordance with their respective Membership Interests.

(b)    Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make any distribution to Members if such distribution would violate Section 18-607 of the Delaware Act or other Applicable Law.

## ARTICLE VII
### Transfers

**Section 7.01  General Restrictions on Transfer.**

(a) Except as permitted pursuant to Section 7.02, no Member shall Transfer all or any portion of its Membership Interest in the Company, except with the written consent of Members holding 66% of the Membership Interests.

(b) Notwithstanding any other provision of this Agreement, each Member agrees that it will not Transfer all or any portion of its Membership Interest in the Company, and the Company agrees that it shall not issue any Membership Interests:

 (i) except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws;

 (ii) if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the Delaware Act;

 (iii) if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes; or

 (iv) if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended.

(c) Any Transfer or attempted Transfer of any Membership Interest in violation of this Agreement shall be null and void, no such Transfer shall be recorded on the Company's books, and the purported Transferee in any such Transfer shall not be treated (and the purported Transferor shall continue be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d) Except as provided in Section 2.02(b)~~Section 2.02(b)~~, no Transfer (including a Permitted Transfer) of Membership Interests to a Person not already a Member of the Company shall be deemed completed until the prospective Transferee (including a Permitted Transferee) is admitted as a Member of the Company in accordance with Section 2.02(b) hereof.

(e) For the avoidance of doubt, any Transfer of a Membership Interest permitted by this Agreement shall be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and shall not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest," unless otherwise explicitly agreed to by the parties to such Transfer.

(f) In the event of any Transfer of a Membership Interest, the addition of a new Member, or the issuance of new Membership Interests, the effect of which would be to dilute the Membership Interest of Goodman, Goodman shall have the option, but not

8

the obligation, to credit bid a portion of its secured debt against the Company in order to maintain its percentage ownership as reflected on Schedule I, and the Company shall provide Goodman with reasonably timely notice of any such contemplated dilution in order to enable Goodman to make any such credit bid.

**Section 7.02   Permitted Transfers.** The provisions of Section 7.01(a) shall not apply to any Transfer by any Member who is a natural Person of all or any portion of its Membership Interest to any of the following (each, a "**Permitted Transferee**" and, any such Transfer to a Permitted Transferee, a "**Permitted Transfer**"): (i) such Member's spouse, parent, siblings, descendants (including adoptive relationships and stepchildren), and the spouses of each such natural persons (collectively, "**Family Members**"); (ii) a trust under which the distribution of Membership Interests may be made only to such Member and/or any Family Member of such Member; (iii) a charitable remainder trust, the income from which will be paid to such Member during their life; (iv) a corporation, partnership, or limited liability company, the stockholders, partners, or members of which are only such Member and/or Family Members of such Member; (v) by will or by the laws of intestate succession, to such Member's executors, administrators, testamentary trustees, legatees, distributees, or beneficiaries; and (vi) solely with respect to Goodman, by operation of bankruptcy law or order of the Bankruptcy Court in Goodman's bankruptcy case.

**Section 7.03   Drag Along Rights and Call Rights**. If the Members holding 66% of the Membership Interests shall vote to sell the Company or its assets, then such Members shall have the right to require the other Members to agree to the same, and in the case of a sale of the Company, to sell their Membership Interests on the same terms and pricing as the sale of the Membership Interests of the majority. The Company, upon the vote of the Members holding 66% of the Membership Interests and only after the Company pays in full its secured obligations to Goodman (as evidenced by separate loan instruments), shall have the right to redeem the Membership Interests of Goodman at 150% of their present equity value at the time of any such redemption.

## ARTICLE VIII
## No Personal Liability and Indemnification

**Section 8.01   No Personal Liability: Members; Managing Member.**

(a)   Except as otherwise provided in the Delaware Act, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt, obligation, or liability of the Company or other Members, whether arising in contract, tort, or otherwise, solely by reason of being a Member.

(b)   Except as otherwise provided in the Delaware Act, by Applicable Law, or expressly in this Agreement, no Managing Member will be obligated personally for any debt, obligation, or liability of the Company, whether arising in contract, tort, or otherwise, solely by reason of being a Managing Member.

**Section 8.02   Indemnification.**

(a) To the fullest extent permitted under the Delaware Act, the Managing Member shall be entitled to indemnification and reimbursement of expenses from the Company for and against any loss, damage, claim, or expense (including attorneys' fees) (collectively, "**Losses**") whatsoever incurred by the Managing Member relating to or arising out of any act or omission or alleged acts or omissions (whether or not constituting negligence) performed or omitted by the Managing Member on behalf of the Company; *provided*, however, that (i) any indemnity under this Section 8.02 shall be provided out of and to the extent of the Company assets only, and neither any Member or any other Person shall have any personal liability to contribute to such indemnity by the Company; (ii) the Managing Member acted in good faith and in a manner believed by it to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful; (iii) the Managing Member's conduct did not constitute fraud or willful misconduct; and (iv) the Managing Member shall first provide each other Member five business days' written notice of the indemnification claim and the facts and circumstances surrounding the same, and the amount requested to be paid and proposed to be paid by the Company, prior to each advance (including each sub-advance part of an overall indemnification claim or transaction) of any funds by the Company for any such indemnification.

(b) Upon receipt by the Company of a written undertaking by or on behalf of the Managing Member to repay such amounts if it is finally judicially determined that the Managing Member is not entitled to indemnification under this Section 8.02, the Company shall advance, to the extent reasonably required, to the Managing Member for its reasonable legal or other expenses (as incurred) in connection with investigating, preparing to defend, or defending any claim, lawsuit, or other proceeding relating to any Losses for which the Managing Member may be indemnified pursuant to this Section 8.02.

## ARTICLE IX
## Accounting and Tax Matters

**Section 9.01 Inspection Rights.** Upon reasonable notice from a Member, the Company shall afford the Member reasonable access during normal business hours to the corporate, financial, and similar records, reports, and documents of the Company, and shall permit the Member to examine such documents and make copies thereof.

**Section 9.02 Income Tax Status.** It is the intent of this Company and the Members that this Company shall be treated as a partnership for US, federal, state, and local income tax purposes. Neither the Managing Member nor any Member shall make an election for the Company to be classified as other than a partnership pursuant to Treasury Regulations Section 301.7701-3.

**Section 9.03 Tax Matters Representative.**

(a) Appointment; Resignation. The Members hereby appoint the Managing Member as the "partnership representative" as provided in Section 6223(a) of the Code (the "**Tax Matters Representative**"). The Tax Matters Representative can be removed at

any time by a vote of Members holding 66% of the Membership Interests, and shall resign if it is no longer a Member. In the event of the resignation or removal of the Tax Matters Representative, the Members shall appoint a new Tax Matters Representative.

(b) <u>Tax Examinations and Audits</u>. The Tax Matters Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by any federal, state, local, or foreign taxing authority, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.

The Tax Matters Representative shall have sole authority to act on behalf of the Company in any such examinations and any resulting administrative or judicial proceedings, and shall have sole discretion to determine whether the Company (either on its own behalf or on behalf of the Members) will contest or continue to contest any tax deficiencies assessed or proposed to be assessed by any taxing authority.

(c) <u>US Federal Tax Proceedings.</u> .To the extent permitted by applicable law and regulations, the Tax Matters Representative will cause the Company to annually elect out of the partnership audit procedures set forth in Subchapter C of Chapter 63 of the Code as amended by the Bipartisan Budget Act of 2015 (the "**Revised Partnership Audit Rules**") pursuant to Section 6221(b) of the Code. For any year in which applicable law and regulations do not permit the Company to elect out of the Revised Partnership Audit Rules, then within forty-five (45) days of any notice of final partnership adjustment, the Tax Matters Representative will cause the Company to elect the alternative procedure under Section 6226 of the Code, and furnish to the Internal Revenue Service and each Member (including former Members) during the year or years to which the notice of final partnership adjustment relates a statement of the Member's share of any adjustment set forth in the notice of final partnership adjustment.

(d) <u>Section 754 Election</u>. The Tax Matters Representative will make an election under Section 754 of the Code, if requested in writing by Members holding 66% of the outstanding Membership Interests.

(e) <u>Indemnification</u>. The Company shall defend, indemnify, and hold harmless the Tax Matters Representative against any and all liabilities sustained as a result of any act or decision concerning Company tax matters and within the scope of such Member's responsibilities as Tax Matters Representative, so long as such act or decision was done or made in good faith and does not constitute gross negligence or willful misconduct.

**Section 9.04 Tax Returns.**

(a) At the expense of the Company, the Managing Member will cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company owns property or does business. As soon as reasonably possible after the end of each fiscal year, the Managing Member will deliver

to each Member, Company information necessary for the preparation of such Member's federal, state, and local income tax returns for such Fiscal Year.

(b) Each Member agrees that such Member shall not treat any Company item on such Member's federal, state, foreign, or other income tax return inconsistently with the treatment of the item on the Company's return.

## ARTICLE X
## Dissolution and Liquidation

**Section 10.01 Events of Dissolution.** The Company shall be dissolved and its affairs wound up only upon the occurrence of any of the following events:

(a) An election to dissolve the Company made by Members holding 66% of the outstanding Membership Interests;

(b) The sale, exchange, involuntary conversion, or other disposition or Transfer of all or substantially all the assets of the Company; or

(c) The entry of a decree of judicial dissolution under Section 18-802 of the Delaware Act.

**Section 10.02 Effectiveness of Dissolution.** Dissolution of the Company shall be effective on the day on which the event described in Section 10.01 occurs, but the Company shall not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 10.03, and the Certificate of Formation shall have been cancelled as provided in Section 10.04.

**Section 10.03 Liquidation.** If the Company is dissolved pursuant to Section 10.01, the Company shall be liquidated and its business and affairs wound up in accordance with the Delaware Act and the following provisions:

(a) The Managing Member, or another Person selected by Members holding 66% of the Membership Interests, shall act as liquidator to wind up the Company (the "**Liquidator**"). The Liquidator shall have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b) As promptly as possible after dissolution and again after final liquidation, the Liquidator shall cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities, and operations through the last day of the calendar month in which the dissolution occurs or the final liquidation is completed, as applicable.

(c) The Liquidator shall liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

(i) First, to the payment of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

(ii) Second, to the establishment of and additions to reserves that are determined by the Managing Member to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

(iii) Third, to the Members, on a pro rata basis, in accordance with the positive balances in their respective Capital Accounts, as determined after taking into account all Capital Account adjustments for the taxable year of the Company during which the liquidation of the Company occurs.

**Section 10.04 Required Filings.** Upon completion of the winding up of the Company, the Liquidator shall make all necessary filings required by the Delaware Act.

## ARTICLE XI
### Definitions

**Section 11.01 Definitions.** Capitalized terms used herein and not otherwise defined shall have the meanings set forth in this Section 11.01:

(a) "**Applicable Law**" means all applicable provisions of (i) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (ii) any consents or approvals of any Governmental Authority; and (iii) any orders, decisions, advisory, or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

(b) "**Certificate of Formation**" means the certificate of formation of the Company filed with the Delaware Secretary of State.

(c) "**Code**" means the Internal Revenue Code of 1986, as amended.

(d) "**Delaware Act**" means the Delaware Limited Liability Company Act and any successor statute, as it may be amended from time to time.

(e) "**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

(f) "**Lien**" means any mortgage, pledge, security interest, option, right of first offer, encumbrance, or other restriction or limitation of any nature whatsoever.

13

(g) "**Managing Member**" means, initially, Shalom Auerbach, or such other Member as may be designated as the Managing Member pursuant to the terms of this Agreement.

(h) "**Membership Interest**" means an interest in the Company owned by a Member, including such Member's rights to (i) receive a distributive share of Company assets and items of Company income, gain, loss, and deduction; (ii) vote, consent, or participate in any Member decisions provided in this Agreement and the Delaware Act; and (iii) receive any and all other benefits due to a Member under this Agreement and the Delaware Act. The Membership Interest of each Member will be stated as a percentage interest in the same proportion as the total Capital Contributions of such Member (or in the case of [GNET], as Seller's Contribution) bears to the total Capital Contributions of all Members.

(i) "**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

(j) "**Securities Act**" means the Securities Act of 1933, as amended, or any successor federal statute, and the rules and regulations thereunder, which shall be in effect at the time.

(k) "**Transfer**" means to sell, transfer, assign, gift, pledge, encumber, hypothecate, or similarly dispose of, directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, gift, pledge, encumbrance, hypothecation, or similar disposition of, any Membership Interests or any interest (including a beneficial interest) therein. "**Transfer**" when used as a noun shall have a correlative meaning.

(l) "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

## ARTICLE XII
## Miscellaneous

**Section 12.01 Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any jurisdiction).

**Section 12.02 Submission to Jurisdiction.** The parties hereby agree that any suit, action, or proceeding based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, may (in addition to any other proper venue or jurisdiction) be brought in the federal courts of the United States of America located in the city of New York or the courts of the State of New York. Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding.

**Section 12.03 <u>Waiver of Jury Trial</u>**. EACH PARTY HERETO HEREBY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 12.04 Waiver.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. Nothing contained in this section shall diminish the waiver described in Section 12.03.

**Section 12.05 Notices.** All notices, requests, consents, claims, demands, waivers, and other communications hereunder shall be in writing and shall be deemed to have been given:

**(a)** when delivered by hand;

**(b)** when received by the addressee if sent by a nationally recognized overnight courier;

**(c)** on the date sent by facsimile or email (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or

**(d)** on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.

Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this section):

| **If to the Company:** | Alliance Global Solutions, LLC<br>15 Margaret Ave.<br>Lawrence, NY 11559<br>Attention: Shalom Auerbach |
|---|---|
| with a copy to: | Lieberman & Klestzick, LLP<br>PO Box 356<br>Cedarhurst, NY 11516<br>Email: JGerstel@LandKlegal.com<br>CC: Joe@LandKlegal.com<br>Attention: Joe Lieberman |

15

| | |
|---|---|
| **If to the Managing Member:** | Shalom Auerbach<br>15 Margaret Ave.<br>Lawrence, NY 11559<br>Email: shalom@milrosecap.com |
| **If to a Member**: | To the Member's respective mailing address as set forth on the Members Schedule. |

**Section 12.06  Remedies.** In the event of any actual or prospective breach or default by any party, the other parties shall be entitled to equitable relief, including remedies in the nature of injunction and specific performance, awarded by a court of competent jurisdiction (without being required to post a bond or other security or to establish any actual damages). In this regard, the parties acknowledge and agree that they will be irreparably damaged in the event this Agreement is not specifically enforced, since (among other things) the Membership Interests are not readily marketable. All remedies hereunder are cumulative and not exclusive, may be exercised concurrently, and nothing herein shall be deemed to prohibit or limit any party from pursuing any other remedy or relief available at law or in equity for any actual or prospective breach or default, including recovery of damages. In addition, the parties hereby waive and renounce any defense to such equitable relief that an adequate remedy at law may exist.

**Section 12.07  Severability.** If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 12.08  Successors and Assigns.** Subject to the restrictions on Transfers set forth herein, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

**Section 12.09  Amendment.** No provision of this Agreement may be amended or modified except by an instrument in writing executed by all the Members. Any such written amendment or modification will be binding upon the Company and each Member.

**Section 12.10  Headings.** The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 12.11  Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.

**Section 12.12  Entire Agreement.** This Agreement, together with the Certificate of Formation and all related Exhibits and Schedules, and together with the Transaction Documents, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 12.13 No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, legal representatives, successors, and permitted assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 12.14 Goodman as Secured Lender.** As of the execution of this Agreement, Goodman shall be a secured lender to the Company pursuant to separate loan and lien instruments. All other Members acknowledge the same and agree that nothing herein, or in the Delaware Act, or respecting the Members' relationship to the Company or to themselves, shall limit Goodman's ability to collect on its secured debt from the Company (except as may be limited by such separate loan and lien instruments), and that Goodman shall owe no duty to the Company to forbear in any way from any such collection even if the same may be harmful to the Company or to the interests of the other Members. In no event shall the Company, the Managing Member, or any other Member raise the fact of Goodman's ownership of a Membership Interest to create any alleged duty on Goodman in its role as a secured lender, or as a defense against Goodman's exercise of its secured creditor rights against the Company, the exercise of which shall in no way be the subject of, or incorporated into, this Agreement (including with respect to its venue and choice of law provisions).

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**The Company:**

Alliance Global Solutions, LLC, a Delaware limited liability company

By:_____
Shalom Auerbach, Managing Member

**The Members:**

Shalom Auerbach


By:_____
Shalom Auerbach

Megan Auerbach


By:_____
Megan Auerbach

Goodman Networks, Inc.

By:_____
Name: Scott M. Seidel, Trustee
Title:　Chapter 7 Trustee of Goodman Networks, Inc.

## SCHEDULE I

## MEMBERS SCHEDULE

| Member Name, Address, Email, and Fax | Capital Contribution or Commitment | Membership Interest |
|---|---|---|
| ~~Shalom~~ Auerbach<br>15 Margaret Ave.<br>Lawrence, NY 11559<br>Email: shalom@milrosecap.com | $65,000 | 39% Interest |
| ~~Shalom~~ Megan Auerbach<br>15 Margaret Ave.<br>Lawrence, NY 11559<br>Email: Auerbach.meg@gmail.com ~~[EMAIL]~~ | $85,000 | 51% Interest |
| Scott M. Seidel, Trustee of Goodman Networks, Inc.<br>6505 W. Park Blvd., Ste 306<br>Plano, Texas 75093<br>Email: scott@scottseidel.com | $16,500 | 10% Interest |

Exhibit A – Form of Joinder Agreement

# JOINDER AGREEMENT

Reference is hereby made to the Limited Liability Company Agreement, dated [DATE], as amended from time to time (the "**LLC Agreement**"), between [PARTIES THERETO] and Alliance Global Solutions, LLC, a Delaware limited liability company (the "**Company**"). Pursuant to and in accordance with Section 2.03 of the LLC Agreement, the undersigned hereby acknowledges that it has received and reviewed a complete copy of the LLC Agreement and agrees that upon execution of this Joinder, such Person become a party to the LLC Agreement and shall be fully bound by, and subject to, all of the covenants, terms, and conditions of the LLC Agreement as though an original party thereto and shall be deemed, and is hereby admitted as, a Member for all purposes thereof and entitled to all the rights to which the Membership Interest it has received entitles it too.

Capitalized terms used herein without definition shall have the meanings ascribed thereto in the LLC Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of [DATE].

[NEW MEMBER]

By_____
Name:
Title: