

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 13, 2023**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |

### ORDER GRANTING TRUSTEE'S EXPEDITED MOTION TO APPROVE TRANSACTION WITH AMRR AND ALLIANCE GLOBAL SOLUTIONS, LLC

CAME ON FOR HEARING the *Trustee's Expedited Motion to Approve Transaction with AMRR and Alliance Global Solutions, LLC* (the "Motion"),[1] filed by Scott M. Seidel (the "Trustee"), the duly appointed trustee for the estate (the "Estate") of Goodman Networks, Inc. (the "Debtor") in the above-styled bankruptcy case (the "Bankruptcy Case"), pursuant to which the Trustee seeks authority to enter into a transaction (the "Transaction") with MBG Holdings, Inc. f/k/a American Metals Recovery and Recycling, Inc. ("AMRR") and Alliance Global Solutions, LLC ("Alliance").

---

[1] Capitalized terms used but no defined herein have the meanings given to them in the Motion.

As set forth in the Motion, the Estate and/or its wholly owned subsidiary, GNET ATC, LLC ("GNET") assert claims and causes of action against AMRR and AMR Resources, LLC ("AMRR LLC") of not less than $44 million based on, alternatively, the AMRR Note, fraudulent transfer, breach of fiduciary duty, constructive and resulting trust, or otherwise (the "AMRR Claims"). In partial compromise of the AMRR Claims, the Trustee seeks authority to enter into the Transaction while preserving the rights of all parties regarding the precise nature of the AMRR Claims and any interests that may be asserted in the AMRR Claims or the proceeds therefrom.

Namely, AMRR is entering into a sale with Alliance to sell its "Fiber Business" to Alliance, said business defined in more detail in the Motion and in the Court's oral findings of fact and conclusions of law. The Fiber Business and its assets are held by a wholly owned subsidiary of AMRR, AMRR LLC. Alliance, instead of a cash payment to AMRR for the Fiber Business, will assume $4,500,000.00 of the AMRR Claims. Alliance will pay such assumed obligations with a new secured promissory note payable to the Trustee in the amount of $4,200,000.00 (the "Alliance Note"), plus $300,000.00 paid up front and the balance paid out over time as provided for in the Alliance Note, and with the Trustee obtaining first priority, perfected security interests against the assets of Alliance, including the Fiber Business. Additionally, the Trustee will obtain a 10% membership interest in Alliance (formally in exchange for a $16,500 contribution to equity by foregoing that amount of the obligations of AMRR and AMRR LLC), to be effectuated pursuant to the *Limited Liability Company Agreement* of Alliance (the "Alliance LLC Agreement").

On September 11, 2023, the Court delivered its oral findings of fact and conclusions of law granting the Motion, with certain conditions to be effectuated through this Order, which findings of fact and conclusions of law are hereby incorporated into this Order. Among other things, the Court finds that: the Trustee has properly exercised his sound business judgment in entering into

the Transaction; that AMRR, under the control of its new Chief Restructuring Officer, Joseph Baum, is properly exercising its and his sound business judgment in selling the Fiber Business and agreeing to the Transaction; that the value that AMRR and AMRR LLC are receiving for the sale of the Fiber Business is fair, reasonable, adequate, and represents reasonably equivalent value; that the value the Estate is receiving in the Transaction is fair, reasonable, adequate, and represents reasonably equivalent value; that approval of the Transaction is in the best interests of the Estate and that the Transaction is otherwise fair and reasonable; and that the standards for approval of the Motion under Federal Rule of Bankruptcy Procedure 9019 have been met based on the evidence presented.

Accordingly, having considered the evidence and the law, and having considered the various objections filed to the Motion, it is hereby:

ORDERED that the Motion is GRANTED as provided for herein; it is further

ORDERED that the Transaction is APPROVED, and that the Trustee is authorized to execute such documents and agreements as are necessary and advisable to effectuate the Transaction, and to accept and enter into the Alliance Note and the Alliance LLC Agreement, and otherwise to release AMRR and AMRR LLC of $4,516,500.00 of the AMRR Claims and to release the Fiber Business (the "Fiber Business Release") from any and all claims, rights, interests, liens, and security interests, including claims for alleged constructive trust and resulting trust, that the Trustee and the Estate may have except those being granted in the Alliance Note; it is further

ORDERED that, for the avoidance of doubt, no release of any party, except the limited release of AMRR and AMRR LLC of $4,516,500.00 of the AMRR Claims, is approved or is involved in the Transaction, and no other obligation of AMRR, AMRR LLC, or any other subsidiary of AMRR is released, waived, or prejudiced, and no claim or cause of action that the

Estate or GNET may have against Shalom Auerbach or any person or entity affiliated with him is released, waived, or prejudiced; it is further

ORDERED that all claims, rights, interests, liens, and security interests, including claims for alleged constructive trust and resulting trust, that: (i) FedEx Supply Chain Logistics & Electronics, Inc.; (ii) UMB Bank, N.A. as indenture trustee and U.S. Bank, N.A. as collateral agent, for various secured bondholders issued by the Debtor and due in 2022; and (iii) 18920 NW 11th, LLC, may have in, to, or against AMRR, the AMRR Claims, or the property of AMRR, AMRR LLC, including the Fiber Business or any property the subject of the Transaction, are preserved and retained and shall transfer and attach to all proceeds of the Transaction, including the Alliance Note (including the up-front payment of $300,000.00) and the Trustee's 10% membership interest in Alliance, with the same validity, extent, and priority as otherwise exists, and subject to all defenses thereto, and nothing in this Order adjudicates, waives, affects, or prejudices any such claims, rights, interests, liens, security interests, or defenses, all of which are fully preserved except for the Fiber Business Release; it is further

ORDERED that the Trustee shall open a new, segregated account, into which he shall deposit all payment, funds, and other consideration from the Transaction, including all payments from the Alliance Note (including the up-front payment of $300,000.00) and all distributions under the Alliance LLC Agreement or otherwise, and which funds and account the Trustee shall not use without separate order from the Court upon such motion and notice as may be proper; it is further

ORDERED that, so long as the Alliance Note remains unpaid and so long as the Trustee owns a membership interest in Alliance:

(i) James Frinzi shall have no role whatsoever with Alliance, whether as a consultant, employee, member, manager, advisor, or otherwise;

(ii) Alliance shall comply with the corporate governance requirements of the Alliance LLC Agreement and shall remain wholly separate from any other company or business affiliated with Shalom Auerbach except as the Trustee may approve otherwise for legitimate business purposes;

(iii) Alliance shall provide the Trustee with reasonable, prior notice of any new funding, loan, or capital transaction it intends to engage in;

(iv) the Trustee shall have reasonable and prompt access to all books and records of Alliance; and

(v) this Court shall have exclusive jurisdiction over any dispute that may arise between the Estate and Alliance, it is further

ORDERED that the Trustee and Alliance are authorized and encouraged to more fully define what constitutes a quarter and what "net revenue" is in the Alliance Note, and the Trustee shall file on the docket any finalized and signed version of the Alliance Note; it is further

ORDERED that this Order shall be immediately enforceable upon its entry; it is further

ORDERED that this Court shall retain jurisdiction to the maximum extent possible to enforce and to interpret this Order and any underlying transactional document respecting the Transaction.

# # #   END OF ORDER   # # #