**BUTLER SNOW LLP**
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com

and

Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com

*Counsel for FedEx Supply Chain
Logistics & Electronics, Inc.*

**DLA PIPER LLP (US)**
Noah M. Schottenstein (TX Bar No. 24100661)
James Muenker (TX Bar No. 24002659)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
noah.m.schottenstein@us.dlapiper.com
james.muenker@us.dlapiper.com

*Counsel for ARRIS Solutions, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| GOODMAN NETWORKS, INC. | § | Case No. 22-31641 (MVL) |
| | § | |
| | § | **Relates to Docket No. 347** |
| | § | |

**JOINT OBJECTION AND RESPONSE TO THE BONDHOLDERS' MOTION TO STRIKE**

FedEx Supply Chain Logistics & Electronics, Inc. ("FSCLE") and ARRIS Solutions, Inc. ("ARRIS", collectively with FSCLE, the "Objectors") file this objection and response to the Bondholders' *Motion to Strike* (Dkt. No. 347). Objectors respectfully state the following:

1

## JURISDICTION AND VENUE

1. Objectors agree that this Court has jurisdiction related to this Bankruptcy Case and the Trustee's 9019 Motion (Dkt. No. 300) which arises under title 11. 28 U.S.C. § 1334(a) and (b). Objectors dispute that Bondholders have standing to bring the Motion to Strike because they are not a party to the 9019 Motion. Moreover, the Court lacks subject matter jurisdiction to determine any collusion claims asserted by the Bondholders against Prosperity Bank, as those claims are non-bankruptcy claims between third parties.

## STATEMENTS OF FACTS

2. On March 22, 2023, the Trustee filed his Motion under Bankruptcy Rule 9019 for Approval of Settlement and Compromise with Prosperity Bank and UMB Bank, National Association (the "Original Motion"). (Dkt. No. 226). Objectors were not consulted in advance of this filing.

3. The settlement contained in the Original Motion (hereinafter, the "Proposed Settlement," as later amended) was really a compilation of settlements based on a series of facts.

4. Prior to the September 6, 2022 (the "Petition Date"), funds totaling $5,003,751.85 (the "Fraudulent Transfers") were transferred from the Debtor's deposit accounts at Prosperity Bank to repay two loans made by Prosperity Bank to Genesis Networks Telecom Services, LLC, and Genesis Networks Global Services LLC (the "Genesis Borrowers" on the "Genesis Loans"). The Genesis Borrowers are indirectly or directly controlled by James Goodman. The Debtor did not receive value for the payments on the Genesis Loans.

5. The Debtor's estate, therefore, has chapter 5 avoidance claims against the Genesis Borrowers and Prosperity Bank for actual or constructive fraudulent transfers.

6. In addition, the Bondholders were secured by liens on the Debtor's relevant deposit accounts, which were perfected by DACA agreements on specific deposit accounts. The DACA agreements are "passive" or "springing," which means the Debtor has free use of the funds in the deposit account until a notice of exclusive control is delivered by the lienholder. Under passive DACAS, the Debtor can use the funds for its own purposes, including making payments and transfers.

7. The last payment of the Fraudulent Transfers occurred on August 15, 2023.

8. The Bondholders delivered a Notice of Exclusive Control on August 16, 2023. No transfers occurred after the Notice of Exclusive Control, except that the deposit accounts were swept and paid to the Bondholders.

9. Shortly thereafter, the Debtor's bankruptcy counsel and the Bondholders' counsel demanded the Fraudulent Transfers be returned.

10. Prosperity Bank panicked upon realizing it was the recipient of the Fraudulent Transfers and reserved and set aside $4,463,804.68 (the "Subject Funds") into a new deposit account in its own name and subject to a legal hold. The difference between the Subject Funds and the total amount of the Fraudulent Transfers has been referred to as the "Prosperity Payments."

11. An Order for Relief was entered in December 2022, and the Trustee was appointed shortly thereafter. (Dkt. No. 132).

12. Then the Bondholders reached out to the Trustee and asked that he consent to them receiving the Subject Funds from Prosperity Bank. Settlement negotiations eventually led to the Proposed Settlement filed with the Court. The Proposed Settlement sought to (A) release the Estate's chapter 5 avoidance claims against Prosperity Bank (and every other claim against Prosperity Bank); (B) pay the Subject Funds to Bondholders less a $100,000 surcharge to be paid

to the Trustee; and (C) release Prosperity Bank from any non-bankruptcy claims the Bondholders might have against it (the "Proposed Settlement," including later amendments). (Dkt. Nos. 226).

13. Upon the 9019 Motion being filed, the Objectors became alarmed and informally reached out to the Trustee to explain their dissatisfaction with the Proposed Settlement. They provided him a draft objection. Instead of consulting with the Objectors or withdrawing the Proposed Settlement, the Trustee took the draft objection to Prosperity Bank and the Bondholders and retraded his deal. He filed an Amended 9019 Motion without consulting Objectors on May 17, 2023. (Dkt. No. 261). The terms were slightly modified to increase the surcharge to $150,000 and to provide new consideration of $200,000 from Prosperity to the Estate.

14. Objectors maintained that the Proposed Settlement was unfair and unreasonable, and filed a formal Objection on May 25, 2023. (Dkt. No. 269). In the Objection, Objectors argued that the transferee of funds from a deposit account takes the funds free and clear of any liens absent collusion. Objection (Dkt. No. 269) (citing Tex. Bus. & Com. Code § 9.332(b)); *see also* Dkt. No. 354. Thus, the Fraudulent Transfers are recoverable for the Estate and its unsecured creditors. Objectors noted that the only exception to Tex. Bus. & Com. Code § 9.332(b) is collusion and that the Trustee had waived any collusion argument by not raising it in either the Original Motion or the Amended Motion.

15. On May 30 and 31, 2023, Objectors served written discovery on the Trustee, Prosperity Bank, and the Bondholders. The discovery did not seek any information or documents regarding collusion related to the Fraudulent Transfers.

16. On June 2, 2023, the Bondholders filed a reply brief and argued for the first time that Prosperity Bank had colluded with the Debtor to impair the Bondholders' rights. (Dkt. No. 277). Prosperity also filed a reply disputing any collusion. (Dkt. No. 278).

4

17. Upon ever increasing evidence of unreasonableness, the Trustee again retraded the Proposed Settlement with Prosperity Bank and Bondholders without materially consulting Objectors.

18. On July 28, 2023, the Trustee filed the Second Amended 9019 Motion (the Original 9019 Motion, and the First and Second Amended 9019 Motion are the "9019 Motion"). (Dkt. No. 300). This Second Amended 9019 Motion did not increase the monetary consideration of the Proposed Settlement and instead removed a global release that had been granted to Prosperity Bank in the earlier iterations. The Second Amended 9019 Motion did not reference any collusion.

19. On August 8 and 11, 2023, Objectors served a second set of written discovery requests on Trustee and Prosperity Bank, which included requests related to collusion (the "Collusion Discovery").

20. Prosperity Bank informally raised an objection to the Collusion Discovery with Objectors based on relevancy and undue burden and asked that Objectors agree to limit or withdraw the Collusion Discovery. Collusion is inherently fact intensive and difficult to prove. Objectors noted they agreed that collusion was irrelevant, given the Trustee's waiver, but that they did not control the Trustee and did not know whether he would contest the waiver or its relevancy. Prosperity Bank then secured a stipulation from the Trustee where the Trustee acknowledged he did not consider collusion related to the Proposed Settlement and that collusion was irrelevant to his 9019 Motion.[1] Based on the Trustee's acknowledgement, Objectors agreed to withdraw the Collusion Discovery and limit the forthcoming depositions to exclude collusion as a topic. The Stipulation was formalized and filed on August 22, 2023. (Dkt. No. 317).

21. On August 25, 2023, the period for written discovery concluded. (Dkt. No. 309).

---

[1] The Stipulation (Paragraphs 1 and 2) was negotiated between Prosperity Bank and the Trustee and presented to Objectors as a means of limiting discovery and the issues to be tried. Objectors added Paragraph 3 of the Stipulation.

22.     On August 29, 2023, Objectors served a Rule 30(b)(6) Notice of Deposition on Prosperity Bank to be taken on September 6, 2023. The topics identified in the notice expressly excluded the previously mooted and withdrawn Collusion Discovery. The Bondholders were served a copy of the notice on August 29, 2023, and did not cross-notice the deposition.

23.     On August 31, 2023, the Bondholders filed a Joinder to the 9019 Motion. (Dkt. No. 326). The Joinder was silent as to collusion and contained boilerplate statements in support of the 9019 Motion. The Joinder was filed 162 days after the Original 9019 Motion.

24.     On September 1, 2023, Objectors served a Notice of Deposition on the Trustee. The Bondholders were served a copy of the notice on September 1, 2023, and did not cross-notice the deposition.

25.     On September 6, 2023, Objectors took the deposition of Prosperity Bank. Consistent with the Stipulation and the Notice, Objectors did not explore any topics about Collusion.

26.     On September 12, 2023, the Bondholders filed their *Motion to Strike the Stipulation of the Fact between the Trustee, Prosperity Bank, and the Objecting Creditors* and a *Motion for Expediated Hearing*. (Dkt. Nos. 347 and 348).

27.     On September 13, 2023, Objectors responded to Bondholders by email and stated:

> This motion/brief comes after the stipulation limiting discovery, Prosperity's deposition, which was also limited, and the close of written discovery. It's timing is highly prejudicial. We agree that the Court should resolve the dispute you have created prior to hearing the motion. If you motion is unsuccessful, as we anticipate, I don't see any reason this hearing cannot move forward on September 28. However, if your motion were to be successful, that would require additional discovery of Prosperity and the Trustee that will cause the September 28 hearing to be lost. The whole purpose of the stipulation was to limit the number of issues that needed to be tried so that the September 28 hearing can be done in an orderly manner. You requested a three hour hearing on an expedited basis. Would you consent to a status conference with the Court to discuss the current schedule before jumping into a three hour hearing?

28. Also on September 13, 2023, Objectors emailed the Court and stated that they had not had an opportunity to speak with the Bondholders and asked that the Court delay expediating the hearing until a conference had occurred.

29. The September 13, 2023 emails were sent during the deposition of the Trustee. Objectors did not explore any topics about Collusion in the Trustee's deposition because of the Stipulation and the last-minute nature of the Motion to Strike.

30. Neither the Bondholders nor the Trustee would consent to a status conference to discuss scheduling related to the Motion to Strike and the hearing on the 9019 Motion.

31. On September 15, 2023, Objectors filed a *Motion in Limine* seeking to prohibit the Bondholders from presenting evidence at the September 28, 2023 hearing and striking the Joinder. (Dkt. No. 351).

## ARGUMENT

32. No good deed goes unpunished, especially in this case. The Bondholders, a party to the Proposed Settlement but not to the 9019 Motion or Stipulation, attack everything that moves. They purport everything to be nefarious. But, the Stipulation is far from nefarious and was a practical solution to limit discovery in a messy contested matter. The Bondholders' Motion seeks relief that is atypical and unwarranted and make allegations that are nothing more than unsubstantiated mudslinging. The Court should deny the Motion, and let the Trustee proceed with his 9019 Motion subject to the Objectors' contest.

33. The Trustee through the 9019 Motion presented a settlement between himself, Prosperity Bank, and the Bondholders that was a "marriage by convenience." Funds, totaling $5,003,751.85, from Debtor deposit accounts were transferred to repay loans from Prosperity Bank to related parties of the Debtor. The Debtor's relevant deposit accounts were subject to DACAs in

7

favor of the Bondholders, but the DACAs were passive, meaning the Bondholders had not exercised exclusive control and the Debtor had free use of the funds to pay creditors and make other transfers. At this stage of the litigation, it appears the estate has a fraudulent transfer claim under the Bankruptcy Code against Prosperity Bank for the recovery of $5,003,751.85 that is almost certain to succeed on the merits. Recognizing its almost certain liability, Prosperity Bank reserved and set aside $4,463,804.68 of funds in its own deposit account (not a deposit account of the Debtor) while it negotiated with the Debtor and the Bondholders regarding its liability. Then, the Bondholders commenced this involuntary bankruptcy case and negotiations stopped.

34. After the involuntary bankruptcy stuck, the Trustee, looking for quick cash in the door to fund the administration of the estate, struck a deal with the Bondholders and Prosperity Bank. The deal structure involved Prosperity Bank paying $4,463,804.68 with the Trustee getting a $100,000 surcharge and the Bondholders getting the full amount less the surcharge. FedEx and ARRIS were blindsided when the Trustee filed the 9019 Motion.

35. It has become clear the settlement was based on misinformation provided by Prosperity Bank and the Bondholders. For example, the Trustee represented, relying on a representation from Prosperity Bank and without conducting his own investigation, the $4,463,804.68 was being held in an escrow account. This was not true. Similarly, the Trustee represented, relying on a representation form the Bondholders and without conducting his own investigation, the Bondholders appear to be oversecured. This also was not true. Indeed, the entire premise of the 9019 Motion has been undermined by Objectors, which has led to the Trustee retradeing the settlement multiple times and led the Bondholders to assert the post hoc collusion argument. The Objectors have been subjected to shooting at a moving target that changes by the amended motion, discovery response, and Motion to Strike. The Court should reign in this

cumbersome, costly, and inefficient method of litigating that has no foundation under the Bankruptcy Rules, the Rules of Evidence, or any other procedure.

36. The motion should be denied for the following reasons: (1) the Bondholders are not a party to the 9019 Motion; (2) the Bondholders, as a non-party, should not be allowed to carry the Trustee's burden; (3) the Trustee's business judgment is being tried – not the Bondholders' business judgment or their case against Prosperity Bank; (4) the 9019 Motion should not be converted from a summary contested matter to a plenary matter to determine lien rights; (5) the Bondholders' non-bankruptcy claims against Prosperity related to collusion are not before the Court; (6) Bondholders have due process rights in a non-bankruptcy forum – not here; and (7) the relief sought by Bondholders – striking a stipulation – is atypical and unprecedented.

37. The Bondholders are not a party to 9019 Motion. They are an interested person because they stand to benefit from the Trustee's settlement that is the subject of the 9019 Motion; however, interest does equate to plenary or substantive rights. Bankruptcy Rule 9019 is plain. Relief under this Rule may only be sought "[o]n motion *by the trustee*." Fed. R. Bankr. P. 9019(a) (emphasis added). "The Trustee bears the burden of establishing that the balance of [settlement] factors supports a finding that the compromise is fair, equitable and in the best interest of the estate." *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008); see also In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved."). The Trustee must apprise the Court of "the necessary facts for an intelligent, objective and educated evaluation." *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).[2]

---

[2] Bondholders cite several cases for which they suggest counterparties to a trustee's settlement have put on evidence in other cases. However, none of the cases cited by the Bondholders addressed the legal dispute here of whether

9

38. Here, the Trustee filed three motions seeking approval of a single settlement between Prosperity Bank, the Bondholders, and himself. Not one of those motions, which received substantial input from Prosperity Bank and the Bondholders over a period of five months, identified collusion as a necessary fact for an intelligent, objective and educated evaluation of the merits of the settlement. The three motions are wholly silent as to collusion. Objectors filed their objection and response and noted that collusion was not identified and that the issue should be deemed waived. Objectors, relying on that waiver, served discovery on Prosperity Bank, the Bondholders, and the Trustee, but did not seek any discovery into the specific issue of "collusion" related to $5,003,751.85 because the 9019 Motion did not involve collusion.

39. Unsatisfied with the Trustee's 9019 Motion and frustrated with his waiver, the Bondholders then filed a reply brief that for the first time raised collusion as a basis for approval of the settlement. Objectors immediately communicated to Bondholders that collusion was waived as a basis for the settlement and the Bondholders' attempt to interject it into this hearing is improper. Objectors, in an abundance of caution, served on Prosperity Bank and the Trustee a second round of discovery related to the issue of collusion. During this second round of discovery, the Trustee represented to Objectors and Prosperity Bank that collusion did not factor into his business judgment, which is consistent with its exclusion from the 9019 Motion. Prosperity Bank also communicated to Objectors that they intended to object to the collusion discovery given its

---

someone other than the Trustee may put on the Trustee's case and evidence over a properly asserted objection. Objectors dispute the Bondholders may put on their own case and evidence apart from the Trustee's case and evidence. Citing a recitation of uncontested facts that were not subject to a binding legal determination is not precedent, authoritative, or even persuasive. And, the cases cited are distinguishable. For example, Bondholders cite *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 257 (Bankr. S.D.N.Y. 2016), which quotes *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012), which in turn quotes *In re Chemtura Corp.*, 439 B.R. 561, 595 fn. 148 (Bankr. S.D.N.Y. 2010). The *Chemtura Corp.* decision heard from "parties to the settlement" because the settlement was part of a chapter 11 plan that resolved distribution and absolute priority objections under the chapter 11 plan. The "parties to the settlement" were the parties to the chapter 11 plan – one and the same. Neither *Sabine Oil & Gas* nor *Dewey & LeBoeuf* analyzed the quote from *Chemtura Corp* but merely cited it in passing without analysis, making it dicta. Here, Bondholders are parties to the Proposed Settlement but not parties to the 9019 Motion.

10

lack of relevance to the 9019 Motion. The Stipulation resulted. It expressly mooted discovery disputes in this contested matter to allow only the Trustee's case and business judgment to be tried. Prosperity, as the target of discovery, was a party to the Stipulation, and the Trustee and Objectors, as parties to the 9019 Motion, were parties to the Stipulation. Bondholders were neither a target of discovery nor a party to the 9019 Motion; therefore, they are not a party to Stipulation.

40. Bondholders argue the Stipulation is "an attempt to deprive the Court of evidence supporting the Proposed Settlement." Motion, § 1. However, nothing is preventing the Trustee from putting on his evidence supporting the Proposed Settlement. He simply does not believe collusion is relevant to the Proposed Settlement. The Stipulation provides certainty as to the issues that will be tried and reduced costly discovery[3] disputes on an irrelevant issue. Bondholders cannot supplant the Trustee's business judgment with their own.

41. Indeed, the Bondholders are attempting to litigate lien rights in funds held at Prosperity Bank in the context of a 9019 Motion. Bondholders admit they have non-bankruptcy claims against Prosperity Bank, and nothing is preventing Bondholders from pursuing those claims in a non-bankruptcy forum. Instead, they seek the benefits of the Trustee's settlement powers (i.e., the Trustee's business judgment) without the limitations (i.e., the same Trustee's business judgment) that come with it. This Court should not turn the 9019 Motion into a mini-trial of non-bankruptcy collusion claims of the Bondholders against Prosperity Bank. The collusion claims are irrelevant to the Trustee's business judgment. *Matter of Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) ("[I]t is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement."); Fed. R. Evidence 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the

---

[3] Collusion is inherently fact intensive and would have required extensive discovery into both factual conduct as well as to the *mens rea* of the persons involved.

evidence; and (b) the fact is of consequence in determining the action."). The Bondholders may not like the Trustee's business judgment and the presentation of the 9019 Motion, but that is the train they boarded when they agreed to the Proposed Settlement. They cannot change what is relevant to the Trustee.

42. Bondholders argue "due process" mandates they participation as a party because they are releasing their rights to assert collusion claims as part of the Proposed Settlement. Motion, § 1. But, Bankruptcy Court approval under Rule 9019 is mandated not to protect the rights of the settling parties but to protect non-parties (e.g., unsecured creditors) that will be bound by the settlement. This is obvious because only the business judgment of the Trustee is tested. The Trustee, as fiduciary, has his judgment scrutinized by the Court. The business judgment of the counterparties is irrelevant. The Bondholders and Prosperity Bank are self-interested parties that may make whatever deal they wish without Court approval or pursue their due process rights in a non-bankruptcy forum. With this context in mind, it is baffling that Bondholders, who stand to receive 97% of the value of this settlement, complain about due process and the Stipulation. Frankly, Objectors do not understand why the Bondholders are attacking the Trustee's Stipulation other than they believe the Trustee's case for settling is weak, which it is.

43. Bondholders' argue they presented evidence of collusion to the Trustee prior to filing the two amended 9019 Motions. This argument attempts to demonstrate that the Trustee considered collusion as part of his business judgment. But, the Stipulation plainly nullifies this argument. Bondholders' argument combined with the Stipulation evidences the Trustee gives no weight to the collusion argument and that he finds it irrelevant to the Proposed Settlement. If

Bondholders' argument of a "smoking gun"[4] is correct, why does the Trustee disregard the very argument that would support his business judgment of the Proposed Settlement. The rational response for the Trustee seeking approval of the Proposed Settlement that benefits Bondholders would be to use the smoking gun to support his business judgment – not bury it. Bondholders' Motion and its collusion argument is much to do about nothing, as the Trustee apparently concluded.

44. The Court should put up guardrails on the 9019 Motion. Federal Rule of Evidence 403 provides "the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Trustee and Objectors understand that it is the Trustee's business judgment that is being tested. The Trustee will put on his case as to why the Proposed Settlement is fair and reasonable. Objectors will put on their case as to why the Proposed Settlement is not fair and reasonable and why there are "gaping holes" in the factual record. *See Matter of AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984) (denying a bankruptcy settlement because of "gaping holes in the background of information regarding [the] settlement."). Allowing the introduction of collusion will unfairly prejudice Objectors, confuse the issue of what is being tried (Trustee's business judgment v. Bondholders' claims against Prosperity), cause undue delay and costs, and waste time of this Court and the Objectors, the Trustee, and Prosperity Bank.

---

[4] Bondholders quote the Trustee's counsel but do not reference the foundation for the quote. This is hearsay and not the best evidence. The best evidence is the Stipulation that was entered.

45. The Court should not turn a summary hearing on a 9019 Motion into a full-blown evidentiary hearing on the Bondholders' plenary collusion claims against Prosperity Bank. Those are non-bankruptcy claims that did not factor into the Trustee's business judgment.

46. Finally, the relief sought by Bondholders – striking a Stipulation to which they are not a party – is atypical and unprecedented. The parties to the Stipulation did what good counsel do. They limited an ancillary dispute so that the Court is presented with the material issues for hearing. The 9019 Motion, while contested, is prepared to be heard and determined by this Court on September 28 on the limited issues presented by the Trustee. The limited issues should not be expanded.

47. This Court has admonished counsel to this case on several occasions to foster compromise and limit disputes. The Stipulation is a byproduct of this Court's counseling. Now, Bondholders disregard that admonishment and attempt to create chaos. Indeed, the timing of the Bondholders' Motion is suspect and likely intended to prejudice Objectors. The Stipulation was filed on August 22, 2023 (37 days in advance of the hearing). Document discovery closed on August 25, 2023, and did not include discovery of collusion based on the Stipulation. Objectors took Prosperity Bank's deposition on Wednesday, September 6, 2023, which did not cover collusion based on the Stipulation. Then, 21 days after the entry of the Stipulation and after the close of document discovery and Prosperity Bank's deposition, Bondholders filed the current Motion on September 12, 2023, raising new factual allegations for the first time. Indeed, Bondholders did not even confer or request the Stipulation be withdrawn or amended prior to filing the current Motion. It was a total ambush.

48. This 21-day delay is not excusable and would unduly prejudice the fair presentation of evidence at the September 28 hearing, if allowed. Laches arises after an unreasonable and

inexcusable delay that prejudices parties. *In re Gold*, 375 B.R. 316, 334 (Bankr. N.D. Tex. 2007). It is based on one side's inaction and the other side's legitimate reliance. *Id*. The doctrine is applied upon "the occurrence of (1) a delay, (2) that was not excusable, and (3) that caused the defendant undue prejudice." Here, Bondholders' 21-day delay was not excusable and prejudiced Objectors.

## CONCLUSION

49.    For the forgoing reasons, the Court should deny the Bondholders' Motion to Strike and prohibit Bondholders from introducing evidence at the September 28, 2023 hearing on the 9019 Motion. Alternatively, if the Motion to Strike is granted (it should not be), the Court should (A) reopen discovery so that Objectors may compel discovery regarding the collusion issues over Prosperity Bank's objections and (B) continue the September 28, 2023 hearing to allow for discovery.

Respectfully submitted,

| | |
|---|---|
| **DLA PIPER LLP (US)** | **BUTLER SNOW LLP** |
| */s/ Noah M. Schottenstein* | */s/ Adam M. Langley* |
| Noah M. Schottenstein (TX Bar No. 24100661) | Adam M. Langley (admitted *pro hac vice*) |
| James Muenker (TX Bar No. 24002659) | R. Campbell Hillyer (admitted *pro hac vice*) |
| 1900 N. Pearl Street, Suite 2200 | 6075 Poplar Avenue, Suite 500 |
| Dallas, Texas 75201 | Memphis, TN 38119 |
| Telephone: (214) 743-4500 | Telephone: (901) 680-7316 |
| noah.m.schottenstein@us.dlapiper.com | adam.langley@butlersnow.com |
| james.muenker@us.dlapiper.com | cam.hillyer@butlersnow.com |
| | |
| *Counsel for ARRIS Solutions, Inc.* | and |
| | |
| | Candice Carson (TX Bar No. 24074006) |
| | 2911 Turtle Creek Blvd., Suite 1400 |
| | Dallas, Texas 75219 |
| | Telephone: (469) 680-5502 |
| | candice.carson@butlersnow.com |
| | |
| | *Counsel for FedEx Supply Chain Logistics & Electronics, Inc.* |

**CERTIFICATE OF SERVICE**

    I, Adam M. Langley, certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically in this case.

    Dated: September 19, 2023

    */s/ Adam M. Langley*

80079813.v2

82489166.v1