Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § <br> GOODMAN NETWORKS, INC., § <br> § <br> Debtor. § <br> § | Chapter 7 <br><br> Case No. 22-31641-mvl-7 |

**TRUSTEE'S OBJECTION TO JOINT MOTION TO COMPEL TESTIMONY BY TRUSTEE OR IN THE ALTERNATIVE
TO EXCLUDE TRUSTEE TESTIMONY AT HEARING**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed trustee for the estate (the "Estate") of Goodman Networks, Inc. (the "Debtor") in the above-styled bankruptcy case (the "Bankruptcy Case") and files this *Objection* (the "Objection") to the *Joint Motion to Compel Testimony by Trustee or in the Alternative to Exclude Trustee Testimony at Hearing* (the "Motion"), filed by FedEx Supply Chain Logistics & Electronics, Inc. and ARRIS Solutions, Inc. (the "Objecting Creditors"), respectfully stating as follows:

### I.     SUMMARY

1.     The Objecting Creditors have converted what is a straight-forward Rule 9019 motion concerning the Prosperity funds—with respect to which all operative facts are known and the Trustee has given his reasons for proposing repeatedly—into a marathon of discovery and

collateral motion practice, none of which will change anything regarding the perfection issue that is the subject of the Motion. The Trustee has not asserted that the Bondholders are perfected; he will not testify to any such belief; he has never suggested using any privileged material offensively on that point or on any other point; he has never stated that he "adopted" his counsel's advice; and the substance of that advice has always remained confidential.

2. The Trustee understands that the Objecting Creditors hotly contest the Settlement Motion and that they believe their argument on the perfection issue is correct and that it should carry the day. The Trustee respects their views, even if he disagrees with them. Respectfully, however, enough is enough, and this latest attempt to pierce the Trustee's privilege and to set him up at a deposition to do is, should stop. The Objecting Creditors misconstrue the legal standard, they make baseless allegations, they seek information that is privileged and largely irrelevant, and that is outside the scope of permissible discovery. It is time to put to rest these collateral issues and to try the Settlement Motion on its merits.

## II. ARGUMENT

**A. THE ISSUE**

3. The issue in which the Motion arises concerns whether the Bondholders hold perfected liens against the funds on deposit at Prosperity Bank. The operative facts are known, have been known since the beginning, and are not in legitimate dispute so as to give rise to expansive discovery: the money was in a DACA account subject to the control of the Bondholders, which resulted in a perfected, unavoidable lien; it was swept out of the DACA account to pay the loan of the Genesis Borrowers through no fault of the Bondholders; within days, Prosperity reversed the application when confronted on the transfer; Prosperity returned the funds, albeit at another account at Prosperity not subject to the language of the DACA; and no intervening rights

of third parties that may have been paid with the funds are involved. These are the facts that informed the Trustee's business judgment on the perfection issue.

4. The Trustee has legal counsel. Everyone knows that. The Trustee relies on his legal counsel as he makes decisions affecting the Estate. Everyone knows that too, and one would think it would be expected of a professional fiduciary. His counsel provided him with a detailed and comprehensive analysis of the perfection issue. Everyone should expect that, and he has confirmed it in his discovery responses, without disclosing what that analysis is, even as he made his own independent conclusions regarding what to do. *Ipso facto*, therefore, has he waived the privilege and should his counsel become a witness? At the end of the day that is what the Objecting Creditors are urging, but then could a Chapter 7 trustee ever enjoy the protections of the attorney-client privilege and have honest and open discussions with counsel? The Trustee has been careful to preserve the privilege, he is not using it offensively, he has never stated whether he has adopted his counsel's analysis or not, and he has never disclosed what his counsel's analysis is. Thus, he has not waived the privilege. Rather, it is the Objecting Creditors who have been trying to force the Trustee to waive the privilege through Straw Man arguments and questions at deposition the sole purpose of which was to set the Trustee up for the Motion.

**B.    THE STANDARD**

5. Fundamentally, the Objecting Creditors misunderstand the nature of the hearing on the Settlement Motion and they misunderstand the Trustee's role. The hearing is not about the perfection of the Bondholders' security interest, as it might be in an adversary proceeding, but is instead about the probability of success, the complexity of the issues, and the overall effect on the Estate from settling this matter or not. The perfection issue is but one sub-issue (albeit an important one) that goes to all three factors. The Trustee's role is not to tell the Court whether the

Bondholders are perfected or not, but to explain how that open question informed his decision to settle.

6.      The factors for approval of a 9019 motion set out by the Fifth Circuit make no reference to a 9019 movant's business judgment. Rather, the settlement should be "fair and equitable and in the best interests of the estate" pursuant to three (3) enumerated factors: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *In re Foster Mortgage Corp.*, 68 F.3d 914, 817 (5th Cir. 1995). That being said, the Trustee does not disagree that his sound business judgment is one of the factors for the Court to consider within the consideration of "all other factors" bearing on the wisdom of the compromise. But his *business* judgment is an issue that is separate from his *legal* judgment in a case like this where the underlying issue of perfection is a legal one: he can no more tell the Court what the law is or should be than an expert offered to demonstrate a point of domestic law, something is that patently inappropriate.

7.      Hypothetically, here is how the Trustee sees the hearing. Excellent counsel on both sides of the perfection issue will present their arguments, which are arguments of law (as the operative facts are all known). These arguments have been extensively briefed. The Court will reach one of three conclusions (which are not definitive adjudications, of course, as the issue of perfection is tangential to the actual issue and no adversary proceeding or summary judgment is pending). The Court may believe that the Bondholders are obviously perfected, in which case the disposition of the Settlement Motion becomes much easier. The Court may agree with the Trustee that the issue is a difficult one, without any meaningful guidance from the case law, where each side's arguments have merit. In that case, the disposition of the Settlement Motion should likewise

be easier because the Court will better appreciate the Trustee's difficulty with his decision. Or, the Court may believe that the Bondholders are obviously unperfected, in which case the Court may deny the Settlement Motion because of the high probability of success of litigation and free/clear recovery for the Estate in a quick and simple piece of litigation.

8. But all of these arguments will come from the podium, which is where they belong. The analysis of Trustee's counsel in connection with perfection does not matter: only the Court can decide an issue of law such as this one, which is a separate issue from the Trustee's decision to enter into a settlement. That is why the Creditors misunderstand the nature of the Trustee's testimony at the hearing. Consequently, no amount of discovery from the Trustee, or his counsel's legal analysis of the issue, will matter or would be relevant or would be helpful to the Court or would consist of anything more than arguments from the podium.

9. The Objecting Creditors, unhappy with the proposed settlement, refer to the trustee's "business judgment" time and again in their Motion. But not a single such reference is to any case law that would help the parties or the Court understand how the trustee's "business judgment" fits into the overall analysis. The Motion also misstates the law: "The standard of review on a Bankruptcy Rule 9109 motion requires the Court to determine *whether the Trustee's business judgment* is fair and reasonable. *The Trustee must reach a judgment* and that judgment is then tested by the Court." Motion at para. 27 (emphasis added). Where this injection of "the Trustee's business judgment" comes from is unclear. *Foster Mortgage* states that "*the court should approve* the settlement only when the settlement is fair and equitable and in the best interest of the estate. *The judge must compare* the terms of the compromise with the likely rewards of litigation." *In re Foster Mortgage Corp.*, 68 F.3d 914, 817 (5th Cir. 1995) (emphasis added). The Fifth Circuit makes zero reference to the business judgment of the trustee in proposing the

compromise. Again, that is not to say that the Trustee's business judgment is not relevant (and in certain cases highly relevant), but it is ultimately for the Court to assess the Settlement Motion based on what it believes the law is or may be.

C. **RELIANCE ON COUNSEL IS TO BE EXPECTED AND WAIVES NOTHING**

10. The law is clear that the Trustee's consideration of, and even reliance on, counsel, when his counsel's analysis or advice is not used offensively at the hearing, does not waive the attorney client privilege. *See, e.g., Deutsche Bank Trust Co. v. Americas v. Tri-Links Inv. Trust*, 837 N.Y.2d 15 (N.Y. App. 2007) (with respect to legal advice sought in connection with a settlement: "Here, Bankers Trust has never, either through counsel or through Cohen's testimony, stated an intention to use the advice of counsel to prove the reasonableness of the WMI settlement, and it now explicitly disclaims any such intention. Neither did Cohen's testimony selectively disclose the substance of any of the legal advice Bankers Trust received. Thus, Cohen's testimony cannot be deemed to waive the protection of attorney client privilege or of the work product doctrine"). Indeed, it could not be otherwise—not unless every director, officer, trustee, or fiduciary would be denied a privilege simply by seeking legal counsel.

11. The Trustee has located only one case where an objector to a settlement argued that the communications, work product, or opinions of counsel to a debtor-in-possession were fair game in determining whether a 9019 settlement was an exercise of proper business judgment. In *In re Residential Capital, LLC*, 491 B.R. 63, 65 (Bankr. S.D.N.Y), the debtors filed a 9019 motion to settle with the RMBS Trust. The creditors' committee objected to the settlement, and "consistently pressed for the production of all documents bearing on the evaluation, negotiation, and approval of the RMBS Trust Settlement, including any documents communicating legal advice, analysis of claims, or analysis of potential liabilities to the Debtors' Board… or its

individual members." *Id.* at 65. At deposition and in response to requests for production, the debtors asserted the attorney-client privilege in refusing to testify to or produce documents containing the advice of counsel. *Id.* Additionally, the debtors affirmatively represented that they would not offer into evidence advice of counsel to support the merits of the settlement. *Id.* With respect to the same, the Court stated at one hearing that "You're going to have a real problem if you're going to assert privilege with respect to communications from counsel that form any part of the basis for directors approving the settlement." *Id*. at 66. At various points thereafter, however, the Debtors still argued that they "relied exclusivity" and "were entitled to rely" on counsel. *Id.* at 67.

12. The Court's analysis of the "business judgment" issue commenced with a citation to Delaware law holding that "the directors of a corporation are presumed to act on an informed basis, in good faith, and with the honest belief that the action taken is in the best interest of the company. To invoke the rule's protection, directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them." *Id.* at 70 (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). Where the decision to approve a settlement is attacked, "a director … may rebut it by offering evidence that he or she sought the advice of counsel. Under Delaware law, directors are protected when they rely 'in good faith upon information presented to them from various sources'… Courts have allowed directors to rebut due care challenges by showing their processes included consultations with counsel."

13. Then the *Residential Capital* court drew the critical distinction: seeking "legal advice as one aspect of an overall course of reasonable conduct" does not waive privileges; however, where a party argues that it "acted reasonably *because* they relied on the advice rendered by legal counsel" the privilege is likely waived. *Id.* at 71. The court concluded that,

> The attorney-client privilege is not waived if the Debtors argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement. However, after having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received in order to demonstrate that it exercised proper business judgment in approving the RMBS Trust Settlement….

*Id.* at 72.

14. Applied here, the Trustee's discovery responses and testimony at deposition clearly show that he sought advice of counsel as *one of many* actions to educate himself to the merits of settling the controversy. Among other things:

- In February 2023, the Bondholders initiated a dialogue with the Trustee regarding the Prosperity funds and offered their analysis of the issues, including the Trustee requesting "bondholder counsel for an understanding that their claim for the funds … would be their perfected collateral" [Rough at 8, 10];

- At approximately the same point in time, the Trustee's team was doing an analysis of the lien issues [Rough at 11–12];

- Still in February 2023, communications between Trustee's counsel and Prosperity commence regarding the same issues [Rough at 16];

- At this point in time, when offers are being made as between Prosperity and the Bondholders, no conclusive determination has been made regarding the Trustee's views on the lien issues [Rough at 17];

- On February 22, 2023, Trustee's counsel makes an ultimatum to Prosperity regarding turnover of funds;

- The Trustee answered "no" to the question of "is that united front [of bondholders and Trustee potentially suing Prosperity] based on the premise that the bondholders have a perfected lien on these funds and that you are going to get a surcharge";

- On March 1, 2023, a settlement offer is conveyed between the Trustee, the bondholders, and Prosperity [Rough at 37];

- In response to being asked "if you are making [an] offer on or before March 1st, … is it fair to say that you concluded all your investigation and analysis regarding this settlement …." the Trustee answered "I don't know – I don't know about that. That's an ongoing process, a settlement negotiation." [Rough at 39];

- In response to being asked "… do you typically … propose settlements before you've done an investigation", the Trustee answered "It's an ongoing process with regard to settlements, and that's going on, you're talking about settlement as you're looking at documents, as you're hearing positions It's all an ongoing process until the judge gavels it down." [Rough at 39-40].

15. Throughout all the activity leading up to the first 9019 motion being filed, then, it cannot be more clear from the Trustee's testimony that: (i) there was an ongoing effort to analyze the issues and discussions with the parties were ongoing; (ii) the investigation was not concluded; and (iii) there was no understanding between the bondholders and the Trustee that the bondholders were perfected. Applying the principles of *Residential Capital*, the analysis of Trustee's counsel at this point in time was not the exclusive basis upon which the Trustee entered into the settlement because: (i) the Bondholders provided their analysis which the Trustee considered; (ii) there were negotiations between three (3) parties regarding the merits of various positions and exchange of information and documents; and (iii) the Trustee testified that no outcome-determinative conclusions had been drawn [Rough at 52–53].

16. During the time between the filing of the first and second settlement motions, the Trustee testified that investigations were ongoing [Rough at 155] and that during that time period, he also reviewed the legal analysis of the Objecting Creditors on the perfection issue. [Rough at 154-55]. After reviewing their legal position, the Trustee again reached out to the Bondholders inviting them to provide additional arguments on why they believed they were perfected, and he again sought the input of his own counsel. Once again, the Trustee's process included consulting with his counsel regarding the issue, but the decision to settle *at no point in time* has been justified based on the analysis provided to the Trustee by his counsel, let alone such analysis being the sole reason for settling. He had the legal analysis of the Objecting Creditors and of the Bondholders, which he also carefully considered. Should their counsel now also become witnesses?

17. The truth is simple and has never been hidden: whether from the Objecting Creditors, the Bondholders, or his own counsel, or a combination of all of the above, the Trustee has seen each and every argument made on either side of the issue and has made his own decision as to how to proceed in light of the absence of any guiding (or even helpful) case law based on his extensive experience and his belief as to how a court, especially a court of equity, may decide this issue as a matter of first impression. In other words, the legalistics of the issue have been beaten to death, and what remains is an informed decision that a litigant would look to in deciding a settlement: exactly as Rule 9019 is expected to work and exactly what is expected of a decision maker.

18. The sole relevance of the perfection issue is that it is one of the factors considered by the Trustee in forming his business judgment. As the Trustee has explained multiple times, including in filings with this Court:

   (i) he carefully considered the arguments on both sides of this issue (in other words, he understands why the Bondholders may not be perfected, as the funds are not in an account subject to the Bondholders' DACA, and he understands the arguments as to why they may be perfected, as the funds may be readily identifiable cash proceeds, may be a general intangible, and there may have been collusion[1]);

   (ii) he believes it to be a close call because there is no helpful case law that he has located and is a question of form over substance or, more appropriately, hyper-technicality over equity; and

   (iii) in the end, he believes that a court of equity is more likely than not to side with the Bondholders because the Bondholders were innocent in all of this, because the funds were always at Prosperity, and because no intervening rights of third parties are involved such as to make the U.C.C.'s finality of payments doctrine applicable.

19. All of the Objecting Creditors' extensive discovery and depositions does not change any of the Trustee's views on the above, which he has always publicly explained.

---

[1] The Trustee did not consider the issue of collusion prior to filing his original motion, as there was no evidence of it at that time. The Trustee does not agree that there was collusion (as applicable to the U.C.C.) based on the record as it presently exists and reserves all rights with respect to the same.

TRUSTEE'S OBJECTION TO JOINT MOTION TO COMPEL TESTIMONY BY TRUSTEE OR IN THE ALTERNATIVE TO EXCLUDE TRUSTEE TESTIMONY AT HEARING – PAGE 10

20. To summarize, the Trustee has not taken the position that the Bondholders are perfected and he will not be testifying to any such position, even if he were an expert on the issue, which he has conceded that he is not. Rather, that is one of the issues being compromised. The Trustee will not be using any analysis of his counsel to offer any such testimony. The Trustee will not be using the privilege offensively, as he has made abundantly clear many times. He has not waived the privilege.

D. **THE OBJECTING CREDITORS' POSITION IS OUTSIDE OF RULE 26 AND IS DANGEROUS**

21. For the Objecting Creditors to now suggest that they "have no understanding of how the Trustee arrived at his business judgment regarding the Subject Funds" is simply wrong and offensive, especially when considering that they know the Trustee reviewed their analysis of the issue, discussed the issue with them multiple times, and even made the Trustee's UCC lawyer available for almost an hour to discuss the issue with FedEx's counsel. The Objecting Creditors know full well that, shortly after they made their views known, the Trustee paused his Settlement Motion in order to give them and the Bondholders an opportunity to argue their respective positions in as much detail as they wanted, and they know full well that both sides made their arguments and that the Trustee fully considered all of their collective arguments. That the Trustee continued to side with the Bondholders (again, not because he thinks they are correct but because he believes that they have the better side of the argument were the issue tried as a matter of first impression) is no justification to allege, wrongly, that the Objecting Creditors "have no understanding of how the Trustee arrived at his business judgment regarding the Subject Funds."

22. The Objecting Creditors also make much of the Trustee's deposition testimony in response to the question, "On March 22nd, when you filed this motion, what was your analysis as to the subject funds and how the funds should be rightly distributed" that "…they… should be

distributed to the bondholders, according to our analysis." The Trustee's further responses indicate that his analysis was informed by counsel, including Mr. Rukavina and Ms. Funk. The Objecting Creditors seek to transform this simple statement into an offensive use of the privilege, which it is not and will not be. As argued above, the Trustee did not rely on, and will not testify that he solely relied on, his counsel's analysis regarding the belief that the funds ultimately should be distributed to the bondholders. It is simply the conclusion of all the factors that the Trustee considered in entering into the settlement. The Trustee is not concluding that the Bondholders are perfected or are unperfected (and more pointedly, the Trustee is not relying exclusively on counsel's advice in deciding to compromise that issue) – it is simply an issue being compromised because it appears that the Bondholders have the better of the argument.

23. Why then burden the parties or the Court with additional discovery and trying to pierce the Trustee's privilege? To show that his counsel's analysis is wrong and that the Trustee relied on flawed analysis? That can be argued from the podium because the issue is one mostly of law. To show that he adopted his counsel's analysis? The sole point of that would be to make counsel a witness, but then why not make every party's counsel a witness and they can all fight it out from the witness box instead of the podium, where these arguments belong? To show that he disregarded his counsel's advice? Unlikely as that may be, he is still the decision maker and made an informed decision based on his judgment. Again, none of his counsel's privileged analysis is relevant or helpful to the Court on the perfection issue.

24. It is against this backdrop that the Trustee's counsel refused to permit him to answer certain questions at the deposition based on the privilege: because the Objecting Creditors were asking certain questions solely in order to bait the Trustee into waiving the privilege. For example, the Trustee previously informed the Objecting Creditors in written discovery that he had the

benefit of his counsel's analysis of the perfection issue in forming his business judgment. *See* Motion at Exh. A. The Objecting Creditors then took the position that this truthful answer (without disclosing any privileged information) waived the privilege. The Trustee responded by pointing out the well-developed case law that reliance on legal analysis—without disclosing it and without "adopting it" offensively—does not waive the privilege. *See id*. The Objecting Creditors then proceeded to ask a series of questions designed to trap the Trustee into either disclosing the privileged analysis or getting him to admit by negative inference that he adopted it. One of those questions was whether the Trustee did his own legal analysis, which his counsel instructed him not to answer because, if he answered "no," that would lead to the conclusion that he adopted his counsel's analysis, which they would then use to argue adoption and therefore waiver (and it must be remembered that the Trustee is a seasoned attorney himself).

25.     There is another important consideration here for the Trustee, and one that ought to be of significant concern to the Objecting Creditors. The Court may deny the Settlement Motion, in which case the Trustee may decide to file an action against the Bondholders testing the perfection issue (or avoiding an unperfected lien). Do the Objecting Creditors really want any admission by the Trustee or his counsel, or any analysis by either, out there for future use by the Bondholders in any such litigation?

26.     The Trustee finally submits that the Rules support his belief that the Objecting Creditors are exceeding the scope of discovery, even aside from the privilege issue:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). As applied to the issue of perfection:

- the issue is of admitted relevance, but the Trustee's view and that of his counsel on the ultimate issue is not, because the issue is mainly one of law (on which every fact is known), any more than an expert's opinion on the law is of relevance in any other case;

- the Trustee's view and that of his counsel is not proportional to the needs of the case, as the Objecting Creditors and the Bondholders have prepared their extensive legal analysis and will argue the same at the hearing, all sides have the same access to relevant information, the Objecting Creditors have substantial resources and their counsel have prepared a detailed legal analysis and brief on the perfection issue, and the Trustee's or his counsel's views on the issue are not important even if the Court concludes that they have some relevance; and

- the burden and expense outweigh any likely benefit because all that would likely result is another round of discovery, expense, and delays while the Objecting Creditors seek to depose the Trustee and his counsel as to the correctness of counsel's legal analysis, and the potential prejudice that might result were the Trustee to sue the Bondholders in the future on the perfection issue.

27. Again, the sole point of the requested discovery (other than expense, burden, and delay) is to force an argument between counsel for the Objecting Creditors and counsel for the Trustee as to who is right on the perfection issue (even assuming that counsel for the Trustee has advised him that the Bondholders are correct, which the Trustee is not answering one way or the other) when that is not even an argument that the Trustee is submitting or wants to submit, and when counsel for the Bondholders is the appropriate person to have that legal fight.

28. To reiterate: the Trustee has not and is not taking the position that the Bondholders are perfected or are not perfected; he is not testifying as to this issue as an expert or otherwise, except to point out the various arguments on both sides that he considered; his counsel is not arguing perfection one way or the other, except to point out the various arguments on both sides; he is not offering his counsel's analysis offensively and then hiding behind the privilege; the issue is one primarily of law that will be argued from the podium by excellent counsel on all sides with

full knowledge of the facts; and the Court will test the settlement based on those arguments of counsel, and not on whether his own counsel's analysis is correct or not. Under these facts, the Court should put a stop to further discovery and to any further attempt to pierce the Trustee's privilege.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court deny the Motion and, if appropriate, enter a protective order preventing further attempts to pierce the Trustee's privileges, and that the Court grant the Trustee such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 20th day of September, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that, on this the 20th day of September, 2023, true and correct copies of this document were served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Objecting Creditors.

                                                By: /s/ Davor Rukavina
                                                    Davor Rukavina