Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |

**TRUSTEE'S LIMITED OBJECTION TO SUPPLEMENT TO UMB BANK, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, AND THE MAJORITY NOTEHOLDER GROUP'S MOTION FOR RELIEF FROM AUTOMATIC STAY WITH RESPECT TO SHARES OF STOCK ISSUED BY GREATER TECH HOLDINGS, INC.**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed trustee for the estate (the "Estate") of Goodman Networks, Inc. (the "Debtor") in the above-styled bankruptcy case (the "Bankruptcy Case") and files this *Limited Objection* (the "Objection") to the *Supplement to UMB Bank, National Association, As Indenture Trustee, and the Majority Noteholder Group's Motion for Relief from Automatic Stay with Respect to Shares of Stock Issued by Greater Tech Holdings, Inc.* (the "Motion"), respectfully stating as follows:

1.      As the Trustee has previously informed the Court, he does not object to the Bondholders obtaining relief from the automatic stay to foreclose on the GTH Shares (as defined in the Motion).

2.      Nor does the Trustee necessarily object to the Bondholders obtaining relief from the automatic stay to sue John Goodman with respect to any Estate claim against the same related to the GTH Shares and the background conversion and release of the Put Option.  The Trustee does not, however, agree that any such claim is necessarily a "general intangible," as opposed to a "commercial tort claim," depending on what type of claim the Bondholders intend to pursue: the Bondholders have a perfected lien in general intangibles, but not on commercial tort claims.

3.      The problem arises given the Bondholders' theory of the nature of the case. Specifically, they allege that James Frinzi was not an officer of the Debtor and therefore could not have authorized the Debtor to release the Put Option.  The Trustee disagrees, however, and notes that the release of the Put Option forms part of the Trustee's breach of fiduciary duty claims against former officers and directors.  The Trustee believes that this particular claim may be worth $8 million.  He has made a demand on the insurance carriers based, in part, on this claim, and he believes that this claim, if valid, should be covered by insurance in full.

4.      The Bondholders do not have a lien on the Estate's commercial tort claims, and a breach of fiduciary duty claim is clearly a commercial tort claim.  Thus, the concern to the Trustee is that the Bondholders will pursue an action, and possibly obtain a judgment, that will include a finding that Frinzi was not an officer, which someone then may try to use against the Trustee's breach of fiduciary duty claim that the Bondholders have no lien against.  Worse, a court may find that Frinzi was not an officer and still deny the Bondholders any relief on their claims, meaning that both actions may be impaired to the prejudice of both the Bondholders and the Estate.  *If* the Bondholders had a lien against the breach of fiduciary duty claims, then this risk is one that they may decide to take and live with the consequences.  As is, however, their actions may well implicate property of the Estate upon which all creditors are relying for a recovery.

5.     This is one of the principal purposes behind the automatic stay: "[t]he automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).  Thus, whether to grant relief from the automatic stay for "cause" is discretionary.  *See, e.g., id.* ("[a] decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge").  This is important because it enables the Court to control the process, taking into account each party's legitimate concerns and rights.

6.     Bankruptcy courts have developed a series of non-exclusive factors to consider in determining whether to grant relief from the automatic stay for "cause" in order to permit litigation:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Taub*, 413 B.R. 55, 61 (Bankr. E.D.N.Y. 2009).  Overall, however, "the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *Id*. at 62 (internal quotation omitted).

7.     Most of these factors do not apply or otherwise do not support granting relief from the stay.  However, factors (2), (7), and (12) strongly apply against granting the Bondholders relief from the automatic stay.  Each of these factors look to the potential interference with the Trustee's

administration of Estate assets and potential prejudice to the Estate and other creditors, if the stay is lifted.  Here, because of the threat of inconsistent results or results prejudicial to the Estate's breach of fiduciary duty causes of action, these factors strongly urge against granting relief from the stay.  Nor will the Bondholders suffer any prejudice.  What they seek to do is to sue John Goodman, incur attorney's fees and expenses, and, after years, potentially obtain a judgment against John Goodman, which they will then have to collect.  In the meantime, the Trustee expects to prosecute and potentially collect on his breach of fiduciary duty claims.

8.    As the Trustee has recently stated, he believes that the Bondholders are undersecured.  But this is not yet known definitively and there is a potential, depending on how certain assets are monetized and who may have a perfected lien against them, that the Bondholders may be paid in full (the Trustee also believes that the Bondholder debt is overstated by approximately $1.6 million[1]).  The Trustee is <u>not</u> representing that the Bondholders will be paid in full on their secured debt and he understands that it is difficult to make decisions based on speculative future recoveries, but he also believes that a reasonable delay before suing John Goodman would not prejudice anyone, while allowing all parties to see what the actual recoveries to the Bondholders will be, while also ensuring that the Bondholders and the Trustee are not tripping over each other with respect to their divergent causes of action related to the Put Option.

9.    The Trustee will add, without any recrimination, that the Bondholders were one of the original petitioning creditors here who also actively opposed the Debtor's attempt to convert the Bankruptcy Case to Chapter 11.  They now have what they asked for—an independent trustee

---

[1] With respect to the Hudson transaction, Genesis Inc. and/or Genesis sold $1.6 million of the bonds to Alliance, which were supposed to then be cancelled or retired, which it appears did not happen.  Either these bonds need to be retired, or Alliance holds them in trust for the Estate, as Debtor funds were used to pay them.

and fiduciary, who is actively administering the Estate for their and everyone's benefit.  The Trustee believes that the Estate's breach of fiduciary duty claims and related insurance coverage represent the largest potential recovery for *all* creditors.  The Trustee does not wish to impede the Bondholders, but he also intends to protect property of the Estate for the benefit of everyone.

10.     The Trustee submits that the foregoing issue can be resolved through reasonable negotiations and a reasonable order of the Court, and he intends to seek to negotiate the same with the Bondholders.  If agreement cannot be reached, however, he stands by this Objection.

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court deny the Motion with respect to claims against John Goodman or, if the Court grants the same, that the Court impose such terms and protections as will protect the Estate's interests.

RESPECTFULLY SUBMITTED this 29 day of September, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Thomas D. Berghman, Esq.
    Texas Bar No. 24082683
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the  29th day of September, 2023, true and correct copies of this document were served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Bondholderd.

By: /s/ Davor Rukavina
Davor Rukavina