

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed October 2, 2023**

_____
**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| Goodman Networks, Inc., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |
| | § | |
| | § | |

## STIPULATION AND AGREED ORDER
## BETWEEN THE DEBTOR AND FORMER OFFICERS FOR LIMITED
## RELIEF FROM THE AUTOMATIC STAY TO ALLOW FOR ADVANCEMENT
## OF DEFENSE COSTS UNDER THE DEBTOR'S INSURANCE POLICIES

Scott M. Seidel, solely in his capacity as the chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the "Debtor"), and John Debus ("Debus"), Joseph Hart IV ("Hart"), Anthony Rao ("Rao"), and Mark Keiffer ("Keiffer," and collectively with Debus, Hart and Rao, the "Former Officers" and each a "Former Officer"), by and through their respective undersigned counsel, hereby enter into this stipulation for an agreed upon order (the "Stipulation and Order") regarding

LEGAL02/43416647v3

the advancement of defense costs to the Former Officers under the Debtor's insurance policies. The Trustee and Former Officers are together referred to as the "Parties" and each, a "Party."

## RECITALS

**WHEREAS**, Debus avers that Debus was the Goodman Companies' (as defined below): (i) interim chief financial officer and served in this role from November 21, 2016 to June 3, 2017; and (ii) chief financial officer and served in this role from June 5, 2017 to December 1, 2020;

**WHEREAS**, Hart avers that Hart was the Goodman Companies': (i) vice president of supply chain and served in this role from about June 2014 to about June 2017; (ii) senior vice president of operations and served in this role from about June 2017 to about December 2018; (iii) executive vice president of operations and served in this role from about December 2018 to about June 2020; and (iv) president and chief operating officer and served in this role from about June 2020 to about September 2021;

**WHEREAS**, Rao avers that Rao was the Goodman Companies': (i) assistant general counsel and served in this role from about February 2014 to about November 2016; and (ii) executive vice president, general counsel and corporate secretary and served in this role from about November 2016 to about August 2021;

**WHEREAS**, Keiffer avers that Keiffer was the Goodman Companies': (i) board member and served in this role from about May 2017 to about September 2020; and (ii) chief executive officer and served in this role from about February 2020 to about September 2020;

**WHEREAS**, on September 6, 2022 (the "Petition Date"), a group of petitioning creditors of the Debtor filed an involuntary petition for relief under chapter 7, of Title 11, of the United States Code, thereby commencing the above-captioned bankruptcy case;

2

**WHEREAS**, on December 12, 2022, the Court entered the *Order for Relief in an Involuntary Case* [Docket No. 132] and thereafter Scott M. Seidel was appointed chapter 7 trustee;

**WHEREAS**, on or about April 27, 2023, the Trustee delivered to the Former Officers, among others, a notice of claims, circumstances, and demand for monetary relief (the "Notice and Demand"), which, *inter alia*, contained a demand for "immediate payment in an amount no less than $100 million from the [Former Officers] in full satisfaction of the Claims [(as defined in the Notice and Demand)]" related to the Former Officers' purported actions in contravention of their fiduciary duties, duties of care and loyalty and contractual obligations of the Debtor's wholly-owned subsidiaries, GNET ATC, LLC and Multiband Field Services, Inc. (together, the "Subsidiaries" and together with the Debtor, the "Goodman Companies");

**WHEREAS**, at all relevant times during the Former Officers' tenure with the Debtor, the Debtor maintained certain liability insurance policies (the "Insurance Policies"), including, without limitation, policies issued by (i) Federal Insurance Company ("Federal"), Policy Numbers 8259-6686 (the "Primary ABC Policy") and 8262-4874 (the "2021-22 Policy") and (b) Westchester Fire Insurance Company ("Westchester, and together with Federal, "Chubb"),[1] Policy Number G46647233 004 (the "Base DIC Policy");

**WHEREAS**, the Former Officers each made a formal demand upon the Insurance Companies for coverage under the Insurance Policies and have asserted, and continue to assert, that the Insurance Policies provide for, *inter alia*, coverage of the Former Officers' defense costs (the "Defense Costs") associated with the Claims asserted against them in the Notice and Demand;

**WHEREAS**, pursuant to the terms, conditions, limitations, and exclusions of the Insurance Policies, Chubb is obligated to indemnify and/or defend its Chubb policyholders for appropriate

---

[1] Chubb, and together with such other insurance companies that may cover Defense Costs, the "Insurance Companies" and each, an "Insurance Company").

3

costs they incur in defending Claims brought against them, and failure to comply with that certain Defense Counsel Legal Services Agreement, dated January 1, 2023 (the "LSA"), may result in, *inter alia*, partial or full non-payment of legal invoices;

**WHEREAS**, on or about June 16, 2023, Chubb sent a letter to the Debtor (the "Coverage Position Letter") with respect to insurance coverage under the Primary ABC Policy, 2021-22 Policy and Base DIC Policy, which set forth Chubb's current analysis of coverage regarding the Claims contained in the Notice and Demand and reserved all rights under the Insurance Policies;

**WHEREAS**, as of September 31, 2023, the Former Officers have incurred Defense Costs with respect to the Claims asserted against them in the Notice and Demand in the amount of $223,707.54 (the "Pre-Stipulation Costs") for which they seek reimbursement.

**WHEREAS**, the Trustee has determined that it is in the best interest of the Debtor's estate and creditors that the Trustee stipulate as set forth below.

**NOW THEREFORE,** the Parties hereby stipulate and agree as follows:

1. Solely to the extent provided herein, limited relief from the automatic stay imposed by 11 U.S.C. § 362(a) is ordered to allow for the advancement of Defense Costs in accordance with the Insurance Policies and LSA.

2. The Insurance Companies are hereby authorized to advance Defense Costs to the Former Officers in connection with the Claims set forth in the Notice and Demand in accordance with the terms and conditions set forth in the Insurance Policies, LSA and this Stipulation and Order.

3. Following entry of this Stipulation and Order by the Court, the Parties shall abide by the following procedures with respect to a Former Officer's request for advancement of Defense Costs under the LSA and Insurance Policies:

LEGAL02/43416647v3

    A. Within seven (7) days following the conclusion of each calendar month, counsel for the Former Officers shall submit to counsel for the Trustee their written request for advancement of Defense Costs for the prior calendar month, which request shall include copies of redacted bills for review, reflecting only fees and costs incurred in connection with the Claims set forth in the Notice and Demand (the "Defense Costs Request").[2] Written requests for advancement of Defenses Costs must comply with the billing requirements set forth in the LSA; and

    B. The Trustee shall raise objections, if any, regarding the proposed Defense Costs Request within twenty-one (21) days of receipt of same (the "Objection Period");

    C. If no objections are raised by the Trustee following the expiration of the Objection Period, the Former Officer may submit the Defense Costs included in the Defense Costs Request to the Insurance Company for payment;

    D. If objections are raised by the Trustee within the Objection Period, the Parties will attempt to reach a consensual resolution during the following ten (10) days (the "Discussion Period"); and

    E. If a consensual resolution of the Trustee's objection(s) cannot be reached within the Discussion Period, the Parties agree to request an expedited hearing, subject to the Court's calendar, to resolve the pending dispute.

4.     The procedure shall apply to the Pre-Stipulation Costs, which must be the subject of a Defense Costs Request submitted no later than fourteen (14) days from the entry of this Stipulation and Order.

5.     Nothing contained in this Stipulation and Order is intended to modify or change any of the terms or conditions of the Insurance Policies or LSA, nor shall this Stipulation and Order be offered or used by any Party in support of a claim for coverage under the Insurance Policies.

6.     Except as provided for in the Insurance Policies, LSA or Stipulation and Order, the Parties reserve all of their respective rights and claims with respect to, among other things, the (a) Notice of Demand, and (b) Insurance Policies.

---

[2] Nothing provided herein shall amend, modify or change the Former Officers' obligation to comply with their obligations governing the submission and approval of the Defenses Costs to the Insurance Companies as required by the terms of the LSA, as applicable. For the avoidance of doubt, limitations and requirements provided herein are in addition to the terms of the LSA.

5

7. Nothing herein shall prejudice a Former Officer's right to seek additional relief from the Court, including, but not limited to, further stay relief.

8. The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation and Order.

9. The Parties (and/or the undersigned representatives acting on behalf of the Parties) represent and warrant that they are duly authorized to execute and enter into this Stipulation and Order. Each Party represents and warrants to the other Party that it: (a) made this Stipulation and order freely and voluntarily and with full knowledge of its significance; and (b) has been represented by counsel of its own choice in the negotiations preceding the execution of this Stipulation and Order and in connection with the preparation and execution of this Stipulation and Order.

10. This Stipulation and Order may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11. This Stipulation and Order constitutes the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of all Parties hereto. No statement made or action taken in the negotiation of this Stipulation may be used by any party for any purpose whatsoever.

12. This Stipulation and Order shall not in any way be construed as or deemed to be evidence of any admission or concession on the part of any or all of the Former Officers of any liability or wrongdoing whatsoever, which liability and wrongdoing are hereby expressly denied and disclaimed by each Former Officer, and the Former Officers each expressly reserve, without

limitation, all of their rights, claims, and defenses with respect to the subject matter set forth herein, including such rights, claims and defenses as they relate to the Notice and Demand.

13.  The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation and Order. Any request for relief brought before the Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Federal Rules of Bankruptcy Procedure (the "Federal Rules") and the Local Bankruptcy Rules for the Northern District of Texas.

14.  This Stipulation and Order is immediately valid and fully effected upon its entry and the fourteen (14) day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a), or otherwise, is hereby waived.

### END OF ORDER ###

Agreed as to form and substance:

| | |
|---|---|
| */s/ Thomas D. Berghman* | */s/ James Vincequerra* |
| **MUNSCH HARDT KOPF & HARR, P.C.** | **ALSTON & BIRD LLP** |
| Davor Rukavina (Tex. State Bar No. 24030781) | Jared M. Slade |
| Thomas D. Berghman (Tex. State Bar No. 24082683) | Texas State Bar No. 24060618 |
| 500 N Akard Street, Suite 3800 | 220 Ross Avenue |
| Dallas, Texas 75201-665 | Dallas, Texas 75201 |
| Telephone: (214) 855-7500 | Telephone: (214) 922-3400 |
| Facsimile: (214) 855-7584 | Facsimile: (214) 922-3899 |
| Email: tberghman@munsch.com | Email: Jared.Slade@alston.com |
|         drukavina@munsch.com | |
| | *– and –* |
| *Attorneys for the Trustee* | James J. Vincequerra (admitted *pro hac vice*) |
| | Dylan S. Cassidy (admitted *pro hac vice*) |
| | 90 Park Avenue |
| | New York, New York 10016 |
| | Telephone: (212) 210-9400 |
| | Facsimile: (212) 210-9444 |
| | Email: James.Vincequerra@alston.com |
| |         Dylan.Cassidy@alston.com |
| | |
| | *Attorneys for the Former Officers* |