[*Insert DTC Global Legend*]

[*Face of Note*]

CUSIP/ISIN: 38239H AF2/US38239HAF29

8.000% Senior Secured Notes due 2022

$112,500,000

No. 1

## GOODMAN NETWORKS INCORPORATED

promises to pay to Cede & Co or registered assigns,

the principal sum of ONE HUNDRED AND TWELVE MILLION AND FIVE HUNDRED THOUSAND DOLLARS

on May 31, 2022.

Interest Payment Dates: October 15 and April 15

Record Dates: October 1 and April 1

Dated: May 31, 2017

GOODMAN NETWORKS INCORPORATED

By: _____
Name:  John Debus
Title:   Interim Chief Financial Officer

This is one of the Notes referred to
in the within-mentioned Indenture:

UMB BANK, NATIONAL ASSOCIATION,

as Trustee

By: _____
Authorized Signatory

1

EXHIBIT BH 4

[Back of Note]
8.000% Senior Secured Notes due 2022

*[Insert the Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

Capitalized terms used herein have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

(1) *INTEREST*. Goodman Networks Incorporated, a Texas corporation (the "*Company*"), promises to pay or cause to be paid interest on the principal amount of this Note at 8.000% per annum from May 31, 2017 until maturity. The Company will pay interest semi-annually in arrears on October 15 and April 15 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "*Interest Payment Date*"). Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance; *provided further* that the first Interest Payment Date shall be October 15, 2017. The Company will pay interest (including post-petition interest in any proceeding under the Bankruptcy Code) on overdue principal at a rate that is 2% higher than the then applicable interest rate on the Notes to the extent lawful; it will pay interest (including post-petition interest in any proceeding under the Bankruptcy Code) on overdue installments of interest (without regard to any applicable grace period), at the same rate to the extent lawful.

Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

(2) *METHOD OF PAYMENT*. The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders of Notes at the close of business on October 1 and April 1 immediately preceding the Interest Payment Date, even if such Notes are canceled after such record date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. The Notes will be payable as to principal, premium, if any, and interest at the office or agency of the Paying Agent and Registrar, or, at the option of the Company, payment of interest may be made by check mailed to the Holders at their addresses set forth in the register of Holders; *provided* that payment by wire transfer of immediately available funds will be required with respect to principal of, premium on, if any, and interest on all Global Notes and all other Notes the Holders of which will have provided wire transfer instructions to the Company or the Paying Agent. Such payment will be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

(3) *PAYING AGENT AND REGISTRAR*. Initially, UMB Bank, National Association, the Trustee under the Indenture, will act as Paying Agent and Registrar. The Company may change the Paying Agent or Registrar without prior notice to the Holders of the Notes. The Company or any of its Subsidiaries may act as Paying Agent or Registrar.

2

16331348_4

UMB-000361

(4)   **INDENTURE AND SECURITY DOCUMENTS.**  The Company issued the Notes under an Indenture dated as of May 31, 2017 (the "*Indenture*") between the Company and the Trustee.  The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the TIA.  The Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms.  To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.  The Notes are secured obligations of the Company and are secured pursuant to the Security Documents referred to in the Indenture.

(5)   **OPTIONAL REDEMPTION.**

(a)   At any time prior to the third anniversary of the date of the Indenture, the Company may on any one or more occasions redeem up to 35% of the aggregate principal amount of Notes originally issued under the Indenture, upon not less than 30 nor more than 60 days' notice, at a redemption price equal to 108.000% of the principal amount of the Notes redeemed, plus accrued and unpaid interest to the date of redemption (subject to the rights of Holders of Notes on the relevant record date to receive interest on the relevant Interest Payment Date) with the net cash proceeds of an Equity Offering by the Company or a capital contribution to the Company's common equity made with the net cash proceeds of a concurrent Equity Offering by the Company's direct or indirect parent; *provided* that:

(A)   at least 65% of the aggregate principal amount of Notes originally issued under the Indenture (excluding Notes held by the Company and its Subsidiaries) remains outstanding immediately after the occurrence of such redemption;

(B)   the redemption occurs within 120 days of the date of the closing of such Equity Offering; and

(C)   the Company furnishes an Officers' Certificate certifying that such redemption is being effectuated pursuant to Section 3.07(a) and that such Equity Offering complies with the terms of Section 3.07(a).

(b)   At any time prior to the third anniversary of the date of the Indenture, the Company may on any one or more occasions redeem all or a part of the Notes, upon not less than 30 nor more than 60 days' notice, at a redemption price equal to 100% of the principal amount of the Notes redeemed, plus the Applicable Premium as of, and accrued and unpaid interest to the applicable date of redemption, subject to the rights of Holders on the relevant record date to receive interest due on the relevant Interest Payment Date; *provided*, the Company shall furnish an Officers' Certificate certifying that such redemption is being effectuated pursuant to Section 3.07(b).

3

16331348_4

UMB-000362

(c) Except pursuant to the preceding paragraphs, the Notes will not be redeemable at the Company's option prior to the third anniversary of the date of the Indenture. Notwithstanding the foregoing, the Company shall be permitted to refinance the Notes in full at par on or prior to the first anniversary of the date of this Indenture with the proceeds of other Indebtedness; *provided*, the Company shall furnish an Officers' Certificate certifying that such redemption is being effectuated pursuant to the second sentence of Section 3.07(c).

(d) On or after the third anniversary of the date of the Indenture, the Company may on any one or more occasions redeem all or a part of the Notes, upon not less than 30 nor more than 60 days' notice, at the redemption prices (expressed as percentages of principal amount) set forth below, plus accrued and unpaid interest on the Notes redeemed, to the applicable redemption date, if redeemed during the period indicated below, subject to the rights of Holders on the relevant record date to receive interest on the relevant Interest Payment Date; *provided*, the Company shall furnish an Officers' Certificate setting forth the relevant percentage below and certifying that such redemption is being effectuated pursuant to Section 3.07(d):

| For the period below | Percentage |
| --- | --- |
| On or after the third anniversary of the date of the Indenture and before the fourth anniversary of the date of the Indenture | 102.000% |
| On or after the fourth anniversary of the date of the Indenture and before November 30, 2021 | 101.000% |
| On or after November 30, 2021 | 100.000% |

Unless the Company defaults in the payment of the redemption price, interest will cease to accrue on the Notes or portions thereof called for redemption on the applicable redemption date.

(6) REPURCHASE AT THE OPTION OF HOLDER IN CONNECTION WITH CHANGE OF CONTROL OFFER.

If there is a Change of Control, the Company will be required to make an offer (a "*Change of Control Offer*") to each Holder to repurchase all or any part (in integral multiples of $1.00) of each Holder's Notes at a purchase price in cash equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest thereon to the date of purchase (the "*Change of Control Payment*"), subject to the rights of Holders on the relevant record date to receive interest due on the relevant interest payment date; *provided*, that for the avoidance of doubt, the premiums set forth in Section 3.07 shall not be applicable to any redemption made pursuant to Section 4.15. Within 30 days following any Change of Control,

4

the Company will mail a notice to each Holder setting forth the procedures governing the Change of Control Offer as required by the Indenture.

(7) REPURCHASE AT THE OPTION OF HOLDER BY APPLICATION OF EXCESS PROCEEDS. If the Company or a Restricted Subsidiary of the Company consummates any Asset Sales, within 15 Business Days after the aggregate amount of Excess Proceeds exceeds $2.5 million, the Company will perform one of the following:

(a) if the Senior Secured Leverage Ratio, calculated on a pro forma basis giving effect to such Asset Sale, is less than or equal to 3.50 to 1.00 (i) make an Asset Sale Offer to all Holders of Notes to purchase, prepay or redeem the maximum principal amount of Notes that may be purchased, prepaid or redeemed out of the Excess Proceeds or (ii) redeem the PIK Preferred Stock with the Excess Proceeds; or

(b) if the Senior Secured Leverage Ratio, calculated on a pro forma basis giving effect to such Asset Sale, is greater than 3.50 to 1.00, make an Asset Sale Offer to all Holders of Notes to purchase, prepay or redeem the maximum principal amount of Notes that may be purchased, prepaid or redeemed out of the Excess Proceeds.

The Company will follow the notice procedures set forth in Section 3.09 of the Indenture. The offer price for the Notes in any Asset Sale Offer will be equal to 100% of the principal amount of the Notes purchased, plus accrued and unpaid interest on the Notes to the date of purchase, prepayment or redemption, subject to the rights of Holders of Notes on the relevant record date to receive interest due on the relevant interest payment date, and will be payable in cash. If any Excess Proceeds remain after consummation of an Asset Sale Offer, the Company may use such Excess Proceeds for any purpose expressly permitted by the Indenture. If the aggregate principal amount of Notes tendered into such Asset Sale Offer exceeds the amount of Excess Proceeds, the Notes shall be purchased on a pro rata basis based on the principal amount of Notes tendered and remaining Excess Proceeds shall be used for any purpose expressly permitted by the Indenture. Holders of Notes that are the subject of an offer to purchase will receive an Asset Sale Offer from the Company prior to any related purchase date and may elect to have such Notes purchased by completing the form entitled "Option of Holder to Elect Purchase" attached to the Notes.

(8) EXCESS CASH FLOW REDEMPTION. To the extent that the Excess Cash Flow Amount for any Applicable Period cannot be applied to the redemption of the PIK Preferred Stock pursuant to the terms of such PIK Preferred Stock in effect on the issue date under applicable law, pursuant to the terms of the Credit Facilities, or cannot be applied in a manner consistent with the PIK Preferred Stock documentation as in effect on the issue date, such Excess Cash Flow Amount shall be used to redeem the Notes at a price of 100% pursuant to Section 4.19. Once the PIK Preferred Stock has been redeemed in full, the Excess Cash Flow Amount shall be applied in its entirety to redeem the Notes pursuant to Section 4.19.

Within five Business Days following the date of the delivery of the Company's quarterly or annual, as applicable, financial statements with respect to the most recently ended Applicable Period, the Company shall (a) redeem Notes in an amount equal to the Excess Cash Flow Amount to purchase Notes at a redemption price equal to 100% of the aggregate principal amount thereof plus accrued and unpaid interest to, but not including, the date of purchase and (b) deliver to the Trustee an Officers' Certificate setting forth the calculations in reasonable detail in connection with the Excess Cash Flow redemption in respect of such Applicable Period, including, without limitation, the relevant Excess Cash Flow Amount and relevant Excess Cash Flow Percentage (with reference to the clause within the definition of Excess Cash Flow Percentage that is being relied upon for such Applicable Period). Any redemption pursuant to Section 4.19 shall be made pursuant to the provisions of Sections 3.01 through 3.06 hereof, accompanied by an Officers' Certificate certifying that such redemption is being made pursuant to Section 4.19. For the avoidance of doubt, the premiums set forth in Section 3.07 shall not be applicable to any redemption made pursuant to Section 4.19.

(9) *NOTICE OF REDEMPTION.* Subject to Section 3.09, at least 30 days but not more than 60 days before a redemption date, the Company will mail or cause to be mailed, by first class mail (or post with DTC, as applicable), a notice of redemption to each Holder whose Notes are to be redeemed at its registered address, except that redemption notices may be mailed more than 60 days prior to a redemption date if the notice is issued in connection with a defeasance of the Notes or a satisfaction and discharge of the Indenture pursuant to Articles 8 or 12 thereof. Notes and portions of Notes selected will be in integral multiples of $1.00; except that if all of the Notes of a Holder are to be redeemed or purchased, the entire outstanding amount of Notes held by such Holder shall be redeemed or purchased.

(10) *DENOMINATIONS, TRANSFER, EXCHANGE.* The Notes are in registered form in minimum denominations of $1.00 and integral multiples thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Company may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Company need not exchange or register the transfer of any Note or portion of a Note selected for redemption, except for the unredeemed portion of any Note being redeemed in part. Also, the Company need not exchange or register the transfer of any Notes for a period of 15 days before a selection of Notes to be redeemed or during the period between a record date and the next succeeding Interest Payment Date.

(11) *PERSONS DEEMED OWNERS.* The registered Holder of a Note may be treated as the owner of such Note for all purposes. Only registered Holders have rights under the Indenture.

(12) *AMENDMENT, SUPPLEMENT AND WAIVER.* Subject to certain exceptions, the Indenture, the Notes, the Note Guarantees and the Security Documents may be amended or supplemented with the consent of the Holders of at least a majority in aggregate

principal amount of the then outstanding Notes including Additional Notes, if any, voting as a single class, and any existing Default or Event of Default or compliance with any provision of such documents may be waived with the consent of the Holders of a majority in aggregate principal amount of the then outstanding Notes including Additional Notes, if any, voting as a single class. Without the consent of any Holder of Notes, the Indenture, the Notes, the Note Guarantees or the Security Documents may be amended or supplemented to cure any ambiguity, defect or inconsistency that does not adversely affect the legal rights hereunder of any Holder in any material respect, to provide for uncertificated Notes in addition to or in place of certificated Notes, to provide for the assumption of the Company's or a Guarantor's obligations to the Holders of the Notes and Note Guarantees by a successor to the Company or such Guarantor pursuant to Article 5 or Article 10 of the Indenture, to make any change that would provide any additional rights or benefits to the Holders of the Notes or that does not adversely affect the legal rights under the Indenture of any Holder in all material respects, to comply with the requirements of the SEC in order to effect or maintain the qualification of the Indenture under the TIA, to enter into a supplemental indenture to evidence the Reincorporation of the Company as permitted by the Plan upon receipt of an Officers' Certificate from the Company confirming that shareholders holding at least 25 percent of the issued and outstanding common shares of the Company have approved the Reincorporation pursuant to the General Corporation Law of the State of Delaware, to enter into additional or supplemental Security Documents, to release Collateral in accordance with Section 10.05 of the Indenture and the Security Documents, except as set forth in Section 9.02 of the Indenture, to provide for the issuance of Additional Notes in accordance with the limitations set forth in the Indenture, to evidence and provide for the acceptance and appointment (x) under the Indenture of a successor Trustee or Collateral Agent thereunder or (y) under the Security Documents of a successor Collateral Agent thereunder, to make any amendment to the provisions of the Indenture relating to the transfer and legending of the Notes as permitted by the Indenture, including, without limitation, to facilitate the issuance and administration of the Notes (*provided, however,* that (i) compliance with the Indenture as so amended would not result in the Notes being transferred in violation of the Securities Act or any applicable securities laws and (ii) such amendment does not materially and adversely affect the rights of the Holders of the Notes to transfer the Notes), to make, complete or confirm any grant of Collateral permitted or required by the Indenture or any of the Security Documents or any release of Collateral that becomes effective as set forth in the Indenture or any of the Security Documents, to allow any Guarantor to execute a supplemental indenture and/or a Note Guarantee with respect to the Notes, to modify the Security Documents to reflect additional extensions of credit and additional secured creditors holding secured obligations, so long as such secured obligations are not prohibited by the Indenture or any other security document, or to the extent required by the Intercreditor Agreement.

(13)   *DEFAULTS AND REMEDIES.* The Notes are subject to the Defaults and Events of Default set forth in Section 6.01 of the Indenture. In the case of an Event of Default arising from certain events of bankruptcy or insolvency with respect to the Company, any Restricted Subsidiary of the Company that is a Significant Subsidiary or

7

any group of Restricted Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary, all outstanding Notes will become due and payable immediately without further action or notice. If any other Event of Default occurs and is continuing, the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be due and payable. Holders may not enforce the Indenture or the Notes except as provided in the Indenture. Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or the Notes Representative or the Collateral Agent or exercising any trust or power conferred on it. The Trustee may withhold from Holders, the Notes Representative, and the Collateral Agent notice of any continuing Default or Event of Default (except a Default or Event of Default relating to the payment of principal, premium, if any, or interest) if it determines that withholding notice is in the Holders' interest. The Holders of a majority in aggregate principal amount of the then outstanding Notes by written notice to the Trustee may, on behalf of all the Holders, (a) rescind an acceleration and its consequences under the Indenture, if the rescission would not conflict with any judgment or decree and if all existing Events of Default (except nonpayment of principal of, premium on, if any, or interest on the Notes that has become due solely because of the acceleration) have been cured or waived and (b) waive an existing Default or Event of Default and its consequences under the Indenture except a continuing Default or Event of Default in the payment of principal of, premium on, if any, or interest on the Notes (including in connection with an offer to purchase). The Company is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Company is required, upon becoming aware of any Default or Event of Default, to deliver to the Trustee a statement specifying such Default or Event of Default.

   (14)   TRUSTEE DEALINGS WITH COMPANY. The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for the Company or its Affiliates, and may otherwise deal with the Company or its Affiliates, as if it were not the Trustee.

   (15)   NO RECOURSE AGAINST OTHERS. No director, officer, employee, incorporator or stockholder of the Company or any Guarantor, as such, will have any liability for any obligations of the Company or the Guarantors under the Notes, the Indenture, the Note Guarantees or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder of Notes by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes. The waiver may not be effective to waive liabilities under the federal securities laws.

   (16)   AUTHENTICATION. This Note will not be valid until authenticated by the manual signature of the Trustee or an authenticating agent.

   (17)   ABBREVIATIONS. Customary abbreviations may be used in the name of a Holder or an assignee, such as: TEN COM (= tenants in common), TEN ENT (= tenants

by the entireties), JT TEN (= joint tenants with right of survivorship and not as tenants in common), CUST (= Custodian), and U/G/M/A (= Uniform Gifts to Minors Act).

(18) [*Reserved*].

(19) *CUSIP AND ISIN NUMBERS*. Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Company has caused CUSIP and corresponding ISIN numbers to be printed on the Notes, and the Trustee may use CUSIP and corresponding ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption, and reliance may be placed only on the other identification numbers placed thereon.

(20) *GOVERNING LAW*. THIS NOTE, THE NOTE GUARANTEES AND THE INDENTURE WILL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

The Company will furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to:

Goodman Networks Incorporated
2801 Network Blvd., Suite 300
Frisco, Texas 75034
Attention: Chief Financial Officer

9

16331348_4

UMB-000368

ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's soc. sec. or tax I.D. no.)

_____
_____
_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____ to transfer this Note on the books of the Company. The agent may substitute another to act for him.

Date: _____

Your Signature: _____
(Sign exactly as your name appears on the face of this Note)

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

10

16331348_4

UMB-000369

REDEMPTION OR REPURCHASE OF NOTE

If this Note is being redeemed or purchased by the Company pursuant to Section 3.07(a), Section 3.07(b), Section 3.07(c), Section 3.07(d), Section 4.10, Section 4.15 or Section 4.19 of the Indenture, please check the appropriate box below:

☐ Section 3.07(a)   ☐ Section 3.07(b)   ☐ Section 3.07(c)   ☐ Section 3.07(d)

☐ Section 4.10   ☐ Section 4.15   ☐ Section 4.19

OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have all or only part of the Note purchased by the Company pursuant to Section 4.10 or Section 4.15 of the Indenture, state the amount you elect to have purchased:

$_____

Date: _____

Your Signature: _____
(Sign exactly as your name appears on the face of this Note)

Tax Identification No.: _____

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

11

SCHEDULE OF EXCHANGES OF INTERESTS in THE GLOBAL NOTE *

The following exchanges of a part of this Global Note for an interest in another Global Note or a Definitive Note, or exchanges of a part of another Global Note or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such decrease (or increase) | Signature of authorized officer of Trustee or Custodian |
| --- | --- | --- | --- | --- |
| | | | | |

\* *This schedule should be included only if the Note is issued in global form.*

12

16331348_4