# DEPOSIT ACCOUNT CONTROL AGREEMENT
### (Account Number x1846)

This Deposit Account Control Agreement (this "***Agreement***") is entered into as of May 31, 2017, by and among Goodman Networks Incorporated ("***Company***"), U.S. Bank National Association, as Collateral Agent ("***Second Lien Secured Party***") and MidCap Funding X Trust, a Delaware statutory trust and successor by assignment from MidCap Financial Trust, as administrative agent for itself and other Lenders, ("***First Lien Secured Party***"; and collectively with the Second Lien Secured Party, the "***Secured Parties***"), and Legacy Texas Bank ("***Depository Bank***"), with reference to the following facts:

A.      Company maintains deposit account number 70191846; routing number 111901234 (the "***Deposit Account***") at Depository Bank.  Pursuant to an Agreement between Company and Depositary Bank (the "**Lockbox Agreement**"), Company has established one or more post office lockboxes with Depository Bank (collectively, the "**Lockbox**") through which checks, money orders, drafts, collection remittances and other instruments or items of value from time to time tendered by or on behalf of Companies for deposit of Company received are processed by Depository Bank for deposit in the Deposit Account.

B.      The Company and certain of the Company's affiliates, First Lien Secured Party, MidCap Funding X Trust (as successor-by-assignment to MidCap Financial Trust) and the other financial institutions from time to time a party thereto (the "***Lenders***") are entering concurrently with this Agreement into a Credit and Security Agreement and certain other financing documents executed in connection therewith (each as amended, restated, supplemented or otherwise modified from time to time, collectively, the "***Loan Documents***"),  pursuant to which First Lien Secured Party and Lenders have agreed to make loans and extend other financial accommodations to the Company and certain of the Company's affiliates.

C.      The Company is issuing concurrently with this Agreement Senior Secured Notes due 2022 pursuant to an Indenture and, in connection therewith, First Lien Secured Party and the Second Lien Secured Party have entered into an Intercreditor Agreement, which shall be joined in by the Company, setting forth certain priorities and sharing of collateral between and among the Lenders and the Holders of the Senior Secured Notes.

D.      In order to effectuate and carry out the foregoing priorities and sharing of collateral, the Company has entered into a Pledge and Security Agreement with the Second Lien Secured Party.

E.      The Secured Parties, Company and Depository Bank have agreed to enter into this Agreement to acknowledge each Secured Party's security interest in the Deposit Account and to provide for the control of the Deposit Account by the Secured Parties.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the parties hereto mutually agree as follows.

1.      **Deposit Agreements**.  The terms and conditions of this Agreement are in addition to any deposit account agreements and other related agreements that Company has with Depository Bank, including without limitation all agreements concerning banking products and services, treasury management documentation, account booklets containing the terms and conditions of the Deposit Account, signature cards, fee schedules, disclosures, specification sheets and change of terms notices (collectively, the "***Deposit Agreements***").   The provisions of this Agreement shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the

**EXHIBIT
BH 9**

UMB-000550

Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect.

2.      **Security Interest**.  Company has granted to each Secured Party a security interest in the Deposit Account, as such term is defined in the Texas Uniform Commercial Code, with Depository Bank, and in all credits or proceeds thereto and all monies, checks and other instruments held or deposited therein (collectively, "**Receipts**"), all of which, shall be and hereby are included in this definition of the "*Deposit Account*" for purposes of this Agreement.  Company represents and warrants that there are no other perfected liens or encumbrances with respect to the Deposit Account and covenants with Secured Parties that it shall not enter into any acknowledgment or agreement that gives any other person or entity except a Secured Party control over, or any other security interest, lien or title in, the Deposit Account.

3.      **Control**.  As used in this Agreement, the term "*Controlling Agent*" means First Lien Secured Party until such time as Depository Bank and Second Lien Secured Party have received written notice from First Lien Secured Party stating in substance that henceforth Second Lien Secured Party will be Controlling Agent (a "*Change Notice*"), at which time Second Lien Secured Party will replace First Lien Secured Party as Controlling Agent.  In order to provide Secured Parties with control over the Deposit Account, Company agrees that Depository Bank shall comply with any and all orders, notices, requests and other instructions originated by Controlling Agent directing disposition of the funds in the Deposit Account without any further consent from Company, even if such instructions are contrary to any of Company's instructions or demands or result in Depository Bank dishonoring items which may be presented for payment.

4.      **Access to Deposit Account**.  The Lockbox shall be under the sole dominion and control of Controlling Agent and shall be maintained by Depositary Bank in the name of Company.  Notwithstanding anything set forth herein to the contrary, neither Company nor any other person or entity, through or under Company, shall have any control over the use of, or any right to withdraw any amount from, the Lockbox.

The Lockbox Account shall be under the control of the Secured Parties; provided, that unless and until Depository Bank receives the Controlling Agent's Notice of Exclusive Control, as defined below, pursuant to which Company's access to the funds in any Deposit Account shall be terminated, Depository Bank shall honor Company's instructions, notices and directions with respect to the transfer or withdrawal of funds from the Lockbox Account, including paying or transferring the funds to Company or any other person or entity.

Upon receipt by the Depository Bank of a written notice delivered to the Depository Bank's address listed in *Section 11* below from Controlling Agent substantially in the form attached hereto as *Exhibit A*, instructing Depository Bank to terminate Company's access to funds in any Deposit Account ("*Notice of Exclusive Control*"), Depository Bank shall begin to transfer all available funds in accordance with *Section 5(d)*.

As for any such Notice of Exclusive Control sent under this *Section 4* to Depository Bank, Depository Bank shall endeavor to promptly transfer to Controlling Agent the available funds as referenced above, but Depository Bank shall not be obligated to do so until it provides written confirmation to Controlling Agent that it received Controlling Agent's Notice of Exclusive Control, said written confirmation to not be unreasonably withheld or delayed.  Notwithstanding the foregoing, Depository Bank shall begin transferring all available funds in accordance with *Section 5(d)* no later than three (3) business days following Depository Bank's receipt of Controlling Agent's Notice of Exclusive Control.

UMB-000551

5.      **Procedures for Lockbox Account**.  Bank shall follow the following procedures with respect to the Lockbox Account:

(a)      Depositary Bank shall have exclusive and unrestricted access to the Lockbox and shall have complete and exclusive authority to receive, pickup and open all regular, registered, certified or insured mail addressed to Company at the Lockbox (the "**Mail**") pursuant to the terms of the Lockbox Agreement.

(b)      On each business day of Depositary Bank, Depositary Bank shall (i) open all Mail addressed to the Lockbox and remove and inspect the enclosures, (ii) apply and credit for deposit to the Lockbox Account all Receipts consisting of checks, money orders, drafts, collection remittances and other instruments or items of value from time to time tendered by or on behalf of Companies for deposit (collectively, "**Checks**") in the Lockbox Account in accordance with the Lockbox Agreement or otherwise, and (iii) apply and credit to the Lockbox Account all Receipts tendered by or on behalf of Company for deposit therein, including without limitation, all ACH or wire transfers and other payments directed to the Lockbox Account. Upon the request of Depositary Bank, Company shall provide any endorsement deemed necessary by Depositary Bank for the deposit of such Checks. Company represents and warrants to Depositary Bank that all Checks deposited into the Lockbox Account bear the valid and legally binding endorsement of the payee named therein.

(c)      Company hereby irrevocably makes, constitutes and appoints Depositary Bank (and all persons designated by Depositary Bank for such purpose) as Company's true and lawful attorney and agent-in-fact to endorse Company's name on all Checks payable to Company.  Depositary Bank's appointment as agent to endorse such Checks is for the specific, limited and restricted purpose of endorsement for deposit as described above and at no time shall be interpreted as authorizing Depositary Bank as such agent to commit Company or Controlling Agent to acceptance of any legend of any kind, nature or description appearing on such Checks.

(d)      Following the date that Depositary Bank receives a Notice of Exclusive Control and has an opportunity to act on the same, but within the time period provided for in ***Section 4***, Company, Controlling Agent and Depositary Bank agree that, on a daily basis on each business day of Depositary Bank, Depositary Bank shall determine the balance of all available funds on deposit in the Lockbox Account and, if the balance on deposit in the Lockbox Account is in excess of $25,000.00, shall automatically initiate a federal funds wire transfer in immediately available funds of all such funds not later than 2:00 p.m. (New York Time) on each such business day to the account designated below, or to such other account as may be designated in writing from time to time by Controlling Agent (the "**Collection Account**"):

|  |  |
|---|---|
| Bank Name: | Wells Fargo Bank |
| ABA #: | 121000248 |
| Account Name: | MidCap Financial – Collections |
| Account #: | 4509127528 |
| Attention: | Portfolio Management – Goodman Networks transaction |

Each of Depositary Bank, each Secured Party and Company agrees that Depositary Bank will comply with these instructions and any other instructions originated by Controlling Agent directing disposition of the funds in the Lockbox Account without further consent by Company.

6.      **Subordination by Depository Bank**.  Company and Depository Bank acknowledge notice of and recognize Secured Parties' continuing security interest in the Deposit Account and in all

UMB-000552

items deposited in the Deposit Account and in the proceeds thereof. Depository Bank hereby subordinates any statutory or contractual right or claim of offset or lien resulting from any transaction which involves the Deposit Account. Notwithstanding the preceding sentence, each Secured Party hereby acknowledges and agrees that nothing herein subordinates or waives, and that Depository Bank expressly reserves, all of Depository Bank's present and future rights (whether described as rights of setoff, banker's lien, security interest, chargeback or otherwise, and whether available to Depository Bank under applicable law or under any other agreement between Depository Bank and Company concerning the Deposit Account, or otherwise) with respect to: (a) items deposited to the Deposit Account and returned unpaid, whether for insufficient funds or for any other reason; (b) automatic clearing house or other electronic entries credited to the Deposit Account and later reversed, whether for insufficient funds or for any other reason; (c) any credit to the Deposit Account from a merchant card transaction, against which a contractual demand for chargeback has been made; (d) any credit to the Deposit Account made in error; (e) claims of breach of the transfer or presentment warranties made to Depository Bank pursuant to the Uniform Commercial Code in connection with items deposited to the Deposit Account (all of the foregoing *clauses (a)-(e)* referred to, collectively, as "***Returned Items***"); and (f) Depository Bank's usual and customary charges for services rendered in connection with the Deposit Account ("***Bank Charges***"). If there are insufficient funds in the Deposit Account or any of Company's other accounts to cover any Bank Charges or Returned Items, Company agrees to immediately reimburse Depository Bank for the amount of such shortfall.

7. **Indemnity**. Company agrees to defend, indemnify and hold Depository Bank and its directors, officers, employees, attorneys, agents, successors and assigns (collectively, for purposes of the indemnity provided herein, "***Depository Bank Indemnified Parties***" and, individually, a "***Depository Bank Indemnified Party***") harmless from and against any and all claims, losses, liabilities, costs, actual damages and expenses, including, without limitation, any and all court costs and reasonable legal and accounting fees and disbursements (collectively "***Claims***"), arising out of or in any way related to this Agreement or any action taken or not taken pursuant hereto (including, without limitation, Claims arising out of such Depository Bank Indemnified Party's compliance with Controlling Agent's instructions hereunder), excepting only liability arising out of the gross negligence, bad faith or willful misconduct of such Depository Bank Indemnified Party. Company acknowledges and agrees that no Depository Bank Indemnified Party shall have any liability to Company for any loss or damage that Company may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement or any transaction or service contemplated by the provisions hereof, including, without limitation, Claims arising out of Depository Bank's compliance with Controlling Agent's instructions hereunder. Without regard to Company's indemnification obligations to the Depository Bank Indemnified Parties, each Secured Party agrees to: (i) after the compliance by Depository Bank with Controlling Agent's written instructions in accordance with ***Section 4***, reimburse Depository Bank for any Bank Charges or Returned Items (limited to the proceeds received by Controlling Agent) and (ii) defend, indemnify and hold all Depository Bank Indemnified Parties harmless from and against any and all Claims arising out of or in any way related to such Depository Bank Indemnified Party's compliance with Controlling Agent's instructions, excepting only liability arising out of the gross negligence, bad faith or willful misconduct of such Depository Bank Indemnified Party; provided that, except with respect to claims made by Depository Bank to the applicable Secured Party prior to the expiration of the applicable period set forth herein, Secured Parties respective obligations under this ***Section 7*** shall end one hundred twenty (120) calendar days after (A) with respect to First Lien Secured Party, the earlier to occur of (1) the provision of a Change Notice or (2) termination of this Agreement and (B) with respect to Second Lien Secured Party, the termination of this Agreement. Each Secured Party's obligations to Depository Bank and Depository Bank Indemnified Parties hereunder shall in no way operate to release Company from its obligations to any Secured Party, Depository Bank, and/or any Depository Bank Indemnified Party, as applicable, and shall not impair any rights or remedies of any Secured Party, Depository Bank, and/or any Depository Bank Indemnified Party, as applicable, to collect any such amounts from Company. Company shall pay to Depository

UMB-000553

Bank, upon receipt of Depository Bank's invoice, all costs, expenses and reasonable attorneys' fees (including allocated reasonable costs for in-house legal services) incurred by Depository Bank in connection with the enforcement of this Agreement and any instrument or agreement required hereunder, including but not limited to any such costs, expenses and fees arising out of the resolution of any conflict, dispute, motion regarding entitlement to rights or rights of action, or other action to enforce Depository Bank's rights in any proceeding under any statute relating to bankruptcy, insolvency, debt reorganization or liquidation, or creditors arrangements.  If the Controlling Agent fails to pay to Depository Bank any amounts required to be paid by Controlling Agent that are not paid within fifteen (15) calendar days after demand, without setoff or counterclaim, to the extent they are not paid in full by Company within five (5) calendar days after demand on Company pursuant to this **Section 7**, Controlling Agent shall pay to Depository Bank, upon receipt of Depository Bank's invoice, out-of-pocket or allocable internal reasonable legal fees and expenses incurred by Depository Bank following such fifteen (15) calendar day period in connection with the collection of such amount.   The Second Lien Secured Party's reimbursement or payment obligations to the Depository Bank as provided in Section 7 shall be reduced by those amounts the Company shall have paid the Depository Bank pursuant to the Section 6. Notwithstanding anything to the contrary in Section 7, the obligation of the Second Lien Secured Party to reimburse or pay the Depository Bank any amount pursuant to **Section 7** shall not be an obligation of the Second Lien Secured Party in its individual or corporate capacity, but solely in its capacity as Collateral Agent and only to the extent of funds available or under its control in its capacity as Collateral Agent. Company agrees to pay Depository Bank, upon receipt of Depository Bank's invoice, all costs, expenses and attorneys' fees (including allocated costs for in-house legal services) incurred by Depository Bank in the preparation and administration of this Agreement (including any amendments hereto or instruments or agreements required hereunder).   IN NO EVENT WILL DEPOSITORY BANK NOR ANY DEPOSITORY BANK INDEMNIFIED PARTY BE LIABLE FOR ANY INDIRECT DAMAGES, LOST PROFITS, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES THAT ARISE OUT OF OR IN CONNECTION WITH THE SERVICES CONTEMPLATED BY THIS AGREEMENT EVEN IF DEPOSITORY BANK, OR SUCH DEPOSITORY BANK INDEMNIFIED PARTY, HAS BEEN INFORMED OF THE POSSIBILITY OF SUCH DAMAGES.

8.      **Depository Bank's Responsibility**.  The duties of Depository Bank are strictly limited to those expressly set forth in this Agreement and no duties shall be implied.  Depository Bank is not acting as a fiduciary for any party hereto.  Depository Bank shall be protected in relying on any form of instruction or other notice purporting to be from Controlling Agent which Depository Bank in good faith, believes to be genuine and what it purports to be.  Depository Bank shall have no duty to inquire as to the genuineness, validity, or enforceability of any such instruction or notice even if Company notifies Depository Bank that any Secured Party is not legally entitled to originate any such instruction or notice. Depository Bank shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Agreement.  The Deposit Account and all actions and undertakings by Depository Bank shall be subject to all rules and regulations relating to the Deposit Account and to applicable law.

9.      **Termination**.  This Agreement may be terminated unilaterally by Depository Bank for any reason, in its sole discretion, upon thirty (30) days prior written notice to all parties; provided, however, that Depository Bank may terminate this Agreement upon five (5) days prior notice to Secured Parties in the event any Secured Party fails to make payments to Depository Bank in accordance with **Section 7** above.   Upon termination by Depository Bank as described above, any available funds remaining in the Deposit Account upon termination or deposited in thereafter, after deduction for any amounts otherwise reimbursable to Depository Bank or provided hereunder, (i) if Depository Bank has not received a Notice of Exclusive Control from Controlling Agent in accordance with **Section 4** above, shall remain in the Deposit Account, or (ii) if Depository Bank has received a Notice of Exclusive Control from Controlling Agent in accordance with **Section 4** above, shall be transferred pursuant to Controlling Agent's instructions in accordance with **Section 4** above.  This Agreement may be terminated by (i) the

UMB-000554

Secured Parties acting together or (ii) the Second Lien Agent acting as Controlling Agent by written notice of termination in substantially the form attached hereto as *Exhibit A* ("*Notice of Termination*"), sent to Depository Bank in which such Secured Party or Secured Parties, as applicable, releases Depository Bank from any further obligation to comply with instructions originated by such Secured Party with respect to the Deposit Account. Immediately upon receipt by Depository Bank of such Notice of Termination, the obligations of Depository Bank hereunder with respect to the operation and maintenance of the Deposit Account shall terminate, such Secured Party shall have no further right to originate instructions concerning the Deposit Account and any previous Notice of Exclusive Control delivered by Controlling Agent shall be deemed to be of no further force or effect. Termination shall not affect the rights and obligations of any party hereto with respect to any period prior to such termination.

10.    **Legal Process and Insolvency**. In the event Depository Bank receives any form of legal process concerning any Deposit Account, including, without limitation, court orders, levies, garnishments, attachments, and writs of execution, or in the event Depository Bank learns of any insolvency proceeding concerning Company, including, without limitation, bankruptcy, receivership, debt reorganization, liquidation or assignment for the benefit of creditors, Depository Bank will respond to such legal process or knowledge of insolvency in the normal course or as required by applicable law.

11.    **Governing Law and Venue**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The parties agree that Texas is the "*bank's jurisdiction*" for purposes of the Uniform Commercial Code. The parties hereto agree and consent to the exclusive jurisdiction of the federal and state courts having a *situs* in Dallas County, Texas, for any actions arising out of this Agreement. Company and each Secured Party hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. Company and each Secured Party hereby irrevocably consents to the service of any and all process in such action or proceeding by delivery of such process to such party at its address provided in accordance with *Section 12*.

12.    **Notices**. Except as otherwise provided in this Agreement, all notices and other communications required or permitted to be given to a party under this Agreement shall be in writing and may be delivered personally or sent by United States Mail (only if registered or certified, with return receipt requested) or overnight courier or by facsimile, and shall be deemed given when delivered in person or received by facsimile or three (3) days after deposit in the United States Mail or one (1) day after deposit with such courier at the address specified below. As noted herein, notification to Depository Bank shall be to the named address indicated below. Any party may change its address for notices hereunder by notice to all other parties given in accordance with this *Section 12*.

| | |
|---|---|
| Company: | Goodman Networks Incorporated |
| | 2801 Network Blvd, Suite 300 |
| | Frisco, TX 75034 |
| | Facsimile: (972) 421-5746 |
| | |
| First Lien | |
| Secured Party: | c/o MidCap Financial Services, LLC, as servicer |
| | 7255 Woodmont Avenue, Suite 200 |
| | Bethesda, Maryland 20814 |
| | Attn: Account Manager for Goodman Networks transaction |
| | Facsimile: 301-941-1450 |
| | |
| with a copy to: | |
| | c/o MidCap Financial Services, LLC, as servicer |

UMB-000555

7255 Woodmont Avenue, Suite 200
Bethesda, Maryland 20814
Attn:  General Counsel
Facsimile:  301-941-1450

Second Lien
Secured Party: U.S. Bank National Association, as Collateral Agent
8 Greenway Plaza, Suite 1100
Houston, Texas 77046
Attn: Steven A. Finklea
Facsimile: (713) 212-3718

Depository Bank: Legacy Texas Bank
5949 Sherry Lane, Suite 600
Dallas, TX 75225
Attn:  Lawrence (Bater) Bates/Treasury Management
Facsimile:  (214) 368-8523

With a copy to (which copy will NOT constitute notice):

Legacy Texas Bank
5949 Sherry Lane, Suite 600
Dallas, TX 75225
Attn: Jordan Yenne, Senior VP
Facsimile:  (214) 242-4042

Legacy Texas Bank – General Counsel
LEGACY TEXAS BANK
Attn: General Counsel
5851 Legacy Circle, 12th Floor
Plano, TX 75024
Facsimile: (469) 467-1045

  13. **Miscellaneous**.  This Agreement shall bind and benefit the parties and their respective successors and assigns.  This Agreement may be amended only with the prior written consent of all parties hereto.  None of the terms of this Agreement may be waived except as Depository Bank may consent thereto in writing.  No delay on the part of Depository Bank in exercising any right, power or privilege hereunder shall operate as a waiver hereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude other or further exercise thereof or the exercise of any right, power or privilege.  The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies which Depository Bank would otherwise have.

  14. **No Agency**.  Nothing contained in this Agreement shall create any agency, fiduciary, joint venture or partnership relationship between Depository Bank, Company or any Secured Party.  Company and the Secured Parties agree that nothing contained in this Agreement, nor any course of dealing among the parties hereto, shall constitute a commitment or other obligation on the part of Depository Bank to extend credit to Company or any Secured Party.

  15. **Counterparts**.  This Agreement may be executed by facsimile or PDF in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

UMB-000556

16.     **Jury Trial Waiver**.  COMPANY, EACH SECURED PARTY AND DEPOSITORY BANK HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY JUDICIAL PROCEEDING ARISING OUT OF, OR RELATING TO, THIS AGREEMENT OR SERVICES RENDERED IN CONNECTION WITH THIS AGREEMENT.

[**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE(S) TO FOLLOW.**]

UMB-000557

**COMPANY:**

**GOODMAN NETWORKS INCORPORATED**

By: _____
    Name:  John Debus
    Title:   Interim Chief Financial Officer

**SECURED PARTIES:**

**U.S. BANK NATIONAL ASSOCIATION**, as Second
Lien Secured Party

By: _____
    Name:  Steven A. Finklea
    Title:  Vice President

**MIDCAP FUNDING X TRUST**, as First Lien Secured
Party

By:    Apollo Capital Management, L.P.,
       its investment manager

By:    Apollo Capital Management GP, LLC,
       its general partner

By: _____
    Name:  Maurice Amsellem
    Title:   Authorized Signatory

**COMPANY:**

**GOODMAN NETWORKS INCORPORATED**

By:  _____
      Name:  John Debus
      Title:  Interim Chief Financial Officer

**SECURED PARTIES:**

**U.S. BANK NATIONAL ASSOCIATION**, as Second
Lien Secured Party

By:  _____
      Name:  Steven A. Finklea
      Title:  Vice President

**MIDCAP FUNDING X TRUST**, as First Lien Secured
Party

By:  Apollo Capital Management, L.P.,
      its investment manager

By:  Apollo Capital Management GP, LLC,
      its general partner

By:  _____
      Name:  Maurice Amsellem
      Title:   Authorized Signatory

**COMPANY:**

**GOODMAN NETWORKS INCORPORATED**

By: _____

      Name: John Debus
      Title: Interim Chief Financial Officer

**SECURED PARTIES:**

**U.S. BANK NATIONAL ASSOCIATION**, as Second
Lien Secured Party

By: _____

      Name: Steven A. Finklea
      Title: Vice President

**MIDCAP FUNDING X TRUST**, as First Lien Secured
Party

By:    Apollo Capital Management, L.P.,
       its investment manager

By:    Apollo Capital Management GP, LLC,
       its general partner

By: _____

      Name: Maurice Amsellem
      Title: Authorized Signatory

ACCEPTED:

Depository Bank:

**LEGACY TEXAS BANK**

By: _____
    Name:  Jordan Yenne
    Title:  Senior Vice President

*EXHIBIT A*

### NOTICE OF EXCLUSIVE CONTROL

**ACCOUNT CONTROL AGREEMENT**
**NOTICE OF EXCLUSIVE CONTROL**

Address

Re:    Deposit Account Control Agreement ("*Agreement*") by and among Goodman Networks Incorporated (the "Company"), U.S. Bank National Association, as Collateral Agent ("*Second Lien Secured Party*") and MidCap Funding X Trust, a Delaware statutory trust and successor by assignment from MidCap Financial Trust, as administrative agent for itself and other Lenders ("*First Lien Secured Party*"; and collectively with the Second Lien Secured Party, the "*Secured Parties*"), and Legacy Texas Bank ("*Depository Bank*"), dated May 31, 2017 affecting Account No. 70191846; routing number 111901234 (the "*Deposit Account*").

Date: _____, 20__

To Whom It May Concern:

This letter serves as notice to Depository Bank that Controlling Agent is hereby exercising exclusive control over the Deposit Account(s).

Controlling Agent hereby orders Depository Bank to transfer funds in accordance with Section 5(d) of the Agreement.

Please contact us at _____ (phone number) immediately with any questions.


_____
Name and Title


_____
Controlling Agent

*EXHIBIT B*

## NOTICE OF TERMINATION

**ACCOUNT CONTROL AGREEMENT**
**NOTICE OF TERMINATION**

[Address]

Re:    Deposit Account Control Agreement ("***Agreement***") by and among Goodman Networks Incorporated (the "Company"), U.S. Bank National Association, as Collateral Agent ("***Second Lien Secured Party***") and MidCap Funding X Trust, a Delaware statutory trust and successor by assignment from MidCap Financial Trust, as administrative agent for itself and other Lenders ("***First Lien Secured Party***"; and collectively with the Second Lien Secured Party, the "***Secured Parties***"), and Legacy Texas Bank ("***Depository Bank***"), dated May 31, 2017 affecting Account No. 70191846; routing number 111901234 (the "***Deposit Account***").

Date: _____, 20__

To Whom It May Concern:

This letter serves as notice to Depository Bank in accordance with *Section 9* of the Agreement that [_____] is hereby permanently releasing its control over the Deposit Account(s) and releases Depository Bank from any further obligation to comply with instructions originated by [_____] with respect to the Deposit Account(s). The Agreement is hereby permanently terminated.

Please contact us at _____ (phone number) immediately with any questions.


_____

_____
Name and Title

_____
[First Lien] Secured Party


_____

_____
Name and Title

_____
[Second Lien] Secured Party