## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (the "Agreement") dated to be effective as of July 3, 2020 is made by and between **PROSPERITY BANK**, a Texas banking association (the "Lender") whose address is 5949 Sherry Lane, Suite 600, Dallas, Texas    75225, and **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company, and **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (collectively, the "Borrower"), and **JAMES E. GOODMAN, JR.** (the "Guarantor"), whose addresses are 1354 N. Loop 1604 E, Suite 103, San Antonio, Texas  78232.

### ARTICLE 1.
### DEFINITIONS

For purposes of this Agreement, the following terms shall have the respective meanings assigned to them.

1.1    **Account Debtor**.   The term "Account Debtor" shall mean all customers, clients and other Persons who purchase goods or services from the Borrower.

1.2    **Accounts**.   The term "Accounts" shall mean all of the Borrower's accounts receivable that satisfy the following conditions:

(i)    have arisen from services performed by Borrower to or for the Account Debtor or the sale by Borrower of goods in which Borrower had sole ownership where such goods have been shipped or delivered to the Account Debtor;

(ii)    represent complete bona fide transactions which require no further act under any circumstances on the part of Borrower to make such accounts receivable payable by the Account Debtor;

(iii)    the goods of sale which gave rise to such accounts receivable were shipped or delivered to the Account Debtor on an absolute sale basis and not on consignment, a sale or return basis, or on the basis of any similar understanding;

(iv)    the goods of sale giving rise to such accounts receivable were not, at the time of the sale thereof, subject to any lien, except the security interest in favor of the Lender created by the Security Instruments;

(v)    are not subject to any provision prohibiting assignment or requiring notice of or consent to such assignment;

(vi)    are subject to perfected, first priority security interest in favor of Lender;

**Prosperity000001**

(vii)     have arisen in the ordinary course of business of Borrower, and for which no notice of bankruptcy, insolvency or financial difficulty of the Account Debtor shall have been received or is reasonably anticipated by Borrower or Lender; and

(viii)    are not evidenced by chattel paper or an instrument of any kind.

1.3     **Advance Request Form**.     The term "Advance Request Form" means a certificate, in substantially the form of **Exhibit "A"** attached hereto, properly completed and signed by the Borrower requesting an Advance.

1.4     **Available Amount**.   The term "Available Amount" shall mean the sum available to advance to the Borrower which is equal to the Maximum Loan Amount less the unpaid principal balance of the Note.

1.5     **Borrowing Base**.   The term "Borrowing Base" shall mean at any time, and from time to time, the sum equal to eighty percent (80%) of Eligible Accounts.

1.6     **Borrowing Base and Compliance Certificate**.   The term "Borrowing Base and Compliance Certificate" shall mean the report certified by Borrower's duly authorized officer, similar in form and content to Exhibit "B" attached hereto and incorporated herein by reference.

1.7     **Closing Date**.   The term "Closing Date" shall mean the date of execution of this Agreement and all other Security Instruments which shall occur as of, although not necessarily on, the date first written above.

1.8     **Code**.   The term "Code" shall mean the Texas Business and Commerce Code as now written or as hereafter amended or succeeded.

1.9     **Collateral**.   The term "Collateral" shall mean a first and priority security interest in all of Borrower's Accounts and inventory, equipment, trade fixtures, chattel paper and general intangibles, whether now owned or hereafter acquired, and all products and proceeds thereof.

1.10    **Debt Service Coverage Ratio**.   The term "Debt Service Coverage Ratio" shall mean Net Operating Income divided by debt service payable by the Borrower during the applicable reporting period.

1.11    **Eligible Accounts**.     The term "Eligible Accounts" shall mean all of the Borrower's accounts less Ineligible Accounts.

1.12    **Financial Statements**. The term "Financial Statements" shall mean the balance sheets, profit and loss statements, and other financial information of Borrower and Guarantor heretofore furnished to Lender or required to be furnished to Lender under the terms of this Agreement or any of the Security Instruments from time to time, which statements shall be prepared in such scope, detail and form as shall be reasonably acceptable to Lender.

Prosperity000002

1.13   **Governmental Authority**.  The term "Governmental Authority" shall mean the United States, the state, the county, the city, and any other political subdivision in which the Collateral is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Borrower or the Collateral.

1.14   **Governmental Requirements**.  The term "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Borrower or the Collateral.

1.15   **Guaranty Agreement**.  The term "Guaranty Agreement" shall mean the written agreement providing for the guarantee by the Guarantor of payment of the Loan and all of Borrower's obligations under the Security Instruments.

1.16   **Ineligible Accounts**.  The term "Ineligible Accounts" shall mean all of the Borrower's Accounts that satisfy the following conditions:

(a)   have been outstanding more than ninety (90) days;

(b)   are intercompany or affiliate Accounts;

(c)   are Accounts which are disputed or counterclaims exist;

(d)   are Accounts in which the Account Debtor has filed bankruptcy;

(e)   all Accounts owed by an Account Debtor to Borrower, if more than twenty percent (20%) of the balances then outstanding on such Accounts by such Account Debtor to Borrower have remained unpaid for more than ninety (90) days past due date;

(f)   to the extent any Account Debtor of Borrower has Accounts due Borrower which in the aggregate are more than 25% of all Accounts of the Borrower, the amount in excess of 80% of the Accounts of such Account Debtor [provided, however, Accounts for AT&T and Verizon shall be excluded from this calculation and further referenced in **Section 1.16(i)** below];

(g)   are Accounts which the Lender has sent written notification to the Borrower that such Accounts are Ineligible Accounts;

(h)   are Accounts pledged to secure indebtedness due the Receivables Lender; or

(i)   are Accounts of AT&T or Verizon in excess of 80% of such Accounts.

1.17   **Intercreditor Agreement**.  The term "Intercreditor Agreement" shall mean that certain _____ dated _____, 2020 between, Borrower, Lender and the Receivables Lender,

Prosperity000003

1.18    **Loan**. The term "Loan" shall mean the loan by Lender to Borrower pursuant to this Agreement and to be evidenced by the Note.

1.19    **Maximum Loan Amount**. The term "Maximum Loan Amount" shall mean the sum equal to the lesser of (a) $3,000,000.00, or (b) the Borrowing Base.

1.20    **Net Operating Income**. The term "Net Operating Income" shall mean gross revenue generated from operations conducted by the Borrower, less reasonable and necessary operating expenses incurred in connection therewith, all as reasonably determined by the Lender.

1.21    **Note**. The term "Note" shall mean the promissory note from Borrower to Lender to be executed upon the execution of this Agreement in the principal amount of $3,000,000.00.

1.22    **Receivables Lender**. The term "Receivables Lender" shall mean Citibank, N.A..

1.23    **Security Agreement**. The term "Security Agreement" shall mean that certain Security Agreement to be executed by Borrower granting to Lender a security interest in the Collateral to secure the payment and performance of all obligations specified in this Agreement and the Security Instruments.

1.24    **Security Instruments**. The term "Security Instruments" shall mean this Agreement, the Security Agreement, the Note, the Guaranty Agreement and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower or any other party to Lender pursuant to this Agreement.

1.25    **Tangible Net Worth.** The term "Tangible Net Worth" shall mean total assets of the Borrower, excluding all intercompany eliminations and intangible assets such as goodwill, trademarks, organizational expenses and similar intangible items, less total liabilities and debt formally subordinated to the Lender.

<div align="center">

**ARTICLE 2.**
**THE LOAN; CONDITIONS PRECEDENT TO LOAN**

</div>

2.1    **The Loan**. Subject to the terms and conditions of this Agreement, Lender agrees to establish a revolving line of credit for providing working capital to the Borrower. The Lender agrees to lend to the Borrower from the Closing Date until the first anniversary of the Closing Date, such amounts as Borrower may from time to time request (each such amount being herein called an "Advance") so long as each advance does not exceed the Available Amount and the aggregate amount of the advances outstanding at any time does not exceed the Maximum Loan Amount. The obligation of the Borrower to repay the Loan shall be evidenced by the Note executed by the Borrower and payable to the Lender. The amount of principal owing under the Note at any given time shall be the aggregate amount of all advances made, minus all payments of principal received by the Lender and applied to the Note. The Borrower shall pay to Lender all advances in accordance with the terms of the Note. The obligations of the Borrower under the

Prosperity000004

Loan are secured by the Security Agreement from Borrower in favor of Lender, granting the Lender a security interest in the Collateral. The obligations of the Borrower under the Loan are personally guaranteed by the Guarantor pursuant to the terms of the Guaranty Agreement.

2.2 **Conditions Precedent**. The obligation of the Lender to fund the Loan shall be subject to the satisfaction of the following conditions, unless any such condition shall have been modified or waived by Lender:

(a) All representations and warranties set forth in this Agreement and in the Security Instruments shall be true and complete as of the date of any advance.

(b) No Event of Default, as defined herein or in the Security Instruments, and no event or condition which with notice or the passage of time or both as prescribed herein or in the Security Instruments, would constitute any such Event of Default has occurred and remains uncured to Lender's satisfaction.

(c) There shall have been no material adverse change in the condition of the Collateral or in the business or financial condition of Borrower or the Guarantor.

(d) All statements and other information contained in the Financial Statements of Borrower and Guarantor are true and complete, in all material respects, and all other certificates, statements and data furnished to Lender by or on behalf of Borrower or Guarantor in connection with the transactions contemplated by this Agreement or any of the other Security Instruments are true and complete in all material respects, and there are no facts or events known to Borrower or Guarantor which, if disclosed to Lender, would make such statements, certificates or data untrue in any material respect.

(e) Borrower and Guarantor, as the case may be, shall have executed and acknowledged the Security Instruments in form reasonably acceptable to the Lender.

(f) Borrower shall have delivered to the Lender the insurance policies or certificates of such insurance as specified in **Section 4.7** herein.

(g) Borrower shall have provided Lender with evidence satisfactory to Lender or its legal counsel that all necessary action on the part of the Borrower has been taken with respect to the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, so that this Agreement and all Security Instruments executed and delivered by or on behalf of the Borrower, shall be valid and binding upon the Borrower, or the person executing and delivering such document, in accordance with its terms.

(h) Borrower shall have entered into the Intercreditor Agreement with the Lender and Receivables Lender.

(i) Borrower shall have delivered to Lender such other documents as Lender shall reasonably require.

**Prosperity000005**

2.3     **Request for Advance**.  Borrower may request an Advance in writing by the execution and delivery of an Advance Request Form to Lender in person or via email by no later than 2:00 p.m. (Dallas, Texas time) on the date the requested Advance is to be funded. If all conditions precedent to lending as set forth herein have been met, the Lender shall on the date requested make such Advance available to Borrower in immediately available funds at the Lender's office in Dallas, Texas.

2.4     **Additional Security**.  If at any time Lender shall determine in good faith that the Collateral has declined or may decline in value or Lender shall deem payment of the Note to be insecure, then Lender may call for additional collateral to secure the Loan satisfactory to Lender.

2.5     **Conditions Precedent for the Benefit of Lender**.  All conditions precedent to the obligation of Lender to make the Loan are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make the Loan in the absence of strict compliance with such conditions precedent.

2.6     **Mandatory Principal Reductions**.  If at any time the outstanding principal balance under the Note exceeds the Maximum Loan Amount, then the Borrower shall prepay the amount of such excess for application toward reduction of the outstanding principal balance of the Note. Such prepayment shall be without premium or penalty.

2.7     **Cross-Collateralization and Default**.  The Security Instruments, including this Agreement, and any other documents or instruments given in connection with, or as security for any obligation of the Borrower, shall serve as security for all other indebtedness and obligations of the Borrower to the Lender, and an Event of Default under any Security Instrument, shall constitute an Event of Default under any other loan from the Borrower to the Lender.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower represents and warrants to Lender as follows:

3.1     **Financial Statements**. The Financial Statements are true, correct, and complete, in all material respects, as of the dates specified therein and fully and accurately present the financial condition of Borrower and Guarantor.  No material adverse change has occurred in the financial condition of Borrower or Guarantor since the date of the Financial Statements.

3.2     **Suits, Actions, Etc**.  There are no material actions, suits, or proceedings pending or threatened in any court, before or by any Governmental Authority against or affecting Borrower or the Collateral, or involving the validity, enforceability, or propriety of any of the Security Instruments, at law or in equity.  The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the Security Instruments, shall not result in a breach of, or constitute a default in, any mortgage, deed of trust,

Prosperity000006


lease, promissory note, loan agreement, credit agreement, partnership agreement, or other agreement to which Borrower or Guarantor is a party or by which Borrower or Guarantor may be bound or affected.

3.3 **Valid and Binding Obligation**. All of the Security Instruments, and all other documents referred to herein to which Borrower or Guarantor is a party, constitute valid and binding obligations of Borrower and Guarantor, enforceable in accordance with their terms except as limited by debtor relief laws.

3.4 **Title to Collateral**. Borrower holds full legal and equitable title to the Collateral. The Collateral is not subject to any other liens except liens in favor of the Lender and with respect to certain Accounts of the Borrower, liens in favor of the Receivables Lender.

3.5 **Compliance With Governmental Requirements**. Based on their actual knowledge, Borrower and Guarantor are in compliance with all material requirements of all applicable federal, state and local statutes and regulations and shall continue to be in compliance therewith during the term of the Loan.

3.6 **Use of Loan Proceeds.** All loan proceeds or funds furnished by Lender to Borrower shall be used solely for the purposes specified in Article 2 of this Agreement.

3.7 **Principal Place of Business**. The principal place of business and chief executive office of the Borrower and the place where Borrower keeps its books and records is located at the address of the Borrower set forth at the beginning of this Agreement.

3.8 **Incorporation of Representations and Warranties**. Each representation, warranty and covenant of Borrower and Guarantor contained in the Security Instruments are hereby incorporated herein by reference for all purposes.

3.9 **Existence**. Each Borrower is duly organized and validly existing under the laws of the State of Texas and has all requisite power and authority to execute and deliver the Security Instruments. All approvals or consents of any person or entity required in connection with the execution and delivery of and performance by Borrower of its obligations under this Agreement and the Security Instruments has been obtained.

## ARTICLE 4.
## COVENANTS AND AGREEMENTS OF BORROWER

Borrower covenants and agrees as follows:

4.1 **Compliance with Governmental Requirements.** Borrower shall timely comply with all Governmental Requirements.

Prosperity000007

4.2   **Inspection of the Collateral**.  Borrower shall permit Lender, any Governmental Authority, and their agents and representatives, to enter upon the premises of the Borrower for the purpose of inspection of the Collateral at all reasonable times.

4.3   **Notices by Governmental Authority**.  Borrower shall timely comply with and furnish to Lender, within three (3) days of receipt thereof, true and complete copies of any official notice or claim by any Governmental Authority pertaining to the Collateral.

4.4   **Costs and Expenses**.  Borrower shall pay, or cause to be paid, when due all costs and expenses required by this Agreement, including, without limitation, (a) all taxes and assessments applicable to the Collateral, (b) all fees for filing or recording the Security Instruments, (c) all fees and expenses of counsel to Lender related to the closing of the Loan, (d) all premiums for insurance policies, and (e) all other costs and expenses payable to third parties incurred by either Borrower or Lender in connection with the consummation of the transactions contemplated by this Agreement.

4.5   **Additional Documents**.  Borrower and Guarantor shall execute and deliver to Lender, from time to time as requested by Lender, such other documents as shall be necessary to provide the rights and remedies to Lender granted or provided for by the Security Instruments.

4.6   **Inspection of Books and Records**. Borrower and Guarantor shall permit Lender, at all reasonable times, to examine and copy the books and records of Borrower.  Such books and records of Borrower shall be maintained at Borrower's principal place of business.

4.7   **Insurance**.  Borrower shall maintain or cause to be maintained in full force until full payment of the Loan such insurance on the Collateral as is satisfactory in all respects to Lender. Any liability insurance shall be evidenced by a certificate of insurance issued to Lender, naming Lender as additional insured.   All insurance required herein shall be issued by responsible carriers reasonably acceptable to Lender and provide at least thirty (30) days prior written notice to Lender of cancellation, non-renewal or material change.

4.8   **Prohibition of Transfers**.  Except as otherwise provided herein or the Security Instruments, Borrower shall not, without the prior written consent of Lender, transfer, convey, assign, encumber or otherwise dispose of the Collateral, other than in the ordinary course of business.

4.9   **Payment of Claims**.  Borrower shall promptly pay or cause to be paid when due all costs and expenses incurred in connection with the Collateral, and Borrower shall keep the Collateral free and clear of any liens, charges, or claims other than liens approved in writing by Lender.  Notwithstanding anything to the contrary contained in this Agreement or the Security Instruments, Borrower may contest any tax or special assessments levied by any Governmental Authority, and  may contest the enforcement of or compliance with any Governmental Requirements, and such contest on the part of Borrower shall not be a default hereunder; provided, however, that during the pendency of any such contest where the amount in controversy is greater than $25,000.00, the Borrower shall furnish to Lender an indemnity bond with a corporate surety satisfactory to Lender or other security acceptable to them, and provided

Prosperity000008

further that Borrower shall pay any amount adjudged by a court of competent jurisdiction to be due, with all costs, interest, and penalties thereon, before such judgment becomes a lien on the Collateral.

4.10 **Financial Statements**.  Until such time as the Loan has been paid in full, the Borrower agrees to provide the Lender on a continuing basis with the following financial information:

(a) Financial Statements, compiled by Borrower's certified public accountants (on a consolidated basis according to GAAP), at each fiscal year-end commencing December 31, 2020, to be delivered within 90 days of each fiscal year-end. Borrower shall deliver the Financial Statements for the fiscal year ending December 31, 2019 on or before September 30, 2020.

(b) Financial Statements on a consolidated and consolidating basis prepared internally by the Borrower, at each calendar quarter-end commencing September 30, 2020, to be delivered within 45 days of each calendar quarter-end.

(c) Annual Financial Statements of the Guarantor, within 30 days after the end of each of calendar year.

(d) Monthly Borrowing Base Certificate and Compliance Certificate and supporting Accounts listings and aging, within 30 days of each month-end.

4.11 **Notification of Adverse Changes**.  Borrower shall promptly notify Lender of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Borrower, or would materially and adversely affect the value of the Collateral or any portion thereof, or is a material adverse change as set forth in **Section 2.2(c)** above.

4.12 **Indemnification**.   Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all claims, charges, actions, suits, liabilities, fines, penalties, costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred by Lender in connection with the collection of the Loan or the enforcement of the Security Instruments or the attempt to foreclose and otherwise realize on collateral after the occurrence of an Event of Default.  The obligations and provisions of this Section 4.12 shall continue and remain in full force and effect after the Loan and other obligations of Borrower under this Agreement and the Security Instruments have been paid or discharged in full and shall survive the termination of this Agreement and the repayment of the Loan.

Prosperity000009

## ARTICLE 5.
## CERTAIN COVENANTS

Until payment and performance in full of the Loan, unless Borrower receives prior written approval of a deviation from Lender, Borrower covenants and agrees with Lender that:

5.1     **Obligations**.  Borrower shall promptly and fully perform all of their obligations under this Agreement and the Security Instruments and refrain from doing any act or acts that would violate any covenant under this Agreement or the Security Instruments.

5.2     **Litigation**.  Borrower shall promptly notify Lender of (a) the existence and status of any litigation which could, in the event of an unfavorable outcome, have a material adverse effect on Borrower or the Collateral and (b) any material adverse change in any fact or circumstance represented or warranted.

5.3     **Taxes**.  Borrower shall promptly pay all of their respective taxes and indebtedness as the same become due or obtain all necessary and lawful extensions thereof. Borrower shall deliver to the Lender proof of payment of all ad valorem and personal property taxes assessed against the Collateral no later than January 15 of each year during the term of the Loan.

5.4     **Good Standing**.  Each Borrower shall (a) maintain its company existence and good standing under the laws of the State of Texas and (b) comply in all material respects with Governmental Requirements.

5.5     **Operating Accounts**.  Borrower shall maintain all of its operating accounts and treasury relationship with Lender during the term of the Loan.

5.6     **Financial Covenants**.

(a)     Borrower shall maintain during the term of this Loan a minimum global Debt Service Coverage Ratio of 1.25x, measured quarterly on financial results for the Borrower for the trailing twelve (12) month period.

(b)     Borrower shall maintain during the term of this Loan a minimum Tangible Net Worth of not less than $1,500,000.00 measured quarterly on financial results for the Borrower for the previous fiscal quarter.

(c)     Borrower covenants and agrees that it shall not incur other secured indebtedness during the term of the Loan without the prior written consent of the Lender.

## ARTICLE 6.
## EVENTS OF DEFAULT

6.1     **Default**.  Any one or more of the following events shall constitute an "Event of Default" hereunder and under the Security Instruments:

Prosperity000010

(a)     Default in the timely payment of any installment of interest due on the Note, or default in the payment of the balance due as of the maturity of the Note and such failure shall continue for a period of five (5) days following written notice of such default from the Lender.

(b)     Default in the due observance or performance of any of the terms, covenants or conditions contained in this Agreement or the Security Instruments for more than twenty (20) days after receipt from the Lender of written notice of such default; provided, however, that such grace period set forth in this subsection (b) shall not apply to any other Event of Default expressly set forth in this **Section 6.1** or to any Event of Default defined as such in the Note or any of the other Security Instruments relating to the Loan, or to any other covenant or condition with respect to which a grace period is expressly provided elsewhere.

(c)     Any representation or warranty made by Borrower to Lender in this Agreement or in the Security Instruments shall be incorrect in any material respect at the time when made or at the time when reaffirmed or deemed reaffirmed by the terms of this Agreement.

(d)     A failure by Borrower to pay or cause to be paid, before any fine, penalty, interest or cost may be added thereto, all franchise taxes and charges, ad valorem and personal property taxes, and other governmental charges of any kind and nature whatsoever which are assessed, levied, confirmed, imposed or become a lien upon the Collateral.

(e)     If individuals or an entity owning an equity interest in any Borrower of twenty percent (20%) or more, dispose of all or any part of such interest, without the prior written consent of Lender, such consent not to be unreasonably withheld.

(f)     If a receiver, liquidator or trustee of any Borrower, Guarantor, or the Collateral shall be appointed.

(g)     If a petition in bankruptcy or for reorganization or for protection under any debtor relief laws shall have been filed against any Borrower or the Guarantor and the same is not withdrawn, dismissed, canceled or terminated within forty-five (45) days.

(h)     If any Borrower or the Guarantor makes an assignment for the benefit of creditors or files or consents to the filing of a petition in bankruptcy or for protection under any debtor relief laws or commences or consents to the commencement of any proceeding under the United States Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of any Borrower or the Guarantor, or the arrangement or rearrangement or readjustment of the debts of any Borrower or the Guarantor, or having the effect of enjoining or staying the exercise of rights or remedies by creditors.

Prosperity000011

(i)     If there is an attachment or sequestration of or relating to any substantial portion of any assets of any Borrower or the Guarantor, and the same is not promptly discharged.

(j)     If either Borrower incurs additional indebtedness, whether secured by the Collateral or otherwise, without Lender's prior written consent  or permits the filing of any lien, security interest or other encumbrance in the Collateral, except security interests in favor of the Receivables Lender.

(k)     If any Borrower or any of its members shall cause, institute or fail to contest any proceeding for the dissolution or termination of Borrower.

(l)     If default shall occur under, or if there is any attempt to withdraw, cancel, or disclaim liability under the Guaranty Agreement by the Guarantor.

(m)     If Borrower ceases to do business or terminates its business as presently conducted for any reason whatsoever.

(n)     If Borrower defaults under any other agreement that it has with Lender and such default continues beyond any applicable grace period.

(p)     If any default shall occur under any Security Instrument.

(q)     If a material adverse change occurs with respect to the financial condition of Borrower, Guarantor, or the Collateral which would materially and adversely affect the value thereof.

## ARTICLE 7.
## RIGHTS AND REMEDIES OF LENDER

7.1     **Rights of Lender**.  Upon the occurrence of any one or more Event of Default, Lender shall have the right, in addition to any other right or remedy of Lender at equity or under applicable law, to commence collection and/or foreclosure proceedings under the terms and conditions of the Security Instruments.

7.2     **Acceleration**.  Upon the occurrence of an Event of Default, Lender may, at its option, declare the outstanding balance of the Note immediately due and payable without notice of any kind, Borrower hereby waiving expressly, but not by way of limitation, notice of default, notice of intent to accelerate and notice of acceleration.

7.3     **No Waiver or Exhaustion**.  No waiver by Lender of any of its rights or remedies hereunder, in the other Security Instruments, or otherwise, shall be considered a waiver of any other or subsequent right or remedy of Lender; no delay or omission in the exercise or enforcement by Lender of any rights or remedies shall ever be construed as a waiver of any right

Prosperity000012

or remedy of Lender; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any other right or remedy of Lender.

## ARTICLE 8.
## GENERAL TERMS AND CONDITIONS

8.1     **Modifications**.  No provision of this Agreement or the Security Instruments may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver or termination is sought to be enforced.

8.2     **Severability**.  In case any of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided, however, if the disregard of such provision would frustrate the intent and purposes of this Agreement, Lender may petition any court having jurisdiction in equity to render a judgment modifying the disregarded provision of this Agreement so as to carry out such intent and purposes.

8.3     **Election of Remedies**.  Lender shall have all of the rights and remedies granted in the Security Instruments in addition to such rights and remedies that may be available to Lender at law or in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower or any property covered under the Security Instruments at the sole discretion of Lender.  The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and such exercise or failure to exercise shall be nonexclusive.

8.4     **Form and Substance**.  All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender and its legal counsel in their sole discretion.

8.5     **Number and Gender**.  Whenever used herein, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders.

8.6     **Conflicts**.  Except as expressly provided in any of the Security Instruments, in the event of any conflict between the provisions of this Agreement and those of any Security Instruments, the provisions of this Agreement shall govern.

8.7     **Time of Essence**.  Time is of the essence in performance of this Agreement by Borrower.

8.8     **Further Assurances**.  Borrower shall do, execute, acknowledge and deliver, at the sole cost and expense of Borrower, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Lender may reasonably require from time to time in order to better assure, convey, assign, transfer and confirm unto the Lender, the rights now or hereafter intended to be granted to the

**Prosperity000013**

Lender under the Security Instruments for carrying out the intention or facilitating the performance of the terms of this Agreement.

    8.9   **Consent to Loan Participation**.  Borrower consents to the Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to the Lender.  Lender may provide to any one or more purchasers or potential purchasers, any information or knowledge Lender may have about the Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any participation interests shall be considered as the absolute owners of such interests in the Loan and shall have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against any purchaser of such participation interests and unconditionally agrees that such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interests in the Loan.  Borrower further agrees that the purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower may have against Lender.

    8.10   **Captions**.  The captions, headings, and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

    **8.11   APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE.**

    8.12   **Notices**.  All notices by Lender to Borrower pursuant to any provisions of this Agreement or the Security Instruments, must be in writing.  Such notices shall be given by personal delivery, expedited delivery service with proof of delivery, email, or mail (registered or certified, return receipt requested).  Any such notice or communication shall be deemed to have been given and received either at the time of personal delivery; in the case of expedited delivery service or mail, as of the date of deposit in an official depository of the United States Postal Service or, as of the date of deposit with the expedited delivery service; or in the case of email, upon receipt (provided that such email is confirmed by expedited delivery or mail in the manner previously described).  By giving at least ten (10) days written notice thereof, Borrower or Lender shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

**Prosperity000014**

If to Lender:

    Prosperity Bank
    5949 Sherry Lane, Suite 600
    Dallas, Texas 75225
    Attn: Taylor Burns
    Email: **taylor.burns@prosperitybankusa.com**

If to Borrower and Guarantor:

    Genesis Networks Telecom Services, LLC
    Genesis Networks Global Services, LLC
    1354 N. Loop 1604 E, Suite 103
    San Antonio, Texas 78232
    Attn: James E. Goodman, Jr.
    Email: **james.goodman@genesisnet.com**

       8.13   **Counterparts**. This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement.

       **EXECUTED AND DELIVERED** on the date first above recited.

<div align="center">

**BORROWER:**

</div>

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
  a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
  a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

**Prosperity000015**

**GUARANTOR:**

James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____

Taylor Burns, Vice President

Prosperity000016

## Exhibit "A"

### Advance Request

Prosperity Bank
5949 Sherry Lane, Suite 600
Dallas, Texas  75225

Attn:  Loan Department

We submit the following information in connection with a request for Advance pursuant to that certain Loan Agreement dated July 3, 2020 executed by the undersigned in favor of Prosperity Bank (the "Lender"). We hereby certify that conditions precedent set forth in **Section 2.2** of the Loan Agreement are true and correct as of the date of this request.

Date Requested: _____, 20____.

| | | | |
|---|---|---|---|
| 1. | Revolving Line Amount: | $3,000,000.00 | |
| 2. | Eighty percent (80%) of Eligible Accounts (not to exceed $3,000,000.00): | | $_____ |
| 3. | Current Loan amount outstanding: | | $_____ |
| 4. | Current amount available under the Revolving Line (Line 2 less Line 3) | | $_____ |
| 5. | Advance Request: | | $_____ |
| 6. | New Loan Balance: (Line 3 plus Line 5) | | $_____ |

The undersigned confirms that it is acting on behalf of all of the entities comprising the Borrower under the Loan Agreement.

> **GENESIS NETWORKS TELECOM SERVICES, LLC,**
> a Texas limited liability company
>   By:  Genesis Networks Enterprises, LLC,
>     a Texas limited liability company,
>       its Manager
>
>
> by: _____
>       Cathy Kincy, Chief Financial Officer

Prosperity000017

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager


by: _____
Cathy Kincy, Chief Financial Officer

Prosperity000018

## Exhibit "B"

## BORROWING BASE AND COMPLIANCE CERTIFICATE
**Borrower Name**

For the Quarter ending _____

Prosperity Bank
5949 Sherry Lane, Suite 600
Dallas, Texas  75225

Attn:   Loan Department

We submit the following information pursuant to the terms of Section 4.10 of that certain Loan Agreement dated July 3, 2020 executed by the undersigned in favor of Prosperity Bank (the "Bank")

| | | |
|---|---|---|
| 1. | Balance of Accounts as _____, 20__ : | $ _____ |
| 2. | Less:  Ineligible Accounts (see attached): | $ _____ |
| 3. | Eligible Accounts (Line 2 less Line 2): | $ _____ |
| 4. | Loan Formula (80% of Eligible Accounts): | $ _____ |
| 5. | Total Availability (Line 4): | $ _____ |
| 6. | Loan Balance: | $ _____ |
| 7. | Net Availability (Line 6 less Line 7)* | $ _____ |

*Negative number represents requirement
for immediate reduction of revolving balance

Prosperity000019

## Ineligible Accounts

A.   Over 90 days past due:                                          $ _____

B.   Intercompany or Affiliate Accounts:                            $ _____

C.   Accounts which are disputed or counterclaims exist:            $ _____

D.   Accounts in which the Account Debtor has filed bankruptcy:     $ _____

E.   All Accounts owed by an Account Debtor to Borrower, if more than 20% of the balance is then outstanding on such Accounts by such Account Debtor to Borrower have remained unpaid for more than 90 days past due date:     $ _____

F.   To the extent any Account Debtor of Borrower has Accounts due Borrower which in the aggregate are more than 25% of all Accounts of the Borrower, the amount in excess of 80% of the Accounts of such Account Debtor (provided, however, Accounts for AT&T and Verizon are excluded):     $ _____

G.   Accounts which the Lender has sent written notification to the Borrower that such Accounts are Ineligible Accounts:     $ _____

H.   Accounts pledged to secure indebtedness due Receivables Lender:     $ _____

I.   Accounts of AT&T and Verizon in excess of 80% of such Accounts     $ _____

     Total Ineligibles:                                             $ _____
        (Carry forward to line 2 of report)

Prosperity000020

**COMPLIANCE:**                                            **COMPLIANT:**
                                                          (please indicate)

**Quarterly Covenants**:

1. Borrower must maintain a Debt Service Coverage Ratio of 1.25x          **YES    NO**
based on a trailing 12 months.

    Formula: Net Operating Income divided by Debt Service payable
        under the Note greater than or equal to 1.25x

    Actual Calculation: _____ = _____

2. Borrower must maintain a minimum Tangible Net Worth of not less than
$1,500,000.00.                                              **YES    NO**

3. Quarterly Financial Statements and Accounts listing are due within 45   **YES    NO**
days of quarter end.

Prosperity000021

**Annual Covenants:**

1. CPA complied financial statements (on a consolidated basis according
to GAAP) required on the Borrower due within 90 days of year end.        **YES   NO**

2. Annual tax returns required from Borrower due 30
days after filing.                                                        **YES   NO**

3. Personal Financial Statements required on Guarantor
due annually:

   James Goodman                                                         **YES   NO**

4. Annual personal tax returns required on Guarantor
due 30 days after filing:

   James Goodman                                                         **YES   NO**

*This Compliance Certificate is a summary only. If there is any inconsistency between the text of
the loan documents and this certificate, the loan documents will control.*

The undersigned confirms that it is certifying and acting on behalf of all of the entities
comprising the Borrower under the Loan Agreement.

> **GENESIS NETWORKS TELECOM SERVICES, LLC,**
> a Texas limited liability company
>   By:  Genesis Networks Enterprises, LLC,
>     a Texas limited liability company,
>       its Manager
>
>
>
>   by: _____
>         Cathy Kincy, Chief Financial Officer
>
> **GENESIS NETWORKS GLOBAL SERVICES, LLC,**
> a Texas limited liability company
>   By:  Genesis Networks Enterprises, LLC,
>     a Texas limited liability company,
>       its Manager
>
>
>   by: _____
>         Cathy Kincy, Chief Financial Officer

**Prosperity000022**