## PLEDGE AND SECURITY AGREEMENT

This **PLEDGE AND SECURITY AGREEMENT** (the "Agreement") is made and entered into effective as of January 8, 2021, by and between **JOHN A. GOODMAN** (the "Pledgor"), and **PROSPERITY BANK,** a Texas banking association (the "Secured Party").

### INTRODUCTORY PROVISIONS:

A.   Secured Party has extended a loan (the "Loan") to Genesis Networks Telecom Services, LLC, a Texas limited liability company and Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower"), the Loan being evidenced by a promissory note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), the Loan being governed by the terms of a Loan Agreement dated August 31, 2020, between the Borrower and Secured Party (the Loan Agreement and certain other documents and instruments evidencing, securing, or governing the Loan are hereinafter collectively referred to as the "Loan Documents").

B.   As additional security for the payment and performance of the Loan due by Borrower to Secured Party, whether pursuant to the Loan Documents or otherwise, Pledgor has agreed to grant to Secured Party a security interest in the partnership interest described below.

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration the receipt, and sufficiency of which are hereby acknowledged and confessed, the parties hereto agree as follows:

1.   **The Pledge and Security Interest**.  Pledgor hereby assigns, pledges and grants to the Secured Party a security interest in and to any and all present or future rights of Pledgor in and to the partnership interest (the "Partnership Interest") owned by Pledgor in Goodman MBE Group LP, a Texas limited partnership (the "Partnership"), together with all profits, income distributions, dividends, surplus and cash proceeds of the Partnership payable to the Pledgor, any share of specific properties and assets of the Partnership distributed to the Pledgor, any and all other rights of every kind and character in the Partnership arising out of the Pledgor's ownership of the Partnership Interest in the Partnership, and proceeds and products from any of the foregoing.

2.   **The Indebtedness.**  This Agreement is being executed and delivered to secure and the security interest herein granted shall secure full and punctual payment and performance of the following indebtedness, liabilities and obligations (collectively, the "Secured Obligation"):

(a)   all indebtedness represented by the Note executed by the Borrower in favor of Secured Party, and any other monetary obligations described in the Loan Documents;

Prosperity000238

(b)  all obligations, covenants, conditions and agreements to be paid or performed pursuant to, or in connection with, the terms of the Loan Documents;

(c)  all sums expended or advanced by Secured Party pursuant to the terms of any of the Loan Documents, and all other sums now or hereafter loaned or advanced by Secured Party to the Borrower or expended by Secured Party for the account of the Borrower, or otherwise owing by the Borrower to Secured Party pursuant to the Loan Documents; and

(d)  all costs, fees, expenses and reasonable attorneys' fees incurred by Secured Party in the enforcement and collection of the Secured Obligation.

3.  **Representations and Warranties**.  Pledgor represents and warrants to the Secured Party, as follows:

(a)  Pledgor owns the Partnership Interest free and clear of any lien, security interest, charge or encumbrance.  Pledgor has not previously assigned any interest in the Partnership Interest to any third party other than the Secured Party.  No financing statement or other instrument similar in effect covering all or any part of the Partnership Interest is on file in any recording office, except in favor of the Lender pursuant to the terms of this Agreement.

(b)  Pledgor has the lawful right, power and authority to grant a security interest in the Partnership Interest.  This Agreement together with all filings and other actions necessary or desirable to perfect and protect such security interest, when duly taken, create a valid and perfected security interest in the Partnership Interest securing the payment and performance of the Secured Obligation.

(c)  No authorization, approval or other action by Pledgor or any governmental authority or regulatory body, is required either (i) for the grant by Pledgor of the security interest herein granted or for the execution, delivery or performance of this Agreement by Pledgor, or (ii) for the perfection or exercise by Secured Party of its rights and remedies hereunder.

4.  **Affirmative and Negative Covenants of the Pledgor.**  Pledgor hereby covenants and agrees with Secured Party that until the Secured Obligation is paid and performed in full, unless Secured Party otherwise consents in writing:

(a)  **Delivery of Certificates**.  Until satisfaction of the indebtedness due by the Borrower to the Lender, Pledgor shall deliver or cause to be delivered to the Secured Party original certificate representing all of the Partnership Interest, if any.  In addition, Pledgor agrees to deliver all future original certificates representing the Partnership Interest which is received by or on behalf of the Pledgor after the execution of this Agreement.

(b)  **Books and Records**.  Pledgor shall keep accurate and complete books and records of the Partnership Interest, and shall, from time to time at the request of Secured Party, deliver to or

Prosperity000239

cause to be delivered to Secured Party such information regarding the Partnership Interest as Secured Party may request.

(c) **Obligations**. Pledgor shall duly and punctually perform the obligations of Pledgor under this Agreement.

(d) **Notification**. Pledgor shall (i) promptly notify Secured Party of any material adverse change in any material fact or circumstance warranted or represented by Pledgor in this Agreement or in any other document furnished by Pledgor to Secured Party in connection with the Secured Obligation; and (ii) promptly notify Secured Party of any claim action, or proceeding affecting the Partnership Interest, or any part thereof, and at the request of Secured Party, appear in and defend, at Pledgor's expense, any such action or proceeding.

(e) **Sale or Transfer of Partnership Interest**. Pledgor shall not sell, assign, or transfer all or any portion of the Partnership Interest to any third party, without the prior written consent of the Secured Party.

(f) **Encumbrance of Partnership Interest**. Pledgor shall not create in favor of anyone, except the Secured Party, any other security interest in the Partnership Interest, or in any part thereof, or otherwise encumber or permit the same to become subject to any lien, attachment, execution, sequestration, or other legal or equitable process.

(g) **Distribution**. If Pledgor shall become entitled to receive or shall receive anything in value related to the Partnership Interest, Pledgor covenants and agrees to accept the same as Secured Party's agent, to hold the same in the exact form received, with the appropriate endorsement of Pledgor when necessary and/or appropriate, to be held by Secured Party as additional collateral for the obligation. Any sums paid upon or in respect of the Partnership Interest upon the liquidation or dissolution of the Partnership, shall be paid over to Secured Party to be held by it as additional collateral for the Secured Obligation; and, in case any distribution of capital shall be made on or in respect to the Partnership Interest or any property shall be distributed upon or with respect to the Partnership Interest pursuant to any recapitalization or reclassification of the capital of the Partnership, or pursuant to any reorganization of the Partnership, the property so distributed shall be delivered to the Secured Party to be held by it as additional collateral for the Secured Obligation. Notwithstanding the foregoing, as long as no Event of Default (as hereinafter defined) has occurred under this Agreement, Pledgor may receive and retain any and all cash distributions.

(h) **Additional Securities**. Pledgor shall not consent to or approve, or take any action or omit from taking any action which would result in the issuance of any Partnership Interest of the Partnership, or any options, rights or other commitments entitling any person to purchase or otherwise acquire any Partnership Interest of the Partnership.

(i) **Further Assurances**. Pledgor shall from time to time, promptly execute and deliver to Secured Party all such other assignments, certificates, supplemental documents and

**PLEDGE AND SECURITY AGREEMENT** - Page 3
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

Prosperity000240

financing statements, and do all other acts or things, as Secured Party may request in order to more fully evidence and perfect the security interest granted in this Agreement and to do all other acts or things necessary or appropriate to enable Secured Party to fully protect and exercise its rights under this Agreement.

(j) **Set-off.** As further security for the obligation, the Pledgor grants to the Secured Party a first lien and contractual right of set-off in and to the Partnership Interest, together with any and all money and property of Pledgor arising out of the sale or transfer of the Partnership Interest, now or at any time hereafter coming within the custody or control of the Secured Party. The right of set-off may be exercised by the Secured Party even if the exercise of such right results in loss of interest or other penalty under the terms of the Partnership Interest or any account agreement of the Pledgor. It is further agreed that the Secured Party shall have a first lien on all sums at any time credited by or due from the Secured Party to the Pledgor or the Borrower, as security for the payment of the Obligation, and the Secured Party, at its option after acceleration of the maturity of the Obligation (however the maturity may be brought about), may, without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing under the Obligation have been paid in full. Secured Party may apply or set-off all or any part of any such deposits or other sums credited by or due from Secured Party to or against any sums due on the Obligation in any manner and in any order of preference which the Secured Party in its sole discretion chooses.

5. **Certain Rights of Secured Party.**

(a) **Appointment of Agents; Registration in Nominee Name.** Secured Party shall have the right to appoint one or more agents for the purpose of retaining physical possession of the certificates representing or evidencing any of the Partnership Interest, which may be held (in the discretion of Secured Party) in the name of Pledgor, endorsed or assigned in blank or in favor of Secured Party or in the name of Secured Party or any nominee or nominees of Secured Party or an agent appointed by Secured Party. In addition to all other rights possessed by Secured Party, Secured Party, at its option, may from time to time following the occurrence of an Event of Default, take any of the following actions:

(i) transfer all of any part of the Partnership Interest into the name of Secured Party or its nominee;

(ii) take control of any proceeds of any of the Partnership Interest;

(iii) extend or renew the Secured Obligation for one or more periods (whether or not longer than the original period) and grant releases, compromises or indulgences with respect to the Secured Obligation or any extension or renewal thereof or any security therefor or to any obligor hereunder or thereunder; and

(iv) exchange certificates or instruments representing or evidencing the Partnership Interest for certificates or instruments of smaller or larger denominations for any purpose consistent with its performance of this Agreement.

(b) <u>Voting Rights; Distributions, Replacement of Partnership Interest, Etc.</u>

(i) Prior to the occurrence of an Event of Default, Pledgor shall be entitled to exercise any and all voting rights and powers relating or pertaining to the Partnership Interest or any part thereof for any purpose not inconsistent with the terms of this Agreement.

(ii) Any and all distributions, if received by Pledgor shall be held in trust for the benefit of Secured Party and shall forthwith be delivered to Secured Party or its designated agent (accompanied by proper instruments of assignment and/or stock powers executed by Pledgor in accordance with Secured Party's instructions) to be held subject to the terms of this Agreement. Notwithstanding the foregoing, as long as no Event of Default has occurred and is ongoing, Pledgor may receive and retain any and all cash distributions, which shall not be held in trust for the benefit of Secured Party.

(iii) Following the occurrence of an Event of Default, at the option of Secured Party following notice to Pledgor, (A) all rights of Pledgor to exercise the voting rights and powers which they are entitled to exercise pursuant to subsection (a) above shall cease, and all such rights shall thereupon become vested in Secured Party who shall have the sole and exclusive right and authority to exercise such voting and/or consensual rights and powers, and (B) Secured Party shall receive and be entitled to retain any and all money and other property paid over to or received by Secured Party pursuant to the provisions of **Section 5(b)(ii)** above.

6. **Default**. An Event of Default (herein so called) shall exist upon the occurrence of any Event of Default as described in Section 6.1 of the Loan Agreement.

7. **Remedies of Secured Party.** Upon the occurrence of an Event of Default:

(a) Secured Party may, at its option:

(i) reduce Secured Party's claim to judgment, foreclose or otherwise enforce Secured Party's security interest in the Partnership Interest by any available judicial procedure;

(ii) after notification, if any, provided for in clause (b) of this **Section 7**, sell or otherwise dispose of the Partnership Interest, at the office of Secured Party, or elsewhere, as chosen by Secured Party, and any such sale or other disposition may be by public or private proceedings;

  (iii) at its discretion, retain the Partnership Interest as shall aggregate in value to an amount equal to the Secured Obligation, in satisfaction of the Secured Obligation whenever the circumstances are such that Secured Party is entitled to do so under the Texas Business and Commerce Code (the "Code");

  (iv) exercise any and all voting rights and powers relating to or pertaining to the Partnership Interest;

  (v) apply by appropriate judicial proceedings for appointment of a receiver for the Partnership Interest, or any part thereof, and Pledgor hereby consents to any such appointment;

  (vi) buy all or any portion of the Partnership Interest at any public or private sale; and

  (vii) exercise any right of set-off set forth in this Agreement.

 (b) Reasonable notification of time and place of any public sale of the Partnership Interest or reasonable notification of the time after which any private sale or other intended disposition of the Partnership Interest is to be made shall be sent to Pledgor and to any other person entitled under the Code to notice. It is agreed that notice sent not less than ten (10) calendar days prior to the taking of the action to which such notice relates is reasonable notification and notice for the purposes of this **Section 7(b)**.

 (c) Because of the Securities Act of 1933, as amended, or other laws of regulations, there may be legal restrictions or limitations affecting Secured Party in any attempts to dispose of all or any portion of the Partnership Interest, or in the enforcement of its rights and remedies hereunder. For these reasons, Secured Party is hereby authorized by Pledgor, but not obligated, upon the occurrence of any Event of Default hereunder giving rise to Secured Party's right to sell or otherwise dispose of the Partnership Interest, to sell all or any part of the Partnership Interest at private sale, subject to investment letter or in any manner which will not require the Partnership Interest, or any part thereof, to be registered in accordance with the Securities Act of 1933, as amended, or the rules and regulations promulgated thereunder, or any other law or regulation, at the best price reasonably obtainable by Secured Party at any such private sale or other disposition in the manner mentioned above. Secured Party is also hereby authorized by Pledgor, but not obligated, to take such actions, give such notices, obtain such consents and do such other things as Secured Party may deem necessary or appropriate in the event of a sale or disposition of any of the Partnership Interest. Pledgor clearly understands that Secured Party may in its discretion approach a restricted number of potential purchasers and that a sale under such circumstances may yield a lower price for the Partnership Interest, or any part or parts thereof, than would otherwise be obtainable if same were registered and sold in the open market. Pledgor agrees (i) that in the event Secured Party shall, after any Event of Default hereunder, sell the Partnership Interest, or any portion thereof, at such private sale or sales, Secured Party shall have the right to rely upon the advice and opinion of any member firm of a national securities exchange as to the best price

Prosperity000243

reasonably obtainable upon such a private sale thereof; and (ii) such reliance shall be conclusive evidence that Secured Party handled such matter in a commercially reasonable manner under the Code.

(d) **Waivers by Pledgor**. Neither Pledgor nor anyone claiming by, through or under Pledgor, to the extent Pledgor may lawfully so agree, shall set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption law now or hereafter in force in any locality where any of the Partnership Interest is situated for purposes of applicable law, in order to prevent or hinder the enforcement of this Agreement, or the absolute sale of the Partnership Interest, or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereof; and Pledgor, in Pledgor's own right and for all who may claim under Pledgor, hereby waives, to the full extent that Pledgor may lawfully do so, the benefit of all such laws and any and all right to have the Partnership Interest marshalled upon any enforcement of the security interest herein granted, and Pledgor agrees that Secured Party or any court having jurisdiction to enforce such security interest may sell the Partnership Interest in parts or as an entirety.

(e) **Application of Proceeds**. Secured Party may apply the proceeds of any foreclosure sale hereunder as follows:

(i) first, to the payment of all costs and expenses of any enforcement, foreclosure, and collection hereunder and all proceedings in connection therewith, including reasonable attorneys' fees;

(ii) then, to the reimbursement of Secured Party for all disbursements made by Secured Party for taxes, assessments, or liens superior to the security interest hereof and which Secured Party shall deem expedient to pay;

(iii) then, to the reimbursement of Secured Party of any other disbursements made by Secured Party in accordance with the terms hereof;

(iv) then, to or among the costs, expenses, disbursements, reimbursements, fees, interest, and principal then owing and unpaid in respect of the Secured Obligation, in such priority as Secured Party may determine in its discretion; and

(v) then, to the Pledgor or to each other person who may be entitled thereto by law.

If such proceeds shall be insufficient to discharge the entire Secured Obligation, Secured Party shall have any other available legal recourse against the Pledgor for the deficiency.

(f) **Enforcement of Secured Obligation**. Nothing in this Agreement or in any other Loan Documents shall affect or impair the unconditional and absolute right of Secured Party to

**PLEDGE AND SECURITY AGREEMENT** - Page 7
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

Prosperity000244

enforce the Secured Obligation as and when the same shall become due in accordance with the terms of the Loan Documents.

8. **Rights of Secured Party.**

(a) **Secured Party Appointed Attorney-in-Fact.** Pledgor hereby irrevocably appoints Secured Party as Pledgor's attorney-in-fact, effective upon the occurrence of an Event of Default, with full authority in the place and stead of Pledgor and in the name of Pledgor, Secured Party, or otherwise, from time to time in Secured Party's discretion, to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

(i) to ask, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Partnership Interest;

(ii) to receive, endorse, and collect any drafts or other instruments, documents, and chattel paper, in connection with clause (i) of this **Section 8**; and

(iii) to file any claims or take any action or institute any proceeding which Secured Party may deem necessary or desirable for the collection of the Partnership Interest or otherwise to enforce the rights of Secured Party against the Partnership Interest.

(b) **Performance by Secured Party.** If Pledgor fails to perform any agreement contained herein, Secured Party may perform, or cause the performance of, such agreement, and the expenses of Secured Party incurred in connection therewith shall be payable by Pledgor under **Section 8(g)**. In no event, however, shall Secured Party have any obligation or duty whatsoever to perform any covenant or agreement of Pledgor contained herein, and any such performance by Secured Party shall be wholly discretionary with Secured Party.

(c) **Duties of Secured Party.** The powers conferred upon Secured Party hereunder are solely to protect its interest in the Partnership Interest and shall not impose any duty upon it to exercise any of such powers. Except for the safe custody of the Partnership Interest in its possession and the accounting for money or other property actually received by Secured Party hereunder, Secured Party shall have no duty as to the Partnership Interest or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to the Partnership Interest.

(d) **No Liability of Secured Party.** Neither the acceptance of this Agreement by Secured Party, nor the exercise of any rights hereunder by Secured Party, shall be construed in any way as an assumption by Secured Party of any obligations, responsibilities, or duties of Pledgor arising in connection with the Partnership Interest assigned hereunder or otherwise bind Secured Party to the performance of any obligations respecting the Partnership Interest, it being expressly understood that Secured Party shall not be obligated to perform, observe, or discharge any obligation, responsibility, duty, or liability of Pledgor in respect of the Partnership Interest,

including, but not limited to, appearing in or defending any action, expending any money, or incurring any expense in connection therewith.

(e) **Right to Defend Action Affecting Security**. Secured Party may, at Pledgor's expense, appear in and defend any action or proceeding at law or in equity purporting to affect the security interest granted under this Agreement.

(f) **Right to Prevent or Remedy Default**. At any time following an Event of Default, Secured Party:

(i) may but shall not be obligated to take any action Secured Party deems necessary or desirable to prevent or remedy any such failure by Pledgor to protect the security interest granted under this Agreement, and

(ii) shall have the absolute and immediate right to take possession of the Partnership Interest to such extent and as often as Secured Party, in its sole discretion, deems necessary or desirable in order to prevent or to cure any such default by the Pledgor, or otherwise advance or expend such sums of money for the account of the Pledgor as Secured Party in its sole discretion deems necessary for any such purpose.

(g) **Expenses**. All advances, costs, expenses, charges, and attorneys' fees which Secured Party may take, pay, or incur under any provision of this Agreement for the protection of its security or for the enforcement of any of its rights hereunder, or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation in which Secured Party may become involved by reason of or arising out of the Loan Documents or the Partnership Interest, shall be a part of the Secured Obligation and shall, at Secured Party's election, bear interest until paid at the maximum rate of interest permitted by applicable law (or such lesser rate as may be chosen by Secured Party), from the date of such payment until repaid by the Pledgor.

(h) **Secured Party's Right of Set-Off**. Upon the happening of any event entitling Secured Party to pursue any remedy provided herein, or if Secured Party shall be served with garnishment process in which the Pledgor shall be named as defendant, whether or not the Pledgor shall be in default hereunder at the time, Secured Party may, but shall not be required to, set-off any indebtedness owing by Secured Party to the Pledgor against any of the Secured Obligation without first resorting to the security hereunder and without prejudice to any other right or remedies of Secured Party or its security interest herein.

(i) **No Waiver**. In case Secured Party shall have proceeded to enforce any right or remedy hereunder and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, Pledgor and Secured Party shall be restored to their former positions and rights hereunder with respect to the Partnership Interest, and all rights, remedies, and powers of Secured Party shall continue as if no such proceeding had been taken. No failure or delay on the part of Secured Party in exercising any right, remedy, or power under this Agreement or in giving or insisting upon strict performance by Pledgor hereunder or in giving notice

Prosperity000246

hereunder shall operate as a waiver of the same or any other power or right, and no single or partial exercise of any such power or right shall preclude any other or further exercise thereof or the exercise of any other such power or right. Secured Party, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Pledgor of any and all of the terms and provisions of this Agreement to be performed by Pledgor. The collection and application of proceeds, the entering and taking possession of the Partnership Interest, and the exercise of the rights of Secured Party contained in the Loan Documents, including the Agreement, shall not cure or waive any default, or affect any notice of default, or invalidate any acts done pursuant to such notice. No waiver by Secured Party of any breach or default of or by any party hereunder shall be deemed to alter or affect Secured Party's rights hereunder with respect to any prior or subsequent default.

(j)　**Remedies Cumulative**. No right or remedy reserved to Secured Party is intended to be exclusive of any right or remedy, but each and every such right or remedy shall be cumulative, not in lieu of, but in addition to any other rights or remedies given under this Agreement and all other Loan Documents. Any and all of Secured Party's rights and remedies may be exercised from time to time and as often as such exercise is deemed necessary or desirable by Secured Party.

(k)　**Right of Secured Party to Extend Time of Payment, Substitute, Release Security, Etc.** Without affecting the liability of any person for the payment of any of the Secured Obligation or the security interest of this Agreement on the Partnership Interest for the full amount of any Secured Obligation unpaid, Secured Party may, without notice or without affecting or impairing the security interest or rights of Secured Party granted or arising under this Agreement: (i) release any person liable for the payment of any of the Secured Obligation; (ii) extend the time or otherwise alter the terms of payment of any of the Secured Obligation; (iii) accept additional security for the Secured Obligation of any kind; (iv) alter, substitute, or release any property pledged as security for all or any portion of the Secured Obligation; or (v) join in any subordination or other agreement affecting this Agreement.

9.　**Miscellaneous.**

(a)　**Definitions**. In this Agreement, whenever the context so requires, the neuter gender includes the masculine and feminine, and the singular number includes the plural and vice versa. The terms "advances," "costs," and "expenses" shall include, but shall not be limited to, reasonable attorneys' fees whenever incurred. The terms "indebtedness," "obligations," and "Secured Obligation" shall mean and include, but shall not be limited to, all claims, demands, obligations, and liabilities whatsoever, however arising, whether owing by the subject person or entity individually or as a joint venturer, or jointly in common with any other party, and whether absolute or contingent, and whether owing by the subject person or entity as principal debtor or as accommodation maker or as endorser, liquidated or unliquidated, and whenever contracted, accrued or payable.

(b)     **Paragraph Headings.** The headings of paragraphs herein are inserted only for convenience and shall in no way define, describe, or limit the scope or intent of any provisions or this Agreement.

(c)     **Change, Amendment, Etc.** No change, amendment, modification, cancellation, or discharge of any provision of this Agreement shall be valid unless consented to in writing by Secured Party and Grantor.

(d)     **Successors and Assigns.** As and when used herein, the term "Pledgor" shall mean and include the Pledgor, its successors and assigns, and the term "Secured Party" shall mean and include the Secured Party herein named and its successors and assigns, and all covenants and agreements herein shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns.

(e)     **Applicable Laws.** THIS AGREEMENT SHALL BE CONSTRUED, INTERPRETED AND IS ENFORCEABLE UNDER AND PURSUANT TO THE LAWS OF THE STATE OF TEXAS AND APPLICABLE FEDERAL LAW. VENUE IN ANY PROCEEDING INVOLVING THIS AGREEMENT SHALL BE IN DALLAS COUNTY, TEXAS.

(f)     **Severability.** If any provision of this Agreement is held to be invalid or unenforceable, the validity or enforceability of the other provisions of this Agreement shall remain unaffected.

(g)     **Notices.** All notices, demands, requests, or other communications to any party hereunder or referred to herein shall be in writing and shall be given to such party in the manner provided by the terms of the Loan Agreement. Each such notice, demand, request, or other communication shall be effective in the manner provided by the terms of the Loan Agreement.

(h)     **Counterparts.** This Agreement may be executed in counterpart, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument. In making proof of this Agreement it shall not be necessary to produce or account for more than one such counterpart.

(i)     **Final Agreement.** THIS DOCUMENT CONSTITUTES A WRITTEN AGREEMENT WHICH CONTAINS THE ENTIRE AGREEMENT OF THE PARTIES. THE RIGHTS AND OBLIGATIONS OF THE PARTIES SHALL BE DETERMINED SOLELY FROM THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS ENTERED PURSUANT HERETO, AND ANY PRIOR OR CONTEMPORANEOUS ORAL AGREEMENTS ARE SUPERSEDED BY AND MERGED INTO THIS AGREEMENT. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS CANNOT BE VARIED OR MODIFIED ORALLY AND CAN ONLY BE VARIED OR MODIFIED BY WRITTEN INSTRUMENT SIGNED BY ALL THE PARTIES.

**PLEDGOR:**

_____
John A. Goodman

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association

By: _____
Taylor Burns, Vice President

Prosperity000249