*23600000000000010879150000000010252021*

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 10-25-2021 | 12-03-2021 | 1087915 | 104 | | TB3 | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** Genesis Networks Telecom Services, LLC
Genesis Networks Global Services, LLC
1354 N Loop 1604, Ste. 103
San Antonio, TX 78232

**Lender:** PROSPERITY BANK
PLANO OPERATIONS
P O Box 869105
Plano, TX 75086-9105

**Grantor:** Goodman Networks Incorporated
2801 Network Blvd, Suite 300
Frisco, TX 75034

**THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated October 25, 2021, is made and executed among Goodman Networks Incorporated ("Grantor"); Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC ("Borrower"); and PROSPERITY BANK ("Lender").**

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit account(s) described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit account(s) ("Account"):

**Checking Account Number 70173992 with Lender with a hold amount of $4,660,000.00**

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

**(A) All property to which Lender acquires title or documents of title.**

**(B) All property assigned to Lender.**

**(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.**

**(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.**

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise. However, this Agreement shall not secure, and the "Indebtedness" shall not include, any obligations arising under Subchapters E and F of Chapter 342 of the Texas Finance Code, as amended.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor shall not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**ASSIGNMENT OF DEPOSIT ACCOUNT**

**(Continued)**

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Agreement or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower or Grantor and the failure by Borrower or Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Borrower to Lender immediately due and payable, without notice of any kind to Borrower or Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Borrower or Grantor as the interests of Borrower or Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Texas Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Texas Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement: **Prosperity000124**

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Agreement occurred in Bexar County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bexar County, State of Texas.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Non-Liability of Lender.** The relationship between Borrower and Grantor and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower and Grantor. Borrower and Grantor are exercising Borrower's and Grantor's own judgment with respect to Borrower's and Grantor's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Borrower and Grantor of any matter with respect to Borrower's and Grantor's business. Lender and Borrower and Grantor intend that Lender may reasonably rely on all information supplied by Borrower and Grantor to Lender, together with all representations and warranties given by Borrower and Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Grantor must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Grantor waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Grantor agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's Lender's reasonable attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Grantor's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Grantor to perform any of its obligations hereunder; and/or (4) any failure of Grantor to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Grantor's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Grantor's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Grantor's indemnification obligations apply, then, upon Lender's demand, Grantor, at its sole cost and expense, shall defend such claim, action or proceeding in Grantor's name, if necessary, by the attorneys for Grantor's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Grantor and to assist in its defense and Grantor agrees to pay the fees and disbursements of such attorneys.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Agreement or any provision of any Related Document, Grantor does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Indebtedness which would in any way or event (including demand, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Indebtedness than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Indebtedness, and when the principal has been paid in full, be refunded to Grantor.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

Prosperity000125

Trustee_Prosperity_000075

**ASSIGNMENT OF DEPOSIT ACCOUNT**

Loan No: 1087915                                    (Continued)                                    Page 4

---

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Account.** The word "Account" means the deposit account(s) described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Goodman Networks Incorporated.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means PROSPERITY BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated October 25, 2021 and executed by Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC in the principal amount of $3,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED OCTOBER 25, 2021.**

**GRANTOR:**

**GOODMAN NETWORKS INCORPORATED**

By: _____
James E. Goodman, Jr., Chief Executive Officer of
Goodman Networks Incorporated

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC**

GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Telecom Services, LLC

By: _____
James E. Goodman, Jr., Manager of Genesis
Networks Enterprises LLC

**GENESIS NETWORKS GLOBAL SERVICES, LLC**

GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Global Services, LLC

By: _____
James E. Goodman, Jr., Manager of Genesis
Networks Enterprises LLC

**LENDER:**

**PROSPERITY BANK**

X _____
Taylor Burns, Vice President

**Prosperity000126**

**Trustee_Prosperity_000076**

## CERTIFICATION AND AUTHORIZATION

## BY THE PARTNERS

## OF

## GOODMAN MBE GROUP LP

1.      The undersigned hereby certify that (a) the undersigned are all of the partners (the "Partners") of **GOODMAN MBE GROUP LP**, a Texas limited partnership (the "Partnership"), which Partnership exists pursuant to that certain Limited Partnership Agreement dated to be effective March 7, 2017 described below (the "Partnership Agreement"), (b) attached hereto as Annex 1 and made a part hereof is a true and complete copy of the Partnership Agreement, which is in full force and effect on this date and contains the complete agreement with respect to the Partnership, (c) the Partnership has not been dissolved or terminated and no proceedings for dissolution or termination are contemplated, and (d) to the knowledge of the undersigned, no default or event which with the passage of time or the giving of notice would constitute a default under the Partnership Agreement has occurred.

2.      On August 31, 2020, Prosperity Bank, a Texas banking association (the "Lender") extended a loan (the "Loan") to Genesis Networks Telecom Services, LLC, a Texas limited liability company and Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower"), the Loan being evidenced by a Promissory Note of even date therewith (the "Note") and governed by the terms of a Loan Agreement of even date therewith between the Borrower and the Lender (the Note, Loan Agreement and certain other documents and instruments evidencing, securing or governing the Loan are hereinafter collectively referred to as the "Loan Documents").

3.      The Borrower and Lender have agreed to modify certain terms of the Loan pursuant to the terms of that certain Loan Modification Agreement between the Borrower and Lender, including a pledge by John A. Goodman (the "Pledgor") of his limited partnership interest in the Partnership (the "Partnership Interest"), pursuant to the terms of a Pledge and Security Agreement between Pledgor and Lender (the "Security Agreement").

4.      Pursuant to the terms of the Limited Partnership Agreement, no Partner can make a disposition of his partnership interest, either directly or indirectly except as provided by the terms of the Partnership Agreement.  The pledge of the Partnership Interest of Pledgor to the Lender is not currently permitted by the terms of the Partnership Agreement.  Notwithstanding such prohibition regarding disposition of partnership interest in the Partnership contained in the Limited Partnership Agreement, the undersigned Partners, constituting all of the Partners in the Partnership, hereby consent to the disposition of the Partnership Interest of Pledgor to the Lender pursuant to the terms of

**Prosperity000261**

**Trustee_Prosperity_000077**

the Security Agreement, and hereby waive any rights under the terms of the Limited Partnership Agreement to enforce the prohibition of the disposition of the Partnership Interest of the Pledgor. The undersigned Partners further acknowledge and agree that in the event the Lender forecloses its security interests in the Partnership Interest created by the Security Agreement, the Lender or any third party purchaser of the Partnership Interest following such foreclosure sale shall become a limited partner of the Partnership entitled to all of the rights and benefits of the Pledgor thereunder.

5.      The undersigned Partners further agree to perform all acts and do all things which the Lender may reasonably deem necessary or desirable to memorialize the consent of the Partners provided by this Certification, including the execution and delivery of any and all such further documents that the Lender deems reasonably necessary or desirable in connection with the Partners' consent to the disposition of the Partnership Interest of the Pledgor.

6.      The powers and authorizations provided by this Certification and Authorization shall continue in full force and effect until written notice of revocation thereof from all of the Partners has been actually received by the Lender.

**DATED**: Effective ~~January~~ April 9 , 2021.

>                **GENERAL PARTNER:**
>
>                **GOODMAN MBE GROUP GP, LLC,**
>                a Texas limited liability company
>
>                By: _____
>                      Joseph M. Goodman, President

**Prosperity000262**

**Trustee_Prosperity_000078**

**LIMITED PARTNERS:**

_____
James E. Goodman

_____
Jason A. Goodman

_____
John A. Goodman

_____
Jonathan E. Goodman

_____
Joseph M. Goodman

<u>CERTIFICATE AND AUTHORIZATION</u>
<u>BY THE PARTNERS</u> – Page 3
J:\TJC\2304F0655\1,948,427CERTAUTH.GP.DOCX

Prosperity000263

Trustee_Prosperity_000079

**LIMITED PARTNERS:**

_____
James E. Goodman

_____
Jason A. Goodman

_____
John A. Goodman

_____
Jonathan E. Goodman

_____
Joseph M. Goodman

Prosperity000264

Trustee_Prosperity_000080

LIMITED PARTNERS:

_____

James E. Goodman

_____

Jason A. Goodman

_____

John A. Goodman

_____

Jonathan E. Goodman

_____

Joseph M. Goodman

CERTIFICATE AND AUTHORIZATION
BY THE PARTNERS   Page 3

Prosperity000265

Trustee_Prosperity_000081

**LIMITED PARTNERS:**

_____

James E. Goodman

_____

Jason A. Goodman

_____

John A. Goodman

_____

Jonathan E. Goodman

_____

Joseph M. Goodman

CERTIFICATE AND AUTHORIZATION
BY THE PARTNERS – Page 3
J:\TJC\2304100-50\$1,948,427\CERTAUTH.GP.DOCX

Prosperity000266

Trustee_Prosperity_000082

# ANNEX 1

**ANNEX 1**

1:\T3C\72041\065\SJ.241.827CERTAUTHGE.DOCX

**Prosperity000267**

**Trustee_Prosperity_000083**

# PLEDGE AND SECURITY AGREEMENT

This **PLEDGE AND SECURITY AGREEMENT** (the "Agreement") is made and entered into effective as of January 8, 2021, by and between **JOHN A. GOODMAN** (the "Pledgor"), and **PROSPERITY BANK,** a Texas banking association (the "Secured Party").

## INTRODUCTORY PROVISIONS:

A.    Secured Party has extended a loan (the "Loan") to Genesis Networks Telecom Services, LLC, a Texas limited liability company and Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower"), the Loan being evidenced by a promissory note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), the Loan being governed by the terms of a Loan Agreement dated August 31, 2020, between the Borrower and Secured Party (the Loan Agreement and certain other documents and instruments evidencing, securing, or governing the Loan are hereinafter collectively referred to as the "Loan Documents").

B.    As additional security for the payment and performance of the Loan due by Borrower to Secured Party, whether pursuant to the Loan Documents or otherwise, Pledgor has agreed to grant to Secured Party a security interest in the partnership interest described below.

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration the receipt, and sufficiency of which are hereby acknowledged and confessed, the parties hereto agree as follows:

1.    **The Pledge and Security Interest**.    Pledgor hereby assigns, pledges and grants to the Secured Party a security interest in and to any and all present or future rights of Pledgor in and to the partnership interest (the "Partnership Interest") owned by Pledgor in Goodman MBE Group LP, a Texas limited partnership (the "Partnership"), together with all profits, income distributions, dividends, surplus and cash proceeds of the Partnership payable to the Pledgor, any share of specific properties and assets of the Partnership distributed to the Pledgor, any and all other rights of every kind and character in the Partnership arising out of the Pledgor's ownership of the Partnership Interest in the Partnership, and proceeds and products from any of the foregoing.

2.    **The Indebtedness.**    This Agreement is being executed and delivered to secure and the security interest herein granted shall secure full and punctual payment and performance of the following indebtedness, liabilities and obligations (collectively, the "Secured Obligation"):

(a)    all indebtedness represented by the Note executed by the Borrower in favor of Secured Party, and any other monetary obligations described in the Loan Documents;

**PLEDGE AND SECURITY AGREEMENT**  -  Page 1
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

**Prosperity000238**

**Trustee_Prosperity_000084**

(b)     all obligations, covenants, conditions and agreements to be paid or performed pursuant to, or in connection with, the terms of the Loan Documents;

(c)     all sums expended or advanced by Secured Party pursuant to the terms of any of the Loan Documents, and all other sums now or hereafter loaned or advanced by Secured Party to the Borrower or expended by Secured Party for the account of the Borrower, or otherwise owing by the Borrower to Secured Party pursuant to the Loan Documents; and

(d)     all costs, fees, expenses and reasonable attorneys' fees incurred by Secured Party in the enforcement and collection of the Secured Obligation.

3.     **Representations and Warranties**.    Pledgor represents and warrants to the Secured Party, as follows:

(a)     Pledgor owns the Partnership Interest free and clear of any lien, security interest, charge or encumbrance.  Pledgor has not previously assigned any interest in the Partnership Interest to any third party other than the Secured Party.  No financing statement or other instrument similar in effect covering all or any part of the Partnership Interest is on file in any recording office, except in favor of the Lender pursuant to the terms of this Agreement.

(b)     Pledgor has the lawful right, power and authority to grant a security interest in the Partnership Interest.  This Agreement together with all filings and other actions necessary or desirable to perfect and protect such security interest, when duly taken, create a valid and perfected security interest in the Partnership Interest securing the payment and performance of the Secured Obligation.

(c)     No authorization, approval or other action by Pledgor or any governmental authority or regulatory body, is required either (i) for the grant by Pledgor of the security interest herein granted or for the execution, delivery or performance of this Agreement by Pledgor, or (ii) for the perfection or exercise by Secured Party of its rights and remedies hereunder.

4.     **Affirmative and Negative Covenants of the Pledgor.**   Pledgor hereby covenants and agrees with Secured Party that until the Secured Obligation is paid and performed in full, unless Secured Party otherwise consents in writing:

(a)     Delivery of Certificates.    Until satisfaction of the indebtedness due by the Borrower to the Lender, Pledgor shall deliver or cause to be delivered to the Secured Party original certificate representing all of the Partnership Interest, if any.  In addition, Pledgor agrees to deliver all future original certificates representing the Partnership Interest which is received by or on behalf of the Pledgor after the execution of this Agreement.

(b)     Books and Records.    Pledgor shall keep accurate and complete books and records of the Partnership Interest, and shall, from time to time at the request of Secured Party, deliver to or

PLEDGE AND SECURITY AGREEMENT  -  Page 2
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

**Prosperity000239**

**Trustee_Prosperity_000085**

cause to be delivered to Secured Party such information regarding the Partnership Interest as Secured Party may request.

(c)    Obligations.    Pledgor shall duly and punctually perform the obligations of Pledgor under this Agreement.

(d)    Notification.    Pledgor shall (i) promptly notify Secured Party of any material adverse change in any material fact or circumstance warranted or represented by Pledgor in this Agreement or in any other document furnished by Pledgor to Secured Party in connection with the Secured Obligation;  and (ii) promptly notify Secured Party of any claim action, or proceeding affecting the Partnership Interest, or any part thereof, and at the request of Secured Party, appear in and defend, at Pledgor's expense, any such action or proceeding.

(e)    Sale or Transfer of Partnership Interest.    Pledgor shall not sell, assign, or transfer all or any portion of the Partnership Interest to any third party, without the prior written consent of the Secured Party.

(f)    Encumbrance of Partnership Interest.    Pledgor shall not create in favor of anyone, except the Secured Party, any other security interest in the Partnership Interest, or in any part thereof, or otherwise encumber or permit the same to become subject to any lien, attachment, execution, sequestration, or other legal or equitable process.

(g)    Distribution.    If Pledgor shall become entitled to receive or shall receive anything in value related to the Partnership Interest, Pledgor covenants and agrees to accept the same as Secured Party's agent, to hold the same in the exact form received, with the appropriate endorsement of Pledgor when necessary and/or appropriate, to be held by Secured Party as additional collateral for the obligation. Any sums paid upon or in respect of the Partnership Interest upon the liquidation or dissolution of the Partnership, shall be paid over to Secured Party to be held by it as additional collateral for the Secured Obligation; and, in case any distribution of capital shall be made on or in respect to the Partnership Interest or any property shall be distributed upon or with respect to the Partnership Interest pursuant to any recapitalization or reclassification of the capital of the Partnership, or pursuant to any reorganization of the Partnership, the property so distributed shall be delivered to the Secured Party to be held by it as additional collateral for the Secured Obligation.    Notwithstanding the foregoing, as long as no Event of Default (as hereinafter defined) has occurred under this Agreement, Pledgor may receive and retain any and all cash distributions.

(h)    Additional Securities.    Pledgor shall not consent to or approve, or take any action or omit from taking any action which would result in the issuance of any Partnership Interest of the Partnership, or any options, rights or other commitments entitling any person to purchase or otherwise acquire any Partnership Interest of the Partnership.

(i)    Further Assurances.    Pledgor shall from time to time, promptly execute and deliver to Secured Party all such other assignments, certificates, supplemental documents and

**Prosperity000240**

**Trustee_Prosperity_000086**

financing statements, and do all other acts or things, as Secured Party may request in order to more fully evidence and perfect the security interest granted in this Agreement and to do all other acts or things necessary or appropriate to enable Secured Party to fully protect and exercise its rights under this Agreement.

(j)  Set-off.  As further security for the obligation, the Pledgor grants to the Secured Party a first lien and contractual right of set-off in and to the Partnership Interest, together with any and all money and property of Pledgor arising out of the sale or transfer of the Partnership Interest, now or at any time hereafter coming within the custody or control of the Secured Party. The right of set-off may be exercised by the Secured Party even if the exercise of such right results in loss of interest or other penalty under the terms of the Partnership Interest or any account agreement of the Pledgor. It is further agreed that the Secured Party shall have a first lien on all sums at any time credited by or due from the Secured Party to the Pledgor or the Borrower, as security for the payment of the Obligation, and the Secured Party, at its option after acceleration of the maturity of the Obligation (however the maturity may be brought about), may, without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing under the Obligation have been paid in full. Secured Party may apply or set-off all or any part of any such deposits or other sums credited by or due from Secured Party to or against any sums due on the Obligation in any manner and in any order of preference which the Secured Party in its sole discretion chooses.

5.  **Certain Rights of Secured Party**.

(a)  Appointment of Agents; Registration in Nominee Name.  Secured Party shall have the right to appoint one or more agents for the purpose of retaining physical possession of the certificates representing or evidencing any of the Partnership Interest, which may be held (in the discretion of Secured Party) in the name of Pledgor, endorsed or assigned in blank or in favor of Secured Party or in the name of Secured Party or any nominee or nominees of Secured Party or an agent appointed by Secured Party.  In addition to all other rights possessed by Secured Party, Secured Party, at its option, may from time to time following the occurrence of an Event of Default, take any of the following actions:

(i)  transfer all of any part of the Partnership Interest into the name of Secured Party or its nominee;

(ii)  take control of any proceeds of any of the Partnership Interest;

(iii)  extend or renew the Secured Obligation for one or more periods (whether or not longer than the original period) and grant releases, compromises or indulgences with respect to the Secured Obligation or any extension or renewal thereof or any security therefor or to any obligor hereunder or thereunder; and

PLEDGE AND SECURITY AGREEMENT  -  Page 4
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

**Prosperity000241**

Trustee_Prosperity_000087

(iv)    exchange certificates or instruments representing or evidencing the Partnership Interest for certificates or instruments of smaller or larger denominations for any purpose consistent with its performance of this Agreement.

(b)    Voting Rights;  Distributions, Replacement of Partnership Interest , Etc.

(i)    Prior to the occurrence of an Event of Default, Pledgor shall be entitled to exercise any and all voting rights and powers relating or pertaining to the Partnership Interest or any part thereof for any purpose not inconsistent with the terms of this Agreement.

(ii)    Any and all distributions, if received by Pledgor shall be held in trust for the benefit of Secured Party and shall forthwith be delivered to Secured Party or its designated agent (accompanied by proper instruments of assignment and/or stock powers executed by Pledgor in accordance with Secured Party's instructions) to be held subject to the terms of this Agreement.  Notwithstanding the foregoing, as long as no Event of Default has occurred and is ongoing, Pledgor may receive and retain any and all cash distributions, which shall not be held in trust for the benefit of Secured Party.

(iii)    Following the occurrence of an Event of Default, at the option of Secured Party following notice to Pledgor, (A) all rights of Pledgor to exercise the voting rights and powers which they are entitled to exercise pursuant to subsection (a) above shall cease, and all such rights shall thereupon become vested in Secured Party who shall have the sole and exclusive right and authority to exercise such voting and/or consensual rights and powers, and (B) Secured Party shall receive and be entitled to retain any and all money and other property paid over to or received by Secured Party pursuant to the provisions of Section 5(b)(ii) above.

6.    **Default**.    An Event of Default (herein so called) shall exist upon the occurrence of any Event of Default as described in Section 6.1 of the Loan Agreement.

7.    **Remedies of Secured Party.**    Upon the occurrence of an Event of Default:

(a)    Secured Party may, at its option:

(i)    reduce Secured Party's claim to judgment, foreclose or otherwise enforce Secured Party's security interest in the Partnership Interest by any available judicial procedure;

(ii)    after notification, if any, provided for in clause (b) of this Section 7, sell or otherwise dispose of the Partnership Interest, at the office of Secured Party, or elsewhere, as chosen by Secured Party, and any such sale or other disposition may be by public or private proceedings;

PLEDGE AND SECURITY AGREEMENT  - Page 5
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

Prosperity000242

Trustee_Prosperity_000088

(iii)    at its discretion, retain the Partnership Interest as shall aggregate in value to an amount equal to the Secured Obligation, in satisfaction of the Secured Obligation whenever the circumstances are such that Secured Party is entitled to do so under the Texas Business and Commerce Code (the "Code");

(iv)    exercise any and all voting rights and powers relating to or pertaining to the Partnership Interest;

(v)    apply by appropriate judicial proceedings for appointment of a receiver for the Partnership Interest, or any part thereof, and Pledgor hereby consents to any such appointment;

(vi)    buy all or any portion of the Partnership Interest at any public or private sale; and

(vii)    exercise any right of set-off set forth in this Agreement.

(b)    Reasonable notification of time and place of any public sale of the Partnership Interest or reasonable notification of the time after which any private sale or other intended disposition of the Partnership Interest is to be made shall be sent to Pledgor and to any other person entitled under the Code to notice.  It is agreed that notice sent not less than ten (10) calendar days prior to the taking of the action to which such notice relates is reasonable notification and notice for the purposes of this Section 7(b).

(c)    Because of the Securities Act of 1933, as amended, or other laws of regulations, there may be legal restrictions or limitations affecting Secured Party in any attempts to dispose of all or any portion of the Partnership Interest, or in the enforcement of its rights and remedies hereunder.  For these reasons, Secured Party is hereby authorized by Pledgor, but not obligated, upon the occurrence of any Event of Default hereunder giving rise to Secured Party's right to sell or otherwise dispose of the Partnership Interest, to sell all or any part of the Partnership Interest at private sale, subject to investment letter or in any manner which will not require the Partnership Interest, or any part thereof, to be registered in accordance with the Securities Act of 1933, as amended, or the rules and regulations promulgated thereunder, or any other law or regulation, at the best price reasonably obtainable by Secured Party at any such private sale or other disposition in the manner mentioned above.  Secured Party is also hereby authorized by Pledgor, but not obligated, to take such actions, give such notices, obtain such consents and do such other things as Secured Party may deem necessary or appropriate in the event of a sale or disposition of any of the Partnership Interest.  Pledgor clearly understands that Secured Party may in its discretion approach a restricted number of potential purchasers and that a sale under such circumstances may yield a lower price for the Partnership Interest, or any part or parts thereof, than would otherwise be obtainable if same were registered and sold in the open market.  Pledgor agrees (i) that in the event Secured Party shall, after any Event of Default hereunder, sell the Partnership Interest, or any portion thereof, at such private sale or sales, Secured Party shall have the right to rely upon the advice and opinion of any member firm of a national securities exchange as to the best price

Prosperity000243

Trustee_Prosperity_000089

reasonably obtainable upon such a private sale thereof; and (ii) such reliance shall be conclusive evidence that Secured Party handled such matter in a commercially reasonable manner under the Code.

(d)     Waivers by Pledgor.   Neither Pledgor nor anyone claiming by, through or under Pledgor, to the extent Pledgor may lawfully so agree, shall set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption law now or hereafter in force in any locality where any of the Partnership Interest is situated for purposes of applicable law, in order to prevent or hinder the enforcement of this Agreement, or the absolute sale of the Partnership Interest, or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereof;  and Pledgor, in Pledgor's own right and for all who may claim under Pledgor, hereby waives, to the full extent that Pledgor may lawfully do so, the benefit of all such laws and any and all right to have the Partnership Interest marshalled upon any enforcement of the security interest herein granted, and Pledgor agrees that Secured Party or any court having jurisdiction to enforce such security interest may sell the Partnership Interest in parts or as an entirety.

(e)     Application of Proceeds.   Secured Party may apply the proceeds of any foreclosure sale hereunder as follows:

(i)     first, to the payment of all costs and expenses of any enforcement, foreclosure, and collection hereunder and all proceedings in connection therewith, including reasonable attorneys' fees;

(ii)     then, to the reimbursement of Secured Party for all disbursements made by Secured Party for taxes, assessments, or liens superior to the security interest hereof and which Secured Party shall deem expedient to pay;

(iii)     then, to the reimbursement of Secured Party of any other disbursements made by Secured Party in accordance with the terms hereof;

(iv)     then, to or among the costs, expenses, disbursements, reimbursements, fees, interest, and principal then owing and unpaid in respect of the Secured Obligation, in such priority as Secured Party may determine in its discretion; and

(v)     then, to the Pledgor or to each other person who may be entitled thereto by law.

If such proceeds shall be insufficient to discharge the entire Secured Obligation, Secured Party shall have any other available legal recourse against the Pledgor for the deficiency.

(f)     Enforcement of Secured Obligation.   Nothing in this Agreement or in any other Loan Documents shall affect or impair the unconditional and absolute right of Secured Party to

PLEDGE AND SECURITY AGREEMENT  –  Page 7
J:\TJC\23041\065\Modification ($1,948,427)\pledge.sec.agr.docx

Prosperity000244

Trustee_Prosperity_000090

enforce the Secured Obligation as and when the same shall become due in accordance with the terms of the Loan Documents.

8. **Rights of Secured Party.**

(a) <u>Secured Party Appointed Attorney-in-Fact</u>. Pledgor hereby irrevocably appoints Secured Party as Pledgor's attorney-in-fact, effective upon the occurrence of an Event of Default, with full authority in the place and stead of Pledgor and in the name of Pledgor, Secured Party, or otherwise, from time to time in Secured Party's discretion, to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

(i) to ask, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Partnership Interest;

(ii) to receive, endorse, and collect any drafts or other instruments, documents, and chattel paper, in connection with clause (i) of this <u>Section 8</u>; and

(iii) to file any claims or take any action or institute any proceeding which Secured Party may deem necessary or desirable for the collection of the Partnership Interest or otherwise to enforce the rights of Secured Party against the Partnership Interest.

(b) <u>Performance by Secured Party</u>. If Pledgor fails to perform any agreement contained herein, Secured Party may perform, or cause the performance of, such agreement, and the expenses of Secured Party incurred in connection therewith shall be payable by Pledgor under <u>Section 8(g)</u>. In no event, however, shall Secured Party have any obligation or duty whatsoever to perform any covenant or agreement of Pledgor contained herein, and any such performance by Secured Party shall be wholly discretionary with Secured Party.

(c) <u>Duties of Secured Party</u>. The powers conferred upon Secured Party hereunder are solely to protect its interest in the Partnership Interest and shall not impose any duty upon it to exercise any of such powers. Except for the safe custody of the Partnership Interest in its possession and the accounting for money or other property actually received by Secured Party hereunder, Secured Party shall have no duty as to the Partnership Interest or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to the Partnership Interest.

(d) <u>No Liability of Secured Party</u>. Neither the acceptance of this Agreement by Secured Party, nor the exercise of any rights hereunder by Secured Party, shall be construed in any way as an assumption by Secured Party of any obligations, responsibilities, or duties of Pledgor arising in connection with the Partnership Interest assigned hereunder or otherwise bind Secured Party to the performance of any obligations respecting the Partnership Interest, it being expressly understood that Secured Party shall not be obligated to perform, observe, or discharge any obligation, responsibility, duty, or liability of Pledgor in respect of the Partnership Interest,

**Prosperity000245**

**Trustee_Prosperity_000091**

including, but not limited to, appearing in or defending any action, expending any money, or incurring any expense in connection therewith.

(e)  Right to Defend Action Affecting Security. Secured Party may, at Pledgor's expense, appear in and defend any action or proceeding at law or in equity purporting to affect the security interest granted under this Agreement.

(f)  Right to Prevent or Remedy Default. At any time following an Event of Default, Secured Party:

(i)  may but shall not be obligated to take any action Secured Party deems necessary or desirable to prevent or remedy any such failure by Pledgor to protect the security interest granted under this Agreement, and

(ii)  shall have the absolute and immediate right to take possession of the Partnership Interest to such extent and as often as Secured Party, in its sole discretion, deems necessary or desirable in order to prevent or to cure any such default by the Pledgor, or otherwise advance or expend such sums of money for the account of the Pledgor as Secured Party in its sole discretion deems necessary for any such purpose.

(g)  Expenses. All advances, costs, expenses, charges, and attorneys' fees which Secured Party may take, pay, or incur under any provision of this Agreement for the protection of its security or for the enforcement of any of its rights hereunder, or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation in which Secured Party may become involved by reason of or arising out of the Loan Documents or the Partnership Interest, shall be a part of the Secured Obligation and shall, at Secured Party's election, bear interest until paid at the maximum rate of interest permitted by applicable law (or such lesser rate as may be chosen by Secured Party), from the date of such payment until repaid by the Pledgor.

(h)  Secured Party's Right of Set-Off. Upon the happening of any event entitling Secured Party to pursue any remedy provided herein, or if Secured Party shall be served with garnishment process in which the Pledgor shall be named as defendant, whether or not the Pledgor shall be in default hereunder at the time, Secured Party may, but shall not be required to, set-off any indebtedness owing by Secured Party to the Pledgor against any of the Secured Obligation without first resorting to the security hereunder and without prejudice to any other right or remedies of Secured Party or its security interest herein.

(i)  No Waiver. In case Secured Party shall have proceeded to enforce any right or remedy hereunder and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, Pledgor and Secured Party shall be restored to their former positions and rights hereunder with respect to the Partnership Interest, and all rights, remedies, and powers of Secured Party shall continue as if no such proceeding had been taken. No failure or delay on the part of Secured Party in exercising any right, remedy, or power under this Agreement or in giving or insisting upon strict performance by Pledgor hereunder or in giving notice

**Prosperity000246**

**Trustee_Prosperity_000092**

hereunder shall operate as a waiver of the same or any other power or right, and no single or partial exercise of any such power or right shall preclude any other or further exercise thereof or the exercise of any other such power or right. Secured Party, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Pledgor of any and all of the terms and provisions of this Agreement to be performed by Pledgor. The collection and application of proceeds, the entering and taking possession of the Partnership Interest, and the exercise of the rights of Secured Party contained in the Loan Documents, including the Agreement, shall not cure or waive any default, or affect any notice of default, or invalidate any acts done pursuant to such notice. No waiver by Secured Party of any breach or default of or by any party hereunder shall be deemed to alter or affect Secured Party's rights hereunder with respect to any prior or subsequent default.

(j)      Remedies Cumulative. No right or remedy reserved to Secured Party is intended to be exclusive of any right or remedy, but each and every such right or remedy shall be cumulative, not in lieu of, but in addition to any other rights or remedies given under this Agreement and all other Loan Documents. Any and all of Secured Party's rights and remedies may be exercised from time to time and as often as such exercise is deemed necessary or desirable by Secured Party.

(k)      Right of Secured Party to Extend Time of Payment, Substitute, Release Security, Etc. Without affecting the liability of any person for the payment of any of the Secured Obligation or the security interest of this Agreement on the Partnership Interest for the full amount of any Secured Obligation unpaid, Secured Party may, without notice or without affecting or impairing the security interest or rights of Secured Party granted or arising under this Agreement: (i) release any person liable for the payment of any of the Secured Obligation; (ii) extend the time or otherwise alter the terms of payment of any of the Secured Obligation; (iii) accept additional security for the Secured Obligation of any kind; (iv) alter, substitute, or release any property pledged as security for all or any portion of the Secured Obligation; or (v) join in any subordination or other agreement affecting this Agreement.

9.    **Miscellaneous.**

(a)      Definitions. In this Agreement, whenever the context so requires, the neuter gender includes the masculine and feminine, and the singular number includes the plural and vice versa. The terms "advances," "costs," and "expenses" shall include, but shall not be limited to, reasonable attorneys' fees whenever incurred. The terms "indebtedness," "obligations," and "Secured Obligation" shall mean and include, but shall not be limited to, all claims, demands, obligations, and liabilities whatsoever, however arising, whether owing by the subject person or entity individually or as a joint venturer, or jointly in common with any other party, and whether absolute or contingent, and whether owing by the subject person or entity as principal debtor or as accommodation maker or as endorser, liquidated or unliquidated, and whenever contracted, accrued or payable.

**Prosperity000247**

**Trustee_Prosperity_000093**

(b)     Paragraph Headings.   The headings of paragraphs herein are inserted only for convenience and shall in no way define, describe, or limit the scope or intent of any provisions or this Agreement.

(c)     Change, Amendment, Etc.   No change, amendment, modification, cancellation, or discharge of any provision of this Agreement shall be valid unless consented to in writing by Secured Party and Grantor.

(d)     Successors and Assigns.   As and when used herein, the term "Pledgor" shall mean and include the Pledgor, its successors and assigns, and the term "Secured Party" shall mean and include the Secured Party herein named and its successors and assigns, and all covenants and agreements herein shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns.

(e)     Applicable Laws.   **THIS AGREEMENT SHALL BE CONSTRUED, INTERPRETED AND IS ENFORCEABLE UNDER AND PURSUANT TO THE LAWS OF THE STATE OF TEXAS AND APPLICABLE FEDERAL LAW.   VENUE IN ANY PROCEEDING INVOLVING THIS AGREEMENT SHALL BE IN DALLAS COUNTY, TEXAS**.

(f)     Severability.   If any provision of this Agreement is held to be invalid or unenforceable, the validity or enforceability of the other provisions of this Agreement shall remain unaffected.

(g)     Notices.   All notices, demands, requests, or other communications to any party hereunder or referred to herein shall be in writing and shall be given to such party in the manner provided by the terms of the Loan Agreement.   Each such notice, demand, request, or other communication shall be effective in the manner provided by the terms of the Loan Agreement.

(h)     Counterparts.   This Agreement may be executed in counterpart, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.   In making proof of this Agreement it shall not be necessary to produce or account for more than one such counterpart.

(i)     Final Agreement.   **THIS DOCUMENT CONSTITUTES A WRITTEN AGREEMENT WHICH CONTAINS THE ENTIRE AGREEMENT OF THE PARTIES. THE RIGHTS AND OBLIGATIONS OF THE PARTIES SHALL BE DETERMINED SOLELY FROM THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS ENTERED PURSUANT HERETO, AND ANY PRIOR OR CONTEMPORANEOUS ORAL AGREEMENTS ARE SUPERSEDED BY AND MERGED INTO THIS AGREEMENT.   THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS CANNOT BE VARIED OR MODIFIED ORALLY AND CAN ONLY BE VARIED OR MODIFIED BY WRITTEN INSTRUMENT SIGNED BY ALL THE PARTIES.**

Prosperity000248

Trustee_Prosperity_000094

**PLEDGOR:**

John A. Goodman

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association

By: _____
Taylor Burns, Vice President

Prosperity000249

Trustee_Prosperity_000095

\* 3000002302%0230%08192017%  JAA6264\*

# COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,448,426.94 | 08-19-2017 | 04-30-2018 | 3000002302 | 9B1 / 18 | JAA6264 | 9059 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** John Andrew Goodman 2012 Family Trust
600 N Loop 1604 E
San Antonio, TX 78232

**Lender:** LegacyTexas Bank
Preston Center Branch
5949 Sherry Lane
Suite 600
Dallas, TX 75225

**Grantor:** John A. Goodman
600 N Loop 1604 E
San Antonio, TX 78232

THIS COMMERCIAL PLEDGE AGREEMENT dated August 19, 2017, is made and executed among John A. Goodman ("Grantor"); John Andrew Goodman 2012 Family Trust ("Borrower"); and LegacyTexas Bank ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means Grantor's present and future rights, title and interest in and to the following described investment property, together with any and all present and future additions thereto, substitutions therefor, and replacements thereof, and further together with all Income and Proceeds as described herein:

All of Pledgor's right, title and interest in (a) ownership interest in Goodman MBE Group LP., a Texas Partnership (the Partnership), including but not limited to Pledgor's Twenty percent (20%) limited partnership interest in the Partnership; (b) the Agreement of Limited Partnership of Goodman MBE Group LP dated March 7, 2017, as amended to date (the "Partnership Agreement"); (c) distributive share of profits, income distributions, surplus and cash proceeds of the Partnership; (d) distributive share of specific properties and assets of the Partnership upon dissolution or otherwise; (e) any and all other rights of every kind and character in and to the Partnership and under the Partnership Agreement; and (f) the proceeds and products from any of the foregoing. The Collateral shall not include any ownership interest in the common stock of Goodman Networks Incorporated.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

GRANTOR'S WAIVERS. Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. Grantor represents and warrants to Lender that:

Ownership. Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

Right to Pledge. Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

Authority; Binding Effect. Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

No Further Assignment. Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

Prosperity000206

Trustee_Prosperity_000096

## COMMERCIAL PLEDGE AGREEMENT
### (Continued)

<div align="right">Page 2</div>

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** Lender may hold the Collateral until all Indebtedness has been paid and satisfied. Thereafter Lender may deliver the Collateral to Grantor or to any other owner of the Collateral. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, or (3) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the Income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the Income and Proceeds, to pay and deliver to Lender all Income and Proceeds from the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation,

**Prosperity000207**

## COMMERCIAL PLEDGE AGREEMENT
### (Continued)

**Page 3**

Lender shall have no responsibility for  (A)  any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral,  (B)  preservation of rights against parties to the Collateral or against third persons,  (C)  ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or  (D)  informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1)  cures the default within ten (10) days; or (2)  if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Declare all Indebtedness immediately due and payable, without notice of any kind to Borrower or Grantor.

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales.  Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, and other persons as required by law, notice at least ten (10) days in advance of the time and place of any public sale, or of the time after which any private sale may be made.  However, no notice need be provided to any person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. Grantor agrees that any requirement of reasonable notice as to Grantor is satisfied if Lender mails notice by ordinary mail addressed to Grantor at the last address Grantor has given Lender in writing.  If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws.  If, because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered.  Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction.  Such a sale will be considered commercially reasonable.  If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral.  For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than

**Prosperity000208**

**Trustee_Prosperity_000098**

## COMMERCIAL PLEDGE AGREEMENT
### (Continued)

**Page 4**

one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, Lender's reasonable attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Borrower to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Grantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Texas.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Payment of Interest and Fees.** Notwithstanding any other provision of this Agreement or any provision of any Related Document, Grantor does not agree or intend to pay, and Lender does not agree or intend to charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for the Indebtedness which would in any way or event (including demand, prepayment, or acceleration) cause Lender to contract for, charge or collect more for the Indebtedness than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or

**Prosperity000209**

Trustee_Prosperity_000099

## COMMERCIAL PLEDGE AGREEMENT
### (Continued)

Page 5

unauthorized fee will, instead of anything stated to the contrary, be applied first to reduce the unpaid principal balance of the Indebtedness, and when the principal has been paid in full, be refunded to Grantor.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**ELECTRONIC SIGNATURES AND ELECTRONIC RECORDS.** Each party to this Security Agreement or Loan Agreement consents to the use of electronic and/or digital signatures by one, or all parties. This Security Agreement or Loan Agreement and any other documents requiring a signature hereunder, may be signed electronically or digitally in a manner specified solely by LegacyTexas Bank. The parties agree not to deny the legal effect or enforceability of this Security Agreement or Loan Agreement solely because (i) the Security Agreement or Loan Agreement is entirely in electronic or digital form, including any use of electronically or digitally generated signatures, (ii) an electronic or digital record was used in the formation of this Security Agreement or Loan Agreement or the Security Agreement or Loan Agreement was subsequently converted to an electronic or digital record by one, or both parties. The parties agree not to object to the admissibility of this Security Agreement or Loan Agreement in the form of an electronic or digital record, or a paper copy of an electronic or digital document, or a paper copy of a document bearing an electronic or digital signature, on the grounds that the record or signature is not in its original form or is not the original of the Security Agreement or Loan Agreement or the Security Agreement or Loan Agreement does not comply with Chapter 26 of the Texas Business and Commerce Code. .

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means John Andrew Goodman 2012 Family Trust and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means John A. Goodman.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, investment property, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means LegacyTexas Bank, its successors and assigns.

**Note.** The word "Note" means the Note dated August 19, 2017 and executed by Borrower in the principal amount of $2,448,426.94, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL PLEDGE AGREEMENT AND**

Prosperity000210

## COMMERCIAL PLEDGE AGREEMENT
### (Continued)

Page 6

AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED AUGUST 19, 2017.

**GRANTOR:**

X _____
John A. Goodman, Individually

**BORROWER:**

JOHN ANDREW GOODMAN 2012 FAMILY TRUST

By: _____
Wanda T. Goodman, Trustee  of  John  Andrew
Goodman 2012 Family Trust

LaserPro, Ver. 17.2.10.037  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved    TX  T:\HARLIN\OACFILPL\E60.FC  TR-26257  PR-7

Prosperity000211

Trustee_Prosperity_000101

**PROSPERITY BANK**                    **CERTIFICATION OF BENEFICIAL OWNER(S)**

**Persons opening an account on behalf of a legal entity must provide the following information:**

a) *Name and Title of Natural Person Opening Account:*

James E. Goodman, Jr. (CEO - Genesis Networks Enterprises, LLC.)

b) *Name and Physical Address of Legal Entity for Which the Account is Being Opened:*

GENESIS NETWORKS TELECOM SERVICES LLC (1354 N. Loop 1604 E., Suite 103, San Antonio, TX 78232)

☐ This entity is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c) & (d); sign/date page 1; complete page 2]*

☐ This entity is a Non-Profit or Non-Excluded Pooled Investment Vehicle and is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c); complete Section (d) & sign/date page 1]*

c) *The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:*

| % of Owner ship | Name | Date of Birth | SSN | Physical Address | DL # & State of Issuance, OR Passport # & Country of Issuance, OR Similar Identification # |
|---|---|---|---|---|---|
| 90 | First James E Goodman, Jr. <br> Last | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX <br> State & Zip 78242 | Number DL# <br> State or Country Texas of Issuance <br> Exp Date 6-18-2025 |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |

☑ No individual has ownership of 25% or more of the entity named in section (b) above.

d) *The following information for one individual with significant responsibility for managing the legal entity listed above, such as:*

☐ *Any executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer);* **or**

☐ *Any other individual who regularly performs similar functions.*

If appropriate, an individual listed under section (c) above may also be listed in this section (d).

| Name | Date of Birth | SSN | Address | DL # & State of Issuance, OR Passport # & Country of Issuance, OR Similar Identification # |
|---|---|---|---|---|
| First James <br> Last Goodman, Jr | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX 78242 <br> State & Zip | Number DL# <br> State or Country of Issuance <br> Exp Date Texas 6-18-2025 |

I, ___James Goodman___ *(PRINTED name of natural person opening account), hereby*
certify to the best of my knowledge, that the information provided on this document is complete and correct. Customer agrees to notify Prosperity Bank of any change in Beneficial Ownership as long as any deposit or loan account remains open with Prosperity Bank.

_____                                     July 7, 2020

Signature                                                       Date

---

**BANK USE ONLY**                                              (Revised 05/18/18)

ID Viewed By: ___U81TBurns___   Director App ID: _____

*CAUTION:* Pages 1 & 2 must be
uploaded to Director even if page 2 is blank!!   Page 1 of 2

**Prosperity000049**

Trustee_Prosperity_000102

*CAUTION: Pages 1 & 2 must be uploaded to Director even if page 2 is blank!*

*Name of Legal Entity for Which the Account is Being Opened [as shown on page 1, section (b)]:*

## A Certification of Beneficial Owners is not required because the entity described on page 1, section (b) is:

☐ Not a Legal Entity as defined in the rule;

☐ A financial institution regulated by a Federal functional regulator;

☐ bank regulated by a State bank regulator;

☐ A Phase I Exempt Entity (specify)
  ☐ A Government entity;
  ☐ A Publicly traded company;
  ☐ A Subsidiary of a publicly traded company

☐ An exempt entity registered with the Securities and Exchange Commission (SEC);

☐ An exempt entity that is registered with the Commodity Futures Trading Commission;

☐ A public accounting firm registered under the Sarbanes-Oxley Act ;

☐ A bank or savings and loan holding company;

☐ A pooled investment vehicle that is operated or advised by a financial institution;

☐ An insurance company that is regulated by a State;

☐ A financial market utility designated by the Financial Stability Oversight Council;

☐ A foreign financial institution established in a jurisdiction where the regulator of such institution maintains beneficial ownership information regarding such institution;

☐ A non-U.S. governmental department , agency or political subdivision;

☐ Another type of legal entity only to the extent that it opens:

  ☐ A private banking account subject to 31 CFR §1010.620;

  ☐ An account opened for participating in an employee benefit plan established under ERISA.

**Re-certification of the information on this form may be provided below for subsequent new loans, renewals, or modifications.**
*By signature and date below, the Borrower's representative certifies, or the loan officer confirms that the Borrower's representative has verbally certified, that the information on the form is complete and correct, and that there has not been any change in Beneficial Ownership.*

Borrower's Representative (certified in person, or verbally to loan officer)   Date_____  APP ID_____

(Printed Name of Borrower's Representative)    (Printed Name of Loan Officer)

(Signature of Borrower's Representative, if certified in person)    (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)   Date_____  APP ID_____

(Printed Name of Borrower's Representative)    (Printed Name of Loan Officer)

(Signature of Borrower's Representative)    (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)   Date_____  APP ID_____

(Printed Name of Borrower's Representative)    (Printed Name of Loan Officer)

(Signature of Borrower's Representative)    (Signature of Loan Officer

*Upload to Director Document Type: LNA – Beneficial Ownership Form*    Page 2 of 2

Prosperity000050

Trustee_Prosperity_000103

# PROSPERITY BANK®

## CERTIFICATION OF BENEFICIAL OWNER(S)

**Persons opening an account on behalf of a legal entity must provide the following information:**

a) *Name and Title of Natural Person Opening Account:*

James E. Goodman, Jr. (CEO - Genesis Networks Enterprises, LLC.)

b) *Name and Physical Address of Legal Entity for Which the Account is Being Opened:*

GENESIS NETWORKS GLOBAL SERVICES, LLC (354 N. Loop 1604 E., Suite 103, San Antonio, TX 78232)

☐ This entity is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c) & (d); sign/date page 1; complete page 2]*

☐ This entity is a Non-Profit or Non-Excluded Pooled Investment Vehicle and is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c); complete Section (d) & sign/date page 1]*

c) *The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:*

| % of Owner ship | Name | Date of Birth | SSN | Physical Address | DL# & State of Issuance, OR Passport # & Country of Issuance; OR Similar Identification # |
|---|---|---|---|---|---|
| 90 | First James E Goodman, Jr. <br> Last | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX <br> State & Zip 78242 | Number DL# <br> State or Country of Issuance Texas <br> Exp Date 6-18-2025 |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |

☑ No individual has ownership of 25% or more of the entity named in section (b) above.

d) *The following information for one individual with significant responsibility for managing the legal entity listed above, such as:*

☐ *Any executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer);* **or**

☐ *Any other individual who regularly performs similar functions.*

If appropriate, an individual listed under section (c) above may also be listed in this section (d).

| Name | Date of Birth | SSN | Address | DL # & State of Issuance, OR Passport # & Country of Issuance, OR Similar Identification # |
|---|---|---|---|---|
| First James <br> Last Goodman, Jr | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX 78242 <br> State & Zip | Number DL# <br> State or Country of Issuance Texas <br> Exp Date 6-18-2025 |

I, James Goodman _____ *(PRINTED name of natural person opening account)*, hereby certify to the best of my knowledge, that the information provided on this document is complete and correct. Customer agrees to notify Prosperity Bank of any change in Beneficial Ownership as long as any deposit or loan account remains open with Prosperity Bank.

_____                    July 7, 2020
Signature                                                                           Date

---

**BANK USE ONLY**                                                                        (Revised 05/18/18)

ID Viewed By: U81TBurns         Director App ID:_____

*CAUTION:* Pages 1 & 2 must be uploaded to Director even if page 2 is blank!!   Page 1 of 2

Prosperity000051

*CAUTION: Pages 1 & 2 must be uploaded to Director even if page 2 is blank!*

*Name of Legal Entity for Which the Account is Being Opened [as shown on page 1, section (b)]:*

## A Certification of Beneficial Owners is not required because the entity described on page 1, section (b) is:

| | |
|---|---|
| ☐ Not a Legal Entity as defined in the rule; | ☐ A pooled investment vehicle that is operated or advised by a financial institution; |
| ☐ A financial institution regulated by a Federal functional regulator; | ☐ An insurance company that is regulated by a State; |
| ☐ bank regulated by a State bank regulator; | ☐ A financial market utility designated by the Financial Stability Oversight Council; |
| ☐ A Phase I Exempt Entity (specify)<br>  ☐ A Government entity;<br>  ☐ A Publicly traded company;<br>  ☐ A Subsidiary of a publicly traded company | ☐ A foreign financial institution established in a jurisdiction where the regulator of such institution maintains beneficial ownership information regarding such institution; |
| ☐ An exempt entity registered with the Securities and Exchange Commission (SEC); | ☐ A non-U.S. governmental department , agency or political subdivision; |
| ☐ An exempt entity that is registered with the Commodity Futures Trading Commission; | ☐ Another type of legal entity only to the extent that it opens: |
| ☐ A public accounting firm registered under the Sarbanes-Oxley Act ; | ☐ A private banking account subject to 31 CFR §1010.620: |
| ☐ A bank or savings and loan holding company; | ☐ An account opened for participating in an employee benefit plan established under ERISA. |

**Re-certification of the information on this form may be provided below for subsequent new loans, renewals, or modifications.**
*By signature and date below, the Borrower's representative certifies, or the loan officer confirms that the Borrower's representative has verbally certified, that the information on the form is complete and correct, and that there has not been any change in Beneficial Ownership.*

Borrower's Representative (certified in person, or verbally to loan officer)     Date_____ APP ID_____

_____     _____
(Printed Name of Borrower's Representative)     (Printed Name of Loan Officer)

_____     _____
(Signature of Borrower's Representative, if certified in person)     (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)     Date_____ APP ID_____

_____     _____
(Printed Name of Borrower's Representative)     (Printed Name of Loan Officer)

_____     _____
(Signature of Borrower's Representative)     (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)     Date_____ APP ID_____

_____     _____
(Printed Name of Borrower's Representative)     (Printed Name of Loan Officer)

_____     _____
(Signature of Borrower's Representative)     (Signature of Loan Officer

*Upload to Director Document Type:* LNA – Beneficial Ownership Form

Prosperity000052

Trustee_Prosperity_000105

*2541000000000001087915000000000010252021*

# CORPORATE RESOLUTION TO GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 10-25-2021 | 12-03-2021 | 1087915 | 104 | | TB3 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Genesis Networks Telecom Services, LLC
Genesis Networks Global Services, LLC
1354 N Loop 1604, Ste. 103
San Antonio, TX 78232

**Lender:** PROSPERITY BANK
PLANO OPERATIONS
P O Box 869105
Plano, TX 75086-9105

**Corporation:** Goodman Networks Incorporated
2801 Network Blvd, Suite 300
Frisco, TX 75034

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**THE CORPORATION'S EXISTENCE.** The complete and correct name of the Corporation is Goodman Networks Incorporated ("Corporation"). The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Texas. The Corporation is duly authorized to transact business in all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 2801 Network Blvd, Suite 300, Frisco, TX 75034. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records. The Corporation will notify Lender prior to any change in the location of the Corporation's state of organization or any change in the Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and the Corporation's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on **October 25, 2021**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**BENEFIT TO THE CORPORATION.** The granting of the loan or other financial accommodations described below from Lender to Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC will be beneficial to the Corporation, and accordingly is willing to grant collateral to secure the indebtedness of Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC to Lender as provided below.

**OFFICER.** The following named person is an officer of Goodman Networks Incorporated:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| **James E. Goodman, Jr.** | **Chief Executive Officer** | **Y** | X [signature] |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all of the Corporation's real property and all of the Corporation's personal property (tangible or intangible), as security for the payment of any loans, any promissory notes, or any other or further indebtedness of Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered. The provisions of this Resolution authorizing or relating to the pledge, mortgage, transfer, endorsement, hypothecation, granting of a security interest in, or in any way encumbering, the assets of the Corporation shall include, without limitation, doing so in order to lend collateral security for the indebtedness, now or hereafter existing, and of any nature whatsoever, of Genesis Networks Telecom Services, LLC; and Genesis Networks Global Services, LLC to Lender. The Corporation has considered the value to itself of lending collateral in support of such indebtedness, and the Corporation represents to Lender that the Corporation is benefited by doing so.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Further Acts.** To do and perform such other acts and things and to execute and deliver such other documents and agreements as the officer may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: **None.**

**MULTIPLE BORROWERS.** The Corporation may enter into transactions in which there are multiple borrowers on obligations to Lender and the Corporation understands and agrees that, with or without notice to the Corporation, Lender may discharge or release any party or collateral securing an obligation, grant any extension of time for payment, delay enforcing any rights granted to Lender, or take any other action or inaction, without the loss to Lender of any of it rights against the Corporation; and that Lender may modify transactions without the consent of or notice to anyone other than the party with whom the modification is made.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officer named above is duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to Lender and receipt acknowledged by Lender in writing at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.**

**I have read all the provisions of this Resolution, and I personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Corporate Resolution to Grant Collateral is dated October 25, 2021.**

**CORPORATE RESOLUTION TO GRANT COLLATERAL**

Loan No: 1087915                                         **(Continued)**                                         Page **2**

CERTIFIED TO AND ATTESTED BY:

X _____

Corporate    Secretary    of    Goodman    Networks
Incorporated

NOTE: If the officer signing this Resolution is designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LaserPro, Ver. 21.2.0.026 Copr. Finastra USA Corporation 1997, 2021 All Rights Reserved. - KE O:\CFI\LPL\C40.FC TR-135801 PR-11

Prosperity000122

Trustee_Prosperity_000107

## GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED,** that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his

Prosperity000064

Trustee_Prosperity_000108

execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**:  Effective July 3, 2020.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____

James E. Goodman, Jr.,
Chief Executive Officer

Prosperity000065

Trustee_Prosperity_000109

Form **W-9**
(Rev. November 2017)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

GENESIS NETWORKS TELECOM SERVICES LLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ **P**

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

1354 N Loop 1604 E, Suite 103

**6** City, state, and ZIP code

San Antonio TX 78232-1268

Requester's name and address (optional)

**7** List account number(s) here (optional)

Print or type.
See **Specific Instructions** on page 3.

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

or

**Employer identification number**

| 3 | 5 | – | 2 | 3 | 7 | 8 | 8 | 8 | 2 |

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** | Signature of U.S. person ▶ *Sean Nilsa* | Date ▶ 7/7/2020

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 11-2017)

Prosperity000046

Trustee_Prosperity_000110

| Form **W-9**<br>(Rev. November 2017)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification**<br>▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | **Give Form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**GENESIS NETWORKS GLOBAL SERVICES LLC**

2 Business name/disregarded entity name, if different from above

**See Specific Instructions on page 3.**    **Print or type.**

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☑ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ **P**

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.) See instructions.

**1354 N Loop 1604 E, Suite 103**

6 City, state, and ZIP code

**San Antonio TX 78232-1268**

Requester's name and address (optional)

7 List account number(s) here (optional)

---

**Part I    Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

| | | – | | | – | | | | |
|---|---|---|---|---|---|---|---|---|---|

or

Employer identification number

| 2 | 7 | – | 4 | 2 | 3 | 4 | 5 | 0 | 6 |
|---|---|---|---|---|---|---|---|---|---|

---

**Part II    Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| **Sign<br>Here** | Signature of<br>U.S. person ▶  *Sean Nelson* | Date ▶  7/7/2020 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 11-2017)

Prosperity000047

Trustee_Prosperity_000111

| Form **W-9** | **Request for Taxpayer** | Give Form to the |
|---|---|---|
| (Rev. November 2017) | **Identification Number and Certification** | requester. Do not |
| Department of the Treasury<br>Internal Revenue Service | ▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**JAMES E GOODMAN**

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☑ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

**103 TOMAHAWK TRAIL**

**6** City, state, and ZIP code

**SAN ANTONIO TX 78242**

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type.*
*See Specific Instructions on page 3.*

---

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

**or**

**Employer identification number**

---

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign Here | Signature of U.S. person ▶ | Date ▶ 7 / 7 / 2020 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X

Form **W-9** (Rev. 11-2017)

Prosperity000048

Trustee_Prosperity_000112

## PROMISSORY NOTE

**$1,948,427.94**                 **Dallas, Texas**                 **August 31, 2020**

    **FOR VALUE RECEIVED**, the undersigned, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Maker") hereby unconditionally, jointly and severally, promise to pay to the order of **PROSPERITY BANK,** a Texas banking association (the "Lender"), at 5949 Sherry Lane, Suite 600, Dallas, Texas 75225, the principal sum of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), with interest on the principal balance from time to time remaining unpaid prior to the Maturity Date (as hereinafter defined), accruing at a rate of interest equal to the lesser of (a) the highest lawful non-usurious interest rate that at any time, or from time to time, may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by this Note under the laws of the United States or the State of Texas which are presently or hereafter in effect (the "Maximum Rate"); or (b) the greater of (i) three and one-half percent (3.50%) per annum and (ii) one-quarter of one percent (0.25%) per annum in excess of the Base Rate (as hereinafter defined), adjusted daily.

    The term "Base Rate" means the annual rate of interest identified as the "prime rate" in the Money Rates Column published in *The Wall Street Journal* and defined therein as the prime rate on corporate loans at large United States money center commercial banks. If *The Wall Street Journal* shall cease publishing such rate, then the Lender may refer to another similar source that identifies the prime rate on corporate loans at large United States money center commercial banks. The Base Rate shall change automatically from time to time hereafter based upon changes in the prime rate; provided that if at any time the Base Rate exceeds the Maximum Rate, the rate of interest which this Note bears shall be limited to the Maximum Rate, but any subsequent reductions in the base commercial lending rate as defined above, shall not reduce the rate of interest which this Note bears below the Maximum Rate until the total amount of interest accrued on this Note equals the total amount of interest which would have otherwise accrued hereunder if the Base Rate had at all times during the term of this Note been in effect. Regardless of the terms that may be used from time to time to describe the Base Rate, such interest rate does not necessarily mean the lowest interest rate charged by the Lender to its borrowers.

    Principal and interest shall be amortized over a period of seven (7) years, and shall be payable in monthly installments in the initial amount of $26,231.25 each, with the first installment due on September 30, 2020, and a like installment due on the last day of each month thereafter until August 31, 2027, when all unpaid principal, together with accrued but unpaid interest, shall be due and payable in full (the "Maturity Date"). Lender shall have the right to periodically adjust the amount of the monthly installments of principal and interest due under

**Prosperity000168**

**Trustee_Prosperity_000113**

this Note based upon changes in the Base Rate of interest payable hereunder in order to fully amortize this Loan over a period of seven (7) years.

All payments shall be made at the Lender's offices in Dallas, Texas. All payments hereon shall be applied first to accrued interest, then to principal and the balance to the late fee. Computations of interest on the unpaid principal amount of this Note from time to time outstanding, at the rates provided in this Note, shall be made on the basis of the actual number of days elapsed. To the extent permitted by applicable law, such interest shall be computed as if each year consisted of 360 days.

The Note is governed by the terms of the Loan Agreement of even date herewith between the Maker and the Lender. The Note is secured by that certain Security Agreement of even date herewith from Maker for the benefit of Lender, granting the Lender a security interest in all business assets of the Maker (the "Collateral"), from Borrower in favor of Lender. The obligations of the Maker under this Note have been personally guaranteed by James E. Goodman, Jr. (the "Guarantor") pursuant to the terms of that certain Guaranty Agreement of even date herewith. The obligations of the Guarantor under the Guaranty Agreement shall be secured by that certain Pledge and Security Agreement of even date herewith (the "Pledge Agreement") from the Guarantor in favor of the Lender.

In the event any installment of interest remains unpaid for ten (10) or more days past the due date thereof as provided above, Maker shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable late payment equal to five percent (5%) of the amount of such installment, but in no event less than $15.00, which amount is stipulated by Maker to be reasonable in order to compensate Lender for its additional costs incurred as a result of having to attend to such delinquency. This late charge should be paid only once, but promptly, as to each respective late payment. It is further agreed that the imposition of any such late payment fee shall in no way prejudice or limit Lender's rights or remedies against Borrower under this Note or any of the instruments executed in connection with or securing the repayment of the Note (the "Security Instruments").

In the event any check used to make a payment to Lender is dishonored for any reason, Maker shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable processing fee of $30.00 (or the maximum amount provided from time to time in Section 3.506(b) of the Texas Business and Commerce Code as amended). This processing fee should be paid once with respect to each dishonor of a check. It is further agreed that the imposition of any such processing fee shall in no way prejudice or limit Lender's rights or remedies against Maker under this Note or any of the Security Instruments or any other instrument.

At the option of the Lender, the entire principal balance and accrued interest owing hereon shall at once become due and payable without notice or demand upon the occurrence at any time of any of the Events of Default described in Section 6.1 of the Loan Agreement.

**PROMISSORY NOTE** - Page 2
J:\TJC\23041\065\$1,948,427\prom.note.docx

Prosperity000169

Trustee_Prosperity_000114

The failure to exercise the option to accelerate the maturity of this Note upon the happening of any one or more of the events of default hereunder shall not constitute a waiver of the right of the Lender to exercise the same or any other option at the time or at any subsequent time with respect to such uncured default or any other event of default hereunder or under any Security Instruments securing the loan evidenced by this Note. Except as otherwise provided herein the remedies of the Lender, as provided in this Note, and in any Security Instruments securing the loan evidenced by this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as the occasion therefor shall arise, at the sole discretion of the Lender. The acceptance by the Lender of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any remedy of the Lender or the rights of the Lender to exercise the foregoing option or any other option granted to the Lender in this Note or under any Security Instruments securing the loan evidenced hereby, at that time, or at any subsequent time, or nullify any prior exercise of any such option, or (ii) impair, reduce, release, extinguish or adversely effect the obligations of any party liable under such documents as originally provided therein. The proceeds of this Note are to be used for business, commercial, investment or other similar purposes and no portion thereof will be used for personal, family or household use.

All past due installments of principal and, if permitted by applicable law, all past due installments of interest, shall bear interest at the Maximum Rate, or, if no such Maximum Rate is established by applicable law, then at a rate equal to five percent (5%) in excess of the interest rate applicable to such time period as set forth in the first paragraph of this Note. During the existence of any default hereunder or under any instrument securing or evidencing the loan evidenced hereby, the entire unpaid principal balance shall bear interest at the Maximum Rate, if no such Maximum Rate is established by applicable law, then at a rate equal to five percent (5%) in excess of the interest rate applicable to such time period as set forth in the first paragraph of this Note.

The Maker and all other parties now or hereafter liable for the payment hereof, whether as endorser, guarantor, surety or otherwise, severally waive demand, presentment, notice of dishonor, diligence in collecting, grace, notice (except as otherwise expressly provided herein), protest, notice of intent to accelerate the maturity as herein provided, and consent to all renewals and extensions which from time to time may be granted by the Lender and to all partial payments hereon, whether before or after maturity.

If this Note is not paid when due, whether at maturity or by acceleration, or if it is collected through a bankruptcy, probate or other court, whether before or after maturity, the Maker agrees to pay reasonable attorney's fees together with all actual expenses of litigation and costs of court, incurred by the Lender.

All agreements between the Maker and the Lender are hereby expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid, to the Lender for the use, forbearance or detention of the money to be loaned hereunder exceed the maximum amount

**Prosperity000170**

Trustee_Prosperity_000115

permissible under applicable law. In the event that the maturity of this Note should be accelerated for any reason then earned interest may never include more than the maximum amount permitted under applicable law and any unearned interest in excess of the maximum amount permitted under applicable law shall be canceled automatically and, if theretofore paid, shall be refunded to the Maker or credited to the principal amount owing on this Note. If, from any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provision shall be due shall involve transcending the limit of the validity prescribed by applicable law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the Lender should ever receive as interest an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest or if such excessive interest exceeds the unpaid balance of principal, the excess shall be refunded to the Maker. All sums contracted for, charged or received hereunder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the rate of interest on account of such indebtedness is uniform throughout the term hereof. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Maker and Lender in the event of a conflict in such provisions.

This Note shall be governed by, and construed in accordance with, the laws of the State of Texas and the United States of America to the extent, and only to the extent, that the laws of the United States of America permit a greater rate of interest to be contracted for, received, charged, reserved or taken than would otherwise be permitted under the laws of the State of Texas.

Any notice or communication required or permitted hereunder to be given to the Maker pursuant to the terms hereof shall be given in writing, sent in the manner provided by the Loan Agreement, addressed to the Maker at the address set forth in the Loan Agreement, or to such other address as the Maker shall have designated by written notice, sent in accordance with the Loan Agreement. Any such notice or communication shall be deemed to have been given and received in the manner provided by the Loan Agreement. By giving at least ten (10) days written notice thereof, Maker or Lender shall have the right from time to time and at any time during the term of this Note to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

If any payment of principal or interest on this Note shall become due, or if the date of performance of any act to be performed on a designated date by Maker, Lender or any subsequent Lender, falls on a Saturday, Sunday or public holiday under the Laws of the State of Texas, or on any other day on which national or state banking associations are authorized or obligated by law to close in the City of Dallas or State of Texas, such payment may be made or act performed on the next succeeding business day, and such extension of time shall, in the case of payments, be included in computing interest in connection with such payment and, in the case

PROMISSORY NOTE - Page 4
J:\TJC\23041\065\$1,948,427\prom.note.docx

Prosperity000171

Trustee_Prosperity_000116

of any act to be performed, extend all other time deadlines dependent on the designated date which is extended.

Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Maker. Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Maker's accounts.

If Maker transfers all or any portion of the Property without Lender's prior written consent, Lender may declare the Note immediately payable. In that event, Lender shall notify Maker that the Note is due and payable; and, if it is not paid within thirty (30) days after notice to Maker, Lender may without further notice or demand to Maker invoke any remedies provided in the Security Instruments. Exceptions to this provision for declaring the Note due on sale or transfer are limited to the following: (a) creation of a lien or encumbrance subordinate to the Deed of Trust; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent or operation of law on the death of a joint tenant; and (d) grant of a leasehold interest of three (3) years or less without an option to purchase.

In addition to securing the indebtedness evidenced by the Note, the Property and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Maker to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed  to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Property, it being contemplated that Maker may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

As further security for this Note, Maker grants to Lender a first lien and contractual right of set-off in and to all money and property of Maker now or at any time hereafter coming within the custody or control of the Lender, including (without limitation) all certificates of deposit and other accounts, whether such certificates of deposit and/or accounts have matured or not, and whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the certificate of deposit or account agreement. It is further agreed that the Lender shall have a first lien on all deposit and other sums at any time credited by or due from the Lender to Maker or any guarantor, as security for the payment of this Note, and Lender, at its option and

**Prosperity000172**

**Trustee_Prosperity_000117**

after acceleration of the maturity of this Note (however said maturity may be brought about) may without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing on this Note have been paid in full, and/or Lender may apply or set-off all or any part of any such deposits or other sums credited by or due from Lender to or against any sums due on this Note in any manner and in any order of preference which the Lender, in its sole discretion, chooses.

**MAKER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer
Founder

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**PROMISSORY NOTE** - Page 6
J:\TJC\23041\065\$1,948,427\prom.note.docx

Prosperity000173

Trustee_Prosperity_000118

## GUARANTY AGREEMENT

**WHEREAS, GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), are or may become indebted to **PROSPERITY BANK,** a Texas banking association (the "Lender");

**THEREFORE,** for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned (the "Guarantor") hereby guarantees to the Lender the prompt and full payment of the Guaranteed Indebtedness (hereinafter defined), as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, and at all times thereafter, this Guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness", as used herein, includes: (a) all sums now or hereafter due and owing pursuant to the terms of (i) that certain Promissory Note dated to be effective August 31, 2020 (the "Note") executed by the Borrower payable to the order of the Lender in the principal sum of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94); or, (ii) any other instruments which secure payment of the Note or; (b) interest on any of the indebtedness described in (a) preceding; (c) any and all costs, reasonable attorneys' fees, and expenses suffered by the Lender by reason of Borrower's default in payment of any of the foregoing indebtedness; (d) all obligations of the Borrower under that certain Loan Agreement of even date herewith between the Borrower and the Lender; and, (e) any renewal, extension or rearrangement of the indebtedness, costs, or expenses described in (a) through (c) preceding, or any part thereof.

2. This instrument shall be an absolute and continuing guaranty, until payment in full of the Guaranteed Indebtedness.

3. If the Guarantor becomes liable for any indebtedness owing by Borrower to the Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of the Lender shall be cumulative of any and all other rights that the Lender may ever have against the Guarantor. The exercise by the Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. If, for any reason whatsoever, the Borrower is now, or hereafter becomes, indebted to the Guarantor, such indebtedness and all interest thereon shall, at all times, be subordinate in all respects to the Guaranteed Indebtedness, and the Guarantor shall not be entitled to enforce or receive payment thereof until the Guaranteed Indebtedness has been fully paid. Notwithstanding anything to the contrary contained in this Guaranty or any payments made by any party hereunder, the Guarantor shall not have any right of subrogation in or under the documents securing payment of the Guaranteed Indebtedness or this Guaranty or to participate in any way therein, or in any right, title or interest in and to any mortgaged property or any collateral for the

GUARANTY AGREEMENT  - Page 1
J:\TJC\23041\065\$1,948,427\guaranty.agr.docx

**Prosperity000198**

Trustee_Prosperity_000119

Guaranteed Indebtedness or this Guaranty, all such rights of subrogation and participation being hereby expressly waived and released, until the Guaranteed Indebtedness has been fully paid. Upon payment in full of the Guaranteed Indebtedness, the Lender shall return to the Guarantor the original copy of this Guaranty, and the Guarantor shall be released from any further liability to the Lender for any obligations related to the Guaranteed Indebtedness.

4. In the event of default by Borrower in payment of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due, either by its terms or as the result of the exercise of any power to accelerate, the Guarantor shall, (subject to any applicable cure period), on demand and without further notice of nonpayment or of dishonor, without any notice having been given to the Guarantor previous to such demand of the acceptance by the Lender of this Guaranty, and without any notice having been given to the Guarantor previous to such demand of the creating or incurring of such indebtedness, pay the amount due thereon to the Lender, and it shall not be necessary for the Lender, in order to enforce such payment by the Guarantor, first to institute suit or exhaust its remedies against the Borrower or others liable on such indebtedness, or to enforce its rights against any security which shall ever have been given to secure such indebtedness. Suit may be brought, or demand may be made against all parties who have signed this Guaranty, or against any one or more of them, separately or together, without impairing the rights of the Lender against any other party hereto.

5. Guarantor hereby agrees that the Guarantor's obligations under the terms of this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination, or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the insolvency, bankruptcy, disability, dissolution, termination, receivership, reorganization or lack of corporate, partnership or other power of the Borrower, the Guarantor, or any party at any time liable for the payment of any or all of the Guaranteed Indebtedness, whether now existing or hereafter occurring; (d) renewal, extension, modification or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of the Guarantor, or any adjustment, indulgence, forbearance, or compromise that may be granted or given by the Lender to the Borrower or the Guarantor; (e) any neglect, delay, omission, failure, or refusal of the Lender to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or to foreclose or take or prosecute any action to foreclose upon any security therefor or to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Indebtedness; (f) any failure of the Lender to notify the Guarantor of any renewal, extension, rearrangement, modification or assignment of the Guaranteed Indebtedness or any part thereof, or of any instrument evidencing or securing the Guaranteed Indebtedness or any part thereof, or of the release of or change in any security or of any other action taken or refrained from being taken by the Lender against the Borrower or of any new agreement between the Lender and Borrower, it being understood that the Lender shall not be required to give the Guarantor any notice of any kind under any circumstances with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability of all or any part of the Guaranteed Indebtedness against

GUARANTY AGREEMENT - Page 2
J:\TJC\23041\065\$1,948,427\guaranty.agr.docx

Prosperity000199

Trustee_Prosperity_000120

the Borrower, whether because the Guaranteed Indebtedness exceeds the amount permitted by law, the act of creating the Guaranteed Indebtedness, or any part thereof, is ultra vires, the officers or persons creating same acted in excess of their authority, or otherwise, it being agreed that the Guarantor shall remain liable hereon regardless of whether the Borrower or any other person be found not liable on the Guaranteed Indebtedness, or any part thereof, for any reason; or any payment by the Borrower to the Lender is held to constitute a preference under the bankruptcy laws or if for any other reason the Lender is required to refund such payment or pay the amount thereof to someone else. It is the intent of the Guarantor and the Lender that the obligations and liabilities of the Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Indebtedness is fully and finally paid, such obligations and liabilities shall not be discharged or released, in whole or in part, by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor.

6. This Guaranty is for the benefit of the Lender and the Lender's successors and assigns, and in the event of an assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty is binding not only on the Guarantor, but on the Guarantor's successors and assigns, and, if this Guaranty is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the undersigned, and their respective heirs, personal representatives, successors and assigns. This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of the Guarantor hereunder are performable in Dallas County, Texas at the place where the Guaranteed Indebtedness is payable. If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Guaranty nor the application of such provisions to any other person or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law. Guarantor hereby agrees with the Lender that all rights, remedies and recourses afforded to the Lender by reason of this Guaranty or otherwise are separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefor shall arise, and are non-exclusive and shall in no way limit or prejudice any other legal or equitable right, remedy or recourse which the Lender may have. Guarantor shall pay the reasonable attorney's fees and all other costs and expenses which may be incurred by the Lender in the enforcement of this Guaranty.

7. It is not the intention of the Lender or the Guarantor to obligate the Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law. Should it be determined that any portion of the Guaranteed Indebtedness constitutes interest in excess of the maximum amount of interest which the Guarantor (in such capacity) may lawfully be required to pay under applicable law, the obligation of the Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

GUARANTY AGREEMENT - Page 3
J:\TJC\23041\065\$1,948,427\guaranty.agr.docx

Prosperity000200

Trustee_Prosperity_000121

8. Guarantor represents that the Guarantor shall receive a direct and material benefit from the proceeds of the Guaranteed Indebtedness.

**EXECUTED** effective as of August 31, 2020.

James E. Goodman, Jr.

GUARANTY AGREEMENT - Page 4
J:\TJC\23041\065\$1,948,427\guaranty.agr.docx

Prosperity000201

Trustee_Prosperity_000122

## THIRD LOAN MODIFICATION AGREEMENT

**THIS THIRD LOAN MODIFICATION AGREEMENT** (the "Agreement") is made and entered into effective as of January 3, 2022 (the "Effective Date"), by and between **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), and **PROSPERITY BANK**, a Texas banking association (the "Lender").

## R E C I T A L S

**WHEREAS**, on July 3, 2020, the Lender made a loan (the "Loan") to the Borrower in the original principal amount of $3,000,000.00;

**WHEREAS**, the Borrower executed and delivered to the Lender that certain Promissory Note dated July 3, 2020 (the "Note"), payable to the order of the Lender in the amount of and evidencing the Loan;

**WHEREAS**, the Loan is governed by the terms of a Loan Agreement dated July 3, 2020, between the Borrower and the Lender;

**WHEREAS**, the Note is secured by (a) that certain Security Agreement dated July 3, 2020 from the Borrower for the benefit of the Lender, granting the Lender a security interest in all of the Borrower's Accounts (as defined in the Loan Agreement); and Borrower's inventory, equipment, trade fixtures, chattel paper and general intangibles (the "Collateral"); and (b) that certain Assignment of Deposit Account dated October 25, 2021 (the "Assignment") from Goodman Networks Incorporated (the "Grantor") for the benefit of the Lender, granting the Lender a security interest in that certain demand deposit account ("DDA") held by the Lender (Account No. 70173992);

**WHEREAS**, the Lender and Borrower have previously modified the terms of the Note pursuant to the terms of that certain Loan Modification Agreement dated to be effective July 3, 2021; that certain Second Loan Modification Agreement dated to be effective October 3, 2021; and that certain Change in Terms Agreement dated to be effective October 25, 2021 (the "Modification Agreements"); and

**WHEREAS**, the Lender and Borrower now propose to further modify the Note, as more particularly described herein (the Loan Agreement, the Security Agreement, the Assignment and any other document executed in connection with or securing the repayment of the Note are hereinafter sometimes collectively referred to as the "Security Documents").

<u>THIRD LOAN MODIFICATION AGREEMENT</u> – Page 1
J:\TJC\23041\065\3rd Mod of $3,000,000\lma.docx

**Prosperity000128**

**Trustee_Prosperity_000123**

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender and the Borrower hereby agree as follows:

1.    Modifications.

    (a)    The Note is hereby modified as follows:

        (i)    **"FOR VALUE RECEIVED**, the undersigned, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Maker") hereby unconditionally, jointly and severally, promise to pay to the order of **PROSPERITY BANK,** a Texas banking association (the "Lender"), at 5949 Sherry Lane, Suite 600, Dallas, Texas  75225, the principal sum of Three Million and No/100 Dollars ($3,000,000.00), or so much that may be advanced hereunder, with interest on the principal balance from time to time remaining unpaid prior to the Maturity Date (as hereinafter defined), accruing at a rate of interest equal to the lesser of (a) the highest lawful non-usurious interest rate that at any time, or from time to time, may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by this Note under the laws of the United States or the State of Texas which are presently or hereafter in effect (the "Maximum Rate"); or (b) one-quarter of one percent (0.25%) per annum less than the Base Rate (as hereinafter defined), adjusted daily."

        (ii)    "The term "Base Rate" means the annual rate of interest identified as the "prime rate" in the Money Rates Column published in *The Wall Street Journal* and defined therein as the prime rate on corporate loans at large United States money center commercial banks.  If *The Wall Street Journal* shall cease publishing such rate, then the Lender may refer to another similar source that identifies the prime rate on corporate loans at large United States money center commercial banks.  The Base Rate shall change automatically from time to time hereafter based upon changes in the prime rate; provided that if at any time the Base Rate exceeds the Maximum Rate, the rate of interest which this Note bears shall be limited to the Maximum Rate, but any subsequent reductions in the base commercial

Prosperity000129

Trustee_Prosperity_000124

lending rate as defined above, shall not reduce the rate of interest which this Note bears below the Maximum Rate until the total amount of interest accrued on this Note equals the total amount of interest which would have otherwise accrued hereunder if the Base Rate had at all times during the term of this Note been in effect. Regardless of the terms that may be used from time to time to describe the Base Rate, such interest rate does not necessarily mean the lowest interest rate charged by the Lender to its borrowers."

(iii)  "Interest only shall be due and payable monthly, commencing on February 3, 2022, and continuing on the same day of each month thereafter until December 3, 2023. All unpaid principal, together with accrued but unpaid interest shall be due and payable in full on January 3, 2024 (the "Maturity Date"). Lender shall have the right to periodically adjust the amount of the monthly installments of interest due under this Note based upon changes in the Base Rate of interest payable hereunder."

(iv)  "The Note is secured by (a) that certain Security Agreement dated July 3, 2020 from the Maker for the benefit of the Lender, granting the Lender a security interest in all of the Maker's Accounts (as defined in the Loan Agreement), and Maker's inventory, equipment, trade fixtures, chattel paper and general intangibles (the "Collateral"); and (b) that certain Assignment of Deposit Account dated October 25, 2021 from Goodman Networks Incorporated (the "Grantor") for the benefit of the Lender, granting the Lender a security interest in that certain demand deposit account (the "DDA") held by the Lender (Account No. 70173992). The obligations of the Maker under this Note have been personally guaranteed by James E. Goodman, Jr. (the "Guarantor") pursuant to the terms of that certain Guaranty Agreement of even date herewith."

(b)  The Loan Agreement is hereby modified as follows:

(i)  Section 1.9.1 is hereby added to the Loan Agreement as follows:

"1.9.1  **DDA**. The term "DDA" shall mean that certain demand deposit account of the Borrower held by the

THIRD LOAN MODIFICATION AGREEMENT – Page 3
J:\TJC\23041\065\3rd Mod of $3,000,000\lma.docx

**Prosperity000130**

**Trustee_Prosperity_000125**

Lender (Account No. 70173992) and subject to the terms of the DDA Agreement.

(ii)   Section 1.9.2 is hereby added to the Loan Agreement as follows:

"1.9.2 **DDA Agreement**. The term "DDA Agreement" shall mean that certain Assignment of Deposit Account dated October 25, 2021 from Grantor for the benefit of the Lender, granting the Lender a security interest in the DDA."

(iii)   Section 1.14.1 is hereby added to the Loan Agreement as follows:

"1.14.1   **Grantor**.   The term "Grantor" shall mean Goodman Networks Incorporated, a Texas corporation."

(iv)   Section 1.24 of the Loan Agreement is hereby amended in its entirety as follows:

"1.24   **Security Instruments**.   The term "Security Instruments" shall mean this Agreement, the Security Agreement, the DDA Agreement, the Note, the Guaranty Agreement, and such other instruments evidencing, securing or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower or any other party to Lender pursuant to this Agreement."

(v)   The fifth sentence of Section 2.1 of the Loan Agreement is modified in its entirety as follows:

"2.1 **The Loan**. The obligations of the Borrower under the Loan are secured by the Security Agreement from Borrower in favor of Lender, granting the Lender a security interest in the Collateral and the DDA Agreement from Grantor in favor of Lender, granting the Lender a security interest in the DDA."

(vi)   The first sentence of Section 3.9 of the Loan Agreement is hereby amended in its entirety as follows:

"3.9 **Existence**. Each Borrower and the Grantor are duly organized and validly existing under the laws of the State

**Prosperity000131**

**Trustee_Prosperity_000126**

of Texas and have all requisite power and authority to execute and deliver the Security Instruments."

(vii)   Section 1.5 (Borrowing Base), Section 1.6 (Borrowing Base and Compliance Certificate), Section 1.10 (Debt Service Coverage Ratio), Section 1.11 (Eligible Accounts), Section 1.12 (Financial Statements), Section 1.16 (Ineligible Accounts), Section 1.17 (Intercreditor Agreement), Section 1.19 (Maximum Loan Amount), Section 1.20 (Net Operating Income), Section 1.22 (Receivables Lender), Section 1.25 (Tangible Net Worth), Section 2.6 (Mandatory Principal Reductions), Section 4.10 (Financial Statements), Section 5.6 (Financial Covenants) and Exhibit "A" and "B" are hereby deleted in their entirety.

2.   **Acknowledgment by the Borrower.**  Except as otherwise specified herein, the terms and provisions of this Agreement shall in no manner impair, limit, restrict or otherwise affect the obligations of the Borrower under the Security Documents. As a material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges and agrees that the security interests created and evidenced by the Security Documents are valid and subsisting security interests encumbering the Collateral.  As a further material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions and the obligations created or evidenced by the Security Documents.

3.   **Controlling Agreement.**  All agreements between the Borrower and the Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid to the Lender for the use, forbearance or detention of the money loaned or to be loaned pursuant to the Note or otherwise, or for the performance or payment of any covenant or obligation contained herein or in the Security Documents, exceed the Maximum Rate.  If for any circumstances whatsoever fulfillment of any provision hereof or of any other document evidencing, securing or pertaining to the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if from any such circumstance the Lender shall ever receive as interest under the Security Documents or otherwise an amount which would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Note and not to the payment of interest; or if such excessive interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to the Borrower. All sums paid or agreed to

THIRD LOAN MODIFICATION AGREEMENT – Page 5
J:\TJC\23041\065\3rd Mod of $3,000,000\lma.docx

Prosperity000132

Trustee_Prosperity_000127

be paid to Lender for the use, forbearance or detention of the indebtedness evidenced by the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness is uniform throughout the terms thereof.

4.    Additional Documentation.  From time to time, the Borrower shall execute or procure and deliver to Lender such other further documents and instruments evidencing, securing or pertaining to the Note and the Security Documents as shall be reasonably requested by Lender so as to evidence or affect the terms and provisions hereof.

5.    Effectiveness of Security Documents.  Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Note and Security Documents are and shall remain in full force and effect.

6.    Notices  Any notices, consents or other communications required or permitted to be given pursuant to this Agreement or the Security Documents must be in writing and shall be deemed served and given in the manner required by the terms of the Loan Agreement. Notice given in any other manner shall be effective only if and when received by the addressee. Any party may provide written notice of a substitute address pursuant to written notice delivered to the other parties in accordance with the terms of the Loan Agreement;  provided, however, that no such notice of change of address shall be effective unless and until actually received by the party to whom such notice is sent.

7.    Governing Law.  The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the laws of the United States applicable to transactions within the State of Texas.  This Agreement is performable in Dallas County, Texas. Time is of the essence in the performance of the covenants contained herein and in the Security Documents.

8.    Entire Agreement.    This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein, and all prior or contemporaneous agreements, understandings, representations and statements (whether oral or written) are merged into this Agreement.  Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

9.    Right of Offset.  Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money

Prosperity000133

Trustee_Prosperity_000128

found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Borrower.  Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Borrower's accounts.

10.   Due on Death. Borrower covenants and agrees that upon the death of any signatory, maker, co-maker or guarantor of the Note, the Lender may, at its option, accelerate the entire balance due on the Note, whereupon all amounts due and owing shall immediately be due and payable.

11.   Cross Collateral. In addition to securing the indebtedness evidenced by the Note, the Collateral and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Borrower to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed  to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Collateral, it being contemplated that Borrower may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

12.   Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender, and their respective successors and assigns.

Prosperity000134

Trustee_Prosperity_000129

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
  a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
        its Manager


by: _____
      James E. Goodman, Jr., Chief Executive Officer


**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
  a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
        its Manager


by: _____
      James E. Goodman, Jr., Chief Executive Officer


**GRANTOR:**

**GOODMAN NETWORKS INCORPORATED,**
a Texas corporation


By: _____
      James E. Goodman, Jr., President


<ins>**THIRD LOAN MODIFICATION AGREEMENT**</ins> – Page 8
J:\TJC\23041\065\3rd Mod of $3,000,000\lma.docx

**Prosperity000135**

**Trustee_Prosperity_000130**

**LENDER:**

**PROSPERITY BANK**

By: _____

Bater Bates, Managing Director

Prosperity000136

Trustee_Prosperity_000131

## ACKNOWLEDGMENT OF GUARANTOR

**WHEREAS, GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (collectively, the "Borrower") are indebted to **PROSPERITY BANK** (the "Lender");

**WHEREAS,** the undersigned (the "Guarantor") executed and delivered to the Lender his absolute and continuing guarantee pursuant to the terms of that certain Guaranty Agreement dated to be effective July 3, 2020, whereby the Guarantor agreed to guarantee certain indebtedness of the Borrower to Lender, including that certain promissory note dated July 3, 2020 (the "Note"), executed by the Borrower and payable to the order of Lender in the original principal sum of $3,000,000.00; the Note being governed by the terms of a Loan Agreement dated July 3, 2020 from the Borrower in favor of the Lender (the Note, Loan Agreement, and any other documents executed in connection therewith are hereinafter sometimes collectively referred to as the "Loan Documents");

**WHEREAS,** the Borrower and Lender have entered into that certain Third Loan Modification Agreement of even date herewith (the "Agreement"), whereby the Borrower and Lender have agreed to modify certain terms of the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the undersigned, the undersigned hereby acknowledge and agree as follows:

1. Guarantor hereby acknowledges and consents to the execution and delivery of the Agreement.

2. Guarantor hereby agrees that the indebtedness described in the Agreement shall continue to be included within the indebtedness covered by the terms of the Guaranty Agreement.

3. Notwithstanding the execution and delivery of the Agreement by the Borrower and the Lender, all terms and provisions of the Guaranty Agreement shall be and shall remain unchanged except as set forth herein, and the Guaranty Agreement are hereby ratified and confirmed and shall be and shall remain in full force and effect, enforceable in accordance with its terms. Nothing contained herein or in the Agreement shall operate to release or affect the liabilities, obligations and agreements of Guarantor under or on account of the Guaranty Agreement.

4. This acknowledgment is binding not only on the Guarantor, but on the Guarantor's heirs, successors and personal representatives, and if this instrument is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the

**ACKNOWLEDGMENT OF GUARANTOR** – Page 1
J:\TJC\23041\065\3rd Mod of $3,000,000\guarantor.ack.docx

Prosperity000137

Trustee_Prosperity_000132

undersigned and its respective heirs, successors and personal representatives. This acknowledgment shall be governed by and construed in accordance with the laws of the State of Texas and is intended to be performed in accordance with, and only to the extent permitted by such laws.

5.   It is not the intention of the Lender or the Guarantor to obligate Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law.  Should it be determined that any portion of the indebtedness of the Borrower constitutes interest in excess of the maximum amount of interest which the Guarantor may lawfully be required to pay under applicable law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

6.   Guarantor represents that they shall receive a direct and material benefit from the modification of the terms of the Loan Documents pursuant to the Agreement.

**EXECUTED** to be effective as of January 3, 2022.

**GUARANTOR:**

James E. Goodman, Jr.

**Prosperity000138**

**Trustee_Prosperity_000133**

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are modifying that certain Loan (herein so called) from **PROSPERITY BANK** ("Lender") to the Borrower, the Loan being evidenced by that certain Promissory Note dated July 3, 2020, in the original principal amount of $3,000,000.00 (the "Note"). The Loan is governed by that certain Loan Agreement dated July 3, 2020 between the Borrower and the Lender, and secured by (a) that certain Security Agreement dated July 3, 2020 between the Borrower and the Lender, granting the Lender a security interest in all of the business assets of the Borrower; and (b) that certain Assignment of Deposit Account dated October 25, 2021 (the "Assignment") covering certain accounts receivable of Goodman Networks Incorporated (the "Grantor"). The modification of the Loan is evidenced by that certain Third Loan Modification Agreement dated to be effective January 3, 2022 (the "Modification Agreement") between the Borrower and the Lender. The obligations of the Borrower were personally guaranteed by James E. Goodman, Jr. (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated July 3, 2020. As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan: the Note, the Guaranty Agreement, the Loan Agreement, Security Agreement, the Assignment, the Modification Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1. No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2. The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3. The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE

Prosperity000139

Trustee_Prosperity_000134

CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE
UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER
THE DATE OF THIS NOTICE AND AGREEMENT. THERE ARE NO
UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED
PARTIES.

**DATED** to be effective January 3, 2022.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
      its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
      its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

### GRANTOR:

**GOODMAN NETWORKS INCORPORATED,**
a Texas corporation

By: _____
James E. Goodman, Jr., President

NOTICE AND AGREEMENT – Page 2
J:\TJC\23041\065\3rd Mod of $3,000,000\not&agr.docx

**Prosperity000140**

**Trustee_Prosperity_000135**

**GUARANTOR:**

James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK**

By: _____

Bater Bates, Managing Director

NOTICE AND AGREEMENT – Page 3
J:\TJC\23041\065\3rd Mod of $3,000,000\not&agr.docx

Prosperity000141

Trustee_Prosperity_000136

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF THE SOLE DIRECTOR
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole director of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

**WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by the terms of that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, (a) that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower; and (b) that certain Assignment of Deposit Account dated October 25, 2021 covering certain accounts receivable of Goodman Networks Incorporated (the "Grantor") (collectively, the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Third Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed, by the director of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**Prosperity000142**

**Trustee_Prosperity_000137**

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective January 3, 2022.

James E. Goodman, Jr., Director

Prosperity000143

Trustee_Prosperity_000138

## GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

      Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

      **WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, (a) that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower; and (b) that certain Assignment of Deposit Account dated October 25, 2021 covering certain accounts receivable of Goodman Networks Incorporated (the "Grantor") (collectively, the "Collateral"); and

      **WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Third Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

      **NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

      **FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with

Prosperity000144

Trustee_Prosperity_000139

such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective January 3, 2022.

                            **MANAGER:**

                            **GENESIS NETWORKS ENTERPRISES, LLC,**
                            a Texas limited liability company

                            By: _____
                                James E. Goodman, Jr., Chief Executive Officer

Prosperity000145

Trustee_Prosperity_000140

## GENESIS NETWORKS TELECOM SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, (a) that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower; and (b) that certain Assignment of Deposit Account dated October 25, 2021 covering certain accounts receivable of Goodman Networks Incorporated (the "Grantor") (collectively, the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Third Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with

Prosperity000146

Trustee_Prosperity_000141

such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective January 3, 2022.

> **MANAGER:**
>
> **GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company
>
> By: _____
>      James E. Goodman, Jr., Chief Executive Officer

**Prosperity000147**

**Trustee_Prosperity_000142**

DATE:               **JANUARY 3, 2022**

BORROWER:    **GENESIS NETWORKS TELECOM SERVICES, LLC and
                          GENESIS NETWORKS GLOBAL SERVICES, LLC**

LENDER:           **PROSPERITY BANK**

LOAN:               **THIRD MODIFICATION OF $3,000,000.00 LOAN**

## ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

The parties agree that they shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, the parties agree that if any document relating to the Loan does not accurately reflect the terms of the Loan, the parties shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Each party agrees to do so regardless of whether the inaccuracy arises from a mistake by the other party, a mistake by both Borrower and Lender, or a clerical error made by any party. Each party agrees to act upon a request from the other party to sign or initial any corrected document or replacement document within a reasonable period of time.

Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
       a Texas limited liability company,
          its Manager

by: _____
        James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
       a Texas limited liability company,
          its Manager

by: _____
        James E. Goodman, Jr., Chief Executive Officer

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page 1
J:\TJC\23041\065\3rd Mod of $3,000,000\errors.omissions.docx

Prosperity000148

Trustee_Prosperity_000143

**LENDER:**

**PROSPERITY BANK**

By: _____

Bater Bates, Managing Director

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page 2
J:\TJC\23041\065\3rd Mod of $3,000,000\errors.omissions.docx

Prosperity000149

Trustee_Prosperity_000144

DATE:          **JANUARY 3, 2022**

BORROWER:      **GENESIS NETWORKS TELECOM SERVICES, LLC and
               GENESIS NETWORKS GLOBAL SERVICES, LLC**

LENDER:        **PROSPERITY BANK**

LOAN:          **THIRD MODIFICATION OF $3,000,000.00 LOAN**

### ATTORNEY REPRESENTATION LETTER

Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C. As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C. The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith. The undersigned has been and is hereby advised to obtain counsel of its own choice to represent them in this transaction.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

ATTORNEY REPRESENTATION LETTER – Page Solo
J:\TJC\23041\065\3rd Mod of $3,000,000\atty.rep.ltr.docx

Prosperity000150

Trustee_Prosperity_000145

## ACKNOWLEDGMENT OF GUARANTOR

**WHEREAS**, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are indebted to **PROSPERITY BANK** (the "Lender");

**WHEREAS**, the undersigned (the "Guarantor") executed and delivered to the Lender his absolute and continuing guarantee pursuant to the terms of that certain Guaranty Agreement dated to be effective August 31, 2020, whereby the Guarantor agreed to guarantee certain indebtedness of the Borrower to Lender, including that certain promissory note dated August 31, 2020 (the "Note"), executed by the Borrower and payable to the order of Lender in the original principal sum of $1,948,427.94; the Note being governed by the terms of a Loan Agreement dated August 31, 2020 from the Borrower in favor of the Lender, and secured by a security interest created by the terms of a Security Agreement dated August 31, 2020 between the Borrower and the Lender covering certain business assets of the Borrower as more particularly described therein (the Note, Loan Agreement, Security Agreement and any other documents executed in connection therewith are hereinafter sometimes collectively referred to as the "Loan Documents");

**WHEREAS,** the Borrower and Lender have entered into that certain Loan Modification Agreement of even date herewith (the "Agreement"), whereby the Borrower and Lender have agreed to modify certain terms of the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the undersigned, the undersigned hereby acknowledge and agree as follows:

1.  Guarantor hereby acknowledges and consents to the execution and delivery of the Agreement.

2.  Guarantor hereby agrees that the indebtedness described in the Agreement shall continue to be included within the indebtedness covered by the terms of the Guaranty Agreement.

3.  Notwithstanding the execution and delivery of the Agreement by the Borrower and the Lender, all terms and provisions of the Guaranty Agreement shall be and shall remain unchanged except as set forth herein, and the Guaranty Agreement are hereby ratified and confirmed and shall be and shall remain in full force and effect, enforceable in accordance with its terms. Nothing contained herein or in the Agreement shall operate to release or affect the liabilities, obligations and agreements of Guarantor under or on account of the Guaranty Agreement.

**ACKNOWLEDGMENT OF GUARANTOR** - Page 1
J:\TJC\23041\065\Modification ($1,948,427)\guarantor.ack.docx

**Prosperity000236**

**Trustee_Prosperity_000146**

4. This acknowledgment is binding not only on the Guarantor, but on the Guarantor's heirs, successors and personal representatives, and if this instrument is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the undersigned and its respective heirs, successors and personal representatives. This acknowledgment shall be governed by and construed in accordance with the laws of the State of Texas and is intended to be performed in accordance with, and only to the extent permitted by such laws.

5. It is not the intention of the Lender or the Guarantor to obligate Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law. Should it be determined that any portion of the indebtedness of the Borrower constitutes interest in excess of the maximum amount of interest which the Guarantor may lawfully be required to pay under applicable law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

6. Guarantor represents that they shall receive a direct and material benefit from the modification of the terms of the Loan Documents pursuant to the Agreement.

**EXECUTED** to be effective as of January 8, 2021.

**GUARANTOR:**

James E. Goodman, Jr.

ACKNOWLEDGMENT OF GUARANTOR - Page 2
J:\TJC\23041\065\Modification ($1,948,427)\guarantor.ack.docx

Prosperity000237

Trustee_Prosperity_000147

# PROMISSORY NOTE

**$3,000,000.00**                       **Dallas, Texas**                       **July 3, 2020**

    **FOR VALUE RECEIVED**, the undersigned, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Maker") hereby unconditionally, jointly and severally, promise to pay to the order of **PROSPERITY BANK**, a Texas banking association (the "Lender"), at 5949 Sherry Lane, Suite 600, Dallas, Texas 75225, the principal sum of Three Million and No/100 Dollars ($3,000,000.00), or so much that may be advanced hereunder, with interest on the principal balance from time to time remaining unpaid prior to the Maturity Date (as hereinafter defined), accruing at a rate of interest equal to the lesser of (a) the highest lawful non-usurious interest rate that at any time, or from time to time, may be contracted for, taken, reserved, charged or received on the indebtedness evidenced by this Note under the laws of the United States or the State of Texas which are presently or hereafter in effect (the "Maximum Rate"); or (b) the greater of (i) three and one-quarter percent (3.25%) per annum and (ii) one-quarter of one percent (0.25%) per annum in excess of the Base Rate (as hereinafter defined), adjusted daily.

    The term "Base Rate" means the annual rate of interest identified as the "prime rate" in the Money Rates Column published in *The Wall Street Journal* and defined therein as the prime rate on corporate loans at large United States money center commercial banks. If *The Wall Street Journal* shall cease publishing such rate, then the Lender may refer to another similar source that identifies the prime rate on corporate loans at large United States money center commercial banks. The Base Rate shall change automatically from time to time hereafter based upon changes in the prime rate; provided that if at any time the Base Rate exceeds the Maximum Rate, the rate of interest which this Note bears shall be limited to the Maximum Rate, but any subsequent reductions in the base commercial lending rate as defined above, shall not reduce the rate of interest which this Note bears below the Maximum Rate until the total amount of interest accrued on this Note equals the total amount of interest which would have otherwise accrued hereunder if the Base Rate had at all times during the term of this Note been in effect. Regardless of the terms that may be used from time to time to describe the Base Rate, such interest rate does not necessarily mean the lowest interest rate charged by the Lender to its borrowers.

    Interest only shall be due and payable monthly, commencing on August 3, 2020, and continuing on the same day of each month thereafter until June 3, 2021. All unpaid principal, together with accrued but unpaid interest shall be due and payable in full on July 3, 2021 (the "Maturity Date"). Lender shall have the right to periodically adjust the amount of the monthly installments of interest due under this Note based upon changes in the Base Rate of interest payable hereunder.

Prosperity000023

Trustee_Prosperity_000148

All payments shall be made at the Lender's offices in Dallas, Texas. All payments hereon shall be applied first to accrued interest, then to principal and the balance to the late fee. Computations of interest on the unpaid principal amount of this Note from time to time outstanding, at the rates provided in this Note, shall be made on the basis of the actual number of days elapsed. To the extent permitted by applicable law, such interest shall be computed as if each year consisted of 360 days.

This Note is a revolving line of credit governed by the terms of a Loan Agreement of even date herewith between the Maker and the Lender. Maker may periodically borrow and repay the unpaid principal and accrued interest due hereunder at any time up to the Maximum Loan Amount (as defined in the Loan Agreement); provided, however, that Maker is not in default under the terms and conditions of this Note, the Loan Agreement, or any other obligation of Maker to Lender. Lender shall have no liability for its refusal to advance funds based upon its determination that any condition of such advance has not been met.

The Note is secured by that certain Security Agreement of even date herewith from Maker for the benefit of Lender, granting the Lender a security interest in all accounts receivable of the Maker (the "Collateral"). The obligations of the Maker under this Note have been personally guaranteed by James E. Goodman, Jr. (the "Guarantor") pursuant to the terms of that certain Guaranty Agreement of even date herewith.

In the event any installment of interest remains unpaid for ten (10) or more days past the due date thereof as provided above, Maker shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable late payment equal to five percent (5%) of the amount of such installment, but in no event less than $15.00, which amount is stipulated by Maker to be reasonable in order to compensate Lender for its additional costs incurred as a result of having to attend to such delinquency. This late charge should be paid only once, but promptly, as to each respective late payment. It is further agreed that the imposition of any such late payment fee shall in no way prejudice or limit Lender's rights or remedies against Borrower under this Note or any of the instruments executed in connection with or securing the repayment of the Note (the "Security Instruments").

In the event any check used to make a payment to Lender is dishonored for any reason, Maker shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable processing fee of $30.00 (or the maximum amount provided from time to time in Section 3.506(b) of the Texas Business and Commerce Code as amended). This processing fee should be paid once with respect to each dishonor of a check. It is further agreed that the imposition of any such processing fee shall in no way prejudice or limit Lender's rights or remedies against Maker under this Note or any of the Security Instruments or any other instrument.

At the option of the Lender, the entire principal balance and accrued interest owing hereon shall at once become due and payable without notice or demand upon the occurrence at any time of any of the Events of Default described in Section 6.1 of the Loan Agreement.

PROMISSORY NOTE - Page 2
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\prom.note.docx

Prosperity000024

Trustee_Prosperity_000149

The failure to exercise the option to accelerate the maturity of this Note upon the happening of any one or more of the events of default hereunder shall not constitute a waiver of the right of the Lender to exercise the same or any other option at the time or at any subsequent time with respect to such uncured default or any other event of default hereunder or under any Security Instruments securing the loan evidenced by this Note. Except as otherwise provided herein the remedies of the Lender, as provided in this Note, and in any Security Instruments securing the loan evidenced by this Note, shall be cumulative and concurrent and may be pursued separately, successively or together as often as the occasion therefor shall arise, at the sole discretion of the Lender. The acceptance by the Lender of any payment under this Note which is less than the payment in full of all amounts due and payable at the time of such payment shall not (i) constitute a waiver of or impair, reduce, release or extinguish any remedy of the Lender or the rights of the Lender to exercise the foregoing option or any other option granted to the Lender in this Note or under any Security Instruments securing the loan evidenced hereby, at that time, or at any subsequent time, or nullify any prior exercise of any such option, or (ii) impair, reduce, release, extinguish or adversely effect the obligations of any party liable under such documents as originally provided therein. The proceeds of this Note are to be used for business, commercial, investment or other similar purposes and no portion thereof will be used for personal, family or household use.

All past due installments of principal and, if permitted by applicable law, all past due installments of interest, shall bear interest at the Maximum Rate, or, if no such Maximum Rate is established by applicable law, then at a rate equal to five percent (5%) in excess of the interest rate applicable to such time period as set forth in the first paragraph of this Note. During the existence of any default hereunder or under any instrument securing or evidencing the loan evidenced hereby, the entire unpaid principal balance shall bear interest at the Maximum Rate, if no such Maximum Rate is established by applicable law, then at a rate equal to five percent (5%) in excess of the interest rate applicable to such time period as set forth in the first paragraph of this Note.

The Maker and all other parties now or hereafter liable for the payment hereof, whether as endorser, guarantor, surety or otherwise, severally waive demand, presentment, notice of dishonor, diligence in collecting, grace, notice (except as otherwise expressly provided herein), protest, notice of intent to accelerate the maturity as herein provided, and consent to all renewals and extensions which from time to time may be granted by the Lender and to all partial payments hereon, whether before or after maturity.

If this Note is not paid when due, whether at maturity or by acceleration, or if it is collected through a bankruptcy, probate or other court, whether before or after maturity, the Maker agrees to pay reasonable attorney's fees together with all actual expenses of litigation and costs of court, incurred by the Lender.

All agreements between the Maker and the Lender are hereby expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid, to the Lender for the use,

PROMISSORY NOTE - Page 3
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\prom.note.docx

Prosperity000025

Trustee_Prosperity_000150

forbearance or detention of the money to be loaned hereunder exceed the maximum amount permissible under applicable law. In the event that the maturity of this Note should be accelerated for any reason then earned interest may never include more than the maximum amount permitted under applicable law and any unearned interest in excess of the maximum amount permitted under applicable law shall be canceled automatically and, if theretofore paid, shall be refunded to the Maker or credited to the principal amount owing on this Note. If, from any circumstances whatsoever, fulfillment of any provision hereof at the time performance of such provision shall be due shall involve transcending the limit of the validity prescribed by applicable law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the Lender should ever receive as interest an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder and not to the payment of interest or if such excessive interest exceeds the unpaid balance of principal, the excess shall be refunded to the Maker. All sums contracted for, charged or received hereunder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the rate of interest on account of such indebtedness is uniform throughout the term hereof. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Maker and Lender in the event of a conflict in such provisions.

This Note shall be governed by, and construed in accordance with, the laws of the State of Texas and the United States of America to the extent, and only to the extent, that the laws of the United States of America permit a greater rate of interest to be contracted for, received, charged, reserved or taken than would otherwise be permitted under the laws of the State of Texas.

Any notice or communication required or permitted hereunder to be given to the Maker pursuant to the terms hereof shall be given in writing, sent in the manner provided by the Loan Agreement, addressed to the Maker at the address set forth in the Loan Agreement, or to such other address as the Maker shall have designated by written notice, sent in accordance with the Loan Agreement. Any such notice or communication shall be deemed to have been given and received in the manner provided by the Loan Agreement. By giving at least ten (10) days written notice thereof, Maker or Lender shall have the right from time to time and at any time during the term of this Note to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

If any payment of principal or interest on this Note shall become due, or if the date of performance of any act to be performed on a designated date by Maker, Lender or any subsequent Lender, falls on a Saturday, Sunday or public holiday under the Laws of the State of Texas, or on any other day on which national or state banking associations are authorized or obligated by law to close in the City of Dallas or State of Texas, such payment may be made or act performed on the next succeeding business day, and such extension of time shall, in the case of payments, be included in computing interest in connection with such payment and, in the case

**Prosperity000026**

**Trustee_Prosperity_000151**

of any act to be performed, extend all other time deadlines dependent on the designated date which is extended.

Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Maker. Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Maker's accounts.

If Maker transfers all or any portion of the Property without Lender's prior written consent, Lender may declare the Note immediately payable. In that event, Lender shall notify Maker that the Note is due and payable; and, if it is not paid within thirty (30) days after notice to Maker, Lender may without further notice or demand to Maker invoke any remedies provided in the Security Instruments. Exceptions to this provision for declaring the Note due on sale or transfer are limited to the following: (a) creation of a lien or encumbrance subordinate to the Security Agreement; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent or operation of law on the death of a joint tenant; and (d) grant of a leasehold interest of three (3) years or less without an option to purchase.

In addition to securing the indebtedness evidenced by the Note, the Property and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Maker to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed  to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Property, it being contemplated that Maker may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

As further security for this Note, Maker grants to Lender a first lien and contractual right of set-off in and to all money and property of Maker now or at any time hereafter coming within the custody or control of the Lender, including (without limitation) all certificates of deposit and other accounts, whether such certificates of deposit and/or accounts have matured or not, and whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the certificate of deposit or account agreement. It is further agreed that the Lender shall have a first lien on all deposit and other sums at any time credited by or due from the Lender to Maker or any guarantor, as security for the payment of this Note, and Lender, at its option and

**PROMISSORY NOTE** - Page 5
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\prom.note.docx

Prosperity000027

Trustee_Prosperity_000152

after acceleration of the maturity of this Note (however said maturity may be brought about) may without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing on this Note have been paid in full, and/or Lender may apply or set-off all or any part of any such deposits or other sums credited by or due from Lender to or against any sums due on this Note in any manner and in any order of preference which the Lender, in its sole discretion, chooses.

**MAKER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
   a Texas limited liability company,
    its Manager


by: _____
    James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
   a Texas limited liability company,
    its Manager


by: _____
    James E. Goodman, Jr., Chief Executive Officer

**Prosperity000028**

**Trustee_Prosperity_000153**

## LOAN MODIFICATION AGREEMENT

**THIS LOAN MODIFICATION AGREEMENT** (the "Agreement") is made and entered into effective as of July 3, 2021 (the "Effective Date"), by and between **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), and **PROSPERITY BANK** (the "Lender").

## R E C I T A L S

**WHEREAS**, on July 3, 2020, the Lender made a loan (the "Loan") to the Borrower in the original principal amount of $3,000,000.00;

**WHEREAS**, the Borrower executed and delivered to the Lender that certain Promissory Note dated July 3, 2020 (the "Note"), payable to the order of the Lender in the amount of and evidencing the Loan;

**WHEREAS,** the Loan is governed by the terms of a Loan Agreement dated July 3, 2020, between the Borrower and the Lender;

**WHEREAS**, the Note is secured by that certain Security Agreement of even date therewith from the Borrower for the benefit of the Lender, granting the Lender a security interest in all of the Borrower's Accounts and inventory, equipment, trade fixtures, chattel paper and general intangibles (the "Collateral"). The Loan Agreement, Security Agreement and any other document executed in connection with or securing the repayment of the Note are hereinafter sometimes collectively referred to as the "Security Documents"; and,

**WHEREAS**, the Lender and Borrower now propose to modify the Note, as more particularly described herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender and the Borrower hereby agree as follows:

1.    Modifications. The third paragraph of the Note is hereby amended in its entirety as follows:

"Interest only shall be due and payable monthly, commencing on August 3, 2021, and continuing on the same day of each month thereafter until September 3, 2021. All unpaid principal, together with accrued but unpaid interest shall be due and payable in full on October 3, 2021 (the "Maturity

**Prosperity000080**

**Trustee_Prosperity_000154**

Date"). Lender shall have the right to periodically adjust the amount of the monthly installments of interest due under this Note based upon changes in the Base Rate of interest payable hereunder."

2. **Acknowledgment by the Borrower.** Except as otherwise specified herein, the terms and provisions of this Agreement shall in no manner impair, limit, restrict or otherwise affect the obligations of the Borrower under the Security Documents. As a material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges and agrees that the security interests created and evidenced by the Security Documents are valid and subsisting security interests encumbering the Collateral. As a further material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions and the obligations created or evidenced by the Security Documents.

3. **Controlling Agreement.** All agreements between the Borrower and the Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid to the Lender for the use, forbearance or detention of the money loaned or to be loaned pursuant to the Note or otherwise, or for the performance or payment of any covenant or obligation contained herein or in the Security Documents, exceed the Maximum Rate. If for any circumstances whatsoever fulfillment of any provision hereof or of any other document evidencing, securing or pertaining to the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if from any such circumstance the Lender shall ever receive as interest under the Security Documents or otherwise an amount which would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Note and not to the payment of interest; or if such excessive interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to the Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced by the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness is uniform throughout the terms thereof.

4. **Additional Documentation.** From time to time, the Borrower shall execute or procure and deliver to Lender such other further documents and instruments evidencing, securing or pertaining to the Note and the Security Documents as shall be reasonably requested by Lender so as to evidence or affect the terms and provisions hereof.

**LOAN MODIFICATION AGREEMENT** – Page 2
J:\TJC\23041\065\Modification ($3,000,000)\lma.docx

Prosperity000081

Trustee_Prosperity_000155

5.   <u>Effectiveness of Security Documents</u>. Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Note and Security Documents are and shall remain in full force and effect.

6.   <u>Notices</u>  Any notices, consents or other communications required or permitted to be given pursuant to this Agreement or the Security Documents must be in writing and shall be deemed served and given in the manner required by the terms of the Loan Agreement.  Notice given in any other manner shall be effective only if and when received by the addressee.  Any party may provide written notice of a substitute address pursuant to written notice delivered to the other parties in accordance with the terms of the Loan Agreement;  provided, however, that no such notice of change of address shall be effective unless and until actually received by the party to whom such notice is sent.

7.   <u>Governing Law</u>.  The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the laws of the United States applicable to transactions within the State of Texas.  This Agreement is performable in Dallas County, Texas.  Time is of the essence in the performance of the covenants contained herein and in the Security Documents.

8.   <u>Entire Agreement</u>.   This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein, and all prior or contemporaneous agreements, understandings, representations and statements (whether oral or written) are merged into this Agreement.  Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

9.   <u>Right of Offset</u>.  Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Borrower.  Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Borrower's accounts.

10.  <u>Due on Death</u>. Borrower covenants and agrees that upon the death of any signatory, maker, co-maker or guarantor of the Note, the Lender may, at its option, accelerate the entire balance due on the Note, whereupon all amounts due and owing shall immediately be due and payable.

<u>**LOAN MODIFICATION AGREEMENT**</u> – Page 3
J:\TJC\23041\065\Modification ($3,000,000)\lma.docx

Prosperity000082

11.    Cross Collateral. In addition to securing the indebtedness evidenced by the Note, the Collateral and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Borrower to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed  to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Collateral, it being contemplated that Borrower may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

12.    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender, and their respective successors and assigns.

    **IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**LOAN MODIFICATION AGREEMENT** – Page 4
J:\TJC\23041\065\Modification ($3,000,000)\lma.docx

Prosperity000083

Trustee_Prosperity_000157

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager


by: _____
James E. Goodman, Jr., Chief Executive Officer

**LENDER:**

**PROSPERITY BANK**


By: _____
Taylor Burns, Vice President

Prosperity000084

Trustee_Prosperity_000158

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are modifying that certain Loan (herein so called) from **PROSPERITY BANK** ("Lender") to the Borrower, the Loan being evidenced by that certain Promissory Note dated July 3, 2020, in the original principal amount of $3,000,000.00 (the "Note"). The Loan is governed by that certain Loan Agreement dated July 3, 2020 between the Borrower and the Lender, and secured by that certain Security Agreement dated July 3, 2020 between the Borrower and the Lender, granting the Lender a security interest in all of the business assets of the Borrower. The modification of the Loan is evidenced by that certain Loan Modification Agreement dated to be effective July 3, 2021 (the "Modification Agreement") between the Borrower and the Lender. The obligations of the Borrower were personally guaranteed by James E. Goodman, Jr. (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated July 3, 2020. As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan: the Note, the Guaranty Agreement, the Loan Agreement, Security Agreement, the Modification Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1.  No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2.  The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3.  The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

    THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER THE DATE OF THIS NOTICE AND AGREEMENT. THERE ARE NO

**NOTICE AND AGREEMENT** – Page 1
J:\TJC\23041\065\Modification ($3,000,000)\not&agr.docx

Prosperity000085

Trustee_Prosperity_000159

UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED PARTIES.

**DATED** to be effective July 3, 2021.

> **BORROWER:**
>
> **GENESIS NETWORKS TELECOM SERVICES, LLC,**
> a Texas limited liability company
>   By:  Genesis Networks Enterprises, LLC,
>     a Texas limited liability company,
>       its Manager
>
> by: _____
>     James E. Goodman, Jr., Chief Executive Officer
>
> **GENESIS NETWORKS GLOBAL SERVICES, LLC,**
> a Texas limited liability company
>   By:  Genesis Networks Enterprises, LLC,
>     a Texas limited liability company,
>       its Manager
>
> by: _____
>     James E. Goodman, Jr., Chief Executive Officer
>
> **GUARANTOR:**
>
> _____
> James E. Goodman, Jr.
>
> **LENDER:**
>
> **PROSPERITY BANK**
>
> By: _____
>       Taylor Burns, Vice President

<u>**NOTICE AND AGREEMENT**</u> – Page 2
J:\TJC\23041\065\Modification ($3,000,000)\not&agr.docx

Prosperity000086

Trustee_Prosperity_000160

## ACKNOWLEDGMENT OF GUARANTOR

**WHEREAS, GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are indebted to **PROSPERITY BANK** (the "Lender");

**WHEREAS**, the undersigned (the "Guarantor") executed and delivered to the Lender his absolute and continuing guarantee pursuant to the terms of that certain Guaranty Agreement dated to be effective July 3, 2020, whereby the Guarantor agreed to guarantee certain indebtedness of the Borrower to Lender, including that certain promissory note dated July 3, 2020 (the "Note"), executed by the Borrower and payable to the order of Lender in the original principal sum of $3,000,000.00; the Note being governed by the terms of a Loan Agreement dated July 3, 2020 from the Borrower in favor of the Lender (the Note, Loan Agreement, and any other documents executed in connection therewith are hereinafter sometimes collectively referred to as the "Loan Documents");

**WHEREAS,** the Borrower and Lender have entered into that certain Loan Modification Agreement of even date herewith (the "Agreement"), whereby the Borrower and Lender have agreed to modify certain terms of the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the undersigned, the undersigned hereby acknowledge and agree as follows:

1.  Guarantor hereby acknowledges and consents to the execution and delivery of the Agreement.

2.  Guarantor hereby agrees that the indebtedness described in the Agreement shall continue to be included within the indebtedness covered by the terms of the Guaranty Agreement.

3.  Notwithstanding the execution and delivery of the Agreement by the Borrower and the Lender, all terms and provisions of the Guaranty Agreement shall be and shall remain unchanged except as set forth herein, and the Guaranty Agreement are hereby ratified and confirmed and shall be and shall remain in full force and effect, enforceable in accordance with its terms. Nothing contained herein or in the Agreement shall operate to release or affect the liabilities, obligations and agreements of Guarantor under or on account of the Guaranty Agreement.

4.  This acknowledgment is binding not only on the Guarantor, but on the Guarantor's heirs, successors and personal representatives, and if this instrument is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the

**ACKNOWLEDGMENT OF GUARANTOR** - Page 1
J:\TJC\23041\065\Modification ($3,000,000)\guarantor.ack.docx

**Prosperity000087**

**Trustee_Prosperity_000161**

undersigned and its respective heirs, successors and personal representatives. This acknowledgment shall be governed by and construed in accordance with the laws of the State of Texas and is intended to be performed in accordance with, and only to the extent permitted by such laws.

5.   It is not the intention of the Lender or the Guarantor to obligate Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law. Should it be determined that any portion of the indebtedness of the Borrower constitutes interest in excess of the maximum amount of interest which the Guarantor may lawfully be required to pay under applicable law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

6.   Guarantor represents that they shall receive a direct and material benefit from the modification of the terms of the Loan Documents pursuant to the Agreement.

**EXECUTED** to be effective as of July 3, 2021.

**GUARANTOR:**

James E. Goodman, Jr.

**Prosperity000088**

**Trustee_Prosperity_000162**

## GENESIS NETWORKS TELECOM SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any

Prosperity000089

Trustee_Prosperity_000163

such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective July 3, 2021.

> **MANAGER:**
>
> **GENESIS NETWORKS ENTERPRISES, LLC,**
> a Texas limited liability company
>
> By: _____
> James E. Goodman, Jr., Chief Executive Officer

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 2
J:\TJC\23041\065\Modification ($3,000,000)\consent.man (Telecom).docx

**Prosperity000090**

**Trustee_Prosperity_000164**

# GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any

**Prosperity000091**

**Trustee_Prosperity_000165**

such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective July 3, 2021.

> **MANAGER:**
>
> **GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company
>
> By: _____
> James E. Goodman, Jr., Chief Executive Officer

**Prosperity000092**

**Trustee_Prosperity_000166**

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF THE SOLE DIRECTOR
### IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole director of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

**WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by the terms of that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed, by the director of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to

**Prosperity000093**

**Trustee_Prosperity_000167**

consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective July 3, 2021.

James E. Goodman, Jr., Director

**Prosperity000094**

**Trustee_Prosperity_000168**

**DATE:**            **JULY 3, 2021**

**BORROWER:**     **GENESIS NETWORKS TELECOM SERVICES, LLC and
                   GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**        **PROSPERITY BANK**

**LOAN:**          **MODIFICATION OF $3,000,000.00 LOAN**

### ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

The parties agree that they shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, the parties agree that if any document relating to the Loan does not accurately reflect the terms of the Loan, the parties shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Each party agrees to do so regardless of whether the inaccuracy arises from a mistake by the other party, a mistake by both Borrower and Lender, or a clerical error made by any party. Each party agrees to act upon a request from the other party to sign or initial any corrected document or replacement document within a reasonable period of time.

Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT** – Page 1
J:\TJC\23041\065\Modification ($3,000,000)\errors.omissions.docx

Prosperity000095

Trustee_Prosperity_000169

**LENDER:**

**PROSPERITY BANK**

By: _____

Taylor Burns, Vice President

Prosperity000096

Trustee_Prosperity_000170

**DATE:**          **JULY 3, 2021**

**BORROWER:**     **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**       **PROSPERITY BANK**

**LOAN:**          **MODIFICATION OF $3,000,000.00 LOAN**

### ATTORNEY REPRESENTATION LETTER

      Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C. As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C. The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith. The undersigned has been and is hereby advised to obtain counsel of its own choice to represent them in this transaction.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
  a Texas limited liability company
    By:  Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
  a Texas limited liability company
    By:  Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

ATTORNEY REPRESENTATION LETTER – Page Solo
J:\TJC\23041\065\Modification ($3,000,000)\atty.rep.ltr.docx

Prosperity000097

Trustee_Prosperity_000171

# SECURITY AGREEMENT

**Date:** July 3, 2020

**Debtor:** Genesis Networks Telecom Services, LLC,
a Texas limited liability company
Genesis Networks Global Services, LLC,
a Texas limited liability company

**Debtor's Mailing Address:** 1354 N. Loop 1604 E, Suite 103
San Antonio, Texas 78232

**Secured Party:** Prosperity Bank,
a Texas banking association

**Secured Party's Mailing Address
(including county):** 5949 Sherry Lane, Suite 600
Dallas, Texas 75225

**Classification of Collateral:** Accounts

**Collateral (including all accessions and substitutions):**

See Schedule 1 attached hereto and incorporated herein for all
purposes.

**Obligation:**

**Note:**

**Date:** July 3, 2020

**Amount:** $3,000,000.00

**Maker:** Genesis Networks Telecom Services, LLC,
a Texas limited liability company
Genesis Networks Global Services, LLC,
a Texas limited liability company

**Payee:** Prosperity Bank,
a Texas banking association

**Terms of Payment:** Payable as to principal and interest as therein provided.

Prosperity000029

Trustee_Prosperity_000172

Subject to the terms of this Security Agreement, Debtor grants to Secured Party a first and superior security interest in the Collateral and all their proceeds (as described on Schedule 1 attached hereto), to secure payment and performance of Debtor's Obligation in this Security Agreement and all renewals and extensions of the Obligation.

## Debtor's Warranties

1.      Financing Statement. No financing statement covering the Collateral is filed in any public office, except for financing statements in favor of Secured Party and Citibank, N.A. (the Receivables Lender").

2.      Ownership. Debtor owns the Collateral and has the authority to grant this security interest.   Ownership is free from any setoff, claim, restriction, lien, security interest, or encumbrance except this security interest, the security interest in favor of the Receivables Lender, and liens for taxes not yet due.

3.      Financial Statement. All information about Debtor's financial condition provided to Secured Party was accurate when submitted, as will be any information subsequently provided.

4.      Setoffs. No obligors whose debts or obligations are part of the Collateral have any right to setoffs, counterclaims, or adjustments or any defenses in connection with their debts or obligations.

## Debtor's Covenants

1.      Protection of Collateral. Debtor shall defend the Collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens except those for taxes not yet due and from all security interests except this one and the security interest in favor of the Receivables Lender.  Debtor shall maintain the Collateral in good condition and protect it against misuse, abuse, waste, and deterioration except for ordinary wear and tear resulting from its intended use.

2.      Financial Statements and Other Information. The Debtor shall furnish, in form and content as shall be satisfactory to the Secured Party in its sole discretion, the following:

(a)     Promptly upon receipt thereof, copies of all financial reports, if any, submitted to the Debtor, by their auditors in connection with each annual or interim audit of their financial books and records by such auditors.

(b)     Promptly upon the commencement thereof, written notice of any litigation, including arbitrations, and of any proceedings before any governmental agency which would, if successful, materially affect the Debtor or where the amount involved exceeds $25,000.00 and is not acknowledged by any insurance carrier to

Prosperity000030

Trustee_Prosperity_000173

be covered in full by insurance required to be maintained under <u>Section 3</u> of this Security Agreement;

(c)     With reasonable promptness, such other information respecting the business, operations and financial condition of the Debtor as the Secured Party may from time to time require, including, but not limited to, balance sheets, statements of profits and losses, statements of change in financial position, in a form acceptable to the Secured Party. The Secured Party is hereby authorized to deliver a copy of any financial statement or any other information relating to the business, operations, or financial condition of the Debtor which may be furnished to it or come to its attention to any regulatory body or agency having jurisdiction over the Secured Party or to any person which shall succeed to all or any part of the Secured Party's interest in the Obligation and this Security Agreement.

3.     <u>Insurance</u>. Debtor will insure the Collateral in accordance with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage. Policies will be written in favor of Debtor and Secured Party according to their respective interests or according to Secured Party's other requirements. All policies will provide that Secured Party will receive at least thirty (30) days' prior written notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued. Debtor assumes all risk of loss and damage to the Collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect any unearned premiums and proceeds of any insurance on the Collateral and to endorse any draft or check deriving from the policies and made payable to Debtor or jointly payable to Debtor and Secured Party.

4.     <u>Secured Party's Costs</u>. Within fifteen (15) days after request thereafter, Debtor will pay all expenses incurred by Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest or the Collateral and in collecting or enforcing the Obligation. Expenses for which Debtor is liable include, but are not limited to, taxes, assessments, reasonable attorney's fees, and other legal expenses. These expenses will bear interest from the due dates at the rate stated in the promissory note that is part of the Obligation, and Debtor will pay Secured Party this interest on demand at a time and place reasonably specified by Secured Party. These expenses and interest will be part of the Obligation and will be recoverable as such in all respects.

5.     <u>Additional Documents</u>. Debtor shall execute such other documents that Secured Party considers necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

6.     <u>Notice of Changes</u>. Debtor shall immediately notify Secured Party of any material change in the Collateral; change in Debtor's name, address or location; change in the location of all or any part of the Collateral; change in any matter warranted or represented in this Security Agreement; change that may affect this security interest; and any event of default.

<u>**SECURITY AGREEMENT**</u>  - Page 3
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\SECURITY AGREEMENT.DOCX

**Prosperity000031**

**Trustee_Prosperity_000174**

7.      Use and Removal of Collateral. Debtor will use the Collateral primarily according to the stated classification unless Secured Party consents otherwise in writing. Debtor shall not permit the Collateral to become an accession to any goods, to be commingled with other goods, or to become an accession or part of a product or mass with other goods except as expressly provided in this Security Agreement.

8.      Sale. Debtor shall not sell, transfer, or further encumber any of the Collateral without the prior written consent of Secured Party, except in the normal conduct of Debtor's business.

9.      Modification of Collateral. Without the written consent of Secured Party, Debtor shall not agree to any modification of terms in any instruments constituting Collateral, or securing same.

10.     Disposition of Collateral. Debtor shall immediately assign or endorse to Secured Party on request any future instruments constituting Collateral, or securing same.

11.     Parties Liable on the Collateral. Debtor shall preserve the liability of all obligors on the Collateral, preserve the priority of all liens and security for the Collateral, and deliver to the Secured Party all instruments constituting Collateral, or securing same. Debtor shall not release any lien or interest securing the Collateral without the prior written consent of Secured Party.

12.     Delivery of Receipts to Secured Party. In the event of a default under the terms of the Obligation, and on Secured Party's demand, Debtor will deposit all payments received as proceeds of and payments on Collateral in a special bank account designated by Secured Party, who alone will have power of withdrawal. Debtor will deposit the payments on receipt, in the form received, and with any necessary endorsements as security for the Obligation. Secured Party may make any endorsements in Debtor's name and behalf. Between receiving and depositing these payments, Debtor shall not mingle them with any of Debtor's other funds or property but shall hold them separate in an express trust for Secured Party. Secured Party shall apply these funds against the Obligation.

13.     Default in Collateral. Debtor shall cause all obligors on the Collateral to pay and perform all obligations under the Collateral. Debtor shall immediately inform Secured Party in writing of the default in the payment or performance of any obligation under the Collateral.

14.     Consumer Credit. If any Collateral or proceeds include obligations of third parties to Debtor, the transactions creating those obligations will conform in all respects to applicable state and federal consumer credit law.

15.     Collateral Records. Debtor shall keep accurate and complete records of the Collateral (including proceeds). Secured Party may at any time have access to, examine, audit, make extracts from and inspect, without hindrance or delay, Debtor's records, files and the Collateral.

Prosperity000032

Trustee_Prosperity_000175

16.     Taxes.  Debtor agrees to pay prior to delinquency all taxes, charges, liens and assessments against the Collateral, and upon the failure of Debtor to do so, Secured Party, at its option, may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same.  Any such payment by Secured Party shall become part of the Obligation secured hereunder and shall be paid to Secured Party by Debtor immediately upon demand, with interest thereon at the rate of interest charged under the Obligation.

17.     Modification of Contracts.  Debtor shall not modify, extend or substitute any contract the terms of which shall at any time have given rise to accounts receivable secured hereby, except in the ordinary course of Debtor's business or with the prior written consent of Secured Party.

**Events of Default**

At the option of the Secured Party, the entire balance of the Obligation shall at once become due and owing upon the occurrence of any Event of Default described in Section 6.1 of that certain Loan Agreement of even date herewith between the Debtor and Secured Party.

**Remedies of Secured Party on Default**

During the existence of any Event of Default, Secured Party may declare the unpaid principal and earned interest of the Obligation immediately due and payable in full, enforce the Obligation in accordance with its terms, and exercise any rights and remedies granted a secured party by the Texas Business and Commerce Code (the "Code") or by this Security Agreement, including, but not limited to, the following:

(a)     require Debtor to deliver to Secured Party all books and records relating to the Collateral;

(b)     require Debtor to assemble the Collateral and make it available to Secured Party at a place reasonably convenient to both parties;

(c)     take possession of any of the Collateral and of this purpose enter any premises where it is located if this can be done without breach of the peace;

(d)     sell, lease, or otherwise dispose of any of the Collateral in accordance with the rights, remedies, and duties of a secured party under chapters 2 and 9 of the Code after giving notice as required by those chapters; and unless the Collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Debtor reasonable notice of any public sale of the Collateral or of a time after which it may be otherwise disposed of without further notice to Debtor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Debtor at the address specified in this Security Agreement at least ten (10) days before any public sale or ten (10)

SECURITY AGREEMENT - Page 5
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\SECURITY AGREEMENT.DOCX

Prosperity000033

Trustee_Prosperity_000176

days before the time which the Collateral may be otherwise disposed of without further notice to Debtor;

(e)    surrender any insurance policies covering the Collateral and receive the unearned premium;

(f)    apply any proceeds from disposition of the Collateral after default in the manner specified in chapter 9 of the Code, including payment of Secured Party's reasonable attorneys' fees, costs of collection and court expenses;

(g)    at Secured Party's discretion, retain the Collateral in satisfaction of the Obligation wherever the circumstances are such that the Secured Party is entitled to do so under the Code, or otherwise;  and

(h)    if disposition of the Collateral leaves the Obligation unsatisfied, collect the deficiency from Debtor and any guarantor of the Obligation.

**General Provisions**

1.    Collection Rights.

(a)    So long as an Event of Default has occurred and is continuing, Secured Party may at any time notify the account debtor on any accounts receivable of Debtor of its security interest, if any, therein, and may demand that monies due or to become due to be paid directly to Secured Party. In connection with the right of Secured Party to collect Accounts under this Section, Debtor hereby irrevocably appoints Secured Party or any person designated by Secured Party, its true and lawful attorney-in-fact to endorse for Debtor or Debtor's name any check, draft or other order for payment of money payable to Debtor in payment of any Accounts owing to Debtor.    Secured Party's costs and collection and enforcement, including attorneys' fees and out-of-pocket expenses, shall be borne solely by Debtor. Secured Party shall not be liable for any act of omission on the part of Secured Party, or its officers, agents or employees, except gross negligence or willful misconduct.

(b)    So long as any Event of Default has occurred and is continuing, and after exercising its right under this Section, Secured Party may, without notice to Debtor, renew, modify or extend any Accounts, grant waivers or indulgences with respect thereto, accept partial payments thereon, release, surrender or substitute any customer security or make compromises with or release Debtor or any other party liable thereon in such manner as Secured Party may, in its sole discretion, deem advisable, without affecting or diminishing Debtor's continuing obligations upon such Accounts.

**Prosperity000034**

**Trustee_Prosperity_000177**

2.    Parties Bound.  Secured Party's rights under this Security Agreement shall inure to the benefit of its successors and assigns.  Assignment of any part of the Obligation and delivery by Secured Party of any part of the Collateral shall fully discharge Secured Party from responsibility for that part of the Collateral.  If Debtor is more than one entity, all their representations, warranties, and agreements are joint and several. Debtor's obligations under this Security Agreement shall bind Debtor's successors and assigns.

3.    Waiver.  Neither delay in exercise nor partial exercise of any of Secured Party's remedies or rights shall waive further exercise of those remedies or rights.  Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights.  Secured Party's waiver of any Event of Default does not waive its right to demand strict compliance with the terms of this Security Agreement.  Secured Party's waiver of any right in this Security Agreement or of any Event of Default is binding only if it is in writing.

4.    Reimbursement.  If Debtor fails to perform any of Debtor's obligations under this Security Agreement, Secured Party may perform those obligations and be reimbursed by Debtor on demand at the place where the Obligation is payable for any sums so paid, including attorney's fees and other legal expenses, plus interest on those sums from the dates of payment at the rate stated in the Obligation for matured, unpaid amounts.  The sum to be reimbursed shall be secured by this Security Agreement.

5.    Interest Rate.  Interest included in the Obligation shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited to the principal of the Obligation or, if that has been paid, refunded.  Upon any acceleration or permitted prepayment of the Obligation, any excess interest shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal amount of the Obligation or, if the principal amount has been paid, refunded.

6.    Modifications.  No provisions of this Security Agreement shall be modified or limited except by written agreement between the Debtor and Secured Party.

7.    Severability.  The unenforceability of any provision of this Security Agreement will not affect the enforceability or validity of any other provision.

8.    Applicable Law; Placement of Performance.  This Security Agreement will be construed according to Texas laws, and shall be performable in Dallas County, Texas.

9.    Presumption of Truth and Validity.  If the Collateral is sold after the occurrence of an Event of Default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this Security Agreement and by the Code will be presumed satisfied.

10.    Singular and Plural.  When the context requires, singular nouns and pronouns include the plural.

**SECURITY AGREEMENT** - Page 7
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\SECURITY AGREEMENT.DOCX

Prosperity000035

Trustee_Prosperity_000178

11.     Priority of Security Interest.  This security interest shall neither affect nor be affected by any other security for any of the Obligation.  Neither extensions of the Obligation, nor releases of any of the Collateral will affect the priority or validity of this security interest with reference to any third person.

12.     Cumulative Remedies.  Foreclosure of this security interest created by this Security Agreement by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms hereof.  All remedies of Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other.  Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this Security Agreement.

13.     Power of Attorney. The Secured Party is hereby appointed the attorney-in-fact of the Debtor for the limited purpose of carrying out the default and remedy provisions of this Security Agreement and taking any action and executing any instruments which the Secured Party may deem necessary or advisable to accomplish the purposes hereof, which appointment as attorney-in-fact is irrevocable and coupled with an interest.

14.     After Acquired Property.  The security interest granted Secured Party extends to all collateral that is of the same classification as this Collateral and that Debtor acquires at any time during the continuation of this Security Agreement.

15.     Future Advances.  This security interest granted Secured Party also secures all other present and future debts and liabilities of Debtor to Secured Party, including future advances.

**DEBTOR:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

SECURITY AGREEMENT  - Page 8
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\SECURITY AGREEMENT.DOCX

Prosperity000036

Trustee_Prosperity_000179

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association

By: _____
Taylor Burns, Vice President

Prosperity000037

Trustee_Prosperity_000180

## SCHEDULE 1

All of Debtor's presently owned and existing and hereafter acquired and arising Accounts, whether or not earned by performance (collectively, the "Collateral"); together with all replacements, betterments, substitutions, renewals, and additions to, any of the Collateral; proceeds, including without limitation, insurance proceeds, arising out of or with respect to the Collateral; and all products of the Collateral.

Prosperity000038

Trustee_Prosperity_000181

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are obtaining from **PROSPERITY BANK,** a Texas banking association (the "Lender"), a Loan (herein so called) to be evidenced by that certain Promissory Note dated August 31, 2020 (the "Note"), executed by the Borrower and payable to the order of the Lender in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94). The Loan is governed by a Loan Agreement dated August 31, 2020 between the Lender and the Borrower and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral") and that certain Pledge and Security Agreement dated August 31, 2020 (the "Pledge Agreement"), from James E. Goodman, Jr. in favor of Lender. All obligations of the Borrower are personally guaranteed by **JAMES E. GOODMAN, JR.** (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated August 31, 2020. As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan: The Note, the Loan Agreement, the Security Agreement, the Pledge Agreement, the Guaranty Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1. No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2. The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3. The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

NOTICE AND AGREEMENT – Page 1
J:\TJC\23041\065\$1,948,427\noi&agr.docx

Prosperity000228

Trustee_Prosperity_000182

THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER THE DATE OF THIS NOTICE AND AGREEMENT. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED PARTIES.

**DATED** to be effective August 31, 2020.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GUARANTOR:**

_____
James E. Goodman, Jr.

**NOTICE AND AGREEMENT** - Page 2
J:\TJC\23041\065\$1,948,427\not&agr.docx

Prosperity000229

Trustee_Prosperity_000183

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____
    Taylor Burns, Vice President

<u>NOTICE AND AGREEMENT</u> – Page 3
J:\TJC\23041\065\$1,948,427\not&agr.docx

Prosperity000230

Trustee_Prosperity_000184

## LIEN RELEASE AND ASSIGNMENT OF PROCEEDS AGREEMENT

THIS LIEN RELEASE AND ASSIGNMENT OF PROCEEDS AGREEMENT (this "Agreement") is made as of July 9th, 2020 by and between **CITIBANK, N.A.**, its branches, subsidiaries and affiliates ("Citibank"), with an address at Insert Address, **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively "Debtor") with an address at 1354 N. Loop 1604 E., San Antonio, TX 78232, and **PROSPERITY BANK**, a Texas banking association ("Creditor") with an address at 5949 Sherry Lane, Suite 800, Dallas, TX 75225.

### RECITALS:

A. Creditor has loaned, extended credit or otherwise agreed to become a creditor of Debtor pursuant to a financing agreement entered into between Debtor and Creditor (such financing agreement, together with all agreements, instruments and other documents related thereto, as the same may be amended or supplemented from time to time, hereinafter the ("Credit Facility") and has received, and may from time to time hereafter, in connection therewith, a security interest in certain personal property of Debtor, including accounts receivable owed to Debtor by one or more account debtors including **AT&T Services Inc.,** and/or its various subsidiaries and affiliates, and **Verizon Sourcing, LLC**, and/or its various subsidiaries and affiliates (collectively, "Buyers") (such receivables owed by Buyers, including related security and the proceeds thereof, the "Creditor Receivables").

B. Citibank from time to time wishes to purchase from Debtor and Debtor wishes to sell to Citibank, in accordance with the terms of that certain Supplier Agreement (as amended from time to time, the "Supplier Agreement") between Citibank and Debtor, accounts receivable owed to Debtor by Buyers (all such accounts receivable, including related security received from Buyers and the proceeds thereof, the "Citibank Receivables").

C. The parties hereto desire and intend to establish, as between themselves, the priority, operation and effect of the security and other interests of Creditor and Citibank in the Creditor Receivables (including, without limitation, the Citibank Receivables).

D. Creditor requires that Debtor assign to Creditor Debtor's rights under the Supplier Agreement to receive payment from Citibank of the purchase price for the Citibank Receivables.

E. Citibank requires that Creditor consent to the sale of, and release its lien on, the Citibank Receivables upon Citibank's purchase thereof.

NOW, THEREFORE, intending to be legally bound hereby, the parties hereto agree as follows:

1. Creditor hereby consents to the sale by Debtor and purchase by Citibank, from time to time, of the Citibank Receivables pursuant to the terms of the Supplier Agreement

2. Effective only upon the purchase by Citibank of the Citibank Receivables and payment by Citibank of the purchase price to the Designated Account (as such term is defined in the Supplier Agreement) in accordance with the Supplier Agreement and Section 4 of this Agreement, Creditor agrees that the security interest of Creditor in the Citibank Receivables is hereby automatically released. If for any reason such purchase of Citibank Receivables by Citibank is judicially recharacterized as a grant of collateral by Debtor to secure a financing by Citibank, then Creditor acknowledges and agrees that it has no lien on or security interest in the Citibank Receivables. Citibank hereby acknowledges and agrees that, in connection with the Supplier Agreement, it has and will have no right, title or interest, by way of purchase, security interest or otherwise, in any of Debtor's present and future property of any kind, including the Creditor Receivables, other than the Citibank Receivables, provided that this acknowledgement and agreement is without prejudice to any such right, title or interest that Citibank may acquire in connection with any financing or other commercial transaction unrelated to the Supplier Agreement that Citibank may have entered into, or may hereafter enter into, with Debtor.

3. As additional security for the indebtedness of Debtor to Creditor, Debtor hereby assigns to Creditor and grants Creditor a security interest in all of the rights of Debtor in and to proceeds or monies due to Debtor under the Supplier Agreement.

4. Citibank acknowledges the foregoing assignment and grant of security interest to Creditor of such funds, moneys and claims for money due or to become due to Debtor under the Supplier Agreement and Citibank agrees to remit such amounts (without reduction for any rights of setoff other than as permitted under the Supplier Agreement) to the Designated Account. Debtor agrees not to change the Designated Account without the prior written consent of Creditor.

5. Upon remittance of the purchase price relating to any Citibank Receivable to the Designated Account, Citibank shall be released and discharged of its obligations to Debtor and Creditor with respect to such Citibank Receivable.

6. Debtor hereby agrees to indemnify and to hold Citibank harmless from any and all liability or expense which may be incurred by reason of Citibank's recognition of this Agreement and of the security interest herein contained and the making of remittances to the Designated Account as herein provided. The foregoing indemnity shall survive the termination of this Agreement.

7. The rights in and to the Creditor Receivables and Citibank Receivables and the release of the Citibank Receivables set forth above shall apply notwithstanding the operation or provisions of applicable law, the time, order or method of

Lien Release and Acknowledgment Agreement (ICG-Trade-01-14) (Senior Creditor Form)

**Prosperity000074**

**Trustee_Prosperity_000185**

attachment or perfection of security interests or the time and order of filing of financing statements or any other liens held by the parties, whether under the Uniform Commercial Code or other applicable law.

8.  Each of Creditor and Citibank agrees that it shall not challenge, contest, or join or support any other person in challenging or contesting, whether directly or indirectly, the validity, perfection, priority or enforceability of the other party's ownership or security interest (in the case of the Citibank Receivables) or security interest (in the case of the Creditor Receivables), as applicable, in a manner inconsistent with this Agreement.

9.  Upon written notice from Creditor, Citibank agrees to as promptly as practicable turn or pay over to Creditor (pursuant to wire instructions set forth in such notice) any amounts that may come into its possession that derive from Creditor Receivables other than Citibank Receivables. Upon written notice from Citibank, Creditor agrees to as promptly as practicable turn or pay over to Citibank (pursuant to wire instructions set forth in such notice) any amounts that may come into its possession that derive from Citibank Receivables. Except as set forth above, neither party shall have any other duty or obligation of any other nature, including with respect to the attachment or creation of any other party's security interest or any cred it decisions of such other party with respect to Debtor. Creditor acknowledges that Citibank and Debtor have or may have business relationships in addition to the purchase and sale of the Citibank Receivables.

10. This Agreement shall remain in effect until the earlier of (a) the termination of the Credit Facility and the payment in full of all indebtedness and liabilities of Debtor to Creditor thereunder, and (b) the termination of the Supplier Agreement and the payment in full of all amounts outstanding with respect to Citibank Receivables purchased by Citibank, whichever is later (including, in each case, during any bankruptcy, insolvency or similar proceeding involving Debtor). This Agreement shall be binding upon and inure to the benefit of Creditor and Citibank and their respective successors and assigns.

11. All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may agree. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address set forth above or to such other address as any party may give to the other in writing (including on its signature page hereto) for such purpose in accordance with this Section.

12. This Agreement (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral among all parties hereto with respect to the subject matter hereof.

13. This Agreement may be executed in any number of counterparts, which taken together shall constitute a single copy of this Agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile transaction or PDF shall be effective as delivery of a manually executed counterpart of this Agreement.

14. This Agreement is governed by the laws of the State of New York without regard to such state's conflict of laws principles. Citibank, Debtor, and Creditor agree that any New York State or Federal court sitting in New York City shall have non-exclusive jurisdiction to settle any dispute in connection with this Agreement, and the parties hereby submit to the jurisdiction of those courts. Citibank, Debtor, and Creditor each waive any right to immunity from jurisdiction to which it may be entitled (including, to the extent applicable, immunity from pre- and post-judgment attachment and execution.)

IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement as of the date and year first above written.

[Remained Of This Page Intentionally Left Blank]

Lien Release and Acknowledgment Agreement (ICG-Trade-01-14) (Senior Creditor Form)

Prosperity000075

**Creditor:**
**PROSPERITY BANK,**
a Texas banking association

By: _____

Print Name: Taylor Burns
Title: Vice President

Address for Notices:
5949 Sherry Lane, Suite 600
Dallas, TX 75225

**Citibank:**
**CITIBANK, N.A.**

By: _____

Print Name:  Shelly-Ann Gordon
              Citibank, N.A.
Title:        Vice President
              388 Greenwich Street
Address for Notices: 28th Floor
              New York, New York 10013
              (212) 816-2739

**Debtor:**
**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC
  a Texas limited liability company,
  its Manager

By: _____

Print Name: Cathy Kincy
Title: Chief Financial Officer

Address for Notices:
1354 N. Loop 1604 E., Suite 103
San Antonio, Texas 78232

Lien Release and Acknowledgment Agreement (ICG-Trade-01-14) (Senior Creditor Form)

**Prosperity000076**

Trustee_Prosperity_000187

## PLEDGE AND SECURITY AGREEMENT

This **PLEDGE AND SECURITY AGREEMENT** (the "Agreement") is made and entered into effective as of August 31, 2020, by and between **JAMES E. GOODMAN, JR.** (the "Pledgor"), and **PROSPERITY BANK,** a Texas banking association (the "Secured Party").

### INTRODUCTORY PROVISIONS:

A.      Pledgor has requested that Secured Party loan (the "Loan") to Genesis Networks Telecom Services, LLC, a Texas limited liability company and Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower"), the Loan being evidenced by a promissory note of even date herewith (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), the Loan being governed by the terms of a Loan Agreement of even date herewith, between the Borrower and Secured Party (the Loan Agreement and certain other documents and instruments evidencing, securing, or governing the Loan are hereinafter collectively referred to as the "Loan Documents").

B.      As a condition to the extension of the Loan to Borrower by Secured Party, and in order to secure the payment and performance of the Loan due by Borrower to Secured Party, whether pursuant to the Loan Documents or otherwise, Pledgor has agreed to grant to Secured Party a security interest in the partnership interests described below.

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration the receipt, and sufficiency of which are hereby acknowledged and confessed, the parties hereto agree as follows:

1.      **The Pledge and Security Interest**.  Pledgor hereby assigns, pledges and grants to the Secured Party a security interest in and to any and all present or future rights of Pledgor in and to the partnership interests (the "Partnership Interests") owned by Pledgor in Goodman MBE Group LP, a Texas limited partnership (the "Partnership"), as are more particularly described on Exhibit "A" attached hereto and incorporated herein, together with all funds and proceeds arising out of or with respect to the Partnership Interests.

2.      **The Indebtedness.**  This Agreement is being executed and delivered to secure and the security interest herein granted shall secure full and punctual payment and performance of the following indebtedness, liabilities and obligations (collectively, the "Secured Obligation"):

(a)      all indebtedness represented by the Note executed by the Borrower in favor of Secured Party, and any other monetary obligations described in the Loan Documents;

**Prosperity000184**

**Trustee_Prosperity_000188**

(b)     all obligations, covenants, conditions and agreements to be paid or performed pursuant to, or in connection with, the terms of the Loan Documents;

(c)     all sums expended or advanced by Secured Party pursuant to the terms of any of the Loan Documents, and all other sums now or hereafter loaned or advanced by Secured Party to the Borrower or expended by Secured Party for the account of the Borrower, or otherwise owing by the Borrower to Secured Party pursuant to the Loan Documents; and

(d)     all costs, fees, expenses and reasonable attorneys' fees incurred by Secured Party in the enforcement and collection of the Secured Obligation.

3.     **Representations and Warranties**.     Pledgor represents and warrants to the Secured Party, as follows:

(a)     Pledgor owns the Partnership Interests free and clear of any lien, security interest, charge or encumbrance.  Pledgor has not previously assigned any interest in the Partnership Interests to any third party other than the Secured Party.  No financing statement or other instrument similar in effect covering all or any part of the Partnership Interests is on file in any recording office, except in favor of the Lender pursuant to the terms of this Agreement.

(b)     Pledgor has the lawful right, power and authority to grant a security interest in the Partnership Interests.  This Agreement together with all filings and other actions necessary or desirable to perfect and protect such security interest, when duly taken, create a valid and perfected security interest in the Partnership Interests securing the payment and performance of the Secured Obligation.

(c)     No authorization, approval or other action by Pledgor or any governmental authority or regulatory body, is required either (i) for the grant by Pledgor of the security interest herein granted or for the execution, delivery or performance of this Agreement by Pledgor, or (ii) for the perfection or exercise by Secured Party of its rights and remedies hereunder.

4.     **Affirmative and Negative Covenants of the Pledgor.**     Pledgor hereby covenants and agrees with Secured Party that until the Secured Obligation is paid and performed in full, unless Secured Party otherwise consents in writing:

(a)     Delivery of Certificates.     Until satisfaction of the indebtedness due by the Borrower to the Lender, Pledgor shall deliver or cause to be delivered to the Secured Party original certificates representing all of the Partnership Interests.  In addition, Pledgor agrees to deliver all future original certificates representing the Partnership Interests which is received by or on behalf of the Pledgor after the execution of this Agreement.

(b)     Books and Records.     Pledgor shall keep accurate and complete books and records of the Partnership Interests, and shall, from time to time at the request of Secured Party, deliver to

PLEDGE AND SECURITY AGREEMENT   -   Page 2
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

**Prosperity000185**

Trustee_Prosperity_000189

or cause to be delivered to Secured Party such information regarding the Partnership Interests as Secured Party may request.

(c)      Obligations.  Pledgor shall duly and punctually perform the obligations of Pledgor under this Agreement.

(d)      Notification.  Pledgor shall (i) promptly notify Secured Party of any material adverse change in any material fact or circumstance warranted or represented by Pledgor in this Agreement or in any other document furnished by Pledgor to Secured Party in connection with the Secured Obligation;   and (ii) promptly notify Secured Party of any claim action, or proceeding affecting the Partnership Interests, or any part thereof, and at the request of Secured Party, appear in and defend, at Pledgor's expense, any such action or proceeding.

(e)      Sale or Transfer of Partnership Interests.  Pledgor shall not sell, assign, or transfer all or any portion of the Partnership Interests to any third party, without the prior written consent of the Secured Party.

(f)      Encumbrance of Partnership Interests.  Pledgor shall not create in favor of anyone, except the Secured Party, any other security interest in the Partnership Interests, or in any part thereof, or otherwise encumber or permit the same to become subject to any lien, attachment, execution, sequestration, or other legal or equitable process.

(g)      Distribution.  If Pledgor shall become entitled to receive or shall receive anything in value related to the Partnership Interests, Pledgor covenants and agrees to accept the same as Secured Party's agent, to hold the same in the exact form received, with the appropriate endorsement of Pledgor when necessary and/or appropriate, to be held by Secured Party as additional collateral for the obligation. Any sums paid upon or in respect of the Partnership Interests upon the liquidation or dissolution of the Partnership, shall be paid over to Secured Party to be held by it as additional collateral for the Secured Obligation; and, in case any distribution of capital shall be made on or in respect to the Partnership Interests or any property shall be distributed upon or with respect to the Partnership Interests pursuant to any recapitalization or reclassification of the capital of the Partnership, or pursuant to any reorganization of the Partnership, the property so distributed shall be delivered to the Secured Party to be held by it as additional collateral for the Secured Obligation.  Notwithstanding the foregoing, as long as no Event of Default (as hereinafter defined) has occurred under this Agreement, Pledgor may receive and retain any and all cash distributions.

(h)      Additional Securities.  Pledgor shall not consent to or approve, or take any action or omit from taking any action which would result in the issuance of any Partnership Interests of the Partnership, or any options, rights or other commitments entitling any person to purchase or otherwise acquire any Partnership Interests of the Partnership.

(i)      Further Assurances.  Pledgor shall from time to time, promptly execute and deliver to Secured Party all such other assignments, certificates, supplemental documents and

PLEDGE AND SECURITY AGREEMENT  -  Page 3
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000186

Trustee_Prosperity_000190

financing statements, and do all other acts or things, as Secured Party may request in order to more fully evidence and perfect the security interest granted in this Agreement and to do all other acts or things necessary or appropriate to enable Secured Party to fully protect and exercise its rights under this Agreement.

(j)     Set-off.  As further security for the obligation, the Pledgor grants to the Secured Party a first lien and contractual right of set-off in and to the Partnership Interests, together with any and all money and property of Pledgor arising out of the sale or transfer of the Partnership Interests, now or at any time hereafter coming within the custody or control of the Secured Party. The right of set-off may be exercised by the Secured Party even if the exercise of such right results in loss of interest or other penalty under the terms of the Partnership Interests or any account agreement of the Pledgor. It is further agreed that the Secured Party shall have a first lien on all sums at any time credited by or due from the Secured Party to the Pledgor or the Borrower, as security for the payment of the Obligation, and the Secured Party, at its option after acceleration of the maturity of the Obligation (however the maturity may be brought about), may, without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing under the Obligation have been paid in full. Secured Party may apply or set-off all or any part of any such deposits or other sums credited by or due from Secured Party to or against any sums due on the Obligation in any manner and in any order of preference which the Secured Party in its sole discretion chooses.

5.     **Certain Rights of Secured Party.**

(a)     Appointment of Agents; Registration in Nominee Name.  Secured Party shall have the right to appoint one or more agents for the purpose of retaining physical possession of the certificates representing or evidencing any of the Partnership Interests, which may be held (in the discretion of Secured Party) in the name of Pledgor, endorsed or assigned in blank or in favor of Secured Party or in the name of Secured Party or any nominee or nominees of Secured Party or an agent appointed by Secured Party.  In addition to all other rights possessed by Secured Party, Secured Party, at its option, may from time to time following the occurrence of an Event of Default, take any of the following actions:

(i)     transfer all of any part of the Partnership Interests into the name of Secured Party or its nominee;

(ii)     take control of any proceeds of any of the Partnership Interests;

(iii)     extend or renew the Secured Obligation for one or more periods (whether or not longer than the original period) and grant releases, compromises or indulgences with respect to the Secured Obligation or any extension or renewal thereof or any security therefor or to any obligor hereunder or thereunder; and

**PLEDGE AND SECURITY AGREEMENT** - Page 4
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

**Prosperity000187**

**Trustee_Prosperity_000191**

(iv)    exchange certificates or instruments representing or evidencing the Partnership Interests for certificates or instruments of smaller or larger denominations for any purpose consistent with its performance of this Agreement.

(b)    Voting Rights;  Distributions, Replacement of Partnership Interests , Etc.

(i)    Prior to the occurrence of an Event of Default, Pledgor shall be entitled to exercise any and all voting rights and powers relating or pertaining to the Partnership Interests or any part thereof for any purpose not inconsistent with the terms of this Agreement.

(ii)    Any and all distributions, if received by Pledgor shall be held in trust for the benefit of Secured Party and shall forthwith be delivered to Secured Party or its designated agent (accompanied by proper instruments of assignment and/or stock powers executed by Pledgor in accordance with Secured Party's instructions) to be held subject to the terms of this Agreement.  Notwithstanding the foregoing, as long as no Event of Default has occurred and is ongoing, Pledgor may receive and retain any and all cash distributions, which shall not be held in trust for the benefit of Secured Party.

(iii)    Following the occurrence of an Event of Default, at the option of Secured Party following notice to Pledgor, (A) all rights of Pledgor to exercise the voting rights and powers which they are entitled to exercise pursuant to subsection (a) above shall cease, and all such rights shall thereupon become vested in Secured Party who shall have the sole and exclusive right and authority to exercise such voting and/or consensual rights and powers, and (B) Secured Party shall receive and be entitled to retain any and all money and other property paid over to or received by Secured Party pursuant to the provisions of Section 5(b)(ii) above.

6.    **Default**.  An Event of Default (herein so called) shall exist upon the occurrence of any Event of Default as described in Section 6.1 of the Loan Agreement.

7.    **Remedies of Secured Party.**  Upon the occurrence of an Event of Default:

(a)    Secured Party may, at its option:

(i)    reduce Secured Party's claim to judgment, foreclose or otherwise enforce Secured Party's security interest in the Partnership Interests by any available judicial procedure;

(ii)    after notification, if any, provided for in clause (b) of this Section 7, sell or otherwise dispose of the Partnership Interests, at the office of Secured Party, or elsewhere, as chosen by Secured Party, and any such sale or other disposition may be by public or private proceedings;

PLEDGE AND SECURITY AGREEMENT  -  Page 5
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000188

          (iii)    at its discretion, retain the Partnership Interests as shall aggregate in value to an amount equal to the Secured Obligation, in satisfaction of the Secured Obligation whenever the circumstances are such that Secured Party is entitled to do so under the Texas Business and Commerce Code (the "Code");

          (iv)    exercise any and all voting rights and powers relating to or pertaining to the Partnership Interests;

          (v)    apply by appropriate judicial proceedings for appointment of a receiver for the Partnership Interests, or any part thereof, and Pledgor hereby consents to any such appointment;

          (vi)    buy all or any portion of the Partnership Interests at any public or private sale; and

          (vii)    exercise any right of set-off set forth in this Agreement.

      (b)    Reasonable notification of time and place of any public sale of the Partnership Interests or reasonable notification of the time after which any private sale or other intended disposition of the Partnership Interests is to be made shall be sent to Pledgor and to any other person entitled under the Code to notice. It is agreed that notice sent not less than ten (10) calendar days prior to the taking of the action to which such notice relates is reasonable notification and notice for the purposes of this Section 7(b).

      (c)    Because of the Securities Act of 1933, as amended, or other laws of regulations, there may be legal restrictions or limitations affecting Secured Party in any attempts to dispose of all or any portion of the Partnership Interests, or in the enforcement of its rights and remedies hereunder. For these reasons, Secured Party is hereby authorized by Pledgor, but not obligated, upon the occurrence of any Event of Default hereunder giving rise to Secured Party's right to sell or otherwise dispose of the Partnership Interests, to sell all or any part of the Partnership Interests at private sale, subject to investment letter or in any manner which will not require the Partnership Interests, or any part thereof, to be registered in accordance with the Securities Act of 1933, as amended, or the rules and regulations promulgated thereunder, or any other law or regulation, at the best price reasonably obtainable by Secured Party at any such private sale or other disposition in the manner mentioned above. Secured Party is also hereby authorized by Pledgor, but not obligated, to take such actions, give such notices, obtain such consents and do such other things as Secured Party may deem necessary or appropriate in the event of a sale or disposition of any of the Partnership Interests. Pledgor clearly understands that Secured Party may in its discretion approach a restricted number of potential purchasers and that a sale under such circumstances may yield a lower price for the Partnership Interests, or any part or parts thereof, than would otherwise be obtainable if same were registered and sold in the open market. Pledgor agrees (i) that in the event Secured Party shall, after any Event of Default hereunder, sell the Partnership Interests, or any portion thereof, at such private sale or sales, Secured Party shall have the right to rely upon the advice and opinion of any member firm of a national securities exchange as to the best price

PLEDGE AND SECURITY AGREEMENT  -  Page 6
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000189

Trustee_Prosperity_000193

reasonably obtainable upon such a private sale thereof; and (ii) such reliance shall be conclusive evidence that Secured Party handled such matter in a commercially reasonable manner under the Code.

(d)    Waivers by Pledgor.    Neither Pledgor nor anyone claiming by, through or under Pledgor, to the extent Pledgor may lawfully so agree, shall set up, claim or seek to take advantage of any appraisement, valuation, stay, extension or redemption law now or hereafter in force in any locality where any of the Partnership Interests is situated for purposes of applicable law, in order to prevent or hinder the enforcement of this Agreement, or the absolute sale of the Partnership Interests, or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereof; and Pledgor, in Pledgor's own right and for all who may claim under Pledgor, hereby waives, to the full extent that Pledgor may lawfully do so, the benefit of all such laws and any and all right to have the Partnership Interests marshalled upon any enforcement of the security interest herein granted, and Pledgor agrees that Secured Party or any court having jurisdiction to enforce such security interest may sell the Partnership Interests in parts or as an entirety.

(e)    Application of Proceeds.    Secured Party may apply the proceeds of any foreclosure sale hereunder as follows:

(i)    first, to the payment of all costs and expenses of any enforcement, foreclosure, and collection hereunder and all proceedings in connection therewith, including reasonable attorneys' fees;

(ii)    then, to the reimbursement of Secured Party for all disbursements made by Secured Party for taxes, assessments, or liens superior to the security interest hereof and which Secured Party shall deem expedient to pay;

(iii)    then, to the reimbursement of Secured Party of any other disbursements made by Secured Party in accordance with the terms hereof;

(iv)    then, to or among the costs, expenses, disbursements, reimbursements, fees, interest, and principal then owing and unpaid in respect of the Secured Obligation, in such priority as Secured Party may determine in its discretion; and

(v)    then, to the Pledgor or to each other person who may be entitled thereto by law.

If such proceeds shall be insufficient to discharge the entire Secured Obligation, Secured Party shall have any other available legal recourse against the Pledgor for the deficiency.

(f)    Enforcement of Secured Obligation.    Nothing in this Agreement or in any other Loan Documents shall affect or impair the unconditional and absolute right of Secured Party to

Prosperity000190

Trustee_Prosperity_000194

enforce the Secured Obligation as and when the same shall become due in accordance with the terms of the Loan Documents.

8.    **Rights of Secured Party.**

(a)    Secured Party Appointed Attorney-in-Fact.  Pledgor hereby irrevocably appoints Secured Party as Pledgor's attorney-in-fact, effective upon the occurrence of an Event of Default, with full authority in the place and stead of Pledgor and in the name of Pledgor, Secured Party, or otherwise, from time to time in Secured Party's discretion, to take any action and to execute any instrument which Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement, including without limitation:

(i)    to ask, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Partnership Interests;

(ii)    to receive, endorse, and collect any drafts or other instruments, documents, and chattel paper, in connection with clause (i) of this Section 8; and

(iii)    to file any claims or take any action or institute any proceeding which Secured Party may deem necessary or desirable for the collection of the Partnership Interests or otherwise to enforce the rights of Secured Party against the Partnership Interests.

(b)    Performance by Secured Party.  If Pledgor fails to perform any agreement contained herein, Secured Party may perform, or cause the performance of, such agreement, and the expenses of Secured Party incurred in connection therewith shall be payable by Pledgor under Section 8(g).  In no event, however, shall Secured Party have any obligation or duty whatsoever to perform any covenant or agreement of Pledgor contained herein, and any such performance by Secured Party shall be wholly discretionary with Secured Party.

(c)    Duties of Secured Party.  The powers conferred upon Secured Party hereunder are solely to protect its interest in the Partnership Interests and shall not impose any duty upon it to exercise any of such powers.  Except for the safe custody of the Partnership Interests in its possession and the accounting for money or other property actually received by Secured Party hereunder, Secured Party shall have no duty as to the Partnership Interests or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to the Partnership Interests.

(d)    No Liability of Secured Party.  Neither the acceptance of this Agreement by Secured Party, nor the exercise of any rights hereunder by Secured Party, shall be construed in any way as an assumption by Secured Party of any obligations, responsibilities, or duties of Pledgor arising in connection with the Partnership Interests assigned hereunder or otherwise bind Secured Party to the performance of any obligations respecting the Partnership Interests, it being expressly understood that Secured Party shall not be obligated to perform, observe, or discharge any

PLEDGE AND SECURITY AGREEMENT  -  Page 8
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000191

obligation, responsibility, duty, or liability of Pledgor in respect of the Partnership Interests, including, but not limited to, appearing in or defending any action, expending any money, or incurring any expense in connection therewith.

(e)     Right to Defend Action Affecting Security.   Secured Party may, at Pledgor's expense, appear in and defend any action or proceeding at law or in equity purporting to affect the security interest granted under this Agreement.

(f)     Right to Prevent or Remedy Default.   At any time following an Event of Default, Secured Party:

(i)     may but shall not be obligated to take any action Secured Party deems necessary or desirable to prevent or remedy any such failure by Pledgor to protect the security interest granted under this Agreement, and

(ii)     shall have the absolute and immediate right to take possession of the Partnership Interests to such extent and as often as Secured Party, in its sole discretion, deems necessary or desirable in order to prevent or to cure any such default by the Pledgor, or otherwise advance or expend such sums of money for the account of the Pledgor as Secured Party in its sole discretion deems necessary for any such purpose.

(g)     Expenses.   All advances, costs, expenses, charges, and attorneys' fees which Secured Party may take, pay, or incur under any provision of this Agreement for the protection of its security or for the enforcement of any of its rights hereunder, or in foreclosure proceedings commenced and subsequently abandoned, or in any dispute or litigation in which Secured Party may become involved by reason of or arising out of the Loan Documents or the Partnership Interests, shall be a part of the Secured Obligation and shall, at Secured Party's election, bear interest until paid at the maximum rate of interest permitted by applicable law (or such lesser rate as may be chosen by Secured Party), from the date of such payment until repaid by the Pledgor.

(h)     Secured Party's Right of Set-Off.   Upon the happening of any event entitling Secured Party to pursue any remedy provided herein, or if Secured Party shall be served with garnishment process in which the Pledgor shall be named as defendant, whether or not the Pledgor shall be in default hereunder at the time, Secured Party may, but shall not be required to, set-off any indebtedness owing by Secured Party to the Pledgor against any of the Secured Obligation without first resorting to the security hereunder and without prejudice to any other right or remedies of Secured Party or its security interest herein.

(i)     No Waiver.   In case Secured Party shall have proceeded to enforce any right or remedy hereunder and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, Pledgor and Secured Party shall be restored to their former positions and rights hereunder with respect to the Partnership Interests, and all rights, remedies, and powers of Secured Party shall continue as if no such proceeding had been taken.   No failure or delay on the part of Secured Party in exercising any right, remedy, or power under this Agreement

Prosperity000192

Trustee_Prosperity_000196

or in giving or insisting upon strict performance by Pledgor hereunder or in giving notice hereunder shall operate as a waiver of the same or any other power or right, and no single or partial exercise of any such power or right shall preclude any other or further exercise thereof or the exercise of any other such power or right.  Secured Party, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Pledgor of any and all of the terms and provisions of this Agreement to be performed by Pledgor.  The collection and application of proceeds, the entering and taking possession of the Partnership Interests, and the exercise of the rights of Secured Party contained in the Loan Documents, including the Agreement, shall not cure or waive any default, or affect any notice of default, or invalidate any acts done pursuant to such notice.  No waiver by Secured Party of any breach or default of or by any party hereunder shall be deemed to alter or affect Secured Party's rights hereunder with respect to any prior or subsequent default.

(j)      Remedies Cumulative.  No right or remedy reserved to Secured Party is intended to be exclusive of any right or remedy, but each and every such right or remedy shall be cumulative, not in lieu of, but in addition to any other rights or remedies given under this Agreement and all other Loan Documents.  Any and all of Secured Party's rights and remedies may be exercised from time to time and as often as such exercise is deemed necessary or desirable by Secured Party.

(k)      Right of Secured Party to Extend Time of Payment, Substitute, Release Security, Etc.  Without affecting the liability of any person for the payment of any of the Secured Obligation or the security interest of this Agreement on the Partnership Interests for the full amount of any Secured Obligation unpaid, Secured Party may, without notice or without affecting or impairing the security interest or rights of Secured Party granted or arising under this Agreement: (i) release any person liable for the payment of any of the Secured Obligation; (ii) extend the time or otherwise alter the terms of payment of any of the Secured Obligation; (iii) accept additional security for the Secured Obligation of any kind; (iv) alter, substitute, or release any property pledged as security for all or any portion of the Secured Obligation; or (v) join in any subordination or other agreement affecting this Agreement.

9.    **Miscellaneous.**

(a)      Definitions.  In this Agreement, whenever the context so requires, the neuter gender includes the masculine and feminine, and the singular number includes the plural and vice versa.  The terms "advances," "costs," and "expenses" shall include, but shall not be limited to, reasonable attorneys' fees whenever incurred.  The terms "indebtedness," "obligations," and "Secured Obligation" shall mean and include, but shall not be limited to, all claims, demands, obligations, and liabilities whatsoever, however arising, whether owing by the subject person or entity individually or as a joint venturer, or jointly in common with any other party, and whether absolute or contingent, and whether owing by the subject person or entity as principal debtor or as accommodation maker or as endorser, liquidated or unliquidated, and whenever contracted, accrued or payable.

**PLEDGE AND SECURITY AGREEMENT** – Page 10
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000193

Trustee_Prosperity_000197

(b) Paragraph Headings. The headings of paragraphs herein are inserted only for convenience and shall in no way define, describe, or limit the scope or intent of any provisions or this Agreement.

(c) Change, Amendment, Etc. No change, amendment, modification, cancellation, or discharge of any provision of this Agreement shall be valid unless consented to in writing by Secured Party and Grantor.

(d) Successors and Assigns. As and when used herein, the term "Pledgor" shall mean and include the Pledgor, its successors and assigns, and the term "Secured Party" shall mean and include the Secured Party herein named and its successors and assigns, and all covenants and agreements herein shall be binding upon and inure to the benefit of Pledgor and Secured Party and their respective successors and assigns.

(e) Applicable Laws. **THIS AGREEMENT SHALL BE CONSTRUED, INTERPRETED AND IS ENFORCEABLE UNDER AND PURSUANT TO THE LAWS OF THE STATE OF TEXAS AND APPLICABLE FEDERAL LAW. VENUE IN ANY PROCEEDING INVOLVING THIS AGREEMENT SHALL BE IN DALLAS COUNTY, TEXAS**.

(f) Severability. If any provision of this Agreement is held to be invalid or unenforceable, the validity or enforceability of the other provisions of this Agreement shall remain unaffected.

(g) Notices. All notices, demands, requests, or other communications to any party hereunder or referred to herein shall be in writing and shall be given to such party in the manner provided by the terms of the Loan Agreement. Each such notice, demand, request, or other communication shall be effective in the manner provided by the terms of the Loan Agreement.

(h) Counterparts. This Agreement may be executed in counterpart, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument. In making proof of this Agreement it shall not be necessary to produce or account for more than one such counterpart.

(i) Final Agreement. **THIS DOCUMENT CONSTITUTES A WRITTEN AGREEMENT WHICH CONTAINS THE ENTIRE AGREEMENT OF THE PARTIES. THE RIGHTS AND OBLIGATIONS OF THE PARTIES SHALL BE DETERMINED SOLELY FROM THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS ENTERED PURSUANT HERETO, AND ANY PRIOR OR CONTEMPORANEOUS ORAL AGREEMENTS ARE SUPERSEDED BY AND MERGED INTO THIS AGREEMENT. THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS CANNOT BE VARIED OR MODIFIED ORALLY AND CAN ONLY BE VARIED OR MODIFIED BY WRITTEN INSTRUMENT SIGNED BY ALL THE PARTIES.**

**PLEDGE AND SECURITY AGREEMENT** - Page 11
J:\TJC\23041\065\$1,948,427\pledge.sec.agr.docx

Prosperity000194

**PLEDGOR:**

_(signature)_

James E. Goodman, Jr.

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association


By: _____

       Taylor Burns, Vice President

Prosperity000195

Trustee_Prosperity_000199

**PLEDGOR:**


_____

James E. Goodman, Jr.

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association


By: _____
       Taylor Burns, Vice President

Prosperity000196

Trustee_Prosperity_000200

August 31, 2020

Mr. James E. Goodman, Jr.
1354 N. Loop 1604 E, Suite 103
San Antonio, Texas 78232

Re:    $1,948,427.94 loan (the "Loan") from Prosperity Bank (the "Lender") to
Genesis Networks Telecom Services, LLC and Genesis Networks Global
Services, LLC (collectively, the "Borrower")

Dear Mr. Goodman:

Borrower has requested that the Lender close the Loan as an accommodation to the
Borrower, even though the Borrower has not complied with all of the conditions precedent to the
closing of the Loan.  In consideration of your agreement to close the Loan, the Borrower hereby
agrees that the Borrower shall deliver to the Lender in form and substance reasonably
satisfactory to the Lender the items and documents described on Exhibit "A" attached hereto and
incorporated herein for all purposes.

Borrower acknowledges and agrees that in the event the documentation described
on Exhibit "A" is not received by the Lender on or before October 1, 2020, the Lender shall have
the option of declaring an Event of Default under the Loan.

Please acknowledge your agreement to the foregoing terms and conditions by
acknowledging this letter agreement in the space provided below and returning a fully executed
copy to us at your earliest convenience.

Very truly yours,

PROSPERITY BANK

By: _____

Title: _____Vice President_____

Prosperity000226

Mr. James E. Goodman, Jr.
August 31, 2020
Page 2

_____

APPROVED AND AGREED TO:

James E. Goodman, Jr., Individually
and as Chief Executive Officer of
Genesis Networks Telecom Services, LLC and
Genesis Networks Global Services, LLC

J:\TJC\23041\065\$1,948,427\letter.agr.docx

Prosperity000227

Trustee_Prosperity_000202

DATE:         **AUGUST 31, 2020**

BORROWER:   **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

LENDER:     **PROSPERITY BANK**

LOAN AMOUNT:  **$1,948,427.94**

## ELECTRONIC SIGNATURES AND
## ELECTRONIC RECORDS ACKNOWLEDGMENT

Each party to the loan documents, including but not limited to, Promissory Note, Loan Agreement, Security Agreement and Pledge and Security Agreement (collectively, the "Loan Documents"), consents to the use of electronic and/or digital signatures by one, or all parties. The Loan Documents and any other documents requiring a signature hereunder, may be signed electronically or digitally in a manner specified solely by Prosperity Bank. The parties agree not to deny the legal effect or enforceability of the Loan Documents solely because (i) the Loan Documents are entirely in electronic or digital form, including any use of electronically or digitally generated signatures, (ii) an electronic or digital record was used in the formation of the Loan Documents or was subsequently converted to an electronic or digital record by one, or both parties. The parties agree not to object to the admissibility of the Loan Documents in the form of an electronic or digital record, or a paper copy of an electronic or digital document, or a paper copy of a document bearing an electronic or digital signature, on the grounds that the record or signature is not in its original form or is not the original of the Loan Documents or the Loan Documents do not comply with Chapter 26 of the Texas Business and Commerce Code.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer
Founder

ELECTRONIC SIGNATURES AND ELECTRONIC
RECORDS ACKNOWLEDGMENT – Page 1
J:\TJC\23041\065\$1,948,427\electronic.ltr.docx

**Prosperity000223**

**Trustee_Prosperity_000203**

# PROSPERITY BANK ®

| | |
|---|---|
| Statement Date | 10/31/2021 |
| Account No | ****3992 |
| | Page 1 of 1 |

GOODMAN NETWORKS INC
MONEY MARKET ACCOUNT
2801 NETWORK BLVD STE 300
FRISCO TX 75034

9345

## STATEMENT SUMMARY — TX Business Premier Money Market Account No ****3992

| Date | Description | | | Amount |
|---|---|---|---|---|
| 10/01/2021 | Beginning Balance | | | $4,423,116.52 |
| | 2 Deposits/Other Credits | | + | $238,016.31 |
| | 0 Checks/Other Debits | | - | $0.00 |
| 10/31/2021 | Ending Balance | 31 | Days in Statement Period | $4,661,132.83 |

## DEPOSITS/OTHER CREDITS

| Date | Description | Amount |
|---|---|---|
| 10/29/2021 | Deposit GENESIS 1087915/ COLLATERAL TRANSFER/ YHSA | $236,883.48 |
| 10/31/2021 | Accr Earning Pymt Added to Account | $1,132.83 |

## TOTAL OVERDRAFT FEES

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Return Item Fees | $0.00 | $0.00 |

## DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 10-01 | $4,423,116.52 | 10-29 | $4,660,000.00 | 10-31 | $4,661,132.83 |

## EARNINGS SUMMARY

** Below is an itemization of the Earnings paid this period. **

| | | | |
|---|---|---|---|
| Interest Paid This Period | $1,132.83 | Annual Percentage Yield Earned | 0.30 % |
| Interest Paid YTD | $2,354.05 | Days in Earnings Period | 31 |
| | | Earnings Balance | $4,446,040.73 |



MEMBER FDIC   EQUAL HOUSING LENDER

NYSE Symbol "PB"
Prosperity000119

Trustee_Prosperity_000204

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (the "Agreement") dated to be effective as of August 31, 2020 is made by and between **PROSPERITY BANK,** a Texas banking association (the "Lender"), whose address is 5949 Sherry Lane, Suite 600, Dallas, Texas 75225, and **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (collectively, the "Borrower"), and **JAMES E. GOODMAN, JR.** (the "Guarantor") whose addresses are 1354 N. Loop 1604 E, Suite 103, San Antonio, Texas 78232.

### ARTICLE 1.
### DEFINITIONS

For purposes of this Agreement, the following terms shall have the respective meanings assigned to them.

1.1     **Closing Date**.  The term "Closing Date" shall mean the date of execution of this Agreement and all other Security Instruments which shall occur as of, although not necessarily on, the date first written above.

1.2     **Code**.  The term "Code" shall mean the Texas Business and Commerce Code as now written or as hereafter amended or succeeded.

1.3     **Collateral**.   The term "Collateral" shall mean a security interest in all of Borrower's accounts, inventory, equipment, chattel paper, contract rights, and general intangibles, whether now owned or hereafter acquired, and all products and proceeds thereof.

1.4     **Compliance Certificate**.  The term "Compliance Certificate" shall mean the certificate certified by Borrower's duly authorized officer, similar in form and content to Exhibit "A" attached hereto and incorporated herein for all purposes.

1.5     **Debt Service Coverage Ratio.**  The term "Debt Service Coverage Ratio" shall mean Net Operating Income divided by debt service payable by the Borrower during the applicable reporting period.

1.6     **Financial Statements**. The term "Financial Statements" shall mean the balance sheets, profit and loss statements, and other financial information of Borrower and Guarantor heretofore furnished to Lender or required to be furnished to Lender under the terms of this Agreement or any of the Security Instruments from time to time, which statements shall be prepared in such scope, detail and form as shall be reasonably acceptable to Lender and, if required by Lender, reviewed by an independent certified public accountant selected by Borrower which is reasonably satisfactory to Lender.

**Prosperity000151**

**Trustee_Prosperity_000205**

1.7    **Governmental Authority**.  The term "Governmental Authority" shall mean the United States, the state, the county, the city, and any other political subdivision in which the Collateral is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Borrower or the Collateral.

1.8    **Governmental Requirements**.  The term "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Borrower or the Collateral.

1.9    **Guaranty Agreement**.  The term "Guaranty Agreement" shall mean the written agreement providing for the guarantee by the Guarantor of payment of the Loan and all of Borrower's obligations under the Security Instruments.

1.10    **Loan**.  The term "Loan" shall mean the loan by Lender to Borrower pursuant to this Agreement and to be evidenced by the Note.

1.11    **Net Operating Income**.  The term "Net Operating Income" shall mean gross revenue generated from operations conducted by the Borrower, less reasonable and necessary operating expenses incurred in connection therewith, all as reasonably determined by the Lender.

1.12    **Note**.  The term "Note" shall mean the promissory note from Borrower to Lender to be executed upon the execution of this Agreement in the principal amount of $1,948,427.94.

1.13    **Pledge Agreement**.  The term "Pledge Agreement" shall mean that certain Pledge and Security Agreement to be executed by Borrower granting to Lender a security interest in certain preferred shares of stock (the "Shares") of the Guarantor in Goodman Networks Incorporated, a Texas corporation (the "Corporation") to secure the payment and performance of all obligations specified in this Agreement and the Security Instruments.

1.14    **Security Agreement**.  The term "Security Agreement" shall mean that certain Security Agreement to be executed by Borrower granting to Lender a security interest in the Collateral to secure the payment and performance of all obligations specified in this Agreement and the Security Instruments.

1.15    **Security Instruments**.  The term "Security Instruments" shall mean this Agreement, the Security Agreement, the Pledge Agreement, the Note, the Guaranty Agreement and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower or any other party to Lender pursuant to this Agreement.

1.16    **Tangible Net Worth.**  The term "Tangible Net Worth" shall mean total assets of the Borrower, excluding all intercompany eliminations and intangible assets such as goodwill, trademarks, organizational expenses and similar intangible items, less total liabilities and debt unless formerly subordinated to the Lender.

**Prosperity000152**

**Trustee_Prosperity_000206**

## ARTICLE 2.
## THE LOAN; CONDITIONS PRECEDENT TO LOAN

2.1    **The Loan**.  Subject to the terms and conditions of this Agreement, Lender agrees to extend the loan for the purpose of refinancing certain indebtedness of an affiliate of the Guarantor payable to the Lender. The obligation of the Borrower to repay the Loan shall be evidenced by the Note executed by the Borrower and payable to the Lender. To secure full and complete payment and performance of the Loan, Borrower shall execute and deliver the Security Agreement to the Lender. The obligations of the Borrower are personally guaranteed by the Guarantor pursuant to the terms of the Guaranty Agreement.  To secure full and complete performance of the Guaranty Agreement, the Guarantor shall execute and deliver the Pledge Agreement to the Lender.

2.2    **Conditions Precedent**.  The obligation of the Lender to fund the Loan shall be subject to the satisfaction of the following conditions, unless any such condition shall have been modified or waived by Lender:

(a)    All representations and warranties set forth in this Agreement and in the Security Instruments shall be true and complete as of the date of any advance.

(b)    No Event of Default, as defined herein or in the Security Instruments, and no event or condition which with notice or the passage of time or both as prescribed herein or in the Security Instruments, would constitute any such Event of Default has occurred and remains uncured to Lender's satisfaction.

(c)    There shall have been no material adverse change in the condition of the Collateral or in the business or financial condition of Borrower or Guarantor.

(d)    All statements and other information contained in the Financial Statements of Borrower and Guarantor are true and complete, in all material respects, and all other certificates, statements and data furnished to Lender by or on behalf of Borrower or Guarantor in connection with the transactions contemplated by this Agreement or any of the other Security Instruments are true and complete in all material respects, and there are no facts or events known to Borrower or Guarantor which, if disclosed to Lender, would make such statements, certificates or data untrue in any material respect.

(e)    Borrower and Guarantor, as the case may be, shall have executed and acknowledged the Security Instruments in form reasonably acceptable to the Lender.

(f)    Borrower shall have delivered to the Lender the insurance policies or certificates of such insurance as specified in Section 4.7 below.

(g)    Borrower shall have provided Lender with evidence satisfactory to Lender or its legal counsel that all necessary action on the part of the Borrower has been taken with respect to the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, so that this Agreement and all Security Instruments

**Prosperity000153**

**Trustee_Prosperity_000207**

executed and delivered by or on behalf of the Borrower, shall be valid and binding upon the Borrower, or the person executing and delivering such document, in accordance with its terms.

(h)    Borrower shall have delivered to Lender such other documents as Lender shall reasonably require.

2.3    **Additional Security**.  If at any time Lender shall determine in good faith that the Collateral has declined or may decline in value or Lender shall deem payment of the Note to be insecure, then Lender may call for additional collateral to secure the Loan satisfactory to Lender.

2.4    **Conditions Precedent for the Benefit of Lender**.  All conditions precedent to the obligation of Lender to make the Loan are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make the Loan in the absence of strict compliance with such conditions precedent.

2.5    **Cross-Collateralization and Default**.  The Security Instruments, including this Agreement, and any other documents or instruments given in connection with, or as security for any obligation of the Borrower, shall serve as security for all other indebtedness and obligations of the Borrower to the Lender, and an Event of Default under any Security Instrument, shall constitute an Event of Default under any other loan from the Borrower to the Lender.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower represents and warrants to Lender as follows:

3.1    **Financial Statements**. The Financial Statements are true, correct, and complete, in all material respects, as of the dates specified therein and fully and accurately present the financial condition of Borrower and Guarantor.  No material adverse change has occurred in the financial condition of Borrower or Guarantor since the date of the Financial Statements.

3.2    **Suits, Actions, Etc**.  There are no material actions, suits, or proceedings pending or threatened in any court, before or by any Governmental Authority against or affecting Borrower or the Collateral, or involving the validity, enforceability, or propriety of any of the Security Instruments, at law or in equity.  The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the Security Instruments, shall not result in a breach of, or constitute a default in, any mortgage, deed of trust, lease, promissory note, loan agreement, credit agreement, partnership agreement, or other agreement to which Borrower or Guarantor is a party or by which Borrower or Guarantor may be bound or affected.

3.3    **Valid and Binding Obligation**.  All of the Security Instruments, and all other documents referred to herein to which Borrower or Guarantor is a party, constitute valid and

**Prosperity000154**

**Trustee_Prosperity_000208**

binding obligations of Borrower and Guarantor, enforceable in accordance with their terms except as limited by debtor relief laws.

3.4 **Title to Collateral**. Borrower holds full legal and equitable title to the Collateral. The Collateral is not subject to any other liens except liens in favor of the Lender and with respect to certain accounts of the Borrower, liens in favor of Citibank, N.A. (the "Receivables Lender").

3.5 **Compliance With Governmental Requirements**. Based on their actual knowledge, Borrower and Guarantor are in compliance with all material requirements of all applicable federal, state and local statutes and regulations and shall continue to be in compliance therewith during the term of the Loan.

3.6 **Use of Loan Proceeds.** All loan proceeds or funds furnished by Lender to Borrower shall be used solely for the purposes specified in Article 2 of this Agreement.

3.7 **Principal Place of Business**. The principal place of business and chief executive office of the Borrower and the place where Borrower keeps its books and records is located at the address of the Borrower set forth at the beginning of this Agreement.

3.8 **Incorporation of Representations and Warranties**. Each representation, warranty and covenant of Borrower and Guarantor contained in the Security Instruments are hereby incorporated herein by reference for all purposes.

3.9 **Existence**. Each Borrower is duly organized and validly existing under the laws of the State of Texas and has all requisite power and authority to execute and deliver the Security Instruments. All approvals or consents of any person or entity required in connection with the execution and delivery of and performance by Borrower of its obligations under this Agreement and the Security Instruments has been obtained.

## ARTICLE 4.
## COVENANTS AND AGREEMENTS OF BORROWER

Borrower covenants and agrees as follows:

4.1 **Compliance with Governmental Requirements**. Borrower shall timely comply with all Governmental Requirements.

4.2 **Inspection of the Collateral**. Borrower shall permit Lender, any Governmental Authority, and their agents and representatives, to enter upon the premises of the Borrower for the purpose of inspection of the Collateral at all reasonable times.

4.3 **Notices by Governmental Authority**. Borrower shall timely comply with and furnish to Lender, within three (3) days of receipt thereof, true and complete copies of any official notice or claim by any Governmental Authority pertaining to the Collateral.

LOAN AGREEMENT – Page 5
J:\TJC\23041\065\$1,948,427\loan.agr.docx

Prosperity000155

Trustee_Prosperity_000209

4.4     **Costs and Expenses**.  Borrower shall pay, or cause to be paid, when due all costs and expenses required by this Agreement, including, without limitation, (a) all taxes and assessments applicable to the Collateral, (b) all fees for filing or recording the Security Instruments, (c) all fees and expenses of counsel to Lender related to the closing of the Loan, (d) all premiums for insurance policies, and (e) all other costs and expenses payable to third parties incurred by either Borrower or Lender in connection with the consummation of the transactions contemplated by this Agreement.

4.5     **Additional Documents**.  Borrower and Guarantor shall execute and deliver to Lender, from time to time as requested by Lender, such other documents as shall be necessary to provide the rights and remedies to Lender granted or provided for by the Security Instruments.

4.6     **Inspection of Books and Records**. Borrower and Guarantor shall permit Lender, at all reasonable times, to examine and copy the books and records of Borrower.  Such books and records of Borrower shall be maintained at Borrower's principal place of business.

4.7     **Insurance Period**.  Borrower shall maintain or cause to be maintained in full force until full payment of the Loan such insurance on the Collateral as is satisfactory in all respects to Lender. Any liability insurance shall be evidenced by a certificate of insurance issued to Lender, naming Lender as an additional insured.  All insurance required under this Loan Agreement shall be issued by responsible carriers reasonably acceptable to the Lender and provide at least thirty (30) days prior written notice to Lender of cancellation, non-renewal or material change.

4.8     **Prohibition of Transfers**.  Except as otherwise provided herein or the Security Instruments, Borrower shall not, without the prior written consent of Lender, transfer, convey, assign, encumber or otherwise dispose of the Collateral, other than in the ordinary course of business.

4.9     **Payment of Claims**.  Borrower shall promptly pay or cause to be paid when due all costs and expenses incurred in connection with the Collateral, and Borrower shall keep the Collateral free and clear of any liens, charges or claims other than liens approved in writing by Lender.  Notwithstanding anything to the contrary contained in this Agreement or the Security Instruments, Borrower may contest any tax or special assessments levied by any Governmental Authority, and may contest the enforcement of or compliance with any Governmental Requirements, and such contest on the part of Borrower shall not be an Event of Default hereunder; provided, however, that during the pendency of any such contest where the amount in controversy is greater than $25,000.00 the Borrower shall furnish to Lender an indemnity bond with a corporate surety satisfactory to Lender or other security acceptable to them, and provided further that Borrower shall pay any amount adjudged by a court of competent jurisdiction to be due, with all costs, interest and penalties thereon, before such judgment becomes a lien on the Collateral.

**Prosperity000156**

Trustee_Prosperity_000210

4.10    **Financial Statements**. Until such time as the Loan has been paid in full, the Borrower agrees to provide the Lender on a continuing basis with the following financial information:

(a)    Financial Statements compiled by Borrower's certified public accountants (on a consolidated basis according to GAP), at each fiscal year-end commencing December 31, 2020, to be delivered within 90 days of each fiscal year-end. Borrower shall deliver the Financial Statements for the fiscal year ending December 31, 2019, on or before September 30, 2020.

(b)    Financial Statements on a consolidated and consolidating basis   prepared internally by the Borrower, at each calendar quarter-end commencing September 30, 2020, to be delivered within 45 days of each calendar quarter-end.

(c)    Annual Financial Statements of the Guarantor, within 30 days after the end of each calendar year.

(d)    Monthly Compliance Certificate within 30 days of each month-end.

4.11    **Notification of Adverse Changes**. Borrower shall promptly notify Lender of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Borrower, or would materially and adversely affect the value of the Collateral or any portion thereof, or is a material adverse change as set forth in Section 2.2(c) above.

4.12    **Indemnification**. Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all claims, charges, actions, suits, liabilities, fines, penalties, costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred by Lender in connection with the collection of the Loan or the enforcement of the Security Instruments or the attempt to foreclose and otherwise realize on collateral after the occurrence of an Event of Default. The obligations and provisions of this Section 4.12 shall continue and remain in full force and effect after the Loan and other obligations of Borrower under this Agreement and the Security Instruments have been paid or discharged in full and shall survive the termination of this Agreement and the repayment of the Loan.

### ARTICLE 5.
### CERTAIN COVENANTS

Until payment and performance in full of the Loan, unless Borrower receives prior written approval of a deviation from Lender, Borrower covenants and agrees with Lender that:

5.1    **Obligations**. Borrower shall promptly and fully perform all of their obligations under this Agreement and the Security Instruments and refrain from doing any act or acts that would violate any covenant under this Agreement or the Security Instruments.

**Prosperity000157**

**Trustee_Prosperity_000211**

5.2 **Litigation**. Borrower shall promptly notify Lender of (a) the existence and status of any litigation which could, in the event of an unfavorable outcome, have a material adverse effect on Borrower or the Collateral, and (b) any material adverse change in any fact or circumstance represented or warranted.

5.3 **Taxes**. Borrower shall promptly pay all of their respective taxes and indebtedness as the same become due or obtain all necessary and lawful extensions thereof. Borrower shall deliver to the Lender proof of payment of all ad valorem and personal property taxes assessed against the Collateral no later than January 15 of each year during the term of the Loan.

5.4 **Good Standing**. Each Borrower shall (a) maintain its company existence and good standing under the laws of the State of Texas and (b) comply in all material respects with Governmental Requirements.

5.5 **Operating Accounts**. Borrower shall maintain all of its operating accounts and treasury relationship with Lender during the term of the Loan.

5.6 **Financial Covenants**.

(a) Borrower shall maintain during the term of this Loan a minimum global Debt Service Coverage Ratio of 1.25x, measured quarterly on financial results for the Borrower for the trailing twelve (12) month period.

(b) Borrower shall maintain during the term of this Loan a minimum Tangible Net Worth of not less than $1,500,000.00 measured quarterly on financial results for the Borrower for the previous fiscal quarter.

(c) Borrower covenants and agrees that it shall not incur other secured indebtedness during the term of the Loan without the prior written consent of the Lender.

## ARTICLE 6.
## EVENTS OF DEFAULT

6.1 **Default**. Any one or more of the following events shall constitute an "Event of Default" hereunder and under the Security Instruments:

(a) Default in the timely payment of any installment of principal and interest due on the Note, and such failure shall continue for a period of five (5) days following written notice of such default from the Lender.

(b) Default in the due observance or performance of any of the terms, covenants or conditions contained in this Agreement or the Security Instruments for more than twenty (20) days after receipt from the Lender of written notice of such default; provided, however, that such grace period set forth in this subsection (b) shall not apply to any other Event of Default expressly set forth in this Section 6.1 or to any Event of

LOAN AGREEMENT - Page 8
J:\TJC\23041\065\$1,948,427\loan.agr.docx

Prosperity000158

Default defined as such in the Note or any of the other Security Instruments relating to the Loan, or to any other covenant or condition with respect to which a grace period is expressly provided elsewhere.

(c)     Any representation or warranty made by Borrower to Lender in this Agreement or in the Security Instruments shall be incorrect in any material respect at the time when made or at the time when reaffirmed or deemed reaffirmed by the terms of this Agreement.

(d)     A failure by Borrower to pay or cause to be paid, before any fine, penalty, interest or cost may be added thereto, all franchise taxes and charges, ad valorem and personal property taxes, and other governmental charges of any kind and nature whatsoever which are assessed, levied, confirmed, imposed or become a lien upon the Collateral.

(e)     If individuals or an entity owning an equity interest in any Borrower of twenty percent (20%) or more, dispose of all or any part of such interest, without the prior written consent of Lender, such consent not to be unreasonably withheld.

(f)     If a receiver, liquidator or trustee of any Borrower, Guarantor, or the Collateral shall be appointed.

(g)     If a petition in bankruptcy or for reorganization or for protection under any debtor relief laws shall have been filed against any Borrower or the Guarantor and the same is not withdrawn, dismissed, canceled or terminated within forty-five (45) days.

(h)     If any Borrower or the Guarantor makes an assignment for the benefit of creditors or files or consents to the filing of a petition in bankruptcy or for protection under any debtor relief laws or commences or consents to the commencement of any proceeding under the United States Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of any Borrower or the Guarantor, or the arrangement or rearrangement or readjustment of the debts of any Borrower or the Guarantor, or having the effect of enjoining or staying the exercise of rights or remedies by creditors.

(i)     If there is an attachment or sequestration of or relating to any substantial portion of any assets of any Borrower or the Guarantor, and the same is not promptly discharged.

(j)     If either Borrower incurs additional indebtedness, whether secured by the Collateral or otherwise, without Lender's prior written consent or permits the filing of any lien, security interest or other encumbrance in the Collateral, except security interests in favor of the Receivables Lender.

(k)     If any Borrower or any of its members shall cause, institute or fail to contest any proceeding for the dissolution or termination of Borrower.

LOAN AGREEMENT – Page 9
J:\TJC\23041\065\$1,948,427\loan.agr.docx

Prosperity000159

Trustee_Prosperity_000213

(l)     If default shall occur under, or if there is any attempt to withdraw, cancel or disclaim liability under the Guaranty Agreement by the Guarantor.

(m)     If Borrower ceases to do business or terminates its business as presently conducted for any reason whatsoever.

(n)     If Borrower defaults under any other agreement that it has with Lender and such default continues beyond any applicable grace period.

(o)     If any default shall occur under any Security Instrument.

(p)     If a material adverse change occurs with respect to the financial condition of Borrower, Guarantor, or the Collateral which would materially and adversely affect the value thereof.

(q)     If Borrower defaults in the payment of amounts due under that certain promissory note of even date herewith in the original principal amount of $3,000,000.00 (the "Related Note"), or defaults in the performance of any of the obligations under any documents executed in connection with or securing the repayment of the Related Note.

## ARTICLE 7.
## RIGHTS AND REMEDIES OF LENDER

7.1     **Rights of Lender**.  Upon the occurrence of any one or more Event of Default, Lender shall have the right, in addition to any other right or remedy of Lender at equity or under applicable law, to commence collection and/or foreclosure proceedings under the terms and conditions of the Security Instruments.

7.2     **Acceleration**.  Upon the occurrence of an Event of Default, Lender may, at its option, declare the outstanding balance of the Note immediately due and payable without notice of any kind, Borrower hereby waiving expressly, but not by way of limitation, notice of default, notice of intent to accelerate and notice of acceleration.

7.3     **No Waiver or Exhaustion**.  No waiver by Lender of any of its rights or remedies hereunder, in the other Security Instruments, or otherwise, shall be considered a waiver of any other or subsequent right or remedy of Lender; no delay or omission in the exercise or enforcement by Lender of any rights or remedies shall ever be construed as a waiver of any right or remedy of Lender; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any other right or remedy of Lender.

**Prosperity000160**

**Trustee_Prosperity_000214**

## ARTICLE 8.
## GENERAL TERMS AND CONDITIONS

8.1     **Modifications**.  No provision of this Agreement or the Security Instruments may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver or termination is sought to be enforced.

8.2     **Severability**.  In case any of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided, however, if the disregard of such provision would frustrate the intent and purposes of this Agreement, Lender may petition any court having jurisdiction in equity to render a judgment modifying the disregarded provision of this Agreement so as to carry out such intent and purposes.

8.3     **Election of Remedies**.  Lender shall have all of the rights and remedies granted in the Security Instruments in addition to such rights and remedies that may be available to Lender at law or in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower or any property covered under the Security Instruments at the sole discretion of Lender.  The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and such exercise or failure to exercise shall be nonexclusive.

8.4     **Form and Substance**.  All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender and its legal counsel in their sole discretion.

8.5     **Number and Gender**.  Whenever used herein, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders.

8.6     **Conflicts**.  Except as expressly provided in any of the Security Instruments, in the event of any conflict between the provisions of this Agreement and those of any Security Instruments, the provisions of this Agreement shall govern.

8.7     **Time of Essence**.  Time is of the essence in performance of this Agreement by Borrower.

8.8     **Further Assurances**.  Borrower shall do, execute, acknowledge and deliver, at the sole cost and expense of Borrower, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Lender may reasonably require from time to time in order to better assure, convey, assign, transfer and confirm unto the Lender, the rights now or hereafter intended to be granted to the Lender under the Security Instruments for carrying out the intention or facilitating the performance of the terms of this Agreement.

**LOAN AGREEMENT** – Page 11
J:\TJC\23041\065\$1,948,427\loan.agr.docx

Prosperity000161

8.9 **Consent to Loan Participation**. Borrower consents to the Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to the Lender. Lender may provide to any one or more purchasers or potential purchasers, any information or knowledge Lender may have about the Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any participation interests shall be considered as the absolute owners of such interests in the Loan and shall have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against any purchaser of such participation interests and unconditionally agrees that such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interests in the Loan. Borrower further agrees that the purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower may have against Lender.

8.10 **Captions**. The captions, headings, and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

8.11 **APPLICABLE LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE.**

8.12 **Notices**. All notices by Lender to Borrower pursuant to any provisions of this Agreement or the Security Instruments, must be in writing. Such notices shall be given by personal delivery, expedited delivery service, with proof of delivery, email, or mail (registered or certified, return receipt requested). Any such notice or communication shall be deemed to have been given and received either at the time of personal delivery; in the case of expedited delivery service, upon deposit with a reputable overnight delivery service; in the case of mail, as of the date of deposit in an official depository of the United States Postal Service; or, upon receipt, if transmitted by email, provided such email is confirmed by any other method of notice described herein. By giving at least ten (10) days written notice thereof, Borrower or Lender shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

If to Lender:

      Prosperity Bank
      5949 Sherry Lane, Suite 600
      Dallas, Texas 75225
      Attn: Taylor Burns
      Email: taylor.burns@prosperitybankusa.com

**LOAN AGREEMENT** - Page 12
J:\TJC\23041\065\$1,948,427\loan.agr.docx

**Prosperity000162**

**Trustee_Prosperity_000216**

If to Borrower and Guarantor:

      Genesis Networks Telecom Services, LLC
      Genesis Networks Global Services, LLC
      1354 N. Loop 1604 E, Suite 103
      San Antonio, Texas 78232
      Attn: James E. Goodman, Jr.
      Email: james.goodman@genesisnet.com

    8.13  **Counterparts**.  This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement.

      **EXECUTED AND DELIVERED** on the date first above recited.

        **BORROWER:**

      **GENESIS NETWORKS TELECOM SERVICES, LLC,**
        a Texas limited liability company
        By: Genesis Networks Enterprises, LLC,
          a Texas limited liability company,
            its Manager

        by: _____
          James E. Goodman, Jr., ~~Chief Executive Officer~~

      **GENESIS NETWORKS GLOBAL SERVICES, LLC,**
        a Texas limited liability company
        By: Genesis Networks Enterprises, LLC,
          a Texas limited liability company,
            its Manager

        by: _____
          James E. Goodman, Jr., Chief Executive Officer

**Prosperity000163**

**Trustee_Prosperity_000217**

**GUARANTOR:**

James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____

        Taylor Burns, Vice President

Prosperity000164

Trustee_Prosperity_000218

**GUARANTOR:**

_____

James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____

Taylor Burns, Vice President

**Prosperity000165**

**Trustee_Prosperity_000219**

**Exhibit "A"**

## COMPLIANCE CERTIFICATE
**Borrower Name**
For the Quarter ending _____

Prosperity Bank
5949 Sherry Lane, Suite 600
Dallas, Texas 75225

Attn:   Loan Department

      We submit the following information pursuant to the terms of Section 4.10 of that certain Loan Agreement dated August 31, 2020 executed by the undersigned in favor of Prosperity Bank (the "Bank")

| **COMPLIANCE:** | **COMPLIANT:** |
| --- | --- |
| | (please indicate) |

**Quarterly Covenants**:

1. Borrower must maintain a Debt Service Coverage Ratio of 1.25x
based on a trailing 12 months.                                                                          **YES   NO**

    Formula: Net Operating Income divided by Debt Service payable
            under the Note greater than or equal to 1.25x

    Actual Calculation:   _____   =  _____

2. Borrower must maintain a minimum Tangible Net Worth of not less than
$1,500,000.00.                                                                                                   **YES   NO**

3. Quarterly Financial Statements and Accounts listing are due within 45        **YES   NO**
days of quarter end.

Prosperity000166

Trustee_Prosperity_000220

**Annual Covenants:**

1. CPA complied financial statements (on a consolidated basis according to GAAP) required on the Borrower due within 90 days of year end.   **YES  NO**

2. Annual tax returns required from Borrower due 30 days after filing.   **YES  NO**

3. Personal Financial Statements required on Guarantor due annually:

     James Goodman   **YES  NO**

4. Annual personal tax returns required on Guarantor due 30 days after filing:

     James Goodman   **YES  NO**

*This Compliance Certificate is a summary only. If there is any inconsistency between the text of the loan documents and this certificate, the loan documents will control.*

The undersigned confirms that it is certifying and acting on behalf of all of the entities comprising the Borrower under the Loan Agreement.

> **GENESIS NETWORKS TELECOM SERVICES, LLC,**
> a Texas limited liability company
> By: Genesis Networks Enterprises, LLC,
> a Texas limited liability company,
> its Manager
>
>
> by: _____
>     Cathy Kincy, Chief Financial Officer
>
> **GENESIS NETWORKS GLOBAL SERVICES, LLC,**
> a Texas limited liability company
> By: Genesis Networks Enterprises, LLC,
> a Texas limited liability company,
> its Manager
>
>
> by: _____
>     Cathy Kincy, Chief Financial Officer

**EXHIBIT "A"** - Page 2
J:\TJC\23041\065\$1,948,427\loan.agr.docx

**Prosperity000167**

## GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral") and that certain Pledge and Security Agreement dated August 31, 2020 (the "Pledge Agreement"), from James E. Goodman, Jr. in favor of Lender; and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other

Prosperity000217

Trustee_Prosperity_000222

agreements,   instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective August 31, 2020.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC,**
a Texas limited liability company

By: _____
James E. Goodman, Jr., Chief Executive Officer

**Prosperity000218**

Trustee_Prosperity_000223

**DATE:**          **JULY 3, 2020**

**BORROWER:**      **GENESIS NETWORKS TELECOM SERVICES, LLC and
                   GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**        **PROSPERITY BANK**

**LOAN AMOUNT:**   **$3,000,000.00**

## ATTORNEY REPRESENTATION LETTER

Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C. As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C. The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith. The undersigned has been and is hereby advised to obtain counsel of its own choice to represent it in this transaction.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC,
  a Texas limited liability company,
    its Manager

by: _____
      James E. Goodman, Jr.,
      Chief Executive Officer

ATTORNEY REPRESENTATION LETTER – Page 1
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\atty.rep.ltr.docx

Prosperity000072

Trustee_Prosperity_000224

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by:  _____
James E. Goodman, Jr.,
Chief Executive Officer

**Prosperity000073**

**Trustee_Prosperity_000225**

**DATE:**  **JULY 3, 2020**

**BORROWER:**  **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**  **PROSPERITY BANK**

**LOAN AMOUNT:** **$3,000,000.00**

## ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

Borrower agrees that it shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, Borrower agrees that if any document relating to the Loan does not accurately reflect the terms of the Loan, the Borrower shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Borrower agrees to do so regardless of whether the inaccuracy arises from a mistake by Lender, a mistake by both Borrower and Lender, or a clerical error made by any party. Borrower agrees to act upon a request from Lender to sign or initial any corrected document or replacement document within a reasonable period of time.

Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr.,
      Chief Executive Officer

**Prosperity000070**

**Trustee_Prosperity_000226**

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr.,
Chief Executive Officer

Prosperity000071

Trustee_Prosperity_000227

| | |
|---|---|
| **DATE:** | **OCTOBER 3, 2021** |
| **BORROWER:** | **GENESIS NETWORKS TELECOM SERVICES, LLC and GENESIS NETWORKS GLOBAL SERVICES, LLC** |
| **LENDER:** | **PROSPERITY BANK** |
| **LOAN:** | **SECOND MODIFICATION OF $3,000,000.00 LOAN** |

## ATTORNEY REPRESENTATION LETTER

Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C. As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C. The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith. The undersigned has been and is hereby advised to obtain counsel of its own choice to represent them in this transaction.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

ATTORNEY REPRESENTATION LETTER – Page Solo
J:\TJC\23041\065\2nd Mod of $3,000,000\atty.rep.ltr.docx

**Prosperity000098**

Trustee_Prosperity_000228

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF THE SOLE DIRECTOR
## IN LIEU OF A SPECIAL MEETING

      Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole director of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

      **WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

      **WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by the terms of that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

      **WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Second Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed, by the director of the Company.

      **NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

      **FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to

**Prosperity000099**

Trustee_Prosperity_000229

perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective October 3, 2021.

James E. Goodman, Jr., Director

Prosperity000100

Trustee_Prosperity_000230

**DATE:**          **OCTOBER 3, 2021**

**BORROWER:**      **GENESIS NETWORKS TELECOM SERVICES, LLC and
                    GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**        **PROSPERITY BANK**

**LOAN:**          **SECOND MODIFICATION OF $3,000,000.00 LOAN**

## ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

The parties agree that they shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, the parties agree that if any document relating to the Loan does not accurately reflect the terms of the Loan, the parties shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Each party agrees to do so regardless of whether the inaccuracy arises from a mistake by the other party, a mistake by both Borrower and Lender, or a clerical error made by any party. Each party agrees to act upon a request from the other party to sign or initial any corrected document or replacement document within a reasonable period of time.

Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

   by: _____
         James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

   by: _____
         James E. Goodman, Jr., Chief Executive Officer

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page 1
J:\TJC\23041\065\2nd Mod of $3,000,000\errors.omissions.docx

**Prosperity000101**

Trustee_Prosperity_000231

**LENDER:**

**PROSPERITY BANK**

By: _____

Taylor Burns, Vice President

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\errors.omissions.docx

Prosperity000102

Trustee_Prosperity_000232

## SECOND LOAN MODIFICATION AGREEMENT

**THIS SECOND LOAN MODIFICATION AGREEMENT** (the "Agreement") is made and entered into effective as of October 3, 2021 (the "Effective Date"), by and between **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), and **PROSPERITY BANK** (the "Lender").

## R E C I T A L S

**WHEREAS**, on July 3, 2020, the Lender made a loan (the "Loan") to the Borrower in the original principal amount of $3,000,000.00;

**WHEREAS**, the Borrower executed and delivered to the Lender that certain Promissory Note dated July 3, 2020 (the "Note"), payable to the order of the Lender in the amount of and evidencing the Loan;

**WHEREAS,** the Loan is governed by the terms of a Loan Agreement dated July 3, 2020, between the Borrower and the Lender;

**WHEREAS**, the Note is secured by that certain Security Agreement of even date therewith from the Borrower for the benefit of the Lender, granting the Lender a security interest in all of the Borrower's Accounts and inventory, equipment, trade fixtures, chattel paper and general intangibles (the "Collateral");

**WHEREAS**, the Lender and Borrower have previously modified the terms of the Note pursuant to the terms of that certain Loan Modification Agreement dated to be effective July 3, 2021 (the "Modification Agreement"); and,

**WHEREAS**, the Lender and Borrower now propose to further modify the Note, as more particularly described herein (the Loan Agreement, Security Agreement and any other document executed in connection with or securing the repayment of the Note are hereinafter sometimes collectively referred to as the "Security Documents").

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender and the Borrower hereby agree as follows:

1.    Modifications.  The third paragraph of the Note is hereby amended in its entirety as follows:

Prosperity000103

Trustee_Prosperity_000233

"Interest only shall be due and payable monthly, commencing on October 3, 2021, and continuing on the same day of each month thereafter until December 3, 2021. All unpaid principal, together with accrued but unpaid interest shall be due and payable in full on January 3, 2022 (the "Maturity Date"). Lender shall have the right to periodically adjust the amount of the monthly installments of interest due under this Note based upon changes in the Base Rate of interest payable hereunder."

2.  Acknowledgment by the Borrower. Except as otherwise specified herein, the terms and provisions of this Agreement shall in no manner impair, limit, restrict or otherwise affect the obligations of the Borrower under the Security Documents. As a material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges and agrees that the security interests created and evidenced by the Security Documents are valid and subsisting security interests encumbering the Collateral. As a further material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions and the obligations created or evidenced by the Security Documents.

3.  Controlling Agreement. All agreements between the Borrower and the Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid to the Lender for the use, forbearance or detention of the money loaned or to be loaned pursuant to the Note or otherwise, or for the performance or payment of any covenant or obligation contained herein or in the Security Documents, exceed the Maximum Rate. If for any circumstances whatsoever fulfillment of any provision hereof or of any other document evidencing, securing or pertaining to the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if from any such circumstance the Lender shall ever receive as interest under the Security Documents or otherwise an amount which would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Note and not to the payment of interest; or if such excessive interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to the Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced by the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness is uniform throughout the terms thereof.

4.  Additional Documentation. From time to time, the Borrower shall execute or procure and deliver to Lender such other further documents and instruments

SECOND LOAN MODIFICATION AGREEMENT – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\lma.docx

Prosperity000104

Trustee_Prosperity_000234

evidencing, securing or pertaining to the Note and the Security Documents as shall be reasonably requested by Lender so as to evidence or affect the terms and provisions hereof.

5.   Effectiveness of Security Documents.  Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Note and Security Documents are and shall remain in full force and effect.

6.   Notices  Any notices, consents or other communications required or permitted to be given pursuant to this Agreement or the Security Documents must be in writing and shall be deemed served and given in the manner required by the terms of the Loan Agreement.  Notice given in any other manner shall be effective only if and when received by the addressee.  Any party may provide written notice of a substitute address pursuant to written notice delivered to the other parties in accordance with the terms of the Loan Agreement;  provided, however, that no such notice of change of address shall be effective unless and until actually received by the party to whom such notice is sent.

7.   Governing Law.  The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the laws of the United States applicable to transactions within the State of Texas.  This Agreement is performable in Dallas County, Texas.  Time is of the essence in the performance of the covenants contained herein and in the Security Documents.

8.   Entire Agreement.   This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein, and all prior or contemporaneous agreements, understandings, representations and statements (whether oral or written) are merged into this Agreement.  Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

9.   Right of Offset.  Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Borrower.  Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Borrower's accounts.

SECOND LOAN MODIFICATION AGREEMENT – Page 3
J:\TJC\23041\065\2nd Mod of $3,000,000\lma.docx

Prosperity000105

Trustee_Prosperity_000235

10. <u>Due on Death</u>. Borrower covenants and agrees that upon the death of any signatory, maker, co-maker or guarantor of the Note, the Lender may, at its option, accelerate the entire balance due on the Note, whereupon all amounts due and owing shall immediately be due and payable.

11. <u>Cross Collateral</u>. In addition to securing the indebtedness evidenced by the Note, the Collateral and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Borrower to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Collateral, it being contemplated that Borrower may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

12. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender, and their respective successors and assigns.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

<u>**SECOND LOAN MODIFICATION AGREEMENT**</u> – Page 4
J:\TJC\23041\065\2nd Mod of $3,000,000\lma.docx

Prosperity000106

Trustee_Prosperity_000236

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**LENDER:**

**PROSPERITY BANK**

By: _____
Taylor Burns, Vice President

SECOND LOAN MODIFICATION AGREEMENT – Page 5
J:\TJC\23041\065\2nd Mod of $3,000,000\lma.docx

Prosperity000107

Trustee_Prosperity_000237

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
    its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

**LENDER:**

**PROSPERITY BANK**

By: _____
      Taylor Burns, Vice President

SECOND LOAN MODIFICATION AGREEMENT – Page 5
J:\TJC\23041\065\2nd Mod of $3,000,000\lma.docx

Prosperity000108

Trustee_Prosperity_000238

**LENDER:**

**PROSPERITY BANK**

By: _____

Taylor Burns, Vice President

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\errors.omissions.docx

Prosperity000109

Trustee_Prosperity_000239

## GENESIS NETWORKS TELECOM SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS,** it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS,** copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Second Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED,** that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED,** that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements,   instruments or documents as he, in his discretion, may deem

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 1
J:\TJC\23041\065\2nd Mod of $3,000,000\consent.man (Telecom).docx

**Prosperity000110**

Trustee_Prosperity_000240

necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective October 3, 2021.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____

James E. Goodman, Jr., Chief Executive Officer

Prosperity000111

Trustee_Prosperity_000241

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are modifying that certain Loan (herein so called) from **PROSPERITY BANK** ("Lender") to the Borrower, the Loan being evidenced by that certain Promissory Note dated July 3, 2020, in the original principal amount of $3,000,000.00 (the "Note"). The Loan is governed by that certain Loan Agreement dated July 3, 2020 between the Borrower and the Lender, and secured by that certain Security Agreement dated July 3, 2020 between the Borrower and the Lender, granting the Lender a security interest in all of the business assets of the Borrower. The modification of the Loan is evidenced by that certain Second Loan Modification Agreement dated to be effective October 3, 2021 (the "Modification Agreement") between the Borrower and the Lender. The obligations of the Borrower were personally guaranteed by James E. Goodman, Jr. (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated July 3, 2020. As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan: the Note, the Guaranty Agreement, the Loan Agreement, Security Agreement, the Modification Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1. No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2. The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3. The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

   THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER THE DATE OF THIS NOTICE AND AGREEMENT. THERE ARE NO

Prosperity000112

Trustee_Prosperity_000242

UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED PARTIES.

**DATED** to be effective October 3, 2021.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GUARANTOR:**

_____
James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK**

By: _____
Taylor Burns, Vice President

**NOTICE AND AGREEMENT** – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\not&agr.docx

Prosperity000113

Trustee_Prosperity_000243

UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED
PARTIES.

**DATED** to be effective October 3, 2021.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GUARANTOR:**

_____
James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK**

By: _____
Taylor Burns, Vice President

NOTICE AND AGREEMENT - Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\not&agr.docx

Prosperity000114

Trustee_Prosperity_000244

## GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith, including without limitation, that certain Second Loan Modification Agreement between the Borrower and the Lender (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements,   instruments or documents as he, in his discretion, may deem

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 1
J:\TJC\23041\065\2nd Mod of $3,000,000\consent.man (Global).docx

**Prosperity000115**

Trustee_Prosperity_000245

necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective October 3, 2021.

<div style="margin-left:3em;">

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____

James E. Goodman, Jr., Chief Executive Officer

</div>

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\consent.man (Global).docx

Prosperity000116

Trustee_Prosperity_000246

## ACKNOWLEDGMENT OF GUARANTOR

**WHEREAS**, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are indebted to **PROSPERITY BANK** (the "Lender");

**WHEREAS**, the undersigned (the "Guarantor") executed and delivered to the Lender his absolute and continuing guarantee pursuant to the terms of that certain Guaranty Agreement dated to be effective July 3, 2020, whereby the Guarantor agreed to guarantee certain indebtedness of the Borrower to Lender, including that certain promissory note dated July 3, 2020 (the "Note"), executed by the Borrower and payable to the order of Lender in the original principal sum of $3,000,000.00; the Note being governed by the terms of a Loan Agreement dated July 3, 2020 from the Borrower in favor of the Lender (the Note, Loan Agreement, and any other documents executed in connection therewith are hereinafter sometimes collectively referred to as the "Loan Documents");

**WHEREAS,** the Borrower and Lender have entered into that certain Second Loan Modification Agreement of even date herewith (the "Agreement"), whereby the Borrower and Lender have agreed to modify certain terms of the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed by the undersigned, the undersigned hereby acknowledge and agree as follows:

1. Guarantor hereby acknowledges and consents to the execution and delivery of the Agreement.

2. Guarantor hereby agrees that the indebtedness described in the Agreement shall continue to be included within the indebtedness covered by the terms of the Guaranty Agreement.

3. Notwithstanding the execution and delivery of the Agreement by the Borrower and the Lender, all terms and provisions of the Guaranty Agreement shall be and shall remain unchanged except as set forth herein, and the Guaranty Agreement are hereby ratified and confirmed and shall be and shall remain in full force and effect, enforceable in accordance with its terms. Nothing contained herein or in the Agreement shall operate to release or affect the liabilities, obligations and agreements of Guarantor under or on account of the Guaranty Agreement.

4. This acknowledgment is binding not only on the Guarantor, but on the Guarantor's heirs, successors and personal representatives, and if this instrument is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the

ACKNOWLEDGMENT OF GUARANTOR - Page 1
J:\TJC\23041\065\2nd Mod of $3,000,000\guarantor.ack.docx

Prosperity000117

Trustee_Prosperity_000247

undersigned and its respective heirs, successors and personal representatives. This acknowledgment shall be governed by and construed in accordance with the laws of the State of Texas and is intended to be performed in accordance with, and only to the extent permitted by such laws.

5.      It is not the intention of the Lender or the Guarantor to obligate Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law.  Should it be determined that any portion of the indebtedness of the Borrower constitutes interest in excess of the maximum amount of interest which the Guarantor may lawfully be required to pay under applicable law, the obligation of Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

6.      Guarantor represents that they shall receive a direct and material benefit from the modification of the terms of the Loan Documents pursuant to the Agreement.

**EXECUTED** to be effective as of October 3, 2021.

**GUARANTOR:**

James E. Goodman, Jr.

ACKNOWLEDGMENT OF GUARANTOR – Page 2
J:\TJC\23041\065\2nd Mod of $3,000,000\guarantor.ack.docx

Prosperity000118

Trustee_Prosperity_000248

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF A MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being a manager of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

**WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by the terms of that certain Promissory Note dated July 3rd, 2020 (the "Note") in the original principal amount of Three Million and 00/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed, by a manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments

**Prosperity000062**

**Trustee_Prosperity_000249**

or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective July 3rd, 2020.

James E. Goodman, Jr.

**Prosperity000063**

**Trustee_Prosperity_000250**

| | |
|---|---|
| **DATE:** | **JULY 3, 2020** |
| **BORROWER:** | **GENESIS NETWORKS TELECOM SERVICES, LLC and GENESIS NETWORKS GLOBAL SERVICES, LLC** |
| **LENDER:** | **PROSPERITY BANK** |
| **LOAN AMOUNT:** | **$3,000,000.00** |

## ELECTRONIC SIGNATURES AND ELECTRONIC RECORDS ACKNOWLEDGMENT

Each party to the loan documents, including but not limited to, Promissory Note, Loan Agreement, and Mortgage, Security Agreement, Assignment of Rents and Financing Statement (Leasehold) (collectively, the "Loan Documents"), consents to the use of electronic and/or digital signatures by one, or all parties. The Loan Documents and any other documents requiring a signature hereunder, may be signed electronically or digitally in a manner specified solely by LegacyTexas Bank. The parties agree not to deny the legal effect or enforceability of the Loan Documents solely because (i) the Loan Documents are entirely in electronic or digital form, including any use of electronically or digitally generated signatures, (ii) an electronic or digital record was used in the formation of the Loan Documents or was subsequently converted to an electronic or digital record by one, or both parties. The parties agree not to object to the admissibility of the Loan Documents in the form of an electronic or digital record, or a paper copy of an electronic or digital document, or a paper copy of a document bearing an electronic or digital signature, on the grounds that the record or signature is not in its original form or is not the original of the Loan Documents or the Loan Documents do not comply with Chapter 26 of the Texas Business and Commerce Code.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr.,
Chief Executive Officer

ELECTRONIC SIGNATURES AND ELECTRONIC
RECORDS ACKNOWLEDGMENT – Page 1
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\electronic.ltr.docx

**Prosperity000068**

**Trustee_Prosperity_000251**

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager


by: _____
James E. Goodman, Jr.,
Chief Executive Officer


**GUARANTOR:**

_____
James E. Goodman, Jr.

Prosperity000069

Trustee_Prosperity_000252

## GENESIS NETWORKS TELECOM SERVICES, LLC

### WRITTEN CONSENT OF THE SOLE MANAGER
### IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral") and that certain Pledge and Security Agreement dated August 31, 2020 (the "Pledge Agreement"), from James E. Goodman, Jr. in favor of Lender; and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other

Prosperity000221

Trustee_Prosperity_000253

agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective August 31, 2020.

> **MANAGER:**
>
> **GENESIS NETWORKS ENTERPRISES, LLC,**
> a Texas limited liability company
>
> By: _____
> James E. Goodman, Jr., Chief Executive Officer

Prosperity000222

Trustee_Prosperity_000254

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF THE SOLE DIRECTOR
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole director of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

**WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by the terms of that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and being secured by, among other things, that certain Security Agreement dated August 31, 2020 from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed, by the director of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to

Prosperity000255

Trustee_Prosperity_000255

perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective January 8, 2021.

James E. Goodman, Jr.

**Prosperity000256**

**Trustee_Prosperity_000256**

## GENESIS NETWORKS GLOBAL SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and being secured by, among other things, that certain Security Agreement dated August 31, 2020 from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem

**Prosperity000257**

**Trustee_Prosperity_000257**

necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**:  Effective January 8, 2021.

                    **MANAGER:**

                    **GENESIS NETWORKS ENTERPRISES, LLC**,
                    a Texas limited liability company

                    By: _____
                         James E. Goodman, Jr., Chief Executive Officer

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 2
J:\TJC\23041\065\Modification ($1,948,427)\consent.man (Global).docx

**Prosperity000258**

**Trustee_Prosperity_000258**

## GENESIS NETWORKS TELECOM SERVICES, LLC

## WRITTEN CONSENT OF THE SOLE MANAGER
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") modify a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan being evidenced by that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and being secured by, among other things, that certain Security Agreement dated August 31, 2020 from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the modification of the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the modification of the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem

WRITTEN CONSENT OF THE SOLE MANAGER
IN LIEU OF A SPECIAL MEETING – Page 1
J:\TJC\23041\065\Modification ($1,948,427)\consent.man (Telecom).docx

Prosperity000259

Trustee_Prosperity_000259

necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**:  Effective January 8, 2021.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC**,
a Texas limited liability company

By: _____
James E. Goodman, Jr., Chief Executive Officer

Prosperity000260

Trustee_Prosperity_000260

Prosperity Bank
1205 N Navarro St
Victoria, Tx 77901-6022

Request Date:    09/02/2020

It is our policy to provide a letter of disclosure to you when quoting a verbal payoff.

Your loan # 3000002302 payoff amount is 2,012,034.97 as of 09/03/2020.

The following is a breakdown of the amount due. If you have any questions regarding this payoff, please contact Jordan Yenne at 1-800-531-1401.

| | |
|---|---|
| Borrower Name | JOHN ANDREW GOODMAN 2012 FAMILY TRUST |
| Loan # | 3000002302 |
| Unpaid Principal | $1,948,426.94 |
| Accrued Interest | $63,608.03   as of 09/03/2020 |
| Late Charges | $0.00 |
| Prepayment Penalty | $0.00 |
| Charges/Fees | $0.00 |
| Escrow Balance | $0.00 ** |
| Rebate | $0.00 |
| | |
| Total Payoff Amount | $2,012,034.97 |

**If you have a positive escrow balance, it is not netting out of the Total Payoff Amount above. If you want to net out the escrow balance, then please deduct this amount from the Total Payoff Amount.

PLEASE NOTE THAT IF THIS IS AN ADVANCING LINE OF CREDIT LOAN THE LOAN MAY NOT BE FULLY FUNDED, SO PLEASE CALL FOR UPDATED PAYOFF BEFORE CLOSING.

If payoff is received after 4:00 pm central time, payoff will be subject to an additional $284.1456 of interest per day. Funds must be received by posting cut off times for same day processing. Payoffs are not posted on weekends or holidays. Interest will be added to the account for these days.

Wire Instructions:
Beneficiary/Receiving Bank        Prosperity Bank
Beneficiary Bank ABA
Beneficiary Account Number        Loan # 3000002302
Special Information to Beneficiary    JOHN ANDREW GOODMAN 2012 FAMILY TRUST

Disclaimer: This payoff quote is provided to you for informational purposes only and is not an attempt to recover any debt against you personally. If you have filed bankruptcy, you may not be legally obligated to provide a payment of this loan. In this case, Prosperity Bank will not and cannot seek or demand payment from you for any discharged balance.

Thank you for banking with us. If we may be further assistance, please give us a call.

MEMBER
FDIC


EQUAL HOUSING
LENDER

Prosperity000215

## CERTIFICATE OF MANAGER

The undersigned, hereby certify that it is now, and at all times mentioned herein has been, the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (the "Company"), and it has access to the records of the Company, which records of the Company reflect that:

**Resolutions**.  Attached hereto as Annex 1 and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the sole Manager of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company.  Attached hereto as Annex 2 and incorporated herein by reference are true and correct copies of the Certificate of Formation and Company Agreement of the Company.  None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect.  All of such resolutions are in full force and effect on the date hereof.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Certificate effective this 3rd day of July, 2020.

MANAGER:

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____
James E. Goodman, Jr.,
Chief Executive Officer

CERTIFICATE OF MANAGER  - Page Solo
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\cert.man (Global).docx

Prosperity000053

Trustee_Prosperity_000262

## ANNEX 1

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Telecom Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

ANNEX 1 – Page Solo
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\cert.man (Global).docx

**Prosperity000054**

**Trustee_Prosperity_000263**

# ANNEX 2

Prosperity000055

Trustee_Prosperity_000264

## CERTIFICATE OF MANAGER

The undersigned, hereby certify that it is now, and at all times mentioned herein has been, the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company (the "Company"), and it has access to the records of the Company, which records of the Company reflect that:

**Resolutions**. Attached hereto as Annex 1 and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the sole Manager of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company. Attached hereto as Annex 2 and incorporated herein by reference are true and correct copies of the Certificate of Formation and Company Agreement of the Company. None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect. All of such resolutions are in full force and effect on the date hereof.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Certificate effective this 3rd day of July, 2020.

MANAGER:

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____
    James E. Goodman, Jr.,
    Chief Executive Officer

CERTIFICATE OF MANAGER - Page Solo
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\L V9FR3FQ\cert.man (Telecom).docx

**Prosperity000056**

**Trustee_Prosperity_000265**

## ANNEX 1

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**Prosperity000057**

**Trustee_Prosperity_000266**

# ANNEX 2

ANNEX 2
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\cert.man (Telecom).docx

Prosperity000058

Trustee_Prosperity_000267

## CERTIFICATE OF OFFICER

The undersigned hereby certifies that I am now, and at all times mentioned herein have been, the duly elected, qualified, and acting Chief Executive Officer of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), and as such officer I have access to the records of the Company, which records of the Company reflect that:

**Resolutions**. Attached hereto as <u>Annex 1</u> and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the Board of Directors of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company. Attached hereto as <u>Annex 2</u> and incorporated herein by reference is a true and correct copy of the Certificate of Formation and Company Agreement of the Company. None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect. All of such resolutions are in full force and effect on the date hereof.

**IN WITNESS WHEREOF**, I have duly executed this Certificate effective this 3rd day of July, 2020.

James E. Goodman, Jr., Chief Executive Officer

CERTIFICATE OF OFFICER - Page Solo
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\cert.officer.docx

Prosperity000059

Trustee_Prosperity_000268

## ANNEX 1

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company and Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower");

**WHEREAS**, it is proposed that the Borrower secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by the terms of that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and 00/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed, by the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**ANNEX 1** - Page Solo
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\cert.officer.docx

**Prosperity000060**

**Trustee_Prosperity_000269**

## ANNEX 2

**Prosperity000061**

**Trustee_Prosperity_000270**

*2459000000000001087915000000000010252021*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $3,000,000.00 | 10-25-2021 | 12-03-2021 | 1087915 | 104 | | TB3 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Genesis Networks Telecom Services, LLC
Genesis Networks Global Services, LLC
1354 N Loop 1604, Ste. 103
San Antonio, TX 78232

**Lender:** PROSPERITY BANK
PLANO OPERATIONS
P O Box 869105
Plano, TX 75086-9105

**Principal Amount: $3,000,000.00** **Date of Agreement: October 25, 2021**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated July 3, 2020, in the amount of $3,000,000.00, executed by Genesis Networks Telecom Services, LLC and Genesis Networks Global Services, LLC and payable to Prosperity Bank.

**DESCRIPTION OF COLLATERAL.** All accounts as described in the Security Agreement dated July 3, 2020.

**DESCRIPTION OF CHANGE IN TERMS.** Add demand deposit account as additional collateral further described in the Assignment of Deposit Account, dated October 14, 2021, executed by Goodman Networks Incorporated.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**NOTICE OF FINAL AGREEMENT. THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC**

**GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Telecom Services, LLC**

By: ______________________
James E. Goodman, Jr., Manager of Genesis Networks Enterprises LLC

**GENESIS NETWORKS GLOBAL SERVICES, LLC**

**GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Global Services, LLC**

By: ______________________
James E. Goodman, Jr., Manager of Genesis Networks Enterprises LLC

**LENDER:**

**PROSPERITY BANK**

X ______________________
Taylor Burns, Vice President

Prosperity000120

## CERTIFICATE OF SECRETARY

The undersigned hereby certifies that I am now, and at all times mentioned herein have been, the duly elected, qualified, and acting Secretary of **GENESIS NETWORKS ENTERPRISES, LLC,** a Texas limited liability company (the "Company"), and as such officer I have access to the records of the Company, which records of the Company reflect that:

1.    **Resolutions**. Attached hereto as Annex 1 and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the Board of Directors of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company. Attached hereto as Annex 2 and incorporated herein by reference is a true and correct copy of the Certificate of Formation and Company Agreement of the Company. None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect. All of such resolutions are in full force and effect on the date hereof.

2.    **Incumbency**. The following named individual is the duly elected, qualified and acting officer of the Company holding the offices set forth opposite his name as of the date hereof, and the signature set opposite his name and title is his true, authentic signature.

| Name | Title | Specimen Signature |
|------|-------|--------------------|
| James E. Goodman, Jr. | Chief Executive Officer/ Secretary | |

**IN WITNESS WHEREOF,** I have duly executed this Certificate effective this 31st day of August, 2020.

James E. Goodman, Jr., Secretary

**Prosperity000214**

**Trustee_Prosperity_000272**

**John Andrew Goodman 2012 Family Trust**

| 9/8/2020 | Existing Balance | | | $ | 1,948,426.94 | |
|---|---|---|---|---|---|---|
| | Accrued Interest (thru 09/03/20) | | | $ | 63,608.03 | 9/3/2020 |
| | | | | | | |
| | Sub Total | | | $ | 2,012,034.97 | |
| ADD: | Per diem | $ | 284.146 | | | |
| | | | 5 | $ | 1,420.73 | 9/8/2020 |

| TOTAL INTEREST TO WIRE | $ | 65,028.76 | |
|---|---|---|---|
| TOTAL Payoff | $ | 2,013,455.70 | Wiring Instructions on Payoff Letter |

Prosperity000216

Trustee_Prosperity_000273

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are obtaining from **PROSPERITY BANK,** a Texas banking association (the "Lender"), a Loan (herein so called) to be evidenced by that certain Promissory Note dated July 3, 2020 (the "Note"), executed by the Borrower and payable to the order of the Lender in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00).  The Loan is governed by a Loan Agreement dated July 3, 2020 between the Lender and the Borrower and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral").  All obligations of the Borrower are personally guaranteed by **JAMES E. GOODMAN, JR.** (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated July 3, 2020.  As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan:  The Note, the Loan Agreement, the Security Agreement, the Guaranty Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1.  No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.  THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2.  The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3.  The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

    THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER

Prosperity000043

Trustee_Prosperity_000274

THE DATE OF THIS NOTICE AND AGREEMENT. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED PARTIES.

**DATED** to be effective July 3, 2020.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
  a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
    its Manager

by: _____
    James E. Goodman, Jr.,
    Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
  a Texas limited liability company
   By: Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
    its Manager

by: _____
    James E. Goodman, Jr.
    Chief Executive Officer

**GUARANTOR:**

_____
James E. Goodman, Jr.

Prosperity000044

Trustee_Prosperity_000275

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____

Taylor Burns, Vice President

Prosperity000045

Trustee_Prosperity_000276

## LOAN MODIFICATION AGREEMENT

**THIS LOAN MODIFICATION AGREEMENT** (the "Agreement") is made and entered into effective as of January 8, 2021 (the "Effective Date"), by and between **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), and **PROSPERITY BANK** (the "Lender").

## R E C I T A L S

**WHEREAS**, on August 31, 2020, the Lender made a loan (the "Loan") to the Borrower in the original principal amount of $1,948,427.94;

**WHEREAS**, the Borrower executed and delivered to the Lender that certain Promissory Note dated August 31, 2020 (the "Note"), payable to the order of the Lender in the amount of and evidencing the Loan;

**WHEREAS,** the Loan is governed by the terms of a Loan Agreement dated August 31, 2020, between the Borrower and the Lender;

**WHEREAS**, the Note is secured by that certain Security Agreement of even date therewith from the Borrower for the benefit of the Lender, granting the Lender a security interest in all of the business assets of the Borrower. The Loan Agreement, Security Agreement and any other document executed in connection with or securing the repayment of the Note are hereinafter sometimes collectively referred to as the "Security Documents"; and,

**WHEREAS**, the Lender and Borrower now propose to modify the Note, as more particularly described herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Lender, the Borrower hereby agree as follows:

1.    <u>Modification</u>.  The second full paragraph on page 2 of the Note is hereby modified in its entirety as follows:

   "The Note is governed by the terms of the Loan Agreement dated August 31, 2020 between the Maker and the Lender. The Note is secured by that certain Security Agreement dated August 31, 2020 from Maker for the benefit of the Lender, granting the Lender a security interest in all business assets of the Maker and that certain Pledge and Security

<u>**LOAN MODIFICATION AGREEMENT**</u> – Page 1
J:\TJC\23041\065\Modification ($1,948,427)\lma.docx

Prosperity000231

Trustee_Prosperity_000277

Agreement dated January 8, 2021 from John A. Goodman (the "Pledgor") for the benefit of the Lender, granting the Lender a security interest in all of the Pledgor's partnership interest in Goodman MBE Group LP, a Texas limited partnership (the "Partnership"). The business assets of the Borrower and the partnership interest of Pledgor are hereinafter sometimes collectively referred to as the "Collateral". The obligations of the Maker under the Note have been personally guaranteed by James E. Goodman, Jr. (the "Guarantor") pursuant to the terms of that certain Guaranty Agreement dated August 31, 2020."

2.      Acknowledgment by the Borrower. Except as otherwise specified herein, the terms and provisions of this Agreement shall in no manner impair, limit, restrict or otherwise affect the obligations of the Borrower under the Security Documents. As a material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges and agrees that the security interests created and evidenced by the Security Documents are valid and subsisting security interests encumbering the Collateral. As a further material inducement to the Lender to execute and deliver this Agreement, the Borrower hereby acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions and the obligations created or evidenced by the Security Documents.

3.      Controlling Agreement. All agreements between the Borrower and the Lender, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid to the Lender for the use, forbearance or detention of the money loaned or to be loaned pursuant to the Note or otherwise, or for the performance or payment of any covenant or obligation contained herein or in the Security Documents, exceed the Maximum Rate. If for any circumstances whatsoever fulfillment of any provision hereof or of any other document evidencing, securing or pertaining to the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if from any such circumstance the Lender shall ever receive as interest under the Security Documents or otherwise an amount which would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Note and not to the payment of interest; or if such excessive interest exceeds the unpaid principal balance of the Note, such excess shall be refunded to the Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced by the Note shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness is uniform throughout the terms thereof.

Prosperity000232

Trustee_Prosperity_000278

4.     <u>Additional Documentation</u>. From time to time, the Borrower shall execute or procure and deliver to Lender such other further documents and instruments evidencing, securing or pertaining to the Note and the Security Documents as shall be reasonably requested by Lender so as to evidence or affect the terms and provisions hereof.

5.     <u>Effectiveness of Security Documents</u>. Except as expressly modified by the terms and provisions hereof, each and every of the terms and provisions of the Note and Security Documents are and shall remain in full force and effect.

6.     <u>Notices</u> Any notices, consents or other communications required or permitted to be given pursuant to this Agreement or the Security Documents must be in writing and shall be deemed served and given in the manner required by the terms of the Loan Agreement. Notice given in any other manner shall be effective only if and when received by the addressee. Any party may provide written notice of a substitute address pursuant to written notice delivered to the other parties in accordance with the terms of the Loan Agreement; provided, however, that no such notice of change of address shall be effective unless and until actually received by the party to whom such notice is sent.

7.     <u>Governing Law</u>. The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the laws of the United States applicable to transactions within the State of Texas. This Agreement is performable in Dallas County, Texas. Time is of the essence in the performance of the covenants contained herein and in the Security Documents.

8.     <u>Entire Agreement</u>. This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein, and all prior or contemporaneous agreements, understandings, representations and statements (whether oral or written) are merged into this Agreement. Neither this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

9.     <u>Right of Offset</u>. Lender shall be entitled, as further security for the payment of the Note, to a security interest in all property pledged as collateral and any money found on deposit with the Lender to the credit of the undersigned, and may retain and apply such money, securities or proceeds of such collections to the payment of the Note. The Lender's right of setoff applies without prior notice by Lender to Borrower. Lender shall not be liable for wrongful dishonor of a check if such dishonor occurs because of Lender's setoff of the indebtedness evidenced by the Note against Borrower's accounts.

<u>**LOAN MODIFICATION AGREEMENT**</u> – Page 3
J:\TJC\23041\065\Modification ($1,948,427)\lma.docx

Prosperity000233

10.    <u>Due on Death</u>. Borrower covenants and agrees that upon the death of any signatory, maker, co-maker or guarantor of the Note, the Lender may, at its option, accelerate the entire balance due on the Note, whereupon all amounts due and owing shall immediately be due and payable.

11.    <u>Cross Collateral</u>. In addition to securing the indebtedness evidenced by the Note, the Property and any other collateral securing repayment of the Note shall also secure the payment and performance of all other indebtedness and obligations of whatever kind and character (except solely any indebtedness which is prohibited from being secured hereby under the laws of the State of Texas), owing or which may hereafter become owing or to be performed by Borrower to Lender, whether such indebtedness or obligations are evidenced by a note, open accounts, overdraft, endorsement, surety agreement, guaranty agreement, or otherwise, and whether such indebtedness or obligations are present or future, direct or indirect, primary or secondary, joint or several, fixed, contingent or otherwise, whether such indebtedness or obligations were originally owed to Lender or to be performed for Lender or owed to or to be performed for others and acquired by purchase or otherwise by Lender, and whether or not such indebtedness or obligations were created by any then owner of any interest in or to any of the Property, it being contemplated that Borrower may now or hereafter be or become indebted or obligated to Lender in further sum or sums.

12.    <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Original Borrower, the Borrower and the Lender, and their respective heirs, successors and assigns.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

<u>**LOAN MODIFICATION AGREEMENT**</u> – Page 4
J:\TJC\23041\065\Modification ($1,948,427)\lma.docx

Prosperity000234

Trustee_Prosperity_000280

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**LENDER:**

**PROSPERITY BANK**

By: _____
Taylor Burns, Vice President

Prosperity000235

Trustee_Prosperity_000281

**DATE:**        **AUGUST 31, 2020**

**BORROWER:**        **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**        **PROSPERITY BANK**

**LOAN AMOUNT:**  **$1,948,427.94**

## ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

      Borrower agrees that it shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, Borrower agrees that if any document relating to the Loan does not accurately reflect the terms of the Loan, the Borrower shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Borrower agrees to do so regardless of whether the inaccuracy arises from a mistake by Lender, a mistake by both Borrower and Lender, or a clerical error made by any party. Borrower agrees to act upon a request from Lender to sign or initial any corrected document or replacement document within a reasonable period of time.

      Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
   a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

      by: _____
         James E. Goodman, Jr., ~~Chief Executive Officer~~
                      Founder

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
   a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

      by: _____
         James E. Goodman, Jr., Chief Executive Officer

ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT – Page Solo
J:\TJC\23041\065\$1,948,427\errors.omissions.docx

Prosperity000224

Trustee_Prosperity_000282

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GUARANTOR:**

_____
James E. Goodman, Jr.

**Prosperity000225**

**Trustee_Prosperity_000283**

## LIEN RELEASE AND ASSIGNMENT OF PROCEEDS AGREEMENT

THIS LIEN RELEASE AND ASSIGNMENT OF PROCEEDS AGREEMENT (this "Agreement") is made as of July 9th, 2020 by and between **CITIBANK, N.A.**, its branches, subsidiaries and affiliates ("Citibank"), with an address at Insert Address, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company (collectively "Debtor") with an address at 1354 N. Loop 1604 E., San Antonio, TX 78232, and **PROSPERITY BANK**, a Texas banking association ("Creditor") with an address at 5949 Sherry Lane, Suite 800, Dallas, TX 75225.

### RECITALS:

A.  Creditor has loaned, extended credit or otherwise agreed to become a creditor of Debtor pursuant to a financing agreement entered into between Debtor and Creditor (such financing agreement, together with all agreements, instruments and other documents related thereto, as the same may be amended or supplemented from time to time, hereinafter the ("Credit Facility") and has received, and may from time to time hereafter, in connection therewith, a security interest in certain personal property of Debtor, including accounts receivable owed to Debtor by one or more account debtors including **AT&T Services Inc.,** and/or its various subsidiaries and affiliates, and **Verizon Sourcing, LLC**, and/or its various subsidiaries and affiliates (collectively, "Buyers") (such receivables owed by Buyers, including related security and the proceeds thereof, the "Creditor Receivables").

B.  Citibank from time to time wishes to purchase from Debtor and Debtor wishes to sell to Citibank, in accordance with the terms of that certain Supplier Agreement (as amended from time to time, the "Supplier Agreement") between Citibank and Debtor, accounts receivable owed to Debtor by Buyers (all such accounts receivable, including related security received from Buyers and the proceeds thereof, the "Citibank Receivables").

C.  The parties hereto desire and intend to establish, as between themselves, the priority, operation and effect of the security and other interests of Creditor and Citibank in the Creditor Receivables (including, without limitation, the Citibank Receivables).

D.  Creditor requires that Debtor assign to Creditor Debtor's rights under the Supplier Agreement to receive payment from Citibank of the purchase price for the Citibank Receivables.

E.  Citibank requires that Creditor consent to the sale of, and release its lien on, the Citibank Receivables upon Citibank's purchase thereof.

NOW, THEREFORE, intending to be legally bound hereby, the parties hereto agree as follows:

1.  Creditor hereby consents to the sale by Debtor and purchase by Citibank, from time to time, of the Citibank Receivables pursuant to the terms of the Supplier Agreement

2.  Effective only upon the purchase by Citibank of the Citibank Receivables and payment by Citibank of the purchase price to the Designated Account (as such term is defined in the Supplier Agreement) in accordance with the Supplier Agreement and Section 4 of this Agreement, Creditor agrees that the security interest of Creditor in the Citibank Receivables is hereby automatically released. If for any reason such purchase of Citibank Receivables by Citibank is judicially recharacterized as a grant of collateral by Debtor to secure a financing by Citibank, then Creditor acknowledges and agrees that it has no lien on or security interest in the Citibank Receivables. Citibank hereby acknowledges and agrees that, in connection with the Supplier Agreement, it has and will have no right, title or interest, by way of purchase, security interest or otherwise, in any of Debtor's present and future property of any kind, including the Creditor Receivables, other than the Citibank Receivables, provided that this acknowledgement and agreement is without prejudice to any such right, title or interest that Citibank may acquire in connection with any financing or other commercial transaction unrelated to the Supplier Agreement that Citibank may have entered into, or may hereafter enter into, with Debtor.

3.  As additional security for the indebtedness of Debtor to Creditor, Debtor hereby assigns to Creditor and grants Creditor a security interest in all of the rights of Debtor in and to proceeds or monies due to Debtor under the Supplier Agreement.

4.  Citibank acknowledges the foregoing assignment and grant of security interest to Creditor of such funds, moneys and claims for money due or to become due to Debtor under the Supplier Agreement and Citibank agrees to remit such amounts (without reduction for any rights of setoff other than as permitted under the Supplier Agreement) to the Designated Account. Debtor agrees not to change the Designated Account without the prior written consent of Creditor.

5.  Upon remittance of the purchase price relating to any Citibank Receivable to the Designated Account, Citibank shall be released and discharged of its obligations to Debtor and Creditor with respect to such Citibank Receivable.

6.  Debtor hereby agrees to indemnify and to hold Citibank harmless from any and all liability or expense which may be incurred by reason of Citibank's recognition of this Agreement and of the security interest herein contained and the making of remittances to the Designated Account as herein provided. The foregoing indemnity shall survive the termination of this Agreement.

7.  The rights in and to the Creditor Receivables and Citibank Receivables and the release of the Citibank Receivables set forth above shall apply notwithstanding the operation or provisions of applicable law, the time, order or method of

**Prosperity000077**

**Trustee_Prosperity_000284**

attachment or perfection of security interests or the time and order of filing of financing statements or any other liens held by the parties, whether under the Uniform Commercial Code or other applicable law.

8.  Each of Creditor and Citibank agrees that it shall not challenge, contest, or join or support any other person in challenging or contesting, whether directly or indirectly, the validity, perfection, priority or enforceability of the other party's ownership or security interest (in the case of the Citibank Receivables) or security interest (in the case of the Creditor Receivables), as applicable, in a manner inconsistent with this Agreement.

9.  Upon written notice from Creditor, Citibank agrees to as promptly as practicable turn or pay over to Creditor (pursuant to wire instructions set forth in such notice) any amounts that may come into its possession that derive from Creditor Receivables other than Citibank Receivables. Upon written notice from Citibank, Creditor agrees to as promptly as practicable turn or pay over to Citibank (pursuant to wire instructions set forth in such notice) any amounts that may come into its possession that derive from Citibank Receivables. Except as set forth above, neither party shall have any other duty or obligation of any other nature, including with respect to the attachment or creation of any other party's security interest or any cred it decisions of such other party with respect to Debtor. Creditor acknowledges that Citibank and Debtor have or may have business relationships in addition to the purchase and sale of the Citibank Receivables.

10. This Agreement shall remain in effect until the earlier of (a) the termination of the Credit Facility and the payment in full of all indebtedness and liabilities of Debtor to Creditor thereunder, and (b) the termination of the Supplier Agreement and the payment in full of all amounts outstanding with respect to Citibank Receivables purchased by Citibank, whichever is later (including, in each case, during any bankruptcy, insolvency or similar proceeding involving Debtor). This Agreement shall be binding upon and inure to the benefit of Creditor and Citibank and their respective successors and assigns.

11. All notices, demands, requests, consents, approvals and other communications required or permitted hereunder ("Notices") must be in writing and will be effective upon receipt. Notices may be given in any manner to which the parties may agree. Without limiting the foregoing, first-class mail, facsimile transmission and commercial courier service are hereby agreed to as acceptable methods for giving Notices. Regardless of the manner in which provided, Notices may be sent to a party's address set forth above or to such other address as any party may give to the other in writing (including on its signature page hereto) for such purpose in accordance with this Section.

12. This Agreement (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral among all parties hereto with respect to the subject matter hereof.

13. This Agreement may be executed in any number of counterparts, which taken together shall constitute a single copy of this Agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile transaction or PDF shall be effective as delivery of a manually executed counterpart of this Agreement.

14. This Agreement is governed by the laws of the State of New York without regard to such state's conflict of laws principles. Citibank, Debtor, and Creditor agree that any New York State or Federal court sitting in New York City shall have non-exclusive jurisdiction to settle any dispute in connection with this Agreement, and the parties hereby submit to the jurisdiction of those courts. Citibank, Debtor, and Creditor each waive any right to immunity from jurisdiction to which it may be entitled (including, to the extent applicable, immunity from pre- and post-judgment attachment and execution.)

IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement as of the date and year first above written.

[Remained Of This Page Intentionally Left Blank]

Prosperity000078

Creditor:
**PROSPERITY BANK,**
a Texas banking association

By: _____

Print Name: Taylor Burns
Title: Vice President

Address for Notices:
5949 Sherry Lane, Suite 600
Dallas, TX 75225

Citibank:
**CITIBANK, N.A.**

By: _____
          Shelly-Ann Gordon
            Citibank, N.A.
Print Name:    Vice President
          388 Greenwich Street
Title:        28th Floor
Address for Notices: New York 10013
          (212) 816-2739

Debtor:
**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By: Genesis Networks Enterprises, LLC
  a Texas limited liability company,
  its Manager

By: _____

Print Name: Cathy Kincy
Title: Chief Financial Officer

Address for Notices:
1354 N. Loop 1604 E., Suite 103
San Antonio, Texas 78232

Lien Release and Acknowledgment Agreement (ICG-Trade-01-14) (Senior Creditor Form)

**Prosperity000079**

**Trustee_Prosperity_000286**

DATE:          **JANUARY 8, 2021**

BORROWER:    **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

LENDER:        **PROSPERITY BANK**

LOAN:          **MODIFICATION OF $1,948,427.94 LOAN**

### ATTORNEY REPRESENTATION LETTER

      Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C. As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C. The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith. The undersigned has been and is hereby advised to obtain counsel of its own choice to represent them in this transaction.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
  a Texas limited liability company
    By:  Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
  a Texas limited liability company
    By:  Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

Prosperity000250

Trustee_Prosperity_000287

**DATE:**          **JANUARY 8, 2021**

**BORROWER:**  **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**       **PROSPERITY BANK**

**LOAN:**         **MODIFICATION OF $1,948,427.94 LOAN**

## ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT

The parties agree that they shall fully cooperate in the correction of any clerical errors made on any or all documents relating to the Loan. Additionally, the parties agree that if any document relating to the Loan does not accurately reflect the terms of the Loan, the parties shall sign or initial any corrected document or replacement document that accurately reflects the terms of the Loan. Each party agrees to do so regardless of whether the inaccuracy arises from a mistake by the other party, a mistake by both Borrower and Lender, or a clerical error made by any party. Each party agrees to act upon a request from the other party to sign or initial any corrected document or replacement document within a reasonable period of time.

Borrower understands that a failure or refusal to comply with a reasonable request made by Lender to sign, initial or otherwise assist in the correction of any loan document is an event of default and may allow Lender to take any action provided by the terms of the Loan.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**ERRORS, OMISSIONS AND COMPLIANCE AGREEMENT** – Page 1
J:\TJC\23041\065\Modification ($1,948,427)\errors.omissions.docx

Prosperity000251

Trustee_Prosperity_000288

**LENDER:**

**PROSPERITY BANK**

By: _____

Taylor Burns, Vice President

Prosperity000252

Trustee_Prosperity_000289

## NOTICE AND AGREEMENT

### Given and Made Pursuant to Section 26.02(e) of
### the Texas Business and Commerce Code

**GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower") are modifying that certain Loan (herein so called) from **PROSPERITY BANK** ("Lender") to the Borrower, the Loan being evidenced by that certain Promissory Note dated August 31, 2020, in the original principal amount of $1,948,427.94 (the "Note"). The Loan is governed by that certain Loan Agreement dated August 31, 2020 between the Borrower and the Lender, and secured by that certain Security Agreement dated August 31, 2020 between the Borrower and the Lender, granting the Lender a security interest in business assets of the Borrower as more particularly described therein. The modification of the Loan is evidenced by that certain Loan Modification Agreement dated to be effective January 8, 2021 (the "Modification Agreement") between the Borrower and the Lender. The obligations of the Borrower were personally guaranteed by James E. Goodman, Jr. (the "Guarantor"), pursuant to the terms of that certain Guaranty Agreement dated August 31, 2020. As used herein, the term "Loan Instruments" shall mean all of the following instruments that are signed by the party to be bound thereby and delivered in connection with the Loan: the Note, the Guaranty Agreement, the Loan Agreement, Security Agreement, the Modification Agreement, and all other instruments relating to the Loan, including, without limitation, all such instruments that pertain to the administration of the Loan.

The undersigned take notice of and covenant and agree to the following:

1.    No agreement involving a loan of more than $50,000.00 in value is enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative. THUS, AN AGREEMENT OR COMMITMENT TO MAKE SUCH A LOAN MUST BE IN WRITING AND SIGNED BY THE PROPOSED LENDER OR IT WILL NOT BE ENFORCEABLE.

2.    The rights and obligations of Borrower and Lender under the Loan Instruments shall be determined solely from the Loan Instruments, and any prior oral agreements between the Borrower and Lender relating to the Loan are superseded by and merged into the Loan Instruments.

3.    The following notice is given pursuant to Section 26.02(e) of the Texas Business and Commerce Code:

THE LOAN INSTRUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE UNDERSIGNED PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF ORAL AGREEMENTS OF THE UNDERSIGNED PARTIES, WHETHER MADE BEFORE, ON, OR AFTER

Prosperity000253

Trustee_Prosperity_000290

THE DATE OF THIS NOTICE AND AGREEMENT.   THERE ARE NO
UNWRITTEN ORAL AGREEMENTS BETWEEN THE UNDERSIGNED
PARTIES.

**DATED** to be effective January 8, 2021.

### BORROWER:

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
 a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
   a Texas limited liability company,
    its Manager

    by: _____
     James E. Goodman, Jr., Chief Executive Officer

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
 a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
   a Texas limited liability company,
    its Manager

    by: _____
     James E. Goodman, Jr., Chief Executive Officer

### GUARANTOR:

_____
James E. Goodman, Jr.

### LENDER:

**PROSPERITY BANK**

By: _____
   Taylor Burns, Vice President

**Prosperity000254**

Trustee_Prosperity_000291

## GENESIS NETWORKS ENTERPRISES, LLC

## WRITTEN CONSENT OF THE SOLE DIRECTOR
## IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole director of **GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, the Company is the sole Manager of Genesis Networks Telecom Services, LLC, a Texas limited liability company;

**WHEREAS**, it is proposed that Genesis Networks Telecom Services, LLC, together with Genesis Network Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by the terms of that certain Promissory Note dated August 31, 2020 (the "Note") in the original principal amount of One Million Nine Hundred Forty-Eight Thousand Four Hundred Twenty-Seven and 94/100 Dollars ($1,948,427.94), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the business assets of the Borrower (the "Collateral") and that certain Pledge and Security Agreement dated August 31, 2020 (the "Pledge Agreement"), from James E. Goodman, Jr. in favor of Lender; and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed, by the director of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Company, be, and is hereby, authorized, empowered and directed to

<u>WRITTEN CONSENT OF THE SOLE DIRECTOR</u>
<u>IN LIEU OF A SPECIAL MEETING</u> – Page 1
J:\TJC\23041\065\$1,948,427\consent (Enterprises).docx

Prosperity000219

Trustee_Prosperity_000292

perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as his, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective August 31, 2020.

James E. Goodman, Jr.

Prosperity000220

Trustee_Prosperity_000293

# LOAN AGREEMENT

**THIS LOAN AGREEMENT** (the "Agreement") dated to be effective as of July 3, 2020 is made by and between **PROSPERITY BANK**, a Texas banking association (the "Lender") whose address is 5949 Sherry Lane, Suite 600, Dallas, Texas   75225, and **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company, and **GENESIS NETWORKS GLOBAL SERVICES, LLC,** a Texas limited liability company (collectively, the "Borrower"), and **JAMES E. GOODMAN, JR.** (the "Guarantor"), whose addresses are 1354 N. Loop 1604 E, Suite 103, San Antonio, Texas  78232.

## ARTICLE 1.
## DEFINITIONS

For purposes of this Agreement, the following terms shall have the respective meanings assigned to them.

1.1    **Account Debtor**.   The term "Account Debtor" shall mean all customers, clients and other Persons who purchase goods or services from the Borrower.

1.2    **Accounts**.   The term "Accounts" shall mean all of the Borrower's accounts receivable that satisfy the following conditions:

(i)    have arisen from services performed by Borrower to or for the Account Debtor or the sale by Borrower of goods in which Borrower had sole ownership where such goods have been shipped or delivered to the Account Debtor;

(ii)    represent complete bona fide transactions which require no further act under any circumstances on the part of Borrower to make such accounts receivable payable by the Account Debtor;

(iii)    the goods of sale which gave rise to such accounts receivable were shipped or delivered to the Account Debtor on an absolute sale basis and not on consignment, a sale or return basis, or on the basis of any similar understanding;

(iv)    the goods of sale giving rise to such accounts receivable were not, at the time of the sale thereof, subject to any lien, except the security interest in favor of the Lender created by the Security Instruments;

(v)    are not subject to any provision prohibiting assignment or requiring notice of or consent to such assignment;

(vi)    are subject to perfected, first priority security interest in favor of Lender;

**Prosperity000001**

**Trustee_Prosperity_000294**

(vii)   have arisen in the ordinary course of business of Borrower, and for which no notice of bankruptcy, insolvency or financial difficulty of the Account Debtor shall have been received or is reasonably anticipated by Borrower or Lender; and

(viii)  are not evidenced by chattel paper or an instrument of any kind.

1.3    **Advance Request Form**.    The term "Advance Request Form" means a certificate, in substantially the form of Exhibit "A" attached hereto, properly completed and signed by the Borrower requesting an Advance.

1.4    **Available Amount**.  The term "Available Amount" shall mean the sum available to advance to the Borrower which is equal to the Maximum Loan Amount less the unpaid principal balance of the Note.

1.5    **Borrowing Base**.  The term "Borrowing Base" shall mean at any time, and from time to time, the sum equal to eighty percent (80%) of Eligible Accounts.

1.6    **Borrowing Base and Compliance Certificate**.  The term "Borrowing Base and Compliance Certificate" shall mean the report certified by Borrower's duly authorized officer, similar in form and content to Exhibit "B" attached hereto and incorporated herein by reference.

1.7    **Closing Date**.  The term "Closing Date" shall mean the date of execution of this Agreement and all other Security Instruments which shall occur as of, although not necessarily on, the date first written above.

1.8    **Code**.  The term "Code" shall mean the Texas Business and Commerce Code as now written or as hereafter amended or succeeded.

1.9    **Collateral**.  The term "Collateral" shall mean a first and priority security interest in all of Borrower's Accounts and inventory, equipment, trade fixtures, chattel paper and general intangibles, whether now owned or hereafter acquired, and all products and proceeds thereof.

1.10   **Debt Service Coverage Ratio**.  The term "Debt Service Coverage Ratio" shall mean Net Operating Income divided by debt service payable by the Borrower during the applicable reporting period.

1.11   **Eligible Accounts**.    The term "Eligible Accounts" shall mean all of the Borrower's accounts less Ineligible Accounts.

1.12   **Financial Statements**. The term "Financial Statements" shall mean the balance sheets, profit and loss statements, and other financial information of Borrower and Guarantor heretofore furnished to Lender or required to be furnished to Lender under the terms of this Agreement or any of the Security Instruments from time to time, which statements shall be prepared in such scope, detail and form as shall be reasonably acceptable to Lender.

**Prosperity000002**

**Trustee_Prosperity_000295**

1.13   **Governmental Authority**.  The term "Governmental Authority" shall mean the United States, the state, the county, the city, and any other political subdivision in which the Collateral is located, and any other political subdivision, agency, or instrumentality exercising jurisdiction over Borrower or the Collateral.

1.14   **Governmental Requirements**.  The term "Governmental Requirements" shall mean all laws, ordinances, rules and regulations of any Governmental Authority applicable to Borrower or the Collateral.

1.15   **Guaranty Agreement**.  The term "Guaranty Agreement" shall mean the written agreement providing for the guarantee by the Guarantor of payment of the Loan and all of Borrower's obligations under the Security Instruments.

1.16   **Ineligible Accounts**.  The term "Ineligible Accounts" shall mean all of the Borrower's Accounts that satisfy the following conditions:

(a)   have been outstanding more than ninety (90) days;

(b)   are intercompany or affiliate Accounts;

(c)   are Accounts which are disputed or counterclaims exist;

(d)   are Accounts in which the Account Debtor has filed bankruptcy;

(e)   all Accounts owed by an Account Debtor to Borrower, if more than twenty percent (20%) of the balances then outstanding on such Accounts by such Account Debtor to Borrower have remained unpaid for more than ninety (90) days past due date;

(f)   to the extent any Account Debtor of Borrower has Accounts due Borrower which in the aggregate are more than 25% of all Accounts of the Borrower, the amount in excess of 80% of the Accounts of such Account Debtor [provided, however, Accounts for AT&T and Verizon shall be excluded from this calculation and further referenced in Section 1.16(i) below];

(g)   are Accounts which the Lender has sent written notification to the Borrower that such Accounts are Ineligible Accounts;

(h)   are Accounts pledged to secure indebtedness due the Receivables Lender; or

(i)   are Accounts of AT&T or Verizon in excess of 80% of such Accounts.

1.17   **Intercreditor Agreement**.  The term "Intercreditor Agreement" shall mean that certain _____ dated _____, 2020 between, Borrower, Lender and the Receivables Lender.

**LOAN AGREEMENT** - Page 3
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

**Prosperity000003**

Trustee_Prosperity_000296

1.18   **Loan**.  The term "Loan" shall mean the loan by Lender to Borrower pursuant to this Agreement and to be evidenced by the Note.

1.19   **Maximum Loan Amount**.  The term "Maximum Loan Amount" shall mean the sum equal to the lesser of (a) $3,000,000.00, or (b) the Borrowing Base.

1.20   **Net Operating Income**.  The term "Net Operating Income" shall mean gross revenue generated from operations conducted by the Borrower, less reasonable and necessary operating expenses incurred in connection therewith, all as reasonably determined by the Lender.

1.21   **Note**.  The term "Note" shall mean the promissory note from Borrower to Lender to be executed upon the execution of this Agreement in the principal amount of $3,000,000.00.

1.22   **Receivables Lender**.  The term "Receivables Lender" shall mean Citibank, N.A..

1.23   **Security Agreement**.  The term "Security Agreement" shall mean that certain Security Agreement to be executed by Borrower granting to Lender a security interest in the Collateral to secure the payment and performance of all obligations specified in this Agreement and the Security Instruments.

1.24   **Security Instruments**.  The term "Security Instruments" shall mean this Agreement, the Security Agreement, the Note, the Guaranty Agreement and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Borrower or any other party to Lender pursuant to this Agreement.

1.25   **Tangible Net Worth.**  The term "Tangible Net Worth" shall mean total assets of the Borrower, excluding all intercompany eliminations and intangible assets such as goodwill, trademarks, organizational expenses and similar intangible items, less total liabilities and debt formally subordinated to the Lender.

## ARTICLE 2.
## THE LOAN; CONDITIONS PRECEDENT TO LOAN

2.1   **The Loan**.  Subject to the terms and conditions of this Agreement, Lender agrees to establish a revolving line of credit for providing working capital to the Borrower. The Lender agrees to lend to the Borrower from the Closing Date until the first anniversary of the Closing Date, such amounts as Borrower may from time to time request (each such amount being herein called an "Advance") so long as each advance does not exceed the Available Amount and the aggregate amount of the advances outstanding at any time does not exceed the Maximum Loan Amount.  The obligation of the Borrower to repay the Loan shall be evidenced by the Note executed by the Borrower and payable to the Lender. The amount of principal owing under the Note at any given time shall be the aggregate amount of all advances made, minus all payments of principal received by the Lender and applied to the Note. The Borrower shall pay to Lender all advances in accordance with the terms of the Note. The obligations of the Borrower under the

**LOAN AGREEMENT** - Page 4
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

Prosperity000004

Trustee_Prosperity_000297

Loan are secured by the Security Agreement from Borrower in favor of Lender, granting the Lender a security interest in the Collateral. The obligations of the Borrower under the Loan are personally guaranteed by the Guarantor pursuant to the terms of the Guaranty Agreement.

2.2 **Conditions Precedent**. The obligation of the Lender to fund the Loan shall be subject to the satisfaction of the following conditions, unless any such condition shall have been modified or waived by Lender:

(a) All representations and warranties set forth in this Agreement and in the Security Instruments shall be true and complete as of the date of any advance.

(b) No Event of Default, as defined herein or in the Security Instruments, and no event or condition which with notice or the passage of time or both as prescribed herein or in the Security Instruments, would constitute any such Event of Default has occurred and remains uncured to Lender's satisfaction.

(c) There shall have been no material adverse change in the condition of the Collateral or in the business or financial condition of Borrower or the Guarantor.

(d) All statements and other information contained in the Financial Statements of Borrower and Guarantor are true and complete, in all material respects, and all other certificates, statements and data furnished to Lender by or on behalf of Borrower or Guarantor in connection with the transactions contemplated by this Agreement or any of the other Security Instruments are true and complete in all material respects, and there are no facts or events known to Borrower or Guarantor which, if disclosed to Lender, would make such statements, certificates or data untrue in any material respect.

(e) Borrower and Guarantor, as the case may be, shall have executed and acknowledged the Security Instruments in form reasonably acceptable to the Lender.

(f) Borrower shall have delivered to the Lender the insurance policies or certificates of such insurance as specified in Section 4.7 herein.

(g) Borrower shall have provided Lender with evidence satisfactory to Lender or its legal counsel that all necessary action on the part of the Borrower has been taken with respect to the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, so that this Agreement and all Security Instruments executed and delivered by or on behalf of the Borrower, shall be valid and binding upon the Borrower, or the person executing and delivering such document, in accordance with its terms.

(h) Borrower shall have entered into the Intercreditor Agreement with the Lender and Receivables Lender.

(i) Borrower shall have delivered to Lender such other documents as Lender shall reasonably require.

**Prosperity000005**

**Trustee_Prosperity_000298**

2.3    **Request for Advance**.  Borrower may request an Advance in writing by the execution and delivery of an Advance Request Form to Lender in person or via email by no later than 2:00 p.m. (Dallas, Texas time) on the date the requested Advance is to be funded. If all conditions precedent to lending as set forth herein have been met, the Lender shall on the date requested make such Advance available to Borrower in immediately available funds at the Lender's office in Dallas, Texas.

2.4    **Additional Security**.  If at any time Lender shall determine in good faith that the Collateral has declined or may decline in value or Lender shall deem payment of the Note to be insecure, then Lender may call for additional collateral to secure the Loan satisfactory to Lender.

2.5    **Conditions Precedent for the Benefit of Lender**.  All conditions precedent to the obligation of Lender to make the Loan are imposed hereby solely for the benefit of Lender, and no other party may require satisfaction of any such condition precedent or be entitled to assume that Lender will refuse to make the Loan in the absence of strict compliance with such conditions precedent.

2.6    **Mandatory Principal Reductions**.  If at any time the outstanding principal balance under the Note exceeds the Maximum Loan Amount, then the Borrower shall prepay the amount of such excess for application toward reduction of the outstanding principal balance of the Note. Such prepayment shall be without premium or penalty.

2.7    **Cross-Collateralization and Default**.  The Security Instruments, including this Agreement, and any other documents or instruments given in connection with, or as security for any obligation of the Borrower, shall serve as security for all other indebtedness and obligations of the Borrower to the Lender, and an Event of Default under any Security Instrument, shall constitute an Event of Default under any other loan from the Borrower to the Lender.

### ARTICLE 3.
### REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower represents and warrants to Lender as follows:

3.1    **Financial Statements**. The Financial Statements are true, correct, and complete, in all material respects, as of the dates specified therein and fully and accurately present the financial condition of Borrower and Guarantor.  No material adverse change has occurred in the financial condition of Borrower or Guarantor since the date of the Financial Statements.

3.2    **Suits, Actions, Etc**.  There are no material actions, suits, or proceedings pending or threatened in any court, before or by any Governmental Authority against or affecting Borrower or the Collateral, or involving the validity, enforceability, or propriety of any of the Security Instruments, at law or in equity.  The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the Security Instruments, shall not result in a breach of, or constitute a default in, any mortgage, deed of trust,

**LOAN AGREEMENT** - Page 6
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

**Prosperity000006**

**Trustee_Prosperity_000299**

lease, promissory note, loan agreement, credit agreement, partnership agreement, or other agreement to which Borrower or Guarantor is a party or by which Borrower or Guarantor may be bound or affected.

3.3    **Valid and Binding Obligation**.  All of the Security Instruments, and all other documents referred to herein to which Borrower or Guarantor is a party, constitute valid and binding obligations of Borrower and Guarantor, enforceable in accordance with their terms except as limited by debtor relief laws.

3.4    **Title to Collateral**.  Borrower holds full legal and equitable title to the Collateral. The Collateral is not subject to any other liens except liens in favor of the Lender and with respect to certain Accounts of the Borrower, liens in favor of the Receivables Lender.

3.5    **Compliance With Governmental Requirements**.    Based on their actual knowledge, Borrower and Guarantor are in compliance with all material requirements of all applicable federal, state and local statutes and regulations and shall continue to be in compliance therewith during the term of the Loan.

3.6    **Use of Loan Proceeds.**  All loan proceeds or funds furnished by Lender to Borrower shall be used solely for the purposes specified in Article 2 of this Agreement.

3.7    **Principal Place of Business**.  The principal place of business and chief executive office of the Borrower and the place where Borrower keeps its books and records is located at the address of the Borrower set forth at the beginning of this Agreement.

3.8    **Incorporation of Representations and Warranties**.    Each representation, warranty and covenant of Borrower and Guarantor contained in the Security Instruments are hereby incorporated herein by reference for all purposes.

3.9    **Existence**. Each Borrower is duly organized and validly existing under the laws of the State of Texas and has all requisite power and authority to execute and deliver the Security Instruments. All approvals or consents of any person or entity required in connection with the execution and delivery of and performance by Borrower of its obligations under this Agreement and the Security Instruments has been obtained.

## ARTICLE 4.
## COVENANTS AND AGREEMENTS OF BORROWER

Borrower covenants and agrees as follows:

4.1    **Compliance with Governmental Requirements**.  Borrower shall timely comply with all Governmental Requirements.

**LOAN AGREEMENT** - Page 7
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

**Prosperity000007**

**Trustee_Prosperity_000300**

4.2 **Inspection of the Collateral**. Borrower shall permit Lender, any Governmental Authority, and their agents and representatives, to enter upon the premises of the Borrower for the purpose of inspection of the Collateral at all reasonable times.

4.3 **Notices by Governmental Authority**. Borrower shall timely comply with and furnish to Lender, within three (3) days of receipt thereof, true and complete copies of any official notice or claim by any Governmental Authority pertaining to the Collateral.

4.4 **Costs and Expenses**. Borrower shall pay, or cause to be paid, when due all costs and expenses required by this Agreement, including, without limitation, (a) all taxes and assessments applicable to the Collateral, (b) all fees for filing or recording the Security Instruments, (c) all fees and expenses of counsel to Lender related to the closing of the Loan, (d) all premiums for insurance policies, and (e) all other costs and expenses payable to third parties incurred by either Borrower or Lender in connection with the consummation of the transactions contemplated by this Agreement.

4.5 **Additional Documents**. Borrower and Guarantor shall execute and deliver to Lender, from time to time as requested by Lender, such other documents as shall be necessary to provide the rights and remedies to Lender granted or provided for by the Security Instruments.

4.6 **Inspection of Books and Records**. Borrower and Guarantor shall permit Lender, at all reasonable times, to examine and copy the books and records of Borrower. Such books and records of Borrower shall be maintained at Borrower's principal place of business.

4.7 **Insurance**. Borrower shall maintain or cause to be maintained in full force until full payment of the Loan such insurance on the Collateral as is satisfactory in all respects to Lender. Any liability insurance shall be evidenced by a certificate of insurance issued to Lender, naming Lender as additional insured. All insurance required herein shall be issued by responsible carriers reasonably acceptable to Lender and provide at least thirty (30) days prior written notice to Lender of cancellation, non-renewal or material change.

4.8 **Prohibition of Transfers**. Except as otherwise provided herein or the Security Instruments, Borrower shall not, without the prior written consent of Lender, transfer, convey, assign, encumber or otherwise dispose of the Collateral, other than in the ordinary course of business.

4.9 **Payment of Claims**. Borrower shall promptly pay or cause to be paid when due all costs and expenses incurred in connection with the Collateral, and Borrower shall keep the Collateral free and clear of any liens, charges, or claims other than liens approved in writing by Lender. Notwithstanding anything to the contrary contained in this Agreement or the Security Instruments, Borrower may contest any tax or special assessments levied by any Governmental Authority, and may contest the enforcement of or compliance with any Governmental Requirements, and such contest on the part of Borrower shall not be a default hereunder; provided, however, that during the pendency of any such contest where the amount in controversy is greater than $25,000.00, the Borrower shall furnish to Lender an indemnity bond with a corporate surety satisfactory to Lender or other security acceptable to them, and provided

**LOAN AGREEMENT** - Page 8
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

Prosperity000008

Trustee_Prosperity_000301

further that Borrower shall pay any amount adjudged by a court of competent jurisdiction to be due, with all costs, interest, and penalties thereon, before such judgment becomes a lien on the Collateral.

4.10    **Financial Statements**.  Until such time as the Loan has been paid in full, the Borrower agrees to provide the Lender on a continuing basis with the following financial information:

(a)    Financial Statements, compiled by Borrower's certified public accountants (on a consolidated basis according to GAAP), at each fiscal year-end commencing December 31, 2020, to be delivered within 90 days of each fiscal year-end. Borrower shall deliver the Financial Statements for the fiscal year ending December 31, 2019 on or before September 30, 2020.

(b)    Financial Statements on a consolidated and consolidating basis prepared internally by the Borrower, at each calendar quarter-end commencing September 30, 2020, to be delivered within 45 days of each calendar quarter-end.

(c)    Annual Financial Statements of the Guarantor, within 30 days after the end of each of calendar year.

(d)    Monthly Borrowing Base Certificate and Compliance Certificate and supporting Accounts listings and aging, within 30 days of each month-end.

4.11    **Notification of Adverse Changes**.  Borrower shall promptly notify Lender of the occurrence of any event or condition which, if not remedied, would result in a material, adverse change to the financial condition of Borrower, or would materially and adversely affect the value of the Collateral or any portion thereof, or is a material adverse change as set forth in Section 2.2(c) above.

4.12    **Indemnification**.    Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all claims, charges, actions, suits, liabilities, fines, penalties, costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred by Lender in connection with the collection of the Loan or the enforcement of the Security Instruments or the attempt to foreclose and otherwise realize on collateral after the occurrence of an Event of Default.  The obligations and provisions of this Section 4.12 shall continue and remain in full force and effect after the Loan and other obligations of Borrower under this Agreement and the Security Instruments have been paid or discharged in full and shall survive the termination of this Agreement and the repayment of the Loan.

Prosperity000009

Trustee_Prosperity_000302

## ARTICLE 5.
## CERTAIN COVENANTS

Until payment and performance in full of the Loan, unless Borrower receives prior written approval of a deviation from Lender, Borrower covenants and agrees with Lender that:

5.1    **Obligations**.  Borrower shall promptly and fully perform all of their obligations under this Agreement and the Security Instruments and refrain from doing any act or acts that would violate any covenant under this Agreement or the Security Instruments.

5.2    **Litigation**.  Borrower shall promptly notify Lender of (a) the existence and status of any litigation which could, in the event of an unfavorable outcome, have a material adverse effect on Borrower or the Collateral and (b) any material adverse change in any fact or circumstance represented or warranted.

5.3    **Taxes**.  Borrower shall promptly pay all of their respective taxes and indebtedness as the same become due or obtain all necessary and lawful extensions thereof. Borrower shall deliver to the Lender proof of payment of all ad valorem and personal property taxes assessed against the Collateral no later than January 15 of each year during the term of the Loan.

5.4    **Good Standing**.  Each Borrower shall (a) maintain its company existence and good standing under the laws of the State of Texas and (b) comply in all material respects with Governmental Requirements.

5.5    **Operating Accounts**.  Borrower shall maintain all of its operating accounts and treasury relationship with Lender during the term of the Loan.

5.6    **Financial Covenants**.

(a)    Borrower shall maintain during the term of this Loan a minimum global Debt Service Coverage Ratio of 1.25x, measured quarterly on financial results for the Borrower for the trailing twelve (12) month period.

(b)    Borrower shall maintain during the term of this Loan a minimum Tangible Net Worth of not less than $1,500,000.00 measured quarterly on financial results for the Borrower for the previous fiscal quarter.

(c)    Borrower covenants and agrees that it shall not incur other secured indebtedness during the term of the Loan without the prior written consent of the Lender.

## ARTICLE 6.
## EVENTS OF DEFAULT

6.1    **Default**.  Any one or more of the following events shall constitute an "Event of Default" hereunder and under the Security Instruments:

**Prosperity000010**

(a)     Default in the timely payment of any installment of interest due on the Note, or default in the payment of the balance due as of the maturity of the Note and such failure shall continue for a period of five (5) days following written notice of such default from the Lender.

(b)     Default in the due observance or performance of any of the terms, covenants or conditions contained in this Agreement or the Security Instruments for more than twenty (20) days after receipt from the Lender of written notice of such default; provided, however, that such grace period set forth in this subsection (b) shall not apply to any other Event of Default expressly set forth in this Section 6.1 or to any Event of Default defined as such in the Note or any of the other Security Instruments relating to the Loan, or to any other covenant or condition with respect to which a grace period is expressly provided elsewhere.

(c)     Any representation or warranty made by Borrower to Lender in this Agreement or in the Security Instruments shall be incorrect in any material respect at the time when made or at the time when reaffirmed or deemed reaffirmed by the terms of this Agreement.

(d)     A failure by Borrower to pay or cause to be paid, before any fine, penalty, interest or cost may be added thereto, all franchise taxes and charges, ad valorem and personal property taxes, and other governmental charges of any kind and nature whatsoever which are assessed, levied, confirmed, imposed or become a lien upon the Collateral.

(e)     If individuals or an entity owning an equity interest in any Borrower of twenty percent (20%) or more, dispose of all or any part of such interest, without the prior written consent of Lender, such consent not to be unreasonably withheld.

(f)     If a receiver, liquidator or trustee of any Borrower, Guarantor, or the Collateral shall be appointed.

(g)     If a petition in bankruptcy or for reorganization or for protection under any debtor relief laws shall have been filed against any Borrower or the Guarantor and the same is not withdrawn, dismissed, canceled or terminated within forty-five (45) days.

(h)     If any Borrower or the Guarantor makes an assignment for the benefit of creditors or files or consents to the filing of a petition in bankruptcy or for protection under any debtor relief laws or commences or consents to the commencement of any proceeding under the United States Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of any Borrower or the Guarantor, or the arrangement or rearrangement or readjustment of the debts of any Borrower or the Guarantor, or having the effect of enjoining or staying the exercise of rights or remedies by creditors.

**Prosperity000011**

**Trustee_Prosperity_000304**

(i)     If there is an attachment or sequestration of or relating to any substantial portion of any assets of any Borrower or the Guarantor, and the same is not promptly discharged.

(j)     If either Borrower incurs additional indebtedness, whether secured by the Collateral or otherwise, without Lender's prior written consent  or permits the filing of any lien, security interest or other encumbrance in the Collateral, except security interests in favor of the Receivables Lender.

(k)     If any Borrower or any of its members shall cause, institute or fail to contest any proceeding for the dissolution or termination of Borrower.

(l)     If default shall occur under, or if there is any attempt to withdraw, cancel, or disclaim liability under the Guaranty Agreement by the Guarantor.

(m)     If Borrower ceases to do business or terminates its business as presently conducted for any reason whatsoever.

(n)     If Borrower defaults under any other agreement that it has with Lender and such default continues beyond any applicable grace period.

(p)     If any default shall occur under any Security Instrument.

(q)     If a material adverse change occurs with respect to the financial condition of Borrower, Guarantor, or the Collateral which would materially and adversely affect the value thereof.

## ARTICLE 7.
## RIGHTS AND REMEDIES OF LENDER

7.1     **Rights of Lender**.  Upon the occurrence of any one or more Event of Default, Lender shall have the right, in addition to any other right or remedy of Lender at equity or under applicable law, to commence collection and/or foreclosure proceedings under the terms and conditions of the Security Instruments.

7.2     **Acceleration**.  Upon the occurrence of an Event of Default, Lender may, at its option, declare the outstanding balance of the Note immediately due and payable without notice of any kind, Borrower hereby waiving expressly, but not by way of limitation, notice of default, notice of intent to accelerate and notice of acceleration.

7.3     **No Waiver or Exhaustion**.  No waiver by Lender of any of its rights or remedies hereunder, in the other Security Instruments, or otherwise, shall be considered a waiver of any other or subsequent right or remedy of Lender; no delay or omission in the exercise or enforcement by Lender of any rights or remedies shall ever be construed as a waiver of any right

Prosperity000012

Trustee_Prosperity_000305

or remedy of Lender; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any other right or remedy of Lender.

## ARTICLE 8.
## GENERAL TERMS AND CONDITIONS

8.1     **Modifications**. No provision of this Agreement or the Security Instruments may be modified, waived, or terminated except by instrument in writing executed by the party against whom a modification, waiver or termination is sought to be enforced.

8.2     **Severability**. In case any of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein; provided, however, if the disregard of such provision would frustrate the intent and purposes of this Agreement, Lender may petition any court having jurisdiction in equity to render a judgment modifying the disregarded provision of this Agreement so as to carry out such intent and purposes.

8.3     **Election of Remedies**. Lender shall have all of the rights and remedies granted in the Security Instruments in addition to such rights and remedies that may be available to Lender at law or in equity, and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower or any property covered under the Security Instruments at the sole discretion of Lender. The exercise or failure to exercise any of the same shall not constitute a waiver or release thereof or of any other right or remedy, and such exercise or failure to exercise shall be nonexclusive.

8.4     **Form and Substance**. All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender and its legal counsel in their sole discretion.

8.5     **Number and Gender**. Whenever used herein, the singular number shall include the plural and the singular, and the use of any gender shall be applicable to all genders.

8.6     **Conflicts**. Except as expressly provided in any of the Security Instruments, in the event of any conflict between the provisions of this Agreement and those of any Security Instruments, the provisions of this Agreement shall govern.

8.7     **Time of Essence**. Time is of the essence in performance of this Agreement by Borrower.

8.8     **Further Assurances**. Borrower shall do, execute, acknowledge and deliver, at the sole cost and expense of Borrower, all and every such further acts, deeds, conveyances, mortgages, assignments, estoppel certificates, notices of assignment, transfers and assurances as Lender may reasonably require from time to time in order to better assure, convey, assign, transfer and confirm unto the Lender, the rights now or hereafter intended to be granted to the

Prosperity000013

Trustee_Prosperity_000306

Lender under the Security Instruments for carrying out the intention or facilitating the performance of the terms of this Agreement.

8.9     **Consent to Loan Participation**.  Borrower consents to the Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to the Lender.  Lender may provide to any one or more purchasers or potential purchasers, any information or knowledge Lender may have about the Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any participation interests shall be considered as the absolute owners of such interests in the Loan and shall have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against any purchaser of such participation interests and unconditionally agrees that such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interests in the Loan.  Borrower further agrees that the purchaser of any such participation interest may enforce its interest irrespective of any personal claims or defenses that Borrower may have against Lender.

8.10   **Captions**.  The captions, headings, and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

8.11   **APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN SUCH STATE.**

8.12   **Notices**.  All notices by Lender to Borrower pursuant to any provisions of this Agreement or the Security Instruments, must be in writing.  Such notices shall be given by personal delivery, expedited delivery service with proof of delivery, email, or mail (registered or certified, return receipt requested).  Any such notice or communication shall be deemed to have been given and received either at the time of personal delivery; in the case of expedited delivery service or mail, as of the date of deposit in an official depository of the United States Postal Service or, as of the date of deposit with the expedited delivery service; or in the case of email, upon receipt (provided that such email is confirmed by expedited delivery or mail in the manner previously described).  By giving at least ten (10) days written notice thereof, Borrower or Lender shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

**Prosperity000014**

**Trustee_Prosperity_000307**

If to Lender:

    Prosperity Bank
    5949 Sherry Lane, Suite 600
    Dallas, Texas 75225
    Attn: Taylor Burns
    Email: taylor.burns@prosperitybankusa.com

If to Borrower and Guarantor:

    Genesis Networks Telecom Services, LLC
    Genesis Networks Global Services, LLC
    1354 N. Loop 1604 E, Suite 103
    San Antonio, Texas 78232
    Attn: James E. Goodman, Jr.
    Email: james.goodman@genesisnet.com

    8.13    **Counterparts**.  This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement.

        **EXECUTED AND DELIVERED** on the date first above recited.

<div align="center">

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
</div>

    a Texas limited liability company
      By:  Genesis Networks Enterprises, LLC,
        a Texas limited liability company,
        its Manager

      by: _____
         James E. Goodman, Jr., Chief Executive Officer

<div align="center">

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
</div>

    a Texas limited liability company
      By:  Genesis Networks Enterprises, LLC,
        a Texas limited liability company,
        its Manager

      by: _____
         James E. Goodman, Jr., Chief Executive Officer

**Prosperity000015**

**Trustee_Prosperity_000308**

**GUARANTOR:**

James E. Goodman, Jr.

**LENDER:**

**PROSPERITY BANK,**
a Texas banking association

By: _____

Taylor Burns, Vice President

Prosperity000016

Trustee_Prosperity_000309

## Exhibit "A"

### Advance Request

Prosperity Bank
5949 Sherry Lane, Suite 600
Dallas, Texas 75225

Attn:  Loan Department

   We submit the following information in connection with a request for Advance pursuant to that certain Loan Agreement dated July 3, 2020 executed by the undersigned in favor of Prosperity Bank (the "Lender"). We hereby certify that conditions precedent set forth in Section 2.2 of the Loan Agreement are true and correct as of the date of this request.

Date Requested: _____, 20____.

| | | |
|---|---|---|
| 1. | Revolving Line Amount:      $3,000,000.00 | |
| 2. | Eighty percent (80%) of Eligible Accounts (not to exceed $3,000,000.00): | $_____ |
| 3. | Current Loan amount outstanding: | $_____ |
| 4. | Current amount available under the Revolving Line (Line 2 less Line 3) | $_____ |
| 5. | Advance Request: | $_____ |
| 6. | New Loan Balance: (Line 3 plus Line 5) | $_____ |

   The undersigned confirms that it is acting on behalf of all of the entities comprising the Borrower under the Loan Agreement.

     **GENESIS NETWORKS TELECOM SERVICES, LLC,**
     a Texas limited liability company
      By:  Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager

    by: _____
      Cathy Kincy, Chief Financial Officer

**EXHIBIT "A"** - Page 1
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

Prosperity000017

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager


by: _____

       Cathy Kincy, Chief Financial Officer

**Prosperity000018**

**Trustee_Prosperity_000311**

## Exhibit "B"

## BORROWING BASE AND COMPLIANCE CERTIFICATE
### Borrower Name
For the Quarter ending _____

Prosperity Bank
5949 Sherry Lane, Suite 600
Dallas, Texas 75225

Attn:   Loan Department


        We submit the following information pursuant to the terms of Section 4.10 of that certain Loan Agreement dated July 3, 2020 executed by the undersigned in favor of Prosperity Bank (the "Bank")


| | | |
|---|---|---|
| 1. | Balance of Accounts as _____, 20__ : | $ _____ |
| 2. | Less:  Ineligible Accounts (see attached): | $ _____ |
| 3. | Eligible Accounts (Line 2 less Line 2): | $ _____ |
| 4. | Loan Formula (80% of Eligible Accounts): | $ _____ |
| 5. | Total Availability (Line 4): | $ _____ |
| 6. | Loan Balance: | $ _____ |
| 7. | Net Availability (Line 6 less Line 7)* | $ _____ |

        *Negative number represents requirement
        for immediate reduction of revolving balance

Prosperity000019

Trustee_Prosperity_000312

## **Ineligible Accounts**

| | | |
|---|---|---|
| A. | Over 90 days past due: | $ _____ |
| B. | Intercompany or Affiliate Accounts: | $ _____ |
| C. | Accounts which are disputed or counterclaims exist: | $ _____ |
| D. | Accounts in which the Account Debtor has filed bankruptcy: | $ _____ |
| E. | All Accounts owed by an Account Debtor to Borrower, if more than 20% of the balance is then outstanding on such Accounts by such Account Debtor to Borrower have remained unpaid for more than 90 days past due date: | $ _____ |
| F. | To the extent any Account Debtor of Borrower has Accounts due Borrower which in the aggregate are more than 25% of all Accounts of the Borrower, the amount in excess of 80% of the Accounts of such Account Debtor (provided, however, Accounts for AT&T and Verizon are excluded): | $ _____ |
| G. | Accounts which the Lender has sent written notification to the Borrower that such Accounts are Ineligible Accounts: | $ _____ |
| H. | Accounts pledged to secure indebtedness due Receivables Lender: | $ _____ |
| I. | Accounts of AT&T and Verizon in excess of 80% of such Accounts | $ _____ |
| | Total Ineligibles: (Carry forward to line 2 of report) | $ _____ |

**EXHIBIT "B"** - Page 2
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\LOAN AGREEMENT.DOCX

**Prosperity000020**

Trustee_Prosperity_000313

**COMPLIANCE:**                                                    **COMPLIANT:**
                                                                   (please indicate)

**Quarterly Covenants**:

1. Borrower must maintain a Debt Service Coverage Ratio of 1.25x          **YES   NO**
based on a trailing 12 months.

   Formula: Net Operating Income divided by Debt Service payable
            under the Note greater than or equal to 1.25x

   Actual Calculation: _____   =  _____

2. Borrower must maintain a minimum Tangible Net Worth of not less than
$1,500,000.00.                                                           **YES   NO**

3. Quarterly Financial Statements and Accounts listing are due within 45   **YES   NO**
days of quarter end.

Prosperity000021

Trustee_Prosperity_000314

**Annual Covenants:**

1. CPA complied financial statements (on a consolidated basis according to GAAP) required on the Borrower due within 90 days of year end.  **YES  NO**

2. Annual tax returns required from Borrower due 30 days after filing.  **YES  NO**

3. Personal Financial Statements required on Guarantor due annually:

      James Goodman  **YES  NO**

4. Annual personal tax returns required on Guarantor due 30 days after filing:

      James Goodman  **YES  NO**

*This Compliance Certificate is a summary only. If there is any inconsistency between the text of the loan documents and this certificate, the loan documents will control.*

The undersigned confirms that it is certifying and acting on behalf of all of the entities comprising the Borrower under the Loan Agreement.

      **GENESIS NETWORKS TELECOM SERVICES, LLC,**
      a Texas limited liability company
       By: Genesis Networks Enterprises, LLC,
       a Texas limited liability company,
       its Manager

      by: _____
           Cathy Kincy, Chief Financial Officer

      **GENESIS NETWORKS GLOBAL SERVICES, LLC,**
      a Texas limited liability company
       By: Genesis Networks Enterprises, LLC,
       a Texas limited liability company,
       its Manager

      by: _____
           Cathy Kincy, Chief Financial Officer

**Prosperity000022**

**Trustee_Prosperity_000315**

## SECURITY AGREEMENT

| | |
|---|---|
| **Date:** | August 31, 2020 |
| **Debtor:** | Genesis Networks Telecom Services, LLC, a Texas limited liability company Genesis Networks Global Services, LLC, a Texas limited liability company |
| **Debtor's Mailing Address:** | 1354 N. Loop 1604 E, Suite 103 San Antonio, Texas 78232 |
| **Secured Party:** | Prosperity Bank, a Texas banking association |
| **Secured Party's Mailing Address (including county):** | 5949 Sherry Lane, Suite 600 Dallas, Texas 75225 |
| **Classification of Collateral:** | All business assets of the Debtor, including without limitation, all accounts, equipment, inventory, chattel paper, contract rights and general intangibles |

**Collateral (including all accessions and substitutions):**

> See <u>Schedule 1</u> attached hereto and incorporated herein for all purposes.

**Obligation:**

> **Note:**

| | |
|---|---|
| **Date:** | August 31, 2020 |
| **Amount:** | $1,948,427.94 |
| **Maker:** | Genesis Networks Telecom Services, LLC, a Texas limited liability company Genesis Networks Global Services, LLC, a Texas limited liability company |
| **Payee:** | Prosperity Bank, a Texas banking association |

Prosperity000174

Trustee_Prosperity_000316

**Terms of Payment:**  Payable as to principal and interest as therein provided.


Subject to the terms of this Security Agreement, Debtor grants to Secured Party a first and superior security interest in the Collateral and all their proceeds (as described on Schedule 1 attached hereto), to secure payment and performance of Debtor's Obligation in this Security Agreement and all renewals and extensions of the Obligation.

## Debtor's Warranties

1.      Financing Statement. No financing statement covering the Collateral is filed in any public office, except for financing statements in favor of Secured Party and Citibank, N.A. (the "Receivables Lender").

2.      Ownership. Debtor owns the Collateral and has the authority to grant this security interest.   Ownership is free from any setoff, claim, restriction, lien, security interest, or encumbrance except this security interest, the security interest in favor of the Receivables Lender, and liens for taxes not yet due.

3.      Financial Statement. All information about Debtor's financial condition provided to Secured Party was accurate when submitted, as will be any information subsequently provided.

4.      Setoffs. No obligors whose debts or obligations are part of the Collateral have any right to setoffs, counterclaims, or adjustments or any defenses in connection with their debts or obligations.

## Debtor's Covenants

1.      Protection of Collateral. Debtor shall defend the Collateral against all claims and demands adverse to Secured Party's interest in it and will keep it free from all liens except those for taxes not yet due and from all security interests except this one and the security interest in favor of the Receivables Lender.  Debtor shall maintain the Collateral in good condition and protect it against misuse, abuse, waste, and deterioration except for ordinary wear and tear resulting from its intended use.

2.      Financial Statements and Other Information. The Debtor shall furnish, in form and content as shall be satisfactory to the Secured Party in its sole discretion, the following:

(a)     Promptly upon receipt thereof, copies of all financial reports, if any, submitted to the Debtor, by their auditors in connection with each annual or interim audit of their financial books and records by such auditors.

(b)     Promptly upon the commencement thereof, written notice of any litigation, including arbitrations, and of any proceedings before any governmental agency

**Prosperity000175**

**Trustee_Prosperity_000317**

which would, if successful, materially affect the Debtor or where the amount involved exceeds $25,000.00 and is not acknowledged by any insurance carrier to be covered in full by insurance required to be maintained under Section 3 of this Security Agreement;

(c) With reasonable promptness, such other information respecting the business, operations and financial condition of the Debtor as the Secured Party may from time to time require, including, but not limited to, balance sheets, statements of profits and losses, statements of change in financial position, in a form acceptable to the Secured Party. The Secured Party is hereby authorized to deliver a copy of any financial statement or any other information relating to the business, operations, or financial condition of the Debtor which may be furnished to it or come to its attention to any regulatory body or agency having jurisdiction over the Secured Party or to any person which shall succeed to all or any part of the Secured Party's interest in the Obligation and this Security Agreement.

3.    Insurance. Debtor will insure the Collateral in accordance with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage. Policies will be written in favor of Debtor and Secured Party according to their respective interests or according to Secured Party's other requirements. All policies will provide that Secured Party will receive at least thirty (30) days' prior written notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued. Debtor assumes all risk of loss and damage to the Collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect any unearned premiums and proceeds of any insurance on the Collateral and to endorse any draft or check deriving from the policies and made payable to Debtor or jointly payable to Debtor and Secured Party.

4.    Secured Party's Costs. Within fifteen (15) days after request thereafter, Debtor will pay all expenses incurred by Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest or the Collateral and in collecting or enforcing the Obligation. Expenses for which Debtor is liable include, but are not limited to, taxes, assessments, reasonable attorney's fees, and other legal expenses. These expenses will bear interest from the due dates at the rate stated in the promissory note that is part of the Obligation, and Debtor will pay Secured Party this interest on demand at a time and place reasonably specified by Secured Party. These expenses and interest will be part of the Obligation and will be recoverable as such in all respects.

5.    Additional Documents. Debtor shall execute such other documents that Secured Party considers necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

6.    Notice of Changes. Debtor shall immediately notify Secured Party of any material change in the Collateral; change in Debtor's name, address or location; change in the

SECURITY AGREEMENT - Page 3
J:\TJC\23041\065\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000176

location of all or any part of the Collateral; change in any matter warranted or represented in this Security Agreement; change that may affect this security interest; and any event of default.

7.      Use and Removal of Collateral.   Debtor will use the Collateral primarily according to the stated classification unless Secured Party consents otherwise in writing. Debtor shall not permit the Collateral to become an accession to any goods, to be commingled with other goods, or to become an accession or part of a product or mass with other goods except as expressly provided in this Security Agreement.

8.      Sale.   Debtor shall not sell, transfer, or further encumber any of the Collateral without the prior written consent of Secured Party, except in the normal conduct of Debtor's business.

9.      Modification of Collateral.   Without the written consent of Secured Party, Debtor shall not agree to any modification of terms in any instruments constituting Collateral, or securing same.

10.     Disposition of Collateral.   Debtor shall immediately assign or endorse to Secured Party on request any future instruments constituting Collateral, or securing same.

11.     Parties Liable on the Collateral.   Debtor shall preserve the liability of all obligors on the Collateral, preserve the priority of all liens and security for the Collateral, and deliver to the Secured Party all instruments constituting Collateral, or securing same.   Debtor shall not release any lien or interest securing the Collateral without the prior written consent of Secured Party.

12.     Delivery of Receipts to Secured Party.   In the event of a default under the terms of the Obligation, and on Secured Party's demand, Debtor will deposit all payments received as proceeds of and payments on Collateral in a special bank account designated by Secured Party, who alone will have power of withdrawal.   Debtor will deposit the payments on receipt, in the form received, and with any necessary endorsements as security for the Obligation.   Secured Party may make any endorsements in Debtor's name and behalf.   Between receiving and depositing these payments, Debtor shall not mingle them with any of Debtor's other funds or property but shall hold them separate in an express trust for Secured Party.   Secured Party shall apply these funds against the Obligation.

13.     Default in Collateral.   Debtor shall cause all obligors on the Collateral to pay and perform all obligations under the Collateral.   Debtor shall immediately inform Secured Party in writing of the default in the payment or performance of any obligation under the Collateral.

14.     Consumer Credit.   If any Collateral or proceeds include obligations of third parties to Debtor, the transactions creating those obligations will conform in all respects to applicable state and federal consumer credit law.

Prosperity000177

Trustee_Prosperity_000319

15.    Collateral Records.  Debtor shall keep accurate and complete records of the Collateral (including proceeds).  Secured Party may at any time have access to, examine, audit, make extracts from and inspect, without hindrance or delay, Debtor's records, files and the Collateral.

16.    Taxes.  Debtor agrees to pay prior to delinquency all taxes, charges, liens and assessments against the Collateral, and upon the failure of Debtor to do so, Secured Party, at its option, may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same.  Any such payment by Secured Party shall become part of the Obligation secured hereunder and shall be paid to Secured Party by Debtor immediately upon demand, with interest thereon at the rate of interest charged under the Obligation.

17.    Modification of Contracts.  Debtor shall not modify, extend or substitute any contract the terms of which shall at any time have given rise to accounts receivable secured hereby, except in the ordinary course of Debtor's business or with the prior written consent of Secured Party.

**Events of Default**

At the option of the Secured Party, the entire balance of the Obligation shall at once become due and owing upon the occurrence of any Event of Default described in Section 6.1 of that certain Loan Agreement of even date herewith between the Debtor and Secured Party.

**Remedies of Secured Party on Default**

During the existence of any Event of Default, Secured Party may declare the unpaid principal and earned interest of the Obligation immediately due and payable in full, enforce the Obligation in accordance with its terms, and exercise any rights and remedies granted a secured party by the Texas Business and Commerce Code (the "Code") or by this Security Agreement, including, but not limited to, the following:

(a)    require Debtor to deliver to Secured Party all books and records relating to the Collateral;

(b)    require Debtor to assemble the Collateral and make it available to Secured Party at a place reasonably convenient to both parties;

(c)    take possession of any of the Collateral and of this purpose enter any premises where it is located if this can be done without breach of the peace;

(d)    sell, lease, or otherwise dispose of any of the Collateral in accordance with the rights, remedies, and duties of a secured party under chapters 2 and 9 of the Code after giving notice as required by those chapters; and unless the Collateral threatens to decline speedily in value, is perishable, or would typically be sold on a recognized market, Secured Party will give Debtor reasonable notice of any

**SECURITY AGREEMENT** - Page 5
J:\TJC\23041\065\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000178

public sale of the Collateral or of a time after which it may be otherwise disposed of without further notice to Debtor; in this event, notice will be deemed reasonable if it is mailed, postage prepaid, to Debtor at the address specified in this Security Agreement at least ten (10) days before any public sale or ten (10) days before the time which the Collateral may be otherwise disposed of without further notice to Debtor;

(e)     surrender any insurance policies covering the Collateral and receive the unearned premium;

(f)     apply any proceeds from disposition of the Collateral after default in the manner specified in chapter 9 of the Code, including payment of Secured Party's reasonable attorneys' fees, costs of collection and court expenses;

(g)     at Secured Party's discretion, retain the Collateral in satisfaction of the Obligation wherever the circumstances are such that the Secured Party is entitled to do so under the Code, or otherwise;  and

(h)     if disposition of the Collateral leaves the Obligation unsatisfied, collect the deficiency from Debtor and any guarantor of the Obligation.

**General Provisions**

1.     Collection Rights.

(a)     So long as an Event of Default has occurred and is continuing, Secured Party may at any time notify the account debtor on any accounts receivable of Debtor of its security interest, if any, therein, and may demand that monies due or to become due to be paid directly to Secured Party.  In connection with the right of Secured Party to collect Accounts under this Section, Debtor hereby irrevocably appoints Secured Party or any person designated by Secured Party, its true and lawful attorney-in-fact to endorse for Debtor or Debtor's name any check, draft or other order for payment of money payable to Debtor in payment of any Accounts owing to Debtor.  Secured Party's costs of collection and enforcement, including attorneys' fees and out-of-pocket expenses, shall be borne solely by Debtor. Secured Party shall not be liable for any act of omission on the part of Secured Party, or its officers, agents or employees, except gross negligence or willful misconduct.

(b)     So long as any Event of Default has occurred and is continuing, and after exercising its right under this Section, Secured Party may, without notice to Debtor, renew, modify or extend any Accounts, grant waivers or indulgences with respect thereto, accept partial payments thereon, release, surrender or substitute any customer security or make compromises with or release Debtor or any other party liable thereon in such manner as Secured Party may, in its sole discretion,

**SECURITY AGREEMENT** – Page 6
J:\TJC\23041\065\\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000179

Trustee_Prosperity_000321

deem advisable, without affecting or diminishing Debtor's continuing obligations upon such Accounts.

2.  Parties Bound. Secured Party's rights under this Security Agreement shall inure to the benefit of its successors and assigns. Assignment of any part of the Obligation and delivery by Secured Party of any part of the Collateral shall fully discharge Secured Party from responsibility for that part of the Collateral. If Debtor is more than one entity, all their representations, warranties, and agreements are joint and several. Debtor's obligations under this Security Agreement shall bind Debtor's successors and assigns.

3.  Waiver. Neither delay in exercise nor partial exercise of any of Secured Party's remedies or rights shall waive further exercise of those remedies or rights. Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights. Secured Party's waiver of any Event of Default does not waive its right to demand strict compliance with the terms of this Security Agreement. Secured Party's waiver of any right in this Security Agreement or of any Event of Default is binding only if it is in writing.

4.  Reimbursement. If Debtor fails to perform any of Debtor's obligations under this Security Agreement, Secured Party may perform those obligations and be reimbursed by Debtor on demand at the place where the Obligation is payable for any sums so paid, including attorney's fees and other legal expenses, plus interest on those sums from the dates of payment at the rate stated in the Obligation for matured, unpaid amounts. The sum to be reimbursed shall be secured by this Security Agreement.

5.  Interest Rate. Interest included in the Obligation shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited to the principal of the Obligation or, if that has been paid, refunded. Upon any acceleration or permitted prepayment of the Obligation, any excess interest shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal amount of the Obligation or, if the principal amount has been paid, refunded.

6.  Modifications. No provisions of this Security Agreement shall be modified or limited except by written agreement between the Debtor and Secured Party.

7.  Severability. The unenforceability of any provision of this Security Agreement will not affect the enforceability or validity of any other provision.

8.  Applicable Law; Placement of Performance. This Security Agreement will be construed according to Texas laws, and shall be performable in Dallas County, Texas.

9.  Presumption of Truth and Validity. If the Collateral is sold after the occurrence of an Event of Default, recitals in the bill of sale or transfer will be prima facie evidence of their truth, and all prerequisites to the sale specified by this Security Agreement and by the Code will be presumed satisfied.

**SECURITY AGREEMENT** - Page 7
J:\TJC\23041\065\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000180

10.   Singular and Plural.  When the context requires, singular nouns and pronouns include the plural.

11.   Priority of Security Interest.  This security interest shall neither affect nor be affected by any other security for any of the Obligation.  Neither extensions of the Obligation, nor releases of any of the Collateral will affect the priority or validity of this security interest with reference to any third person.

12.   Cumulative Remedies.  Foreclosure of this security interest created by this Security Agreement by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms hereof.  All remedies of Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other.  Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this Security Agreement.

13.   Power of Attorney. The Secured Party is hereby appointed the attorney-in-fact of the Debtor for the limited purpose of carrying out the default and remedy provisions of this Security Agreement and taking any action and executing any instruments which the Secured Party may deem necessary or advisable to accomplish the purposes hereof, which appointment as attorney-in-fact is irrevocable and coupled with an interest.

14.   After Acquired Property.  The security interest granted Secured Party extends to all collateral that is of the same classification as this Collateral and that Debtor acquires at any time during the continuation of this Security Agreement.

15.   Future Advances.  This security interest granted Secured Party also secures all other present and future debts and liabilities of Debtor to Secured Party, including future advances.

**DEBTOR:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
By:  Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
ames E. Goodman, Jr., Chief Executive Officer

SECURITY AGREEMENT  - Page 8
J:\TJC\23041\065\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000181

Trustee_Prosperity_000323

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
By: Genesis Networks Enterprises, LLC,
a Texas limited liability company,
its Manager

by: _____
James E. Goodman, Jr., Chief Executive Officer

**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association

By: _____
Taylor Burns, Vice President

Prosperity000182

Trustee_Prosperity_000324

GENESIS NETWORKS GLOBAL SERVICES, LLC,
a Texas limited liability company
    By: Genesis Networks Enterprises, LLC,
      a Texas limited liability company,
      its Manager


      by: _____
           James E. Goodman, Jr., Chief Executive Officer


**SECURED PARTY:**

**PROSPERITY BANK,**
a Texas banking association


By: _____
      Taylor Burns, Vice President

SECURITY AGREEMENT – Page 9
J:\TJC\23041\065\$1,948,427\SECURITY AGREEMENT.docx

Prosperity000183

Trustee_Prosperity_000325

## CERTIFICATE OF MANAGER

The undersigned, hereby certify that it is now, and at all times mentioned herein has been, the sole Manager of **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (the "Company"), and it has access to the records of the Company, which records of the Company reflect that:

**Resolutions**. Attached hereto as Annex 1 and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the sole Manager of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company. Attached hereto as Annex 2 and incorporated herein by reference are true and correct copies of the Certificate of Formation and Company Agreement of the Company. None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect. All of such resolutions are in full force and effect on the date hereof.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Certificate effective this 31st day of August, 2020.

MANAGER:

**GENESIS NETWORKS ENTERPRISES SERVICES, LLC,**
a Texas limited liability company

By: _____
James E. Goodman, Jr., Chief Executive Officer

CERTIFICATE OF MANAGER - Page Solo
J:\TJC\23041\065\$1,948,427\cert.man (Global).docx

Prosperity000212

Trustee_Prosperity_000326

**PROSPERITY BANK®** | **CERTIFICATION OF BENEFICIAL OWNER(S)**

**Persons opening an account on behalf of a legal entity must provide the following information:**

a) *Name and Title of Natural Person Opening Account:*

James E. Goodman, Jr. (CEO - Genesis Networks Enterprises, LLC.)

b) *Name and Physical Address of Legal Entity for Which the Account is Being Opened:*

GENESIS NETWORKS TELECOM SERVICES LLC (1354 N. Loop 1604 E., Suite 103, San Antonio, TX 78232)

☐ This entity is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c) & (d); sign/date page 1; complete page 2]*

☐ This entity is a Non-Profit or Non-Excluded Pooled Investment Vehicle and is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c); complete Section (d) & sign/date page 1]*

c) *The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:*

| % of Owner ship | Name | Date of Birth | SSN | Physical Address | DL # & State of Issuance, OR Passport # & Country of Issuance, OR Similar Identification # |
|---|---|---|---|---|---|
| 90 | First James E Goodman, Jr. <br> Last | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX <br> State & Zip 78242 | Number DL# ▓▓▓ <br> State or Country Texas of Issuance <br> Exp Date 6-18-2025 |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |

☑ No individual has ownership of 25% or more of the entity named in section (b) above.

d) *The following information for one individual with significant responsibility for managing the legal entity listed above, such as:*

☐ Any executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); **or**
☐ Any other individual who regularly performs similar functions.

If appropriate, an individual listed under section (c) above may also be listed in this section (d).

| Name | Date of Birth | SSN | Address | DL # & State of Issuance, OR Passport # & Country of Issuance, OR Similar Identification # |
|---|---|---|---|---|
| First James <br> Last Goodman, Jr | | | Street 103 Tomahawk Trail, <br> City San Antonio, TX 78242 <br> State & Zip | Number DL# ▓ <br> State or Country of Issuance <br> Exp Date Texas 6-18-2025 |

I, _____James Goodman_____ *(PRINTED name of natural person opening account)*, hereby certify to the best of my knowledge, that the information provided on this document is complete and correct. Customer agrees to notify Prosperity Bank of any change in Beneficial Ownership as long as any deposit or loan account remains open with Prosperity Bank.

Signature _____     Date _____July 7, 2020_____

BANK USE ONLY                                                          (Revised 05/18/18)

ID Viewed By: U81TBurns     Director App ID: _____     **CAUTION:** *Pages 1 & 2 must be uploaded to Director even if page 2 is blank!!* Page 1 of 2

**Prosperity000202**

Trustee_Prosperity_000327

*CAUTION: Pages 1 & 2 must be uploaded to Director even if page 2 is blank!*

*Name of Legal Entity for Which the Account is Being Opened [as shown on page 1, section (b)]:*

## A Certification of Beneficial Owners is not required because the entity described on page 1, section (b) is:

| | |
|---|---|
| ☐ Not a Legal Entity as defined in the rule; | ☐ A pooled investment vehicle that is operated or advised by a financial institution; |
| ☐ A financial institution regulated by a Federal functional regulator; | ☐ An insurance company that is regulated by a State; |
| ☐ bank regulated by a State bank regulator; | ☐ A financial market utility designated by the Financial Stability Oversight Council; |
| ☐ A Phase I Exempt Entity (specify)<br>　☐ A Government entity;<br>　☐ A Publicly traded company;<br>　☐ A Subsidiary of a publicly traded company | ☐ A foreign financial institution established in a jurisdiction where the regulator of such institution maintains beneficial ownership information regarding such institution; |
| ☐ An exempt entity registered with the Securities and Exchange Commission (SEC); | ☐ A non-U.S. governmental department , agency or political subdivision; |
| ☐ An exempt entity that is registered with the Commodity Futures Trading Commission; | ☐ Another type of legal entity only to the extent that it opens: |
| ☐ A public accounting firm registered under the Sarbanes-Oxley Act ; | 　☐ A private banking account subject to 31 CFR §1010.620; |
| ☐ A bank or savings and loan holding company; | 　☐ An account opened for participating in an employee benefit plan established under ERISA. |

**Re-certification of the information on this form may be provided below for subsequent new loans, renewals, or modifications.**
*By signature and date below, the Borrower's representative certifies, or the loan officer confirms that the Borrower's representative has verbally certified, that the information on the form is complete and correct, and that there has not been any change in Beneficial Ownership.*

Borrower's Representative (certified in person, or verbally to loan officer)　Date _____09/16/20_____ APP ID _____

U81TBurns
_____
(Printed Name of Borrower's Representative)　　　　　　　　(Printed Name of Loan Officer)

_____
(Signature of Borrower's Representative, if certified in person)　　　　(Signature of Loan Officer)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Borrower's Representative (certified in person, or verbally to loan officer)　Date _____ APP ID _____

_____
(Printed Name of Borrower's Representative)　　　　　　　　(Printed Name of Loan Officer)

_____
(Signature of Borrower's Representative)　　　　　　　　(Signature of Loan Officer)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Borrower's Representative (certified in person, or verbally to loan officer)　Date _____ APP ID _____

_____
(Printed Name of Borrower's Representative)　　　　　　　　(Printed Name of Loan Officer)

_____
(Signature of Borrower's Representative)　　　　　　　　(Signature of Loan Officer

***Upload to Director Document Type:*** *LNA – Beneficial Ownership Form*　　　　Page 2 of 2

Prosperity000203

Trustee_Prosperity_000328

**PROSPERITY BANK**   **CERTIFICATION OF BENEFICIAL OWNER(S)**

**Persons opening an account on behalf of a legal entity must provide the following information:**

a) *Name and Title of Natural Person Opening Account:*

James E. Goodman, Jr. (CEO - Genesis Networks Enterprises, LLC.)

b) *Name and Physical Address of Legal Entity for Which the Account is Being Opened:*

GENESIS NETWORKS GLOBAL SERVICES, LLC (354 N. Loop 1604 E., Suite 103, San Antonio, TX 78232)

☐ This entity is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c) & (d); sign/date page 1; complete page 2]*

☐ This entity is a Non-Profit or Non-Excluded Pooled Investment Vehicle and is exempt from the requirement for Certification of Beneficial Owner(s) *[skip Section (c); complete Section (d) & sign/date page 1]*

c) *The following information for each individual, if any, who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, owns 25 percent or more of the equity interests of the legal entity listed above:*

| % of Owner ship | Name | Date of Birth | SSN | Physical Address | DL # & State of Issuance, OR Passport # & Country of Issuance; OR Similar Identification # |
|---|---|---|---|---|---|
| 90 | First **James E Goodman, Jr.** <br> Last | | | Street  103 Tomahawk Trail, <br> City  San Antonio, TX <br> State & Zip  78242 | Number  DL# <br> State or Country of Issuance  Texas <br> Exp Date  6-18-2025 |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |
| | First <br> Last | | | Street <br> City <br> State & Zip | Number <br> State or Country of Issuance <br> Exp Date |

☑ No individual has ownership of 25% or more of the entity named in section (b) above.

d) *The following information for one individual with significant responsibility for managing the legal entity listed above, such as:*

☐ Any executive officer or senior manager (e.g., Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President, Treasurer); **or**
☐ Any other individual who regularly performs similar functions.

If appropriate, an individual listed under section (c) above may also be listed in this section (d).

| Name | Date of Birth | SSN | Address | DL # & State of Issuance, OR Passport # & Country of Issuance; OR Similar Identification # |
|---|---|---|---|---|
| First **James** <br> Last **Goodman, Jr** | | | Street  103 Tomahawk Trail, <br> City <br> State & Zip  San Antonio, TX 78242 | Number  DL# <br> State or Country of Issuance  Texas <br> Exp Date  6-18-2025 |

I, _James Goodman_ _____ *(PRINTED name of natural person opening account)*, hereby certify to the best of my knowledge, that the information provided on this document is complete and correct. Customer agrees to notify Prosperity Bank of any change in Beneficial Ownership as long as any deposit or loan account remains open with Prosperity Bank.

_____   July 7, 2020
Signature                                                   Date

---

**BANK USE ONLY**                                                      (Revised 05/18/18)

ID Viewed By: __U81TBurns__   Director App ID:_____

**CAUTION:** *Pages 1 & 2 must be uploaded to Director even if page 2 is blank!!*   Page 1 of 2

**Prosperity000204**

*CAUTION: Pages 1 & 2 must be uploaded to Director even if page 2 is blank!*

*Name of Legal Entity for Which the Account is Being Opened [as shown on page 1, section (b)]:*

**A Certification of Beneficial Owners is not required because the entity described on page 1, section (b) is:**

| | |
|---|---|
| ☐ Not a Legal Entity as defined in the rule; | ☐ A pooled investment vehicle that is operated or advised by a financial institution; |
| ☐ A financial institution regulated by a Federal functional regulator; | ☐ An insurance company that is regulated by a State; |
| ☐ bank regulated by a State bank regulator; | ☐ A financial market utility designated by the Financial Stability Oversight Council; |
| ☐ A Phase I Exempt Entity (specify)<br>   ☐ A Government entity;<br>   ☐ A Publicly traded company;<br>   ☐ A Subsidiary of a publicly traded company | ☐ A foreign financial institution established in a jurisdiction where the regulator of such institution maintains beneficial ownership information regarding such institution; |
| ☐ An exempt entity registered with the Securities and Exchange Commission (SEC); | ☐ A non-U.S. governmental department , agency or political subdivision; |
| ☐ An exempt entity that is registered with the Commodity Futures Trading Commission; | ☐ Another type of legal entity only to the extent that it opens: |
| ☐ A public accounting firm registered under the Sarbanes-Oxley Act ; | ☐ A private banking account subject to 31 CFR §1010.620; |
| ☐ A bank or savings and loan holding company; | ☐ An account opened for participating in an employee benefit plan established under ERISA. |

**Re-certification of the information on this form may be provided below for subsequent new loans, renewals, or modifications.**
*By signature and date below, the Borrower's representative certifies, or the loan officer confirms that the Borrower's representative has verbally certified, that the information on the form is complete and correct, and that there has not been any change in Beneficial Ownership.*

Borrower's Representative (certified in person, or verbally to loan officer)    Date _____09/16/20_____  APP ID _____

U81TBurns

_____    _____
(Printed Name of Borrower's Representative)              (Printed Name of Loan Officer)

_____    _____
(Signature of Borrower's Representative, if certified in person)           (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)    Date _____  APP ID _____

_____    _____
(Printed Name of Borrower's Representative)              (Printed Name of Loan Officer)

_____    _____
(Signature of Borrower's Representative)                (Signature of Loan Officer)

Borrower's Representative (certified in person, or verbally to loan officer)    Date _____  APP ID _____

_____    _____
(Printed Name of Borrower's Representative)              (Printed Name of Loan Officer)

_____    _____
(Signature of Borrower's Representative)                (Signature of Loan Officer

Prosperity000205

Trustee_Prosperity_000330

*22860000000000010879150000000010252021*

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $3,000,000.00 | 10-25-2021 | 12-03-2021 | 1087915 | 104 | | TB3 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Genesis Networks Telecom Services, LLC | Lender: | PROSPERITY BANK |
|-----------|------------------------------------------|---------|-----------------|
| | Genesis Networks Global Services, LLC | | PLANO OPERATIONS |
| | 1354 N Loop 1604, Ste. 103 | | P O Box 869105 |
| | San Antonio, TX 78232 | | Plano, TX 75086-9105 |

LOAN TYPE. This is a non-precomputed Variable Rate Nondisclosable Revolving Line of Credit Loan to two Limited Liability Companies for $3,000,000.00 due on demand and, if no demand, on December 3, 2021.

PRIMARY PURPOSE OF LOAN. The primary purpose of this loan is for:

☐ Personal, Family or Household Purposes.

☐ Personal Investment.

☒ Business, Agricultural and All Other.

SPECIFIC PURPOSE. The specific purpose of this loan is: Add collateral to #1087915.

DISBURSEMENT INSTRUCTIONS. Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $3,000,000.00 as follows:

    Other Disbursements:                                           $3,000,000.00
        $2,990,683.21 Principal Balance on loan #1087915 as of
        10/25/2021
        $9,316.79 Approved draw requests
                                                                   _____

    Note Principal:                                                $3,000,000.00

FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED OCTOBER 25, 2021.

BORROWER:

GENESIS NETWORKS TELECOM SERVICES, LLC

GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Telecom Services, LLC

By: _____
James E. Goodman, Jr., Manager of Genesis
Networks Enterprises LLC

GENESIS NETWORKS GLOBAL SERVICES, LLC

GENESIS NETWORKS ENTERPRISES LLC, Manager of Genesis Networks Global Services, LLC

By: _____
James E. Goodman, Jr., Manager of Genesis
Networks Enterprises LLC

Prosperity000127

Trustee_Prosperity_000331

## GUARANTY AGREEMENT

**WHEREAS**, **GENESIS NETWORKS TELECOM SERVICES, LLC**, a Texas limited liability company and **GENESIS NETWORKS GLOBAL SERVICES, LLC**, a Texas limited liability company (collectively, the "Borrower"), are or may become indebted to **PROSPERITY BANK,** a Texas banking association (the "Lender");

**THEREFORE**, for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned (the "Guarantor") hereby guarantees to the Lender the prompt and full payment of the Guaranteed Indebtedness (hereinafter defined), as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise, and at all times thereafter, this Guaranty being upon the following terms and conditions:

1. The term "Guaranteed Indebtedness", as used herein, includes: (a) all sums now or hereafter due and owing pursuant to the terms of (i) that certain Promissory Note dated to be effective July 3, 2020 (the "Note") executed by the Borrower payable to the order of the Lender in the principal sum of Three Million and No/100 Dollars ($3,000,000.00); or, (ii) any other instruments which secure payment of the Note or; (b) interest on any of the indebtedness described in (a) preceding; (c) any and all costs, reasonable attorneys' fees, and expenses suffered by the Lender by reason of Borrower's default in payment of any of the foregoing indebtedness; (d) all obligations of the Borrower under that certain Loan Agreement of even date herewith between the Borrower and the Lender; and, (e) any renewal, extension or rearrangement of the indebtedness, costs, or expenses described in (a) through (c) preceding, or any part thereof.

2. This instrument shall be an absolute and continuing guaranty, until payment in full of the Guaranteed Indebtedness.

3. If the Guarantor becomes liable for any indebtedness owing by Borrower to the Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of the Lender shall be cumulative of any and all other rights that the Lender may ever have against the Guarantor. The exercise by the Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. If, for any reason whatsoever, the Borrower is now, or hereafter becomes, indebted to the Guarantor, such indebtedness and all interest thereon shall, at all times, be subordinate in all respects to the Guaranteed Indebtedness, and the Guarantor shall not be entitled to enforce or receive payment thereof until the Guaranteed Indebtedness has been fully paid. Notwithstanding anything to the contrary contained in this Guaranty or any payments made by any party hereunder, the Guarantor shall not have any right of subrogation in or under the documents securing payment of the Guaranteed Indebtedness or this Guaranty or to participate in any way therein, or in any right, title or interest in and to any mortgaged property or any collateral for the Guaranteed Indebtedness or this Guaranty, all such rights of subrogation and participation being

**GUARANTY AGREEMENT** - Page 1
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\guaranty.agr.docx

Prosperity000039

Trustee_Prosperity_000332

hereby expressly waived and released, until the Guaranteed Indebtedness has been fully paid. Upon payment in full of the Guaranteed Indebtedness, the Lender shall return to the Guarantor the original copy of this Guaranty, and the Guarantor shall be released from any further liability to the Lender for any obligations related to the Guaranteed Indebtedness.

4. In the event of default by Borrower in payment of the Guaranteed Indebtedness, or any part thereof, when such indebtedness becomes due, either by its terms or as the result of the exercise of any power to accelerate, the Guarantor shall, (subject to any applicable cure period), on demand and without further notice of nonpayment or of dishonor, without any notice having been given to the Guarantor previous to such demand of the acceptance by the Lender of this Guaranty, and without any notice having been given to the Guarantor previous to such demand of the creating or incurring of such indebtedness, pay the amount due thereon to the Lender, and it shall not be necessary for the Lender, in order to enforce such payment by the Guarantor, first to institute suit or exhaust its remedies against the Borrower or others liable on such indebtedness, or to enforce its rights against any security which shall ever have been given to secure such indebtedness. Suit may be brought, or demand may be made against all parties who have signed this Guaranty, or against any one or more of them, separately or together, without impairing the rights of the Lender against any other party hereto.

5. Guarantor hereby agrees that the Guarantor's obligations under the terms of this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: (a) the taking or accepting of any other security or guaranty for any or all of the Guaranteed Indebtedness; (b) any release, surrender, exchange, subordination, or loss of any security at any time existing in connection with any or all of the Guaranteed Indebtedness; (c) the insolvency, bankruptcy, disability, dissolution, termination, receivership, reorganization or lack of corporate, partnership or other power of the Borrower, the Guarantor, or any party at any time liable for the payment of any or all of the Guaranteed Indebtedness, whether now existing or hereafter occurring; (d) renewal, extension, modification or rearrangement of the payment of any or all of the Guaranteed Indebtedness, either with or without notice to or consent of the Guarantor, or any adjustment, indulgence, forbearance, or compromise that may be granted or given by the Lender to the Borrower or the Guarantor; (e) any neglect, delay, omission, failure, or refusal of the Lender to take or prosecute any action for the collection of any of the Guaranteed Indebtedness or to foreclose or take or prosecute any action to foreclose upon any security therefor or to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Indebtedness; (f) any failure of the Lender to notify the Guarantor of any renewal, extension, rearrangement, modification or assignment of the Guaranteed Indebtedness or any part thereof, or of any instrument evidencing or securing the Guaranteed Indebtedness or any part thereof, or of the release of or change in any security or of any other action taken or refrained from being taken by the Lender against the Borrower or of any new agreement between the Lender and Borrower, it being understood that the Lender shall not be required to give the Guarantor any notice of any kind under any circumstances with respect to or in connection with the Guaranteed Indebtedness; (g) the unenforceability of all or any part of the Guaranteed Indebtedness against the Borrower, whether because the Guaranteed Indebtedness exceeds the amount permitted by

Prosperity000040

Trustee_Prosperity_000333

law, the act of creating the Guaranteed Indebtedness, or any part thereof, is ultra vires, the officers or persons creating same acted in excess of their authority, or otherwise, it being agreed that the Guarantor shall remain liable hereon regardless of whether the Borrower or any other person be found not liable on the Guaranteed Indebtedness, or any part thereof, for any reason; or any payment by the Borrower to the Lender is held to constitute a preference under the bankruptcy laws or if for any other reason the Lender is required to refund such payment or pay the amount thereof to someone else. It is the intent of the Guarantor and the Lender that the obligations and liabilities of the Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Indebtedness is fully and finally paid, such obligations and liabilities shall not be discharged or released, in whole or in part, by any act or occurrence which might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor.

6. This Guaranty is for the benefit of the Lender and the Lender's successors and assigns, and in the event of an assignment of the Guaranteed Indebtedness, or any part thereof, the rights and benefits hereunder, to the extent applicable to the indebtedness so assigned, may be transferred with such indebtedness. This Guaranty is binding not only on the Guarantor, but on the Guarantor's successors and assigns, and, if this Guaranty is signed by more than one person or entity, then all of the obligations of the Guarantor arising herein shall be jointly and severally binding on each of the undersigned, and their respective heirs, personal representatives, successors and assigns. This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of the Guarantor hereunder are performable in Dallas County, Texas at the place where the Guaranteed Indebtedness is payable. If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Guaranty nor the application of such provisions to any other person or circumstances shall be affected thereby, but rather the same shall be enforced to the greatest extent permitted by law. Guarantor hereby agrees with the Lender that all rights, remedies and recourses afforded to the Lender by reason of this Guaranty or otherwise are separate and cumulative and may be pursued separately, successively or concurrently, as occasion therefor shall arise, and are non-exclusive and shall in no way limit or prejudice any other legal or equitable right, remedy or recourse which the Lender may have. Guarantor shall pay the reasonable attorney's fees and all other costs and expenses which may be incurred by the Lender in the enforcement of this Guaranty.

7. It is not the intention of the Lender or the Guarantor to obligate the Guarantor to pay interest in excess of that legally permitted to be paid by the Guarantor under applicable law. Should it be determined that any portion of the Guaranteed Indebtedness constitutes interest in excess of the maximum amount of interest which the Guarantor (in such capacity) may lawfully be required to pay under applicable law, the obligation of the Guarantor to pay such interest shall automatically be limited to the payment thereof at the maximum rate so permitted under applicable law.

**GUARANTY AGREEMENT** – Page 3
C:\Users\snelson\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\LV9FR3FQ\guaranty.agr.docx

**Prosperity000041**

**Trustee_Prosperity_000334**

8. Guarantor represents that the Guarantor shall receive a direct and material benefit from the proceeds of the Guaranteed Indebtedness.

**EXECUTED** effective as of July 3, 2020.

_____

James E. Goodman, Jr.

Prosperity000042

Trustee_Prosperity_000335

**DATE:**        **AUGUST 31, 2020**

**BORROWER:**      **GENESIS NETWORKS TELECOM SERVICES, LLC and
GENESIS NETWORKS GLOBAL SERVICES, LLC**

**LENDER:**       **PROSPERITY BANK**

**LOAN AMOUNT:**  **$1,948,427.94**

## ATTORNEY REPRESENTATION LETTER

Legal instruments involved in the above-referenced loan transaction have been prepared for Lender, by Colven, Tran & Meredith, P.C.  As a part of the obligation of the undersigned to pay the reasonable expenses of Lender in connection with the preparation of the legal instruments related to the loan from the Lender to the Borrower, the undersigned agrees to pay at closing, the legal fees charged Lender by Colven, Tran & Meredith, P.C.  The undersigned acknowledges that Colven, Tran & Meredith, P.C. has acted only as counsel to Lender, and has not, in any manner, undertaken to assist or render legal advice to the undersigned with respect to the loan or with respect to any of the documents or instruments being executed in connection therewith.  The undersigned has been and is hereby advised to obtain counsel of its own choice to represent it in this transaction.

**BORROWER:**

**GENESIS NETWORKS TELECOM SERVICES, LLC,**
a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
     its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer
                           Founder

**GENESIS NETWORKS GLOBAL SERVICES, LLC,**
a Texas limited liability company
  By:  Genesis Networks Enterprises, LLC,
    a Texas limited liability company,
     its Manager

by: _____
      James E. Goodman, Jr., Chief Executive Officer

ATTORNEY REPRESENTATION LETTER – Page Solo
J:\TJC\23041\065\$1,948,427\atty.rep.ltr.docx

Prosperity000197

Trustee_Prosperity_000336

## GENESIS NETWORKS TELECOM SERVICES, LLC

### WRITTEN CONSENT OF THE SOLE MANAGER
### IN LIEU OF A SPECIAL MEETING

Pursuant to the provisions of Section 6.201(b) of the Texas Business Organizations Code, the undersigned, being the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), does hereby declare that when this consent is signed, the following resolutions shall then be consented to, approved and adopted:

**WHEREAS**, it is proposed that the Company, together with Genesis Networks Global Services, LLC, a Texas limited liability company (collectively, the "Borrower") secure a loan (the "Loan") from Prosperity Bank, a Texas banking association (the "Lender"), the Loan to be evidenced by that certain Promissory Note dated July 3, 2020 (the "Note") in the original principal amount of Three Million and No/100 Dollars ($3,000,000.00), and secured by, among other things, that certain Security Agreement of even date herewith from Borrower for the benefit of Lender, granting the Lender a security interest in all of the accounts receivable of the Borrower (the "Collateral"); and

**WHEREAS**, copies of all of the proposed papers, documents and instruments pertaining to the Loan, or to be executed in connection therewith (the "Loan Papers"), have been submitted to, and reviewed by, the sole Manager of the Company.

**NOW, THEREFORE, RESOLVED**, that the Loan be, and is hereby authorized and approved, and that the execution of the proposed Loan Papers be, and each is hereby authorized and approved, and that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby authorized, empowered and directed to execute the Loan Papers for and on behalf and in the name of the Company, with such changes in the terms and provisions thereof as he shall, in his sole discretion, deem necessary or desirable and in the best interests of the Company, his signature being conclusive evidence that he did so deem any such changes to be necessary or desirable and in the best interest of the Company;

**FURTHER RESOLVED**, that James E. Goodman, Jr., Chief Executive Officer of the Manager of the Company, be, and is hereby, authorized, empowered and directed to perform all acts and do all things which he may deem necessary or desirable to consummate the transactions contemplated by the Loan Papers, with such modifications, amendments or further agreements, certificates and other agreements, instruments or documents as he, in his discretion, may deem necessary or desirable and in the best interest of the Company, his taking of any such action, for and on behalf and in the name of the Company, and/or his

Prosperity000066

Trustee_Prosperity_000337

execution and delivery, for and on behalf and in the name of the Company, of any such agreement, instrument or document to be conclusive evidence that he did so deem the same to be necessary or desirable and in the best interest of the Company; and

**FURTHER RESOLVED**, that the foregoing powers and authorizations shall continue in full force and effect until written notice of revocation has been given the Lender and its receipt obtained therefor.

**DATED**: Effective July 3, 2020.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES, LLC**, a Texas limited liability company

By: _____

James E. Goodman, Jr.,
Chief Executive Officer

**Prosperity000067**

**Trustee_Prosperity_000338**

## CERTIFICATE OF MANAGER

The undersigned, hereby certify that it is now, and at all times mentioned herein has been, the sole Manager of **GENESIS NETWORKS TELECOM SERVICES, LLC,** a Texas limited liability company (the "Company"), and it has access to the records of the Company, which records of the Company reflect that:

**Resolutions**. Attached hereto as Annex 1 and incorporated herein by reference is a true and correct copy of resolutions which have been duly adopted by the sole Manager of the Company in compliance with and not in contravention of the Certificate of Formation and Company Agreement of the Company. Attached hereto as Annex 2 and incorporated herein by reference are true and correct copies of the Certificate of Formation and Company Agreement of the Company. None of such resolutions or the Certificate of Formation and Company Agreement have been repealed or modified in any respect. All of such resolutions are in full force and effect on the date hereof.

**IN WITNESS WHEREOF,** the undersigned has duly executed this Certificate effective this 31st day of August, 2020.

**MANAGER:**

**GENESIS NETWORKS ENTERPRISES SERVICES, LLC,**
a Texas limited liability company

By: _____
James E. Goodman, Jr., Chief Executive Officer

CERTIFICATE OF MANAGER - Page Solo
J:\TJC\23041\065\$1,948,427\cert.man (Telecom).docx

**Prosperity000213**

**Trustee_Prosperity_000339**