Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Case No. 22-31641-mvl-7 |
| GOODMAN NETWORKS, INC., | § § | (Chapter 7) |
| Debtor. | § § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § § | |
| Plaintiff, | § § | ADVERSARY PROCEEDING NO: |
| v. | § § | |
| PROSPERITY BANK; GENESIS NETWORKS TELECOM SERVICES, LLC.; and GENESIS NETWORKS GLOBAL SERVICES, LLC, | § § § § § | |
| Defendants. | | |

**TRUSTEE'S ORIGINAL COMPLAINT**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, Trustee (the "Trustee"), the trustee of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), and files this his *Trustee's Original Complaint* (the "Complaint"), complaining of Prosperity Bank ("Prosperity"), Genesis Networks Telecom Services, LLC ("Genesis Telecom"), and Genesis Networks Global Services, LLC ("Genesis Global," with

TRUSTEE'S ORIGINAL COMPLAINT—Page 1

Genesis Telecom, the "Genesis Borrowers" and with Prosperity, the "Defendants"), and, for cause and action, would respectfully show as follows:

### I.     PROCEDURAL BACKGROUND

1. On September 6, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

2. The Court entered an order for relief against the Debtor on December 12, 2022.

3. The Trustee is the duly appointed trustee of the Debtor and the Estate.

4. The Court has jurisdiction over this Complaint under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2). To the extent that any matter in this Adversary Proceeding is not core, the Trustee consents to this Court's entry of a final judgment over any and all such matters.

5. Venue of this Adversary Proceeding before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

### II.     PARTIES

6. The Trustee is the Chapter 7 trustee of the Debtor and the Estate and files this Complaint in such capacity only.

7. Prosperity is a Texas State Financial Institution. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Prosperity may be served with process in this Adversary Proceeding by and through its registered agent, Charlotte M. Rasche, as follows: Prosperity Bank, c/o Charlotte M. Rasche, Registered Agent, 80 Sugar Creek Boulevard, Sugar Land, Texas 77478.

8. Genesis Telecom is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Genesis Telecom may be served with process in this Adversary Proceeding by and through its registered

agent, Capitol Corporate Services, Inc., as follows: Genesis Networks Telecom Services, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S Mopac Expy Ste 220, Austin, Texas, 78746.

9. Genesis Global is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Genesis Global may be served with process in this Adversary Proceeding by and through its registered agent, Capitol Corporate Services, Inc., as follows: Genesis Networks Global Services, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S Mopac Expy Ste 220, Austin, Texas, 78746.

### III. FACTS

10. On or about July 3, 2020, Prosperity loaned $3 million to the Genesis Borrowers under a revolving line of credit (the "RLOC Loan") which, after certain modifications to the terms thereof, is payable by the Genesis Borrowers on or before January 3, 2024. The RLOC Loan was originally secured by various assets of the Genesis Borrowers.

11. The RLOC Loan is guaranteed by James Goodman.

12. On or about August 31, 2020, Property loaned $1,948,427.94 to the Genesis Borrowers under a term loan (the "Term Loan") which, after certain modifications to the terms thereof, is payable by the Genesis Borrowers within seven years or the death of James Goodman. The Term Loan was originally secured by various assets of the Genesis Borrowers.

13. The Term Loan is guaranteed by James Goodman.

14. Additionally, the Term Loan is secured by a pledge agreement from John Goodman of his interests in Goodman MBE Group, LP ("MBE").

15. John Goodman and James Goodman are brothers.

16. James Goodman is the beneficial owner of each of the Genesis Borrowers, owning 90% of each.

---

TRUSTEE'S ORIGINAL COMPLAINT—Page 3

Trustee_Prosperity_000427

17. James Goodman was the manager of each of the Genesis Borrowers at all times material hereto.

18. John Goodman and James Goodman directly or indirectly own MBE.

19. Upon information and belief, at all times relevant hereto, MBE owned a majority of the equity interests of the Debtor.

20. At no time relevant hereto has the Debtor owned an interest in either of the Genesis Borrowers.

21. At no time has the Debtor guaranteed either of the Prosperity Loans.

22. At no time relevant hereto was the business of the Genesis Borrowers integral, material, or beneficial to the business of the Debtor.

23. Prior to and on October 25, 2021, the Debtor had on deposit with Prosperity, in account number 70173991, the sum of $4,660,000.00 (the "Account").

24. The Account was in the name of the Debtor and it and the funds in it were owned by the Debtor.

25. On or about October 25, 2021, the Debtor executed in favor of Prosperity that certain *Assignment of Deposit Account* (the "Assignment"), pursuant to which the Debtor granted Prosperity a security interest in the Account, in order to secure the obligations of the Genesis Borrowers to Prosperity under the RLOC Loan and the Term Loan.

26. The granting of said security interest represented a "transfer" under the Bankruptcy Code.

27. The execution of the Assignment represented an "obligation" under the Bankruptcy Code.

TRUSTEE'S ORIGINAL COMPLAINT—Page 4

Trustee_Prosperity_000428

28. On or about October 25, 2021, James Goodman signed that certain *Corporate Resolution to Grant Collateral* (the "Resolution") purporting to authorize the Debtor to execute the Assignment.

29. At the time of the Assignment, James Goodman was the Chief Executive Officer and an insider of the Debtor.

30. The Debtor received no consideration and no reasonably equivalent consideration for the Assignment. Among other things, the Debtor was not obligated to Prosperity, the Debtor did not own the Genesis Borrowers, the Debtor received no portion of the RLOC Loan or the Term Loan, the Genesis Borrowers did not compensate the Debtor for the Assignment, and the business of the Genesis Borrowers was not beneficial to the Debtor.

31. Rather, upon information and belief, James Goodman used his authority and control over the Debtor to obtain a benefit for himself personally, on account of his guarantee of the RLOC Loan and the Term Loan, and on account of his ownership of the Genesis Borrowers, by causing the Debtor to execute the Assignment in favor of Prosperity, thereby providing cash collateral to enhance the credit of the Genesis Borrowers and to obtain concessions from Prosperity.

32. The Assignment and the Resolution reference that the Debtor received consideration for the Assignment. This reference was false. Upon information and belief, Prosperity, being a sophisticated entity with knowledge of the Genesis Borrowers' corporate structure and ownership, knew or should have known that these recitations of consideration were false and that the purpose of the Assignment and the Resolution was to benefit the insiders of the Genesis Borrowers.

33. At the time of the Assignment, the Account was subject to an account control agreement in favor of UMB Bank, N.A. ("UMB"), as Indenture Trustee for the benefit of various

TRUSTEE'S ORIGINAL COMPLAINT—Page 5

bondholders, and a creditor of the Debtor. UMB asserts that the account control agreement perfected a security interest in favor of UMB against the Account.

34. During the Summer of 2022, upon information and belief, UMB sent one or more notifications or demands to Prosperity regarding the Account. Upon further information and belief, at that time Prosperity transferred the funds in the Account to a new account ending in 10188 and styled as an "escrow account" (the "Escrow Funds"). The Debtor did not enter into any escrow or other agreement with Prosperity regarding the same: Prosperity transferred the funds in the Account to the Escrow Funds without the Debtor's approval and, upon information and belief, while it sought to work issues out with UMB.

35. The Escrow Funds are funds that the Trustee may use in the Bankruptcy Case, even if they are subject to a perfected security interest of UMB. Among other things, the Trustee could seek permission to use the funds as cash collateral under section 363(c) of the Bankruptcy Code or the Escrow Funds could be used to pay UMB.

36. The Debtor, from its account and funds, made the following transfers to Prosperity for and on account of the obligations of the Genesis Borrowers to Prosperity (collectively, the "Payments"):

| | |
|---|---|
| 1/22/2021 | $26,231.25 |
| 2/11/2021 | $26,231.25 |
| 3/1/2021 | $26,231.25 |
| 3/30/2021 | $15,349.17 |
| 4/20/2021 | $26,231.25 |
| 6/1/2021 | $26,231.25 |
| 6/30/2021 | $26,231.25 |
| 7/30/2021 | $26,231.25 |
| 7/30/2021 | $26,231.25 |
| 8/30/2021 | $26,231.25 |
| 9/30/2021 | $26,231.25 |
| 11/1/2021 | $26,231.25 |
| 11/30/2021 | $26,231.25 |
| 12/30/2021 | $26,231.25 |
| 1/3/2022 | $26,231.25 |

TRUSTEE'S ORIGINAL COMPLAINT—Page 6

Trustee_Prosperity_000430

| | |
|---|---|
| 2/28/2022 | $26,231.25 |
| 3/30/2022 | $26,231.25 |
| 5/2/2022 | $26,231.25 |
| 5/31/2022 | $26,231.25 |
| 6/30/2022 | $26,231.25 |
| 8/1/2022 | $26,231.25 |
| **Total:** | **$513,742.92** |

37. The Payments were used to pay the monthly principal and interest obligations of the Genesis Borrowers, and not the Debtor, to Prosperity. The Debtor was not otherwise obligated to Prosperity to make the Payments regardless of the Assignment, as the Debtor did not guarantee or otherwise promise to pay the obligations of the Genesis Borrowers to Prosperity.

38. Rather, James Goodman, using his authority and control over the Debtor, caused the Debtor to make the Payments to Prosperity in order to benefit the Genesis Borrowers and himself as a result of his ownership and control of the Genesis Borrowers.

39. The Debtor received no value and no reasonably equivalent value for making the Payments.

40. The Debtor was insolvent at the time of the Assignment, or the making of the Assignment with the transfer and obligation effectuated thereby rendered the Debtor insolvent.

41. The Debtor was insolvent at the time that it made each of the Payments.

### IV. CAUSES OF ACTION

**COUNT 1:    DECLARATORY JUDGMENT**

42. The Trustee incorporates his allegations above.

43. An actual and present case and controversy exists regarding whether the Assignment is void for lack of consideration, and Prosperity has refused to turn over the Escrow Funds.

44. The Debtor received no consideration for the Assignment. Among other things: (i) the Debtor received no portion of any loan from Prosperity; (ii) the Debtor had no preexisting loan

TRUSTEE'S ORIGINAL COMPLAINT—Page 7

Trustee_Prosperity_000431

or other obligation to Prosperity to secure; (iii) the Debtor had no ownership interest in the Genesis Borrowers; and (iv) the Debtor was not paid anything for pledging its property to secure the obligations of the Genesis Borrowers.

45. The recital of any consideration to the Debtor in the Assignment or the Resolution is false. That it was false was known or reasonably should have been known to Prosperity.

46. A contract that lacks consideration is void.

47. Accordingly, the Trustee requests a declaration that the Assignment, together with any other agreement, obligation, or promise related thereto, is void for lack of consideration under Texas law, and that Prosperity has no security interest, banker's lien, or other right against the Escrow Funds.

**COUNT 2:** **CONSTRUCTIVELY FRAUDULENT TRANSFER/ESCROW FUNDS**

48. The Trustee incorporates his allegations above.

49. At the time of the Assignment and of the actions complained of herein, and at all times subsequent thereto, the Debtor was insolvent or the Assignment rendered the Debtor insolvent.

50. The Debtor received no value and no reasonably equivalent value for the Assignment.

51. The making of the Assignment was done by an insider of the Debtor, James Goodman, for his personal benefit or the benefit of the Genesis Borrowers.

52. Prosperity did not accept the Assignment in good faith or for value, since Prosperity knew or should have known that the Debtor received no value or reasonably equivalent value for the same, and that the Debtor had no ownership interest in the Genesis Borrowers, and Prosperity gave the Debtor no value in exchange for the Assignment. Thus, Prosperity has no claim to a preferential lien or other right against any funds the subject of the Assignment.

TRUSTEE'S ORIGINAL COMPLAINT—Page 8

Trustee_Prosperity_000432

53. Under section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid the Assignment, both as a transfer and as an obligation, as constructively fraudulent.

54. Accordingly, the Trustee hereby seeks the avoidance of the Assignment, and any transfer or obligation effectuated thereby or otherwise, as constructively fraudulent transfers under the Bankruptcy Code.

**COUNT 3: CONTRUCTIVELY FRAUDULENT TRANSFER/PAYMENTS**

55. The Trustee incorporates his allegations above.

56. At the time that the Debtor made each of the Payments, and at all times thereafter, the Debtor was insolvent.

57. The Debtor had no contractual or other obligation to Prosperity to make the Payments.

58. The Debtor received no value and no reasonably equivalent value from any of the Payments.

59. Each of the Payments was made from the Debtor's property; *i.e.* funds owned by the Debtor, and represented a transfer of the Debtor's property.

60. Each of the Payments was made within two years prior to the Petition Date.

61. Prosperity did not accept any of the Payments in good faith or for value, since Prosperity knew or should have known that the Debtor received no value or reasonably equivalent value for the same, and that the Debtor had no ownership interest in the Genesis Borrowers, and Prosperity gave the Debtor no value in exchange for each of the Payments. Thus, Prosperity has no claim to a preferential lien or other right against any of the Payments.

62. Under section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid each of the Payments as constructively fraudulent.

TRUSTEE'S ORIGINAL COMPLAINT—Page 9

Trustee_Prosperity_000433

63. Accordingly, the Trustee hereby seeks the avoidance of each of the Payments as constructively fraudulent transfers under the Bankruptcy Code.

## COUNT 4: RECOVERY OF AVOIDED TRANSFERS

64. The Trustee incorporates his allegations above.

65. The Bankruptcy Code provides that, upon the avoidance of any transfer under section 548 of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a).

66. The Assignment represented a transfer by the Debtor of an interest in its property.

67. The Payments represented transfers by the Debtor of its property.

68. Prosperity is the initial transferee of each of the Payments and of the Assignment and it is an entity for whose benefit these transfers were made.

69. Each of the Genesis Borrowers is an entity for whose benefit the Assignment and the Payments were made.

70. Accordingly, the Trustee seeks a money judgment against all of the Defendants, jointly and severally, in the amount of the Payments and the Assignment, and any portion of the Escrow Funds ever applied or used by Prosperity.

## COUNT 5: TURNOVER

71. The Trustee incorporates his allegations above.

72. Under the Bankruptcy Code, "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such

TRUSTEE'S ORIGINAL COMPLAINT—Page 10

Trustee_Prosperity_000434

property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

73.  Prosperity is not a custodian.

74.  The Escrow Funds are not of inconsequential value or benefit to the Estate.

75.  The Escrow Funds represent property that the Trustee may use under section 363 of the Bankruptcy Code.

76.  Prosperity has had notice of the Bankruptcy Case since shortly after the Petition Date.

77.  The Debtor did not agree to any escrow arrangement that would limit the Debtor's ownership of the Escrow Funds, the same being done unilaterally by Prosperity.

78.  The Trustee has made demand on Prosperity to turn over to him the Escrow Funds. To-date, Prosperity has not done so.

79.  Accordingly, the Trustee hereby requests a judgment directing and commanding Prosperity to turn over to him the full Escrow Funds, without setoff, immediately, and to account to the Trustee for any of the Escrow Funds that Prosperity may have used or applied.

80.  The Trustee further seeks a money judgment against Prosperity for all interest that was or should have been earned on the Account and the Escrow Funds both prior to and after the Assignment.

### V.  RESERVATION OF RIGHTS

81.  The Trustee and the Estate hold claims and causes of action against the Genesis Borrowers, James Goodman, and John Goodman separate and additional to the claims asserted in this Complaint. Nothing in this Complaint is intended to or shall prejudice any such separate and additional claims, including under principles of *res judicata*, and the Trustee expressly preserves and retains all such separate and additional claims.

---

TRUSTEE'S ORIGINAL COMPLAINT—Page 11

Trustee_Prosperity_000435

82.　　Furthermore, to the extent that Prosperity has ever applied any of the funds in the Account, or any of the Escrow Funds, the Trustee reserves the right to amend this Complaint to avoid and recover the same.

## VI.　PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee requests that the Defendants be cited to appear and to answer this Complaint and that the Trustee have judgment as follows:

(i)　　avoidance of the Assignment as a constructively fraudulent transfer and obligation under the Bankruptcy Code;

(ii)　　avoidance of the Payments as constructively fraudulent transfers under the Bankruptcy Code;

(iii)　　money judgment against the Defendants, jointly and severally, for the Payments;

(iv)　　turnover against Prosperity and/or a money judgment against the Defendants jointly and severally for the Account and Escrow Funds, together with all interest that was or that should have been reasonably accrued and paid on the same;

(v)　　reasonable attorney's fees to the extent provided for by applicable law;

(vi)　　prejudgment and postjudgment interest to the extent provided by applicable law; and

(vii)　　such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 7th day of March, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
　　Davor Rukavina, Esq.
　　Texas Bar No. 24030781
　　Thomas D. Berghman, Esq.
　　Texas Bar No. 24082683
　　3800 Ross Tower
　　500 N. Akard Street
　　Dallas, Texas 75201-6659
　　Telephone: (214) 855-7500
　　Facsimile: (214) 855-7584
　　Email: drukavina@munsch.com

TRUSTEE'S ORIGINAL COMPLAINT—Page 12

Trustee_Prosperity_000436

COUNSEL FOR SCOTT SEIDEL, CHAPTER 7 TRUSTEE