*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*SUBJECT TO COMMON INTEREST*

<u>In re Goodman Networks, Inc., Case No. 22-31641 (Bankr. N.D. Tex.)</u>
<u>Prosperity 9019 Motion UCC Analysis</u>

As we discussed on the call, there are several arguments we would advance to show that the Subject Funds are either property of the Collateral Agent, and are not property of the Estate, or are fully encumbered by the valid, perfected liens held by the Collateral Agent. For purposes of the 9019 motion, the trustee must show that the settlement agreement is a reasonable exercise of his business judgment, and that the settlement does not fall beneath the lowest point in the range of reasonableness. Given the complex legal issues, the strength of the Collateral Agent's position, and the costs of litigation, this settlement clearly meets the standard for approval.

**I. The Subject Funds Are Property of the Collateral Agent and the Estate has no Interest in the Subject Funds**

    A. Delivery of the notice of exclusive control cut off all rights of the Debtor to funds in the 3992 Account. At that point, the Debtor no longer had a right to the funds.

    B. When Prosperity put the funds in the 0188 Account, it said they would remain there until it resolved the conflicting instructions.

    C. Any instruction to apply the funds to the Genesis Loan (assuming such instructions were given) were invalid. The DACA prohibited any other security interests and Prosperity subordinated its rights or claims (except for returned items and certain other fees), and the instructions of the Collateral Agent control.[1]

    D. Accordingly, when the petition was filed, the Subject Funds belonged to the Collateral Agent and did not become property of the Estate.

**II. If the Estate Does Have an Interest in the Subject Funds, that Interest Is Subject to the Valid, Perfected Security Interests of the Collateral Agent**

    A. The 0188 Account, an internal account at Prosperity, is not a deposit account of the Debtor.

    B. The Collateral Agent has a perfected prepetition security interest in the 0188 Account.

        1. Whatever interest the Debtor has is a general intangible or payment intangible.

        2. The Collateral Agent has a security interest in general intangibles and payment intangibles, which interests are perfected by filing (and control).

        3. Additionally, the general intangible or payment intangible constitutes proceeds of the prior account and, again, the Collateral Agent has a perfected security interest.[2] The Collateral Agent held a continuing interest in proceeds, which interest continued to be perfected under UCC 9-315. The perfection did not lapse because the financing

---

[1] DACA §§ 2, 5.

[2] *In re 3PL4PL, LLC*, 619 B.R. 441, 463 (Bankr. D. Colo. 2020).

1

*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*SUBJECT TO COMMON INTEREST*

statement perfected the Collateral Agent's security interest in the 0188 Account as a general intangible or payment intangible.

### III. Even if the 0188 Account Is a Deposit Account, the Collateral Agent's Security Interest Was Perfected by the DACA

A. The DACA on the 3992 Account applies to the 0188 Account.

1. Control under UCC 9-104 does not require that the DACA specifically reference a specific account where the funds are held. It is sufficient that the parties understand the accounts to which the DACA is intended to apply.[3]

2. Statements and actions with regard to the 0188 Account show that the parties intended for the DACA to such an account.

B. Alternatively, the August 31, 2022 letter is an authenticated record (signed document) showing that the Collateral Agent had control of the 0188 Account. The letter refers to the 0188 Account as a "secured account" and states that the Subject Funds are being placed in the 0188 Account pending resolution of the conflicting instructions.

C. Alternatively, the Collateral Agent is perfected because it is a customer of Prosperity under 9-104(a)(3) with respect to the 0188 Account. This customer relationship arises through the DACA and based on the Prosperity's continuing possession of the Subject Funds in the 0188 Account subject to the Collateral Agent's claims.

### IV. The Subject Funds Were Not Transferred Free and Clear of the Collateral Agent's Liens under UCC 9-332(b)

A. Prosperity is not a "transferee" of the Subject Funds.

1. Any application of the funds by Prosperity was unwound and the retrieved funds are held in the 0188 Account pending resolution of the conflicting instructions.

2. There was no intent to "pay" Prosperity in placing the funds in the 0188 Account and the policy behind UCC 9-332 is not implicated by Prosperity holding the funds.

B. Alternatively, the transfer reflects collusion to violate the Collateral Agent's rights.

1. Again, the DACA prohibited any other security interests and Prosperity subordinated its rights or claims.

2. Prior to the Collateral Agent's delivery of the notice of exclusive control on August 16, 2022, the Indenture Trustee contacted Prosperity Bank regarding the Debtor's bank accounts and the DACAs.

---

[3] *See In re Se. Stud & Components, Inc.*, No. 14-32906-DHW, 2015 WL 7750209, at *3 (Bankr. M.D. Ala. Dec. 1, 2015) (holding that security interest in deposits accounts was perfected as to accounts used by debtor that were not specified in DACA because debtor and bank understood it to apply).

*PRIVILEGED AND CONFIDENTIAL*
*ATTORNEY WORK PRODUCT*
*SUBJECT TO COMMON INTEREST*

3. Evidence supports a finding of collusion to violate rights of the Collateral Agent.

   i. James Goodman testified that he had multiple banking relationships with Bater Bates, the Debtor's account officer at Prosperity. An email from Stephanie Elmore dated August 23, 2022, shows that James Goodman and Bater Bates worked together to direct the Genesis payoff.[4]

   ii. Emails between John Goodman and Bater Bates indicate that the Prosperity applied the funds to the Genesis loan to prevent the Collateral Agent from seizing the funds.[5]

   iii. The foregoing evidences that Bater Bates was aware of the impending delivery of the notice of control and, in consultation with James Goodman, sought to have the Subject Funds applied to a loan at Prosperity for another one of James Goodman's companies for the purpose of preventing the Collateral Agent from exercising its rights.

4. Such actions did not alter, impair, or affect the continuing perfected security interest of the Collateral Agent because, as noted above, any application of the funds by Prosperity was unwound, and the retrieved funds are held in the 0188 Account subject to the Collateral Agent's rights, claims, and interests.

## V. Conclusion

As set forth above, we have several strong arguments showing that the Collateral Agent would ultimately prevail in litigation regarding the Subject Funds. The trustee's burden is to show that he exercised reasonable business judgment, and that the settlement does not fall beneath the lowest point in the range of reasonableness. Given the complex legal issues, the strength of the Collateral Agent's position, and the costs of litigation, this settlement clearly meets the standard for approval.

---

[4] James Goodman Deposition Transcript 185:19-186:19 (Feb. 1, 2023); Goodman_002021.
[5] GTH_John Goodman-004102.

DMS 301924175

Trustee_Prosperity_001133