IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| § | Case No. 22-31641-mvl-7 | |
| **GOODMAN NETWORKS, INC.,** § | | |
| § | (Chapter 7) | |
| Debtor. § | | |
| § | | |
| **SCOTT M. SEIDEL, TRUSTEE,** § | | |
| § | | |
| Plaintiff, § | ADVERSARY PROCEEDING | |
| § | NO: | |
| v. § | | |
| § | | |
| **FEDEX SUPPLY CHAIN LOGISTICS** § | | |
| **& ELECTRONICS, INC.,** § | | |
| § | | |
| Defendant. § | | |

**TRUSTEE'S ORIGINAL COMPLAINT**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel, Trustee (the "Trustee"), the trustee of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), and files this *Original Complaint* (the "Complaint"), complaining of FedEx Supply Chain Logistics & Electronics, Inc. ("FedEx"), and, for cause and action, would respectfully show as follows:

**I.     SUMMARY**

1.     FedEx claims a constructive trust against a large amount of property of the Estate, even though no fiduciary or trust relationship existed prepetition, even though it obtained no judgment of constructive trust prepetition, and even though the Bankruptcy Code converts any such claim into a monetary claim postpetition. The Trustee had preferred not to litigate this issue, unless and until the Trustee recovered assets worth fighting about. However, FedEx's recent filing

TRUSTEE'S ORIGINAL COMPLAINT—Page 1

of a complaint with the District Court, suing virtually all Estate defendants, claiming a constructive trust, seeking control and possession of property of the Estate, and violating the automatic stay in the process, has now forced the issue. The Trustee's ability to administer the Estate has been greatly impeded by FedEx's actions and its legally unsustainable claim. The Trustee therefore files this Complaint seeking a declaration that FedEx holds no constructive trust or other interests against property of the Estate and is an unsecured creditor only, a permanent injunction barring FedEx from pursuing its complaint in the District Court, and for damages resulting from its violation of the automatic stay.

## II.  PROCEDURAL BACKGROUND

1. On September 6, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

2. FedEx was one of the petitioning creditors, taking a very active role in the involuntary proceedings and the subsequent extensive proceedings by which the Debtor sought to convert its case from Chapter 7 to Chapter 11.

3. The Court entered an order for relief against the Debtor on December 12, 2022.

4. The Trustee is the duly appointed trustee of the Debtor and the Estate.

5. The Court has jurisdiction over this Complaint under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2). Among other things, this Complaint seeks to determine the extent of an interest in property of the Estate, and whether property is property of the Estate, which this Court has exclusive jurisdiction to do. To the extent that any matter in this Adversary Proceeding is not core, the Trustee consents to this Court's entry of a final judgment over any and all such matters.

6. Venue of this Adversary Proceeding before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

### III.   PARTIES

7. The Trustee is the duly appointed trustee of the Estate and files this Complaint in such capacity only.

8. FedEx is a corporation organized and existing under the laws of the State of Delaware.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), FedEx may be served with process in this Adversary Proceeding by and through its registered agent, CT Corporation System, as follows: FedEx Supply Chain Logistics & Electronics, Inc., c/o CT Corporation System, Registered Agent, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### IV.   FACTUAL BACKGROUND

A.   THE MASTER SERVICES AGREEMENT

9. At all times relevant hereto, the Debtor qualified as a minority owned business, as members of the Goodman family are Hispanic.

10. At all times relevant hereto, FedEx was engaged in business where it found it profitable to transact with a minority owned business, including buying or selling services and products through such a business, in order to obtain contracts and business opportunities where customers require minority owned business involvement.

11. In particular, FedEx desired to obtain certain business from AT&T, and such business required FedEx to have a Tier II minority owned business partner, for this was more advantageous to FedEx.  FedEx, or a predecessor thereof, contracted with Genesis Networks Telecom Services, LLC ("Genesis") to facilitate such an arrangement.  Basically, FedEx would purchase mobility accessories (such as ear phones and Bluetooth devices) from third parties based on AT&T forecasts and demands.  These products would arrive at FedEx's location in Fort Worth,

where they were electronically sold to Genesis—without any physical transfer. Genesis would then electronically sell the products back to FedEx—again without any physical transfer. In this manner, FedEx would be able to state that it procured the goods from a minority owned business.

12.  On the sale back to FedEx, Genesis would be entitled to a mark-up of .2% of the purchase price. FedEx was paying a fee of .2% for the use of a minority owned business in order to obtain contracts; that was the price for the minority owned business's participation—a participation that amounted to that business "electronically" or "virtually" owning the underlying goods for a short moment in time just so that FedEx could publicly claim it was patronizing and supporting a minority owned business.

13.  The contractual relationship was as follows. First, on January 20, 2014, ATC Logistics & Electronics, Inc. ("ATC"), now known as FedEx, and Genesis entered into that certain *Master Services Agreement* (the "MSA"), which is attached to the Proof of Claim (defined below). By subsequent agreement, the term of the MSA was extended through December 31, 2023. Prior to the events complained of in this Complaint, FedEx was a party to the MSA.

14.  Genesis and the Debtor entered into an agreement whereby the Debtor purchased certain assets of Genesis, including its rights under the MSA, on or about September 14, 2019, although FedEx has alleged that Genesis began transitioning its business under the MSA to the Debtor beforehand. The Debtor became a party to the MSA by way of such sale. FedEx has alleged that this transfer or assignment of the MSA to the Debtor was made without disclosure to FedEx and without FedEx's approval.

15.  Regardless of whether the transfer or assignment of the MSA to the Debtor was appropriate under the terms of the MSA, the Debtor informed FedEx about transitioning the MSA from Genesis to the Debtor, and FedEx consented to the same by December 4, 2020.

16. FedEx has alleged that this consent was procured by fraud, by representations that the only change was that Genesis was changing its name to the Debtor's name. To the extent that it is relevant, the allegation is questionable because the 4352 Account (defined below) was clearly in the name of the Debtor, and FedEx transacted with the Debtor for years, and a highly sophisticated organization such as FedEx knew or should have known that it was transacting business with the Debtor.

B. **THE 4352 ACCOUNT, TRANSFERS, AND PROCEEDS**

17. In order to process payments under the MSA, the Debtor opened an account at Prosperity Bank ("Prosperity"), account number ending in 4352 (the "4352 Account").

18. FedEx has alleged that the 4352 Account was some type of "automated" account, out of which funds should have been paid to FedEx automatically, less the .2% payable to the Debtor. The 4352 Account was not automated and no payment was made to FedEx from the 4352 Account. Instead, for the majority of the time period in question, the Debtor transferred all funds from the 4352 Account to another account at Prosperity Bank – ending in 1838 (the "1838 Account"). Payments to FedEx were made from the 1838 Account.

19. The Trustee is not aware of any document or agreement whereby FedEx held any right to the 4352 Account or the funds therein, the 4352 Account otherwise being solely in the name of the Debtor.

20. By September, 2021, James Frinzi ("Frinzi") was the Chief Executive Officer of the Debtor and its subsidiaries, and, by November, 2021, James Goodman ("Goodman") was the sole director of the Debtor.

21. Beginning in November, 2021, at the direction of Frinzi, the Debtor stopped paying FedEx what the Debtor owed. As a result, large amounts of funds began to accrue in the 4352

TRUSTEE'S ORIGINAL COMPLAINT—Page 5

Account such that, between November 2021 and February, 2022, more than $81 million had been paid by FedEx into the 4352 Account with no payment under the MSA to FedEx.

22. A series of transfers, large and small, orchestrated by Goodman and/or Frinzi, began in October 2021. The majority of funds were transferred to insiders and others in what the Trustee has asserted are, among other things, breaches of fiduciary duty and fraudulent transfers. These transfers and others like them (all such transfers, the "Transfers") include the following:[1]

    (i) more than $17 million to Hudson Clean Energy Enterprises, LLC and the Auerbach family, and to Goodman and his entities, which the Trustee has sued (along with others) to recover in Adversary Proceeding No. 23-03090;

    (ii) more than $13.5 million to 18920 NW 11th, LLC and its insiders, Steven Zakharyayev and Evelina Pinkhasova, and to Goodman and his entities, which the Trustee has sued (along with others) to recover in Adversary Proceeding No. 23-03072;

    (iii) more than $5 million to Frinzi, his company and his family trust, which the Trustee has sued to recover in Adversary Proceeding No. 23-03036; and

    (iv) $44 million to Frinzi and American Metals Recover and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR"), which the Trustee has yet to sue for but which the Court knows has involved extensive proceedings under Bankruptcy Rule 2004 and Bankruptcy Rule 9019.

23. In addition, various Estate defendants used some of the funds from the 4352 Account to obtain or acquire property for themselves, which property the Trustee is seeking to

---

[1] This list is not exhaustive and the Trustee's discussion of defendants and causes of action is not limiting and is not intended by the Trustee to waive or prejudice any claim against any defendant, known, asserted, unknown, or unasserted.

recover or asserts is held in constructive or resulting trust for the benefit of the Estate. These transfers and property (all such property, the "Proceeds") include the following:[2]

    (i)    OnePath Systems, LLC, purchased by AMRR using the Debtor's funds;

    (ii)    equity in AMRR, purchased by Frinzi, or one of his companies, using the Debtor's funds (also involved in Adversary Proceeding 23-03036);

    (iii)    a lakehouse and separate lakefront lot purchased by Frinzi's family trust using the Debtor's funds (also involved in Adversary Proceeding 23-03036);

    (iv)    $1,600,000 of the Debtor's secured bonds purchased by the Auerbachs (indirectly) using the Debtor's funds (also involved in Adversary Proceeding 23-03090).

24. The foregoing were transfers of property of the Debtor (and not FedEx) giving rise to, among other things, claims and causes of action by the Trustee to avoid and recover the transfers as constructively fraudulent transfers and breaches of fiduciary duty by Frinzi and/or Goodman. A portion of the transfers, at least related to Adversary Proceeding No. 23-03036 pending before the Court, is also the result of embezzlement by Frinzi.

C. **THE PROOF OF CLAIM**

25. On April 7, 2023, FedEx filed proof of claim number 32 in the Bankruptcy Case (the "Proof of Claim"). By the Proof of Claim, FedEx asserts a claim against the Estate in the amount of $81,158,452.82. The Proof of Claim also asserts "express, equitable, constructive, resulting or other trust" claims and rights. The Proof of Claim also asserts a claim under the Texas Theft Liability Act, apparently asserting that the funds in the 4352 Account belonged to FedEx and that the Debtor stole these funds. In particular, the Proof of Claim asserts that the Debtor transferred $76,104,141.98 from the 4352 Account to itself or to third parties, most of whom the

---

[2] *See* prior footnote.

TRUSTEE'S ORIGINAL COMPLAINT—Page 7

Trustee has asserted or has threatened claims against related to, among other things, breaches of fiduciary duty and fraudulent transfer.

D.    **THE DISTRICT COURT LAWSUIT**

26.    At various times, FedEx has informed the Trustee and others that it held personal claims against certain individuals related its allegations in connection with the Debtor's obligations to it, including against Frinzi and Prosperity Bank. These allegations never included any type of trust claim or claim against the property of any individual or entity. As such, the Trustee did not seek to impede FedEx from asserting *in personam* claims against the individuals and entities involved.

27.    At various times, FedEx has also informed the Trustee and others that it asserted constructive trust claims against property of the Estate. Rather than litigating these issues, the Trustee and FedEx had been working towards a potential stipulation that would have preserved these assertions while enabling the Trustee to monetize Estate assets, and then to determine, likely with the assistance of this Court, the priority of distributions from the Estate.

28.    In the meantime, it was critical to the Trustee that he have the ability to sue Estate defendants, recover Estate assets, and be able to negotiate with third-parties and defendants for the benefit of the Estate and all creditors, as the Bankruptcy Code contemplates.

29.    This changed when, on October 27, 2023, FedEx filed its *Complaint* with the United States District Court for the Northern District of Texas, thereby initiating Case No. 3:23-cv-02397-S (the "District Court Lawsuit").

30.    The District Court Lawsuit is extraordinary. It is 153 pages and 825 paragraphs of allegations. The defendants are largely the same as Estate defendants, and the discrete alleged wrongs (except with respect to Prosperity and the Debtor's subsidiaries) are the same as alleged by the Trustee in various filed and anticipated actions.

31. Instead of merely asserting claims against the defendants therein, FedEx asserts RICO claims against defendants who the Trustee has sued or has threatened claims against; *i.e.* the transferees of the Transfers and Proceeds. *And*, FedEx asserts constructive trust claims against the defendants. In other words, FedEx asserts causes of action that are property of the Estate and constructive trust claims against alleged property of the Estate, but not before this Court and in this proceeding, but in a separate proceeding not naming the Debtor, Trustee or the Estate, and filed without advance notice to the Trustee or relief from this Court from the automatic stay.

32. In fact, most of the District Court Lawsuit involves the same transactions, transfers, and resulting property as the Trustee's asserted Transfers and Proceeds. FedEx is asserting that the Transfers and Proceeds were made with its money, and that recovery of the Transfers and Proceeds should, therefore, inure to its benefit. FedEx has commenced the proverbial "race to the courthouse" against the Trustee. More than that, however, FedEx is actively trying to take control of Estate property and severely hinder, limit, and interfere with the Trustee's administration of Estate property.

33. By way of brief background, FedEx is not happy with how the Trustee has administered the Estate, in part. The Court knows of the level of FedEx's objection and resulting litigation regarding the Trustee's Rule 9019 motion with the Bondholders and Prosperity. In the background, the Trustee refused FedEx's proposed stipulation regarding its constructive trust claims, largely because an agreement could not be reached as to the level of input or control that FedEx would have over proposed settlements. FedEx likewise objected to the Trustee's Rule 9019 motion with AMRR regarding the transfer of one of its business units, albeit not as vehemently as the Prosperity settlement. FedEx also voiced displeasure as to not being involved in the Trustee's mediation with 18920, and with the scheduled (now abated indefinitely) mediation with Hudson and the Auerbachs. The foregoing is only a portion of FedEx's dissatisfaction with how the

Trustee has been administering the Estate—not because there is anything to be dissatisfied about (as indeed other creditors support the Trustee)—but because the Trustee would not do as FedEx wanted or insisted.

34. Clearly, even though it was a petitioning creditor and contested the Debtor's motion to convert the Bankruptcy Case to Chapter 11, FedEx wanted and wants control over the Bankruptcy Case and the Estate. Hence the District Court Lawsuit.

35. It is one thing for FedEx to seek monetary damages on claims personal to it against potential defendants. It is another to sue every Estate defendant, based on transfers of Estate property that give rise to Estate claims, and to assert constructive trust rights over alleged property of the Estate. The clear purpose of this is to frustrate the Trustee's administration of the Estate by making it virtually impossible for him to administer the Estate, monetize assets, enter into settlements, and grant releases *without* FedEx also giving a release to the particular defendant.

36. So far, FedEx's plan seems to be succeeding. Damage to the Estate has occurred and is ongoing as a result of the District Court Lawsuit. AMRR has already informed the Trustee that, because of the District Court Lawsuit, it may have to file a Chapter 11 case in order to sell assets under section 363(f) of the Bankruptcy Code, because otherwise it cannot provide clear title to a buyer. Such a filing will likely negatively impact the amount AMRR can pay the Estate on its claims. Hudson and the Auerbachs have informed the Trustee that there is no point to a settlement with the FedEx allegations pending, and the mediation scheduled for November 9, 2023 has been postponed indefinitely. Frinzi, Goodman, and 18920 have similarly informed the Trustee that there is no point to negotiations because a settlement with the Estate cannot provide them the release that they would need to pay reasonable funds. And, all defendants of the Estate—who are the defendants to the District Court Lawsuit—will collectively spend enormous amounts of

attorney's fees simply responding to a 825 paragraph complaint; money which will not be there for the Estate to recover and distribute to creditors.

### E. MISCELLANEOUS

37. Texas law governs FedEx's claimed interests and trust rights. Among other things, the MSA is expressly governed by Texas law, the events FedEx complains of occurred in the State of Texas (the purchase and sale of goods, and the failure to pay), and the 4352 Account was located in the State of Texas.

38. The Debtor was never a fiduciary of FedEx and it never owed fiduciary duties to FedEx.

39. The Debtor was never a trustee of any property or rights of FedEx and FedEx was never a beneficiary of any property of the Debtor.

40. No special relationship of confidence or similar dealings, such as might give rise to heightened duties, existed between FedEx and the Debtor.

41. The 4352 Account and all funds therein and the subject thereof were always held in the Debtor's name, and not in any way in FedEx's name.

42. FedEx did not own the 4352 Account or any funds therein.

43. FedEx did not have a lien, security interest, or deposit account control agreement with respect to the 4352 Account.

44. FedEx did not have signatory rights on the 4352 Account, nor was its consent required for the Debtor to remove funds from that account.

45. The 4352 Account was not a trust account whereby the Debtor held the funds therein for anyone's benefit, including FedEx.

46. At all times material to this Complaint, the relationship between FedEx and the Debtor was merely a contractual relationship where a breach of the MSA resulted in damages for breach of contract, as opposed to breach of fiduciary duty, breach of trust, or the like.

47. Indeed, as FedEx judicially admits, "[t]he entire agreement was [a] financing arrangement that did not require the minority business enterprise to have significant cash outlays." District Court Lawsuit at ¶ 749.

## V. CAUSES OF ACTION

### COUNT 1: DECLARATORY JUDGMENT OF NO CONSTRUCTIVE TRUST UNDER TEXAS LAW

48. The Trustee incorporates his allegations above.

49. An actual and present case or controversy exists between the Trustee and FedEx regarding FedEx's claim that the Debtor held funds in the 4352 Account in constructive trust for FedEx, and that FedEx has rights of constructive trust as against any such funds and the proceeds of such funds, including the Transfers and Proceeds, as evidenced by, among other things, the District Court Lawsuit and the Proof of Claim.

50. A constructive trust does not arise by operation of law but instead requires a judicial determination that it exists.

51. A party seeking the imposition of a constructive trust must strictly prove a breach of a special trust or fiduciary relationship or actual or constructive fraud, unjust enrichment of the wrongdoer, and an identifiable *res* that can be traced back to the original property. Mere breach of contract does not entitle the complainant to a constructive trust, nor does proof that defendant has been guilty of some wrongdoing and has assets that could be used to satisfy the claim.

52. To prove an identifiable *res*, the proponent of the constructive trust must show that the specific property that is subject to the constructive trust is the same property, or the proceeds

from the sale thereof or revenues therefrom, that was somehow wrongfully taken. When the property sought to be recovered or its proceeds have been dissipated so that no product remains, the constructive-trust-seeking proponent's only claim is that of a general creditor. A constructive trust on unidentifiable cash proceeds is inappropriate.

53. FedEx did not obtain a judgment of constructive trust prior to the Petition Date; nor did it seek one.

54. FedEx cannot prove a constructive trust under Texas law as against the 4352 Account, the funds therein, or the Transfers and Proceeds of such funds:

(i) there was no trust or fiduciary relationship between the parties and there was no trust, custodianship, bailment, escrow, or similar relationship with respect to the 4352 Account and the funds therein;

(ii) there was no actual or constructive fraud;

(iii) there was merely a failure to pay by the Debtor and an ordinary breach of contract; and

(iv) there is no identifiable *res* because there is no product or good from the funds and transfers, only causes of action.

55. Accordingly, the Trustee hereby seeks a declaration that FedEx held no constructive trust against or to the 4352 Account, the funds therein, and the Transfers and Proceeds of such funds, as of the Petition Date under Texas law, and that the Debtor at no time held the 4352 Account or the funds therein in constructive trust for the benefit of FedEx.

## COUNT 2: DECLARATORY JUDGMENT OF NO CONSTRUCTIVE TRUST UNDER THE BANKRUPTCY CODE

56. The Trustee incorporates his allegations above.

57. An actual and present case or controversy exists between the Trustee and FedEx regarding FedEx's claim that the Debtor held funds in the 4352 Account in constructive trust for FedEx, and that FedEx has rights of constructive trust as against any such funds and the proceeds of such funds, including the Transfers and Proceeds, as evidenced by, among other things, the District Court Lawsuit and the Proof of Claim.

58. Section 101(5) of the Bankruptcy Code defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

59. Additionally, section 102(2) of the Bankruptcy Code provides that "'claim against the debtor' includes claim against property of the debtor."

60. The remedy of constructive trust under Texas law is an equitable remedy.

61. Texas law affords, as remedies for breach of fiduciary duty, breach of trust, conversion, or any similar claim asserted by FedEx, both the remedy of constructive trust and money damages; *i.e.* FedEx's remedies are not limited to constructive trust.

62. FedEx did not obtain or seek any judicial determination of constructive trust prior to the Petition Date.

63. As such, to the extent that FedEx held any claim to the remedy of constructive trust as of the Petition Date, that remedy was converted by operation of the Bankruptcy Code into a purely monetary claim.

64. Whether to declare a constructive trust is an equitable question. Here, granting FedEx a constructive trust would not be equitable because: (i) of the needs and interests of many other creditors holding tens of millions of dollars in claims, and the Bankruptcy Code's preeminent policy of the equality of creditors, which FedEx itself sought by being a petitioning creditor; (ii) FedEx's participation in the arrangement with the Debtor whereby FedEx claimed, and received resulting benefits, that it was supporting and transacting with a minority owned business, when in truth the arrangement was a sham designed to give that appearance at a price of .2% to FedEx; (iii) FedEx failed to take timely steps to protect its interests when the Debtor stopped paying it, thus allowing tens of millions of dollars to go unpaid, when it could have easily taken prompt action, before the interests of third parties attached; and (iv) FedEx's prior pleadings and statements, including referring to its relationship with the Debtor as a financing transaction and contract claim, demonstrate that its claim to constructive trust is an after-the-fact claim designed to take property from the Estate at the expense of other creditors and for its sole benefit.

65. Accordingly, the Trustee hereby seeks a declaration that FedEx holds no constructive trust against or to the 4352 Account, the funds therein, and the Transfers and Proceeds of such funds, under the Bankruptcy Code, and that the Estate does not hold the 4352 Account or the funds therein or any of the Transfers or Proceeds in constructive trust for the benefit of FedEx.

## COUNT 3: DECLARATORY JUDGMENT OF NO EXPRESS TRUST

66. The Trustee incorporates his allegations above.

67. An actual and present case or controversy exists between the Trustee and FedEx regarding FedEx's claim that the Debtor held funds in the 4352 Account in express trust for FedEx, and that FedEx has rights of express trust as against any such funds and the proceeds of such funds, including the Transfers and Proceeds, as evidencing by, among other things, the FedEx Lawsuit and the Proof of Claim.

68. An express trust under Texas law requires by express agreement of the parties, those being a trustee, and a settlor and/or a beneficiary.

69. At no time did FedEx and the Debtor enter into an agreement of trust, whether written or oral, whereby the Debtor agreed to hold any property in trust for the benefit of FedEx as a beneficiary.

70. Accordingly, the Trustee hereby seeks a declaration that the Debtor and FedEx at no time had an express trust, and that the Debtor at no time held by property or funds in express trust for the benefit of FedEx, including against or to the 4352 Account, the funds therein, and the Transfers and Proceeds of such funds.

**COUNT 4: DECLARATORY JUDGMENT OF NO THEFT OR RESULTING TRUST**

71. The Trustee incorporates his allegations above.

72. An actual and present case or controversy exists between the Trustee and FedEx regarding FedEx's claim that the Debtor held funds in the 4352 Account in resulting trust for FedEx, and that FedEx has rights of a resulting trust as against any such funds and the proceeds of such funds, including the Transfers and Proceeds, as evidencing by, among other things, the FedEx Lawsuit and the Proof of Claim.

73. As distinguished from a constructive trust, a resulting trust under Texas law arises by operation of law, when funds belonging to one are used by another to acquire property in the other's name. In such an event, the other is deemed to hold the acquired property in trust for the benefit of the one whose funds were used.

74. FedEx did not own the funds in the 4352 Account.

75. Accordingly, its property was not used to acquire anything, and it cannot claim a resulting trust as a matter of law.

76.     Likewise, the Debtor acquired nothing for itself from the funds in the 4352 Account. Rather, those funds—the Debtor's funds—were taken by insiders and others in breaches of fiduciary duty and fraudulent transfers, and what they may have acquired with those funds is held in resulting trust for the benefit of the Debtor; not FedEx.[3]

77.     Likewise, theft, conversion, and any similar cause of action requires that property belonging to one be used by another without the first's consent. Because FedEx did not own the 4352 Account or the funds therein, its property was not stolen, whether by way of conversion, theft, or other cause of action. FedEx has no claim that the Debtor, or anyone acting for or with the Debtor, including Frinzi or Goodman, stole any property of FedEx.

78.     Accordingly, the Trustee hereby seeks a declaration that FedEx did not own the 4352 Account or the funds therein, and that any transfer of those funds by the Debtor or its agents was not conversion, theft, or any similar cause of action, and that FedEx has no right to a constructive trust against the 4352 Account, the funds therein, or the Transfers and Proceeds, such that no property of the Estate, including the Transfers and Proceeds, is held in resulting trust for the benefit of FedEx.

## COUNT 5: OBJECTION TO FEDEX CLAIM

79.     The Trustee incorporates his allegations above.

80.     The Bankruptcy Code provides that a claim shall not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

81.     In the Proof of Claim, FedEx asserts "an express, equitable, constructive, resulting, or other trust." Without conceding that any such interest may be claimed by way of proof of claim,

---

[3] The Trustee is not by this Complaint seeking a resulting or other trust against anyone and makes this argument not to obtain any such relief but to demonstrate why FedEx has no claim to any such relief.

TRUSTEE'S ORIGINAL COMPLAINT—Page 17

as opposed to adversary proceeding, for the reasons asserted in the Counts above, no such interest is enforceable against the Debtor, the Estate, or property of the Estate.

82. FedEx otherwise asserts no lien or security interest, or priority of payment, in the Proof of Claim or otherwise.

83. Accordingly, the Trustee objects to the Proof of Claim to the extent it asserts anything other than a general unsecured claim, and seeks a judgment classifying the Proof of Claim solely as a general unsecured claim, without prejudice to any other and future objection to the Proof of Claim that the Trustee may assert.

### COUNT 6: DAMAGES FOR VIOLATION OF AUTOMATIC STAY

84. The Trustee incorporates his allegations above.

85. When it filed the District Court Lawsuit, FedEx knew of the existence of the automatic stay.

86. FedEx acted intentionally when it filed the District Court Lawsuit.

87. FedEx did not seek relief from the Bankruptcy Court before filing the District Court Lawsuit.

88. Cause Nos. 1, 2, 3, 4, 5, and 8 of the District Court Lawsuit constitute property of the Estate and/or actions to recover on a claim against the Debtor under 11 U.S.C. § 362(a)(1) and (3).

89. FedEx knew of the Trustee's filed lawsuits and further planned lawsuits against the Estate defendants to recover on claims that are the property of the Estate and to recover property which the Trustee has asserted is property of the Estate.

90. Accordingly, the Trustee seeks a judgment that the Trustee is entitled to actual and punitive damages under 11 U.S.C. § 362(k) for willful violation of the automatic stay in an amount to be determined at trial.

## COUNT 7: PERMANENT INJUNCTION

91. The Trustee incorporates his allegations above.

92. If FedEx did not own the 4352 Account or the funds therein, and if the Debtor did not steal those funds, and if FedEx has no constructive, express, resulting, or other trust rights with respect to the same or the Transfers and Proceeds, then its continuing assertion of the same: (i) violates the automatic stay; (ii) asserts ownership of property of the Estate; and (iii) severely and illegally hinders, limits, and frustrates the Trustee's ability to administer the Estate and its property for the benefit of all creditors.

93. Accordingly, to the extent that FedEx wishes to sue any person it wants on a claim personal to it, the Trustee seeks a permanent injunction prohibiting FedEx from: (i) asserting that the 4352 Account or the funds therein were its property; (ii) asserting that the Debtor, or Frinzi, Goodman, or anyone acting in concert with them, converted or stole said funds; (iii) asserting any *in rem* claim against any defendant or its property based on funds originating in, flowing through, or transferred from the 4352 Account; (iv) asserting any constructive, resulting, express, or other trust claim against the 4352 Account, the funds therein, and any resulting transfers therefrom; and (v) asserting any rights other than as an unsecured creditor of the Debtor and the Estate.

## VI.    PRAYER

WHEREFORE, the Trustee requests that FedEx be cited to appear and to answer this Complaint and that the Trustee have judgment against FedEx as follows:

(i) declarations that FedEx has no express, constructive, resulting, or other trust claim or interest in and to any property of the Debtor or the Estate, including the 4352 Account, any funds ever held therein, and any transfer of such funds or property acquired with such funds, including the Transfers and the Proceeds;

(ii) denying the Proof of Claim to extent it asserts anything other than a general unsecured claim;

(iii) damages for the violation of the automatic stay, in an amount to be proven at trial;

(iv) punitive damages for the violation of the automatic stay, in an amount determined by the Court to be just and proper;

(v) reasonable attorney's fees and expenses incurred herein;

(vi) prejudgment interest and postjudgment interest as allowed by law; and

(vii) such other and further relief as may be appropriate.

Respectfully submitted,

QUILLING, SELANDER, LOWNDS,
   WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

By: */s/ Michael J. Quilling*
    Michael J. Quilling
    Texas Bar No. 16432300
    Joshua L. Shepherd
    Texas Bar No. 24058104

PROPOSED SPECIAL COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE