Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
Scott D. Lawrence, Tex. Bar No. 24087896
scott.lawrence@wickphillips.com
Catherine A. Curtis, Tex. Bar No. 24095708
catherine.curtis@wickphillips.com
Mallory A. Davis, Tex. Bar No. 24133121
mallory.davis@wickphillips.com
**WICK PHILLIPS GOULD MARTIN, LLP**
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
(214) 692-6200 (office)
(214) 692-6255 (facsimile)

**ATTORNEYS FOR JAMES FRINZI**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 22-31641** |
| **GOODMAN NETWORKS, INC.** | § | |
| | § | **CHAPTER 11** |
| **DEBTOR.** | § | |

## MOTION FOR ENTRY OF STIPULATION AND AGREED ORDER
## BETWEEN THE TRUSTEE AND JAMES FRINZI FOR LIMITED RELIEF
## FROM THE AUTOMATIC STAY TO ALLOW ADVANCEMENT OF DEFENSE
## COSTS UNDER THE DEBTOR'S INSURANCE POLICIES

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, DALLAS, TEXAS 75242-1496 BEFORE CLOSE OF BUSINESS ON DECEMBER 1, 2023, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

James Frinzi ("Frinzi"), by and through his undersigned counsel, moves this Court (the "Motion"), pursuant to sections 105 and 362 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), to enter the stipulation and agreed order attached hereto as **Exhibit A** (the "Proposed Order"), lifting the automatic stay to allow the Carriers (as defined herein) to pay, reimburse, and/or advance defense costs or settlement amounts to Frinzi under all applicable directors' and officers' liability policies (the "D&O Policies" and each is a "D&O Policy"). In support of this Motion, Frinzi respectfully shows the Court as follows:

## I.
## RELIEF REQUESTED

1.        On August 17, 2023, John Debus, Joseph Hart IV, Anthony Rao, and Mark Keiffer (the "Former Officers") moved to modify the automatic stay, to the extent necessary, with respect to proceeds of the D&O Policies to allow the Carriers to pay, reimburse, and/or advance covered amounts, including any defense costs or settlement amounts, of the Former Officers ("Former Officers' Motion") [ECF No. 313]. On October 3, 2023, this Court entered a *Stipulation and Agreed Order Between the Debtor and Former Officers for Limited Relief from the Automatic Stay to Allow for Advancement of Defense Costs Under the Debtor's Insurance Policies* [ECF No. 393] concerning the Former Officers' Motion.

2.        Frinzi is similarly situated to the Former Officers concerning the relief requested in their Motion, and hereby moves the Court to grant similar relief as to Frinzi to modify the automatic stay with respect to proceeds of the D&O Policies to allow the Carriers to pay, reimburse, and/or advance covered amounts, including any defense costs or settlement amounts, of Frinzi.

3.        Frinzi and Scott M. Seidel, solely in his capacity as the chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the "Debtor") conducted armlengths negotiations to enter

into the Proposed Order, which is in substantially the same form as that entered between the Former Officers and the Trustee.

## II.
## JURISDICTION AND VENUE

4.     The United States Bankruptcy Court for the Northern District of Texas (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. Frinzi confirms his consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of an order by the Court in connection with this Motion. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicates for the relief requested herein are sections 105(a) and 362(d) of the Bankruptcy Code, Bankruptcy Rules 4001(a) and 9014, and Rule 4001-1 of the Bankruptcy Local Rules for the Northern District of Texas (the "Bankruptcy Local Rules").

## III.
## BACKGROUND

**A.     Frinzi's Prior Employment by the Goodman Companies**

6.     Beginning in or around October 20, 2021, Frinzi served as the chief executive officer ("CEO") of Goodman Networks, Inc. (the "Debtor"). Frinzi resigned as CEO of the Debtor in or around September 4, 2022.

7.     During the same period, Frinzi served as the CEO of GNET ATC, LLC ("GNET").

**B.     The Debtor's Bankruptcy Filing, the Trustee's Notice and Demand, and Subsequent Adversary Proceedings**

8.     On September 6, 2022 (the "Petition Date"), a group of petitioning creditors of the Debtor filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Case").

9.      On December 12, 2022, the Court entered the *Order for Relief in an Involuntary Case* [ECF No. 132] and thereafter appointed the Trustee.

10.     On January 7, 2023, GNET filed its schedules of assets and liabilities ("Schedules") and its Statement of Financial Affairs ("SOFA") [ECF No. 184] in which it asserts that GNET "may hold a number of claims against Debtor's previous CEO, James Frinzi (Frinzi), and companies owned by, controlled by or affiliated with Frinzi related to loans and/or transfers made by the Debtor at his direction." Previously, on December 29 and 30, 2022 Frinzi was served with three subpoenas (the "Subpoenas") compelling him to testify and produce documents related to the alleged claims held by GNET against Frinzi identified in the Schedules and SOFA.

11.     On February 1, 2023, Frinzi, by and through the undersigned counsel, notified Federal Insurance Company ("Federal") of the Schedules, the SOFA, and the Subpoenas ("First Notice of Claim") and requested that Federal afford coverage for same under a primary D&O liability policy and any applicable excess policy issued by any Federal-affiliated insurer[1] (collectively "Chubb").

12.     On or about April 27, 2023, the Trustee delivered to Frinzi, among others, a notice of claims, circumstances, and demand for monetary relief (the "Notice and Demand"), which, *inter alia*, contained a demand for "immediate payment in an amount no less than $100 million from the Directors and Officers [(as defined in the Notice and Demand), including James Frinzi,]" related to Frinzi's purported actions in contravention of their fiduciary duties, duties of care and loyalty, and contractual obligations[2] to the Debtor and its wholly-owned subsidiaries, GNET and

---

[1] This includes, but is not limited to, Westchester Fire Insurance Company ("Westchester").

[2] Frinzi explicitly denies and disclaims any liability or wrongdoing whatsoever.

Multiband Field Services, Inc. (together, the "Subsidiaries" and together with the Debtor, the "Goodman Companies").

13.    On April 28, 2023, Frinzi, by and through his undersigned counsel, notified Chubb (as defined herein), QBE Insurance Corporation, CNA Insurance Company, and Hanover Insurance Company (collectively the "Carriers") of the Notice and Demand (the "Second Notice of Claim") and requested that each Carrier afford coverage to Mr. Frinzi for the claims, circumstances and demands set forth in the Notice and Demand.

14.    On May 4, 2023, Trustee brought an adversary proceeding[3] against Frinzi, among other defendants, asserting claims for breach of fiduciary duty, unjust enrichment, and fraudulent transfers (the "First Adversary"). On May 11, 2023, Frinzi, by and through his undersigned counsel, notified the Carriers of the First Adversary (the "Third Notice of Claim") and requested that the Carriers afford coverage to Mr. Frinzi for the First Adversary.

15.    On August 5, 2023, Trustee brought another adversary proceeding[4] against Frinzi, among other defendants, asserting claims for fraudulent transfer and breach of fiduciary duty (the "Second Adversary").

16.    On August 7 and 8, 2023, Frinzi, by and through his undersigned counsel, notified the Carriers of the Second Adversary (the "Fourth Notice of Claim") and requested that the Carriers afford coverage to Mr. Frinzi for the Second Adversary.

17.    On October 27, 2023, Fedex Supply Chain Logistics & Electronics, Inc. filed a Complaint in the United States District Court for the Northern District of Texas under Case No. 23-2397 against Frinzi, among other defendants (the "Fed Ex Lawsuit"). The Fed Ex Lawsuit has

---

[3] Case No. 23-03036-mvl in this Court.

[4] Case No. 23-03072-mvl in this Court.

not yet been served on Frinzi. Upon being served, Frinzi intends to put the Carriers on notice of the Fed Ex Lawsuit and request coverage for that lawsuit.

18.     On November 7, 2023, Trustee brought a third adversary proceeding[5] against Frinzi, among others, alleging breach of fiduciary duty claims against Frinzi (the "Third Adversary"). On November 17, 2023, Frinzi, by and through his undersigned counsel, notified the Carriers of the Third Adversary (the "Fourth Notice of Claim") and requested that the Carriers afford coverage to Mr. Frinzi for the Third Adversary.

**C.     D&O Insurance Policies**

    **1.     The Debtor's Insurance Policies**

19.     At all relevant times during Frinzi's tenure with the Debtor (and its Subsidiaries), the Debtor maintained certain D&O liability insurance policies (the "D&O Insurance Policies"), including, without limitation, primary D&O policies issued by (a) Federal, Policy Numbers 8259-6686 (the "Primary ABC Policy") and 8262-4874 (the "2021-22 Policy") that provide coverage for Insured Persons (as defined therein), as well as the Debtor, subject to their terms, conditions, limitations, and exclusions, (b) Westchester, Policy Number G46647233 004, which provides Side-A only coverage for individual Insureds (as defined therein), subject to its terms, conditions, limitations, and exclusions (the "Base DIC Policy"), and (c) various other excess insurers. This Motion concerns the following D&O Policies, issued by the Carriers, as set forth below[6]:

| Coverage Description | Aggregate Limit | Insurance Company | Policy No. | Policyholder | Policy Period |
|---|---|---|---|---|---|
| Primary ABC Policy | $5,000,000.00 | Federal | 8259-6686 | Debtor | 06/30/2020-10/31/2022 |
| 2021-22 Policy | $5,000,000.00 | Federal | 8262-4874 | Debtor | 10/30/2021-10/30/2022 |

---

[5] Case No. 23-03090-mvl in this Court.

[6] Copies of the D&O Policies are not attached hereto due to their voluminous nature.

| QBE Excess Directors & Officers Liability Policy | $5,000,000.00 | QBE Insurance Corporation | 100039151 | Debtor | 06/30/2020-10/31/2022 |
|---|---|---|---|---|---|
| CNA Excess Directors & Officers Liability Policy | $5,000,000.00 | Continental Casualty Company | 652241819 | Debtor | 06/30/2020-10/31/2022 |
| Hanover Excess Directors & Officers Liability Policy | $5,000,000.00 | The Hanover Insurance Company | H300594 00 | Debtor | 06/30/2020-10/31/2022 |
| Westchester Excess Directors & Officers Liability Policy | $5,000,000.00 | Westchester | G46647233 004 | Debtor | 06/30/2020-10/31/2022 |

20.    The Primary ABC Policy and the 2021-2022 Policy are the Debtor's primary D&O Policies. The Policies, subject to their terms and conditions, provide "A/B/C" coverage to the Goodman Companies and to Frinzi, in his capacity as an "Insured Person," *e.g.*, as a Goodman director or officer for "Loss" which includes, without limitation, damages, judgments, settlement, and Defense Costs[7]. The primary D&O policies policy contain the following three insuring clauses: (1) , Insuring Clause (A) providing "Individual Non-Indemnified Liability Coverage," i.e. Side A coverage directly to Frinzi for claims made against him in his capacity as an Insured Person, to the extent his Loss is not indemnified by the Goodman Companies; (2) Insuring Clause (B) providing "Individual Indemnified Liability Coverage," i.e., Side B Indemnification coverage to the Goodman Companies for claims that the Goodman Companies pay on behalf of an Insured Person; and (3) Insuring Clause (C) providing "Entity Liability Coverage," i.e., Side C entity

---

[7] "'Defense Costs' means that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of Insured Persons) incurred in investigating, defending, opposing, or appealing any Claim and the premium for appeal, attachment, or similar bonds." See, *e.g.*, 2021-2022 Policy D&O Coverage Part at Art.IV. That policy also requires Federal to advance "Defense Costs" incurred by Frinzi on account of a "Claim" on a current basis. *Id.* at Endorsement No. 9.

coverage to the Goodman Companies for Loss on account of a Claim made against the Goodman Companies. The Base DIC Policy issued by Westchester to the Debtor provides Side A only coverage for individual Insureds, subject to its terms, conditions, limitations, and exclusions.

21.    Upon information and belief, the Excess D&O Policies also provide A/B/C coverage to the Debtor and its Insured Persons, subject to the terms and conditions of the Primary ABC Policy, and subject to certain exceptions contained therein.

22.    Accordingly, pursuant to the terms, conditions, limitations, and exclusions of the D&O Insurance Policies, the Carriers are obligated to advance and/or indemnify their policyholders for appropriate costs they incur in defending covered Claims brought against them. Frinzi submits that the Schedules and SOFA, the Subpoenas, the Notice and Demand, the three Adversaries and the Fed Ex Lawsuit fall within the scope of coverage of each of the D&O Policies. *See, e.g.*, 2021-2022 Policy, D&O Coverage Part at Art. IV ("Claim means any written demand first received by an Insured for monetary or non-monetary relief…").

23.    The D&O Policies specifically provide Side A coverage in the form of the advancement of defense costs to Frinzi for non-indemnified losses. *See id*. at Endorsement No. 9, Art. VIII (C). Under the priority of payment provision in the Primary ABC Policy, losses arising from covered claims for which payment is due are payable first to Frinzi. *See* 2021-2022 Policy D&O Coverage Part. at Art. X. ("[i]n the event that Loss arising from a Claim for which payment is concurrently due under Insuring Clause A and one or more of the other insuring clauses of this Coverage Part, the Company shall first, pay Loss for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage…"). And the 2021-2022 Policy explicitly contemplates the impact of bankruptcy or insolvency with respect to the applicability of

the policy terms, expressly stating that such events "shall not relieve the Company of its obligations

. . . under this Policy." *Id.*, General Terms and Conditions at Art. XI.

24.     To date, Frinzi has incurred Defense Costs with respect to the claims asserted

against him in the Schedules and SOFA, the Subpoenas, the Notice and Demand, and the First and

Second Adversaries. Frinzi anticipates incurring additional Defense Costs in the near future in

connection with the Fed Ex Lawsuit and the Third Adversary.

**IV.**
**RELIEF REQUESTED AND BASIS THEREOF**

**A.     The Policy Proceeds Should be Available to Frinzi**

25.     Section 541(a)(1) of the Bankruptcy Code provides that property of the estate is

comprised of "all legal or equitable interests of the debtor in property as of the commencement of

the case." 11 U.S.C. § 541(a)(1). Courts have found that while insurance policies are property of

the bankruptcy estate, the proceeds of such policies may not be. *See In re SVB Financial Group*,

650 B.R. 790, 798 (Bankr. S.D.N.Y. 2023) ("However, when an insurance policy provides

exclusive coverage to directors and officers, courts have generally held that the proceeds are not

property of the estate.").

26.     When a liability insurance policy only covers non-debtors, including directors and

officers (Side A coverage), the proceeds are not property of the estate, but where the liability policy

provides coverage to both the debtor and non-debtors (policies that include Side B or Side C

coverage), some or all of the proceeds of the policy may be property of the estate. *See Homsy v.*

*Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 534–35 (5th Cir. 1995).

27.     In the D&O Policies' priority of payment provisions, the Debtor's right to policy

proceeds, including with respect to the Schedules and SOFA, the Subpoenas, Notice and Demand,

the three Adversaries and the Fed Ex Lawsuit, are subordinated pending payment of Frinzi's

Losses. *See* Primary ABC Policy, issued by Federal (Policy No. 8259-6686), Art. X. In such circumstances, policy proceeds should not be considered property of the estate. *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2013) (finding that "[t]he directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds that are first in line," and therefore, proceeds of the policy were not property of the estate).

28.     Due to the priority of payment provisions in the D&O Policies, the estate only has a contingent, residual interests in the proceeds of the D&O Policies. *See e.g.*, *In re Laminate Kingdom LLC*, 2008 WL 1766637 at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (stating that because of a priority of payment provision in the policy, the trustee of the estate only has a contingent, residual interest in the policy proceeds).

29.     Therefore, Frinzi's access to the D&O Policies does not diminish the protection afforded to the Debtor, because coverage is only available to the Debtor after Frinzi's Losses (including Defense Costs) have been paid.

30.     Prohibiting Frinzi from accessing the D&O Policies would effectively subordinate Frinzi's right to payment within the Debtor's estate, although payment of the proceeds cannot inure to the benefit of the Debtor until *after* Frinzi has been reimbursed. *See In re Edgeworth*, 993 F.2d 51,55-56, (5th Cir. 1993). Any right the Debtor has to the proceeds of the D&O Policies is, therefore, preserved even if Frinzi has access to the D&O Policies.

31.     For these reasons, and those articulated in the Former Officers' Motion and the stipulation entered concerning same, the Carriers should be authorized to distribute proceeds with respect to Frinzi's covered Losses, including incurred or advanced Defense Costs.

**B.**    **Cause Exists to Modify the Automatic Stay with Respect to the Proceeds of the D&O Policies**

32.    Section 362(a)(3) of the Bankruptcy Code provides for the imposition of a stay with respect to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). Section 362(d), however, provides that the stay may be lifted for "cause," upon request of a party in interest, and after notice and a hearing. 11 U.S.C. § 362(d). The term "cause" is not defined in Section 362(d)(1). Rather, courts determine whether causes exist on a case-by-case basis. *See In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) ("The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case.").

33.    Although coverage largely extends to both the Debtor and to Frinzi, relief from the stay is nevertheless appropriate because the priority of payment provisions mandate that the Debtor's interest in any policy proceeds is subordinate to Frinzi's interest. As a result, permitting the Carriers to pay, reimburse, and/or advance Frinzi's covered defense costs in accordance with these D&O Policies will not harm the estate or other parties in interest.

34.    Second, the D&O Policies should, at minimum, operate within bankruptcy just as they would outside the bankruptcy context to allow Frinzi access to the policy proceeds to which he is entitled. *See Butner v. United States*, 440 U.S. 48, 55 (1977) ("Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

35.    Failure to modify the automatic stay would cause significant harm to Frinzi, who has incurred and will continue to incur substantial Defense Costs in connection with the Schedules and SOFA, the Subpoenas, Notice and Demand, the three Adversaries and the Fed Ex Lawsuit.

---

Without the reimbursement and/or advancement of Defense Costs, Frinzi will be unable to conduct a meaningful defense and will suffer substantial and irreparable harm.

36.     The Relief Frinzi seeks in this Motion has already been awarded in similar form to the Former Officers, under the October 3, 2023 *Stipulation and Agreed Order Between the Debtor and Former Officers for Limited Relief from the Automatic Stay to Allow for Advancement of Defense Costs Under the Debtor's Insurance Policies* [ECF No. 393] entered by the Court. Frinzi and the Trustee entered into armlengths negotiations to agree upon the Proposed Order.

37.     Accordingly, cause exists to modify the automatic stay, to the extent applicable, to allow the Carriers to make any required payments, including advances for future defense costs and reimbursement of already incurred defense costs, with respect to Frinzi's covered losses pursuant to the D&O Policies.

**V.**
**NOTICE**

38.     Frinzi will serve this Motion on: (a) the Carriers; (b) the Debtor; (c) the Trustee; (d) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules. Frinzi submits that such service will constitute good and sufficient notice of this Motion.

WHEREFORE, Frinzi respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: November 17, 2023

Respectfully submitted,

*/s/ Catherine A. Curtis*
Jason M. Rudd, Tex. Bar No. 24028786
jason.rudd@wickphillips.com
Scott D. Lawrence, Tex. Bar No. 24087896
scott.lawrence@wickphillips.com
Catherine A. Curtis, Tex. Bar No. 24095708
catherine.curtis@wickphillips.com
Mallory A. Davis, Tex. Bar No. 24133121
mallory.davis@wickphillips.com
WICK PHILLIPS GOULD MARTIN, LLP
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
(214) 692-6200 (office)
(214) 692-6255 (facsimile)

ATTORNEYS FOR JAMES FRINZI

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Frinzi conferred with counsel for the Trustee on November 16, 2023 regarding this Motion. Trustee is agreed to the relief requested.

*/s/ Catherine A. Curtis*
Catherine A. Curtis

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing. Further, the following insurance companies were served via first class mail:

Westchester Fire Insurance Company
c/o CT Corporation System
289 Culver Street
Lawrenceville, GA 30046

Federal Insurance Company
c/o CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

QBE Insurance Corporation
c/o CT Corporation System
600 North Second Street, Suite 401
Harrisburg, PA 17101

Chubb, Financial Lines
Attn: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York, NY 10036

Chubb
P.O. Box 5105
Scranton, PA 18505-0518

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA 01615

Open Brokerage Global Specialty Lines
CNA Insurance Company
125 Broad Street – 8th Floor
New York, NY 10004

CNA – Claims Reporting
P.O. Box 8317
Chicago, IL 60680-8317

QBE Insurance Corporation
Attn: Underwriting
55 Water Street
New York, NY 10041

QBE Insurance Corporation
Attn: The Claims Manager
55 Water Street
New York, NY 10041

Chubb Group of Insurance Companies
Attn: Chubb Underwriting Department
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Chubb Group of Insurance Companies
Attn: Claims Department
82 Hopmeadow St.
Simsbury, CT 06070-7683

*/s/ Catherine A. Curtis*
Catherine A. Curtis

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 22-31641** |
| **GOODMAN NETWORKS, INC.** | § | |
| | § | **CHAPTER 7** |
| **DEBTOR.** | § | |

**STIPULATION AND AGREED ORDER
BETWEEN THE TRUSTEE AND JAMES FRINZI FOR LIMITED
RELIEF FROM THE AUTOMATIC STAY TO ALLOW FOR ADVANCEMENT
OF DEFENSE COSTS UNDER THE DEBTOR'S INSURANCE POLICIES**

Scott M. Seidel, solely in his capacity as the chapter 7 trustee (the "Trustee") for Goodman Networks, Inc. (the "Debtor") and James Frinzi ("Frinzi," together with the Debtor and the Trustee, the "Parties" and each a "Party"), by and through their respective undersigned counsel, hereby enter into this stipulation for an agreed order (the "Stipulation and Order") regarding the advancement of defense costs to Frinzi under the Debtor's insurance policies.

## RECITALS

**WHEREAS**, Frinzi alleges that Frinzi served as the chief executive officer ("CEO") of the Debtor from on or around October 20, 2021, through September 4, 2022. During the same period, Frinzi alleges that Frinzi served as the CEO of GNET ATC, LLC;

**WHEREAS**, on September 6, 2022 (the "Petition Date"), a group of petitioning creditors of the Debtor filed an involuntary petition for relief under chapter 7, Title 11, of the United States Code, thereby commencing the above-captioned bankruptcy case;

**WHEREAS**, on December 12, 2022, the Court entered the *Order for Relief in an Involuntary Case* [ECF No. 132] and thereafter Scott M. Seidel was appointed as chapter 7 trustee;

**WHEREAS**, on or about April 27, 2023, the Trustee delivered to Frinzi, among others, a notice of claims, circumstances, and demand for monetary relief (the "Notice and Demand"), which, *inter alia*, contained a demand for "immediate payment in an amount no less than $100 million from [Frinzi] in full satisfaction of the Claims [(as defined in the Notice and Demand)]" related to Frinzi's purported actions in contravention of his fiduciary duties, duties of care and loyalty, and contractual obligations of the Debtor's wholly-owned subsidiaries, GNET ATC, LLC and Multiband Field Services, Inc. (together, the "Subsidiaries," and together with the Debtor, the "Goodman Companies");

**WHEREAS**, the following adversary proceedings have been filed against Frinzi in the Chapter 7 proceedings styled and numbered as *In re Goodman Networks, Inc.*, Case No. 22-31641-mvl-7 (Bankr. N.D. Tex. 2022): (1) *Scott M. Seidel, Trustee, GNET ATC, LLC, Multiband Field Services, Inc. (Plaintiffs) v. James Frinzi, Frinzi Family Trust, Multiband Global Resources, LLC (Defendants)*; Adv. No. 23-03036-mvl (Bankr. N.D. Tex. 2023); and (2) *Scott M. Seidel, Trustee, GNET ATC, LLC (Plaintiffs) v. 18920 NW 11th, LLC, James Goodman, James Frinzi, Steven*

*Zakharyayev, Evelina Pinkhasova, People Nq Inc., JJC & People LLC; GDMN Family Investments 2, LLC*, Adv. No. 23-03071-mvl (Bankr. N.D. Tex. 2023) (the "Adversary Proceedings");

**WHEREAS**, at all relevant times during Frinzi's alleged tenure with the Debtor, the Debtor maintained certain liability insurance policies (the "Insurance Policies"), including but not limited to, policies issued by (i) Federal Insurance Company ("Federal"), Policy Numbers 8259-6686 (the "Primary ABC Policy") and 8262-4874 (the "2021-22 Policy") and (ii) Westchester Fire Insurance Company ("Westchester," together with Federal, "Chubb"),[1] Policy Number G46647233 004 (the "Base DIC Policy");

**WHEREAS**, Frinzi made a formal demand upon the Insurance Companies for coverage under the Insurance Policies and has asserted, and continues to assert, that the Insurance Policies provide coverage for, *inter alia*, Frinzi's defense costs (the "Defense Costs") associated with the Claims asserted against him in (a) the Notice and Demand, (b) the Adversary Proceedings, (c) the claims and allegations identified in the schedules of assets and liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") Goodman Networks, Inc. filed with the Bankruptcy Court on January 7, 2023, and (d) connection with Frinzi's s compliance with three subpoenas compelling him to testify and produce documents, which subpoenas were served on December 29, 2022 and December 30, 2022 (the "Subpoenas") ;

**WHEREAS**, pursuant to the terms, conditions, limitations, and exclusions of the Insurance Policies, Chubb is obligated to indemnify and/or defend its Chubb policyholders for appropriate

---

[1] Chubb, and together with such other insurance companies that may cover Defense Costs, the "Insurance Companies" and each, an "Insurance Company."

costs they incur in defending Claims brought against them, and failure to comply with Chubb's

litigation billing guidelines, may result in, *inter alia*, partial or full non-payment of legal invoices;

**WHEREAS**, on or about June 16, 2023, Chubb sent a letter to the Debtor (the "<u>Coverage</u>

<u>Position Letter</u>") with respect to insurance coverage under the Primary ABC Policy, 2021-22

Policy, and Base DIC Policy, which set forth Chubb's current analysis of coverage regarding the

Claims contained in the Notice and Demand and reserved all rights under the Insurance Policies;

**WHEREAS**, as of September 30, 2023, Frinzi has incurred Defense Costs in the

approximate amount of $247,795.21 (the "<u>Pre-Stipulation Costs</u>") for which he seeks

reimbursement;

**WHEREAS**, the Trustee has determined that it is in the best interest of the Debtor's estate

and creditors to stipulate as set forth below.

**NOW THEREFORE**, the Parties hereby stipulate and agree as follows:

1. Solely to the extent provided herein, limited relief from the automatic stay, as

imposed under 11 U.S.C. § 362(a) is ordered to allow for the advancement of Defense Costs in

accordance with the Insurance Policies and the applicable Defense Counsel Legal Services

Agreement (the "<u>LSA</u>").

2. The Insurance Companies are hereby authorized to advance Defense Costs to Frinzi

in accordance with the terms and conditions set forth in the Insurance Policies, LSA, and this

Stipulation and Order.

3. Following the entry of this Stipulation and Order by the Court, the Parties shall

abide by the following procedures with respect to Frinzi's request for advancement of Defense

Costs under the Insurance Policies and the LSA:

    a. As soon as reasonably practicable after the conclusion of each calendar month after
the entry of this Stipulation and Order, counsel for Frinzi shall submit to counsel

for the Trustee their written request  for the advancement of Defense Costs for the prior calendar month, which request shall include copies of redacted bills for review, reflecting only fees and costs incurred in connection with the Claims set forth in the Notice and Demand, the Adversary Proceedings, any future adversary proceedings or other claims or causes of action brought against Frinzi, the Schedules, the SOFA, and the Subpoenas.(the "Defense Costs Request")[2].  Written requests for advancement of Defense Costs must comply with the billing requirements set forth in the LSA;

b.  The Trustee shall raise objections, if any, regarding the Defense Costs Request within twenty-one (21) days of receipt of same (the "Objection Period");

c.  If no objections are raised by the Trustee following the expiration of the Objection Period, Frinzi may submit the Defense Costs included in the Defense Costs Request to the Insurance Companies for payment;

d.  If objections are raised by the Trustee within the Objection Period, the Parties will attempt to reach a consensual resolution during the following ten (10) days (the "Discussion Period"); and

e.  If a consensual resolution of the Trustee's objection(s) cannot be reached within the Discussion Period, the Parties agree to request an expedited hearing, subject to the Court's calendar, to resolve the pending dispute.

4.    The procedures set forth in paragraph 3 shall also apply to the Pre-Stipulation Defense Costs incurred by Frinzi in connection with the Notice and Demand, the Adversary Proceedings, any additional Adversary Proceedings or other claims or causes of action brought against Frinzi, the Schedules, the SOFA and the Subpoenas, which Defense Costs must be the subject of a Defense Costs Request submitted no later than fourteen (14) days from the entry of this Stipulation and Order.

5.    Nothing contained in this Stipulation and Order is intended to modify or change any of the terms or conditions of the Insurance Policies or the LSA, nor shall this Stipulation and

---

[2] Nothing provided herein shall amend, modify, or change Frinzi's obligation to comply with his obligations governing the submission and approval of the Defense Costs to the Insurance Companies as required by the terms of LSA, as applicable. For the avoidance of doubt, the limitations and requirements provided herein are in addition to the terms of the LSA.

Order be offered or used by any Party in support of a claim for coverage under the Insurance Policies.

6.      Except as provided for in the Insurance Policies, the LSA, or this Stipulation and Order, the Parties reserve all their respective rights and claims with respect to, among other things, the Notice of Demand, the Adversary Proceedings, any future adversary proceedings or other claims or causes of action brought against Frinzi, the Schedules, the SOFA, the Subpoenas, and the Insurance Policies.

7.      Nothing herein shall prejudice Frinzi's right to seek additional relief from the Court, including but not limited to, further relief from the automatic stay.

8.      The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation and Order.

9.      The Parties (and/or the undersigned representatives acting on behalf of the Parties) represent and warrant that they are duly authorized to execute and enter into this Stipulation and Order. Each Party represents and warrants to the other Party that it: (a) entered into this Stipulation and Order freely, voluntarily, and with full knowledge of its significance; and (b) has been represented by counsel of its own choice in the negotiations preceding the execution and in connection with the preparation of this Stipulation and Order.

10.     This Stipulation and Order may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.     This Stipulation and Order constitutes the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without

the prior written consent of all Parties hereto. No statements made nor actions taken in the negotiation of this Stipulation and Order may be used by any party for any purpose whatsoever.

12.    This Stipulation and Order shall not in any way be construed as or deemed to be evidence of any admission or concession of Frinzi to any liability or wrongdoing whatsoever, which liability and wrongdoing are hereby expressly denied and disclaimed by Frinzi. Frinzi expressly reserves, without limitation, all of his rights, claims, and defenses with respect to the subject matter set forth herein, including such rights, claims, and defenses as they relate to the Notice and Demand.

13.    The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation and Order. Any request for relief brought before the Court to resolve a dispute arising from or relating to this Stipulation and Order, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Northern District of Texas (the "Local Rules").

14.    This Stipulation and Order is immediately valid and fully effected upon its entry and the fourteen (14) day stay imposed pursuant to Rule 4001(a) of the Bankruptcy Rules, or otherwise, is hereby waived.

### END OF ORDER ###

Agreed as to form and substance:

 /s/ Jason M. Rudd
Jason M. Rudd
Tex. State Bar No. 24028786
jason.rudd@wickphillips.com
Scott D. Lawrence
Tex. State Bar No. 24087896
scott.lawrence@wickphillips.com
Catherine A. Curtis
Tex. State Bar No. 24095708
catherine.curtis@wickphillips.com
Mallory A. Davis
Tex. State Bar No. 24133121
mallory.davis@wickphillips.com
**WICK PHILLIPS GOULD MARTIN, LLP**
3131 McKinney Ave., Suite 500
Dallas, Texas 75204
(214) 692-6200 (office)
(214) 692-6255 (facsimile)

**ATTORNEYS FOR JAMES FRINZI**

/s/ Thomas D. Berghman
Davor Rukavina
Tex. State Bar No. 24030781
drukavina@munsch.com
Thomas D. Berghman
Tex. State Bar No. 24082683
tberghman@munsch.com
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-665
(214) 855-7500 (office)
(214) 855-7584 (facsimile)

**ATTORNEYS FOR THE TRUSTEE,
SCOTT M. SEIDEL**