# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
**(for policies with no terrorism exclusion or sublimit)**
**Insuring Company: Federal Insurance Company**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 03/2015)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com  and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

## Directors and Officers (D&O) Liability Loss Prevention Services

- **Directors and Officers Liability Loss Prevention Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

## Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- **Employment Practices Loss Prevention Guidelines Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

## Crime Loss Prevention Services

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

## Cyber Security Loss Prevention Services

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

## Health Care Directors and Officers (D&O) Liability Loss Prevention Services

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------

The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

### *Policyholder Information Notice*

| | |
|---|---|
| ***IMPORTANT NOTICE*** | ***AVISO IMPORTANTE*** |

To obtain information or make a complaint:

Para obtener información o para someter una queja:

You may call Chubb's toll-free telephone number for information or to make a complaint at

Usted puede llamar al número de teléfono gratis de Chubb's para información o para someter una queja al

### *1-800-36-CHUBB*

### *1-800-36-CHUBB*

You may contact the Texas Department of Insurance to obtain the information on companies, coverages, rights or complaints at

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañias coberturas, derechos o quejas al

### *(512) 676-6000 or (800) 578-4677*

### *(512) 676-6000 or (800) 578-4677*

You may write the Texas Department of Insurance

Puede escribir al Departamento de Seguros de Texas

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 490-1007

P.O. Box 149104
Austin TX 78714-9104
FAX # (512) 490-1007

You may email the Texas Department of Insurance at:

Puede correo electrónico Departamento de Seguros de Texas al:

consumerprotection@tdi.texas.gov

consumerprotection@tdi.texas.gov

You may visit the Texas Department of Insurance's website at:

Puede visitar el Departamento de Seguros de Texas en el sitio web de:

www.tdi.texas.gov

www.tdi.texas.gov

### *PREMIUM OR CLAIM DISPUTES*

### *DISPUTAS SOBRE PRIMAS O RECLAMOS:*

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resueve la disputa, puede entonces comunicarse con el departamento (TDI).

### *ATTACH THIS NOTICE TO YOUR POLICY:*

### *UNA ESTE AVISO A SU POLIZA:*

This notice is for information only and does not become a part or condition of the attached document.

Este aviso es solo para proposito de información y no se convierte en parte o condicion del documento adjunto.

99-10-0299   (09/2016)

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**$^{SM}$
**General Terms and Conditions**

**GTC DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Policy Number:** 8259-6686

**NOTICE: THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**  **Parent Organization:**  GOODMAN NETWORKS, INC. & Subsidiaries

Principal Address:  2801 NETWORKS BLVD SUITE 300

FRISCO, TX 75034

**Item 2.**  **Policy Period:**

(A)  From:  June 30, 2020

(B)  To:  June 30, 2021

At 12:01 AM local time at the address shown in Item 1.

**Item 3.**  **A Combined Maximum Aggregate Limit of Liability applies:**

[ ] Yes   [X] No

The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Liability Coverage Parts** shall be:

Not Applicable

**Item 4.**  **Coverage applicable to this Policy:**

[X]  Directors & Officers and Entity Liability Coverage Part

[ ]  Employment Practices Liability Coverage Part

[X]  Fiduciary Liability Coverage Part

[ ]  Miscellaneous Professional Liability Coverage Part

[ ]  Employed Lawyers Liability Coverage Part

⊏⊢⊔⊑⊑®    **Chubb Group of Insurance Companies**    ***ForeFront Portfolio 3.0***<sup>SM</sup>
202B Hall's Mill Road
Whitehouse Station, NJ 08889    ***General Terms and Conditions***

☐  CyberSecurity Coverage Part

☒  Crime Coverage Part

☐  Kidnap Ransom and Extortion Coverage Part

☐  Workplace Violence Expense Coverage Part

**Item 5.**    **Extended Reporting Period:**

  (A)  Additional Period:    Not Applicable

  (B)  Additional Premium:    Not Applicable % of Annual Premium


In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____    _____
Secretary    President

_____    _____
07/16/2020

_____    _____
Date    Authorized Representative

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
*General Terms and Conditions*

---

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

---

**I.    TERMS AND CONDITIONS**

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part apply only to that Coverage Part.  If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.  All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in these General Terms and Conditions shall apply only to these General Terms and Conditions, unless otherwise stated.  All references to "Section", "Subsection", "Paragraph" or "Subparagraph" in a Coverage Part, shall apply only to such Coverage Part, unless otherwise stated.

---

**II.    DEFINITIONS**

**Anniversary Date** means the date and time exactly one (1) year after the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

**Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Coverage Event** means the event or loss which must occur or be sustained or discovered, in order to invoke coverage under each **Non-Liability Coverage Part**.

**Defense Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Expense** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Insured Person** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Liability Coverage Part** means:

(A)    the Directors & Officers and Entity Liability, Employment Practices Liability, Fiduciary Liability, Employed Lawyers Liability and Miscellaneous Professional Liability Coverage Parts; and

(B)    Insuring Clause (A), Cyber Liability Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Non-Liability Coverage Part** means:

(A)    the Crime, Kidnap Ransom and Extortion and Workplace Violence Expense Coverage Parts; and

(B)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part,

if purchased as set forth in Item 4, Coverage applicable to this Policy, of the GTC Declarations.

**Organization** means the **Parent Organization** and any **Subsidiary**.  **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country.

**Parent Organization** means the entity named in Item 1 of the GTC Declarations.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*General Terms and Conditions*

**Policy Period** means the period of time set forth in Item 2 of the GTC Declarations, subject to any prior termination in accordance with Section X, Termination of Policy.

**Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A), Policy Period, of the GTC Declarations to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination in accordance with Section X, Termination of Policy.

**Potential Claim** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

**Securityholder Derivative Demand Evaluation Costs** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Subsidiary** means:

(A)     any entity while more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**;

(B)     any entity while:

(1)     exactly fifty percent (50%) of the voting rights representing the present right to vote for election of or to appoint directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity are owned, or controlled, by the **Parent Organization**, directly or through one or more **Subsidiaries**; and

(2)     the **Parent Organization**, pursuant to a written contract with the owners of the remaining and outstanding voting stock of such entity, solely controls the management and operation of such entity; or

(C)     any foundation, charitable trust or political action committee while such entity is controlled by the **Parent Organization**.

**Voluntary Program Loss** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Voluntary Program Notice** shall have the meaning ascribed to that term in each applicable Coverage Part.

**Wrongful Act** shall have the meaning ascribed to that term in each applicable Coverage Part.

---

III.     **LIMIT OF LIABILITY**

(A)     With respect to the **Liability Coverage Parts**:

(1)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is elected, the amount stated in such Item 3 shall be the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss** and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under all **Liability Coverage Parts** combined. However, any **Loss**, **Voluntary Program Loss** or **Securityholder Derivative Demand Evaluation Costs** paid under any **Liability Coverage Part** shall not exceed the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of such Coverage Part.

(2)     If the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations is not elected, the maximum aggregate limit of liability of the Company for all **Loss**, **Voluntary Program Loss**, and **Securityholder Derivative Demand Evaluation Costs** during each **Policy Year** under each **Liability Coverage Part** shall be the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations for each **Liability Coverage Part**.

CHUBB  Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*General Terms and Conditions*

---

(3) **Defense Costs** are part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of each **Liability Coverage Part** and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.

(B) With respect to the **Non-Liability Coverage Parts**, the Company's maximum liability shall be the Limits of Liability set forth in the Declarations of each **Non-Liability Coverage Part**.

---

## IV.   RELATED CLAIMS

With respect to the **Liability Coverage Parts**:

(A) All **Related Claims** shall be deemed a single **Claim** made in the **Policy Year** in which the earliest of such **Related Claims** was first made or first deemed to have been made in accordance with the Reporting section of the applicable **Liability Coverage Part** (the "Earliest Related Claim").

(B) All **Related Claims** shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

---

## V.   EXTENDED REPORTING PERIOD

With respect to the **Liability Coverage Parts**:

(A) If this Policy does not renew or otherwise terminates for a reason other than for failure to pay premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase an Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the GTC Declarations.

(B) In the event of a Termination of Coverage and upon request from an **Insured**, the Company shall, in its sole discretion, provide a quote for Additional Periods other than as set forth in Item 5, Extended Reporting Period, of the GTC Declarations.  Any such additional quote offered shall be subject to such Additional Premium as the Company may require.

(C) The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

(D) This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the applicable Additional Premium, is received by the Company within sixty (60) days after the effective date of the Termination of Coverage.

(E) If an Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims**: (1) first made during such Extended Reporting Period; and (2) reported to the Company pursuant to the Reporting section of the applicable Coverage Part, but only to the extent such **Claims** are for **Wrongful Acts** before the effective date of such Termination of Coverage or the date of any conversion of coverage described in Section VI, Changes in Exposure, whichever is earlier.  Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the **Policy Year** immediately preceding the Extended Reporting Period.

(F) The entire premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period.

(G) The limit of liability for the Extended Reporting Period is part of and not in addition to any maximum aggregate limit of liability for the **Policy Year** immediately preceding the Extended Reporting Period.

---

CHUBB    Chubb Group of Insurance Companies    **ForeFront Portfolio 3.0**<sup>SM</sup>
202B Hall's Mill Road    *General Terms and Conditions*
Whitehouse Station, NJ 08889

---

## VI.    CHANGES IN EXPOSURE

(A)    **Acquisition of Another Organization**

    (1)    If before or during the **Policy Period** an **Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**,

    (2)    then coverage shall be provided for such **Subsidiary** and its **Insureds** with respect to any:

        (a)    **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** after such acquisition; or

        (b)    **Non-Liability Coverage Part**, solely after the effective date of such acquisition subject to the Liability for Prior Losses section of such **Non-Liability Coverage Part**.

(B)    **Cessation of Subsidiaries**

    (1)    If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**,

    (2)    then with respect to any:

        (a)    **Liability Coverage Part**, coverage for such **Subsidiary** and its **Insureds** shall continue until termination of this Policy in accordance with Section VI(C), Conversion of Coverage Under Certain Circumstances, or Section X, Termination of Policy, whichever occurs first, but only for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary**; or

        (b)    **Non-Liability Coverage Part**, such **Subsidiary** and its **Insureds** shall cease to be **Insureds** as of the effective date of such cessation and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Part**.

(C)    **Conversion of Coverage Under Certain Circumstances**

    (1)    If during the **Policy Period** any of the following events occur:

        (a)    another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**;

        (b)    the acquisition of all or substantially all of the **Parent Organization's** assets, by another entity, person or group of entities or persons acting in concert, or the merger of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

        (c)    the **Parent Organization** emerges from bankruptcy as of the effective date stated in the plan of reorganization,

    (2)    then:

        (a)    any applicable coverage under this Policy with respect to:

            (i)    any **Liability Coverage Part**, shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such event;

            (ii)    the Crime Coverage Part, shall terminate subject to Exclusions III(C), Loss Sustained Option, or III(D), Loss Discovered Option, of such Coverage Part;

            (iii)    the Kidnap Ransom and Extortion Coverage Part, shall terminate subject to Exclusion III(A)(9), Notice, of such Coverage Part;

            (iv)    the Workplace Violence Coverage Part, shall terminate subject to Exclusion III(E) Notice, of such Coverage Part; or

            (v)    Insuring Clauses (B), Privacy Notification and Crisis Management Expenses Coverage; (C), Reward Expenses Coverage; (D), E-Business Interruption and

Extra Expenses Coverage; (E), E-Threat Expenses Coverage and (F), E-Vandalism Expenses Coverage, of the CyberSecurity Coverage Part, shall continue until the expiration of the current **Policy Period** solely for **Expense** first incurred prior to such event;

(b)     the **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such information as the Company may require; and

(c)     the entire premium for this Policy shall be deemed fully earned as of the effective date of such event.

## VII.     SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

With respect to the **Liability Coverage Parts**, coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A)     the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse or domestic partner's status as a spouse or domestic partner, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**; or

(B)     the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased, or the legal representatives or assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt,

provided that no coverage afforded by this Section VII shall apply with respect to any loss arising from an act, error or omission by an **Insured Person's** spouse, domestic partner, estate, heirs, legal representatives or assigns.

## VIII.     SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery. As a condition precedent to the Company's payment under this Policy, the **Insureds** agree to execute all papers required and shall take all reasonable actions to secure and preserve such rights, including the execution of all documents necessary to enable the Company to effectively bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

## IX.     NOTICE

(A)     Notice to the Company of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be deemed notice under the Policy in its entirety.

(B)     All notices to the Company under this Policy of any **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances under any **Liability Coverage Part**, or any **Coverage Event** under any **Non-Liability Coverage Part**, shall be given in writing to one of the following addresses:

(1)     specialtyclaims@chubb.com; or

(2)     Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06070-7683

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*General Terms and Conditions*

(C)  All other notices to the Company under this Policy shall be given in writing addressed to:

Attn: Chubb Underwriting Department

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

(D)  Any notice described above shall be effective on the date of receipt by the Company.

## X.  TERMINATION OF POLICY

(A)  This Policy shall terminate at the earliest of the following times:

(1)  upon receipt by the Company of written notice of termination from the **Parent Organization**, provided that this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section VI(C), Conversion of Coverage Under Certain Circumstances;

(2)  upon expiration of the **Policy Period** set forth in Item 2 of the GTC Declarations;

(3)  twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon nonpayment of premium, unless the premium is paid within such twenty (20) day period; or

(4)  at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)  The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**.  Under any other circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XI.  BANKRUPTCY

Bankruptcy or insolvency of an **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

## XII.  COORDINATION OF COVERAGE

Any **Loss** covered under more than one **Liability Coverage Part** shall be first covered under the CyberSecurity Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the CyberSecurity Coverage Part shall then be covered under the Employment Practices Coverage Part, if applicable, subject to its terms, conditions and limitations.  Any remaining portion of such **Loss** otherwise covered under any other applicable **Liability Coverage Part** which is not paid under the CyberSecurity or Employment Practices Liability Coverage Parts shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

Any loss covered under the CyberSecurity Coverage Part and the Kidnap Ransom and Extortion Coverage Part shall be first covered under the Kidnap Ransom and Extortion Coverage Part, subject to its terms, conditions and limitations.  Any remaining portion of such loss otherwise covered under the CyberSecurity Coverage Part which is not paid under the Kidnap Ransom and Extortion Coverage Part shall be covered under the CyberSecurity Coverage Part, subject to its terms, conditions and limitations.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*General Terms and Conditions*

---

**XIII.   VALUATION AND FOREIGN CURRENCY**

All premiums, limits, retentions, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America.  Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

**XIV.   ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

---

**XV.   ROLE OF PARENT ORGANIZATION**

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of any return premiums that may become due under this policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice to apply for an Extended Reporting Period as provided in Section V, Extended Reporting Period, the giving of notice as provided in Section VIII, Proof of Loss and Legal Proceedings, of the CyberSecurity Coverage Part and the giving of notice of **Claim**, **Potential Claim**, **Voluntary Program Notice** or circumstances as provided in the Reporting section of the applicable **Liability Coverage Part**).  Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

---

**XVI.   ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of Chubb, a division of Federal Insurance Company.

---

**XVII.   TERRITORY**

This Policy shall apply anywhere in the world.

---

**XVIII.   HEADINGS**

The descriptions in the headings and subheadings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

---

**XIX.   COMPLIANCE WITH TRADE SANCTIONS**

This insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the Company from providing insurance.

---

# Schedule of Forms

To be attached to and form part of      Company: Federal Insurance Company
Policy No. 8259-6686

Issued to: GOODMAN NETWORKS, INC. & Subsidiaries


ForeFront Portfolio 3 0 General Terms and Conditions Policy

14-02-17865 (1/11 ed.)

14-02-22096 (6/16 ed.)

14-02-22785 (6/17 ed.)

14-02-22814 (12/17 ed.)

ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

14-02-17866 (1/11 ed.)

14-02-18055 (11/11 ed.)

14-02-18074 (5/11 ed.)

14-02-18527 (11/11 ed.)

14-02-19167 (2/12 ed.)

14-02-19646 (2/13 ed.)

14-02-21084 (3/14 ed.)

14-02-21391 (4/18 ed.)

14-02-21994 (9/16 ed.)

14-02-22019 (4/16 ed.)

14-02-22215 (1/17 ed.)

14-02-22845 (9/17 ed.)

ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

14-02-17300 (12/10 ed.)

14-02-17301 (1/11 ed.)

14-02-17868 (1/11 ed.)

14-02-18106 (6/11 ed.)

ForeFront Portfolio 3.0 Crime Coverage Part Federal

14-02-17872 (1/11 ed.)

14-02-18107 (5/11 ed.)

# Schedule of Forms

To be attached to and form part of      Company:   Federal Insurance Company
Policy No.  8259-6686

Issued to:   GOODMAN NETWORKS, INC. & Subsidiaries

14-02-19628 (8/14 ed.)

FL-261169 (7/18 ed.)

PF-271128 (1/19 ed.)

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: June 30, 2020          Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

TEXAS AMENDATORY ENDORSEMENT
TO THE GENERAL TERMS AND CONDITIONS

In consideration of the premium charged, it is agreed that:

(1)     Section V, Extended Reporting Period, is amended by adding the following parenthetical immediately after the term "Additional Period":

"(which period shall be one (1) year or such other period as the **Parent Organization** and the Company agree upon)"

(2)     In addition to the extension of coverage offered in Section V, Extended Reporting Period, the **Parent Organization** shall have the right to an automatic extended reporting period of thirty (30) days in which to report **Claims** for **Wrongful Acts** committed, attempted or allegedly committed or attempted before the earlier of the effective date of termination or nonrenewal, or with respect to an Extended Reporting Period purchased after an event described in Subsection (C) of Section VI, Conversion of Coverage Under Certain Circumstances, the effective date of such merger, consolidation, acquisition, or emergence from bankruptcy.  The extension of coverage described in Section V, Extended Reporting Period, if purchased, shall begin after the expiration of the automatic extended reporting period described above and Section V shall be deemed amended to the extent necessary to comply with this paragraph.

(3)     This policy shall not be non-renewed based solely on the fact that the policyholder is an elected official.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Texas.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8259-6686

Issued to: GOODMAN NETWORKS, INC. & Subsidiaries

STATE AMENDATORY INCONSISTENCY ENDORSEMENT

In consideration of the premium charged, it is agreed that the following Section is added as follows:

**STATE AMENDATORY INCONSISTENCY**

In the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any other term and condition of this Policy, the Company shall apply where permitted by law, those terms and conditions of either the amendatory endorsement or the Policy which are more favorable to the **Insured**.

The title and any headings and subheadings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

ADDITIONAL SUBSIDIARY – COMMON OWNERSHIP ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to this Coverage Part, the definition of **Subsidiary** in Section II, Definitions, of the General Terms and Conditions is amended to include Goodman MBE Group GP LLC; Goodman MBE Group LP but only so long as James E. Goodman, Jason A. Goodman, John A. Goodman, Jonathon E. Goodman and Joseph M. Goodman
 but only so long as Goodman Networks, Inc. (i) owns more than fifty percent (50%) of the outstanding securities representing the present right to vote for election of or to appoint the directors, trustees, managers, members of the Board of Managers or equivalent positions of such entity, directly or through one or more **Subsidiaries**, and (ii) owns more than fifty percent (50%) of the outstanding securities representing the present right to vote for  election of or to appoint the directors, trustees, managers, members of the Board of Managers or equivalent positions of the **Parent Organization**, directly or through one or more **Subsidiaries**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 General Terms and Conditions Policy

Effective date of
this endorsement/rider: June 30, 2020          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk
Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the
Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such
losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro
rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance
with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such
Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the
following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of
insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is
committed by an individual or individuals as part of an effort to coerce the civilian population of the
United States or to influence the policy or affect the conduct of the United States Government by
coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism
exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

C H U B B®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]

*Directors & Officers and Entity Liability*
*Coverage Part*

**D&O DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**    **Parent Organization:**      GOODMAN NETWORKS, INC. & Subsidiaries

**Item 2.**    **Maximum Aggregate Limit of Liability for this Coverage Part:**      $5,000,000.00

**Item 3.**    **Optional Coverage Applicable to this Coverage Part:**

☐   Additional Limit of Liability Dedicated for Executives

**Item 4.**    **Retentions:**

(A)   Insuring Clause (A)
Individual Non-Indemnified Liability Coverage:      None

(B)   Insuring Clause (B)
Individual Indemnified Liability Coverage:      $75,000.00

(C)   Insuring Clause (C)
Entity Liability Coverage:      $75,000.00

**Item 5.**    **Pending or Prior Proceedings Dates:**

(A)   Insuring Clauses (A) and (B):      May 31, 2017

(B)   Insuring Clause (C):      May 31, 2017

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability
Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I.    INSURING CLAUSES

### Insuring Clause (A):  Individual Non-Indemnified Liability Coverage

(A)    The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such **Loss** is not indemnified by an **Organization**.

### Insuring Clause (B):  Individual Indemnified Liability Coverage

(B)    The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.

### Insuring Clause (C):  Entity Liability Coverage

(C)    The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

## II.    SECURITYHOLDER DERIVATIVE DEMAND EVALUATION COVERAGE

The Company shall pay, on behalf of an **Organization**, **Securityholder Derivative Demand Evaluation Costs** incurred with the Company's prior written consent which the **Organization** becomes legally obligated to pay on account of any securityholder derivative demand that is first made during the **Policy Period**, or, if exercised, during the Extended Reporting Period, for **Wrongful Acts** by an **Executive** before or during the **Policy Period** in an aggregate amount not to exceed $500,000 per **Policy Period** which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations and no Retention shall apply to such amount.

## III.    ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)

(A)    Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 3 of the D&O Declarations, shall be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to, and not part of, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations.

(B)    The Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **Claim** against any **Executive** covered under Insuring Clause (A), Individual Non-Indemnified Liability Coverage.

(C)    The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Coverage Part and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the Company shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated For Executives.

CHUBB®   Chubb Group of Insurance Companies   **ForeFront Portfolio 3.0**[SM]
202B Hall's Mill Road   ***Directors & Officers and Entity Liability***
Whitehouse Station, NJ 08889   ***Coverage Part***

## IV.   DEFINITIONS

For purposes of this Coverage Part:

**Application** means:

(A)     any portion of an application given to the Company for this Policy, including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part; and

(B)     any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means:

(A)     when used in reference to the coverage provided by Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage, any:

    (1)     written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

    (2)     civil proceeding commenced by the service of a complaint or similar pleading;

    (3)     criminal proceeding commenced by: (a) an arrest, or (b) a return of an indictment, information or similar document;

    (4)     formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

    (5)     arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document; or

    (6)     official request for **Extradition**,

against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom;

    (7)     civil, criminal, administrative or regulatory investigation or interview of an **Insured Person** for a **Wrongful Act** once such **Insured Person** is identified in writing by any investigating authority as a target of such investigation or interview, including when such **Insured Person** is served with a target letter or similar document; or

    (8)     written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraphs (A)(1) through (A)(7) above;

(B)     solely when used in reference to the coverage provided by Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any service of a subpoena or other similar written request upon an **Insured Person** compelling witness testimony or document production in connection with the matters described in Paragraphs (A)(1) through (A)(7) above or with any equivalent action against an **Organization** or **Outside Entity**; in which case, the Company shall pay the **Defense Costs** incurred solely by such **Insured Person** in responding to such subpoena or written request; or

(C)     when used in reference to the coverage provided by Insuring Clause (C), Entity Liability Coverage, any:

    (1)     written demand first received by an **Insured** for monetary damages or non-monetary relief, including injunctive relief;

    (2)     civil proceeding commenced by the service of a complaint or a similar pleading;

    (3)     criminal proceeding commenced by a return of an indictment, information or similar document;

    (4)     formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; but only while such proceeding is also pending against an **Insured Person**; or

**CHUBB**°   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Directors & Officers and Entity Liability*
*Coverage Part*

(5)     arbitration or mediation proceeding commenced by receipt of a demand for arbitration, demand for mediation or similar document,

against an **Organization** for a **Wrongful Act**, including any appeal therefrom; or

(6)     written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in Paragraph (C)(1) through (C)(5) above.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service is, was or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer.  **Employee** shall not include any independent contractor.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996), the English Pension Scheme Act 1993 or the English Pensions Act 1995; all as amended; any similar statutory or common law anywhere in the world; or any rule or regulation promulgated under any such Act or law.

**Executive** means any natural person who is, was or will be:

(A)     a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)     a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)     a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)     the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)     such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any **Executive** or **Employee** of an **Organization** acting either in his or her capacity as such or in an **Outside Capacity**.

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup></sup>SM
**Directors & Officers and Entity Liability
Coverage Part**

**Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

(A)    compensatory damages;

(B)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or to the **Claim** giving rise to such damages;

(C)    civil fines or civil penalties assessed against an **Insured Person**, including civil penalties assessed against an **Insured Person** pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines or penalties are assessed;

(D)    judgments, including pre-judgment and post-judgment interest;

(E)    settlements; and

(F)    **Defense Costs**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)    cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)    amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)    tax, except solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Coverage Part is construed;

(4)    amount (other than **Securityholder Derivative Demand Evaluation Costs**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not then a **Claim** even if (a) such amount also benefits the defense of a covered **Claim**; or (b) such action, proceeding or demand subsequently gives rise to a **Claim**;

(5)    amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets; or

(6)    cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**.

**Outside Capacity** means service by an **Insured Person** in an **Outside Entity** as any: (A) director or officer; (B) manager or member of the Board of Managers; (C) trustee, regent, governor; or (D) equivalent executive position of any of the foregoing, but solely during the time that such service is with the knowledge and express consent of an **Organization**.

**Outside Entity** means:

(A)    any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(7) or 501(c)(10) of the Internal Revenue Code of 1986, as amended, or any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; or

(B)    any other entity specifically added as an **Outside Entity** by written endorsement attached to this Coverage Part,

that is not an **Organization**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

CHUBB®

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

**Professional Services** means services which are performed for others for a fee.

**Securityholder Derivative Demand Evaluation Costs** means reasonable costs, fees and expenses (other than regular or overtime wages, salaries, fees, or benefits of the directors, officers or employees of an **Organization**) incurred by an **Organization** (including its Board of Directors or any committee of its Board of Directors) solely with respect to an evaluation required to determine whether it is in the best interest of the **Organization** to prosecute the claims alleged in a securityholder derivative demand and prior to any **Claim** first made in connection with such securityholder derivative demand. In no event shall **Securityholder Derivative Demand Evaluation Costs** include any costs, fees or expenses incurred in a **Claim**.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(A)     for purposes of coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, and (B), Individual Indemnified Liability Coverage, any **Insured Person** while acting in his or her capacity as such or any matter claimed against any **Insured Person** solely by reason of his or her status as such; or

(B)     for purposes of coverage under Insuring Clause (C), Entity Liability Coverage, any **Organization**.

## V.     EXCLUSIONS

### (A)     EXCLUSIONS APPLICABLE TO ALL INSURING CLAUSES

The Company shall not be liable for **Loss** on account of any **Claim**:

(1)     Prior Notice
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(2)     Pending or Prior Proceedings
based upon, arising from or in consequence of any written demand, suit or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 5 of the D&O Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

(3)     Bodily Injury/Property Damage
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed, provided that this Exclusion (A)(3) shall not apply to **Loss** for any mental anguish, humiliation or emotional distress asserted in an employment-related **Claim** afforded coverage under Insuring Clauses (A), Individual Non-Indemnified Liability Coverage, or (B), Individual Indemnified Liability Coverage;

(4)     Pollution
based upon, arising from or in consequence of any:

(a)     discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

(b)     treatment, removal or disposal of any **Pollutants**; or

(c)     regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in Subparagraphs (a), (b) or (c) of this Exclusion (A)(4),

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
**Directors & Officers and Entity Liability**
**Coverage Part**

provided that this Exclusion (A)(4) shall not apply to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** or **Outside Entity** either because the **Organization** or **Outside Entity** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Organization** or **Outside Entity**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(5)     ERISA
for any violation of the responsibilities, obligations or duties imposed by **ERISA**;

(6)     Insured versus Insured

(a)     brought by an **Organization** against any other **Organization**;

(b)     brought by an **Organization** against an **Insured Person** of such **Organization**, provided that this Subparagraph (b) shall not apply to any **Claim** brought:

(i)     outside the United States of America or Canada;

(ii)     in the event of **Financial Impairment** of the **Organization**; or

(iii)     as a securityholder derivative action;

(c)     brought by an **Insured Person** in any capacity against an **Insured,** except with respect to a **Claim**:

(i)     for employment-related **Wrongful Acts** against an **Insured Person**;

(ii)     brought by an **Employee**, other than an **Executive**, in his or her capacity as a shareholder of an **Organization**;

(iii)     for contribution or indemnity arising from another **Claim** otherwise covered under this Policy;

(iv)     brought by an **Executive** who has ceased serving in his or her capacity as an **Executive** for at least one (1) year; or

(v)     brought by a whistleblower pursuant to any federal, state, local or foreign law against an **Insured Person**;

(7)     Publicly Traded Securities
based upon, arising from or in consequence of (a) any public offering of securities issued by any **Organization** or **Outside Entity**, or (b) the purchase or sale of any publicly traded securities for which the **Organization** is subject to the Securities Exchange Act of 1934, provided that this Exclusion (A)(7) shall not apply to **Loss**:

(i)     based upon, arising from or in consequence of an offering, sale or purchase of securities that are not required to be registered under the Securities Act of 1933 or any similar foreign law that regulates the offering, sale or purchase of securities;

(ii)     on account of a **Claim** made by any securityholder of an **Organization** for the failure of the **Organization** to undertake or complete the initial public offering or sale of securities of the **Organization**; or

(iii)     for any **Wrongful Act** relating to an **Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Organization** and its **Executives** via any medium in connection with such public offering, if such offering does not occur;

(8)     Outside Entity versus Insured
for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity** where such **Claim** is brought:

CHUBB®    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

---

    (a)    by an **Outside Entity** against an **Insured Person** who is acting in his or her **Outside Capacity** in such **Outside Entity** at the time such **Claim** is first made, except with respect to a **Claim** brought as a securityholder derivative action; or

    (b)    by a director, officer, trustee, governor or equivalent position of the **Outside Entity** in any capacity against an **Insured,** except with respect to a **Claim** for contribution or indemnity arising from another **Claim** otherwise covered under this Policy; or

(9)    <u>Conduct</u>
based upon, arising from or in consequence of:

    (a)    any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

    (b)    an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such profit, remuneration or advantage,

provided that:

    (i)    no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

    (ii)    any conduct pertaining to any past, present, or future chief financial officer, chief executive officer or chief operating officer (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

**(B)**    **EXCLUSIONS APPLICABLE TO INSURING CLAUSE (C), ENTITY LIABILITY COVERAGE, ONLY**

The Company shall not be liable for **Loss** on account of any **Claim** against an **Organization**:

(1)    <u>Contract</u>
based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an **Organization** is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such **Organization** would have been liable in the absence of such contract or agreement;

(2)    <u>Employment Practices</u>
based upon, arising from or in consequence of any employment-related **Wrongful Act**;

(3)    <u>Third Party Discrimination or Sexual Harassment</u>
based upon, arising from or in consequence of any discrimination against, or sexual harassment of any third party;

(4)    <u>Antitrust</u>
based upon, arising from or in consequence of price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

(5)    <u>Personal Injury</u>
based upon, arising from or in consequence of any libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium; or

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]
**Directors & Officers and Entity Liability**
**Coverage Part**

(6)     Product Defect/Intellectual Property/Professional Services
based upon, arising from or in consequence of:

(a)     any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;

(b)     any infringement of copyright, patent, trademark, trade name, trade dress, or service mark; any misappropriation of ideas, trade secrets or  other intellectual property rights; any false patent marking; or any violation of a federal, state, local or foreign intellectual property law, or a rule or regulation promulgated under any such intellectual property law; or

(c)     the rendering of, or failure to render, any **Professional Services** by an **Insured**,

provided that this Exclusion (B)(6) shall not apply to **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action.

## VI.     REPORTING

(A)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)     if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)     the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization** stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

(B)     If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than 90 days after the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require and shall include in any notice under Subsections (A) or (B) above a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances or alleged **Wrongful Act**.

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

## VII.   RETENTION AND PRESUMPTIVE INDEMNIFICATION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 4 of the D&O Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)   If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)   If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)   **Claims** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** are first made or first deemed to have been made.

(E)   If an **Organization** fails or refuses, other than for reason of **Financial Impairment**, to indemnify an **Insured Person** for **Loss** to the fullest extent permitted by statutory or common law, then any payment by the Company of such **Loss** shall be excess of the Insuring Clause (B), Individual Indemnified Liability, Coverage, Retention set forth in Item 4 of the D&O Declarations.

(F)   For the purposes of determining an **Organization's** indemnification obligation to any Advisory Board Member, each Advisory Board Member shall be deemed a director or officer of such **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each Advisory Board Member to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

---

## VIII.   DEFENSE AND SETTLEMENT

(A)   The Company shall have the right and duty to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

(C)   No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(D)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the premium shall be deemed fully earned.

(E)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agrees to do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(F)   The Company shall not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion (A)(9), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication or other determination standard) set forth in such Exclusion has been met.

---

CHUBB®

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Directors & Officers and Entity Liability*
*Coverage Part*

---

## IX.   ALLOCATION

If an **Insured** who is afforded coverage for a **Claim** incurs an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion (B)(2), Employment Practices, or Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

## X.   PRIORITY OF PAYMENTS

(A)   In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, and one or more of the other Insuring Clauses of this Coverage Part, the Company shall:

(1)   first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then

(2)   with respect to whatever remaining amount of the Limit of Liability is available after payment under Subsection (A) above, pay such **Loss** for which coverage is provided under any other Insuring Clause.

(B)   Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

---

## XI.   OTHER INSURANCE OR INDEMNITY

(A)   If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B)   Any coverage afforded under this Coverage Part for a **Claim** in connection with an **Insured Person** serving in an **Outside Capacity** for an **Outside Entity** shall be specifically excess of any indemnity (other than any indemnity provided by an **Organization**) and insurance available to such **Insured Person** by reason of serving in such **Outside Capacity**.

(C)   If any **Claim** made against an **Insured Person** serving in an **Outside Capacity** gives rise to coverage both under this Coverage Part and under any other coverage part or policy issued by the Company or any subsidiary or affiliate of The Chubb Corporation to any other entity, then any payment under such other coverage part or policy shall reduce any applicable Limit of Liability under this Coverage Part by the amount of such payment.

---

CHUBB®   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Directors & Officers and Entity Liability*
*Coverage Part*

---

**XII.    SECURITIES TRANSACTIONS**

If, during the **Policy Period**, an **Organization** intends to sell or offers to sell securities that are required to be registered under the Securities Act of 1933, the **Organization** shall, no later than thirty (30) days prior to the effective date of the Registration Statement for such sale or offering, give the Company written notice of the proposed sale or offering and all information requested by the Company relating thereto.   The Company shall provide to the **Organization** a quotation for coverage with respect to such sale or offering, including for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation; provided any such coverage offered shall be subject to such other terms, conditions, and limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

---

**XIII.    REPRESENTATIONS AND SEVERABILITY**

(A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part.   Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)    The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**.   With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)    However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

(1)    any **Insured Person** who knew of such misrepresentations (whether or not such **Insured Person** knew such **Application** contained such misrepresentations) or any **Organization** to the extent it indemnifies any such **Insured Person**; or

(2)    any **Organization** if any past or present chief executive officer or chief financial officer (or any equivalent position to any of the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)    The Company shall not be entitled under any circumstances to void or rescind this Coverage Part with respect to any **Insured**.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                    Federal Insurance Company

                                                        Endorsement/Rider No. 1

                                                        To be attached to and
                                                        form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

TEXAS AMENDATORY ENDORSEMENT
TO THE DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that:

(1)    Subsection (A) of Section XIII, Representations and Severability, of this Coverage Part is deleted and
       replaced with the following:

       (A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon
              the declarations and statements in the **Application** for this Coverage Part.  Such
              declarations and statements are the basis of the coverage under this Coverage Part and shall
              be considered as incorporated into this Coverage Part.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this
Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence
over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent
with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement
provisions comply with the applicable insurance laws of the state of Texas.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

PROFESSIONAL SERVICES EXCLUSION WITH SPECIFIC MANAGEMENT CLAIM CARVEBACK ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of the rendering of, or failure to render, any **Professional Services** by an **Insured**, provided that this Exclusion shall not apply to any **Specific Management Claim** (as defined in Paragraph (2) of this endorsement).

(2)     Section IV, Definitions, of this Coverage Part, is amended to include the following definition:

        **Specific Management Claim** means any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in connection with the **Executive's** management of any **Organization** or **Subsidiary** of an **Organization**.  However, **Specific Management Claim** shall not mean, and in no event shall any coverage be afforded herein for, any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in the direct offering of, or in supervising or assisting an **Insured Person** in direct offering of, any **Professional Services**.

(3)     Any coverage provided pursuant to this endorsement for such **Specific Management Claim**, shall always be excess of any coverage provided under any errors and omissions or general liability policies, or any other policy providing coverage for any error, misstatement, misleading statement, act, omission, neglect, or breach of duty in connection with the rendering of, or failure to render, any **Professional Services**, regardless of whether any such policies are stated to be primary excess contributory, contingent or otherwise.

(4)     Exclusion (B)(6)(c), Professional Services, of this Coverage Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement: June 30, 2020                    Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8259-6686

Issued to: GOODMAN NETWORKS, INC. & Subsidiaries

---

PRIOR ACTS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that the Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any **Wrongful Act** in whole or in part prior to May 31, 2017.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020          Federal Insurance Company

                                              Endorsement/Rider No. 4

                                              To be attached to and
                                              form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

SERVICE INDUSTRY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from, or in consequence of the rendering of, or failure to render, any **Professional Services** by an **Insured**; provided that this Exclusion shall not apply to any **Loss** on account of any securities **Claim**, securityholder derivative demand, securityholder derivative action or **Specific Management Claim** (as defined in Paragraph (2) of this endorsement).

(2)     Section IV, Definitions, of this Coverage Part, is amended to include the following definition:

        **Specific Management Claim** means any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in connection with the **Executive's** management of any **Organization** or **Subsidiary**, of an **Organization**.  However, **Specific Management Claim** shall not mean, and in no event shall any coverage be afforded herein for, any **Claim** made against an **Executive** for a **Wrongful Act** by such **Executive** in the direct offering of, or in supervising or assisting an **Insured Person** in direct offering of, any **Professional Services**.

(3)     Exclusion (B)(6)(c), Professional Services, of this Coverage Part is deleted.

(4)     Subsection (A) of Section IX, Allocation, of this Coverage Part is deleted and replaced with the following:

        (A)     **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to paragraph (1) of this endorsement or Exclusion (B)(1), Contract, Exclusion (B)(2), Employment Practices, or Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(5)     Solely with respect to the coverage afforded under this endorsement, Section XI, Other Insurance or Indemnity, of this Coverage Part is amended to add the following:

        Subject to the provisions of this endorsement, no coverage shall be available for any **Loss** until after any or all coverage available under any policy providing professional liability or errors and omissions coverage has been exhausted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

| | |
|---|---|
| Effective date of this endorsement/rider: June 30, 2020 | Federal Insurance Company |
| | Endorsement/Rider No. 5 |
| | To be attached to and form a part of Policy No. 8259-6686 |

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

ANTITRUST ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that:

(1)   Solely with respect to **Claims** for **Antitrust Activities**, the following shall apply:

    (a)   The Company's maximum aggregate Limit of Liability for **Loss** on account of any **Claim** for **Antitrust Activities** shall be $1,000,000 which amount shall be part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability for this Coverage Part set forth in Item 2 of the D&O Declarations.

    (b)   At such time as the Retention set forth in paragraph (1)(c) of this endorsement, which shall be borne by the **Insureds** uninsured and at their own risk, has been satisfied, the Company shall pay on behalf of the **Insured** the twenty percent (20%) ("Covered Percentage") of **Loss** from each **Claim** for **Antitrust Activities** first made against an **Insured** during the **Policy Period**, or if applicable, the Extended Reporting Period.  Any amount of **Loss** in excess of the Covered Percentage shall be borne by the **Insureds** uninsured and at their own risk.

    (c)   Item 4, Retentions of the D&O Declarations is deleted and replaced with the following:

        (A)   $250,000 each **Claim** for **Antitrust Activities** for each **Insured Person** under Insuring Clause (A), but in no event to exceed, in the aggregate,

            $250,000 each **Claim** for **Antitrust Activities** for all **Insured Persons** under Insuring Clause (A).

        (B)   $250,000 each **Claim** for **Antitrust Activities** under Insuring Clause (B).

        (C)   $250,000 each **Claim** for **Antitrust Activities** under Insuring Clause (C), if applicable.

        With respect to all other **Claims**, Item 4 of the Declarations shall remain unchanged.

(2)   Section IV, Definitions, of this Coverage Part is amended to include the following:

    **Antitrust Activity** means any actual or alleged price fixing; restraint of trade; monopolization; unfair trade practices; or violation of the Federal Trade Commission Act, the Sherman Anti-trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

(3)    Exclusion (B)(4), Antitrust, of this Coverage Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

FALSE ADVERTISING ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection (B) of Section V, Exclusions, of this Coverage Part is amended to add the following:

        <u>False Advertising</u>
        based upon, arising from, or in consequence of any false advertising, misrepresentation in advertising or
        unfair or deceptive trade practices, with respect to the advertising of the **Insured's** own goods,
        publications or services; provided that this Exclusion shall not apply to **Loss** on account of any securities
        **Claim**, securityholder derivative demand or securityholder derivative action.

(2)     Solely with respect to the coverage afforded under this endorsement, Subsection (A) of Section IX,
        Allocation, of this Coverage Part is deleted and replaced with the following:

        (A)     **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on
                account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect
                to any **Insured** for whom coverage is excluded pursuant to the Exclusion in paragraph (1) of this
                endorsement, False Advertising, Exclusion (B)(2), Employment Practices, or Subsection XIII(C),
                Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss**
                and non-covered loss based on the relative legal exposures of the parties to such matters; and

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

---

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                 Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

JOBS ACT ENDORSEMENT

In consideration of the premium charged, it is agreed that

(1)    Exclusion (A)(7), Publicly Traded Securities, of this Coverage Part shall not apply to **Loss** on account of any **Claim**:

(A)    based upon, arising from or in consequence of any general solicitation or general advertising by or on behalf of any **Organization** permitted pursuant to Title II, Access to Capital for Job Creators, of the JOBS Act (as defined below);

(B)    based upon, arising from or in consequence of any offering, sale or purchase of securities that qualifies for a Securities Act registration exemption created pursuant to Title III, Crowdfunding, of the JOBS Act; or

(C)    based upon, arising from or in consequence of any offering, sale or purchase of securities that qualifies for a Securities Act registration exemption created pursuant to Title IV, Small Company Capital Formation, of the JOBS Act ("Title IV Small Company Capital Formation Claim").

(2)    The Company's maximum aggregate Limit of Liability for **Loss** on account of all Title IV Small Company Capital Formation Claims shall be $250,000 which amount shall be part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability for this Coverage Part set forth in Item 2 of the D&O Declarations.

(3)    For purposes of this Endorsement, JOBS Act means the Jumpstart Our Business Startups Act, any amendments thereto and any rules or regulations promulgated thereunder.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

PRIVACY AND DATA BREACH EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of any:

    (A)    unauthorized or unlawful access to, alteration of, or damage to any computer, computer program, computer network or computer database, including but not limited to the infection of any of the foregoing through the transmission of a computer virus, malware, spyware or other fraudulent or unauthorized computer code that: (1) modifies, alters, damages, destroys, deletes, records or transmits information; (2) contaminates other computer programs or computer data; or (3) consumes computer resources or in some fashion usurps the normal operation of a computer system;

    (B)    denial of service or delay, disruption, impairment or failure of any computer or communication network, service, hardware or software including but not limited to any **Claim** for lost profits or opportunities as a result of such denial of service, delay, disruption, impairment or failure;

    (C)    unauthorized or unlawful access to, disclosure of, alteration of, theft, collection, storage, use or dissemination of, or loss of any confidential or proprietary business information or personally identifiable information as defined by: (1) applicable federal, state, local (or foreign equivalent) statutory law or common law anywhere in the world, or amendments thereto or rules or regulations promulgated thereunder; or (2) an **Organization's** publicly stated privacy policy; or

    (D)    violation of any federal, state or local (or foreign equivalent) privacy or data security statutory law or common law anywhere in the world or amendments thereto or rules or regulations promulgated thereunder,

    provided that this Exclusion shall not apply to **Loss** on account of any securities **Claim**, securityholder derivative demand or securityholder derivative action ("Securities Claim").

(2)    Subsection (A) of Section VIII, Defense and Settlement, of this Coverage Part is deleted and replaced with the following:

(A)(i)  Except as provided in Subsection (A)(ii) below, the Company shall have the right and duty to defend any **Claim** covered by this Coverage Part, even if any of the allegations in such **Claim** are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(ii)  Notwithstanding Subsection (A)(i) above, it shall be the duty of the **Insureds** and not the duty of the Company to defend any **Claim** which is in part excluded from coverage pursuant to the exclusion set forth in paragraph (1) of this Endorsement.  For such portion of such **Claim** that is otherwise covered under this Coverage Part, the Company shall have the right and shall be given the opportunity to effectively associate with the **Insured** and shall be consulted in advance by the **Insured**, regarding the investigation, defense and settlement of any such **Claim** that appears reasonably likely to be covered in whole or in part under this Coverage Part, including selecting appropriate defense counsel and negotiating any settlement.

(3)  Subsection (A) of Section IX, Allocation, of this Coverage Part is deleted and replaced with the following:

(A)  **Defense Costs**:  one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to the exclusion set forth in paragraph (1) of this Endorsement, Exclusion (B)(2), Employment Practices, or Subsection XIII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(4)  Section XI, Other Insurance or Indemnity, of this Coverage Part is amended to add the following:

Solely with respect to any **Loss** that may be covered under both this Coverage Part and under any policy providing cyber liability, network liability, cybersecurity or security coverage or any similar type of policy (hereinafter "Other Policy"), this Coverage Part shall be specifically excess of, and shall not contribute with, any such Other Policy, or any renewal or replacement thereof.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020          Federal Insurance Company

                                              Endorsement/Rider No. 9

                                              To be attached to and
                                              form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

AMEND DEFENSE AND SETTLEMENT ENDORSEMENT
(OPTION TO TENDER DEFENSE)

In consideration of the premium charged, it is agreed that:

(1)      Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (2) of this Endorsement, Section VIII, Defense and Settlement, of this Coverage Part (including any amendment by Endorsement) is deleted and replaced with the following:

         VIII.      DEFENSE AND SETTLEMENT

                 (A)      The **Insured**:

                         (1)      shall have the sole duty to defend **Claims** made against the **Insured**;

                         (2)      agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent.

                         (3)      agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agrees that, in the event of a **Claim,** the **Insured** shall not do anything that could prejudice the Company's position or its potential or actual rights of recovery; provided that the failure of any **Insured Person** to give the Company such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this Coverage Part.

                 (B)      The Company:

                         (1)      shall have the right and shall be given the opportunity to effectively associate with the **Insured** and shall be consulted in advance by the **Insured**, regarding the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part under this Coverage Part, including selecting appropriate defense counsel and negotiating any settlement; and

(2)     shall not be liable for any element of **Loss** incurred in excess of the amount of the applicable Retention, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent, which the Company shall not unreasonably withhold.

(C)     The Company shall advance covered **Defense Costs** on account of any **Claim** reported pursuant to Section VI, Reporting, on a current basis after receipt by the Company of bills detailing such **Defense Costs** and all other information requested by the Company with respect to such bills until the applicable Limit of Liability set forth in Item 2 of the D&O Declarations has been satisfied.

(D)     Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this Policy.  However, the Company shall not seek repayment from an **Insured** of advanced **Defense Costs** that are uninsured pursuant to Exclusion V(A)(9), Conduct, unless a final, non-appealable adjudication has occurred.

(E)     Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 2 of the D&O Declarations.  If the Company recovered any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the Limit of Liability set forth in Item 2 of the D&O Declarations.

(2)     Notwithstanding paragraph (1) of this Endorsement, the **Insureds** shall have the option to tender the defense of any **Claim** to the Company by notifying the Company within a reasonable time after such **Claim** is first received by the **Insured**, but in no event later than thirty (30) days after the date such **Claim** is first received by the **Insured**.

(3)     Section IX, Allocation, of this Coverage Part (including any amendment by Endorsement) is deleted and replaced with the following:

IX.     ALLOCATION

The **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered by this Coverage Part and loss, or any other amount, that is not covered by this Coverage Part based on the relative legal and financial exposures of the covered parties to the covered matters.

(4)     Unless the **Insured** has tendered the defense of a **Claim** to the Company pursuant to paragraph (2) of this Endorsement, the Defense and Settlement provision in this Endorsement shall supersede and take precedence over any Defense and Settlement provision in any other Endorsement.

(5)     The Allocation provision in this Endorsement shall supersede and take precedence over any Allocation provision in any other Endorsement.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                    Federal Insurance Company

                                                        Endorsement/Rider No. 10

                                                        To be attached to and
                                                        form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

ADD EMPLOYED LAWYER COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Section IV, Definitions, of this Coverage Part is amended as follows:

(A)      The following definitions are added to this Section:

**Employed Lawyer** means any **Insured Person** of the **Organization** who is admitted to practice law and who is or was employed as a lawyer for, and salaried by, the **Organization**.

**Employed Lawyer Wrongful Act** means act, error or omission committed, attempted, or allegedly committed or attempted by an **Employed Lawyer** in the rendering of, or failure to render, professional legal services for an **Organization** while in his or her capacity as a lawyer for such **Organization**.

(B)      The definition of **Wrongful Act** is amended to include an **Employed Lawyer Wrongful Act**.

(2)      The Company shall not be liable for **Loss** on account of any **Claim**:

(A)      based upon, arising from, or in consequence of any act, error or omission in connection with any activities by such **Employed Lawyer** which:

(i) are not related to such **Employed Lawyer's** employment with the **Organization**;

(ii) are not rendered on the behalf of, for, or to the **Organization**; or

(iii) are performed by the **Employed Lawyer** for others for a fee;

(B)      based upon, arising from, or in consequence of any **Employed Lawyer Wrongful Act** while the **Employed Lawyer** was not employed as a lawyer by the **Organization**; or

(c)      based upon, arising from, or in consequence of any activities by the **Employed Lawyer** as an officer or director of any entity other than the **Organization**.

(3)  The Company's maximum liability under this Coverage Part for all **Loss** on account of all ***Claims*** for all **Employed Lawyer Wrongful Acts** shall be $1,000,000, which amount is part of and not in addition to the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020                    Federal Insurance Company

                                                         Endorsement/Rider No. 11

                                                         To be attached to and
                                                         form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

CRISIS MANAGEMENT COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended as follows:

(1)  **CRISIS MANAGEMENT COVERAGE**

The Company shall pay, on behalf of an **Organization**, **Crisis Management Expenses** which the **Organization** becomes legally obligated to pay on account of a **Crisis Management Event** occurring during the **Policy Period** in an aggregate amount not to exceed $25,000 per **Policy Period** ("Crisis Management Sublimit"), which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations and no Retention shall apply to such amount.

(2)  **AMEND DEFINITIONS**

Section IV, Definitions, is amended as follows:

(1)  The definition of **Claim** shall not include any **Crisis Management Event**.

(2)  The definition of **Loss** shall not include **Crisis Management Expenses**.

(3)  The following definitions are added to the Section:

**Adverse Publicity** means the publication of unfavorable information regarding the **Organization** which can reasonably be considered to materially reduce public confidence in the competence, integrity or viability of the **Organization**. Such publication must occur in a report about an **Organization** appearing in:

(A)  a daily newspaper of general circulation; or

(B)  a radio or television news program.

**Crisis Management Event** means any one of the following events first occurring during the **Policy Period** which results in **Adverse Publicity**:

(A)  an unanticipated death, incapacity, resignation or federal or state criminal indictment of the Chief Executive Officer or Chief Financial Officer of the **Organization**;

(B)     an unanticipated loss to the **Organization** arising from a product recall, delay in  production, loss of intellectual property rights (other than by expiration), loss of major contract or customer;

(C)     the **Organization's** intention to file or its actual filing for bankruptcy protection or a third party's intention to file or its actual filing for bankruptcy protection on behalf of the **Organization**, whether voluntary or involuntary;

(D)     the threatened or actual commencement by a third party of an action, audit or investigation alleging an employment-related **Wrongful Act** by the **Organization**;

(E)     the commencement or threat of litigation or other proceedings by any governmental or regulatory agency against the **Organization**; or

(F)     any other material event if such event is specifically added by written endorsement attached to this Coverage Part.

**Crisis Management Expenses** means the following expenses incurred by the **Organization**, with the Company's prior written consent:

(A)     reasonable and necessary expenses incurred by a marketing firm, public relations firm, law firm or crisis management firm retained on behalf of **Organization** to make a public communication or provide advice to prevent or minimize business disruption with respect to a **Crisis Management Event**;

(B)     reasonable and necessary expenses incurred by the **Organization** for publication and circulation of materials in connection with a **Crisis Management Event**; or

(C)     reasonable and necessary travel expenses incurred by any **Insured Person** in connection with a **Crisis Management Event**.

(3)   **AMEND REPORTING**

Paragraph (B) of Section VI, Reporting, is amended to add the following:

A **Crisis Management Event** shall be deemed to have first commenced when an **Insured** becomes aware of a **Crisis Management Event**, and gives written notice thereof to the Company, and shall conclude at the earliest point in time when a marketing firm, public relations firm, law firm or crisis management firm retained on behalf of **Organization** advises the **Organization** that such **Crisis Management Event** no longer exists or when the Crisis Management Sublimit has been exhausted.

If during the **Policy Period**, an **Insured** becomes aware of a **Crisis Management Event**, and gives written notice thereof to the Company, then any **Claim** subsequently arising from such **Crisis Management Event** shall be deemed to have been first made against the **Insured** during the **Policy Year** in which such written notice was first given by the **Insured** to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3 0 Directors & Officers and Entity Liability Coverage Part

Effective date of
this endorsement/rider: June 30, 2020         Federal Insurance Company

                                               Endorsement/Rider No. 12

                                               To be attached to and
                                               form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

EMPLOYMENT PRACTICES LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based
      upon, arising from, or in consequence of any employment-related **Wrongful Act**.

(2)   The Company shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based
      upon, arising from, or in consequence of any discrimination against, or sexual harassment of any third
      party.

(3)   Exclusion (A)(3), Bodily Injury/Property Damage, of this Coverage Part is deleted and replaced with
      the following:

      (3)   Bodily Injury/Property Damage
            for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death
            of any person or damage to or destruction of any tangible property including loss of use
            thereof whether or not it is damaged or destroyed;

(4)   Subparagraph (c)(i) of Exclusion (A)(6), Insured versus Insured, is deleted.

(5)   Exclusion (B)(2), Employment Practices, and Exclusion (B)(3), Third Party Discrimination or Sexual
      Harassment, of this Coverage Part are deleted.

(6)   Any reference to Exclusion (B)(2), Employment Practices, in Section IX, Allocation, of this Coverage
      Part is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**CHUBB**   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Fiduciary Liability Coverage Part*

**FL DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**NOTICE: THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION. IN NO EVENT WILL THE COMPANY BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.**   **Parent Organization:**   GOODMAN NETWORKS, INC. & Subsidiaries

**Item 2.**   **Maximum Aggregate Limit of Liability for this Coverage Part**:   $5,000,000.00

**Item 3.**   **Retentions:**

(A) Insuring Clause (A)
    Fiduciary Liability Coverage:   $5,000.00

(B) Insuring Clause (B)
    Voluntary Settlement Program Coverage:   $5,000.00

**Item 4.**   **Pending or Prior Proceedings Dates:**

(A) Insuring Clause (A):   June 23, 2011

(B) Insuring Clause (B):   June 23, 2011

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Fiduciary Liability Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I. INSURING CLAUSES

### Insuring Clause (A): Fiduciary Liability Coverage

(A) The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** by the **Insured** or by any natural person for whose **Wrongful Acts** the **Insured** is legally liable.

### Insuring Clause (B): Voluntary Settlement Program Coverage

(B) The Company shall pay, on behalf of an **Insured**, **Voluntary Program Loss** and **Defense Costs** with respect to a **Voluntary Program Notice** that is first given to the Company during the **Policy Period**, provided that the Company's maximum liability for all **Voluntary Program Loss** and **Defense Costs** for the **Policy Year** shall be $150,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations.

## II. DEFINITIONS

For purposes of this Coverage Part:

**Administration** means:

(A) advising, counseling, or failing to provide proper or timely notice to **Employees**, **Executives**, participants or beneficiaries with respect to any **Plan**;

(B) providing interpretations with respect to any **Plan**; or

(C) handling of records or effecting enrollment, termination or cancellation of **Employees**, **Executives**, participants or beneficiaries under any **Plan**.

**Application** means:

(A) any portion of an application given to the Company for this Policy including any attachments, written information and materials provided to the Company by or on behalf of an **Insured** for the purposes of the Company's underwriting of this Coverage Part;

(B) all schedules filed with the U.S. Department of the Treasury Internal Revenue Service, the U.S. Department of Labor Employee Benefits Security Administration and the Pension Benefit Guarantee Corporation, and the audited financial statements last filed for all **Sponsored Plans**; and

(C) any warranty provided to the Company within the past three years in connection with any coverage part or policy of which this Coverage Part is a renewal or replacement.

**Claim** means any:

(A) written demand first received by an **Insured** for monetary or non-monetary relief, including injunctive relief;

(B) civil proceeding commenced by the service of a complaint or similar pleading;

(C) criminal proceeding commenced by: (1) an arrest, or (2) return of an indictment, information or similar document;

(D) formal administrative or formal regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(E) arbitration or mediation proceeding commenced by the receipt of a demand for arbitration, demand for mediation, or similar document;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

***ForeFront Portfolio 3.0***SM

***Fiduciary Liability Coverage Part***

(F)   written notice of commencement of a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority located outside the United States, including, the Pensions Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or by the United Kingdom Occupational Pensions Regulatory Authority or any successor thereto; or

(G)   official request for **Extradition** of an **Insured Person**,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(H)   a written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** as described in Subsections (A) through (G) above.

**Committee** means any committee established by an **Organization** with respect to a **Sponsored Plan**, which consists only of natural person members who are **Executives** or **Employees**.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** or any **Voluntary Program Notice**, and the premium for appeal, attachment or similar bonds.

**Employee** means any natural person whose labor or service was, is or will be engaged and directed by an **Organization**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** shall not include any independent contractor.

**ERISA** means:

(A)   the Employee Retirement Income Security Act of 1974, as amended and any rules or regulations promulgated thereunder (including, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"));

(B)   the English Pension Scheme Act 1993, and the English Pensions Act 1995, as such Acts are amended and any rules or regulations promulgated under such Acts, and

any similar statutory or common law anywhere in the world, and any rules or regulations promulgated thereunder; and

(C)   the privacy provisions under HIPAA.

**Executive** means any natural person who was, is or will be:

(A)   a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any **Organization** incorporated in the United States of America;

(B)   a duly elected or appointed: (1) manager, member of the Board of Managers or equivalent position; (2) member of the Advisory Board; or (3) in-house general counsel, of any **Organization** formed as a limited liability company in the United States of America; or

(C)   a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, or the execution of a warrant for the arrest of an Insured Person where such execution is an element of **Extradition**.

**Financial Impairment** means the status of an **Organization** resulting from:

(A)   the appointment by any federal or state official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B)   such **Organization** becoming a debtor in possession under the United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country,

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Fiduciary Liability Coverage Part*

---

provided that the court or other judicial or administrative body overseeing the receivership, conservatorship, liquidation, rehabilitation, bankruptcy or equivalent proceeding has denied a request by the **Organization**, or other party determined to have standing, for authorization of the **Organization** to indemnify an **Insured Person** for **Loss**; provided further that, the Company may, in its sole discretion, waive the foregoing requirement.

**Insured** means any **Organization**, any **Plan**, any **Committee** and any **Insured Person**.

**Insured Person** means any:

(A)    **Executive** or **Employee** of an **Organization**;

(B)    employee of a **Sponsored Plan**;

(C)    past, present or future natural person trustee of an **Organization** or of the **Sponsored Plan**; and

(D)    past, present or future natural person trustee or fiduciary, when such natural person is added as an **Insured Person** by specific written endorsement to this Coverage Part.

**Loss** means:

(A)    solely for purposes of Insuring Clause (A), Fiduciary Liability Coverage, the amount which any **Insured** becomes legally obligated to pay as a result of any **Claim**, including:

    (1)    compensatory damages;

    (2)    punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the Company, or the **Claim** giving rise to such damages;

    (3)    judgments, including pre-judgment and post-judgment interest;

    (4)    settlements; and

    (5)    **Defense Costs**; and

(B)    solely for purposes of Insuring Clause (B), Voluntary Settlement Program Coverage, **Voluntary Program Loss**,

provided that **Loss** does not include any portion of such amount that constitutes any:

(1)    cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including injunctive relief;

(2)    amount uninsurable under the law pursuant to which this Coverage Part is construed;

(3)    tax imposed by law;

(4)    fine or penalty imposed by law, except:

    (a)    as provided in Paragraph (A)(2) above with respect to punitive, exemplary or multiplied damages;

    (b)    the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended;

    (c)    solely with respect to Insuring Clause (B), Voluntary Settlement Program Coverage, **Voluntary Program Loss**;

    (d)    civil penalties imposed by:

        (i)    the Pension Ombudsman appointed by the United Kingdom Secretary of State for Work and Pensions or any successor thereto, by the United Kingdom Occupational Pensions Regulatory Authority, or the Pensions Regulator or any successor thereto, pursuant to the Pension Scheme Act 1993, the Pensions Act 1995, the Pensions Act 2004, or rules or regulations thereunder; or

        (ii)    Ireland's Pensions Board or Pensions Ombudsman,

CHUBB                  Chubb Group of Insurance Companies          **ForeFront Portfolio 3.0**<sup>SM</sup>
                       202B Hall's Mill Road
                       Whitehouse Station, NJ 08889                 *Fiduciary Liability Coverage Part*

provided that any coverage for such civil penalties applies only if the funds or assets of the pension scheme are not used to fund, pay or reimburse the premium for this Coverage Part;

(e)    civil penalties imposed upon an **Insured** as a fiduciary under Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended (including, any amendments pursuant to Section 507 of Title V of the Pension Protection Act of 2006); provided the Company's maximum limit of liability for all such civil penalties on account of all **Claims** first made during the **Policy Year** shall be $50,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

(f)    civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended; provided the Company's maximum limit of liability for all such civil money penalties on account of all **Claims** first made during the **Policy Year** shall be $150,000, which amount is part of, and not in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations;

(5)    amounts incurred by an **Insured** in the defense or investigation of any action, proceeding, investigation or demand that was not then a **Claim** or a **Voluntary Program Notice**, even if (a) such amount also benefits the defense of a covered **Claim** or **Voluntary Program Notice;** or (b) such action, proceeding, investigation or demand subsequently gives rise to a **Claim** or to a **Voluntary Program Notice**;

(6)    cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for, or monitoring **Pollutants**; or

(7)    (a) benefits due or to become due under any **Plan**, or (b) benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, including loss resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits, except to the extent that:

(i)    an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

(ii)   a **Claim** made against an **Insured** alleges a loss to the **Plan** and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as "benefits" or held by a court as "benefits".

**Plan** means:

(A)    any **Sponsored Plan**; and

(B)    any government-mandated insurance for workers compensation, unemployment, social security or disability benefits for **Employees** and **Executives**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Sponsored Plan** means:

(A)    any employee benefit plan, pension benefit plan or welfare benefit plan, as defined in and subject to the Employee Retirement Income Security Act of 1974, as amended, including any **VEBA**, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of an **Organization**, located anywhere in the world and which existed on or before the inception date of this Policy, or, subject to Section VI, Changes in Exposure, of the General Terms and Conditions, which is created or acquired after such inception date, provided that any coverage with respect to an employee stock ownership plan created or acquired during the **Policy Period** shall be further subject to Section IV, Creation or Acquisition of an ESOP;

(B)    any other employee benefit plan or program not subject to the Employee Retirement Income Security Act of 1974, as amended which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization solely for the benefit of the **Employees** or **Executives** of an **Organization**, including any fringe benefit or excess benefit plan located anywhere in the world and which existed on or before the

inception date of this Policy, or, subject to Section VI, Changes in Exposure, of the General Terms and Conditions, which is created or acquired after such inception date; and

(C)    any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this Coverage Part,

provided that **Sponsored Plan** shall not include any employee stock ownership plan created or acquired by the **Organization** during the **Policy Period** (except as otherwise provided in Section IV, Creation or Acquisition of an ESOP).

**VEBA** means any Voluntary Employees' Beneficiary Associations as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended and any regulations thereunder, the purpose of which is to provide for life, sick, accident or other benefits for voluntary members who are **Employees**, **Executives**, their dependents or designated beneficiaries.

**Voluntary Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or U.S. Department of Labor, including the Delinquent Filer Voluntary Compliance Program, the Voluntary Fiduciary Correction Program and the Employee Plans Compliance Resolution System, or any similar program administered by a governmental authority located outside the United States.

**Voluntary Program Loss** means fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Voluntary Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation, provided that the **Voluntary Program Notice** relating thereto was given to the Company during the **Policy Period**.

**Voluntary Program Notice** means, with respect to any **Plan**, prior written notice to the Company by any **Insured** of the **Insured's** intent to enter into any **Voluntary Program**, provided that no **Insured Person** knew the **Plan** to be actually or allegedly non-compliant as of the earlier of the inception of this Policy or the inception of the first policy in an uninterrupted series of policies issued by the Company of which this Coverage Part is a direct or indirect renewal or replacement.

**Wrongful Act** means any actual or alleged:

(A)    breach of the responsibilities, obligations or duties imposed by **ERISA** upon fiduciaries of the **Sponsored Plan** committed, attempted or allegedly committed or attempted  by an **Insured** while acting in the **Insured's** capacity as a fiduciary;

(B)    negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by an **Insured**; or

(C)    matter, other than as set forth in (A) or (B) above, claimed against an **Insured** solely by reason of the **Insured's** service as a fiduciary of any **Sponsored Plan**.

---

### III.    EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim** or for any **Voluntary Program Notice**:

(A)    <u>Prior Notice</u>:
based upon, arising from or in consequence of any fact, circumstance, situation, transaction, event or **Wrongful Act** that, before the inception date set forth in Item 2(A), Policy Period, of the GTC Declarations, was the subject of any notice accepted under any fiduciary liability or employee benefit liability policy or coverage part of which this Coverage Part is a direct or indirect renewal or replacement;

(B)    <u>Pending or Prior Proceedings</u>:
based upon, arising from or in consequence of a written demand, suit, or other proceeding pending against, or order, decree or judgment entered for or against any **Insured**, on or prior to the applicable Pending or Prior Proceedings Date set forth in Item 4 of the FL Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**[SM]

**Fiduciary Liability Coverage Part**

(C)    Bodily Injury/Property Damage:
for bodily injury, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(D)    Pollution:
based upon, arising from or in consequence of any:

   (1)    discharge, emission, release, dispersal or escape of any **Pollutants**, or any threat thereof;

   (2)    treatment, removal or disposal of any **Pollutants**; or

   (3)    regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

including any **Claim** for financial loss to an **Organization**, its securityholders or its creditors, or to the **Plan**, based upon, arising from or in consequence of any matter described in Paragraphs (1), (2) or (3) of this Exclusion (D),

provided that this Exclusion (D) shall not apply:

   (1)    to **Loss** on account of any **Claim** by or on behalf of a beneficiary of or participant in any **Sponsored Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Sponsored Plan** in any organization if such diminution in value is allegedly as a result of the matters described above in this Exclusion (D); or

   (2)    to **Loss** which an **Insured Person** becomes legally obligated to pay and for which such **Insured Person** is not indemnified by an **Organization** either because the **Organization** is not permitted by statutory or common law to grant such indemnification or because of the **Financial Impairment** of the **Organization**, provided that this exception shall only apply to **Claims** first made during the **Policy Period** or the Extended Reporting Period, if applicable;

(E)    Assumed Liability Under Contract:
based upon, arising from or in consequence of liability of others assumed by any **Insured** under any written or oral contract or agreement, provided that this Exclusion (E) shall not apply to **Loss** to the extent that:

   (1)    an **Insured** would have been liable in the absence of the contract or agreement; or

   (2)    the liability was assumed under the agreement or declaration of trust pursuant to which the **Plan** was established;

(F)    Workers' Compensation, Unemployment, Social Security, Disability Benefits:
for any failure of any **Insured** to comply with any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments to or rules or regulations promulgated under any such law, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, except, to the extent otherwise covered hereunder, **Wrongful Acts** in connection with: (a) the Consolidated Omnibus Budget Reconciliation Act of 1985, (b) the Health Insurance Portability and Accountability Act of 1996, or (c) any amendments to or any rules or regulations promulgated under such Acts;

(G)    Wage and Hour:
for any violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including the Fair Labor Standards Act) or amendments to or regulations promulgated under any such law that governs wage, hour and payroll policies and practices; or

(H)    Conduct:
based upon, arising from or in consequence of:

   (1)    any deliberately fraudulent act or omission, or any willful violation of any statute or regulation, by an **Insured**, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes such an act or omission or violation; or

(2)     an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the Company) establishes the gaining of such a profit, remuneration or advantage,

provided that,

(a)     no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person** or to any **Plan**; and

(b)     any conduct pertaining to any past, present, or future chief financial officer, chief executive officer, chief operating officer or head of benefits (or any equivalent position to any of the foregoing) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

## IV.   CREATION OR ACQUISITION OF AN ESOP

Notwithstanding anything in this Coverage Part to the contrary, if during the **Policy Period** any **Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Organization** shall promptly give to the Company written notice thereof together with such other information requested by the Company. The Company shall, at the request of the **Organization**, provide to the **Organization** a quotation for coverage for **Claims** based upon, arising from or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the Company, in its sole discretion, may require.

## V.   TERMINATION OF PLAN

In the event:

(A)     an **Organization** terminates a **Plan** before or after the inception date of this Policy, coverage under this Coverage Part, with respect to such terminated **Plan**, shall continue until termination of this Coverage Part for those who were **Insureds** at the time of such **Plan** termination or who would have been an **Insured** at the time of such termination if this Coverage Part had been in effect, with respect to **Wrongful Acts** prior to or after the date the **Plan** was terminated; or

(B)     the Pension Benefit Guaranty Corporation ("PBGC") becomes the Trustee of a **Plan** before or after the inception date of this Policy, coverage under this Coverage Part, with respect to such **Plan**, shall continue until termination of this Coverage Part for those who were **Insureds** at the time the PBGC became the Trustee of such **Plan** with respect to **Wrongful Acts** prior to the effective date the PBGC became the Trustee of such **Plan**.

## VI.   REPORTING

(A)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**, but in no event later than:

(1)     if this Coverage Part expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

(2)     the expiration date of the Extended Reporting Period, if applicable,

provided that if the Company sends written notice to the **Parent Organization**, stating that this Coverage Part is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**℠
*Fiduciary Liability Coverage Part*

(B)     If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Year** in which such circumstances were first reported to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(C)     If during the **Policy Period** an **Insured** gives a **Voluntary Program Notice** to the Company, then any **Claim** subsequently arising from such **Voluntary Program Notice**, or arising from the same or related facts, circumstances or situations alleged therein, shall be deemed to have been first made during the **Policy Year** in which such **Voluntary Program Notice** was first given to the Company, provided any such subsequent **Claim** is reported to the Company as soon as practicable, but in no event later than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel, head of benefits, or any person responsible for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**.

(D)     An **Insured** shall, as a condition precedent to exercising any right to coverage under this Coverage Part, give to the Company such information, assistance and cooperation as the Company may reasonably require, and shall include in any notice under Subsections (A), (B) or (C) above a description of the **Claim**, circumstances, or **Voluntary Program Notice** (including the facts, circumstances or situations alleged therein), the nature of the alleged **Wrongful Act** or circumstances, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, circumstances, or alleged **Wrongful Act** or **Voluntary Program Notice**.

---

## VII.    RETENTION AND PRESUMPTIVE INDEMNIFICATION

(A)     The Company's liability under this Coverage Part shall apply only to that part of each **Loss** which is in excess of the applicable Retention set forth in Item 3 of the FL Declarations and such Retention shall be borne by the **Insureds** uninsured and at their own risk.

(B)     If different parts of a single **Claim** are subject to different Retentions in different Insuring Clauses within this Coverage Part, the applicable Retentions shall be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(C)     If different parts of a single **Claim** are subject to different Retentions in different Coverage Parts, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions shall not exceed the largest applicable Retention.

(D)     **Claims** and **Voluntary Program Notices** shall be subject to the Retention(s) applicable to the **Policy Year** during which such **Claims** or **Voluntary Program Notices** are made or deemed to have been made.

(E)     No Retention shall apply to:

   (1)     any **Loss** under this Coverage Part incurred by an **Insured Person** if such **Loss** cannot be indemnified by an **Organization** or **Plan** because such **Organization** or **Plan** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is unable to do so by reason of **Financial Impairment**; or

   (2)     any **Loss** constituting civil penalties imposed by law pursuant to Subparagraphs (4)(e) and (4)(f) as set forth within the definition of **Loss**.

(F)     For the purposes of determining an **Organization's** indemnification obligation to any Advisory Board Member, each Advisory Board Member shall be deemed a director or officer of the **Organization**. Accordingly, the **Organization** shall be deemed to have granted indemnification to each Advisory Board Member to the fullest extent permitted by statutory or common law to the same extent as any director or officer of the **Organization**.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**$^{SM}$

**Fiduciary Liability Coverage Part**

## VIII.   DEFENSE AND SETTLEMENT

(A)   Except as provided in Subsection (B) below, the Company shall have the right and duty to defend any **Claim** covered by this Coverage Part.  Coverage shall apply even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)   Notwithstanding Subsection (A) above, it shall be the duty of the **Insureds** and not the duty of the Company to defend any **Claim** which is in part excluded from coverage pursuant to Exclusion III(G), Wage and Hour.  For such portion of such **Claim** that is otherwise covered under this Coverage Part, the **Insureds** shall select as defense counsel for such **Claim** a law firm included in the Company's then current list of approved fiduciary liability defense firms for the jurisdiction in which such **Claim** is pending.

(C)   It shall be the duty of the **Insureds** and not the duty of the Company to defend any **Voluntary Program Notice**, provided that the **Insureds** shall select as defense counsel for such **Voluntary Program Notice** a law firm included in the Company's then current list of approved fiduciary liability defense firms for the jurisdiction applicable to such **Voluntary Program Notice**.

(D)   The Company may make any investigation it deems necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** or **Voluntary Program Notice** it deems appropriate.

(E)   No **Insured** shall settle any **Claim** or **Voluntary Program Notice**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** or **Voluntary Program Notice**, without the Company's written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(F)   The Company shall have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** or **Voluntary Program Notice** after the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the FL Declarations or the Combined Maximum Aggregate Limit of Liability set forth in Item 3 of the GTC Declarations, if applicable, has been exhausted by the payment of **Loss** and the applicable premium shall be deemed fully earned.

(G)   The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

(H)   The Company will not seek repayment from an **Insured Person** of any **Defense Costs** paid by the Company that are deemed uninsured pursuant to Exclusion III(H), Conduct, unless the applicable determination standard (whether a final, non-appealable adjudication; or other determination standard) set forth in such Exclusion has been met.

## IX.   ALLOCATION

If the **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

(A)   **Defense Costs**: one hundred percent (100%) of **Defense Costs** incurred by such **Insured** on account of such **Claim** shall be covered **Loss**, provided that the foregoing shall not apply with respect to any **Insured** for whom coverage is excluded pursuant to Exclusion III(G), Wage and Hour, or Subsection XII(C), Representations and Severability.  Such **Defense Costs** shall be allocated between covered **Loss** and non-covered loss based on the relative legal exposures of the parties to such matters; and

(B)   loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Fiduciary Liability Coverage Part*

---

## X.  PRIORITY OF PAYMENTS

(A)  If a liquidation or reorganization proceeding is commenced by or against an **Organization** pursuant to the United States Bankruptcy Code or any similar state or local law and in the event payment of **Loss** is due under this Coverage Part but, in the sole discretion of the Company, the amount of such **Loss** in the aggregate potentially exceeds the remaining available Limit of Liability for this Coverage Part, the Company shall:

    (1)  first pay such covered **Loss** incurred by the **Insured Persons** and the **Plans**; then

    (2)  to the extent of any remaining amount of the Limit of Liability available after payment under Paragraph (1) above, pay such covered **Loss** incurred by an **Organization**.

(B)  Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

---

## XI.  OTHER INSURANCE

If any **Loss** under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

---

## XII.  REPRESENTATIONS AND SEVERABILITY

(A)  In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the declarations and statements in the **Application** for this Coverage Part. Such declarations and statements are the basis of the coverage under this Coverage Part and shall be considered as incorporated in and constituting part of this Coverage Part.

(B)  The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

(C)  However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Coverage Part, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

    (1)  any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations) or any **Organization** or **Plan** to the extent it indemnifies any such **Insured Person**; or

    (2)  any **Organization** or **Plan** if any past or present chief executive officer or chief financial officer (or any equivalent position to the foregoing) of the **Parent Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)  The Company shall not be entitled under any circumstances to rescind this Coverage Part with respect to any **Insured**.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020                    Federal Insurance Company

                                                         Endorsement/Rider No. 1

                                                         To be attached to and
                                                         form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

PPACA CIVIL MONEY PENALTIES ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is amended by
        adding the following exception to Paragraph (4):

        civil money penalties imposed upon an **Insured** for inadvertent violation of the
        Patient Protection and Affordable Care Act, as amended ("PPACA"), and  any
        rules or regulations promulgated thereunder; provided the Company's maximum
        limit of liability for all such civil money penalties on account of all **Claims** first
        made during the **Policy Year** shall be $50,000, which amount is part of, and not
        in addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the
        FL Declarations;

(2)     No Retention shall apply to **Loss** constituting civil money penalties imposed by law upon an
        **Insured** for inadvertent violation of PPACA, and any rules or regulations promulgated thereunder.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020          Federal Insurance Company

                                              Endorsement/Rider No. 2

                                              To be attached to and
                                              form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries
_____

IRS SECTION 4975 COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The definition of **Loss** as set forth in Section II. Definitions, of this Coverage Part is amended by
       adding the following exception to Paragraph (4):

              with respect to covered judgments, the fifteen percent (15%) or less tax penalty imposed
              upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986; provided the
              Company's maximum limit of liability for all such tax penalties on account of all **Claims**
              first made during the **Policy Year** shall be $50,000, which amount is part of, and not in
              addition to, the Maximum Aggregate Limit of Liability set forth in Item 2 of the FL
              Declarations;

(2)    Solely with respect to the tax penalties described in paragraph (1) of this endorsement, no
       Retention shall apply.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the
terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8259-6686

Issued to: GOODMAN NETWORKS, INC. & Subsidiaries

---

TEXAS AMENDATORY ENDORSEMENT
TO THE FIDUCIARY LIABILITY COVERAGE PART

In consideration of the premium charged, it is agreed that:

(1)    Subsection (A) of Section XII, Representations and Severability, of this Coverage Part is deleted and
       replaced with the following:

       (A)    In granting coverage to the **Insureds** under this Coverage Part, the Company has relied upon the
              declarations and statements in the **Application** for this Coverage Part. Such declarations and
              statements are the basis of the coverage under this Coverage Part and shall be considered as
              incorporated into this Coverage Part.

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory
Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over
any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary
to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the
applicable insurance laws of the state of Texas.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Fiduciary Liability Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

PRIOR ACTS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that no coverage will be available under this Coverage Part for **Loss** on account of any **Claim** or **Voluntary Program Notice** based upon, arising from, or in consequence of any **Wrongful Act** in whole or in part prior to June 23, 2011.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**CHUBB**

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]

*Crime Coverage Part*

**CRIME DECLARATIONS**

**FEDERAL INSURANCE COMPANY**

A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN  46204-1927

**Item 1.**   **Parent Organization:**        GOODMAN NETWORKS, INC. & Subsidiaries

**Item 2.**   **Limits of Liability and Retentions:**

| Insuring Clauses Applicable to this Coverage Part: | Limits of Liability: | Retentions: |
|---|---|---|
| [X] (A) Employee Theft Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (B) Premises Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (C) In Transit Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (D) Forgery Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (E) Computer Fraud Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (F) Funds Transfer Fraud Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (G) Money Order and Counterfeit Currency Fraud Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (H) Credit Card Fraud Coverage: | $5,000,000.00 | $50,000.00 |
| [X] (I) Client Coverage | $5,000,000.00 | $50,000.00 |
| [ ] (J) Expense Coverage: | Not Covered | None |

**Item 3.**   **Coverage applies as follows:**        Loss Discovered

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]

*Crime Coverage Part*

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Part, the Company and the Insureds agree as follows:

## I. INSURING CLAUSES

**Insuring Clause (A): Employee Theft Coverage**

(A)     The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

**Insuring Clause (B): Premises Coverage**

(B)     The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from:

(1)     **Robbery**, **Safe Burglary**, or unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

(2)     actual destruction or disappearance of **Money** or **Securities**,

within or from the **Premises** or **Banking Premises**.

Coverage under this Insuring Clause (B) shall also include:

(3)     loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

(4)     loss of or damage to such **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

(5)     damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

(6)     damage to the **Premises** or to its exterior resulting from **Safe Burglary** or **Robbery**,

committed by a **Third Party**.

**Insuring Clause (C): In Transit Coverage**

(C)     The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from:

(1)     **Robbery** or unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

(2)     actual destruction or disappearance of **Money** or **Securities**;

while **In Transit** or while temporarily within the home of an **Employee** or a partner of an **Organization**.

Coverage under this Insuring Clause (C) shall also include:

(3)     damage to **Property** which results from **Robbery** while **In Transit**; and

(4)     loss by the unlawful taking of **Property** temporarily within the home of an **Employee** or a partner of an **Organization**,

committed by a **Third Party**.

**Insuring Clause (D): Forgery Coverage**

(D)     The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Crime Coverage Part*

**Insuring Clause (E): Computer Fraud Coverage**

(E)  The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**.

**Insuring Clause (F): Funds Transfer Fraud Coverage**

(F)  The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Insured** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

**Insuring Clause (G): Money Orders and Counterfeit Currency Fraud Coverage**

(G)  The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Money Orders and Counterfeit Currency Fraud** committed by a **Third Party**.

**Insuring Clause (H): Credit Card Fraud Coverage**

(H)  The Company shall pay the **Parent Organization** for direct loss sustained by an **Insured** resulting from **Credit Card Fraud** committed by a **Third Party**.

**Insuring Clause (I): Client Coverage**

(I)  The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

**Insuring Clause (J): Expense Coverage**

(J)  The Company shall pay the **Parent Organization** for:

(1)  **Investigative Expenses** resulting from any direct loss covered under Insuring Clauses (A), Employee Theft Coverage; (B), Premises Coverage; (C), In Transit Coverage; (D), Forgery Coverage; (E), Computer Fraud Coverage; (F), Funds Transfer Fraud Coverage; (G), Money Orders and Counterfeit Currency Fraud Coverage; (H), Credit Card Fraud Coverage or (I), Client Coverage; or

(2)  **Computer Violation Expenses** resulting from any direct loss covered under Insuring Clauses (A), Employee Theft Coverage, (E), Computer Fraud Coverage or (I), Client Coverage;

incurred by any **Organization** in the amount set forth in Item 2 of the Crime Declarations, solely if such covered direct loss is in excess of the Retention applicable to such covered loss. Such amount shall be part of and not in addition to the Limit of Liability applicable to such covered loss.

---

**II.   DEFINITIONS**

For purposes of this Coverage Part:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom an **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking of **Money**, **Securities** or **Property** resulting from a **Computer Violation**.

**Computer System** means a computer or network of computers, including its input, output, processing, storage and communication facilities, and shall include off-line media libraries.

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Crime Coverage Part*

**Computer Violation** means an unauthorized:

(A)     entry into or deletion of **Data** from a **Computer System**;

(B)     change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(C)     introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed solely against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization** with the Company's prior written consent to reproduce or duplicate damaged or destroyed electronic **Data** or computer programs.  If such computer programs cannot be duplicated from other computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore the computer programs to substantially the same level of operational capability immediately preceding the covered direct loss.  **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Contractual Independent Contractor** means any natural person independent contractor while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, pursuant to a written contract between such **Organization**, and either (A) such natural person independent contractor, or (B) any other entity acting on behalf of such natural person independent contractor, for services.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in, any written instrument required in connection with any credit card issued to an **Organization** or at the request of an **Organization**, to any partner, officer or **Employee** of an **Organization**.

**Data** means information contained in records, manuscripts, accounts, microfilms, tapes or other records, which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** which would cause a reasonable person to believe a covered loss has occurred or an occurrence has arisen that may subsequently result in a covered loss.  This includes loss:

(A)     sustained prior to the inception date of any coverage under this Coverage Part;

(B)     which does not exceed the Retention set forth in Item 2 of the Crime Declarations; or

(C)     the exact amount or details of which are unknown,

provided that **Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** acting alone or in collusion with an **Employee**, or the knowledge possessed by any **Executive** or **Insurance Representative** who is a participant in the **Theft** or **Forgery**.

**Employee** means any:

(A)     natural person in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** governs and directs in the performance of such service, including a part-time, seasonal, leased and temporary employee, intern or volunteer;

(B)     **Executive** while performing acts within the scope of the usual duties of an **Employee**;

(C)     **Contractual Independent Contractor**;

(D)     natural person fiduciary, trustee, administrator or **Employee**, as defined in Subsections (A) and (B) of this definition, of an **ERISA Plan** and any other natural person, who any of which handle **ERISA Plan** assets and are required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006;

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Crime Coverage Part*

(E)    former or retired **Employee**, as defined in Subsections (A) and (B) of this definition, of the **Organization**, retained as a consultant (as evidenced by a written contract for services) to the **Organization**; or

(F)    **Employee**, as defined in Subsections (A) and (B) of this definition, of the **Organization**, while on leave for military services.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy, provided that **ERISA Plan** shall not include any multi-employer plan.

**Executive** means any natural person specified below:

(A)    a duly elected or appointed director, officer, trustee, in-house general counsel or duly constituted committee member of any **Organization** incorporated in the United States of America;

(B)    a duly elected or appointed: (1) manager or member of the Board of Managers or equivalent position; (2) duly constituted committee member; (3) in-house general counsel; or (4) trustee, of any **Organization** formed as a limited liability company in the United States of America; or

(C)    a holder of an equivalent position to those described in Subsections (A) or (B) above in any **Organization** incorporated, formed or organized anywhere in the world.

**Financial Instrument** means checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an **Organization** or by anyone acting as an **Organization's** agent, or that are purported to have been so made or drawn.

**Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions (other than **Forgery**), purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means an **Employee**, as defined in Subsections (A) and (B) of the definition of **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and any **Sponsored Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by the **Organization** within the custody of:

(A)    an **Employee** or a partner of an **Organization**; or

(B)    a person duly authorized by such **Organization** to have custody of **Money**, **Securities** or **Property**,

provided that such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in Subsections (A) or (B) above, from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization** with the Company's prior written consent to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

CHUBB

Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>

*Crime Coverage Part*

**Money Orders and Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(A)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(B)     in the regular course of business, of counterfeit paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, and as amended by the Pension Protection Act of 2006, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this Policy or which is created or acquired after the inception of this Policy, provided that **Non-ERISA Plan** shall not include any multi-employer plan.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money** or **Securities**.

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee** or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property** by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Securities** means any negotiable and non-negotiable instruments representing either **Money** or **Property**, including revenue and other stamps in current use, casino chips, tokens and tickets, provided that **Securities** shall not include **Money**.

**Sponsored Plan** means any **ERISA Plan** and **Non-ERISA Plan**.

**Theft** means the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of:

(A)     an **Insured**, solely for the purposes of Insuring Clause (A), Employee Theft Coverage; or

(B)     a **Client**, solely for the purposes of Insuring Clause (I), Client Coverage.

**Third Party** means a natural person other than:

(A)     an **Employee**; or

(B)     a natural person acting in collusion with an **Employee**.

---

III.     **EXCLUSIONS**

(A)     No coverage will be available for:

(1)     Trading
loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account, provided that this Exclusion (A)(1) shall not apply to direct losses caused by **Theft** or **Forgery** which result in improper financial gain to an **Employee** (direct losses as used herein shall mean only the amount of improper financial gain to such **Employee**, which shall not include **Salary**, commissions, fees or other compensation, including promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM

*Crime Coverage Part*

---

(2)    <u>Trade Secrets/Confidential Information</u>
loss of trade secrets, confidential processing methods or other confidential information of any kind;

(3)    <u>Partner</u>
loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others, provided that if such **Theft** or **Forgery** would otherwise be covered under Insuring Clause (A), Employee Theft Coverage, or (I), Client Coverage, this Exclusion (A)(3) shall not apply to the extent coverage under this Coverage Part is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(4)    <u>War</u>
loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(5)    <u>Nuclear</u>
loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(6)    <u>Potential Income</u>
loss of income not realized as the result of a covered loss;

(7)    <u>Indirect/Consequential</u>
indirect or consequential loss of any kind, provided that this Exclusion (A)(7) shall not apply to:

     (a)    otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause (J), Expense Coverage; or

     (b)    the cost of reproducing information contained in any lost or damaged manuscripts, records, accounts, microfilms, tapes, or other records resulting directly from a covered loss, provided that the Company's maximum liability for the cost of reproducing information contained in any lost or damaged manuscripts, records, accounts, microfilms, tapes, or other records resulting directly from a covered loss sustained shall be $25,000, which amount shall be part of, and not in addition to, the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

(8)    <u>Data Fees, Costs or Expenses</u>
fees, costs or expenses incurred or paid:

     (a)    as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

     (b)    to render the **Data** usable by replacement processing equipment;

     (c)    to design, update or improve software or programs or to perfect their operation or performance; or

     (d)    as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(9)    <u>Fire</u>
loss due to fire, provided that this Exclusion (A)(9) shall not apply to:

     (a)    loss of **Money** or **Securities**; or

     (b)    damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

***ForeFront Portfolio 3.0*SM**

*Crime Coverage Part*

(10) <u>Legal Fees, Costs or Expenses</u>
fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim, provided that this Exclusion (A)(10) shall not apply to the coverage provided under Section V, Legal Expenses Extension;

(11) <u>Voluntary Exchange or Purchase</u>
loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**, provided that this Exclusion (A)(11) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, (G), Money Orders and Counterfeit Currency Fraud Coverage, or (I), Client Coverage, or otherwise covered loss of **Property** under Insuring Clause (E), Computer Fraud Coverage;

(12) <u>Advantage</u>
loss sustained by one **Insured** to the advantage of any other **Insured**;

(13) <u>Custodial</u>
loss of or damage to **Money**, **Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money, Securities** or **Property**, provided that this Exclusion (A)(13) shall not apply to the extent that coverage under this Coverage Part is excess of the amount recovered or received by such **Organization** under:

   (a)   such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

   (b)   any other insurance or indemnity in force which would cover the loss in whole or in part; or

(14) <u>Authorized Representative</u>
loss or damage due to **Theft**, **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders And Counterfeit Currency Fraud**, **Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others, provided that this Exclusion (A)(14) shall not apply to otherwise covered loss under Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

(B)   In addition to the Exclusions in Subsection (A) above, no coverage will be available under:

(1)   Insuring Clauses (A), Employee Theft Coverage, or (I), Client Coverage, for:

   (a)   <u>Broker/Independent Contractor</u>
   loss caused by any broker, factor, commission merchant, consignee, contractor, independent contractor (other than a **Contractual Independent Contractor**), or other agent or representative of the same general character;

   (b)   <u>Prior Dishonesty</u>
   loss caused by an **Employee** which is sustained by an **Insured**:

      (i)   after an **Executive** or **Insurance Representative** becomes aware of a:

         (1)   **Theft**;

         (2)   **Forgery**; or

         (3)   other fraudulent, dishonest or criminal act,

      which is valued at one thousand dollars ($1,000) or more, committed by such **Employee** while employed with or in the service of an **Insured**;

CHUBB Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>

*Crime Coverage Part*

---

      (ii)    after an **Executive** or **Insurance Representative** becomes aware of a **Theft**, **Forgery** or other fraudulent, dishonest or criminal act, involving:

          (1)    **Money**;

          (2)    **Securities**; or

          (3)    other property,

          which is valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

      (iii)    more than ninety (90) days following the termination of such **Employee**;

(2)    Insuring Clause (B), Premises Coverage, or (C), In Transit Coverage, for:

    (a)    <u>Other Insuring Clauses</u>
          loss or damage due to **Forgery**, **Computer Fraud**, **Funds Transfer Fraud**, **Money Orders and Counterfeit Currency Fraud** or **Credit Card Fraud**; or

    (b)    <u>Mail/Carrier for Hire</u>
          loss of or damage to **Money**, **Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company;

(3)    Insuring Clauses (B), Premises Coverage, (C), In Transit Coverage, (E), Computer Fraud Coverage, or (F), Funds Transfer Fraud Coverage, for:

    (a)    <u>Kidnap, Ransom or Extortion</u>
          loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to the **Premises** or other property;

(4)    Insuring Clause (D), Forgery Coverage, for:

    (a)    <u>Forgery or Alteration</u>
          loss due to **Forgery** or alteration of:

      (i)    any **Financial Instrument** committed by any **Third Party** in collusion with any **Employee**; or

      (ii)    any registered or coupon obligations issued or purported to have been issued by the **Insured**, or any coupons whether attached or detached; or

(5)    Insuring Clause (H), Credit Card Fraud Coverage, for:

    (a)    <u>Forgery or Alteration (Credit Card)</u>
          loss caused by any forgery or alteration of, on or in any written instrument, provided that this Exclusion (B)(5) shall not apply if:

      (i)    the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

      (ii)    the **Organization** is legally liable to the issuer of such credit card for such loss.

(C)    <u>Loss Sustained Option</u>
    In addition to the Exclusions in Subsections (A) and (B) above and if the Loss Sustained option is purchased, as set forth in Item 3 of the Crime Declarations, no coverage will be available for:

(1)    loss unless sustained by any **Insured** prior to the termination of this Coverage Part as to such **Insured** and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**ForeFront Portfolio 3.0**<sup>SM</sup>
*Crime Coverage Part*

(2)     loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

(3)     loss unless sustained prior to the termination of this Coverage Part in its entirety, and **Discovered** and written notice thereof is given to the Company:

(a)     within sixty (60) days following such termination, if this Coverage Part is not renewed with the Company;

(b)     prior to such termination, if this Coverage Part is renewed with the Company; or

(c)     within one (1) year following such termination, if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Organization**.

(D)     <u>Loss Discovered Option</u>
In addition to the Exclusions in Subsections (A) and (B) above and if the Loss Discovered option is purchased, as set forth in Item 3 of the Crime Declarations, no coverage will be available for:

(1)     loss sustained by any **Insured**, and **Discovered** prior to the termination of this Coverage Part as to such **Insured**;

(2)     loss unless sustained, and **Discovered** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause;

(3)     loss unless sustained, and **Discovered** prior to the termination of this Coverage Part in its entirety;

(4)     loss unless sustained prior to the termination of this Coverage Part and **Discovered** within one (1) year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Organization**; or

(5)     any loss that an **Insured** is aware of prior to the inception date of this Policy,

provided that in no event will coverage be available under this Coverage Part for such loss if such loss is covered under any renewal or replacement of this Coverage Part or any Insuring Clause or any particular coverage offered under any Insuring Clause.

---

**IV.    ERISA PLAN EXTENSION**

(A)     Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss shall be to the **ERISA Plan** sustaining such loss.  If such payment is in excess of the amount of coverage required by the Employee Retirement Income Security Act of 1974, as amended, for such **ERISA Plan(s)**, such excess shall be held for the use and benefit of any other named **ERISA Plan(s)** should such **ERISA Plan(s)** also discover loss recoverable hereunder.

(B)     With respect to each **ERISA Plan**:

(1)     if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(a)     $1,000; or

(b)     ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year,

up to $500,000; or

(2)   if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of;

(a)   $1,000; or

(b)   ten percent (10%) of the **ERISA Plan's** funds handled as of the beginning of such **ERISA Plan's** fiscal year,

up to $1,000,000,

provided that, in all events, if the applicable Limit of Liability set forth in Item 2(A) of the Crime Declarations:

(i)   is less than or equal to the amounts set forth in Paragraphs (B)(1) or (B)(2) above, then the applicable Limit of Liability shall be amended to the respective amounts set forth in Paragraphs (B)(1) or (B)(2) above; or

(ii)   is greater than the amounts set forth in Paragraphs (B)(1) or (B)(2) above, then the applicable Limit of Liability for each **ERISA Plan** shall be the amounts set forth in Paragraphs (B)(1) or (B)(2) above, with the remaining limit in the amount by which the applicable Limit of Liability set forth in Item 2(A) of the Crime Declarations exceeds the amounts in Paragraphs (B)(1) or (B)(2) above to be allocated equally between all **ERISA Plans** sustaining the loss.

(C)   Solely with respect to loss sustained by an **ERISA Plan**:

(1)   Insuring Clause (A), Employee Theft Coverage, is replaced with the following:

The Company shall pay an **ERISA Plan** for direct loss of **Money**, **Securities** or **Property** sustained by such **ERISA Plan** resulting from a fraudulent or dishonest act, including larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion and willful misapplication, committed by an **Employee** acting alone or in collusion with others.

(2)   The words "sixty (60) days" are deleted from the exclusions applicable to this Coverage Part, wherever they appear, and the words "one (1) year" are substituted in place thereof.

(D)   No Retention shall apply to loss sustained by an **ERISA Plan** covered under this Coverage Part.

---

## V.   LEGAL EXPENSES EXTENSION

In addition to the Limits of Liability set forth in the Crime Declarations, the Company shall pay the **Parent Organization**:

(A)   as a result of loss covered under Insuring Clause (D), Forgery Coverage, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**; and

(B)   as a result of loss covered under Insuring Clause (H), Credit Card Fraud Coverage, reasonable court costs and attorneys' fees incurred and paid with the Company's prior written consent in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

---

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*SM
*Crime Coverage Part*

## VI. PROOF OF LOSS AND LEGAL PROCEEDINGS

(A)   Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or **Discovery** by all **Insureds**.

(B)   It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

   (1)   give written notice to the Company at the earliest practicable moment, and in no event later than 180 days after such **Discovery**;

   (2)   furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than 180 days after such **Discovery**;

   (3)   submit to examination under oath at the Company's request;

   (4)   produce all pertinent records at such reasonable times and places as the Company shall designate; and

   (5)   provide full cooperation with the Company in all matters pertaining to a loss or claim.

(C)   The **Parent Organization** may offer a comparison between an **Organization's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** establishes wholly apart from such comparison that it has sustained a covered loss, caused by an **Employee**.

(D)   No **Insured** shall institute legal proceedings against the Company:

   (1)   after two (2) years immediately following any **Discovery**; or

   (2)   to recover a judgment or settlement against it or its bank resulting from **Forgery**, **Credit Card Fraud** or related legal expenses as set forth in Section V, Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

## VII. LIMITS OF LIABILITY

(A)   The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss set forth in Item 2 of the Crime Declarations, regardless of the number of **Insureds** sustaining the loss, provided that with respect to an **ERISA Plan**, the Limit of Liability shall apply in accordance with the terms of Section IV, ERISA Plan Extension.

(B)   If a direct loss is covered under more than one Insuring Clause, the maximum amount payable under this Coverage Part shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

(C)   All loss resulting from a single act or any number of acts of the same **Employee** or **Third Party**, and all loss whether such act or acts occurred before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability set forth in Item 2 of the Crime Declarations will apply, subject to Section X, Liability for Prior Losses.

## VIII. RETENTION

(A)   The Company's liability under this Coverage Part shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 2 of the Crime Declarations.

(B)   If an **Insured** receives payment under another policy or bond, after applying a deductible or retention, for loss also covered hereunder, then the applicable Retention set forth in Item 2 of the Crime Declarations shall be reduced by the deductible or retention previously applied to such loss.

CHUBB
Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*[SM]
*Crime Coverage Part*

## IX.   OWNERSHIP

(A)   Solely for the purposes of Insuring Clauses (A), Employee Theft Coverage; (B), Premises Coverage; (C), In Transit Coverage; (D), Forgery Coverage; (E), Computer Fraud Coverage; (F), Funds Transfer Fraud Coverage; (G), Money Orders and Counterfeit Currency Fraud Coverage and (H), Credit Card Fraud Coverage, the Company's liability under this Coverage Part shall only apply to **Money**, **Securities** or **Property** owned by an **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable, provided that:

   (1)   the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or

   (2)   with respect to Insuring Clause (A), Employee Theft Coverage, the Company's liability will not apply to **Money**, **Securities** or **Property** of a **Client**.

(B)   Solely for the purposes of Insuring Clause (I), Client Coverage, the Company's liability under this Coverage Part will only apply to **Money**, **Securities** or **Property**:

   (1)   owned by a **Client**, which is held by an **Organization** in any capacity or for which the **Organization** is legally liable; or

   (2)   held or owned by a **Client**, for which the **Client** is legally liable.

## X.   LIABILITY FOR PRIOR LOSSES

(A)   If the Loss Sustained option is purchased as set forth in Item 3 of the Crime Declarations:

   (1)   coverage will be available for loss sustained prior to the inception date of this Policy, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, subject to the following:

      (a)   an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy, which at the time such prior loss was sustained, afforded some or all of the coverage of an Insuring Clause under this Coverage Part applicable to such prior loss;

      (b)   such coverage continued without interruption from the time such loss was sustained until the inception date or effective date(s) specified above;

      (c)   such prior loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such bond or policy; and

      (d)   some or all of the coverage of an Insuring Clause under this Coverage Part would be applicable to such prior loss;

   (2)   if such prior bond or policy carried by an **Insured** or predecessor in interest of such **Insured** was issued by the Company or any subsidiary or affiliate of The Chubb Corporation, such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this Policy, provided that this Paragraph (2) shall not apply to:

      (a)   any loss (i) sustained in its entirety and discovered prior to the inception date of this Policy, and (ii) notified to the Company in writing on or after the inception date of this Policy, provided such notice is in accordance with any applicable reporting, notice or exclusionary provision of the Crime coverage section of such prior bond or policy; or

      (b)   any loss (i) sustained in its entirety prior to the inception date of this Policy, (ii) and discovered and notified to the Company in writing within sixty (60) days following termination of the Crime coverage section of such prior bond or policy, provided such notice is in accordance with any applicable reporting, notice or exclusionary provision of the Crime coverage section of such prior bond or policy; and

CHUBB   Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Crime Coverage Part*

(3)     An **Insured** shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Part under which part of the prior loss was sustained, or the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

(B)     If the Loss Discovered option is purchased as set forth in Item 3 of the Crime Declarations:

(1)     coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this Coverage Part, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

(a)     if an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the Company or any subsidiary or affiliate of The Chubb Corporation and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Coverage Part, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the **Organization** or predecessor in interest of such **Organization**, and the Company's Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Coverage Part; or

(b)     if an **Organization** or some predecessor in interest of such **Organization** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the Company or any subsidiary or affiliate of The Chubb Corporation then such prior bond or policy shall terminate as of the inception of this Policy and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this Policy and then the Company's Limit of Liability for such loss shall be the applicable Limit of Liability set forth in Item 2 of the Crime Declarations.

## XI.    NON-ACCUMULATION OF LIABILITY

(A)     When there is more than one **Insured**, the maximum liability of the Company for loss sustained by one or all **Insureds** shall not exceed the amount for which the Company would be liable if all losses were sustained by any one **Insured**.

(B)     Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the limit of liability of the Company with respect to any loss shall not be cumulative from **Policy Year** to **Policy Year** or from **Policy Period** to **Policy Period**.

## XII.    OTHER INSURANCE

If an **Insured** or any other party in interest in any loss covered by this Coverage Part has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this Coverage Part, then this Coverage Part shall be null and void to the extent of the amount recoverable or received under such other bond, indemnity, or insurance; but this Coverage Part shall cover such loss, subject to its exclusions, conditions and other terms, only to the extent of the amount of such loss in excess of the amount recoverable or received under such other bond, indemnity or insurance.

CHUBB    Chubb Group of Insurance Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*ForeFront Portfolio 3.0*<sup>SM</sup>
*Crime Coverage Part*

---

### XIII.    TERMINATION OF PRIOR BONDS OR POLICIES

Any prior bonds or policies issued by the Company or any subsidiary or affiliate of The Chubb Corporation shall terminate, if not already terminated, as of the inception of this Policy.

---

### XIV.    VALUATION AND FOREIGN CURRENCY

The Company shall pay:

(A)    the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**; or the cost of replacing **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

(B)    the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(C)    the least of:

(1)    the actual cash value of the **Property**; or

(2)    the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

at the time the **Parent Organization** complies with Section VI, Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

(D)    the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

(E)    the United States of America dollar value of any precious metals based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metals is **Discovered**.

---

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

TEXAS AMENDATORY ENDORSEMENT
TO THE CRIME COVERAGE PART

In consideration of the premium charged, it is agreed that Subparagraph (C)(1), Loss Sustained Option, of Section III, Exclusions, of this Coverage Part, is deleted and replaced with the following:

(1)      loss unless sustained by an **Insured** prior to the termination of this Coverage Part as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within one (1) year following such termination;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020                    Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

---

RECOVERIES SECTION ADDED ENDORSEMENT

In consideration of the premium charged, it is agreed that this Coverage Part is amended to include the following section:

### RECOVERIES

(A)  Recoveries for any loss covered under this Coverage Part, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(1)  first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(2)  second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(3)  third, to an **Insured** for the Retention applicable to such loss;

(4)  fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

(B)  Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement: June 30, 2020              Company:  Federal Insurance Company

                                             Endorsement No. 3

                                             To be attached to and
                                             form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

_____

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.      Exclusion (A)(2) of Section III, Exclusions, of this Coverage Part is deleted.

2.      No coverage will be available for:

   (i)     loss involving the disclosure of an **Insured's** or another entity or person's confidential or
           personal information while in the care, custody or control of an **Insured** including, but not
           limited to, patents, trade secrets, processing methods, customer lists, financial information,
           credit card information, health information or any similar type of nonpublic information;
   (ii)    loss involving the use of another entity or person's confidential or personal information while
           in the care, custody or control of an **Insured** including, but not limited to, patents, trade
           secrets, processing methods, customer lists, financial information, credit card information,
           health information or any similar type of nonpublic information; or
   (iii)   fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result,
           directly or indirectly, from the access to or disclosure of another entity or person's confidential
           or personal information, including but not limited to, patents, trade secrets, processing
           methods, customer lists, financial information, credit card information, health information or
           any similar type of nonpublic information,

        provided, however, that the above exclusions 2(i) and 2(ii) shall not apply to loss that is otherwise
        covered under any Insuring Clause other than Insuring Clause (J), Expense Coverage.

3.      The definition of **Property** in Section II, Definitions, of this Coverage Part shall not include any **Insured's** or
        another entity or person's confidential or personal information.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section:  ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8259-6686

Issued to:  GOODMAN NETWORKS, INC. & Subsidiaries

FRAUDULENT INSTRUCTIONS EXCLUSION

In consideration of the premium charged, it is agreed that:

No coverage will be available under Insuring Clauses (B), (C), (D), (E), and (F) for loss resulting from any transfer, payment or delivery of **Money**, **Securities**, or **Property** approved by an **Employee** or arising out of any misrepresentation received by any **Employee**, agent, independent contractor or other representative of the **Insured**, whether such transfer, payment or delivery was made in good faith or as a result of trick, artifice, fraud or false pretenses.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: ForeFront Portfolio 3.0 Crime Coverage Part Federal

Effective date of
this endorsement/rider: June 30, 2020

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8259-6686

Issued to: GOODMAN NETWORKS, INC. & Subsidiaries

---

ERISA AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that solely with respect to loss sustained by any **ERISA Plan** included as a **Sponsored Plan**, this Coverage Part is amended as follows:

(1)    Section IV, ERISA Plan Extension, is deleted.

(2)    Insuring Clause (A) is deleted and replaced with the following:

Insuring Clause (A): Fiduciary Dishonesty Coverage: The Company shall pay the **Insured** for loss of **Money**, **Securities**, or **Property** resulting directly from **Fraud or Dishonesty** committed by an **Employee** acting alone or in collusion with others.

(3)    Section II, Definitions, is amended as follows:

A.    The definition of **Employee(s)** is deleted and replaced with the following:

**Employee(s)** means any natural person while in the service of any **Insured** who is required to be bonded by Title 1 of **ERISA**, including:

(a)    a fiduciary;

(b)    a trustee;

(c)    an administrator;

(d)    an officer;

(e)    any other natural person who handles **ERISA Plan** assets; or

(f)    any natural person described paragraphs (a) through (e) above during a period not exceeding sixty (60) days following the termination of such natural person's service.

Provided, however, **Employee** shall not include any independent contractor or any agent, broker, factor, commission merchant, consignee, or representative of the same general character or employee thereof.

B.    The definition of **ERISA Plan** is deleted and replaced with the following:

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, as defined under **ERISA**, which is operated solely by an **Organization** or jointly by

an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this Coverage Part, provided that **ERISA Plan** shall not include any multi-employer plan.

C.   The following definitions are added:

**ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

**Fraud or Dishonesty** means any intentional act of larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion or willful misapplication, or any other intentional fraudulent or dishonest act. **Fraud or Dishonesty** shall also include any intentional act prohibited by Title 18, Section 1954 of the U.S. Code.

(4)   Section III, Exclusions, is deleted and replaced with the following:

### III.   LIMITATIONS

The Company shall not be liable for loss involving:

(a)   the disclosure of confidential or personal information while in the care, custody or control of an **Insured**, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information, provided that this limitation shall not apply to loss that is otherwise covered under this Coverage Part caused by an **Employee's** acts of **Fraud or Dishonesty** through the use of, disclosure of or access to such confidential or personal information; or

(b)   fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of an **Insured's** or another entity's or person's confidential or personal information, including but not limited to patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, retirement or health savings account information or any similar type of non-public information.

(5)   Section VII, Limits of Liability, is deleted and replaced with the following:

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations regardless of the number of **Insureds** sustaining the loss.

The payment of any loss under this Coverage Part shall not reduce the liability of the Company for other losses whenever sustained; provided, however, that the total liability of the Company for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**, will be treated as a single loss and the applicable Limit of Liability of this Coverage Part will apply.

With respect to each **ERISA Plan**:

(a)   if covered loss is sustained by any **ERISA Plan** which does not have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

(1)   $1,000; or

(2)   ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this Coverage Part,

up to a maximum limit of liability of $500,000; or

(b)    if covered loss is sustained by any **ERISA Plan** which does have any employer securities, the Limit of Liability applicable to such covered loss shall be the greater of:

     (1)    $1,000; or

     (2)    ten percent (10%) of the funds handled by such **ERISA Plan** as of the effective date of this Coverage Part,

up to a maximum limit of liability of $1,000,000,

provided that, in all events (i) if the Limit of Liability as set forth in Item 2 of the Declarations is less than the amounts set forth in paragraphs (a) or (b) above, then the applicable Limit of Liability shall be equal to the minimum limit of insurance as required by **ERISA**; or (ii) if the Limit of Liability as set forth in Item 2 of the Declarations equals or exceeds the amounts set forth in paragraphs (a) or (b) above, then the Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations.

(6)    Subsection VIII, Retention is amended to add the following:

No retention shall apply to loss sustained by an **ERISA Plan** covered under this Coverage Part.

(7)    Section IX, Ownership, is amended to the extent that wherever the term **Organization** appears, it is deleted and replaced with **Organization** or **ERISA Plan**.

(8)    The following subsections are added:

- **PAYOVER**

In compliance with Title 1 of **ERISA**, payment by the Company shall be held to the benefit of any **Insured(s)** sustaining a loss. If such payment is in excess of the amount of coverage required by **ERISA** for such **Insured(s)**, such excess shall be held for the use and benefit of any other named **Insured(s)** should such **Insured(s)** also **Discover** loss recoverable hereunder. If **Money**, **Securities**, and other **Property** of two or more **Insureds** is commingled, recovery hereunder for loss of such **Money**, **Securities**, and other **Property** shall be shared by such **Insureds** on a pro rata basis in accordance with the amount of coverage each such **Insured** is required to carry pursuant to **ERISA**.

- **EXTENDED DISCOVERY PERIOD**

This Coverage Part covers loss sustained prior to the termination or cancellation of this Coverage Part and **Discovered**:

(a)    within twelve (12) calendar months following the termination or cancellation of this Coverage Part in its entirety; or

(b)    within twelve (12) calendar months following the termination or cancellation of this Coverage Part as to any **Insured**,

in accordance with Section X, Termination of Policy of the General Terms and Conditions.

Provided that this Extended Discovery Period terminates immediately upon the effective date of any other insurance obtained which replaces the coverage afforded by this Coverage Part in an amount no less than the minimum amount required under **ERISA** and provides coverage for loss sustained prior its effective date.

- **TERMINATION**

This Coverage Part shall terminate as to any **Employee** and no coverage will be available for loss caused by such **Employee**:

(a)  immediately upon **Discovery** by any **Executive** or **Insurance Representative** (not in collusion with such **Employee**) of any fraudulent or dishonest act on the part of such **Employee** while in the service of any **Insured**;

(b)  after an **Executive** or **Insurance Representative** becomes aware of any fraudulent or dishonest act by such **Employee** involving **Money**, **Securities** or **Property** valued at twenty-five thousand dollars ($25,000) or more, committed prior to such **Employee's** service with any **Insured**; or

(c)  more than sixty (60) days following the termination of service to any **Insured** of such **Employee**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative