**CHUBB**®

# Defense Counsel
# Legal Services Agreement ("LSA")

January 1, 2023



## Contents

I.   Introduction ................................................................................................................ 4

   A.   LSA Fundamentals ................................................................................................ 4

     1.   General Principles .......................................................................................... 4

     2.   Billing Procedures .......................................................................................... 5

     3.   Ethics ............................................................................................................. 5

     4.   Diversity, Equity, and Inclusion .................................................................... 5

     5.   Privilege and Confidentiality ......................................................................... 6

     6.   Data Security .................................................................................................. 6

     7.   Safeguarding Information .............................................................................. 7

     8.   Media Contact ............................................................................................... 7

     9.   Compliance with Laws .................................................................................. 7

     10.   Anti-Bribery ................................................................................................. 7

     11.   Financial Crimes and Sanctions ................................................................. 8

     12.   Anti-Slavery and Human Trafficking ......................................................... 8

     13.   Choice of Law .............................................................................................. 8

     14.   Conflicts of Interest .................................................................................... 8

   B.   LSA Scope ............................................................................................................. 9

II.  Case Management, Strategy, and Reporting ............................................................. 9

   A.   General Principles ................................................................................................ 9

     1.   Communication .............................................................................................. 9

     2.   Assignment Process and Scope ................................................................... 9

     3.   Prior Approval ............................................................................................. 10

     4.   Planning Conferences ................................................................................. 10

   B.   Team Approach .................................................................................................. 10

   C.   Initial Handling Instructions ............................................................................. 10

     1.   **Initial Planning Conference** ................................................................... 10

     2.   Initial Law Firm/Insured Communications ................................................ 11

   D.   London Market (Lloyd's) .................................................................................... 11

   E.   Professional Services ......................................................................................... 11

     1.   Generally ..................................................................................................... 11

     2.   Substantive Positions and Communications ............................................. 11

     3.   Depositions and Witness Statements ........................................................ 12

     4.   Discovery/Interrogatories/Lists of Documents ......................................... 12

     5.   Motion Practice (including Interlocutory Appeals) .................................... 12

     6.   Document Review ........................................................................................ 13

     7.   Mediations/Settlement Conferences ......................................................... 13

     8.   Settlement Authority .................................................................................. 13

     9.   Settlement Offers ........................................................................................ 13

     10.   Court Appearances .................................................................................... 13

     11.   Mock Trials ................................................................................................ 14

   F.   Budgeting: .......................................................................................................... 14

     1.   Generally ..................................................................................................... 14

     2.   Full Case Budget ......................................................................................... 14

     3.   Budget Creation .......................................................................................... 14

     4.   Staff Plan .................................................................................................... 14

   G.   Reporting ........................................................................................................... 14

     1.   General Principles ....................................................................................... 15

     2.   Initial Report ............................................................................................... 15

     3.   Online Case Assessment ............................................................................ 16

     4.   Subsequent Reports ................................................................................... 17

    5.  Other Updates, Communications, and Documentation ........................................... 17

    H.  Continuing Representation Requirements ................................................................. 18

    I.  Provision of Documents and Information ................................................................. 18

III.  Billing Requirements ..................................................................................................... 18

    A.  Basic Billing and Case Management Guidelines .................................................... 18
        1.  Life-of-Case Rates –The rates agreed to by the Law Firm and Chubb at the time the Assignment is made will not change for the duration of the Assignment. ................................. 18
        2.  General Principles ...................................................................................................... 18
        3.  Billing Requirements .................................................................................................. 19

    B.  Hourly Rates and Time Recording ........................................................................... 19
        1.  Minimum Increments ................................................................................................. 19
        2.  Nominal Tasks ............................................................................................................ 19
        3.  Chipping ...................................................................................................................... 19
        4.  Block Billing ................................................................................................................ 19
        5.  Line item Correction .................................................................................................. 20
        6.  Time Records .............................................................................................................. 20
        7.  Hours Per Day ............................................................................................................ 20

    C.  Professional Services .................................................................................................. 20
        1.  Line Item Descriptions .............................................................................................. 20
        2.  Staffing ........................................................................................................................ 21
        3.  Multiple Fee Earners/Oversight and Supervision/Intra-office Conferences ........ 21
        4.  Research ...................................................................................................................... 22
        5.  File Reviews ................................................................................................................ 22
        6.  Document Reviews ..................................................................................................... 22
        7.  Outsourcing ................................................................................................................ 23
        8.  Travel Time ................................................................................................................. 23
        9.  Non-Legal Services .................................................................................................... 23

    D.  Legal Service Providers ............................................................................................. 23
        1.  Generally ..................................................................................................................... 23
        2.  Local Counsel ............................................................................................................. 24
        3.  Consultants/Investigators/Experts/Surveillance/Litigation Services ("Consultants") and Translation Vendors .............................................................. 24
        4.  Electronic Discovery/Court Reporting/Record Retrieval/Document Review Vendors ............... 24

    E.  Disbursements, Expenses, and Other Cost Items .................................................. 24
        1.  Generally ..................................................................................................................... 24
        2.  Travel Expenses ......................................................................................................... 25
        3.  Hotels/Meals .............................................................................................................. 25
        4.  Telephone, Facsimile, and Postage ......................................................................... 25
        5.  Photocopying (Internal and External) ..................................................................... 25
        6.  Courier, Messenger, Expedited Delivery, and Similar Services ("Courier") ........ 25
        7.  Overhead ..................................................................................................................... 25

IV.  Auditing and Indemnity ................................................................................................ 25

V.  File Retention Policy ....................................................................................................... 26

VI.  Terms and Consequences of Severance ....................................................................... 26

Appendix 1 - Prior Approval Matrix .................................................................................. 27

Appendix 2.1 – Non-Reimbursable Timekeeper Task Matrix ........................................... 28

Appendix 2.2 – Non-Reimbursable Administrative Task Matrix ...................................... 29

Appendix 2.3 – Non-Reimbursable Overhead Matrix ..................................................... 30

Appendix 3.1 – Paralegal Task Matrix ............................................................................. 31

Appendix 3.2 – Associate Task Matrix ............................................................................. 32

Appendix 4 - Mandatory External Vendors ..................................................................... 33

Appendix 5 – Law Firm Information Security Best Practices ("ISBP") ............................. 34

Appendix 6 – Insurance Requirements ............................................................................ 40

Appendix 7 – Travel Expense Guidelines ......................................................................... 41

Appendix 8 –Miscellaneous Expenses ............................................................................. 44

Appendix 9 – Compliance with Laws ............................................................................... 46

    General Data Protection Regulation .......................................................................... 46

        Annex A: Information Required By The EU SCCS And UK IDTA .............................. 50

        Jurisdiction Specific Requirements ....................................................................... 52

## Legal Services Agreement

Chubb INA Holdings Inc., all insurance companies in the Chubb group of companies, and Chubb's Affiliates are responsible for managing the insurance claims brought under the policies underwritten by the various member companies of Chubb (collectively, "Chubb"). References to Chubb in this Legal Services Agreement ("LSA") shall be deemed to include any claims unit within the Chubb group of companies. Under some policies, Chubb has the obligation to indemnify and/or defend its Chubb policyholders ("Insured(s)") for appropriate costs they incur in defending claims brought against them. Chubb satisfies these responsibilities by providing an excellent defense for its Insureds by engaging highly skilled outside counsel ("Law Firm(s)") who have a strong commitment to upholding the highest standards of professional and ethical conduct and to achieving superior results through timely, responsive, and cost-effective service.

This LSA applies to the cases and related tasks ("Assignments") given by Chubb to Law Firms located anywhere in the world performing services on behalf of Chubb's Insureds, whether the Law Firm was engaged by Chubb directly, by representatives or affiliates of Chubb (e.g., a Third-Party Claim Administrator), or by an Insured or representative of an Insured, if the matter involves or is related to an insurance policy sold or underwritten by Chubb. Effective and economically sound litigation management is achieved by close teamwork and communication between the individual at Chubb responsible for the claim ("Claim Handler"), the Law Firm, and the Insured throughout the duration of the Assignment. The development and evaluation of each claim at the earliest time possible is a critical aspect of this relationship to avoid unnecessary expense and inconvenience for our Insureds. This LSA requires the application of good business judgment, joint decision-making, and collaboration upon a reasonable course of action, and appropriate documentation to achieve optimal results.

Compliance with this LSA is critical to the working relationship between the Insured, Chubb, and the Law Firm. Effective joint planning of defense strategy, substantive and timely case evaluations, and superior results (whether as settlements or verdicts), will be regularly scrutinized.

Failure to comply with this LSA may result in modification or termination of the Assignment, or partial or full non-payment of legal invoices, at Chubb's sole discretion. The Law Firm should ensure that all attorneys (or local equivalent such as lawyers or solicitors) assigned to work on Assignments have a copy of this LSA and are fully aware of its requirements and restrictions. A current copy of the LSA may be maintained within public folders on the Billing Vendor platform.

This LSA supports a successful relationship between the Insured, Chubb, and the Law Firm. It does not purport to limit the Law Firm's role or to reduce the quality of the representation provided to the Insured. Rather, this LSA facilitates the best outcome for the Insured by providing a framework for the Claim Handler to be actively involved in the decision-making process. There is an intentional degree of flexibility in the application of this LSA to specific situations and the Law Firm is therefore encouraged to discuss any questions with Chubb should a situation arise that is not specifically addressed herein, or which requires a different approach to provide quality representation to the Insured.

## I. Introduction

    A. **LSA Fundamentals**

        1. *General Principles*

            a. The interests of the Insured are paramount and nothing in this LSA should be construed to be an effort to interfere with the Law Firm's zealous representation of our Insured.

            b. This LSA applies to all Assignments in their entirety unless otherwise modified by **Appendix 9 – Compliance with Laws** or if provisions within the LSA are specifically precluded or prohibited by the laws, regulations, manuals, administrative rules, decisions, orders, or similar governing instruments issued by federal, provincial, territorial, or state regulatory, executive, legislative, judicial authorities, or professional regulatory bodies in any jurisdiction. If the Law Firm cannot adhere to any of the requirements of this LSA for any reason, then it must notify Chubb in writing promptly upon receipt of an Assignment. If such notification is not given within a reasonable time and before commencement of any tasks related to an Assignment, Chubb will expect full compliance with this LSA.

*By accepting Assignments to represent Chubb's Insureds pursuant to a Chubb policy, the Law Firm is expressly agreeing to abide by this LSA.*

c.   This LSA applies to defense Assignments made by Chubb to the Law Firm where the Law Firm's client is an Insured under a policy underwritten in whole or in part by any of the subsidiaries of the Chubb group of companies. These Assignments typically involve Chubb requesting that the Law Firm respond to either threatened or actual litigation filed against one of Chubb's Insureds.

d.   Since the Insured's legal needs are best served through a partnership between the Law Firm and Chubb, this LSA requires consistent contact between the Law Firm and Chubb, and occasionally requires the Law Firm to obtain Chubb's Prior Approval (see Section II(A)(3)) for certain activities. This LSA should not be construed as excluding the Insured from the litigation process.  To the contrary, it is the Law Firm's responsibility to keep the Insured informed of significant events and to obtain its input.

e.   Along with providing quality legal services for its Insureds, Chubb expects that the Law Firm will remain mindful of the need to provide such services in a cost-effective and deliberate manner.  As a result, the Law Firm is required under this LSA to provide a detailed plan and Budget for every matter.

f.   Insurance requirements can be found in **Appendix 6 - Insurance**.  If the Law Firm's local laws and regulations provide minimum requirements for insurance coverage below the amounts stated in **Appendix 6**, Chubb still expects the Law Firm to acquire additional coverage. If for any reason a Law Firm is not able to acquire and/or maintain the level of insurance expected by Chubb, it shall promptly inform Chubb, who may then transfer the Assignment to a different Law Firm.

g.   This LSA is open-ended and will extend throughout the duration of any Assignment made while this LSA is in force unless it is otherwise cancelled by duly authorized representatives of Chubb.

2.   *Billing Procedures*

a.   To foster effective, efficient, and transparent case management, Chubb may engage various bill review vendors (hereinafter "Billing Vendor(s)") to monitor and ensure compliance with this LSA.  The choice of Billing Vendor may change at Chubb's sole discretion.  The Law Firm is required to submit all invoices through the appropriate electronic billing system ("Billing System") and agrees to bear any processing fee assessed by the Billing Vendor or Chubb.

b.   Any issues concerning items submitted for reimbursement on which the Law Firm and the Billing Vendor cannot agree will be solely decided by Chubb.

c.   Where the Law Firm provides legal services to more than one member company of Chubb, the Law Firm shall ask the assigned Claim Handlers if they should issue separate invoices or use the Billing System to allocate costs automatically.

3.   *Ethics*

The Law Firm is always expected to maintain the highest ethical standards.  Included by reference in this LSA is the "Chubb Code of Conduct" located here.  By executing this LSA, the Law Firm agrees to abide by the relevant provisions of the Chubb Code of Conduct.

4.   *Diversity, Equity, and Inclusion*

As is fully detailed on Chubb's website, Diversity, Equity, and Inclusion are integral to our culture.  We strive to be a diverse and inclusive meritocracy in which our employees feel comfortable and are motivated to do their best, contribute to their fullest potential in support of our business objectives, and can advance and thrive in their careers.  As leaders, we are actively engaged in supporting an environment of inclusion.

Chubb operates within a dynamic and changing global environment, where marketplaces and customers are culturally diverse and broad.  The challenges we face to keep our business highly attuned and responsive to customer needs, while continually innovating, require the best minds collaborating in a rewarding and supportive environment.

Our commitment to diversity, equity, and inclusion includes partnering with Law Firms who are committed to attracting, developing, and retaining diverse talent.  By supporting efforts to increase diversity, equity, and inclusion among outside counsel, Chubb firmly believes that it will result in more effective engagement with our customers, enabling more creative, innovative, and better decision-making.

Chubb expects that the Law Firms we partner with foster a similar commitment to providing a diverse, equitable, and inclusive environment, thereby ensuring both Chubb and our Insureds have access to the widest possible selection of qualified counsel.

Additionally, and consistent with the above, the Law Firm is expected to consider diverse talent as it engages Local Counsel, mediators, arbitrators, and other **Legal Service Providers** as described in Section III(D).

5. *Privilege and Confidentiality*

Chubb and our Insureds expect the Law Firm to be conscious of the potential risks of disclosing any information that is privileged, non-public, proprietary and/or confidential by having the necessary procedures and safeguards in place to ensure that such disclosures do not occur.  None of the information provided by the Insured, Chubb, or any other party should be used by the Law Firm, directly or indirectly, for any purpose other than in connection with the matter for which it was obtained.  Chubb and the Insured require that the Law Firm take all necessary steps during and after the completion of each Assignment to protect the confidentiality of that information in compliance with the relevant statutory and regulatory provisions relating to privacy and confidentiality.

Nothing about the selection of the Billing Vendor, or the performance of their responsibilities, should be deemed to alter, limit, or in any way affect or impair the attorney-client relationship between the Law Firm and the Insured.  All rights to assert any applicable confidentiality, privilege, or other protection from disclosure or admissibility with respect to all attorney-client communications and work product, on any legal, equitable, or ethical basis under any body of law, are reserved, and any waiver of such rights by virtue of the retention of the Billing Vendor or otherwise is denied.  In the event the Law Firm believes that involvement of a Billing Vendor will waive privileges under the law of the applicable jurisdiction, it should advise Chubb in writing immediately.

Pursuant to Chubb's responsibility to "achieve superior results through timely, responsive, and cost-effective service," Chubb may provide its agents with access to the Law Firm's work-product.  To the extent required by applicable local ethical rules, the Law Firm should request approval for these third parties to access privileged work-product from the Insured in writing.  If the Insured refuses to provide consent, then the Law Firm must notify Chubb in writing immediately, forwarding the Insured's refusal.

6. *Data Security*

The Law Firm agrees that at all times while performing its obligations under and in connection with this LSA, it has implemented and will maintain information technology security and systems meeting the standards generally accepted in the legal community ("System Protections") and has implemented data handling, processing, retention and storage safeguarding practices, policies and procedures (collectively, "Data Handling Protections") to appropriately and adequately protect all of Chubb and its Insureds' information.  The Law Firm agrees that its performance of services hereunder, and its System Protections and Data Handling Protections shall always be compliant with applicable laws, rules, and regulations.

Chubb expects the Law Firm to perform the necessary and appropriate steps to properly protect critical data, including private and confidential information that Law Firms often possess concerning Chubb's Insureds and other parties.  Included in this LSA in **Appendix 5** are **Chubb's Law Firm Information Security Best Practices** ("ISBP").  The Law Firm acknowledges its understanding that these standards are, in Chubb's view, the minimum policies, procedures and technologies that the Law Firm should implement.  Please note that Chubb's Insureds may require the Law Firm to accept Chubb's ISBP, which makes mandatory the Law Firm's full compliance with the ISBP.  The Law Firm also acknowledges its understanding that in failing to implement the ISBP fully and completely it is, in Chubb's view, consequently not providing an appropriate level of data security to protect the Insured.

7. *Safeguarding Information*

Chubb expects the Law Firm and all its personnel, agents, sub-providers and subcontractors ("personnel") to be conscious of the potential risks of disclosing any information that is privileged, non-public, proprietary and/or confidential, including any and all information provided by one or more of the Chubb group of companies or their respective employees, agents, representatives, clients, customers or Insureds, for or in connection with this LSA (collectively, "Client Information") by having the necessary procedures and safeguards in place consistent with the terms of this LSA to ensure that such disclosures do not occur.  Chubb considers the following Client Information to be highly confidential: internal policy directives, manuals, organizational charts, forms, customer and employee information, and other non-public materials, thought processes and work product relevant to the Insured or Chubb's business and the work the Law Firm is performing.  None of the Client Information may be used by the Law Firm, directly or indirectly, for any purpose other than in connection with the Assignment for which it was obtained.

The Law Firm agrees to provide written notice as soon as practicable to the Insured and Chubb in the event of any violation of this Section and/or upon any improper disclosure or use of Client Information.

The Law Firm acknowledges Chubb will expect the Law Firm to fully indemnify Chubb for all losses that it has suffered because of failing to safeguard Client Information or to implement Data Handling Protections.  Where losses are shown to have been incurred by a third party, the Law Firm acknowledges it will be expected to be liable to that third party.

8. *Media Contact*

All media inquiries should be referred immediately to Chubb with no further comment.  If a media inquiry is urgent and the Law Firm's contact at Chubb on the Assignment is unavailable, the Law Firm should contact the Chubb Chief Communications Officer directly at (212) 621-8681.  Under no circumstances should the Law Firm discuss representation of any Chubb group company (including the fact of the representation) with the media either on or off the record, without **Prior Approval** of Chubb.  Under no circumstances should the Law Firm discuss representation of any Insured without receiving written permission from either Chubb or its Insured.

9. *Compliance with Laws*

Chubb expects the Law Firm and its personnel to fully comply with all Laws, regulations, statutes, ethical guidelines, and any other applicable rules and regulations impacting the performance of their duties, including but not limited to the specific requirements set out in **Appendix 9 – Compliance with Laws**, which includes the General Data Protection Regulation 2016/679 **("GDPR")**.  Violations of the Compliance with Laws provision of this LSA may be resolved through the application of Section IV – Auditing and Indemnity below.

"Laws" means all applicable statutory and other rules, laws, regulations, instruments, and provisions in force from time to time in any jurisdiction in or in relation to which the services are performed, including the rules, codes of conduct, codes of practice, guidance, practice requirements, and accreditation terms stipulated by any regulatory authority to which either party is subject to from time to time including Privacy Laws.

"Privacy Laws" means Laws relating to data privacy, information security, identity theft, data breach notification, trans-border data flow and/or data protection.

10. *Anti-Bribery*

Chubb expects the Law Firm to comply with all applicable Laws. The Law Firm must ensure that its personnel will (a) perform all obligations under this LSA in compliance with all Laws; (b) comply with applicable anti-bribery legislation, including but not limited to the U.S. Foreign Corrupt Practices Act ("FCPA"); (c) obtain and maintain all applicable permits and licenses in connection with its obligations under this LSA; and (d) comply with all requirements of any third party that may have provided any relevant proprietary materials to the Law Firm or to Chubb. The Law Firm will ensure that its personnel will obey all rules and regulations in effect at any location (e.g., Chubb or the Insured's premises) at which Law Firm's personnel perform services under this LSA, including without limitation, all security requirements and all reasonable instructions and directions issued and provided by Chubb and the Insured.

No part of the compensation the Law Firm receives will be paid or promised to any Foreign Official (as defined by the FCPA), or to any person or entity acting therefor, for the purpose of obtaining or retaining business or an improper advantage.

11. *Financial Crimes and Sanctions*

The Law Firm will conduct its business in accordance with all relevant anti-money laundering, counter terrorism financing, and international trade and economic or financial sanctions legislation and acknowledges that Chubb is subject to certain laws, regulations, resolutions and trade and economic sanctions of the United Kingdom, European Union, the member states of the European Union, the United Nations, and the United States of America.

The Law Firm will not accept, offer, or facilitate payment, consideration, or any other benefit, which constitutes an illegal or corrupt practice contrary to any applicable anti-bribery legislation and will not undertake any activity in any way that would constitute a criminal act in the jurisdiction in which it is located or doing business, or which would expose Chubb or its Insured(s) to any criminal sanction.

The Law Firm shall promptly report to Chubb all suspicious transactions and/or activities related to money laundering and/or terrorist financing in relation to the Law Firm's provision of legal services.

12. *Anti-Slavery and Human Trafficking*

The Law Firm agrees that in providing services under this LSA to Chubb or its Insured(s) it will not do anything which does or may place the Law Firm, Chubb, or its Insured(s) in breach of any anti-slavery or human trafficking laws or regulations that are or may be applicable to any party. The Law Firm will maintain appropriate arrangements, which may include policies, records, systems, procedures, and controls to demonstrate its compliance with any relevant anti-slavery and human trafficking laws, regulations, and provisions in this LSA. Further, the Law Firm will ensure that its personnel receive adequate training on these arrangements.  The Law Firm must:

a.   Implement appropriate due diligence procedures for its suppliers and subcontractors to ensure that there is no slavery or human trafficking in its supply chains;

b.   Notify Chubb as soon as it becomes aware of any actual or suspected slavery or human trafficking in its operations in connection with Assignments made pursuant to this LSA, wherever they might be delivered and whether or not those services have been provided by the Law Firm or its suppliers or subcontractors.

Chubb may request such information or assurance as is reasonable to confirm the Law Firm's compliance with anti-slavery and human trafficking provisions in this LSA.  Such information must be provided within 10 business days if such is requested.

13. *Choice of Law*

This LSA and any relevant Assignment shall be governed by and construed in accordance with the laws of the country or territory (as applicable based on regional terminology) and state/province (if applicable) in which the Chubb entity that assigned the Law Firm is located, or the location of the Insured named on the Declarations page of the Chubb policy in circumstances where the Law Firm is retained by any Insured.  The Law Firm agrees that the courts of that location shall have non-exclusive jurisdiction over any dispute arising out of or in connection with this LSA and any relevant Assignment.

14. *Conflicts of Interest*

In addition to the Law Firm's ethical responsibilities to avoid conflicts of interest, Chubb applies a group-wide approach to conflict analysis.  For the purposes of this LSA, the Law Firm's client is the Insured(s) involved in the Assignment.  However, the critical relationship between the Insured, Chubb, and the Law Firm requires that the Law Firm consider in its conflict analysis the interests of the Insured(s) and all Chubb group companies when analyzing whether a particular representation presents a conflict of interest.  Chubb does not generally consider conflicts to result solely from representation of its business competitors, but specific circumstances can cause conflicts to arise in such situations.

In all cases, it is the responsibility of the Law Firm to identify and bring to the attention of the Insured and Chubb any circumstances that may create a conflict of interest, and if necessary, request in writing, a waiver of a real or potential conflict of interest.  Prospective waivers of conflicts that might arise with the Law Firm in the future as a general matter (e.g., based on the

Law Firm's activities in future or unrelated cases), as opposed to waivers based on specific facts and circumstances currently known (e.g., a waiver of an actual or potential conflict in a particular Assignment), are strongly discouraged and will not be granted except by agreement of the General Counsel and the Chief Claims Officer of Chubb, who will consider such requests only under truly extraordinary circumstances.

**For the avoidance of doubt, all prior agreements between the Law Firm and any Chubb group company that purport to grant waivers for future conflicts are hereby terminated unless otherwise agreed by Chubb in writing. By virtue of this Conflicts of Interest Policy, Chubb hereby requires any Law Firm to request a waiver of any actual or potential conflict of interest resulting from any Assignment made by Chubb on behalf of any Chubb group Insured.**

B. **LSA Scope**

1. Unless otherwise agreed in writing, this LSA applies with full effect for any legal services performed for the duration of any Assignment. The LSA extends to all legal services performed by any party (e.g., the Law Firm, a party outsourced or sub-contracted by the Law Firm including Local Counsel, experts, consultants, adjusters, actuaries, inspectors, accountants/auditors, or any other specialist or **Legal Service Provider**).

2. The services in this LSA extend inter alia to all phases of litigation and activities, and therefore this LSA is to be read in conjunction with various task-based billing code sets which describe such activities and functions performed and work done within such stages and expenses related thereto. Chubb requires that each invoice be submitted using the "Uniform Task Based Management System" ("UTBMS") DRI Litigation Code set, which is available through the Billing Vendor, as well as at http://www.utbms.com/.

3. Chubb reserves the right to amend this LSA at any time. For new and existing Assignments, any change made by Chubb is deemed incorporated into this LSA. For existing Assignments, Law Firms may choose to discontinue performing services on the Assignments and to send all related documents and files to the Law Firm appointed by Chubb to take over the Assignment.

# II. Case Management, Strategy, and Reporting

A. **General Principles**

1. *Communication*

   The intent of this LSA is to ensure that Chubb, the Insured, and the Law Firm maintain regular communication during the life of the Assignment to best serve the interests of the Insured. It is critical that the Law Firm keep Chubb and the Insured fully informed, particularly about settlement overtures and legal developments, and that Chubb be involved in pre-approving any activities contemplated by the Law Firm on behalf of the Insured.

   If the Law Firm needs information from Chubb and/or Insured to respond to any legal or litigation-related issue or requirement, the Law Firm is expected to inform Chubb and/or Insured immediately. The Law Firm must inform the Claim Handler and/or Insured in writing at least 30 days before Chubb and/or the Insured is expected to provide information necessary for the Law Firm to satisfy any related obligation.

2. *Assignment Process and Scope*

   a. Chubb or the Insured will inform the Law Firm of its intent to assign them to a matter and will provide sufficient information for the Law Firm to conduct a conflict check.

   b. Following receipt notice of the potential Assignment, the Law Firm must conduct a conflict check and confirm its ability to accept the Assignment within three business days. Fees associated with conducting a conflict check are not billable.

   c. With every new Assignment, Chubb will typically provide the Law Firm with a retention letter, email, or link to an "Assignment System" specifying the scope of the tasks to be performed by the Law Firm, along with copies of all relevant documentation. The Law Firm must not perform tasks outside that scope without obtaining **Prior Approval**.

   d. Fees and costs incurred in connection with the Law Firm providing services regarding any subject beyond those necessary to defend its Insureds (e.g., advice to the Insured about the

extent of coverage available under Chubb's policy, reviewing Chubb's insurance policy for coverage or tendering notice), will not be reimbursed.

3. *Prior Approval*

Reference is made in this LSA to the requirement that the Law Firm receive **Prior Approval** before performing various activities detailed in **Appendix 1 – Prior Approval Matrix**.

   a. Unless prohibited by local law and/or inconsistent with the Law Firm's obligations to the Insured, **Prior Approval** must be secured in relation to each individual task listed in **Appendix 1. Prior Approval** requirements are not intended to be limitations on the quality of the Insured's defense. If Chubb declines a **Prior Approval** request and the Law Firm believes it will compromise the defense, it must advise Chubb immediately in writing.

   b. Tasks requiring **Prior Approval** must be noted in the relevant invoice line item, with the date of approval and name of the grantor.

   c. **Prior Approval** must be confirmed in writing from the Claim Handler. Merely requesting **Prior Approval** without receiving an affirmative written response is not considered **Prior Approval**.

   d. Where **Prior Approval** is required but not obtained, it is within Chubb's sole discretion whether to reimburse the Law Firm. In extraordinary circumstances where a Law Firm does not receive Prior Approval but needed to act immediately to protect the Insured's interests, Chubb, at its sole discretion, may make an exception.

   e. **Prior Approval** cannot be obtained to allow for otherwise prohibited activities unless specified in **Appendix 1**.

   f. Time spent requesting **Prior Approval** is not reimbursable.

4. *Planning Conferences*

   a. Effective legal services on behalf of the Insured require consistent communication between the Law Firm and Chubb to discuss all critical issues and to collaborate on the best strategy for resolution of the Assignment. This LSA therefore requires the Law Firm to operate under a pre-approved course of action which has been agreed to by Chubb. As a result, following a **Planning Conference**, the Law Firm must request **Prior Approval** as necessary, memorialize a binding Budget as noted in Section II(F), and confirm in writing agreed-to next steps with the Claim Handler. The Law Firm must timely advise the Insured of the results of the **Planning Conference**.

   b. Where **Planning Conferences** are required but do not occur, it is at Chubb's sole discretion whether to reimburse the Law Firm for the charges resulting from activities that were not approved in the required **Planning Conference**.

B. **Team Approach**

Chubb may engage any attorney at the Law Firm to become "**Primary Attorney**" for an Assignment. If Chubb does not make a selection, the Law Firm will appoint, subject to Chubb's agreement, a **Primary Attorney** who will be primarily responsible for overseeing the Assignment, including managing the Law Firm's team, ensuring the accuracy of the Law Firm's invoices (including those submitted by **Legal Service Providers**), ensuring the Law Firm's compliance with this LSA, and obtaining the best possible outcome for Chubb's Insured.

The Law Firm's goal should be to staff efficiently without compromising superior representation to the Insured. Chubb believes that generally, one senior level attorney (e.g., Partner or Senior Associate) and one Associate level attorney is sufficient to effectively staff an Assignment. Therefore, additional attorneys may not be added without the **Prior Approval** of the Claim Handler and must be reflected in any **Staff Plan**.

C. **Initial Handling Instructions**

1. ***Initial Planning Conference***

   a. Timing

   Within ten days of receipt of an Assignment (unless a shorter timeframe is mandated by Chubb), it is the Law Firm's responsibility to ensure that an **Initial Planning Conference** occurs to discuss its preliminary views on the Assignment and its recommendation for the

initial strategy to defend the claim. The Law Firm should also discuss any items that may require **Prior Approval** and confirm such approval in writing.

If for any reason the does not occur within ten days of receipt of an Assignment, the Law Firm must email the Claim Handler within the next four days with its initial strategy recommendation.

    b.  Content

The **Initial Planning Conference** should discuss:

    i.)   the results of any immediate tasks contained in the Assignment,

    ii.)  the scope of the representation,

    iii.) the timing of the Law Firm's additional tasks and next activities,

    iv.) preparation of the **Initial Report**,

    v.)  if there is the potential for early resolution of the matter,

    vi.) whether Chubb is going to be expected to provide any information to the Law Firm,

    vii.) whether the Law Firm is expected to contact plaintiff counsel to introduce themselves, gain an understanding of plaintiff's versions of the facts, and potentially explore what the plaintiff may need to resolve the matter, and

    viii.) the Law Firm's recommended **Staff Plan**.

  2.  *Initial Law Firm/Insured Communications*

In fostering the goals of transparency and communication, the Law Firm is expected to contact the Insured after receiving the Assignment to establish a working relationship and gain an understanding of the Insured's view of the claim.

## D.  **London Market (Lloyd's)**

With respect to matters identified by Chubb as falling within the London Market "claims scheme," unless the Law Firm is specifically informed otherwise, Reports should be furnished to Chubb and all underwriters in accordance with the London Market claims scheme.

Under no circumstances shall the Law Firm communicate directly with the broker, Coverholder, or managing agent without **Prior Approval**.

## E.  **Professional Services**

  1.  *Generally*

This LSA provides Chubb's expectations about the Law Firm's performance of Professional Services regardless of each jurisdiction's terminology (e.g., "Depositions" or "Interrogatories" would be considered "Examinations for Discovery" and "Written Questions for Discovery" in Canada.)  If there are any jurisdictions where the procedures differ by nature as well as terminology, Chubb's expectations regarding a Law Firm's performance of those Professional Services are set out in **Appendix 9 – Compliance with Laws**.

It is expected that to collaborate on an effective defense for the Insured, **Planning Conferences** should occur as necessary (e.g., to obtain **Prior Approval**, discuss key events, or evaluate and determine necessary litigation strategy, etc.) and if important activities or events happen during the pendency of the Assignment.

  2.  *Substantive Positions and Communications*

**Prior Approval** is required before the Law Firm takes any substantive positions that are dispositive of the matter, including but not limited to settlement, interlocutory processes, approval of mediation or other ADR process, institution of litigation, and assertion of causes of action unless extraordinary circumstances require the Law Firm to act immediately to protect the Insured's interests.

In no event will time spent either drafting or reviewing non-substantive communications (e.g., form letters, cover letters) be billable.

3. *Depositions and Witness Statements*

   a. Deposition(s) - The Law Firm must initiate a **Planning Conference** at least seven days in advance of any Deposition(s) and must secure **Prior Approval** for who will conduct each Deposition and discuss whether a copy of the Deposition report or transcript copy is required and agree on the timing of the next **Planning Conference**.

   b. Witness Statement(s) - Outside the U.S. and Canada, witnesses should be interviewed, and a Witness Statement drafted (and where necessary summarized) by an Associate or Senior Associate (unless **Prior Approval** for a Partner to conduct the interview and draft the Witness Statement is obtained).

   c. Time for participating in a Deposition or Witness Statement must be billed separately from any time that may be incidental to that Deposition session (e.g., preparing a witness, meeting with opposing counsel, etc.).

   d. Time spent during Deposition or Witness Statements breaks more than 0.2 hours on personal activities is not billable. For Depositions or Witness Statement longer than five hours, any line item descriptions must simply confirm that the time billed does not include personal activities (e.g., non-working meal).

   e. Any comprehensive Report summarizing a Deposition or Witness Statement requiring more than two hours of drafting time requires **Prior Approval** from the Claim Handler.

   f. Digesting/summarizing Deposition transcripts is only billable by Paralegals. Page/Line Designations of Depositions should only be completed by Associates in preparation for trial or if given **Prior Approval** by the Claim Handler.  Otherwise, the time spent in completing Page/Line Designations of a Deposition is only billable by Paralegals.

   g. Any Deposition, Witness Statement, or other sworn statement scheduled by the Law Firm must use a **Mandatory External Vendor** if such is listed in **Appendix 4**.  Line items for deposition expenses inconsistent with **Appendix 4** must identify the individual that scheduled the deposition and the **Prior Approval** for obtaining the resulting transcript.  To the extent required by Chubb's Billing System, the Law Firm will be expected to include a unique deposition identifier for any time billed for attending a deposition.

4. *Discovery/Interrogatories/Lists of Documents*

   a. The Law Firm must discuss in a **Planning Conference** any anticipated Discovery or Interrogatories or Lists of Documents ("Discovery") it intends to serve.  If any critical issues appear in responses the Law Firm receives to Discovery, the Law Firm should initiate a **Planning Conference** within 10 days.  If that **Planning Conference** cannot occur, the Law Firm should send a summary of the issue(s) to Chubb by email within 14 days.

   b. While any Law Firm personnel can identify the documents that should be requested in Discovery, Paralegals should draft routine, standard or "form" discovery requests (including routine Lists of Documents which are to be included in Pleadings), Interrogatories, and Requests to Produce.  If there is no qualified Paralegal available to prepare such documents, then **Prior Approval** is required for an attorney to prepare them.

   c. Either non-standard Discovery/Interrogatory requests or Lists of Documents which are to be included in Pleadings, should be drafted by either Associates or Senior Associates with Partner review as necessary.

   d. It is expected that responses to Discovery, Interrogatories or List of Documents should be prepared by Associates or Senior Associates with Partner review as necessary.

   e. Copies of any Interrogatories should be furnished to Chubb within 30 days of receipt by the Law Firm.

5. *Motion Practice (including Interlocutory Appeals)*

   a. The Law Firm must obtain **Prior Approval** in writing from the Claim Handler before issuing, initiating, or defending any motion or interlocutory process that is not mandatory (e.g., filing a summary judgment motion, responding to an interlocutory appeal, or dismissing an affirmative counterclaim, etc.).  When requesting such approval, the Law Firm must address: the purpose of the motion or interlocutory process, the chances of success, how the process will advance or otherwise benefit the case, and the projected Budget for the fee earner(s) or sub-contractors involved.

    b. If the expected chances of success of any recommended motion (including any summary judgment motion) are less than 50%, then the request must include the reasoning for the proposed motion.

6. *Document Review*

    a. Any document review time greater than five hours in one day requires **Prior Approval**, regardless of the number of different documents included in the block of review time and should be documented in the relevant line item consistent with Section III(C)(6) – Document Review.

    b. If a document review project is expected to exceed 10,000 documents or $50,000 (or local currency equivalent) in fees, the Law Firm must request **Prior Approval** to have Law Firm personnel, rather than a Document Review Vendor, conduct the review. That request must contain estimates of the costs to use Law Firm personnel and a Document Review Vendor, as well as an explanation of why the costs of using Law Firm personnel are justified.

    c. If the Law Firm uses internal tools or resources to perform Document Review that otherwise should have been completed by a Document Review Vendor, then the resulting fees will not be reimbursed.

7. *Mediations/Settlement Conferences*

    a. The Law Firm may not schedule a voluntary mediation without the **Prior Approval** of the Claim Handler. If a court orders a mandatory mediation, the Law Firm must provide written notification to the Claim Handler within 72 hours of such order. Regardless, the Insured should also be timely notified of all mediations/settlement conferences.

    b. A **Pre-Mediation Report**, including an exposure analysis and settlement recommendation if requested, must be submitted to Chubb, 30 days in advance of the scheduled mediation. At Chubb's option, a **Pre-Mediation Report** may be requested on a different schedule.

    c. The Law Firm must have a **Planning Conference** with Chubb 14 days before any scheduled mediation or settlement conference (or no less than 30 days before if attendance of a corporate representative is required). During that **Planning Conference**, the Law Firm must provide an exposure analysis including an evaluation of the projected legal issues, etc.

8. *Settlement Authority*

Wherever possible, requests for additional settlement authority beyond that already extended (if any), must be confirmed in writing after a **Planning Conference** is held within:

    a. 90 days before the settlement amounts need to be available if greater than or equal to $100,000 (or local currency equivalent).

    b. 30 days before the settlement amounts need to be available if less than $100,000 (or local currency equivalent)

    c. If either timeframe in 8(a) or 8(b) above is not met, then the Law Firm must explain why in writing when scheduling the **Planning Conference**.

    d. If requested, the Law Firm must submit an Online Case Assessment, as described in II(G)(3), contemporaneous with requests for authority.

9. *Settlement Offers*

    a. The Law Firm must inform the Claim Handler within 24 hours of receiving a settlement demand, offer, and/or indication of a willingness to settle or negotiate from any other party. A **Planning Conference** must be scheduled within 72 hours to discuss the settlement opportunity. During the **Planning Conference**, the Law Firm will provide a specific recommended response to the settlement overture.

    b. Under no circumstances should the Law Firm make a settlement offer without first obtaining the Claim Handler's **Prior Approval** and without seeking the Insured's input.

10. *Court Appearances*

    a. Substantive Court Appearance - The **Primary Attorney** is expected to attend substantive court appearances. Attendance by any other Law Firm timekeepers must be discussed during a **Planning Conference**.

b. Procedural Court Appearance – An Associate or Senior Associate is expected to attend procedural court appearances. Attendance by a Partner requires **Prior Approval**.

11. *Mock Trials*

The Law Firm must secure **Prior Approval** from the Claim Handler before undertaking any mock trial. The request for **Prior Approval** should include why a mock trial is necessary and how many Law Firm participants are needed.

F. **Budgeting:**

1. *Generally*

Chubb believes that a critical aspect of providing an Insured with an effective defense is effective communication between all parties (Law Firm, Insured, and Chubb) about the costs and benefits of available legal strategies. Chubb expects the Law Firm to be mindful of the adverse impact of unexpected costs. While it can be difficult to predict the cost and duration of an Assignment, Chubb's litigation policy nevertheless requires a good faith attempt at making a reasonable estimate of the projected final legal fees at every phase of the Assignment.

Any fees or expenses exceeding the most recently approved **Full Case Budget ("Budget")** and **Staff Plan** may not be reimbursed at Chubb's sole discretion.

2. **Full Case Budget**

Chubb requires that Law Firms obtain approval for a **Budget** in Chubb's designated Billing System for every Assignment, regardless of whether the Claim Handler requires submission of a written Budget along with a Report as described below.

The **Budget** should reflect the Law Firm's projection for what will be billed by the Law Firm by the end of the Assignment. If, for example, the Law Firm believes at the time the Budget is submitted that it will likely take the case to trial, then that Budget should include the trial phase. However, if the Law Firm believes that the likely outcome of the case will be settlement after discovery with only minimal motion practice, then the submitted Budget should reflect such.

While the **Full Case Budget** is not binding, Chubb expects it to reflect the Law Firm's best professional estimate for the ultimate costs of the Assignment, including any projected staffing needs. It must also include any expected expenses >$1000 (or local currency equivalent), including but not limited to experts, investigators, adjusters, auditors, consultants, counsel, and other third-party vendors anticipated to be necessary to conclude the matter, as well as operational expenses like outside photocopying or delivery charges.

3. *Budget Creation*

Prior to the creation of any **Budget**, the Law Firm is expected to conduct a **Planning Conference** with the Claim Handler to discuss its current view on liability and damages and agree to a litigation plan and resolution strategy.

An accurate **Full Case Budget** is crucial, and it is the obligation of the **Primary Attorney** to ensure the appropriateness of any submitted **Full Case Budget**. To ensure that deliberate focus is given to the creation of any **Budget** submitted by the Law Firm, Chubb will allow the **Primary Attorney** to bill up to 0.4 hours to draft such **Budget**. Any charges for **Budget** creation submitted to Chubb for more than 0.4 hours may not be reimbursed at Chubb's sole discretion unless **Prior Approval** is obtained.

4. **Staff Plan**

Chubb may, at its discretion, require that the Law Firm detail when submitting a Budget, the timekeeper(s) expected to work on an Assignment. A typical **Staff Plan** will identify with specificity, the Partners who are expected to work on the Assignment, along with their projected number of hours. It will also include the number of Associates and Paralegals expected to work along with their total projected number of hours. Chubb, at its discretion, may choose not to pay for time billed for attorneys not contained on an approved **Staff Plan**.

G. **Reporting**

This LSA is event-based, typically requiring that the Law Firm obtain **Prior Approval** to prepare a Report after certain events occur, or after the expiration of the previous submitted Report, whichever comes first. After submission of the **Initial Report**, the form and frequency of reporting should be agreed to between the **Primary Attorney** and the Claim Handler. It is at Chubb's sole discretion to

notify the Law Firm if it has modified the standard reporting requirements below.  If compliance is not possible, the Law Firm must provide the specific reasons and seek further instructions from Chubb.  If it is prudent to provide specific information to Chubb earlier than is proposed within this LSA, then the Law Firm should do so.

1. *General Principles*

   a. The **Initial Report** and **Subsequent Report** sections below do not override or modify any provision in this LSA requiring the Law Firm to contact the Claim Handler when certain defined events occur in the life cycle of the Assignment.

   b. **Prior Approval** in a **Planning Conference** must be obtained from the Claim Handler prior to the issuance of any **Subsequent Report** unless the Assignment is on behalf of the London Market, in which case no **Prior Approval** is necessary.

   c. The **Primary Attorney** at the Law Firm is responsible for ensuring that all Reports submitted to Chubb are accurate and timely.  The **Primary Attorney**, and not any other attorney involved in the drafting of the Report, should provide settlement recommendations (upon request) and any other specific recommendations for the effective handling of each matter.

   d. All Reports must be issued directly to Chubb, the Insured or their agents where specified, with no copies provided to any other third parties.

   e. All Reports should specify that the information contained therein is privileged and confidential, constitutes an attorney-client communication and/or attorney work product and is subject to a rule or doctrine of privilege, confidentiality, or non-disclosure.  It is essential that full confidentiality is maintained when attorneys are reporting directly to the Claim Handler and the Insured.

   f. If a **Subsequent Report** not issued for a London Market Assignment is issued without **Prior Approval**, then it is at the discretion of Chubb to choose not to reimburse some, or all, of the resulting charges.

   g. Billed time for any Report drafting activities can only represent charges for new activity related to that Report.  No drafting or review time is allowable for Report content culled from previous Reports.

   h. In all cases, the Claim Handler must be notified in writing within three days of a trial date being set or changed.

2. *Initial Report*

   a. Timing - Unless a different timeframe is requested by the Claim Handler, the **Initial Report** for a claim handled is as follows:

      - In the US and Canada – 60 days after Assignment
      - Outside the US and Canada (litigated matters) – 60 days after Assignment
      - Outside the US and Canada (non-litigated matters) – 30 days after Assignment

   b. Content

      i.) Claim Summary

         (1) All Reports and written correspondence (including cover letters transmitting legal invoices) from the Law Firm to Chubb should conspicuously refer to:

         (2) the Insured or adverse party,

         (3) the claim or matter name (e.g., underlying plaintiff, event, loss name, location, or transaction),

         (4) Chubb's claim number (if applicable), and

         (5) the date of loss.

         (6) A list of all pertinent upcoming case management dates, highlighting any occurring within the next 30 days.

         (7) The Summary section of any **Subsequent Report** should detail what has changed in the case since the issuance of the prior Report.

         (8) All Reports should contain a 2-3 paragraph executive summary of the facts, key issues, and immediate litigation calendar items (within 30 days of the issuance of the Report).

ii.) Assessment: The Law Firm must provide an outline of the principal issues involved in the matter, including an analysis of:

(1) plaintiff, claimant, or Insured representation,

(2) case value, settlement opportunities and/or potential for dispositive or interlocutory motions (e.g., motions to dismiss or for summary judgment) if applicable,

(3) recommendations for procedural or substantive actions and/or a request for further instructions, including a discussion of the costs and benefits of the recommended actions,

(4) if specifically requested, a reserve recommendation for both defense (fees) through case conclusion and indemnity (if appropriate),

(5) applicable law, conventions, and/or treaties,

(6) jurisdiction or forum issues,

(7) the merits and likelihood of resolution through ADR, and

(8) whether there is exposure excess of the policy limits.

iii.) Staffing and Strategy: The Law Firm must provide their assessment of the current staffing requirements, detailing if and why the Law Firm recommends an exception to the principle that two attorneys generally are sufficient.

iv.) Recommended **Phase Activities**: Any Report responsive to a request by the Claim Handler during a **Planning Conference** should include a discussion of upcoming agreed **Phase Activities** such as:

(1) necessary research,

(2) likely or anticipated discovery or disclosure activity (including depositions, if applicable),

(3) expert evidence, input, or support requirements, and

(4) a proposal for any correspondence, pleadings, or other documents that the Law Firm believes should be drafted or filed.

Any recommendation in a Report for **Phase Activities** should always be accompanied by a projection of the expected costs.  If at any time prior to the completion of the **Phase Activities** the Law Firm determines that it will not be able to complete the tasks within those projected costs, the Law Firm must submit a revised projection to the Claim Handler and receive written **Prior Approval** before incurring any additional expenses.

v.) **Budget:** The Law Firm must identify the expected costs through to conclusion of the matter with a specific allocation for the current calendar year for all activities within the scope of the Law Firm's instruction.  This **Budget** should always be consistent with the Budget submitted into Chubb's Billing System and the requirements of the **Full Case Budget** discussed above.

vi.) Evaluation and Recommendation: Each Report must contain an evaluation of the exposure to the Insured and the strategic alternatives available to address the issues involved.  Each evaluation should include:

(1) a settlement recommendation assessing a specific monetary value, rather than a presentation of a settlement range,

(2) a valuation range discussion and how it was calculated by the Law Firm,

(3) a strategy recommendation including a cost-benefit analysis and a comprehensive litigation risk analysis, and

(4) details of attempts to resolve by ADR, litigation, or settlement negotiation.

3. *Online Case Assessment*

a. Chubb may, at its discretion, require that the Law Firm complete and regularly update an Online Case Assessment that will be separate from any reporting obligation.

b. Since Chubb views the data contained in this Online Case Assessment as critically essential to manage the exposure of Insureds, it will reimburse up to two hours of attorney time to compile the information necessary to complete the questionnaire and one hour of Paralegal time to input the appropriate data as necessary. Billing for this task should specifically refer

to "Online Case Assessment" to ensure that the time billed for providing this information is separate from other case evaluation activities that the Law Firm may be performing.  Time reviewing file materials to complete this Assessment should be billed separately.

4.  ***Subsequent Reports***

    a.  Timing

        i.  For London Market Assignments only, **Subsequent Reports** should be issued no less frequently than every 180 days, unless the Law Firm's reasonable judgment suggests a shorter timeframe is necessary.

        ii.  Otherwise, for the rest of Chubb claims, a **Subsequent Report** should be issued only after the Law Firm requests and obtains **Prior Approval** from the Claim Handler.

    b.  Each **Subsequent Report** should expand upon the details in the previous Reports, including:

        i.  a Summary section, which should detail major events occurring since the issuance of the prior Report,

        ii.  an updated analysis of the facts of the loss and details of all parties involved,

        iii.  a complete evaluation of the merits of the facts and legal issues identified by the Law Firm in its investigation to date,

        iv.  an updated case-handling strategy to include:

            (1)  any staffing revision which should also be reflected in an updated **Staff Plan** submitted to Chubb's Billing System,

            (2)  variations on predicted matter activity re: discovery or disclosure, depositions, any investigative efforts, and motion practice, and

            (3)  updated Budget projection to include cumulative costs billed to date and comparison of actual to the **Full Case Budget**.

        v.  an updated evaluation of the case, including comparing the costs and benefits of continuing the dispute to the potential for resolving the matter.  The evaluation is expected to be more refined and specific than previous evaluations, if possible, and

        vi.  any Revisions, if appropriate, to the previously requested **Full Case Budget**.

5.  *Other Updates, Communications, and Documentation*

    a.  Depositions: See Section II(E)(3), above.

    b.  Correspondence:  The Law Firm will provide Chubb with copies of any substantive correspondence received from any party within two working days.

    c.  Brief email status updates that are not formal **Subsequent Reports** are permitted, where necessary.  When billing for such updates, the Law Firm should refer to them as "brief status updates," rather than "Status Reports."

    d.  **Pre-Mediation Reports** should be issued no less than 30 days before the mediation, unless a different timeframe is requested by the Claim Handler.

    e.  Pleadings and other documentation:  It is often unnecessary for Chubb to receive copies of every pleading and piece of correspondence involved in an Assignment.  The Claim Handler and Law Firm should discuss in the initial **Planning Conference** what documents should be provided by the Law Firm.  The following items should be sent to the Claim Handler in a timely manner:

        i.  any complaint or similar document filed against Chubb or Insured,

        ii.  the answer and any third-party complaints,

        iii.  copies of substantive pleadings,

        iv.  responses to Interrogatories,

        v.  any settlement overtures (whether written or oral),

        vi.  releases, dismissals, or final judgments, and all orders of the court, and

        vii.  any discovery responses that will require certification by Chubb or the Insured with sufficient time to allow for the review of same.

H. **Continuing Representation Requirements**

Once the **Phase Activities** from the preceding **Planning Conference** have been completed, the Law Firm and the Claim Handler should hold a **Planning Conference** as soon as possible to discuss the status of the matter, next **Phase Activities**, and whether a **Subsequent Report** should be issued.

I. **Provision of Documents and Information**

Nothing in this LSA is intended to cause the Law Firm to violate any attorney-client privileges. If the Law Firm identifies restrictions to providing files and documents to Chubb based on attorney-client privilege, or for any other reason, the Law Firm shall immediately contact the Claim Handler to discuss how to proceed. The Claim Handler may instruct the Law Firm to seek the Insured's written approval to allow the relevant information to be shared with Chubb. Files and documents that do not contain privileged information must be shared promptly.

## III. Billing Requirements

A. **Basic Billing and Case Management Guidelines**

1. *Life-of-Case Rates — The rates agreed to by the Law Firm and Chubb at the time the Assignment is made will not change for the duration of the Assignment.*

   a. Unless a rate increase request has been approved by an authorized representative of Chubb, billing rates will not be increased on any Assignment or litigation in progress even if 1) this LSA has expired by action of either the Law Firm or Chubb, or 2) the rate agreement between the Law Firm and Chubb has been changed.

   b. Any request for a rate change on a particular Assignment must be made by the Law Firm in writing, with an explanation of why the Law Firm believes the rate change is necessary and appropriate.

   c. Attorneys that are promoted during the duration of this LSA (e.g., from Associate to Partner) will be entitled to request that their rate be increased to reflect such change although Chubb, at its discretion, has the right to deny such request. Should the rate increase approval be granted, it will be effective immediately provided that the Law Firm properly and timely submit the revised rate request and an amended **Budget** and **Staff Plan** (if necessary) through the designated Billing Vendor. However, in no event, will a rate increase be approved retroactively.

2. *General Principles*

   a. Chubb generally expects fees to be billed hourly, and this LSA addresses the specifics of that billing process. Alternatives to that billing format must be agreed to between the Law Firm and only authorized representatives of Chubb.

   b. Chubb expects every invoice to be submitted with accurate billing entries, including appropriate descriptions as detailed below, and accompanied by accurate UTBMS coding for each line item. Inaccurate, duplicate, or non-compliant billing practices may not be reimbursed by Chubb at its discretion.

   c. Timely Billing - Other than for subrogation Assignments outside of the US and Canada, any charges for activities submitted to Chubb more than one year after the date of service may not be reimbursed at Chubb's sole discretion. Exceptions to this requirement cannot be obtained with **Prior Approval**.

   d. The Law Firm's initial invoice should contain all work performed from the date of Assignment through the end of the first approved billing period. Subsequent invoices should not contain fee dates which overlap a prior billing period and if they do, they may not be reimbursed at Chubb's sole discretion.

   e. Effective and efficient management of the case by the Law Firm is essential. It is important that the **Primary Attorney** be involved in each Assignment as necessary to ensure it is being properly handled by the Law Firm. At the same time, Chubb needs to be involved in all decisions and strategic activities to be undertaken on its behalf or on behalf of Insureds. The Law Firm must therefore hold **Planning Conferences** with Chubb regularly and promptly.

      f.  **Appendix 2.1 – Non-Reimbursable Timekeeper Task Matrix** contains a non-exhaustive list of non-reimbursable timekeeper tasks.

3. *Billing Requirements*

    a.  Invoice Submission Requirements:

        i.  Draft invoices for services ≥ $500 (or in the United Kingdom £350, in Singapore SGD1000, or local currency equivalent in other countries) rendered after the inception of this LSA may be submitted monthly, but in no event should they be submitted less frequently than every six months.

        ii.  Draft invoices for services < $500 (or in the United Kingdom £350, in Singapore SGD1000, or local currency equivalent in other countries) rendered after the inception of this LSA, may be submitted six months after the submission of the previous invoice, but in no event should they be submitted more than one year after the date the activities occurred.

        iii.  An Assignment's final invoice should be submitted immediately and in no event can be submitted more than six months after the matter is closed.

        iv.  Invoices submitted less frequently than the specified timeframes in this Section will be reimbursed at Chubb's sole discretion.

    b.  Final invoice documentation

        i.  If submitting the Final bill electronically in the LEDES 1998B format, the invoice description must be noted "Final."

        ii.  If submitting the Final bill electronically in an XML format, the invoice description field must be noted "Final."

    c.  Chubb may request a different billing frequency or change the billing minimum threshold.

    d.  Invoices will be processed on a first in, first out basis. Any invoice submitted while another is pending will not be paid until the first submitted invoice has either been paid or was withdrawn.

    e.  All invoices submitted must be as specified by Chubb's Billing Vendor.

## B.  **Hourly Rates and Time Recording**

1. *Minimum Increments*

    Time is to be recorded in increments of tenths of an hour (0.10). The time entered for a task, and in the aggregate, must not exceed the actual time expended on any activity, function, or work as specifically described. A Law Firm must not bill a set amount or minimum for any task, as billing must only be for the actual time incurred in performing the substantive task(s).

2. *Nominal Tasks*

    Chubb will not reimburse time for nominal tasks which took less than a minute of actual time to perform. Some examples are:

    • Non-substantive emails such as confirming receipt or saying, "Thank you."

    • Reviewing signatures on documents executed by other parties.

    • Reviewing confirmations of court document filings.

3. *Chipping*

    Breaking down a single task (e.g., sending a single document request to three different parties) into separate billing entries to artificially inflate the total time billed (i.e., "Chipping") is not permitted.

    • Unacceptable entries: "1) Draft status report to send to Client – 0.3; 2) Draft status report to send to Claim Handler– 0.3" (resulting in total billing of 0.6 hours).

    • Acceptable entry: "Draft status report to send to Client and Claim Handler – 0.3."

4. *Block Billing*

    Block billing (i.e., combining dissimilar tasks into one line item) is unacceptable unless all the functions, activities, and/or tasks entered together (1) fall within the same UTBMS Phase/Task and Activity Codes and (2) reasonably relate to each other. Otherwise, each function, activity, or task performed must be billed separately with an appropriate time entry. Any block billed

entries will not be reimbursed unless the entry is less than 0.2 hours.  A specific narrative description must be provided, even where the various UTBMS Code Sets are being used and included in the invoice.

5. *Line item Correction*

Chubb will, at its sole discretion, allow the Law Firm to correct the block billed entries even if the resulting corrected entry will be associated with different UTBMS Phase/Task and/or Activity Codes. When correcting block billed entries, the Law Firm should parenthetically assign a time value to each task. For example:

- Unacceptable entry: "Email to counsel; phone conference with client; drafted motion – 3.0"
- Corrected, acceptable entry: "Email to opposing counsel re discovery disputes (0.2); phone conference with client re update on discovery disputes (0.5); drafted motion to dismiss (2.3)"

6. *Time Records*

Time records should not be destroyed, and must remain available for review, for at least five years after closure of each matter.  Computerized records are sufficient for this purpose provided they are maintained to allow future downloading to hard copy.

7. *Hours Per Day*

Except for days at trial or during a mediation, no more than 10 hours per day (excluding any travel time) may be billed on a single Assignment by a single timekeeper without **Prior Approval**.  In no event will **Prior Approval** be granted for a timekeeper billing more than 20 hours per day (excluding travel time) across all Assignments for Chubb or otherwise.

C. **Professional Services**

1. *Line Item Descriptions*

The Law Firm is responsible for ensuring that nothing contained in any line description has the potential to violate attorney-client privilege or contains any otherwise private or sensitive information or personal data about any party.  If the Law Firm cannot submit an invoice without violating one of these requirements, it should not submit the invoice and should contact the Claim Handler immediately.

a. Generic or vague narrative descriptions will not be reimbursed. Descriptions must permit Chubb to identify the work product created and the specific substantive function, activity, and/or task performed.

b. Entries for telephone conversations, conferences, meetings, and court conferences must specifically describe the parties involved and the subject matter.

c. Examples of descriptions that lack specificity and will not be reimbursed include:

- "Attention to/Work on/Consider issues, file, correspondence, case strategy, etc."
- "Prepare for conference, phone call, or meeting."
- "Review documents, mail/email, correspondence, records, file, case issues, etc."
- "Pursue/Plan strategy, investigation, various matters, documents."
- Communications regarding common events that do not provide additional detail (i.e., "call to opposing counsel regarding deposition").

d. Charges for preparing or reviewing correspondence or emails should identify the subject matter of the letter or email and the author or recipient.

e. Entries for court appearances/depositions must contain the start and end times.

f. Where **Prior Approval** is required for an activity contained in an invoice, the narrative must include the date **Prior Approval** was granted by whom.

g. Chubb will, at its sole discretion, allow the Law Firm to amend otherwise unallowable billing descriptions.

h. Any entry concerning any Report, correspondence, or document must specifically identify it in the appropriate line item.

i. Only the time spent in modifying or editing standardized pleadings, motions, documents, or discovery responses or requests should be billed.  Chubb will not reimburse the Firm for time originally spent inputting standard language.

2. *Staffing*

a. Chubb expects a Law Firm to appropriately staff its Assignment(s). Where more than one timekeeper is working on an Assignment, the activities performed should be at the appropriate level within the Law Firm (e.g., Paralegals should perform Paralegal tasks).

b. When changes within the Law Firm require replacement or addition of personnel working on the Assignment, Chubb should be informed immediately. Any resulting time or costs involved in preparing the new personnel will not be reimbursed unless Chubb requested the personnel changes.

c. On routine matters, Chubb expects to have a Partner or Senior Associate as the **Primary Attorney**, with an Associate and Paralegal (if appropriate). If the Law Firm wants to staff a case with more than two attorneys, it must receive **Prior Approval** from the Claim Handler or through the submission of a **Staff Plan**. Generally, only one attorney should attend depositions, meetings, hearings etc., including **Planning Conferences**. Any additional attorneys required for these types of activities must receive **Prior Approval**. If such is not obtained, the resulting expenses will not be reimbursed.

d. Non-legal tasks (secretarial, administrative, or clerical) will not be reimbursed by Chubb, regardless of which timekeeper performs the service. A non-exhaustive list of these routine tasks, which can be accomplished by someone with basic skills and minimal training, are in **Appendix 2.2 – Non-Reimbursable Administrative Task Matrix**. Exceptions to this provision cannot be obtained with **Prior Approval**.

e. Chubb expects the Law Firm to use Paralegals (or other non- attorney personnel such as law clerks, litigation assistants, and trainees) wherever possible. **Appendix 3.1 Paralegal Task Matrix** contains a non-exhaustive list of these Paralegal tasks. Where attorneys perform tasks appropriate for Paralegals, reimbursement will be at the applicable Paralegal rate.

f. There are certain attorney services that Chubb considers to be more appropriate for an Associate than a Partner, which are listed in Appendix **3.2 – Associate Task Matrix**.

g. Where Partners perform tasks appropriate for Associates, Chubb will reimburse at the applicable Associate rate.

3. *Multiple Fee Earners/Oversight and Supervision/Intra-office Conferences*

a. Multiple Fee Earners Generally

   i. Most cases can be effectively managed by one senior level attorney (e.g., Partner or Senior Associate who functions as the **Primary Attorney**) and one Associate. If the Law Firm believes additional staffing is required, it must make the request in writing with an explanation to receive **Prior Approval**.

   ii. Where multiple timekeepers are working on the same task, the invoice must describe separate, specific, tangible work product for each timekeeper.

   iii. When multiple timekeepers are copied on written correspondence, only one timekeeper may bill for reviewing and responding to the communication.

b. Oversight and Supervision

Any Timekeepers billing on a file must be substantively involved in the management of, or legal activities performed by, the Law Firm. General file oversight or supervision is not billable.

However, Chubb recognizes that it is sometimes appropriate for a senior timekeeper to supervise or edit the work of a junior timekeeper and improve it when necessary. In these instances, the time billed by the senior timekeeper should be reasonable in comparison to the time billed by the junior timekeeper. The senior timekeeper's billing entry should include details to substantiate the value their time added (e.g., identifiable change in the work product).

c. Intra-office Conferences/Tangible Work Product

   i. Procedural/Operational Intra-office Conferences or Communications: Under no circumstances can the Law Firm bill for any intra-office conferences or internal communications (e.g., email) that are procedural or routine in nature (e.g., meetings or communications to discuss the assignment of new work or the status of existing work), or

for any costs incurred in the creation of procedural internal communications to timekeepers. Exceptions cannot be obtained with **Prior Approval**.

    ii.    Substantive/Strategic Intra-office Conferences: **Prior Approval** is required for any substantive intra-office strategy conferences. The request for **Prior Approval** should include the necessity of the discussion and identify the timekeeper participants.

        Work product produced in a substantive/strategic intra-office conference must be provided to Chubb either before or contemporaneous with the relevant invoice. It should be noted in the invoice line item if no immediate tangible work product was produced at the intra-office conference.

4.   *Research*

    a.    Since specific Assignments are made to Law Firms selected for their expertise in particular areas of law, routine legal research (i.e., matters of common knowledge among reasonably experienced counsel) will not be reimbursed.

    b.    **Prior Approval** must be obtained before conducting any legal research that exceeds two hours per month on a single Assignment by all timekeepers at the Law Firm on all topics. Any such **Prior Approval** request must specify the nature and expected benefits of the research and must specify a timeframe, not to exceed six months, in which the research is to be conducted.

    c.    Research must be conducted by Senior Associates, Associates or Paralegals (or other non-attorney personnel such as law clerks, litigation assistants, and trainees). Partners may not bill for any time spent conducting research unless they first obtain Prior Approval. Any such **Prior Approval** request must specify the reasons why a Partner is necessary to conduct that research.

    d.    The costs related to the use of online databases (e.g., LEXIS or Westlaw), or on-line or artificial intelligence services, while encouraged to reduce time spent, is considered part of the Law Firm's overhead, and will not be reimbursed.

    e.    **Prior Approval** must be obtained to incur any costs to access documents from a public resource providing access to court records, including PACER." The relevant line item must document **Prior Approval** and supporting documentation of the costs must be provided.

5.   *File Reviews*

    a.    Chubb will not pay for routine or periodic file reviews.

    b.    File reviews prompted by a legal or factual development (e.g., the receipt of correspondence or a telephone call) which results in the creation of actual work product (e.g., a strategy note, strategy plan, letter, report, or telephone call) are allowed. Any file review time over five hours in one day requires **Prior Approval**, regardless of the number of different documents included in that block of review time.

6.   *Document Reviews*

    a.    Any document review time over five hours in one day is subject to **Prior Approval**, regardless of the number of different documents included in that block of review time.

    b.    Document review line items, especially for large projects staffed by multiple attorneys and not completed by a Document Review Vendor as described in Section II(E)(6)(b), should identify the document(s) reviewed. When available, a reference to Bates numbers, document custodians, or specific production volumes should be provided.

    c.    Medical Records

        Paralegals are generally expected to initially review and summarize medical records (Except in Malaysia).

    i.    If any attorneys at the Law Firm need to review medical records for a combined period exceeding three hours in a month for a single Assignment, then the Law Firm must obtain **Prior Approval**. The request for **Prior Approval** must specify the reasons for and extent of the review, and the resulting projected costs.

    ii.    The invoice submitted for those charges must document **Prior Approval**, identify both the medical records reviewed and the purpose of that review in the relevant invoice line items.

7. *Outsourcing*

    a.  The Assignment or any part of the services expected to be performed by the Law Firm may not be outsourced or subcontracted without **Prior Approval**.

    b.  Chubb may, at its discretion, instruct the Law Firm to work with designated outsourced Law Firms or Vendors on individual Assignments.

8. *Travel Time*

    a.  The Law Firm should only travel if the purpose of the travel is crucial, particularly if the destination is international or out-of-state.

    b.  One way travel time expected to be over one hour must receive **Prior Approval**.

    c.  Travel time must be included in the invoice as a separate line item, describe the origin and destination, and be billed at 100% of the actual time travelled.  The rate billed should be 50% of the approved billing rate unless the fee earner is working on the specific case while traveling.  In that circumstance, the time and rate should both be billed at 100%, and the line item description and coding should reflect the fee earner's legal activity.

    d.  In the line item for travel time where no professional activities are performed, the Law Firm should clearly reflect travel time only and that 50% of the rate is being charged.

9. *Non-Legal Services*

    a.  Generally, work that is secretarial, administrative, clerical, or overhead in nature is not billable.  (See **Appendices 2.2 and 2.3**)

    b.  Billing: Time and other charges relating to billing, accounts receivable, or credit control will not be reimbursed.

    c.  Conflicts of Interest: The Law Firm is required, without charge to Chubb, to conduct appropriate searches and inquiries to determine any actual or potential conflicts of interest, and to alert Chubb immediately.

    d.  "Waiting time" is billable only if the timekeeper cannot to do legal work during that time.

## D.  **Legal Service Providers**

1. *Generally*

    a.  The retention of any **Legal Service Provider** by the Law Firm must receive **Prior Approval**.  Such request must describe the reasons for and legal services to be provided, and projected costs of the engagement.

    b.  It is the responsibility of the **Primary Attorney** to confirm the validity and accuracy of any invoice submitted by any **Legal Service Provider** retained by the Law Firm.  Any time spent verifying invoices is not reimbursable.

    c.  In certain jurisdictions, for types of legal services specified in **Appendix 4**, Chubb may require the Law Firm use a **Mandatory External Vendor**.

    d.  In this instance, **Prior Approval** is not available to allow for the use of a **Legal Service Provider** not listed in **Appendix 4**.

    e.  Chubb has negotiated contracts with every **Mandatory External Vendor** to benefit our Insureds.  No further discussions beyond those concerning the scope of the work to be performed by the **Mandatory External Vendors** are necessary and will not be reimbursed if they occur.

    f.  In some instances, **Mandatory External Vendors** addressed in this Section may submit their invoices for services through Chubb's designated Billing System.  Those circumstances will be identified in **Appendix 4**.

    g.  In those instances, the Law Firm must not fund or include those costs in their invoice submission to Chubb.  If submitted by the Law Firm, these charges will not be reimbursed.

    h.  When the **Legal Service Provider's** invoice is presented to the Law Firm in Chubb's Billing System, it is the responsibility of the **Primary Attorney** to verify its accuracy prior to submission.

    i.  If the **Legal Service Provider's** invoice is not submitted to Chubb's Billing System, it is expected that the Law Firm will fund the costs as a disbursement and submit them to Chubb for reimbursement.  However, if such costs exceed $1,000 (or local currency equivalent), the

Law Firm or the **Legal Service Provider** may submit the invoice to Chubb for payment directly.  Any such costs must comply with this LSA.

j.   The Law Firm must notify any **Legal Service Provider** within 21 days of the close of the Assignment that the matter has ended so they can timely cease all services.  If the Law Firm fails to notify the **Legal Services Provider** within 21 days the Assignment's close, then any resulting charges will not be paid or reimbursed by Chubb and the Law Firm will be responsible for those costs.

k.   Consistent with Chubb's commitment to diversity, equity, and inclusion, the Law Firm is expected to consider diverse talent as it engages, where approved, other **Legal Service Providers**.

2.   *Local Counsel*

a.   Prior to retaining any outside attorneys (e.g., Local Counsel), the Law Firm must first obtain **Prior Approval** from the Claim Handler.  Such request must include the scope of Local Counsel's representation, hourly rates, and estimated total cost prior to the retention, engagement, or instruction.

b.   Local Counsel must be fully versed in rules and nuances of the local jurisdiction.

c.   In the U.S. and Canada, Local Counsel must submit their invoices through Chubb's Billing System and is subject to all provisions of this LSA.  Any exception to this provision requires **Prior Approval** from the Claim Handler.  The request for **Prior Approval** should explain why Local Counsel is unable to use Chubb's Billing System.

d.   Supervision of Local Counsel is the responsibility of the **Primary Attorney** to ensure that the terms of the retention and all fees and expenses comply with this LSA and are agreed to by Chubb.

e.   Local Counsel will not be paid and/or the Law Firm will not be reimbursed for Local Counsel costs if they are:

• deemed inappropriate by Chubb,

• not in compliance with this LSA, and

• unnecessarily duplicative of work performed by the Law Firm.

3.   *Consultants/Investigators/Experts/Surveillance/Litigation Services ("Consultants") and Translation Vendors*

a.   If Chubb requires the use of specific Consultants or Translation Vendors, those **Mandatory External Vendors** are listed in **Appendix 4**.  **Prior Approval** is not available for the use of any other Consultants or Translation Vendors not on that list.

b.   Time billed and expenses incurred by the Law Firm related to the use of Consultants or Translation Vendors that should have been performed by a **Mandatory External Vendor** may not be reimbursed at the sole discretion of Chubb.

4.   *Electronic Discovery/Court Reporting/Record Retrieval/Document Review Vendors*

a.   If Chubb requires the use of specific Electronic Discovery, Court Reporting, Record Retrieval and Document Review Vendors, those **Mandatory External Vendors** are listed in Appendix 4.  **Prior Approval** is not available for the use of any other Electronic Discovery Vendor not on that list.

b.   Time billed and expenses incurred by the Law Firm related to the use of Electronic Discovery services, Court Reporting services, Record Retrieval services and Document Review services that should have been performed by a **Mandatory External Vendor** may not be reimbursed at the sole discretion of Chubb.

c.   If the Law Firm uses internal tools or resources to accomplish any Electronic Discovery services, Court Reporting services, Record Retrieval services or Document Review services that could otherwise be assigned to a **Mandatory External Vendor**, the resulting fees will not be reimbursed.

E.   **Disbursements, Expenses, and Other Cost Items**

1.   *Generally*

a.   Other than as provided below, any request for reimbursement of expenses over $25 (or local currency equivalent) must be accompanied by documentation.

- In Singapore, the minimum threshold for submission of supporting documentation for expenses is SGD 1500.

b. Each individual disbursement, expense, or cost item must be separately described and identified and charged at cost.  If VAT or any other tax is payable, this should be indicated.  No miscellaneous items will be reimbursed.

c. Any disbursements, expenses, or cost items less than $1000 (or local currency equivalent) should be paid directly by the Law Firm and then be billed pursuant to the process requested by the Claim Handler.  For expenses greater than $1000 (or local currency equivalent), the Law Firm should discuss with the Claim Handler the process to be used and documentation required when submitting invoices for payment.

d. It is the responsibility of the **Primary Attorney** to confirm the validity and accuracy of any invoice submitted by the Law Firm during the Assignment.  Any time spent verifying invoices is not reimbursable.

2. *Travel Expenses* – See **Appendix 7 – Travel Expense Guidelines**

3. *Hotels/Meals* – See **Appendix 7 – Travel Expense Guidelines**

4. *Telephone, Facsimile, and Postage* – All such charges, including conference call charges, are considered overhead, and will not be reimbursed.  Postage charges over $25 or local currency equivalent require **Prior Approval**.

5. *Photocopying (Internal and External)* – See **Appendix 8 – Miscellaneous Expenses**

6. *Courier, Messenger, Expedited Delivery, and Similar Services ("Courier")* – **See Appendix 8**

7. *Overhead* – ***Appendix 2.3* – Non-Reimbursable Overhead Matrix** contains a non-exhaustive list of non-billable disbursements considered to be Law Firm overhead.

## IV.   Auditing and Indemnity

Chubb reserves the right in its sole discretion to audit all fees, disbursements, expenses, and other cost items submitted by the Law Firm and the corresponding files relating to the functions, activities or tasks performed, and the various supporting vouchers, invoices, or other fee notes.  Chubb personnel, the Billing Vendor, regulator, or any other third party authorized by Chubb may perform this audit either on the premises of the Law Firm or remotely.  Chubb's payment of any fees, disbursements, expenses, or other cost items shall not constitute a waiver of any right to seek reimbursement for any overpayment revealed during an audit or otherwise.  In the event of an audit, the Law Firm will cooperate fully and without additional charge, including making all appropriate personnel available for interview, affording access to the Law Firm's premises and systems as might be necessary, and producing all files and other pertinent documentation for review.

Chubb additionally reserves the right to conduct open or closed file reviews as needed (whether related to a formal audit or otherwise) and to evaluate whether a deficiency in the services performed by the Law Firm (or any third party retained or sub-contracted by the Law Firm) caused Chubb to incur costs more than those that would have been incurred had the Law Firm carried out its obligations under or in connection with the LSA with reasonable skill, care, and diligence to:

a. any government or governmental entity because of a statutory or other violation,

b. an Insured, or

c. any other party.

The Law Firm acknowledges that Chubb will expect the Law Firm to fully indemnify Chubb for all losses that it has suffered because of these deficiencies.  Where losses are shown to have been incurred by a third party, the Law Firm acknowledges it will be expected to be liable to that third party.

## V. File Retention Policy

Law Firms are required to retain all file materials as follows:

- Worker's Compensation – 10 years following resolution.
- All other file types – 7 years in the U.S., 10 years in EMEA, or any applicable limitation period specified by Chubb following resolution or as required by applicable laws and/or regulations.

This section is subject to amendment as required by Chubb.

## VI.   Terms and Consequences of Severance

A.  All provisions of this LSA shall remain in full force and effect in respect until such Assignments have been fully and finally settled.

B.  Subject to the terms of Section I(B)(3), the decision to terminate, transfer, or otherwise restrict the handling of a particular Assignment shall be in Chubb's sole discretion.  If an Assignment is terminated, Chubb may, at its option, immediately deal with the Assignment directly or transfer the Assignment to another party (e.g., a new Law Firm).  The terminated Law Firm will fully cooperate with and assist Chubb or the newly assigned Law Firm to ensure the orderly transfer of services and discuss with Chubb the disposition of any materials or documents obtained as part of its handling of the Assignment.

C.  Termination of this LSA shall not affect any rights, liabilities, or remedies arising under this LSA prior to such termination.

D.  The follow sections shall survive the termination of this LSA for any reason:

- LSA Preamble
- Insurance requirements - Section I(A)(1)(f)
- LSA duration - Section I(A)(1)(g)
- Privilege and Confidentiality - Section I(A)(5)
- Data Security - Section I(A)(6)
- Safeguarding Information - Section I(A)(7)
- Auditing and Indemnity - Section IV
- File Retention Policy - Section V

## Appendix 1 - Prior Approval Matrix

| Prior Approval Matrix | |
|---|---|
| **LSA Section** | **Title / Description** |
| I(A)(8) | Media Contact |
| II(A)(2) | Assignment Process and Scope |
| II(A)(3) | Prior Approval |
| II(A)(4) | Planning Conferences |
| II(B) | Team Approach |
| II(D) | London Market (Lloyds) |
| II(E)(2) | Substantive Positions and Communications |
| II(E)(3) | Depositions and Witness Statements |
| II(E)(4) | Discovery/Interrogatories/Lists of Documents |
| II(E)(5) | Motion Practice (including Interlocutory Appeals) |
| II(E)(6) | Document Review |
| II(E)(7) | Mediations/Settlement Conferences |
| II(E)(9) | Settlement Offers |
| II(E)(10) | Court Appearances |
| II(E)(11) | Mock Trials |
| II(F)(3) | Budget Creation |
| II(G) (all sections) | Reporting |
| III(B)(7) | Billing more than 10 hours per day/per matter |
| III(C)(2)/(3)(a) | Staffing/Multiple Fee Earners Generally |
| III(C)(3)(c) | Intra-office Conferences/Tangible Work Product |
| III(C)(4)(b) | Legal Research over two hours per month |
| III(C)(4)(c) | Research by Partners |
| III(C)(4)(e) | Costs to access court records from a public resource |
| III(C)(5) | File Reviews |
| III(C)(6) | Document Reviews (including Medical Records) |
| III(C)(7) | Outsourcing |
| III(C)(8) | Travel Time |
| III(D) | Legal Service Providers |
| III(D)(2) | Local Counsel |
| III(E)(4) | Postage over $25 |
| Appendix 7 | Travel Expense Guidelines |
| Appendix 8 | Miscellaneous Expenses |

## Appendix 2.1 – Non-Reimbursable Timekeeper Task Matrix

| Non-Reimbursable Timekeeper Task Matrix |
|---|
| **Description** |
| • Leaving or listening to telephone messages |
| • Unsuccessful telephone call attempts |
| • Sending a text message related to attempts to contact another party (e.g., a request for a return phone call) |
| • Training of staff |
| • Fees/Expenses incurred in evaluating the existence or extent of insurance coverage available under a policy issued by Chubb |
| • Time spent requesting Prior Approval |
| • Non-substantive communications (e.g., form letters, cover letters, standardized letters) |
| • Personal activities during deposition breaks |
| • Fees/Expenses exceeding the Budget |
| • Fees/Expenses submitted more than one year after the date of service |
| • Overlapping fee entries |
| • Nominal tasks |
| • General file oversight/supervision inconsistent with Section III(C)(3)(b) |
| • Procedural intra-office communications |
| • Routine legal research |
| • Routine file reviews |
| • Time spent validating Legal Service Provider invoices |
| • Use of a non-mandatory Electronic Discovery Vendor |
| • Use of a non-mandatory Court Reporter |
| • Use of a non-mandatory Records Retrieval Vendor |
| • Use of a non-mandatory Translation/Interpretation Vendor |

(The above list is not exhaustive.)

## Appendix 2.2 – Non-Reimbursable Administrative Task Matrix

| Non-Reimbursable Administrative Task Matrix |
|---|
| **Description** |
| • Bates labeling/numbering documents |
| • Docketing/checking case status |
| • Charges for opening or closing files |
| • Creation of indices of documents |
| • Compiling lists of documents that do not require legal analysis or where the analysis has already been completed by an attorney or Paralegal |
| • Preparing or revising bills, statements, and dealing with billing inquiries |
| • Clerical duties such as creating or organizing files, folders, binders, or notebooks |
| • Preparing documents or other materials for attorney review |
| • Collating; copying and binding; pulling/copying documents; filing and re-filing |
| • Inventorying documents |
| • Uploading/downloading/formatting/converting documents |
| • Faxing/scanning documents |
| • Attendance at seminars, conferences, or other such functions |
| • Word processing/data entry/mail merge |
| • Scheduling, arranging, confirming meetings/appointments, making calendar/diary entries |
| • Making travel and related arrangements |
| • Proof-reading |
| • Filing/serving documents |
| • Creation of Macros, Templates, etc. |
| • Conflict checks |
| • Document and record retrieval activities (e.g., request process, pickup, delivery, etc.) |
| • Chasing or repeatedly following up on the same outstanding issue |
| • Bundling, not requiring a professional or legal input, analysis, or selection process, e.g., labeling or indexing |

(The above list is not exhaustive.)

## Appendix 2.3 – Non-Reimbursable Overhead Matrix

| Non-Reimbursable Overhead Matrix |
|---|
| **Description** |
| • Charges for Westlaw or Lexis/Nexis |
| • Facsimile/telecopying charges |
| • Routine postage |
| • Telephone charges, including conference call charges |
| • Scanning charges |
| • Database (including but not limited to Summation or Concordance) set up and/or management charges |
| • Utilities, rent, heat, etc. |
| • Local meals and meals not associated with travel |
| • Any taxes imposed on the Law Firm that are not specifically identified as Chubb's obligation to pay by any relevant law or regulation |
| • Travel costs associated with commuting |
| • Secretarial or support staff overtime |
| • Subscription charges to general publications such as law journals |
| • Entertainment/client development |
| • Printing charges |
| • eDiscovery charges of any kind for the use of any internal system or process |
| • Word processing charges |
| • Stationery, office supplies, etc. |
| • Unnecessary courier, messenger, or delivery charges |
| • Subscription charges for case, complaint, and discovery analysis tools |
| • Any miscellaneous "other" or unspecified expenses |

(The above list is not exhaustive.)

## Appendix 3.1 – Paralegal Task Matrix

| Paralegal Task Matrix |
| --- |
| **Description** |
| • Production of enclosures to Instructions to Counsel or Experts, Exhibits to Affidavits, Witness Statements, and Court or other Legal Documents |
| • Production of (draft) trial bundles |
| • Production of application and case management bundles |
| • Liaising with Counsel's/Judge's Clerks on contents of bundles |
| • Standard form - Court and other Legal Documents |
| • Performing CRU ("Compensation Recovery Unit") activities, except for activities related to CRU Appeals |
| • Drafting standard or routine Discovery, Interrogatories, or Lists of Documents which form part of any Pleadings |
| • Preparation of *Forms of Authority* to access medical or employment records |
| • Preparation of *Authorization to Defend Proceedings* |
| • Preparation of *Witness Summons* |
| • Preparation of *Acknowledgment of Service* |
| • Preparation of *Notice of Acting/Appearance* |
| • Preparation of *Certificate of Service* |
| • Preparation of page/line designations of depositions unless prepared for trial. |
| • Creating/updating chronologies or timelines |
| • Creating trial notebooks if such involves substantive review and analysis |
| • Cite checking |
| • Investigative research, including background and social media research |
| • Preparation of Stipulations for extensions of time to answer |
| • Preparation of Routine Jury Demands |
| • Preparation of form Motions, including Motions for Leave, Motions to Extend, and Motions to Dismiss by Stipulation |
| • Preparation of Routine, Standard or form Discovery Requests or Interrogatories |
| • Preparation of Routine or Standard Requests to Produce |

(The above list is not exhaustive.)

## Appendix 3.2 – Associate Task Matrix

| Associate Task Matrix |
|---|
| **Description** |
| • Legal Research without Prior Approval to be conducted at a Partner rate |
| • Initial drafting of legal memoranda/briefs |
| • Initial drafting of Jury Instructions |
| • Initial drafting of non-form Motions |
| • Drafting of non-form or non-standard Discovery requests or Interrogatories or List of Documents which form part of any Pleadings |
| • Drafting of Discovery responses |
| • Large-scale document review (to the extent not outsourced to Chubb's Document Review Vendor, where appropriate) |
| • Drafting non-standard Discovery, Interrogatories, or Lists of Documents which form part of any Pleadings |
| • Initial drafting of an Answer |
| • Drafting litigation Hold Notices |
| • Drafting of initial Disclosures |
| • Procedural Court appearances (such as scheduling conferences) |
| • Initial drafting of Position Statements |
| • Drafting Privilege Logs |
| • Drafting Declarations |
| • Page/Line designations of depositions in preparation for trial |
| • Drafting a part 36 offer (UK venue Assignments only) |
| • Drafting precedent H Cost Budgets for Court (UK venue Assignments only) |
| • Drafting any statement of costs for a court application (UK venue Assignments only) |
| • Drafting an apportionment table for exposure in disease claims (UK venue Assignments only) |
| • Addressing CRU appeals |
| 4.    (The above list is not exhaustive.) |

## Appendix 4 - Mandatory External Vendors

Chubb has designated the following **Mandatory External Vendors** in the geographic areas specified below. As such, use of these Vendors is mandatory unless otherwise specified. Each of our **Mandatory External Vendors** has signed a robust contract with defense, indemnification, and hold harmless language, providing significant privacy and information security protection to the Insured, Chubb, and the Law Firm. Non-panel vendors have no similar contract in place with Chubb, and as a result, expose all parties to unnecessary and unacceptable risk. Additionally, Chubb has worked to ensure that the Law Firm has access to the best-in-class providers with the best rates.

Subject to Section III(D) above, if a vendor appears below (e.g., Court Reporter, Electronic Discovery, etc.), then use of an otherwise unapproved vendor to perform any related services, cannot be obtained by **Prior Approval**. Any time billed by the Law Firm working with an unapproved vendor, or expenses incurred through an unapproved vendor, may not be reimbursed at the sole discretion of Chubb.

A few critical notes about these **Mandatory External Vendors**:

- *Use the contact email addresses referenced below to ensure you receive both Chubb's negotiated rates and the high levels of service we have negotiated.*
- *The Court Reporter, Electronic Discovery, and Record Retrieval vendors below all have MSAs that include Chubb's Insureds as beneficiaries to the contract. Therefore, the only requirement for engaging their services will be for the Law Firm, as the entity retaining the services of these vendors, to agree to a brief Statement of Work (if necessary) to define the scope of services to be provided after obtaining **Prior Approval** as may be necessary.*
- *Any **Mandatory External Vendors** in Orange font are required to submit their invoices directly through Chubb's Billing System. Invoices submitted to Chubb by the Law Firm outside of Chubb's Billing System will not be reimbursed.*

### United States

1. Court Reporter – Veritext ([Chubb@veritext.com](mailto:Chubb@veritext.com))
2. Electronic Discovery
   - Consilio ([NewChubbMatter@Consilio.com](mailto:NewChubbMatter@Consilio.com))
   - Epiq ([Epiqinsurance@epiqglobal.com](mailto:Epiqinsurance@epiqglobal.com))
   - Ernst & Young ([Chubbdiscovery@ey.com](mailto:Chubbdiscovery@ey.com))
   - FTI ([FTIChubbQuotes@fticonsulting.com](mailto:FTIChubbQuotes@fticonsulting.com))
   - KLDiscovery ([Chubb@KLDiscovery.com](mailto:Chubb@KLDiscovery.com))
   - Lighthouse Global ([insurance@lighthouseglobal.com](mailto:insurance@lighthouseglobal.com))
   - Stroz Friedberg ([Chubbmatters@strozfriedberg.com](mailto:Chubbmatters@strozfriedberg.com))
   - Trustpoint ([Chubb@trustpoint.one](mailto:Chubb@trustpoint.one))
3. Record Retrieval – Ontellus
   - Registration/ Training ([WelcomeToOntellus@Ontellus.com](mailto:WelcomeToOntellus@Ontellus.com)); New Orders ([My.Ontellus.com](http://My.Ontellus.com))
4. Translation/Interpretation Services – TransPerfect ([ChubbTranslations@transperfect.com](mailto:ChubbTranslations@transperfect.com))

### Canada, United Kingdom, Puerto Rico, Australia, New Zealand, Hong Kong, Singapore, Korea, Indonesia, Taiwan, Thailand, and Malaysia

1. Translation Services (either to or from English only) – TransPerfect ([ChubbTranslations@transperfect.com](mailto:ChubbTranslations@transperfect.com))

## Appendix 5 – Law Firm Information Security Best Practices ("ISBP")

The protection of client confidences is one of the hallmarks of the legal profession and the maintenance of those confidences is essential for its proper function. The electronic transmittal of information is one of the biggest vulnerabilities in protecting these confidences. Chubb is employing these Information Security Best Practices to clearly communicate Chubb's data security expectations, but the Client will determine whether the ISBP is mandatory in any Assignment. These best practices are meant to supplement, and not replace, a lawyer's professional obligations to her/his clients. Chubb trusts that the Law Firm will find these best practices helpful, and we look forward to working with you in a secure environment.

**Purpose.** This ISBP sets forth Chubb's information security best practices with respect to Chubb Data (defined below) and outlines what Chubb expects from the Law Firm. This ISPB will provide guidance in the way Chubb would expect the Law Firm to handle all confidential information associated in any way with the performance of the Law Firm regarding any Assignment. The Law Firm should comply with all the provisions of this ISBP and shall cause all personnel, agents, representatives and sub-contractors and all other parties to whom the Law Firm may provide access to or disclose Chubb Data or authorize to collect such data on its behalf, as permitted within the LSA, to comply with all the provisions of the ISBP. The Law Firm, Insured and Chubb are hereinafter referred to collectively as the "Parties" or individually as a "Party".

I. **Definitions**

A. **"Chubb Data"** means (a) data or information owned by, or licensed by any party (including the Law Firm itself) to which the Law Firm obtains access (whether prior or subsequent to the Effective Date of the LSA) in connection with an Assignment under this LSA, including Personally Identifiable Information, as well as all data and information: (i) regarding the businesses, customers, insureds, claimants, marketing partners, personnel, operations, facilities, products, rates, regulatory compliance, competitors, consumer markets, assets, expenditures, mergers, acquisitions, divestitures, billings, collections, revenues and finances of Chubb and its affiliates, and its and their suppliers and clients; and/or (ii) created, generated, collected or processed by the Law Firm in the performance of its obligations under the LSA, including data processing input and output, service level measurements, asset information, reports, third party service and product LSAs, and contract charges; and (b) all derivatives of any of the foregoing.

B. **"Breach"** means an (i) unauthorized use, loss, or disclosure of or access to Chubb Data and the systems that hold it and/or (ii) failure to provide the services in accordance with Information Security Best Practices.

C. **"Information Security Best Practices"** means privacy and information security best practices consistent with recognized information security frameworks (such as ISO 27001 and/or NIST Cybersecurity Framework) (ii) the security requirements, standards, obligations, specifications and event reporting procedures set forth in this ISBP or the LSA (as they may be amended from time to time); and (iii) any other applicable requirements, standards, obligations, specifications and/or event reporting procedures required by any Law.

D. **"Laws"** means all applicable international, federal, state, provincial, regional, territorial, and local laws, statutes, ordinances, regulations, rules, executive orders, supervisory requirements, directives, circulars, opinions, interpretive letters and other official releases of or by any government, or any authority, department or agency thereof, including Privacy Laws.

E. **"Personally Identifiable Information (PII)"** means any Chubb Data that contains one or more unique identifiers from which the identity of the person can be determined or accessed such as their full name, national identification number, social insurance or social security number, passport number, driver's license, or other government-issued identification number, credit card, debit card or financial account information, date of birth, mother's maiden name, medical information or health insurance information, biometric records, digital signature files, account login information (such as a combination of user ID or email address when combined with password or other information that would give access to an account), and any other information that is protected by Privacy Laws.

F. **"Privacy Laws"** means all applicable international, federal, state, provincial or other local laws, rules or regulations relating to data privacy, information security, personally identifiable information, identity theft, data breach notification, trans-border data flow or data protection.

G. **"Sub-Provider"** means collectively and individually any third party, including but not limited to any subcontractor, offshore service provider, agent, outsourcer, or the like, which processes, stores or has access to any Chubb Data or collects data on Chubb's behalf (subject to Chubb's prior written approval).

II. **Data Protection**

A. **Data Restriction**. the Law Firm covenants and agrees that: (a) it will not sell, assign, license, or market Chubb Data to any third party without Chubb's prior written consent; and (b) it will not make use of Chubb Data for its own purposes or the benefit of anyone or any other entity other than Chubb and that such data shall only be used and disclosed for purposes of meeting the Law Firm's obligations with respect to the services.

B. **Remediation**. If the Law Firm's physical and data security controls are not adequate to protect Chubb Data, the parties will discuss a remediation plan (if applicable) or, in the event remediation is not feasible, Chubb may terminate any/all services and the applicable LSAs upon five (5) business days written notice to the Law Firm without liability for any such termination.

III. **Correction and Reconstruction**

The Law Firm shall develop and maintain procedures for the reconstruction of lost Chubb Data, and, at no cost to Chubb, the Law Firm shall correct any errors in, or destruction, loss, or alteration of, any Chubb Data caused by the Law Firm or Sub-the Law Firm.

IV. **Data Processing**

Each Party shall comply with all Privacy Laws in connection with the performance of its obligations and the exercise of its rights under this LSA. The Law Firm shall cooperate as requested by Chubb in connection with any filings, disclosures or registrations required by data protection authorities in connection with the provision or receipt of the services.

If the Law Firm or Sub-the Law Firm processes PII on behalf of Chubb in connection with this LSA, the Law Firm shall, or shall ensure that the Sub-the Law Firm shall: (i) process such PII only on (and in accordance with) the instructions of Chubb and, in particular, not process such PII except in order to provide the services; (ii) at all times have in place appropriate administrative, technical, and physical safeguards to protect PII against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure of or access to PII (in particular, but not only, where the processing involves the transmission of data over a network) and all other unlawful and unauthorized forms of processing; (iii) treat PII as confidential, not disclose such PII to any person except with Chubb's prior written consent and limit access to such PII to employees of the Law Firm or Sub-the Law Firm who need access in order to provide the services; (iv) promptly inform Chubb of any unauthorized access to or unlawful processing of PII of which it becomes aware; (v) when Chubb Data is no longer needed for the provision of the services or required to be retained, promptly and securely delete Chubb Data in a manner that renders the information unrecoverable and deliver to Chubb a certification that such deletion has occurred, or, at Chubb's option, return Chubb Data to Chubb; and (vi) not, by any act or omission, place Chubb in breach of any Privacy Laws.

To the extent that the Law Firm processes or stores any payment card information pursuant to the services, the Law Firm shall comply with (i) any standards issued by the Payment Card Industry Security Standards Council, including the Payment Card Industry Data Security Standard and the Payment Application Data Security Standard; (ii) any VISA, MasterCard, and any other credit card network bylaws and operating regulations; and (iii) any Laws applicable to cardholder data, as any of (i) – (iii) shall be amended or revised from time to time.

V. **Data Safeguarding Procedures.**

Throughout the term of the LSA and always while Chubb Data is in the possession or under the control of the Law Firm, the Law Firm shall establish and maintain a comprehensive written data security program that includes administrative, technical and physical policies and procedures and safeguards for the protection of Chubb Data. The Law Firm's data security program shall be designed specifically to (1) ensure the security, integrity, availability and confidentiality of Chubb Data, (2) protect against any anticipated threats or hazards to the security or integrity of Chubb Data, and (3) protect against the destruction, loss, unauthorized access to or alteration of Chubb Data. The Law Firm's policies and procedures shall be: (i) no less rigorous than those maintained by the Law Firm for its own information of a similar nature; (ii) no less rigorous than industry standard best practices for locations similar to the

applicable service location hereunder, and (iii) adequate to meet the requirements of Laws.  Chubb shall have the right to audit (at no extra cost to Chubb), including through site inspections, the Law Firm's data security program and controls with reasonable advance written notice to the Law Firm. In addition, the Law Firm shall cooperate with Chubb to perform security control reviews through questionnaires, email, phone calls, and/or online meetings (including access to the Law Firm' s policies, procedures and other relevant documentation and access to the Law Firm's personnel as reasonably necessary to facilitate such reviews).  During such review, the Law Firm shall provide Chubb with copies of any independent audit reports (relevant to the products and/or services being provided to Chubb pursuant to this LSA) that have been prepared for the Law Firm, such as an SOC 2 Type II report and/or ISO 27001:2013 certification.   If Chubb, in its reasonable discretion, discovers any problems or shortcomings with the Law Firm's security controls, the Law Firm shall file a remediation plan with Chubb within thirty (30) days following the completion of such review, and the Law Firm shall remediate each such issue in a timely manner in accordance with a remediation schedule mutually agreed to by the parties.

If services provided by the Law Firm require access to Chubb systems, no data shall be copied or extracted from such systems without the prior written consent of Chubb's Chief Information Security Officer.

As part of the services, the Law Firm shall conduct vulnerability and threat assessments performed both by itself and by an independent third party, at least once a year, to identify any threats and/or vulnerabilities that might compromise the security, confidentiality, availability or integrity of any Chubb Data, and monitor, test and update its data security program to ensure its effectiveness and compliance with this LSA.  The Law Firm shall document and maintain a security incident response plan that contemplates threats to the confidentiality, integrity, and availability of Chubb Data, and engage in periodic incident preparedness exercises.  If the Law Firm discovers or is notified of any accidental or intentional Breach or suspected Breach of the security of Chubb Data, or any unlawful or unauthorized use or disclosure of Chubb Data, the Law Firm shall: (a) notify Chubb's Chief Information Security Officer at tpsecuritynotice@chubb.com immediately, but in no event later than twenty four (24) hours after discovery of the Breach or suspected Breach of the security of Chubb Data; (b) immediately secure the affected systems to prevent further or continuing Breaches, (c) promptly investigate and remediate the effects of such Breach or suspected Breach of security on Chubb Data, perform a root cause analysis, and provide an executive summary of such analysis to Chubb upon request.

the Law Firm acknowledges that Privacy Laws include certain security breach notification statutes and/or regulations obligating owners and licensees of PII to provide notice of unauthorized access to or use of such information (the "Security Breach Laws").  If the Law Firm becomes aware of any circumstance that may trigger either Party's obligations under Security Breach Laws, the Law Firm shall immediately provide written notice to Chubb and shall fully cooperate with Chubb to enable Chubb to carry out its obligations under Security Breach Laws.  Chubb will have the exclusive right to issue any notices required under any Security Breach Laws.  If the Law Firm is required by any Security Breach Law to give any notice to any person other than Chubb, the Law Firm will cooperate with Chubb in developing and delivering such notice, and Chubb will have the final right of approval over the content of any such notice (subject to applicable law).  The Law Firm shall bear all costs related to any Breach involving Chubb Data, except to the extent that such Breach is directly caused by the actions of Chubb in violation of Chubb's express obligations under this ISBP.  Each Party shall provide any and all assistance, cooperation and support as the other Party may reasonably request in the investigation of any security incident, Breach, fraud attempt or other disaster.

## VI. **Security Practices.**

**The Law Firm** shall provide all services in accordance with Information Security Best Practices.  Notwithstanding anything to the contrary set forth herein, the Law Firm hereby agrees to implement and maintain, at a minimum, the following security controls:

### A. **Segmentation**

1. Maintain a firewall at each Internet connection and between any DMZ and the internal network
2. Logically or physically segregate, to the extent technically feasible, all Chubb Data from that of any other customer of the Law Firm, and restrict access in any shared environment to the Law Firm's employees or Sub-the Law Firm performing the services
3. Logically or physically segregate production environments from non-production environments (e.g., development, test, QA)

B. **Default Parameters**

   1. Change default passwords and configurations, where appropriate, on vendor-supplied devices prior to connecting them to the network

   2. Enable only necessary and secure services, protocols, as required for the function of a particular system

   3. Update and maintain system configurations in a manner that is consistent with industry practices and the Law Firm system hardening standards

C. **Stored Data**

   1. Maintain and follow processes for secure deletion of both electronic and printed media when no longer needed

   2. Hash or encrypt passwords wherever stored using a cryptography system (e.g., bcrypt), consistent with Information Security Best Practices

   3. Prohibit storage of PII in non-production environments unless first being cleansed/masked

D. **Encryption**

   1. Use strong cryptography and security protocols to safeguard Chubb Data and passwords during its transmission over public networks and storage on removable media such as backup tapes, laptops, flash drives and the like

   2. Ensure that corporate wireless networks are implemented with industry standard, strong encryption for authentication and transmission

   3. Use controls, including encryption, to protect Chubb Data at rest in the Law Firm's possession or control. To the extent the Law Firm determines that such encryption is infeasible, the Law Firm may use effective alternative controls, but only if approved by the Law Firm's Chief Information Security Officer (CISO) and reviewed by the Law Firm's CISO at least annually

E. **Vulnerability Management**

   1. Install and maintain anti-virus/malware software on all systems commonly affected by malicious software (particularly personal computers and servers)

   2. Ensure that all anti-virus/malware mechanisms (e.g. virus signatures) are current, actively running, and maintaining audit logs for at least 90 days

   3. Install critical security patches within one month of release

   4. Develop applications based on secure coding guidelines in order to prevent common coding vulnerabilities (e.g., as listed by OWASP) in software development

   5. Review networks and public-facing web applications via manual or automated application vulnerability security assessment tools or methods, at least quarterly and after any changes, and remediate all confirmed high or critical risk vulnerabilities within thirty (30) days of discovery

F. **Access Control**

   1. Restrict privileges of the Law Firm-maintained privileged user IDs to only those privileges necessary to perform job responsibilities

   2. Require multi-factor authentication (i.e., password, smartcard, or biometric) for remote access to the Law Firm internal networks from external networks

   3. Revoke access to terminated users immediately

   4. Use federation (e.g., SAML 2.0 or current industry standard assertions) for network authentication to Chubb trusted networks, if network access is not provisioned by Chubb on its Virtual Desktop Infrastructure (VDI) or Desktop-as-a-Service (DaaS) technologies

   5. Review user access to the Law Firm systems at least semi-annually for appropriate access and usage

   6. Immediately notify Chubb of any the Law Firm user with access to Chubb systems that is (i) terminated, or (ii) no longer supported by a business need to access Chubb systems

   7. Do not use group, shared, or generic accounts and passwords

   8. Restrict passwords to a minimum length of 8 characters with a mix of at least 3 of the 4 categories: uppercase characters, lowercase characters, special characters, and numerals

9. Lock user IDs after no more than 6 unsuccessful attempts and require IDs to be unlocked by an administrator or a 30-minute timeout period

10. User account passwords must expire every 90 days and should not repeat any of the last twelve (12) passwords for the associated user ID

G. **Monitoring**

1. Implement automated audit trails for system components necessary to reconstruct events to detect or respond to security events.

2. Configure system time such that it is accurate, consistent across systems and based on industry accepted time sources.

3. Secure audit logs so that they cannot be altered or modified; retain log data for one year.

4. Use intrusion-detection systems, and/or intrusion-prevention systems to monitor all traffic at the perimeter of the network.

H. **Physical and Environmental Controls**

1. Implement and maintain physical access controls, including controls that restrict access to facilities to authorized personnel, limit access to sensitive areas (e.g., data center) based on job responsibilities, and require appropriate visitor escort protocols.

2. Employ CCTV / Surveillance cameras at all entry and exit points of facilities storing, accessing, and processing Chubb data.   Also maintain cameras in and outside data rooms where servers containing Chubb data are stored.  CCTV video logs should be kept for 90 days

3. Implement and maintain environmental controls, including appropriate fire detection and suppression, redundant power supply, battery backup, water detection, HVAC, humidity control systems where appropriate.

4. Implement and maintain trash disposal programs that provide for the secure disposal of sensitive trash.  Sensitive trash is defined as any discarded material that contains or could disclose Chubb Data.

VII. **Working Remotely.**

To the extent that an employee of the Law Firm or Sub-the Law Firm is working remotely, i.e., working in a location other than their employer's workplace (including working from home) ("Remote Work"), each such employee must comply with the following requirements:

A. **Technical Requirements**.  All equipment used in a Remote Work arrangement must be the Law Firm-issued and -managed and meet the following minimum technical specifications:

1. An anti-virus system that is monitored by the Law Firm

2. An encrypted hard drive

3. No local administrator rights

4. No removeable media (such as USB drives)

5. Software and configuration on systems must be current and up-to-date.

6. All connectivity to Chubb must be done using Chubb's Virtual Desktop Interface (VDI) capabilities and requires multi-factor authentication ("MFA").  Any alternatives to this connectivity must be submitted to Chubb in writing in advance for approval in Chubb's sole discretion.

If a Law Firm-issued and -managed device is not available, personal ("BYOD") devices may be used, but they first must connect to the Law Firm network via VPN using MFA, and only then connect to Chubb's VDI.  If a BYOD device is used, it is still incumbent upon the Law Firm to ensure that Chubb Data and environments are protected. Under no circumstances can BYOD devices connect directly to Chubb's VDI.

B. **Remote Work Procedures.**  The Law Firm certifies that the following Remote Work requirements have been or shall be communicated to the Law Firm's employees prior to their engaging in Remote Work:

1. Use privacy filters over screens (when available)

2. Store devices when not in use in a secure location (preferably locked)

3. Avoid positioning monitors where they can be viewed by unauthorized persons

4. No sharing of passwords or writing down passwords on paper

5.  No use of a camera or taking photographs at the work location by the employee or others

6.  No taking notes or keeping information in written form

7.  No modifying or attempting to modify any security settings on a BYOD device

VIII.  **General**

A.  **Security Administration**. **The Law Firm** shall provide (or cause to be provided) security awareness training to all employees and Sub-Providers using or having access to Chubb Data. The training must be designed to educate them on maintaining the confidentiality, integrity, and availability of sensitive personal and corporate information, and shall occur upon hiring and no less frequently than annually.  The Law Firm's security administrator must retain sole responsibility for providing use of or granting access to systems containing Chubb Data for all the Law Firm and Sub-Provider employees, and for providing a process by which the Law Firm-specific administrative accounts shall be created and deleted in a secure and timely fashion.  The Law Firm shall enforce the security access principles of segregation of duties, need-to-know and least privilege.

B.  **Sub-Provider**. **The Law Firm** shall impose written contractual requirements equivalent to those relating to data privacy and security in this ISBP on any Sub-Provider prior to such Sub-Provider's obtaining access to Chubb Data.  Chubb shall have the right of prior review and approval of any Sub-Provider.  Any act or omission by any Sub-Provider that would be a breach of this ISBP if committed by the Law Firm is deemed a breach by the Law Firm for which the Law Firm shall be responsible. The Law Firm shall be fully liable and responsible for all Sub-the Law Firms used by the Law Firm in the performance of any services.

## Appendix 6 – Insurance Requirements

### Generally

The Law Firm agrees to obtain and maintain appropriate types and amounts of insurance coverage to adequately cover its liabilities and obligations under this LSA.

- Unless otherwise specified below, this is expected to be a policy with a single loss limit of no less than $5 million (or the foreign currency equivalent).
- However, if the Law Firm has 50 or more attorneys, then Chubb expects that Law Firm maintain single loss limits of $10 million (or the foreign currency equivalent).

The Law Firm agrees to provide copies of certificates of insurance upon Chubb's reasonable request.

### UK, Republic of Ireland, Australia, New Zealand, Hong Kong, and Singapore

- If the Law Firm has fewer than 50 attorneys, it is expected to obtain and maintain a policy with a single loss limit of no less than $7.5 million (or the foreign currency equivalent) for each type of insurance coverage (professional indemnity/cyber, public liability, and employer's liability) to adequately cover its liabilities and obligations under this LSA.
- If the Law Firm has 50 or more attorneys, it is expected to obtain and maintain a policy with a single loss limit of no less than $15 million (or the foreign currency equivalent) in UK, Australia, New Zealand, Hong Kong, and Singapore for each type of insurance coverage (professional indemnity/cyber, public liability, and employer's liability) to adequately cover its liabilities and obligations under this LSA.

### Taiwan

- The Law Firm agrees to obtain and maintain appropriate types and amounts of insurance coverage to adequately cover its liabilities and obligations under this LSA.
- This is expected to be a policy with a primary limit of no less than NTD 3 million for each individual insured (including Defense cost) and primary aggregate (incl. Defense cost) of a minimum of NTD 30 million (including Defense cost).  The Law Firm agrees to provide copies of certificates of insurance upon Chubb's reasonable request.

## Appendix 7 – Travel Expense Guidelines

A. **Air Travel**

1. Generally

   a. Air Travel charges inconsistent with the below, including the Jurisdiction Specific Requirements Sections, may not be reimbursed at Chubb's sole discretion.

   b. Tickets for air travel should be purchased no less than 14 days in advance, using APEX or similar discount fare services where possible.

   c. Unless specified in below in C(2) Short-haul travel (less than eight hours of flight time one-way) will be via non-refundable, coach, or economy class (or their equivalent) where available.  For long-haul travel (more than eight hours of flight time one-way), Business Class is acceptable.

   d. The flight documents and any supporting invoices must be submitted as evidence of travel, including travel time.

   e. Where the trip/travel has more than one purpose, the costs should be charged pro rata to each relevant file, matter, or to Chubb.

2. Jurisdiction Specific Requirements

   a. Korea - Economy class is permitted.  Any other class of travel requires **Prior Approval**.

   b. Thailand – Tickets for air travel will be reimbursed at actual cost to the Law Firm upon production of a receipt and which is determined to be reasonable at Chubb's sole discretion.

   c. Indonesia – Short-haul travel (less than six hours of flight time one-way) will be via economy class with either Garuda/Citilink/Batik Airlines.  Prior Approval must be obtained to use business class for long-haul domestic or overseas travel exceeding six hours of flight time one way.

B. **Non-Air Travel**

1. Generally

   a. Non-Air Travel charges inconsistent with the below, including any modifications in the Jurisdiction Specific Requirements Section, may not be reimbursed at Chubb's sole discretion.

   b. Vehicle Travel - Any mileage travel expense line item in an invoice submitted by the Law Firm should be entered with the approved rate in the relevant LEDES field ""LINE_ITEM_UNIT_COST" (i.e., "RATE") with the miles traveled in the "LINE_ITEM_NUMBER_OF_UNITS" (i.e., "UNITS") field.

   c. Invoices including reimbursement of any travel more than 50 miles, or 80 kilometers must be accompanied by a Google Maps or similar printout showing the start and end points of the trip to display the traveled distance and travel time.  Specific reimbursement guidelines can be found in **Appendix 7**.

   d. Rental cars are allowable for midsize or similar categories of vehicle.  Any other optional charges (e.g., Insurance, GPS systems, etc.) will not be reimbursed.

   e. There will be no reimbursement for transportation costs of any kind to or from a timekeeper's personal residence to the Law Firm's place of business.

   f. Ride Share services will only be reimbursed at the lowest private vehicle rate (e.g., "Economy" instead of "XL," "Preferred," or "Premium").  Expenses for the use of luxury ride share services are subject to reduction to the appropriate rate using available fair estimator tools.

   g. Limousine or other private car services are prohibited and will not be reimbursed.

   h. Rail travel shall be in standard/second-class or equivalent seats.

2. Jurisdiction Specific Requirements

   a. **United States:**  Vehicle travel in the United States will be reimbursed at no more than the Standard Mileage Reimbursement rate as established by the U.S. Internal Revenue Service.

b. **Canada:** Vehicle travel in Canada will be reimbursed at no more than the reasonable allowance rates rate as established by the Canadian Revenue Authority.

c. **United Kingdom and Republic of Ireland:** Vehicle travel in the United Kingdom will be reimbursed at no more than 45p (€.52)/mile outside a radius of 10 miles from the Law Firm's office which is handling the claim.

d. **Puerto Rico:** Vehicle travel within 20 miles of San Juan is not reimbursable.  Beyond that radius, travel will be reimbursed as established by the U.S. Internal Revenue Service.

e. **Hong Kong:** Vehicle travel rates within Hong Kong should not exceed the taxi fare rate under [Transport Department]().

f. **Singapore:** Vehicle travel rates within Singapore should not exceed the taxi fare rate under the [Public Transport Council]().

g. **Korea:**

   i. Tickets for rail travel will be reimbursed at cost to the Law Firm upon production of a receipt and which is determined to be reasonable at Chubb's sole discretion.

   ii. For any permitted non-air travel, if in its sole discretion Chubb considers the distance and/or time to travel between the Law Firm office and the location of a court or business meeting will be exceptional and having regard to the charging structure applicable to the matter, **Prior Approval** may be obtained for a daily allowance.  The amount of the allowance will be determined by Chubb but typically between US$100-US$200 per day.

h. **Taiwan:** Any non-air travel requires **Prior Approval** at rates within Chubb's sole discretion and should not exceed the following:

   i. [Taxis]()

   ii. [High-Speed Train]()

   iii. [Railroad]()

i. **Thailand:**

   i. Any non-air travel taken within Bangkok or within a 100km radius of the city, will be reimbursed at a fixed rate equivalent to those rates under "[GrabTaxi]()", dependent on the distanced travelled.

   ii. Other non-air travel outside a 100km radius of Bangkok, will be reimbursed at 8 THB/km, subject to production of a receipt.

j. **Indonesia:**

   i. There will be no reimbursement of transportation costs for business travel within the city of Jakarta.

   ii. Outside of Jakarta:

- Rail travel tickets will upon production of a receipt be reimbursed up to the cost of Garuda economy or equivalent seats.

- Travel by taxi will be reimbursed at actual cost to the Law Firm upon production of a receipt and which are determined to be reasonable at Chubb's sole discretion.

- Vehicle Travel by taxi/rental car outside of Jakarta, using own car will be reimbursed at no more than IDR1mio per trip and upon production of a receipt and which Chubb in its sole discretion determines to be reasonable.

- Travel to/from an Indonesian international airport to a Law Firm timekeeper's personal residence for the purposes of business travel, will be reimbursed at actual cost to the Law Firm upon production of a receipt and which Chubb in its sole discretion determines to be reasonable.

- There will be no reimbursement for any limousine or ride share travel costs.

- Charges for covid tests related to travel and mandated by the Government will be reimbursed at cost to a Law Firm on production of a receipt.

C. **Hotels/Meals**

1. Generally

   a. Hotel/meal charges inconsistent with the below, including any modifications in the Jurisdiction Specific Requirements Section, may not be reimbursed at Chubb's sole discretion.

   b. Gratuities more than 20% (or the level of customary practice in the relevant jurisdiction) of the pre-tax amount of any meal will not be reimbursed.

2. Jurisdiction Specific Requirements

   a. **United States and Canada:** Hotels will be reimbursed up to $400/night in Toronto, New York, Los Angeles, Dallas, Honolulu, Boston, Miami, San Francisco, New Orleans, Chicago, and Washington D.C., and $300/night outside those locations. Meals during an overnight or extended stay will be reimbursed up to $75/person/24-hour period. Exceptions must receive **Prior Approval**.

   b. **United Kingdom and Republic of Ireland:** Hotels will be reimbursed up to £225(€256)/night inside London and £150(€172)/night outside London. Meals during an overnight or extended stay will be reimbursed up to £45 (€52)/person/24-hour period.

   c. **Hong Kong:** Hotels will be reimbursed up to USD$250/night and meals during an overnight or extended stay will be reimbursed up to USD26 per person/24-hour period. There will be no reimbursement of overnight hotel and meal charges for staff located in the Hong Kong offices of law firms as instructed by the Chubb Hong Kong Claims team.

   d. **Singapore:** Hotels will be reimbursed up to USD$200 during an overnight or extended stay and meals during an overnight or extended stay will be reimbursed up to USD$30/person/24-hour period.

   e. **Malaysia:** Hotels will be reimbursed up to USD $100 – USD$200 (RM400-RM800) per night. Meals during an overnight or extended stay will be reimbursed up to USD $30 (RM130) per person/ per 24-hour period.

   f. **Korea:** Hotel charges should be agreed in advance with Chubb or as Chubb determines is reasonable at its sole discretion, typically ranging from $80~100/ day. Meal Charges will not be reimbursed without **Prior Approval**.

   g. **Taiwan:** Hotel and meal charges will be reimbursed upon production of a receipt, and which is determined to be reasonable at Chubb's sole discretion.

   h. **Thailand:** Hotel and meal charges will be reimbursed upon production of a receipt, and which is determined to be reasonable at Chubb's sole discretion.

   i. **Indonesia:** Hotels will be reimbursed at rates equivalent to the cost of a 4star hotel. Charges will only be reimbursed for an evening meal up to IDR 300k per person/per 24-hour period and which is supported by a receipt.

## Appendix 8 –Miscellaneous Expenses

**Internal Photocopying**

A. **Worldwide:** Any time related to preparation or completion of photocopying is clerical and is not reimbursable.

B. **United States and Canada:** There will be no reimbursement for any photocopying charges.

C. **United Kingdom, Republic of Ireland, Australia, New Zealand, and Puerto Rico**

  1. There will be no reimbursement for any photocopying of documents fewer than 200 pages.

  2. Where photocopying of documents over 200 pages is required, it will be reimbursed at the rates per page listed below once Prior Approval is authorized by Chubb. If Prior Approval is granted, the narrative must include the name of the grantor and the date Prior Approval was granted.

     • United Kingdom and Republic of Ireland - £.06(€.07) per page

     • Australia - AUD $.10 per page

     • New Zealand - NZD $.11 per page.

     • Puerto Rico – USD $.08 per page

D. **Singapore:**

  1. Black & white photocopies will be reimbursed at a rate of SG$0.15 (US$0.10) per page

  2. Color photocopies will be reimbursed at a rate of SG$1 (US$0.80) per page.

E. **Hong Kong:**

  1. Black & white photocopies will be reimbursed at a rate of HKD $0.85 (US$0.10) per page

  2. Color photocopies will be reimbursed at a rate of HKD$5.7(US$0.80) per page.

F. **Korea:**

  **Prior Approval** must be obtained for any reimbursement of internal photocopying charges.

G. **Thailand:**

  1. Black & white photocopies will be reimbursed at a rate of 5 THB per page

  2. Color photocopies will be reimbursed at a rate of 10 THB per page.

H. **Indonesia:**

  1. There will be no reimbursement for any photocopying of documents fewer than 500 pages.

  2. Where photocopying of documents over 500 pages is required, it will be reimbursed at IDR100/per page.

I. **Taiwan:**

  Photocopying will be reimbursed at the actual cost to the Law Firm which Chubb in its sole discretion believes is reasonable and upon production of a receipt.

J. **Malaysia:**

  1. Photocopying charges will be reimbursed at actual cost upon production of a receipt and which in Chubb 's sole discretion it considers reasonable.

  2. In the absence of a receipt, black & white photocopies will be reimbursed at a rate of RM 0.35 (US $0.08) per page up to a cap of RM500 and Color photocopies will be reimbursed at a rate of RM 1.00 (US $0.20) per page up to a cap of RM500.

**External Photocopying**

    A. **United States and Canada:** External photocopying is only reimbursable for photocopying projects over 200 pages or $500 (or the local currency equivalent).  Additionally, it may also be necessary to outsource photocopying either because a special service is needed (e.g., color photocopying) or because special documents such as plans are required.  In these circumstances, **Prior Approval** must be obtained from the Claim Handler.

    B. **United Kingdom, Republic of Ireland, Australia, New Zealand, and Puerto Rico:** Occasionally, it may be necessary to outsource photocopying either because a special service is needed (e.g., color photocopying), the project is over 500 pages, or because special documents such as plans are required.  If so, Prior Approval must be obtained from the Claim Handler.  If you have received Prior Approval, the narrative must include the name of the person granting Prior Approval and the date on which it was granted.

    C. **Hong Kong, Singapore, Taiwan, Indonesia, Korea, Malaysia, and Thailand:**  There will be no reimbursement for any external photocopying charges.

**Couriers**

    A. Generally

        1. Courier charges inconsistent with the below, including any modifications in the Jurisdiction Specific Requirements Section, may not be reimbursed at Chubb's sole discretion.

        2. Wherever possible, time-sensitive documents should be sent via email or facsimile.  A Courier must only be used when absolutely necessary, not because the Law Firm has neglected to allow sufficient time within which to complete something and forward it in a timely manner, and only if electronic transmission through email or facsimile is not a viable alternative.

        3. Such expenses will be reimbursed, subject to a limit of $250 (or local currency equivalent) for an individual item.  If the cost should exceed $250, Prior Approval must be obtained, except in cases of emergency.

    B. Jurisdiction Specific Requirements

        1. **Korea and Thailand:** Charges for Courier services will be reimbursed at actual cost to the Law Firm upon production of a receipt and which are determined to be reasonable at Chubb's sole discretion.

        2. **Indonesia:**

           a. Within Jakarta: There will be no reimbursement of charges up to IDR500k for courier services within Jakarta.  Charges over IDR500k require **Prior Approval**.

           b. Charges for courier services oversees will be reimbursed at cost upon production of a receipt and which are determined to be reasonable at Chubb's sole discretion.

## Appendix 9 – Compliance with Laws

"Laws" shall have the meaning ascribed to it as set out in item 1.A.1.b of this LSA. While Chubb does not intend to specify or limit these obligations through this LSA, there are some local and regional provisions that have specific performance and handling requirements.

## General Data Protection Regulation

**Note** – The GDPR provisions set out below only apply to Law Firms (i) established in the European Union and/or the UK or (ii) Law Firms outside the European Union and/or UK and offering/providing services to and/or otherwise processing any personal data (as defined below) of European Union data subjects (as defined by the GDPR) or UK data subjects while performing its obligations under or in connection with this LSA.

If additional clarification is needed regarding the applicability of GDPR, please refer to the Information Commissioner's Office (ICO) website at https://ico.org.uk/for-organisations/guide-to-the-general-data-protection-regulation-gdpr/key-definitions/.

A.   Definitions

1.   For the purposes of this Appendix 9, the following definitions apply:

a.   **"Affiliate"** means an entity that owns or controls, is owned or controlled by or is under common control or ownership with either Chubb or Supplier (as the context allows), where control is defined as the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, by contract or otherwise;

b.   **"Data Protection Legislation"** means the EU General Data Protection Regulation 2016/679 of the European Parliament and of the Council ("**GDPR**") and Directive 2002/58/EC, in each case as supplemented or modified by, or transposed into, domestic legislation of each Member State of the European Economic Area ("**EEA**"), UK Data Protection Laws or, to the extent applicable, the data protection or privacy laws of any other country;

c.   **"Data Subject Request"** means a request from a Data Subject to exercise any right under the Data Protection Legislation;

d.   **"Discloser"** means the party sharing Personal Data with the Recipient pursuant to this Agreement;

e.   **"EU SCCs"** means the Standard Contractual Clauses set out in the Commission Implementing Decision (EU) 2021/914 of 4 June 2021 on standard contractual clauses for the transfer of personal data to third countries pursuant to the GDPR and incorporated by reference into this Agreement; as amended or replaced from time to time by a competent authority under the relevant Data Protection Legislation;

f.   **"EU Restricted Transfer"** means a transfer of Personal Data by Chubb or a Chubb Affiliate to the Supplier or any Supplier Affiliate (or any onward transfer), in each case, where such transfer would be prohibited by the GDPR in the absence of the protection for the transferred Personal Data provided by the EU SCCs;

g.   **"Recipient"** means the party receiving Personal Data from the Discloser pursuant to this Agreement;

h.   **"Restricted Transfer"** means either an EU or UK Restricted Transfer;

i.   **"Supervisory Authority"** means (a) an independent public authority which is established by a Member State pursuant to Article 51 GDPR; and (b) any similar regulatory authority responsible for the enforcement of Data Protection Legislation;

j.   **"Supplier"** means the Law Firm;

k.   **"UK Data Protection Laws"** means the GDPR as transposed into United Kingdom national law by operation of section 3 of the European Union (Withdrawal) Act 2018 and as amended by the Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019 ("**UK GDPR**"), together with the Data Protection Act 2018,

the Privacy and Electronic Communications (EC Directive) Regulations 2003 (as amended) and other data protection or privacy legislation in force from time to time in the United Kingdom;

l.   **"UK IDTA"** means the International Data Transfer Addendum to the EU Commission Standard Contractual Clauses issued by the UK Information Commissioner under section 119A(1) Data Protection Act 2018;

m.   **"UK Restricted Transfer"** means a transfer of Personal Data by Chubb or any Chubb Affiliate to the Supplier or any Supplier Affiliate (or any onward transfer), in each case, where such transfer would be prohibited by UK Data Protection Laws in the absence of the protection for the transferred Personal Data provided by the UK IDTA; and

n.   **"Process/Processing", "Data Controller", "Data Processor", "Data Subject", "Personal Data Breach"** and **"Special Categories of Personal Data"** have the same meaning as in the Data Protection Legislation.

B.   **Data Controllers**

1.   The parties acknowledge that each will act as a separate Data Controller in relation to the Personal Data which they Process.

2.   The parties shall each comply with their respective obligations under the Data Protection Legislation in respect of their processing of Personal Data.

C.   **Disclosing of Personal Data**

1.   Where acting as a Discloser, each party shall:

a.   only disclose the Personal Data for one or more defined purposes which are consistent with the terms of the Agreement (**"Permitted Purposes"**);

b.   ensure that it has (i) procured for a notice to be made available to the relevant Data Subject(s) informing them that their Personal Data will be disclosed to the Recipient or to a category of third party describing the Recipient; and (ii) obtained any necessary consents or authorisations required to permit the Recipient to freely process the Personal Data for the Permitted Purposes;

c.   only disclose any Special Categories of Personal Data to the Recipient where necessary for the Permitted Purposes and then only having obtained the explicit prior consent of the relevant Data Subjects, or established (to the satisfaction of the Recipient) an alternative lawful basis for the disclosure; and

d.   be responsible for the security of any Personal Data whilst in transmission from the Discloser to the Recipient.

D.   **Processing of Personal Data**

1.   Where acting as a Recipient, each party shall:

a.   not Process Personal Data in a way that is incompatible with the Permitted Purposes (other than to comply with a requirement of applicable law to which Recipient is subject);

b.   not Process Personal Data for longer than is necessary to carry out the Permitted Purposes (other than to comply with a requirement of applicable law to which Recipient is subject); and

c.   taking into account the state of the art, the costs of implementation and the nature, scope, context and purposes of Processing, as well as the risk of varying likelihood and severity for the rights and freedoms of natural persons, have in place appropriate technical and organisational security measures to protect the Personal Data against unauthorised or unlawful Processing, or accidental loss or destruction or damage.

E.   **Personal Data Breaches**

1.   The Recipient shall notify the Discloser without undue delay following any Personal Data Breach involving the Personal Data.

2.   Each party shall co-operate with the other, to the extent reasonably requested, in relation to any notifications to Supervisory Authorities or to Data Subjects which are required following a Personal Data Breach involving the Personal Data.

F. **Further Co-operation and Assistance**

1. Each party shall co-operate with the other, to the extent reasonably requested, in relation to:

   a. any Data Subject Requests, audits and inspections and data impact assessments;

   b. any other communication from a Data Subject concerning the Processing of their Personal Data; and

   c. any communication from a Supervisory Authority concerning the Processing of Personal Data, or compliance with the Data Protection Laws.

G. **Data Transfers**

1. The parties hereby enter into Module 1 of the EU SCCs in respect of any EU Restricted Transfers which are hereby incorporated into this Agreement (the full text is available on request or here) and which come into effect upon the commencement of an EU Restricted Transfer.  The parties make the following selections for the purposes of Module **1**:

   a. Optional clause 7 (*Docking clause*) shall apply but optional clause 11(a) (*Redress*) shall not apply;

   b. The supervisory authority for the purposes of clause 13(a) (*Supervision*) is the *Commission nationale de l'informatique et des libertés* (CNIL);

   c. For the purposes of clause 17 (*Governing law*) and clause 18 (*Choice of forum and jurisdiction*) the parties select the laws, forum and jurisdiction of France;

   d. For the purposes of the Appendix, the description of transfer is set out in Annex A to this Agreement and the technical and organizational security measures  are set out in Appendix 5.

2. The parties hereby enter into the EU SCCs in respect of any UK Restricted Transfers, which shall be read in accordance with, and deemed amended by, the provisions of Part 2 (Mandatory Clauses) of the UK IDTA and which shall come into effect upon the commencement of a UK Restricted Transfer. The Parties confirm that the information required for the purposes of Part 1 (Tables) of the UK IDTA is set out as follows:

   a. Table 1: the parties are the parties to this Agreement;

   b. Table 2: the information regarding the selections made for the EU SCCs are set out in clause 1G1;

   c. Table 3: the description of transfer is set out in Annex A to this Agreement and the technical and organizational security measures are set out in Appendix 5; and

   d. Table 4: Importer and Exporter are both selected as being able to end the addendum.

3. For transfers of Personal Data that are subject to the Swiss Federal Act on Data Protection ("**FADP**"), the EU SCCs form part of this Agreement as set forth in clause G1, but with the following changes to the extent required by the FADP:

   a. References to the GDPR in the EU SCCs are to be understood as references to the FADP insofar as the data transfers are subject exclusively to the FADP and not to the GDPR.

   b. The term "member state" in the EU SCCs shall not be interpreted in such a way as to exclude data subjects in Switzerland from the possibility of suing for their rights in their place of habitual residence (Switzerland) in accordance with Clause 18(c) of the EU SCCs.

   c. References to personal data in the EU SCCs also refers to data about identifiable legal entities until the entry into force of revisions to the FADP that eliminate this broader scope.

   d. Under Annex I(C) of the EU SCCs (Competent supervisory authority):

      i. Where the transfer is subject exclusively to the FADP and not the GDPR, the supervisory authority is the Swiss Federal Data Protection and Information Commissioner.

      ii. Where the transfer is subject to both the FADP and the GDPR, the supervisory authority is the Swiss Federal Data Protection and Information Commissioner insofar as the transfer is governed by the FADP, and the supervisory authority is as set forth in clause G1.b of this Agreement insofar as the transfer is governed by the GDPR.

4. To the extent that there is any conflict or inconsistency between the terms of the EU SCCs or UK IDTA and the terms of this Agreement, the terms of the EU SCCs or UK IDTA shall take precedence.

5. The EU SCCs and/or UK IDTA  that form part of this Agreement, are deemed signed and agreed by the parties in accordance with their entry into this Agreement, and shall come into effect on the commencement of an EU or UK Restricted Transfer (respectively) among any parties to the EU SCCs or UK IDTA.

6. If, and to the extent that, the European Commission or the United Kingdom issues any amendment to, or replacement of, the EU SCCs or UK IDTA pursuant to Article 46(5) or Article 46 of the GDPR or UK GDPR, the Parties agree in good faith to take such additional steps as necessary to ensure that such replacement terms are implemented across all transfers.

7. If, at any time, a Supervisory Authority or a court with competent jurisdiction over a Party mandates that transfers from Controllers in the EEA or the United Kingdom to Controllers established outside the EEA or the United Kingdom must be subject to specific additional safeguards (including but not limited to specific technical and organisational measures), the Parties shall work together in good faith to implement such safeguards and ensure that any transfer of Personal Data is conducted with the benefit of such additional safeguards.

8. The Supplier shall ensure that Module 2 of the EU SCCs shall also apply between Supplier and each of Supplier's processors where there is an applicable Restricted Transfer of Chubb's Personal Data.

**H. General Information Security Requirements**

1. The Supplier hereby acknowledges and agrees to the Information Security Best Practices attached hereto as Appendix 5.

## Annex A: Information Required By The EU SCCS And UK IDTA

**Part 1: List Of Parties**

**Data exporter(s):** Chubb or any Chubb Affiliate

**Data importer(s):** Supplier or any Supplier Affiliate

**Part 2: Description of Transfer**

**Data subjects:**

*Insured Persons: including policyholders, covered or named persons and persons related to a corporate policyholder)*

*Claimants: including policyholder claimants and third party claimants; and*

*Business Partner: including brokers, solicitors, medical experts, accountants, loss adjusters, individual representatives of corporate suppliers and service providers and individual suppliers.*

**Purposes of the transfer(s):**

*The data exporter and the data importer are sharing personal data for the purposes of the data importer providing an expert professional opinion relevant to an ongoing claim.*

**Categories of data:**

*Insured Person Data: name, address, telephone number, email address, policy number, relationship to the policyholder, details of policy including insured amount, exceptions etc., previous claims, gender, date of birth, vehicle registration number, professional history or CV, schedule of possessions, property construction, physical condition, security, fire protection and value, bank account details or credit card data used for billing;*

*Claimant Data: policy number, relationship to the policyholder/insured person, details of policy including insured amount, exceptions etc., previous claims, details of incident giving rise to claim, handset details and IMEI number, vehicle registration number; and*

*Business Partner Data: name, work address, work email, work telephone numbers, job title, interests / marketing list assignments,] [record of permissions or marketing objections, website data (including online account details, IP address and browser generated information).*

**Frequency of transfer**

*[e.g. weekly/monthly/annual]*

**Period for which data will be retained**

*The applicable Chubb retention timeframes/ongoing/one off/determined in accordance with data retention policies of the data importer.*

*Any processors shall only retain the Personal Data for the longer of: (i) the minimum timeframe required to fulfil the purpose of its collection or (ii) the minimum timeframe as required by law, or as otherwise instructed by Chubb.*

**Recipients**

The personal data may be disclosed to group companies and to third party companies which are contracted to provide relevant services under the instruction of the data importer, where reasonably required for the purposes of the transfer outlined above.

**Sensitive data (if appropriate):**

*Health Data (physical and mental conditions, medical history and procedures, relevant personal habits (e.g. smoking, alcohol consumption), details of injury, medical reports; and*

*Criminal Data (driving offences, unspent convictions), driving offences, police reports.*

**Part 3: Competent Supervisory Authority**

*Identify the competent supervisory authority/ies in accordance with **Error! Reference source not found.**:*

See clause G G.1.b of this Appendix 9.

## Jurisdiction Specific Requirements

### United Kingdom and/or the Republic of Ireland ("ROI")

Enterprise Act 2016

Where a Law Firm is governed by the laws and regulations of England and Wales and/or is providing the services in the United Kingdom, it understands that Chubb is required to pay claims within a reasonable period of time to be compliant with its obligations under the Enterprise Act 2016. On this basis, the Law Firm confirms that it will:

a.   immediately notify Chubb of any complaint it receives with respect to its representation of our Insured or concerning Chubb itself;

b.   meet its various service level deadlines outlined throughout this LSA and if it knows that it will not be able to meet a deadline then notify Chubb as soon as possible; and

c.   indemnify Chubb on demand and keep it wholly and effectively indemnified against any loss, liability, claim, proceedings, settlement, damages, costs, and expenses arising directly out of, or in connection with, any breach by Chubb of the Enterprise Act 2016 directly caused by an act, negligent act, error, or omission, on the part of the Law Firm.

Financial Crime

Where the Law Firm is governed by Laws and regulations in the United Kingdom and or ROI, and/or is providing legal services to Chubb in the United Kingdom and or ROI, it warrants that it will not engage in any activity, practice, or conduct which would constitute tax evasion or foreign tax evasion in accordance with United Kingdom and or ROI Laws (as applicable). The Law Firm shall have and shall maintain in place throughout the term of this LSA, such policies and procedures as are reasonable to ensure its compliance with this provision and will notify Chubb if the Law Firm becomes aware of any breach of United Kingdom and or ROI tax evasion Laws (as applicable) in connection with the Law Firm's provision of legal services to Chubb in the United Kingdom and or ROI (as applicable). Breach of this anti-tax evasion provision shall constitute a material breach of this LSA.

The following provision supplements Section I(A)(12) above:

Anti-slavery and Human Trafficking

•   The Law Firm must include in its procurement processes and contracts with sub-contractors and suppliers' anti-slavery and human trafficking provisions which are at least as comprehensive as those in this LSA.

### New Zealand

Privacy Act 2020 (New Zealand)

Where a Law Firm that is a foreign person or entity receives disclosure of personal information from Chubb companies established under New Zealand law in relation to an Assignment to which this LSA applies, the Law Firm agrees to comply with the Privacy Act 2020 (New Zealand).  For the purposes of this clause:

•   "foreign person or entity" means a Law Firm that is not established under the law of New Zealand and does not have its central control and management in New Zealand; and

•   "personal information" means information about an identifiable individual.

### Indonesia

Choice of Law

The parties agree that notwithstanding section I(A)(13), where the Chubb entity or the Insured named on the Declarations page of the Chubb policy (as applicable) are located in Indonesia, this LSA and any relevant Assignment shall be governed by and construed in accordance with the laws of Singapore and the courts of Singapore shall have jurisdiction over any dispute arising out of or in connection with this LSA and any relevant Assignment.

Chubb. Insured.™

Chubb is the marketing name used to refer to subsidiaries of Chubb Limited providing insurance and related services. For a list of these subsidiaries, please visit our website at www.chubb.com. All products may not be available in all states. Coverage is subject to the language of the policies as issued. P.O. Box 1600, Whitehouse Station, NJ 08889-1600. (Rev 6/20)