Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |
| | § | Hearing: **December 21, 2023 @ 9:30 a.m.** |

**TRUSTEE'S MOTION UNDER RULE 4001(D) FOR APPROVAL
OF CASH COLLATERAL STIPULATION WITH UMB BANK, NATIONAL
ASSOCIATION, AS INDENTURE TRUSTEE, AND U.S. BANK, NATIONAL
ASSOCIATION, AS COLLATERAL AGENT**

**PURSUANT TO BANKRUPTCY RULE 4001(D)(2), ANY OBJECTION TO THIS MOTION MUST BE FILED ON OR BEFORE DECEMBER 14, 2023 AT EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., RM. 1254, DALLAS, TX 75242-1496. ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed trustee for the estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above-styled bankruptcy case (the "Bankruptcy Case"), and files this *Trustee's Motion Under Rule 4001(d) for*

*Approval of Cash Collateral Stipulation With UMB Bank, National Association, as Indenture Trustee, and U.S. Bank, National Association, as Collateral Agent* (the "Motion"), as follows:

## I. JURISDICTION AND VENUE

1. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the Estate.

2. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

3. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II. RELIEF REQUESTED

4. By this Motion, pursuant to Bankruptcy Rule 4001(d)(2), the Trustee requests that the Court approve a cash collateral usage agreement and stipulation between the Trustee and UMB Bank, National Association, as Indenture Trustee (the "Indenture Trustee"), and U.S. Bank, National Association, as Collateral Agent (the "Collateral Agent"), as documented and effectuated pursuant to the *Order Authorizing Scott M. Seidel, Chapter 7 Trustee to Utilize Cash Collateral, Granting Adequate Protection, and Granting Related Relief* (the "Proposed Order"),[1] attached hereto as Exhibit "A" and incorporated herein, with respect to the "Cash Collateral" (as defined in section 363(a) of the Bankruptcy Code) of the holders of the 8% Senior Secured Notes due 2022

---

[1] The signatures of counsel to the Indenture Trustee and the Collateral Agent will be added to the Proposed Order in a supplemental filing. Counsel for the Majority Bondholders has informed counsel to the Trustee that the Majority Bondholders consent to the use of cash collateral on the terms outlined in the motion, and the signatures of counsel for the Majority Bondholders are included in the proposed order.

issued by the Debtor pursuant to that certain indenture dated as of May 31, 2017 (the "Bondholders").

5. In summary, under the Proposed Order, the Trustee would have access to $375,000.00 of Cash Collateral to pay professional expenses in the Bankruptcy Case, to the extent otherwise allowed by separate order, and $125,000.00 of the Cash Collateral would be released to the Bondholders. In return, the Bondholders would receive customary and ordinary protections for the diminution of their collateral, as otherwise specified in the Proposed Order, including a superpriority administrative expense claim and replacement liens to the extent of such diminution. Importantly, the Proposed Order does not propose to prime any competing interest and preserves all disputed and alleged interests of other alleged creditors as against property of the Estate.

### III. FACTUAL BACKGROUND

6. In 2017, the Debtor issued $125,000,000.00 in publicly traded, senior secured bonds. As part of these transactions, the Debtor entered into extensive indenture, loan, and security agreements and instruments with the Indenture Trustee and the Collateral Trustee.

7. As of the Petition Date, the Bondholders assert that $18,018,573, plus accrued and unpaid interest and default interest of not less than $720,160.10, fees, expenses, and other amounts due under the Indenture were owing. The Trustee agrees, save and except with $1.6 million that he believes should have been cancelled or may be owned by the Estate.

8. In order to secure its obligations to the Bondholders, the Debtor granted the Collateral Agent, for the benefit of the Bondholders, security interests in substantially all of its assets. The Collateral Agent generally perfected its security interests prior to the Petition Date by filing UCC financing statements with the requisite authorities and taking other perfection steps.

9. True and correct copies of the indenture, loan agreements, and security instruments of the Indenture Trustee, Collateral Agent, and Bondholders are filed at (and have previously been admitted into evidence) Docket No. 397, specifically at Exhibits 1 through 42.

10. As of the date of this Motion, and <u>excluding</u> funds held at Prosperity Bank (and subject to the Prosperity 9019 motion presently under advisement) and funds held in a segregated account received from AMRR (from the prior sale of its Fiber Business and any other proceeds that may come in from the same), the Trustee is holding $531,700.99 in funds of the Debtor and the Estate.

11. $177,072.37 of these funds are from the checking account at East West Bank ending in 5481. The Collateral Agent, for the benefit of the Bondholders, entered into that certain *Amended and Restated Intercreditor Agreement* dated as of January 27, 2000, with East West Bank, as acknowledged and agreed to by the Debtor, pursuant to which, among other things, East West Bank agreed to hold all funds of the Debtor in its possession as bailee for the Collateral Agent "solely for the purpose of perfecting the security interest" of the Collateral Agent. This constitutes an authenticated record under the Uniform Commercial Code for the purpose of perfecting a security interest in the $177,072.37 in the East West Bank account because this agreement is executed by East West Bank, the Collateral Agent, and the Debtor. *See* TEX. BUS. & COMM. CODE ANN. § 9.104(a)(2).

12. Most of the remaining funds represent the return of retainers funded by the Debtor to third parties, including: $150,988.98 from Connor Lee & Shumaker, PLLC, and $146,802.87 from Russell F. Nelms. While a retainer in the hands of a third person may give rise to a superior interest to the Collateral Agent's prepetition security interests (a proposition with which the Bondholders do not necessarily agree), once those retainers were returned to the Estate, they

represented general intangibles under the Uniform Commercial Code with respect to which the Collateral Agent holds perfected security interests. A further $18,053.32 is the return of a lease security deposit, and therefore subject to the same analysis, and an additional $25,812.98 is for the collection of accounts receivable, against which the Collateral Agent also holds perfected security interests.

13. Therefore, at least $518,730.52 of the funds held by the Trustee represent the Cash Collateral of the Bondholders, because their security interests with respect to the same were perfected as of the Petition Date. Again, for the avoidance of doubt, these funds exclude the disputed Prosperity Bank funds and the $300,000.00 from the AMRR sale of its Fiber Business, with respect to which this Motion and the Proposed Order are wholly without prejudice.

## IV. DISCUSSION

14. The Bankruptcy Code provides that the Trustee may not use Cash Collateral unless "each entity that has an interest in such cash collateral consents; or [] the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Bankruptcy Code further provides that, with respect to the use of collateral, including Cash Collateral, "the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id.* at § 363(e).

15. The Bankruptcy Rules provide for a streamlined and expedited manner in which the Court may consider an agreement for the use of the Cash Collateral. Namely, Bankruptcy Rule 4001(d)(1)(A)(ii) provides for the filing of a motion, accompanied by the proposed agreement and form of order, for the Court's consideration. FED. R. BANK. P. 4001(d)(1)(A)(ii). Notice of the motion and the agreement must be provided as otherwise specified, and, "[u]nless the court fixes

a different time, objections may be filed within 14 days of the mailing of the notice." FED. R. BANK. P. 4001(d)(2). No Local Rule changes this 14-day deadline; hence the filing of this Motion with the negative notice language used above.

16. For the reasons stated above, at least $500,000.00 of the funds held by the Trustee for the Debtor constitute Cash Collateral of the Collateral Agent and the Bondholders. The Trustee has a need to use a portion of these funds to help fund the administration of the Estate. As the Court knows, this is a large and complicated estate, and the Trustee has retained multiple professionals to assist him in administering it. These professionals have been working without interim payment for almost one year, and the Trustee believes it proper and equitable to provide a meaningful interim payment to them, which he cannot do from the Cash Collateral without consent. As it reasonably appears that the Estate will recover more than enough funds to repay the Bondholders for this usage of their Cash Collateral, there is no reason why the funds should just sit there for years, without being put to good use.

17. The Bondholders are agreeable to permitting the Trustee to use a portion of their Cash Collateral to help defray, on an interim basis, the costs of administering the Estate—which benefits all creditors. In return, they are entitled to adequate protection. Adequate protection may take many forms, *see* 11 U.S.C. § 361, including a cash payment and replacement liens. Here, the Trustee and Bondholders have negotiated an agreement whereby the Estate may use $375,000.00 of the funds towards professional fees, to the extent allowed, and $125,000.00 of the funds are turned over to the Bondholders (with the Court retaining the ultimate authority to determine where this payment should be applied which, depending on recoveries, may or may not be an issue).

18. Therefore, the Proposed Order contains protections, terms, and provisions that are customary, ordinary, and appropriate. While perhaps unusual in Chapter 7, these terms are

standard in Chapter 11 cases, designed to protect the Bondholders against a diminution in the value of their collateral while also providing other benefits to the Bondholders and the Estate. Here, these terms include the following key provisions (parties are cautioned to review the Proposed Order in detail for all other terms and provisions, as the Proposed Order, if approved, will govern):

(i) Recognizing the validity of the Bondholders' claims (save and except for $1,600,000.00 that the Trustee reserves his rights against), and a finding that the Bondholders' liens and security interest are valid, enforceable, and not subject to dispute and avoidance. The Trustee has reviewed these issues in detail and agrees with the validity of the Bondholders' claims and liens, and neither knows of, nor has been informed of, any basis to challenge the same. At the same time, the rights of third parties who may assert constructive trust or other equitable rights are preserved.

(ii) The Estate waives surcharge claims, except the agreed-upon surcharge that is presently under advisement as part of the Prosperity 9019 proceedings, any potential surcharge claims in any future case of a Debtor subsidiary, and except that the Trustee may retain contingency counsel notwithstanding anything contained to the contrary. The Trustee believes that this provision is fair and reasonable, in that it protects his pre-existing surcharge agreement, a surcharge is mooted through the use of Cash Collateral, and the Trustee does not believe that the Estate would hold future surcharge claims because he does not believe that the assets remaining to be monetized constitute the Bondholders' collateral.

(iii) The Bondholders receive replacement liens to the extent of the diminution in value of their collateral as against all other property of the Estate; again subject to any

interest or claim that property of the Estate is subject to a constructive trust or other equitable lien or interest. The Trustee is agreeable to this protection because it is provided for in section 361 of the Bankruptcy Code, because it is a customary and standard provision, and because the Trustee is confident that there will be no diminution or, if there is, that he will be able to quickly repay the Bondholders for the use of their Cash Collateral.[2]

(iv) The Bondholders receive a superpriority administrative claim to the extent of the diminution in value of their collateral; again subject to any interest or claim that property of the Estate is subject to a constructive trust or other equitable lien or interest. The Trustee is agreeable to this protection because it is provided for in section 507(b) of the Bankruptcy Code, only if there is a failure of adequate protection, which he does not believe there will be. And, the only parties directly affected by this provision are professionals and the Trustee (no other administrative claimants are known), who will be benefited by the use of the Cash Collateral.

19. Therefore, the Trustee submits that the approval of the Proposed Order is fair, reasonable, equitable, and in the Estate's best interests; that it protects all creditors and helps aid in their recovery; that it preserves disputed interests of third parties as against property of the Estate such that the Proposed Order is not a "Trojan Horse" designed to elevate the Bondholders' interests; and that it puts to good use funds held by the Trustee that would otherwise just sit there.

---

[2] Granting replacement liens against Chapter 5 claims, as the Proposed Order does, is admittedly unusual, but it is fully justified under the facts of this Bankruptcy Case. A Chapter 7 case, unlike some Chapter 11 cases, is run for the benefit of creditors. In Chapter 11, sometimes the only thing unsecured creditors have are Chapter 5 claims. Here, however, the work of the Trustee and his professionals that the Cash Collateral will help pay for will only increase the value of the Chapter 5 claims for the benefit of everyone. And, since the use of Cash Collateral is only $375,000—a drop in the bucket compared to the $80 million or more in Chapter 5 (and related) claims—the Trustee believes that other creditors will only benefit from this provision. And, at least at present, it appears to the Trustee that the Bondholders themselves are undersecured, therefore unsecured, creditors.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order: (i) granting this Motion; (ii) approving and entering the Proposed Order as an order of the Court; and (iii) granting the Trustee such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 30th day of November, 2023.

        **MUNSCH HARDT KOPF & HARR, P.C.**

    By: /s/ Davor Rukavina
        Davor Rukavina, Esq.
        Texas Bar No. 24030781
        Thomas D. Berghman, Esq.
        Texas Bar No. 24082683
        3800 Ross Tower
        500 N. Akard Street
        Dallas, Texas 75201
        Telephone: (214) 855-7500
        Facsimile: (214) 855-7584

    **ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 30th day of November, 2023, true and correct copies of this document, with the exhibit, were served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same day he caused a true and correct copy of this document, with the exhibit, to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached service list.

    By: /s/ Davor Rukavina
        Davor Rukavina