**BUTLER SNOW LLP**
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com

and

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

*Counsel for FedEx Supply Chain*
*Logistics & Electronics, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| GOODMAN NETWORKS, INC. | § | Case No. 22-31641 (MVL) |
| | § | |
| Debtor. | § | **Relates to Docket No. 449** |
| | § | |

**OBJECTION AND RESERVATION OF RIGHTS OF FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC. TO TRUSTEE'S EXPEDITED MOTION TO APPROVE TRANSACTION WITH AMRR REGARDING ONEPATH SYSTEMS, LLC**
**(ECF NO. 449).**

FedEx Supply Chain Logistics & Electronics, Inc. ("FSCLE") files this Objection and Reservation of Rights to the *Trustee's Expedited Motion to Approve Transaction with AMRR Regarding OnePath Systems, LLC* (the "Objection" to the "Motion") (ECF No. 449). FSCLE respectfully states the following:

1

1. AMRR is nothing more than the proceeds of a fraud and theft perpetrated against FSCLE by Jim Frinzi, James Goodman, and their co-conspirators (the "Bad Actors"). It is one of several shell companies used by the Bad Actors to launder funds stolen from FSCLE for their own personal benefit through racketeering activities that involved the Debtor. FSCLE has claims pending in the Northern District of Texas against AMRR and its subsidiaries, AMR Resources, LLC, and OnePath Systems, LLC., among others. At least $44 million was stolen from FSCLE and funneled through the Debtor to AMRR and the Bad Actors. FSCLE seeks direct damages in excess of $240 million[1] from AMRR and its related companies and persons.

2. This fraud and theft have given rise to competing interests that were not fully understood at the beginning of this involuntary bankruptcy case. Nonetheless, the Trustee, the Bondholders, and FSCLE agree that the assets of AMRR and its subsidiaries should be maximized now for either the benefit of FSCLE or this bankruptcy estate.

3. Earlier this year, the Court approved pursuant to Bankruptcy Rule 9019 a settlement that allowed AMRR to sell a business unit to a special purpose entity formed by Shalom Auerbach, a Bad Actor, in return for proceeds of the sale being held by the Trustee pending resolution of the competing claims to those funds. FSCLE has sued Shalom Auerbach for direct damages in excess of $240 million. The Trustee is presently holding the proceeds of that sale pursuant to this Court's order.

4. Now, the Trustee seeks this Court's approval pursuant to Bankruptcy Rule 9019 of another settlement that would allow AMRR to sell another business unit for $3,563,000 in return for most of those proceeds to be held by the Trustee pending resolution of the competing claims

---

[1] The federal RICO statute allows an injured party to recover trebled damages against each defendant that participated in the racketeering violations. Here, FSCLE has alleged in excess of $80 million in direct damages (trebled to in excess of $240 million) resulting from the Bad Actors racketeering violations.

to those funds. The buyer at this newest sale appears to be a true third party and does not appear to be a Bad Actor. FSCLE does not object in concept to this business unit being liquidated for fair value and the proceeds being held pending further resolution in this Court. Indeed, there may be traction to resolving those competing claims consensually among the Trustee, FSCLE, and the Bondholders or at least agreeing to mediate those claims.

5. FSCLE does not object in concept to a deal structured around the Up-Front Payment, the Note, the Contract Holdback, or the Indemnification Holdback, and files this limited objection to object that that the definitive deal documents evidencing those agreements, including the MPA and the underlying contract of the business unit, have not yet been disclosed to FSCLE and the Court. Absent disclosure of definitive deal documents, neither FSCLE nor this Court can understand the proposed settlement, and the Trustee has not carried his burden to show that the settlement is fair and reasonable. *Matter of AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984) (disapproving a settlement where the record "reveals gaping holes in the background information"). FSCLE anticipates that this portion of the limited objection can be resolved by the Trustee's disclosure of definitive deal documents and the negotiation of those documents and any form order. FSCLE requests adequate time to allow for such disclosures and negotiations before the Court adjudicates the expedited motion and reserves all rights and objections pending such disclosures.

6. In addition, the business unit being sold is based on a single contract related to the "Lockheed" business unit. Upon information and belief, AMRR has not given the Trustee access to the underlying contract that makes up 100% of this business unit's revenues, and the Trustee does not know terms of the contract, including future compensation to be paid and the terms and conditions of any renewals or extensions. There is nothing in the record to evidence that

3

$3,563,000 is a fair and reasonable compensation based on the terms of the contract, except that the Trustee is projecting historical revenues from the prior 10 months to be representative of future business. However, the Trustee offers nothing to substantiate the reasonableness of that projection.

7. FSCLE understands that AMRR is refusing to disclose contract terms because it asserts the contract is "secret" and requires security clearances from the government. AMRR and the Trustee are required to carry the burden on any privilege, and nothing has been provided as of this filing. Absent disclosure of these contract terms or proof of a privilege, neither FSCLE nor this Court can understand the proposed settlement, and the Trustee has not carried his burden to show that the settlement is fair and reasonable.

8. If a privilege is shown, the Court should establish protections and procedures for the limited disclosure of material contract terms that do not affect the "secret" or security provisions of the contract. For example, it is not expected that the renewal or extension provisions will contain "secret" information because a renewal or extension provision is routine contract language. Alternatively, the Court could perform an in-camera review of the contract to determine whether material provisions contain "secret" information that should be redacted. What is not acceptable is for the Court to be deprived of key facts that are necessary to determine whether the settlement is fair and reasonable. Again, FSCLE anticipates that this portion of the limited objection can be resolved upon adequate disclosure subject to reasonable protections.

9. Turning to the heart of this Objection, FSCLE objects to the Carveout and an AMRR Bankruptcy, as part of the proposed settlement. The Trustee proposes to allow AMRR to have $600,000 of the sale proceeds to fund a chapter 11 bankruptcy filing for AMRR in the District of Delaware. There are no restraints on AMRR's use of the $600,000, and AMRR's "independent" CRO, CFGI, LLC (Joseph Baum), who would purportedly control the AMRR Bankruptcy, was

4

employed by Jim Frinzi twice – (1) at Goodman Networks during the fraud and theft on FSCLE and (2) by AMRR as a continuation of the fraud and theft on FSCLE. FSCLE raises conflict of interest concerns with Mr. Baum and CFGI pursuing Mr. Frinzi for fraudulent conveyances, breaches of fiduciary, and fraud and theft claims in a future AMRR Bankruptcy. Mr. Baum testified Mr. Frinzi was still on payroll at the time of the prior settlement hearing before this Court. He is clearly not objective and neutral to Mr. Frinzi after being employed twice and paying himself and Mr. Frinzi significant compensation. This Court should not bless such arrangement absent adequate assurances and protections regarding the use of the $600,000 and a truly independent fiduciary capable of investigating the AMRR estate and pursuing causes of actions against any litigation targets, including Frinzi and perhaps CFGI.

10. Moreover, the Trustee maintains inconsistent positions. He alleges FSCLE violated the automatic stay by suing AMRR while at the same time saying that someone other than the Trustee controls AMRR. Motion at 17 ("Mr. Baum is a true, independent CRO of AMRR and the Trustee is satisfied that *he has control over* the business, books and records, and funds of AMRR" (emphasis added)); *Id*. at 20 ("The decision whether to file such a case, however, is not the Trustee's, but rather is Mr. Baum's."). Mr. Baum and AMRR have not sought relief from the stay to control AMRR and its assets. Instead, he is leveraging his control over AMRR to negotiate a Carveout that will presumably be used to pay his CRO fees and the professional fees of the attorneys that he employed on behalf of AMRR. To put it bluntly, a metaphorical gun has been put to the Trustee's head and he has been asked to approve this deal or AMRR craters. It is AMRR's "price" for turning over the other sale proceeds. As evidence of this, the Carveout comes with no budget and no restraints until, and if, an AMRR Bankruptcy is filed, which will require the Delaware bankruptcy court to approve use of cash collateral. Neither the Trustee nor AMRR have

identified any assets that could be administered in an AMRR Bankruptcy let alone $600,000 of assets that could be distributed to the Trustee after AMRR incurs administrative costs. Indeed, AMRR proposes spending $150,000 to $200,000 simply investigating causes of action before a bankruptcy because it has no knowledge of existing causes of action. This is not an acceptable use of funds in a case that currently is administratively insolvent. The Trustee has not presently carried his burden to show that allowing AMRR to have $600,000 to conduct a chapter 11 bankruptcy in Delaware is fair and reasonable. To carry that burden, the Trustee should be required to evidence the assets at AMRR that can be liquidated for value and to budget the costs of administering those assets. As of this filing, the Trustee and AMRR have not evidenced any concrete assets of value nor budgeted for administering those assets other than proposing a top line number of $600,000.

11.     FSCLE will consent to the $600,000 being held by the Trustee pending further order of this Court regarding any competing claims (including any claims of AMRR) but objects to an AMRR Bankruptcy funded from what FSCLE alleges is its stolen property and what the Trustee alleges is "property of the estate." AMRR will not be operating after the sale; therefore, there is no need to expedite the Court's determination related to this $600,000, especially if FSCLE or the bankruptcy estate have superior title to the $600,000. AMRR should not be allowed to further waste assets absent this Court's supervision. The Court may approve the sale portion of the settlement and reserve a future determination regarding the use of the $600,000.

12.     FSCLE further reserves its rights to pursue AMRR and other Bad Actors regarding the fraud and theft against FSCLE, notwithstanding the proposed settlement presented in the Motion. The Trustee cannot settle, and the Court should not approve, any transaction between the estate and AMRR, AMR Resources, or One Path Systems that limits FSCLE's independent claims against AMRR, AMR Resources, OnePath Systems, or any other entities involved in the frauds

and thefts because the proposed transaction does not involve Debtor's estate assets being sold. Neither AMRR, AMR Resources, nor OnePath Solutions is a bankruptcy debtor; therefore, neither is entitled to the benefits of Section 363(f) of the Bankruptcy Code.

13. FSCLE further reserves the right to raise additional objections at the hearing.

## CONCLUSION

14. For the reasons set forth herein, the Motion cannot be approved in its current form and under its current terms.

Respectfully submitted,

**BUTLER SNOW LLP**

*/s/ Adam M. Langley*
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com
cam.hillyer@butlersnow.com

and

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

**CERTIFICATE OF SERVICE**

I, Adam M. Langley, certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically in this case.

Dated: December 5, 2023

*/s/ Adam M. Langley*

84799069.v1