**BUTLER SNOW LLP**
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
Danny Van Horn (*pro hac vice* pending)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com
cam.hillyer@butlersnow.com
danny.vanhorn@butlersnow.com

and

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

*Counsel for FedEx Supply Chain*
*Logistics & Electronics, Inc.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

------------------------------------

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| GOODMAN NETWORKS, INC. | § | Case No. 22-31641 (MVL) |
| | § | |
| Debtor. | § | **Relates to Docket No. 452** |
| | § | |

**OBJECTION TO TRUSTEE'S MOTION UNDER RULE 4001(d)**
**FOR APPROVAL OF CASH COLLATERAL STIPULATION WITH UMB BANK, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, AND U.S. BANK, NATIONAL ASSOCIATION, <u>AS COLLATERAL AGENT</u>**

FedEx Supply Chain Logistics & Electronics, Inc. ("<u>FSCLE</u>") files this Objection to the

*Trustee's Motion under Rule 4001(d) for Approval of Cash Collateral Stipulation with UMB Bank,*

1

*National Association, as Indenture Trustee, and U.S. Bank, National Association, as Collateral Agent* (the "Objection" to the "Motion") (ECF No. 452). FSCLE respectfully states the following:

## PRELIMINARY STATEMENT

1. The Trustee and the Bondholders ostensibly seek approval of the Trustee's use of cash collateral; however, facially and substantively, this is a settlement between the Bondholders and the Trustee that determines lien rights to disputed property while allowing both settling parties to receive funds without anything – not a penny, nickel, or dime – going to unsecured creditors.

2. The Trustee is not seeking to surcharge collateral of the Bondholders under section 506(c) for reasonable and necessary costs and expenses of preserving or disposing of collateral. He is seeking to "use" cash collateral in a non-operating case under section 363(c) to pay his already incurred attorney fees while granting a broad, limitless lien on "all other property of the estate." Granting such a lien is not in the best interest of the estate because nothing evidences the Bondholders have a lien in the first place. The Court should deny the Motion as stated. However, FSCLE does not oppose an appropriate motion to have the Trustee's fees paid in part. FSCLE's opposition is focused on the stipulations and agreements contained in this motion – not the base request for compensation by the Trustee.

## BACKGROUND FACTS

3. This chapter 7 bankruptcy case was commenced by involuntary petition on September 6, 2022 (the "Petition Date"). (ECF No. 1).

4. As of the Petition Date, the Debtor maintained several deposit accounts at Prosperity Bank and EastWest Bank, including two that are relevant here: (1) an EastWest Bank account ending in *5481 (the "5481 Account"), which held only $12,250.85 as of the Petition Date (Exhibit A, EastWest Bank Statement, 5481 Account, dated September 30, 2022) and (2) a

2

Prosperity Bank account ending in *4352 (the "4352 Account"), which had a zero balance as of the Petition Date (Exhibit B, Prosperity Bank Statement, 4352 Account, dated September 30, 2022).

5. The Debtor opened the 4352 Account in December 2020, and it was utilized exclusively to facilitate transactions with FSCLE under a Master Services Agreement. The 4352 Account was not subject to any security interest of the Bondholders.

6. From March 2021 through sometime in the Fall of 2021, the Debtor and FSCLE utilized the 4352 Account to commercially transact under the Master Services Agreement.

7. Beginning sometime in the Fall of 2021, commercial transactions pursuant to the Master Services Agreement stopped, and Jim Frinzi, James Goodman, and their co-conspirators fraudulently induced FSCLE to continue funding the 4352 Account while acting to defraud and steal from FSCLE for their own personal benefit.

8. During this same period, the Debtor ceased all business operations.

9. From the Fall of 2021 through the Petition Date, Jim Frinzi, James Goodman, and their co-conspirators participated in racketeering activities utilizing the Debtor, its deposit accounts, and shell companies. Without revenues and operations and with no material available cash other than funds from FSCLE, almost all transactions of the Debtor in late 2021 and 2022, involved funds defrauded and stolen from FSCLE.

10. Between the Fall of 2021, and the Petition Date, FSCLE was defrauded of in excess of $80 million, and every penny of these funds flowed through the 4352 Account and is traceable into and out of the Debtor through the 4352 Account.

11. The nature and extent of this fraud and theft have complicated this estate.

12. Rather than address these complications through orderly proceedings, this motion and the settlement agreements (Prosperity and AMRR) have the potential effect to legitimize the Debtor's post-October 2021 transactions and the Bondholders' liens in summary proceedings rather than through plenary adversary proceedings.

13. In the current summary Motion, the Trustee states he is holding $531,700.99 in funds of the Debtor and the Estate and seeks to stipulate rights between the Bondholders and he, to the exclusion of other interest holders. He says the source of those funds are as follows:

| *Amount* | *Source* |
|---|---|
| $177,072.37 | EastWest Bank Account *5481 |
| $150,988.98 | Connor Lee & Shumaker, PLLC |
| $146,802.87 | Russell F. Nelms |
| $18,053.32 | Lease Security Deposit |
| $25,812.98 | Collected Accounts Receivable |
| $12,970.47 | No Source Identified |

14. He stipulates that all funds except the $12,970.47 are the Bondholders' collateral, but nothing in the Motion or Stipulation evidences the Bondholders' liens in the specified funds or controverts that these funds are not the stolen funds from FSCLE or the proceeds thereof.

15. It is undisputed that the $150,988.98 held by Connor Lee & Shumaker as of the Petition Date is directly traceable to the 4352 Account. On February 18, 2022, $250,000 was transferred from the 4352 Account to the IOLTA account of Connor Lee & Shumaker PLLC. FSCLE was the source of this $250,000. Connor Lee & Shumaker used a portion of those funds in its defense of the Debtor in a lawsuit brought by ARRIS, which alleged fraud related to an escrow account at the Bank of San Antonio.

16. FSCLE alleges the $150,988.98 is its stolen funds or the proceeds thereof.

17. The 5481 Account increased from $12,250.85 as of the Petition Date to $177,072.37 as of the date of the entry of the Order for Relief. Neither the Trustee nor the

Bondholders have provided any accounting of this increase and the source of funds for this increase. To determine rights in the $177,072.37 (over and above the $12,250.85), the funds need to be traced to their source as of the Petition Date – not the date of the Order for Relief.

18. Currently, FSCLE is unable to trace the $12,250.85 in the 5481 Account as of the Petition Date to the 4352 Account and does not dispute that these limited funds are subject to the Bondholders' liens (if evidenced). It is undisputed that the remaining $168,421.52 was received into the 5481 Account post-petition.

19. It is undisputed that the $146,802.87 held by Russell Nelms was a post-petition transfer of the Debtor sometime between November and December 2022. Neither the Trustee nor the Bondholders have provided any accounting of the source of funds paid to Nelms.

20. The Trustee has not produced to FSCLE post-petition bank statements for any of the Debtor's accounts.

## ARGUMENT

**A.     Relief is not available under Section 363(c)**

21. The Trustee seeks the use of cash collateral pursuant to Section 363(c)(2) of the Bankruptcy Code. The Trustee is not eligible for relief under Section 363(c) because he is not authorized to operate the Debtor's business under section 721. 11 U.S.C. §363(c). Section 721 provides that the Court "may authorize" the Trustee "to operate" the Debtor's business for a limited period, "if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. § 721. If authorized to operate the Debtor's business, the Trustee then may seek to "use" cash collateral "in the ordinary course of business" upon the consent of each entity that has an interest such cash collateral or upon the authority of this Court after notice and a hearing. 11 U.S.C. § 363(c)(1) and (2).

22. Here, relief under Section 363(c) is not available because the Trustee is not authorized to operate the Debtor's business. The Trustee has not sought relief under Section 721, and, even if relief was sought, it likely should be denied because the Debtor's business has not operated since the Fall of 2021 and the Trustee cannot show revising the Debtor's business in December of 2023 is in the best interest of the estate and consistent with an orderly liquidation. *In re Rising Tide Enter. LLC*, No. 09-21123, 2010 WL 174323, at *2 (Bankr. W.D.N.Y. Jan. 15, 2010) (denying a chapter 7 Trustee's use of cash collateral to pay attorney fees for the following reasons: "(a) Section 363(c), specifically Subsection 363(c)(1), is only applicable in a Chapter 7 case when the Bankruptcy Court has authorized the operation of the debtor's business pursuant to Section 721; and (b) [this] case is currently a Chapter 7 case, with no business operations authorized by the Court pursuant to Section 363(c)(1).").

23. The Trustee is not seeking to operate the Debtor's business. He is seeking to pay already incurred attorney's fees and make lien determinations without an adversary proceeding. To be clear, FSCLE is not objecting to the payment of attorneys fees from available assets of the Estate; however, FSCLE is objecting to the Motion. This Motion should be denied because there is no foundation under the Bankruptcy Code for the relief sought – the use of cash collateral without authority to operate the business.

**B.     The Motion is functional financing.**

24. The substance of the relief sought in the Motion is the financing of the Trustee's attorney fees through the granting of a lien on unencumbered assets. The Trustee would like $375,000 to pay his already incurred attorney fees, but he does not have $375,000 available to pay those fees. He is proposing to take "all property of the Estate" and grant the Bondholders a lien on all property in return for their financing his attorney fees from purported "cash collateral." In

return, the Bondholders get (A) a stipulation and order finding that they have liens on the disputed "cash collateral" and (B) a distribution of $125,000. That's the *quid pro quo*.

25. These types of deals make self-dealing sense, but they are not in the best interest of the estate and do not further an orderly liquidation. The only purpose of this deal is to allow the Trustee's attorneys to be paid in return for the Bondholders' getting certainty regarding disputed lien rights through a truncated, summary proceeding.

26. The Trustee states "Bondholders are agreeable to permitting the Trustee to use a portion of their Cash Collateral to help defray, on an interim basis, the costs of administering the Estate – *which benefits all creditors*." Motion at ¶ 17 (emphasis added). There is no benefit to creditors because these funds are not being used for future administration. The Trustee and Bondholders are replacing an already incurred administrative expense with a "replacement" lien dollar for dollar and doing so in a situation where material factual disputes exist regarding whether the Bondholders have lien rights or other property interests in the assets designated as "cash collateral." A dollar-for-dollar conversion of an administrative expense to an actual lien on all assets provides no benefit to the estate. To the contrary, it takes a lower priority unsecured claim for administrative expense and gives in return a higher priority secured claim on all assets. This is not beneficial to all creditors or the Estate. And, it is potentially harmful to the Estate and its creditors for two reasons: (1) if the Bondholders do not have a lien on the disputed funds, the payment of administrative costs and the granting of a replacement lien would result in a double tax on the Estate ($750k v. $375k) and (2) even if the Bondholders have a lien on the disputed funds, any post-petition interest or fees under Section 506(b) is an added cost.

27. The Trustee and Bondholders have argued to this Court that the Bondholders may be entitled to post-petition interest and attorney fees under Section 506(b). This argument was

advanced in the Prosperity Settlement as justification for paying off the Bondholders. FSCLE has always disputed this argument. If the Bondholders are not oversecured, they are not entitled to fees and interest under Section 506(b) and there was no justification for the Prosperity Settlement. However, if the Bondholders are oversecured, the Trustee is paying his own administrative fees using financing that will incur interest and attorney fees. The dollar-for-dollar switch from a $375,000 administrative fee to a $375,000 secured claim will incur additional interest and fees and cause the deal to result in negative cash flow to the Estate. Again, there is no benefit to this transaction. At best, there is no harm if the Bondholders are undersecured on the disputed assets. At worse, there is harm if they are either oversecured or not secured. Even ignoring the other objections, the Court cannot approve this Motion absent a finding or stipulation that the Bondholders are undersecured and not entitled to interest or fees under Section 506(b).

C. **Granting liens to access cash to pay the Trustee's already accrued attorney fees is neither reasonable nor necessary**

28. The Trustee has the burden to prove that the granting of liens on all property of the estate and the "use" of that property is reasonable and necessary. Counsel to the Trustee states in its Fee Application that ". . . the Trustee is now well underway with monetizing the Estate's assets, and he is reasonably *confident the Estate will be able to recover tens of millions of dollars* for the benefit of its creditors." (ECF No. 446 at ¶ 1) (emphasis added). This is excellent news, but it discredits this Motion, which was filed two days after the Fee Application. If the Estate expects to recover tens of millions of dollars, it does not need to grant liens on unencumbered assets to pay administrative costs already incurred. Those administrative costs can be paid when funds become available through the recovery of the unencumbered assets or upon resolution of disputes on property held by the Trustee, including disputes over the purported "cash collateral."

29. While paying attorney fees is important and FSCLE does not in general oppose the Trustee receiving reasonable fees and expenses from amounts recovered, the timing and conditions of payment to the Trustee should follow recovery – not be unreasonably advanced. If the estate recovers assets, Counsel for the Trustee will be paid. This is standard practice in a chapter 7 case. Reversing this ordering would undermine the incentives placed upon trustees and their counsel to first liquidate assets and second pay claims, including administrative claims of counsel. *Otte v. United States*, 419 U.S. 43, 53 (U.S. 1974) ("There is, of course, an overriding concern in the Act with keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.") (citation omitted); *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir. 2004) (finding that "counsel is a gambler in bankruptcy proceedings like every other administrative creditor.").

**D.    The Bondholders rights in property cannot be finally determined on the Trustee's Motion.**

30. The validity, priority, or extent of a lien or other interest in property must be determined in an adversary proceeding and any declaration regarding the foregoing must also be made in an adversary with notice to all persons having an interest in the property. Fed. R. Bankr. P. 7001(2) and (9). As this Court is aware, this is not an ordinary commercial case. The Debtor and its business were grossly mismanaged and involved fraud and theft that caused damages in excess of $100 million. FSCLE alone has suffered damages in excess of $80 million, and ARRIS alleges damages in excess of $30 million. The rights of any creditor to funds in this bankruptcy should be decided through plenary adversary proceedings with notice and fair opportunities for trial not through summary motions to determine property interests.

31. Under the circumstances in this case, it would be the better course to interplead disputed funds into this Court pursuant to Bankruptcy Rule 7022 or seek a declaration as to

property rights in those funds pursuant to Bankruptcy Rule 7001(2) and (9). The Court should deny any request to determine property rights in the summary motion brought by the Trustee.

**E.     Bondholders do not necessarily have a lien against funds transferred prepetition or pre-order-for-relief**

32.     Contrary to the Trustee's and Bondholders' equitable arguments in the Prosperity Settlement and here, equities do not favor the Bondholders for any prepetition or pre-order-for-relief use of funds from a deposit controlled by the Bondholders' DACA.

33.     In an Eastern District of Texas bankruptcy case, a debtor possession in chapter 11 used cash collateral without authorization or consent prior to the case's conversion to chapter 7. *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764 (Bankr. E.D. Tex. 2001). The secured creditor sought a replacement lien or a super-priority administrative expense arguing equities. *Id*. While recognizing an injury to the secured creditor, the court denied the replacement lien and super-priority administrative claim stating: "To punish unsecured creditors and unsuspecting administrative claimants in a liquidation case for the sins of a former debtor-in-possession through the imposition of a replacement lien or a priority administrative expense claim seems fundamentally unfair, and this Court declines to impose such penalties to the detriment of blameless parties." *Id. at* 771. Instead, the secured creditor was told to pursue the Debtor's officers who acted without authority. *Id*.

34.     Here, the Connor Lee & Shumaker transfer was made prepetition from an account that did not secure the Bondholders, and the Russell Nelms transfer was made pre-order-for-relief from an unknown account pursuant to Section 303(f). Both transfers and attorney liens are avoidable by the Trustee. But, Section 551 preserves the avoided transfers and liens for the benefit of the estate – not the Bondholders. The Bondholders, if they even had a lien prepetition and pre-order-for relief, cannot have a replacement lien on "all property of the estate" where the

Bankruptcy Code expressly states that the recoveries of those two transfers is "preserved for the benefit of the estate." 11 U.S.C. § 551; see also 11 U.S.C. § 552; *In re Cross Baking Co., Inc.*, 818 F.2d 1027, 1033 (1st Cir. 1987) ("We therefore believe that it is incorrect to consider the equities of the case when the contested property, as in the case at bar, does not constitute proceeds of the secured creditor's original collateral.").

35. As shown below, the bulk of the funds are disputed as to ownership and lien rights.

(1) **$177,072.37 – EastWest Bank Account *5481**

36. The Trustee argues the 5481 Account is subject to an authenticated record for purposes of Tex. Bus. & Comm. Code Ann. § 9.104(a)(2), but he does not attach the authenticated record and nothing is presented to the Court that substantiates a security interest in the 5481 Account. Moreover, as of the Petition Date, the 5481 Account held only $12,250.85 – not $177,072.37. *See* Exhibit A, EastWest Bank Statement, 5481 Account, dated September 30, 2022 (showing $12,250.85 as of September 6, 2022). If the 5481 Account is the Bondholders' collateral, only $12,250.85, the amount on hand as of the Petition Date, represents their cash collateral.

37. The dispute here comes from a misapplication of section 541(a). Section 541(a) states: "The commencement of the case under section . . . 303 of this title creates an estate. . . ." 11 U.S.C § 541(a). The Trustee incorrectly relied on the order for relief date – December 7, 2022 – to determine property of the estate instead of relying on the date of commencement under section 303. Section 303(b) states: "An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 . . . of this title." 11 U.S.C. § 303(b). Here, the commencement of the case under section 303, was the Petition Date – September 6, 2022. This is a meaningful difference. On the Order for Relief date, $177,072.37 was in the 5481 Account, and,

on the Petition Date, $12,250.85 was in the 5481 Account. The difference is $164,821.52. There has been no tracing of the remaining $164,821.52 to determine the rights as of the Petition Date.

38. FSCLE informally requested the Trustee produce the bank statements for the 5481 Account between September 2022 (the last statement possessed by FSCLE) and December 2022 (the statement produced by the Trustee to FSCLE's request), but he has not yet provided the October and November 2022 statements necessary to trace funds. FSCLE has served formal discovery to the Trustee and the Bondholders alongside the serving of this Objection to obtain the information necessary to trace the source of the funds.

(2)     **$150,988.98 – Connor Lee & Shumaker, PLLC**

39. The Trustee recovered $150,988.98 that was being held by the law firm of Connor Lee & Shumaker, PLLC as a legal retainer. As of the Petition Date, this $150,988.98 was being held by Connor Lee & Shumaker, PLLC subject to their prepetition possessory lien. *Casey v. Mar.*, 30 Tex. 180, 180 (1867) (recognizing common law attorney liens on retainers and a client's papers and documents); *see also In re Tuscany Energy, LLC*, 561 B.R. 910 (Bankr. S.D. Fla. 2016) (finding funds held subject to an attorney lien are not a secured creditors' cash collateral). Connor Lee & Shumaker represented the Debtor in the prepetition fraud lawsuit brought by ARRIS. The $150,988.98 was part of a $250,000 payment made by the Debtor from its Prosperity Bank Account identifiable as *4352 (the "4352 Account"). *See* Exhibit C, Prosperity Bank Statement, 4352 Account, dated February 28, 2022. It is undisputed that the 4352 Account is not subject to the Bondholders' liens. It is further undisputed that all funds in the 4352 Account were received from FSCLE. FSCLE alleges the $250,000 paid to Connor Lee & Shumaker by the Debtor was stolen funds from FSCLE's bank accounts. FSCLE asserts the $150,988.98, as proceeds of the

12

fraud and theft on its bank account, are its property. Nonetheless, the $150,988.98 is certainly not the Bondholders' cash collateral. *See, e.g., In re Tuscany Energy, LLC*, 561 B.R. 910.

40. Ignoring FSCLE's rights, what is the $150,988.98 as of the Petition Date? The $150,988.98 was funds in Connor Lee & Shumaker's IOLTA account. The Bondholders plainly do not have a lien on Connor Lee & Shumaker's deposit account because the deposit account is not the Debtor's account. Moreover, the source of the funds paid to Connor Lee & Shumaker was not proceeds from the Bondholders' cash collateral at the Debtor because it was sourced from the 4352 Account. *In re Cross Baking Co., Inc.*, 818 F.2d at 1033. The Bondholders have no means of attaching to the $150,988.98 as of the Petition Date.

41. Even assuming arguendo that the Bondholders' lien could extend to Connor Lee & Shumaker's IOLTA account despite the deficiencies shown above, the Bondholders' lien is avoidable for either of two reasons: (1) the Bondholders' lien on the IOLTA account or the funds in the IOLTA account is not perfected by possession or control and, therefore, is avoidable under section 544; and (2) Connor Lee & Shumaker's possessory lien over the IOLTA account and its funds would be superior to any lien of the Bondholders, and, since Connor Lee & Shumaker has not given value as of the Petition Date for the remaining $150,988.98 in the IOLTA account, the transfer and possessory lien are avoidable under sections 544 and 548 and the transfer and lien are preserved for the benefit of the bankruptcy estate's unsecured creditors under section 551. 11 U.S.C. §§ 544, 548, and 551. Thus, ignoring FSCLE's property claim, the Trustee's recovery of the $150,988.98 is unencumbered. *See also* 11 U.S.C. § 552(a) (". . . property acquired by the estate . . . after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."). The Bondholders do not have a lien against the $150,988.98.

13

(3)     **$146,802.87 – Russell F. Nelms**

42. After the Petition Date but before the Order for Relief, the persons acting under color of the Debtor sought to employ Russell F. Nelms as an independent director in this case. The Debtor caused a post-petition transfer of at least $146,802.87 to Mr. Nelms. Under section 303(f), the Debtor, notwithstanding section 363, could dispose of property of the estate with seeking court approval until entry of the order for relief. The transfer to Mr. Nelms was made pursuant to section 303(f). Again, funds held in a third party's deposit account, here Mr. Nelms' deposit account, are not subject to the Bondholders' liens. Tex. Bus. & Comm. Code Ann. § 9.332(b) ("A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.").

43. But, section 303(f) of the Bankruptcy Code and section 9.332(b) of the Tex. Bus. & Comm. Code do not neutralize the Trustee. Sections 549 and 551 empower the Trustee to "avoid transfers of property of the estate that occurs after the commence of the case; and that is authorized only under section 303(f) . . . of this title . . ." and to preserve the avoided post-petition transfer for the benefit of the estate's unsecured creditors. 11 U.S.C. §§ 549, 551. Thus, the Trustee's recovery of the post-petition transfer to Mr. Nelms is held for the benefit of the estate's unsecured creditors. *See also* 11 U.S.C. § 552(a) (". . . property acquired by the estate . . . after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.").

44. Furthermore, there has been no evidence produced showing the source of funds paid to Mr. Nelms. Thus, there is nothing in the record to show that the Bondholders ever had an interest in the funds at issue prior to the transfer to the Mr. Nelms and even ignoring the application of sections 303(f), 549, and 551 of the Bankruptcy Code.

45. FSCLE informally requested the Trustee produce the bank statements evidencing the transfers related to Mr. Nelms, but he has not yet provided such statements. FSCLE has served formal discovery to the Trustee and the Bondholders alongside this Objection.

**F.     The Bondholders should not receive a complete release.**

46. The Stipulation provides the Bondholders a complete release at paragraph 9, but the Motion does not provide any cause – let alone good cause – for this release. The release is overbroad, unnecessary and inappropriate within the current Motion and procedural posture. Moreover, upon information and belief, red flags exist related to the bonds because James Goodman, John Goodman, and/or Shalom Auerbach and their related parties or affiliates held material interests (if not controlling interests) in the Bonds as late as 2022 and there are genuine questions raised as to the propriety of the actions taken surrounding those bonds. The release should not be granted under the current procedural posture. Alternatively, FSCLE reserves the right to challenge or object to the Bondholders' claims, interests, rights, and liens, including but not limited to seeking any relief allowable by the Bankruptcy Code.

## CONCLUSION

47. For the foregoing reasons, the Motion should be denied. The Trustee should continue to hold the funds pending further determinations in this Court in an adversary proceeding. Moreover, the parties are coordinating on mediating intercreditor disputes, and these disputed funds can be addressed squarely within those mediation proceedings.

Respectfully submitted,

**BUTLER SNOW LLP**

*/s/ Adam M. Langley*
Adam M. Langley (admitted *pro hac vice*)
R. Campbell Hillyer (admitted *pro hac vice*)
Danny Van Horn (pro hac vice pending)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com
cam.hillyer@butlersnow.com
danny.vanhorn@butlersnow.com

and

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

**CERTIFICATE OF SERVICE**

I, Adam M. Langley, certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically in this case.

Dated: December 14, 2023

*/s/ Adam M. Langley*

84911341.v3