Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR
SCOTT M. SEIDEL, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: § | |
| § | Chapter 7 |
| GOODMAN NETWORKS, INC., § | |
| § | Case No. 22-31641-mvl-7 |
| Debtor. § | |

**TRUSTEE'S EMERGENCY MOTION TO SELL ESTATE PROPERTY VIA PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(f)**

TO THE HONORABLE MICHELLE LARSON, U.S. BANKRUPTCY JUDGE:

Scott M. Seidel (the "Trustee"), the duly appointed Chapter 7 Trustee for the estate of Goodman Networks, Inc. (the "Debtor") in the above-styled bankruptcy case (the "Bankruptcy Case"), files this *Trustee's Emergency Motion to Sell Estate Property via Private Sale Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(f)* (the "Motion").

### I. INTRODUCTION

1. Trustee wishes to sell, on an emergency basis, the distributed antenna system ("DAS")—a network used for improving cell phone reception—within Tiger Stadium, on Louisiana State University's Baton Rouge campus, to Tiger Athletic Foundation ("TAF"), a non-profit 501(c)(3) corporation whose mission is to assist Louisiana State University in building

and maintaining a superior athletic program by providing private financial support for programs and facilities that ensure LSU student-athletes the opportunity to win in the classroom, in competition, and in life. TAF needs to remove most of the equipment immediately so that it may install a new DAS and/or repairs and upgrades to the existing system prior to the start of the 2024 college football season. Such improvements are necessary to maintain internet communications and promote fan safety at the stadium.

2. The Debtor installed, operated and maintained the DAS under two agreements executed in 2014 with TAF, as owner of certain improvements at Tiger Stadium. One of the agreements – the Licensing Agreement – was purportedly assigned to 18920 NW, LLC ("18920") in March 2022. TAF disputes the effectiveness of the assignment and the Trustee has commenced litigation against 18920 with respect to the transaction. After entry of the Order of Relief, Trustee did not assume the agreements, and even if the agreements had been assumed, the agreements have now expired by their own terms or terminated for other reasons.

3. TAF has agreed to pay $50,000.00 to purchase the DAS from the Estate free and clear of any liens, claims and encumbrances. The sale price exceeds the value of the equipment, which is largely obsolete and poorly maintained. TAF has agreed to such a price on condition that the sale approved by the Court on an emergency basis—no later than March 4, 2024, so that it may undertake work required to replace the DAS and, in the interim, maintain communications to the extent possible. Debtor's bondholders, who have liens in the collateral, have consented to the sale.

## II. JURISDICTION AND VENUE

4. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby

initiating the Bankruptcy Case and creating the bankruptcy estate (the "Estate").

5. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

6. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

7. The statutory basis for the relief requested in the Motion is § 363 of title 11 of the United States Code.

### III.  BACKGROUND & FACTUAL BASIS

8. TAF owns and maintains athletic facilities for LSU, including certain improvements to Tiger Stadium, in Baton Rouge, Louisiana. The Debtor and TAF entered into a Master Services Agreement (the "MSA"), dated as of January 16, 2014, for the operation and maintenance of a DAS—including supporting equipment and personal property related to the operation of the DAS (the "Property")[1]—to assist with cellular communications in Tiger Stadium. A true and correct composite copy of the MSA and the License Agreement (as that term is defined below) are attached as Exhibit 2 hereto. The DAS is essential to a safe operation of Tiger Stadium both because it provides cellular service to fans in the stadium for events and because it allows for the transmission of emergency communications through the network to attendee's cell phones. The MSA provided for an initial 10-year term, renewable on mutual agreement of the parties. MSA, § 7.01. The Parties agreed that Debtor was to be the "owner and operator" of the DAS that was installed. MSA, § 2.05. Upon expiration of the MSA, Debtor was required to remove the DAS from Tiger Stadium within thirty (30) days after expiration of

---

[1] Such Property is more fully described in the Proposed form Bill of Sale attached hereto as Exhibit 1.

TRUSTEE'S EMERGENCY MOTION TO SELL ESTATE PROPERTY VIA PRIVATE SALE
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363 – Page 3

the Agreement and repair or restore any damage to Tiger Stadium resulting therefrom. MSA, § 7.03. Under a separate License Agreement (the "License Agreement"), dated January 16, 2014, Debtor acquired license to use and access to certain space within Tiger Stadium for operation of the DAS, for which it was required to make certain annual payments to TAF. Exhibit 2, License Agreement at § 8. The License Agreement was purportedly assigned to 18920 in March 2022. The TAF and the Trustee both dispute the purported assignment.

9. The Trustee did not assume and assign the MSA or the License Agreement within 60 days of entry of the Order of Relief, and by operation of law, the MSA and License Agreement were deemed rejected. 11 U.S.C. § 365(d)(1). Furthermore, the MSA and License Agreement have now expired by the terms of such agreements.

10. Prior to the Petition Date, the Debtor issued the 8% Senior Secured Notes due 2022 (the "Notes") pursuant to that certain indenture dated as of May 31, 2017 (as amended, restated, or otherwise modified from time to time, the "Indenture") by and among the Debtor as Issuer, UMB Bank, National Association (the "Indenture Trustee"), as Trustee, and U.S. Bank, National Association, as Collateral Agent (the "Collateral Agent"), in the original principal amount of $112,500,000. In addition to the Indenture, the Debtor, the Indenture Trustee, and the Collateral Agent also executed that certain Pledge and Security Agreement dated as of May 31, 2017 (the "Pledge and Security Agreement") by and among the Debtor, each of the Grantors from time to time party thereto, and the Collateral Agent. Under the Pledge and Security agreement, the Debtor and its subsidiaries granted security interests in substantially all their assets, including the Property, to the Collateral Agent for the benefit of the holders of the Notes (the "Bondholders"). The Collateral Agent holds a first-priority, perfected security interest in the Property.

A.   **TAF PURCHASE OFFER**

11.   Beginning in late 2022, TAF advised Debtor that it did not intend to renew the MSA and License Agreement after the expiration of the initial 10-year term. TAF began planning for a new DAS to replace the existing system after the 2023 LSU college football season. Replacement of the system is necessary because the telecommunications equipment is badly outdated, was substandard at the time that it was installed, and has not been well maintained over the life of the contract. Installation of the new DAS system is a priority for TAF and must start immediately, given the lead time necessary to have a new system in place prior to the 2024 college football season. TAF believes that the DAS system is critical for public safety, as it allows for safe occupation of the stadium by allowing workers and fans to obtain cellular communications inside the stadium, including potential communications regarding security and safety threats. Tiger Stadium is a historic property with limited capacity for the installation of modern telecommunications equipment. Given the space requirements in Tiger Stadium, it is necessary to first remove the existing equipment to install the new, replacement DAS.

12.   Beginning in December 2023, TAF approached the Trustee with an offer to purchase the DAS. TAF offered to purchase the system for $10,000, based on the premise that the equipment—which is out of date—had little value other than that removal of the system would permit TAF to proceed with installation of its new DAS. After further investigation, the Trustee identified certain additional equipment included within the DAS—namely power generators incorporated into the system—that may have additional value that the Trustee believed was underrepresented in TAF's initial offer. Trustee's counsel and TAF's counsel negotiated the purchase price further, with TAF ultimately increasing its offer for the equipment

to $50,000. Upon successful negotiation of the sale, Trustee sought and obtained consent from the Indenture Trustee and the Collateral Agent to the sale.

The specific terms of the TAF offer to purchase are as follows:

- The Property will be sold via Trustee's Bill of Sale in a form substantially similar to <u>Exhibit 1</u> hereto.

- Upon approval of this Motion to Sell, to occur no later than March 4, 2024, TAF shall pay $50,000.00 (the "Funds") to the Trustee within three (3) business days thereafter. Upon receipt of the Funds, Trustee shall deliver the executed Bill of Sale to TAF.

- The sale of the Property free and clear of liens, claims, and encumbrances. Trustee shall seek for the Court to waive the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h).

13. Following receipt of proceeds, the Trustee will make a payment to the Indenture Trustee, for the benefit of the Bondholders, of $30,000 in respect of the Bondholders' collateral. The Trustee will retain the balance of the proceeds as an agreed surcharge under 11 U.S.C. § 506(c).

**B. VALUE OF THE PROPERTY**

14. Trustee has received information regarding the value of the Property. As discussed above, the telecommunications equipment is outdated and obsolete and lacks more than scrap value. Moreover, what little scrap value is likely outweighed by the cost of removal of the equipment. TAF provided to the Trustee bids that it had sought from licensed contractors to decommission and remove the system, true and correct copies of which are attached as <u>Exhibit 3</u> hereto. Such bids quoted a cost of between $900,000 and $1,100,000 for removal of the system. TAF represented to the Trustee that those bids were submitted to it under the assumption that the bidder would have salvage rights to the equipment removed.

15. Additionally, the Trustee understands that, prior to the bankruptcy, on June 15, 2021, Debtor had made an offer to sell the equipment to TAF. A true and correct copy of such correspondence is attached as <u>Exhibit 4</u>. Although the Debtor sought a total purchase price of $1,660,000 for the DAS, Debtor's offer noted that the vast majority of that purchase price was attributable to anticipated revenue over the then-remaining two years of the MSA and to offset tax liability recognition costs. In the offer—which was made by Debtor nearly three years ago—the Debtor only valued the underlying equipment at the time at $32,000. TAF's offer to purchase the equipment well exceeds that amount.

16. Finally, counsel for the Trustee sought and received information regarding the DAS and the agreements with TAF from a party with historical knowledge of the matters. The Trustee, also through counsel, received inquiries regarding the DAS and agreements with TAF, and no party was interested in bidding for the equipment without the accompanying agreements which, as noted above, were not assumed and have otherwise terminated.

### IV.     REQUEST FOR RELIEF

17. A sale of bankruptcy estate property outside the ordinary course of business is proper, but the Trustee must articulate a sufficient business reason for the sale and show that the sale is in the best interest of the estate (*i.e.* that it is fair and reasonable), that the property has been given adequate marketing, that the sale has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith and that the sale is an arms-length transaction. *See, e.g., In re Continental Airlines,* Inc., 780 F.2d 1223, 1225 (5th Cir. 1986); In *re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991). In evaluating such a sale, the Court must balance the need for flexibility with the concern of affected creditors. *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 715 (Bankr. W.D. Tex. 1989). The Court must also

determine that creditor's lien rights are adequately protected and that the offered price is the highest price obtainable under the circumstances in the particular case. *Id*.; *In re Beker Indus. Corp.*, 63 B.R. 474, 477-78 (Bankr. S.D.N.Y. 1986). Further, § 704(1) of the Code provides that the Trustee shall collect and reduce to money the property of the estate for which such trustee serves.

18. The Trustee seeks to sell the Property free and clear of all liens, claims, and encumbrances subject to the specifics set forth herein.

19. The Code provides that property may be sold free and clear of "any interest in such property other than the estate" only if certain conditions are met. 11 U.S.C. § 363(f). Section 363(f) provides a list of these conditions as follows:

(1) applicable non-bankruptcy law permits the sale of such property free and clear of interests;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

20. Here the Indenture Trustee and the Collateral Agent, the only parties with an interest in the Property, have consented to the sale of the Property. The Collateral agent holds a first-priority perfected security interest in the Property and would have priority over any other creditor in the Property. Thus, the conditions set forth in 11 U.S.C. § 363(f) are satisfied.

21. Under the business judgment standard, the proposed sale is fair and reasonable and the sale of the Property on the terms described herein is in the best interest of the creditors and the bankruptcy estate. The Trustee negotiated the sale in good faith and at arm's length. No reasonable market exists for this equipment given the removal costs that would be incurred to remove and sell the equipment. In fact, the only interested party—TAF—places value on the

equipment only to the extent that its continued presence prevents it from using its existing property. Moreover, TAF has made clear that it will not enter into a new MSA with any purchaser to use the equipment in place. As such, the return that the Trustee has negotiated represents a remarkable return on the equipment for the Estate.

22. The sale will be on "AS IS, WHERE IS" basis with the Trustee making NO REPRESENTATIONS OR WARRANTIES.

23. The Trustee requests that the Court approve, pursuant to 11 U.S.C. § 363(b) & (f), the sale of the Property free and clear of liens, claims, and encumbrances as requested herein.

24. Finally, the Trustee requests that the Court waive the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h), so that the sale may close within fourteen (14) days of the entry of an order.

### V. BASIS FOR REQUEST FOR EMERGENCY CONSIDERATION

25. The Trustee seeks emergency consideration and approval of the sale of the Property as an expedited sale is in the best interest of the creditors, the Estate, and the public. TAF—the only interested bidder—has conditioned its offer to purchase on obtaining court approval by February 28, 2024. Moreover, TAF has represented that an immediate sale is necessary so that its contractors can begin work immediately on construction of a new DAS (or, if its contractors believe that such a replacement is no longer feasible before the beginning of the season, a repair of the DAS), guaranteeing the safe occupancy of Tiger Stadium in time for the 2024 LSU football season.

WHEREFORE, based upon the foregoing, the Trustee, requests that the Court (1) consider this Motion on an emergency basis; (2) authorize the sale of the Property free and clear of all liens, claims, and encumbrances; (3) order that the stay imposed by FRBP 6004(h)

shall not apply to this sale transaction; (4) approve the agreement described herein between the Trustee and TAF; (5) authorize the Trustee to execute a Bill of Sale in the form substantially similar to the one attached to this Motion; (6) approve the payment of $30,000 to the Indenture Trustee and the retention of the agreed surcharge amount of $20,000; and (7) grant such other and further relief as may be proper and just.

Dated: February 27th, 2024.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Thomas Berghman*
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 27, 2024, a true and correct copy of the foregoing was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system, and that, additionally, on the same day he caused a true and correct copy of this document, with the exhibits, to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached service list, as well as to the following additional parties:

18920 NW 11th, LLC
c/o JORDAN, LYNCH & CANCIENNE PLLC
Michael Cancienne
Joseph W. Golinkin II
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056

Newco DE 22, Inc.,
c/o Registered Agent, Inc.,
8 The Green, Suite A,
Dover, DE, 19901

Techdash Telecom, LLC
c/o Capitol Corporate Services, Inc.,
1501 S Mopac Expressway, Suite 220,
Austin, Texas 78746

*/s/ Conor White*
Conor P. White