## Settlement Term Sheet (Revised)

The parties signing below agree to the following terms subject to entry of an agreed order with Bankruptcy Court embodying the terms of the settlement to be drafted and executed hereafter.

1. The AMRR sale proceeds and any funds received by the Estate from AMRR or from another party on account of claims asserted against AMRR (including the AMRR note) net of any costs to the Estate incurred following the date hereof in connection therewith will be divided one-third to FedEx, one-third to the Bondholders and one-third to the Estate. FedEx will share $100,000 of its share with ARRIS.

2. FedEx will agree to cooperate in the Trustee's 548 against Auerbach Partners and will consent to any settlement of the 548 with the entire proceeds going to the Estate to cover the administration costs and then shared pro rata by the creditors. FedEx will retain its causes of action but will not object to any settlement of the Trustee's claims.

3. FedEx will agree to cooperate in the Trustee's 548 against Frinzi for the lake house. FedEx wants the Trustee to pursue this claim and will similarly not object to any settlement of the Trustee's claims without settling any claims it has against Frinzi or the Frinzi Family Trust. All of these proceeds would similarly go to the Estate to cover the Estate's costs and then be shared pro rata by the creditors.

4. As for the D&O policies, the proceeds from any recovery on it will first go the Estate to cover the Estate's costs and then be divided as follows:

   (a) As to the "crime part," fifty percent to the Bondholders and fifty percent to the Estate; and
   (b) As to the "non-crime part," the first $425,000 of any recovery goes to the Bondholders, all amounts recovered on the non-crime part (i.e. the main policy other than recovery on the crime part) after the first $425,000 will be divided one-third to the Bondholders and two-thirds to the Estate.

   If the Bondholders' aggregate recovery from the D&O policies reaches $8,000,000, any further or additional amounts recovered from the D&O policies, irrespective of whether from the crime or the non-crime part, would be split one-third to the Bondholders and two-thirds to the Estate.

5. The Estate will assign its breach of contract and state law claims against Prosperity to FedEx without representations and warranties.

6. As to all claims asserted by FedEx in its District Court Lawsuit, FedEx agrees to a 85/5/10 split with ARRIS and the Estate with 85% of any net recovery after paying FedEx's legal bills on a go forward basis from the date of this agreement going to FedEx, 5% going to

DMS 305619189v4

EXHIBIT "A"

ARRIS and 10% going to the Estate. Similarly, on any other causes of action not specifically covered herein that are brought by the Estate, the Estate agrees to a 90/10 split with FedEx where 90% of the recovery after payment of Estate's legal bills and costs on a go forward basis from the date of this agreement go to the Estate and 10% to FedEx and FedEx shares pro rata with the other creditors. The 10% to FedEx is a credit towards its pro rata share of the Estate's distributable amounts.

7. The Bondholders agree to waive any replacement lien as originally sought in the cash collateral motion.

8. The Trustee dismisses his adversary complaint against FedEx without prejudice and agrees to a consent order withdrawing the preliminary injunction motion with all sides to pay their respective attorneys' fees and costs. The Trustee agrees that the causes of action asserted by FedEx in its District Court Lawsuit other than the constructive trust claim are claims that are personal and particular to FedEx.

9. FedEx agrees to amend its District Court Lawsuit to remove a separate claim to a constructive trust but may ask for a constructive trust in the prayer for relief on prospective proceeds.

10. FedEx and the Trustee will enter into a common interest agreement to facilitate the sharing of discovery, depositions and to aid each in the pursuit of their separate claims.

11. The Trustee agrees to the allowance of the amount of the filed proofs of claim of FedEx and ARRIS subject to reasonable and prompt due diligence of the Trustee which shall be completed by no later than three business days before the date set for the hearing to approve this settlement. ARRIS and FedEx agree to cooperate with the Trustee on any reasonable requests to confirm the amount of each's claim and ARRIS' agreement to this settlement is conditioned on reaching an agreement with the Trustee on the amount of ARRIS's claim.

12. The Trustee will work with ARRIS to effect the release of the funds held in escrow at the Texas Partners Bank/Bank of San Antonio.

13. FedEx agrees not to object to the settlement of any Estate claims by the Trustee.

14. FedEx and the Trustee agree that the Bondholders have the secured position in the GTH stock, the AIG monies, and the UFS receivable.

15. FedEx and ARRIS will not appeal the ruling on the 9019 motion related to the Prosperity Settlement.

DMS 305619189v4

16. The Bondholders agree that the Trustee can pursue an order to cancel or disallow any bonds held by Goodman family members or other affiliates or insiders.

17. If there are any disputes as to the drafting of the written settlement agreement, the parties agree to have Judge Felsenthal decide and resolve such differences based on written submissions to him.

February 27, 2024

_____

TRUSTEE/TRUSTEE's COUNSEL


_____

FEDEX/FEDEX's COUNSEL


_____

ARRIS/ARRIS' COUNSEL


_____

BONDHOLDERS' COUNSEL/BONDHOLDERS


_____

STEVEN FELSENTHAL, MEDIATOR