**JORDAN, LYNCH & CANCIENNE PLLC**
Michael Cancienne (SBN 24055256)
Joseph W. Golinkin II (SBN 24087596)
1980 Post Oak Blvd., Ste. 2300
Houston, Texas 77056
Telephone: 713.955.4025

*Counsel for 18920 NW 11th, LLC; Steven Zakharyayev; Evelina Pinkhasova; Hudson Clean Energy Enterprises, LLC, Alliance Texas Holdings, LLC, Neil Z. Auerbach, Judith Auerbach, Auerbach Partners, L.P., Auerbach Children's Dynasty Trust u/a/d October 9, 2012, and Auerbach Family Dynasty Trust u/a/d October 9, 2012*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br>GOODMAN NETWORKS, INC.<br>Debtor | Chapter 7<br><br>Case No. 22-31641-mvl-7 |

**OBJECTION TO TRUSTEE'S MOTION FOR APPROVAL OF MULTI-PARTY SETTLEMENT REGARDING PROPERTY OF THE ESTATE**

18920 NW 11th, LLC; Steven Zakharyayev; Evelina Pinkhasova; Hudson Clean Energy Enterprises, LLC; Alliance Texas Holdings, LLC; Neil Z. Auerbach; Judith Auerbach; Auerbach Partners, L.P.; Auerbach Children's Dynasty Trust u/a/d October 9, 2012; and Auerbach Family Dynasty Trust u/a/d October 9, 2012 (together, "Movants") file this objection to the Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Multi-Party Settlement Regarding Property of the Estate.

## I.  SUMMARY OF ARGUMENT

1. Movants are filing this objection because the Trustee appears to have abdicated its responsibility for protecting the Estate's assets. Not long ago, the Trustee filed a scathing Adversary Proceeding against the Estate's largest creditor, FedEx Supply Chain Logistics & Electronics, Inc. ("FedEx"). In it, the Trustee asked this Court to prevent FedEx from pursuing a separate lawsuit against Movants in which it asserted claims that belong to, and indeed have already been brought by, the Estate.

2. Unfortunately (and inexplicably), the Trustee appears to have lost his nerve. Rather than pursue the Estate's necessary action against FedEx, the Trustee now asks the Court to sign off on a settlement that would expressly permit FedEx to "pursue the same target defendants . . . that the Trustee is and will be pursuing."

3. FedEx's clear circumvention of the bankruptcy process cannot stand. FedEx's actions violate the Automatic Stay and, if approved, will affirmatively harm the Estate by forcing Movants to defend duplicative lawsuits in two different courts. This would waste Estate resources that could be spent in resolving the Trustee's claims properly asserted on behalf of the Estate and make resolution of the Estate's existing lawsuits harder. FedEx is also an *unsecured* creditor in this bankruptcy case.[1] Allowing FedEx to assert Estate claims for its own benefit would, in effect, enable FedEx to jump the priority line and recover ahead of more senior creditors.

---

[1] *See* Proof of Claim No. 32

2

4. None of this is news to the Trustee. The Trustee made the same points when he sued FedEx, and he admits that most are still true today. The Trustee attempts to put lipstick on its illegal settlement by bragging that the Proposed Settlement grants the Estate a cut of anything FedEx recovers in its duplicative lawsuit. But that only reenforces what is obvious on the face of FedEx's pleadings: the claims asserted in the FedEx lawsuit belong to the Estate.

5. If FedEx is allowed to proceed in its district court lawsuit asserting the same claims which the Trustee asserts in his own adversary proceeding, Movants will be forced to waste time and resources defending separate lawsuits based on the same alleged facts and transactions and seeking recovery of the same money. Moreover, as the Trustee noted himself when he first sought to enjoin FedEx's improper action, duplicative lawsuits will waste Estate resources that could be spent in resolving the Trustee's claims properly asserted on behalf of the Estate.

6. The Proposed Settlement is not a compromise that benefits the Estate. Instead, it represents a complete capitulation to FedEx and abdication of the Trustee's responsibilities to the Estate, creditors, and parties in interest. The Proposed Settlement is not good for the Estate, the Court, the Trustee, or Movants. Accordingly, Movants request that the Court reject the Proposed Settlement.

## II. BACKGROUND

7. FedEx contractually retained Debtor to perform minor technical services on certain telecommunications equipment it regularly purchased and sold.[2]

---

[2] Proof of Claim 32-1 at ¶¶5-14.

Rather than simply pay Debtor for the value of those services, FedEx's accounting wizards arranged to have FedEx and Debtor entered into an elaborate contractual scheme whereby FedEx would "buy" its own (now serviced) equipment back from Debtor.[3] These purchases created the impression that FedEx was purchasing hundreds of millions of dollars of equipment from a "Tier II Minority owned business partner."[4] But the plan came with a catch: Debtor did not get to keep almost any of the money FedEx wanted the government to believe it was spending on its goods and services.[5] Instead, the parties' contract required it to "reverse" every transaction by returning all but a tiny portion of the sums paid by FedEx.[6]

8.  In late 2021, Debtor ran into financial trouble and stopped "reversing" the transactions. Somehow, FedEx did not notice this, so it continued to overpay Debtor. FedEx claims it wired Debtor more than $66 million before it noticed Debtor was not "reversing" the transactions, as required by the Contract.[7]

**A.  Debtor Pushed into Bankruptcy.**

9.  On September 6, 2022, various petitioning creditors filed an involuntary petition against the Debtor, thereby beginning the Bankruptcy Case and creating the Debtor's bankruptcy estate ("Estate").[8] FedEx joined as a petitioning creditor a month later.

---

[3]   *Id.*; *see also* Adversary Proceeding, ECF 17 at ¶¶11-12.
[4]   Adversary Proceeding, ECF 1 at ¶11.
[5]   *Id.* at ¶¶11-12.
[6]   Claim 1-2, Ex. A.
[7]   FedEx Lawsuit, ECF 1 at ¶208.
[8]   *Id.* at ¶419.

4

**B.  FedEx's Proof of Claim.**

10. On April 7, 2023, FedEx filed its wholly unsecured proof of claim in the Bankruptcy Case ("Proof of Claim").[9] In it, FedEx states that "Goodman Networks is liable to FSCLE on claims for breach of contract, breach of implied duty of good faith and fair dealing, negligent misrepresentation, fraudulent inducement, fraudulent nondisclosure, actual fraud, constructive fraud, theft, conversion, conspiracy, unjust enrichment, and tortious interference with business relations, among other or substantially similar claims."[10]

11. The Proof of Claim also asserts that the Debtor transferred $76,104,141.98 from that account to itself, its subsidiaries, or to third parties, against most of whom the Trustee has asserted or has threatened claims.[11]

**C.  The Trustees' Lawsuits Against Objecting Defendants.**

12. In its role managing the Estate, the Trustee initiated two relevant adversary proceedings. In the first—Adversary case 23-03072 ("18920 Lawsuit")—the Trustee seeks to hold many Defendants, including movants 18920 NW 11th, LLC; Steven Zakharyayev; and Evelina Pinkhasova liable for damages associated with their alleged role in demanding redemption of certain notes from Debtor and then settling its redemption rights.[12]

---

[9]   Claim No. 32-1.
[10]  *Id.* at ¶2.
[11]  *Id.*
[12]  18920 Lawsuit, ECF 1.

5

13. In the second lawsuit—Adversary case 23-03090 ("Adversary Proceeding")—the Trustee asserts various claims against (among others) movants Hudson Clean Energy Enterprises, LLC, Alliance Texas Holdings, LLC, Neil Z. Auerbach, Judith Auerbach, Auerbach Partners, L.P., Auerbach Children's Dynasty Trust u/a/d October 9, 2012, and Auerbach Family Dynasty Trust u/a/d October 9, 2012 related to their alleged involvement in selling bonds to the Debtor for a discount.[13]

**D.    The FedEx Lawsuit.**

14.    On October 27, 2023, FedEx filed a 153 page, 825 paragraph Complaint with the United States District Court for the Northern District of Texas, thereby initiating Case No. 3:23-cv-02397-S ("FedEx Lawsuit") against Movants and others.[14] In it, FedEx purports to state claims against Movants for violating Racketeer Influenced and Corrupt Organization ("RICO"); violations of the Texas Theft Liability Act; Conversion; Unjust Enrichment; Common Law Fraud; and Civil Conspiracy. FedEx's claims against Movant's are substantively identical to those asserted by the Trustee. FedEx admits this but argues that the factual overlap "does not convert Fed[Ex]'s claims to ones owned by" the Estate.[15]

**E.    The Adversary Proceeding Against FedEx.**

15.    On November 15, 2023, the Trustee filed an Adversary Proceeding—Adversary case 23-03091-mvl ("Adversary Proceeding")—against FedEx. In it, the

---

[13]    Hudson Lawsuit, ECF 1.
[14]    FedEx Lawsuit, ECF 1.
[15]    Adversary Proceeding, ECF 17 at ¶32.

6

Case 22-31641-mvl7 Doc 514 Filed 03/21/24 Entered 03/21/24 21:00:31 Desc Main
Document    Page 7 of 20

Trustee sought declarations that Counts 1, 2, 3, 4, 5, and 8 ("Disputed Counts") of the District Court Lawsuit "constitute property of the Estate and/or actions to recover on a claim against the Debtor under 11 U.S.C. § 362(a)(1) and (3)"; preliminary and permanent injunctive relief prohibiting FedEx from continuing with its lawsuit; a declaration that FedEx willfully violated the Automatic Stay by filing the FedEx Lawsuit; and damages caused by FedEx's violation of the Automatic Stay.[16]

16. Aside from stating the obvious, which is that FedEx's claims are based on the same facts that give rise to the Trustee's claims, the Trustee pointed to concrete evidence of damage already caused by FedEx's decision to file its lawsuit:

> Damage to the Estate has occurred and is ongoing as a result of the District Court Lawsuit. AMRR has already informed the Trustee that, because of the District Court Lawsuit, it may have to file a Chapter 11 case in order to sell assets under section 363(f) of the Bankruptcy Code, because otherwise it cannot provide clear title to a buyer. Such a filing will likely negatively impact the amount AMRR can pay the Estate on its claims. Hudson and the Auerbachs have informed the Trustee that there is no point to a settlement with the FedEx allegations pending, and the mediation scheduled for November 9, 2023 has been postponed indefinitely. Frinzi, Goodman, and 18920 have similarly informed the Trustee that there is no point to negotiations because a settlement with the Estate cannot provide them the release that they would need to pay reasonable funds. And, all defendants of the Estate—who are the defendants to the District Court Lawsuit—will collectively spend enormous amounts of attorney's fees simply responding to a 825 paragraph complaint; money which will not be there for the Estate to recover and distribute to creditors.[17]

---

16  *Id* at ¶¶ 48-93.

17  *Id.* at ¶22.

7

17. In its subsequent Request for a Preliminary Injunction, the Trustee estimated that FedEx's claims would "likely" cost the Estate "millions" of dollars if the Court allows them to go forward.[18]

**F. Trustee Surrenders, Does FedEx's Bidding.**

18. On January 10, 2024, the Trustee abruptly dismissed the Adversary Proceeding without Prejudice.[19] Soon after, the Trustee filed the startling Motion pending before the Court.[20] In it, the Trustee asks the Court to allow FedEx to move forward with its claims even though it is confident it would have prevailed in the Adversary Proceeding.[21] The Trustee also adds that it "does not like what FedEx did, how it did it, and when it did it" and "concedes that FedEx pursuing the same target defendants in the District Court proceeding that the Trustee is *and will be pursuing* in his actions and will make a settlement of the Estate's claims harder, because the Trustee will not be able to grant a full release."[22]

Despite this, the Trustee meekly suggests that the Court should bless FedEx's violative assertion of Estate causes of action because he thinks FedEx will be "mostly reasonable if he proposes a settlement that requires a FedEx release."[23] The Trustee, amazingly, gives up any ability to compromise or release any claims asserted in the FedEx litigation (which is duplicative of the Trustee's claims in the Adversary

---

[18] Adversary Proceeding, ECF 5 at p. 18.
[19] Adversary Proceeding, ECF 19.
[20] Bankruptcy Case, ECF 502.
[21] *Id.*
[22] *Id.* at ¶49.
[23] *Id.*

8

Proceeding), without express written consent of FedEx, in FedEx's sole and absolute discretion.[24]

### III. STANDING

19. Parties in interest have standing to raise, appear, and be heard on issues in bankruptcy proceedings like this one. *See* 11 U.S.C. § 1109. "The term 'party in interest' is not defined in the Bankruptcy Code." *Matter of Xenon Anesthesia of Texas , PLLC*, 698 F. App'x 793, 794 (5th Cir. 2017). That said, it "generally means anyone who has a legally protected interest that could be *affected* by the bankruptcy case." *Id.* (internal citations omitted); *see also Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V.,* 347 F.3d 589, 595 (5th Cir. 2003) (party in interest include "any other person with a sufficient stake in [the] outcome of a [bankruptcy] proceeding so as to require representation.").[25]

20. As discussed below, the Movants are parties in interest and therefore have standing to object to the 9019 Motion because their financial and legal interests will be adversely impacted if the Court permits FedEx to continue to violate the Automatic Stay, as the proposed Settlement Agreement expressly would permit. *See In re Derosa-Grund*, 567 B.R. 773, 783 (Bankr. S.D. Tex. 2017) (holding that "future litigation costs sufficiently constitute a 'threatened injury for New Line to be a party-in-interest withstanding to object" to Proposed Settlement).

---

[24] ECF 509, p. 12 of 15.

[25] Similar questions about the extent of the standing of a party in interest to object and be heard are currently pending before the U.S. Supreme Court in *Truck Insur. Exch. v. Kaiser Gypsum Co.*, No. 22-1079.

9

21. Courts have recognized that parties other than the debtor or the trustee have standing to enforce the automatic stay. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Labuzan,* 579 F.3d 533, 544 (5th Cir. 2009) (observing that section 362(k) of the Bankruptcy Code was not enacted "solely for the benefit of debtors"); *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.),* 463 B.R. 28 (Bankr. W.D. Mich. 2012) (noting that it is enough that for a third party to establish that it is in the "zone of interest" of the automatic stay to have standing to enforce the automatic stay).

22. The bankruptcy court's decision *Teleservices Group* is particularly instructive. In that case, the court held that a third-party defendant in duplicative lawsuits filed by the trustee and a creditor had standing to ask the court to enforce the Automatic Stay because it "clearly risks additional losses if both lawsuits proceed unabated."). *Teleservices Group*, 463 B.R. at 32. The court further concluded that the creditor's unjust enrichment lawsuit violated the Automatic Stay because it sought to recover the same funds as the trustee's fraudulent transfer claims. *Id.* at 36 ("the only real difference between Trustee's and [the creditor's] actions against Huntington is that the recovery Trustee seeks is for the benefit of all of Teleservices' creditors, including [the creditor], whereas any recovery by [the creditor] would be only for its own benefit.").

23. The Movants therefore have standing to seek to prevent the erosion of the automatic stay by the 9019 Motion and ultimately to request that the Court enforce the automatic stay against FedEx—what the Trustee originally intended to

10

do. If the 9019 Motion is granted, the Movants may be subject to double liability on the same Estate-owned claims.

## IV. DISCUSSION

24. In its Motion to Approve the Proposed Settlement, the Trustee again asserts that "FedEx has no valid interest against any property of the Estate, *including the Estate's fraudulent transfer claims and the proceeds thereof.*"[26] Despite this, the Trustee asks this Court to allow it to trade its righteous lawsuit seeking to enjoin FedEx from continuing to egregiously violate the Automatic Stay in exchange for a cut of any money FedEx recovers prosecuting the Trustee's claims.[27] The Trustee's request is facially absurd, and sanctioning such a settlement would conflict with the Court's obligation to "administer the estate in an efficient and equitable manner and protect(ing) the assets of the estate from depletion." *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1055 (5th Cir.1986).

25. To approve the Proposed Settlement, the Trustee must persuade this Court that it is "fair and equitable and in the best interest of the estate." *In re Levenson Grp., Inc.,* 613 B.R. 418, 425 (Bankr. N.D. Tex. 2020). To make that determination, the Court must evaluate three factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the

---

[26] Bankruptcy Case, ECF 502, ¶25.
[27] *Id.* at ¶26.

11

compromise. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.*), 119 F.3d 349, 354 (5th Cir. 1997) (emphasis added). As discussed below, each of these factors strongly weigh against approving the settlement.

### A. The Trustee's Adversary Proceeding Will Establish FedEx Violated the Automatic Stay.

26. In its Motion to Approve the Proposed Settlement, the Trustee states it is "confident [i]t will prevail" and obtain the requested injunctive relief if it moves forward with the Adversary Proceeding.[28] The Trustee is right. At the same time, the Trustee expressly states that it intends to continue to pursue the same claims against identical parties.[29] The Court cannot and should not sanction this Agreement.

27. In the Fifth Circuit, a claim for violating the automatic stay is present when: (1) the defendant [knew] of the existence of the automatic stay; (2) the defendant's acts [were] intentional; and (3) the defendant's acts . . . violated the stay. *Id.* at 302. A willful violation of the automatic stay does not require a specific intent to violate the automatic stay, only that the acts which violated the stay were intentional. *Id.*

28. FedEx admits that it knew the automatic stay existed, and also concedes it deliberately filed the lawsuit in dispute.[30] Thus, the outcome of the Trustee's

---

[28] Bankruptcy Case, ECF 502 at ¶24.
[29] *Id.* at ¶49.
[30] Adversary Proceeding, ECF 17 at ¶¶29, 32, 89

request for injunctive relief turns on whether this Court finds that FedEx in fact violated the Automatic Stay by filing the FedEx Lawsuit.

29. "Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim *as of the commencement of the case.*" *Scott v. Purcell*, No. 4:19-CV-00282-P, 2020 WL 6384356, at *3 (N.D. Tex. Oct. 30, 2020). If the Court determines that FedEx is pursuing an injury that "stem[s] from the depletion of estate assets," the claim belongs to the Estate. *In re Buccaneer Resources, LLC*, 912 F.3d 291, 295 (5th Cir. 2019). Thus, FedEx cannot move forward with he Disputed Claims unless it can show that "its asserted injury does not flow from injury to debtor." *Id.*

30. Here, the Trustee acknowledges that "FedEx had asserted its RICO and constructive trust claims against many of the same defendants, and on account of the same transfers, that the Trustee has sued various defendants to avoid and to recover, including as against property acquired as a result of said transfers."[31] The record likewise demonstrates that all the Disputed Claims derive from the same act—Debtor's transfer of cash originally received from FedEx under the Master Services Agreement to third parties —that gives rise to the Estate's claims. As a result, FedEx's Lawsuit violates the Automatic Stay.

---

[31] Bankruptcy Case, ECF 502 at ¶22.

13

### i. *FedEx's "fraudulent inducement" theory is not viable.*

31. FedEx realizes this, so it tries to persuade the Court that the Disputed Claims relate not to Debtor's nonpayment under the Master Services Agreement, but a conspiracy to "steal" FedEx's money by fraudulently inducing FedEx to transfer money by "sending FedEx invoices with no intention to perform the reversing transactions associated with those invoices and while providing fraudulent and intentionally false technical excuses to FedEx."[32]

32. FedEx's argument falls apart on closer examination. First, although a party can commit fraud by making a contractual promise with no intent to deliver, FedEx's own pleadings establish that is not what happened here. According to FedEx, Debtor's obligation to "reverse" the payments derived exclusively from the terms of a written contract—the Master Services Agreement—that FedEx acknowledges it executed long before any of Goodman's so called fraudulent acts.[33] By its own admission, Debtor complied with its obligations under the Master Services Agreement until late 2021.[34] As a result, FedEx has not articulated a viable theory of fraud or fraudulent inducement under which it can attempt to recover the money it seeks to claw back via the Disputed Claims. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (noting that the economic loss rule bars tort claims where the only injury claimed is one for economic damages recoverable under a breach of contract claim); *see also Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568,

---

[32] Adversary Proceeding, ECF 18 at p. 3; Proof of Claim 32-1 at ¶2.
[33] FedEx Lawsuit, ECF 70 at ¶62; *see also* Proof of Claim 32-1 at ¶¶ 10, 13.
[34] *Id.* at ¶9.

14

584 (N.D. Tex. 2013) ("The focus of the [economic loss] rule is on determining whether the injury is to the subject of the contract itself.").[35]

### ii. *The Disputed Claims are all based on fraudulent transfers, not independent acts of fraud.*

33. FedEx's problems are even more pronounced when viewed in the context of the Disputed Claims against Movants in particular. FedEx constantly throws around buzz words like "steal" and "launder," but a closer examination of the actual allegations against Movants reveals that they are not viable *unless* they are based on the allegedly fraudulent transfers rather than the act of wiring Goodman the funds.

34. For example, FedEx alleges Movants violated RICO, but it does not allege that they sent the invoices it claims proximately caused its injuries. Instead, it seeks to hold Movants liable for conspiring to violate RICO.[36] But to recover from Movants, FedEx must establish an injury to his or her business or property directly and proximately caused *by the defendant's RICO violation*, and that the injury flowed *from the conspiracy. Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 552 (5th Cir. 2012) ("Injury caused by acts that are not racketeering activities or otherwise wrongful under RICO will not establish a viable civil RICO claim").

35. FedEx's own pleadings make this impossible. FedEx admits it knowingly wired the supposedly "stolen" money to *Debtor's bank account* under a

---

[35] Indeed, the sole basis of FedEx's so called "fraudulent inducement" claim are "invoices" that the Master Services Agreement *required* Debtor to invoice FedEx "monthly," and FedEx does not allege that anything in the supposedly deceptive invoices was *false*. *See* Proof of Claim 32-1, Ex. A at §10.

[36] Adversary Proceeding, ECF 18 at p. 12.

15

written Master Services Agreement.[37] FedEx plausibly insists that it would not have wired Debtor this money if it had known that (as it now alleges) Debtor did not intend to comply with its contractual obligation to "reverse" the transaction most of that money, but this hardly makes FedEx unique in a bankruptcy matter. Indeed, any creditor would probably say they would not have performed their end of the bargain if they knew Debtor was not going to pay them for their goods or services.

36. Most importantly, none of these arguments by FedEx address the claims that FedEx has made against Movants. Movants are not alleged to have had any involvement in any of the FedEx transactions *at all*. The claims against Movants in the FedEx Case—like the claims against Movants in the Trustee's adversary proceedings—relate to Movants' alleged involvement in transactions with the Debtor unrelated to FedEx. Indeed, as the Trustee notes, the alleged fraudulent transfers did not exclusively involve funds that originated FedEx. Thus, to the extent Movant's are in fact liable for participating in those transactions, those causes of action belong to the Estate.

37. In sum, FedEx's claims are not unique and FedEx has not alleged any individualized complaint against Movants: like many creditors, FedEx claims Debtor breached a contract by not paying everything it owes, and alleges it was injured when Debtor transferred money out of its accounts to alleged insiders and other third-parties (like Movants).[38] These claims belong to the Estate, and thus FedEx willfully

---

[37] Adversary Proceeding, ECF 17 at ¶¶43-44.
[38] Claim 32-1.

16

violated the Automatic Stay. [39] *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 430 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) (holding that the Automatic Stay bars duplicative claims under nearly identical circumstances).

B.  **Approving the Settlement Will Cause Considerable Inconvenience and Delay.**

38. The second factor—"the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay"—also strongly weighs against approving the settlement. As discussed above, the adversary proceeding the Trustee has brought against FedEx is not complex, and the Court can and should convene a hearing after which it should enter a preliminary and eventually permanent injunction against FedEx preventing it from prosecuting the FedEx Lawsuit, or otherwise pursuing the Estate's claims outside of this Court.

39. On the other hand, the costs associated with and length of this bankruptcy proceeding could and will go up exponentially if the Court approves this Settlement. In its Motion for Entry of a Preliminary Injunction, the Trustee explained that Movants and other parties brought into the FedEx Lawsuit cancelled scheduled mediations and declined to engage in further settlement talks after FedEx filed suit

---

[39] To the extent that the Trustee is attempting to assign claims to FedEx or there is any attempt to argue that FedEx would have derivative standing to assert the same claims as the Trustee that belong to the Trustee (which is ultimately what is being attempted by this settlement), such efforts have been found by this Court to be improper in the past in the Chapter 7 context. Cf. In re Cooper, 405 B.R. 801 (Bankr. N.D. Tex. 2009) (discussing how an independent creditor lacked standing to assert claims belonging to the Trustee and that Chapter 7 does not allow derivative standing to pursue estate causes of action derivatively). The claims at issue in this settlement are more appropriately brought by the Trustee on behalf of the Estate and this Court should not allow a settlement that essentially would allow Fedex to usurp the Trustee's role. See id. at 814 ("The system works better when a statutory fiduciary is steering the ship.")

because there is no point in settling with the Trustee if there is a possibility that the Court will allow FedEx to pursue the same claims. The Trustee also estimated that allowing the FedEx Lawsuit to move forward would "likely" cost the estate "millions" of dollars.[40]

40. Without explanation, the Trustee has suddenly changed his tune, but it is unclear why. Indeed, in its Motion to Approve the Settlement, the Trustee "concedes that FedEx pursuing the same target defendants in the District Court proceeding that the Trustee is *and will be pursuing* in his actions will make a settlement of the Estate's claims harder, because the Trustee will not be able to grant a full release."[41]

41. The Trustee has apparently surrendered, but the Court should not. If the Court approves this Settlement, Movants will have to file their own Adversary Proceeding asking this Court to exercise its power (and fulfill its duty) to protect the Estate by enjoining FedEx's outrageous and inequitable conduct. If that fails, Movants will seek protection from having to defend themselves against *the same lawsuit* brought by two parties in two different federal courts at the same time. Such a foolhardy attempt to pursue double recovery will cost the Estate, slow down the bankruptcy proceedings while delaying and minimizing any potential recovery to creditors, waste judicial resources of this Court and the district court, and improperly force Movants to defend the same lawsuit in two courts.

---

[40] Adversary Proceeding, ECF 4.
[41] Bankruptcy Case, ECF 502 at ¶49.

**C.      FedEx's Aggression Should Not Stand.**

42.    In its Adversary Complaint, the Trustee stated the obvious: FedEx filed its lawsuit "to frustrate the Trustee's administration of the Estate by making it virtually impossible for him to administer the Estate, monetize assets, enter into settlements, and grant releases *without* FedEx also giving a release to the particular defendant."[42] The Trustee was right. Unfortunately, it appears to have folded under pressure from FedEx. The Court, however, should not and must not sanction FedEx's misconduct by approving the settlement.

## V.     CONCLUSION

43.    Allowing the FedEx Lawsuit to go forward will ultimately frustrate fundamental bankruptcy policy and hinder the effective administration of the Debtor's Estate. In the end, FedEx is just an unsecured creditor seeking to carve out a piece of the Estate for itself rather than sharing in any pro rata recovery achieved by the Estate through litigation or a settlement. The overall objective of a bankruptcy proceeding is to create a single forum into which all recoveries are gathered and then distributed to the debtor's creditors. See Teleservices Grp., 463 B.R. at 36. If FedEx believes it has a superior right to what the Debtor's Estate may or may not recover from the Movants and other parties, it should assert that claim within the bankruptcy proceeding and not in separate and duplicative litigation. But FedEx's aggression should not and cannot stand, and the Court should reject the Proposed Settlement

---

[42]    Adversary Proceeding, ECF 1 at ¶35.

19

and immediately enjoin FedEx from further prosecuting any claims against Movants in any venue other than before this Court.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: *s/ Jeb Golinkin*
    Michael Cancienne
    State Bar No. 24046330
    Joseph ("Jeb") W. Golinkin II
    State Bar No. 24087596
    1980 Post Oak Blvd., Ste. 2300
    Houston, Texas 77056
    713-955-4020 (Telephone)
    713-955-9644 (Fax)
    mcancienne@jlcfirm.com
    jgolinkin@jlcfirm.com

ATTORNEYS FOR MOVANTS

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 21st day of March, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record in this case.

    */s/ Jeb Golinkin*
    Joseph W. Golinkin II