IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § | |
| § | Chapter 7 |
| GOODMAN NETWORKS, INC., § | |
| § | Case No. 22-31641-mvl-7 |
| Debtor. § | |

**ORDER APPROVING MULTI-PARTY SETTLEMENT
REGARDING PROPERTY OF THE ESTATE**

CAME ON FOR HEARING on the 27th day of March, 2024, the *Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Multi-Party Settlement Regarding Property of the Estate* (the "Motion"), filed by Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case").

By the Motion, the Trustee, on behalf of the Debtor and the Estate and the Debtor's two wholly owned subsidiaries (together, the "Subsidiaries"): GNET ATC, LLC ("GNET"), and Multiband Field Services, Inc. ("Multiband"), seeks the approval of a compromise and settlement (the "Settlement"), as effectuated and memorialized by this Order, with the following parties:

(i) UMB Bank, National Association, as indenture trustee (the "Indenture Trustee") under that certain Indenture dated as of May 31, 2017 pursuant to which 8% Senior Secured Notes due 2022 (the "Notes") were issued (the "Indenture"), acting on direction of the Majority Noteholder Group; (ii) U.S. Bank National Association, as collateral agent (the "Collateral Agent") under the Indenture and that certain Pledge and Security Agreement dated as of May 31, 2017 (the "Pledge and Security Agreement"), acting on direction of the Majority Noteholder Group and the Indenture Trustee; (iii) the Majority Noteholder Group[1] (collectively with the Indenture Trustee and the Collateral Agent, the "Settling Bondholders"); (iv) FedEx Supply Chain Logistics and Electronics, Inc. ("FedEx"); and (v) ARRIS Solutions, Inc. ("ARRIS").

Finding that service and notice of the Motion and the hearing thereon were sufficient and appropriate, that the Settlement is fair, equitable, and the result of extensive, good faith and arm's length negotiations, ~~and~~ that the Settlement should be approved as being in the best interests of the Estate under Bankruptcy Rule 9019, overruling all objections to the Motion, and incorporating herein in its entirety the Court's oral ruling given on March 28, 2024 on the Motion, it is hereby:

ORDERED that the Settlement is APPROVED, as effectuated by this Order; it is further

## ALLOWANCE OF CLAIMS

ORDERED that Claim No. 13, filed by the Indenture Trustee, is ALLOWED as a secured claim in the amount of $18,738,733.10 as of the Petition Date (the "Indenture Trustee Claim"), subject only to the Trustee's right to contest $1,600,000.00 of the Indenture Trustee Claim based on his allegations that such portion of said claim should have been cancelled or transferred to the

---

[1] The Majority Noteholder Group consists of investment advisers or managers of funds that hold (with such investment advisers and managers acting on behalf of such holders), or are beneficial holders of, a majority of the 8% Senior Secured Notes due 2022 issued by Goodman Networks, Inc., and include JLP Credit Opportunity Master Fund Ltd., JLP Credit Opportunity IDF Series Interests of the SALI Multi-Series Fund, L.P., JLP Institutional Credit Master Fund LP, Alimco Re Ltd., Marli B. Miller Trust A4, Miller Family Education and

Debtor, *provided, however,* that the foregoing is without prejudice to the amount of the Indenture Trustee Claim that is secured under the principles of section 506(a) of the Bankruptcy Code and is without prejudice to any claim for additional postpetition interest, default interest, attorney's fees, and other charges, as otherwise provided for in the underlying documents and instruments and under the principles of section 506(b) of the Bankruptcy Code; it is further

ORDERED that Claim No. 14, filed by the Collateral Agent, is WITHDRAWN without prejudice as duplicative of the Indenture Trustee Claim provided, however, to the extent that any right to claim amounts that were asserted in the Collateral Agent Claim that are not included in the Indenture Trustee Claim, such right(s) are deemed included in the Indenture Trustee Claim; it is further

ORDERED that Claim No. 32, filed by FedEx, is ALLOWED as a general unsecured claim in the amount of $81,158,452.82 (the "FedEx Claim"); it is further

ORDERED that Claim No. 29, filed by ARRIS, is ALLOWED as a general unsecured claim in the amount of $30,293,887.09 (the "ARRIS Claim"), and that the automatic stay imposed by section 362(a) of the Bankruptcy Code is terminated solely to permit ARRIS to take all necessary and appropriate steps to collect on that certain escrow in the approximate amount of $228,987.38 at Texas Partners Bank, to be applied towards the ARRIS Claim to the extent actually collected, and that the Trustee shall reasonably cooperate with ARRIS's efforts to collect the same, including by executing reasonable and necessary documents requested by ARRIS or Texas Partners Bank with respect to such collection; it is further

ORDERED that any and all claims and causes of action that the Trustee, the Estate, and the Subsidiaries may have against the Settling Bondholders, FedEx, or ARRIS are waived and

---

Medical Trust, Susan F Miller Spousal IRA, Susan F. Miller Spousal Trust A4, DuPont Pension Trust, and Hilltop Securities, Inc.

released with prejudice, subject only to all rights of the Trustee to ensure that all payments made to the Settling Bondholders, FedEx, or ARRIS are properly applied and accounted for; it is further

## AMMR PROCEEDS SHARING

ORDERED that, with respect to all amounts received by the Estate and/or the Subsidiaries pursuant to: (i) all contracts and agreements with MBG Holdings, Inc. f/k/a American Metals Recovery and Recycling, Inc. ("AMRR") and Alliance Global Solutions, LLC ("Alliance"), including the $300,000.00 held by the Trustee in a separate account and all amounts to be paid from Alliance pursuant to that certain promissory note payable by Alliance to the Trustee, or collected therefrom, including any collection or foreclosure proceedings, and further including the Trustee's equity interest in Alliance (all such present and future payments, rights, and recoveries from or against Alliance, the "Alliance Proceeds"); (ii) all contracts and agreements with AMRR and Albers Aerospace Holdings, LLC ("Albers"), including the $2,200,000.00 held by the Trustee in a separate account and all amounts to be paid from Albers pursuant to that certain promissory note payable by Albers to the Trustee, or collected therefrom, including any collection or foreclosure proceedings, and further including the Trustee's rights to all holdbacks payable by Albers (all such present and future payments, rights, and recoveries from or against Albers, the "Albers Proceeds"); and (iii) any and all other payments that the Trustee may recover or receive from AMRR and its affiliates (the "AMRR Liquidation Proceeds," together with the Alliance Proceeds and the Albers Proceeds, the "AMRR Proceeds"), one third (1/3) of all such AMRR Proceeds shall be paid by the Trustee to the Indenture Trustee (the "Bondholders AMRR Share"), for application against the Indenture Trustee Claim as is otherwise appropriate in accordance with and pursuant to the Indenture, and one third (1/3) of all such AMRR Proceeds shall be paid by the Trustee to FedEx (the "FedEx AMRR Share"), for application against the FedEx Claim and

ARRIS Claim (as provided below) as is otherwise appropriate, and one third (1/3) of all such AMRR Proceeds shall be retained by the Estate as free and clear property (the "Estate AMRR Share") subject only to the asserted rights and interests against the Estate AMRR Share of 18920 NW 11th, LLC, and subject to all rights to contest and dispute such rights and interests, and, for the avoidance of doubt, all unsecured creditors with allowed claims, including FedEx, ARRIS, the Indenture Trustee, and the Collateral Agent to the extent of any deficiency claim, shall be entitled to a pro-rata share, as is otherwise appropriate, of any of the Estate AMRR Share to be distributed by the Trustee; it is further

ORDERED that the Trustee's fees and expenses in collecting the AMRR Proceeds, as of February 28, 2024, shall not be deducted from the Bondholders AMRR Share or the FedEx AMRR Share, but, the Trustee's reasonable fees and expenses incurred after February 28, 2024, shall be deducted from any AMRR Proceeds recovered after February 28, 2024 prior to the sharing of such net proceeds, subject to all rights to contest the reasonableness or allowance thereof; it is further

ORDERED that, no later than five (5) days after the entry of this Order, the Trustee shall pay to the Indenture Trustee $833,333.33 of the present Bondholders AMRR Share, to be applied against the Indenture Trustee Claim and distributed pursuant to and in accordance with the Indenture; it is further

ORDERED that, on or within five (5) days after June 10, 2024, the Trustee shall pay to FedEx $833,333.33 of the present FedEx AMRR Share, from which payment FedEx shall pay to ARRIS $100,000.00 of such payment, for application against the ARRIS Claim and the remainder to be applied against the FedEx Claim; it is further

ORDERED that, prior to any future payment of the Bondholders AMRR Share or the FedEx AMRR Share, the Trustee shall file a motion requesting such authority, when the amount of

AMRR Proceeds collected reasonably justifies such filing, specifying the AMRR Proceeds received, any fees and expenses to be charged against such proceeds, and specifying the net payments proposed, subject to all rights and abilities to object to any such motion; provided that, the Settling Bondholders and FedEx may also seek by motion an order directing that the Trustee account for and distribute any AMRR Proceeds collected; it is further

ORDERED that, for the avoidance of doubt, the Bondholders AMRR Share of the AMRR Proceeds shall be paid to and through the Estate prior to any sharing thereof; it is further

ORDERED that, for the avoidance of doubt, neither the Trustee nor FedEx waives or releases any right to assert in pending litigation against third parties that the AMRR Proceeds are either property of the Estate or property of FedEx; provided that, the Settlement is intended to compromise all disputes among the Trustee, the Estate, the Subsidiaries, the Settling Bondholders, and FedEx regarding all rights to the AMRR Proceeds; it is further

## BONDHOLDER SHARING

ORDERED that fifty percent (50%) of any net proceeds actually recovered by the Trustee under any crime and theft insurance policy of the Debtor or the Subsidiaries shall, promptly after receipt of the same, and subject to a motion seeking such authority, be paid by the Trustee to the Indenture Trustee for application against the Indenture Trustee Claim to be distributed pursuant to and in accordance with the Indenture, with all such other proceeds being the free and clear property of the Estate, but, for the avoidance of doubt, all such gross proceeds shall be property of the Estate in the first instance and shall flow through the Estate prior to the payment of any such sharing; it is further

ORDERED that the first $425,000.00 of any net proceeds actually recovered by the Trustee under or from any directors and officers insurance policy of the Debtor or the Subsidiaries

shall, promptly after receipt of the same, and subject to a motion seeking such authority, be paid by the Trustee to the Indenture Trustee for application against the Indenture Trustee Claim to be distributed pursuant to and in accordance with the Indenture, and that, thereafter, with respect to any additional such net proceeds, one third (1/3) thereof actually recovered by the Trustee shall, promptly after receipt of the same, and subject to a motion seeking such authority, be paid by the Trustee to the Indenture Trustee for application against the Indenture Trustee Claim to be distributed pursuant to and in accordance with the Indenture, and that the remaining two thirds (2/3) thereof shall be free and clear property of the Estate, but, for the avoidance of doubt, all such gross proceeds shall be property of the Estate in the first instance and shall flow through the Estate prior to the payment of any such sharing; it is further

ORDERED that, if the aggregate payments made by the Trustee to the Indenture Trustee on account of any insurance policies of the Debtor or the Subsidiaries as provided for above exceed $8,000,000.00, any additional payments in excess of that $8,000,000 made by the Trustee to the Indenture Trustee on account of any crime and theft insurance policies of the Debtor or the Subsidiaries, shall be reduced from fifty percent (50%) to one third (1/3); it is further

ORDERED that, for the avoidance of doubt, in no event will payments by the Trustee to the Indenture Trustee exceed the Indenture Trustee Claim, subject to all rights under section 506(b) of the Bankruptcy Code for postpetition interest, default interest, attorney's fees, and other charges as may otherwise be appropriate; it is further

ORDERED that the Collateral Agent, for the benefit of the Indenture Trustee on behalf of the holders of the Notes, holds valid and unavoidable first priority security interests, to the exclusion of any asserted interest of FedEx or any other party or creditor, in and to the Estate's and the Subsidiaries' rights against funds held at AIG or otherwise as collateral for workers'

compensation insurance (including in any Multiband bankruptcy case), the Trustee's judgment against Unified Field Services, Inc., and rights against the stock of Greater Tech Holdings, Inc., all subject to the Estate's surcharge claims related thereto and to all objections to such surcharge claims; it is further

ORDERED that, if the Trustee causes Multiband and/or GNET to file a petition in bankruptcy and the Trustee recovers funds payable to the Indenture Trustee in a Multiband or GNET bankruptcy proceeding, the Settling Bondholders will agree to a surcharge against such funds to pay professional fees and commissions that are (i) incurred to recover such funds and (ii) to the extent that free and clear funds in such case are not otherwise available to pay professionals and commissions incurred therein, subject only to the reasonableness thereof with respect to the allowance thereof under the Bankruptcy Code; it is further

ORDERED that, for the avoidance of doubt, the Indenture, the Notes, and all related security and other agreements and instruments, and all rights, claims, and obligations arising thereunder (including, without limitation, all obligations and indebtedness of the Debtor and the Subsidiaries to the Collateral Agent, the Indenture Trustee, and holders of the Notes) shall remain outstanding and be in full force and effect in accordance with their original terms, and nothing in this Order shall constitute a waiver, termination, release, discharge, forgiveness, abandonment, or novation of any term or provision thereof or of and related documents, or any rights, remedies, or privileges arising therefrom, except to the extent expressly and specifically provided otherwise in this Order; it is further

## **FEDEX SHARING**

ORDERED that the causes of action asserted by FedEx in the United States District Court for the Northern District of Texas, thereby initiating Civil Action No. 3:23-cv-02397 (the "District

Court Proceeding"), as presently pending, are not property of the Estate and are personal to FedEx, and that the Trustee waives with prejudice any claim he had that the filing of the District Court Proceeding constituted a violation of the automatic stay, but in the event that FedEx amends the same to assert causes of action that may be property of the Estate (i.e., derivative claims such as fraudulent transfers, breaches of fiduciary duty, or constructive trusts) the Trustee is not prejudiced from seeking future relief, including asserting that the automatic stay applies to the amended or new causes of action, and all parties reserve all rights with respect to any such amendment or future development; it is further

ORDERED that, promptly after the entry of this Order, the Trustee, on behalf of the Debtor and the Subsidiaries, shall assign to FedEx, without warranty or representation and on an "as-is," "where-is," basis, free and clear of all liens, claims, interests, and encumbrances, any breach of contract claim or other state law claim (but excluding claims arising under TUFTA where Prosperity Bank was transferred property from the Debtor or the Subsidiaries) that the Debtor or the Subsidiaries may have against Prosperity Bank, and that, to the extent that FedEx actually recovers on account of the same, all net proceeds of such recovery shall be applied against the FedEx Claim; it is further

ORDERED that FedEx shall share any net proceeds actually collected or recovered in or from the District Court Proceeding, including as it may be amended and including any ancillary litigation that may be commenced regarding the same, as follows: (i) five percent (5%) of any such net proceeds shall be paid by FedEx to ARRIS, for application against the ARRIS Claim; and (ii) ten percent (10%) shall be paid by FedEx to the Trustee, which ten percent (10%) shall constitute free and clear property of the Estate (but not the underlying claims or any of such net proceeds retained by FedEx or paid to ARRIS), and that, for the avoidance of doubt, all unsecured creditors

with allowed claims, including FedEx, ARRIS, the Indenture Trustee, and the Collateral Agent to the extent of any deficiency claim, shall share pro-rata, as is otherwise appropriate, in the Estate's share thereof; it is further

ORDERED that ten percent (10%) of any net proceeds actually recovered by the Trustee for the Estate shall promptly be paid after such recovery by the Trustee to FedEx, for application against the FedEx Claim, subject to a motion requesting the same, from any litigation claims of the Estate or litigation claims prosecuted by the Trustee on behalf of a Subsidiary,[2] except all such claims: (i) paid by any insurance; (ii) asserted in Adversary Proceeding 23-03036 or Adversary Proceeding 23-03090; and (iii) that are not otherwise subject to the perfected security interests of the Collateral Agent, including, for the avoidance of doubt, certain assets of Multiband with respect to AIG insurance, the Trustee's judgment against Unified Field Services and all rights related thereto, and any rights or recoveries against the stock in Greater Tech Holdings; it is further

ORDERED that FedEx waives any objection it may have under Bankruptcy Rule 9019 to any proposed settlement by the Trustee in, or related to, Adversary Proceeding 23-03036 or Adversary Proceeding 23-03090, or any other adversary proceeding or litigation that the Trustee may commence, but with FedEx reserving and preserving all personal claims it has against any of the defendants therein, none of which the Trustee will have any ability to compromise or release, except with the express written consent of FedEx, in FedEx's sole and absolute discretion; provided that, FedEx shall retain the right to object to any proposed settlement by the Trustee that alters or limits FedEx's rights under the Settlement or that causes property recovered by the Trustee for the Estate to be distributed in a manner that violates the order and priorities established by the Bankruptcy Code or the Settlement; it is further

---

[2] The Trustee covenants and agrees that he will not structure or pursue causes of action through Subsidiaries to avoid paying ten percent (10%) of net proceeds received for the Estate to FedEx.

ORDERED that, except to the extent of insurance proceeds otherwise addressed in this Order, all recoveries of the Trustee in Adversary Proceeding 23-03036 or Adversary Proceeding 23-03090 shall be free and clear property of the Estate, but subject to any sharing as is otherwise provided for in this Order and with respect to which, for the avoidance of doubt, all such proceeds shall be property of the Estate notwithstanding such sharing; it is further

ORDERED that the Trustee and FedEx will enter into a reasonable and standard common interest agreement to facilitate the sharing of discovery, depositions and to aid each in the pursuit of their separate claims, but without waiving or prejudicing their respective privileges; it is further

## PROSPERITY BANK SETTLEMENT APPEAL

ORDERED that FedEx and/or ARRIS, to the extent applicable, shall promptly withdraw with prejudice any appeal of the *Amended Order Granting Trustee's Second Amended Motion for Approval of Settlement and Compromise* [Docket No. 494]; it is further

## CASH COLLATERAL ORDER RESOLUTION

ORDERED that the Settling Bondholders waive any interests in, or right to seek a replacement lien for, all funds paid by the Trustee pursuant to the *Interim Order Authorizing Scott M. Seidel, Chapter 7 Trustee to Utilize Cash Collateral, Granting Adequate Protection, and Granting Related Relief* [docket no. 472] (the "Cash Collateral Order"), and that FedEx and ARRIS waive all objections to the Cash Collateral Order and the underlying motion, including with respect to all payments made by the Trustee to the Indenture Trustee thereunder, and that the Cash Collateral Order shall become a final order, with all payments made by the Trustee pursuant thereto being final and indefeasible, subject only to any portion thereof that was paid on account of an interim fee application being ratified and approved on a final basis in the context of any final fee application, with respect to which all parties reserve all rights; it is further

ORDERED that, within a reasonable time after the Settlement is effectuated, the parties shall submit a separate final form of order on the *Trustee's Motion Under Rule 4001(D) for Approval of Cash Collateral Stipulation with UMB Bank, National Association, as Indenture Trustee, and U.S. Bank, National Association, as Collateral Agent* [docket no. 452].

## GENERAL

ORDERED that all parties to this Order are exculpated to the maximum extent possible for any possible claim for negligence, including professional negligence, with respect to the negotiation, execution, and implementation of the Settlement and this Order; it is further

ORDERED that the Settlement and this Order were negotiated and entered into by the parties hereto in good faith, without collusion, and from arm's length bargaining positions, and that the terms and provisions of the Settlement and this Order are prudent, reasonable, fair, and equitable, in the best interests of each such party, and reflect the sound and reasonable exercise of judgment by each such party; it is further

ORDERED that proper, timely, and adequate notice of the Motion and the hearing thereon was provided to all necessary persons and entities, including but not limited to, the holders of the Notes, and that notice given by the Indenture Trustee to the holders of the Notes was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion or the hearing is required, and that the notice informed holders of the Notes that, inter alia, any holder of the Notes who failed to make a timely objection to the Motion shall be deemed to have waived such objection and consented to the entry of this Order and shall forever be foreclosed from making any objection relating to the Motion or this Order and this Order shall be binding on all holders of the Notes in all respects; it is further

ORDERED that in connection with the negotiation and proposal of the Settlement and the Order the Settling Bondholders diligently and in good faith discharged their duties and obligations pursuant to the Indenture, the Pledge and Security Agreement, and related documents, and otherwise conducted themselves with respect to all matters in any way related to the Notes and holders of the Notes and the collateral under the Pledge and Security Agreement with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs; it is further

ORDERED that this Order shall be immediately effective and enforceable upon its entry notwithstanding any otherwise applicable stay of the same; it is further

ORDERED that, for the avoidance of doubt, and notwithstanding anything contained herein to the contrary, in no event shall the Trustee, the Estate, or the Subsidiaries pay the Indenture Trustee, FedEx, or ARRIS more than the maximum amounts they may be entitled to under applicable nonbankruptcy law and the provisions of section 506(b) of the Bankruptcy Code (and subject to any objection with respect to any section 506(b) asserted fees and charges, other than interest), and the Trustee and the Estate retain and reserve all rights to ensure proper and full application of all payments made on account of such claims, including by way of accounting; it is further

ORDERED that, in light of the parties' intentions as reflected herein, the complexity of the Settlement and this Order, and the fact that various provisions of this Order will depend on future events that have not occurred and that cannot all be reasonably predicted, this Order shall be interpreted and applied flexibly to determine any dispute hereunder with the primary purpose being to effectuate the intentions of the parties to share in various assets and causes of action in the amounts and under the terms specified herein; it is further

ORDERED that the Court retains exclusive jurisdiction as to the enforcement and interpretation of the Settlement and this Order.

# # #  END OF ORDER  # # #

AGREED AS TO SUBSTANCE AND FORM:

**MUNSCH HARDT KOPF & HARR, P.C.**

*/s/ Davor Rukavina*
Davor Rukavina, Esq. (Tx Bar No. 24030781)
Thomas D. Berghman, Esq. (TX Bar No. 24082683)
500 N. Akard Street, Suite 4000
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
drukavina@munsch.com
tberghman@munsch.com

Counsel for Scott M. Seidel, Trustee


**BUTLER SNOW LLP**

*/s/ Danny Van Horn*
Adam M. Langley (*admitted pro hac vice*)
R. Campbell Hillyer (*admitted pro hac vice*)
Danny Van Horn (*admitted pro hac vice*)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Telephone: (901) 680-7316
adam.langley@butlersnow.com

-and-

Martin A. Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
 2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
candice.carson@butlersnow.com
martin.sosland@butlersnow.com

Counsel for FedEx Supply Chain Logistics & Electronics, Inc.

**DLA PIPER LLP (US)**

*/s/ James Muenker*
James Muenker (TX Bar No. 24002659)
Noah M. Schottenstein (TX Bar No. 24100661)
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
noah.m.schottenstein@us.dlapiper.com
james.muenker@us.dlapiper.com

Counsel for ARRIS Solutions, Inc.

**HUNTON ANDREWS KURTH LLP**

*/s/ Philip Guffy*
Philip M. Guffy (TX Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, Texas 77002
Tel: 713-220-4200
pguffy@huntonak.com

-and-

Paul N. Silverstein
Brian Clarke
200 Park Avenue
New York, NY 10166
Tel: 212-309-1000
psilverstein@huntonak.com
brianclarke@huntonak.com

Special Counsel to UMB Bank, National Association, as Indenture Trustee, and

*Counsel to the Majority Noteholder Group*

**STONECIPHER LAW FIRM**

*/s/ Eric Schaffer*
Eric A. Schaffer
125 First Avenue
Pittsburgh, PA 15222
Tel: 412-391-8510
eschaffer@stonecipherlaw.com

*Counsel to UMB Bank, National Association, as Indenture Trustee*

**SHIPMAN & GOODWIN LLP**

*/s/ Kathleen LaManna*
Kathleen M. LaManna
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Tel:     (860) 251-5000
klamanna@goodwin.com

*Counsel to U.S. Bank National Association as Collateral Agent*

Document comparison by Workshare Compare on Friday, March 29, 2024 1:03:08 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4867-1483-6143/1 |
| Description | Order on Global 9019 Final |
| Document 2 ID | file://C:\Users\tberghman\ND Office Echo\VAULT-HSZ4AAV6\Order on Global 9019 Final 4867-1483-6143 v.3.docx |
| Description | Order on Global 9019 Final 4867-1483-6143 v.3 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 81 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 83 |