Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
Conor P. White, Esq.
Texas Bar No. 24125722
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 855-7500

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-31641-mvl-7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY PROCEEDING |
| | § | NO: |
| GENESIS NETWORKS GLOBAL | § | |
| SERVICES, LLC; and JAMES GOODMAN, | § | |
| | § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the trustee of Goodman Networks, Inc.

(the "Debtor"), the debtor in the above-styled and numbered chapter 7 bankruptcy case (the

"Bankruptcy Case") and files this his *Trustee's Original Complaint* (the "Complaint"),

complaining of Genesis Networks Global Services, LLC ("Genesis Global"), and, for cause and

action, would respectfully show as follows:

## I.      PROCEDURAL BACKGROUND

1.      On September 6, 2022 (the "Petition Date"), various petitioning creditors filed an involuntary petition against the Debtor, thereby initiating the Bankruptcy Case and creating the Debtor's bankruptcy estate (the "Estate").

2.      The Court entered an order for relief against the Debtor on December 12, 2022.

3.      The Trustee is the duly appointed trustee of the Debtor and the Estate.

4.      The Court has jurisdiction over this Complaint under 28 U.S.C. § 1334.  Such jurisdiction is core under 28 U.S.C. § 157(b)(2).  To the extent that any matter in this Adversary Proceeding is not core, the Trustee consents to this Court's entry of a final judgment over any and all such matters.

5.      Venue of this Adversary Proceeding before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II.      PARTIES

6.      The Trustee is the Chapter 7 trustee of the Debtor and the Estate and files this Complaint in such capacity only.

7.      Genesis Global is a limited liability company organized and existing under the laws of the State of Texas.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), Genesis Global may be served with process in this Adversary Proceeding by and through its registered agent, Capitol Corporate Services, Inc., as follows: Genesis Networks Global Services, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S Mopac Expy Suite 220, Austin, Texas, 78746.

8.      James Goodman is an individual and a resident of the State of Texas.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(b), James Goodman may be served with process in this Adversary Proceeding anywhere he may be found, including his home at: James E. Goodman,

103 Tomahawk Trail, San Antonio, TX 78232; or where he regularly transacts business: James E.

Goodman, Genesis Networks, 1354 N. Loop 1604 E, Suite 103, San Antonio, TX 78232.

### III.    FACTS

9.    On or about July 3, 2020, Prosperity Bank ("Prosperity") loaned $3 million to

Genesis Global under a revolving line of credit (the "RLOC Loan") which, after certain

modifications to the terms thereof, was payable by Genesis Global on or before January 3, 2024.

The RLOC Loan was originally secured by various assets of Genesis Global.

10.    The RLOC Loan is guaranteed by James Goodman.

11.    On or about August 31, 2020, Prosperity loaned $1,948,427.94 to Genesis Global

under a term loan (the "Term Loan") which, after certain modifications to the terms thereof, is

payable by Genesis Global within seven years or the death of James Goodman.  The Term Loan

was originally secured by various assets of Genesis Global.

12.    The Term Loan is guaranteed by James Goodman.

13.    Additionally, the Term Loan is secured by a pledge agreement from John Goodman

of his interests in Goodman MBE Group, LP ("MBE").

14.    John Goodman and James Goodman are brothers.

15.    James Goodman was a director of the Debtor from at least April 30, 2020 to

February 1, 2022.

16.    Genesis Networks Enterprises, LLC ("Genesis Enterprises") is the beneficial owner

of Genesis Global, owning 100% of the company.

17.    Genesis Enterprises was the sole manager of Genesis Global at all times material

hereto.

18. Upon information and belief, James Goodman was the CEO, Manager, and majority shareholder of Genesis Enterprises at all times material hereto.

19. James Goodman was an individual with authority to, and who did, act on behalf of Genesis Global.

20. John Goodman and James Goodman directly or indirectly own MBE.

21. Upon information and belief, at all times relevant hereto, MBE owned a majority of the equity interests of the Debtor.

22. At no time relevant hereto has the Debtor owned an interest in Genesis Global.

23. At no time has the Debtor guaranteed either of the RLOC Loan or the Term Loan.

24. At no time relevant hereto was the business of Genesis Global integral, material, or beneficial to the business of the Debtor.

25. Prior to and on October 25, 2021, the Debtor had on deposit with Prosperity, in account number 70191838, the sum of $3,883,897.74 (the "Account").

26. The Account was in the name of the Debtor and the funds in it were owned by the Debtor.

27. On or about October 25, 2021, the Debtor executed in favor of Prosperity that certain *Assignment of Deposit Account* (the "Assignment"), pursuant to which the Debtor granted Prosperity a security interest in the Account, in order to secure the obligations of Genesis Global to Prosperity under the RLOC Loan and the Term Loan.

28. The granting of said security interest represented a "transfer" under the bankruptcy code.

29. The execution of the Assignment represented an "obligation" under the Bankruptcy Code.

30.     At the time of the Assignment, James Goodman was a director of and an insider of the Debtor.

31.     The Debtor received no consideration and no reasonably equivalent consideration for the Assignment.  Among other things, the Debtor was not obligated to Prosperity, the Debtor did not own Genesis Global, the Debtor received no portion of the RLOC Loan or the Term Loan, Genesis Global did not compensate the Debtor for the Assignment, and the business of Genesis Global was not beneficial to the Debtor.

32.     Rather, upon information and belief, James Goodman used his authority and control over the Debtor to obtain a benefit for himself personally, on account of his guarantee of the RLOC Loan and the Term Loan, and on account of his control and ownership of Genesis Global, by causing the Debtor to execute the Assignment in favor of Prosperity, thereby providing cash collateral to enhance the credit of Genesis Global and obtain concessions from Prosperity.

33.     The Assignment represents that the Debtor received consideration for the Assignment.  This representation was false.

34.     The Debtor, from its Account, made the following transfers to Prosperity for and on account of the obligations of Genesis Global to Prosperity (collectively, the "Payments"):

| 12/31/2020 | $26,231.25 |
| 1/22/2021 | $26,231.25 |
| 2/11/2021 | $26,231.25 |
| 3/1/2021 | $26,231.25 |
| 3/30/2021 | $15,349.17 |
| 4/30/2021 | $26,231.25 |
| 6/1/2021 | $26,231.25 |
| 6/30/2021 | $26,231.25 |
| 7/30/2021 | $26,231.25 |
| 8/30/2021 | $26,231.25 |
| 9/30/2021 | $26,231.25 |
| 11/1/2021 | $26,231.25 |
| 11/30/2021 | $26,231.25 |
| 12/30/2021 | $26,231.25 |

| | |
|---|---|
| 1/31/2022 | $26,231.25 |
| 2/28/2022 | $26,231.25 |
| 3/30/2022 | $26,231.25 |
| 5/2/2022 | $26,231.25 |
| 5/31/2022 | $26,231.25 |
| 6/30/2022 | $26,231.25 |
| 8/1/2022 | $26,231.25 |
| **Total:** | **$539,974.17** |

35.     The Payments were used to pay the monthly principal and interest obligations of Genesis Global, and not the Debtor, to Prosperity.  The Debtor was not otherwise obligated to Prosperity to make the Payments regardless of the Assignment, as the Debtor did not guarantee or otherwise promise to pay the obligations of Genesis Global to Prosperity.

36.     Rather, James Goodman, using his authority and control over the Debtor, caused the Debtor to make the Payments to Prosperity in order to benefit Genesis Global and himself as a result of his ownership and control over Genesis Global.

37.     The Debtor received no value and no reasonably equivalent value for making the Payments.

38.     The Debtor was insolvent at the time of the Assignment, or the making of the Assignment with the transfer and obligation effectuated thereby rendered the Debtor insolvent.

39.     The Debtor was insolvent at the time that it made each of the Payments.

## IV.     CAUSES OF ACTION

**COUNT 1:**     **CONSTRUCTIVELY FRAUDULENT TRANSFERS/PAYMENTS AS AGAINST GENESIS GLOBAL**

40.     The Trustee incorporates is allegations above.

41.     At the time the Debtor made each of the Payments, and at all times thereafter, the Debtor was insolvent.

42.     The Debtor had no contractual or other obligation to Prosperity to make the Payments.

43.     The Debtor received no value and no reasonably equivalent value from any of the Payments.

44.     Each of the Payments was made from the Debtor's property, *i.e.* funds owned by the Debtor, and each represented a transfer of the Debtor's property.

45.     Each of the Payments was made within two years prior to the Petition Date.

46.     Under section 548(a)(1)(B) of the Bankruptcy Code, the Trustee may avoid each of the Payments as constructively fraudulent.

47.     Accordingly, the Trustee hereby seeks the avoidance of each of the Payments as constructively fraudulent transfers under the Bankruptcy Code.

**COUNT 2:     CONSTRUCTIVELY FRAUDULENT TRANSFERS/PAYMENTS AS AGAINST GENESIS GLOBAL (TUFTA)[1]**

48.     The Trustee incorporates his allegations above.

49.     Pursuant to section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, a prepetition transfer by the Debtor that an unsecured creditor could avoid.

50.     As of December 31, 2020, the Debtor had multiple unsecured creditors who remain unpaid.

51.     The Debtor was insolvent at all times when it made the Payments, or the making of the Payments rendered the Debtor insolvent.

52.     The Debtor received no value, much less reasonably equivalent value, for making the Payments.  The Debtor was not obligated, as part of the Assignment, to make payments to

---

[1] The Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE §§ 24.001 *et seq.*

Prosperity as the Assignment lacked any guarantee by the Debtor or otherwise promise to make

the Payments to Prosperity.

53.    Prosperity is the transferee of the Payments, however, the Payments were made for

the benefit of Genesis Global.  Because the knowledge of Goodman is imputed to Genesis Global,

in addition to their independent knowledge, Genesis Global did not receive the benefits of the

Payments in good faith, did not take for value, and they did not take without knowledge of the

voidability of the transfer.

54.    Accordingly, pursuant to section 24.006 of TUFTA, the Trustee requests the

avoidance of the Payments.

55.    The Trustee further requests his reasonable costs and attorneys' fees in avoiding

and recovering the same under section 24.013 of TUFTA.

**COUNT 3:    RECOVERY OF FRAUDULENT TRANSFERS AS AGAINST GENESIS GLOBAL**

56.    The Trustee incorporates his allegations above.

57.    Pursuant to section 550(a)(1) of the Bankruptcy Code and any applicable provision

of TUFTA, the Trustee requests a money judgment against Genesis Global for the Payments in an

amount of $539,974.17.

**COUNT 4:    BREACH OF FIDUCIARY DUTY AS AGAINST JAMES GOODMAN**

58.    The Trustee incorporates his allegations above.

59.    James Goodman owed fiduciary duties to the Debtor, including the duty of loyalty

and the duty of care.

60.    By allowing the Debtor to make Payments to Prosperity in satisfaction of the RLOC

Loan and the Term Loan, James Goodman failed to act in the best interests of the Debtor.  Instead,

James Goodman actively engaged in self-dealing through the use of the Debtor, who was not

obligated on either the RLOC Loan or the Term Loan, to make payments for the benefit of Genesis Global and to protect James Goodman's own personal guarantee. As a result of the Payments, the Debtor received no material value in return. The Payments were not made in good faith, not made at arms-length, and the Debtor received no value in return. In so doing, James Goodman breached his duty of loyalty to the Debtor.

61.     By allowing the Debtor to grant Prosperity a security interest in the Account through the execution of the Assignment, James Goodman once again failed to act in the best interests of the Debtor. The Assignment constituted a grant of collateral to Prosperity in satisfaction of an indebtedness of James Goodman's other personal entity. Accordingly, the Assignment served only to benefit James Goodman's entities and himself. The Assignment was not made in good faith, not made at arms-length, and the Debtor received no value in return. This Assignment constituted a breach of James Goodman's duty of loyalty to the Debtor.

62.     James Goodman was an interested director for both the Payments and the Assignment. Neither the Payments nor the Assignment promoted the Debtor's interests.

63.     As a result of these above-mentioned breaches of fiduciary duty, the Debtor was harmed by the loss of hundreds of thousands of dollars in cash.

64.     Accordingly, the Trustee seeks a money judgment for breach of fiduciary duty against James Goodman for the Payments in an amount of $539,974.17.

## V.     **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee requests that Genesis Global be cited to appear and to answer this Complaint, and that he has judgment as follows:

(i)     avoidance of the Payments as constructively fraudulent transfers as requested herein;

(ii)     money judgment against Genesis Global for the Payments;

(iii)   money judgment against James Goodman for his breaches of fiduciary duty;

(iv)   reasonable attorneys' fees to the extent provided by applicable law;

(v)    prejudgment and postjudgment interest to the extent provided by applicable law; and

(vi)   such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 12th day of April, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/  Conor White*
     Davor Rukavina, Esq.
     Texas Bar No. 24030781
     Thomas D. Berghman, Esq.
     Texas Bar No. 24082683
     Conor P. White, Esq.
     Texas Bar No. 24125722
     500 N. Akard Street, Suite 4000
     Dallas, Texas  75201-6659
     Telephone: (214) 855-7500
     Facsimile: (214) 855-7584
     Email: drukavina@munsch.com
            tberghman@munsch.com
            cwhite@munsch.com

**COUNSEL FOR SCOTT SEIDEL, TRUSTEE**