Randall A. Pulman – State Bar No. 16393250
Leslie Sara Hyman – State Bar No. 00798274
Anna K. MacFarlane – State Bar No. 24116701
**PULMAN CAPPUCCIO & PULLEN, LLP**
2161 NW Military Hwy., Suite 400
San Antonio, Texas  78213
Telephone: (210) 222-9494
Facsimile: (210) 892-1610
rpulman@pulmanlaw.com
lhyman@pulmanlaw.com
amacfarlane@pulmanlaw.com

**COUNSEL FOR JAMES E. GOODMAN
AND JAMES S. GOODMAN**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 22-31641 (MVL) |
| GOODMAN NETWORKS, INC., | § | |
| | § | |
| *Debtor*. | § | |
| | § | Chapter 7 |

**JAMES E. GOODMAN AND JAMES S. GOODMAN'S MOTION FOR LIMITED RELIEF
FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(D)(1)**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, DALLAS, TEXAS 75242-1496, BEFORE CLOSE OF BUSINESS ON MAY 15, 2024, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO SHOW HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

James E. Goodman and James S. Goodman a/k/a Jake Goodman ("Goodman Parties" or "Movants"), by and through their undersigned counsel, Pulman, Cappuccio & Pullen, LLP, hereby file this *Motion for Limited Relief from the Automatic Stay under 11 U.S.C. § 362(d)(1)* ("Motion"), as follows:

**RELIEF REQUESTED**

1. The Goodman Parties seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to utilize liability proceeds under the Debtor's director & officer liability insurance policies in the defense of various lawsuits brought against them, and to reimburse them for legal fees already incurred. The Goodman Parties were directors of the Debtor during the relevant policy periods, at least one of the policies is not property of the estate, and the priority payment structure of the remaining policies prioritizes payment to individual directors over the Debtor or its subsidiaries. As such, the Goodman Parties should be entitled to utilize the proceeds of the Debtor's D&O insurance policies, subject to the terms and conditions of those policies.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Section 362(d)(1) of the Bankruptcy Code and Rules 4001(a)(1) and (a)(3) of the Federal Rules of Bankruptcy Procedure.

4. A proposed order granting the relief requested herein is attached as Exhibit A.

4859-1114-2840, v. 2

**FACTUAL AND PROCEDURAL BACKGROUND**

A.  **The Bankruptcy Case**

5.  On September 6, 2022 ("Petition Date"), a group of petitioning creditors of the Debtor filed an involuntary petition for relief under chapter 7, Title 11, of the United States Code, thereby commencing the above-captioned bankruptcy case.

6.  On December 12, 2022, the Court entered its Order for Relief in an Involuntary Case (ECF No. 132), and thereafter appointed Scott M. Seidel as chapter 7 trustee.

B.  **The Goodman Parties are Former Directors of the Debtor**

7.  The Goodman Parties were directors of the Debtor.

8.  Specifically, James E. Goodman served as a director of the Debtor from in or around June 2019 through February 1, 2022, and Jake Goodman served as a director of the Debtor from on or around October 13, 2020 through June 8, 2021.

C.  **The Debtor's D&O Insurance Policies**

9.  At all relevant times during the Goodman Parties' tenure as directors of the Debtor, the Debtor maintained certain D&O liability insurance policies maintained by various insurance companies (collectively "Chubb"), including but not limited to, policies issued by Federal Insurance Company ("Federal"), Policy Numbers 8259-6686 (the "Primary ABC Policy") and 8262-4874 (the "2021-22 Policy"), which provided coverage for Insured Persons (as defined in the policies), as well as the Debtor, subject to numerous terms and conditions. The Debtor also had a policy with Westchester Fire Insurance Company ("Westchester"), Policy Number G46647233 004 (the "Base DIC Policy"), which provided for Side-A only coverage for individual defined Insureds. A summary chart of the above insurance policies, together with certain excess policies (collectively, the "D&O Insurance Policies"), is below:

| Description | Total Limit | Insurance Company | Policy Number | Policyholder | Policy Period |
|---|---|---|---|---|---|
| Primary ABC Policy | $5,000,000 | Federal | 8259-6686 | Debtor | 6/30/2020-10/31/2022 |
| 2021-22 Policy | $5,000,000 | Federal | 8262-4874 | Debtor | 10/30/2021-10/30/2022 |
| Base DIC Policy | $5,000,000 | Westchester | G46647233004 | Debtor | 6/30/2020–6/30/2021 |
| QBE Excess D&O Liability Policy | $5,000,000 | QBE Insurance Corporation | 100039151 | Debtor | 6/30/2020-10/31/2022 |
| CNA Excess D&O Liability Policy | $5,000,000 | Continental Casualty Company | 652241819 | Debtor | 6/30/2020-10/31/2022 |
| Hanover Excess D&O Liability Policy | $5,000,000 | The Hanover Insurance Company | H300594 00 | Debtor | 6/30/2020-10/31/2022 |
| Westchester Excess D&O Liability Policy | $5,000,000 | Westchester | G46647233004 | Debtor | 6/30/2020-10/31/2022 |

10. The Primary ABC Policy and the 2021-22 Policy (the Debtor's primary D&O policies) provide coverage to the Debtor and the Goodman Parties, subject to the terms and conditions of each policy. The Goodman Parties qualify as "Insured Persons" as directors of the Debtor, and they are entitled to coverage for any defined Loss, which includes Defense Costs,[1] damages, judgments, and settlements. These primary D&O policies provide for coverage (i) directly to the Goodman Parties for qualifying losses; (ii) to the Debtor for costs incurred in defense of an insured person; and (iii) to the Debtor for costs incurred in claims against the Debtor

---

[1] "'Defense Costs'" means that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees, or benefits of Insured Persons) incurred in investigating, defending, opposing, or appealing any Claim and the premium for appeal, attachment, or similar bonds." *See, e.g.*, 2021-22 Policy D&O Coverage Part at Art. IV.

4859-1114-2840, v. 2

or its subsidiaries, known as A/B/C coverage.[2] The excess D&O insurance policies also contain the same A/B/C coverage to the Debtor and former officers and directors subject to the terms of the Primary ABC Policy. *See, e.g.*, QBE Excess D&O Liability Policy (Policy No. 100039151). Importantly, each of the D&O Insurance Policies specifically provide that the insolvency or bankruptcy of the Debtor or one of its subsidiaries does not alleviate the Debtor of its obligations. *See, e.g.*, Primary ABC Policy at XI ("Bankruptcy or insolvency of an Insured shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.").

11. In contrast to the Primary ABC Policy and the 2021-22 Policy, the Base DIC Policy only provides only Side A coverage to individual insureds, subject to terms and conditions. Under the terms of the Base DIC Policy, the Goodman Parties (as directors who served during the policy period), are entitled to coverage, subject to the policy's limitations and terms.

12. Each of the D&O Insurance Policies provide for Side A coverage to the Goodman Parties, which includes the coverage of defense costs to the Goodman Parties for qualifying losses. *See, e.g.*, 2021-22 Policy, D&O Coverage Part at Art. IV & Endorsement No. 9. The Primary ABC Policy provides that amounts payable for covered claims be payable first to insureds, such as the Goodman Parties. *See* 2021-22 Policy D&O Coverage Part at Art. X. The Goodman Parties have both incurred defense costs in connection with the Subpoenas, the Adversary Proceedings, and the FedEx Lawsuit,[3] and anticipate that significant legal fees will be required to continue defending themselves in these various matters.

---

[2] Side A coverage protects only the corporations' directors and officers in situations where the policyholder corporation is unwilling to indemnify the individuals. Side B coverage covers only the corporation when it agrees to indemnify directors and officers. Side C coverage applies to the corporation when the corporation is a defendant. *See* JOHN F. OLSON et al., DIRECTOR AND OFFICER LIABILITY: INDEMNIFICATION AND INSURANCE § 12:5 (1990 & Supp. 2008).

[3] These terms are defined in section D, *infra*.

**D. Legal Proceedings and Demands on Insurance Companies**

13. On June 10, 2022, the Goodman Parties delivered to Chubb a demand for indemnification (the "First Insurance Notice and Demand") for claims brought by Arris Solutions, Inc. against Goodman Networks Inc. et al. under the Chubb policies.

14. On or about April 27, 2023, the Trustee delivered to the Goodman Parties and Chubb, among others, a notice of claims, circumstances, and demand for monetary relief (the "Trustee's Notice and Demand"), which, *inter alia,* contained a demand for "immediate payment in an amount no less than $100 million from [the Goodman Parties] in full satisfaction of the Claims [(as defined in the Notice and Demand)]" related to the Goodman Parties' purported actions in contravention of their fiduciary duties, duties of care and loyalty, and contractual obligations of the Debtor and the Debtor's wholly-owned subsidiaries, GNET ATC, LLC and Multiband Field Services, Inc.

15. On or about April 27, 2023, the Goodman Parties sent a Notice of Claim, Demand for Indemnity, and Demand for Advancement of Costs to Chubb (the "Second Insurance Notice and Demand"), requesting indemnification and advancement of defense costs incurred in responding to the claims brought against the Goodman Parties in relation to the *In re Goodman Networks, Inc.* Bankruptcy Case, Case No. 22-31641-mvl and litigation brought by FedEx Supply Chain Logistics & Electronics, Inc.[4]

16. On or about November 10, 2023, the Goodman Parties sent a Notice of Claim, Demand for Indemnity, and Demand for Advancement of Costs to the Insurance Companies (the "Third Insurance Notice and Demand"), requesting indemnification and advancement of defense costs incurred in responding to the claims brought against the Goodman Parties in relation to the

---

[4] Chubb has already delivered an initial coverage analysis.

– 6 –

*In re Goodman Networks, Inc.* Bankruptcy Case, Case No. 22-31641-mvl and litigation brought by FedEx Supply Chain Logistics & Electronics, Inc.

17. The following adversary proceedings have been filed against one or more of the Goodman Parties in the Chapter 7 proceedings styled and numbered as *In re Goodman Networks, Inc.,* Case No. 22-31641- mvl-7 (Bankr. N.D. Tex. 2022): (1) *Scott M Seidel, Trustee, GNET ATC, LLC (Plaintiffs) v. 18920 NW 11th, LLC, James Goodman, James Prinzi, Steven Zakharyayev, Evelina Pinkhasova, People Nq Inc., JJC & People LLC; GDMN Family Investments 2, LLC,* Adv. No. 23-03071-mvl (Bankr. N.D. Tex. 2023); (2) *Scott M Seidel, Trustee v. Hudson Clean Energy Enterprises, LLC, Alliance Texas Holdings, LLC, Neil Z. Auerbach, Judith Auerbach, Auerbach Partners, L.P., James Goodman, James Frinzi, Goodman Investment Holdings, LLC, Genesis Networks, Inc., Genesis Networks Global Services, LLC, Auerbach Children's Dynasty Trust U/A/D October 9, 2012, and Auerbach Family Dynasty Trust U/A/D October 9, 2012*, Adv. No. 23-03072-mvl (Bankr. N.D. Tex. 2023); (3) *Arris Solutions, Inc. v. Goodman Networks, Inc. d/b/a Goodman Solutions, GNET ATC, LLC, Genesis Networks Telecom Services, LLC d/b/a Genesis ATC and James Goodman*, Adv. No. 23-03035-mvl (Bankr. N.D. Tex. 2023); and (4) *Scott M. Seidel, Trustee v. Genesis Networks Global Services, LLC and James Goodman*, Adv. No. 24-03022-mvl (Bankr. N.D. Tex. 2024) (collectively, the "Adversary Proceedings").

18. In addition to the Adversary Proceedings, the following lawsuit has been filed against the Goodman Parties in the United States District Court for the Northern District of Texas, Dallas Division: *FedEx Supply Chain Logistics & Electronics, Inc. v. James E. Goodman, Jr., John Goodman, Johnathan Goodman, Jake Goodman, Joseph ("Jody") Goodman, James Frinzi, Shalom Auerbach, Neil Auerbach, Steven Zakharyayev, Evalina Pinkhasova, Genesis Networks Telecom Services, LLC, GNET ATC, LLC, Greater Tech Holdings, Inc. f/k/a Goodman Telecom*

– 7 –

*Holdings, LLC, Goodman Investment Holdings, LLC, Unified Field Services, Inc., American Metals Recovery and Recycling, Inc. a/k/a MBG Holdings, Inc., Multiband Field Services, Inc., HSB Holdings, LLC f/k/a Multiband Global Resources, LLC, AMR Resources, LLC, Hudson Clean Energy Enterprises, LLC, 18920 NW 11th, LLC, Prosperity Bancshares, Inc., The Frinzi Family Trust, Alliance Texas Holdings, LLC, Auerbach Partners, LP, and Onepath Systems, LLC*, Civil Action No. 3:23-cv-02397 (N.D. Tex. 2023) (the "FedEx Lawsuit").

19. In addition to the Trustee's Notice and Demand and the litigation, the Goodman Parties have also complied with numerous subpoenas that were served by the petitioning creditors in connection with the involuntary Bankruptcy Case on December 29 and 30, 2022, which compelled them to testify and produce documents (the "Subpoenas").

20. The Goodman Parties have made a formal demand upon Chubb for coverage under the Debtor's D&O insurance policies, and have asserted, and continue to assert, that the policies provide coverage for, *inter alia,* the Goodman Parties' legal expenses and costs (the "Defense Costs") associated with the claims asserted against them in (a) the First Insurance Notice and Demand, (b) the Trustee's Notice and Demand, (c) the Second Insurance Notice and Demand, (d) the Adversary Proceedings, (e) the FedEx Lawsuit, (e) the claims and allegations identified in the schedules of assets and liabilities (the "Schedules") and Statement of Financial Affairs (the "SOFA") Goodman Networks, Inc. filed with the Bankruptcy Court on January 7, 2023, and (f) the Subpoenas.

21. The Goodman Parties have incurred costs in defending against the Adversary Proceedings and responding to the Subpoenas, and they anticipate further defense costs will be incurred in connection with the Adversary Proceedings and the FedEx Lawsuit.

**ARGUMENTS AND AUTHORITIES**

22. The Goodman Parties request limited relief from the automatic stay to allow disbursement of insurance coverage proceeds to reimburse incurred defense litigation costs, including costs incurred for investigating, defending, and opposing claims asserted against them in their individual capacity in the Adversary Proceedings, the FedEx Lawsuit, and the Subpoenas.

**A.  Legal Standard for Lifting the Automatic Stay.**

23. Under section 362(d)(1) of the Bankruptcy Code, a Court may grant relief from the stay for cause. 11 U.S.C. § 362(d)(1). There is no definition for "cause" in Section 362(d). Courts determine whether sufficient cause exists on a case-by-case basis. *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (citing *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014)); *see also In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998). Courts have found cause to lift the automatic stay to permit payment of D&O insurance proceeds. *In re Celsius Network LLC*, 652 B.R. 34, 42-45 (Bankr. S.D. N.Y. 2023) (granting stay relief for D&O insurers "for purposes of advancing reasonable and necessary [d]efense [c]osts incurred by [i]nsured [i]ndividuals"); *In re SVB Financial Group*, 650 B.R. 790, 800 (Bankr. S.D. N.Y. 2023) (same). Bankruptcy courts have discretion in determining whether to lift the automatic stay. *Mooney v. Gill*, 310 B.R. 543, 547 (N.D. Tex. 2002).

**B.  The Goodman Parties should be allowed to utilize the Base DIC Policy liability proceeds because the proceeds are not property of the estate.**

24. Under the Bankruptcy Code, the automatic stay only applies to estate property. 11 U.S.C. § 362(a)(3). Section 541(a)(1) of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). While insurance policies belonging to the debtor themselves are property of the bankruptcy estate, the proceeds of those policies are not necessarily property of the estate. *See*

*In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987); *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993).

25. The ultimate question in determining whether policy proceeds are property of the estate is whether "the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." *Edgeworth*, 993 F.2d at 55. In *In re Louisiana World Exposition, Inc.*, the Fifth Circuit considered the question of whether liability insurance proceeds payable *only* to non-debtors constituted property of the bankruptcy estate. 822 F.2d at 1393. Answering in the negative, the court distinguished between ownership of insurance policies and ownership of proceeds and found that the directors and officers (as the policy's sole payees) had an ownership interest in the proceeds for the purposes of section 541, not the debtor. *See id.* at 1399-1400. The existence of a bankruptcy estate does not grant the debtor greater rights than it would have had absent its insolvency. *Id.* at 1401 (noting that the "'proceeds concept' does not give the bankrupt's estate property the debtor would not own if it were solvent"). As such, the Fifth Circuit held that, while the bankruptcy estate owned the policies at issue, the liability proceeds were not property of the estate. *Id.*

26. Just so here. The Base DIC Policy provides only Side A coverage, and under the policy's terms, the proceeds are payable only to individuals who were, among other things, directors and officers of the Debtor during the policy period. *See* Base DIC Policy, Insuring Clause. Applying the Fifth Circuit's reasoning in *Louisiana World Exposition*, the liability proceeds of the Base DIC Policy do not constitute property of the estate, and thus stay relief is not required for the Goodman Parties to collect the proceeds. However, out of an abundance of caution, the Goodman Parties request entry of an order specifically allowing Chubb to dispense the Base DIC Policy liability proceeds to them.

4859-1114-2840, v. 2

**C. Cause exists to allow the Goodman Parties to collect the proceeds from the Primary ABC Policy, the 2021-22 Policy, and the excess D&O insurance policies.**

27. Cause exists to grant the relief requested herein and lift the automatic stay to allow the Goodman Parties to utilize the D&O Insurance Policy proceeds for past and future defense costs incurred in connection with the Trustee's Notice and Demand, the Subpoenas, the Adversary Proceedings, and the FedEx Lawsuit. *See Xenon Anesthesia of Tex.*, 510 B.R. at 112 ("The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case.").

28. While the terms of the Primary ABC Policy and the 2021-22 Policy provide for coverage to both the Debtor and the Goodman Parties, stay relief is appropriate to permit coverage to be paid to the Goodman Parties because the terms of the policies include a priority payout structure that provides that the Goodman Parties, as insureds, are to receive coverage first. Permitting the priority payment structure to proceed as set forth in the Primary ABC Policy and the 2021-22 Policy would not negatively impact the estate or other parties in interest.

29. In contrast, the Goodman Parties would be severely negatively affected should the Court deny the requested relief. The Goodman Parties have already incurred significant defense costs, particularly attorneys' fees, in responding to the Trustee's Notice and Demand and the Subpoenas, and defending the Adversary Proceedings. The Goodman Parties also anticipate extensive legal work will be required to defend against the allegations brought in the Adversary Proceedings, the FedEx Lawsuit, as well as any additional adversary proceedings the Trustee has yet to initiate against one or more of the Goodman Parties.

30. Further, similar relief has already been awarded by this Court to other similarly situated parties in interest in this case. For instance, the Court has signed a stipulated order between

4859-1114-2840, v. 2

the Trustee and James Frinzi, a former director of the Debtor (ECF No. 458), and a similar order between the Trustee and multiple former executives of the Debtor (ECF No. 393).

31. As such, limited stay relief is appropriate to allow the Goodman Parties to collect proceeds from the Debtor's D&O Insurance Policies to reimburse for incurred defense costs already incurred, and to obtain advances for future defense costs associated with the Adversary Proceedings and the FedEx Lawsuit.

## NOTICE

32. The Goodman Parties will serve this Motion on (1) Chubb, (2) the Debtor, (3) the Trustee, and (4) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Bankruptcy Rules. The Goodman Parties submit that such service will constitute good and sufficient notice of the Motion.

## CONCLUSION AND PRAYER

33. Based on the foregoing, the Goodman Parties request entry of an order lifting the automatic stay to permit them to collect and utilize the proceeds from the D&O Insurance Policies. With respect to the Base DIC Policy, the liability proceeds are not property of the bankruptcy estate and thus stay relief is technically not required for the Goodman Parties to begin collecting the proceeds. However, the Goodman Parties are requesting stay relief out of an abundance of caution. With respect to the Primary ABC Policy, the 2021-22 Policy, and the excess D&O insurance policies, cause exists to lift the automatic stay to permit the Goodman Parties to collect the proceeds to pay legal fees already incurred in responding to the Trustee's Notice and Demand and the Subpoenas, and pay future legal fees incurred in defense of the Adversary Proceedings and the FedEx Lawsuit. The Primary ABC Policy, the 2021-22 Policy, and the excess D&O insurance

4859-1114-2840, v. 2

policies provide for a priority payment structure that subordinates payment of liability proceeds to the Debtor in favor of the directors and officers, including the Goodman Parties.

WHEREFORE, the James E. Goodman and James S. Goodman a/k/a Jake Goodman respectfully request entry of an order granting them relief from the automatic stay, allowing them to collect proceeds from the D&O Insurance Policies for reimbursement of legal fees incurred in responding to the Trustee's Notice and Demand, the Subpoenas, and the Adversary Proceedings, as well as advances of future defense costs required to defend the Adversary Proceedings and the FedEx Lawsuit, and for such other and further relief, in law or in equity, to which they may be justly entitled.

        Respectfully submitted,

        **PULMAN, CAPPUCCIO & PULLEN, LLP**
        2161 NW Military Highway, Suite 400
        San Antonio, Texas 78213
        www.pulmanlaw.com
        (210) 222-9494 Telephone
        (210) 892-1610 Facsimile

        By: */s/ Randall A. Pulman*
            Randall A. Pulman
            Texas State Bar No. 16393250
            rpulman@pulmanlaw.com
            Leslie Sara Hyman
            Texas State Bar No. 00798274
            lhyman@pulmanlaw.com
            Anna K. MacFarlane
            Texas State Bar No. 24116701
            amacfarlane@pulmanlaw.com

        **ATTORNEYS FOR**
        **THE GOODMAN PARTIES**

4859-1114-2840, v. 2

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on or about April 9 & April 22, 2024, counsel for the Goodman Parties conferred with counsel for Scott Seidel, chapter 7 trustee for the Debtor, regarding the relief requested in this Motion, and the chapter 7 trustee opposes the relief requested herein.

                                            */s/Randall A. Pulman*
                                            Randall A. Pulman

– 14 –

### **CERTIFICATE OF SERVICE**

      I hereby certify that on the 1st day of May, 2024, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing. Further, the following insurance companies were served via U.S. First Class mail:

Westchester Fire Insurance Company
c/o CT Corporation System
289 Culver Street
Lawrenceville, GA 30046

Federal Insurance Company
c/o CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

QBE Insurance Corporation
c/o CT Corporation System
600 North Second Street, Suite 401
Harrisburg, PA 17101

Chubb, Financial Lines
Attn: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York NY 10036

Chubb
P.O. Box 5105
Scranton, PA 18505-0518

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA 01615

Open Brokerage Global Specialty Lines
CNA Insurance Company
125 Broad Street – 8th Floor
New York, NY 10004

CNA – Claims Reporting
P.O. Box 8317
Chicago, IL 60680-8317

QBE Insurance Corporation
Attn: Underwriting
55 Water Street
New York, NY 10041

QBE Insurance Corporation
Attn: The Claims Manager
55 Water Street
New York, NY 10041

Chubb Group of Insurance Companies
Attn: Chubb Underwriting Department
202B Hall's Mill Road
Whitehouse Station, NJ 08889

Chubb Group of Insurance Companies
Attn: Claims Department
82 Hopmeadow St.
Simsbury, CT 06070-7683

                                          */s/Randall A. Pulman*
                                          Randall A. Pulman

4859-1114-2840, v. 2