# LIMITED SETTLEMENT AND RELEASE AGREEMENT

This *Limited Settlement and Release Agreement* (the "Agreement") is executed on the 8th day of May, 2024, by and between Scott M. Seidel (the "Trustee"), as Chapter 7 trustee of Goodman Networks, Inc. (the "Debtor") and of its bankruptcy estate (the "Estate"), GNET ATC, LLC ("GNET"), Multiband Field Services, Inc. ("MFS"), Frinzi Family Trust (the "FFT"), and James Frinzi ("Frinzi"), with the Trustee, GNET, and MFS, each a "Party" and collectively the "Parties"), as follows:

WHEREAS, on September 6, 2022, certain creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the United States Bankruptcy Code, thereby initiating Bankruptcy Case No. 22-31641-mvl-7 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), thereby creating the Estate;

WHEREAS, the Bankruptcy Court subsequently entered its order of relief against the Debtor, and the Trustee was appointed as the Chapter 7 trustee of the Debtor and the Estate;

WHEREAS, the Estate wholly owns GNET and MFS and the Trustee, as such, has the corporate power and authority to cause GNET and MFS to enter into this Agreement;

WHEREAS, the FFT owns certain real property and improvements located at 521 N. Horseshoe Bay Blvd., Horseshoe Bay, Texas (the "Lakehouse"), which the Trustee has alleged he, GNET, and/or MFS may recover as an alleged fraudulent transfer from one or more of the Debtor, GNET, and MFS, which liability the FFT denies;

WHEREAS, the FFT owns certain undeveloped real property in Llano County, Texas, consisting of approximately .7 acres, and identified as Lot 44 at the La Serena Loop, Horseshoe Bay, Texas 78657 (the "Lot"), which the Trustee has alleged he, GNET, and/or MFS may recover as an alleged fraudulent transfer from one or more of the Debtor, GNET, and MFS, which liability the FFT denies;

WHEREAS, the Trustee has caused to be recorded against the Lakehouse and the Lot certain *lis pendenses* asserting interests on behalf of the Trustee, GNET, and/or MFS against the Lakehouse and the Lot (the "Lis Pendenses");

WHEREAS, Frinzi owns a certain Cobalt 25 foot boat, Texas registration number 5469CH (the "Boat") and one or more personal watercrafts (the "PWC"), which the Trustee has alleged he, GNET, and/or MFS may recover as an alleged fraudulent transfer from one or more of the Debtor, GNET, and MFS, which liability Frinzi denies;

WHEREAS, on May 4, 2023, the Trustee, GNET, and MFS filed that certain *Original Complaint* against the FFT, Frinzi, and other defendants with the

EXHIBIT "A"

Bankruptcy Court, thereby initiating Adversary Proceeding No. 23-03036 before the Bankruptcy Court (the "Adversary Proceeding"), seeking, in part, the avoidance and recovery of certain alleged transfers to the FFT, including the Lakehouse and the Lot and also involving the Boat and the PWC, which allegations and alleged liabilities the FFT denies;

WHEREAS, after extensive negotiations, and without admitting any fault or liability, and only to avoid the risks, expenses, and delays of litigation, the Parties enter into this Agreement as a resolution of disputed claims and rights;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party, the Parties represent, covenant, and agree as follows, incorporating their recitals above into this Agreement:

1. Approval Motion. Promptly after the execution of this Agreement, the Trustee, at his burden and expense, will file in the Bankruptcy Case the appropriate motion seeking the Bankruptcy Court's approval of this Agreement and authorizing him to enter into and effectuate this Agreement (the "Approval Motion"). The Trustee shall prosecute the Approval Motion at his sole burden and expense.

2. Escrow of Deeds. No later than five (5) days prior to any hearing on the Approval Motion, the FFT shall execute and deliver to the Trustee, in recordable form, transfer deeds transferring the Lakehouse and the Lot to the Trustee, in the forms attached hereto as Exhibit "A" and "B" (the "Lakehouse Deed" and the "Lot Deed," respectively).

3. Escrow of Title. No later than five (5) days prior to any hearing on the Approval Motion, Frinzi shall deliver to the Trustee the original titles to the Boat and the PWC signed by him in blank but without any buyer information otherwise filled in (the "Titles"). To the extent that he does not have any such title because there is a lien against the Boat or any of the PWC, Frinzi, on behalf of himself or any company affiliated with him that owns the Boat or PWC, hereby grants the Trustee a security interest and lien against such Boat or PWC, and, upon the Effective Date, the Trustee is authorized to take all appropriate action to evidence and perfect such security interest or lien.

4. Holding of Deeds and Titles. Immediately after receipt of the Lakehouse Deed, the Lot Deed, and the Titles, the Trustee shall provide the originals thereof to Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt"), which shall place said originals in its safe, and shall release them to the Trustee, the FFT, and/or Frinzi, as otherwise provided for in this Agreement and the Approval Order. For the avoidance of doubt, in so doing Munsch Hardt shall not assume any duty, fiduciary or otherwise, to any of the Parties, that Munsch Hardt would not otherwise have absent this Agreement. Munsch Hardt may seek such orders and direction from the

Bankruptcy Court with respect to the foregoing as it deems appropriate, subject to all Parties' rights with respect to the same. If the Approval Motion is not granted, Munsch Hardt shall promptly return the originals thereof to the FFT and/or Frinzi.

5. FFT Schedules. Prior to any hearing on the Approval Motion, and no later than five (5) days prior to any hearing on the Approval Motion, the FFT shall fully and accurately prepare and fill out then-current bankruptcy schedules and a statement of financial affairs for itself, to be executed by the FFT under penalty of perjury (the "FFT Schedules"). The Trustee reserves the right to terminate this Agreement and withdraw the Approval Motion at any time prior to the hearing on the Approval Motion if, in his sole judgment, the FFT Schedules demonstrate a financial condition of the FFT that is materially different from that demonstrated through discovery in the Adversary Proceeding.

6. Effective Date. This Agreement shall be effective on the date that all of the following conditions precedent occur (the "Effective Date"): (i) the entry of an order by the Bankruptcy Court granting the Approval Motion in form and substance reasonably agreeable to each Party (the "Approval Order"); (ii) the tender of the Lakehouse Deed, the Lot Deed, and the Titles to the Trustee as provided for above; (iii) the delivery by the FFT of the Schedules to the Trustee as provided for above; and (iv) the fifteenth (15th) day after the entry of the Approval Order, provided that the Approval Order has not been stayed as of that day. If the Bankruptcy Court approves some, but not all, of this Agreement, then the Parties shall have the option, but not any obligation, to modify this Agreement to bring it into compliance with the Bankruptcy Court's approval.

7. Settlement Payment. No later than one hundred and eighty (180) days after the Effective Date (the "Settlement Payment Deadline"), the FFT shall pay to the Trustee in good and sufficient funds the amount of $1,200,000.00 (the "Settlement Payment"), which may be paid in whole or in part concurrently with any sale of the Lakehouse, Lot, Boat, or PWC. Alternatively, Frinzi may pay said amount in whole or in part from the sale of his house in Austin, Texas, for which he shall receive reasonably equivalent value hereunder.

8. Sale of Properties. As soon as reasonably possible after the Effective Date, the FFT shall place the Lakehouse and the Lot on the market and shall take commercially reasonable steps to market and sell the same, and Frinzi shall likewise market the Boat and the PWC for sale, using commercially reasonable means to market and sell the same, all for the purpose of enabling the FFT to make the Settlement Payment. The FFT and Frinzi agree to keep the Trustee reasonably apprised of their marketing and sale efforts, including to immediately provide any written offer for any of the foregoing to the Trustee, and to otherwise share all details (including proposed price and identify of proposed buyer) with the Trustee.

LIMITED SETTLEMENT AND RELEASE AGREEMENT—Page 3

9. <u>Maintenance of Properties Pending Settlement Payment</u>.  At all times after the Effective Date, and through the date of the Settlement Payment, unless this Agreement is terminated prior thereto for default: (i) the FFT shall maintain and repair the Lakehouse in the manner that a reasonably prudent owner would, and shall maintain good and sufficient insurance for the same, and shall list the Trustee as a loss payee for any such insurance; and (ii) Frinzi shall maintain the Boat and the PWC in good working order and shall maintain good and sufficient insurance on the same.  The FFT and Frinzi shall provide the Trustee evidence of all such insurance upon reasonable notice from the Trustee for the same.

10. <u>Security for Settlement Payment</u>.  The Settlement Payment and all of the FFT's obligations under this Agreement are secured by the Lis Pendenses, the Lakehouse Deed, the Lot Deed, and the Titles, and any security interest and lien granted above, which shall be released only as provided for in this Agreement, and the Approval Order shall so provide.  The Approval Order may be recorded by the Trustee against the Lakehouse and the Lot to further evidence the same.  For the avoidance of doubt, nothing in this Agreement or the Approval Order affects the priorities of the Trustee's interests and liens under or against the foregoing such as the same would be in the absence of this Agreement or the Approval Order.

11. <u>Release of Security Upon Settlement Payment</u>.  Upon the payment of the Settlement Payment in full, including as part of and simultaneous with, any closing of the sale of the Lakehouse, or any combination of the closings of the sale of the Lakehouse, Lot, Boat, and PWC, so long as the full Settlement Payment is immediately and indefeasibly paid to the Trustee, the Trustee and Munsch Hardt shall release to the FFT and Frinzi the Lakehouse Deed, the Lot Deed, and the Titles, or so many of them as then remaining, and shall cause to be terminated the Lis Pendenses and any security interests and liens granted above, all in order to ensure that any buyer of the foregoing properties receives the same free and clear of the Trustee's interests.

12. <u>Partial Settlement Payment(s)</u>.  Except with respect to the Lakehouse, in the event that the FFT and/or Frinzi seek to sell the Lot, the Boat, or the PWC, in exchange for proceeds that do not by that time total the Settlement Payment, the Trustee may, but is not required to, agree to the purchase price thereof, provided that all of such purchase price (less only closing costs and taxes agreed to by the Trustee) is paid to the Trustee at the closing of any such sale, to be credited against the Settlement Payment and any additional obligations of the FFT under this Agreement, in which case the Trustee and Munsch Hardt shall deliver the applicable original(s) of the Lot Deed and/or the Titles to the FFT and/or Frinzi as part of such sale or closing and shall cause the termination of the Lis Pendens, solely as recorded against the Lot (but not the Lakehouse), to be released as part of any closing of the sale of the Lot.

13. Default in Settlement Payment. Unless the Settlement Payment is paid in full by the deadline provided for in this Agreement, then Munsch Hardt shall release the originals of the Lakehouse Deed, the Lot Deed, and the Titles (or so many of them then remaining) to the Trustee, which: (i) with respect to the Lakehouse Deed and the Lot Deed, the Trustee may immediately record against the Lakehouse and the Lot, thus transferring all title therein and thereto from the FFT to the Trustee as specified therein; and (ii) with respect to the Titles, the Trustee may fill in his name as the buyer and cause to be filed with the appropriate governmental authorities, thus transferring all title therein and thereto to the Trustee. Thereafter, the Trustee shall have all rights under all applicable law as the owner of the foregoing properties and may take such actions, and seek such judicial relief, as would be applicable to such an owner.

14. Specific Performance. Each Party shall have the right of specific performance to enforce any right or obligation under this Agreement.

15. Release of the FFT. Effective on the Effective Date, the Trustee, for himself, the Debtor, and the Estate, GNET, and MFS hereby release and discharge the FFT of all claims and causes of action that any of the foregoing ever had or may have, whether known or unknown, whether asserted or not asserted, arising in law, contract, or in equity including as a subsequent transferee or any transfer and including all claims and causes of action asserted or assertable in the Adversary Proceeding, *provided, however,* that: (i) no obligation in this Agreement is released; and (ii) the Lis Pendenses shall not be released except as provided for in this Agreement and no such underlying claim or cause of action shall be released to the extent necessary to maintain the validity of the Lis Pendenses until such time as the Lis Pendendes are released. The foregoing release shall include any past or present trustee or beneficiary of the Trust, including Jodi Jean Frinzi, except for Frinzi.

16. Release by the FFT. Effective on the Effective Date, the FFT hereby releases and discharges the Trustee, the Debtor, the Estate, GNET, and MFS all claims and causes of action that it ever had or may have, whether known or unknown, whether asserted or not asserted, arising in law, contract, or in equity, and including all claims and causes of action asserted or assertable in the Adversary Proceeding, *provided, however,* that no obligation in this Agreement is released.

17. Dismissal of the FFT. Promptly after the Effective Date, the Parties shall file in the Adversary Proceeding the appropriate pleadings to cause the dismissal of the FFT, with prejudice, from the Adversary Proceeding, but in no event shall such dismissal with prejudice affect, prejudice, or limit any right, claim, or cause of action against the FFT that is preserved under, or provided for in, this Agreement.

18. <u>Limited Release</u>. For the avoidance of doubt, the release granted the FFT above is limited strictly to its terms and shall not be construed or interpreted past those express and explicit terms, and shall not extend to any claim or cause of action that the Trustee, the Debtor, GNET, or the MFS may have or may assert against Frinzi. Nothing in this Agreement grants Frinzi any release or waiver, except and only to the extent of the credit specified below, the consideration provided to Frinzi under this Agreement being the credit provided below and the potential that the FFT may monetize the Lakehouse, Lot, Boat and PWC for an amount in excess of the Settlement Payment.

19. <u>Credit to Frinzi</u>. All liabilities of Frinzi to the Trustee, GNET, or MFS as alleged by the Trustee in the Adversary Proceeding, including as any cause of action pled therein as of the Effective Date may be refiled or pursued in a different proceeding, shall be credited by the amount of the Settlement Payment, first to any lawful attorney's fees and expenses claim of the Trustee, second to any interest, and third to any underlying damages. However, any such credit shall be reduced by any attorney's fees and expenses that the Trustee incurs after the Effective Date in enforcing this Agreement, and by any damages the Trustee otherwise incurs as a result of any breach by the FFT or Frinzi of this Agreement.

20. <u>Governing Law</u>. The laws of the State of Texas will govern the interpretation and enforcement of this Settlement Agreement, without giving effect to its choice of law rules.

21. <u>Warranty of Authority</u>. Except with respect to the entry of the Approval Order, each signatory below warrants and represents to each other Party that he or she has all requisite authority to bind his or her respective Party to this Agreement, and each Party warrants and represents to each other Party that it has all necessary authority to enter into this Agreement.

22. <u>Each Party Relying on Own Judgment.</u> The Parties understand and agree they have carefully reviewed this Agreement, they fully understand its terms, they sought and obtained independent legal advice with respect to the negotiation and preparation of the Agreement, this Agreement has been negotiated and prepared by the joint efforts of the respective attorneys for each of the Parties, and the Parties have relied wholly upon their own judgment and knowledge and the advice of their respective attorneys.

23. <u>Jointly Drafted</u>. All Parties assisted in the preparation of this Agreement, and no provision of this Agreement will be construed against any Party because that Party or its counsel drafted or assisted in the drafting of the provision. The Parties hereby expressly agree that any uncertainty or ambiguity existing herein will not be interpreted against any of them.

24. <u>Fees and Costs</u>.  In the event that any action is brought by a Party to enforce any right or obligation under this Agreement, or to defend any such right or obligation then, in addition to all other rights and remedies, the Party substantially prevailing in any such litigation shall be entitled from the defaulting Party an award of its reasonable attorney's fees and expenses incurred in any such action.

25. <u>Waiver of Jury Rights</u>.  Each Party waives any right to a trial by jury of any issue that it may have with respect to any action, proceeding, or lawsuit brought to enforce this Agreement or to otherwise interpret and apply this Agreement.

26. <u>Bankruptcy Court Jurisdiction</u>.  The Parties agree that the Bankruptcy Court has subject matter jurisdiction over any dispute over or on this Agreement, and they each irrevocably consent to the Bankruptcy Court's entry of final orders or judgment in any such dispute even if the Bankruptcy Court's jurisdiction over the same would otherwise not be core.

27. <u>Sole and Complete Agreement</u>.  This Agreement constitutes the final, sole, and entire agreement between the Parties hereto with respect to the express subject matter hereof.  There is no other agreement, written or oral, among the Parties with respect to the subject matter of this Agreement.

28. <u>No Oral Amendments</u>.  This Agreement may be amended or modified by the Parties only and solely through a written agreement executed by each Party.

29. <u>Execution in Counterparts.</u>  This Agreement may be signed in any number of counterparts or copies or on separate signature pages or by e-mail or facsimile transmission, which when taken together will be deemed to be an original for all purposes.

[signature page follows]

FRINZI FAMILY TRUST:

By: _____
      James Frinzi, Trustee


_____
James Frinzi, Individually


_____
Scott M. Seidel, Trustee


GNET ATC, LLC

By: _____
    Scott M. Seidel
    Authorized Signatory


MULTIBAND FIELD SERVICES, INC.

By: _____
    Scott M. Seidel
    Authorized Signatory