Randall A. Pulman – State Bar No. 16393250
Leslie Sara Hyman – State Bar No. 00798274
Anna K. MacFarlane – State Bar No. 24116701
**PULMAN CAPPUCCIO & PULLEN, LLP**
2161 NW Military Hwy., Suite 400
San Antonio, Texas 78213
Telephone: (210) 222-9494
Facsimile: (210) 892-1610
rpulman@pulmanlaw.com
lhyman@pulmanlaw.com
amacfarlane@pulmanlaw.com

**COUNSEL FOR JAMES E. GOODMAN
AND JAMES S. GOODMAN**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| GOODMAN NETWORKS, INC., | § | Case No. 22-31641 (MVL) |
|  | § | |
| *Debtor*. | § | |
|  | § | Chapter 7 |

**JAMES E. GOODMAN AND JAMES S. GOODMAN'S REPLY IN SUPPORT OF
MOTION FOR LIMITED RELIEF
FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(D)(1)**

James E. Goodman and James S. Goodman a/k/a Jake Goodman ("Goodman Parties" or "Movants"), by and through their undersigned counsel, Pulman, Cappuccio & Pullen, LLP, hereby file this *Reply In Support of Motion for Limited Relief from the Automatic Stay under 11 U.S.C. § 362(d)(1)* ("Reply"), as follows:

**PRELIMINARY STATEMENT**

1. The Trustee's objection to the Goodman Parties' Motion[1] asserts that the Goodman Parties should be compelled enter into the same stipulation that was negotiated by the Trustee and

---

[1] Unless otherwise defined herein, the defined terms shall bear the same meaning as in the Motion.

– 1 –

4870-4158-3552, v. 3

other former officers and directors of the Debtor. Since they were not included in those negotiations or asked to join in the prior stipulations, the Goodman Parties cannot speculate as to why the other former directors and officers consented to the restrictions. The Goodman Parties do not consent to the same restrictions, and they are in no way bound by bilateral negotiations and stipulations that did not involve them. For the purposes of this Motion, it is not the Goodman Parties' burden to demonstrate a "meritorious basis for a departure from procedures" negotiated by the Trustee with other parties. Rather, the standard required for the Goodman Parties' Motion is found under 11 U.S.C. § 362(d)(1), and the Goodman Parties have met that standard.

2. The terms and conditions governing reimbursement and payment of defense costs in the D&O insurance policies are not ambiguous or in dispute. The D&O insurers are more than capable of administering and enforcing their own contracts without oversight from the Trustee, and each has a substantial vested economic interest in doing so for the benefit of all insureds. The same cannot be said of the Trustee. At best, the Trustee has an unliquidated contingent interest in the proceeds of the Primary ABC Policy, and such interest is clearly adverse to the interests of the Goodman Parties as insureds. And as to the Chubb Base DIC Policy, the bankruptcy estate has no interest whatsoever in the proceeds of the Base DIC Policy.

3. The sole basis of Trustee's Objection to the Goodman Parties' Motion is to argue that he should be appointed as a gatekeeper with discretion to depart from the terms of the D&O policies and/or substitute his judgment for that of the carrier. The Trustee points to no authority for the proposition that a plaintiff should be put in charge of the purse strings controlling the defense to plaintiff's claims, or that the judgment of an adverse interested party should be substituted for the judgment of the carrier when it comes to fulfilling and insurer's fiduciary and

contractual duties to its insureds. The Trustee's Objection fails to address the issue at hand, which is whether the Goodman Parties are entitled to relief under 11 U.S.C. § 362(d)(1).

### ARGUMENTS AND AUTHORITIES

**A.     Neither the Trustee nor the Estate have an interest in the Base DIC Policy.**

4.     The Trustee urges that the Estate has an interest in all of the insurance policies and their proceeds and that the Trustee should be permitted to review and approve in advance invoices for defense costs prior to submission to insurers purportedly to ensure that they are properly payable under the insurer's policy. As discussed in the Motion, while the D&O insurance policies themselves may be property of the bankruptcy estate, this does not mean that the *proceeds* of those policies are assets of the estate. *See In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987); *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). This is clearly the case with respect to the Base DIC Policy. The liability insurance proceeds of the Base DIC Policy are payable *only* to non-debtors, which, under Fifth Circuit precedent, means that the proceeds do not constitute property of the bankruptcy estate. *La. World Exposition, Inc.*, 822 F.2d at 1393, 1399-1400 (holding that the directors and officers (as the policy's sole payees) had an ownership interest in the proceeds for the purposes of section 541, not the debtor). The Goodman Parties requested stay relief as to the Base DIC Policy is made only out of an abundance of caution and in the interest of transparency.

**B.     The Trustee should not be permitted to control the defense of the adversary proceedings.**

5.     The Trustee argues that the Court should order as a condition of granting the Motion to Lift Stay:

> ➢ That all defense invoices which the Goodman Parties contend are eligible for payment under a D&O policy must be tendered first to the Trustee for prior approval, and

> That the Trustee shall have the right to object to any invoice in his sole discretion and subject to no objective standard identified in the order, and

> That no such invoice shall be submitted to Chubb for consideration and/or payment over Trustee's objections prior to a hearing before this Court.

6. The Trustee offers no legal authority for such an order other than that other parties in this in this litigation have voluntarily agreed to such conditions, arguing only that it should be granted based on principles of fairness and because the Trustee should be able to conserve the policies. Objection at pp. 3-4.

7. Taking the Trustee's arguments to their logical conclusion, the Trustee seeks to have this Court rule on the interpretation and administration of the D&O policies whenever he believes an entry on a defense invoice should be precluded from consideration for payment by the Goodman Parties' insurers. The interpretation of the D&O policies is not before this Court, nor is there any dispute before the Court regarding any invoice. Rather, the Trustee makes bare assertions that "based on the allegations in the Motion, it is clear that there will be similarly objectionable fees submitted by the Goodman Parties," that "Chubb has been silent on nearly all of these issues," and that "[t]he Trustee cannot rely on Chubb to protect these policies from being improperly depleted." Objection at p. 2 & n.3. Since no invoices have been submitted by the Goodman Parties for payment by insurers due to the automatic stay, the Trustee's allegations as to of Chubb have no foundation. Moreover, the Trustee's assertion that the $700,000 in estimated invoices referenced in the Motion only covers fees though 2023 is likewise misplaced – the estimate includes all fees from the beginning of the bankruptcy case to the date of the Motion. One or both of the movants is currently a defendant in at least four adversaries brought by the Trustee and a District Court proceeding brought by FedEx Supply Chain Logistics & Electronics, Inc. The Trustee's implication that $700,000 in defense costs would be excessive is belied by the Trustee's

– 4 –

own fee requests through 2023 in excess of $1.5 million. *See* ECF No. 446. In any event, the determination of reasonableness and necessity of the fees ultimately submitted to Chubb, and coverage of those fees, lies squarely with the Goodman Parties and Chubb – not the Trustee.

8. The existence of voluntary prior stipulations with other defendants have no bearing on this Motion. These prior stipulations can in no way vary or circumscribe the contractual rights of the Goodman Parties under their policies. The Goodman Parties did not bargain with Chubb or any of the other carriers for a defense controlled by a future bankruptcy trustee. In truth, they bargained for just the opposite.[2] The D&O insurers are perfectly capable of protecting their own interests with respect to the policies, and the Trustee has presented no evidence or sound reasoning why the Court should find otherwise. Objection at p. 4.

9. The Trustee has presented no evidentiary basis or legal authority for the proposition that this Court should replace the D&O insurers with the Trustee for purposes of receiving, reviewing and authorizing disbursement of defense costs payable to Goodman Parties under the D&O policies. Nor is there any policy argument to be made that this Court should preside over hearings initiated by the Trustee to review legal bills submitted by the Goodman Parties to their insurers and make rulings interpreting a carrier's legal duties to its insureds or altering the Goodman Parties' legal rights thereunder. No pending dispute between the Goodman Parties and the D&O carriers exists, nor will any future dispute be presented in this forum.

---

[2] CHUBB BASE DIC POLICY Page 14 –

    22. BANKRUPTCY
    In the event a liquidation or reorganization proceeding is commenced by or against the COMPANY or any INSURED, pursuant to the United States Bankruptcy Code, as amended, or any similar state, local, or foreign law, such proceeding shall not relieve the INSURER of its obligations nor deprive the INSURER of its rights or defenses under this POLICY. In the event of such liquidation or reorganization proceeding the COMPANY and the INSUREDS hereby: (i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts by the INSURER, the COMPANY or any INSURED to obtain relief from any such stay or payment prohibition.

4870-4158-3552, v. 3

10. Further, the Trustee should not be permitted to control the defense of the adversary proceedings he initiated by limiting the Goodman Parties' access to defense costs. The Trustee has presented no case law supporting his proposition that a plaintiff in a lawsuit should be allowed to handcuff the defense in such a manner. The Trustee alleges that he seeks to preserve the D&O policies for the benefit of the estate and other defendants. To the extent the Trustee argues that he should be able to conserve the D&O policies to increase a potential future payout if successful in his adversary proceedings, this itself is not a valid reason for denying the Goodman Parties' requested stay relief.

11. The Bankruptcy Court for the District of Delaware addressed similar facts and granted relief from the automatic stay over the trustee's objections. *In re Allied Digital Technologies, Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004).[3] In *Allied Digital*, the D&O insurance policies provided for both direct coverage to the individual insureds, as well as coverage that was available to the debtor only in the event of indemnification. *Id.* at 510-11. Much like here, the trustee sought to impose limitations on the defendants' use of the policies, seeking to preserve the policies' availability for recovery and to reduce any amounts "paid to lawyers and experts over creditors of Allied Digital." *Id.* at 509. The court granted stay relief over the trustee's objections, concluding that the trustee would not be permitted to interfere with the defendants' bargained-for right to obtain defense coverage to defend against an action brought by the trustee, and that any

---

[3] After reviewing the cases that cite the *Allied Digital* opinion, the Goodman Parties have found no case holding that, absent agreement of the parties, a bankruptcy trustee as plaintiff should be permitted to control disbursement of defense costs—the opposite is true. *See, e.g.*, *In re Licking River Mining, LLC*, Case No. 14-10201 Jointly Administered, 2016 WL 3251890, at *7 (Bankr. E.D. Ky. June 6, 2016) (citing *Allied Digital* to support the conclusion that the trustee should not be permitted to control disbursements under the guise of protecting estate assets); *In re Beach First Nat. Bancshares, Inc.*, 451 B.R. 406, 411 (D. S.C. 2011) (agreeing "wholeheartedly" with the *Allied Digital* holding that the trustee should not be permitted to limit defendants' access to bargained-for defense costs); *In re Mila, Inc.*, 423 B.R. 537, 544 n. 6 (9th Cir. BAP 2010) ("At least two bankruptcy courts have chastised trustees for attempting to use their 'super powers' to prevent directors or officers from getting their bargained-for right to receive defense costs. They recognize that the trustee's real concern is that defense costs payments may affect the trustee's right as plaintiff seeking to recover from the D & O policy rather than, as what trustee's often claim, a potential defendant seeking protection.").

4870-4158-3552, v. 3

interest the estate had in the policies was speculative at best. *Id.* at 513. Further, the court held that "the Trustee knew that the proceeds could be depleted by legal fees and he took that chance" by bringing suit against covered individuals. *Id.* Finally, the court held that even if the policy proceeds were property of the bankruptcy estate, stay relief would be appropriate because "[i]t is not uncommon for courts to grant stay relief to allow payment of defense costs . . . to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary." *Id.*

12. Just so here. The Base DIC Policy, while owned by the Debtor, only provides direct coverage to directors and officers, including the Goodman Parties. As such, the Estate's interest in the Base DIC Policy would be limited to a recovery payout, which is speculative at best. Further, the Debtor's primary D&O insurance policies (the Primary ABC Policy and the 2021-22 Policy) provide for coverage (i) directly to the Goodman Parties for qualifying losses; (ii) to the Debtor for costs incurred in defense of an insured person; and (iii) to the Debtor for costs incurred in claims against the Debtor or its subsidiaries. The Debtor has paid no costs on behalf of the defendants, nor has the Trustee provided any evidence that the Debtor will be the target of litigation that will require coverage under the primary D&O insurance policies. Thus, the Estate's interest in the Primary ABC Policy and the 2021-22 Policy is speculative at best and stay relief should be granted without any of the Trustee's requested limitations.

## CONCLUSION AND PRAYER

13. Based on the foregoing, the Trustee's objections to the Goodman Parties' Motion should be overruled. The Goodman Parties should not be bound by voluntary stipulations agreed to by other former officers and directors. The Goodman Parties bargained for defense cost coverage without interference from the Trustee. The Estate only has a contingent, speculative

4870-4158-3552, v. 3

interest in the proceeds of the D&O policies and has no property interest at all in the proceeds of the Base DIC Policy. Beyond bare assertions that the policies have begun to be depleted by other defendants, the Trustee has presented no evidence that the D&O carriers are unable to unwilling to administer their policies in an appropriate manner.

WHEREFORE, the James E. Goodman and James S. Goodman a/k/a Jake Goodman respectfully request entry of an order granting them relief from the automatic stay, allowing them to collect proceeds from the D&O Insurance Policies for reimbursement of legal fees incurred in responding to the Trustee's Notice and Demand, the Subpoenas, and the Adversary Proceedings, as well as advances of future defense costs required to defend the Adversary Proceedings and the FedEx Lawsuit, and for such other and further relief, in law or in equity, to which they may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Leslie Sara Hyman
Texas State Bar No. 00798274
lhyman@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com

**ATTORNEYS FOR
THE GOODMAN PARTIES**

4870-4158-3552, v. 3

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2024, a true and correct copy of the foregoing document was served by the Court's ECF noticing system on all parties that consent to such service via electronic filing.

                                                */s/Randall A. Pulman*
                                                Randall A. Pulman

4870-4158-3552, v. 3