Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § Chapter 7 <br> GOODMAN NETWORKS, INC., § <br> § Case No. 22-31641-mvl-7 <br> Debtor. § | |

**TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH JAMES FRINZI**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and files this his *Motion Under Bankruptcy Rule 9019 for Approval of Compromise and Settlement with James Frinzi* (the "Motion"), respectfully stating as follows:

**I.   RELIEF REQUESTED**

1. By this Motion, and pursuant to Bankruptcy Rule 9019, the Trustee requests that the Court approve the *Mutual Settlement and Release Agreement* (the "Agreement") and the settlement evidenced thereby (the "Proposed Settlement"), a copy of which is attached hereto as Exhibit "A," between the Trustee and James Frinzi ("Frinzi"). Under the Settlement Agreement, Frinzi, or more appropriately an insurer, pays the Estate $5 million for a full and comprehensive

release from the Debtor, the Estate, and the Debtor's two wholly-owned subsidiaries: GNET ATC, LLC ("GNET") and Multiband Field Services, Inc. ("Multiband"). This is in addition to the prior $1.2 million settlement with the Frinzi Family Trust (the "FFT"). Furthermore, the Trustee retains his claims against all other defendants and against all insurance carriers for first-party claims related to Frinzi.

## II. PROCEDURAL BACKGROUND

2. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the Estate.

3. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

4. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND

### A. CLAIMS AND LITIGATION AGAINST FRINZI

5. Prior to the Petition Date, Frinzi was the Chief Executive Officer of the Debtor, GNET, and Multiband. The Trustee has alleged that Frinzi used this opportunity to divert tens of millions of dollars from the Debtor to himself, his entities, and affiliated friends, through several discrete transactions. These transactions are the subject of multiple filed adversary proceedings pending before this Court, as summarized below.

6. In Adversary Proceeding No. 23-03036 (the "MGR Adversary"), the Trustee has sued Frinzi and his entity, Multiband Global Resources, LLC ("MGR"), to recover several transfers made from the Debtor and/or GNET for the following: (i) a transfer of $500,000.00 by

which Frinzi obtained the majority stock of American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR"), which he transferred into MGR; (ii) $4.4 million of the Debtor's funds, which he transferred through Multiband to MGR and which he used for AMRR and to further transfer to his entities, including FFT, for purchases; and (iii) $962,000.00 of GNET's funds, which he transferred to MGR. The Trustee's claims are primarily for breaches of fiduciary duty and fraudulent transfers. The defendants have denied any liability.

7. As part of the MGR Adversary, the Trustee was able to trace various funds into FFT or into purchases made by FFT, which FFT used to acquire a lakehouse, undeveloped land, and various boats. The Trustee was able to record *lis pendenses* against the real properties. Subsequently, by order entered by this Court, the Trustee and the FFT reached a settlement, whereby FFT would pay $1.2 million, secured by various assets, for a release. As of this Motion, the FFT is in the process of paying that settlement but has yet to pay it. That separate settlement is not prejudiced or affected by this Motion or by the Agreement and is in addition to the consideration in the Proposed Settlement.

8. In Adversary Proceeding No. 23-03072 (the "18920 Adversary"), the Trustee sued Frinzi and various other defendants related to a transfer of the Debtor's funds of $13,474,075 to 18920 NW 11th, LLC ("18920"), of which 18920 and its principals kept approximately $3.474 million. The asserted purpose of this transaction was for the Debtor to redeem certain preferred stock held by James Goodman entities, who has denied knowing that source of the funds was the Debtor. The Trustee has asserted that there was no such redemption right and that the whole transaction was a fraudulent transfer. The claims against Frinzi in the 18920 Adversary are for breaches of his fiduciary duties by causing the Debtor to pay on said non-existing redemption rights. The Defendants have denied any liability in the 18920 Adversary and have asserted various defenses, which the Trustee does not think will have merit. The case remains pending.

9. In Adversary Proceeding No. 23-03090 (the "Hudson Adversary"), the Trustee sued Frinzi and others related to a transfer of the Debtor's funds of almost $17 million through Hudson Clean Energy Enterprises, LLC ("Hudson"), of which entities affiliated with the Auerbach family kept approximately $5.9 million while the balance was transferred to entities affiliated with James Goodman for the purchase from them of certain of the Debtor's prepetition secured bonds. James Goodman has denied knowing that the source of the funds was the Debtor. The Trustee has sued Frinzi for breaches of his fiduciary duties related to this transaction because, among other things, the transaction was to benefit James Goodman and not the Debtor and because there was no legitimate purpose for the $5.9 million payment to Hudson and the Auerbachs, who were serving as straw-men to conceal the true nature of the transaction. The defendants in the Hudson Adversary have denied liability and have asserted various defenses, primarily that they provided reasonably equivalent value to the Debtor because the Debtor was able to retire a large amount of its bonds at a reduced amount. The case remains pending.

10. In Adversary Proceeding No. 24-03039 (the "$44 Million Adversary"), the Trustee has sued Frinzi and other former directors and officers of the Debtor for breaches of fiduciary for various transfers, the principal one being a transfer that Frinzi made from the Debtor in the amount of $44 million to AMRR (the entities that he owned and controlled through MGR). The Defendants in the $44 Million Adversary have denied all liability. The case remains pending.

11. Separately, the Trustee has identified various transfers from the Debtor to World Conquest, LLC, an entity wholly owned by Frinzi, totaling under $1 million. The purpose of these transfers was compensation to Frinzi for serving as the Debtor's CEO. The Trustee has not filed suit on these transfers but expects the primary defense to be that, as wages to Frinzi, these were not fraudulent transfers. The Trustee nevertheless believes that these transfers may be avoidable as constructively fraudulent; however, it appears that World Conquest has no assets and is merely

a pass-through entity, such that any judgment against it would require additional lawsuits against any transferees, which are likely only Frinzi.

12. The Trustee has otherwise undertaken a review of Frinzi's ability to satisfy any judgment. Absent the possibility of concealed asserts stored offshore, which Frinzi denies, the Trustee is not aware of any non-exempt assets that Frinzi would have to satisfy a judgment, except the properties of FFT already subject to the Trustee's *lis pendenses*, and the FFT settlement is not released or prejudiced by the Proposed Settlement.

B. **CURRENT STATE OF LITIGATION**

13. Discovery in the MGR Adversary, 18920 Adversary, and Hudson Adversary is well under way, and is at the deposition stage. In the MGR Adversary, the Trustee has recently asserted causes of action against Federal (defined below) for payment of the $5 million crime coverage part in the New Policy (defined below), related to Frinzi's embezzlement of funds as otherwise pled in the MGR Adversary. Those first-party claims are not implicated or released by the Proposed Settlement.

14. The defendants in the foregoing adversary proceedings have asserted jury rights. The Court has recommended, and the District Court has agreed, that the reference will be withdrawn to the District Court once these adversaries are ready for trial. Furthermore, in the $44 Million Adversary, various defendants have asserted that the claims must be arbitrated, which matter this Court has under advisement. The relevance of these developments is two-fold. First, with trials to be held in the District Court, the Trustee has far less window into when such trials may be held, but they are unlikely to be held in 2025 even if discovery ends in the first quarter of 2024. Second, because juries will decide some or all of the issues, and the issues are ones of complicated fraudulent transfers, breaches of duty, and financial transactions, there is more

concern that the juries may not understand the Trustee's claims fully, than would be the case with a bench trial.

C. <u>INSURANCE POLICIES</u>

15. The Debtor, and hence the Estate, own various rights under, and are beneficiaries under, multiple insurance policies. Of relevance to the Proposed Settlement are two prepetition insurance policies purchased by the Debtor.

16. First, there is an older tower of insurance, with five (5) layers, that provides for a total of $25 million in directors' and officers' liability coverage, and $10 to $15 million in crime coverage, beginning with a primary policy number of 8259-6686 (the "<u>Old Tower</u>"). The Old Tower has an extended policy period to October 30, 2022. Second, the newer policy, with $5 million in coverage for directors' and officers' liability coverage and $5 million in crime coverage, is policy number 8262-4874 (the "<u>New Policy</u>"). The New Policy has an extended policy period of October 30, 2021 through April 30, 2023.

17. It is the New Policy that is implicated by this Motion because the carrier, Federal Insurance Company, one of the Chubb Group of Insurance Companies ("<u>Federal</u>"), has agreed to pay the $5 million limit of D&O coverage for the releases of Frinzi contained in the Agreement, related to the 18920 Adversary. Separately, the Trustee has sued Federal to recover on the $5 million crime policy related to the MGR Adversary (summarized above). That lawsuit and the Trustee's claims for crime coverage are not implicated by this Motion or the Agreement, and the Trustee will retain all rights regarding the same notwithstanding his proposed release of Frinzi, because these claims are first-party claims against Federal.

18. How these policies relate to the Trustee's claims against Frinzi is subject to dispute. The Trustee asserts that the Old Tower applies to the $44 Million Adversary, both with respect to D&O coverage and crime coverage. The New Policy, on the other hand, would apply to the MGR

Adversary (with respect to crime coverage) and to the 18920 Adversary and the Hudson Adversary with respect to D&O coverage. The New Policy, however, has a lower limit of coverage for D&O lability than Frinzi's asserted liability in the 18920 Adversary and the Hudson Adversary. That, and Frinzi's likely inability to satisfy a judgment, motivates a significant portion of the Trustee's reasoning behind the Proposed Settlement.

19. Regarding the 18920 Adversary, the Trustee sent to Frinzi a *Stowers* demand for his obvious breach of fiduciary duty in the 18920 Adversary, by causing the Debtor to pay almost $13.5 million for a non-existing redemption demand, without doing any due diligence into whether such redemption right even existed. The carrier (Federal) has agreed to pay the full $5 million of D&O coverage for that liability; hence the $5 million payment under the Agreement. While this amount is less than Frinzi's liability in the 18920 Adversary and the Hudson Adversary, as noted above, it is the limit of coverage and Frinzi is unlikely to be able to pay any higher judgment anyway. What is of importance is that the New Policy's crime coverage (which is not being released) remains for the MGR Adversary (although Federal has refused to pay on it and litigation regarding the issue has commenced); other defendants (who are not being released) remain to pay the balance of the damages in the 18920 Adversary; other defendants (who are not being released) remain to pay the balance of the damages in the Hudson Adversary; and other defendants (who are not being released) and the Old Tower (which is not being released) remain to satisfy liability in the $44 Million Adversary, although those liabilities are disputed and continuing litigation will be necessary. While $5 million is less than Frinzi's liability in the 18920 Adversary and the Hudson Adversary, as noted above, it is the limit of coverage under the D&O coverage for the New Policy and Frinzi is unlikely to be able to pay any higher judgment anyway.

## IV.　PROPOSED SETTLEMENT

20.　Parties are cautioned to review the Agreement in detail, as it contains the precise terms and provisions of the Proposed Settlement. Nevertheless, the following is a summary of the key provisions of the Agreement:

(i)　Frinzi agrees to pay, or to cause Federal to pay, to the Estate the amount of $5 million. If the payment is not made, then none of the Agreement's releases go into effect and the parties are returned to the *status quo ante*.

(ii)　Frinzi, his wife, their children, and World Conquest obtain full and complete releases from the Debtor, the Estate, GNET and Multiband. The FFT does not obtain a release and remains liable for $1.2 million, which liability is fully secured by real estate, pursuant to the previous FFT settlement. The Trustee is not aware of any claims against the wife or the children.

(iii)　Pursuant to the *Order Approving Multi-Party Settlement Regarding Property of the Estate* [docket no. 526] (the "Global 9019 Order"), and the settlement agreement approved thereby, the first $425,000.00 of the $5 million settlement and, thereafter, one-third (1/d) of the remaining $4,575,000.00 of the $5 million settlement, would be paid to UMB Bank, National Association, as indenture trustee (the "Indenture Trustee") for the benefit of the holders of the Debtor's prepetition secured bonds. Thus, once the Trustee files a subsequent motion for approval of such payment, and the Court approves the same, the Indenture Trustee would be paid $1,948,457 of the settlement proceeds, while the balance would be free and clear property of the Estate.

(iv)　All of the Trustee claims and causes of action (whether through the Debtor, the Estate, GNET, or Multiband) against other defendants, and on account of first-party crime coverage under both the Old Tower and the New Policy, and on account of D&O coverage under the New Policy, remain and are unaffected and not prejudiced by the Proposed Settlement. In other words, the Trustee believes that there will still be multiple defendants, multiple sources of recovery, and multiple insurance proceeds from which to seek recoveries. Frinzi is dismissed from all adversary proceedings, with prejudice, but such dismissal is without prejudice to all other defendants or claims.

(v)　Frinzi grants the Debtor, the Estate, GNET, and Multiband full and complete releases, including of any alleged indemnification claim, and agrees to withdraw with prejudice his proof of claim filed in the Bankruptcy Case.

(vi)　Frinzi agrees to reasonably cooperate with respect to discovery and trial against any of the remaining defendants.

(vii)　The Agreement is subject to approval of the Court.

## V.     DISCUSSION

21. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Under that Rule, the Court should approve a settlement only if it is "fair and equitable and in the best interests of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The factors to consider include "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*. Such other factors include the reasonable views of creditors, although such views are not binding, and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*. at 918. *See also Official Comm. Of Unsecured Creditors v. Cajun Elec. Power Coop. Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 559, 602 (5th Cir. 1960).

22. The Court need not conduct a mini-trial on the underlying claims; rather, the Court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (internal quotation omitted). The settlement need not result in the best possible outcome for the Estate, but must not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Finally, the Trustee is entitled to employ his reasonable business judgment in proposing a settlement, and that judgment is entitled to reasonable deference from the Court where, as here, the proposed settlement is not between insiders:

> The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the 'business judgment rule.' Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. The business judgment rule creates a presumption in favor of the fiduciary.

*In re Woodberry*, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021) (internal quotations omitted).

23.  Here, the Trustee believes that the Proposed Settlement is fair, equitable, and in the Estate's best interests, for at least the following reasons:

- While the $5 million payment is significantly less than Frinzi's liability to the Estate, the full release of Frinzi: (i) is necessary to obtain payment on the D&O coverage part of the New Policy; (ii) Frinzi is likely otherwise judgment-proof; and (iii) the Trustee retains valuable claims and causes of action against solvent defendants and under the crime coverage parts of the Old Tower and the New Policy, and under the D&O coverage part of the Old Tower—none of which claims and causes of action are released or prejudiced by the Proposed Settlement.[1]

- That the Proposed Settlement is the result of a *Stowers* demand is significant. On the one hand, the Trustee wants to obtain the full benefits of the New Policy's D&O coverage. He sent the *Stowers* demand for that purpose. On the other hand, however, the carrier and Frinzi have required full releases of Frinzi, as is their right. The point is that, were the Trustee to now reject the settlement, then the Trustee would likely not be able to rely on the *Stowers* doctrine in the future to recover a judgment in full from the carrier (together with additional damages) even if in excess of policy limits. In other words, it appears unlikely that the Trustee would be able to recover more than the $5 million policy limits of the D&O coverage part of the New Policy. Here too is the relevance of the Old Tower: the Trustee still has the full benefit of the Old Tower and, even by removing Frinzi from the $44 Million Adversary, there remain sufficient insured defendants and facts to claim such recoveries. Such recoveries are disputed, and coverage litigation may be required in the future, but those issues are what they are regardless of a settlement with Frinzi.

- The Trustee retains all rights against the FFT and its requirement to pay $1.2 million. Thus, the total monetary consideration from Frinzi, in the end, is $6.2 million.

---

[1] It may be that, under applicable law, one or more defendants may be able to claim a credit against their own liabilities based on the settlement payment. The Trustee can do nothing about this, and the Agreement preserves all rights, defenses, and issues regarding the same. This would be the case anyway were Frinzi to pay in full and, since the Trustee is basically chasing one pot of money or one recovery in each adversary proceeding, it is fair to consider granting credits to the extent otherwise provided by law. If anything, the Trustee believes that the settlement will make it easier to negotiate with remaining defendants.

- Brining money into the Estate will likely make it easier for the Trustee to negotiate with all remaining defendants, because some of the harm that they and Frinzi caused will be mitigated, thus making it easier for them to pay the balance.

- The Trustee will be able to pay almost $2 million to the Indenture Trustee, thus coming closer to paying all secured claims in full, while the balance of the settlement funds will be free and clear proceeds to benefit all creditors.

- Trying to finality all claims against Frinzi will be lengthy and costly, will entail appeals, and, while the Trustee believes that he is very likely to succeed, one never knows what a jury will decide. Here, because the issues are complicated and concern fraudulent transfers, the Trustee has more of a concern having these issues decided by a jury than he would be a judge.

- the Agreement and the Proposed Settlement were negotiated at arm's length, through good faith negotiations between counsel, with no undisclosed agreements. The Proposed Settlement is the result of a *Stowers* demand.

24. In the end, the Trustee will recover $6.2 million from Frinzi resulting from the Proposed Settlement and the FFT settlement. While this is but a fraction of the harm caused by Frinzi and the other defendants, it is real money, and is likely the most that the Trustee could recover on final judgments against Frinzi. Most importantly, the Trustee retains all other claims against the remaining defendants and under insurance policies, meaning that this is not the end, but at least a meaningful beginning.

## VI. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court: (i) grant this Motion by entering the proposed order attached hereto; (ii) approve the Proposed Settlement; (iii) authorize and direct the Trustee to perform all actions required by the Agreement; and (iv) grant the Trustee such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 12th day of November, 2024.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**GENERAL COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 12th day of November, 2024, true and correct copies of this Motion, the Agreement, and the proposed order on this Motion were electronically served by the Court's ECF system on parties entitled to notice thereof though counsel and, additionally, that on the same day he caused true and correct copies of this Motion, the Agreement, and the proposed order on this Motion to be served by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.