IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

```
IN RE:                           .
                                 .  Case No. 22-31641-MVL-7
GOODMAN NETWORKS, INC., AND      .
GOODMAN NETWORKS, INC.           .  U.S. Bankruptcy Court
DBA GOODMAN SOLUTIONS,           .  1100 Commerce Street
                                 .  Dallas, Texas 75242
                                 .
                      Debtor.    .  Wednesday, December 4, 2024
. . . . . . . . . . . . . . . .  .  2:00 P.M.
```

TRANSCRIPT OF HEARING ON MOTION TO COMPROMISE CONTROVERSY
FILED BY TRUSTEE SCOTT M. SEIDEL (618)

**BEFORE THE HONORABLE MICHELLE V. LARSON**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES ON NEXT PAGE.

Audio Operator:     Hawaii S. Jeng

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**LIBERTY TRANSCRIPTS**
**9107 Topridge Drive**
**Austin, Texas 78750**
**Phone:    (847) 848-4907**
**E-mail:   DBPATEL1180@GMAIL.COM**
**Website: www.libertytranscripts.com**

2

APPEARANCES:

| | |
|---|---|
| For the Trustee: | Munsch Hardt Kopf & Harr PC<br>BY: THOMAS DANIEL BERGHMAN, ESQUIRE<br>500 North Akard Street, Suite 3800<br>Dallas, Texas 75201 |
| For James Frinzi: | Wick Phillips Gould & Martin, LLP<br>BY: JASON RUDD, ESQUIRE<br>3131 McKinney Avenue, Suite 500<br>Dallas, Texas 75204 |

APPEARANCES VIA WEBEX:

| | |
|---|---|
| For Goodman Defendants: | Pulman, Cappuccio & Pullen, LLP<br>BY: RANDY PULMAN, ESQUIRE<br>    ANNA KOCHUT MACFARLANE, ESQUIRE<br>2161 NW Military Highway, Suite 400<br>San Antonio, Texas 78213 |
| For Joseph Goodman and<br>Jason Goodman: | Whitaker Chalk Swindle & Schwartz<br>BY: ROBERT A. SIMON, ESQUIRE<br>301 Commerce Street, Suite 3500<br>Fort Worth, Texas 76102 |
| For FedEx Supply Chain<br>Logistics and<br>Electronics, Inc.: | Butler Snow LLP<br>BY: ADAM M. LANGLEY, ESQUIRE<br>6075 Poplar Avenue, Suite 500<br>Memphis, Tennessee 38119 |
| For Hudson Clean Energy<br>Enterprises, LLC, and<br>All Other Third-Party<br>Moving Defendants: | Jordan, Lynch & Cancienne PLLC<br>BY: MICHAEL CANCIENNE, ESQUIRE<br>1980 Post Oak Boulevard, Suite 2300<br>Houston, Texas 77056 |
| For UMB Bank<br>Indentured Trustee<br>and The Majority<br>Noteholder Group: | Hunton Andrews Kurth LLP<br>BY: BRIAN CLARKE, ESQUIRE<br>200 Park Avenue<br>New York, New York 10166 |

3

# <u>I N D E X</u>

<u>Page</u>

Motion to compromise controversy
Filed by Trustee Scott M. Seidel (618)

**Court's Ruling - Granted**                                    **25**

# <u>E X H I B I T S</u>

| <u>FOR THE TRUSTEE</u>: | | ID | EVD |
|---|---|---|---|
| A | Settlement agreement | 11 | 15 |
| B | Signed settlement agreement | 11 | 15 |
| C | Complaint in lawsuit | 12 | 15 |
| D | Stowers demand | 12 | 15 |
| E | Insurance policy | 11 | 15 |

4

1        (Proceedings commenced at 2:00 p.m.)

2            THE COURT:  We've got a couple of matters on our 1:30

3   docket.  I think I'll probably go ahead and call those in

4   order.  First case is Case Number 22 -- let me make sure I have

5   all my prep.  I do.  22-31641, Goodman Networks, Inc.

6            I'll take appearances for the record.  Start with

7   those in the courtroom.

8            MR. BERGHMAN:  Good afternoon, Your Honor.

9            Thomas Berghman with Munsch Hardt for the Trustee,

10  Scott Seidel, who's in the courtroom, as well.

11           MR. SEIDEL:  Good afternoon.

12           THE COURT:  Thank you.  Mr. Rukavina feeling any

13  better?

14           MR. BERGHMAN:  So he's actually at the Fifth Circuit

15  on a Highland matter.  So we're all waiting with bated breath

16  for the next episode.  And our future CLEs, I'm sure we'll hear

17  back.

18           THE COURT:  I tagged in --

19           MR. BERGHMAN:  But he's not feeling any better.

20  But --

21           THE COURT:  I tagged in someone else on that.  Thank

22  you.

23           MR. RUDD:  Good afternoon, Your Honor.

24           Jason Rudd on behalf of Mr. James Frinzi.

25           THE COURT:  Good afternoon, Mr. Rudd.  And now I'll

5

1   take appearances on WebEx.  I'll start with Ms. MacFarlane and

2   Mr. Pulman.

3          MR. PULMAN:  Good morning.  Or good afternoon, Your

4   Honor.

5          Randy Pulman here for some of the Goodman Defendants.

6   Ms. MacFarlane has joined me, as well.

7          THE COURT:  Excellent.  Good afternoon.  Mr. Simon?

8          MR. SIMON:  Good afternoon, Your Honor.

9          Robert Simon for Joseph Goodman and Jason Goodman.

10         THE COURT:  For the rest of them, right?  Thank you.

11   Good afternoon.

12         Mr. Langley, would you like to make an appearance?

13         MR. LANGLEY:  Yes, Your Honor.

14         Adam Langley for Fedex Supply Chain Logistics &

15   Electronics.  Good to see you.

16         THE COURT:  Good to see you.

17         Mr. Cancienne?

18         MR. CANCIENNE:  Michael Cancienne for the 18920 and

19   Hudson parties.

20         THE COURT:  Good afternoon.

21         MR. CANCIENNE:  Good afternoon.

22         THE COURT:  Mr. Clarke?  Long time, no see.

23         MR. CLARKE:  Good afternoon.  Brian -- long time.

24   Hope you're well.

25         Brian Clarke, Hunton Andrews Kurth, on behalf of the

6

1  Majority Senior Secured Bondholder Group and UMB as Indentured

2  Trustee.

3          THE COURT:  Good afternoon.  And I think that's

4  everyone that I can see on WebEx.  Is there anyone else that

5  would like to make an appearance in the Goodman matter?

6          All right.  Mr. Berghman, gang's all here.

7          MR. BERGHMAN:  Yes, Your Honor.

8          And this should be relatively straight forward.

9  We've got a 9019 that brings good value to this estate.  We

10  have a couple of objections, but they're really more requests

11  for reservations of rights.  We have agreed with Mr. Pulman and

12  Mr. Simon on language to insert into the order that addresses

13  their issue.

14          We have a request from Fedex to just put something on

15  the record with respect to the settlement, which I will do.

16  And then the Bondholders have asked that we make a modification

17  to the order that provides for the Trustee to have direction

18  and authority to pay their piece of the proceeds based on

19  authority in this order as opposed to filing a separate motion

20  and order.

21          They're hoping to make a distribution to their

22  bondholders by year-end, which is something that I can identify

23  with.  Year-end is always a fun time in that respect.  So we

24  were --

25          THE COURT:  I wouldn't know anything about that.

7

1          MR. BERGHMAN:  Yeah.

2          THE COURT:  But please, continue.

3          MR. BERGHMAN:  Yes.  I think Your Honor may have had

4    some experience with that in the past.  It's fun.  So we've got

5    some language that we'd like to add to the order to accommodate

6    that.  It wasn't in the motion, but there is authority in the

7    existing -- the global 9019 that basically requires it.  And it

8    seems like, you know, the sensible thing to do, Your Honor.

9    And if the parties on the phone are okay with it, as well.

10          So in terms of evidence, Your Honor, I've got a

11   proffer for Mr. Seidel.  I'd like to, just to speed things up,

12   proffer his testimony.  We've got a handful of exhibits.  I had

13   put a couple binders up on --

14          THE COURT:  Right.

15          MR. BERGHMAN:  So hopefully, Your Honor has those.

16          THE COURT:  Mr. Calkins.

17          MR. BERGHMAN:  And we just have a few exhibits.  And

18   after I read through the proffer, I'll move for the admission

19   of those exhibits.  But before I proceed to the proffer, maybe

20   it makes sense to yield the podium for a minute to see if

21   anyone else wants to chime in and say anything --

22          THE COURT:  Okay.

23          MR. BERGHMAN:  -- by way of opening.

24          THE COURT:  Thank you, Mr. Berghman.

25          Is there anyone else who wishes to make a brief

1 opening with respect to the 9019?  I'll just say for the

2 record, I did have an opportunity to review the 9019 and the

3 settlement, the form of order as well as the two limited

4 objections that were filed by each of the sets of the Goodman

5 Defendants.  So I did have an opportunity to do that prior to

6 the hearing.

7          Mr. Rudd?  No?

8          MR. RUDD:  Unless Your Honor has questions.

9          THE COURT:  No.

10          Mr. RUDD:  I'll not say anything now.

11          THE COURT:  Wise, wise man right there.  Is there

12 anyone on WebEx who wishes to be heard by way of opening?

13          MR. SIMON:  Yes, Your Honor.  Very briefly.  Robert

14 Simon.  What Mr. Berghman said is correct.  Our limited

15 objections were with respect to protecting our client's rights

16 under Chapter 33 of the Texas Civil Practice and Remedies Code.

17 And we've reached agreement with the Trustee on language to

18 resolve those objections.

19          THE COURT:  Okay.  Excellent.  And I noticed in

20 Paragraph, I think, 7 of the settlement agreement, there was

21 kind of an attempt to recognize that there might be other

22 governing law providing for the credit apportionment of

23 different relief or defense.  And so I assumed, based upon the

24 two limited objections, that probably there could be a language

25 fix, whether it be in the settlement agreement or the order.

9

1  So I appreciate that.  Thank you.

2          Mr. Pulman, anything to add in that regard?

3          MR. PULMAN:  No, ma'am.  I think we've reached

4  agreement on the --

5          THE COURT:  Okay.

6          MR. PULMAN:  -- language that we required under

7  Chapter 33 of the Civil Practice and Remedies Code.

8          THE COURT:  The only Chapter 33 I was ever familiar

9  with was the really, really bad one.  So I learned a little bit

10 reading that reply.  So thank you.

11         Anyone else?  Mr. Langley, Mr. Clarke?

12         MR. LANGLEY:  Your Honor, Adam Langley for Fedex.  We

13 reviewed the proposed settlement with the Trustee, and they're

14 agreeable to the language in the sense that we don't have an

15 objection.  We did ask him to state on the record that

16 Paragraph 7 of the settlement agreement intended not to

17 prejudice FedEx's district-court litigation.  And I understand

18 that he's going to make that representation today.  So with

19 that, we don't have any further statements.

20         THE COURT:  Okay.  Excellent.  Thank you,

21 Mr. Langley.

22         MR. CLARKE:  And Brian Clarke for the record.  We

23 have nothing further unless you have questions about the

24 language we proposed.

25         THE COURT:  I kind of feel like from your

1 presentations, you all think I have questions.  I don't know

2 where you guys get that.  But still.

3        Obviously, Mr. Berghman referenced a proffer.  Is

4 there any objection to Mr. Berghman proffering the testimony of

5 Mr. Seidel who is here and available for

6 cross-examination?

7        MR. SIMON:  No.

8        THE COURT:  All right.

9        MR. PULMAN:  No, ma'am.

10        THE COURT:  Thank you.

11        UNIDENTIFIED SPEAKER:  No objection.

12        THE COURT:  All right.  Please proceed, Mr. Berghman.

13        MR. BERGHMAN:  Very good.  Thank you, Your Honor.

14        If called to testify, Mr. Seidel would testify that

15 his name is Scott Seidel, but he is the Chapter 7 Trustee

16 appointed in this case.  He would further testify that by the

17 motion, he asks for authority to enter into a settlement

18 agreement with James Frinzi, the Debtor's former CEO, under

19 which settlement Frinzi is released of all estate claims in

20 exchange for a payment of $5 million by Federal Insurance

21 Company, which is one of the Chubb companies pursuant to a D&O

22 Policy.

23        The Frinzi Family Trust is not released of its

24 obligations pursuant to a separate settlement agreement to pay

25 $1.2 million, which the Trustee understands from Mr. Frinzi

1  that that payment is in process.  Exhibit A in the hearing is a

2  true and correct copy of the settlement agreement which Frinzi

3  has -- Mr. Frinzi has informed us has been approved by the

4  carrier.

5          Exhibit B is a true and correct copy of Mr. Frinzi's

6  signed version of the settlement agreement.  There are two main

7  insurance policies to be considered.  The present policy which

8  covers a later period in time versus the other policy has a

9  limit of $5 million for D&O coverage and a separate limit of $5

10  million for crime coverage.  The D&O coverage part would be

11  exhausted pursuant to this settlement, but the crime coverage

12  part would remain.

13          Exhibit E is a true and correct copy of the

14  $5-million policy in question.  The other insurance policy

15  referenced is a $25-million tower with five different levels of

16  coverage for directors and officers liability.  And there's

17  also separately at least 10, perhaps $15 million in separate

18  crime coverage under that tower.  That policy is not at all

19  implicated by this settlement.

20          Importantly to the settlement, the tower policy, the

21  $25 million tower policy has many exclusions including for

22  self-dealing.  That exclusion would likely apply to many of the

23  transfers that are at issues here.  It's therefore important to

24  note that the Trustee believes, based on the advice of counsel,

25  that the larger tower policy would not be available to

1 Mr. Frinzi for D&O coverage, but it may be available for crime

2 coverage.

3         The Trustee would further testify that the way the

4 settlement arose is as follows.  In one of the pending lawsuits

5 against Mr. Frinzi and others which is styled the 18920

6 lawsuit, the carrier was sent a Stowers demand under Texas law.

7 Exhibit C is a copy of the live complaint in the lawsuit, and

8 Exhibit D is a copy of the Stowers demand.

9         In that lawsuit, the Trustee, again based on the

10 advice of counsel, does not believe that there are any

11 exclusions to coverage.  Rather, Mr. Frinzi transferred almost

12 $14 million of debtor funds to pay on a non-existing stock

13 redemption right without doing any due diligence to determine

14 whether there was such a right, which the Trustee and the

15 documents in evidence, there was no such right.

16         Thus, that lawsuit was the best chance to obtain

17 payment under the $5 million policy at issue here due to the

18 timing of the underlying events and that Mr. Frinzi himself did

19 not actually benefit from the transaction, thereby not

20 triggering an exclusion.

21         After several weeks of extensions and negotiations,

22 the insurance carrier accepted the Stowers demand.  But under

23 that acceptance, the estate would be required to release all

24 estate claims against Mr. Frinzi.  Ultimately, the decision was

25 made to go ahead and proceed on that because the settlement is

1 in the best interest of the estate.

2      Although Mr. Frinzi's liability to the estate is

3 likely much higher than $5 million, I believe that the

4 settlement is proper and in the best interest of the estate for

5 at least the following reasons.  First, Mr. Frinzi is likely

6 judgement-proof absent insurance, as his assets are pledged or

7 subject to the estate's lis pendens with respect to the Frinzi

8 Family Trust real properties, and unless there are hidden

9 offshore assets of which we're not -- which we're not aware of

10 and no one has made us aware of.  The only likely recoveries

11 against him would come from insurance proceeds.

12      Additionally, since the carrier has accepted the

13 Stowers demand, if we were to now reject that demand and obtain

14 a judgment in excess, the maximum recovery would nevertheless

15 still be $5 million, and likely less in the event that policy

16 becomes wasted or starts to waste.

17      Thus, in the settlement, the estate obtains the full

18 $5 million that otherwise we may not obtain.  Then on balance,

19 there are other sources of recovery to continue to look to for

20 the estate.  For example, in one of the lawsuits, and really

21 the same -- we call it the MGR lawsuits, the first in time

22 lawsuit where Mr. Frinzi was sued for embezzlement.

23      In that lawsuit, we've also sued the carrier under

24 the crime coverage part.  That's not being affected, and we

25 believe it should result in a large portion of the $5 million

1 in coverage being paid there.

2       In the 18920 lawsuit, even though Mr. Frinzi is

3 released, all of the other defendants including Goodman

4 entities and Mr. Zakharyayev remain as defendants, and the

5 estate's claims against them are not released.  In the Hudson

6 lawsuit, the estate's claims remain and are not released

7 against Goodman entities and the Auerbach family.

8       In the large D&O lawsuit that was filed where the

9 principle transfer is $44 million to AMRR, there are other

10 defendants who did not self-deal, and there's $25 million of

11 D&O coverage that we'll continue to look to there.  And then

12 there is also the lawsuit against M South related to that same

13 $44 million transfer.  That remains pending and that is not

14 released.

15       Therefore, the $5 million here is likely the most

16 that we could recover from Mr. Frinzi.  And there are other

17 defendants and lawsuits and sources of recovery which the

18 estate intends to continue to prosecute for additional

19 recoveries.  Under the settlement, Mr. Frinzi will also be

20 required to cooperate with discovery which the estate and the

21 Trustee believes will actually help in the other litigation.

22       Your Honor, this agreement is the result of extensive

23 arm's length negotiations, principally between the attorneys

24 and also involving the insurance carrier.  The Trustee and his

25 counsel negotiated in good faith, and we believe that all the

1    other parties did, as well, and there are no undisclosed

2    agreements.

3          And then under the Court's prior order approving a

4    global settlement with various key creditors including the

5    Bondholders and Fedex, some of the settlement proceeds would be

6    payable to the Bondholders.  We are now requesting that the

7    Court authorize and direct the Trustee to, in the order proving

8    the settlement, to direct that payment.

9          Separately -- and that includes the first $425,000 as

10   payable to them to compensate them for prior use of cash

11   collateral.  And then they, likewise, receive one third of the

12   balance of the settlement, meaning that the total amount

13   payable to the Bondholders is $1,948,457.  And the rest of the

14   settlement proceeds are free and clear of property of the

15   estate.

16         And that would conclude the proffer of Mr. Seidel.

17   And piggybacking on that, I'd like to move for the admission of

18   Exhibits A through E, Your Honor.

19         THE COURT:  Is there any objection to the admission

20   of A through E, the Trustee's exhibits found at Docket 632?

21         MR. SIMON:  No, Your Honor.

22         THE COURT:  Hearing no objection, those exhibits are

23   hereby admitted.

24      (Trustee's Exhibits A through E admitted into evidence)

25         THE COURT:  With respect to the proffer, Mr. Seidel,

1 you're an officer of the court, so I don't need to swear you

2 in.  Were you able to hear the proffer that was given by your

3 counsel?

4          MR. SEIDEL:  Yes, Your Honor.

5          THE COURT:  And do you have any changes or anything

6 to add to it?

7          MR. SEIDEL:  No, Your Honor.

8          THE COURT:  Okay.  Thank you very much, sir.

9          MR. SEIDEL:  Thank you.

10          THE COURT:  Is there anyone who wishes to

11 cross-examine the Trustee with respect to the motion?

12      (No audible response)

13          THE COURT:  Hearing no questions, the one question

14 that I had relates to, I've obviously signed a number of orders

15 lifting the automatic stay to allow officers and directors to

16 reach proceeds.  I haven't catalogued the various policies in

17 my head.

18          Are there still policies for which that I have lifted

19 stay that allow directors and officers to seek reimbursement of

20 attorneys fees?

21          MR. BERGHMAN:  Yes, Your Honor.

22          THE COURT:  Okay.

23          MR. BERGHMAN:  And I think one of those, and we had a

24 hearing back in May on, it's a -- it doesn't include an

25 indemnity piece.  And that's --

1          THE COURT:  That's true.

2          MR. BERGHMAN:  -- a $5 million that's just for

3   defense.  And I know that one is I think being depleted for

4   some of the lawsuits.  And then in the --

5          THE COURT:  Maybe West Chester?

6          MR. BERGHMAN:  I think that may be right.

7          THE COURT:  Maybe?  Okay.

8          MR. BERGHMAN:  You have a very good memory, Your

9   Honor.  I would not have remembered that.  So that one is

10  available.  And the $25 million --

11         THE COURT:  Stack.

12         MR. BERGHMAN:  -- stack, they're still --

13         THE COURT:  Okay.

14         MR. BERGHMAN:  I think we're still -- hopefully we're

15  still on the first --

16         THE COURT:  Well, given that there are former

17  directors and officers on the phone who are not objecting, I

18  assumed that that would probably be the case.  But I was

19  curious if that were the case.  So I appreciate that.  And so

20  obviously, I understand what the Bondholders are requesting

21  pursuant to the order.

22         Why don't you tell me a little bit about the

23  agreements that were made of the language changes for Mr.

24  Langley's clients and for the two sets of Goodman Defendants?

25         MR. BERGHMAN:  Yes, Your Honor.

1          Starting with the Bondholders, the proposal is to

2   modify in Paragraph 6 which is on Page 3.  It's about

3   two-thirds of the way down.

4          THE COURT:  Right.

5          MR. BERGHMAN:  The sentence starting with, "The same

6   will be distributed."  That sentence will instead read, "The

7   same will be distributed by the Trustee to the Indentured

8   Trustee pursuant to this order within five business days of the

9   effective date."

10          THE COURT:  I was following you, and then I -- oh,

11  are you in the settlement agreement?

12          MR. BERGHMAN:  Oh.  My apologies, Your Honor.  I'm in

13  the order.

14          THE COURT:  You're in the order.

15          MR. BERGHMAN:  Yes.

16          THE COURT:  Okay.

17          MR. BERGHMAN:  My apologies.

18          THE COURT:  And so it says the proceeds, 1.9.  And

19  may not be used.  Okay.  I see that.  "The same will" -- okay.

20          MR. BERGHMAN:  Right.  So it will say, "The same will

21  be distributed by the Trustee to the indentureds Trustee

22  pursuant to this order within five business days of the

23  effective date."  So that's in the findings.  And then in the

24  order, the ordered paragraphs, it's the third to last paragraph

25  that starts --

1          THE COURT:  Yes.

2          MR. BERGHMAN:  "Ordered that 1.9 million is the cash

3    collateral of the Indentured Trustee and shall not be used by

4    the Trustee, and shall be distributed to the Indentured Trustee

5    within five business days of the effective date, and that the

6    remaining three million and change shall be free and clear."

7          THE COURT:  Okay.

8          MR. BERGHMAN:  So that's the language agreed upon

9    with the Bondholders to, you know, and I think it will be tight

10   for year-end.  I think it's possible.  So we think this is a

11   good and fair accommodation.  If Your Honor is okay with it,

12   we'd like to make that change.

13         THE COURT:  Okay.  And I'll approve of that change.

14         MR. BERGHMAN:  Okay.

15         THE COURT:  Based upon the agreement, unless is there

16   any objection on behalf of any of the unsecured creditors to

17   that change being made?  It seems to be we're just saving a

18   motion.

19         MR. BERGHMAN:  We're saving a little bit of

20   resources --

21         THE COURT:  Exactly.

22         MR. BERGHMAN:  -- and court time.

23         THE COURT:  From the --

24         MR. BERGHMAN:  Yes, Your Honor.  Absolutely.

25         THE COURT:  -- Trustee's perspective.

20

1          MR. BERGHMAN:  Absolutely.

2          THE COURT:  And now with respect to Fedex?

3          MR. BERGHMAN:  Yes, Your Honor.

4          Let me just make sure I pull up the correct language.

5   So the request was that, you know, and I think this is fully

6   accurate, and I think it makes good sense.  I'm happy to make

7   the representation on the record.  It's, if we're looking at

8   Paragraph 7 of, at this time in the settlement agreement.

9          THE COURT:  Right.  I'm with you.

10          MR. BERGHMAN:  You know, the Trustee and the estate

11   confirm that, let's see, the second sentence beginning with

12   "furthermore" in Paragraph 7, so that's about halfway down the

13   paragraph, that it apply specifically to Fedex in its

14   district-court lawsuit, Civil Action Number 3:23-CV-02397

15   pending in the Northern District, in the Federal District Court

16   for the Northern District of Texas.  So specifically, that

17   lawsuit gets the benefit of this provision.

18          THE COURT:  Let me see.  "Furthermore," okay.

19          MR. BERGHMAN:  And it's not to actually change the

20   language of the agreement.  I'm just making the

21   representation --

22          THE COURT:  Oh, okay.

23          MR. BERGHMAN:  Yeah.  And we want to be -- and part

24   of the reason, I mean, normally, we'd be happy to.  But this

25   has been approved by the carrier, and we don't want to, you

21

 1  know --

 2          THE COURT:  And so what is the change here?  I've

 3  found the paragraph.  I was looking --

 4          MR. BERGHMAN:  Sure.

 5          THE COURT:  -- for the reference to the case number.

 6  Okay.  So tell me again.

 7          MR. BERGHMAN:  The Paragraph 7 applies specifically

 8  -- sorry.  The second sentence beginning with "furthermore" in

 9  Paragraph 7 of the settlement agreement, it applies

10  specifically to FedEx and the district-court lawsuit.

11          THE COURT:  Okay.

12          MR. BERGHMAN:  Right.

13          THE COURT:  Which is what I understood that to be.

14          MR. BERGHMAN:  I think it already says that, but --

15          THE COURT:  I thought it was general, but I only

16  thought of one other personal and direct claim that was being

17  brought.

18          MR. BERGHMAN:  Yes.

19          THE COURT:  But I guess there is the possibility of

20  ARRIS, as well.

21          MR. BERGHMAN:  Right.

22          THE COURT:  So, okay.  Appreciate that.  And with

23  respect to Mr. Pulman and Mr. Simon's clients?

24          MR. BERGHMAN:  Yes, Your Honor.

25          The language agreed to, and Counsel can confirm as

22

1  well, is that -- and you know, where it goes in the order I

2  suppose is really of no moment.  But perhaps near the end,

3  ordered that all rights, claims, credits, and reductions in

4  alleged liability of any defendant in any adversary proceeding

5  commenced by the Trustee, including all such rights under

6  Chapter 33 of the Texas Civil Practice and Remedies Code are

7  preserved and retained, and are not prejudiced by this order or

8  the agreement.

9          THE COURT:  Okay.  Excellent.  And the Court has no

10 issue with that particular language.  It's what I would have

11 expected based upon the limited objections.  So the Court would

12 be happy to have that added into the form of the order.

13         Is there anyone else who wishes -- anything further,

14 Mr. Berghman?  I apologize.

15         MR. BERGHMAN:  No, Your Honor.  I think, due to some

16 of the timing issues, Mr. Rukavina's going to try to upload

17 this order imminently from the airport or wherever so that time

18 can start running.

19         THE COURT:  Okay.

20         MR. BERGHMAN:  And so he wanted me to make sure that

21 I asked that it be uploaded and considered by the Court at the

22 Court's earliest convenience.

23         THE COURT:  He didn't even have the generosity of

24 spirit to be here.

25         MR. BERGHMAN:  I know.  You know him.

23

1             THE COURT:  No, that's fine.  If it is uploaded

2   tonight, I will sign it.  Come tomorrow morning, I'm hopping on

3   the road --

4             MR. BERGHMAN:  Right.

5             THE COURT:  -- to drive for a conference.  And so it

6   will be a lot harder for me to do it then.

7             MR. BERGHMAN:  Right.

8             THE COURT:  But if it's in my box tonight with the

9   relevant changes, I'll be happy to sign it tonight.

10            MR. BERGHMAN:  Wonderful.  Thank you, Your Honor.

11            THE COURT:  You're welcome.

12            MR. PULMAN:  Your Honor?

13            THE COURT:  Mr. Pulman?

14            MR. PULMAN:  This is Randy Pulman.  I have a

15  suggestion on where to insert the language on Chapter 33.  And

16  that would be on Page 4 or 5 of the proposed order.

17            One, two, three, fourth decretal.  One second.  Yeah.

18  Either at the end of the fourth decretal paragraph or after the

19  fourth decretal.  The paragraph that starts, "Ordered that

20  nothing the proposed settlement or the agreement in no event,

21  notwithstanding the proposed settlement or the agreement, and

22  no event shall any claims, causes of action of the debtor, the

23  estate, GNET, et cetera."

24            That the language we have discussed be put in at the

25  end of that decretal paragraph, or you could just put it as the

24

1    next is where I suggest that it go.

2            MR. BERGHMAN:  I'll be sure to tell Mr. Rukavina to

3    put it there.  He'll love that.

4            THE COURT:  He's going to tell Mr. Rukavina where to

5    put it is what I heard.

6            MR. BERGHMAN:  Yeah.

7            THE COURT:  Excellent.  No.

8            MR. SEIDEL:  That's my job, Your Honor.

9            UNIDENTIFIED SPEAKER:  I'd like to be there for that

10   moment.

11           THE COURT:  Yeah, we'd all like that recorded,

12   please.

13       (Laughter)

14           THE COURT:  That is fair enough.  Anything further

15   with respect to the motion?

16           MR. BERGHMAN:  No.  I just wanted to say thank you,

17   Your Honor.  And thanks to the parties for working through

18   these issues.  It's nice to have a painless hearing.

19           THE COURT:  Well, excellent.  I think this is a first

20   of no actual standing objections by the time we get to hearing.

21   I recognize that there's probably a great deal of time that

22   went into this.  I know Mr. Rudd on behalf of Mr. Frinzi has

23   come, he has gone, he has come back again.  And we certainly,

24   certainly appreciate your help in this.

25           And hopefully this is the first step in at least

**LIBERTY TRANSCRIPTS**
**(847) 848-4907**

25

1  narrowing the disputes.  Obviously, we've got disputes going on

2  in multiple courts, a pending motion for arbitration.  So to be

3  able to narrow the disputes while again still having that

4  coverage out there for the Ds and Os so that counsel is able to

5  continue to do the good work for them, all to the better.

6      So with that, the Court will approve the Trustee's

7  motion for compromise and settlement with Mr. Frinzi.  As the

8  Court said before, I did have an opportunity to review it at

9  length prior to the hearing.  And with the exception of my

10  question on the lift stay, I found it to be in good order.

11      I do believe that the settlement establishes the

12  various 9019 factors that have been laid out by the Fifth

13  Circuit.  I won't bore you all with them because I've said them

14  so many times in this particular case.  So I think you know

15  what I think on 9019.  So with that, the Court will approve

16  this compromise in settlement motion.

17      When you have the order ready, or when Mr. Rukavina

18  does, if he will email Ms. Harding to let her know it was

19  there, she will in turn let me know.  Other than that, I don't

20  know how I would ever know anything.

21      MR. BERGHMAN:  Understood.  Thank you so much.

22      THE COURT:  Thank you, guys.  I think I'll see you

23  Friday.  So no happy holidays for you.

24      MR. BERGHMAN:  No.

25      THE COURT:  But for everyone else, happy holidays.

26

1  Take care.

2          MR. BERGHMAN:   Thank you.

3      (Proceedings adjourned at 2:27 p.m.)

4                    * * * * *

5

6              **C E R T I F I C A T I O N**

7          I, DIPTI PATEL, court-approved transcriber, certify

8  that the foregoing is a correct transcript from the official

9  electronic sound recording of the proceedings in the above-

10 entitled matter, and to the best of my ability.

11

12

13 _____

14 DIPTI PATEL, AAERT CET-997

15 Expires: December 6, 2026

16 LIBERTY TRANSCRIPTS          DATE: January 14, 2025

17

18

19

20

21

22

23

24

25

**LIBERTY TRANSCRIPTS**
**(847) 848-4907**