Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

GENERAL COUNSEL FOR
SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § <br> § <br> GOODMAN NETWORKS, INC., § <br> § <br> Debtor. § | Chapter 7 <br><br> Case No. 22-31641-mvl-7 |

**TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019
FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH
<u>GOODMAN FAMILY MEMBERS AND AFFILIATES</u>**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "<u>Trustee</u>"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "<u>Estate</u>") of Goodman Networks, Inc. (the "<u>Debtor</u>"), the debtor in the above styled and numbered bankruptcy case (the "<u>Bankruptcy Case</u>"), and files this his *Motion Under Bankruptcy Rule 9019 for Approval of Compromise and Settlement with Goodman Family Members and Affiliates* (the "<u>Motion</u>"), respectfully stating as follows:

### I.    RELIEF REQUESTED

1.    By this Motion, and pursuant to Bankruptcy Rule 9019, the Trustee requests that the Court approve the *Settlement and Release Agreement* (the "<u>Agreement</u>") and the settlement evidenced thereby (the "<u>Proposed Settlement</u>"), a copy of which is attached hereto as Exhibit "A,"[1]

---

[1] The Agreement contains as an exhibit thereto the proposed order on this Motion.

between the Trustee and what are defined therein as the "Goodman Brothers," the further effect of which would be to provide limited releases to the Goodman Brothers, a limited release to Federal, and comprehensive and full releases to QBE and what are further defined therein as the Additional Releasees and Further Releasees, all as identified more fully below. The return consideration is $6 million, $2.5 million of which is paid up-front from Federal and QBE under D&O policies, with the balance paid out over three years on a secured basis. The Trustee retains other causes of action against the Goodman Brothers, Federal, and various other defendants subject to pending litigation.

## II. PROCEDURAL BACKGROUND

2. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the Estate.

3. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

4. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND

5. Prior to the Petition Date, James E. Goodman ("J. E. Goodman"), Jason Goodman, and Joseph Goodman (collectively, the "Goodman Brothers") were directors of the Debtor.

6. At all times material hereto, GNET ATC, LLC ("GNET") was and remains wholly owned by the Debtor. GNET is not a debtor in any bankruptcy proceeding. Since the Petition Date, the Trustee has effectively controlled GNET as the sole shareholder. Prior to the Petition Date, the Goodman Brothers were also directors of GNET.

7. The Debtor maintained various insurance policies for itself and GNET. As relevant to the Proposed Settlement is a tower of coverage that in total provides for $25 million in directors and officers insurance coverage, with additional coverage for crime and theft (first-party coverage protecting the Debtor and GNET against certain crimes and thefts).

8. This tower has five layers, each having a limit of $5 million in D&O coverage, as follows: (1) ForeFront Portfolio Policy No. 8259-6686 (the "Primary ABC Policy") issued to Debtor by Federal Insurance Company ("Federal"), which has a $5M Aggregate Limit of Liability under its Directors & Officers and Entity Liability Coverage Part ("D&O Coverage Part"), (2) excess D&O Policy No. 100039151 issued to the Debtor by QBE Specialty Insurance Company ("QBE") for $5M in excess of $5M, (3) excess D&O Policy No. 652241819 issued to the Debtor by Continental Casualty Company ("CNA") for $5M in excess of $10M, (4) excess D&O Policy No. LHY H300594 00 issued to the Debtor by Hanover Insurance Company ("Hanover") for $5M in excess of $15M, and (5) CODA Premier Directors and Officers Liability Excess DIC Policy No. G46647233 004 ("Side-A DIC Policy") issued to the Debtor by Westchester Fire Insurance Company ("Westchester" and, together with Federal, "Chubb").

9. This tower of coverage is a depleting or "wasting" policy, meaning that defense costs advanced by the insurers to defend directors and officers erode the indemnity coverage of $5 million in each layer of the tower. This is of importance to the Proposed Settlement.

10. The Trustee has asserted a number of causes of action and has filed a number of adversary proceedings against the Goodman Brothers and various of their relatives and affiliates, while he has not asserted causes of action against various other relatives and affiliates. The Agreement defines these three groups through three defined terms: the Goodman Brothers, the "Additional Releasees," and the "Further Releasees." The following is a summary of the various

adversary proceedings the Trustee has commenced against some or all of the foregoing, as they relate to the Proposed Settlement.

11. In Adversary Proceeding No. 23-03072 pending before the Court (the "<u>18920 Adversary</u>"), the Trustee has sued a number of defendants related to approximately $13.5 million transferred prepetition by the Debtor (and potentially GNET) to redeem certain stock held by J. E. Goodman related entities subject to an alleged mandatory redemption right. Previously, Federal paid the Trustee $5 million under a separate insurance policy (not the tower that is the subject of the Proposed Settlement) for a release of James Frinzi ("<u>Frinzi</u>"). Various of the other defendants in the 18920 Adversary unaffiliated with the Goodman Brothers have separately entered into a pending proposed settlement agreement with the Trustee that is not the subject of the Proposed Settlement. With respect to the Proposed Settlement, the Trustee has sued J. E. Goodman for knowing participation in a breach of fiduciary duty and as a subsequent transferee, as well as People NQ Inc., JJC & People LLC, and GDMN Family Investments 2, LLC as subsequent transferees. J. E. Goodman receives a full release from all liability in the 18920 Adversary under the Proposed Settlement, while the remaining foregoing entities receive full releases as Additional Releasees under the Proposed Settlement.

12. The defendants in the 18920 Adversary have asserted a right to trial by jury, and the District Court has ordered that the reference will be withdrawn once the matter is ready for trial. The Trustee has pending a motion for summary judgment to avoid the initial transfer, the hearing on which has been abated pending the Trustee's proposed settlement (by separate motion) with the non-Goodman defendants in the 18920 Adversary. Other than taking a few more depositions, which should be completed in the Spring of 2025, the Trustee will be prepared to try the 18920 Adversary, with written discovery almost complete.

13. In Adversary Proceeding No. 23-03098 pending before the Court (the "Hudson Adversary"), the Trustee has sued two groups of Defendants related to a transfer by the Debtor (and potentially GNET) of approximately $17 million used to purchase certain of the Debtor's prepetition secured bonds. Various of these Defendants (initial transferees of the transfer) who are unaffiliated with the Goodman Brothers (these defendants consisting of the Auerbach family and its affiliates) are not the subject of the Proposed Settlement. As it relates to the Proposed Settlement, the Trustee has sued J. E. Goodman for breach of fiduciary duty, and he has sued Goodman Investment Holdings, LLC n/k/a Symbiont Ventures, LLC ("Symbiont"), Genesis Networks, Inc., and Genesis Networks Global Services, LLC, as subsequent transferees. Under the Proposed Settlement, J. E. Goodman receives a release for any liability in the Hudson Adversary, while the remaining foregoing entities receive full releases as Additional Releasees under the Proposed Settlement.

14. The defendants in the Hudson Adversary have asserted a right to trial by jury, and the District Court has ordered that the reference will be withdrawn once the matter is ready for trial. Other than taking a few more depositions, which should be completed in the Spring of 2025, the Trustee will be prepared to try the Hudson Adversary, with written discovery almost complete.

15. In Adversary Proceeding No. 23-03088 pending before the Court (the "UFS Adversary"), the Trustee obtained a final judgment against Unified Field Services, Inc. ("UFS") for approximately $6 million, as well as postjudgment interest, none of which has been collected to-date despite postjudgment discovery. Under the Proposed Settlement, this judgment is satisfied and UFS receives a full release as an Additional Releasee.

16. In Adversary Proceeding No. 24-03054 pending before the Court (the "Symbiont Adversary"), the Trustee has sued Symbiont to collect on his judgment entered in the UFS Adversary, under theories of *alter ego* to pierce the corporate veil between Symbiont and UFS, as

Symbiont is the parent company of UFS, and for fraudulent transfer. Under the Proposed Settlement, this Adversary Proceeding is dismissed with prejudice, with Symbiont receiving a full release as an Additional Releasee. The Symbiont Adversary is otherwise not close to being ready for trial, and significant discovery would remain to be undertaken to prepare it for trial.

17. In Adversary Proceeding 24-03022 pending before the Court (the "<u>GNGS Adversary</u>"), the Trustee has sued J. E. Goodman for breach of fiduciary duty and Genesis Networks Global Services, LLC ("<u>GNGS</u>") for fraudulent transfer related to $540,000 in prepetition transfers made by the Debtor on account of third-party debt owed by GNGS. Under the Proposed Settlement, J. E. Goodman receives a release of all liability in the GNGS Adversary, while GNGS receives a full release as an Additional Releasee. The GNGS Adversary is otherwise almost ready for trial.

18. In two additional adversary proceedings pending before the Court, Nos. 24-03102 and 24-03098 (the "<u>Avoidance Adversaries</u>"), the Trustee has sued the following to recover prepetition payments allegedly in the nature of bonuses and compensation paid by the Debtor: James "Jake" Goodman[2] for $1 million as a subsequent transferee of the transfers asserted in the Hudson Adversary and for a separate $250,000.00 transfer for alleged compensation; Joseph Goodman and Jason Goodman (two of the Goodman Brothers) for approximately $870,000 in alleged retention bonuses; and Madison Goodman[3] for approximately $86,000 in alleged compensation. Under the Proposed Settlement, Jason Goodman and Joseph Goodman receive releases for any liability in the Avoidance Adversaries, while Madison Goodman receives a full release as an "Additional Releasee." The Avoidance Adversaries are otherwise not near to being

---

[2] Jake Goodman is the son of J. E. Goodman.

[3] Madison Goodman is Joseph Goodman's daughter.

ready for trial, with significant discovery remaining. Furthermore, Jason Goodman, Joseph Goodman, and Madison Goodman, the defendants in Adversary Proceeding No. 24-3098, assert that they are entitled to a jury trial, which they timely demanded. The requirement of a jury trial would likely entail further delay in resolving that Adversary Proceeding.

19. In Adversary Proceeding No. 24-03039 pending before the Court (the "<u>D&O Adversary</u>"), the Trustee has sued the Goodman Brothers for breaches of fiduciary duty related to approximately $44 million of funds of the Debtor which Frinzi caused to be transferred to American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ("<u>AMRR</u>") and he has objected to proofs of claim filed by J. E. Goodman (all such asserted claims and causes of action, the "<u>Excepted Claims</u>"). The Court has ordered that the causes of action for breach of fiduciary duty be arbitrated before the American Arbitration Association, which arbitration is now pending in AAA Case Number 01-25-0000-4679 (the "<u>Arbitration</u>"). Under the Proposed Settlement, there is <u>no</u> release to the Goodman Brothers or anyone else for the D&O Adversary, Arbitration, or the Excepted Claims.

20. The Trustee is not aware of any claims or causes of action of the Estate or GNET against the Goodman Brothers or the Additional Releasees, except as discussed above, and none were scheduled by the Debtor.

21. The Proposed Settlement defines the Further Releasees as a list of individuals and companies who are the relatives of the Goodman Brothers or affiliated companies of the Goodman Brothers or their relatives. Such Further Releasees receive full releases under the Proposed Settlement. The Trustee has not sued any of the Further Releasees. Nor is the Trustee aware of any causes of action that the Estate or GNET may have against the Further Releasees, and none were scheduled by the Debtor. The reason for the Further Releasees receiving releases under the

Proposed Settlement is that the Goodman Brothers, in exchange for the consideration being paid to the Estate, want to ensure finality for their relatives and affiliated companies.

22. Returning to matters of insurance, Federal has been advancing insurance defense costs (attorney's fees and expenses) to the Goodman Brothers related to some or all of the pending adversary proceedings and the Arbitration detailed above, under a reservation of rights. Pursuant to prior automatic stay motions and pleadings, the Court ordered that Federal may do so under the Side-A DIC Policy, which is the bottom layer of the tower, and not under the Primary ABC Policy, which is the top layer of the tower, subject to Federal's right to seek a reallocation of such advanced costs. Upon information and belief, Federal has advanced more than $2.5 million in such defense costs; prepetition under the Primary ABC Policy and postpetition under the Side-A DIC Policy.

23. The Trustee and the Goodman Brothers participated in formal mediation at the end of January, 2025, the primary purpose of which was to seek a potential resolution of the D&O Adversary and the Arbitration. Federal and QBE participated. No agreement was reached at the mediation. However, the discussions that began at the mediation led directly to the Proposed Settlement, which is a settlement of some, but not all, of the Trustee's claims and causes of action. Federal has agreed to pay $2.25 million towards the Proposed Settlement as follows: provided that the expenses Chubb[4] advanced under the Side-A DIC Policy are reallocated to the Primary ABC Policy, this, together with other defense expense claims for prepetition litigation erode coverage to $2.25 million, which Federal is tendering for the Proposed Settlement. The Proposed Settlement effectuates this reallocation and modifies the automatic stay to permit it to be made.

24. QBE has agreed to fund $250,000.00 towards the Proposed Settlement under a reservation of rights. In total, therefore, Federal and QBE would pay the Trustee directly $2.5

---

[4] Federal is a subsidiary or affiliate of Chubb.

TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GOODMAN FAMILY MEMBERS AND AFFILIATES—Page 8

million towards the Proposed Settlement. With the first Federal layer tendered and exhausted, QBE would then have the next potential obligation to advance defense costs and pay any indemnity, and the automatic stay would be modified under the Proposed Settlement to permit QBE to do so.

25. As part of the Proposed Settlement, Federal and QBE receive different releases. The Trustee believes that Federal may be liable to the Estate not under the D&O coverage parts of the tower (the Primary ABC Policy) but under the tower's separate crime and theft coverage part (a separate $5 million of coverage) and also under a subsequent insurance policy providing for a separate $5 million coverage part for crime and theft.[5] The Trustee has sued Federal in Adversary Proceeding No. 23-03036 to recover the $5 million in theft coverage under that subsequent policy. Thus, under the Proposed Settlement, Federal receives a release for the Primary ABC Policy and its D&O coverage, but Federal does **not** receive a release from any first-party claims that the Estate or GNET may have, including as asserted by the Trustee in the aforementioned adversary proceeding. QBE has not provided any crime or theft coverage as part of the tower and the Trustee is not aware of any first-party claim against QBE, and none was scheduled by the Debtor. Thus, under the Proposed Settlement, QBE receives a full release from the Estate and GNET, but the Goodman Brothers retain their rights to defense and indemnification from QBE as is otherwise appropriate.

### IV. PROPOSED SETTLEMENT

26. Parties are cautioned to review the Agreement in detail, as it contains the precise terms and provisions of the Proposed Settlement. Moreover, the deeds of trust ancillary to the

---

[5] That subsequent policy also contained D&O coverage of $5 million, which was exhausted when Federal paid that amount to the Trustee as part of his prior settlement with Frinzi.

TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GOODMAN FAMILY MEMBERS AND AFFILIATES—Page 9

Agreement are being negotiated and are not final. These deeds of trust will be filed with the Court as a supplement to this Motion prior to any hearing on this Motion, but they shall not change any of the operative provisions of the Agreement. Nevertheless, the following is a summary of the key provisions of the Agreement:

(i) The overall settlement payment is $6,000,000.00. Federal and QBE pay $2.5 million of this amount as a condition to the effectiveness of the Agreement; *i.e.* no release is effective unless and until this payment is made. Most of the $2.5 million insurance payment is paid as, and is allocated to, D&O indemnity for the D&O Adversary and the Arbitration, and a much smaller amount is allocated as an indemnity payment on the GNGS Adversary.[6]

(ii) J. E. Goodman has already deposited with the Trustee $50,000.00 towards his payment obligations. If the Court approves this Motion and enters the Approval Order required by the Agreement, and the Effective Date under the Agreement fails to occur through no fault of the Trustee, then the Trustee retains this initial deposit as liquidated damages under the Agreement. J. E. Goodman has deposited an additional $50,000.00 with the Trustee. If the Effective Date fails to occur, then this second $50,000.00 is retained in trust by the Trustee to be used against any future damages awarded against J. E. Goodman.

(iii) J. E. Goodman and Symbiont pay the balance of the overall $6 million over three (3) years. First, within sixty (60) days of the Effective Date, J. E. Goodman and Symbiont, jointly and severally, pay $500,000.00 (less the $100,000.00 in deposits, this means a payment of $400,000.00). He and Symbiont then pay $10,000.00 per quarter, jointly and severally, and three annual payments of $970,000.00 to be made by the first, second, and third anniversaries of the Effective Date, again jointly and severally.

(iv) The foregoing payments are secured by <u>junior</u> liens (deeds of trust) against two real properties, land and improvements: 84 Applehead Island Dr., Horseshoe Bay, Texas 78657, owned by J. E. Goodman and his wife, and 3311 Willow Ridge Dr., Bryan Texas, 77087, owned by People NQ, Inc. The Trustee has not obtained an appraisal of either property, but his review of publicly available records suggests that there is sufficient equity (after superior liens) in the properties to fully secure the payout under the Agreement. The Trustee is also in the process of obtaining a

---

[6] This will entitle Munsch Hardt Kopf & Harr, P.C. and the Seidel Law Firm to a combined contingency of twenty percent (20%) of this amount, which is not the subject of this Motion and all rights regarding the same are preserved. That the payment is made from D&O insurance will also entitled UMB Bank National Association, as Indenture Trustee, to one-third (but on a net basis) of this payment. This too is not the subject of this Motion and all rights regarding the same are preserved. This information is provided only so that creditors may better understand the economics and net effects of the Proposed Settlement.

TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GOODMAN FAMILY MEMBERS AND AFFILIATES—Page 10

(v)      Should there be a future default under the Agreement, the Trustee has the right to his reasonable attorney's fees and expenses as well as 10% (ten percent) interest, and J. E. Goodman (as well as all other parties to the Agreement) have agreed to the Bankruptcy Court's core jurisdiction over any such default or dispute.

(vi)     The Agreement reallocates defense costs advanced by Federal to-date from the Side-A DIC Policy to the Primary ABC Policy. With the $2.25 million payment from Federal, this exhausts the $5 million Primary ABC Policy, and reinstates the Side-A DIC Policy in full.

(vii)    Upon the effectiveness of the Agreement, the Goodman Brothers receive full releases, *except* for the Excepted Adversary, Excepted Claims, and Arbitration. The Additional Releasees receive full releases from the Estate and GNET (again excepting the foregoing), and the Further Releasees likewise receive full releases from the Estate and GNET. While any of the Goodman Brothers are released in the other adversary proceedings outlined above, the Estate's and GNET's claims against all other defendants therein remain.

(viii)    Federal receives a full release from the Estate and GNET on account of the Primary ABC Policy and otherwise, *except* for the Trustee's first-party claims against Federal, both as pending in the above-described adversary under the subsequent policy and potentially under the tower (which claims the Trustee has not asserted as of this Motion). QBE receives a full release from the Estate and GNET. These releases do not affect the rights of Goodman Brothers for defense costs and indemnification, and QBE reserves all defenses thereto.

(ix)     The Trustee withdraws the proof of claim he filed in the Genesis Network Telecom Services, LLC bankruptcy, case No. 24-33835.

(x)      The Agreement is subject to the Bankruptcy Court's approval.

## V.    DISCUSSION

27.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Under that Rule, the Court should approve a settlement only if it is "fair and equitable and in the best interests of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The factors to consider include "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any

attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*. Such other factors include the reasonable views of creditors, although such views are not binding, and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*. at 918. *See also Official Comm. Of Unsecured Creditors v. Cajun Elec. Power Coop. Inc. (In re Cajun Elec. Power Coop. Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 559, 602 (5th Cir. 1960).

28. The Court need not conduct a mini-trial on the underlying claims; rather, the Court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (internal quotation omitted). The settlement need not result in the best possible outcome for the Estate, but must not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Finally, the Trustee is entitled to employ his reasonable business judgment in proposing a settlement, and that judgment is entitled to reasonable deference from the Court where, as here, the proposed settlement is not between insiders:

> The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the 'business judgment rule.' Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. The business judgment rule creates a presumption in favor of the fiduciary.

*In re Woodberry*, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021) (internal quotations omitted).

29. Here, the Trustee believes that the Proposed Settlement is fair, equitable, and in the Estate's best interests, for at least the following reasons:

- The Trustee believes his causes of action as asserted in the 18920 Adversary are particularly strong, and he believes that he will otherwise prevail in each of the

adversary proceedings and the Arbitration detailed above. It is only in the Hudson Adversary where the Trustee recognizes that J. E. Goodman and the Additional Releasees may prevail under their defense that they delivered reasonable consideration to the Debtor for the transfers, on account of approximately $30 million in secured bonds that they transferred to the Debtor for cancellation with the Indenture Trustee.[7] Nevertheless, there is risk with all of this litigation, especially because the defendants have asserted jury rights and it is more difficult to reasonably predict how a jury will decide the facts than a court.

- The primary factor motivating the Trustee is the collectability of judgments against the Goodman Brothers and the Additional Releasees. It is significant that John Goodman, in the same general line of business as J. E. Goodman, has filed Chapter 7 bankruptcy and his business is defunct. It is also significant that J. E. Goodman and various entities affiliated with him owe substantial amounts to an allegedly third-party lender, who has already filed suit to collect on his debt, and who holds significant security interests against the assets of the foregoing. Under the Agreement, the Trustee obtains something that he may otherwise not receive—$2.5 million of insurance money—because the same may otherwise be depleted by defense costs or may require coverage litigation to recover. The Trustee obtains liens against valuable properties before other creditors of J. E. Goodman may try to obtain judgment liens against the same. And, the remaining coverage under the tower is available for potential future settlement or judgment. In other words, the Trustee obtains what value he otherwise could obtain from J. E. Goodman by judgment *and* additional funds that may otherwise not be available.

- There are substantial litigation fees and expenses—including significant out-of-pocket expenses for experts, travel, and depositions—risks, and delays to be saved under the Agreement. Trial of the various adversary proceedings would likely be to a jury in the District Court, the timing of which is highly uncertain but is most likely measured in years. And, not only are there substantial additional fees and expenses to prepare the various adversary proceedings for trial, but a trial to a jury is significantly more expensive than a trial to the bench. Then, as with John Goodman, there would likely be additional Chapter 7 bankruptcies, meaning additional fees, expenses, risks, and delays, and competing with other creditors for any recoveries.

- It is highly important to the Trustee that the Excepted Claims as asserted in the Excepted Adversary and the Arbitration remain. While Federal and QBE have required, as a condition of their payment, releases for the Goodman Brothers in all other litigation, they and the Goodman Brothers have agreed that less than global releases are required. This is something that cannot otherwise be obtained without full agreement. As part of this, however, the Goodman Brothers have required

---

[7] The Trustee does not believe the same with respect to the remaining defendants in the Hudson Adversary, where he asserts that the $5.9 million in profit they received for the transaction is without reasonably equivalent value.

TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GOODMAN FAMILY MEMBERS AND AFFILIATES—Page 13

releases for the Additional Releasees and the Further Releasees, in order to "buy peace" for their relatives, spouses, and affiliated businesses.

- The Trustee has outlined above his claims against the Additional Releasees. As these are mainly businesses affiliated with J. E. Goodman, the Trustee faces the same risks of collection as with respect to J. E. Goodman personally. The Trustee has not asserted any claims against the Further Releasees and does not know of any material claims or causes of action that may exist. Nor has the Debtor scheduled any such claims or causes of action.

- While the Trustee is not happy about millions of dollars in defense costs eroding the tower, this is a fact that he can do nothing about. Under the tower, the insured directors and officers are entitled to reasonable defense costs and this erodes (wastes) the policies. Thus, the reallocation of advanced defense costs to the Primary ABC Policy has little to no net effect on the Estate because, whether by motion filed by Federal or whether through future defense costs advanced by Federal, the full Primary ABC Policy would likely be depleted prior to any judgment against the Goodman Brothers. Under the Settlement, $2.25 million of that policy is preserved for the benefit of the Estate *and* QBE pays an additional $250,000.00. This is very important to the Trustee because it would very likely not otherwise be available absent an agreement. And, an additional potentially $19,750,000.00 of coverage under the tower remains, although this is likely to be depleted by millions of dollars more in defense costs—many of which defense costs, however, are avoided as a result of the Agreement settling all litigation that would otherwise be subject to defense cost claims, except the Excepted Adversary.

- Whatever claims the Estate has against Federal for first-party coverage are preserved under the Agreement. The Trustee does not otherwise believe the Estate holds claims, at present, against QBE, because QBE's layer of the tower does not include crime or theft coverage.

- The Trustee's causes of action against other defendants (such as the Auerbach family and their entities in the Hudson Adversary, which the Trustee believes have significant value) remain.

- The Agreement is the direct result of an all-day, in-person mediation, at which Federal and QBE also participated, and the resulting negotiations in the days after. It is the product of extensive and contentious arm's length bargaining. There are no undisclosed agreements.

- That J. E. Goodman and Symbiont, the parties making the future payments under the Agreement, have waived jury rights and agreed to the core jurisdiction of the Bankruptcy Court over any default or disputed under the Agreement is significant because, while the Trustee does not anticipate any such default or dispute, trying the matter in the Court will be quicker and less expensive than other alternatives.

- And, because the deeds of trust can be foreclosed on non-judicially, that provides additional speed and cost savings to the Trustee.

- The deeds of trust would be junior to other lenders. However, this would be the case were the Trustee to immediately obtain a judgment lien against those properties (and other properties of J. E. Goodman) anyway.[8] While there is risk that a senior lender may foreclose on its lien, thereby extinguishing junior liens, that is a risk that would exist under any scenario. Should this situation arise in the future, the Trustee intends to rely on the automatic stay and potentially other options to preserve the Estate's lien interests. Assuming that the senior liens are not foreclosed on, the Trustee is confident, based on all available data, that at present market conditions those deeds of trust will have sufficient value to secure the future payout under the Agreement. The Trustee does not believe that those market conditions will materially worsen in the next three years.

30. In the end, the Trustee will recover at least $2.6 million and very likely $3 million under the Agreement, and he believes the full $6 million over time on a secured basis. The Trustee believes that this is more than he would recover at present were he to succeed on all causes of action against the Additional Releasees and Further Releasees, excepting the Excepted Claims. The Trustee has aggressively litigated against the Additional Releasees, which is why he believes that the Agreement has been agreed to, and he is concerned that he is at the point of diminishing returns if this litigation (excepting the Excepted Claims) continues. In other words, his aggressive litigation has been working, and it is time to capitalize on that litigation on the reasonable and fair terms of the Proposed Settlement.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court: (i) grant this Motion; (ii) approve the Proposed Settlement; (iii) authorize and direct the Trustee to perform all actions required by the Agreement; and (iv) grant the Trustee such other and further relief to which he may be justly entitled.

---

[8] Neither of these properties is a homestead subject to a homestead exemption.

TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GOODMAN FAMILY MEMBERS AND AFFILIATES—Page 15

RESPECTFULLY SUBMITTED this 20th day of March, 2025.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**GENERAL COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 20th day of March, 2025, true and correct copies of this Motion and the exhibit thereto were electronically served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same day he caused true and correct copies of this Motion and the exhibit thereto to be served, by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.