Execution Version

## SETTLEMENT AND RELEASE AGREEMENT

This *Settlement and Release Agreement* (the "Agreement") is executed on the ___ day of March, 2025, by and among Scott M. Seidel (the "Trustee"), as Chapter 7 trustee of Goodman Networks, Inc. (the "Debtor") and of its bankruptcy estate (the "Estate") and on behalf of GNET ATC, LLC ("GNET"), and James E. Goodman ("J.E. Goodman"), Jason Goodman, and Joseph Goodman, (the "Goodman Brothers") (with the Trustee, and GNET, each a "Party" and collectively the "Parties"), as follows:

WHEREAS, on September 6, 2022, certain creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the United States Bankruptcy Code, thereby initiating Bankruptcy Case No. 22-31641-mvl-7 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), thereby creating the Estate;

WHEREAS, the Bankruptcy Court subsequently entered its order of relief against the Debtor, and the Trustee was appointed as the Chapter 7 trustee of the Debtor and the Estate;

WHEREAS, in addition to controlling the Debtor and the Estate, the Trustee, as sole shareholder, controls GNET and, subject to the entry of the Approval Order (defined below), has full corporate authority to execute this Agreement on behalf of the Estate and GNET;

WHEREAS, the Trustee has asserted various claims and causes of action against J.E. Goodman, (and/or one or more of the Additional Releasees (defined below)), including for breach of fiduciary duty and fraudulent transfer, and including in the following Adversary Proceedings pending before the Bankruptcy Court (collectively, the "Released Adversaries"): 23-03072 (the "18920 Adversary"); 23-03090 (the "Hudson Adversary"); 24-03022 (the "GNGS Adversary"); 23-03088 (the "UFS Adversary"); and 24-03054 (the "Symbiont Adversary");

WHEREAS, the Parties to the Released Adversaries are J.E. Goodman, Goodman Investment Holdings, LLC n/k/a Symbiont Ventures, LLC ("Symbiont"), People NQ, Inc., JJC & People, LLC, GDMN Family Investments 2, LLC, Unified Field Services, Inc. ("UFS"), Genesis Networks Global Services, Inc., and Genesis Network Telecom Services, LLC[1], (the "Additional Releasees");

WHEREAS, the Trustee has also sued James S. "Jake" Goodman, Jason Goodman, Joseph Goodman, and Madison Goodman, (collectively, also "Additional Releasees") in the following Adversary Proceedings pending before the Bankruptcy Court (collectively, the "Additional Adversaries"): 24-03102 and 24-03098;

---

[1] Now a debtor in Case No. 24-33835, pending in the United States Bankruptcy Court for the Northern District of Texas.

Execution Version

WHEREAS, the Trustee asserts in Adversary Proceeding No. 24-03098 that Joseph Goodman received a transfer from the Debtor on September 9, 2021, in the amount of $377,967.39, which the Trustee contends was property of the Debtor at the time of the transfer, and is subject to recovery by Trustee as a voidable transfer pursuant to 11 U.S.C. §§ 544(b), 547, 548; and 550(a).

WHEREAS, the Estate and/or GNET may hold additional claims and causes of action against one or more of the following, which have yet to be asserted in a filed complaint (collectively, the "Further Releasees") as identified on exhibit "A."

WHEREAS, additionally, the Trustee has brought claims and causes of action against J.E. Goodman, Jason Goodman, and Joseph Goodman for alleged breaches of fiduciary duty related to the transfer by the Debtor of $44 million to American Metals Recovery and Recycling, Inc. n/k/a MBG Holdings, Inc. ("AMRR") and the transfer of monies from the Debtor to or for the benefit of UFS, and then allegedly to Symbiont as delineated in Trustee's Second Amended Complaint filed in Adversary Proceeding No. 24-03039, now pending before the Bankruptcy Court (such claims and causes of action, the "Excepted Claims" and such adversary proceeding, the "Excepted Adversary"), which Excepted Claims have been ordered to be arbitrated before the American Arbitration Association and are now pending in AAA Case Number 01-25-0000-4679 (the "Arbitration");

WHEREAS, prior hereto, J.E. Goodman has deposited $50,000.00 with the Trustee (the "Deposit") as a sign of his good faith willingness to engage in negotiations;

WHEREAS, during the Goodman Brothers' tenure with the Debtor, the Debtor maintained certain liability insurance policies, including but not limited to: (1) ForeFront Portfolio Policy No. 8259-6686 (the "Primary ABC Policy") issued to Debtor by Federal Insurance Company ("Federal"), which has a $5M Aggregate Limit of Liability under its Directors & Officers and Entity Liability Coverage Part ("D&O Coverage Part"), (2) excess D&O Policy No. 100039151 issued to the Debtor by QBE Specialty Insurance Company ("QBE") for $5M in excess of $5M, (3) excess D&O Policy No. 652241819 issued to the Debtor by Continental Casualty Company ("CNA") for $5M in excess of $10M, (4) excess D&O Policy No. LHY H300594 00 issued to the Debtor by Hanover Insurance Company ("Hanover") for $5M in excess of $15M, and (5) CODA Premier Directors and Officers Liability Excess DIC Policy No. G46647233 004 ("Side-A DIC Policy") issued to the Debtor by Westchester Fire Insurance Company ("Westchester" and, together with Federal, "Chubb"), which has a $5M Aggregate Limit of Liability excess of $20M of underlying insurance, except in certain enumerated instances under the terms and conditions of the Side-A DIC Policy;

WHEREAS, in light of the Bankruptcy Court's July 23 and August 27, 2024 orders denying the motions to lift the automatic stay as it relates to the Primary ABC Policy (and excess directors and officers liability insurance policies that

Execution Version

follow form to the Primary ABC Policy), Chubb has been advancing covered defense costs incurred by the Goodman Brothers in connection with their defense of the Released Adversaries, Additional Adversaries, Excepted Adversary, and other matters under the Side-A DIC Policy, subject to a reservation of rights, including Chubb's right to reallocate all advancements and corresponding erosion under the Side-A DIC Policy to the Primary ABC Policy and/or other underlying insurance policies;

WHEREAS, Federal has indicated that it is prepared to contribute towards the settlement of the claims contemplated by this Agreement by tendering the remaining balance of the $5 million Aggregate Limit of Liability of the D&O Coverage Part of the Primary ABC Policy after accounting for: (1) prior payments of defense costs and other loss under the Primary ABC Policy, and (2) the reallocation to the Primary ABC Policy of all defense costs advanced under the Side-A DIC Policy. The amount of remaining limits under the Primary ABC Policy after accounting for such erosion and Federal's corresponding payment in connection with this Agreement shall be $2,250,000. For the avoidance of doubt, the reallocation of defense costs advanced under the Side-A DIC Policy to the Primary ABC Policy means that: (1) the amount of defense costs previously advanced under the Side-A DIC Policy will now be deemed to have been advanced under the Primary ABC Policy and erode the Primary ABC Policy by the amount of such advancements, and (2) the amount of defense costs previously advanced under the Side-A DIC Policy will now be deemed to have been advanced under the Primary ABC Policy, such that eroded limits of the Side-A DIC Policy will be reinstated by the amount of such prior advancements;

WHEREAS, while reserving all of its rights to deny coverage for reimbursement of defense costs and for indemnity for all claims asserted against the Goodman Brothers by the Trustee, QBE is prepared to contribute $250,000 towards the settlement of claims contemplated by this Agreement as a payment chargeable against QBE's limits of $5M;

WHEREAS, the contributions of Federal and QBE to the settlement contemplated by this Agreement shall collectively be referenced herein as the "Insurance Payment"; and

WHEREAS, after extensive negotiations and an in-person mediation, and without admitting any fault or liability, and only to avoid the risks, expenses, and delays of litigation, the Parties enter into this Agreement as a resolution of disputed claims and rights, with the specific intention that all claims and causes of action of the Debtor, the Estate, and GNET, against J.E. Goodman, Jason Goodman, Joseph Goodman, the Additional Releasees, and the Further Releasees be released and settled, save and except solely for the Excepted Claims, with respect to which the Trustee and the Goodman Brothers reserve and retain all rights, interests, claims, causes of action, defenses, and affirmative defenses, including with respect to any insurance coverage that applies to the same,

Execution Version

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party, the Parties, incorporating their recitals above into this Agreement, represent, covenant, and agree as follows:

1.     <u>Deposit</u>. Upon the Effective Date, the Trustee shall retain the Deposit and apply the same against the Up-Front Payment. If the Bankruptcy Court enters the Approval Order and the Effective Date fails to occur for any reason not the fault of the Trustee, the Trustee shall retain the Deposit as liquidated damages under this Agreement.

2.     <u>Approval Motion</u>. Promptly after the execution of this Agreement and the transfer by J.E. Goodman to the Trustee of $50,000.00 (in addition to the Deposit) (the "<u>Additional Deposit</u>") which the Trustee will hold in trust, the Trustee, at his burden and expense, will file and prosecute in the Bankruptcy Case the appropriate motion seeking the Bankruptcy Court's approval of this Agreement and authorizing him to enter into and effectuate this Agreement (the "<u>Approval Motion</u>"). If the Effective Date fails to occur for any reason, the Trustee shall hold the Additional Deposit solely as a potential recovery against J.E. Goodman in any litigation and shall return the same to J.E. Goodman if all such litigation results in no liability to J.E. Goodman.

3.     <u>Approval Order</u>. This Agreement is conditioned on the entry by the Bankruptcy Court of an order granting the Approval Motion (the "<u>Approval Order</u>"), which Approval Order shall be in the form and substance attached hereto as exhibit "B," and which Approval Order must, at a minimum, approve this Agreement in its entirety and authorize the Trustee to execute this Agreement and otherwise perform all obligations herein and authorize Federal and QBE to make the Insurance Payment. If the Bankruptcy Court approves some, but not all, of this Agreement, then the Parties may, but are under no obligation to, conform this Agreement to comply with such approval.

4.     <u>Effective Date</u>. Except with respect solely to Section 1, this Agreement shall become enforceable and effective on, and is conditioned on the occurrence of, the "<u>Effective Date</u>," which is the first day on which all of the following have occurred: (i) the Approval Order has been entered and fifteen (15) days after the day of such entry have expired without a stay or, if a stay is ordered, on the day after any such stay expires; (ii) the Insurance Payment has been made; and (iii) the Deeds of Trust shall have been executed and delivered to the Trustee in recordable form. If the Effective Date fails to occur by May 15, 2025, then this Agreement shall be null and void, and the Parties shall be returned to the *status quo ante* for all purposes, except as to Section 1 hereon. The Parties may, but are under no obligation to, extend said deadline in a writing executed by the Parties.

Execution Version

5. **Settlement Payment**. J.E. Goodman shall pay, or shall cause to be paid, to the Trustee and for the benefit of the Estate the amount of $6,000,000.00 in good and sufficient funds (the "Settlement Payment"), as follows:

(i) **Insurance Payment**. Federal shall remit $2,250,000 of the Insurance Payment (the "Federal Payment") and QBE shall remit $250,000 of the Insurance Payment (the "QBE Payment") as a portion of the Settlement Payment to the Trustee. Federal and QBE shall remit their respective portions of the Insurance Payment by check or ACH/EFT payment within fifteen (15) business days after the Approval Order becomes final and non-appealable, provided that Federal and QBE are provided with a completed Form W-9 for the payee and all appropriate funding instructions at least five (5) business days prior to the funding deadline. Federal shall not be responsible for any portion of the QBE Payment, and QBE shall not be responsible for any portion of the Federal Payment.

(ii) **Up-Front Payment**. $500,000.00 of the Settlement Payment shall be paid to the Trustee by J.E. Goodman and Symbiont, jointly and severally, no later than sixty (60) days after the Effective Date. The Deposit and the Additional Deposit shall be applied against the same, and J.E. Goodman and Symbiont, jointly and severally, shall pay the balance of $400,000.00 to the Trustee no later than sixty (60) days after the Effective Date.

(iii) **Quarterly Payments**. Commencing on the first day of the next calendar quarter following one hundred and eighty (180) days after the month in which the Effective Date occurs, and continuing by the first day of each succeeding calendar quarter until the Settlement Payment is paid in full, $10,000.00 shall be paid to the Trustee by J.E. Goodman and Symbiont, jointly and severally, for application against the Final Payment (the "Quarterly Payments").

(iv) **First Anniversary Payment**. $970,000.00 of the Settlement Payment shall be paid to the Trustee by J.E. Goodman and Symbiont, jointly and severally, no later than one (1) year after the Effective Date.

(v) **Second Anniversary Payment**. $970,000.00 of the Settlement Payment shall be paid to the Trustee by J.E. Goodman and Symbiont, jointly and severally, no later than two (2) years after the Effective Date.

(vi) **Final Payment**. $970,000.00 of the Settlement Payment, less the Quarterly Payments actually paid, shall be paid to the Trustee by J.E. Goodman and Symbiont, jointly and severally, no later than three (3) years after the Effective Date.

The Quarterly Payments, First, Second and Final Payments are not assignable by the Trustee to any third party without J.E. Goodman's written consent.

Execution Version

6. <u>Allocation of Settlement Payment</u>.  The Federal portion of the Insurance Payment, being $2,250,000.00, shall be treated as an indemnity loss payment allocated to the Trustee's damages, if any, awarded in the Excepted Adversary, and the QBE portion of the Insurance Payment, being $250,000, shall be allocated as an indemnity loss payment on the GNGS Adversary. The Upfront Payment, Quarterly Payments, First Anniversary Payment, Second Anniversary Payment and Final Payment, to the extent actually paid, shall be allocated as a damages payment:  (1) in the amount of $2,000,000 for the Claims made against Symbiont in the Hudson Adversary; (2) in the amount of $250,000 for the Claims made against Symbiont in the Symbiont Adversary; and (3) the balance allocated generally to a release for all of the other Claims made against the Goodman Brothers, the Additional Releases, and the Further Releasees.

7. <u>Collateral</u>.  To secure all payment obligations hereunder, including any applicable attorney's fees, default interest, expenses, and the Up-Front Payment, Quarterly Payments, First Anniversary Payment, Second Anniversary Payment, and Final Payment, but expressly excluding the Insurance  Payment: (i) J.E. Goodman and his spouse, Sarina Goodman, shall execute and deliver a junior deed of trust in favor of the Trustee to be recorded against their real property located at 84 Applehead Island Dr., Horseshoe Bay, Texas 78657, in substantially the form attached hereto as Exhibit "C"; and (ii) People NQ, Inc. shall execute and deliver a junior deed of trust in favor of the Trustee to be recorded against its real property located at 3311 Willow Ridge Dr., Bryan  Texas, 77087 in substantially the form attached hereto as Exhibit "D" (together, the "<u>Deeds of Trust</u>").  The Trustee may immediately record the Deeds of Trust after the occurrence of the Effective Date.  For the avoidance of doubt, the Deeds of Trust shall contain additional covenants, requirements, and obligations, and shall be effective according to their terms.  The Deeds of Trust and liens created therein are not assignable by the Trustee to a third-party without J.E. Goodman's written consent.

8. <u>Event of Default and Default</u>.  In the event of any monetary default in payment under this Agreement (expressly excluding the Insurance Payment), the Trustee may transmit notice of such default to J.E. Goodman in the manner provided in Section 25 hereof (each such event and notice, an "<u>Event of Default</u>").  If the Event of Default is not cured within ten (10) business days of the sending of such notice, J.E. Goodman shall be in default of this Agreement (the "<u>Default</u>"), whereupon the Trustee may immediately declare all unpaid portions of the Settlement Payment immediately due and payable and taking all available actions by transmitting a notice of acceleration in the matter provided in Section 25 hereof. J.E. Goodman shall be entitled to only one such notices of default per calendar year and ability to cure the same; upon the second  Event of Default in a calendar year, no notice of the same shall be required and there shall be no opportunity to cure, and the Trustee

Execution Version

may immediately declare a Default and accelerate the Settlement Payment and take all other available actions, by transmitting a notice of acceleration in the matter provided in Section 25 hereof. The Trustee must also send a notice of default per the terms of the Deeds of Trust. An uncured default under the Deeds of Trust shall be a Default under this Agreement.

9.    <u>Default Interest</u>.    Upon the occurrence of an uncured Default, interest shall immediately accrue and be payable on the portion of the Settlement Payment on that day remaining unpaid at the rate of ten percent (10%) simple interest annually. QBE and Federal shall have no responsibility for any such amounts.

10.    <u>Abatement of Discovery and Proceedings</u>.    Except for the deposition of James Frinzi on March 19 and March 20, 2025, and immediately after the execution of this Agreement by Goodman, the Parties shall abate, and shall file such pleadings as reasonably appropriate to abate, all discovery and pending motions in the Released Adversaries and the Additional Released Adversaries. Such abatement shall not prejudice any Party pending the Effective Date, and the Parties agree to fully cooperate to reasonably reset all matters and propose agreed scheduling orders if the Effective Date fails to occur.

11.    <u>Excepted Adversary</u>.    Except for the deposition of James Frinzi (currently scheduled on March 19 and March 20, 2025), and immediately after the execution of this Agreement by J.E. Goodman, the Parties shall abate, and shall file such pleadings as reasonably appropriate to abate, all discovery and pending motions in the Excepted Adversary pending the conclusion of the Arbitration. Notwithstanding the same, each Party reserves the right to seek appropriate relief from the Bankruptcy Court in aid of the Arbitration, such as would otherwise be appropriate, and nothing herein prejudices the same.

12.    <u>Release of Goodman Brothers, Additional Releasees and Further Releasees</u>. Effective on the Effective Date, and automatically, without need for further document or instrument, the Trustee, for himself, the Debtor, the Estate, and GNET, hereby releases and discharges the Goodman Brothers, the Additional Releasees, and the Further Releasees, and each of their parents and subsidiaries, agents, attorneys, and employees, owners, members, shareholders, managers, directors, officers, current spouses, former spouses, insurers, heirs, successors, executors and assigns, and any other officers, directors or employees of the Debtor or its subsidiaries, and their insurers of any and all Claims and causes of action that any of the foregoing ever had or may have, whether known or unknown, whether asserted or not asserted, arising in law, contract, or in equity, and including all claims and causes of action asserted or assertable in the Released Adversaries and the Additional Adversaries, and further including all bankruptcy avoidance actions and fraudulent transfer and preference actions, including as subsequent transferees, *provided, however,* that: (i) notwithstanding the generality of the foregoing, none

Execution Version

of the Excepted Claims pending in the Excepted Adversary and Arbitration shall be released, waived, or prejudiced by this Agreement; and (ii) no obligation under this Agreement or any document or instrument ancillary to this Agreement is released.

For purposes of this Agreement, "Claim(s)" shall mean all claims, rights to payment, causes of action, demands for damages or equitable relief, allegations, or legal theories of liability, (known or unknown, fixed or contingent, liquidated or unliquidated, existing now or in the past), including those which have been asserted or could have been asserted by the Trustee, Debtor, Estate or GNET, relating to or arising from any controversy or transaction or occurrence made the subject of the Bankruptcy Case the Released Adversaries or the Additional Adversaries (but otherwise subject to the limitation on Excepted Claims as above). The word "Claims" shall expressly include, but shall not be limited to:

1. all claims, counterclaims, causes of action and controversies among and between the Trustee, Debtor, Estate, or GNET, on the one hand and, on the other hand, the Goodman Brothers, the Additional Releasees and the Further Releasees that in any way relate to or arise from the property, ownership, management, operation or rights of the Trustee, the Debtor or the Estate in any property of the Debtor or the Estate (including Property of the estate as described in 11 U.S.C. Section 541) and any work, services, goods, payments, or transfers of money delivered or exchanged among the Parties;

2. all petitions, claims, counter-claims, demands, and causes of action of any nature whatsoever, whether arising by statute, in contract, in tort, or other equitable means, among and between the Trustee, Debtor, Estate or GNET, and the Goodman Brothers, the Additional Releasees and the Further Releasees, and their current and former spouses, including but not limited to legal theories based upon negligence, negligence *per se*, gross negligence, strict liability, conversion, breach of warranty (whether express or implied), fraud, fraudulent inducement, misrepresentation, negligent misrepresentation, constructive fraud, breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, *res ipsa loquitur*, the Deceptive Trade Practices Act, the Texas Theft Liability Act, the Texas Securities Act, the Texas Uniform Fraudulent Transfer Act, unjust enrichment, declaratory judgment, tortious interference, wanton or willful conduct, civil conspiracy, piercing the corporate veil, single business enterprise, joint enterprise, constructive trust, action for accounting, tracing of assets, civil theft, *respondeat superior*, or any other theory of recovery, arising out of or relating to any controversy or transaction or occurrence which was or could have been made the subject of the Bankruptcy Case, the Released Adversaries or the Additional Adversaries; and

Execution Version

    3. all damages and equitable remedies, whether direct, special consequential, restitution, punitive or exemplary, arising out of or relating to any controversy or transaction or occurrence made the subject of the litigation among and between the Trustee, Debtor, Estate or GNET, and the Goodman Brothers, the Additional Releasees and Further Releasees, together with all claims for attorneys' fees and costs incurred in pursuing same.

13.    Covenant Not to Sue.

The Trustee, the Estate, and GNET covenant to the Goodman Brothers, the Additional Releasees, and the Further Releasees that the Trustee, the Estate, and GNET shall never in any forum caused to be filed, approve or allow the filing of a suit, complaint, petition, regulatory action or any similar action against any of them for any Claim released by this Agreement or any Claim which is made by through or under their rights and will support the position of the Goodman Brothers that all such released claims are, in fact, claims owned by the Trustee, the Estate, or GNET; *provided, however,* that otherwise such "support" shall not include active or actual litigation, pleading, briefing, or presenting evidence. Notwithstanding this provision, the Trustee may pursue the Excepted Claims in the Excepted Adversary and the Arbitration, and the Trustee will cooperate reasonably with discovery requests made by Joseph Goodman in the U.S. District Court lawsuit filed FedEx, in Civil Action No. 3:23-CV-02397-S.

14.    Proceedings in the Excepted Adversary and Arbitration. In the Excepted Adversary and Arbitration, the Trustee hereby covenants and agrees to credit J.E. Goodman, Jason Goodman, and Joseph Goodman for $2,250,000.00 paid by Federal. Any allocation of the same between the Goodman Brothers is not determined under this Agreement or the Approval Order, and all rights of all parties regarding any such allocation are preserved.

15.    Limited Release. For the avoidance of doubt, and notwithstanding anything contained herein to the contrary, the release of the Goodman Brothers is a *limited* release, and the Trustee, for the Debtor, the Estate, and GNET, retains and preserves all of the Excepted Claims pleaded in the Excepted Adversary and Arbitration against the Goodman Brothers, and any insurance carrier (whether first-party coverage or otherwise).

16.    Release by Goodman Brothers. Effective on the Effective Date, and automatically, without need for further document or instrument, each of the Goodman Brothers hereby releases and discharges the Trustee, the Estate, and GNET, and all agents and attorneys thereof, solely for any claim related to the Released Adversaries and Additional Adversaries; *provided, however,* that: (i) none of the Goodman Brothers releases any person of any claim or right related to the Excepted Claims pending in the Excepted Adversary and Arbitration; and (ii) no obligation under this Agreement or any document or instrument ancillary to this Agreement is released.

Execution Version

17.  Release of Chubb and QBE. Effective on the Effective Date, and automatically, without need for further document or instrument, the Trustee, for himself, the Debtor, the Estate, and GNET, hereby release and discharge Chubb and QBE and their respective parent corporations, subsidiaries and affiliates and all of their respective past, present, and future agents, representatives, directors, officers, trustees, employees, attorneys, shareholders, partners, predecessors, successors, heirs, executors, administrators, principals, assigns, insurers, and reinsurers (collectively, the "Insurer Released Parties") from all Claims based upon, arising out of, or in connection with the Released Adversaries and Additional Adversaries, including any action, proceeding or claim arising from the Insurer Release Parties' investigation, evaluation, or handling of the Released Adversaries and Additional Adversaries and the Insurance Payment; *provided, however,* that: (i) notwithstanding the generality of the foregoing, none of Claims arising from the Excepted Claims pleaded in the Excepted Adversary and Arbitration shall be released, waived, or prejudiced by this Agreement; (ii) notwithstanding the generality of the foregoing, no first-party claim that may exist against Chubb, including as pleaded in Adversary Proceeding No. 23-03036 pending before the Bankruptcy Court, is released, waived, of prejudiced by anything contained in this Agreement; and (iii) no obligation under this Agreement or any document or instrument ancillary to this Agreement is released.

18.  Reallocation of Defense Costs and Exhaustion of Primary ABC Policy. Effective on the Effective Date, and automatically, without need for further document or instrument: (1) all defense costs advanced by Chubb under the Side-A DIC Policy will be deemed to have been advanced under the Primary ABC Policy and erode the Primary ABC Policy by the amount of such advancements, and (2) the amount of defense costs previously advanced by Chubb under the Side-A DIC Policy will now be deemed to have been advanced under the Primary ABC Policy, such that eroded limits of the Side-A DIC Policy will be reinstated by the amount of such prior advancements. The amount of remaining limits under the Primary ABC Policy after accounting for such erosion is $2,250,000 which will be paid by Federal pursuant to the terms of this Agreement. Upon Federal's $2,250,000 payment pursuant to this Agreement, the Limit of Liability of the D&O Coverage Part of the Primary ABC Policy will be fully exhausted, and Federal will have no further defense or other coverage obligations under the D&O Coverage Part of the Primary ABC Policy. The Parties Agree that the Approval Motion and proposed Approval Order in connection with this Agreement will provide for the lifting of the automatic stay of the QBE Excess Policy for purposes of allowing QBE to advance covered defense costs incurred on behalf of the Goodman Brothers and any other Insureds under the QBE Excess Policy in connection with the Excepted Adversary, the Arbitration, and other matters submitted for coverage under the QBE Excess Policy.

Execution Version

19.  Third Party Beneficiaries. Each of the Additional Releasees and Further Releasees, Federal and QBE is an intended third-party beneficiary of this Agreement. There are no other intended third-party beneficiaries of this Agreement.

20.  Dismissal of Litigation.

(i)  Released Adversaries. Promptly after the Effective Date, the Parties shall jointly prepare and file appropriate pleadings in the Released Adversaries to dismiss with prejudice each of the Goodman Brothers and Additional Releasees, with each such party bearing its respective attorney's fees and expenses incurred therein, but which dismissals shall otherwise be without prejudice to any other defendant therein. For the avoidance of doubt, no Excepted Claims in the Excepted Adversary or Arbitration shall be dismissed.

(ii)  Additional Adversaries. Promptly after the Effective Date, the Parties shall jointly prepare and file appropriate pleadings in the Additional Adversaries to dismiss the same with prejudice, with each such party bearing its respective attorney's fees and expenses incurred therein. For the avoidance of doubt, no Excepted Claims pending in the Excepted Adversary and Arbitration shall be dismissed.

21.  Satisfaction of UFS Judgment. Promptly after the Effective Date, the Trustee shall file a Satisfaction of Judgment in the UFS Adversary.

22.  J.E. Goodman Withdrawal of Proof(s) of Claim. Promptly after the Effective Date, J.E. Goodman shall: (i) amend his Claim No. 41 to seek indemnification only for the Excepted Claims and the Excepted Adversary, and remove any indemnification claim for the Released Adversaries; and (ii) withdraw with prejudice his Claim No. 42, filed as a proof of equity.

23.  Trustee Withdrawal of Proof of Claim. Promptly after the Effective Date, the Trustee shall withdraw Proof of Claim 6-1 filed in the Genesis Network Telecom Services, LLC bankruptcy, case No. 24-33835.

24.  Cooperation. Each of the Goodman Brothers agrees he will cooperate and accept third-party subpoenas for testimony, via deposition or at trial, in the Released Adversaries. All Parties reserve all rights and defenses with respect to discovery and testimony regarding the Excepted Adversary and Arbitration, and nothing herein obligates any Party, or releases any right or issue, regarding the same.

Execution Version

25.    <u>Notices</u>. Any notice to be given by the Trustee hereunder shall be effective when sent (as opposed to when received) by both e-mail (where listed) and overnight mail, to the following:

James Goodman
103 Tomahawk Trail
San Antonio, Texas 78232

-- and --

Randall A. Pulman, Esq.
Pulman LeFlore Pullen & Reed, LLP
2161 NW Military Hwy., Suite 400
San Antonio, TX 78213
rpulman@pulmanlaw.com

Jason Goodman
8993 Swallowtail St.
Frisco, Texas 75035

Joseph Goodman
37 Old Fredericksburg Rd.
Boerne, TX  78015

--and--

Robert Simon & David Skeels
Whitaker Chalk Swindle & Schwartz, PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
rismon@whitakerchalk.com

Mr. Scott Seidel
Trustee, Goodman Networks, Inc.
Seidel Law Firm
6505 W. Park Blvd., Suite 306
Plano, TX 75093

--and--

Mr. Davor Rukavina
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 4000
Dallas, TX 75201
drukavina@munsch.com

Execution Version

26. <u>Governing Law</u>. The laws of the State of Texas will govern the interpretation and enforcement of this Settlement Agreement, without giving effect to its choice of law rules.

27. <u>Warranty of Authority</u>. Except with respect to the entry of the Approval Order, each signatory below warrants and represents to each other Party that he or she has all requisite authority to bind his or her respective Party to this Agreement, and each Party warrants and represents to each other Party that it has all necessary authority to enter into this Agreement.

28. <u>Each Party Relying on Own Judgment.</u> The Parties understand and agree they have carefully reviewed this Agreement, they fully understand its terms, they sought and obtained independent legal advice with respect to the negotiation and preparation of the Agreement, this Agreement has been negotiated and prepared by the joint efforts of the respective attorneys for each of the Parties, and the Parties have relied wholly upon their own judgment and knowledge and the advice of their respective attorneys. The Parties acknowledge they have executed this Agreement without reliance on any promise, representation, or warranty not contained in this Agreement, and disclaim reliance on any promise, representation, or warranty not contained in this Agreement.

29. <u>Jointly Drafted</u>. All Parties assisted in the preparation of this Agreement, and no provision of this Agreement will be construed against any Party because that Party or its counsel drafted or assisted in the drafting of the provision. The Parties hereby expressly agree that any uncertainty or ambiguity existing herein will not be interpreted against any of them.

30. <u>Fees and Costs</u>. In the event that any action is brought by a Party to enforce any right or obligation under this Agreement, or to defend any such right or obligation then, in addition to all other rights and remedies, the Party substantially prevailing in any such litigation shall be entitled from the non-prevailing Party an award of its reasonable attorney's fees and expenses incurred in any such action.

31. <u>Waiver of Jury Rights</u>. Each Party waives any right to a trial by jury of any issue that it may have with respect to any action, proceeding, or lawsuit brought to enforce this Agreement or to otherwise interpret and apply this Agreement or to seek a declaration as to the rights or obligations hereunder of one or more of the parties. For the avoidance of doubt, nothing herein waives any jury right or defense thereto such as may exist in the Excepted Adversary.

32. <u>Recitals</u>. All recitals are intended to be part of this Agreement and shall be used and relied upon in its construction and interpretation.

Execution Version

33.     Bankruptcy Court Jurisdiction.  The Parties agree that the Bankruptcy Court has subject matter jurisdiction over any dispute over or on this Agreement, and they each irrevocably consent to the Bankruptcy Court's entry of final orders or judgment in any such dispute, even if the Bankruptcy Court's jurisdiction over the same would otherwise not be core.  For the avoidance of doubt, the forgoing does not apply to the Excepted Adversary, and all Parties reserve all rights regarding the same, including with respect to any asserted arbitration rights and defenses thereto.

34.     Sole and Complete Agreement.  This Agreement constitutes the final, sole, and entire agreement between the Parties hereto with respect to the express subject matter hereof.   All prior discussions, agreements and representations are merged into this Agreement. There is no other agreement, written or oral, among the Parties with respect to the subject matter of this Agreement.

35.     No Oral Amendments.  This Agreement may be amended or modified by the Parties only and solely through a written agreement executed by each Party.

36.     Further Assurances.  Each of the Parties agrees to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Agreement.

37.     Execution in Counterparts.  This Agreement may be signed in any number of counterparts or copies or on separate signature pages or by e-mail or facsimile transmission, which when taken together will be deemed to be an original for all purposes.

Execution Version


James E. Goodman, Individually
Date: _____ 3-14- 2025


_____
Jason Goodman, Individually
Date: _____


Joseph Goodman, Individually
Date: _3 - 1 7 - 2025_


_____
Scott M. Seidel, Trustee


GNET ATC, LLC


By: _____
        Scott M. Seidel
        Authorized Signatory

Execution Version


James E. Goodman, Individually
Date: _____3-14-2025_____


Jason Goodman, Individually
Date: __3/17/2025_____


_____
Joseph Goodman, Individually
Date:_____


_____
Scott M. Seidel, Trustee


GNET ATC, LLC


By: _____
        Scott M. Seidel
        Authorized Signatory

Execution Version

_James E. Goodman, Individually_
Date: _3-14-2025_

_____
Jason Goodman, Individually
Date:_____

_____
Joseph Goodman, Individually
Date:_____

_____
Scott M. Seidel, Trustee

GNET ATC, LLC

By: _____
     Scott M. Seidel
     Authorized Signatory

# Exhibit A

### "Exhibit A: Further Releasees"

Sarina Goodman, individually, and as Trustee of the *Jake Goodman Irrevocable Trust and
the Jessica Goodman Irrevocable Trust*
Jessica R. Goodman
Jacqueline Goodman McHugh
Jeanette Hesker
Wesley Hesker
Goodman Brothers, L. P.,
Goodman Brothers Enterprises, Inc.,
Goodman MBE Group, L.P.,
Genesis Networks Enterprises, LLC,
Austin Tele-Service Partners, LP,
Austin Tele-Services, LLC
Genesis Limited Holdings, LLC
Genesis Networks Solutions, Inc.
Genesis Networks Integration Services, LLC
Extra Mile Logistics, LLC
Device Services Group, LLC,
Graphene Edge Corporation, (f/k/a Gravetti Corporation)
Endeavor Managed Services, Inc.
Sova, Inc.
Goodman Support Services, Inc.  (Philippines)
Endeavor Managed Services S.R.O (Slovakia)
ManageLife, Inc.
ManageLife Real Estate, Inc.
ManageLife Services, Inc.
ManageLife Health, Inc.
ManageLife Residential Membership Club, LLC,
ManagedLife Real Estate, a Texas Nonprofit Corporation
ManageLife.io, LLC
Padre Tubular Leasing, LLC
Smart Hands, Inc,
Trusted Driver, Inc
TeleSpace, LLC
Goodman Homes Solutions, LLC
Goodman MBE Group, LLC

James S. "Jake" Goodman
Courtney Goodman
Reed Global Networks, LLC
Dionysus Entertainment, LLC
Goodman Ventures, LLC

Joseph (Jody) Goodman & Gabriela Sutto Goodman
Jason Goodman & Carol Bush Goodman
Jonathan Goodman
John Goodman & Cayenne Goodman (excepting John Goodman's bankruptcy estate)

# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |

**ORDER APPROVING TRUSTEE'S COMPROMISE AND SETTLEMENT
WITH GOODMAN FAMILY MEMBERS AND AFFILIATES**

CAME ON FOR HEARING the *Trustee's Motion Under Bankruptcy Rule 9019 for Approval of Compromise and Settlement with Goodman Family Members and Affiliates* (the "Motion"), filed by Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case").

By the Motion, the Trustee seeks approval of that certain proposed settlement (the "Proposed Settlement") with James E. Goodman ("J.E. Goodman"), Jason Goodman, and Joseph Goodman (collectively, the "Goodman Brothers"), pursuant to that certain *Settlement and Release Agreement* as attached to the Motion (the "Agreement" or the "Proposed Settlement"), the further

effect of which would be to provide for certain limited releases to the Goodman Brothers, limited releases to Federal Insurance Company ("Federal"), a release to QBE Specialty Insurance Company ("QBE"), and a release to the "Additional Releasees" and the "Further Releasees," both as defined in the Agreement.  Any additional capitalized terms used in this Order and not defined in this Order shall have the meanings ascribed to them in the Agreement.

The Court makes the following findings and fact and conclusions of law in support of this Order.

1.      The Trustee is the duly appointed Chapter 7 trustee of the Debtor and the Estate.

2.      The Debtor wholly owns GNET ATC, LLC ("GNET").  As such, and even though GNET is not a debtor, the Trustee solely controls GNET and has authority to cause it to enter into the Agreement.

3.      The Trustee, the Debtor, the Estate, and GNET have asserted multiple claims and causes of action against one or more of the Goodman Brothers and Additional Releasees, including Claims asserted in the following pending Adversary Proceedings: 23-03072; 23-03090; 24-03022; 23-03088; 24-03054; 24-03102, and 24-03098.  The Trustee has also asserted various claims and causes of action against the Goodman Brothers in Adversary Proceeding No. 24-03039 (the "Excepted Adversary" and the claims and causes of action asserted therein the "Excepted Claims").  The Court has ordered that various of said Excepted Claims be arbitrated before the American Arbitration Association, which is now pending as AAA Case Number 01-25-0000-4679 (the "Arbitration").

4.      During the Goodman Brothers' tenure with the Debtor, the Debtor maintained certain liability insurance policies, including but not limited to: (1) ForeFront Portfolio Policy No. 8259-6686 (the "Primary ABC Policy") issued to Debtor by Federal, which has a $5M Aggregate Limit of Liability under its Directors & Officers and Entity Liability Coverage Part ("D&O

Coverage Part"), (2) excess D&O Policy No. 100039151 issued to the Debtor by QBE for $5M in excess of $5M, (3) excess D&O Policy No. 652241819 issued to the Debtor by Continental Casualty Company ("CNA") for $5M in excess of $10M, (4) excess D&O Policy No. LHY H300594 00 issued to the Debtor by Hanover Insurance Company ("Hanover") for $5M in excess of $15M, and (5) CODA Premier Directors and Officers Liability Excess DIC Policy No. G46647233 004 ("Side-A DIC Policy") issued to the Debtor by Westchester Fire Insurance Company ("Westchester" and, together with Federal, "Chubb") The entire stack of insurance is referred to as the "Tower".

5.      Prior to the Effective Date, and pursuant to separate proceedings and orders in the Bankruptcy Case, Chubb has been advancing covered defense costs incurred by the Goodman Brothers in connection with various proceedings under the Side-A DIC Policy, subject to a reservation of rights, including Chubb's right to reallocate all advancements and corresponding erosion under the Side-A DIC Policy to the Primary ABC Policy and/or other underlying insurance policies.

6.      The Proposed Settlement is for a total of $6 million (the "Proceeds"), of which $2,250,000 will be paid by Federal under the Primary ABC Policy, $250,000 will be paid by QBE under the QBE excess policy (collectively, the "Insurance Payment"), and the balance (the "Payout") will be paid by J.E. Goodman and Symbiont. The Proposed Settlement is fair and reasonable and represents sufficient, reasonable, and adequate return consideration for the releases granted by the Trustee and GNET. The other terms of the Agreement are fair and reasonable. The Trustee has exercised appropriate and sound business judgment in proposing the Proposed Settlement and the Agreement. All preconditions for the approval thereof under Bankruptcy Rule 9019 are satisfied.

7.    Pursuant to the *Order Approving Multi-Party Settlement Regarding Property of the Estate* [docket no. 526] (the "Global Settlement"), one-third (33.3%) of the Insurance Payment, net of fees and expenses reasonably incurred in obtaining the same, are payable to UMB Bank, National Association, as indenture trustee (the "Indenture Trustee") for the benefit of the holders of the Debtor's prepetition secured bonds, while the remaining two-thirds (66.6%) of the Insurance Payment is free and clear property of the Estate. Thus, such third, net of such fees and expenses, represents the cash collateral of the Indenture Trustee and may not be used by the Trustee. Until such amount is determined, which shall be by separate motion and order, with all rights of all parties regarding the same preserved, the Trustee may not use or distribute any of the Insurance Payment.

8.    The Payout is free and clear property of the Estate.

9.    The Trustee has exercised sound and good business judgment with respect to his control over GNET to enter into the Agreement. GNET is receiving appropriate value for the Agreement, because among other things, its joint liabilities with the Debtor will be reduced dollar-for-dollar from the Trustee's payment of the claims against the Debtor from the Proceeds. Furthermore, the funds transferred out by GNET which form the basis, in part, of the claims and causes of action being compromised by the Agreement originated from the Debtor, or are funds in which the Debtor held superior interests on account of fraudulent transfer claims the Debtor and its creditors against GNET. Thus, compromising the right to these Proceeds as between the Debtor and GNET as embodied in the Agreement is appropriate. The Proposed Settlement is a reasonable, fair, and appropriate compromise of such issues, with GNET receiving fair, reasonable, and adequate consideration in return.

10.    The Proposed Settlement and the Agreement were negotiated in good faith, through arm's length negotiations and, in part, formal mediation. There are no undisclosed agreements.

11.    The Court has core, subject matter jurisdiction over the Motion and to enter this Order.

Accordingly, based on the foregoing and based on any additional findings of fact and conclusions of law as stated on the record of said hearing, it is hereby:

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Proposed Settlement and the Agreement are APPROVED, and that the Agreement shall control according to its terms, and that the Trustee is authorized to execute the Agreement and to otherwise perform all obligations thereunder; it is further

ORDERED that no release in the Agreement shall become effective unless and until the Effective Date occurs as otherwise provided for in the Agreement; it is further

ORDERED that the Insurance Payment shall be paid directly by Federal and QBE to the Estate, upon instructions to be provided by the Trustee, and shall in no event be transferred to or through the Goodman Brothers, but shall be made on their behalf and for their benefit; it is further

ORDERED that, notwithstanding anything potentially contained in the Agreement to the contrary, no first-party claim that the Estate or GNET may have against Federal or any of its parent, affiliated, or subsidiary companies, including as such claims are pending in Adversary Proceeding No. 23-03036, are released, waived, or prejudiced; it is further

ORDERED that, for the avoidance of doubt, no claim or cause of action of the Debtor, the Estate, or GNET against CNA, Hanover, or Westchester is released, waived, of prejudiced; it is further

ORDERED that the release of Claims granted to the Goodman Brothers, the Additional Releasees and the Further Releasees in the Agreement by the Trustee, the Debtor and Estate are effective as to any Claim which could be brought by any creditor or party in interest of the Estate whose Claims may be derivative of the Trustee, the Debtor, the Estate or GNET. Any creditor or

party in interest of the Estate is barred from bringing those derivative Claims against the Goodman

Brothers, the Additional Releasees and the Further Releasees; it is further

ORDERED that, notwithstanding anything potentially contained in the Agreement to the

contrary, none of the Excepted Claims against any of the Goodman Brothers as pled in the

Excepted Adversary or the Arbitration are released, waived, or prejudiced, but all other claims and

causes of action of the Debtor, the Estate, and GNET asserted or assertible against the same are

released and waived as otherwise provided for in the Agreement, including with respect to the

Released Adversaries and the Further Adversaries; it is further

ORDERED that, notwithstanding anything potentially contained in the Agreement or law

to the contrary, no claim or cause of action of the Debtor, the Estate, or GNET as asserted or

assertible in any of the Released Adversaries against any person who is not one of the named

Goodman Brothers, Additional Releasees, or Further Releasees is released, waived, or prejudiced,

but any such other person shall retain all rights, claims, credits, and reductions in alleged liability

in any adversary proceeding commenced by the Trustee, including all such rights under Chapter

33 of the Texas Civil Practice and Remedies Code, as the same may otherwise exist and subject to

all rights of the Trustee to contest the same; it is further

ORDERED that, upon the payment of the Insurance Payment, the D&O Coverage Part of

the Primary ABC Policy will be fully exhausted, such that any and all claims against Federal under

the D&O Coverage Part of the Primary ABC Policy are satisfied and extinguished, and no person

shall have, may have, or may maintain any claim for coverage under such coverage part; it is

further

ORDERED that, no later than three (3) business days after receipt of the Insurance

Payment, the Trustee shall file a notice on the docket of the Bankruptcy Case inform all parties of

the same and, if the Insurance Payment is not timely paid, the Trustee shall file a notice on the

docket of the Bankruptcy Case informing all parties of the same, and that the Trustee shall otherwise file on the docket of the Bankruptcy Case notice that the Effective Date has occurred and of the date on which it has occurred, no later than three (3) business days after such occurrence; it is further

ORDERED that, upon the Effective Date, the automatic stay is modified to permit QBE to advance covered defense costs incurred on behalf of the Goodman Brothers and any other insureds under the QBE Excess Policy in connection with the Excepted Adversary, the Arbitration, and other matters submitted for coverage under the QBE Excess Policy; it is further

ORDERED that, upon the Effective Date, and notwithstanding any order previously entered in the Bankruptcy Case (1) all defense costs advanced by Westchester (or Chubb) under the Side-A DIC Policy will be deemed to have been advanced under the Primary ABC Policy and erode the Primary ABC Policy by the amount of such advancements, and (2) the amount of defense costs previously advanced by Westchester (or Chubb) under the Side-A DIC Policy will now be deemed to have been advanced under the Primary ABC Policy, such that eroded limits of the Side-A DIC Policy will be reinstated by the amount of such prior advancements, and the automatic stay is modified to permit the same; it is further

ORDERED that one-third (33.3%) of the Insurance Payment, net of reasonable fees and expenses incurred by the Trustee in recovering the same (to be determined by separate motion and order), is the cash collateral of the Indenture Trustee to be paid by the Trustee to the Indenture Trustee pursuant to the Global Settlement, and that nothing contained herein prejudices any right, claim, issue, or defense regarding the quantification of such amount, and that the remaining two-thirds (66.6%) of the Insurance Payment is the free and clear property of the Estate, and that, pending the determination of the amount payable to the Indenture Trustee, the Trustee shall not use or distribute any of the Insurance Payment; it is further

ORDERED that the Payout is the free and clear property of the Estate; it is further

ORDERED that, at any time after the Effective Date, the Trustee may record the Deeds of Trust against 84 Applehead Island Dr., Horseshoe Bay, Texas 78657 and 3311 Willow Ridge Dr., Bryan Texas, 77087 (together, the "Pledged Properties"), which Deeds of Trust shall be valid and binding according to their terms; it is further

ORDERED that the automatic stay under 11 U.S.C. § 362(a) shall apply to any action by any creditor with a superior lien (superior to the Deeds of Trust) against the Pledged Properties to foreclose on such lien, and the Trustee is authorized to record notice of such application against the Pledged Properties, and all governmental units and entities are instructed to accept such notice for recordation and to record the same against the Properties; it is further

ORDERED that the Trustee is authorized to record this Order against the Pledged Properties, and all governmental units and entities are instructed to accept such notice for recordation and to record the same against the Properties; it is further

ORDERED that, in the event that any creditor notices or initiates any foreclose action or proceeding to foreclose on any lien against the Pledged Properties, J.E. Goodman, People NQ, Inc., and such creditor shall provide notice of such initiated foreclosure or proceeding to the Trustee no later than three (3) business days after such notice or initiation of foreclosure, and the recording of this Order against the Pledged Properties shall be deemed notice to any such creditor and to the world of this requirement; it is further

ORDERED that, once all obligations under the Agreement secured by the Deeds of Trust are satisfied, the Trustee shall cause the Deeds of Trust to be terminated or satisfied or otherwise cancelled as is otherwise appropriate under Texas law, and he is authorized and directed to prepare and to record any document or instrument to effectuate the same; it is further

ORDERED that, promptly after the Effective Date, the Trustee is authorized and directed to file a Satisfaction of Judgment in the UFS Adversary; it is further

ORDERED that, promptly after the Effective Date, the Trustee is authorized and directed to withdraw Proof of Claim 6-1 filed in the Genesis Network Telecom Services, LLC bankruptcy, case No. 24-33835; it is further

ORDERED that the failure to specifically reference or approve any obligation, right, or provision of the Agreement in this Order shall in no way affect its enforceability, the Agreement being approved *in toto* and the Trustee being authorized to effectuate the Agreement *in toto*; it is further

ORDERED that the Court shall retain core jurisdiction to the maximum extent possible over the parties and the Agreement to interpret and to enforce the Agreement and this Order.

# # #  END OF ORDER  # # #