Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

GENERAL COUNSEL FOR
SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| GOODMAN NETWORKS, INC., | § | |
| | § | Case No. 22-31641-mvl-7 |
| Debtor. | § | |

**TRUSTEE'S MOTION FOR AUTHORITY TO ASSIGN CLAIM AGAINST JOHN GOODMAN TO THE INDENTURE TRUSTEE**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, ROOM 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON JUNE 9, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE MICHELLE V. LARSON, U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Goodman Networks, Inc. (the "Debtor"), the debtor in the above styled and numbered bankruptcy case (the "Bankruptcy Case"), and files this his *Motion for Authority to Assign Claim Against John Goodman to the Indenture Trustee* (the "Motion"), respectfully stating as follows:

## I. PROCEDURAL BACKGROUND

1. On September 6, 2022 (the "Petition Date"), various creditors of the Debtor filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the Estate.

2. The Court entered its order for relief against the Debtor on December 12, 2022. The Trustee was thereafter appointed as the Chapter 7 trustee of the Estate.

3. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Said jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Case before this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## II. FACTUAL BACKGROUND

4. On or about May 31, 2017, the Debtor issued its 8% Senior Secured Notes due 2022 (the "Notes") pursuant to that certain indenture dated as of May 31, 2017 (as amended, restated, or otherwise modified from time to time, the "Indenture"), by and among Goodman Networks as Issuer, the Indenture Trustee, and the Collateral Agent, in the original principal amount of $112,500,000. The notes matured on May 31, 2022, at which time all amounts due under the Indenture, including principal, interest, fees, costs, and other expenses, became due and payable. The Debtor failed to pay the Notes on and after such date, and was in default under the Indenture at least as of said date.

5. The indenture trustee under the Indenture is UMB Bank, National Association (the "Indenture Trustee"). The collateral agent under the Indenture is U.S. Bank National Association (the "Collateral Agent").

6. Pursuant to order entered by the Court at docket number 526 in the Bankruptcy Case, the Court found and concluded that the Debtor owed $18,738,733.10 on the Notes as of the Petition Date, except with respect to potentially $1,600,000.00 of the Notes that should have been submitted to the Indenture Trustee for cancellation on account of certain prepetition transactions. Thereafter, with the $1,600,000 resolved and those Notes cancelled, the Indenture Trustee amended its claim in the Bankruptcy Court to reduce the claim to $16,418,573.00.

7. The Court further found and concluded that the Collateral Agent holds valid, perfected, and unavoidable first-priority liens and security interests against substantially all property of the Debtor and the Estate to secure the Indenture and the Notes. As relevant to this Motion, the Collateral's Agent's security interests extend to "general intangibles" under the Uniform Commercial Code.

8. John Goodman ("Goodman") is a former principal and insider of the Debtor. In 2020, the Debtor sold its professional services and infrastructure business to Goodman's company, Goodman Telecom Holdings, LLC, for 1,516,519 Class E Units in Goodman Telecom Holdings, LLC. The transaction valued these units at $8 million and contained a contractual "put option" obligating Goodman, personally, to buy these units for $8 million. In August 2022, Goodman Telecom Holdings, LLC sought to convert from a limited liability company to a corporation. As part of this transaction, Goodman's "put option" was effectively released, thus releasing Goodman from being obligated to pay the Debtor $8 million, in exchange for certain stock in the converted company. It appears that Goodman coordinated with, or instructed, James Frinzi, the Debtor's former CEO, to obtain a release of the "put option" from the Debtor for no return consideration.

9. The Trustee believes that the Debtor and the Estate hold or held valuable claims and causes of action against Goodman for this release without consideration, as well as against others, including Frinzi, for breaches of fiduciary duty. Prior to the release of the "put option," the nature of these claims and causes of action were contractual, and therefore "general intangibles" under the U.C.C. After the release, the Trustee believes that the nature of these claims and causes of action would have been commercial tort claims under the U.C.C. related to fraudulent transfer and inducing a breach of fiduciary duty, with respect to which the Collateral Agent would not hold perfected security interests under the U.C.C. The Indenture Trustee, however, has taken the position that any such commercial tort claims would nevertheless constitute the "proceeds" of their other collateral, and that the Collateral Agent and Indenture Trustee, for the benefit of the noteholders, would be entitled to any net proceeds obtained by the Trustee on account of such claims and causes of action. Likewise, the Collateral Agent held a perfected security interest against the Debtor's interests in the Class E Units, as well as any proceeds thereof in the form of new stock against the converted entity.

10. On October 30, 2023, at docket number 421 in the Bankruptcy Case, the Court granted the motion of the Indenture Trustee and the Collateral Agent for limited relief from the automatic stay, to enable the Collateral Agent to exercise its rights regarding the foregoing units and stock, as well as all rights regarding the claims and causes of action against Goodman resulting from the effective release of the "put option." Other than filing the Goodman Claim (defined below), the Trustee has therefore not prosecuted any claims and causes of action against Goodman, in light of the relief from the automatic stay regarding such claims and causes of action having been granted.

11. On July 10, 2024, Goodman filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Austin Division, thereby initiating Bankruptcy Case No. 24-108016-smr (the "Goodman Case").

12. On October 15, 2024, the Trustee filed proof of claim number 15 in the Goodman Case, a true and correct copy of which is attached hereto as Exhibit "A" (the "Goodman Claim"). The Goodman Claim is premised primarily on the release of the "put option" as detailed above.

13. Because the Goodman Claim is filed as an unliquidated claim for untried claims and causes of action, the Trustee believes that the trustee in the Goodman Case will eventually object to the Goodman Claim, thus necessitating expense and burden to defend the claim. Nor is it known whether the trustee in the Goodman Case will recover sufficient funds to make any distribution to unsecured creditors. What is known is that Goodman claims to have no money or non-exempt assets worth liquidating, and that the trustee in the Goodman Case has initiated litigation against third parties to attempt to bring funds into the estate, including from Goodman related trusts and related to fraudulent transfers. Again, all this will take time and expense, and involves significant risk both with respect to litigation and then with respect to collection.

### III.    RELIEF REQUESTED

14. By this Motion, and pursuant to the *Partial Assignment of Claim* attached hereto as Exhibit "B," the Trustee seeks authority to assign the Goodman Claim to the Indenture Trustee and the Collateral Agent, on a "where-is, as-is" basis, with no warranty or recourse. To the extent that the Indenture Trustee is able to monetize the Goodman Claim, it would retain the benefits thereof for the benefit of the bondholders.

### IV.    DISCUSSION

15. This Motion seeks relief that is outside the ordinary course of business, and is therefore subject to section 363(b) of the Bankruptcy Code. This is governed by the "business

judgment rule." The Trustee is entitled to employ his reasonable business judgment in proposing the assignment, and that judgment is entitled to reasonable deference from the Court where, as here, the proposed settlement is not between insiders:

> The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the 'business judgment rule.' Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. The business judgment rule creates a presumption in favor of the fiduciary.

*In re Woodberry*, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021) (internal quotations omitted).

16. Here, the assignment of the Goodman Claim and the Trustee's business judgment in so proposing is supported by the Trustee's reasonable business judgment:

(i) the bondholders will provide the Estate with a credit of $10,000.00 against their claim;

(ii) the Trustee does not believe that the Goodman Claim has meaningful monetary value to the Estate, at least not without significant expenses being devoted to it, which the Trustee does not believe to be worth any benefit;

(iii) the Trustee does not believe that the Estate should bear such expenses because the net benefits, if any, would likely flow to the Indenture Trustee and the Collateral Agent, whether because the underlying claims are general intangibles or the proceeds of commercial tort claims under the U.C.C., in light of relief from the automatic stay having been granted to the Indenture Trustee;

(iv) the assignment is without representation or warranty, on an "as-is, where-is" basis; and

(v) to the extent of any net recovery by the Indenture Trustee or the Collateral Agent to the bondholders, their claims against the Estate would be correspondingly reduced.

17. Thus, by assigning the Goodman Claim, the Estate receives some immediate benefit, is relieved of a potentially burdensome asset, and has the potential of future benefit at the expense and burden of the Indenture Trustee and the Collateral Agent. The assignment is therefore in the best interests of the Estate.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order: (i) granting this Motion; (ii) authorizing the assignment of the Goodman Claim as outlined above; and (iii) granting the Trustee such other and further relief to which he may be justly entitled.

RESPECTFULLY SUBMITTED this 19th day of May, 2025.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
Davor Rukavina, Esq.
Texas Bar No. 24030781
Thomas D. Berghman, Esq.
Texas Bar No. 24082683
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**GENERAL COUNSEL FOR SCOTT M. SEIDEL, TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 19th day of May, 2025, true and correct copies of this Motion, with the exhibits hereto, were electronically served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same day he caused true and correct copies of this Motion, with the exhibits hereto, to be served, by U.S. first class mail, postage prepaid, on the parties listed on the attached Service List.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.